```
 1  UNITED STATES DISTRICT COURT
    EASTERN DISTRICT OF NEW YORK
 2  ------------------------------------x
    UNITED STATES OF AMERICA
 3                                              15 CR 637(KAM)
            versus
 4                                              U.S. Courthouse
    MARTIN SHKRELI and EVAN GREEBEL,            225 Cadman Plaza East
 5                                              Brooklyn, NY 11201
                    Defendants.                 February 3, 2016
 6  ------------------------------------x       10:00 a. m.

 7       TRANSCRIPT OF CRIMINAL CAUSE FOR STATUS CONFERENCE
              BEFORE THE HONORABLE KIYO MATSUMOTO
 8                UNITED STATES DISTRICT JUDGE

 9                         APPEARANCES
    For the Government:    ROBERT CAPERS
10                         UNITED STATES ATTORNEY
                           EASTERN DISTRICT OF NEW YORK
11                         271 Cadman Plaza East
                           Brooklyn, New York 11201
12                         BY: WINSTON PAES, ESQ.
                               ALIXANDRA SMITH, ESQ.
13                         Assistant United States Attorneys

14  For the Defendant:     BRAFMAN & ASSOCIATES, PC
    Martin Shkreli         767 Third Avenue
15                         New York, New York 10017
                           BY:  BENJAMIN BRAFMAN,ESQ.
16                              MARC AGNIFILO, ESQ.
                                ANDREA ZELLAN, ESQ.
17
    For the Defendant:     MORVILLO, ABRAMOWITZ, GRAND,
18  Evan Greebel           IASON & ANELLO, PC
                           565 Fifth Avenue
19                         New York, New York 10017
                           BY:  JONATHAN SACK, ESQ.
20                              NICOLE BUSEMAN, ESQ.

21  Also Present:          Special Agent Christopher Delzotto
                           Special Agent Michael Braconi
22
    Court Reporter:        LISA SCHMID, CCR, RMR
23                         225 Cadman Plaza East
                           Brooklyn, New York 11201
24                         Phone:  718-613-2644 Fax: 718-613-2379
    Proceedings recorded by mechanical stenography.   Transcript
25  produced by computer-aided transcription.
```

LISA SCHMID, CCR, RMR

```
 1              THE COURT:  Good morning, everybody.
 2              THE CLERK:  This is criminal status conference, 15
 3   CR 637, USA versus Martin Shkreli and Evan Greebel.
 4              Will counsel on behalf of the government state your
 5   appearances, please?
 6              MR. PAES:  Winston Paes and Alixandra Smith for the
 7   government.
 8              THE COURT:  Good morning.
 9              MR. PAES:  Also at sitting at the government's table
10   are Special Agents Christopher Delzotto and Michael Braconi.
11   Good morning.
12              THE COURT:  Good morning.
13              THE CLERK:  And will counsel on behalf of
14   Mr. Shkreli state your appearance?
15              MR. BRAFMAN:  Good morning, Your Honor.  Benjamin
16   Brafman, Marc Agnifilo and Andrea Zellan for Mr. Shkreli, who
17   is present in the courtroom.  We are replacing previous
18   counsel, Arnold and Porter.  Good morning, Your Honor.
19              THE COURT:  Good morning, Mr. Shkreli.
20              THE CLERK:  Counsel on behalf of Evan Greebel?
21              MR. SACK:  Yes.  Jonathan Sack on behalf of
22   Mr. Greebel, and I'm here with my colleague, Nicole Buseman.
23   Good morning.
24              THE COURT:  Good morning.
25              Good morning, Mr. Greebel.
```

