1

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NEW YORK

```
UNITED STATES OF AMERICA,        ) Criminal
                                 ) No. 15-637 (KAM)
              Government,        )
                                 ) STATUS CONFERENCE
  vs.                            )
                                 ) Brooklyn, New York
  (1) MARTIN SHKRELI and         ) Date: May 3, 2016
  (2) EVAN GREEBEL,              ) Time: 10:00 a.m.
                                 )
              Defendants.        )
```

TRANSCRIPT OF STATUS CONFERENCE
HELD BEFORE
THE HONORABLE JUDGE KIYO A. MATSUMOTO
UNITED STATES DISTRICT JUDGE

A P P E A R A N C E S

For the Government:    Winston Paes, AUSA
                       Alixandra Smith, AUSA
                       Jacquelyn Kasulis, AUSA

For Defendant (1):     Benjamin Brafman, Esq.
                       Marc Agnifilo, Esq.
                       Andrea Zellan, Esq.

For Defendant (2):     Reed Brodsky, Esq.
                       Joel M. Cohen, Esq.
                       Lisa H. Rubin, Esq.
                       Winston Chan, Esq.

Also Present:
Christopher Delzotto, FBI Special Agent
Michael Braconi, FBI Special Agent


Proceedings reported by machine shorthand, transcript produced by computer-aided transcription.

Court Reporter:        Annette M. Montalvo, CSR, RDR, CRR
                       Official Court Reporter
                       United States Courthouse, Room N330
                       225 Cadman Plaza East
                       Brooklyn, New York  11201
                       718-804-2711

1   (WHEREUPON, commencing at 9:58 a.m., the following
2   proceedings were had in open court, to wit:)
3       THE COURTROOM DEPUTY:  Criminal status conference,
4   15-CR-637.  *USA v. Martin Shkreli and Evan Greebel.*
5       Will counsel on behalf of the government state your
6   appearances, please.
7       MR. PAES:  Winston Paes for the government.  I will
8   be joined by AUSAs Jackie Kasulis and Alixandra Smith.  Also,
9   at the government's table I have FBI special agents Chris
10  Delzotto and Michael Braconi.  Good morning, Your Honor.
11      THE COURT:  Good morning and welcome.
12      THE COURTROOM DEPUTY:  On behalf of the defendants?
13      MR. BRAFMAN:  Your Honor, for Martin Shkreli,
14  Benjamin Brafman, Marc Agnifilo, and Andrea Zellan.  Good
15  morning, Your Honor.
16      THE COURT:  Good morning.
17      MR. COHEN:  Joel Cohen, and I'm with my colleagues
18  Reed Brodsky, Winston Chan, and Lisa Rubin from Gibson Dunn,
19  Your Honor.
20      THE COURT:  Good morning.  Welcome back to the
21  Eastern District, Mr. Chan.  We signed your application.
22      MR. CHAN:  Thank you, Your Honor.
23      THE COURT:  It is a reunion on the defense side of
24  the table.
25      All right.  So I understand that the government has

1  been producing discovery to defense.  And, Mr. Brafman, thank
2  you for your letter informing me that you do not intend to
3  move to revisit Judge Weinstein's prior order.  I would like
4  to find out where the parties stand and want everybody to set
5  a trial date.
6           MR. BRAFMAN:  Your Honor, if I may, I appreciate --
7  I did tell the Court I would write the letter.  I am sorry for
8  the lateness --
9           THE COURT:  It is all right.
10          MR. BRAFMAN:  -- of its arrival, but I wanted to see
11 as much of the discovery as I possibly could.
12          We are in the midst of reviewing voluminous
13 discovery, and we are supposed to be getting a third tranche I
14 think either today or we have gotten it but haven't had a
15 chance to review it.  And we are talking about millions of
16 documents, to be perfectly candid, or close to that, by our
17 count, depending on how you count the pages.
18          We are in discussions with the government.  I don't
19 think we are going to have an agreement on a trial date
20 between government and defense counsel and between defense
21 counsel.  So we may want to revisit that.  I know Mr. Paes
22 wants to address Your Honor about that, but this is a
23 complicated proposition.  I have also been told that the
24 latest batch is not millions of additional documents, the
25 total overall discovery that we received to date.  And we've

