```
 1   UNITED STATES DISTRICT COURT
     EASTERN DISTRICT OF NEW YORK
 2   --------------------------------x
                                              15-CR-637 (KAM)
 3   UNITED STATES OF AMERICA,
                                              United States Courthouse
 4           Plaintiff,                       Brooklyn, New York

 5           -against-                        June 6, 2016
                                              12:45 p.m.
 6   MARTIN SHKRELI and EVAN GREEBEL,

 7           Defendants.

 8   --------------------------------x

 9                TRANSCRIPT OF CRIMINAL CAUSE FOR
                         STATUS CONFERENCE
10           BEFORE THE HONORABLE KIYO A. MATSUMOTO
                    UNITED STATES DISTRICT JUDGE
11
     APPEARANCES
12   For the Government:        ROBERT L. CAPERS, ESQ.
                                United States Attorney
13                              Eastern District of New York
                                271 Cadman Plaza East
14                              Brooklyn, New York 11201
                                BY:  WINSTON M. PAES, AUSA
15                                   ALIXANDRA E. SMITH, AUSA
                                     JACQUELYN KASULIS, AUSA
16
     For Defendant Shkreli:     BRAFMAN & ASSOCIATES, P.C.
17                              BY:  BENJAMIN BRAFMAN, ESQ.
                                     MARC AGNIFILO, ESQ.
18                                   ANDREA ZELLAN, ESQ.

19   For Defendant Greebel:     GIBSON DUNN & CRUTCHER, LLP
                                BY:  JOEL M. COHEN, ESQ.
20                                   LISA H. RUBIN, ESQ.
                                     REED BRODSKY, ESQ.
21
     Court Reporter:            Georgette K. Betts, RPR, CSR, OCR
22                              Phone:  (718)804-2777
                                Fax:    (718)804-2795
23                              Email:  Georgetteb25@gmail.com

24   Proceedings recorded by mechanical stenography.  Transcript
     produced by computer-aided transcription.
25
```

1          THE COURT:  Good afternoon, everybody.  Have a seat.

2          THE COURTROOM DEPUTY:  This is criminal cause for

3   the arraignment on a superceding indictment and status

4   conference in 15-CR-637 U.S.A. versus Shkreli, et al.

5          Will counsel on behalf of Martin Shkreli state your

6   appearance, please.

7          MR. BRAFMAN:  Benjamin Brafman, Marc Agnifilo and

8   Andrea Zellan for Mr. Shkreli, who is present in the

9   courtroom.  Good afternoon, Your Honor.

10          THE COURT:  Good afternoon.

11          THE COURTROOM DEPUTY:  Counsel for Evan Greebel.

12          MR. COHEN:  Good afternoon, Your Honor.  Joel Cohen

13   on behalf of Mr. Greebel with Lisa Rubin and my colleague,

14   Reed Brodsky.  Mr. Greebel is here.

15          THE COURT:  Good afternoon.

16          THE COURTROOM DEPUTY:  Begin with the government,

17   please state your appearance.

18          MR. PAES:  Winston Paes, Jacquelyn Kasulis,

19   Alixandra Smith for the government.  Good afternoon, Your

20   Honor.  Also seated at the government's table our paralegal

21   Amelia Clark and intern Amanda First.

22          THE COURT:  All right.  And you are joined by the

23   FBI?

24          MR. PAES:  Yes, and joined by the FBI, special agent

25   Chris Delzotto and Michael Braconi.

1          THE COURT:  All right.  Thank you.  Good afternoon.

2          Mr. Shkreli and Mr. Greebel, as you may know, a

3     grand jury has returned a superceding indictment charging

4     Mr. Shkreli with additional -- and Mr. Greebel with additional

5     charges.  And I'm happy to review those charges with you.

6          Let me first ask you gentlemen whether you've had

7     the opportunity to review the superceding indictment with your

8     counsel.  Mr. Shkreli?

9          DEFENDANT SHKRELI:  Yes, Your Honor.

10          THE COURT:  Thank you.  And Mr. Greebel?

11          DEFENDANT GREEBEL:  Yes, Your Honor.

12          THE COURT:  I'm going to go ahead and just review

13     those charges briefly.  You may have a seat if you would like.

14          Count One charges Mr. Shkreli with conspiracy to

15     commit securities fraud with regard to the MSMB Capital

16     scheme, which is described in the indictment.

