UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------x

UNITED STATES OF AMERICA,

               Plaintiff,

        v.

MARTIN SHKRELI and EVAN GREEBEL,

               Defendants.

----------------------------------------------------------x

ECF Case

No. 15-cr-00637 (KAM)

**<u>ORAL ARGUMENT REQUESTED</u>**


# MR. GREEBEL'S MEMORANDUM OF LAW IN SUPPORT OF HIS
# MOTION FOR A BILL OF PARTICULARS

# TABLE OF CONTENTS

Page

I.   Preliminary Statement ...................................................................................1

II.  Statement of Facts .......................................................................................3

    A.   The Indictment and Superseding Indictment .........................................3

    B.   Background .....................................................................................5

    C.   The Indictment Makes Allegations Relating to Parties Without
        Naming Them ...................................................................................5

    D.   The Allegations in Count Seven .........................................................6

    E.   The Allegations in Count Eight ..........................................................7

    F.   Discovery to Date ............................................................................9

    G.   Previous Requests for Particulars .....................................................10

III. Argument .................................................................................................10

    A.   The Applicable Legal Standard ........................................................11

    B.   Particulars Requested .....................................................................13

    C.   The Requested Particulars Are Necessary for Mr. Greebel to Prepare
        for Trial and to Prevent Unfair Surprise .............................................14

        1.   Names of Unindicted Co-Conspirators .....................................14

        2.   Names of Other Unidentified Individuals and Entities..................18

        3.   Particulars Regarding the Allegedly Fraudulent Agreements
            and Transactions ...................................................................20

        4.   Identification of Allegedly False and Fraudulent Statements,
            Representations, and/or Omissions Made in Furtherance of
            Counts Seven and Eight ..........................................................24

        5.   Time Period of the Conspiracies Alleged in Count Seven and
            Count Eight, Including When and How Mr. Greebel Allegedly
            Learned of and Joined the Conspiracies ....................................25

        6.   Particulars Regarding the Overt Acts for Count Eight ...............26

    D.   The Discovery Does Not Cure the Indictment's Deficiencies...............28

IV.  Conclusion ..............................................................................................30

i

# TABLE OF AUTHORITIES

Page(s)

## Cases

*United States v. Avellino,*
129 F. Supp. 2d 214 (E.D.N.Y. 2001) ..................................................................19

*United States v. Badoolah,*
No. 12-CR-774 KAM, 2014 WL 4793787 (E.D.N.Y. Sept. 25, 2014) ...............................29

*United States v. Barnes,*
158 F.3d 662 (2d Cir. 1998)...........................................................................12

*United States v. Barret,*
824 F. Supp. 2d 419 (E.D.N.Y. 2011) ................................................................17

*United States v. Barrett,*
153 F. Supp. 3d 552 (E.D.N.Y. 2015) ......................................................11, 16, 17

*United States v. Bin Laden,*
92 F. Supp. 2d 225 (S.D.N.Y. 2000), *aff'd sub nom. In re Terrorist Bombings
of U.S. Embassies in E. Africa,* 552 F.3d 93 (2d Cir. 2008)............................18, 27

*United States v. Bonventre,*
646 F. App'x 73 (2d Cir. 2016) .......................................................................22

*United States v. Bortnovsky,*
820 F.2d 572 (2d Cir. 1987)..................................................................*passim*

*United States v. Carroll,*
510 F.2d 507 (2d Cir. 1975), *cert. denied,* 426 U.S. 923 (1976)...........................27

*United States v. Chen,*
378 F.3d 151 (2d Cir. 2004).........................................................................11

*United States v. Davidoff,*
845 F.2d 1151 (2d Cir. 1988)...................................................................18, 19

*United States v. Drivas,*
No. 10-CR-771 (NG), 2012 WL 3011023 (E.D.N.Y. July 19, 2012)....................................22

*United States v. Dupree,*
No. 10-CR-627 KAM, 2011 WL 5976006 (E.D.N.Y. Nov. 29, 2011) ...............................22

*United States v. Failla,*
No. CR-93-00294 (CPS), 1993 WL 547419 (E.D.N.Y. Dec. 21, 1993) ..............................14

*United States v. Faltine,*
 No. 13-CR-315 KAM, 2014 WL 4370811 (E.D.N.Y. Sept. 2, 2014) ....................................29

*United States v. Feola,*
 651 F. Supp. 1068 (S.D.N.Y. 1987), *aff'd*, 875 F.2d 857 (2d Cir. 1989) ...................12, 25, 26

*United States v. Kahale,*
 789 F. Supp. 2d 359 (E.D.N.Y. 2009), *aff'd sub nom. United States v.
 Graham*, 477 F. App'x 818 (2d Cir. 2012) ................................................................... *passim*

*United States v. Lino,*
 No. 00 CR. 632 (WHP), 2001 WL 8356 (S.D.N.Y. Jan. 2, 2001).........................14, 22, 24, 27

*United States v. Mahaffy,*
 446 F. Supp. 2d 115 (E.D.N.Y. 2006) ............................................................................28, 30

*United States v. Messina,*
 No. 11-CR-31 KAM, 2012 WL 463973 (E.D.N.Y. Feb. 13, 2012) ................................19, 29

*United States v. Nachamie,*
 91 F. Supp. 2d 565 (S.D.N.Y. 2000)...........................................................................21, 22, 26

*United States v. Nekritin,*
 No. 10-CR-491 S-1 KAM, 2011 WL 1674799 (E.D.N.Y. May 3, 2011) ........................21, 22

*United States v. Oruche,*
 No. 07 CR. 0124 (WHP), 2008 WL 612694 (S.D.N.Y. Mar. 5, 2008), *aff'd
 sub nom. United States v. Oluigbo*, 375 F. App'x 61 (2d Cir. 2010).....................................27

*United States v. Perryman,*
 881 F. Supp. 2d 427 (E.D.N.Y. 2012) ..................................................................................11

*United States v. Persico,*
 No. 10-CR-147 S-4 SLT, 2012 WL 1712520 (E.D.N.Y. May 15, 2012)...............................19

*United States v. Rajaratnam,*
 No. 09 Cr. 1184 (RJH), 2010 WL 2788168 (S.D.N.Y. July 13, 2010) ................11, 22, 27, 28

*United States v. Rivera,*
 89 F. Supp. 3d 376 (E.D.N.Y. 2015) .....................................................................................29

*United States v. Shteyman,*
 No. 10 CR 347 (SJ), 2011 WL 2006291 (E.D.N.Y. May 23, 2011).........................12, 13, 25

*United States v. Siddiqi,*
 No. 06 CR. 377 SWK, 2007 WL 549420 (S.D.N.Y. Feb. 21, 2007)......................................24

*United States v. Solomonyan*,
   451 F. Supp. 2d 626 (S.D.N.Y. 2006)....................................................................11

*United States v. Trie*,
   21 F. Supp. 2d 7 (D.D.C. 1998)............................................................................24

*United States v. Upton*,
   856 F. Supp. 727 (E.D.N.Y. 1994) .......................................................................12

*United States v. Wilson*,
   493 F. Supp. 2d 364 (E.D.N.Y. 2006) ..................................................................17

**Rules**

Fed. R. Crim. Proc. 7(f) ...............................................................................................11

iv

Defendant Evan Greebel respectfully submits this memorandum of law in support of his Motion for a Bill of Particulars pursuant to Federal Rule of Criminal Procedure 7(f), and respectfully requests oral argument.

