# BRAFMAN & ASSOCIATES, P.C.

ATTORNEYS AT LAW

767 THIRD AVENUE, 26TH FLOOR

NEW YORK, NEW YORK 10017

TELEPHONE: (212) 750-7800

FACSIMILE: (212) 750-3906

E-MAIL: BBRAFMAN@BRAFLAW.COM

BENJAMIN BRAFMAN

ANDREA ZELLAN
JOSHUA D. KIRSHNER
JACOB KAPLAN
ALEX SPIRO

MARK M. BAKER
OF COUNSEL

MARC AGNIFILO
OF COUNSEL
ADMITTED IN N.Y. AND N.J.

November 16, 2016

**VIA ECF**

Honorable Kiyo A. Matsumoto
United States District Judge
Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York   11201

>   Re.   United States v. Martin Shkreli and Evan Greebel
>         Criminal Number 15-637 (KAM)

Dear Judge Matsumoto:

On November 15, 2016 at 4:00 pm, all parties met and conferred on a conference call pursuant to this Court's Order of November 8, 2016. The following parties and relevant entities participated in the conference:

1. Counsel for Mr. Shkreli;
2. Counsel for Mr. Greebel;
3. Counsel for Katten Muchin Rosenman LLP;
4. Counsel for Marek Biestek;
5. Counsel for Retrophin; and
6. Counsel for the Government.

Counsel for Katten Muchin Rosenman LLP (Michael Verde) (hereinafter "Katten" or "Mr. Verde") indicated that the subpoenaed documents in Katten's possession fall into three broad categories, each with different issues concerning a potential attorney-client privilege.

1. MSMB Entities – July 2011 to November 2011

First, Mr. Verde identified documents in Katten's possession concerning MSMB entities created after July 7, 2011.

1

**BRAFMAN & ASSOCIATES, P.C.**

By way of background, Mr. Shkreli and a college friend, Marek Biestek, formed MSMB Capital in 2009. In 2011, Shkreli and Biestek formed MSMB Healthcare. Katten is in possession of documents of both MSMB entities that were created after July 7, 2011, the approximate date on which Katten was retained to provide legal work to the MSMB entities.

Because the MSMB entities were created by Mr. Shkreli and Mr. Biestek, counsel for Mr. Biestek (Glen McGorty and Arlen Pyenson from the firm Crowell & Moring, 590 Madison Avenue, New York, New York) were asked if Mr. Biestek was asserting a privilege over the MSMB documents. Counsel for Mr. Biestek indicated that he was not asserting any privilege that would prevent disclosure to Mr. Shkreli because Mr. Biestek's position in the MSMB entities was subordinate to that of Mr. Shkreli. Mr. Biestek retains his privilege, however, in regard to any other third party disclosure. Accordingly, counsel for Mr. Biestek stated that Mr. Biestek is not in a position to assert any such privilege and does not do so. As a result, both Mr. Biestek and Mr. Shkreli believe that the MSMB documents should be provided to Mr. Shkreli pursuant to the subpoena to Katten.

Once it was established that Katten was in possession of MSMB documents starting on July 7, 2011, the next question was whether we could determine a date on which Katten stopped providing legal services for the MSMB entities. In attempting to answer that question, Mr. Verde indicated that Katten billed MSMB until April of 2012.

However, it was generally agreed during the call that while the entity or person billed is relevant to a determination of the ultimate privilege-holder, it is not dispositive.

Bringing additional complexity to this analysis is the fact that Mr. Shkreli created Retrophin LLC, the precursor to Retrophin Inc., prior to Katten's engagement with MSMB. Some of Katten's work for MSMB during that period might therefore also implicate Retrophin's interests, and Retrophin's counsel was not willing to waive Retrophin's privilege over such documents. The parties cannot agree on word-searches or time limitations that would segregate documents potentially implicating Retrophin's interests from purely MSMB documents, and so no consensus was reached on what Katten could produce from this period.

As a result, counsel for Retrophin objected to Katten providing MSMB documents to Shkreli unless Katten reviewed each

**BRAFMAN & ASSOCIATES, P.C.**

document and email individually to ensure that there was no mention of, or connection to, Retrophin.

2. <u>Retrophin LLC and MSMB Documents – November 2011 through April 2012</u>

In order to understand the inter-connection between the MSMB entities and Retrophin, some background may be helpful. Mr. Shkreli created Retrophin because it was apparent that his strengths were better suited to a pharmaceutical company than a hedge fund. Specifically, Mr. Shkreli founded Retrophin to create "orphan drugs" to treat diseases that were overlooked by the large pharmaceutical companies. Because Mr. Shkreli had a relationship with the Katten firm in connection with the firm's work on MSMB matters, he utilized Katten's legal services in regard to Retrophin as well. Katten indicated that while Retrophin LLC was created in November of 2011, it continued billing MSMB until April 2012.

