# Cooley

Ian Shapiro
+1 212 479 6441
ishapiro@cooley.com

Via ECF

November 27, 2016

Judge Kiyo A. Matsumoto
United States District Court
Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York 11201

Re:  United States v. Martin Shkreli, No. 15-CR-00637 (KAM)

Dear Judge Matsumoto:

      We represent Retrophin Inc.  We are writing to update the Court on Retrophin's ("the Company's") progress in expediting the production or logging of documents subject to Martin Shkreli's subpoena on Katten Muchin Rosenman LLP dated October 27, 2016 (the "Katten Subpoena") and to address certain aspects of the Court's order dated November 22, 2016 (the "Court's November 22nd Order").  We are also writing to offer some further commitments about when and how Retrophin will be able to complete the production or logging of documents subject to the Katten Subpoena.

      **1.**      **Retrophin's progress in expediting or logging the documents subject to the Katten Subpoena**

      On the day after last Tuesday's conference, November 23rd, Retrophin sent Katten's complete billing records (which Katten had previously provided to Cooley) to Retrophin's General Counsel for her review. These billing records span February 15, 2012 through September 30, 2014; they encompass 12 separate matters, and consist of 988 pages of invoices. Retrophin reviewed these invoices between the 23rd and the 26th to confirm that they do not reflect the substance of any legal advice or requests for legal advice.  We expect to produce them to the Government and the Defendants on the 28th, subject to the Parties' agreement, which we have solicited by email, that Retrophin's production of the billing records will not be used to seek a broader subject matter waiver.

      According to Katten, these billing records to Retrophin encompass all of Katten's services to Retrophin and MSMB (and Shkreli personally, if Katten represented him personally) after January 1, 2012.  Thus, they should enable counsel for Retrophin and Mr. Shkreli to identify and discuss in far greater detail which aspects of Katten's representation are relevant and not relevant to the Superseding Indictment.

# Cooley

Judge Kiyo A. Matsumoto
November 27, 2016
Page Two

On the afternoon of the 23rd, Retrophin also had a conference call with Mr. Verde, Katten's General Counsel. Mr. Verde said Katten had loaded all of the potentially responsive emails into a database which he would make available to Cooley through an Internet portal, and Cooley could then use to review the emails on the firm's own systems. Mr. Verde said that he was ready to make the database available to Cooley as early as Wednesday afternoon but would not do so in light of Mr. Biestek's post-conference invocation of the privilege over MSMB documents (Dkt. 116.)

Because Katten believes it is unable to segregate MSMB documents from Retrophin documents, Katten is unwilling to provide any documents to Retrophin until the status of Mr. Biestek's invocation of the privilege has been resolved. Retrophin cannot begin its review of Katten's emails until this issue has been resolved.[1]

Nevertheless, we are taking several steps to produce additional documents to the Government and Defendants while Katten's email database remains unavailable. First, as the Government requested, Retrophin will review additional emails that it had previously identified as potentially within the scope of its existing waiver and expects to produce the balance of these emails by December 6th.

Second, Retrophin has voluntarily expanded the scope of its waiver to include the $900,000 Promissory Note between MSMB Healthcare and Retrophin described in the Superseding Indictment, and Retrophin will search its files for any unproduced, privileged emails relating to this topic as well.

---

[1] Retrophin objects to Mr. Brafman's proposal, which he made in his letter dated November 23 (Dkt. 116), that Katten turn over to Mr. Shkreli all of the MSMB documents. If Katten had a reliable way of identifying those documents, then Retrophin would agree to that proposal. But Katten does not believe it can do so, and all of the parties agree that culling those documents using the search term "MSMB" would identify a substantial number of Retrophin documents. Thus, Retrophin submits that the best approach is to adjudicate Mr. Biestek's invocation of privilege first.

The Government contends that Mr. Biestek never had a privilege in MSMB's documents. Retrophin will not weigh in on that issue at this point but contends that any such privilege was waived because, to the extent that Katten may have provided legal advice to MSMB after September 2012, Katten's communications with Messrs. Biestek or Shkreli were sent and received on Retrophin's email server, and certain communications prior to that period are also stored on Retrophin's network. According to Retrophin's E-mail Policy (**Exhibit A**) and its Code of Business Conduct and Ethics (**Exhibit B**), Messrs. Biestek's and Shkreli's communications with Katten on behalf of MSMB stored on Retrophin's network belong to Retrophin. *See* Ex. A ¶ 3 ("[a]ll electronic data (including communications received, sent, to be sent or only partially drafted) that are transmitted through Company facilities and/or stored on a Company computer or storage media are the property of the Company."); Ex B. at 3 ("Users should have no expectation of personal privacy in their use of Company communications systems or information sent to or from or stored in or on Company communications systems . . . . Even personal messages on the Company's e-mail and voicemail systems are Company property."); *see also* **Exhibit C** ¶ 18(i) (Mr. Biestek's employment agreement, in which he committed to sign and be bound by the Code of Ethics).



