# Cooley

Ian Shapiro  
+1 212 479 6441  
ishapiro@cooley.com

Via ECF

December 5, 2016

Judge Kiyo A. Matsumoto  
United States District Court  
Eastern District of New York  
225 Cadman Plaza East  
Brooklyn, New York 11201

Re: United States v. Martin Shkreli, No. 15-CR-00637 (KAM)

Dear Judge Matsumoto:

      We represent Retrophin, Inc.  We are writing to address certain aspects of the Court's November 30th Order (Dkt. 120); to request limited modifications to enable Retrophin to comply with contractual obligations with its commercial partners; and to limit Mr. Shkreli's access (but not his counsel's access) to certain commercially sensitive information concerning Retrophin's existing products.

      First, Mr. Shkreli does not have the right to review communications covered by Retrophin's attorney-client privilege or work product, even if he had once been an officer and director of Retrophin and a party to the communication.  *See Fitzpatrick v. American Intern. Group, Inc.*, 272 F.R.D. 100, 108 (S.D.N.Y. 2010) (holding that defendant's former officer or directory was no longer entitled to access privileged communications, even if he had sent or received them); *see also Davis v. PMA Cos.*, 2012 WL 3922967, at *6 (W.D. Okla. Sept. 7, 2012) (holding the same; collecting federal district court cases in agreement; and explaining that it was would "seem[] paradoxical to allow a party to access information previously available to that individual only because of his or her role as a fiduciary once that party is adverse to the corporation and no longer required to act in the corporation's best interest.") (citing *Fitzpatrick*, 272 F.R.D. at 108).

      This is true even when Retrophin and Shkreli are adverse.  *See, e.g. Neogenix Oncology, Inc. v. Gordon*, 2015 WL 5774171 at *10 (E.D.N.Y. Sept. 29, 2015) (holding that former officer was not entitled to rely on privileged communications to which he was a party while an officer of the plaintiff even if those communications were relevant to contesting the plaintiff's complaint against him); *see also Fitzpatrick*, 272 F.R.D. at 108; *Davis*, 2012 WL 3922967, at *6.  Unless Retrophin expressly relies on attorney-client communications to support its claims against Shkreli, and, therefore, waives the privilege with respect to the subject of those communications,

# Cooley

Judge Kiyo A. Matsumoto
December 5, 2016
Page Two

Shkreli no longer has any right to Retrophin's privileged communications.  *Neogenix*, 2015 WL 5774171, at *9.[1]

  Second, we would like to correct the misimpression that neither Katten nor Retrophin can "ascertain whether [Katten's] communications with Mr. Shkreli (including documents on which Mr. Shkreli was copied) pertained to the firm's representation of Mr. Shkreli, the MSMB Entities, Retrophin Inc. and/or Retrophin LLC." Dkt. 120 at 4-5.  Retrophin produced nearly 1,000 pages of invoices for the period between April 2012 and September 2014.  The invoices contain detailed time entries reflecting the legal services that Katten was providing to Retrophin, and they confirm that the large majority of services that Katten billed to Retrophin related to Retrophin's business.  Retrophin objects to the suggestion that Katten's representation of Retrophin was so intertwined with its representation of MSMB and Shkreli that Katten cannot reasonably identify the communications arising from its representation of Retrophin.  Retrophin acknowledges that there are communications in which Katten would not want to be responsible for deciding whether MSMB or Shkreli could claim that they had an attorney-client relationship with Katten. But no one seriously disputes that, at least as of December 2012 (and possibly earlier), the large majority of Katten's communications with Shkreli arose from Katten's representation of Retrophin.

  With the benefit of these invoices, Mr. Shkreli should be able to identify exactly when he contends Katten was representing MSMB or Mr. Shkreli personally and eliminate most of this confusion.  Even if Retrophin ultimately disagreed with these contentions, Mr. Shkreli's identification of matters on which Katten represented MSMB or him personally – based on the actual record of Katten's services as reflected in the invoices – would substantially narrow the parties' dispute; and we do not understand why neither Katten nor Mr. Shkreli has been willing to avail themselves of this opportunity.

