1

1            UNITED STATES DISTRICT COURT
             EASTERN DISTRICT OF NEW YORK
2
     - - - - - - - - - - - - - X
3
     UNITED STATES OF AMERICA,    :   15-CR-637(KAM)
4                                 :
                                  :   U.S. Courthouse
5                                 :   Brooklyn, New York
          -against-              :
6                                 :   TRANSCRIPT OF
                                  :   STATUS CONFERENCE
7                                 :
                                  :
8    MARTIN SHKRELI and           :   December 14, 2016
     EVAN GREEBEL,                :   11:00 a.m.
9                                 :
             Defendants.          :
10   - - - - - - - - - - - - - X

     BEFORE:
11            HONORABLE KIYO A. MATSUMOTO, U.S.D.J.

     APPEARANCES:
12   For the Government:      ROBERT L. CAPERS, ESQ.
                              United States Attorney
13                            271 Cadman Plaza East
                              Brooklyn, New York 11201
14                            BY:  JACQUELYN KASULIS, ESQ.
                                   ALIXANDRA SMITH, ESQ.
15                                 GIRISH SRINIVASAN, ESQ.
                                   Assistant U.S. Attorneys
16
     For the Defendant
17   Shrekli:                 MARC AGNIFILO, ESQ.
                              ANDREA  ZELLAN, ESQ.
18
     Greebel:                 LISA RUBIN, ESQ.
19                            REED BRODSKY, ESQ.

20   Also Present:           MICHAEL VERDE, ESQ.
                              ELIZABETH LANGDALE, ESQ.
21
                              IAN SHAPIRO, ESQ.
22                            ZACH SHEMTOB, ESQ.

23                            GLEN McGORTY, ESQ.
                              ARLEN PYENSON, ESQ.
24   Court Reporter:     Holly Driscoll, CSR
                              (718) 613-2274
25   Proceedings recorded by mechanical stenography, transcript
     produced by Computer-Assisted Transcript.

2

1          THE COURT:  Good morning, everybody.  Have a seat.

2          THE CLERK:  This is criminal status conference,

3  15-CR-637, USA versus Martin Shkreli and Evan Greebel.

4          Will the government's attorneys please state their

5  appearances.

6          MS. KASULIS:  Jacquelyn Kasulis, Alixandra Smith and

7  Girish Srinivasan for the government.  Good morning, Your

8  Honor.

9          THE COURT:  Good morning.

10         THE CLERK:  On behalf of Mr. Shkreli.

11         MR. AGNIFILO:  Good morning, Your Honor, Marc

12  Agnifilo and Andrea Zellan on behalf of Mr. Shkreli.

13  Mr. Brafman sends his regrets, he had a hearing in front of

14  Judge Berman in the Southern District this morning.

15         THE COURT:  All right, no problem, thank you.

16         MR. AGNIFILO:  Thank you, Judge.

17         THE CLERK:  Counsel on behalf of Mr. Greebel.

18         MS. RUBIN:  Your Honor, Lisa Rubin on behalf of

19  Mr. Greebel.  My colleague Mr. Brodsky is here.  Mr. Chan as

20  well sends his regrets.

21         THE COURT:  All right.  Good morning.

22         THE CLERK:  Parties from the Katten firm.

23         MR. VERDE:  Michael Verde and Elizabeth Langdale

24  from Katten Muchin.

25         THE COURT:  Good morning.

3

1          THE CLERK:  Who else do we have?

2          MR. SHAPIRO:  Ian Shapiro and Zach Shemtob on behalf

3    of Retrophin.

4          THE COURT:  Thank you.

5          And then we have someone here for Mr. Biestek?

6          MR. McGORTY:  Yes, Your Honor, Glen McGorty and

7    Arlen Pyenson on behalf of Marek Biestek.

8          THE COURT:  Would you like to set up at the table?

9          MR. McGORTY:  Thank you, Your Honor.

10          THE COURT:  All right.  I appreciate Mr. Biestek

11   being here through counsel.  It would have been more efficient

12   had he appeared the first time.  I did receive your letter and

13   it's not a problem --

14          MR. McGORTY:  I won't apologize again but I would

15   like to.

16          THE COURT:  I understand that you misunderstood the

17   importance of being here, but what we did was, we spent an

18   inordinate amount of time trying to resolve and find a way

19   forward.  Then when you send in late letters and try to unwind

20   everything it is very frustrating for everybody.

21          MR. McGORTY:  Understood, Your Honor.

22          THE COURT:  So, just a couple of housekeeping

23   matters.  First, I'm going to issue a decision in the next day

24   or two respectfully denying Mr. Greebel's motions for a bill

25   of particulars and for Brady material, and we're finishing

4

 1    the decision at this point but I wanted to just clarify

 2    that.

 3              Second of all, we've granted Mr. Greebel's request

 4    to travel.  I didn't really see a reason to forbid him from

 5    traveling over the holidays given his family plans, and the

 6    conditions of travel will be similar to those that were set

 7    forth last year at this time.

 8              Now, I'd like to just confirm with regard to Katten

 9    Muchin whether they have produced the billing detail and

10    whether, based on that, they've also provided the documents

11    that were not in dispute.

12              MR. VERDE:  Yes, Your Honor, we produced about

13    approximately 110,000 pages of e-mails when Mr. Shkreli was

14    indicated somewhere in the address field, to, from, cc, etc.

15    We were not able to produce anything that was purely MSMB.  We

16    did speak with Retrophin's counsel to try and determine

17    whether there was anything -- any way we could define what

18    that meant that would produce purely MSMB documents that we

19    could then do by mechanical searches and we could not, even

20    suggesting that possibly producing everything from that time

21    period that didn't have the word Retrophin in it but

22    Retrophin's counsel pointed out that it could have implicated

23    Retrophin's interest without actually naming Retrophin.  So,

24    on that we're still at something of a standstill waiting for

25    further instructions on how to narrow that down.

5

1          THE COURT:  I'm sure you've read Mr. Biestek's

2     counsel's letter in which he clarifies that he represents only

3     Mr. Biestek and not MSMB and that the last known counsel is

4     your firm.  You are probably second to Mr. Shkreli in the best

5     position to determine whether those communications that may

6     overlap were done for both MSMB and Retrophin or purely for

7     MSMB.

8          Now, the issue of Mr. Biestek's ability to assert

9     the privilege and waive it only as to Mr. Shkreli has been an

10    issue that has arisen since our last conference and it appears

11    that multiple parties wish to be heard further on that matter.

12    I don't know whether there have been any further discussions.

13    It appears that MSMB and its affiliates are now defunct and

14    that Mr. Biestek has asserted the privilege, as I understand,

15    on his own behalf and perhaps on behalf of MSMB.

16          Is that correct, counsel?

17          MR. McGORTY:  Your Honor, just two points on

18    that; one, we have asserted that there's a privilege that

19    Mr. Biestek currently retains over MSMB Capital documents

20    certainly with respect to the corporation and, secondarily,

21    potentially as an individual.  Again, one thing I think Your

22    Honor probably knows by now is we do not have any access to

23    these documents nor have we seen them so I do not know whether

24    or not there are any documents specifically at this time for

25    which there's an individual assertion but at a minimum as a

6

1    corporate officer we are asserting privilege and would like

2    the ability to review the documents to see whether we would

3    consider waiving.

4         THE COURT:  Well, who has an objection to letting

5    counsel for Mr. Biestek see the documents that are only

6    related to MSMB or at least there's some indication that they

7    do?  It doesn't seem like anybody does object.  And had you

8    been here at the last conference I would have --

9         MR. McGORTY:  Your Honor, I would also add we are

10   not waiving the privilege as to Mr. Shkreli.  We don't believe

11   we have any superior right to Mr. Shkreli over these

12   documents, so we believe that he has a right to the MSMB

13   documents alongside of Mr. Biestek.  So, we're not waiving the

14   privilege so he can see them, we are retaining the privilege

15   for all third-parties.  We do not consider Mr. Shkreli a

16   third-party.

17        THE COURT:  Right, but if you are going to assert a

18   privilege you need to see the documents.

19        MR. McGORTY:  Correct, absolutely.

20        THE COURT:  So, you need to go look at those

21   documents and do so expeditiously because we're trying to keep

22   this case on track for trial.

23        MR. McGORTY:  Of course, and we've already had

24   conversations with Mr. Verde and with counsel for Retrophin as

25   well and Mr. Shkreli to coordinate our review if Your Honor

7

1   would permit us to see the documents.

2        THE COURT:  I hope you're going to start that

3   imminently, are you?

4        MR. McGORTY:  Your Honor, our understanding is that

5   there is a review to identify the pure MSMB documents, that

6   that review is scheduled to be done on January 5th.  If I'm

7   mistaken about that, I apologize.  My understanding is we

8   would then take those documents identified by the other

9   parties as pure MSMB documents and we would review that subset

10  of documents for any potential privilege documents and comply

11  with the Court's order and create a privilege log by I believe

12  January 20th was the date.  That was our intention.  It would

13  only -- that would be the latest we would review the

14  documents.  If we could look at them sooner, we will but we

15  would comply with that schedule assuming that is correct.

16       THE COURT:  All right.  Do we have a sense,

17  Mr. Verde, of how many documents are at stake in that category

18  of MSMB only, just roughly?

19       MR. VERDE:  It depends on the time period.  There's

20  about a six month time period before we did any billing for

21  Retrophin.  There's about an eight, nine month time period

22  overall we were billing MSMB.  The problem we have, Your

23  Honor, is that the two companies coexisted at the time.  There

24  was a plan as early as, we understand it, 2011 to eventually

25  make Retrophin the main investment vehicle and so what we're

8

1   struggling with is, when we spoke to counsel for Retrophin,

2   how do we determine whether an e-mail that ostensibly seems to

3   be about MSMB implicates Retrophin's interest and we're

4   trying, so we're not in a position to make any judgment calls

5   about that, we're trying to get some kind of agreed upon

6   definition or mechanical search done so we can apply it, this

7   may be a good venue to do that to get everyone to agree what

8   would be considered purely MSMB documents and then we'll do

9   the search as quickly as we can.

10           MR. SHAPIRO:  Your Honor, I had understood that at

11  this point Katten had produced all of the documents to

12  Mr. Shkreli, the Retrophin documents and MSMB documents.

13           THE COURT:  That's accurate.

14           MR. SHAPIRO:  We're comfortable with Mr. Agnifilo

15  and his team segregating the Retrophin documents from the

16  purely MSMB documents and at that point Mr. Agnifilo can share

17  the purely MSMB documents with Mr. McGorty and so this

18  question as to whether or not we could use a search term to

19  segregate what's in Katten's files I think is moot at this

20  point.

21           MR. VERDE:  Well, what we've given -- these are Venn

22  diagrams, so we've given everything that we have regardless of

23  time period where Mr. Shkreli was copied in some way.  There

24  is a universe of documents from the first eight, nine months

25  of the relationship which could arguably be just for MSMB on

1    which Mr. Shkreli was not copied.  So, those are the documents

2    that we're talking about, that was paragraph two I believe of

3    Your Honor's order about any documents regardless of whether

4    Mr. Shkreli was copied on them or not that were purely MSMB

5    documents.

6           So, to be clear, the definition we're looking for is

7    documents from a period of roughly July 2011 to April 2012

8    that Mr. Shkreli was not copied on, those have already been

9    produced, that are purely MSMB and how do we define what that

10   means.

11          THE COURT:  You were counsel for MSMB, Mr. Shkreli's

12   counsel is here, and I think we should try to figure that out

13   because I just have a hard time accepting that the attorneys

14   can't decide on search terms or find a way forward.  It seems

15   to me that with regard to MSMB, Katten was dealing either with

16   Mr. Biestek or Mr. Shkreli, and Mr. Biestek has taken the

17   position that he was subordinate to Mr. Shkreli in matters

18   relating to MSMB.  So, it does seem to me that whether or not

19   he was copied on it, if Mr. Biestek was the only other person

20   with whom Katten communicated regarding its representation of

21   MSMB and its affiliates, that those documents should also be

22   turned over to Mr. Shkreli, should they not?  Does anyone

23   disagree?

24          MR. VERDE:  I believe this is based upon Retrophin's

25   objection that some of those documents would have referred to

10

1  Retrophin, implicated Retrophin's interest, that's where we

2  ran into the --

3          MR. SHAPIRO:  Your Honor, if the communication is

4  with Mr. Shkreli, they have already been turned over to

5  Mr. Agnifilo without our objection.

6          THE COURT:  But if they are communications with

7  Mr. Biestek rather than Mr. Shkreli, they still pertain to

8  MSMB and they should still be turned over, and you can turn

9  those over, I would think, jointly to Mr. Biestek's attorney

10  and Mr. Shkreli to review.

11          MR. SHAPIRO:  For the nine month period?

12          THE COURT:  For the documents that are only

13  pertaining to MSMB which I think Mr. Verde had identified.

14          MR. VERDE:  That's the question, Your Honor, if I

15  may, it is just how do we identify those documents that are

16  the MSMB and don't implicate any Retrophin interest because

17  that is the objection that we got.

18          THE COURT:  That's why Mr. Shkreli is going to look

19  at those and to the extent he determines it is purely MSMB,

20  they go to Mr. Biestek's counsel to review.  Mr. Shkreli and

21  his counsel will be able to recall, in communication with

22  lawyers who are still at your firm who may have been involved

23  in some of those communications, and clarify and recollect by

24  reviewing billing record detail, whether or not that

25  representation pertained to both or either of those entities.

1      MR. VERDE:  So, I think it would be helpful if we

2  were ordered to produce all of the documents for that time

3  period.

4      THE COURT:  I am respectfully ordering you.  Thank

5  you, Mr. Verde.

6      MR. VERDE:  Thank you, Your Honor.

7      THE COURT:  Mr. Shkreli and his lawyer will look at

8  those documents.  Again, you're segregating those documents by

9  client, including Mr. Shkreli as client to the extent he

10 claims to be the client.  Once that determination is made and

11 counsel for Retrophin and counsel for Mr. Biestek are able to

12 review those documents and determine whether there are

13 privileges, they'll make a privilege log.

14     Yes, Mr. Shapiro.

15     MR. SHAPIRO:  Your Honor, I just want to make sure I

16 understand.  At this point all the communications with

17 Mr. Shkreli have been turned over and no one has been pressing

18 Katten for the internal Katten communications or other

19 documents that weren't communications with Mr. Shkreli and so

20 I don't know whether we're now adding to the hundred thousand

21 pages or so of communications with Mr. Shkreli we're now

22 adding internal Katten communications and documents that

23 weren't communications at all and at that point we would have

24 a concern about providing everything in Katten's files to

25 Mr. Shkreli's counsel because the premise of the original

1    analysis on the attorney-client privilege was that Mr. Shkreli

2    had already been a party to many of those communications.

3              THE COURT:  I don't think Mr. Verde was talking

4    about internal Katten communications, nor was I.  When I

5    directed that additional documents be turned over to

6    Mr. Shkreli and his lawyer, I was not referring to those

7    internal communications, that's another category, and I would

8    assume that for those documents, the internal Katten

9    communications, that Katten will assert the work product

10   doctrine over those documents.

11             MR. VERDE:  No, Your Honor, we're happy -- they

12   belong to our clients, it is just a matter of which client

13   gets the first crack at them.

14             THE COURT:  Well, don't you know what your

15   communications related to when you discussed your clients?

16             I'm just having a hard time understanding how your

17   firm could be so in the dark about what you did, and for whom.

18             MR. VERDE:  The problem, Your Honor, is that there's

19   a period of time where we're representing MSMB.

20             THE COURT:  Yes.

21             MR. VERDE:  Retrophin exists at that time.

22             THE COURT:  Yes.

23             MR. VERDE:  And so, ostensibly everything from that

24   period is MSMB work.  We are prepared -- we're happy to

25   produce them, we have them segregated.

13

1          THE COURT:   These are your internal communications

2    regarding MSMB?

