# Exhibit 10

*The New York Times* | https://nyti.ms/22l5rtm



WITH FOUNDER
ANDREW ROSS SORKIN

# In Shkreli Case, a Company Lawyer May Have Crossed the Line

White Collar Watch

By PETER J. HENNING     DEC. 21, 2015

The indictment of Martin Shkreli, the widely reviled head of a pharmaceutical company that secured the rights to a decades-old drug and then increased its price more than fiftyfold, was described by a F.B.I. official as the "securities fraud trifecta of lies, deceit and greed" — nothing particularly new when it comes to defrauding hedge fund investors.

What makes the case interesting is that a lawyer, Evan Greebel, has been charged as an accomplice for not protecting his corporate client that Mr. Shkreli is accused of using essentially as a personal piggy bank.

Lawyers are important players in corporate transactions, ensuring their clients comply with the rules. But when legal advice pushes over the line into enabling fraud, then a lawyer can wind up on the wrong side of the law.

Mr. Shkreli was charged with securities fraud and conspiracy for misleading investors in a hedge fund he managed about losses it suffered. As The New York

Times pointed out, this aspect of the case was little more than a small-time fraud in which investors were duped into believing their investment of a few million dollars was profitable when in fact Mr. Shkreli made a series of bad stock picks — hardly the stuff of front-page headlines.

After the investors protested, he was accused of funneling the assets of a biopharmaceutical company, Retrophin, of which he was the chief executive, to pay those claims. Pulling that off required much more than fast talk because the company was publicly traded, so there were supposed to be internal controls in place to ensure proper management of its assets and a board of directors designated to watch over the enterprise.

That is where Mr. Greebel comes into the picture. He was the lead outside counsel and corporate secretary for Retrophin while working as a partner at the law firm Katten Muchin Rosenman (he moved last summer to Kaye Scholer). Mr. Greebel's practice involved working on corporate transactions and, more recently, helping firms involved in Bitcoin.

Mr. Greebel is charged with one count of conspiring with Mr. Shkreli to commit wire fraud in connection with the claimed misuse of Retrophin's assets to pay off the hedge fund investors. According to the indictment, he helped draft sham consulting agreements to mask the payments so that they appeared to be related to the company's business.

In an email sent in response to a question from Mr. Shkreli about why this type of arrangement was needed, Mr. Greebel wrote, "We can call it a settlement agreement, but given [the auditor's] recent behavior they may require it to be disclosed in the financials. I was trying to prevent that issue." That sounds like standard legal advice a lawyer would give to a client about how to structure a transaction, setting forth alternatives and then explaining why one approach is better.

The prosecution of Mr. Greebel raises the question about when legal advice crosses the line into aiding and abetting a fraud. The starting point in the analysis is identifying the client, because that is the party the lawyer must ensure receives the benefit of the legal services. That seemingly simple issue becomes much more

complicated when a small corporation like Retrophin is the client because lawyers can sometimes let themselves slip into thinking that it is the individual officers, especially the chief executive, who are in need of protection.

In a comment posted on Investorshub in February, Mr. Shkreli defended his actions by claiming that "every transaction I've ever made at Retrophin was done with outside counsel's blessing (I have the bills to prove it), board approval and made good corporate sense." That certainly makes it sound as if the lawyer was working on behalf of the chief executive.

But if the Justice Department's charge against Mr. Greebel is true, then the first misstep appears to be that he put Mr. Shkreli's interests ahead of Retrophin, his actual client.

Mr. Greebel has pleaded not guilty and is fighting the charges.

There is nothing inherently wrong with settling a case by creating a consulting arrangement, unless it is done to mislead the company making the payment into believing it is a legitimate transaction. The reference in his email to Mr. Shkreli about avoiding scrutiny from the outside auditor can be evidence that the agreements were not intended to protect the corporate client but rather to mislead it, something a company's lawyer is certainly not supposed to do.

Unlike a hedge fund investor who falls for a pitch from a fast-talking entrepreneur, shareholders depend on the company to have in place the protections needed to ensure it is being properly managed.

Since the demise of Enron in 2002 after its lawyers did little to protect the company from wrongdoing by its executives, corporate counsel is now seen as one of the gatekeepers for a corporation required to ensure that it stays within the law. When the company's lawyer steps out of that role by aiding a chief executive in advancing his own interests, one of the key protections in place for investors is lost.

The Securities and Exchange Commission, which also filed civil fraud charges against Mr. Shkreli and Mr. Greebel, has emphasized that it wants to focus on

corporate gatekeepers for failing to protect companies and their investors from fraud.

Kara M. Stein, an S.E.C. commissioner, raised the issue of whether the agency was not being tough enough in pursuing lawyers for misconduct at corporate clients. "Are we treating lawyers differently from other gatekeepers, such as accountants? I think we should carefully review the role that lawyers play in our markets, with a view towards how they can better help deter misconduct and prevent fraud," she said in a speech in 2014.

The charge against Mr. Greebel focuses on his role as one of Retrophin's gatekeepers, claiming that the failure to protect his client constitutes aiding and abetting Mr. Shkreli's crime. If the lawyer confuses who the client is, then it can be easy to fall into the trap of believing that the best interests of an individual officer are paramount.

For Retrophin, the indictment represents a measure of vindication. The charges largely track a lawsuit filed by the company against Mr. Shkreli in August claiming that he violated his fiduciary duty of loyalty to the company by misusing its assets for personal purposes by paying off investors in his hedge funds, seeking $65 million in compensation. (Mr. Greebel was not named in that lawsuit.)

But in an odd twist, Retrophin may have to pay more money in the case before it can ever recover. Under its bylaws, the company is required to advance the legal expenses of any director or officer who is the subject of a criminal prosecution or civil lawsuit related to conduct while at the company. Retrophin is incorporated in Delaware, whose Chancery Court has been aggressive in protecting the rights of individuals seeking payment of legal fees from a former corporate employer.

That means the company may have to pay for the lawyers while Mr. Shkreli and Mr. Greebel defend the criminal and civil cases, a claim it is sure to fight but may wind up losing.

© 2017 The New York Times Company