# Exhibit 16

The New York Times | https://nyti.ms/1RU6yLY

MUTUAL FUNDS | ESSAY

# Loose Lips Sink Careers, Even for C.E.O.s

By JOHN SCHWARTZ    JAN. 15, 2016

Doesn't anybody know how to shut up anymore?

In our say-anything age, even the president of the United States has a **Twitter** account. All of the 2016 candidates do, too; Donald J. Trump has taken to the medium like an agitated middle schooler.

The business world is social-media crazy, too: Tech titans like Marc Andreessen share their thoughts in florid tweet-storms. The Amazon founder Jeff Bezos and the Tesla founder Elon Musk **taunt each other** at 140 characters a message over whose rockets do cooler things. The futurists promised us an always-on Internet, but they didn't tell us that so many people would always be onstage.

Still, you know the old line: "Better to remain silent and be thought a fool than to speak and remove all doubt." No, Lincoln apparently **did not say it**, but it's good

advice anyway. And it's even better advice when you're going to trial. Yet some really smart people apparently don't feel confined by petty rules and well-intended advice.

A recent New York Times article by Matthew Goldstein and Alexandra Stevenson examined chief executives and other prominent figures who have gotten in trouble with the law and have used social media to make their case in the court of public opinion — even though actual courts take a dim view of such antics.

The article notes that just two days after Martin Shkreli, the pharmaceutical executive, was arraigned on federal securities fraud charges, he wrote on Twitter: "I am confident I will prevail." He has also posted on Twitter: his insistence "I'm not a criminal."

Mr. Shkreli, 32, made headlines by increasing the price of a decades-old drug by 5,000 percent; the charges focus on earlier financial dealings that were already the subject of a lawsuit.

Other business executives with legal problems, including Lynn G. Tilton, a private equity executive, and Charlie Shrem, who led a money transfer service, have also been pretty loose lipped.

To be fair, Mr. Shkreli, for one, has not been his usual brash — maybe even bratty — self online. Before the arrest, based on his tweets and live videos, he almost seemed to be playing the role of a movie bad guy. Now he's posting on Twitter less often, and with a restrained (for him) air.

But he is still talking. I called him and asked about his current approach on social media, and he responded: "I'm not going to say something that jeopardizes my case." He said prosecutors had a lot of sway over public opinion through events like so-called perp walks. "This sort of becomes a chess match now of public opinion — which is sad, because ultimately it should be about the facts," he said. Mr. Shkreli added: "I feel like I'm being prosecuted for being a jerk."

After hearing from him, I retained my reservations about his public relations strategy. I myself have a Twitter account, and on a daily basis I wonder if Twitter isn't custom designed to trigger career suicide. My own online persona could well

end up in a flameout so spectacular that colleagues will talk about it in the years afterward as "pulling a Schwartz."

This has not happened yet, thank goodness. But give me time.

The thing is, though, that as close as I regularly skate toward disaster online, I'm not a chief executive, and I'm not facing criminal or civil charges. What these brilliant captains of industry are doing takes boldness into a realm that even I, a great fan of boldness, find questionable.

I checked in with Gerald L. Shargel, a prominent criminal defense lawyer, for insight into this phenomenon, and I'm pretty sure I could hear him shaking his head over the phone. Mr. Shargel, who has represented John J. Gotti, the Mafia don, among others, said that the problem came down to brains and self-confidence.

"It starts with the proposition that there are people who are very smart outside the four walls of the courtroom," he said. "And they think they are smarter than the lawyers they have engaged."

These are high-powered people, he said, who didn't get to their positions by being conventional. Is it possible, I asked, that their rule-breaking, gut-trusting ways might be part of what got them plunked down in front of a judge in the first place?

He paused for a moment, and replied, "Well said."

The public pronouncements get the clients the attention that they seem to crave, he said, "and sometimes, it's funny — until the verdict."

To get further insight into the minds of these geniuses, I called Rory J. O'Connor, who provides media training and crisis consulting to executives through his San Francisco company, Morcopy Communications. He pronounced himself mystified by the likes of Mr. Shkreli. "What's the first line of the Miranda warning? 'You have the right to remain silent.'"

Mr. O'Connor said that when police officers say, "Anything you say can and will be used against you in a court of law," they really mean it. "Why would you want to

go on social media, where they don't even need a subpoena, and say things that could be used against you?"

It's great for clients' lawyers and friends to say how wonderful they are, but as for the executives facing legal trouble themselves, he says, "You want to keep your mouth shut."

There is nothing novel about this advice, he said: "I've never been in a situation where a lawyer or P.R. counsel says, 'Hey, get out there and open your yap.'"

What does this mean for the future? I wonder whether the quiet period before an initial public offering of stock — a blessedly silent interlude when executives are prohibited from speaking out and influencing public opinion — is doomed.

More generally, many corporate espionage strategies, and sophisticated market research programs, could become utterly pointless. Just check a C.E.O.'s Pinterest and Instagram accounts. Maybe Tinder, too. It's all out there, baby!

Vanity might finally lead to true corporate transparency. How wonderful if corporate America used Twitter even more!

All of it, eventually, would be a guide for investors. Give money to this company? To this entrepreneur or that one? Well, how do they sound online? I can only imagine what the real Steve Jobs would have done with a Twitter account by now. Or how Henry Ford would have fared if he had committed anti-Semitic gaffes in a social media world.

Yes, strip away the layer of handlers and let us see what these giants are really like and what we think of their judgment and boldness then. We will make decisions accordingly.

Of course, if Twitter leads C.E.O.s to actually start losing money — well, that's when they will finally put a sock in it. Silence will once again be golden when not being silent means having less gold.

A version of this article appears in print on January 17, 2016, on Page BU17 of the New York edition with the headline: Loose Lips Sink Careers, Even for C.E.O.s.

© 2017 The New York Times Company