UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------------X
UNITED STATES OF AMERICA

        -against-

                                                  Ind. No. 15 CR 637(S-1) (KAM)

MARTIN SHKRELI
EVAN GREEBEL,

             Defendants.
----------------------------------------------------------------X

## REPLY MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT MARTIN SHKRELI'S SEVERANCE MOTION FROM CO-DEFENDANT EVAN GREEBEL

                                                By:    **Brafman & Associates, PC**
                                                       *Attorneys for the*
                                                       *Defendant Martin Shkreli*
                                                       767 3rd Avenue, 26th Fl.
                                                       New York, NY 10017
                                                       Tel - 212-750-7800
                                                       Fax – 212-750-3906
                                                      bbrafman@braflaw.com

Of Counsel:   Benjamin Brafman
                     Andrea Zellan
                     Marc Agnifilo

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------------X
UNITED STATES OF AMERICA

    -against-

MARTIN SHKRELI
EVAN GREEBEL,

              Defendants.
------------------------------------------------------------------X

**REPLY MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT MARTIN SHKRELI'S SEVERANCE MOTION**

Ind. No. 15 CR 637(S-1) (KAM)

## REPLY MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT MARTIN SHKRELI'S SEVERANCE MOTION

Mr. Shkreli submits this brief Reply to certain arguments advanced in the submissions of co-defendant Greebel (Dkt No. 163) and of the Government (Dkt. No. 166).

First, the Government's three-step analysis of the law of severance based on antagonistic defenses is, most respectfully, inaccurate. (See "Govt Memo") at 22 - 23).

Second, given that Greebel's videotaped, post-arrest statement is solely about his relationship with Mr. Shkreli, it is impossible to sanitize that statement under Bruton and its progeny.

Third, Greebel's proffered trial defense, focusing on unsubstantiated, scandalous and false claims about Mr. Shkreli, will cause a joint trial to devolve into a series of irrelevant sideshows, taking the Court's, the Government's, and the jury's attention away from Mr. Shkreli's defense on the merits.

For these reasons, Martin Shkreli should be tried alone, without the competing irreconcilable, antagonistic defense and distraction of Greebel, who unfortunately has sought to save himself at the expense of his former client.

1. **The Government Mischaracterizes the Law of Severance**

Without providing any legal support[1], the Government stated that in determining if a severance is warranted, the Court must undertake a three-step analysis. See Govt Memo at 22. As to the first step – "whether the adversarial defenses ... are in fact 'mutually antagonistic,' such that acceptance of one defense necessarily precludes acceptance of the other" – we agree that this is an accurate statement of the law on severance. See United States v. Serpoosh, 919 F.2d 835 (2d Cir. 1990); United States v. Tutino, 883 F.2d 1125 (2d Cir. 1989); United States v. Potamitis, 739 F.2d 784 (2d Cir. 1984).

However, the Government then asks the Court to move to a second step – that even if the defenses are mutually antagonistic, the Court must then ask if there is prejudice to a defendant. This analysis is inaccurate because the subject of prejudice was already addressed in the first step. In other words, if the defenses are mutually antagonistic such that accepting one means rejecting the other, that is the prejudice. To the extent that the Government is stating that the Court must find some prejudice beyond the fact that the jury must choose one defense and reject the other, such is an inaccurate statement of the law. Rather, once it is determined that "the jury, in order to believe the core of testimony offered on behalf of one defendant, must necessarily disbelieve the testimony offered on behalf of his co-defendant", "separate trials are required." United States v. Aronson, No.2:12-cr-00245(ADS) (EDNY May 23, 2013) ECF No. 167 quoting Garcia v. Artus, No. 09-CV-1423(JFB), 2010 WL 1816333, at 9 (EDNY May 5, 2010). That a defendant is forced to have the jury accept or reject his defense due to a competing mutually

---

[1] In devising the three-step analysis, the Government cobbled together language used by a number of Second Circuit and Supreme Court decisions. However, the Government suggests that before the Court may legally sever the trials, it must find each of the three steps independent of each other. For the reasons that follow, the Government's assertion in this regard is, most respectfully, an inaccurate statement of the law.

