UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------------x
                             :

UNITED STATES OF AMERICA,         :      ECF Case

                             :

     -against-                     :      No. 15-CR-00637 (KAM)

                             :      **ORAL ARGUMENT REQUESTED**

MARTIN SHKRELI AND EVAN GREEBEL,  :      **AND SCHEDULED FOR APRIL 7,**

                             :      **2017**

         *Defendants*.           :

                             :

-------------------------------------------------------------------x

## DECLARATION OF MICHAEL S. FRISCH

I, Michael S. Frisch, hereby declare pursuant to 28 U.S.C. § 1746:

    1.      I am an Adjunct Professor of Law and the Ethics Counsel at Georgetown University Law Center ("Georgetown" or the "Law Center"), from which I graduated in 1974. For more than 25 years, I have taught an array of professional responsibility and/or ethics courses at Georgetown, including a seminar on advanced legal ethics, and to practicing lawyers. In 2001, I was named the Law Center's first Ethics Counsel.  As Ethics Counsel, I am responsible for enforcing the Law Center's ethical code for its law students, advising students and attorneys in Georgetown's clinical programs on ethical issues, and counseling students on professional responsibility issues relating to bar admission and employment.

    2.      In addition to my roles at Georgetown, I served as Assistant and Senior Assistant Bar Counsel for the District of Columbia from 1984 to 2001.  In that capacity, I was responsible for the enforcement of ethical standards for members of the legal profession in the District of Columbia, and throughout my tenure, I had primary responsibility for matters involving reciprocal discipline, including cases involving lawyers admitted in the District of Columbia and New York.  More generally, my responsibilities included investigating complaints, filing

charges, where appropriate, and prosecuting matters before hearing committees, the Board on Professional Responsibility and the District of Columbia Court of Appeals.  I have more than thirty-three years of both hands-on and teaching experience in the interpretation of ethical codes and standards for the legal profession.

3.       From 1975 through 1978, I also served as an Assistant Federal Public Defender for the District of Maryland and regularly handled appointed and retained criminal matters in courts of the District of Columbia and Maryland as a private practitioner between 1978 and 1984.  I have experience handling criminal matters involving multiple defendants and am conversant in the law governing joinder and severance of persons charged as co-defendants.  I have been an active member of the District of Columbia bar since 1975.  Attached hereto as Exhibit A is a true and correct copy of my curriculum vitae.

4.       In preparing the opinions set forth below, I reviewed the following materials: 1) the superceding indictment; 2) Mr. Greebel's memorandum of law in support of his motion for severance; 3) the appendix of Mr. Shkreli's post-arrest statements appended to Mr. Greebel's memorandum of law; 4) the declaration of Reed Brodsky, Esq., in support of Mr. Greebel's motion; 5) Mr. Shkreli's memorandum of law in support of his motion for severance; and 6) the government's memorandum of law opposing both motions.  At the request of Mr. Greebel's counsel, I also reviewed Judge Spatt's decision granting severance in *United States v. Aronson*,

No. 2:12-cr-00245 (ADS) (E.D.N.Y. May 23, 2013) (Dkt. No. 167), and *Meyerhofer v. Empire Fire & Marine Insurance Co.*, 497 F.2d 1990 (2d Cir. 1974).

5.     My opinions below also reflect my involvement in and/or observation of criminal and civil litigation in which lawyers and their clients are adverse to one another.  In teaching and advising on legal ethics, I regularly review such cases.

6.     Based on my familiarity with such litigation and the materials that I have reviewed, I conclude that: 1) given Mr. Shkreli and Mr. Greebel's mutually antagonistic defenses, it is highly likely that the prejudice to each of them from a joint trial would be exacerbated by the unique nature of the attorney-client relationship; 2) even before the government puts on its case-in-chief, and whether or not the government seeks to offer evidence of Mr. Shkreli's post-arrest statements, there is a very substantial risk that Mr. Shkreli's jury nullification campaign will cause Mr. Greebel unfair prejudice given jurors' perception of the attorney-client relationship.

7.     As an initial matter, criminal cases in which i) attorneys and their clients or client representatives are charged together, ii) the client or client representative asserts a reliance on the advice of counsel defense, and iii) the lawyer asserts that the client or its representative lied to, omitted material facts from, and/or deceived the lawyer and/or a law firm are highly unusual.  I am aware of two such cases, one of which, *United States v. Aronson*, presents circumstances highly analogous to the instant case.

8.     I understand that Mr. Greebel's counsel and Mr. Shkreli's counsel have asserted that their clients' defenses are mutually antagonistic.  Mr. Greebel's counsel has asked that I assume this is true for the purposes of this declaration.  The unique nature of the attorney/client relationship likely would incentivize both defendants' counsel to cross-examine the other about

3

his ethical obligations.  It is equally likely that the government would not explore these issues either in a joint trial or if severance is granted.  As detailed below, I therefore conclude that at any joint trial, the attorney-client relationship between Mr. Greebel and Mr. Shkreli, as Retrophin and MSMB's representative, and their corresponding rights and responsibilities, very likely would exacerbate the prejudice stemming from their mutually antagonistic defenses and would chill either or both defendants' willingness to testify on their own behalf.

