UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>-against-<br><br>MARTIN SHKRELI and EVAN GREEBEL,<br><br>*Defendants.* | ECF Case<br><br>No. 15-cr-00637 (KAM) |

**MR. GREEBEL'S MEMORANDUM OF LAW IN SUPPORT OF HIS
MOTION TO STRIKE SURPLUSAGE AND
TO DISMISS COUNT EIGHT OF THE SUPERSEDING INDICTMENT**

**TABLE OF CONTENTS**

Page(s)

I. Background ........................................................................................................................ 1

II. Argument .......................................................................................................................... 2

    A. Certain Words in Paragraph 7 Should be Stricken Because Mr. Greebel Has Not Been Charged With Participating in the MSMB Capital Hedge Fund Scheme or the MSMB Healthcare Hedge Fund Scheme ................................................. 2

        1. Striking Surplusage Pursuant to Federal Rule of Criminal Procedure 7(d) and the Fifth and Sixth Amendments ................................................................. 2

        2. Paragraph 7 Improperly Allows the Jury to Infer that Mr. Greebel Is Accused of Participating in the MSMB Capital Hedge Fund Scheme and the MSMB Healthcare Hedge Fund Scheme ........................................................ 3

    B. Count Eight Should Be Dismissed Because the Indictment Fails to Properly State an Offense Under 18 U.S.C. § 371 ........................................................................ 7

        1. Dismissing Charges Pursuant to Federal Rules of Criminal Procedure 7(b), 12(b)(3)(B) and the Fifth and Sixth Amendments .................................................. 7

        2. Count Eight Fails to Allege Essential Elements of the Violation Charged ........... 10

III. Conclusion ...................................................................................................................... 12

## TABLE OF AUTHORITIES

Page(s)

**Cases**

*Chiarella v. United States*,
    445 U.S. 222 (1980)..................................................................................................10

*Hamling v. United States*,
    418 U.S. 87 (1974).............................................................................................7, 8, 10

*United States v. Bongiorno*,
    No. 05 Cr. 390 (SHS), 2006 WL 1140864 (S.D.N.Y. May 1, 2006).........................8

*United States v. Booth*,
    No. 99 CR. 378 LBS, 1999 WL 1192317 (S.D.N.Y. Dec. 14, 1999).........................3

*United States v. Courtois*,
    No. S81 Cr. 53-CSH, 1981 WL 1639 (S.D.N.Y. June 5, 1981) ................................9

*United States v. Cruikshank*,
    92 U.S. 542 (1875)....................................................................................................7

*United States v. DeFabritus*,
    605 F. Supp. 1538 (S.D.N.Y. 1985).......................................................................2, 3

*United States v. DePalma*,
    461 F. Supp. 778 (S.D.N.Y. 1978)............................................................................3

*United States v. Heredia*,
    No. 02 CR. 1246 (SWK), 2003 WL 21524008 (S.D.N.Y. July 3, 2003) ..................9

*United States v. Hernandez*,
    85 F.3d 1023 (2d Cir. 1996).......................................................................................3

*United States v. Kassir*,
    No. S2 04 CR. 356 (JFK), 2009 WL 995139 (S.D.N.Y. Apr. 9, 2009)....................6

*United States v. Mango*,
    No. 96-CR-327, 1997 WL 222367 (N.D.N.Y. May 1, 1997)...................................6

*United States v. Montour*,
    944 F.2d 1019 (2d Cir. 1991).....................................................................................9

*United States v. Pirro*,
    212 F.3d 86 (2d Cir. 2000).........................................................................................7

## TABLE OF AUTHORITIES
(continued)

Page(s)

*United States v. Pope*,
   189 F. Supp. 12 (S.D.N.Y. 1960) ..................................................................................6

*United States v. Rosenblatt*,
   554 F.2d 36 (2d Cir. 1977) ..................................................................................7, 8, 9

*United States v. Russo*,
   74 F.3d 1383 (2d Cir. 1996) ..................................................................................12

