UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

UNITED STATES OF AMERICA

-against-

MARTIN SHKRELI and EVAN GREEBEL,

*Defendants.*

ECF Case

No. 15-cr-00637 (KAM)

**MR. GREEBEL'S RESPONSE TO THE GOVERNMENT'S MOTION SEEKING A
HEARING ON MR. SHKRELI'S ADVICE-OF-COUNSEL DEFENSE PURSUANT TO
FEDERAL RULE OF EVIDENCE 104**

# TABLE OF CONTENTS

Page(s)

I.      Relevant Background and Procedural History ............................................................ 1

II.     Argument ................................................................................................................... 3

    A.   Mr. Shkreli's Core Defense of Acting in Good Faith and Mr. Greebel's Core
Defense of Mr. Shkreli's Lies and Deception Are Mutually Antagonistic .................. 3

        1.   The Mutual Antagonism Between the Defenses .................................................... 3

        2.   The Same Prejudices Arising From Mutually Antagonistic Defenses
Remain Even if Mr. Shkreli Asserts a Good-Faith Defense, Not an
Advice-of-Counsel Defense ................................................................................ 7

        3.   The Government Does Not Challenge Mr. Greebel's Right to Assert at
Trial That Mr. Shkreli Lied To, Omitted Material Information From, and
Deceived Him ..................................................................................................... 9

    B.   Judge Weinstein Made No Findings With Respect to Mr. Greebel, and the
Government Should Not Mistakenly Assert Otherwise ..............................................10

    C.   Neither Mr. Shkreli Nor the Government Will Be Able to Call Mr. Greebel as a
Witness at any FRE 104 Hearing .............................................................................13

    D.   Mr. Greebel's Responses to Certain Government Arguments and Assertions ............15

        1.   The Government Concedes that Mr. Greebel and Katten Muchin Had
Nothing To Do with Counts One Through Six ...................................................15

        2.   The Government and Mr. Shkreli Incorrectly Suggest that Katten Muchin
Was Aware of the SEC Investigation into MSMB Capital in 2012 .....................16

III.    Conclusion ..............................................................................................................19

# TABLE OF AUTHORITIES

Page(s)

## Cases

*In re Grand Jury Investigation*,
Case No. 1:15-MC-02227-JBW ........................................................11

*In re Grand Jury Subpoena Duces Tecum Dated Sept. 15, 1983*,
731 F.2d 1032 (2d Cir. 1984) .......................................................11

*Lefkowitz v. Turley*,
414 U.S. 70 (1973)..................................................................14

*S.E.C. v. Ferrone*,
163 F. Supp. 3d 549 (N.D. Ill. 2016)...................................................5

*S.E.C. v. Tourre*,
950 F. Supp. 2d 666 (S.D.N.Y. 2013) .............................................4, 5

*United States v. Atias*,
No. 14-CR-0403 (DRH), 2017 WL 563978 (E.D.N.Y. Feb. 10, 2017) ................14

*United States v. Beech-Nut Nutrition Corp.*,
871 F.2d 1181 (2d Cir. 1989) ........................................................4

*United States v. Carpentier*,
689 F.2d 21 (2d Cir. 1982) ..........................................................7

*United States v. Colasuonno*,
697 F.3d 164 (2d Cir. 2012) .........................................................4

*United States v. Paul*,
110 F.3d 869 (2d Cir. 1997) .....................................................14, 15

*United States v. Sabbeth*,
34 F. Supp. 2d 144 (E.D.N.Y. 1999) ................................................11

*United States v. White*,
887 F.2d 267 (D.C. Cir. 1989) .......................................................3

*Williamson v. United States*,
207 U.S. 425 (1908).................................................................4

## Constitutional Provisions

U.S. Const. amend. V ..................................................................14

Evan Greebel respectfully submits this response to the government's motion seeking a hearing on Mr. Shkreli's advice-of-counsel defense pursuant to Federal Rule of Evidence 104 ("FRE 104 Hearing"). Although Mr. Greebel takes no position on the relief the government requests, Mr. Greebel submits this response primarily to explain why the government's requested relief has no effect on Mr. Greebel's motion for severance. *See infra* pp.3–10. Regardless of whether Mr. Shkreli is able to assert an advice-of-counsel defense, there is no dispute that Mr. Shkreli will offer evidence and argue at trial that his communications with Mr. Greebel prove that Mr. Shkreli acted in good faith. There is also no dispute that Mr. Greebel will offer evidence and argue at trial that Mr. Shkreli lied to, omitted material information from, and deceived him. These defenses remain irreconcilably mutually antagonistic—Mr. Shkreli's seeks to exonerate himself by showing his good faith; Mr. Greebel's seeks to exonerate himself by showing Mr. Shkreli's lack of good faith as evidenced by Mr. Shkreli's repeated lies, material omissions, and deceptions. Thus, severance is required.

Mr. Greebel further submits this response to correct the government's mistaken assertion that Judge Weinstein made an adverse finding of fact with respect to Mr. Greebel—Judge Weinstein made no such finding. *See infra* pp.10–13. Finally, Mr. Greebel submits this response to address certain issues in the government's brief in advance of the upcoming hearing. *See infra* pp.13–19.

