UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

---

UNITED STATES OF AMERICA

-against-

MARTIN SHKRELI and EVAN GREEBEL,

*Defendants.*

---

ECF Case

No. 15-cr-00637 (KAM)

**ORAL ARGUMENT REQUESTED**

# MR. GREEBEL'S REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF HIS MOTION TO STRIKE SURPLUSAGE AND TO DISMISS COUNT EIGHT OF THE SUPERSEDING INDICTMENT

**TABLE OF CONTENTS**

Page

I.    ARGUMENT ................................................................................................................. 1

    A.    The Prejudicial Surplusage in Paragraph 7 Should Be Stricken Because the Government Essentially Admits That These Allegations Are Wrong .................... 1

    B.    Count Eight Should Be Dismissed Because Mr. Greebel Cannot Fairly Defend Himself Without Knowing the Alleged Unlawful Objective of the Conspiracy ........................................................................................................ 6

II.    CONCLUSION ........................................................................................................... 10

## TABLE OF AUTHORITIES

Page(s)

**Cases**

*Dirks v. SEC*,
   463 U.S. 646 (1983) ................................................................................................................8

*S.E.C. v. First Jersey Sec., Inc.*,
   101 F.3d 1450 (2d Cir. 1996) ..................................................................................................8

*United States v. Booth*,
   No. 99 CR. 378 LBS, 1999 WL 1192317 (S.D.N.Y. Dec. 14, 1999) .......................................1

*United States v. Courtois*,
   No. S81 Cr. 53-CSH, 1981 WL 1639 (S.D.N.Y. June 5, 1981) ...............................................7

*United States v. DeFabritus*,
   605 F. Supp. 1538 (S.D.N.Y. 1985) ........................................................................................1

*United States v. Rosenblatt*,
   554 F.2d 36 (2d Cir. 1977) ..................................................................................................7, 8

*United States v. Russo*,
   74 F.3d 1383 (2d Cir. 1996) ....................................................................................................9

**Statutes**

Title 18, United States Code, Section 371 ....................................................................................8

**Regulations**

17 C.F.R. § 240.10b-5 ...................................................................................................................8

Evan Greebel respectfully submits this memorandum of law in further support of his motion (1) to strike certain words in Paragraph 7 of the Superseding Indictment; and (2) to dismiss Count Eight of the Superseding Indictment. Mr. Greebel respectfully requests that the Court schedule oral argument on his motion.

## I.     ARGUMENT

### A.     The Prejudicial Surplusage in Paragraph 7 Should Be Stricken Because the Government Essentially Admits That These Allegations Are Wrong

The government should have agreed to strike the prejudicial surplusage in Paragraph 7 of the superseding indictment (Dkt. No. 60, "Indictment" or "Ind.") because it acknowledges that the language is inaccurate and inconsistent with its theory of the case. Nevertheless, the government opposes Mr. Greebel's motion on the remarkable grounds that the surplusage does not mean what it plainly says. The blatant confusion created by the inaccurate language in Paragraph 7 is inflammatory and prejudicial, provides the defendants no further information with respect to the charges, and creates the danger that the prosecutor at trial may impermissibly enlarge the charges contained in the Indictment returned by the grand jury. These are exactly the circumstances in which courts have stricken surplusage from an indictment. *United States v. Booth*, No. 99 CR. 378 LBS, 1999 WL 1192317, at *12 (S.D.N.Y. Dec. 14, 1999); *United States v. DeFabritus*, 605 F. Supp. 1538, 1546–47 (S.D.N.Y. 1985). As detailed below, the government's opposition brief provides additional, compelling grounds for granting Mr. Greebel's motion.

Mistakes in an indictment should not be treated as "inconsequential." Gov't Br. at 38 n.12. The mistake at issue has appeared in the prefatory language of Paragraph 7 since the original indictment was filed in December 2015. *See* Dkt. No. 1 (original indictment) (stating "Mr. Shkreli, together with Greebel and others, orchestrated *three* interrelated schemes")

1

(emphasis added); Dkt. No. 60 (Indictment) (stating "Mr. Shkreli, together with Mr. Greebel and others, orchestrated *four* interrelated schemes") (emphasis added). It also has been incorporated by express reference in eight subsequent paragraphs, in each and every count of the Indictment. Such language infects the whole Indictment and unfairly broadens the scope of the allegations against Mr. Greebel, who was arrested without warning or an opportunity to discuss the matters under investigation by the criminal and regulatory authorities. Indeed, the grand jury, Mr. Greebel, and the general public were mistakenly led to believe that Mr. Greebel was charged with "orchestrating" both the MSMB Capital Hedge Fund Scheme and the MSMB Healthcare Hedge Fund Scheme.