1                All right.  Would counsel kindly bring me up to date
2    on the status of this matter?  I know you're new to the case,
3    sir, but --
4                MR. BRAFMAN:  I think I can do that, Your Honor.
5                THE COURT:  All right.
6                MR. BRAFMAN:  Your Honor, with the cooperation of
7    prior counsel and with the cooperation of the government, we
8    have been trying very quickly to get up to speed, so as not to
9    unduly delay these proceedings.
10               Having said that, this is, I think by agreement of
11   all counsel, a complex case, so the issue of speedy trial will
12   ultimately be, I think, waived by us.  We've agreed, subject
13   to Your Honor's approval, to an adjournment to May 3rd, so
14   that we can complete discovery.
15               The government has provided prior counsel with a lot
16   of discovery.  They have assured us that they will provide us
17   with additional discovery, and we are doing as best we can to
18   get involved in the specifics of the case, so that the next
19   time we appear, we can respectfully inform the Court of what,
20   if any motions, we intend to file.
21               THE COURT:  By May?
22               MR. BRAFMAN:  By May.
23               THE COURT:  All right.  Very good.
24               Mr. Sack, are you in agreement with your colleague's
25   time frame?

```
1              MR. SACK:  Yes, in general, Your Honor.  I think
2   what we think is in early May when we come back, that will be
3   an appropriate time to set a motion schedule.  I don't know
4   that we will have particularized all of our motions by then,
5   but I think that would be an appropriate time to set a
6   calendar for motions.
7              THE COURT:  All right.  Very well.
8              MR. BRAFMAN:  Your Honor, could I just ask -- I'm
9   sorry.  If I may, there is one issue that we may bring to the
10  Court's attention earlier, so that the Court is alerted if
11  there is a problem, as well as the government.
12             As Your Honor well knows, Judge Weinstein recently
13  issued a decision and order in connection with a claim of
14  attorney/client privilege with respect to documents that were
15  submitted to the grand jury, that were materials exchanged
16  between Mr. Greebel, who is an attorney, and Mr. Shkreli, who
17  we take the position was at various times a personal client,
18  as well.
19             I have -- we've discussed this with the government
20  this morning, and they have assured us that the affidavits
21  that were submitted to Judge Weinstein are now unsealed and
22  available to us.  We will review them.  We will also review
23  the materials to make a determination whether there is a
24  privilege issue that needs to be addressed prior to May.  If
25  there is, we will alert the Court very quickly, so that the
```

1  government will be alerted, as well.

2          THE COURT:  So you anticipate revisiting Judge
3  Weinstein's ruling?

4          MR. BRAFMAN:  Well, as I understand it, Judge
5  Weinstein's ruling was based on an ex parte application by the
6  government.  It was not a decision made after briefs were
7  exchanged by respective advocates.

8          We'd like to see what they said.  We'd like to look
9  at the emails.  And if there are emails that we believe are of
10 a personal nature between Mr. Greebel and Mr. Shkreli that
11 fall within the attorney/client privilege, we may not wish to
12 revisit the decision of Judge Weinstein entirely, but we may
13 wish to suggest to the Court that with respect to a small
14 portion of those emails, that the government may not be
15 permitted to use them.

16         This may not be an issue, but what I didn't want to
17 do is wait three months, have the government go through these
18 materials, then alert them and the Court to my concerns, and I
19 think then the Court would rightfully say, why didn't you say
20 something earlier?  So I'm saying something earlier.

21         THE COURT:  All right.  Well, I hope you'll say
22 something as soon as you know whether or not you wish to go
23 forward with motions on the issue.

24         MR. BRAFMAN:  Yes, Your Honor.  We'll do that before
25 May -- well before May 3rd.

LISA SCHMID, CCR, RMR

1              THE COURT: All right. Very good.

2              Yes?

3              MR. PAES: Your Honor, if I may just address the last point?

4

5              THE COURT: Yes.

6              MR. PAES: So we've obviously notified both counsel that the materials have been unsealed before Judge Weinstein. We will also be turning over the affidavits nonetheless, as part of discovery. We'll also be turning over the documents that were provided to Judge Weinstein separately. Those have already been provided to defense counsel as part of the discovery, but we will separately provide them, so they are put in the context of the affidavits, as well. So it's going to be easier for them to review the materials.

15             With respect to the other issues, I think we're fine as well with the status conference being adjourned now for three months, and we agree it's a complex case, as well.