4

1  also been informed this morning that there may be a
2  superseding indictment in the offering, although we are
3  advised that it is not going to substantially change the
4  indictment.  It is hard to tell on our side until we actually
5  see the documents.
6              THE COURT:  Yes, sir.
7              MR. BRODSKY:  If I may, Your Honor.  We have been in
8  the case, Your Honor, just under three months, making our
9  appearance in February.  At the time we filed our motion for a
10 limited stay and opposed the government's total stay of the
11 case, there were approximately 430,000 or so pages of
12 documents produced to us.  But since that briefing was fully
13 briefed, there's been a monumental change in the volume of
14 documents, which really puts us in a very difficult position.
15 On or about March 16, we received nearly 2.4 million pages of
16 documents.  That's about 40 gigabytes of information coming
17 from about 55 sources.
18             We spoke -- we have been meeting with the
19 government.  We met with the government, for example, on April
20 13.  We spoke to them again last Thursday.  They have been
21 telling us they are weighing whether or not to have a
22 superseder.  They told us this morning that they are going to
23 supersede, they are not going to add individuals, but they are
24 going to in a month or so, they told us two potential topics
25 to add.  I won't say it on the open record what those topics

1  are, but I can tell you, Your Honor, that those potential
2  topics are not -- they are much more expansive, much beyond
3  what was charged in Count 7.  Count 7 relates to seven
4  settlement agreements and four consulting agreements.  This is
5  a much, much more expansive possibility with respect to a
6  superseder.  I don't know if they are committing to supersede
7  or not, because for the last several months they said they are
8  weighing, and they haven't made a determination.  I would say,
9  Your Honor, that during the meeting, we have been asking them
10 to assist us in narrowing our review.  We have been asking
11 them for their assistance in identifying, for Count 7, where
12 the documents are.  They have declined, respectfully declined
13 to do that, and we understand that they don't have any
14 intention of doing that.
15         They did tell us that they are in possession -- on
16 April 13 they told us they are in possession of a Marcum
17 computer, which they told us it contains an unknown volume of
18 work papers relating to Retrophin.  It is our view that that
19 may contain hundreds of thousands to millions of pages of
20 documents, and we have offered to provide a computer or to
21 assist them in getting us that additional discovery.
22         We are concerned because the government doesn't know
23 the volume of the work papers from Marcum.  And I would say,
24 Your Honor, that I am happy to address, you know, the issue on
25 the trial date, but we would respectfully ask, Your Honor,

1  given that we have been in the case for less than three
2  months, and there's a lot -- there's a huge volume that --
3  apparently, an expansive indictment coming.
4              We would ask to put it on for a date in two or three
5  months, come back, Your Honor, and we can tell you exactly,
6  set a motion schedule and set a trial date at that time.
7              THE COURT:  All right.  Yes, Mr. Paes?
8              MR. PAES:  Your Honor, a couple of things.  First,
9  with respect to discovery, the defense has pretty much all the
10 discovery that we currently have in our possession, which we
11 believe represents the vast amount of discovery we will see in
12 this case.  Obviously, if anything else comes in pursuant to
13 Rule 16, we would be turning that over as well.
14             I just want to put the discovery in context, because
15 we have heard, you know, millions of documents, millions of
16 pages.  As a whole, the discovery that has been so far turned
17 over to defense is 70 gigabytes of data.
18             THE COURT:  Which doesn't make any -- I can't
19 envision or --
20             MR. PAES:  I will just put it in perspective,
21 Your Honor.  So in other white collar cases in this District
22 that we have currently pending, we have turned over discovery
23 along the lines of six to seven terabytes and two to three
24 terabytes.  1,000 gigabytes make up one terabyte.  So just to
25 show you in comparison, when it comes to white collar cases,

7

1 the amount of discovery in this case is not a whole lot at
2 all.
3          It is relatively a limited set of discovery that we
4 have.  And in terms of, you know, setting a trial date, when
5 the stay motions were filed, defense made a big deal about the
6 criminal case slowing down their ability and all of the impact
7 this was having on, you know, the lives of the defendants and
8 things that they could be doing and defending themselves --
9          THE COURT:  Of course.  That was the reason why I
10 looked for a trial date.  I read the -- and I appreciate the
11 impact this is having on the defendants, as they wait their
12 day in court.  And I thought -- my impression was that the
13 defense was raring to go with the trial, so I did find a date,
14 I put aside a month and a half.  I hope that's enough time.
15 But I respect that you are not ready.  That's fine.  So we
16 will talk about a date.  I am not pushing you to go before you
17 are ready.
18          MR. BRODSKY:  Respectfully, Your Honor -- and I
19 don't want to revisit -- I completely respect Your Honor's
20 decision and I don't mean to revisit it.
21          We were hoping -- because we knew -- at the time we
22 were informed of 30,000 pages, not 7 million pages.  We knew
23 that the criminal case, the understanding of the facts and
24 investigating it and understanding it would take a long time.
25 We thought it would take a long time, and we knew that was