17          Count Two charges Mr. Shkreli with conspiracy to

18     commit wire fraud in relation to the MSMB Capital scheme.

19          Count Three charges Mr. Shkreli with securities

20     fraud in connection with the MSMB Capital scheme.

21          Count Four charges Mr. Shkreli with conspiracy to

22     commit securities fraud in regard to the MSMB Healthcare fraud

23     scheme -- healthcare scheme, excuse me.

24          Count Five charges Mr. Shkreli with conspiracy to

25     commit wire fraud in connection with the MSMB Healthcare

1   scheme.

2   Count Six charges Mr. Shkreli with securities fraud

3   in connection with the MSMB Healthcare scheme, and Count Seven

4   charges Mr. Shkreli and Mr. Greebel with conspiracy to commit

5   wire fraud with regard to the Retrophin scheme.

6   And Count Eight charges Mr. Shkreli and Mr. Greebel

7   with conspiracy to commit securities fraud with regard to the

8   Retrophin unrestricted securities scheme.

9   In addition, the government seeks forfeiture on

10  Counts One through Eight with regard to any assets that are

11  proceeds or were used to facilitate such conduct.

12  Now, Mr. Shkreli, have you had the opportunity to

13  discuss the charges with your attorney Mr. Brafman?

14  DEFENDANT SHKRELI:  Yes, Your Honor.

15  THE COURT:  Do you wish to enter a plea of guilty or

16  not guilty on those charges, sir?

17  DEFENDANT SHKRELI:  Not guilty.

18  THE COURT:  We will do so on behalf of Mr. Shkreli.

19  Mr. Greebel, sir, did you have an opportunity to

20  discuss the charges with your attorney?

21  DEFENDANT GREEBEL:  Yes, Your Honor.

22  THE COURT:  And would you like to enter a plea of

23  guilty or not guilty to Counts Seven and Eight of the

24  indictment?

25  DEFENDANT GREEBEL:  Not guilty.

1          THE COURT:  All right.  We will do so on your

2    behalf, sir.

3          Now, as you know, you have the right to counsel and

4    the right to confer throughout these proceedings --

5    Mr. Brafman, you look like you wanted to say something.

6          MR. BRAFMAN:  I just -- when Your Honor is ready, I

7    have a scheduling question.

8          THE COURT:  Certainly.

9          MR. BRAFMAN:  May I do that now?

10          THE COURT:  Yes.

11          MR. BRAFMAN:  Your Honor, we received this

12    indictment on Friday evening, by my computer it's

13    approximately 4:23 p.m.  And the last time we were here -- and

14    I want -- this is Your Honor's recommendation based on the

15    colloquy with me and I'm quoting from the transcript of

16    May 3rd, 2016.  I think what we were talking about was trying

17    to discuss motions and trying to discuss a potential trial

18    date.  And what Your Honor ultimately concluded at page 15,

19    and I want to read from the record, it's very short:

20          "The Court:  So at that point I understand you want

21    four weeks after to digest it," referring to the indictment,

22    "and see how that, you know, factors into your review so far

23    of the documents.  But if there will be a superceding

24    indictment before the 30 days we will do the arraignment,

25    otherwise, we will back here in 30 days.  If the indictment

1   issues on that 30th day, I will arraign the defendants and

2   then we will set another date four weeks from that time so

3   that you can digest those new charges."

4          I answered "that's fine" and Mr. Paes said "that's

5   fine."

6          I don't know that we hit 30 days but we certainly

7   got to the eve of 30 days and it was on the eve of the 30th

8   day, a weekend.

9          We've talked among counsel trying to, very briefly,

10  figure out what the additional documents will be, what the

11  motions will be.  This new count does impact in at least one

12  of the motions we're thinking about, so we would ask Your

13  Honor rather than discuss a motion schedule today and rather

14  than set what might be an artificial trial date, that we do as

15  we had agreed to last time we were here, and having arraigned

16  the defendants, adjourn for approximately four weeks so that

17  counsel on this side can, among us, discuss the new charges,

18  how it impacts on our schedule and also how it impacts on

19  motions and whether they're going to be joint motions or

20  individual motions.

21         So that would be my request, that we stick to the

22  plan that apparently Mr. Paes, the Court and counsel agreed

23  to.