## I.     Preliminary Statement

This is an unusual and complex securities and wire fraud conspiracy case.  It is highly uncommon to charge a corporate partner at a law firm representing a U.S. public company with conspiring with its chief executive officer, who was purportedly in the midst of engaging in multiple conspiracies relating to at least four other entities at the time, to defraud the public company and its shareholders.  Yet that is what the government has done in this case against Evan Greebel.  It is even more uncommon to charge a law firm partner without ever giving him an opportunity to explain the emails and corporate transactions that form the crux of the government's case.  Yet again that is what the government has done in this case against Mr. Greebel.  Prior to these charges, Mr. Greebel had a pristine record of accomplishment as a corporate lawyer, and multiple clients, including, but not limited to, Retrophin (hereinafter "Retrophin" or the "Company").  Having been arrested, however, Mr. Greebel has lost his ability to practice law as a practical matter, and likely will never be able to do so again regardless of what happens in this case.

Although the government *always* says that its cases are simple, one read of the complaint makes it clear that this one is far from it.  The case is complex for many reasons.  It is complex because the charges are securities fraud and wire fraud that overall span at least five years.  It is complex because the government alleges six different conspiracies, two of which allegedly began in 2009 (Counts One and Two), three of which allegedly began in 2011 (Counts Four, Five, and Seven), and one of which allegedly began in 2012 (Count Eight).  It is complex because, as reflected by the number of conspiracy charges, there are multiple alleged schemes

1

with apparently different parties, sometimes different time periods, apparently different alleged victims, different objectives, and different means and methods.

It is complex because, while it appears there are overlapping members of the six conspiracies, Mr. Greebel is only charged with being a member of the conspiracies in Counts Seven and Eight. It is complex because the charges involve multiple unidentified settlement agreements entered into by the Company, multiple unidentified consulting agreements entered into by the Company, and multiple unidentified share transfer agreements entered into by the Company. It is complex for Mr. Greebel, in particular, because the government, *on the one hand*, alleges that Mr. Shkreli is an ultimate con man who was able to deceive sophisticated investors in Elea Capital Management, sophisticated investors in MSMB Capital, sophisticated investors in MSMB Healthcare, sophisticated investors in Retrophin, sophisticated employees and members of the Board of Directors of Retrophin, accountants, attorneys, and other professionals and yet, *on the other hand*, did not deceive Mr. Greebel who was one of at least a dozen attorneys working at multiple different law firms as outside counsel to the Company. And it is complex because the government produced approximately three million pages of documents which are not easily categorized, digested, or reviewable.

In light of the complexity and circumstances, a bill of particulars is critical for Mr. Greebel's defense. Mr. Greebel currently lacks a host of information critical to his defense and for which particulars should be produced, including the names of the unindicted co-conspirators, the names of the unidentified parties referenced by position and/or title in the indictment, a list of the allegedly false and fraudulent statements, representations, and/or omissions in Counts Seven and Eight, when and how Mr. Greebel allegedly learned of and joined the conspiracies charged in Counts Seven and Eight after Mr. Shkreli and others were purportedly already engaged in

other alleged conspiracies underway at the time, and any overt acts not listed in the indictment that the government plans to introduce at trial for Count Eight.  Moreover, while the government promised to identify the consulting agreements and the settlement agreements at issue, and the government may intend to do so at some point, it has not disclosed even that information, and time is of the essence.  Review of the millions of pages of documents produced in discovery will be better served and much more focused with an understanding of what agreements and transactions were allegedly fraudulent.

Especially where, as here, the government has the requested information in its possession and should not be interested in obtaining any tactical advantage over Mr. Greebel, such particulars are essential to enable Mr. Greebel to prepare his defense and to ensure that his fundamental right to full and fair disclosure is honored.

## II.     Statement of Facts

### A.     The Indictment and Superseding Indictment

In the early morning of December 17, 2015, Mr. Greebel was arrested at his home in front of his wife and children.  It came as a complete surprise.  Later that day, the government announced its indictment against Mr. Shkreli and Mr. Greebel.

It was upon his arrest that Mr. Greebel learned for the first time that his role as one of the outside lawyers representing Retrophin was being investigated by criminal and/or regulatory authorities.  Prior to indictment, the government never sought to interview Mr. Greebel, take testimony from him, obtain documents from him, and/or give him an opportunity to explain the emails that appear to be at the heart of the government's case against him.  Unfortunately, we cannot turn the clock back, and Mr. Greebel is facing the stark reality that he is a criminal defendant.

The Superseding Indictment charges eight counts.  (Dkt. 60 or "Ind.")  Mr. Greebel is charged in two of them:  (1) Count Seven alleges a conspiracy to commit wire fraud—which the government describes as the "Retrophin Scheme" (Ind. ¶¶ 53–56); and (2) Count Eight alleges a conspiracy to commit securities fraud—which the government describes as the "Retrophin Unrestricted Securities Scheme" (*id.* ¶¶ 57–59).  Mr. Greebel has not been charged with any substantive counts.

Martin Shkreli, by contrast, is charged in all eight counts.  In addition to being charged in Count Seven and Count Eight, along with Mr. Greebel, (*id.* ¶¶ 55–59), Mr. Shkreli is also charged in an additional six counts which make no allegations of wrongdoing against Mr. Greebel:  (a) Count One against Mr. Shkreli alleges a conspiracy to commit securities fraud— "MSMB Capital Scheme" (*id.* ¶¶ 41–43(k)); (b) Count Two against Mr. Shkreli alleges a conspiracy to commit wire fraud—"MSMB Capital Scheme" (*id.* ¶¶ 44–45); (c) Count Three against Mr. Shkreli alleges a substantive count of securities fraud—"MSMB Capital Scheme" (*id.*  ¶¶ 46–47); (d) Count Four against Mr. Shkreli alleges a conspiracy to commit securities fraud—"MSMB Healthcare Scheme" (*id.* ¶¶ 48–50(e)); (e) Count Five against Mr. Shkreli alleges a conspiracy to commit wire fraud—"MSMB Healthcare Scheme" (*id.* ¶¶ 51–52); and (f) Count Six against Mr. Shkreli alleges a substantive count of securities fraud—"MSMB Healthcare Scheme" (*id.* ¶¶ 53–54).

In short, Mr. Greebel is charged in two conspiracy counts relating to Retrophin with Mr. Shkreli.  Mr. Shkreli is charged in eight counts—two conspiracy counts relating to Retrophin—with Mr. Greebel; four other conspiracy counts relating to MSMB Capital and MSMB Healthcare without Mr. Greebel; and two substantive counts relating to MSMB Capital and MSMB Healthcare without Mr. Greebel.

## B.    Background

Mr. Greebel is a devoted husband and father of three young children with an unblemished professional and personal record prior to the allegations in this case.  Mr. Greebel graduated from the University of Michigan and the Georgetown University Law Center, and he is an attorney in good standing in the State of New York.  From in or about 1998 through in or about 2002, he was an associate at a large international law firm.  From in or about 2002 through in or about June 2015, he was an associate and then a corporate partner at Katten Muchin Rosenman LLP ("Katten").  From in or about June 2015 through in or about March 2016, Mr. Greebel was a corporate partner at Kaye Scholer LLP.

## C.    The Indictment Makes Allegations Relating to Parties Without Naming Them

The Superseding Indictment refers to unidentified individuals, including other potential co-conspirators or accomplices, without naming them[1] and instead calling them simply "Co-conspirators," and "others." The Superseding Indictment also refers to alleged potential victims or other actors[2] as "Investors," "Capital Limited Partners," "Healthcare Limited Partners," "Elea Capital Investors," "Accountants," "Accounting Firm 1," "RTRX Employee 1," "Employees and contractors," and "John Doe 1."  The transactions with these "Investors" and "Limited Partners" are part of the alleged Retrophin-related conspiracy charges.  Specifically, the government alleges that Mr. Shkreli, with the assistance of Mr. Greebel and others, caused Retrophin to enter

---

[1]   "Co-conspirators," ¶ 16; "Others," ¶¶ 7, 7a, 7b, 7c, 9, 16, 19, 21, 22, 25, 26, 28, 31, 32, 34, 35, 36, 38, 42, 43, 45, 47, 49, 50, 52, 54, 56, 58, 59.  The government has identified Co-Conspirator 1, Corrupt Employee 1, and Corrupt Employee 2.