Mr. Verde, on behalf of Katten, stated that during this November 2011 to April 2012 time period, there may be MSMB and Retrophin documents or emails that are interwoven with each other. He also stated that it may not be immediately clear whether a certain email or document related to one entity or another, and that there were tens of thousands of emails between Shkreli and Greebel during this period.

3. <u>Retrophin Documents – After April 2012</u>

Katten's records show that after April 2012, it did not bill MSMB for any legal work. It therefore appears that starting in April 2012, the majority of the legal work performed by Katten was on behalf of Retrophin. There are exceptions to this, however. For instance, in the Fall of 2012, the SEC opened an investigation entitled "In the Matter of MSMB Capital Management and LLC Valuation." Mr. Shkreli testified before the SEC on August 7, 2013 and on February 24, 2014. It appears this work would have been rendered either solely on behalf of Mr. Shkreli individually or, as is the position of Mr. Greebel's counsel, in connection with Katten's representation of MSMB.

Aside from any such exceptions during this period, the major issue in regard to attorney-client privilege is the scope of Retrophin's waiver, and what consequences that waiver has on documents claimed by Retrophin to be otherwise still privileged. By way of background, on May 14, 2014, the U.S. Attorney for the EDNY served a grand jury subpoena on Retrophin. On January 13,

**BRAFMAN & ASSOCIATES, P.C.**

2015, the U.S. Attorney served a second grand jury subpoena on Retrophin. On March 24, 2015, the SEC notified Shkreli, MSMB Capital and MSMB Healthcare that it intended to file an enforcement action against them. On August 17, 2015, Retrophin filed a civil complaint against Shkreli in the SDNY.

On September 30, 2015, William J. Schwartz (an attorney with Cooley LLP, 1114 Avenue of the Americas, New York, New York), counsel for Retrophin, sent a letter to AUSA Winston Paes in which Retrophin sought to memorialize the fact that in fact it waived its attorney client privilege and sought to outline the scope of such waiver. The September 30, 2015 letter of Mr. Schwartz is attached hereto as Exhibit 1.

It is not clear, however, precisely what documents Retrophin provided to the U.S. Attorney in connection with the two subpoenas and whether the September 30, 2015 letter fairly and appropriately reflects the scope and nature of materials actually disclosed.[1]

    4. <u>Inter-connectedness between Retrophin and non-Retrophin documents and among documents intended to be waived and unwaived by Retrophin</u>

One of the major topics discussed during the conference call related to the fact that many of the MSMB emails and other documents are interconnected with potential Retrophin documents. An additional concern is that some of the Retrophin documents that may be within the scope of the waiver are interconnected with documents that Retrophin maintains are still privileged. The consequence of this is that Retrophin objects to Katten conducting word searches to comply with the subpoena for fear that some Retrophin documents over which it asserts a privilege may be disclosed. Katten stated that it would only conduct word searches and would not make judgment calls on the privilege issue aside from agreed-upon word searches. Mr. Verde explained that Katten could not be forced into a position of making judgments as to something as important as the attorney client privilege concerning prior clients of the firm.

    5. <u>Where we go from here</u>

---

[1] There is no suggestion that the letter is inaccurate, intentionally or otherwise. However, the privilege waiver would be determined based on what documents were turned over that served to waive the privilege rather than what is said in a follow-up letter seeking to define the scope of the waiver.

4

Despite the best efforts of very diligent counsel for all sides, it is apparent that we cannot agree on how Katten is to respond to the subpoena. We understand Retrophin's concerns, as outlined above, as well as Mr. Verde's concerns that Katten not be in a position to make judgments as to the applicability of the attorney-client privilege.

Therefore, it is Mr. Shkreli's position that Retrophin has waived its attorney-client privilege by disclosing documents, emails and records concerning the actions and communications of Mr. Shkreli.[2] Ultimately, counsel for Mr. Shkreli is most interested in Mr. Shkreli's own communications with his counsel in regard to legal matters on which Mr. Shkreli sought legal guidance as well as his counsel's communications in this regard. In addition, in light of the civil suit filed by Retrophin against Mr. Shkreli, alleging many of the same acts of purported wrongdoing as the Superseding Indictment, Mr. Shkreli believes that Retrophin has waived its privilege as to all communications and documents to, from, or concerning Mr. Shkreli.

Respectfully submitted,

Marc Agnifilo
Andrea Zellan

cc. Counsel for Martin Shkreli (via ECF and email)
Counsel for the Government (via ECF and email)
Counsel for Evan Greebel (via ECF and email)
Counsel for Katten (via email)
Counsel for Cooley (via email)
Counsel for Marek Biestek (via email)

---

[2] Retrophin indicated that it objects to Mr. Shkreli's position and other aspects of this letter and will file a letter with the court in advance of the court conference.