Judge Kiyo A. Matsumoto
November 27, 2016
Page Three

Third, Katten and Retrophin agree that for the period between August 2012 (when Retrophin began archiving emails) and September 30, 2014, when Mr. Shkreli was replaced as Retrophin's CEO (and no longer had a Retrophin email account) Retrophin has a record of all of the emails between Katten and Retrophin, MSMB and Shkreli, and, therefore, Retrophin can begin its review of that segment of Katten's files using its own email files. Retrophin has already begun searching these emails for additional documents within the scope of its existing waiver (and the $900,000 Note) and will substantially complete its production of responsive documents on December 6th.

2.     **The Court's November 22nd Order**

When we left the conference on November 22nd, we understood that we were obligated to produce the billing records by November 28th and to provide a status report by December 6th describing when we could complete the process of logging the documents over which Retrophin was asserting a privilege, and we understood that the Court wanted the production as a whole to be completed by the end of January. Transcript at 39. On the morning of Wednesday, November 23rd, we reviewed the Court's docket entry and were confused by two of the deadlines imposed on Retrophin. To address our apparent misunderstanding of the deadlines the Court apparently had in mind, we requested the transcript of the conference on an expedited basis, which we received on Wednesday afternoon. We have now reviewed the transcript and would respectfully request the following clarifications or modifications to the Court's November 22nd Order.

First, it is not possible for Retrophin to identify the additional topics over which it will waive the privilege by November 28th (aside from the $900,000 Note, which completes the Company's waiver on subjects described in the Superseding Indictment). The original waiver was addressed by Retrophin's Board of Directors in more than one Board meeting, and a materially expanded waiver will require the participation of the Board again, with advice from Cooley. Without access to Katten's documents and over the holiday weekend, Cooley cannot adequately advise the Board about expanding the scope of its waiver.[2] Moreover, we did not

---

[2] Mr. Brafman complained that "I don't think in all the months that [Retrophin has done] this, that [Retrophin has] created a privilege log." Transcript at 57. But in producing documents to the Government, Retrophin was never asked to prepare a list of responsive, privileged documents. Moreover, while Mr. Shkreli served his subpoena on Katten on September 28, 2016, neither Mr. Shkreli nor Katten provided notice to Retrophin until October 31, 2016 when Katten asked us whether "Retrophin wishes to assert a claim of privilege, or any other claim, over [the] documents" subject to the Subpoena. Therefore, Retrophin has only known of Mr. Shkreli's request for its privileged documents since October 31st.

In addition, Mr. Shkreli's "Motion to Compel the Law Firm [Katten] to comply with a document subpoena served by Defendant [Shkreli]" suggested that Mr. Shkreli's motion was focused on "issues relevant to the current indictment." Thus, on November 8th, Retrophin authorized Katten to produce the documents within the scope of Retrophin's existing waiver, which was sufficient to encompass all but one of the transactions in the Superseding Indictment, (**Exhibit D**, Schwartz letter to Verde dated November 8, 2016) and called Mr. Shkreli's counsel to offer

# Cooley

Judge Kiyo A. Matsumoto
November 27, 2016
Page Four

intend to convey that Retrophin could commit to expand the scope of the waiver by the 28th. Based on our review of the transcript, we intended to convey that we would respond to specific requests from Mr. Brafman to expand the scope of the waiver to include limited additional topics within one week of the date of the conference.  Transcript at 56 (explaining that Retrophin would respond to requests by Mr. Brafman to expand the scope of the waiver to include limited additional topics within one week from the conference).  But Mr. Brafman declined to avail himself of that offer.  Nevertheless, Retrophin intends to file a status report with the Court on December 6th, and, assuming Retrophin receives access to Katten's database early this week, Retrophin intends to include in its December 6th status report a description of many of the additional topics on which Retrophin intends to waive the privilege and the topics on which the Company does not intend to waive. This status report may not include all of the subjects of Katten's advice to Retrophin, but Retrophin's intention is to cover the large majority of subjects at issue and to address any remaining subjects in a second status report within two weeks of filing its December 6th status report.