  Notwithstanding these concerns, Retrophin appreciates that the Court is trying to find a solution to the parties' impasse and has put a lot of thought into the solution proposed in the November 30th Order.  Retrophin also wants to be pragmatic, without prejudicing its privilege.  Thus, Retrophin will not object further to Paragraph (3)(a) of the Court's November 30th Order, but respectfully requests that the Court enter a further order pursuant to Rule 502(d) confirming that the disclosure of Katten's communication with Retrophin to Mr. Shkreli for the purpose of the review described in Paragraph (3)(a) does not waive Retrophin's attorney client privilege or work product protection with respect to either the parties to this case or any other state or federal

---

[1] Retrophin did not cite authority on this point in its letter dated November 27, 2016 (Dkt. 119) because we did not understand that the Court was considering allowing Mr. Shkreli to review Retrophin's privileged documents.  The only issue appeared to be the time in which Retrophin would be required to (a) identify the additional subjects over which it would waive the privilege, and (b) log the rest.

# Cooley

Judge Kiyo A. Matsumoto
December 5, 2016
Page Three

proceeding.  (For the Court's convenience, we have attached as Exhibit A of this letter a proposed form or order for this purpose.)[2]

In addition, Retrophin respectfully requests that the Court modify Paragraph (3)(a) in two limited respects:

First, Retrophin respectfully requests that the Court modify Paragraph (3)(a) of its November 30th Order to defer until December 9th the deadline for Katten's disclosure of its communications with Mr. Shkreli for communications sent or received in 2013 and 2014.  This request does not concern communications sent or received in 2011 and 2012, which can be produced to Mr. Shkreli on December 6th as Paragraph (3)(a) provides.  Retrophin needs an additional three days to comply with its contractual obligations to provide reasonable notice to commercial partners before disclosing Retrophin's agreements with those partners, or, in some cases, information relating to the agreements, to third-parties.  Retrophin expects to notify these commercial partners today, and to let them know that unless they apply for relief the documents will be produced on the 9th.

Second, Retrophin requests that the Court limit Mr. Shkreli's access to communications relating to Retrophin's existing commercial products: Sparsentan, Thiola, Chenodal, and Cholbam, because the Company is concerned that Mr. Shkreli will use the information to interfere with the Company's ongoing business relationships, as he has in the past.  Katten's communications with Mr. Shkreli concerning these commercial products have no relationship to this case and indisputably relate to Retrophin, not MSMB or Mr. Shkreli personally.  Retrophin is not limiting Mr. Shkreli's access to communications relating to these products.  Retrophin is only asking that Mr. Shkreli's counsel review them on an attorneys-eyes only basis to confirm that they relate to Retrophin, not MSMB or Mr. Shkreli, and should, therefore, be returned to Retrophin under paragraph (3)(c).

Mr. Shkreli's counsel can isolate these documents by applying the following search terms to the documents they receive from Katten:  Sparsentan (Sparsentan, Ligand); Thiola (Thiola, Mission, Biosolutia, Alamo, and DLSS); Chenodal (Chenodal, Manchester, and Nexgen), and Cholbam (Cholbam, Asklepion).  Since the purpose of Mr. Shkreli's review is to segregate the communications in which Katten was providing legal services to MSMB or Mr. Shkreli personally rather than Retrophin, limiting the review of communications responsive to those search terms will not prejudice Mr. Shkreli in the least, and will probably expedite the review provided for in paragraph (3)(c).

---

[2] Retrophin's position is based on its understanding that Katten will only be producing to Mr. Shkreli Katten's communications with Mr. Shkreli and not internal Katten communications (to which it cannot be said that Mr. Shkreli was a party, and for which the Court's reasoning in paragraph (3) and note 1 of the November 30th Order would not apply).



Judge Kiyo A. Matsumoto
December 5, 2016
Page Four

      Retrophin also requests that it have the opportunity to challenge communications that Mr. Shkreli asserts were for the purpose of providing legal advice to MSMB or to him personally. Retrophin is concerned that Mr. Shkreli will be able to unilaterally determine that certain communications are covered by a privilege that he controls, when Retrophin would take a different position on those communications.  In the case of communications that Shkreli contends are covered by his personal privilege, Retrophin respectfully suggests that Mr. Shkreli produce those to Retrophin for review since they are no longer covered by any privilege as a result of Mr. Shkreli's waiver.  In the case of communications that Mr. Shkreli contends are covered by MSMB's privilege, Retrophin respectfully requests that Mr. Shkreli log them (unless Mr. Biestek waives the privilege over them).

      Retrophin thanks the Court in advance for its consideration of these requests.

Respectfully submitted,

*/s/ Ian Shapiro*

Ian Shapiro

cc:    Counsel for all parties (via ECF)