3          MR. VERDE:   Everything.

4          THE COURT:   All right.   No issue there.

5          MR. VERDE:   By the way, Your Honor, this is in

6    response to paragraph two of your order which ordered us to

7    produce everything purely MSMB without regard to whether

8    Mr. Shkreli was communicated on it or not.   So, that would

9    include our internal communications, it would include

10   everything we did during that time period.   The problem we

11   have is that when we went to produce that, Retrophin said

12   because Retrophin's predecessor, Retrophin LLC, existed at the

13   time and it was the same people, the same two people operating

14   both companies and there was a plan to move the primary

15   investment business to Retrophin, it wasn't -- there were

16   going to be communications that also could potentially be

17   claimed by Retrophin as they have privacy over that.

18          So, it is not a matter of us not being able to say

19   what we did, from our point of view that was all MSMB

20   documents.   It was in conversations with Retrophin's counsel

21   who said if Retrophin's interests are implicated, we assert

22   privilege, we're instructing you not to produce them.   The

23   problem we have is, well, how do we determine that because

24   that's a judgment call as to whether a communication somehow

25   implicated Retrophin's interest.   So, we're actually prepared,

1  everything is ready to go, search terms, we're just looking to

2  get some sort of clear instructions so we are not making

3  judgment calls as to whether a communication might have

4  implicated Retrophin's interest.

5          THE COURT:  All right.  What I'm focusing on, you

6  use the term "communication," which I think is a term of art

7  when discussing attorney-client privilege.  The communication

8  is between the attorney and the client.  What Mr. Shapiro is

9  talking about is internal Katten communications between the

10 attorneys for either or both of these entities and its

11 inability to discern whether those communications had

12 overlapping subject matter.

13         MR. VERDE:  Right, and that is part of what we

14 understood -- we understood that those internal communications

15 were part of paragraph two of your order so we pulled those

16 all together but we have the same problem, it's a matter of

17 opinion as to whether a communication we're having that

18 appears to be purely MSMB somehow implicates Retrophin's

19 interest.  That's why we had suggested we'll produce

20 everything except those documents, communications, whatever we

21 have that actually has the word Retrophin in it.

22         MR. SHAPIRO:  Your Honor, if I may, just two

23 quick points; one is all of this results from a subpoena by

24 Mr. Shkreli directed at Katten and I had the impression that

25 Mr. Shkreli's counsel was for the moment content with

1   receiving the communications between Mr. Shkreli and Katten

2   such that we don't have to dig deeper at this point to concern

3   ourselves with documents that are not communications with

4   Katten and then if we are going to concern ourselves with that

5   additional universe of documents with respect to the nine

6   month period when Katten was only representing -- or it's not

7   true that they were only representing MSMB, they were only

8   billing MSMB; we have said to Mr. Verde that for most of that

9   period, for the period through December 2011 before January

10  2012, he can apply the search term Retrophin, segregate out

11  those documents and provide the rest of the 2011 documents to

12  Mr. Shkreli if we even have to reach this category of

13  documents.

14          THE COURT:  So, to the extent you don't feel

15  comfortable that you have a sufficient order to do that and

16  you're asking for an order, I'm granting that request.

17          MR. VERDE:  We will do a search for everything, just

18  to be clear, so it is the period from April 2011 to

19  December 2012?

20          MR. SHAPIRO:  No, through December 2011 before

21  January 2012; if you segregate out anything that has the

22  search term Retrophin you can provide the rest to the MSMB

23  parties and the only other period Mr. Verde is talking about

24  is the period from January to April 2012 when Katten was

25  providing significant services to Retrophin and there if there

1    really is a need to try to mechanically segregate out the

2    Retrophin documents by search terms, I would need to get back

3    to Mr. Verde about that in the next day or two, but it's also

4    just a four month period, Mr. Verde's firm could look at the

5    documents in that four month period and determine which of

6    those relate to Retrophin and which relate to MSMB, I don't

7    think that's a substantial burden and we would be prepared to

8    rely on their good faith in that exercise.

9            MR. VERDE:  It's not a burden issue, Your Honor, it

10   is a second guessing issue when we're asked to make judgment

11   calls.

12           THE COURT:  All right.  Again, it seems that if you

13   don't have a clear sense of which client is being served in

14   that communication, have Mr. Shkreli's attorney look at it.

15           MR. VERDE:  Very good.

16           THE COURT:  Is there anything else that is unclear

17   about where we are with regard to the documents?

18           MR. VERDE:  I think from our point of view we have

19   very clear instructions, Your Honor.

20           MR. SHAPIRO:  Your Honor, for the period April 2011

21   or so to April 2012 is what's -- it's not clear to me what's

22   getting turned over to Mr. Shkreli; it is not the internal

23   Katten emails, the e-mails with Mr. Shkreli have already been

24   turned over, so is it just loose documents relating to MSMB?

25           THE COURT:  You're creating all these problems by

1   conjuring up issues.  Do you even know such documents exist?

2          MR. SHAPIRO:  Yes, I assume so in their files,

3   Mr. Verde has said those files exist.

4          THE COURT:  Have you tried to look at anything they

5   have that pertains to only Retrophin?

6          MR. SHAPIRO:  I know there are documents in early

7   2012 that relate only to Retrophin because --

8          THE COURT:  Have you seen those?

9          MR. SHAPIRO:  I've seen the documents in our files,

10  I haven't seen the documents in Katten's files.

11         THE COURT:  Well, if Katten is willing to give those

12  to you why haven't you looked at them?

13         MR. SHAPIRO:  Katten hasn't been willing to give

14  them to us because Katten expressed a concern.

15         THE COURT:  These are documents that pertain only to

16  Retrophin, I don't think there's a dispute.

17         MR. SHAPIRO:  Katten isn't willing to identify those

18  documents, they're not willing to review the documents and

19  make judgments about which relate to Retrophin and which

20  relate to MSMB even though we're prepared to delegate that

21  discretion to them for the four month period from January to

22  April 2012 and if they have questions about specific

23  documents, they can ask us.

24         THE COURT:  To the extent that Mr. Shkreli is

25  looking at those documents, we had set up a protocol I thought

18

1    that they would review the documents they get from Katten,

2    they will give documents relating to Retrophin to you to

3    review and to decide whether to assert a privilege and the

4    same is true for the Biestek MSMB documents.

5              Are you reviewing documents, counsel?

6              MR. AGNIFILO:  Yes, Your Honor, we are.

7              THE COURT:  Are there documents that fit into the

8    category that Mr. Shapiro described that you're having issues

9    with?

10             MR. AGNIFILO:  Not that I've seen but we're still

11   doing word searches and we can look specifically.  One of the

12   things that I hope doesn't get lost, I think this morning it's

13   gotten lost a little bit, we're actually communicating I think

14   fairly well all of us and that's important from my perspective

15   because I think the more that we -- we've imposed on the Court

16   a great deal on something that's very, very detailed and

17   specific, quite frankly, that experienced lawyers should be

18   able to do and I think we're actually being fairly productive.

19             Retrophin has voiced some specific concerns to us

20   and I think they're right about those concerns and when we

21   agree, we try to agree.  So, we're talking about issues of

22   waiver, scope of different waivers and we're in daily

23   communication about that.  Mr. Verde and his firm I think

24   couldn't be more agreeable and so, what I'm hoping, and we

25   haven't really succeeded quite in this, is to try to, to the

1    extent we can unburden the Court of this, we're trying to do

2    that.  At the end of the day, we're not at the end of the day

3    yet, we might have disagreements on certain areas but we're

4    trying to limit that and be sensitive to everybody's concerns.

5    I mean from Katten's perspective, Katten doesn't want be to in

6    a position of saying this is a Retrophin document, this is an

7    MSMB document.  I think part of the problem, and I know

8    Mr. Verde and his team has been diligent in trying to resolve

9    the problem, is it's an organic development of how MSMB kind

10   of grew into Retrophin so you get issues along the way that I

11   think are hard, maybe even impossible for them to resolve.

12          So, going forward, and we've been speaking with each

13   of our colleagues almost on a daily basis so there's probably

14   no problem we can't overcome.  We may at some point, but we're

15   not there yet, agree to disagree on certain areas and then

16   we'll bring that limited area to Your Honor in January

17   sometime for a resolution.  And so, to Your Honor's question,

18   what we can do, we can do word searches based on anything that

19   Mr. Shapiro suggests and we can look specifically for that.

20          THE COURT:  Well, no, I appreciate that but in some

21   of the correspondence I got notifications that the attorneys,

22   I think it was Retrophin's attorneys and Katten couldn't agree

23   on word searches.  That seemed absurd to me, quite frankly,

24   but so what we are doing now is trying to find the best way

25   forward.  I don't know, with all due respect to Mr. Shapiro,

1    to raise the what if-s and what if there's this or that, I

2    don't know that that's a helpful exercise.  It seems to me

3    that Katten knows what it has, it has probably told you in

4    more detail than it's ever told me or anyone else what they

5    might have that might implicate Retrophin's interests.  To the

6    extent they are unsure or have concerns, it seemed to me that

7    Mr. Shkreli was the one person in the room who had seen these

8    communications who had invoked the services of Katten to

9    assist either himself, Retrophin or MSMB and that he would be

10   in the best position to make that call.  So, there is the

11   protocol, absent an agreement about word searches or any other

12   way, to move forward and that's why ultimately we came to this

13   solution.

14             MR. SHAPIRO:  Your Honor, if there are additional

15   documents that Mr. Agnifilo needs from Katten, I commit to

16   working out what if anything needs to be done by the end of

17   the week, I'm comfortable that we will be able to sort that

18   out.

19             THE COURT:  All right.  I appreciate that and I

20   don't mean to be impatient or sound impatient with you but it

21   seems to me that we get something resolved and then three or

22   four of you write repeated letters back and forth saying, but

23   wait, what about this, what about that, and sometimes it's a

24   concern based on actuality and sometimes it is a hypothetical

25   concern but we're trying to move this case forward and to get

1    the parties the documents they need to proceed to motion

2    practice or trial.  So, I am trying to address all of your

3    concerns.

4              Now, have the parties agreed to the scope of the

5    waiver?  I think that Retrophin had been concerned that its

6    agreement to waive in a limited way production of documents

7    would not be used against it.  This was reflected in

8    Retrophin's December 6 letter.  Have there been any further

9    disputes or concerns, Mr. Shapiro or Mr. Agnifilo?

10             MR. AGNIFILO:  Yes, we've been -- Retrophin came

11   forward to us and said they're willing to expand the waiver in

12   certain discrete areas.  We looked at some of the things that

13   we wanted to try to see exists in the documents, we went back

14   to them and said we want you to consider expanding the waiver

15   in these additional, I think it was six discrete areas and

16   Mr. Shapiro I think in good faith saying that he thinks he can

17   accommodate us, he's not entirely sure, he has to go back and

18   check with his client and all that, but we're working

19   productively through those issues and I think we'll be able to

20   do that.

21             THE COURT:  All right.  Good.

22             Now, I think the government had raised some issues.

23   Did you want to be heard?

24             MS. KASULIS:  Your Honor, I think, yes, please, just

25   very briefly.  Your Honor, I think with respect to the first

1   concern with Mr. Biestek's privilege assertions, I think we

2   just need to see whether there in fact are any issues, whether

3   he's had an opportunity to review documents and we determine

4   whether or not he is going to in fact assert a privilege.  So,

5   the government's position at this time is it may be a little

6   early to argue that.  We did want to put the Court on notice

7   that the government does have concerns about these privilege

8   assertions or potential privilege assertions.

9        We did request a clarification in the Court's orders

10  regarding the production of privilege logs by all the parties

11  so that we all have a sense of what's being held back and the

12  reasons for the withholding of documents that we can then, if

13  we do have any differences of opinion as to various

14  assertions, we can bring maybe just that very specific set of

15  documents to the Court's attention.

16        THE COURT:  Right.  It's going to be difficult for

17  me to resolve disputes about privilege until I know what is

18  being asserted by Mr. Biestek, by Retrophin and by Mr. Shkreli

19  who started this whole process by moving for an order

20  compelling production of documents pursuant to his subpoena.

21  There will be issues to straighten out obviously and I know

22  that Mr. Shkreli's position has done a 180-degree flip from

23  the last conference.  I have to say, and I'm sorry about your

24  personal circumstances that resulted in you not being here,

25  but I just had some issues over the idea that two very

23

1    experienced high caliber attorneys like yourself and
2    Mr. Brafman could not have communicated on a very essential
3    issue regarding a privilege, and it did appear to me at that
4    conference that there was a clear waiver just based on what
5    Mr. Brafman said and Mr. Shkreli's assent to allowing others
6    to review the documents.  Those are things I guess we'll have
7    to address later once we are further informed as to whether or
8    not there are documents over which you assert a privilege.
9    But I do think that taking steps back and forth and reversing
10   positions makes it very difficult to move forward especially
11   since the whole idea with this exercise is to give your client
12   documents that he may need to assess whether or not to assert
13   an advice of counsel defense and to make motions that may flow
14   from that decision if he makes it.
15         So, I'm not making any firm decisions right now
16   about privileges, about waivers and about whether someone is
17   entitled to assert a particular privilege on behalf of defunct
18   entities but those will be issues once we have further
19   clarification.
20         MR. AGNIFILO:  On that point, Judge, and I, from my
21   perspective and I apologize for the confusion that was caused,
22   I mean it all started at the meet and confer when I thought
23   our position was clear and then after the fact I learned that
24   we took a different position in court and that's why I wrote
25   the follow-up letter to Your Honor.  The one point I want to

1    make is the only one talking about this being a privilege in

2    regard to Mr. Shkreli so far is the government.  We served the

3    subpoena to get what we thought rightfully belonged to us,

4    whether it is our property in some property law sense or

5    otherwise, and just the genesis of the subpoena was when we

6    came to believe that the government didn't have all of the

7    documents because there was a selective waiver and the

8    prosecution wasn't based on all of the documents, we contacted

9    Mr. Verde at Katten and we said we would like Mr. Shkreli's

10   property and Mr. Verde said on behalf of Katten, we have no

11   problem giving it to you but there are going to be privilege

12   issues, not your privilege, other privileges, Retrophin's

13   privilege, MSMB's privilege that we have to navigate before we

14   give you anything, so that's why we gave the subpoena.

15           At this point I don't even see how a Shkreli driven

16   privilege is even teed up as an issues because at this point

17   we're just trying to get the documents that we're saying are

18   our documents and that Katten has said we're willing to give

19   you.  So, now we're navigating Retrophin's privilege and all

20   of the issues that flow from that because of the way MSMB and

21   Retrophin sort of interface, so we're bogged down in that.

22           So, at this point, I know the government wrote a

23   letter to Your Honor asking that we do a privilege log, I just

24   think we're jumping the gun.  I mean I don't think we're there

25   yet.  I think in January when we see what we have, we see what

1   all this means, that there will be decisions made and I think

2   at that point, I see the government's point but I just don't

3   think we're they were yet, we're still trying to get what we

4   feel is our property which is why we did the subpoena.  So,

5   all a long winded way of saying I agree with Your Honor that

6   it is not ripe for decision yet and it may be one day but it

7   is certainly not today.

8            THE COURT:  I think at the last conference

9   Mr. Brafman indicated that he would serve a subpoena on

10  Retrophin to get additional documents, is that accurate?

11           MR. SHAPIRO:  I think he said something like that

12  but we haven't received a subpoena.

13           THE COURT:  All right, because you had agreed that

14  if you get the subpoena you would in all likelihood provide,

15  absent some review or perhaps objections or assertions of

16  privilege, that you were planning to provide documents

17  pursuant to a subpoena.

18           MR. SHAPIRO:  Yes, there was a subpoena for MSMB

19  documents and we would respond to that subpoena.

20           THE COURT:  Right.  All right.  So, you might want

21  to consult with Mr. Brafman.

22           MR. AGNIFILO:  Very good, Judge.

23           THE COURT:  Or review the transcript.

24           MR. AGNIFILO:  Right.

25           THE COURT:  I think there was a plan in place.

1   All right.

2          MS. KASULIS:  Your Honor, just one quick point of

3   clarification; I understand Mr. Agnifilo's point about it is

4   too early to determine whether there's going to be any

5   assertions of privilege because documents haven't really even

6   been reviewed yet.  If there is going to be an assertion of

7   privilege by Mr. Shkreli, what the government is requesting is

8   that there be a privilege log created.