2

antagonistic defense is precisely the prejudice to be avoided; no other prejudice must be shown. Indeed, in discussing the prejudice inherent in antagonistic defenses, the Second Circuit noted that "the jury will infer that both defendants are guilty solely due to the conflict." Serpoosh, 919 F.2d at 838. Therefore, to the extent that the Government states that this Court must find some form of prejudice in addition to the fact that the jury is asked to accept one defense and reject the other, such statement is legally incorrect.[2]

The Government then asks the Court to move to a third step – "even if the Court determines that one or both defendants might suffer prejudice as a result of the joint trial, the Court must find there is a serious risk that 'a joint trial would compromise a specific trial right or prevent the jury from making a reliable judgment." Like the Government's proposed second step, this was also addressed in the first step. The specific trial right at issue is the right to have a jury consider a defendant's defense on its own merits without being forced to accept or reject it due to another competing mutually antagonistic defense.

The Government criticizes the holding in Aronson because the Court did not engage in a separate analysis of prejudice, concluding instead that the particular antagonistic defenses presented "result in prejudice to one another." Govt Memo at 30. However, the Supreme Court's decision in Zafiro v. United States, 506 U.S. 534 (1993), does not require a separate and independent analysis of prejudice. Rather, Zafiro requires precisely what Judge Spatt did in Aronson, and what we encourage Your Honor to do here: to find that because the jury cannot believe both defenses simultaneously, there is prejudice to one or both defendants. Judge Spatt's

---

[2] On this point, the Government states, "even if the intended defenses were 'mutually antagonistic,' the defendants have not demonstrated a severe risk of prejudice." Government's Memo, p. 24. The Government's analysis is inaccurate because the law is clear that once a jury is forced to accept one defense and reject the other, a joint trial is impossible. Tutino, 883 F.2d at 1125; Potamitis, 739 F.2d at 784. The Court need not move beyond this to ask whether there is prejudice, much less a severe risk of prejudice.

3

Aronson decision, involving a thorough review of Supreme Court and Second Circuit precedent in this area, was correctly-decided and is dispositive of the issue here.

### 2. Greebel's Statement Cannot Be Sanitized

The government has committed to "admit[ing] statements made by the defendants to law enforcement after the time period of the charged conspiracies, after properly sanitizing them to remove all references to the non-testifying co-defendant and ensuring that they fully comport with Bruton." Govt. Memo at 38. The Government asserts that these "statements are admissible with a proper limiting instruction." We disagree. Admitting Greebel's post-arrest statements to law enforcement during a joint trial will violate Mr. Shkreli's rights under the Confrontation Clause of the Sixth Amendment.

Greebel's two hour recitation of his four-year representation of Mr. Shkreli simply cannot be sanitized to remove Greebel's accusatory finger pointing directly to Mr. Shkreli. Thus, the statement cannot be modified to eliminate the overwhelming probability that a jury will disregard this Court's limiting instructions. Shkreli Br. at 19.

Additionally, Greebel's statement cannot be sanitized because his statement is a one-sided chronology of the relationship between Greebel and Mr. Shkreli and his companies, the MSMB entities and Retrophin. He misrepresents and mischaracterizes the relationship stating falsely that he and Mr. Shkreli had sporadic contact only when Mr. Shkreli had discreet legal issues requiring Greebel's assistance or advice. In truth, however, Greebel was Mr. Shkreli's right-hand as he worked to transform his ideas into businesses and companies and to grow those companies. Every word of Greebel's two hour statement is about his relationship to one client – Mr. Shkreli and the vast majority of Greebel's post-arrest statement is patently false and belied

4

by thousands of emails and almost 10 million dollars of detailed billing describing his very significant work for Mr. Shkreli.

The Government does not propose how it intends to sanitize this statement or which portions of the statement it intends to admit. Part of the problem with this particular statement in this particular case is that a central issue at the trial is the nature of the relationship between Mr. Shkreli and Greebel. As has now been developed over dozens of pages of briefing, Greebel characterizes it one way and Mr. Shkreli quite another. To the extent that the core of Greebel's statement to the FBI is about his relationship with Mr. Shkreli, it simply cannot be sanitized. The jury will know that Greebel is speaking about Mr. Shkreli, his relationship with Mr. Shkreli, the legal matters he worked on in conjunction with Mr. Shkreli and how he and Mr. Shkreli interacted during the course of their relationship. There is no mechanism to remove this self-evident conclusion.