9.      For example, I understand that Mr. Greebel and other lawyers at Katten Muchin represented Retrophin and MSMB on a variety of matters between 2011 and 2014.  Given that Mr. Greebel and Katten represented Retrophin and/or MSMB over those years, it is reasonable to presume that Mr. Greebel learned confidential and/or privileged information unrelated to the charges in the superseding indictment and unknown by the government.  It is also reasonable to assume, given the attorney-client relationship between Mr. Greebel and Mr. Shkreli, as Retrophin and MSMB's representative, that certain confidential and/or privileged information learned by Mr. Greebel may go to Mr. Shkreli's credibility and reputation.  Consistent with the self-defense exception codified in Rule 1.6(b)(5) of the New York Rules of Professional Conduct, Mr. Greebel may, through his testimony and to the extent reasonably necessary, reveal his clients' confidential and/or privileged information in his own defense.  However, because Mr. Greebel would testify as to what information Mr. Shkreli provided (and did not provide) at various junctures, Mr. Shkreli's counsel would attack Mr. Greebel's credibility to establish Mr. Shkreli's primary defense: that he relied on and followed Mr. Greebel's advice in good faith and provided Mr. Greebel with all material information necessary to render that advice.  Thus, notwithstanding Mr. Greebel's clear right to reveal privileged and/or confidential client information under Rule 1.6(b)(5), Mr. Shkreli's counsel likely would cross-examine Mr. Greebel

about his revelation of attorney-client communications and/or other confidential information and his legal ethics more broadly.  The government, by contrast, would not have an incentive to impugn Mr. Greebel for exercising his right to defend himself.  Under such circumstances, I conclude that there is a substantial risk that a joint trial would chill the exercise of Mr. Greebel's constitutional right to testify or not.

10.     A joint trial likely would chill Mr. Shkreli's willingness to testify as well.  Mr. Shkreli states in his moving brief that he sought Mr. Greebel's advice about many of the issues at the heart of the superseding indictment, that he faithfully followed that advice, and that but for that advice, he would not have taken various actions at issue in the superseding indictment. Although Mr. Shkreli likely wants and may even need to testify to these points, such testimony likely would subject him to cross-examination by Mr. Greebel's counsel about his own misstatements to, omissions from, and deception of Mr. Greebel, his Katten Muchin colleagues, and others.  Indeed, Mr. Greebel's counsel would effectively prosecute Mr. Shkreli for violating a client's well-established duty of candor to his lawyer.  *See* New York State Bar Ass'n, *Statement of Client's Responsibilities*, appended hereto as Exhibit B, ¶ 2 ("The client's relationship with the lawyer should be one of complete candor and the client should apprise the lawyer of all facts and circumstances of the matter being handled by the lawyer even if the client believes that those facts may be detrimental to the client's cause or unflattering to the client."). Again, the government would have no incentive to pursue this line of cross examination.  To the contrary, the government's case against Mr. Greebel requires that it prove that Mr. Greebel intentionally and knowingly participated in a conspiracy with Mr. Shkreli—and would be destroyed by proof that Mr. Shkreli lied to, omitted material facts from, and/or deceived Mr.

Greebel.  Again, under these circumstances, I conclude that it is likely that a joint trial would

chill Mr. Shkreli's exercise of his constitutional right to testify or not.

11.    For the purposes of this declaration, I have assumed that Mr. Shkreli's bizarre

post-arrest conduct reflects his admitted intent to obtain an acquittal by dividing and confusing

jurors.  I have considered, whether the existence of an attorney-client relationship between Mr.

Shkreli and Mr. Greebel magnifies the prejudice to Mr. Greebel from Mr. Shkreli's post-arrest

conduct in any joint trial.  I conclude that the prejudice to Mr. Greebel from Mr. Shkreli's

incendiary statements likely would be greater because Mr. Greebel was outside counsel to clients

founded and managed by Mr. Shkreli.

12.    Specifically, it is my opinion that in any criminal prosecution of an attorney and

his or her client or the client's representative, the attorney suffers inherent prejudice from the

public conception of the attorney-client relationship.  In a joint trial, Mr. Greebel would have to

contend with and overcome jurors' likely presumption that he had a close bond with Mr. Shkreli

and that their incentives were aligned simply because Mr. Greebel provided outside legal advice

to Retrophin and MSMB.  There is a meaningful risk that such a presumption would pose an

even greater risk to Mr. Greebel given Mr. Shkreli's post-arrest campaign for public

vilification—and jury nullification.  Given the number of years over which Mr. Greebel and

Katten Muchin represented Retrophin and MSMB, and the variety of matters Katten Muchin

handled for those clients, I conclude that Mr. Greebel would face a very substantial challenge in

convincing jurors to disassociate Mr. Greebel from Mr. Shkreli's bizarre conduct from late December 2015 through the present.

13.    I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge.

Dated: March 10, 2017
       Clarksville, Maryland

_____
                    Michael S. Frisch