*United States v. Scarpa*,
   913 F.2d 993 (2d Cir. 1990) ..................................................................................3

*United States v. Thompson*,
   141 F. Supp. 3d 188 (E.D.N.Y. 2015) ..................................................................7, 8

*United States v. Urso*,
   369 F. Supp. 2d 254 (E.D.N.Y. 2005) ..................................................................8, 10

**Statutes**

18 U.S.C. § 371 ..................................................................................7, 8, 9, 10

United States Code, §§ 78j(b) and 78ff Title 15 ..................................................................................10

**Rules**

Fed. Crim. R. 7(d) ..................................................................................2, 7

Fed. Crim. R. 12(b)(3) ..................................................................................2, 7

Rule 10b-5 ..................................................................................10

**Regulations**

Code of Federal Regulations, § 240.10b-5 Title 17 ..................................................................................10

Defendant Evan Greebel respectfully submits this memorandum of law in support of his motion: (1) to strike certain words in Paragraph 7 of the Superseding Indictment, which is incorporated into all eight counts, pursuant to Federal Rule of Criminal Procedure 7(d) and the Fifth and Sixth Amendments; and (2) to dismiss Count Eight of the Superseding Indictment, pursuant to Federal Rules of Criminal Procedure 7(c) and 12(b)(3)(B), and the Fifth and Sixth Amendments. Mr. Greebel respectfully requests oral argument at this time.[1]

## I. Background

The Superseding Indictment (Dkt. 60 or "Ind.") (the "Indictment") is internally inconsistent and sweeps with too broad a brush as it relates to Mr. Greebel. On the one hand, the Indictment states that Mr. Shkreli *and Mr. Greebel* "orchestrated four interrelated fraudulent schemes." Ind. ¶ 7. But the Indictment itself—later in the very same paragraph—charges Mr. Greebel with participating only in two of those four alleged fraudulent schemes. *Id.* ¶ 7(c) & (d). Moreover, Mr. Greebel is charged only with the two counts (Counts Seven and Eight) that relate to those two schemes—and not the other six counts (Counts One through Six), which are charged solely against Mr. Shkreli. Thus, the fact that Paragraph 7 misleadingly claims that Mr. Greebel helped to "orchestrate[] four interrelated fraudulent schemes" amounts to impermissible surplusage. This excess, careless language wrongly characterizes Mr. Greebel's conduct, thus creating the potential for serious juror confusion. Moreover, this surplusage creates the danger that the prosecution may attempt to impermissibly enlarge the charges against Mr. Greebel during the trial. Thus, the first three lines of Paragraph 7 before Subparagraph 7(a) should be

---

[1] Depending on the government's response, oral argument may not be necessary and we will so inform the Court in our reply brief.

1

stricken from the Indictment, or in the alternative, the phrase "the defendant EVAN GREEBEL and" in the second line of Paragraph 7 should be stricken from the Indictment.

Mr. Greebel also moves to dismiss Count Eight for failure to state an offense. The ambiguity of Count Eight requires Mr. Greebel to guess at the objective of the alleged conspiracy.[2]

For the reasons set forth below, Mr. Greebel respectfully requests that the Court grant his motion.

## II.   Argument

A.   **Certain Words in Paragraph 7 Should be Stricken Because Mr. Greebel Has Not Been Charged With Participating in the MSMB Capital Hedge Fund Scheme or the MSMB Healthcare Hedge Fund Scheme**

   1.   **Striking Surplusage Pursuant to Federal Rule of Criminal Procedure 7(d) and the Fifth and Sixth Amendments**

Under Federal Rule of Criminal Procedure 7(d), the court must strike surplusage that "allow[s] the jury to draw the inference that the defendant is accused of crimes not charged in the indictment." *United States v. DeFabritus*, 605 F. Supp. 1538, 1547 (S.D.N.Y. 1985). In *DeFabritus*, for example, the district court struck the words "among other things" in the indictment where "they serve no useful purpose and allow the jury to draw the inference that the defendant is accused of crimes not charged in the indictment." *Id.* The court explained that "this language does not add anything to the charges in the indictment and would lead the jury to draw improper inferences regarding other crimes not charged in the indictment." *Id.* The court held,