## I. Relevant Background and Procedural History

The Superseding Indictment charges eight counts. Dkt. 60 ("Ind." or the "Indictment"). Mr. Greebel is charged only in two of them, Counts Seven and Eight: (1) Count Seven alleges a conspiracy to commit wire fraud—which the government describes as the "Retrophin Misappropriation Scheme" (Ind. ¶¶ 55–56); and (2) Count Eight alleges a conspiracy to commit

securities fraud—which the government describes as the "Retrophin Unrestricted Securities Scheme" (*id.* ¶¶ 57–59). Mr. Greebel has not been charged in Counts One through Six; specifically, he has not been charged with any counts relating to the alleged MSMB Capital Hedge Fund Scheme or the alleged MSMB Healthcare Hedge Fund Scheme (the "MSMB Schemes"). Mr. Shkreli, by contrast, is charged in all eight counts of the Indictment, including six counts relating to the MSMB Schemes.

On multiple occasions, Mr. Shkreli and his counsel have informed the Court that Mr. Shkreli intends to raise an advice-of-counsel defense. *See, e.g.*, June 6, 2016 Hearing Tr. at 9:20-24; Shkreli Severance Br. at 15–17. This is a good-faith defense. In essence, Mr. Shkreli intends to argue that he did not have the requisite criminal intent to commit the charged crimes. Regardless of whether Mr. Shkreli can assert an advice-of-counsel defense, Mr. Shkreli will point to and argue that his communications with Mr. Greebel reflect and prove his good-faith intent to comply with the law. By contrast, a core defense of Mr. Greebel is that Mr. Shkreli lied to, deceived, and omitted material information from Mr. Greebel and other attorneys at Katten Muchin Rosenman LLP ("Katten Muchin"). *See* Greebel Severance Br. at 9–11.

As this Court is aware, on February 17, 2017, both Mr. Greebel and Mr. Shkreli filed motions for severance. Dkts. 158, 161, 163. In response, the government filed its opposition to severance on March 3, 2017. Dkt. 166. Both Mr. Shkreli and Mr. Greebel filed reply briefs in support of their respective motions for severance on March 10, 2017. Dkts. 167, 170. Oral argument has been scheduled for Friday, April 7, 2017. *See* Ct. Order dated Mar. 8, 2017.

In advance of oral argument, on March 28, 2017, the government filed this motion for an FRE 104 Hearing with respect to Mr. Shkreli's ability to offer evidence relevant to an advice-of-counsel defense. Dkt. 180. The government has not taken similar action with respect to Mr.

Greebel's core defense, which Mr. Greebel outlined in his motion for severance. The Court has scheduled a hearing on the government's motion for an FRE 104 Hearing on April 7, 2017, in advance of oral argument on the motions for severance. *See* Ct. Order dated Mar. 28, 2017.

## II.    Argument

### A.    Mr. Shkreli's Core Defense of Acting in Good Faith and Mr. Greebel's Core Defense of Mr. Shkreli's Lies and Deception Are Mutually Antagonistic

Regardless of whether Mr. Shkreli is able to assert an advice-of-counsel defense, Mr. Shkreli's core defense that he acted in good faith in communicating with outside counsel (Katten Muchin and Mr. Greebel) is irreconcilably mutually antagonistic with a core defense of Mr. Greebel that Mr. Shkreli lied to, deceived, and omitted material information from Mr. Greebel and Katten Muchin. Indeed, regardless of whether Mr. Shkreli is able to assert a reliance on advice-of-counsel defense, if the jury accepts this core defense of Mr. Greebel, the jury will reject Mr. Shkreli's defense of good faith and find him guilty. The inherent prejudices in these mutually antagonistic defenses described in Mr. Greebel's Severance Reply Brief remain the same. As a result, the government's motion for an FRE 104 Hearing does nothing to eliminate the compelling ground for severance that the core defenses of the two defendants in this case are mutually antagonistic.

#### 1.    The Mutual Antagonism Between the Defenses

There is no dispute that Mr. Shkreli will be able to offer evidence and argue at trial that he acted in good faith, and that Mr. Greebel will be able to offer evidence and argue at trial that Mr. Shkreli lied to, omitted material information from, and deceived him. Indeed, the government seems to accept that Mr. Shkreli will be entitled to utilize a defense that he acted in good faith, even if he does not satisfy all the elements to support a classic advice-of-counsel defense. Gov't FRE 104 Mot. at 23 n.11. As then-Circuit Judge Ginsburg held in *United States*

3

*v. White*, 887 F.2d 267, 270 (D.C. Cir. 1989), the defendant has a "constitutional right to put the government to its proof on all the elements of the offense." As a result, the Court held that the defendant was permitted to argue at trial that he believed in good faith that his actions were legal due to the presence of an attorney even though he did not assert an advice-of-counsel defense and waive his attorney-client privilege. Because intent is an element the government must prove, Mr. Shkreli will be entitled to rebut the government's proof of his intent by introducing evidence of his good faith.