It is only now that the government contends, "[r]ead in context" *and* "considering the allegations contained in the Superseding Indictment itself and the position that the government has taken repeatedly in its submissions to the Court and during oral argument regarding Mr. Greebel's culpability in this case," it is "farfetched" for anyone to believe that the government has accused or at trial will accuse Mr. Greebel of involvement in the MSMB Capital Hedge Fund Scheme and the MSMB Healthcare Hedge Fund Scheme. Gov't Br. at 37. That argument rings hollow. At every opportunity, the government's repetition of the prefatory language in Paragraph 7 has created and reinforced the prejudicial notion that Mr. Greebel was involved in the other schemes.

- In the government's motion to stay the SEC case, the government quoted the objectionable language from Paragraph 7 in describing the criminal case and arguing that the same alleged fraudulent schemes are at issue in both cases. The government said: "Specifically, the indictment alleges that in or about and between September 2009 and September 2014, defendant Shkreli, together with defendant Greebel and others, orchestrated 'three interrelated fraudulent schemes' whereby they agreed to, inter alia . . . ." Gov't Mot. to Intervene and Stay Civil Proceedings, *SEC v. Shkreli*, Dkt. No. 12 at 3 (Jan. 25, 2016).

- Next, in the government's motion opposing Mr. Greebel's request for a bill of particulars, the government quoted the objectionable language from Paragraph 7 in its description of the alleged schemes: "Specifically, the indictment alleges that in or about and between September 2009 and September 2014, Shkreli, together with Greebel and others, orchestrated 'three interrelated fraudulent schemes' whereby they agreed to, inter alia . . . ." Gov't Opp. to Motion for Bill of Particulars, Dkt. No. 90 at 13 (Sept. 30, 2016).

- Then, in the government's memorandum opposing Mr. Greebel's severance motion, the government again quoted the objectionable language from Paragraph 7 in describing the alleged schemes: "Specifically, the indictment alleges that in or about and between September 2009 and September 2014, Shkreli, together with Greebel and others, orchestrated 'three interrelated fraudulent schemes' whereby they agreed to, inter alia . . . ." Gov't Opp. to Motions for Severance, Dkt. No. 166 at 7–8 (Mar. 3, 2017).

- Subsequently, in the government's motion seeking a Rule 104 hearing, the government quoted the objectionable language from Paragraph 7: "Specifically, the indictment alleges that in or about and between September 2009 and September 2014, Shkreli, together with Greebel and others, orchestrated 'three interrelated fraudulent schemes' whereby they agreed to, inter alia . . . ." Gov't FRE 104 Motion, Dkt. No. 180 at 9–10 (Mar. 28, 2017).

In light of this history, it is in no way "farfetched" to imagine the government (much less Mr. Shkreli) expanding its allegations against Mr. Greebel at trial. Nor is the government's mistake "inconsequential" given the frequency with which the government has repeated it. A reasonable jury would assume that federal prosecutors take the preparation of indictments very seriously, that prosecutors take great pains to draft the language in indictments with care and precision, and that when jurors evaluate the government's allegations they can and should rely on the exact language set forth in the indictment. Even if the Court does not provide a copy of the Indictment to the jury, the government and Mr. Shkreli might still attempt to repeat the charging language before the jury; the government and Mr. Shkreli might try to include these statements in both opening arguments and summations; and Mr. Shkreli might argue before the jury that Mr. Greebel has been accused of helping to orchestrate the MSMB Capital Scheme and the MSMB Healthcare Scheme in connection with his advice-of-counsel defense.

The government also contends that "there is little risk of juror confusion" from the language in Paragraph 7. Gov't Br. at 37. But Mr. Greebel is the only referenced person indicted along with Martin Shkreli. Thus, by leaving the language as it stands now, the Indictment clearly conveys that these four schemes were orchestrated by a two-person team, *i.e.*, a conspiracy between Mr. Shkreli and Mr. Greebel, together "with others." That is simply not the case. Accordingly, linking Mr. Greebel to the MSMB Capital Scheme and the MSMB Healthcare Scheme creates confusion for the jury, and thus prejudices Mr. Greebel.[1] Mr. Greebel should not have to run the very substantial risk that a jury will misinterpret the conflicting allegations in the Indictment by reading the problematic language in Paragraph 7 literally.