18             THE COURT: All right. So does Mr. Sack also agree that this is a complex case?

20             MR. SACK: Yes, Your Honor.

21             THE COURT: All right. I have nonetheless before me an application to exclude time. Mr. Shkreli, Mr. Greebel, you previously have been advised of your right to a speedy trial, that is, to be brought to trial within seventy days of the date of your arraignment; however, given the complex nature of

```
 1   this case and fact that there's new counsel on board, the fact
 2   that the government is still producing discovery, there is a
 3   joint application that appears to be signed by both counsel
 4   and the parties to exclude time up through May 3rd, which is
 5   our next conference date.
 6              Accordingly, I just want to make sure that
 7   Mr. Greebel and Mr. Shkreli agree to this application and
 8   joint it.  Is that correct, sir?
 9              MR. BRAFMAN:  Yes, Judge.
10              MR. SACK:  Yes, Your Honor.
11              THE COURT:  All right.  Thank you.
12              Given the facts as they've been recounted by counsel
13   and the ongoing need to review discovery, I will grant the
14   application in the interest of justice until May 3rd.
15              Yes?
16              MR. PAES:  Just one other issue, Your Honor.
17   Mr. Shkreli's bond, as you're well aware, the Court had signed
18   an order ordering E*Trade to inform the government as to when
19   the bond amount dropped below five million dollars.  And so,
20   this was the E*Trade account that I believe at the time it was
21   frozen had around $45 million in it.
22              THE COURT:  Yes.
23              MR. PAES:  Most of the stock in that account was
24   stock of the company called KaloBios, which since -- after it
25   resumed trading has dropped quite significantly.  I believe as
```

1    of this morning, it had opened or it had closed yesterday at
2    $2.05 from I believe a price around $23 at the time it was
3    frozen.
4            That brings the account value of that account right
5    now to approximately four million dollars.  The stock has been
6    fluctuating, you know, a little bit back and forth where it is
7    relatively close to the five million dollar mark right now.  I
8    just wanted to notify the Court about that, since the Court
9    had issued an order about it.
10           I think it's something in the first instance, we'd
11   like to talk about with counsel if it continues to drop, as a
12   means to substitute assets to keep it at a five million dollar
13   level.  If we are unable to reach any kind of agreement,
14   obviously, we'll notify the Court and we can address that at
15   that point.
16           THE COURT:  It's a five million dollar bond?
17           MR. PAES:  Correct, Your Honor.
18           MR. BRAFMAN:  Your Honor, unfortunately, even if
19   it's totally unrelated, there's nothing like an indictment to
20   affect the shares of a stock, even if the stock otherwise has
21   significant value.
22           I don't believe that there will ever be an issue
23   here with respect to bail.  If the government calls us with
24   concern, we will meet with them.  In the first instance, if we
25   can't resolve it among ourselves, we will certainly come to

```
 1   the Court to explain why either we don't think additional bail
 2   is required or whether if it is, we will file additional bond.
 3           I also want to --
 4           THE COURT:  It's not an issue of additional.  It's
 5   an issue of meeting the bond amount.
 6           MR. BRAFMAN:  I understand, Your Honor.
 7           THE COURT:  Right.  No one is asking for more.
 8           MR. BRAFMAN:  I understand.
 9           THE COURT:  They're just asking it to be secured in
10   the amount of five million dollars.
11           MR. BRAFMAN:  I meant additional collateral, if
12   necessary.
13           THE COURT:  Okay.
14           MR. BRAFMAN:  But we'll address it with the
15   government and if it presents and issue, we'll come to you.
16           I just want to also reflect that we will know this
17   afternoon whether Mr. Shkreli is required to appear in
18   D.C. tomorrow.  He is going to have to change his itinerary
19   printout previously provided to Pretrial.  We will do that.
20   They will be notified.
21           I don't want to put it on the public record,
22   obviously, but we're going to be going with him if he's going,
23   and we'll be coming back with him, and pursuant to the Court's
24   instruction, we will give Pretrial the full itinerary once we
25   know how we're going and what time.
```

LISA SCHMID, CCR, RMR

```
 1              THE COURT:  All right.  Thank you.
 2              MR. BRAFMAN:  Thank you very much.
 3              THE COURT:  Is there anything else I should address?
 4              MR. BRAFMAN:  Not by us, Your Honor.
 5              THE COURT:  All right.  I'll see you May 3rd.
 6         Do we have a time, Ms. Jackson?
 7              THE CLERK:  10 a. m.
 8              THE COURT:  Ten o'clock.
 9              MR. BRAFMAN:  Thank you very much, Your Honor.
10              MR. PAES:  Thank you, Judge.
11              MS. SMITH:  Thank you, Judge.
12              THE COURT:  Thank you.  Have a nice day.
13         (Proceedings concluded.)
```