8

paramount and most important.  That's why we were hoping to have a limited stay on the SEC matter.  But given that the SEC matter is completely stayed, we always planned on the criminal matter being first and foremost.  It is just highly complex, as Mr. Paes has acknowledged at the conference earlier, the first conference where we weren't there, it's a complex case.  And, respectfully, although other cases may be terabytes, which, for example, they are talking about the FIFA case, which might be terabytes --

MR. PAES:  I am not talking about the FIFA case, Your Honor.

MR. BRODSKY:  I also was a federal prosecutor for a period of time, and by comparison to the cases I tried, white collar cases, this volume is extraordinary, by my comparison.

MR. BRAFMAN:  Your Honor, most respectfully, as the person who at the last status conference I think verbally urged a quick trial, I just want to suggest, most respectfully, that a lot had to do with the stay issued that was pending at the time.  And the impact that this case has on the defendant is indeed difficult when you are in this position.  Having said that, I would rather proceed to defend this criminal case when we are fully prepared than after Your Honor has resolved all motions rather than rush.  And as one who does not fully understand the difference between a terabyte and a gigabyte, all I know is I have millions of

1  pages of materials that I need to digest before we begin.  So
2  I am not looking to unduly delay the process, and that's not
3  anything I have ever done in any case I have practiced in.  I
4  am looking forward to trying this case, but I want to do it
5  when we are ready.
6          There are also issues, as I outlined, I think, the
7  last time, that may resolve a question of whether this can and
8  should be a joint trial.  So we have several important
9  motions, I think, that have to be resolved.
10          THE COURT:  You must all be relieved I granted the
11 stay because with this volume of documents to review for the
12 criminal case, I think you are grateful that you don't have to
13 proceed on a parallel track and try to litigate both in the
14 civil and criminal arena.
15          MR. BRAFMAN:  I agree, but it is usually a tradeoff
16 because there are certain discovery that would have been
17 available to us in the SEC matter.  But on balance, Judge, I
18 accept the Court's ruling on stay.
19          MR. COHEN:  And, Your Honor, as to the point of the
20 discovery, just so it is clear, because when I was considering
21 all of these factors, the great bulk of the discovery the
22 government has given us, you can characterize it and make it
23 sound like it is smaller than other cases or bigger than other
24 cases.  It's a lot of material.  Perhaps more pertinent, about
25 five times -- five-sixths of it has come to us in the recent

1  months.  In other words, since the last appearance.  And
2  that's totally changed the dimension of what anyone could
3  anticipate.
4          In addition, Mr. Paes was kind enough to tell us
5  this morning about their plans, at least in general terms,
6  about superseding.  We understand that we might be facing
7  additional transactions that we have never faced before under
8  indictment.  Literally finding that out this morning for the
9  first time.  And while they might be covered in the documents,
10 the three million documents that Mr. Paes has given us,
11 obviously, we don't have any notice, even at this moment, what
12 those charge.  So it is as if we are told that will come in
13 the next month or so, so that's a long way off.
14         THE COURT:  Let's all agree --
15         MR. PAES:  I just want to address a couple of
16 things, Your Honor, just to correct the record, because I
17 think --
18         THE COURT:  We are not going to set a trial date
19 before the defense is ready.
20         MR. PAES:  I understand that.  I just want to say,
21 one, that the government, in terms of -- we have had this
22 discussion with both defense counsel.  In terms of a trial
23 date, given what's the representation that they had made in
24 their papers and the Court's order, we want to say, the
25 government is ready to go to trial in September.  I have