24         THE COURT:  All right.  So, Mr. Cohen, did you want

25  to be heard?  Are you in agreement with Mr. Brafman?

1          MR. COHEN:  I'll have Ms. Rubin answer.

2          THE COURT:  All right.  Thank you.

3          MS. RUBIN:  Your Honor, we agree with Mr. Brafman as

4    to the request that he made of the Court.  If Your Honor would

5    allow, I'd be happy to let Mr. Paes speak first and then

6    address any remaining issues that we have on Mr. Greebel's

7    behalf.

8          THE COURT:  All right.  Thank you.  Mr. Paes.

9          MR. PAES:  Your Honor, at the last status conference

10   we had discussed, as Your Honor is aware and the defendants

11   are both aware, the new count that has been added, Count

12   Eight.  It's one count, it involves both defendants.  And the

13   conduct that is alleged in the count was one that I mentioned,

14   obviously, at the last status conference so it's no surprise

15   as to what the conduct was.  It also is no surprise, because

16   that conduct was alleged in the affidavit that was submitted

17   to Judge Weinstein and the defendants aware of that and even

18   going prior to that, that's the conduct that was also alleged

19   in the Retrophin civil complaint.

20         So in terms of what the conduct is, you know,

21   there's no new conduct, new surprise, new charges -- there's a

22   new charge but there is no new evidence either because in

23   terms of discovery -- and I know Mr. Brafman mentioned new

24   documents.  There are no new documents we currently possess

25   that we haven't already turned over with one exception, that

1    being, you know, the Marcum laptops, so to speak.  There is

2    some discovery that is on a laptop for proprietary reasons,

3    which there's been some back and forth going on between

4    defense counsel and the accounting firm as a means to kind of

5    get that through a stipulation.  But putting that one piece of

6    evidence aside, which very -- in a very small way even touches

7    on the new charge, the discovery, as it pertains to the

8    unrestricted shares, has been turned over.

9            So, it's right, I mean we could come back here in

10   four weeks and go over this again, but I think what I was

11   proposing -- and I've discussed this with counsel -- is rather

12   than do that, as much as we, I'm sure, all like to see each

13   other, why not set a motion schedule that allows the

14   defendants plenty of time to obviously consider that, make the

15   motions that they want to make and then we'd also ask,

16   especially in light of the schedules of the defense lawyers

17   who are very busy, and I know they have a lot of trials

18   already scheduled on their calendar, I think it's prudent to

19   set a trial date just so we have that in place so that

20   everybody can make sure that's being held as a trial date for

21   all lawyers that they can make that date as opposed to, you

22   know, we now get together maybe two months from now and then

23   everybody says, well, my schedule now is blocked up for the

24   next year.

25            MR. BRAFMAN:  Your Honor --

1          MR. PAES:  That's the only thing I would ask is,

2    one, with respect to the discovery there's nothing new, so we

3    should set a motion schedule and, two, with respect to a trial

4    date I don't think it hurts setting a trial date even some

5    time in February, which gives everyone plenty of time to

6    prepare.

7          MR. BRAFMAN:  Your Honor, the government -- and I

8    never fully understood how they do this, but the government

9    elected to file this indictment Friday night knowing that we

10   had this status conference on Monday and knowing what Your

11   Honor's concerns were as reflected in the transcript.  If

12   there's nothing new they could have superseded three weeks ago

13   and we would be having a much different conversation.  But

14   having elected to file on a Friday night knowing that we're

15   going to be here on a Monday, I think it's somewhat unfair to

16   suggest that there's nothing new.

17          What is new, is a new count that effects, clearly,

18   Mr. Greebel, but also Mr. Shkreli.  And to the extent one of

19   the subjects we have previously discussed is our concern that

20   it may require a severance because of a reliance of counsel

21   defense that we previously raised as a potential issue, this

22   new count impacts that substantially and we need time among

23   ourselves to discuss it, to see whether that's a defense we're

24   going to raise and if it requires a severance.

25          So I think setting a motion schedule now will be of

1    no value if we can do it four weeks from now.  And they chose

2    the date for the new indictment, so I don't think we can be

3    faulted in asking for what we had previously agreed to and,

4    that is, four weeks from the new arraignment to at least

5    digest the new indictment.

6         I'm happy he's saying there's nothing new, but we're

7    talking about millions of documents.