[2]   "Investor 1," ¶¶ 9, 10, 12, 15, 31, 32, 34, 43c, 43e, 43h, 43i, 43j, 59l; "Investor 2," ¶¶ 12, 15, 43a, 43b, 43d, 43f, 43h, 43k; "Investor 3," ¶ 16, 18, 32, 33, 34, 50e; "Capital Limited Partners," ¶¶ 9, 26, 27, 28; "Healthcare Limited Partners," ¶¶ 26, 27, 28, 34; "Elea Capital Investor," ¶ 32; "Accounting Firm 1," ¶ 23; "Accountant 1," ¶¶ 25c, 25g, 25i; "Accountant 2," ¶ 25c; "RTRX Employee 1," ¶¶ 25a, 25c, 25d, 25e, 25f, 25g, 25h, 25i, 25j; "Employees and contractors," ¶¶ 36, 38; "John Doe 1," ¶¶ 36, 38, 59i, 59j.

into settlement agreements and "sham" consulting agreements with limited partners from MSMB Capital Limited, MSMB Healthcare Limited, and Elea Capital.  (Ind. ¶¶ 26–35).  The indictment does not name the alleged "co-conspirators," "investors," "accountants" or other parties by title or role.

**D.      The Allegations in Count Seven**

Count Seven, which relates to a purported Retrophin "misappropriation scheme," (*see id.* ¶¶ 21–35), alleges a conspiracy to commit wire fraud.  Count Seven states in relevant part that from "[i]n or about and between February 2011 and September 2014, both dates being approximate and inclusive, within the Eastern District of New York and elsewhere, the defendants Martin Shkreli and Evan Greebel, together with others, did knowingly and intentionally conspire" to commit wire fraud.  (*Id.* ¶ 56.)  Count Seven does not identify the "others" and the government has declined to provide that information.

Count Seven also states that "[t]he allegations contained in paragraphs one through forty are realleged and incorporated as though fully set forth in this paragraph."  (*Id.* ¶ 55.)  Many of the paragraphs "realleged and incorporated" relate to the "MSMB Capital Scheme" and the "MSMB Healthcare Scheme," and Mr. Greebel is not charged with any allegations of wrongdoing for those alleged schemes.  For example, paragraphs 8 through 15 relate to the "MSMB Capital Hedge Fund Scheme" and do not mention Mr. Greebel or make any allegation against Mr. Greebel, directly or indirectly.  Paragraphs 16 through 20 relate to the "MSMB Healthcare Hedge Fund Scheme" and do not mention Mr. Greebel or make any allegations against Mr. Greebel, directly or indirectly.

Paragraphs 21 through 35 relate to the alleged Retrophin "misappropriation scheme." The indictment alleges that Mr. Shkreli, assisted by Mr. Greebel and unidentified others "defrauded Retrophin by causing it to: (i) transfer Retrophin shares to MSMB Capital even

6

though MSMB Capital never invested in Retrophin; (ii) enter into settlement agreements with defrauded MSMB Capital and MSMB Healthcare investors to settle liabilities owed by the MSMB Funds and SHKRELI; and (iii) enter into sham consulting agreements with other defrauded MSMB Capital, MSMB Healthcare and Elea Capital investors as an alternative means to settle liabilities owed by the MSMB Funds and SHKRELI." (*Id.* ¶ 21.)

Despite the absence of any allegation that Mr. Greebel had anything to do with the alleged "MSMB Capital Hedge Fund Scheme" and the alleged "MSMB Healthcare Hedge Fund Scheme," as described in paragraphs 8 through 20, paragraph 21 (and other parts of the indictment) appears to assume that Mr. Greebel knew that "MSMB Capital never invested in Retrophin" and that Mr. Shkreli "defrauded MSMB Capital and MSMB Healthcare investors." (*See id.* ¶ 21.) The allegation that Mr. Greebel joined the alleged Retrophin scheme to further the "MSMB Capital Hedge Fund Scheme" and the "MSMB Healthcare Hedge Fund Scheme" makes no sense if Mr. Greebel had no knowledge of them. For example, paragraph 25 alleges: "Faced with an SEC inquiry, the defendants MARTIN SHKRELI and EVAN GREEBEL, together with others, engaged in a scheme to fabricate an investment by MSMB Capital in Retrophin LLC and engineered a series of fraudulent transactions that were backdated to the summer of 2012 to create the appearance of an investment by MSMB Capital prior to the SEC inquiry." That allegation assumes that Mr. Greebel was aware of the SEC inquiry, and that Mr. Greebel was further aware of Mr. Shkreli's need to "fabricate an investment by MSMB Capital in Retrophin LLC" for purposes of the SEC inquiry.

**E.    The Allegations in Count Eight**

Count Eight, which relates to a purported Retrophin "unrestricted shares" scheme (*id.* ¶¶ 36–40), alleges a conspiracy to commit securities fraud. Count Eight states in relevant part that from "[i]n or about and between November 2012 and September 2014, both dates being

approximate and inclusive, within the Eastern District of New York and elsewhere, the

defendants MARTIN SHKRELI and EVAN GREEBEL, together with others, did knowingly and

willfully conspire" to commit securities fraud.  (*Id.* ¶ 58.)

Like Count Seven, Count Eight states that "[t]he allegations contained in paragraphs one

through forty are realleged and incorporated as though fully set forth in this paragraph."  (*Id.*

¶ 57.)  Again, however, many of the paragraphs "realleged and incorporated" relate to the

"MSMB Capital Scheme" and the "MSMB Healthcare Scheme," and Mr. Greebel is not charged

with any allegations of wrongdoing for those alleged schemes.  (*See id.* ¶¶ 8–15 (relating to the

"MSMB Capital Hedge Fund Scheme" without any mention of Mr. Greebel or allegation against

him, directly or indirectly); *id.* ¶¶ 16–20 (relating to the "MSMB Healthcare Hedge Fund

Scheme" without any mention of Mr. Greebel or allegations against him, directly or indirectly)).

The "Unrestricted Shares Scheme," like the "Retrophin Misappropriation Scheme," fails

to state anything reflecting that Mr. Greebel had knowledge of Mr. Shkreli's alleged goal of

"concealing [his] beneficial ownership and control of Retrophin's unrestricted or free trading

shares."  (*Id.* ¶ 36.)

The indictment also does not identify the allegedly corrupt share purchase agreements.

The indictment alleges that the share purchase agreements are between "John Doe 1" and "seven

of [Mr. Shkreli's] employees and contractors, including Co-Conspirator 1, Corrupt Employee 1

and Corrupt Employee 2."  (*Id.* ¶ 36.)  Although the government identified Co-Conspirator 1 and

Corrupt Employees 1 and 2 at a February 2016 meeting, *see* Declaration of Lisa H. Rubin in

Support of Mr. Greebel's Motions for a (1) Bill of Particulars and (2) Prompt Disclosure of

*Brady* Materials, ¶ 3, the indictment further alleges that Mr. Shkreli, with the assistance of Mr.

Greebel and others, "directed some of the seven employees and contractors, including Co-

8

Conspirator 1, to transfer portions of their unrestricted or free trading shares to defrauded MSMB Capital and MSMB Healthcare investors." (Ind. ¶ 39.) The indictment does not identify any of the employees and contractors.