      Second, it is not possible for Retrophin to provide a privilege log of all of the Katten documents over which it is asserting a privilege by December 6th.  This would be true even if Retrophin had received access to Katten's database last week, which it did not.  Katten says the database includes 85,000 emails.  We do not yet know how many emails will remain after the database has been de-duped.  We have a sense of the volume of emails to Retrophin after August 2012, but we do not have a sense of the volume of emails before August 6, 2012 or of the volume of internal Katten emails.  When we agreed to produce "something definite" by December 6th, we understood that the Court was referring to the status report which we had committed earlier in the conference to provide to the Court within two weeks, in which we would let the Court know how quickly we could produce the non-privileged documents. Transcript at 88.  We never intended to suggest that we could log privileged documents by that date, and understood that the Court wanted that process to be completed by the end of January at the latest. Transcript at 39 (explaining that the Court wanted "these documents produced by the end of January at the latest").

      Nevertheless, and as described, to ensure that Retrophin's effort to protect its privilege does not delay this case (and assuming Retrophin receives access to Katten's database this week), Retrophin will disclose the subjects on which it is waiving the privilege and continuing to assert the privilege in its December 6th status report and will address any unaddressed subjects in a supplemental status report on December 20th.

---

to expand the waiver to encompass other topics which Mr. Shkreli believed were relevant to the Indictment. Retrophin did not appreciate that Mr. Shkreli was seeking every document that Katten created during its multi-year representation of Retrophin until November 16th, when Mr. Shkreli's counsel filed his "Joint Status Letter" with the Court.

Cooley

Retrophin will also commit to substantially completing the process of producing documents subject to an expanded waiver and logging privileged documents by December 30th. To meet this deadline, Retrophin is likely to seek the agreement of counsel for Mr. Shkreli, and absent his agreement, the Court's permission to log certain categories of privileged documents by category rather than on a document-by-document basis. The issue in this dispute should be whether or not, under Rule 502(a) of the Federal Rules of Evidence, fairness requires disclosing privileged documents on additional subjects, not whether or not individual documents are subject to the attorney-client privilege. Therefore, the Court should be able to address any remaining disputes between the parties by reviewing information concerning the subject of the legal advice rather than the privilege log details of dozens of documents, all of which concern the exact same subject.[3] Moreover, by identifying the documents over which the Company is waiving and not waiving in two status reports, initially on December 6th and again December 20th, Retrophin intends to use this five-week period to confer with counsel for Mr. Shkreli to limit the categories of documents in dispute as much as possible.

3. Retrophin's Plan

Based on our discussion with Katten on November 23rd, Retrophin expects to receive access to Katten's email database as soon as the issue of Mr. Biestek's privilege is resolved. As soon as the Company receives access to that database, Retrophin will de-dupe the database, apply search terms, and begin the process of reviewing the emails. In parallel, Retrophin intends to advise the Court about the expanded scope of the waiver and to log documents over which Retrophin will continue to assert the privilege. During this review, Retrophin will remain in contact with counsel for Mr. Shkreli and seek to agree over categories of documents that will remain within the privilege. For example, Katten's first Retrophin matter (#00001 – License Agreements) encompasses Katten's advice on a series of license agreements that the Company sought and, in some cases, entered into between January 2012 and September 2014. *See* **Exhibit E** (January 2012 invoice for #00001). The Company has an interest in maintaining the confidentiality of its communications with Katten concerning those licenses, proposed and consummated, and we are hopeful that counsel for Mr. Shkreli will forgo litigation over those categories. For additional categories of documents over which the Company is waiving the privilege, Retrophin will produce those documents directly on a rolling basis by December 30th, and where Retrophin and counsel for Mr. Shkreli cannot agree over whether certain categories of documents should remain privileged, Retrophin will produce a log by that date, and will also produce a selection of logged documents in the disputed categories for the Court's in camera

[3] For example, Matter No. 00001contains hundreds of thousands of dollars of billing entries relating to Katten's legal advice to Retrophin concerning Retrophin's acquisition of certain drug candidates, some of which Retrophin continues to develop or sell today. Retrophin is likely to ask counsel for Mr. Shkreli and the Court to agree that Retrophin may log these documents on a categorical basis because whether or not these documents should be disclosed should not depend on the details of each document but rather whether they concern the "same subject matter" as Retrophin's existing waiver, and "ought in fairness to be considered together." F.R.E. Rule 502(a).

# Cooley

Judge Kiyo A. Matsumoto
November 27, 2016
Page Six

review by January 6th.[4]

Respectfully submitted,

*/s/ Ian Shapiro*
Ian Shapiro


cc:     Counsel for all parties (via ECF)

Encl.

---

[4] Based on our initial discussion with Katten, our impression is that Retrophin will produce the documents directly from the email database that Katten provides to Cooley, which will save time and reduce the financial burden on Katten.  Retrophin will also ask that its documents are produced pursuant to a protective order, which it will circulate to the parties tomorrow.