9          THE COURT:  No, that's --

10         MS. KASULIS:  If he's not going to assert

11  privileges, obviously there would be no need for such a log.

12         THE COURT:  Any party that is asserting a privilege

13  is required to provide a log so that we can inform all other

14  parties about what documents are at issue and if the parties

15  can't resolve it, I can at least resolve it and I have

16  indicated that I'm willing to do an in camera review given the

17  magnitude and volume of the documents.  I'm hoping that review

18  will not entail a large volume and that you can continue to

19  try to resolve your differences.

20         Is there anything else that the parties want to

21  bring to my attention before we adjourn?

22         MS. SMITH:  Your Honor, we just wanted to kind of

23  clarify the scheduling order going forward because the

24  severance motions have been adjourned indefinitely, the last

25  set of motions I believe were set to be briefed in January,

1   then we have a March 9th deadline.  We just wanted to

2   understand is the Judge going to set a severance schedule and

3   then move back the other motions in limine?

4           THE COURT:  I think that the whole issue of

5   severance is still undetermined given the status of the

6   document review.  It's not happening as quickly as I would

7   like.  I thought there were representations that we could get

8   through this very quickly but that doesn't appear to be the

9   case.  So, yes, the severance date has come and gone.  We can

10  set another control date by which you're going to have to make

11  the motion or not.  Given your current review, what would be a

12  reasonable time to have that motion practice?  And I don't

13  know whether Mr. Greebel is going to join in those motions or

14  not.

15          MS. RUBIN:  Your Honor, our client is evaluating

16  whether or not he will make his own severance motion but, of

17  course, the timing for us would be contingent on our receipt

18  of any documents that remain to be produced and it would be

19  hard for us to evaluate in a vacuum not having those documents

20  how much more time Mr. Greebel would need.

21          THE COURT:  I think we have end of January as a

22  target date to get all of this review accomplished, correct?

23          MR. AGNIFILO:  Yes, Judge.

24          THE COURT:  How soon after that could the parties

25  make a determination regarding the motion practice?  And

28

1  ultimately I don't know whether anyone is going to continue to
2  object or will have any objections to have Mr. Greebel review
3  the documents as well.  It doesn't appear that Mr. Shkreli
4  will object.
5        MR. AGNIFILO:  No, we don't object, Judge.
6        THE COURT:  All right.  Are you going to object to
7  having the government see the documents?
8        MR. AGNIFILO:  I think at this point I don't know
9  the answer to that.  I think at the end of January when we've
10  actually reviewed them I think I'll have a much better idea of
11  our position on that.
12        THE COURT:  I mean the government knows that you
13  don't get a per se look at attorney-client documents but if
14  there is a waiver or if there is an advice of counsel defense
15  then --
16        MR. AGNIFILO:  Clearly.
17        THE COURT:  -- the landscape changes.  When they do
18  a search, as you know, they have to wall off any
19  attorney-client documents.  So, all right.  Well, let's then
20  set a prospective date for motion practice after the
21  completion of document review and the assertion of privilege
22  issues.
23        MR. AGNIFILO:  I know, Judge, I think we're
24  supposed to -- Retrophin and I are supposed to get together by
25  January 27th, 2017 to agree on all the privilege and document

29

1   issues, so maybe 30 days after that should bring us to the end

2   of February.

3          THE COURT:  Can we throw Mr. Biestek into the loop

4   too since he is asserting a privilege?

5          MR. AGNIFILO:  That's fine, Judge.

6          THE COURT:  All of you ought to get together and

7   decide.  So, what date do you want?

8          MR. AGNIFILO:  Let me see if I can get my calendar

9   up quickly; a date in late February that's convenient to the

10  Court and government and all counsel.

11         THE COURT:  Yes, Ms. Rubin.

12         MS. RUBIN:  On behalf of Mr. Greebel, we'd ask for

13  some additional time given we won't be able to review any

14  documents until Mr. Shkreli and his counsel are done with

15  their review.  Mr. Greebel will need time to digest any

16  additional documents produced in contemplation of any

17  severance motions he may make.  I'd ask for the end of

18  March, Your Honor.

19         THE COURT:  I think we're all in agreement that the

20  trial date in June is still a hard date, so if you're talking

21  about having all of the briefing completed by the end of

22  March, that's one thing but we're not going to start briefing

23  in March and throw this into April because there will be other

24  motions I believe.

25         MS. RUBIN:  Your Honor, we'd be fine with the

1    motions being fully briefed by the end of March so that

2    motions themselves and the briefs will be due in early March.

3              THE COURT:  Have the motions fully briefed by the

4    end of March?  I might bring that forward actually.

5              What is the proposal?

6              And there are a whole host of other motions I think

7    that the defense was contemplating; is that correct?

8              MR. BRODSKY:  Yes, Your Honor.

9              THE COURT:  How do you propose to schedule those?

10             MS. RUBIN:  Your Honor, if I may suggest that the

11   parties have an opportunity to confer with one another and

12   bring back a proposal to Your Honor?  I think something would

13   be served by us having an opportunity to confer.

14             THE COURT:  The government is shaking its head so

15   I'm reading that as they'll talk to you but don't expect any

16   accommodations.  Look, I would rather that you all did confer

17   and really try in good faith to meet each other's needs.  I'm

18   not sure that Mr. Greebel is going to be able to have the

19   amount of time that he hopes to make decisions about his

20   further motion practice but I do think that the parties need

21   to try to work this out with the idea that we maintain our

22   June trial schedule.

23             Yes, Mr. Verde.

24             MR. VERDE:  At the risk of volunteering which is

25   always a bad idea, I have a suggestion that may help move

1   things along a little bit.  The same theory, the same

2   rationale the Court used by which Mr. Shkreli should be

3   allowed to look at the documents because he by definition has

4   already seen them, we would be willing to do the exact same

5   thing for Mr. Greebel so that any emails, any communications

6   in which he is listed we'll do a search and we can produce

7   those to Mr. Greebel's counsel.  We can do that within the

8   next couple of days which should hopefully expedite some of

9   this.

10            THE COURT:  I'm sure I'm not hearing any objection

11  from them on this proposal, I'm not hearing any objections

12  from anyone else, so I appreciate that very much, Mr. Verde,

13  thank you.  So, in the next few days?

14            MR. VERDE:  We should be able to get it out by

15  Monday.

16            THE COURT:  All right, perfect.  I will be here

17  through the holidays and I'm hoping, I'm not inviting you to

18  bring more disputes to my attention but I do want to keep this

19  on track so I'm working through, I'll be here.  Did the

20  government --

21            MS. SMITH:  Your Honor, just to be clear for when we

22  meet and confer, does the Court still want to do severance

23  first and then the other motions in limine afterward or do you

24  want one date for all the remaining briefing?

25            THE COURT:  I would like to have as much efficiency

32

1  as possible in the briefing of any remaining motions and

2  motions in limine don't necessarily depend on whether or not

3  the case is severed, right?

4          MS. SMITH:  Certainly some of them might --

5          THE COURT:  I mean many times even if you sever a

6  trial, evidence is going to be admissible against potential

7  parties in any event so I don't see why we have to necessarily

8  delay all of the motions but I do think that we need to keep

9  this on track for June.

10          MR. BRODSKY:  Your Honor, respectfully, we modeled

11  our proposal which initially the government had opposed off of

12  Your Honor's own case management orders and as they reflect in

13  your other cases, motions in limine if that's what the

14  government is talking about, about particular pieces of

15  evidence relating to trial often come at some period before

16  trial.  What Your Honor I believe set a schedule for is

17  severance during this period of time which obviously has been

18  delayed and then a January 31st other motions deadline which

19  were other motions the defense was contemplating but not

20  motions in limine and then later on after the government

21  produced their exhibits and their witness list we would assess

22  the evidence and determine whether we had motions in limine so

23  Your Honor could set a schedule accordingly.  We are happy to

24  meet and confer with the government and the other parties but

25  what we would suggest is a severance schedule and other motion

33

1    schedule that Your Honor had contemplated which we could

2    discuss dates on and then to keep the same schedule that Your

3    Honor has already imposed with respect to the exhibits, the

4    witnesses and motions in limine.  We don't think that the

5    severance impacts the exhibits, the witnesses and other

6    motions in limine schedule.  The severance is a distinct sort

7    of issue and that is what's up in the air that we should meet

8    and confer and propose to Your Honor a date for that.

9              THE COURT:  I think that one thing that is clear is

10   that the government hasn't seen some of the documents that are

11   currently being reviewed and I don't know whether any of those

12   documents will be the basis for any disputes between the

13   parties.  I would urge you all to talk and try to resolve.

14   I'd like not to alter too much of the schedule if possible and

15   to the extent the severance motion will be made, we'll need to

16   schedule an expedited schedule for that.

17             I want you all to understand this is one of over

18   300 cases so you're not the only game in town, you demand a

19   lot of time but I have other cases to tend to and other

20   trials.  But for the luck of settlements, I had six trials

21   between November 14th and January 31st, so you need to just be

22   mindful of my schedule as well and that's why I'm not taking a

23   vacation over the holidays like some of the rest of you.  To

24   the extent you can work cooperatively to adjust the schedule

25   to accommodate this lengthy review process which again is

34

 1   taking far longer than I would have hoped and what the parties

 2   had previously hoped, I would urge you to do that.

 3          So, can you meet and confer and provide an adjusted

 4   schedule sometime in the next couple of weeks?

 5          MS. KASULIS:  Absolutely, Your Honor.

 6          MR. AGNIFILO:  Yes, Judge.

 7          MS. RUBIN:  Yes, Your Honor.

 8          THE COURT:  All right, good.  Thank you.

 9          Do you want to set another status conference date?

10   We don't know whether you're going to be making a severance

11   motion, I don't really want to set that as a particular

12   argument date for the severance motions but we should have

13   another status date sometime sooner rather than later, so we

14   can address any outstanding disputes, maybe the end of January

15   after you've gotten through the document review, does that

16   make sense?

17          MR. AGNIFILO:  That makes sense from our

18   perspective.

19          THE COURT:  Ms. Jackson, do you have a date for us?

20          THE CLERK:  Yes, Judge.

21          THE COURT:  I think we're on trial that week.

22          THE CLERK:  Yes, Judge.

23          The 25th at noon.

24          MS. RUBIN:  Your Honor, if we could make it in the

25   afternoon that would be preferable for us.

35

1      THE COURT:  Noon, is that close enough to the
2  afternoon?
3      MS. RUBIN:  1:00 would be much better.
4      MR. AGNIFILO:  Judge, I am sorry, I have a case in
5  Trenton that day.
6      THE CLERK:  The 26th.
7      MR. AGNIFILO:  The 26th is fine.
8      THE CLERK:  2:00 p.m., does that work?
9      MS. RUBIN:  Yes.  Thank you very much.
10      THE COURT:  Do you need afternoon every time or just
11  on that date, Ms. Rubin?
12      MS. RUBIN:  As a general matter going forward, Your
13  Honor, we will need afternoon.  Thank you.
14      THE COURT:  All right.
15      MS. RUBIN:  Thank you.
16      THE COURT:  Yes.
17      MR. VERDE:  Do you want Katten at this status
18  conference?
19      THE COURT:  Only if there's still going to be an
20  argument or a fight about what is going on with regard to the
21  documents that you have and the same is true for Retrophin and
22  Mr. Biestek.  I'm hoping that you'll have resolved your
23  differences by then but we will have privilege logs -- it may
24  be necessary to have your presence.
25      MR. SHAPIRO:  Your Honor, if I may burden you with

36

1    one other point so we don't have to burden you after the

2    conference?

3              THE COURT:  All right.

4              MR. SHAPIRO:  Your Honor, the current plan, Katten's

5    communications with Mr. Shkreli are being provided to

6    Mr. Shkreli and the Retrophin documents are being returned to

7    Retrophin.  The Court has now ordered Katten to produce the

8    communications with Mr. Greebel to Mr. Greebel's counsel which

9    I understand but by the same reasoning the Retrophin documents

10   should be returned to Retrophin and so the work doesn't have

11   to be done twice, we can let Mr. Brodsky know what those

12   documents are after Mr. Shkreli's counsel has reviewed them

13   but we just want to ensure that the Retrophin documents are

14   going to be returned so that we can assert the privilege and

15   log them.

16             THE COURT:  You mean those documents over which they

17   want to assert privilege and documents that they're not

18   interested in?

19             MR. SHAPIRO:  Documents --

20             THE COURT:  You want all your documents back, is

21   that right?

22             MR. SHAPIRO:  The Retrophin documents where we

23   haven't waived the privilege, correct.

24             THE COURT:  Will Mr. Greebel's counsel agree to

25   that?

37

1          MS. RUBIN:  Your Honor, I think that imposes a

2   logistical burden on us that's a little bit difficult.  In the

3   same way that there have been discussions on this side of the

4   table about not being able to distinguish between MSMB

5   documents on the one hand or Retrophin documents on the other,

6   I just want to make sure that I understand the flow of

7   documents that Mr. Shapiro is contemplating because it sounds

8   as if documents would flow from Katten to us and that we would

9   be then responsible for sort of returning some in one place

10  and returning others in another place.  I'm not sure that

11  that's what Mr. Verde contemplated and certainly it is not

12  what my client contemplated at least in terms of seeing

13  documents that he is to or from or cc-d.

14          MR. SHAPIRO:  I mean these are documents that are

15  covered by Retrophin's privilege.  Mr. Shkreli is going to

16  review them.  If the documents relate to Retrophin, they're

17  going to be returned to us but the purpose of that is defeated

18  if those documents are otherwise sitting in Mr. Greebel's

19  files and so we're just asking for those Retrophin documents

20  to be returned to us or Mr. Greebel can receive those

21  documents after Mr. Agnifilo has completed his review.

22          THE COURT:  No, I don't want to have it staged like

23  that.  I would like Mr. Verde to provide those documents by

24  Monday, as he represented he could, and that that review

25  start.

1          MR. SHAPIRO:  We could give Mr. Greebel's counsel an

2    electronic list of the documents that have been returned to us

3    so that the documents can be returned to us by Mr. Greebel's

4    counsel as well, otherwise all of our privileged documents are

5    sitting in Mr. Greebel's files which takes us far from the

6    pragmatic solution that we sought to find with Mr. Shkreli's

7    counsel.

8          THE COURT:  Does Katten have more than one set of

9    documents that will be provided?

10          Do you have just one set of documents that are being

11    reviewed by Mr. Shkreli or do you have a duplicate that you're

12    going to be providing to Mr. Greebel on Monday?

13          MR. VERDE:  We have one universal set of documents,

14    we searched them to find anything to or from Mr. Shkreli,

15    those have already been produced to Mr. Shkreli.  What I

16    offered because I thought it was helping was to give

17    Mr. Greebel's counsel an opportunity to start their review, we

18    would do the exact same search, anything to, from, cc-ing

19    Mr. Greebel, and I can represent to the Court that I don't

20    know the exact number, a tremendous percentage of the

21    communications involve Mr. Shkreli and Mr. Greebel, not

22    surprising.  So, the idea would be there would be some

23    overlap.  The issue about returning the documents to Retrophin

24    on which they are waiving privilege, that doesn't impact us.

25    I think that's an issue between counsel for Mr. Greebel,

1   Mr. Shkreli and Retrophin.

2          MS. RUBIN:  Your Honor, respectfully, I think I may

3   have a suggestion that may advance the ball; in the same way

4   Your Honor asks that we not engage in hypotheticals, rather

5   than try to anticipate what those documents are going to look

6   like and who they belong to, we will represent to Your Honor

7   that in good faith we will review them and we will have a

8   conversation with all other interested parties at the end to

9   determine where they should be returned.  If we have a

10  conflict, we can come back to Your Honor.

11         THE COURT:  You have a deadline, you realize you are

12  on the same time frame as Mr. Shkreli and you have a lot of

13  resources there to help you do your document review.  I don't

14  want this delayed at all.