A second problem is that Greebel's statement is fundamentally false and misleading. Greebel badly mischaracterizes the magnitude of his involvement in the day-to-day running of the company. He leaves out critical details in an attempt to artificially avoid responsibility for the legal decisions he made. He also provides false information about the matters in which he was involved. It is of critical importance that these false and misleading statements that directly and indirectly accuse Shkreli of illegal activity not be admitted into evidence.

Because there is no way to sanitize Greebel's statement, and because the Government has not thus far proposed one, the case must be severed so that the Government may, if it sees fit, use the Greebel statement as a party admission at the trial of Greebel.

3. **Greebel's Proffered Defense Will Create Evidential Sideshows, Distract the Jury, Prejudice Shkreli, and Substantially increase the Length of the Trial**

The Second Circuit in Serpoosh conducted an analysis of antagonistic defenses and concluded that the trials should have been severed. After that analysis, the Court added, "the damage done was greatly enhanced by the sparring between counsel for the two defendants in which each characterized the other defendant as a liar who concocted his story to escape blame. There was, therefore, the 'substantial prejudice' needed to reverse the denial of the severance motion." Id. at 838.

Here, not only has Greebel repeatedly called his former client a liar and a perpetrator of a fraud (in which Greebel was a $10,000,000 pawn), he wrote that Mr. Shkreli has spread "hate and hostility" and warned this Court that his former client may disrupt the trial by "attacking prosecutors, public figures, and/or female jurors themselves." Greebel Br. At 36. If this is a harbinger of things to come, one can hardly imagine what Greebel will say about his former client at the trial.

There is no doubt that Mr. Shkreli has been absolutely respectful of this Court, the representatives of the Government and the system in general since the inception of this case. For his former lawyer to tell the Judge trying this case that he believes Mr. Shkreli will attack female jurors at the upcoming trial is the height of unfair, unfounded prejudice. It is abundantly clear that rather than defending this case on the merits, Greebel will continue to attack Mr. Shkreli. Meanwhile, Mr. Shkreli, advancing an advice of counsel defense, will show the jury the $10,000,000 in billing, the memos written by Greebel to his law firm asking for more money due to his outstanding work on the Shkreli matters, the tens of thousands of emails between the two and all the other evidence showing that Mr. Shkreli sought Greebel's advice on everything.

While we have no doubt in the Court's ability to issue appropriate limiting instructions and to indulge the parties in regard to applications for such, Greebel's well-documented strategy of defaming, demeaning and blaming his former client at every turn will operate as a tremendous distraction to what are really fairly straight forward factual issues. Put differently, the trial of Mr. Shkreli without Greebel will be a relatively clean, basic fraud trial. The addition of Greebel involves a host of issues that will make this trial far more difficult for everyone involved.

We understand of course that the law of severance is not driven by the additional complexity and length of a multi-defendant trial. But, that is not nearly the problem facing the Court here. With all due respect to Greebel's very fine legal team, they have shown that they intend to defend this case by making Mr. Shkreli into a mythical boogeyman, someone who may at any moment may derail a legal proceeding or attack a female juror or create chaos. These fantastic allegations have already been distracting, prompting the Government to write, "(w)hile Greebel's motion is an attempt at a scathing indictment of Shkreli's character, the government will be trying only the charges in the Superseding Indictment." Govt Memo at 45. Shkreli's counsel and the Government have shown that we intend to try this case on the merits. Greebel, however, has shown that he intends to do something very different, that he will obfuscate and misdirect and will make unsubstantiated and outrageous allegations about his former client. He is absolutely welcome to do that at his own legal peril but should only be allowed to do that at his own trial.

Respectfully submitted,

Benjamin Brafman
Marc Agnifilo
Andrea Zellan

**BRAFMAN & ASSOCIATES, PC**
*Attorneys for the*
*Defendant Martin Shkreli*
767 3rd Avenue, 26th Flr.
New York, NY 10017
212-750-7800
bbrafman@braflaw.com