---

[2] Because the Court must assume the allegations to be true on a defendant's motions to strike and dismiss pursuant to Fed. Crim. R. 7(d) and 12(b)(3) respectively, and in order to conserve the Court's time, we include background only on the portions of the Indictment relevant to this motion. We presume the Court's familiarity with the background and procedural history of this case.

of course, that striking surplusage "in no way forecloses the government from presenting any proof relevant to the charges at trial." *Id.*

Similarly, a court should strike language that is inconsistent with the government's theory of its case. *United States v. Booth*, No. 99 CR. 378 LBS, 1999 WL 1192317, at *12 (S.D.N.Y. Dec. 14, 1999). "A motion to strike surplusage is granted only where it is clear that the allegations are not relevant to the crime charged and are inflammatory and prejudicial." *Id.* at *10 (citing *United States v. Hernandez*, 85 F.3d 1023, 1030 (2d Cir. 1996) and *United States v. Scarpa*, 913 F.2d 993, 1013 (2d Cir. 1990)). In *Booth*, the defendant moved to strike language from the indictment that tracked the statute but was "inconsistent with the government's theory in [the] case." *Id.* at *12. The government consented to striking the inconsistent language and the court approved. *Id.*

Finally, when a charging paragraph of an indictment, which "must delineate the matter upon which the grand jury based its accusations against the defendants," contains surplusage that "adds nothing to the charges, gives the defendant no further information with respect to them, and creates the danger that the prosecutor at trial may impermissibly enlarge the charges contained in the Indictment returned by the grand jury," the language must be stricken. *United States v. DePalma*, 461 F. Supp. 778, 798–99 (S.D.N.Y. 1978).

### 2. Paragraph 7 Improperly Allows the Jury to Infer that Mr. Greebel Is Accused of Participating in the MSMB Capital Hedge Fund Scheme and the MSMB Healthcare Hedge Fund Scheme

Based on certain words in the opening sentences of Paragraph 7, the jury would draw the inference that Mr. Greebel is accused of participating in the MSMB Hedge Fund Scheme and the MSMB Healthcare Hedge Fund Scheme. Paragraph 7 of the Indictment, which is incorporated into all charged counts, alleges that "[i]n or about and between September 2009 and September 2014, the defendant MARTIN SHKRELI, ***together with the defendant EVAN GREEBEL and***

3

*others*, orchestrated *four* interrelated fraudulent schemes." Ind. ¶ 7 (emphasis added). The government then describes the four alleged schemes in Subparagraphs 7(a) through 7(d): Subparagraph 7(a) summarizes the MSMB Capital Hedge Fund Scheme set forth in Paragraphs 8 through 15 and charged solely against Mr. Shkreli in Counts One, Two, and Three; Subparagraph 7(b) summarizes the MSMB Healthcare Hedge Fund Scheme set forth in Paragraphs 16 through 20 and charged solely against Mr. Shkreli in Counts Four, Five, and Six; Subparagraph 7(c) summarizes the Retrophin Misappropriation Scheme set forth in Paragraphs 21 through 35 and charged against both defendants in Count Seven; and Subparagraph 7(d) summarizes the Unrestricted Shares Scheme set forth in Paragraphs 36 through 40 and charged against both defendants in Count Eight. Paragraph 7 is then "realleged and incorporated" entirely into the charging paragraphs of Counts One through Three relating to the MSMB Capital Hedge Fund Scheme, Counts Four through Six relating to the MSMB Healthcare Hedge Fund Scheme, Count Seven relating to the Retrophin Misappropriation Scheme, and Count Eight relating to the Unrestricted Shares Scheme. *See* Ind. ¶¶ 41, 44, 46, 48, 51, 53, 55, and 57.