Accordingly, even assuming *arguendo* that this Court precludes Mr. Shkreli from asserting a formal advice-of-counsel defense, Mr. Shkreli will be able to submit evidence about elements of an advice-of-counsel defense at trial. Those elements are that the defendant: "(1) 'honestly and in good faith' sought the advice of counsel; (2) 'fully and honestly la[id] all the facts before his counsel'; and (3) 'in good faith and honestly follow[ed]' counsel's advice, believing it to be correct and intending that his acts be lawful." *United States v. Colasuonno*, 697 F.3d 164, 181 (2d Cir. 2012) (citing *Williamson v. United States*, 207 U.S. 425, 453 (1908), and *United States v. Beech-Nut Nutrition Corp.*, 871 F.2d 1181, 1194 (2d Cir. 1989)). Evidence about each or any of those elements goes to Mr. Shkreli's alleged good faith. Indeed, the government acknowledges that the advice-of-counsel defense is "a more specific form of the defense of good faith." Gov't FRE 104 Mot. at 21. Accordingly, in the context of arguing that he acted in good faith, Mr. Shkreli will be able to submit what he considers evidence that he honestly and in good faith sought counsel from Mr. Greebel; that he told Mr. Greebel the relevant facts; and that he followed what Mr. Greebel had advised him.[1]

---

[1] The government cites *S.E.C. v. Tourre*, 950 F. Supp. 2d 666, 682 (S.D.N.Y. 2013), to support its argument that any testimony relating to the role of attorneys where an advice-of-counsel defense could not be supported would cause jury confusion and prejudice to the government. However, *Tourre* is easily distinguishable—the

By contrast, a core of Mr. Greebel's defense will be that Mr. Shkreli lied to, deceived, and omitted material information from Mr. Greebel. That is, a core of Mr. Greebel's defense will be that Mr. Shkreli did *not* act in good faith. This defense of Mr. Greebel's will remain the same even assuming that this Court does not permit Mr. Shkreli to assert an advice-of-counsel defense. This defense of Mr. Greebel's will continue to include evidence and argument that Mr. Shkreli is guilty. For example, it will include evidence that Mr. Shkreli lied to Mr. Greebel about the assets under management at the MSMB entities. *See* Greebel Memo of Law at 11–13. Had Mr. Greebel been told the truth about the absence of any MSMB assets, it would have impacted his legal advice relating to nearly every aspect of MSMB/Retrophin going forward. This defense will also continue to include evidence and argument that Mr. Shkreli deceived Mr. Greebel about the capitalization tables. *See id.* at 13–15. Had Mr. Greebel been told the truth, it would have impacted his legal advice relating to such tables going forward. The evidence exonerating Mr. Greebel, *i.e.*, showing that Mr. Shkreli lied to and deceived him, will inculpate Mr. Shkreli and lead to his conviction. Even if the advice-of-counsel defense is precluded, Mr. Shkreli will have to respond to Mr. Greebel's evidence that Mr. Shkreli lied to, omitted material information from, and deceived Mr. Greebel. Thus, he will be able to offer evidence meeting, at a minimum, elements (1) and (2) of an advice-of-counsel defense. To believe a core part of the testimony offered by Mr. Greebel at trial, the jury must necessarily disbelieve a core part of the testimony offered by Mr. Shkreli.

---

defendant in that case **conceded** that he would not be able to meet the four-factor test for the availability of an advice-of-counsel defense and stated that he would not seek to make this argument. While the court in *Tourre* did not allow the defense to focus on the participation of counsel, the court did not preclude *all* evidence regarding the involvement of legal counsel and left open the possibility of later giving a limiting instruction to the jury if needed. *Id.* at 684-85; *see also S.E.C. v. Ferrone*, 163 F. Supp. 3d 549, 570 (N.D. Ill. 2016).

Whatever the Court decides in response to the government's motion, the stark mutual antagonism inherent in the defendants' defenses will remain front and center at a joint trial. Indeed, in the government's motion for an FRE 104 Hearing, the government introduces a new allegation that serves as yet another example of the mutually antagonistic and irreconcilable defenses of Mr. Shkreli and Mr. Greebel. In footnote 8 of its motion, the government asserts that "Shkreli is not currently charged with obstruction of the SEC's investigation in connection with the Fraudulent Schemes." Gov't FRE 104 Mot. at 16 n.8. That comment suggests that the government will attempt to offer evidence pursuant to Federal Rule of Evidence 404(b) and/or somehow in furtherance of the charged conspiracies that Mr. Shkreli obstructed the SEC investigation from in or about 2012 through in or about 2014. In contrast, in defense of Mr. Greebel, we will offer evidence that, in fact, Mr. Shkreli obstructed the SEC investigation by and through, among other things, lying to, deceiving, and omitting material information from Mr. Greebel and others at Katten Muchin. We will argue that Mr. Shkreli did, in fact, obstruct the SEC investigation, but he did so unbeknownst to Katten Muchin or Mr. Greebel. In proving this part of Mr. Greebel's defense, we anticipate that Mr. Shkreli will assert that he did not lie to and/or deceive Mr. Greebel and others at Katten Muchin. Should the jury accept Mr. Greebel's defense, the jury will reject Mr. Shkreli's defense and convict Mr. Shkreli.

In sum, regardless of whether Mr. Shkreli is able to assert an advice-of-counsel defense, both Mr. Shkreli and Mr. Greebel will be making the same mutually antagonistic opening statements, conducting the same mutually antagonistic cross-examinations of witnesses during the government's case-in-chief, offering the same mutually antagonistic evidence during each of their cases-in-chief, making the same mutually antagonistic arguments, and making the same mutually antagonistic summations at trial.

**2.      The Same Prejudices Arising From Mutually Antagonistic Defenses Remain Even if Mr. Shkreli Asserts a Good-Faith Defense, Not an Advice-of-Counsel Defense**

Where defenses are genuinely mutually antagonistic such that acceptance of one defense requires rejection of the co-defendant's defense, the resulting prejudice requires severance. *Greebel* Severance Reply Br. at 1, 5; *see United States v. Carpentier*, 689 F.2d 21, 27–28 (2d Cir. 1982). Here, Mr. Shkreli's defense will be that he acted in good faith through his communications with Mr. Greebel—even if the Court does not permit a formal advice-of-counsel defense—and a core of Mr. Greebel's defense will be that Mr. Shkreli lied to and deceived him. Since Mr. Shkreli and Mr. Greebel's defenses are irreconcilably antagonistic, the resulting prejudice compels severance.