Moreover, the government's concessions alone warrant striking of the language in Paragraph 7. First, the government has acknowledged that Mr. Greebel was not consulted with respect to the MSMB Capital Hedge Fund Scheme or the MSMB Healthcare Hedge Fund Scheme. *See* April 7, 2017 Hearing Tr. at 33:4–12. Such an admission reinforces a core of Mr. Greebel's defense that Mr. Shkreli lied to, omitted material information from, and deceived, Mr. Greebel in connection with, among other things, MSMB Capital and MSMB Healthcare.

---

[1] Indeed, in the very same brief where it contends that there is "little risk of juror confusion" that Mr. Greebel has been accused of participating in, much less orchestrating, the MSMB Capital Hedge Fund Scheme and the MSMB Healthcare Hedge Fund Scheme, the government mistakenly argues that Mr. Greebel was involved in some of the alleged misconduct relating to these hedge fund schemes. Specifically, the government alleges that, "[f]or example, Shkreli and Greebel . . . improperly reclassified an investment by MSMB Healthcare in Retrophin as a loan." Gov't Br. at 12. But the alleged reclassification of the investment by MSMB Healthcare in Retrophin as a loan is solely charged in Paragraph 20 of the Superseding Indictment in connection with the MSMB Healthcare Hedge Fund Scheme. And prior to making the allegation in its brief that "Shkreli and Greebel . . . improperly reclassified an investment by MSMB Healthcare in Retrophin as a loan," the government had never alleged that Mr. Greebel participated in this reclassification, nor have we identified a shred of evidence that Mr. Greebel was involved. The inclusion of Mr. Greebel in this newly minted allegation relating to the MSMB Healthcare Hedge Fund Scheme is a prime example of why striking the prefatory language in Paragraph 7 is necessary and appropriate.

Second, in a telling concession in its opposition papers, the government offers that if this Court "decides to send the indictment back to the jury during deliberations, [it] will consent to striking the phrase 'the defendant EVAN GREEBEL and' from Paragraph 7 of the Superseding Indictment to avoid any need for further litigation." Gov't Br. at 38 n.12. But that proposed solution does not solve the problem. The Indictment remains the official charges against Mr. Greebel, and it contains inaccurate language that is inflammatory, prejudicial, and at odds with the government's own theory of the case. Striking the offending language ensures that the government will not be able to argue—and minimizes the risk that the jury will infer—that Mr. Greebel participated in, must less orchestrated, the MSMB Capital Hedge Fund Scheme or the MSMB Healthcare Hedge Fund Scheme.

Striking the language will also put a stop to Mr. Shkreli's baseless and repeated assertions in multiple pleadings that Mr. Greebel is involved in those schemes. *See, e.g.*, Shkreli Mot. for Severance, Dkt. No. 161-2 at 12–13 ("As a starting point, even the Superseding Indictment alleges that Shkreli worked closely with his counsel, Evan Greebel, for a several-year period leading up to September 2014. In particular, the Government alleges that Shkreli and Greebel worked together in representing the 'prior performance of the fund (MSMB), its assets under management and the retaining of an independent auditor and administrator, and then by preventing redemptions by investors in MSMB Capital . . .' Para. 7(a)."). Due to the government's allegation that the MSMB schemes are "interrelated" with the alleged Retrophin Misappropriation Scheme and the alleged Retrophin Unrestricted Shares scheme, it is critical that the government now admits that Mr. Greebel was not consulted with respect to the MSMB schemes. *See, e.g.*, April 7, 2017 Hearing Tr. at 33:4–12. As we explained during oral argument on our severance motion, we intend to demonstrate at trial that, among other things, the many

5

lies, misrepresentations, and material omissions by Mr. Shkreli to Mr. Greebel about the MSMB hedge funds will help prove Mr. Greebel's innocence of the charges against him. There was no meeting of the minds in the charged conspiracies in Count Seven and Count Eight when, among other things, the very pillars of the foundation of the "attorney-client relationship"[2] were lies, omissions, and deceptions.