1  learned from at least both defense counsel that that was not
2  going to be feasible for them.  I know that I talked to
3  Mr. Brafman and his team, and we agreed and at least thought
4  that a January trial date would work for everyone.  I haven't
5  agreed with that with counsel for Mr. Greebel.
6          But I do want to just correct the record on a couple
7  of things.  One, with respect to the superseding indictment,
8  which has been characterized as expansive and overbroad and
9  all of that kind of stuff, which even though it hasn't been
10 yet issued, we made it very clear to the defense that any
11 superseding indictment right now is not going to add any
12 individuals so it shouldn't change for the vast part any kind
13 of motion practice in terms of the motions we would expect.
14 They have essentially all of the discovery.
15         This laptop that we are talking about doesn't
16 contain millions of documents, as was suggested.  It just
17 contains information that, unfortunately, is from Marcum,
18 based on proprietary information that needs to be produced in
19 that format, and, hence, that's why the delay in turning that
20 over.
21         And with respect to these new allegations, this is
22 not the first time this morning that I reference those to, you
23 know, defense counsel for Mr. Greebel.  We have had
24 discussions as to what they would be and potential scope of
25 those things.  What I did today was inform them, one, that we

1  would not be adding new defendants to this indictment.  And
2  what I did inform them is that to the extent there's a
3  superseding indictment, one, we would make the decision in a
4  month, in less than a month, and, two, that the additional
5  items that would be -- and I think this is out there, so I
6  don't feel compelled to kind of just not put that out there,
7  just so the Court has a sense of the scope of it, would be
8  additional ways in which the government would allege that
9  Mr. Shkreli and Greebel defrauded Retrophin.  So it's part of
10 the Retrophin scheme.  We have already talked about settlement
11 agreements, we've talked about consulting agreements, and
12 we've also talked about the way in which the cap table was
13 manipulated to kind of create an interest for the MSMB
14 entities that did not exist before.
15         What we would add to that scheme would be,
16 basically, you know, somewhat of a securities fraud angle to
17 it, involving what's referred to as the Fearnow shares.  And I
18 won't go into detail, but I think both parties know what that
19 means, and we have discussed that with them.  And a second
20 thing will have to do in connection with the February 2013
21 PIPE.  And those are the two areas that we would consider in
22 terms of adding to a superseding indictment.
23         So I would fully characterize that as being an
24 expansive, complete, new indictment with new allegations.  In
25 fact, any discovery pertaining to those two little slivers of

1  allegations have already been turned over.
2          So I just want to put this in context as to what it
3  is.  Based on all of that, I think we would ask the Court to
4  set a motion schedule in light of what we have, and to set a
5  trial date just so that we have something to shoot forward to,
6  something to look at, and base everything off of that trial
7  date, so that everyone has a sense and can work towards
8  that -- everybody has an interest to a speedy trial, including
9  the government, and that's what we'd ask.
10          THE COURT:  What about the defense request that we
11  come back in a month or two after they have had time to digest
12  the terabytes and gigabytes that they are looking at, and they
13  will have a better sense of when they will be ready?  I had
14  actually set aside October into early November, but that
15  doesn't sound realistic.
16          So January is a date that Mr. Brafman and the
17  government have discussed, and Mr. Greebel doesn't seem to be
18  prepared to go forward at that time.  So it sounds as if we
19  are looking at, what, February, April, something like that?
20  Can we just have an aspirational date where we are going to
21  shoot for a time where the parties would try to be ready?
22          MR. BRAFMAN:  Can I make a suggestion?  Excuse me.
23          Can I make a suggestion?  We are hearing a
24  description of an indictment which none of us have seen.
25          THE COURT:  Right.  Understood.

1    MR. BRAFMAN: I think it makes perfect sense for
2 there to be an adjournment after the indictment has been
3 issued, we have had a chance to look at it, the final
4 discovery has been produced. We come back in, and we talk
5 realistically about a motion schedule, and then we see if we
6 can agree on a trial date. And to do a motion schedule now
7 for an indictment that we have not yet even seen seems, to me,
8 it is trying to waste a lot of the Court's time and a lot of
9 our time.
10    So we talked this morning among defense counsel, and
11 they suggested a conference date, and I think it would make
12 sense, if Mr. Paes would just simply advise the Court as to
13 when we could expect the superseding indictment, and then pick
14 a date perhaps four weeks after that, so we can have an
15 intelligent discussion as to a motion schedule.
16    MR. PAES: Your Honor, what I would suggest is we
17 set a trial date -- I mean, not a trial date, a status
18 conference date a month from now, because by then, one, we
19 will have superseded if we are going to by then, and, two,
20 they would have to be arraigned on the superseding indictment
21 regardless. So I think we set that a month from now so we can
22 deal with that issue. At that point, we can tell the Court
23 one way or the other if there's going to be a superseding
24 indictment or not. And they can be arraigned on it, and then
25 the Court can set a motion schedule based on that. Discovery