8         MR. PAES:  It's not --

9         THE COURT:  Well, let me --

10        MS. RUBIN:  Your Honor --

11        MR. PAES:  It's not million of documents.  I just

12   need to make that clear.  I think it was millions of pages,

13   which I think were not even that much compared to most white

14   collar cases.  But I know the word "documents" and "pages" are

15   being used interchangeably, it makes a big difference as to --

16   you know, the difference between those two.

17        I don't think the discovery -- like I said, they

18   already had the discovery.  With respect to the new

19   indictment, there are four new paragraphs and one count added

20   to it.  And all I'm saying is they should have the time they

21   want, I'm not suggesting they don't have the time, the

22   question is whether it makes sense to come back again just to

23   set another -- you know, a month out, so to speak.  Let them

24   have two months, Your Honor, from today to file their motions.

25   I think we get to the same point as opposed to coming back

1    here again for another month just to set a schedule.

2                THE COURT:  Yes.

3                MS. RUBIN:  Your Honor, if I could be heard?

4                THE COURT:  Yes, of course.

5                MS. RUBIN:  Your Honor, I'd like to address some of

6    the things Mr. Paes said with respect to the schedule because,

7    as we said initially, we don't believe it's appropriate to set

8    either a motion schedule or a trial date today and, Your

9    Honor, I would like to elaborate as to why.

10               This superceding indictment completely changes the

11   tenor of the case as to Mr. Greebel.  Your Honor, the only

12   count against Mr. Greebel prior to today was a count of

13   conspiracy to commit wire fraud.  Mr. Greebel has now been

14   charged with a count of conspiracy to commit securities fraud

15   on an entirely unrelated scheme having to do with the

16   unrestricted shares or what Mr. Paes referred to at the last

17   conference, as the Fearnow shares.  That will certainly change

18   the case in new ways including the motion practice and for

19   that reason alone, Your Honor, we would believe it would be

20   inappropriate to set a trial date or motion schedule now.

21               But if I can go further, Your Honor, Mr. Paes said

22   that there is no new evidence because everything in his

23   possession, barring the Marcum laptop, has been turned over.

24   Your Honor, I believe we may have a little bit of a

25   disagreement there, because while that is technically true,

1    there are a number of outstanding subpoenas that have not yet

2    been returned and none of us can anticipate how that will

3    impact the magnitude of the discovery that's already involved

4    in the case.

5           Mr. Paes is correct, there are millions of pages

6    that have been produced in this case.  To us, that's

7    significant.  In fact, the volume, in our view, is staggering.

8    There are nearly 3 million pages.  On Friday afternoon we

9    received 800 new pages from the Katten Muchin firm.  Your

10   Honor may know that Mr. Greebel was a former partner at Katten

11   Muchin during many of the times and events alleged in the

12   indictment.  We understand from the government that Katten

13   Muchin will be making a further production on that subpoena.

14   The contents and the volume of that production, we cannot

15   know.

16          Your Honor, with respect to the Marcum laptop, we

17   appreciate that the government has continued to engage in

18   conversations with us and with Marcum about the contours of a

19   protective order, and we're not yet there yet.  We're

20   continuing to have productive conversations, but we don't know

21   what's on that laptop, Your Honor.  It's our understanding

22   that they contain final workpapers put into electronic

23   binders.  We were very relieved to understand this week for

24   the first time, according to Marcum's counsel, that all the

25   documents will be able to be transferred over to electronic

1    discovery platforms or other computers, so we would be able to

2    see them in a format that's intelligible to us, but

3    notwithstanding that, Your Honor, we don't know the size of

4    that production, we don't know what's on that laptop.

5            We also understand from Marcum's counsel that they

6    have yet to make yet another production to the government of

7    additional draft workpapers including emails.  They have not

8    made that production to the government yet, according to a

9    call that we had last week.

10           And, Your Honor, beyond those two additional

11   sources, we further understand from the government, which

12   confirmed this to us last week in a phone call preceding this

13   conference, that there are still more outstanding subpoenas.

14   I don't believe even the government can anticipate what the

15   volume will be and what the timing will be on the return of

16   those documents.  And because of that we don't believe we're

17   in a position today to either set a trial date or motion

18   practice.