## F.    Discovery to Date

Since Mr. Greebel's arrest, the government has produced approximately three million pages of documents, but it has provided no information regarding which documents relate to the charges against Mr. Greebel. Instead, the government has merely pointed to an FBI affidavit submitted to the Honorable Jack B. Weinstein for the proposition that certain documents are not privileged. Based on that affidavit, the government identified approximately 133 documents, representing approximately 0.2% of the total documents produced to date. While defense counsel for Mr. Greebel, and Mr. Greebel himself, have been diligently reviewing the government's discovery, the review remains ongoing and has been complicated and delayed by the government's unwillingness to identify the documents relevant to the charges against Mr. Greebel.

Keyword searches cannot be used to narrow the scope of document review effectively. Most of the government productions require significant processing and are not text-searchable or date-searchable. For example, for multiple productions, defense counsel has had to manually break up PDFs containing hundreds of pages into individual emails and documents so that the documents could be properly reviewed and organized. Similarly, the government recently produced a laptop containing an unknown number of documents that have not been imaged and are stored on software that defense counsel does not have and cannot easily obtain. Mr. Greebel's defense counsel—as well as Mr. Greebel himself—have resorted to a page-by-page review of the approximately three million pages. To be clear, these massive productions are not just comprised of half-page emails, but include long email threads, handwritten notes, contracts,

brokerage account statements, bank account statements, financial statements, audit work papers,

text messages, calendar entries, voicemails, and other miscellaneous, often times undecipherable,

documents, such as printouts of spreadsheets.

## G.    Previous Requests for Particulars

Given the lack of specificity in the indictment and the amount of discovery produced to

date, Mr. Greebel's defense counsel asked the government during meetings on February 16,

2016, and April 13, 2016, to: (1) provide the names of the unidentified, unindicted co-

conspirators; (2) provide the names of other unidentified individuals, entities, and investors

reflected in the indictment; and (3) identify the allegedly corrupt settlement agreements and

consulting agreements.  *See* Rubin Decl., ¶¶ 2–5.  The government identified "Co-Conspirator

1," as well as "Corrupt Employee 1" and "Corrupt Employee 2," without specifying who was

"1" and "2."  *Id.* ¶ 3.  The government agreed to identify the settlement agreements, the

consulting agreements, and unidentified individuals who were not investors.  *Id.* ¶ 5.  The

government stated that they would consider whether to identify investors, but declined to provide

any other information.  *Id.*  The Superseding Indictment did not cure the deficiencies to the

original indictment and, to date, the government has not fulfilled its promise to identify the

settlement agreements, the consulting agreements, and the unidentified individuals who were not

investors.

## III.    Argument

Mr. Greebel respectfully submits that the government should be required to provide Mr.

Greebel with a bill of particulars containing the information outlined below.  This information is

necessary to prepare his defense and to prevent unfair surprise at trial.  While the government

has provided voluminous discovery in this case, these productions have obscured the charges

against Mr. Greebel rather than illuminate them.

A.      **The Applicable Legal Standard**

Rule 7(f) of the Federal Rules of Criminal Procedure provides that the accused have the right to seek "a bill of particulars in order to identify with sufficient particularity the nature of the charge pending against him, thereby enabling [the] defendant to prepare for trial [and] to prevent surprise." *United States v. Bortnovsky*, 820 F.2d 572, 574 (2d Cir. 1987) (per curiam).  This Court may grant a motion for a bill of particulars "where the charges of the indictment are so general that they do not advise the defendant of the specific acts of which he is accused." *United States v. Rajaratnam*, No. 09 Cr. 1184 (RJH), 2010 WL 2788168, at *1 (S.D.N.Y. July 13, 2010) (quoting *United States v. Chen*, 378 F.3d 151, 163 (2d Cir. 2004) (internal quotation marks omitted)).

A bill of particulars is particularly appropriate and necessary when charges are complicated, such as in securities fraud indictments.  *See United States v. Barrett*, 153 F. Supp. 3d 552, 576 (E.D.N.Y. 2015) (granting defendant's request for a bill of particulars in "highly complex" healthcare and tax fraud case); *United States v. Kahale*, 789 F. Supp. 2d 359, 373 (E.D.N.Y. 2009), *aff'd sub nom. United States v. Graham*, 477 F. App'x 818 (2d Cir. 2012) (holding "[c]ertain charges, such as [] fraud charges, carry a greater potential for causing unfair surprise at trial due to their complexity").  In instances where courts in this Circuit have denied a request for a bill of particulars, the courts often point to the fact that the charges are not complicated as the basis for denial.  *See, e.g.*, *United States v. Perryman*, 881 F. Supp. 2d 427, 430 (E.D.N.Y. 2012) (declining to grant defendant's request for a bill of particulars because the violence and drug-related charges were not "complicated or obscure" or a "complex multifaceted securities fraud indictment"); *United States v. Solomonyan*, 451 F. Supp. 2d 626, 642 (S.D.N.Y. 2006) (finding that bill of particulars was not warranted where defendants "do not have the need,

11

as compared, say, to defendants in an intricate fraud conspiracy, to identify unnamed coconspirators in order to piece together the nature of the charges against them").

Although the bill of particulars is not a tool for the defense to learn of the government's evidence and theories, if the requested information is necessary for the defendant to prepare his defense, "it is of no consequence that the requested information [requires] the disclosure of evidence or the theory of the prosecution." *United States v. Barnes*, 158 F.3d 662, 665 (2d Cir. 1998).

In addition, where allegations relating to one defendant are merely a subset of a larger indictment against another defendant, courts often require the government to provide the defendant charged with a subset of the alleged misconduct with "sufficient precision as to enable him to prepare a defense and avoid unfair surprise at trial." *United States v. Shteyman*, No. 10 CR 347 (SJ), 2011 WL 2006291, at *4–5 (E.D.N.Y. May 23, 2011) (ordering government to explain how certain Medicare claims were allegedly fraudulent as to one of the defendants charged in the case); *United States v. Feola*, 651 F. Supp. 1068, 1133-34 (S.D.N.Y. 1987), *aff'd*, 875 F.2d 857 (2d Cir. 1989) (ordering bill of particulars where defendants were named in only one count and particular information had not been provided).

Further, while the government may cure deficiencies in the indictment by providing additional information in discovery, this is only satisfactory when the amount of documents produced is limited and the defense has had sufficient time to review the discovery. *Kahale,* 789 F. Supp. 2d at 374 (denying request for the identities of victims because it was undisputed that the 5,000 pages of produced documents that were "not particularly voluminous or burdensome" contained the identities of all victims of the alleged fraud); *see also United States v. Upton*, 856 F. Supp. 727, 753 (E.D.N.Y. 1994) (government must specifically identify allegedly falsified

12

documents "buried in thousands of documents already produced"). Courts routinely grant requests for a bill of particulars when the government provides "'mountains of documents to defense counsel who [are] left unguided' as to which documents are relevant to the charged conduct." *Id.* at 371 (quoting *Bortnovsky*, 820 F.2d at 575). Indeed, courts have granted requests for particulars about Rule 16 discovery that the government has already produced. *Shteyman*, 2011 WL 2006291, at *4–5 (granting, in part, defendant's request for "particulars on the Rule 16 discovery the Government has already provided").

## B.   Particulars Requested

Mr. Greebel moves for the production of a bill of particulars with the following information:

(a)  The names of the unindicted co-conspirators in the six charged conspiracies of the indictment, including but not limited to Counts Seven and Eight that charge Mr. Greebel.

(b)  The names of other unidentified individuals and entities, including the names of allegedly defrauded individuals and entities.