15         MS. RUBIN:  Your Honor, we hear you loud and clear.

16  Thank you.

17         THE COURT:  All right.  So, I think that you should

18  try to adhere to the same protocols that we've set out for

19  Mr. Shkreli and his attorney so that Retrophin can feel

20  confident that its documents are safe and within its control

21  and it has a sense of the documents that may be useful to the

22  defense but also that it wishes to maintain some sort of

23  privilege over.  And I would assume, Mr. Shapiro, that to the

24  extent you've made accommodations and broadened your waiver

25  for Mr. Shkreli, you would also make those same accommodations

40

1    for Mr. Greebel.

2              MR. SHAPIRO:  Yes, except we've asked for the

3    parties' agreement that the topics over which we've now

4    voluntarily waived would not be invoked for the defendants to

5    assert a broader subject matter waiver.

6              THE COURT:  Yes.  At this point I think we're not

7    making any determinations about waivers.  I think that

8    Retrophin is trying to cooperate and to provide an opportunity

9    for defense counsel and their clients to review documents over

10   which it asserts a privilege and he's concerned that defense

11   counsel not come later and assert that they've made a waiver.

12             MR. SHAPIRO:  Further waiver.

13             THE COURT:  A further waiver.

14             MR. SHAPIRO:  When we get all the documents back on

15   January 6 we will log the documents over which we're asserting

16   the privilege and implement the waivers that we've made by not

17   logging those documents and producing them back to the

18   defendants and at that time we would be asking the defendants

19   to agree that the additional waivers that we've made since the

20   waiver that we made in the summer of 2015 would not be the

21   basis for arguments about a broader subject matter waiver.

22             MR. AGNIFILO:  We agree, we agree to that.

23             THE COURT:  Will Mr. Greebel's counsel agree?

24             MR. BRODSKY:  If what he's saying is that we're

25   separating the prior waivers that were made already, the

1   potentially selective waiver that has already taken place with

2   Retrophin and we're setting that aside and reserving our

3   rights to come back to the Court and argue that that was a

4   selective waiver using it as a sword and shield and therefore

5   we have access to other documents, setting that aside, if

6   there are other discrete areas they're waiving now, we will

7   not argue based on those waivers that it results in a broad

8   waiver if that's --

9           MR. SHAPIRO:  That's correct, that is our position.

10          THE COURT:  All right.  So --

11          MR. SHAPIRO:  That the protection I am now seeking

12  does not apply to our waiver from the summer of 2015 which we

13  understand is fair game.

14          THE COURT:  Right, so you're not going to come back

15  post-summer waiver and argue that Retrophin has made

16  additional waivers.

17          MR. BRODSKY:  Right, based on the additional waivers

18  they make now starting in December 2016 to us, we will not

19  argue that those additional waivers result in a broad waiver.

20          THE COURT:  Are you satisfied?

21          MR. SHAPIRO:  Very, that's fine.

22          THE COURT:  Good.

23          MR. SHAPIRO:  Your Honor, one other point of

24  clarification, when Mr. Verde made his proposal with respect

25  to Mr. Greebel, we understood that it was the subset of

42

1   communications with Mr. Shkreli that have already been

2   produced to Mr. Shkreli, Mr. Greebel would receive the

3   communications that included Mr. Greebel and we're okay with

4   that.  We just want to make sure that we're not now producing

5   to Mr. Greebel a broader set of communications between

6   Mr. Greebel and Retrophin where Mr. Shkreli wasn't even a

7   party to the communication because then we're far beyond

8   what's been produced to Mr. Shkreli so far.

9           THE COURT:  Mr. Verde, there were documents where

10  the communication might not have been directly with

11  Mr. Shkreli but he is indicated as having received a copy and

12  those are being provided, correct?

13          MR. VERDE:  Yes, that's right, Your Honor, those

14  have already been provided to Mr. Shkreli.  We will do as ever

15  directed.  We could either apply it to the entire universe of

16  documents, anything that Mr. Greebel was a communicant, or we

17  can just do it as a subset of the documents that were produced

18  to Mr. Shkreli, the ones that were produced to Mr. Shkreli on

19  which Mr. Greebel was also a communicant.

20          THE COURT:  Why does Mr. Greebel need more than

21  that, why does Mr. Greebel need to see every document

22  reflecting a communication that he might have had with MSMB or

23  Retrophin if the issue is whether Mr. Shkreli relied on

24  Mr. Greebel's advice regarding a particular matter that is now

25  the subject of the charges?

1           MR. BRODSKY:  Your Honor, we did not serve a

2    subpoena on Katten but we may serve a subpoena on Katten if --

3    as a matter of efficiency to save time it does seem to make

4    sense to me that this search be done and we get all the

5    documents for which Mr. Greebel has already seen and in which

6    he was already on.  If there's an objection to that, it does

7    seem to treat us a little bit unfairly.  Now, we didn't serve

8    the subpoena --

9           THE COURT:  Well, you're not raising an advice of

10   counsel defense, that's the big difference.

11          MR. BRODSKY:  Your Honor, to address an advice of

12   counsel defense, should Mr. Shkreli make that determination

13   now or at some point in the future, that would have an impact

14   on us certainly if they did assert an advice of counsel

15   defense.  We should be able to see other documents that

16   Mr. Shkreli isn't necessarily on to determine what information

17   we had in our possession that might be impacted by

18   Mr. Shkreli.  I mean, Your Honor, we are charged in two counts

19   in which it's a charge of conspiracy, so my view is that we

20   should get access to that information.  It would be more

21   efficient, we would be able to avoid serving a subpoena on

22   Katten at some point in the future by getting this.

23          THE COURT:  If you serve a subpoena, you have to be

24   looking for relevant evidence and if you're just looking for

25   any document that reflects Mr. Greebel's representation of

1    Retrophin or MSMB or Mr. Shkreli even that has nothing

2    whatsoever to do with the charges, then I'm not sure you would

3    be able to get anyone to enforce that subpoena.  Suppose

4    Mr. Greebel did some work for Mr. Shkreli in relation to his

5    will or to a dispute he was having with his landlord, that's

6    just not going to be relevant to this case.

7                MR. BRODSKY:  Absolutely, Your Honor.

8                THE COURT:  So, Mr. Greebel's need for that document

9    is somewhat in question I would think.

10               MR. BRODSKY:  We completely agree.  If we served a

11   subpoena on Katten, it would be narrow, it would be targeted

12   to particular relevant areas that would be likely to lead to

13   admissible evidence at trial, we 100 percent agree with that,

14   Your Honor.

15               THE COURT:  Well, all right.  I don't think, given

16   Retrophin's position, that Mr. Greebel should be entitled to

17   more than is necessary to address the charges in the

18   superseding indictment and to address Mr. Shkreli's advice of

19   counsel defense.  Now, one thing we talked about, as you may

20   recall at the last conference, was whether some of this could

21   be streamlined through a stipulation between the government

22   and Mr. Shkreli that between certain numbers of dates with

23   regard to Retrophin and MSMB Mr. Shkreli consulted with an

24   attorney on X number of occasions regarding different

25   subjects.  I think that broadening or forcing Retrophin to try

45

1    to waive even more than it wants to with regard to the

2    communications that occurred between Retrophin's

3    representatives and counsel would really put Retrophin in a

4    difficult position.

5            They're trying to cooperate with you, Mr. Brodsky

6    and Ms. Rubin, and to make documents available that may be

7    necessary or relevant to Mr. Greebel's defense but I'm not

8    sure that it is appropriate to expand that to any matter that

9    Mr. Greebel may have consulted on or given legal advice on

10   without regard to the issues that are relevant to this case.

11           MR. BRODSKY:  We understand, Your Honor, so we'll

12   accept Your Honor's proposal with respect to the documents.

13   As we go through them and as we go through the discovery which

14   as you know, Your Honor, we've said before is extensive, we

15   may come back to Your Honor with a trial subpoena for the

16   trial date, I know you can issue those, or if we wanted a date

17   prior to trial, we may ask Your Honor for reasons similar to

18   what Mr. Shkreli asked for for certain documents.

19           THE COURT:  Whatever documents he's using to make a

20   motion if he makes the motion regarding his advice of counsel

21   defense, you're going to see those.

22           MR. BRODSKY:  Understood.

23           THE COURT:  Right, so I don't think you're going to

24   be prejudiced at all.

25           MR. BRODSKY:  Understood, Your Honor.

1      THE COURT:  All right.  I'll make sure you're not

2   prejudiced.

3      MR. BRODSKY:  Thank you.

4      THE COURT:  Is there anything else?

5      (No response.)

6      THE COURT:  I want to thank Mr. Verde for his

7   assistance and Mr. Shapiro and Mr. Biestek's counsel for being

8   here today.

9      Yes.

10     MS. KASULIS:  Your Honor, I know that motions are

11  pending right now but just out of an abundance of caution, the

12  Court has designated this case as complex, the government does

13  ask for an exclusion of time until the next status on January

14  26.

15     THE COURT:  I think we excluded previously up to the

16  date of trial.

17     MS. KASULIS:  Okay.

18     THE COURT:  Did we not?

19     MR. AGNIFILO:  I thought we did.

20     THE CLERK:  Yes, Judge.

21     MS. KASULIS:  Okay.

22     THE COURT:  Unless we bump back that trial date, I

23  think we are in good shape and I've heard all defense counsel

24  agree that we have excluded time up through the date of the

25  currently scheduled trial in June.

1          MR. AGNIFILO:  Yes, Judge.

2          MS. RUBIN:  Yes, Your Honor.

3          MS. KASULIS:  Thank you, Your Honor.

4          THE COURT:  Thank you.

5          (Time noted:  12:20 p.m.)

6          (End of proceedings.)

## 1

**100** [1] - 44:13
**110,000** [1] - 4:13
**11201** [1] - 1:13
**11:00** [1] - 1:8
**12:20** [1] - 47:5
**14** [1] - 1:8
**14th** [1] - 33:21
**15-CR-637** [1] - 2:3
**15-CR-637(KAM** [1] -
1:3
**180-degree** [1] - 22:22
**1:00** [1] - 35:3

## 2

**2011** [7] - 7:24, 9:7,
15:9, 15:11, 15:18,
15:20, 16:20
**2012** [8] - 9:7, 15:10,
15:19, 15:21, 15:24,
16:21, 17:7, 17:22
**2015** [2] - 40:20, 41:12
**2016** [2] - 1:8, 41:18
**2017** [1] - 28:25
**20th** [1] - 7:12
**25th** [1] - 34:23
**26** [1] - 46:14
**26th** [2] - 35:6, 35:7
**271** [1] - 1:13
**27th** [1] - 28:25
**2:00** [1] - 35:8

## 3

**30** [1] - 29:1
**300** [1] - 33:18
**31st** [2] - 32:18, 33:21

## 5

**5th** [1] - 7:6

## 6

**6** [2] - 21:8, 40:15
**613-2274** [1] - 1:24

## 7

**718** [1] - 1:24

## 9

**9th** [1] - 27:1

## A

**a.m** [1] - 1:8

**ability** [2] - 5:8, 6:2
**able** [14] - 4:15, 10:21,
11:11, 13:18, 18:18,
20:17, 21:19, 29:13,
30:18, 31:14, 37:4,
43:15, 43:21, 44:3
**absent** [2] - 20:11,
25:15
**absolutely** [3] - 6:19,
34:5, 44:7
**absurd** [1] - 19:23
**abundance** [1] - 46:11
**accept** [1] - 45:12
**accepting** [1] - 9:13
**access** [3] - 5:22,
41:5, 43:20
**accommodate** [2] -
21:17, 33:25
**accommodations** [1]
- 30:16, 39:24, 39:25
**accomplished** [1] -
27:22
**accordingly** [1] -
32:23
**accurate** [2] - 8:13,
25:10
**actuality** [1] - 20:24
**add** [1] - 6:9
**adding** [2] - 11:20,
11:22
**additional** [11] - 12:5,
15:5, 20:14, 21:15,
25:10, 29:13, 29:16,
40:19, 41:16, 41:17,
41:19
**address** [7] - 4:14,
21:2, 23:7, 34:14,
43:11, 44:17, 44:18
**adhere** [1] - 39:18
**adjourn** [1] - 26:21
**adjourned** [1] - 26:24
**adjust** [1] - 33:24
**adjusted** [1] - 34:3
**admissible** [2] - 32:6,
44:13
**advance** [1] - 39:3
**advice** [9] - 23:13,
28:14, 42:24, 43:9,
43:11, 43:14, 44:18,
45:9, 45:20
**affiliates** [2] - 5:13,
9:21
**afternoon** [4] - 34:25,
35:2, 35:10, 35:13
**AGNIFILO** [23] - 1:17,
2:11, 2:16, 18:6,
18:10, 21:10, 23:20,
25:22, 25:24, 27:23,
28:5, 28:8, 28:16,
28:23, 29:5, 29:8,

34:6, 34:17, 35:4,
35:7, 40:22, 46:19,
47:1
**Agnifilo** [7] - 2:12,
8:14, 8:16, 10:5,
20:15, 21:9, 37:21
**Agnifilo's** [1] - 26:3
**agree** [15] - 8:7, 18:21,
19:15, 19:22, 25:5,
28:25, 36:24, 40:19,
40:22, 40:23, 44:10,
44:13, 46:24
**agreeable** [1] - 18:24
**agreed** [3] - 8:5, 21:4,
25:13
**agreement** [4] - 20:11,
21:6, 29:19, 40:3
**air** [1] - 33:7
**Alixandra** [1] - 2:6
**ALIXANDRA** [1] - 1:14
**allowed** [1] - 31:3
**allowing** [1] - 23:5
**almost** [1] - 19:13
**alongside** [1] - 6:13
**alter** [1] - 33:14
**AMERICA** [1] - 1:3
**amount** [2] - 3:18,
30:19
**analysis** [1] - 12:1
**Andrea** [1] - 2:12
**ANDREA** [1] - 1:17
**answer** [1] - 28:9
**anticipate** [1] - 39:5
**apologize** [3] - 3:14,
7:7, 23:21
**appear** [3] - 23:3,
27:8, 28:3
**appearances** [1] - 2:5
**APPEARANCES** [1] -
1:11
**appeared** [1] - 3:12
**apply** [4] - 8:6, 15:10,
41:12, 42:15
**appreciate** [4] - 3:10,
19:20, 20:19, 31:12
**appropriate** [1] - 45:8
**April** [7] - 9:7, 15:18,
15:24, 16:20, 16:21,
17:22, 29:23
**area** [1] - 19:16
**areas** [6] - 19:3, 19:15,
21:12, 21:15, 41:6,
44:12
**arguably** [1] - 8:25
**argue** [5] - 22:6, 41:3,
41:7, 41:15, 41:19
**argument** [2] - 34:12,
35:20
**arguments** [1] - 40:21
**arisen** [1] - 5:10

**Arlen** [1] - 3:7
**ARLEN** [1] - 1:23
**art** [1] - 14:6
**aside** [2] - 41:2, 41:5
**assent** [1] - 23:5
**assert** [15] - 5:8, 6:17,
12:9, 13:21, 18:3,
22:4, 23:8, 23:12,
23:17, 26:10, 36:14,
36:17, 40:5, 40:11,
43:14
**asserted** [3] - 5:14,
5:18, 22:18
**asserting** [4] - 6:1,
26:12, 29:4, 40:15
**assertion** [3] - 5:25,
26:6, 28:21
**assertions** [6] - 22:1,
22:8, 22:14, 25:15,
26:5
**asserts** [1] - 40:10
**assess** [2] - 23:12,
32:21
**assist** [1] - 20:9
**assistance** [1] - 46:7
**Assistant** [1] - 1:15
**Assisted** [1] - 1:25
**assume** [2] - 12:8,
17:2, 39:23
**assuming** [1] - 7:15
**attention** [3] - 22:15,
26:21, 31:18
**Attorney** [1] - 1:12
**attorney** [9] - 10:9,
12:1, 14:7, 14:8,
16:14, 28:13, 28:19,
39:19, 44:24
**attorney-client** [4] -
12:1, 14:7, 28:13,
28:19
**Attorneys** [1] - 1:15
**attorneys** [6] - 2:4,
9:13, 14:10, 19:21,
19:22, 23:1
**available** [1] - 45:6
**avoid** [1] - 43:21