      The jury should not be allowed to draw the inference that Mr. Greebel has been charged in the MSMB Capital Hedge Fund Scheme or the MSMB Healthcare Hedge Fund Scheme since Mr. Greebel has not been charged in connection with those schemes. Indeed, Mr. Greebel is not mentioned at all in the allegations or charging paragraphs relating to the hedge fund schemes. The description of the alleged MSMB Capital Hedge Fund Scheme at Paragraphs 8 through 15 and the charging paragraphs for Counts One, Two, and Three in Paragraphs 41 through 47 do not include any mention of Mr. Greebel at all. Similarly, the description of the alleged MSMB Healthcare Hedge Fund Scheme in Paragraphs 16 through 20 and the charging paragraphs for Counts Four, Five, and Six in Paragraphs 48 through 54 never mention Mr. Greebel.

4

Thus, the allegation in Paragraph 7 that Mr. Greebel "orchestrated four interrelated fraudulent schemes" including the MSMB Capital Hedge Fund Scheme and the MSMB Healthcare Hedge Fund Scheme bears no resemblance to the remainder of the Indictment, creates a serious danger of allowing the jury to draw the improper inference that Mr. Greebel was involved in those hedge fund schemes, creates a serious risk of jury confusion, and therefore is highly prejudicial.

The prejudicial nature of the language stating that Mr. Greebel participated in "orchestrat[ing]" the MSMB Capital Hedge Fund Scheme and the MSMB Healthcare Hedge Fund Scheme goes beyond the infirmities of the language at issue in *DeFabritus*. The *DeFabritus* Court was concerned about circumstances even less problematic than those presented here—where a jury *may draw the inference* that the defendant was being accused of and participated in crimes not charged in the indictment. Here, notwithstanding that the Indictment charges Mr. Greebel only with Counts Seven and Eight, and despite the fact that the schemes alleged in Counts One through Six began long before the inception of Katten Muchin Rosenman's representation of either MSMB or Retrophin, the Indictment allows the jury to improperly draw the inference that Mr. Greebel is *accused* of orchestrating the hedge fund schemes. Especially because Paragraph 7 characterizes all four schemes as "interrelated," it poses an unacceptable risk that a jury will conclude that Mr. Greebel is also responsible for the schemes charged in Counts One through Six and penalize him accordingly.

The language that states Mr. Greebel orchestrated the hedge fund schemes in Paragraph 7 creates a serious risk that, at trial, the government could impermissibly enlarge the actual charges contained in the Indictment in violation of Mr. Greebel's constitutional rights. It is beyond dispute that Paragraph 7 is part and parcel of the government's charges: allegations incorporated

by reference "in all of the counts of the Indictment and [that] set forth the basis for the offenses charged" "can be characterized as [] charging paragraph[s]." *United States v. Mango*, No. 96-CR-327, 1997 WL 222367, at *16 (N.D.N.Y. May 1, 1997).

Accordingly, by realleging and incorporating Paragraph 7 by reference in each of the eight charges in the Indictment, Paragraph 7 "impermissibly delegate[s] to the prosecution the authority to enlarge the specific charges." *United States v. Kassir*, No. S2 04 CR. 356 (JFK), 2009 WL 995139, at *3 (S.D.N.Y. Apr. 9, 2009). In *Kassir*, for example, the court ordered that such broadening language must be stricken from the indictment at issue because by enabling the prosecution to widen the charges, that language "could have resulted in 'depriving [the] defendant of his constitutional right to be accused of a felony offense only on the basis of a grand jury indictment.'" *Id.* (quoting *United States v. Pope*, 189 F. Supp. 12, 25 (S.D.N.Y. 1960) ("To permit the allegation to remain would constitute an impermissible delegation of authority to the prosecution to enlarge the charges contained in the indictment.")). It is well settled that the grand jury acts as "the accusatory body in felony offenses." *Pope,* 189 F. Supp. at 25.