All the same prejudices we identified in our Reply Brief in support of Mr. Greebel's Motion for Severance apply when asserting a good-faith defense, even if Mr. Shkreli is unable to assert an advice-of-counsel defense. *See* Greebel Severance Reply Br. at 8–10. They include:

- **Co-defendants will still become extra prosecutors**. A core of Mr. Greebel's defense will mean that we will be prosecuting Mr. Shkreli at trial. That will not change even if Mr. Shkreli cannot assert a formal advice-of-counsel defense. We anticipate that, in response, Mr. Shkreli will argue that Mr. Greebel's defense is not credible, that he did not mislead Mr. Greebel, and that Mr. Greebel is responsible for the course of Mr. Shkreli's actions.

- **Co-defendants will still offer statements about each other's guilt in jury addresses**. Nothing changes even if the Court precludes a formal advice-of-counsel defense. We will still lay out in our opening statement and argue during our summation how Mr. Shkreli lied to and deceived Mr. Greebel, and how Mr. Shkreli is guilty, and Mr. Shkreli presumably will still lay out in his opening statement how he acted in good faith through communications with Mr. Greebel and how Mr. Greebel is ultimately responsible for Mr. Shkreli's actions.

- **Juries will still "unjustifiably infer" that antagonism proves guilt**. Given that the mutual antagonism between defenses of Mr. Shkreli and Mr. Greebel remains the same, there remains a serious risk the jury will infer that Mr. Shkreli and Mr. Greebel are just looking to blame someone else, rejecting both defenses and finding both guilty.

7

- **Co-defendants will still seek mutual destruction through pre-trial motions and cross-examination strategies**. The absence of an advice-of-counsel defense will not preclude Mr. Shkreli from making and opposing motions and cross-examining witnesses with the goal of advancing his defense and destroying Mr. Greebel's defense, nor will it preclude Mr. Greebel from doing the same. Nothing about the outcome of the government's motion would prevent the prejudicial harm that will result from these practices—practices that enable the government to sit back and benefit from the defendants waging war against each other.

- **Joinder may still chill a defendant's right to testify**. Given the mutual antagonism still present between Mr. Greebel's and Mr. Shkreli's defenses, the same considerations will be present with respect to testifying. Mr. Shkreli's right to testify might be chilled with the knowledge that we will be duty-bound to use any and all client confidences—regardless of whether the government knows about them or not and regardless of whether they relate to the charged offenses—to attack Mr. Shkreli's credibility. By the same token, although Mr. Greebel remains committed to testifying at his trial, Mr. Greebel's right to testify might be chilled with the knowledge that Mr. Shkreli will be accusing him and/or arguing to the jury that Mr. Greebel is acting unethically and inappropriately by revealing confidential information and, in effect, attacking the credibility of the CEO of his former client.

- **Joinder will still create a potential conflict between Sixth Amendment and privilege**. Whatever the outcome of the government's motion requesting an FRE 104 Hearing, Mr. Greebel has an absolute right to cross-examine Mr. Shkreli and/or other witnesses outside of the scope of previous privilege waivers, and that would still conflict with Mr. Shkreli's privilege rights.

- **Joinder will still reinforce the prosecution's case against each defendant**. Joinder will continue to harm both Mr. Shkreli and Mr. Greebel and benefit the government via the effects of repetitive accusations by the defendants against each other. This prejudicial damage exists even if Mr. Shkreli cannot assert an advice-of-counsel defense.

In addition, the risk of jury confusion from a joint trial will severely prejudice Mr. Greebel's ability to get a fair trial. In its instant FRE 104 Motion, the government states that one of the primary bases for its motion for a hearing is the risk of "confusing the jury" if Mr. Shkreli proceeds with his advice-of-counsel defense. *See* Gov't FRE 104 Mot. at 27. We agree with the government that the risk of jury confusion should be taken into account, and nothing can be more confusing to the jury than mutually antagonistic defenses and the collateral consequences of the

severe and multiple prejudices flowing therefrom. Severance remains the only way to prevent the high degree of likelihood of jury confusion at a joint trial.

In support of these concerns, Mr. Greebel respectfully submits the attached supplemental declaration of Michael S. Frisch, Adjunct Professor of Law and Ethics Counsel at Georgetown University Law Center, which addresses the continued prejudicial effect of a joint trial of both Mr. Shkreli and Mr. Greebel, even if Mr. Shkreli is unable to assert an advice-of-counsel defense. *See* Suppl. Decl. of Michael S. Frisch in Supp. of Mot. for Severance.

### 3. The Government Does Not Challenge Mr. Greebel's Right to Assert at Trial That Mr. Shkreli Lied To, Omitted Material Information From, and Deceived Him

Notably, though the government argues in its opposition to defendants' motions for severance that there are evidentiary obstacles to Mr. Greebel's core defense as laid out in Mr. Greebel's Motion for Severance, *the government has not moved for an FRE 104 evidentiary hearing in relation to Mr. Greebel's defense*. The fact that the Government has chosen not to challenge this defense at an FRE 104 Hearing is telling.