Finally, the government has not identified any prejudice to itself should the Court strike the offending language. Nor has the government distinguished any of the cases Mr. Greebel relies on for striking this surplusage when language is inflammatory, prejudicial, inconsistent with the government's theory, and presents a risk that a prosecutor might impermissibly enlarge the charges contained in an indictment returned by the grand jury. *See* Greebel Br. at 5–6. In sum, because the government admits that its prejudicial reference to Mr. Greebel in Paragraph 7 is wrong and unnecessary, the Court should grant the motion to strike.

**B.  Count Eight Should Be Dismissed Because Mr. Greebel Cannot Fairly Defend Himself Without Knowing the Alleged Unlawful Objective of the Conspiracy**

The government opposes Mr. Greebel's motion to dismiss Count Eight, but fails to identify a clear unlawful objective of the conspiracy count and sweeps legal conduct within its stated objective. Gov't Br. at 41–42. Accordingly, the Indictment fails to provide sufficient notice to Mr. Greebel of the illegal conspiracy he allegedly joined.

Mr. Greebel needs to understand the alleged unlawful objective to know which of the many examples of Mr. Shkreli's lies, omissions and deceptions should be the focus of his defense to the charge in Count Eight. Only with a clear understanding of the unlawful objective will Mr. Greebel be able to demonstrate that there was no meeting of the minds with Mr. Shkreli.

---

[2] We placed quotations around the phrase "attorney-client relationship" because we are speaking about the relationship in general. To be clear, Mr. Greebel was not and has never been counsel to Mr. Shkreli in his personal capacity.

6

*See, e.g.*, *United States v. Rosenblatt*, 554 F.2d 36, 38–39 (2d Cir. 1977) (requiring allegations as to each defendant's agreement with respect to the object of the conspiracy because it is "the gist of the offense") (internal citation omitted). For example, based on the information provided in discovery from documents that Mr. Greebel had not previously received, it is clear that the reason for allocating Fearnow shares to certain people, as explained to Mr. Greebel and Katten Muchin Rosenman LLP by Mr. Shkreli, was not, in fact, the true reason behind Mr. Shkreli's allocations.[3] Further, the evidence of the true reason for the allocations—while criminal in our view and concealed from Mr. Greebel and others at Katten Muchin—does not appear to involve the government's allegation of controlling the price and trading of Retrophin's stock.[4] Moreover, if Mr. Greebel had known the true reason Mr. Shkreli provided the Fearnow shares to certain people, Mr. Greebel would have counseled against it and tried to stop it. Such evidence further demonstrates that Mr. Shkreli lied to, omitted material information from, and deceived Mr. Greebel regarding the purpose of the allocation and/or distribution of the Fearnow shares.

Recognizing that a conspiracy charge under Section 371 must be dismissed "if the actions forming the subject matter of the conspiracy do not themselves constitute substantive crimes" (Greebel Br. at 9 (citing *United States v. Courtois*, No. S81 Cr. 53-CSH, 1981 WL 1639, at *19 (S.D.N.Y. June 5, 1981)), the government insists that the purported objective of the conspiracy was "to *fraudulently* control the price and trading of the company's stock, while *concealing* the CEO's ownership and control over the company's shares." Gov't Br. at 42 (emphasis added). The government further asserts that because such control indisputably constitutes a violation of

---

[3] We do not identify these documents here because we need to preserve our defenses for trial, and we do not want to provide the government or Mr. Shkreli (should there be a joint trial) with a roadmap of such defenses.

[4] This is another example where we will be alleging at trial—this time in connection with the allegations in Count Eight—that Mr. Shkreli committed criminal conduct that the government has yet to identify. In short, we will be prosecuting Mr. Shkreli at trial regarding such conduct and such prosecution creates a serious danger of depriving the defendants of their constitutional rights to a fair trial.

7

federal securities law, it is therefore a "valid objective" for the purposes of Title 18, United States Code, Section 371. *Id*. Yet based on the language in the Indictment and the government's brief in opposition to the motion to dismiss Count Eight, it is impossible to determine whether the government is alleging that the unlawful objective was to "prevent" the recipients of Fearnow shares from trading—which would **not** be unlawful if such recipients had material, nonpublic information about the company and thus should have been restricted from trading the shares—or whether there is some other allegedly unlawful objective, as opposed to the suggested "means and methods" of achieving such objective.[5] *See* Greebel Br. at 11 (citing Ind. ¶¶ 37, 39, 40).