1  will have been completed to whatever extent we have it at that
2  time as well.  They will have the Marcum laptop well in
3  advance of that as well.
4              THE COURT:  Well, I think that if you are suggesting
5  a month from now, that would be the date by which a
6  superseding indictment will be issued, or you will inform
7  everybody that there will not be one.  That will be a status,
8  and then from there, hopefully, we can move forward.
9              MR. PAES:  Yes, Your Honor.
10             MR. BRAFMAN:  Your Honor, if the indictment is going
11 to be issued, and I think having a status conference on the
12 day or two after it issues is going to give us very little
13 time --
14             THE COURT:  I want to arraign your clients,
15 obviously.
16             MR. BRAFMAN:  Excuse me?
17             THE COURT:  If a superseding indictment is issued, I
18 am going to arraign the defendants.
19             MR. BRAFMAN:  I understand that.
20             THE COURT:  So at that point, I understand you want
21 four weeks after to digest it and see how that, you know,
22 factors into your review so far of the documents.  But if
23 there will be a superseding indictment before the 30 days, we
24 will do the arraignment, otherwise, we will come back here in
25 30 days.  If the indictment issues on that 30th day, I will

1  arraign the defendants, and then we will set another date four
2  weeks from that time so that you can digest those new charges.
3  Does that make sense?
4             MR. BRAFMAN:  That's fine.
5             MR. PAES:  That's fine.
6             THE COURT:  The outside date is 30 days from now.
7             MR. PAES:  Yes.
8             THE COURT:  All right.  So, counsel, when would you
9  like to come back?  We have -- today is May 3, and --
10            MR. BRAFMAN:  Your Honor, is it possible to do June
11 6?  That's the following Monday.  I can do the 3rd, if you
12 require, but it is going to --
13            THE COURT:  No, I am not going to be rigid about it.
14      I am going to be in the middle of a six-week trial,
15 but we can do it during lunch break at 12:45 on June 6.
16            MR. PAES:  I think as well, Your Honor, I think me
17 and Ms. Kasulis may be on trial as well, so during lunch break
18 would be ideal.
19            THE COURT:  It is just an arraignment or a status.
20 All right.  June 6, 12:45.
21            MR. PAES:  Thank you.
22            THE COURT:  Thank you.  I will see you then.  Is
23 there anything else I should address?
24            Have you all excluded time?  We agreed to exclude
25 time?  I think we should probably just formally do that until

1 at least June 6, all right?
2          MR. BRODSKY: No objection.
3          THE COURT: If the parties want that.
4          MR. BRAFMAN: That's fine, Judge. Thank you.
5          THE COURT: And the reason, for the record, is that
6 the parties are continuing to produce and review complex
7 discovery.
8          I want to make sure, Mr. Shkreli and Mr. Greebel,
9 you understand your rights under the Speedy Trial Act, and
10 that you join in the application to exclude time up through
11 June 6.
12          Mr. Greebel, sir?
13          DEFENDANT GREEBEL: Yes, Your Honor.
14          THE COURT: Mr. Shkreli?
15          DEFENDANT SHKRELI: Yes, Your Honor.
16          THE COURT: All right. Fine.
17          MR. BRAFMAN: Thank you, Judge.
18          THE COURT: Thank you.
19          (WHEREUPON, at 10:18 a.m., the proceedings were
20 concluded.)
21
22
23
24
25

18

1  UNITED STATES DISTRICT COURT   )
                                  )  ss.
2  EASTERN DISTRICT OF NEW YORK   )

3

4

5              **REPORTER'S CERTIFICATE**

6

7

8          I, ANNETTE M. MONTALVO, do hereby certify that the

9  above and foregoing, consisting of the preceding 17 pages,

10 constitutes a true and accurate transcript of my stenographic

11 notes and is a full, true and complete transcript of the

12 proceedings to the best of my ability.

13         Dated this 4th day of May, 2016.

14

15                         _____/s/Annette M. Montalvo_____
                           Annette M. Montalvo, CSR, RDR, CRR
16                         Official Court Reporter
                           United States Courthouse
17                         225 Cadman Plaza East
                           Room N330
18                         Brooklyn, New York  11201
                           718-804-2711
19

20

21

22

23

24

25