19           Mr. Brafman referred to a potential severance

20   motion -- I apologize for the feedback.  That potential

21   severance motion will not only be impacted by our digestion of

22   the superceding indictment, but also by our review of the

23   discovery, including that discovery that's still outstanding.

24           So, Your Honor, for those reasons we would ask that

25   you return to the plan that we believe we all agreed to at the

1    May 3rd status conference and that we'll come back here in

2    some period of time when we've had an opportunity to digest

3    the new charges and Mr. Brafman and his team have, and

4    Mr. Shkreli as well, and we can then set some schedules.

5              Thank you, Your Honor.

6              THE COURT:  Mr. Paes, why don't you give me some

7    idea as to when you expect to receive returns on your

8    outstanding subpoenas and the other discovery from the Katten

9    Muchin firm and other sources that you anticipate.

10             MR. PAES:  Your Honor, with respect to Katten,

11   obviously it's an ongoing production, they are going through

12   the materials --

13             THE COURT:  What have they said about the remainder

14   of the documents?

15             MS. SMITH:  Your Honor, part of the problem with the

16   Katten production is that we do not yet know what position

17   Mr. Shkreli is going to take with respect to the advice of

18   counsel defense.  So they are going through emails right now

19   to produce emails that are clearly not privileged because they

20   involved communications with third parties, and that's the way

21   they've decided to do it to be safe that there won't be any

22   violation of the attorney/client privilege.  Depending on what

23   position Mr. Shkreli takes, and when he takes it, there will

24   be additional productions they will need to make.  And we

25   obviously can't -- we won't receive those documents and can't

1    make those productions until after Mr. Shkreli makes a

2    determination about whether or not he's going to proceed with

3    that defense.

4           MR. BRAFMAN:  Excuse me, this sounds almost absurd,

5    most respectfully.  Mr. Shkreli is the client, he should have

6    these documents.  If he's going to make a decision on whether

7    he's going to use an advice of counsel defense, he should have

8    the documents.  They can't withhold them from Mr. Shkreli.  If

9    you want us to get them and then make a decision on whether or

10   not you share them with Mr. Greebel, we can make that

11   decision.  It's his privilege to waive, not the firm's

12   privilege.

13          MR. PAES:  Right, I think this is based on

14   conversations -- obviously, Ms. Smith was talking about

15   conversations we are having with Katten.  If Mr. Shkreli had

16   the right to get those documents, I would believe, way before

17   this case was even filed, so if that's what you guys want to

18   do, I'm sure you're welcome to go and get them from the law

19   firm right now.

20          MR. BRAFMAN:  But, Judge, it seems to me that we're

21   wasting precious resources and time.  If you're having these

22   discussions and they're giving you these documents, just let

23   us have what they're giving you and if you want us to convey

24   to them that we want all the documents, we will.  But we don't

25   need to elect what defense we're going to interpose, because

1    he's entitled to those documents because they are his and he's

2    the client.

3          MR. PAES:  Again, Your Honor, I think we can include

4    Mr. Brafman, if you would like to, but I don't think including

5    him in our conversations with Katten helps the matter.  I

6    think if Mr. Brafman wants to obviously make the request

7    directly to Katten, he should.  He'll get the documents and

8    then he can decide if there are any objections to the

9    documents that he has with respect to the attorney/client

10   privilege.  Obviously, we raised before Judge Weinstein

11   certain categories --

12         THE COURT:  Excuse me, go ahead.

13         MR. PAES:  We raised before Judge Weinstein certain

14   categories of misconduct that we believe was subject to the

15   crime fraud exception.  The work that Mr. Greebel did for

16   Retrophin, MSMB, Mr. Shkreli, obviously is greater than the

17   bucket, so to speak, that we allege.  So what Katten has to do

18   in that process is go through and decide, obviously, which

19   falls within which categories.

20         But I agree with Mr. Brafman, if he wants to move

21   this process forward, which is I think what we've been trying

22   to do, then we have no objections obviously with him getting

23   the documents that his client and he are entitled to receiving

24   and then letting us and the Court know and, more importantly,

25   letting Katten know, that these are ones we don't claim any

1    privileges to, or it's something that we intend to assert

2    reliance on counsel so it's okay to send this to the

3    government.  And obviously, once we receive it we'll produce

4    it in discovery.