(c)  Particulars regarding the consulting agreements, settlement agreements, and share purchase/transfer agreements, including the dates of the agreements and transactions, who prepared each agreement, the parties to the agreements and transactions, the manner in which the agreements and transactions were allegedly fraudulent, whether there are any alleged false and misleading statements in the agreements and if so, identification of them, whether there was any transfer of cash and/or shares pursuant to any agreements.[3] Particulars regarding the parties to the consulting agreements, settlement agreements, and share purchase/transfer agreements, including whether they were investors in related entities, and if so, the amounts invested and purportedly lost by such investors, and whether such investors lost money in MSMB Capital and/or MSMB Healthcare and/or Elea Capital.

(d)  Particulars regarding any allegedly false and fraudulent statements, representations and/or omissions relating to Counts Seven and Eight.

---

[3]  Settlement agreements, ¶¶ 7c, 21, 26–30; consulting agreements, ¶¶ 7c, 21, 31–35.

(e)  The exact starting and ending dates of the alleged conspiracies in Counts Seven and Eight, and identification of when and how Mr. Greebel allegedly learned of and joined these conspiracies which were apparently already in progress at the time that Mr. Greebel is accused of joining them.

(f)  Any overt acts not listed in the Superseding Indictment that the government plans to introduce at trial relating to Count Eight (conspiracy to commit securities fraud), including when and where the overt acts took place, and the names of any individuals present for them.

## C.  The Requested Particulars Are Necessary for Mr. Greebel to Prepare for Trial and to Prevent Unfair Surprise

### 1.  Names of Unindicted Co-Conspirators

Mr. Greebel respectfully asks the Court to require the government to produce the names of unindicted co-conspirators of all six conspiracy charges, including the two conspiracy charges filed against him.

"The request for the names of unindicted co-conspirators is a fairly common request and one that is generally granted by the district courts." *United States v. Failla*, No. CR-93-00294 (CPS), 1993 WL 547419, at \*7 (E.D.N.Y. Dec. 21, 1993); *United States v. Lino*, No. 00 CR. 632 (WHP), 2001 WL 8356, at \*13 (S.D.N.Y. Jan. 2, 2001) (ordering government to file bill of particulars "well in advance of trial" naming all co-conspirators who will testify, or be referred to, at trial to "facilitate defendants' trial preparation and allow them to narrow, or at least to prioritize, their review of the [discovery] and to avoid surprise at trial").

In determining whether providing the identities of unnamed co-conspirators would "accomplish the permissible goals of providing a defendant with necessary information to prepare for trial and avoid surprise," courts in the Second Circuit generally look at six factors: "(1) the number of co-conspirators; (2) the duration and breadth of the alleged conspiracy; (3) whether the government otherwise has provided adequate notice of the particulars; (4) the volume of pretrial disclosure; (5) the potential danger to co-conspirators and the nature of the

alleged criminal conduct; and (6) the potential harm" to the government's investigation. *Kahale*, 789 F. Supp. 2d at 372.

Given that the first four factors strongly favor disclosure, and that the fifth and sixth factors are not relevant, this Court should order disclosure of the identities of the unidentified, unindicted co-conspirators. Specifically, with respect to the first factor, there appears to be a significant potential number of alleged co-conspirators. Indeed, the indictment is complicated by the fact that there are six separately charged conspiracies in Counts One, Two, Four, Five, Seven, and Eight, each of which allegedly include "others." And it is unclear whether the co-conspirators are the same in each of the conspiracies, whether there are some individuals who are involved in some of the charged conspiracies but not others, or whether there are substantial differences in the membership of the alleged conspiracies. Given the number of different charged conspiracies and that Mr. Greebel is only charged in two of the six different alleged conspiracies, it is imperative that Mr. Greebel learn the names of the other alleged members of the various conspiracies. In particular, because the alleged conspiracies to commit wire fraud in Count Seven and securities fraud in Count Eight are predicated on knowledge of the conspiracies charged in Counts One, Two, Four, and Five—even though Mr. Greebel is neither charged nor alleged to have participated, directly or indirectly, in them—it is essential to Mr. Greebel's defense that he learn the names of the unindicted co-conspirators.

As for the second factor, the duration and breadth of the different charged conspiracies are significant. The alleged conspiracies involving Mr. Shkreli and others (but not Mr. Greebel) in Counts One and Two span five years, starting in or about September 2009 and ending in or about September 2014 (Ind. ¶¶ 42, 45); the alleged conspiracies involving Mr. Shkreli and others (but not Mr. Greebel) in Counts Four and Five span three years and seven months, starting in or

15

about February 2011 and ending in or about September 2014 *(id.* ¶¶ 49, 52); and one alleged conspiracy involving Mr. Shkreli, Mr. Greebel, and others in Count Seven spans three years and seven months, also starting in or about February 2011 and ending in or about September 2014 *(id.* ¶¶ 56, 58).  As for the third and fourth factors, the government has produced approximately three million pages of documents but declined to provide any assistance in terms of narrowing the scope of review.  Finally, as to the fifth and sixth factors, there is no evidence of any potential threat of danger to co-conspirators or of any potential harm to the government's investigation through disclosure of the unindicted co-conspirators.

This Court's holding in *Kahale* is instructive.  There, this Court ordered the government to provide a bill of particulars identifying the unindicted co-conspirators, including for each paragraph in the indictment containing the word "others," after finding that the first three factors were in defendants' favor and the last two factors did not counsel against them.  In this case, as in *Kahale*, the number of alleged co-conspirators is potentially large and similarly includes "an unknown number of unindicted individuals," as demonstrated by the government's numerous vague references to "co-conspirators" and "others" in the Indictment.  789 F. Supp. 2d at 372; *see also Barrett*, 153 F. Supp. 3d at 572–73 (bill of particulars for unindicted co-conspirators warranted where indictment repeatedly states defendant operated his alleged scheme "together with others," and it was unclear whether "others" referred to the same or different sets of co-conspirators).  The duration of the alleged conspiracy in *Kahale*, which this Court found to be "relatively lengthy," is similar, if not identical, to the alleged period of the multiple charged conspiracies in this case.  789 F. Supp. 2d at 372.  Considering these first two factors, Mr. Greebel "must be able to ascertain which primary actors [he is] accused of having conspired with."  *Id.* at 373.  Without this information, "it is clear that the disclosures to date fail to meet

16

the test under the third factor and that the defendant[] do[es] not have adequate information to prepare for trial and avoid unfair surprise." *Id.* at 372.

Moreover, while in *Kahale*, this Court acknowledged that the government "ha[d] not unfairly overwhelmed [the defendants] with mountains of unorganized discovery," *id.* at 372, because it produced only "5,000 pages in less than four boxes of documents," and thus the fourth factor was not in defendants' favor, in this case the government has produced approximately three million pages with no guidance as to their contents in relation to the charges, *id.* at 375. *See also Barrett*, 153 F. Supp. 3d at 573 (ordering government to provide bill of particulars naming unindicted co-conspirators where volume of pre-trial discovery was "quite large" and "the equivalent of at least tens of thousands of pages of documents").