## B

**bad** [1] - 30:25
**ball** [1] - 39:3
**based** [8] - 4:10, 9:24,
19:18, 20:24, 23:4,
24:8, 41:7, 41:17
**basis** [3] - 19:13,
33:12, 40:21
**BEFORE** [1] - 1:10
**behalf** [11] - 2:10,
2:12, 2:17, 2:18, 3:2,
3:7, 5:15, 23:17,

24:10, 29:12
**belong** [2] - 12:12,
39:6
**belonged** [1] - 24:3
**Berman** [1] - 2:14
**best** [3] - 5:4, 19:24,
20:10
**better** [2] - 28:10, 35:3
**between** [11] - 14:8,
14:9, 15:1, 33:12,
33:21, 37:4, 38:25,
42:5, 44:21, 44:22,
45:2
**beyond** [1] - 42:7
**Biestek** [17] - 3:5, 3:7,
3:10, 5:3, 5:14, 5:19,
6:5, 6:13, 9:16, 9:19,
10:7, 11:11, 18:4,
22:18, 29:3, 35:22
**Biestek's** [6] - 5:1,
5:8, 10:9, 10:20,
22:1, 46:7
**big** [1] - 43:10
**bill** [1] - 3:24
**billing** [5] - 4:9, 7:20,
7:22, 10:24, 15:8
**bit** [4] - 18:13, 31:1,
37:2, 43:7
**bogged** [1] - 24:21
**Brady** [1] - 3:25
**Brafman** [5] - 2:13,
23:2, 23:5, 25:9,
25:21
**briefed** [3] - 26:25,
30:1, 30:3
**briefing** [4] - 29:21,
29:22, 31:24, 32:1
**briefly** [1] - 21:25
**briefs** [1] - 30:2
**bring** [7] - 19:16,
22:14, 26:21, 29:1,
30:4, 30:12, 31:18
**broad** [2] - 41:7, 41:19
**broadened** [1] - 39:24
**broadening** [1] -
44:25
**broader** [3] - 40:5,
40:21, 42:5
**BRODSKY** [13] - 1:19,
30:8, 32:10, 40:24,
41:17, 43:1, 43:11,
44:7, 44:10, 45:11,
45:22, 45:25, 46:3
**Brodsky** [3] - 2:19,
36:11, 45:5
**Brooklyn** [2] - 1:5,
1:13
**bump** [1] - 46:22
**burden** [5] - 16:7,
16:9, 35:25, 36:1,

37:2
**business** [1] - 13:15
**BY** [1] - 1:14

## C

**Cadman** [1] - 1:13
**calendar** [1] - 29:8
**caliber** [1] - 23:1
**camera** [1] - 26:16
**CAPERS** [1] - 1:12
**Capital** [1] - 5:19
**case** [9] - 6:22, 20:25,
  27:9, 32:3, 32:12,
  35:4, 44:6, 45:10,
  46:12
**cases** [3] - 32:13,
  33:18, 33:19
**category** [4] - 7:17,
  12:7, 15:12, 18:8
**caused** [1] - 23:21
**caution** [1] - 46:11
**cc** [3] - 4:14, 37:13,
  38:18
**cc-d** [1] - 37:13
**cc-ing** [1] - 38:18
**certain** [5] - 19:3,
  19:15, 21:12, 44:22,
  45:18
**certainly** [5] - 5:20,
  25:7, 32:4, 37:11,
  43:14
**Chan** [1] - 2:19
**changes** [1] - 28:17
**charge** [1] - 43:19
**charged** [1] - 43:18
**charges** [3] - 42:25,
  44:2, 44:17
**check** [1] - 21:18
**circumstances** [1] -
  22:24
**claimed** [1] - 13:17
**claims** [1] - 11:10
**clarification** [4] - 22:9,
  23:19, 26:3, 41:24
**clarifies** [1] - 5:2
**clarify** [3] - 4:1, 10:23,
  26:23
**clear** [11] - 9:6, 14:2,
  15:18, 16:13, 16:19,
  16:21, 23:4, 23:23,
  31:21, 33:9, 39:15
**clearly** [1] - 28:16
**CLERK** [10] - 2:2,
  2:10, 2:17, 2:22, 3:1,
  34:20, 34:22, 35:6,
  35:8, 46:20
**client** [14] - 11:9,
  11:10, 12:1, 12:12,
  14:7, 14:8, 16:13,

21:18, 23:11, 27:15,
  28:13, 28:19, 37:12
**clients** [3] - 12:12,
  12:15, 40:9
**close** [1] - 35:1
**coexisted** [1] - 7:23
**colleague** [1] - 2:19
**colleagues** [1] - 19:13
**comfortable** [3] -
  8:14, 15:15, 20:17
**commit** [1] - 20:15
**communicant** [2] -
  42:16, 42:19
**communicated** [3] -
  9:20, 13:8, 23:2
**communicating** [1] -
  18:13
**communication** [12] -
  10:3, 10:21, 13:24,
  14:3, 14:6, 14:7,
  14:17, 16:14, 18:23,
  42:7, 42:10, 42:22
**communications** [32]
  - 5:5, 10:6, 10:23,
  11:16, 11:18, 11:19,
  11:21, 11:22, 11:23,
  12:2, 12:4, 12:7,
  12:9, 12:15, 13:1,
  13:9, 13:16, 14:9,
  14:11, 14:14, 14:20,
  15:1, 15:3, 20:8,
  31:5, 36:5, 36:8,
  38:21, 42:1, 42:3,
  42:5, 45:2
**companies** [2] - 7:23,
  13:14
**compelling** [1] - 22:20
**completed** [2] - 29:21,
  37:21
**completely** [1] - 44:10
**completion** [1] - 28:21
**complex** [1] - 46:12
**comply** [2] - 7:10, 7:15
**Computer** [1] - 1:25
**Computer-Assisted**
  [1] - 1:25
**concern** [7] - 11:24,
  15:2, 15:4, 17:14,
  20:24, 20:25, 22:1
**concerned** [2] - 21:5,
  40:10
**concerns** [7] - 18:19,
  18:20, 19:4, 20:6,
  21:3, 21:9, 22:7
**conditions** [1] - 4:6
**confer** [8] - 23:22,
  30:11, 30:13, 30:16,
  31:22, 32:24, 33:8,
  34:3
**conference** [10] - 2:2,

5:10, 6:8, 22:23,
  23:4, 25:8, 34:9,
  35:18, 36:2, 44:20
**CONFERENCE** [1] -
  1:6
**confident** [1] - 39:20
**confirm** [1] - 4:8
**conflict** [1] - 39:10
**confusion** [1] - 23:21
**conjuring** [1] - 17:1
**consider** [3] - 6:3,
  6:15, 21:14
**considered** [1] - 8:8
**conspiracy** [1] - 43:19
**consult** [1] - 25:21
**consulted** [2] - 44:23,
  45:9
**contacted** [1] - 24:8
**contemplated** [2] -
  33:1, 37:11, 37:12
**contemplating** [3] -
  30:7, 32:19, 37:7
**contemplation** [1] -
  29:16
**content** [1] - 14:25
**contingent** [1] - 27:17
**continue** [2] - 26:18,
  28:1
**control** [2] - 27:10,
  39:20
**convenient** [1] - 29:9
**conversation** [1] -
  39:8
**conversations** [2] -
  6:24, 13:20
**cooperate** [2] - 40:8,
  45:5
**cooperatively** [1] -
  33:24
**coordinate** [1] - 6:25
**copied** [5] - 8:23, 9:1,
  9:4, 9:8, 9:19
**copy** [1] - 42:11
**corporate** [1] - 6:1
**corporation** [1] - 5:20
**correct** [8] - 5:16,
  6:19, 7:15, 27:22,
  30:7, 36:23, 41:9,
  42:12
**correspondence** [1] -
  19:21
**counsel** [43] - 2:17,
  3:11, 4:16, 4:22, 5:3,
  5:16, 6:5, 6:24, 8:1,
  9:11, 9:12, 10:20,
  10:21, 11:11, 11:25,
  13:20, 14:25, 18:5,
  23:13, 28:14, 29:10,
  29:14, 31:7, 36:8,
  36:12, 36:24, 38:1,

38:4, 38:7, 38:17,
  38:25, 40:9, 40:11,
  40:23, 43:10, 43:12,
  43:14, 44:19, 45:3,
  45:20, 46:7, 46:23
**counsel's** [1] - 5:2
**counts** [1] - 43:18
**couple** [3] - 3:22,
  31:8, 34:4
**course** [2] - 6:23,
  27:17
**COURT** [108] - 1:1,
  2:1, 2:9, 2:15, 2:21,
  2:25, 3:4, 3:8, 3:10,
  3:16, 3:22, 5:1, 6:4,
  6:17, 6:20, 7:2, 7:16,
  8:13, 9:11, 10:6,
  10:12, 10:18, 11:4,
  11:7, 12:3, 12:14,
  12:20, 12:22, 13:1,
  13:4, 14:5, 15:14,
  16:12, 16:16, 16:25,
  17:4, 17:8, 17:11,
  17:15, 17:24, 18:7,
  19:20, 20:19, 21:21,
  22:16, 25:8, 25:13,
  25:20, 25:23, 25:25,
  26:9, 26:12, 27:4,
  27:21, 27:24, 28:6,
  28:12, 28:17, 29:3,
  29:6, 29:11, 29:19,
  30:3, 30:9, 30:14,
  31:10, 31:16, 31:25,
  32:5, 33:9, 34:8,
  34:19, 34:21, 35:1,
  35:10, 35:14, 35:16,
  35:19, 36:3, 36:16,
  36:20, 36:24, 37:22,
  38:8, 39:11, 39:17,
  40:6, 40:13, 40:23,
  41:10, 41:14, 41:20,
  41:22, 42:9, 42:20,
  43:9, 43:23, 44:8,
  44:15, 45:19, 45:23,
  46:1, 46:4, 46:6,
  46:15, 46:18, 46:22,
  47:4
**court** [1] - 23:24
**Court** [11] - 1:24,
  18:15, 19:1, 22:6,
  29:10, 31:2, 31:22,
  36:7, 38:19, 41:3,
  46:12
**Court's** [3] - 7:11,
  22:9, 22:15
**Courthouse** [1] - 1:4
**covered** [1] - 37:15
**crack** [1] - 12:13
**create** [1] - 7:11
**created** [1] - 26:8

**creating** [1] - 16:25
**criminal** [1] - 2:2
**CSR** [1] - 1:24
**current** [2] - 27:11,
  36:4

## D

**daily** [2] - 18:22, 19:13
**dark** [1] - 12:17
**date** [21] - 7:12, 27:9,
  27:10, 27:22, 28:20,
  29:7, 29:9, 29:20,
  31:24, 33:8, 34:9,
  34:12, 34:13, 34:19,
  35:11, 45:16, 46:16,
  46:22, 46:24
**dates** [2] - 33:2, 44:22
**days** [3] - 29:1, 31:8,
  31:13
**deadline** [3] - 27:1,
  32:18, 39:11
**deal** [1] - 18:16
**dealing** [1] - 9:15
**December** [6] - 1:8,
  15:9, 15:19, 15:20,
  21:8, 41:18
**decide** [2] - 9:14, 18:3,
  29:7
**decision** [4] - 3:23,
  4:1, 23:14, 25:6
**decisions** [2] - 23:15,
  25:1, 30:19
**deeper** [1] - 15:2
**defeated** [1] - 37:17
**Defendant** [1] - 1:16
**defendants** [4] - 1:9,
  40:4, 40:18
**defense** [14] - 23:13,
  28:14, 30:7, 32:19,
  39:22, 40:9, 40:10,
  43:10, 43:12, 43:15,
  44:19, 45:7, 45:21,
  46:23
**define** [2] - 4:17, 9:9
**definition** [3] - 8:6,
  9:6, 31:3
**defunct** [2] - 5:13,
  23:17
**delay** [1] - 32:8
**delayed** [2] - 32:18,
  39:14
**delegate** [1] - 17:20
**demand** [1] - 33:18
**denying** [1] - 3:24
**described** [1] - 18:8
**designated** [1] - 46:12
**detail** [3] - 4:9, 10:24,
  20:4
**detailed** [1] - 18:16

determination [3] -
11:10, 27:25, 43:12
determinations [1] -
40:7
determine [11] - 4:16,
5:5, 8:2, 11:12,
13:23, 16:5, 22:3,
26:4, 32:22, 39:9,
43:16
determines [1] - 10:19
development [1] -
19:9
diagrams [1] - 8:22
difference [1] - 43:10
differences [3] -
22:13, 26:19, 35:23
different [3] - 18:22,
23:24, 44:24
difficult [4] - 22:16,
23:10, 37:2, 45:4
dig [1] - 15:2
digest [1] - 29:15
diligent [1] - 19:8
directed [3] - 12:5,
14:24, 42:15
directly [1] - 42:10
disagree [2] - 9:23,
19:15
disagreements [1] -
19:3
discern [1] - 14:11
discovery [1] - 45:13
discrete [2] - 21:12,
21:15, 41:6
discretion [1] - 17:21
discuss [1] - 33:2
discussed [1] - 12:15
discussing [1] - 14:7
discussions [2] -
5:12, 37:3
dispute [3] - 4:11,
17:16, 44:5
disputes [5] - 21:9,
22:17, 31:18, 33:12,
34:14
distinct [1] - 33:6
distinguish [1] - 37:4
DISTRICT [2] - 1:1, 1:1
District [1] - 2:14
doctrine [1] - 12:10
document [10] - 19:6,
19:7, 27:6, 28:21,
28:25, 34:15, 39:13,
42:21, 43:25, 44:8
documents [146] -
4:10, 4:18, 5:19,
5:23, 5:24, 6:2, 6:5,
6:12, 6:13, 6:18,
6:21, 7:1, 7:5, 7:8,
7:9, 7:10, 7:14, 7:17,

8:8, 8:11, 8:12, 8:15,
8:16, 8:17, 8:24, 9:1,
9:3, 9:5, 9:7, 9:21,
9:25, 10:12, 10:15,
11:2, 11:8, 11:12,
11:19, 11:22, 12:5,
12:8, 12:10, 13:20,
14:20, 15:3, 15:5,
15:11, 15:13, 16:2,
16:5, 16:17, 16:24,
17:1, 17:6, 17:9,
17:10, 17:15, 17:18,
17:23, 17:25, 18:1,
18:2, 18:4, 18:5,
18:7, 20:15, 21:1,
21:6, 21:13, 22:3,
22:12, 22:15, 22:20,
23:6, 23:8, 23:12,
24:7, 24:8, 24:17,
24:18, 25:10, 25:16,
25:19, 26:5, 26:14,
26:17, 27:18, 27:19,
28:3, 28:7, 28:13,
28:19, 29:14, 29:16,
31:3, 33:10, 33:12,
35:21, 36:6, 36:9,
36:12, 36:13, 36:16,
36:17, 36:19, 36:20,
36:22, 37:5, 37:7,
37:8, 37:13, 37:14,
37:16, 37:18, 37:19,
37:21, 37:23, 38:2,
38:3, 38:4, 38:9,
38:10, 38:13, 38:23,
39:5, 39:20, 39:21,
40:9, 40:14, 40:15,
40:17, 41:5, 42:9,
42:16, 42:17, 43:5,
43:15, 45:6, 45:12,
45:18, 45:19
done [8] - 5:6, 7:6,
8:6, 20:16, 22:22,
29:14, 36:11, 43:4
down [2] - 4:25, 24:21
Driscoll [1] - 1:24
driven [1] - 24:15
due [2] - 19:25, 30:2
duplicate [1] - 38:11
during [2] - 13:10,
32:17