Therefore, to ensure that the Indictment does not improperly allow the jury to draw the inference that Mr. Greebel is accused of participating in Counts One through Six, to prevent jury confusion, and to preclude the enlargement of the actual charges against Mr. Greebel, we respectfully request that this Court strike the first three lines of Paragraph 7 before Subparagraph 7(a), or, in the alternative, the excess language naming "the defendant EVAN GREEBEL and" in the second line of Paragraph 7.

6

B.  **Count Eight Should Be Dismissed Because the Indictment Fails to Properly State an Offense Under 18 U.S.C. § 371**

1.  **Dismissing Charges Pursuant to Federal Rules of Criminal Procedure 7(b), 12(b)(3)(B) and the Fifth and Sixth Amendments**

A criminal indictment must (1) "contain[] the elements of the offense charged and fairly inform[] a defendant of the charge against which he must defend" and (2) "enable[] the [defendant] to plead an acquittal or conviction in bar of future prosecutions for the same offense." *Hamling v. United States*, 418 U.S. 87, 117 (1974). Moreover, the Indictment Clause of the Fifth Amendment "requires that an indictment contain some amount of factual particularity to ensure that the prosecution will not fill in elements of its case with facts other than those considered by the grand jury." *United States v. Pirro*, 212 F.3d 86, 92 (2d Cir. 2000) (internal citation omitted); *see also United States v. Thompson*, 141 F. Supp. 3d 188, 193 (E.D.N.Y. 2015) (holding that, pursuant to the Fifth and Sixth Amendments, a grand jury indictment must perform the above three functions).

Thus, while "[it] is generally sufficient that an indictment set forth the offense in the words of the statute itself," those words must "fully, directly, and expressly, without any uncertainty or ambiguity, set forth all the elements necessary to constitute the offence intended to be punished." *Hamling*, 418 U.S. at 117–18 (internal citations omitted). It is well established that "where the definition of an offense, whether it be at common law or by statute, 'includes generic terms, it is not sufficient that the indictment shall charge the offense in the same generic terms as in the definition; but it must state the species, it must descend to particulars.'" *United States v. Rosenblatt*, 554 F.2d 36, 41 (2d Cir. 1977) (quoting *United States v. Cruikshank*, 92

7

U.S. 542, 544 (1875)).³ An indictment also is insufficiently pled where the "charges fail to adequately tie the government to the evidence presented to the grand jury, and . . . do not permit [the defendant] to anticipate the acts and conversations that the government will assert at trial violated the statutory prohibition against [the alleged offense]." *United States v. Urso*, 369 F. Supp. 2d 254, 266 (E.D.N.Y. 2005).

Moreover, a defendant's motion to dismiss must also be granted where "the facts alleged do not state an offense as a matter of law." *United States v. Bongiorno*, No. 05 Cr. 390 (SHS), 2006 WL 1140864, at *4 (S.D.N.Y. May 1, 2006). "[I]t would be improper and a waste of resources for everyone involved to conduct a lengthy trial . . . and submit the case to a jury only to rule on a post-trial motion that the government's theory of criminal liability fails no matter what facts it was able to adduce at trial." *Id.*; *see also Thompson*, 141 F. Supp. 3d at 195 ("Where, as here, a defendant 'objects to the indictment before trial,' the defendant is 'entitled to a more exacting review of the indictment than one who waits until after trial to object.'") (internal citations omitted).

The statute under which Mr. Greebel has been charged in Count Eight, Title 18, United States Code, Section 371, is the general federal conspiracy statute and prohibits two types of conspiracies: "to commit any offense against the United States" or "to defraud the United States . . . in any manner or for any purpose." *Rosenblatt*, 554 F.2d at 41. In alleging any conspiracy under Section 371, including a conspiracy to commit securities fraud, the government must allege each element that it is required to prove: "(i) an agreement between the defendant and others as to the object of the conspiracy; (ii) specific intent to achieve the objective of the

---

³ *See also Hamling*, 418 U.S. at 117–18 ("Undoubtedly the language of the statute may be used in the general description of an offence, but it must be accompanied with such a statement of the facts and circumstances as will inform the accused of the specific offence, coming under the general description, with which he is charged.") (internal citations omitted).