In its opposition to the defendants' severance motions, the government raised these purported evidentiary obstacles that Mr. Greebel might face at trial. Gov't Severance Opp. Br. at 24–27. But Mr. Greebel rebutted the government's assertions in his Severance Reply Brief. Greebel Severance Reply Br. at 11–13. The government subsequently filed a motion seeking an evidentiary hearing on whether Mr. Shkreli will be able to assert an advice-of-counsel defense. The government has not sought the same type of hearing for a core of Mr. Greebel's defense relating to Mr. Shkreli's lies to, deception of, and omission of material information from Mr. Greebel. Thus, the government does not appear to have any objections to Mr. Greebel's demonstrating at trial that Mr. Shkreli lied to and deceived him.

In any event, it is beyond dispute that Mr. Greebel has provided sufficient evidence to support his core defense: that Mr. Shkreli consistently lied to, omitted material information from, and deceived Mr. Greebel throughout the course of their relationship and specifically in connection with the conduct charged in this case. Mr. Greebel has done so through a proffer relating to the defense, an affidavit by counsel for Mr. Greebel (*see* Brodsky Decl. in Supp. of Mot. for Severance), and three specific examples of admissible evidence, described in detail in Mr. Greebel's Motion for Severance. Greebel Severance Br. at 11–16. The government's decision not to move for an FRE 104 Hearing relating to Mr. Greebel, while it did so for Mr. Shkreli, serves as an important concession that even the government believes Mr. Greebel has sufficiently proffered evidence to support a core of Mr. Greebel's defenses.

## B. Judge Weinstein Made No Findings With Respect to Mr. Greebel, and the Government Should Not Mistakenly Assert Otherwise

In its motion for an FRE 104 Hearing, the government appears to rely on Judge Weinstein's Order unsealing certain portions of email communications that Retrophin redacted on the theory that they may contain information subject to a personal attorney-client relationship between Mr. Shkreli and Mr. Greebel. In summarizing Judge Weinstein's Order, the government omits significant context and information from Judge Weinstein's findings and states that Judge Weinstein made findings against Mr. Greebel. That assertion is, quite simply, wrong. Judge Weinstein's Order cannot and should not be used as precedent against Mr. Greebel.

On or about November 18, 2015, the government submitted an *ex parte* application for an order compelling the production, in unredacted form, of certain documents that Retrophin had redacted because Mr. Shkreli had asserted—unbeknownst to Mr. Greebel—"a personal attorney-client privilege over all Shkreli-Greebel communications." Mem. of Law in Supp. of *Ex Parte*

Request for *In Camera* Review at 3, *In re Grand Jury Investigation*, Case No. 1:15-MC-02227-JBW, Dkt. 9 ("Gov't *Ex Parte* Request for *In Camera Review*, Dkt. 9").  Although Retrophin had waived privileges to the subject matters contained within these same communications in September 2015, Mr. Shkreli's assertion of a personal attorney-client privilege apparently prevented Retrophin from disclosing all parts of these communications.  Had the government conferred with or interviewed Mr. Greebel before indicting him, we would have made clear, as we have from the outset of this case, that Mr. Greebel has never represented Mr. Shkreli in his personal capacity and that Mr. Shkreli's claims in this respect were meritless.  In any joint trial, Mr. Shkreli's claims that Mr. Greebel represented him in his personal capacity will be yet another significant issue of dispute between the defendants.

The government's *ex parte* application to compel production of the portions of emails over which Mr. Shkreli claimed a personal privilege—after Retrophin had waived its privileges—relied entirely on the crime-fraud doctrine, and not the company business exception to the privilege.  *Id*.  Notably, in its *ex parte* application and hearing, the government argued to Judge Weinstein that, among other things, "crime or fraud need not have occurred for the exception to be applicable; it need only have been the objective of the *client's* communication"; and that "the crime-fraud exception would apply even if the court concluded that the evidence is *insufficient to establish Greebel's intent to facilitate or conceal these frauds*." *Id*. at 4–5 (emphasis added).[2]

---

[2]  In its *ex parte* application, the government cited the following cases standing for the well-established principle that the crime-fraud doctrine applies when an attorney is an unwitting participant in a client's crime or fraud: *In re Grand Jury Subpoena Duces Tecum Dated Sept. 15, 1983*, 731 F.2d 1032, 1038 (2d Cir. 1984) (the crime-fraud exception applies "even if the attorney is unaware that his advice is sought in furtherance of such an improper purpose."); *United States v. Sabbeth*, 34 F. Supp. 2d 144, 151 (E.D.N.Y. 1999) (crime-fraud exception applies if the client-defendant "gave false or incorrect information" to the attorney "with the concomitant expectation that counsel would utilize that information—**unwittingly or otherwise**—to advance the defrauding of corporate creditor") (emphasis added).

On or about December 3, 2015, Judge Weinstein ordered the production of the unredacted copies of the documents.  Sealed Order No. 1, Case No. 1:15-MC-02227-JBW,  Dkt. 5 ("Sealed Order No. 1, Dkt. 5").  In its motion for an FRE 104 Hearing, the government omits significant information in arguing that "after reviewing the Crime Fraud Emails and the Crime Fraud Affidavit, Judge Weinstein ruled that the Crime Fraud Emails 'were part of a scheme, conspiracy or fraudulent attempt to commit a securities fraud' and thereby any attorney-client privilege that might have attached to the emails was 'voided by the criminal conduct' of Shkreli *and Greebel*; alternatively,  Judge Weinstein ruled that the Crime Fraud Emails were also not privileged because they concerned company business."  Gov't FRE 104 Mot. at 9 (emphasis added).  Specifically, the government omitted any mention of the following significant findings by Judge Weinstein:

- "The court finds [the documents] were not subject to an attorney-client privilege of the employee. . . . As company documents they would not be subject to a privilege between the employee and an attorney acting for the employee and also for the company."  Sealed Order No. 1, Dkt. 5 ¶ 3.