For example, despite the government's new emphasis on defendants' alleged efforts to manipulate the price of Retrophin stock (Gov't Br. at 42), the Indictment does not, for instance, outline the "essential nature of [any] plan" to do so. *Rosenblatt*, 554 F.2d at 38 (internal citation omitted). Indeed, the government's own description of the alleged objective—"to defraud investors and potential investors in Retrophin by fraudulently 'exercis[ing] control over the price and trading of Retrophin's stock,' ([Ind.] ¶ 37), by concealing Shkreli's beneficial ownership and control of Retrophin's unrestricted or free trading shares"—is as convoluted as the Indictment itself. *See* Gov't Br. at 41. Alleging that the criminal objective is "fraudulently exercising control over the price and trading of Retrophin's stock" is tautological. That is, simply because

---

[5] It is unclear to us how exactly the government is claiming that attempting to control the trading and price of a company's stock is in and of itself a crime as it applies to the facts of this case. For example, there are situations in which a company may be required to ensure that individuals with material, nonpublic information about a public company are precluded from trading in its securities. *See, e.g.*, *S.E.C. v. First Jersey Sec., Inc.*, 101 F.3d 1450, 1472–73 (2d Cir. 1996) (holding that individual defendant, who was company's "sole owner" and "[t]hroughout the relevant period, . . . was either its president or its chief executive officer," "had the burden of showing that he did not induce the Firm's violations and that he ***maintained and enforced a reasonable and proper system of supervision and internal control over the pertinent personnel***" in order to avoid controlling-person liability in violation of securities laws) (emphasis added); *see also* 17 C.F.R. § 240.10b-5 (prohibiting trading on the basis of material nonpublic information); *Dirks v. SEC,* 463 U.S. 646, 655 n.14 (1983) (holding that tipper insider trading liability could extend to outsiders who received material nonpublic information from a company insider where there is a "special confidential relationship" and the "corporation [expects] the outsider to keep the disclosed nonpublic information confidential").

8

the government attempts to characterize the alleged criminal objective as "fraudulent" does not in and of itself explain how the objective is in fact a crime.

Furthermore, alleging that Mr. Shkreli exercised control over the price and trading of Retrophin's stock "by concealing Shkreli's beneficial ownership" appears to be yet another way of stating that Mr. Shkreli was "parking" securities with others but, as Mr. Greebel explained in his memorandum in support of our motion to dismiss in reliance on *United States v. Russo*, 74 F.3d 1383, 1393–94 (2d Cir. 1996), the alleged "parking" of shares is not in and of itself a criminal objective. *See* Greebel Br. at 12.

The key question remains what exactly is the nature of the alleged unlawful objective in controlling the price and trading of Retrophin's stock. The government appears unable to link the alleged means (concealing Mr. Shkreli's beneficial ownership and control) with an alleged criminal objective (exercising control over the price and trading of Retrophin stock). It is unclear how failing to report that Fearnow shareholders were members of a group for purposes of Rule 13D could be the means by which defendants sought to achieve the government's stated objective—to fraudulently control the price and trading of Retrophin stock—if Mr. Shkreli attempted to prevent recipients of the Fearnow shares to trade such shares due to their possession of material nonpublic information.

Having failed to identify a clear unlawful objective in Count Eight, we remain left wondering which of the many lies, material omissions, and deceptions we should focus on in defending against the charges in Count Eight. Without further information, the alleged illegal objective of attempting to control the price and trading in Retrophin's common stock remains ambiguous and sweeps potentially lawful conduct within its scope. As a result, the count should be dismissed.

## II.  CONCLUSION

For the reasons set forth above, Mr. Greebel respectfully requests the entry of an order (1) striking the surplus language of Paragraph 7 of the Indictment, and (2) dismissing Count Eight of the Indictment.

Dated:  New York, New York
April 17, 2017

*/s/* Reed Brodsky
Reed Brodsky
Winston Y. Chan
Lisa H. Rubin

GIBSON, DUNN & CRUTCHER LLP
200 Park Avenue
New York, NY 10166
(212) 351-4000
rbrodsky@gibsondunn.com

*Counsel for Defendant Evan Greebel*