5          MR. BRAFMAN:  I'm happy to follow on that suggestion

6    which only enforces our understanding as to why setting a

7    motion schedule before we have those documents in particular

8    doesn't make any sense.

9          So we would again request, respectfully, Your Honor,

10   that we stick to the game plan outlined in the transcript of

11   May 3rd.  We're not looking to delay the process, we're

12   looking to be informed by the process and to the extent that

13   the government has subpoenaed these materials from Katten,

14   that's fine, we will attempt also to get them ourselves, but

15   certainly don't have to elect the reliance of counsel defense

16   until I've seen the universe of documents.

17         THE COURT:  Understood, but, Mr. Paes, you said

18   there were also -- or defense asserts there are also other

19   outstanding grand jury subpoenas.  What I'm trying to get is a

20   sense of when the government expects to get the remaining

21   documents and can give them to the defense so that we will

22   have just a general idea when they will be in a position to

23   decide what, if any, motions they wish to make.

24         MR. PAES:  Sure.  I think aside from the Katten

25   production, which we think is actually substantive, I think

1   the remaining productions that are coming in, Your Honor, to

2   be pretty general about it, are trickling productions that are

3   coming in.  I don't think anything is going to substantively

4   change, you know, the motions that the defense wants to make

5   or would like to make.  Because, look, the reality is Rule 16

6   is going to be continuing as we learn about new witnesses who

7   give us documents, that's just going to happen over the course

8   of time.

9            I think with respect to what the motions are, which

10  is severance, I think both sides know exactly what the issues

11  are, what the charges are, I think that's the main option --

12           THE COURT:  Mr. Paes, you don't need to tell me what

13  motion the defense is planning to make because you don't know,

14  it's up to them.  I want to know when you think the majority

15  of the documents that have been subpoenaed pursuant to your

16  subpoenas is expected so that we will have a sense when

17  defense will be --

18           MR. PAES:  Well, I think the majority has been

19  turned over and I think the main issue of substantive

20  documents that are left is the Katten production.  Anything

21  else, Your Honor, will be very minor and just very minimal in

22  terms of adding to what we already have.

23           THE COURT:  Well, what is the time frame for those?

24           MR. PAES:  Well, the Katten issue depends on what we

25  just discussed --

```
 1                THE COURT:  I'm talking about the other subpoenas.

 2                MR. PAES:  Within a month, Your Honor.

 3                THE COURT:  All right.  So assuming that the Katten

 4     issue, we will put that aside for a moment, but the other

 5     subpoenas are complied with within the next 30 days, if I were

 6     to bring you all back in 30 days there is a possibility that

 7     we will be in the same position we are now because you may not

 8     have everything that you need.  I would like to sort of

 9     project ahead and just ask you to pencil in trial dates and

10     also motion practice dates 60 to 90 days from now for the

11     motions and possibly a trial at the start of the new year, if

12     that's possible --

13                MR. BRAFMAN:  Your Honor --

14                THE COURT:  -- given what the government has

15     represented with regard to production.

16                MR. BRAFMAN:  Your Honor, if we jointly make a

17     commitment to address those issues on the next status

18     conference and not ask for another status conference, would

19     you be agreeable not to set a motion schedule today or a trial

20     date and give us 30 days from today or 35, however it works

21     out, to come back and then with our representation that we

22     will not seek a further status conference, we'd be prepared

23     collectively to give you a motion schedule and a projected

24     trial date.

25                MR. PAES:  That's fine, Your Honor.
```

Georgette K. Betts, RPR, CSR
Official Court Reporter

1        THE COURT:  All right, good.  So I think four weeks

2   from now is July 4th so we can come back that week.

3        MS. RUBIN:  Your Honor, if I may?

4        THE COURT:  Yes, ma'am.

5        MS. RUBIN:  We would propose coming back the week of

6   July 11th.  I know that there are those on our side, so to

7   speak, that have conflicts the week of July 4th.

8        THE COURT:  I have a bench trial but I can squeeze

9   you in on July 11th.  What time would you like to come in?

10        MS. RUBIN:  I'm sorry.

11        THE COURT:  I have a bench trial starting that date

12   but I can squeeze you in.  Would you like to come in in the

13   morning?

14        MS. RUBIN:  If we could come in on the 14th, I know

15   that's a date that works for all defense counsel.