Finally, in *Kahale*, as in this case, the last two factors do not weigh against ordering the government to produce a bill of particulars. There is no evidence that "revealing the identities of the unindicted co-conspirators will jeopardize their safety, create risk of witness tampering, or compromise an ongoing government investigation" in a "white-collar fraud action." *Kahale*, 789 F. Supp. 2d at 373; *Barrett*, 153 F. Supp. 3d at 373; *cf. United States v. Barret*, 824 F. Supp. 2d 419, 444 (E.D.N.Y. 2011) (finding safety a concern where "alleged conspiracy involved narcotics trafficking and the criminal complaint alleges regular use of firearms in connection with the conspiracy"); *United States v. Wilson*, 493 F. Supp. 2d 364, 372 (E.D.N.Y. 2006) (denying bill of particulars because "identifying alleged co-conspirators in a bill of particulars is inappropriate in cases where the defendant is charged with 'extreme acts of violence' in order to protect the government's investigation and the safety of unindicted co-conspirators"). In addition, this Court, and other courts in this Circuit, have determined that providing the identities of unindicted co-conspirators does not substantially prejudice the government or limit its proof at

trial.  *Kahale*, 789 F. Supp. 2d at 374; *United States v. Bin Laden*, 92 F. Supp. 2d 225, 241

(S.D.N.Y. 2000), *aff'd sub nom. In re Terrorist Bombings of U.S. Embassies in E. Africa*, 552

F.3d 93 (2d Cir. 2008) (government required to provide bill of particulars naming unindicted co-

conspirators despite concerns disclosure could affect the ongoing investigation of individuals

associated with al-Qaeda and that those individuals are accused of using the most severe types of

violence in furtherance of their goals).

> ### 2.   Names of Other Unidentified Individuals and Entities

This Court should order the government to provide the names of other unidentified

individuals and entities, including the allegedly defrauded investors or victims, whether

specifically named by reference in the indictment or not.  The government often voluntarily

provides this information.  Here, although the government promised to provide the names of all

such individuals (other than the investors) and to consider whether to provide investor names

several months ago, they have not provided this information and timely disclosure is critically

important.  Providing the names of unidentified individuals is especially important to Mr.

Greebel.  As one of many outside counsel to Retrophin, Mr. Greebel is entitled to learn the

names of allegedly defrauded investors or victims whom Mr. Shkreli purportedly lied to and

deceived.  The government has essentially alleged that Mr. Shkreli made material

misrepresentations and omissions to numerous individuals over many years in connection with

multiple schemes, and yet the government excludes Mr. Greebel—a partner at one of the law

firms serving as outside counsel to Retrophin—from that group of alleged victims.

"The identity of victims of offenses that the prosecution intends to prove" is "a

straightforward identification in a bill of particulars."  *United States v. Davidoff*, 845 F.2d 1151,

1155 (2d Cir. 1988).  For example, in *Davidoff*, the Second Circuit held that the trial judge

exceeded his discretion by denying a bill of particulars identifying "at least the victims of

discrete [] schemes that the prosecution intended to prove," ultimately reversing the defendant's conviction. *Id.* at 1154; *see also United States v. Avellino*, 129 F. Supp. 2d 214, 221 (E.D.N.Y. 2001) (ordering government to produce particulars regarding the names of the victims of the alleged conspiracy).

The government appreciates how vital the identification of victims is to mount a defense. In fact, the government, including the United States Attorney's Office for the Eastern District of New York, has provided the accused with the identities of the unidentified persons referenced in the indictment in the past. *See, e.g.*, *United States v. Messina*, No. 11-CR-31 KAM, 2012 WL 463973, at *9 (E.D.N.Y. Feb. 13, 2012) (finding that defendant's request for a bill of particulars was moot because the government agreed to provide defendant with the identities of victims identified as "John Does" in the indictment); *United States v. Persico*, No. 10-CR-147 S-4 SLT, 2012 WL 1712520, at *16 (E.D.N.Y. May 15, 2012) (same).

Here, however, the indictment fails to identify multiple individuals and entities who are integral to understanding the allegations against Mr. Greebel. For example, the indictment references "John Doe 1," "employees and contractors," "Accountant 1," "Accountant 2," "Accounting Firm 1," "Investor 1," "Investor 2," "Investor 3," "Capital Limited Partners," "Healthcare Limited Partners," and "Elea Capital Investor." It is entirely unclear, and yet critical, to know whether any of these unnamed individuals, investors, and partners are unindicted co-conspirators, and for Mr. Greebel to determine whether he had any interaction with these individuals and the nature of that interaction. Because of Mr. Greebel's role as a corporate partner at one of the law firms representing Retrophin as outside counsel, it is also critical for Mr. Greebel to know exactly what Mr. Shkreli and/or others at Retrophin communicated to him and others at Katten and other law firms regarding these individuals and

entities.  Without their names, Mr. Greebel's review of the discovery is significantly inhibited and less meaningful.

Moreover, transactions between and among these investors, "Limited Partners," and "John Doe 1" form the basis of the government's allegations against Mr. Greebel.  Specifically, the government alleges that Mr. Shkreli, with the assistance of Mr. Greebel and others, (1) caused Retrophin to enter into settlement agreements and "sham" consulting agreements with limited partners from MSMB Capital Limited, MSMB Healthcare Limited, and Elea Capital, (Ind. ¶¶ 26–35), and (2) directed other unidentified co-conspirators and potential accomplices to enter into share transfer agreements with "defrauded MSMB Capital and MSMB Healthcare, among others."  *(Id.* ¶ 29.)  The identities of these allegedly defrauded investors and limited partners, who appear to be victims of alleged schemes related to the MSMB Entities, are integral to Mr. Greebel's preparation of his defense.

### 3.    Particulars Regarding the Allegedly Fraudulent Agreements and Transactions

Although the government told us that they would identify the allegedly fraudulent agreements and transactions at issue, the government has yet to do so.  Given that Retrophin had over one-hundred settlement agreements, consulting agreements, and share transfer agreements during the relevant period, Mr. Greebel should not be left guessing as to which of these agreements were part of any of the alleged schemes in the indictment.  Indeed, the government has produced well over one-hundred agreements entered into by Retrophin during the relevant period in the discovery, and we have not been informed which ones the government is alleging to be fraudulent.  Accordingly, Mr. Greebel moves for the identification of the specific settlement, consulting, share transfer, and any other agreements or transactions that the government alleges were in furtherance of any of the charged conspiracies.

Failure to provide details regarding the allegedly fraudulent agreements and transactions forming the basis of the conspiracy charges in Counts Seven and Eight, including the dates of the agreements and transactions, who prepared each agreement, the parties to the agreements and transactions, the manner in which the agreements and transactions were allegedly fraudulent, whether there are any alleged false and misleading statements in the agreements and if so, identification of them, and whether there was any transfer of cash and/or shares pursuant to the agreements, would impermissibly shift the burden of proof to the defendant. *United States v. Nachamie*, 91 F. Supp. 2d 565, 576 (S.D.N.Y. 2000); *see also United States v. Nekritin*, No. 10-CR-491 S-1 KAM, 2011 WL 1674799, at *8 (E.D.N.Y. May 3, 2011) ("The Second Circuit has ruled that a bill of particulars is necessary when the government alleges that a few unspecified transactions, part of a larger pool, are fraudulent, because defendants 'were forced to explain the events surrounding [legitimate transactions] and to confront numerous documents unrelated to the charges pending' against them" (citing *Bortnovsky*, 820 F.2d at 574–75)).  Mr. Greebel would have to spend limited resources investigating each and every one of the agreements produced in discovery—presuming that all allegedly fraudulent agreements have been produced in discovery—and that is not only fundamentally unfair, but deprives Mr. Greebel of the ability to focus on the actual allegations of wrongdoing against him.

In *Nachamie*, 91 F. Supp. 2d at 576, the district court ordered the government to identify and provide details regarding each and every one of the allegedly false and misleading Medicare claims that were allegedly submitted and/or filed as part of the conspiracy, and that the government intended to prove at trial.  These particulars included details such as who prepared the claim, who submitted the claim, the manner in which each entry on the claim was false, and the proper statement or amount that the government contended would have been more accurate.