## E

e-mail [1] - 8:2
e-mails [2] - 4:13,
16:23
early [5] - 7:24, 17:6,
22:6, 26:4, 30:2
East [1] - 1:13
EASTERN [1] - 1:1

efficiency [2] - 31:25,
43:3
efficient [2] - 3:11,
43:21
eight [2] - 7:21, 8:24
either [5] - 9:15,
10:25, 14:10, 20:9,
42:15
electronic [1] - 38:2
Elizabeth [1] - 2:23
ELIZABETH [1] - 1:20
emails [2] - 16:23,
31:5
end [13] - 19:2, 20:16,
27:21, 28:9, 29:1,
29:17, 29:21, 30:1,
30:4, 34:14, 39:8,
47:6
enforce [1] - 44:3
engage [1] - 39:4
ensure [1] - 36:13
entail [1] - 26:18
entire [1] - 42:15
entirely [1] - 21:17
entities [3] - 10:25,
14:10, 23:18
entitled [2] - 23:17,
44:16
especially [1] - 23:10
ESQ [14] - 1:12, 1:14,
1:14, 1:15, 1:17,
1:17, 1:18, 1:19,
1:20, 1:20, 1:21,
1:22, 1:23, 1:23
essential [1] - 23:2
etc [1] - 4:14
evaluate [1] - 27:19
evaluating [1] - 27:15
EVAN [1] - 1:8
Evan [1] - 2:3
event [1] - 32:7
eventually [1] - 7:24
evidence [5] - 32:6,
32:15, 32:22, 43:24,
44:13
exact [3] - 31:4, 38:18,
38:20
except [2] - 14:20,
40:2
excluded [2] - 46:15,
46:24
exclusion [1] - 46:13
exercise [3] - 16:8,
20:2, 23:11
exhibits [3] - 32:21,
33:3, 33:5
exist [2] - 17:1, 17:3
existed [1] - 13:12
exists [2] - 12:21,
21:13

expand [2] - 21:11,
45:8
expanding [1] - 21:14
expect [1] - 30:15
expedite [1] - 31:8
expedited [1] - 33:16
expeditiously [1] -
6:21
experienced [2] -
18:17, 23:1
expressed [1] - 17:14
extensive [1] - 45:14
extent [9] - 10:19,
11:9, 15:14, 17:24,
19:1, 20:6, 33:15,
33:24, 39:24

## F

fact [3] - 22:2, 22:4,
23:23
fair [1] - 41:13
fairly [2] - 18:14, 18:18
faith [4] - 16:8, 21:16,
30:17, 39:7
family [1] - 4:5
far [5] - 24:2, 34:1,
38:5, 42:7, 42:8
February [2] - 29:2,
29:9
few [1] - 31:13
field [1] - 4:14
fight [1] - 35:20
figure [1] - 9:12
files [8] - 8:19, 11:24,
17:2, 17:3, 17:9,
17:10, 37:19, 38:5
fine [4] - 29:5, 29:25,
35:7, 41:21
finishing [1] - 3:25
firm [7] - 2:22, 5:4,
10:22, 12:17, 16:4,
18:23, 23:15
first [6] - 3:12, 3:23,
8:24, 12:13, 21:25,
31:23
fit [1] - 18:7
flip [1] - 22:22
flow [4] - 23:13, 24:20,
37:6, 37:8
focusing [1] - 14:5
follow [1] - 23:25
follow-up [1] - 23:25
forbid [1] - 4:4
forcing [1] - 44:25
forth [3] - 4:7, 20:22,
23:9
forward [1] - 3:19,
9:14, 19:12, 19:25,
20:12, 20:25, 21:11,

23:10, 26:23, 30:4,
35:12
four [4] - 16:4, 16:5,
17:21, 20:22
frame [1] - 39:12
frankly [2] - 18:17,
19:23
front [1] - 2:13
frustrating [1] - 3:20
fully [2] - 30:1, 30:3
future [2] - 43:13,
43:22

## G

game [2] - 33:18,
41:13
general [1] - 35:12
genesis [1] - 24:5
GIRISH [1] - 1:15
Girish [1] - 2:7
given [9] - 4:5, 8:21,
8:22, 26:16, 27:5,
27:11, 29:13, 44:15,
45:9
Glen [1] - 3:6
GLEN [1] - 1:23
Government [1] - 1:12
government [19] - 2:7,
21:22, 22:7, 24:2,
24:6, 24:22, 26:7,
28:7, 28:12, 29:10,
30:14, 31:20, 32:11,
32:14, 32:20, 32:24,
33:10, 44:21, 46:12
government's [3] -
2:4, 22:5, 25:2
granted [1] - 4:3
granting [1] - 15:16
great [1] - 18:16
greebel [1] - 42:16
GREEBEL [1] - 1:8
Greebel [30] - 1:18,
2:3, 2:17, 2:19,
27:13, 27:20, 28:2,
29:12, 29:15, 30:18,
31:5, 36:8, 37:20,
38:12, 38:19, 38:21,
38:25, 40:1, 41:25,
42:2, 42:3, 42:5,
42:6, 42:19, 42:20,
42:21, 43:5, 44:4,
44:16, 45:9
Greebel's [15] - 3:24,
4:3, 31:7, 36:8,
36:24, 37:18, 38:1,
38:3, 38:5, 38:17,
40:23, 42:24, 43:25,
44:8, 45:7
grew [1] - 19:10

**guess** [1] - 23:6
**guessing** [1] - 16:10
**gun** [1] - 24:24

## H

**hand** [1] - 37:5
**happy** [3] - 12:11,
12:24, 32:23
**hard** [5] - 9:13, 12:16,
19:11, 27:19, 29:20
**head** [1] - 30:14
**hear** [1] - 39:15
**heard** [3] - 5:11,
21:23, 46:23
**hearing** [3] - 2:13,
31:10, 31:11
**held** [1] - 22:11
**help** [2] - 30:25, 39:13
**helpful** [2] - 11:1, 20:2
**helping** [1] - 18:16
**high** [1] - 23:1
**himself** [1] - 20:9
**holidays** [3] - 4:5,
31:17, 33:23
**Holly** [1] - 1:24
**Honor** [75] - 2:8, 2:11,
2:18, 3:6, 3:9, 3:21,
4:12, 5:17, 5:22, 6:9,
6:25, 7:4, 7:23, 8:10,
10:3, 10:14, 11:6,
11:15, 12:11, 12:18,
13:5, 14:22, 16:9,
16:19, 16:20, 18:6,
19:16, 20:14, 21:24,
21:25, 23:25, 24:23,
25:5, 26:2, 26:22,
27:15, 29:18, 29:25,
30:8, 30:10, 30:12,
31:21, 32:10, 32:16,
32:23, 33:1, 33:3,
33:8, 34:5, 34:7,
34:24, 35:13, 35:25,
36:4, 37:1, 39:2,
39:4, 39:6, 39:10,
39:15, 41:23, 42:13,
43:1, 43:11, 43:18,
44:7, 44:14, 45:11,
45:14, 45:15, 45:17,
45:25, 46:10, 47:2,
47:3
**Honor's** [4] - 9:3,
19:17, 32:12, 45:12
**HONORABLE** [1] -
1:11
**hope** [2] - 7:2, 18:12
**hoped** [2] - 34:1, 34:2
**hopefully** [1] - 31:8
**hopes** [1] - 30:19
**hoping** [4] - 18:24,

26:17, 31:17, 35:22
**host** [1] - 30:6
**housekeeping** [1] -
3:22
**hundred** [1] - 11:20
**hypothetical** [1] -
20:24
**hypotheticals** [1] -
39:4

## I

**IAN** [1] - 1:21
**Ian** [1] - 3:2
**idea** [6] - 22:25, 23:11,
28:10, 30:21, 30:25,
38:22
**identified** [2] - 7:8,
10:13
**identify** [3] - 7:5,
10:15, 17:17
**if-s** [1] - 20:1
**imminently** [1] - 7:3
**impact** [2] - 38:24,
43:13
**impacted** [1] - 43:17
**impacts** [1] - 33:5
**impatient** [2] - 20:20
**implement** [1] - 40:16
**implicate** [2] - 10:16,
20:5
**implicated** [5] - 4:22,
10:1, 13:21, 13:25,
14:4
**implicates** [2] - 8:3,
14:18
**importance** [1] - 3:17
**important** [1] - 18:14
**imposed** [2] - 18:15,
33:3
**imposes** [1] - 37:1
**impossible** [1] - 19:11
**impression** [1] - 14:24
**inability** [1] - 14:11
**include** [2] - 13:9
**included** [1] - 42:3
**including** [1] - 11:9
**indefinitely** [1] - 26:24
**indicated** [4] - 4:14,
25:9, 26:16, 42:11
**indication** [1] - 6:6
**indictment** [1] - 44:18
**individual** [2] - 5:21,
5:25
**inform** [1] - 26:13
**information** [2] -
43:16, 43:20
**informed** [1] - 23:7
**ing** [1] - 38:18
**inordinate** [1] - 3:18

**instructing** [1] - 13:22
**instructions** [3] -
4:25, 14:2, 16:19
**intention** [1] - 7:12
**interest** [7] - 4:23, 8:3,
10:1, 10:16, 13:25,
14:4, 14:19
**interested** [2] - 36:18,
39:8
**interests** [2] - 13:21,
20:5
**interface** [1] - 24:21
**internal** [10] - 11:18,
11:22, 12:4, 12:7,
12:8, 13:1, 13:9,
14:9, 14:14, 16:22
**investment** [2] - 7:25,
13:15
**inviting** [1] - 31:17
**invoked** [2] - 20:8,
40:4
**involve** [1] - 38:21
**involved** [1] - 10:22
**issue** [14] - 3:23, 5:8,
5:10, 13:4, 16:9,
16:10, 23:3, 26:14,
27:4, 33:7, 38:23,
38:25, 42:23, 45:16
**issues** [16] - 17:1,
18:8, 18:21, 19:10,
21:19, 21:22, 22:2,
22:21, 22:25, 23:18,
24:12, 24:16, 24:20,
28:22, 29:1, 45:10

## J

**Jackson** [1] - 34:19
**JACQUELYN** [1] -
1:14
**Jacquelyn** [1] - 2:6
**January** [17] - 7:6,
7:12, 15:9, 15:21,
15:24, 17:21, 19:16,
24:25, 26:25, 27:21,
28:9, 28:25, 32:18,
33:21, 34:14, 40:15,
46:13
**join** [1] - 27:13
**jointly** [1] - 10:9
**Judge** [14] - 2:14,
2:16, 23:20, 25:22,
27:2, 27:23, 28:5,
28:23, 29:5, 34:6,
34:20, 34:22, 46:20,
47:1
**judge** [1] - 35:4
**judgment** [4] - 8:4,
13:24, 14:3, 16:10
**judgments** [1] - 17:19

**July** [1] - 9:7
**jumping** [1] - 24:24
**June** [4] - 29:20,
30:22, 32:9, 46:25

## K

**KASULIS** [10] - 1:14,
2:6, 21:24, 26:2,
26:10, 34:5, 46:10,
46:17, 46:21, 47:3
**Kasulis** [1] - 2:6
**Katten** [40] - 2:22,
2:24, 4:8, 8:11, 9:15,
9:20, 11:18, 11:22,
12:4, 12:8, 12:9,
14:9, 14:24, 15:1,
15:4, 15:6, 15:24,
16:23, 17:11, 17:13,
17:14, 17:17, 18:1,
19:5, 19:22, 20:3,
20:8, 20:15, 24:9,
24:10, 24:18, 35:17,
36:7, 37:8, 38:8,
43:2, 43:22, 44:11
**Katten's** [5] - 8:19,
11:24, 17:10, 19:5,
36:4
**keep** [4] - 6:21, 31:18,
32:8, 33:2
**kind** [2] - 8:5, 19:9,
26:22
**KIYO** [1] - 1:11
**known** [1] - 5:3
**knows** [3] - 5:22, 20:3,
28:12

## L

**landlord** [1] - 44:5
**landscape** [1] - 28:17
**LANGDALE** [1] - 1:20
**Langdale** [1] - 2:23
**large** [1] - 26:18
**last** [8] - 4:7, 5:3, 5:10,
6:8, 22:23, 25:8,
26:24, 44:20
**late** [2] - 3:19, 29:9
**latest** [1] - 7:13
**law** [1] - 24:4
**lawyer** [2] - 11:7, 12:6
**lawyers** [2] - 10:22,
18:17
**lead** [1] - 44:12
**learned** [1] - 23:23
**least** [3] - 6:6, 26:15,
37:12
**legal** [1] - 45:9
**lengthy** [1] - 33:25
**letter** [5] - 3:12, 5:2,

21:8, 23:25, 24:23
**letters** [2] - 3:19,
20:22
**letting** [1] - 6:4
**likelihood** [1] - 25:14
**likely** [1] - 44:12
**limine** [8] - 27:3,
31:23, 32:2, 32:13,
32:20, 32:22, 33:4,
33:6
**limit** [1] - 19:4
**limited** [2] - 19:16,
21:6
**Lisa** [1] - 2:18
**LISA** [1] - 1:18
**list** [2] - 32:21, 38:2
**listed** [1] - 31:6
**LLC** [1] - 13:12
**log** [8] - 7:11, 11:13,
24:23, 26:8, 26:11,
26:13, 36:15, 40:15
**logging** [1] - 40:17
**logistical** [1] - 37:2
**logs** [2] - 22:10, 35:23
**look** [13] - 6:20, 7:14,
10:18, 11:7, 16:4,
16:14, 17:4, 18:11,
19:19, 28:13, 30:16,
31:3, 39:5
**looked** [2] - 17:12,
21:12
**looking** [5] - 9:6, 14:1,
17:25, 43:24
**loop** [1] - 29:3
**loose** [1] - 16:24
**lost** [2] - 18:12, 18:13
**loud** [1] - 39:15
**luck** [1] - 33:20

## M

**magnitude** [1] - 26:17
**mail** [1] - 8:2
**mails** [2] - 4:13, 16:23
**main** [1] - 7:25
**maintain** [2] - 30:21,
39:22
**management** [1] -
32:12
**Marc** [1] - 2:11
**MARC** [1] - 1:17
**March** [7] - 27:1,
29:18, 29:22, 29:23,
30:1, 30:2, 30:4
**Marek** [1] - 3:7
**Martin** [1] - 2:3
**MARTIN** [1] - 1:8
**material** [1] - 3:25
**MATSUMOTO** [1] -
1:11

**matter** [11] - 5:11, 12:12, 13:18, 14:12, 14:16, 35:12, 40:5, 40:21, 42:24, 43:3, 45:8
**matters** [2] - 3:23, 9:17
**McGorty** [12] - 1:23, 3:6, 3:9, 3:14, 3:21, 5:17, 6:9, 6:19, 6:23, 7:4, 8:17
**mean** [9] - 19:5, 20:20, 23:22, 24:24, 28:12, 32:5, 36:16, 37:14, 43:18
**means** [2] - 9:10, 25:1
**meant** [1] - 4:18
**mechanical** [3] - 1:25, 4:19, 8:6
**mechanically** [1] - 16:1
**meet** [6] - 23:22, 30:17, 31:22, 32:24, 33:7, 34:3
**Michael** [1] - 2:23
**MICHAEL** [1] - 1:20
**might** [10] - 14:3, 19:3, 20:5, 25:20, 30:4, 32:4, 42:10, 42:22, 43:17
**mindful** [1] - 33:22
**minimum** [1] - 5:25
**mistaken** [1] - 7:7
**misunderstood** [1] - 3:16
**modeled** [1] - 32:10
**moment** [1] - 14:25
**Monday** [3] - 31:15, 37:24, 38:12
**month** [7] - 7:20, 7:21, 10:11, 15:6, 16:4, 16:5, 17:21
**months** [1] - 8:24
**moot** [1] - 8:19
**morning** [8] - 2:1, 2:7, 2:9, 2:11, 2:14, 2:21, 2:25, 18:12
**most** [1] - 15:8
**motion** [12] - 21:1, 27:11, 27:12, 27:16, 27:25, 28:20, 30:20, 32:25, 33:15, 34:11, 45:20
**motions** [25] - 3:24, 23:13, 26:24, 26:25, 27:3, 27:13, 29:17, 29:24, 30:1, 30:2, 30:3, 30:6, 31:23, 32:1, 32:2, 32:8, 32:13, 32:18, 32:19,