8

conspiracy; and (iii) an overt act in furtherance of the conspiracy by the defendant or one of his co-conspirators." *United States v. Montour*, 944 F.2d 1019, 1024 (2d Cir. 1991).

Because "[t]he scope of the phrase 'conspiracy to commit any offense against the United States' is extremely broad," *Rosenblatt*, 554 F.2d at 41, the government must go beyond simply tracking the language of the statute. Pleading a conspiracy under 18 U.S.C. § 371 also "does not do away with the requirement that there must be agreement as to the same offense." *Id.* Courts require the government to allege the "agreement as to the 'object' of conspiracy" because "the gist of the offense remains the agreement, and it is therefore essential to determine what kind of agreement or understanding existed as to each defendant." *Id.* at 38–39 (internal citations omitted).

For a defendant to be convicted of conspiracy, he also must understand the alleged objective of the conspiracy, or "know what kind of criminal conduct was in fact contemplated." *Id.* at 39 (finding that the defendant co-conspirator could not be convicted of conspiracy under 18 U.S.C. § 371 where it was clear that the co-conspirators agreed to commit different offenses). Notably, in denying motions to dismiss challenging the government's allegations under 18 U.S.C. § 371, courts have pointed to "extensive factual allegations as to [defendant's] alleged agreement to enter into the conspiracy," in addition to simply tracking the statutes verbatim. *United States v. Heredia*, No. 02 CR. 1246 (SWK), 2003 WL 21524008, at *3 (S.D.N.Y. July 3, 2003).

Most significantly, a conspiracy charge under Section 371 must be dismissed "if the actions forming the subject matter of the conspiracy do not themselves constitute substantive crimes." *United States v. Courtois*, No. S81 Cr. 53-CSH, 1981 WL 1639, at *19 (S.D.N.Y. June 5, 1981).

9

### 2. Count Eight Fails to Allege Essential Elements of the Violation Charged

At the most basic level, Count Eight is legally insufficient. First, Count Eight fails to identify with any clarity the objective of the charged conspiracy. Having failed to identify the objective, there is a lack of clarity as to what Mr. Greebel allegedly agreed to do. Therefore, the government has failed to state an offense under 18 U.S.C. § 371 and Count Eight should be dismissed.

Count Eight alleges that:

> "defendants MARTIN SHKRELI and EVAN GREEBEL, together with others, did knowingly and willfully conspire to use and employ manipulative and deceptive devices and contrivances, contrary to Rule l0b-5 of the Rules and Regulations of the United States Securities and Exchange Commission, Title 17, Code of Federal Regulations, Section 240.l0b-5, by: (a) employing devices, schemes and artifices to defraud; (b) making untrue statements of material fact and omitting to state material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading; and (c) engaging in acts, practices and courses of business which would and did operate as a fraud and deceit upon investors and potential investors in Retrophin, in connection with the purchase and sale of securities of Retrophin, directly and indirectly, by use of means and instrumentalities of interstate commerce and the mails, contrary to Title 15, United States Code, Sections 78j(b) and 78ff."

Ind. ¶ 58. Reciting the language of Section 10(b), as Paragraph 58 does, is insufficient. In pleading violations of Section 10(b), which is often described as a "catchall" provision, and Rule 10b-5, *Chiarella v. United States*, 445 U.S. 222, 226 (1980), the government should plead additional facts to ensure that Mr. Greebel is fairly informed of the charge against which he must defend (and enable him to plead double jeopardy in a future prosecution). *See Hamling*, 418 U.S. at 117. In sum, a conspiracy count cannot be viable if the object of the conspiracy is, in fact, lawful. A defendant must be afforded the chance to "anticipate the acts and conversations that the government will assert at trial violated the statutory prohibition against [the alleged offense]." *Urso*, 369 F. Supp. 2d at 266.