- "The company has waived its own attorney client privilege with the attorney."  *Id*. ¶ 4.

- "***Without a full understanding of details of the alleged crimes involved, and the benefit of having interested parties explain the nature, and purpose, of each email and how it fits into a criminal story or the ordinary operation of a lawful security business, it is not possible to decide that it is more likely than not that the documents were Cr*** [criminal conduct] ***or Cobus*** [company business] ***related.*** *See* sealed appendix A, in box marked 'Sealed,' not to be opened without court order. The court finds the documents sought are ***sufficiently probably Cobus or Cr, or both***, not privileged to the employee for Grand Jury purposes."  *Id*. ¶ 6 (emphasis added).

Accordingly, the government's assertion that Judge Weinstein ruled that the email communications between Mr. Shkreli and Mr. Greebel were "'voided by the criminal conduct' of Shkreli and Greebel" is ***not*** true.  Among other things, Judge Weinstein stated that he did not have "a full understanding of details of the alleged crimes involved,"  that he did not have "the

benefit of having interested parties explain the nature, and purpose, of each email," and that it was "not possible to decide that it is more likely than not that the documents were Cr or Cobus related." *Id*. Moreover, despite the government's having argued to Judge Weinstein in its application that the Court should apply the crime-fraud doctrine "even if the court concluded that the evidence is insufficient to establish Greebel's intent to facilitate or conceal those frauds," Gov't *Ex Parte* Request for *In Camera* Review, Dkt. 9, at 5, it is significant that Judge Weinstein *never made any finding of fact regarding the conduct of Mr. Greebel*. Judge Weinstein did *not* rule that any privilege was voided by alleged criminal conduct of Mr. Greebel, and the government should not have made such an assertion in its filings in this case.

## C.     Neither Mr. Shkreli Nor the Government Will Be Able to Call Mr. Greebel as a Witness at any FRE 104 Hearing

Mr. Greebel intends to testify at his criminal trial.  Until that day, however, neither the government nor Mr. Shkreli will be able to call Mr. Greebel to testify at any FRE 104 or other court hearing.  Mr. Greebel has a Fifth Amendment right not to testify unless and until he takes the witness stand in his defense during the trial.  To the extent that the government's motion for an FRE 104 hearing could be read to suggest that a defendant may be forced to testify at an FRE 104 hearing, the government would be incorrect.

In its motion for an FRE 104 hearing, the government states:  "This [FRE 104 preliminary hearing] procedure is followed even though it may mean that the testimony of the defendant, who is most likely to be the witness to the facts and circumstances that form the predicate of a defense, is necessary." Gov't FRE 104 Mot. at 20.  It is unclear what the government meant by its assertion that "it may mean that the testimony of the defendant . . . is necessary."  Often a proffer of what the evidence will show, along with a sworn affidavit from counsel, is more than sufficient to make out a valid pretrial defense without a hearing.  Indeed, in

*United States v. Atias*, No. 14-CR-0403 (DRH), 2017 WL 563978, at *3 (E.D.N.Y. Feb. 10, 2017), the district court held that an advice-of-counsel defense may be pursued so long as the defendant submits a proffer addressing "in a meaningful fashion the three prerequisites for an advice of counsel defense" at least twenty-four hours before calling the relevant witness to the stand. Given that standard, the government does not challenge our ability to assert a defense that Mr. Shkreli lied to, deceived, and omitted material information from Mr. Greebel without an evidentiary hearing following our proffer, a sworn affidavit from the undersigned counsel for Mr. Greebel, and emails corroborating and supporting that defense.

The Fifth Amendment, of course, states that "[n]o person . . . shall be compelled in any criminal case to be a witness against himself." U.S. Const. amend. V. And the Supreme Court in *Lefkowitz v. Turley*, 414 U.S. 70, 77 (1973), held that "[t]he [Fifth] Amendment not only protects the individual against being involuntarily called as a witness against himself in a criminal prosecution but also privileges him not to answer official questions put to him in any other proceeding, civil or criminal, formal or informal, where the answers might incriminate him in future criminal proceedings." In asserting that the defendant's testimony might be necessary at an FRE 104 hearing, the government cites to *United States v. Paul*, 110 F.3d 869, 870–72 (2d Cir. 1997), in which the Second Circuit ***reversed*** the defendant's conviction after a jury trial and found that the district court should ***not*** have precluded a defense of duress following an evidentiary hearing during which the defendant testified voluntarily. *Paul* does not stand for the proposition that a defendant's testimony might be "necessary" at a pretrial hearing, nor does it stand for the proposition that a defendant could be compelled to testify at a pretrial hearing regarding a proffered defense. *See Paul*, 110 F.3d at 870–72. Instead, *Paul* stands for the proposition that courts should not preclude a defendant from asserting a defense at trial among

14

competing interpretations of the defendant's conduct, and further that courts should not deny a jury instruction on any defense theory "even if the trial court determines that the evidentiary foundation of the defense theory is only tenuous." *Id.* at 871.