16        THE COURT:  July 14th is fine.

17        MS. RUBIN:  Thank you, Your Honor, we appreciate the

18   courtesy.

19        THE COURT:  What time?

20        MR. BRAFMAN:  Whatever time is convenient for the

21   Court.

22        THE COURT:  You can either come in before 10 or

23   after noon.

24        MR. PAES:  If we can ask for after noon if that's

25   okay.

1              THE COURT:  1:00 o'clock?

2              MS. RUBIN:  That's fine with us, Your Honor.  Thank

3    you.

4              MR. BRAFMAN:  That's fine, Judge.

5              THE COURT:  Is there anything else I should address

6    then?

7              I will expect then to hear, hopefully, a proposed

8    motion schedule and then I have time right now in January,

9    February and April I think for trial, if that's helpful to

10   anybody.  All right.

11             So maybe also work out amongst yourselves a proposed

12   briefing schedule for your motions, that would be helpful as

13   well and give me enough time to decide them before the trial.

14             MR. PAES:  We will, Your Honor.

15             THE COURT:  All right.  Thank you.

16             Is there anything else?

17             MS. RUBIN:  No, Your Honor.

18             MR. BRAFMAN:  No, Your Honor.

19             THE COURT:  Let's talk about -- are we excluding

20   time, Ms. Jackson?

21             THE COURTROOM DEPUTY:  Yes, Judge.

22             MR. BRAFMAN:  Yes, Your Honor.

23             THE COURT:  Let's take a moment to do that.

24             Yes, Mr. Paes.

25             MR. PAES:  Yes, Your Honor, just for the record, the

1  bail conditions continue as they were prior to the superseding

2  indictment.

3          THE COURT:  Yes, of course.

4          MR. BRODSKY:  Your Honor, there is one request we

5  had.  We consulted with Mr. Paes, Ms. Kasulis and Ms. Smith on

6  Friday and the pretrial services Mr. Adams had no objection,

7  neither did the government to expanding Mr. Greebel's travel

8  to New Jersey as well.

9          THE COURT:  Does he have a need to travel there?

10          MR. BRODSKY:  He has family there, Your Honor, and

11  professional reasons.  As you know, he's not working at Kaye

12  Scholer, it would help in terms of potential employment if we

13  expanded it to New Jersey.

14          THE COURT:  All right.  And what do you need to go

15  there on daily basis during the work week?

16          MR. BRODSKY:  We don't know.  It's sort of dependent

17  on what happens in terms of potential employment opportunities

18  or visits to family, so --

19          THE COURT:  All right.

20          MR. BRODSKY:  -- we would ask for the ability for

21  him to generally go.

22          THE COURT:  All right.  I am assuming the government

23  has no objection.

24          MR. PAES:  No objection, Your Honor.

25          THE COURT:  All right.  He will then be allowed to

1     travel to New Jersey as well.

2               MR. BRODSKY:  Thank you, Your Honor.

3               THE COURT:  Just let me be clear, none of the

4     suretors are going to object either; is that correct?  Can you

5     make that representation or have them send in a letter just

6     indicating they don't object.

7               MR. BRODSKY:  Yes, Your Honor, we will -- I can't

8     make it right now, we will send in a letter.

9               THE COURT:  All right, as soon as possible from each

10    of the suretors.  I would like each suretor to indicate that

11    they don't have an objection.

12              MR. BRODSKY:  Very well, Your Honor.

13              THE COURT:  Yes, Mr. Brafman.

14              MR. BRAFMAN:  No nothing, Your Honor.

15              THE COURT:  So what we have then are applications to

16    exclude time executed by the defendants, their counsel and the

17    government up through and including July 14th.  So I will see

18    you again on that date at 1:00 o'clock and I believe the ends

19    of justice will be served by excluding time.

20              Thank you.  Is there anything else?

21              MR. BRAFMAN:  Nothing, Your Honor.

22              MS. RUBIN:  Nothing, Your Honor.

23              THE COURT:  All right.  Have a nice day everybody.

24              (Matter concluded.)

25              *     *     *     *     *

Georgette K. Betts, RPR, CSR
Official Court Reporter

1

2      I certify that the foregoing is a correct transcript from the
       record of proceedings in the above-entitled matter.

3

4      s/ Georgette K. Betts                    June 7, 2016

5      GEORGETTE K. BETTS                        DATE

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25