21

*Id*. Courts in this Circuit have repeatedly held that it is impermissible to force the defendant to have to determine which transactions of many form the basis of the alleged conspiracy, and to prepare to defend potentially legitimate transactions unrelated to the conspiracy charge. *Id.*; *see also Bortnovsky*, 820 F.2d at 573–75 (finding that the district court abused its discretion by denying a motion for a bill of particulars identifying which insurance claims were fraudulent, and thus putting defendant in the impermissible position of having to defend all of the produced insurance claims as legitimate); *Rajaratnam*, 2010 WL 2788168, at *4 (ordering the government to provide detailed information about certain alleged insider trades including, for example, the substance of the insider information the defendant received and the date(s) on which it was conveyed); *Lino*, 2001 WL 8356, at *4 (ordering government to provide particulars regarding whom defendant bribed, "the pension fund with which the bribe recipient was affiliated, and the amount of the bribe").

Mr. Greebel acknowledges that courts have denied similar requests when the government has already identified the specific transactions it alleges are fraudulent or the government alleges that every transaction was fraudulent. In *United States v. Dupree*, No. 10-CR-627 KAM, 2011 WL 5976006, at *7 (E.D.N.Y. Nov. 29, 2011), this Court rejected defendant's request for additional information regarding the transactions, in part because the government alleged that the fraud "permeated and sustained" the entire business and "all of the accounts receivable figures on all financial statements . . . [were] false." *See also United States v. Bonventre*, 646 F. App'x 73, 79 (2d Cir. 2016) (denying bill of particulars where, *inter alia*, pleadings included more specific information regarding which records were false and how); *United States v. Drivas*, No. 10-CR-771 (NG), 2012 WL 3011023, at 4* (E.D.N.Y. July 19, 2012) (denying bill of particulars identifying fraudulent transactions because the government alleged that *all* transactions billed to

Medicare were fraudulent); *Nekritin*, 2011 WL 1674799, at *8 (denying request for additional information regarding the specific fraudulent claims because government already identified all the claims it alleges are fraudulent).

Yet Retrophin had over a hundred settlement, consulting, and share transfer agreements of varying types with multiple different parties over several years—and the government seemingly alleges that only a subset of these agreements are the basis of its allegation that Mr. Greebel engaged in a conspiracy to commit wire fraud.  However, the government has not identified which agreements are at issue.  In addition, the share transfer agreements alleged in the "Unrestricted Shares Scheme" in Count Eight appear to be at the core of the government's allegation that Mr. Shkreli and Mr. Greebel allegedly "concealed and failed to disclose Shkreli's beneficial ownership and control over" Retrophin shares.  Without detailed information regarding any and all agreements that were purportedly done in furtherance of the conspiracies charged in Count Seven and Count Eight, Mr. Greebel not only would be left to divine which settlement, consulting, and share transfer agreements are alleged to form the basis of the fraud conspiracies, but also would be forced to prepare to defend the legitimacy of agreements unrelated to the conspiracy charges.

Similarly, given that the government alleges that certain settlement and consulting agreements were executed with certain MSMB Capital, MSMB Healthcare, and Elea Capital investors, the government should produce the names of investors who were party to these agreements, the amounts invested and purportedly lost by such investors, and whether such investors lost money in MSMB Capital and/or MSMB Healthcare and/or Elea Capital.  Such information is necessary for Mr. Greebel to prepare his defense.  Disclosure of this information to Mr. Greebel is crucial, because the government does not allege that Mr. Greebel participated,

directly or indirectly, in the other charged conspiracies relating to MSMB Capital and MSMB

Healthcare, which purportedly defrauded the investors who entered into settlement and

consulting agreements with Retrophin.

> **4.** **Identification of Allegedly False and Fraudulent Statements, Representations, and/or Omissions Made in Furtherance of Counts Seven and Eight**

"[A] request to particularize allegations of false statements" is "routinely award[ed]."

*Lino*, 2001 WL 8356, at *6.  Courts in this Circuit and others apply the same reasoning for

granting a bill of particulars identifying fraudulent transactions to identifying false statements

and omissions.  *Id.; United States v. Siddiqi*, No. 06 CR. 377 SWK, 2007 WL 549420, at *3

(S.D.N.Y. Feb. 21, 2007).  "[W]here defendants have prepared multiple statements or

documents, the [g]overnment should specify which of these are being called into question, lest

defendants be forced to review all of the statements or documents in order to prepare a defense

of the veracity of each."  *Id.*  In *United States v. Trie*, 21 F. Supp. 2d 7, 21 (D.D.C. 1998), the

district court explained:  "Not only does the government's position presume that the defendant

knows what the government alleges that he did and with whom he dealt and therefore has all the

information he needs, a premise inconsistent with the presumption of innocence, but it smacks of

gamesmanship.  A defendant faced with false statements charges should not have to waste

precious pre-trial preparation time guessing which statements he has to defend against or which

contributors may be witnesses against him at trial when the government knows precisely the

statements on which it intends to rely and can easily provide the information."

Given that the government alleges in Count Seven that Mr. Shkreli, Mr. Greebel, and

"others," used or conspired to use "materially false and fraudulent pretenses, representations and

promises . . . to defraud Retrophin, and to obtain money and property from Retrophin," (Ind.

¶ 56), and that the government alleges in Count Eight that Mr. Shkreli, Mr. Greebel, and

"others," made "untrue statements of material fact and omitting to state material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading"  (*Id.* ¶ 58), the government should be required to identify what false and fraudulent statements, representations, and/or omissions were made and by whom.  Without identification of those statements, Mr. Greebel would be forced to review and prepare to defend every statement made by Mr. Shkreli, Mr. Greebel, and unidentified others in relation to the consulting, settlement, and share transfer agreements throughout the millions of pages of documents produced.

**5.      Time Period of the Conspiracies Alleged in Count Seven and Count Eight, Including When and How Mr. Greebel Allegedly Learned of and Joined the Conspiracies**

Since Mr. Greebel is charged in only two of the six charged conspiracies, and only two of the eight counts in the indictment, the government should be required to disclose to Mr. Greebel exactly when and how they believe Mr. Greebel learned of and joined the conspiracies charged in Counts Seven and Eight, and the exact dates of the beginning and the end of these conspiracies.  Mr. Greebel needs this information to defend himself.

The exact dates of the conspiracy, including the date each conspirator joined after the inception of the conspiracy, may be necessary in certain circumstances, such as when allegations relating to one defendant are merely a subset of a larger indictment.  *Shteyman*, 2011 WL 2006291, at *4–5.  In *Feola*, 651 F. Supp. at 1133, the district court granted "defendants' request for the exact dates the Government[] will claim the defendants joined and ended the conspiracy," including particulars regarding whether "any defendant joined after the inception of the conspiracy."  651 F. Supp. at 1134.  With regard to two defendants who were only named in one count, the district court required the government to particularize the "time, place and manner in which the [g]overnment will claim at trial that [the two defendants] became members of the

conspiracy." *Id.*  The district court held that these particulars were "crucial to the preparation of the defense" and that "[t]here should be little prejudice to the Government in having to divulge those limited facts." *Id.* at 1133–34; *see also Nachamie*, 91 F. Supp. 2d at 574 (circumstances may warrant particulars regarding the date when each defendant joined the alleged conspiracy).

Recognizing that information regarding "how and when the conspiracy was formed, or when each participant entered it" is not routinely granted in a bill of particulars, *Feola*, 651 F. Supp. at 1132, this information is nonetheless necessary to Mr. Greebel, an attorney who is charged with knowledge of certain alleged schemes that pre-dated his engagement as counsel for Retrophin or any of the entities Mr. Greebel is alleged to have represented.  Allegations related to Mr. Greebel are only a subset of the larger indictment and he is only charged in two of eight counts.  The government charges that Mr. Shkreli engaged in four other conspiracies relating to the MSMB Capital Hedge Fund Scheme and the MSMB Healthcare Hedge Fund Scheme before and/or at the time of the starting date of the alleged wire fraud conspiracy in Count Seven and the alleged securities fraud conspiracy charged in Count Eight.  Mr. Greebel has a right to know what events occurred before he purportedly joined any conspiracy, and which ones came after the end of the purported conspiracy.