32:20, 32:22, 33:4, 33:6, 34:12, 46:10
**move** [6] - 13:14, 20:12, 20:25, 23:10, 27:3, 30:25
**moving** [1] - 22:19
**MR** [97] - 2:11, 2:16, 2:23, 3:2, 3:6, 3:9, 3:14, 3:21, 4:12, 5:17, 6:9, 6:19, 6:23, 7:4, 7:19, 8:10, 8:14, 8:21, 9:24, 10:3, 10:11, 10:14, 11:1, 11:6, 11:15, 12:11, 12:18, 12:21, 12:23, 13:3, 13:5, 14:13, 14:22, 15:17, 15:20, 16:9, 16:15, 16:18, 16:20, 17:2, 17:6, 17:9, 17:13, 17:17, 18:6, 18:10, 20:14, 21:10, 23:20, 25:11, 25:18, 25:22, 25:24, 27:23, 28:5, 28:8, 28:16, 28:23, 29:5, 29:8, 30:8, 30:24, 31:14, 32:10, 34:6, 34:17, 35:4, 35:7, 35:17, 35:25, 36:4, 36:19, 36:22, 37:14, 38:1, 38:13, 40:2, 40:12, 40:14, 40:22, 40:24, 41:9, 41:11, 41:17, 41:21, 41:23, 42:13, 43:1, 43:11, 44:7, 44:10, 45:11, 45:22, 45:25, 46:3, 46:19, 47:1
**MS** [27] - 2:6, 2:18, 21:24, 26:2, 26:10, 26:22, 27:15, 29:12, 29:25, 30:10, 31:21, 32:4, 34:5, 34:7, 34:24, 35:3, 35:9, 35:12, 35:15, 37:1, 39:2, 39:15, 46:10, 46:17, 46:21, 47:2, 47:3
**MSMB** [52] - 4:15, 4:18, 5:3, 5:6, 5:7, 5:13, 5:15, 5:19, 6:6, 6:12, 7:5, 7:9, 7:18, 7:22, 8:3, 8:8, 8:12, 8:16, 8:17, 8:25, 9:4, 9:9, 9:11, 9:15, 9:18, 9:21, 10:8, 10:13, 10:16, 10:19, 12:19, 12:24, 13:2, 13:7, 13:19, 14:18, 15:7, 15:8, 15:22, 16:6,

16:24, 17:20, 18:4, 19:7, 19:9, 20:9, 24:20, 25:18, 37:4, 42:22, 44:1, 44:23
**MSMB's** [1] - 24:13
**Muchin** [2] - 2:24, 4:9
**multiple** [1] - 5:11

## N

**naming** [1] - 4:23
**narrow** [2] - 4:25, 44:11
**navigate** [1] - 24:13
**navigating** [1] - 24:19
**necessarily** [3] - 32:2, 32:7, 43:16
**necessary** [3] - 35:24, 44:17, 45:7
**need** [19] - 6:18, 6:20, 16:1, 16:2, 21:1, 22:2, 23:12, 26:11, 27:20, 29:15, 30:20, 32:8, 33:15, 33:21, 35:10, 35:13, 42:20, 42:21, 44:8
**needs** [3] - 20:15, 20:16, 30:17
**NEW** [1] - 1:1
**New** [2] - 1:5, 1:13
**next** [6] - 3:23, 16:3, 31:8, 31:13, 34:4, 46:13
**nine** [4] - 7:21, 8:24, 10:11, 15:5
**noon** [2] - 34:23, 35:1
**noted** [1] - 47:5
**nothing** [1] - 44:1
**notice** [1] - 22:6
**notifications** [1] - 19:21
**November** [1] - 33:21
**number** [2] - 38:20, 44:24
**numbers** [1] - 44:22

## O

**object** [5] - 6:7, 28:2, 28:4, 28:5, 28:6
**objection** [6] - 6:4, 9:25, 10:5, 10:17, 31:10, 43:6
**objections** [3] - 25:15, 28:2, 31:11
**obviously** [3] - 22:21, 26:11, 32:17
**occasions** [1] - 44:24
**occurred** [1] - 45:2
**OF** [3] - 1:1, 1:3, 1:6

**offered** [1] - 38:16
**officer** [1] - 6:1
**often** [1] - 32:15
**once** [3] - 11:10, 23:7, 23:18
**one** [22] - 5:18, 5:21, 11:17, 14:23, 20:7, 23:25, 24:1, 25:6, 26:2, 29:22, 30:11, 31:24, 33:9, 33:17, 36:1, 37:5, 37:9, 38:8, 38:10, 38:13, 41:23, 44:19
**One** [1] - 18:11
**ones** [1] - 42:18
**operating** [1] - 13:13
**opinion** [2] - 14:17, 22:13
**opportunity** [5] - 22:3, 30:11, 30:13, 38:17, 40:8
**opposed** [1] - 32:11
**order** [8] - 7:11, 9:3, 13:6, 14:15, 15:15, 15:16, 22:19, 26:23
**ordered** [3] - 11:2, 13:6, 36:7
**ordering** [1] - 11:4
**orders** [2] - 22:9, 32:12
**organic** [1] - 19:9
**original** [1] - 11:25
**ostensibly** [2] - 8:2, 12:23
**otherwise** [3] - 24:5, 37:18, 38:4
**ought** [1] - 29:6
**ourselves** [2] - 15:3, 15:4
**outstanding** [1] - 34:14
**overall** [1] - 7:22
**overcome** [1] - 19:14
**overlap** [2] - 5:6, 38:23
**overlapping** [1] - 14:12
**own** [3] - 5:15, 27:16, 32:12

## P

**p.m** [2] - 35:8, 47:5
**pages** [2] - 4:13, 11:21
**paragraph** [3] - 9:2, 13:6, 14:15
**part** [3] - 14:13, 14:15, 19:7
**particular** [5] - 23:17, 32:14, 34:11, 42:24,

44:12
**particulars** [1] - 3:25
**parties** [19] - 2:22, 5:11, 6:15, 7:9, 15:23, 21:1, 21:4, 22:10, 26:14, 26:20, 27:24, 30:11, 30:20, 32:7, 32:24, 33:13, 34:1, 39:8
**parties'** [1] - 40:3
**party** [4] - 6:16, 12:2, 26:12, 42:7
**pending** [1] - 46:11
**people** [2] - 13:13
**per** [1] - 28:13
**percent** [1] - 44:13
**percentage** [1] - 38:20
**perfect** [1] - 31:16
**perhaps** [2] - 5:15, 25:15
**period** [23] - 4:21, 7:19, 7:20, 7:21, 8:23, 9:7, 10:11, 11:3, 12:19, 12:24, 13:10, 15:6, 15:9, 15:18, 15:23, 15:24, 16:4, 16:5, 16:20, 17:21, 32:15, 32:17
**permit** [1] - 7:1
**person** [2] - 9:19, 20:7
**personal** [1] - 22:24
**perspective** [4] - 18:14, 19:5, 23:21, 34:18
**pertain** [2] - 10:7, 17:15
**pertained** [1] - 10:25
**pertaining** [1] - 10:13
**pertains** [1] - 17:5
**pieces** [1] - 32:14
**place** [4] - 25:25, 37:9, 37:10, 41:1
**plan** [4] - 7:24, 13:14, 25:25, 36:4
**planning** [1] - 25:16
**plans** [1] - 4:5
**Plaza** [1] - 1:13
**point** [25] - 4:1, 8:11, 8:16, 8:20, 11:16, 11:23, 13:19, 15:2, 16:18, 19:14, 23:20, 23:25, 24:15, 24:16, 24:22, 25:2, 26:2, 26:3, 28:8, 36:1, 40:6, 41:23, 43:13, 43:22
**pointed** [1] - 4:22
**points** [2] - 5:17, 14:23
**position** [13] - 5:5,

8:4, 9:17, 19:6,
20:10, 22:5, 22:22,
23:23, 23:24, 28:11,
41:9, 44:16, 45:4
**positions** [1] - 23:10
**possession** [1] -
43:17
**possible** [2] - 32:1,
33:14
**possibly** [1] - 4:20
**post** [1] - 41:15
**post-summer** [1] -
41:15
**potential** [3] - 7:10,
22:8, 32:6
**potentially** [3] - 5:21,
13:16, 41:1
**practice** [5] - 21:2,
27:12, 27:25, 28:20,
30:20
**pragmatic** [1] - 38:6
**predecessor** [1] -
13:12
**preferable** [1] - 34:25
**prejudiced** [2] - 45:24,
46:2
**premise** [1] - 11:25
**prepared** [4] - 12:24,
13:25, 16:7, 17:20
**presence** [1] - 35:24
**Present** [1] - 1:20
**pressing** [1] - 11:17
**previously** [2] - 34:2,
46:15
**primary** [1] - 13:14
**privacy** [1] - 13:17
**privilege** [49] - 5:9,
5:14, 5:18, 6:1, 6:10,
6:14, 6:18, 7:10,
7:11, 11:13, 12:1,
13:22, 14:7, 18:3,
22:1, 22:4, 22:7,
22:8, 22:10, 22:17,
23:3, 23:8, 23:17,
24:1, 24:11, 24:12,
24:13, 24:16, 24:19,
24:23, 25:16, 26:5,
26:7, 26:8, 26:12,
28:21, 28:25, 29:4,
35:23, 36:14, 36:17,
36:23, 37:15, 38:24,
39:23, 40:10, 40:16
**privileged** [1] - 38:4
**privileges** [4] - 11:13,
23:16, 24:12, 26:11
**problem** [11] - 2:15,
3:13, 7:22, 12:18,
13:10, 13:23, 14:16,
19:7, 19:9, 19:14,
24:11

**problems** [1] - 16:25
**proceed** [1] - 21:1
**proceedings** [1] - 47:6
**Proceedings** [1] -
1:25
**process** [2] - 22:19,
33:25
**produce** [10] - 4:15,
4:18, 11:2, 12:25,
13:7, 13:11, 13:22,
14:19, 31:6, 36:7
**produced** [13] - 1:25,
4:9, 4:12, 8:11, 9:9,
27:18, 29:16, 32:21,
38:15, 42:2, 42:8,
42:17, 42:18
**producing** [3] - 4:20,
40:17, 42:4
**product** [1] - 12:9
**production** [3] - 21:6,
22:10, 22:20
**productive** [1] - 18:18
**productively** [1] -
21:19
**property** [4] - 24:4,
24:10, 25:4
**proposal** [6] - 30:5,
30:12, 31:11, 32:11,
41:24, 45:12
**propose** [2] - 30:9,
33:8
**prosecution** [1] - 24:8
**prospective** [1] -
28:20
**protection** [1] - 41:11
**protocol** [2] - 17:25,
20:11
**protocols** [1] - 39:18
**provide** [8] - 15:11,
15:22, 25:14, 25:16,
26:13, 34:3, 37:23,
40:8
**provided** [5] - 4:10,
36:5, 38:9, 42:12,
42:14
**providing** [3] - 11:24,
15:25, 38:12
**pulled** [1] - 14:15
**pure** [2] - 7:5, 7:9
**purely** [11] - 4:15,
4:18, 5:6, 8:8, 8:16,
8:17, 9:4, 9:9, 10:19,
13:7, 14:18
**purpose** [1] - 37:17
**pursuant** [2] - 22:20,
25:17
**put** [2] - 22:6, 45:3
**Pyenson** [1] - 3:7
**PYENSON** [1] - 1:23

## Q

**questions** [1] - 17:22
**quick** [2] - 14:23, 26:2
**quickly** [4] - 8:9, 27:6,
27:8, 29:9
**quite** [3] - 18:17,
18:25, 19:23

## R

**raise** [1] - 20:1
**raised** [1] - 27:22
**raising** [1] - 43:9
**ran** [1] - 10:2
**rather** [4] - 10:7,
30:16, 34:13, 39:4
**rationale** [1] - 31:2
**reach** [1] - 15:12
**read** [1] - 5:1
**reading** [1] - 30:15
**ready** [1] - 14:1
**realize** [1] - 39:11
**really** [7] - 4:4, 16:1,
18:25, 26:5, 30:17,
34:11, 45:3
**reason** [1] - 4:4
**reasonable** [1] - 27:12
**reasoning** [1] - 36:9
**reasons** [2] - 22:12,
45:17
**receipt** [1] - 27:17
**receive** [3] - 3:12,
37:20, 42:2
**received** [2] - 25:12,
42:11
**receiving** [1] - 15:1
**recollect** [1] - 10:23
**record** [1] - 10:24
**recorded** [1] - 1:25
**REED** [1] - 1:19
**referred** [1] - 9:25
**referring** [1] - 12:6
**reflect** [1] - 32:12
**reflected** [1] - 21:7
**reflecting** [1] - 42:22
**reflects** [1] - 43:25
**regard** [9] - 4:8, 9:15,
13:7, 16:17, 24:2,
35:20, 44:23, 45:1,
45:10
**regarding** [8] - 9:20,
13:2, 22:10, 23:3,
27:25, 42:24, 44:24,
45:20
**regardless** [2] - 8:22,
9:3
**regrets** [2] - 2:13, 2:20
**relate** [6] - 16:6, 17:7,
17:19, 17:20, 37:16

**related** [2] - 6:6, 12:15
**relating** [4] - 9:18,
16:24, 18:2, 32:15
**relation** [1] - 44:4
**relationship** [1] - 8:25
**relevant** [5] - 43:24,
44:6, 44:12, 45:7,
45:10
**relied** [1] - 42:23
**rely** [1] - 16:8
**remain** [1] - 27:18
**remaining** [2] - 31:24,
32:1
**repeated** [1] - 20:22
**Reporter** [1] - 1:24
**represent** [2] - 38:19,
39:6
**representation** [3] -
9:20, 10:25, 43:25
**representations** [1] -
27:7
**representatives** [1] -
45:3
**represented** [1] -
37:24
**representing** [3] -
12:19, 15:6, 15:7
**represents** [1] - 5:2
**request** [3] - 4:3,
15:16, 22:9
**requesting** [1] - 26:7
**required** [1] - 26:13
**reserving** [1] - 41:2
**resolution** [1] - 19:17
**resolve** [8] - 3:18,
19:8, 19:11, 22:17,
26:15, 26:19, 33:13
**resolved** [2] - 20:21,
35:22
**resources** [1] - 39:13
**respect** [7] - 5:20,
15:5, 19:25, 21:25,
33:3, 41:24, 45:12
**respectfully** [4] - 3:24,
11:4, 32:10, 39:2
**respond** [1] - 25:19
**response** [2] - 13:6,
46:5
**responsible** [1] - 37:9
**rest** [3] - 15:11, 15:22,
33:23
**result** [1] - 41:19
**resulted** [1] - 22:24
**results** [2] - 14:23,
41:7
**retaining** [1] - 6:14
**retains** [1] - 5:19
**Retrophin** [61] - 3:3,
4:21, 4:23, 5:6, 6:24,
7:21, 7:25, 8:1, 8:12,

8:15, 10:1, 10:16,
11:11, 12:21, 13:11,
13:12, 13:15, 13:17,
14:21, 15:10, 15:22,
15:25, 16:2, 16:6,
17:5, 17:7, 17:16,
17:19, 18:2, 18:19,
19:6, 19:10, 20:9,
21:5, 21:10, 22:18,
24:21, 25:10, 28:24,
35:21, 36:6, 36:7,
36:9, 36:10, 36:13,
36:22, 37:5, 37:16,
37:19, 38:23, 39:1,
39:19, 40:8, 41:2,
41:15, 42:6, 42:23,
44:1, 44:23, 44:25,
45:3
**Retrophin's** [20] -
4:16, 4:22, 4:23, 8:3,
9:24, 10:1, 13:12,
13:20, 13:21, 13:25,
14:4, 14:18, 19:22,
20:5, 21:8, 24:12,
24:19, 37:15, 44:16,
45:2
**returned** [8] - 36:6,
36:10, 36:14, 37:17,
37:20, 38:2, 38:3,
39:9
**returning** [3] - 37:9,
37:10, 38:23
**reversing** [1] - 23:9
**review** [34] - 6:2, 6:25,
7:5, 7:6, 7:9, 7:13,
10:10, 10:20, 11:12,
17:18, 18:1, 18:3,
22:3, 23:6, 25:15,
25:23, 26:16, 26:17,
27:6, 27:11, 27:22,
28:2, 28:21, 29:13,
29:15, 33:25, 34:15,
37:16, 37:21, 37:24,
38:17, 39:7, 39:13,
40:9
**reviewed** [5] - 26:6,
28:10, 33:11, 36:12,
38:11
**reviewing** [2] - 10:24,
18:5
**rightfully** [1] - 24:3
**rights** [1] - 41:3
**ripe** [1] - 25:6
**risk** [1] - 30:24
**ROBERT** [1] - 1:12
**room** [1] - 20:7
**roughly** [2] - 7:18, 9:7
**RUBIN** [1] - 1:18,
2:18, 27:15, 29:12,
29:25, 30:10, 34:7,