10

Here, the description of the Unrestricted Shares Scheme in Paragraphs 36 through 40 and Paragraphs 57 through 59 offers no clarity as to the conspiracy's purported objective and thus lacks clarity about any agreement entered into by Mr. Greebel.  The government simply alleges that "[t]he defendants MARTIN SHKRELI and EVAN GREEBEL, together with others, *engaged in a scheme* to defraud investors and potential investors in Retrophin." Ind. ¶ 36 (emphasis added).  Paragraphs 36 through 40 of the Indictment do not make clear the object of the alleged conspiracy.  The government alleges that the defendants enabled seven employees and contractors "to receive and hold the unrestricted or free trading shares" because Mr. Shkreli wanted to:

- "exercise control over the price and trading of Retrophin's stock" (*id.* ¶ 37); or

- "transfer portions" of some of the seven employees and contractors' "unrestricted or free trading shares to defrauded MSMB Capital and MSMB Healthcare Investors, among others, to settle liabilities owed by the MSMB Funds and Shkreli (*id.* ¶ 39); or

- conceal his "beneficial ownership and control over any of the unrestricted or free trading shares in Schedule 13Ds filed with the SEC" (*id.* ¶ 40).

It is unclear which, if any, of these allegations state the objective of the conspiracy.  Indeed, a fair reading of Count Eight suggests that these allegations describe the means and methods of the alleged conspiracy rather than the conspiracy's objective.  *Id.* ¶ 36.

To the extent that the government is alleging that the objective of the conspiracy charged in Count Eight was to "transfer portions of their unrestricted or free trading shares to defrauded MSMB Capital and MSMB Healthcare investors, among others, to settle liabilities owed by the MSMB Funds and Shkreli," as alleged in Paragraph 39, the government should state that this is the object of the conspiracy since it is not clear.  This is of great significance to Mr. Greebel.  If

11

the alleged objective of the conspiracy was to enable Mr. Shkreli to transfer unrestricted or freely trading shares to defrauded investors in Mr. Shkreli's hedge funds, then Count Eight should be dismissed as against Mr. Greebel. There is no allegation, nor is there any evidence to our knowledge, that Mr. Greebel was aware of such an objective when this alleged conspiracy was hatched.

The government appears to confuse the means and methods of the conspiracy with the actual object of the alleged fraudulent scheme. For example, because "parking shares" is not *per se* illegal, *see United States v. Russo*, 74 F.3d 1383, 1393-94 (2d Cir. 1996), the alleged "parking" of shares with others in and of itself cannot be the goal of this alleged scheme. The Indictment describes this alleged fraud in ¶¶ 36-40, but almost all of the language here deals with how the defendants *carried out* this scheme, the object of which remains unknown.

In short, the Indictment fails to articulate the objective of the charged conspiracy in Count Eight. This lack of clarity makes it impossible for Mr. Greebel to know exactly what he is being charged with or how he can defend himself against these charges. For all these reasons, Mr. Greebel respectfully submits that Count Eight should be dismissed.

### III. Conclusion

For the reasons set forth above, Mr. Greebel respectfully requests the entry of an order: (1) striking the surplus language of Paragraph 7 of the Indictment and (2) dismissing Count Eight of the Indictment.

Dated:  New York, New York
        March 27, 2017

>                   */s/* Reed Brodsky
>                   Reed Brodsky
>                   Winston Y. Chan
>                   Lisa H. Rubin
>
>                   GIBSON, DUNN & CRUTCHER LLP
>                   200 Park Avenue
>                   New York, NY 10166
>                   (212) 351-4000
>                   rbrodsky@gibsondunn.com
>                   *Counsel for Defendant Evan Greebel*