**D.   Mr. Greebel's Responses to Certain Government Arguments and Assertions**

**1.   The Government Concedes that Mr. Greebel and Katten Muchin Had Nothing To Do with Counts One Through Six**

In its FRE 104 Motion, the government concedes that Mr. Greebel and Katten Muchin had nothing to do with the MSMB Schemes charged in Counts One through Six.

First, in the government's description of the MSMB Schemes, the government does not mention Mr. Greebel or Katten Muchin *at all*. Gov't FRE 104 Mot. at 2–4. Second, in its description of the scope of Mr. Shkreli's advice-of-counsel defense in relation to the MSMB Schemes, the government argues that "Shkreli also admits that Greebel and Katten were first retained by him in the summer of 2011 (Shkreli Severance Br. at 8) – a point in time almost two years after MSMB Capital was founded, approximately six months after the final investments in MSMB Capital were made, approximately four months after Shkreli lost all of the money invested in MSMB Capital in connection with the OREX trade, and long after Shkreli began sending out monthly statements to investors falsely detailing wildly positive returns for MSMB Capital." *Id.* at 15. Third, the government argues that Mr. "Shkreli does not state that he in good faith sought, received and/or relied on legal advice from Greebel or anyone else at Katten Muchin about the misrepresentations or omissions made to MSMB Capital and MSMB Healthcare investors in connection with the MSMB Schemes." *Id.* at 16. Finally, the government argues that "there is no evidence that Greebel or other Katten Muchin attorneys made misrepresentations to MSMB investors to obtain or retain investments in either MSMB fund." *Id.* at 24.

In effect, in arguing that Mr. Shkreli does not have the ability to assert an advice-of-counsel defense relating to the MSMB Schemes, the government essentially acknowledges that Mr. Greebel had nothing to do with the MSMB Schemes.[3]

### 2.     The Government and Mr. Shkreli Incorrectly Suggest that Katten Muchin Was Aware of the SEC Investigation into MSMB Capital in 2012

In recently filed motions with this Court, both the government and Mr. Shkreli incorrectly imply that Katten Muchin, and thus Mr. Greebel, were aware of the SEC investigation into MSMB Capital in Fall/Winter 2012 or Winter 2013. We must correct this error. To be clear, neither Katten Muchin nor Mr. Greebel was aware of the SEC investigation into MSMB Capital in Fall/Winter 2012 or Winter 2013, and did not become aware until many months later in or about mid-2013.

Critically, neither Mr. Shkreli nor the government has proffered any evidence in support of the allegation that Katten Muchin was aware of the SEC investigation in Fall/Winter 2012 or Winter 2013. Indeed, after receiving the SEC subpoena on or about October 1, 2012, as the government well knows, Mr. Shkreli responded in November 2012 and represented himself for many months thereafter. Mr. Shkreli did not copy counsel on either the emails with the SEC or include counsel on any phone calls with the SEC. Mr. Shkreli handled all communications with and productions to the SEC on his own. No responsible counsel would let a client take these

---

[3]   The government's concessions here are significant for our motion to strike surplusage in paragraph 7 of the Indictment. *See* Greebel Mot. to Strike and Dismiss at 3-6. In this motion, we have moved to strike the surplusage mistakenly alleging that Mr. Shkreli, along with Mr. Greebel, "orchestrated *four* interrelated fraudulent schemes" including the MSMB Capital Hedge Fund Scheme and the MSMB Healthcare Hedge Fund Scheme. Unfortunately, despite the absence of any allegation and any evidence that Mr. Greebel had any role or knowledge of the alleged MSMB Schemes, the government continues to repeat this careless, loose language in the Indictment. The government has quoted similar language from the original Indictment in various pleadings, *see* Gov't Response to Defendants' Discovery Motions at 13; Gov't FRE 104 Mot. at 9, but has also asserted that neither Katten Muchin nor Mr. Greebel, in essence, were involved with the MSMB Schemes. Thus, the government argues that Mr. Shkreli should not be able to assert an advice-of-counsel defense in connection with those schemes. *See* Gov't FRE 104 Mot. at 2–4, 16–17, 24.

steps.  Mr. Shkreli apparently collected responsive documents himself; he apparently prepared the production letter himself; and he apparently sent the production to the SEC himself.  And this was all done without the knowledge and/or assistance of any counsel at Katten Muchin.

Specifically, in his memorandum of law in support of severance, Mr. Shkreli states: "The first subpoena the SEC served on MSMB came on October 1, 2012.  Katten attorneys represented Shkreli in connection with that investigation."  Shkreli Severance Br. 11.  Similarly, in his memorandum of law in support of his motion to suppress, motion for *Brady* materials, and motion to compel, Mr. Shkreli states: "In the fall of 2012, the United States Securities and Exchange Commission ('SEC') opened an investigation entitled 'In the Matter of MSMB Capital Management LLC Valuation.'  MSMB Capital and Shkreli individually were represented by Katten Muchin Rosenman, LLP ('Katten') in regard to the SEC investigation.  Shkreli received a document subpoena from the SEC on October 1, 2012 and complied on November 4, 2012."  Shkreli Mot. Suppress Br. at 3.  What Mr. Shkreli omits, of course, is that neither Katten Muchin nor Mr. Greebel were aware of the SEC subpoena on October 1, 2012, and Katten Muchin (including the partner that represented Mr. Shkreli) did not assist Mr. Shkreli in that SEC investigation until months later in or about mid-2013.