Without information regarding when Mr. Greebel learned of and joined these conspiracies, Mr. Greebel will be forced to prepare to defend actions that he took as a partner at one of the law firms serving as outside legal counsel to Retrophin and that the government believes occurred before he allegedly joined the conspiracies, and possibly after the allegedly conspiracies ended.

### 6.    Particulars Regarding the Overt Acts for Count Eight

Mr. Greebel seeks disclosure of all the overt acts that the government intends to prove in furtherance of the securities fraud conspiracy alleged in Count Eight.

While "there is no general requirement that the government disclose in a bill of particulars all the overt acts it will prove in establishing a conspiracy charge," *United States v. Carroll*, 510 F.2d 507 (2d Cir. 1975), *cert. denied*, 426 U.S. 923 (1976), there are circumstances in which courts hold that the government should provide this information, and we respectfully submit that the circumstances warrant that disclosure in this case.  In *United States v. Oruche*, No. 07 CR. 0124 (WHP), 2008 WL 612694, at *4 (S.D.N.Y. Mar. 5, 2008), *aff'd sub nom. United States v. Oluigbo*, 375 F. App'x 61 (2d Cir. 2010), for example, the district court held that the "rationale for requiring disclosure of unindicted co-conspirators applies with equal force" to "particulars concerning all acts that the government alleges [the defendant] took in furtherance of the conspiracy and when, where, and under what circumstances all overt acts . . . took place." That is certainly true when the allegations "provide too little information to the [d]efendants and their counsel to permit them reasonably to focus their trial preparations, especially in light of the voluminous amount of material that has been produced in discovery to date." *Bin Laden*, 92 F. Supp. 2d at 236; *see also Rajaratnam*, 2010 WL 2788168, at *3 ("[C]ourts have sometimes ordered the government to provide more particulars about overt acts alleged in terms too general to enable the defendant to defend against them.").

In *Bin Laden*, 92 F. Supp. 2d at 237, the district court held that, even though the government had alleged 144 overt acts in the indictment, the government was still required to provide the particulars relating to all of the overt acts it intended to prove at trial.  Because the government was not limited in its proof of overt acts at trial to those listed in the indictment, "[t]he [d]efendants and their counsel cannot . . . limit their trial preparations to the set of 144 overt acts set forth in the [i]ndictment." *Id.*; *Lino*, 2001 WL 8356, at *9 (ordering government to

27

identify portions of the indictment it intends to prove at trial so defendants can prioritize their review of the "vast amount of discovery material produced to defense counsel").

The government similarly should be required to provide details regarding all overt acts that it intends to prove at trial for Count Eight. While the government lists twelve alleged overt acts in Count Eight, it, as in *Bin Laden*, does not need to restrict its proof to those listed acts and thus the defense cannot limit its preparation to that limited number. Given counsel for Mr. Greebel—and Mr. Greebel himself—must review approximately three million pages of documents with virtually no guidance from the government as to which documents contain evidence of the charges against him, the government should provide particulars so that defense counsel can properly focus their review of the massive amounts of discovery produced to date.

## D.    The Discovery Does Not Cure the Indictment's Deficiencies

The government cannot argue in this case that its extensive discovery cures the deficiencies of the Superseding Indictment. It is a well-settled principle that a "large volume of discovery warrants a bill of particulars if it obfuscates the allegedly unlawful conduct and unfairly inhibits the defendant's preparation for trial." *United States v. Mahaffy*, 446 F. Supp. 2d 115, 119–20 (E.D.N.Y. 2006). Indeed, "[t]he most frequent case in which particulars are warranted is where discovery is overwhelmingly extensive and the government fails to designate which documents it intends to introduce and which documents are merely relevant to the defense." *Id.*; *see also Rajaratnam*, 2010 WL 2788168, at *2 (granting defendant's request for bill of particulars in part because of the volume of discovery materials produced by the government and the complexity of the insider trading case); *Bortnovsky*, 820 F.2d at 575 ("The Government did not fulfill its obligation merely by providing mountains of documents to defense counsel who were left unguided as to which documents would be proven falsified . . . ."). This is exemplified by the courts' analysis of the fourth factor, the "volume of pretrial disclosure," in the

above-described test for the necessity of particulars; where a greater volume of pretrial disclosure could result in the defendant being "unfairly overwhelmed," a bill of particulars is warranted. *Kahale*, 789 F. Supp. 2d at 372; *Nachamie*, 91 F. Supp. 2d at 572.

This is not a case where the government has cured its deficiencies through its discovery productions. Cases where courts have denied motions for bills of particulars based on the government's voluntary disclosures and limited discovery are inapposite. In those cases, the discovery was not voluminous or overly burdensome, or the government clearly identified the requested information in the discovery. *See United States v. Rivera*, 89 F. Supp. 3d 376, 401 (E.D.N.Y. 2015) (denying bill of particulars containing detailed information about each transaction where superseding indictment and subsequent discovery consisting of only 1,482 pages provided information as to the nature of the alleged schemes, its timing, and defendant's participation (*See* Gov't Mem. of Law in Resp. to Defs. Mot. to Suppress and Garrett's Initial Pre-trial Mots., Dkt. 117, filed July 8, 2014)); *United States v. Faltine*, No. 13-CR-315 KAM, 2014 WL 4370811, at *9 (E.D.N.Y. Sept. 2, 2014) (denying bill of particulars where affidavits "set forth specific dates, times, locations, names of other actors, and cellular phone conversations that allegedly relate to the defendants and the charged offenses"); *United States v. Badoolah*, No. 12-CR-774 KAM, 2014 WL 4793787, at *15 (E.D.N.Y. Sept. 25, 2014) (denying bill of particulars in part because limited discovery consisting of "over five boxes" provided defendant with a "host of information relating to the charges" (*See* Mem. of Law in Supp. of Imran Badoolah's Pretrial Mot., Dkt. 32, filed September 3, 2013)); *Messina*, 2012 WL 463973, at *9 (E.D.N.Y. Feb. 13, 2012) (denying bill of particulars identifying unindicted co-conspirators in part because defendant conceded that pretrial discovery was not overly burdensome); *Kahale*, 789 F. Supp. 2d. at 374–378 (repeatedly pointing to the limited amount of discovery produced by

the government as a reason for denying particulars regarding the unidentified victims, the unlawful transactions, and the false representations).

Here, the government has produced a massive volume of materials, and Mr. Greebel is "unfairly overwhelmed" by the "mountains of documents" that the defense must review—and that Mr. Greebel is reviewing himself—to ascertain which documents relate to Counts Seven and Eight of the indictment.  The volume of discovery, unfortunately, "obfuscates the allegedly unlawful conduct and unfairly inhibits the defendant's preparation for trial."  *See Mahaffy*, 446 F. Supp. 2d at 120.

## IV.    Conclusion

For the aforementioned reasons, Mr. Greebel respectfully requests that the Court order the government to provide a bill of particulars.

Dated:   New York, New York
         September 16, 2016

                                        */s/* Reed Brodsky
                                        Reed Brodsky
                                        Winston Y. Chan
                                        Lisa H. Rubin


                                        GIBSON, DUNN & CRUTCHER LLP
                                        200 Park Avenue
                                        New York, NY 10166
                                        (212) 351-4000
                                        rbrodsky@gibsondunn.com

                                        *Counsel for Defendant Evan Greebel*