*USA v. Shkreli & Greebel*      *12/14/16*      7

34:24, 35:3, 35:9,
35:12, 35:15, 37:1,
39:2, 39:15, 47:2
**Rubin** [4] - 2:18,
29:11, 35:11, 45:6

## S

**safe** [1] - 39:20
**satisfied** [1] - 41:20
**save** [1] - 43:3
**schedule** [16] - 7:15,
27:2, 30:9, 30:22,
32:16, 32:23, 32:25,
33:1, 33:2, 33:6,
33:14, 33:16, 33:22,
33:24, 34:4
**scheduled** [2] - 7:6,
46:25
**scheduling** [1] - 26:23
**scope** [2] - 18:22, 21:4
**se** [1] - 28:13
**search** [13] - 8:6, 8:9,
8:18, 9:14, 14:1,
15:10, 15:17, 15:22,
16:2, 28:18, 31:6,
38:18, 43:4
**searched** [1] - 38:14
**searches** [5] - 4:19,
18:11, 19:18, 19:23,
20:11
**seat** [1] - 2:1
**second** [3] - 4:3, 5:4,
16:10
**secondarily** [1] - 5:20
**see** [18] - 4:4, 6:2, 6:5,
6:14, 6:18, 7:1,
21:13, 22:2, 24:15,
24:25, 25:2, 28:7,
29:8, 32:7, 42:21,
43:15, 45:21
**seeing** [1] - 37:12
**seeking** [1] - 41:11
**seem** [4] - 6:7, 9:18,
43:3, 43:7
**segregate** [4] - 8:19,
15:10, 15:21, 16:1
**segregated** [1] - 12:25
**segregating** [2] - 8:15,
11:8
**selective** [3] - 24:7,
41:1, 41:4
**send** [1] - 3:19
**sends** [2] - 2:13, 2:20
**sense** [8] - 7:16,
16:13, 22:11, 24:4,
34:16, 34:17, 39:21,
43:4
**sensitive** [1] - 19:4
**separating** [1] - 40:25

**serve** [5] - 25:9, 43:1,
43:2, 43:7, 43:23
**served** [4] - 16:13,
24:2, 30:13, 44:10
**services** [2] - 15:25,
20:8
**serving** [1] - 43:21
**set** [18] - 3:8, 4:6,
17:25, 22:14, 26:25,
27:2, 27:10, 28:20,
32:16, 32:23, 34:9,
34:11, 38:8, 38:10,
38:13, 39:18, 42:5
**setting** [2] - 41:2, 41:5
**settlements** [1] -
38:10
**sever** [1] - 32:5
**severance** [14] -
26:24, 27:2, 27:5,
27:9, 27:16, 29:17,
31:22, 32:17, 32:25,
33:5, 33:6, 33:15,
34:10, 34:12
**severed** [1] - 32:3
**shaking** [1] - 30:14
**shape** [1] - 24:6
**SHAPIRO** [31] - 1:21,
3:2, 8:10, 8:14, 10:3,
10:11, 11:15, 14:22,
15:20, 16:20, 17:2,
17:6, 17:9, 17:13,
17:17, 20:14, 25:11,
25:18, 35:25, 36:4,
36:19, 36:22, 37:14,
38:1, 40:2, 40:12,
40:14, 41:9, 41:11,
41:21, 41:23
**Shapiro** [1] - 3:2,
11:14, 14:8, 18:8,
19:19, 19:25, 21:9,
21:16, 37:7, 39:23,
46:7
**share** [1] - 8:16
**SHEMTOB** [1] - 1:22
**Shemtob** [1] - 3:2
**shield** [1] - 41:4
**Shkreli** [73] - 2:3, 2:10,
2:12, 4:13, 5:4, 5:9,
6:10, 6:11, 6:15,
6:25, 8:12, 8:23, 9:1,
9:4, 9:8, 9:16, 9:17,
9:22, 10:4, 10:7,
10:17, 10:18, 10:20,
11:7, 11:9, 11:17,
11:19, 11:21, 12:1,
12:6, 13:8, 14:24,
15:1, 15:12, 16:22,
16:23, 17:24, 20:7,
22:18, 24:2, 24:15,
26:7, 28:3, 29:14,

31:2, 36:5, 36:6,
37:15, 38:11, 38:14,
38:15, 38:21, 39:1,
39:12, 39:19, 39:25,
42:1, 42:2, 42:6,
42:8, 42:11, 42:14,
42:18, 42:23, 43:12,
43:16, 43:18, 44:1,
44:4, 44:22, 44:23,
45:18
**SHKRELI** [1] - 1:8
**Shkreli's** [10] - 9:11,
11:25, 14:25, 16:14,
22:22, 23:5, 24:9,
36:12, 38:6, 44:18
**Shrekli** [1] - 1:17
**side** [1] - 37:3
**significant** [1] - 15:25
**similar** [2] - 4:6, 45:17
**sitting** [2] - 37:18,
38:5
**six** [3] - 7:20, 21:15,
33:20
**SMITH** [4] - 1:14,
26:22, 31:21, 32:4
**Smith** [1] - 2:6
**solution** [2] - 20:13,
38:6
**someone** [2] - 3:5,
23:16
**sometime** [3] - 19:17,
34:4, 34:13
**sometimes** [2] -
20:23, 20:24
**somewhat** [1] - 44:9
**somewhere** [1] - 4:14
**soon** [1] - 27:24
**sooner** [2] - 7:14,
34:13
**sorry** [2] - 22:23, 35:4
**sort** [6] - 14:2, 20:17,
24:21, 33:6, 37:9,
39:22
**sought** [1] - 38:6
**sound** [1] - 20:20
**sounds** [1] - 37:7
**Southern** [1] - 2:14
**speaking** [1] - 19:12
**specific** [4] - 17:22,
18:17, 18:19, 22:14
**specifically** [3] - 5:24,
18:11, 19:19
**spent** [1] - 3:17
**Srinivasan** [1] - 2:7
**SRINIVASAN** [1] -
1:15
**staged** [1] - 37:22
**stake** [1] - 7:17
**standstill** [1] - 4:24
**start** [4] - 7:2, 29:22,

37:25, 38:17
**started** [2] - 22:19,
23:22
**starting** [1] - 41:18
**state** [1] - 2:4
**STATES** [2] - 1:1, 1:3
**States** [1] - 1:12
**status** [6] - 2:2, 27:5,
34:9, 34:13, 35:17,
46:13
**STATUS** [1] - 1:6
**stenography** [1] - 1:25
**steps** [1] - 23:9
**still** [10] - 4:24, 10:7,
10:8, 10:22, 18:10,
25:3, 27:5, 29:20,
31:22, 35:19
**stipulation** [1] - 44:21
**straighten** [1] - 22:21
**streamlined** [1] -
44:21
**struggling** [1] - 8:1
**subject** [4] - 14:12,
40:5, 40:21, 42:25
**subjects** [1] - 44:25
**subordinate** [1] - 9:17
**subpoena** [20] - 14:23,
22:20, 24:3, 24:5,
24:14, 25:4, 25:9,
25:12, 25:14, 25:17,
25:18, 25:19, 43:2,
43:8, 43:21, 43:23,
44:3, 44:11, 45:15
**subset** [3] - 7:9,
41:25, 42:17
**substantial** [1] - 16:7
**succeeded** [1] - 18:25
**sufficient** [1] - 15:15
**suggest** [2] - 30:10,
32:25
**suggested** [1] - 14:19
**suggesting** [1] - 4:20
**suggestion** [2] -
30:25, 39:3
**suggests** [1] - 19:19
**summer** [3] - 40:20,
41:12, 41:15
**superior** [1] - 6:11
**superseding** [1] -
44:18
**suppose** [1] - 44:3
**supposed** [2] - 28:24
**surprising** [1] - 38:22
**sword** [1] - 41:4

## T

**table** [2] - 3:8, 37:4
**target** [1] - 27:22
**targeted** [1] - 44:11

**team** [2] - 8:15, 19:8
**teed** [1] - 24:16
**tend** [1] - 33:19
**term** [5] - 8:18, 14:6,
15:10, 15:22
**terms** [4] - 9:14, 14:1,
16:2, 37:12
**THE** [117] - 2:1, 2:2,
2:9, 2:10, 2:15, 2:17,
2:21, 2:22, 2:25, 3:1,
3:4, 3:8, 3:10, 3:16,
3:22, 5:1, 6:4, 6:17,
6:20, 7:2, 7:16, 8:13,
9:11, 10:6, 10:12,
10:18, 11:4, 11:7,
12:3, 12:14, 12:20,
12:22, 13:1, 13:4,
14:5, 15:14, 16:12,
16:16, 16:25, 17:4,
17:8, 17:11, 17:15,
17:24, 18:7, 19:20,
20:19, 21:21, 22:16,
25:8, 25:13, 25:20,
25:23, 25:25, 26:9,
26:12, 27:4, 27:21,
27:24, 28:6, 28:12,
28:17, 29:3, 29:6,
29:11, 29:19, 30:3,
30:9, 30:14, 31:10,
31:16, 31:25, 32:5,
33:9, 34:8, 34:19,
34:20, 34:21, 34:22,
35:1, 35:6, 35:8,
35:10, 35:14, 35:16,
35:19, 36:3, 36:16,
36:20, 36:24, 37:22,
38:8, 39:11, 39:17,
40:6, 40:13, 40:23,
41:10, 41:14, 41:20,
41:22, 42:9, 42:20,
43:9, 43:23, 44:8,
44:15, 45:19, 45:23,
46:1, 46:4, 46:6,
46:15, 46:18, 46:20,
46:22, 47:4
**themselves** [1] - 30:2
**theory** [1] - 31:1
**therefore** [1] - 41:4
**they've** [2] - 4:10,
40:11
**thinks** [1] - 21:16
**third** [2] - 6:15, 6:16
**third-parties** [1] - 6:15
**third-party** [1] - 6:16
**thousand** [1] - 11:20
**three** [1] - 20:21
**throw** [2] - 29:3, 29:23
**timing** [1] - 27:17
**today** [2] - 25:7, 46:8
**together** [3] - 14:16,

28:24, 29:6
**took** [1] - 23:24
**topics** [1] - 40:3
**town** [1] - 33:18
**track** [3] - 6:22, 31:19, 32:9
**TRANSCRIPT** [1] - 1:6
**transcript** [2] - 1:25, 25:23
**Transcript** [1] - 1:25
**travel** [2] - 4:4, 4:6
**traveling** [1] - 4:5
**treat** [1] - 43:7
**tremendous** [1] - 38:20
**Trenton** [1] - 35:5
**trial** [15] - 6:22, 21:2, 29:20, 30:22, 32:6, 32:15, 32:16, 34:21, 44:13, 45:15, 45:16, 45:17, 46:16, 46:22, 46:25
**trials** [2] - 33:20
**tried** [1] - 17:4
**true** [3] - 15:7, 18:4, 35:21
**try** [14] - 3:19, 4:16, 9:12, 16:1, 18:21, 18:25, 21:13, 26:19, 30:17, 30:21, 33:13, 39:5, 39:18, 44:25
**trying** [14] - 3:18, 6:21, 8:4, 8:5, 19:1, 19:4, 19:8, 19:24, 20:25, 21:2, 24:17, 25:3, 40:8, 45:5
**turn** [1] - 10:8
**turned** [7] - 9:22, 10:4, 10:8, 11:17, 12:5, 16:22, 16:24
**twice** [1] - 36:11
**two** [11] - 3:24, 5:17, 7:23, 9:2, 13:6, 13:13, 14:15, 14:22, 16:3, 22:25, 43:18

## U

**U.S** [2] - 1:4, 1:15
**U.S.D.J** [1] - 1:11
**ultimately** [2] - 20:12, 28:1
**unburden** [1] - 19:1
**unclear** [1] - 16:16
**understood** [7] - 3:21, 8:10, 14:14, 41:25, 45:22, 45:25
**undetermined** [1] - 27:5
**unfairly** [1] - 43:7

**UNITED** [2] - 1:1, 1:3
**United** [1] - 1:12
**universal** [1] - 38:13
**universe** [3] - 8:24, 15:5, 42:15
**unless** [1] - 46:22
**unsure** [1] - 20:6
**unwind** [1] - 3:19
**up** [9] - 3:8, 17:1, 17:25, 23:25, 24:16, 29:9, 33:7, 46:15, 46:24
**urge** [2] - 33:13, 34:2
**USA** [1] - 2:3
**useful** [1] - 39:21

## V

**vacation** [1] - 33:23
**vacuum** [1] - 27:19
**various** [1] - 22:13
**vehicle** [1] - 7:25
**Venn** [1] - 8:21
**venue** [1] - 8:7
**VERDE** [25] - 1:20, 2:23, 4:12, 7:19, 8:21, 9:24, 10:14, 11:1, 11:6, 12:11, 12:18, 12:21, 12:23, 13:3, 13:5, 14:13, 15:17, 16:9, 16:15, 16:18, 30:24, 31:14, 35:17, 38:13, 42:13
**Verde** [21] - 2:23, 6:24, 7:17, 10:13, 11:5, 12:3, 15:8, 15:23, 16:3, 17:3, 18:23, 19:8, 24:9, 24:10, 30:23, 31:12, 37:11, 37:23, 41:24, 42:9, 46:6
**Verde's** [1] - 16:4
**versus** [1] - 2:3
**view** [3] - 13:19, 16:18, 43:19
**voiced** [1] - 18:19
**volume** [2] - 26:17, 26:18
**voluntarily** [1] - 40:4
**volunteering** [1] - 30:24

## W

**wait** [1] - 20:23
**waiting** [1] - 4:24
**waive** [3] - 5:9, 21:6, 45:1
**waived** [2] - 36:23, 40:4

**waiver** [20] - 18:22, 21:5, 21:11, 21:14, 23:4, 24:7, 28:14, 39:24, 40:5, 40:11, 40:12, 40:13, 40:20, 40:21, 41:1, 41:4, 41:8, 41:12, 41:15, 41:19
**waivers** [10] - 18:22, 23:16, 40:7, 40:16, 40:19, 40:25, 41:7, 41:16, 41:17, 41:19
**waiving** [5] - 6:3, 6:10, 6:13, 38:24, 41:6
**wall** [1] - 28:18
**wants** [1] - 45:1
**week** [2] - 20:17, 34:21
**weeks** [1] - 34:4
**whatsoever** [1] - 44:2
**whole** [4] - 22:19, 23:11, 27:4, 30:6
**willing** [8] - 17:11, 17:13, 17:17, 17:18, 21:11, 24:18, 26:16, 31:4
**winded** [1] - 25:5
**wish** [1] - 5:11
**wishes** [1] - 39:22
**withholding** [1] - 22:12
**witness** [1] - 32:21
**witnesses** [2] - 33:4, 33:5
**word** [6] - 4:21, 14:21, 18:11, 19:18, 19:23, 20:11
**write** [1] - 20:22
**wrote** [2] - 23:24, 24:22

## Y

**year** [1] - 4:7
**YORK** [1] - 1:1
**York** [2] - 1:5, 1:13
**yourself** [1] - 23:1

## Z

**ZACH** [1] - 1:22
**Zach** [1] - 3:2
**ZELLAN** [1] - 1:17
**Zellan** [1] - 2:12