In its motion for an FRE 104 hearing, the government adopts Mr. Shkreli's representation with the same incorrect implication as to when Katten Muchin and Mr. Greebel became aware of the SEC investigation.  The government repeats, as if it were true, Mr. Shkreli's assertion that "Shkreli does state that Katten attorneys – including another partner at Katten ("Katten Partner 1") – represented him in connection with a subpoena served on MSMB Capital by the SEC *on October 1, 2012*."  Gov't FRE 104 Mot. at 16 (emphasis added).  The government later again adopts Mr. Shkreli's representation: "In addition, as detailed above, Shkreli himself contends

that Katten did not begin to provide him with legal advice in connection with the SEC investigation of MSMB Capital before October 1, 2012." *Id.* at 24. By adopting Mr. Shkreli's representations in its motion, the government implies that Katten Muchin, including Mr. Greebel, became aware of the SEC investigation on or shortly after October 1, 2012. But this is untrue. And the record should be clear on this point. If the government had any evidence to the contrary, given its prior representations and the significance of them, it would be obligated to inform the Court.

Problematically, Paragraph 25 of the Indictment implies that Katten Muchin and Mr. Greebel were aware of the October 1, 2012 subpoena in Fall/Winter 2012 or Winter 2013. Paragraph 25 states, in relevant part: "*Faced with an SEC inquiry*, the defendants Martin Shkreli and Evan Greebel, together with others, engaged in a scheme to fabricate an investment by MSMB Capital in Retrophin LLC and *engineered a series of fraudulent transactions* that were backdated to the summer of 2012 *to create the appearance of an investment by MSMB Capital prior to the SEC inquiry*." (Emphasis added). The government's theory that Mr. Greebel was engaged in this alleged Retrophin Misappropriation Scheme in Fall/Winter 2012 or Winter 2013 hinges on the incorrect assumption that Mr. Greebel was aware that Mr. Shkreli was "[f]aced with an SEC inquiry" and thus needed to "engineer[ ] a series of fraudulent transactions . . . to create the appearance of an investment by MSMB Capital prior to the SEC inquiry." *Id.* This is why the timing of Katten Muchin's and Mr. Greebel's knowledge of the SEC's October 1, 2012 subpoena is significant.[4]

---

[4]   The significance of this incorrect assumption regarding the timing of Katten Muchin's and Mr. Greebel's knowledge of the SEC's October 1, 2012 subpoena relating to MSMB Capital can be demonstrated by incorporating the absence of Katten Muchin and Mr. Greebel's knowledge of the SEC's inquiry in Fall/Winter 2012 or Winter 2013 into Paragraph 25 of the Indictment. Paragraph 25 would read quite differently: "Faced with an SEC inquiry *[that Mr. Greebel and Katten Muchin did not know anything about]*, the defendants

We state unequivocally that we are not aware of a shred of evidence that Katten Muchin and/or Mr. Greebel were aware of the SEC investigation into MSMB Capital in October 2012, in November 2012, in December 2012, and for months thereafter. Instead, our review of the evidence shows that (1) upon receipt of the October 1, 2012 SEC subpoena, Mr. Shkreli acted *pro se* for many months, (2) neither Katten Muchin nor Mr. Greebel was aware of the SEC's October 1, 2012 subpoena in October 2012, November 2012, December 2012, and for months thereafter, (3) neither Katten Muchin nor Mr. Greebel was aware that Mr. Shkreli was collecting responsive documents and producing them *pro se* in October 2012 and for months thereafter, and (4) Katten Muchin, including Mr. Greebel, did not become aware of the October 1, 2012 SEC subpoena and investigation until months later in or about mid-2013. We note that on or about November 22, 2016, the government acknowledged before this Court that the Deputy General Counsel of Katten Muchin stated that his law firm did not represent Mr. Shkreli in relation to the October 1, 2012 subpoena. Nov. 22, 2016 Hearing Tr. at 72:16–73:13; *see also* Nov. 20, 2016 Letter to the Court from Mr. Greebel, ECF No. 115.

### III.   Conclusion

For the foregoing reasons, Mr. Greebel respectfully submits that, regardless of whether Mr. Shkreli will be able to assert an advice-of-counsel defense at trial, the good-faith defense of Mr. Shkreli and a core of the defense of Mr. Greebel are irreconcilably and mutually antagonistic. Consequently, Mr. Greebel must be tried separately from Mr. Shkreli.

---

Martin Shkreli and Evan Greebel *[even though Mr. Greebel did not know about the SEC inquiry into MSMB Capital or Mr. Shkreli's representations to the SEC relating to that inquiry at the time]*, together with others, engaged in a scheme to fabricate an investment by MSMB Capital in Retrophin LLC and engineered a series of fraudulent transactions that were backdated to the summer of 2012 to create the appearance of an investment by MSMB Capital prior to the SEC inquiry." (Bold and italicized words added in brackets). Indeed, the evidence of Mr. Shkreli's concealment of the SEC's October 1, 2012 subpoena from Katten Muchin and Mr. Greebel until in or about mid-2013 provides further evidence of a core of Mr. Greebel's defense at trial that Mr. Shkreli lied to, omitted material information from, and deceived Mr. Greebel.

Dated:   New York, New York
         April 5, 2017

                                    /s/ Reed Brodsky
                                    Reed Brodsky
                                    Winston Y. Chan
                                    Lisa H. Rubin

                                    GIBSON, DUNN & CRUTCHER LLP
                                    200 Park Avenue
                                    New York, NY 10166
                                    (212) 351-4000
                                    rbrodsky@gibsondunn.com
                                    *Counsel for Defendant Evan Greebel*