1

```
 1                  UNITED STATES DISTRICT COURT
                    EASTERN DISTRICT OF NEW YORK
 2
      - - - - - - - - - - - - -    X
 3
    UNITED STATES OF AMERICA,    :    15-CR-637(KAM)
 4
              Plaintiff ,        :
 5                                    United States Courthouse
         -against-              :    Brooklyn, New York
 6
    MARTIN SHKRELI and
 7   EVAN GREEBEL,               :
                                      January 26, 2017
 8            Defendant.         :    2:00 o'clock  p.m.

 9    - - - - - - - - - - - - -    X

10                  TRANSCRIPT OF STATUS CONFERENCE
                  BEFORE THE HONORABLE KIYO MATSUMOTO
11                  UNITED STATES DISTRICT JUDGE.

12   APPEARANCES:

13   For the Government:         ROBERT L. CAPERS
                                 United States Attorney
14                               BY: ALIXANDRA SMITH
                                     WINSTON PAES
15                                   JACQUELINE M. KASULIS
                                     G. KARTHIK SRINIVASAN
16                               Assistant United States Attorneys
                                 271 Cadman Plaza East
17                               Brooklyn, New York

18
    For Defendant Shkreli:      ANDREA L. ZELLAN, ESQ.
19                               MARC A. AGNIFILO, ESQ.

20
    For Defendant Greebel:      LISA H. RUBIN, ESQ.
21                               REED M. BRODSKY, ESQ.

22
    Also Present:               GLENN McGORTY
23                               ARLEN PYENSON
                                 (For M. Biestek)
24
                                 IAN SHAPIRO
25                               NICHOLAS FLATH
                                 (For Retrophin)
```

2

1    APPEARANCES:   (Continued)

2

3    Court Reporter:              Charleane M. Heading
                                  225 Cadman Plaza East
                                  Brooklyn, New York
4                                 (718) 613-2643

5    Proceedings recorded by mechanical stenography, transcript
     produced by computer-aided transcription.

6

7                          *     *     *     *     *

8

9            THE CLERK:   This is criminal status conference.

10   15CR637.   USA versus Martin Shkreli and Evan Greebel.

11           Will the U.S. Attorneys please state your

12   appearances, please.

13           MS. SMITH:   Good afternoon.   Alixandra Smith,

14   Winston Paes, Jacqueline Kasulis and Karthik Srinivasan for

15   the United States.

16           THE COURT:   Good afternoon.

17           THE CLERK:   And on behalf of Mr. Shkreli?

18           MS. ZELLAN:   Andrea Zellan, Marc Agnifilo and Teny

19   Geragos for Mr. Shkreli.

20           THE COURT:   Good afternoon.

21           THE CLERK:   And on behalf of Mr. Greebel?

22           MS. RUBIN:   Good afternoon, Your Honor.   Lisa Rubin

23   and Reed Brodsky for Evan Greebel.

24           MR. BRODSKY:   Good afternoon, Your Honor.

25           THE COURT:   Good afternoon.

3

1        I have various correspondence from the parties.  It

2   appears you have been working well to exchange privilege logs

3   and documents and I'm hoping that review is well underway.  I

4   was wondering whether the defendant still anticipated bringing

5   severance motions.

6            MS. ZELLAN:  Yes, Your Honor, we do.

7            THE COURT:  All right.  So, the schedule that you

8   had proposed is still in force and we will start, I guess,

9   seeing your submission soon.

10           MS. ZELLAN:  Yes, we'll be submitting by the 17th.

11           THE COURT:  And will Mr. Greebel be submitting as

12   well?

13           MS. RUBIN:  Yes, Your Honor.

14           MR. BRODSKY:  With respect to the scheduling, we did

15   notice that the oral argument is set for April 7th.  The

16   briefing is done by March 7th.

17           We believe we have a very strong basis for

18   severance, obviously, and if there's any ability, Your Honor,

19   to move up the date of the oral argument if Your Honor looks

20   at the case law and agrees with us with respect to severance,

21   what we wanted to do is avoid a situation of preparing for

22   trial, you know, really getting ready for trial and then Your

23   Honor severs the case and then Mr. Greebel would then be tried

24   in October and then we would get ready for the case again in

25   the fall.  So we're just trying to eliminate some of the work

CMH        OCR        RMR        CRR        FCRR

4

1  to conserve resources.

2          THE COURT:  I appreciate that.  I have a lot of

3  matters in March.

4          MR. BRODSKY:  Understood, Your Honor.

5          THE COURT:  Okay.  Thanks.

6          MR. BRODSKY:  Thank you, Your Honor.

7          THE COURT:  And if we can move it up, we will let

8  you know but, obviously, when we move something, we have to

9  coordinate with many other lawyers, your colleagues at the end

10  of the table, the other end of the table.

11          MR. BRODSKY:  I understand.

12          THE COURT:  So, it's not a minor matter to move

13  dates and these are dates that I think had been proposed.

14          MR. BRODSKY:  We had proposed a little bit earlier

15  for oral argument but we understand your schedule is busy in

16  March, Your Honor.

17          THE COURT:  Okay.  If we have the opportunity, we

18  will but, otherwise, you know, I'd like to stick with this

19  schedule.

20          MR. BRODSKY:  Very well, Your Honor.

21          THE COURT:  Is there anything else we should

22  address?  I think there was also an issue of other motions

23  that the parties may anticipate regarding disputes on the

24  privileged documents.

25          MS. SMITH:  Yes, Your Honor.  From the government's

5

1    perspective, it's our understanding that Mr. Shkreli has not

2    yet decided whether or not he's going to advance an advice of

3    counsel defense.  If he does, then obviously the documents

4    will no longer be privileged because he'll need to waive to

5    advance that defense.

6              So, we anticipate, once that decision is made, if

7    they're not advancing an advice of counsel defense, at that

8    point, we would kind of brief for Your Honor any challenges we

9    have to the privilege doing and we're happy to do that on that

10   second briefing schedule, particularly because it's our

11   understanding that the advice of counsel decision will

12   probably go hand in hand with motions for severance.

13             THE COURT:  All right.  So Roman numeral two of

14   paragraph two, is that right?

15             MS. SMITH:  Roman numeral three.

16             THE COURT:  Three.  All right.

17             MS. SMITH:  So, I think any challenges to the

18   privilege log, if there are any to be made, would be in that

19   last round.

20             THE COURT:  All right.  Do you anticipate having any

21   issues regarding privileges at this point?

22             MS. ZELLAN:  Your Honor, are you asking with respect

23   to Retrophin's assertions of privilege?

24             THE COURT:  Yes, and just any discussions that all

25   the parties have had and the nonparties.

6

1       MS. ZELLAN:  I think that we're working well with

2   the people who are representing Retrophin.  There have been

3   some discussions about some expansion of the waiver to include

4   some documents that are currently on the privileged log.  I'm

5   optimistic that we can work together to resolve those issues

6   and not seek intervention of the Court and at that point, you

7   know, if we can't resolve it, then I think we'll do the same

8   as the government has proposed which is get that into a motion

9   for the Court in that second briefing schedule.

10      THE COURT:  All right.  Does Retrophin wish to be

11  heard?

12      Yes, Mr. Brodsky.

13      MR. BRODSKY:  Yes, Your Honor.  We are conferring,

14  meeting and conferring with counsel for Retrophin at Cooley

15  with respect to the privilege logs.

16      For scheduling purposes, Your Honor, we do

17  anticipate filing a motion to compel Retrophin to produce

18  documents pursuant to subject matter waiver pursuant to using

19  the privilege as a sword and a shield.  I can get into it now,

20  but we do anticipate for scheduling purposes making such a

21  motion.

22      THE COURT:  And you are committing to the schedule

23  in the Court's order?

24      MR. BRODSKY:  Absolutely, Your Honor.  In fact, I

25  would anticipate we're going to do it in advance of that --

7

1          THE COURT:  All right.

2          MR. BRODSKY:  -- schedule.

3          THE COURT:  In terms of oral argument for these

4  other motions that don't have to do with the severance, will

5  the parties be prepared to argue on April 7th since they are

6  going to be briefing these motions in advance of that date?

7          MR. BRODSKY:  I think the reply briefs are due on

8  April 10th, Your Honor, with respect to all nonsubstantive --

9          THE COURT:  Well, do we want to move that date up?

10          MS. SMITH:  That's fine with the government.

11          THE COURT:  We can move up those dates for all the

12  motions that are anticipated to be brought under paragraph

13  two, Roman numeral three.

14          MR. BRODSKY:  The issue, Your Honor, respectfully,

15  is that we tried to stage it so that we would be prepared

16  fully with the severance motion which is a -- we're working on

17  it now.  It is going to take another month for us to work on.

18  It is a very substantial motion and we do anticipate a few

19  other motions, but with respect to our motion to compel, we

20  can inform Your Honor we can move that date up.  We will move

21  to compel Retrophin to produce documents pursuant to subject

22  matter waiver and sword and the shield way in advance of

23  March 17th.

24          THE COURT:  All right.  So might you be ready to

25  argue on that motion on April 7th?

8

1        MR. BRODSKY:  Oh, absolutely.  With respect to that

2   motion, in fact, we may be able to argue it much more in

3   advance of that.

4        THE COURT:  All right.  Well, we will see how this

5   unfolds.  Obviously, I would prefer it if the parties would

6   confer as much as possible and resolve any issues, you know,

7   and avoid a lot of motion practice that may not be necessary

8   if you would really try to speak to one another.

9        MR. BRODSKY:  We conferred regarding the issue of

10  subject matter waiver with Retrophin's counsel at Cooley and

11  as we anticipated, they completely rejected our view.  They

12  also rejected the sword and the shield argument.  So, we, we

13  are conferring regarding the privilege logs.  Unfortunately,

14  with respect to this issue, we don't see much, much ability to

15  confer about it.

16       THE COURT:  Is your client being sued in their

17  lawsuit though?  Isn't it just against Mr. Shkreli?

18       MR. BRODSKY:  Well, with respect to the issue of

19  subject matter waiver, they waived with respect to just

20  communications with respect to Katten.  So when they, in or

21  about the summer of 2015, decided to waive the privilege, they

22  did it on the narrow basis of saying we'll waive these subject

23  matters but only with respect to our communications with this

24  law firm.  So, if they have other communications that are

25  privileged on that subject, it's our view, under the

9

1    well-established case law, that you can't decide to waive the

2    subject matter of privilege and decide to do it with this

3    lawyer or this law firm.  You waive the subject matter

4    entirely.

5             In addition, with respect to sword and the shield, I

6    think Your Honor made some comments during a conference in

7    December that there's well established case law you cannot use

8    the privilege as a sword and a shield and Retrophin has done

9    so.  So we do believe we have standing with respect to, with

10   respect to that issue.

11            THE COURT:  Well, that was in the context of the

12   lawsuit against Mr. Shkreli.  I didn't understand that they

13   were also suing Mr. Greebel.

14            Is Retrophin suing Mr. Greebel?

15            MR. BRODSKY:  They are not suing Mr. Greebel.

16            THE COURT:  So, where is the use of the sword

17   against your client?

18            MR. BRODSKY:  In three respects.  We believe even if

19   you sue Mr. Shkreli with respect to using it as the sword and

20   the shield, you waive your privilege in that regard.  So --

21            THE COURT:  Well, that's the subject matter waiver.

22            MR. BRODSKY:  Correct.

23            Second, Your Honor, if you use an internal

24   investigation, and they did an internal investigation, you

25   disclose your findings to the public and you disclose your

10

1    findings to other third parties, we believe that you've waived

2    your privilege.  So we have evidence that they disclosed

3    information, for example, to auditors with respect to their

4    internal investigation and we believe as a result of that,

5    they waive a privilege.  They can't assert privilege to that.

6          So, those are the areas that we'll be seeking a

7    privileged waiver.

8          THE COURT:  Auditors that they hired or auditors

9    that were brought in by the government or auditors --

10         MR. BRODSKY:  They're external auditors.  Retrophin

11   had external auditors.

12         THE COURT:  So, you are saying when a corporation

13   hires external auditors to do an audit, that that disclosure

14   of information to somebody that is working really to audit the

15   corporate books and records, that constitutes a waiver and a

16   public disclosure?

17         MR. BRODSKY:  No.  I believe that if you have

18   findings of an internal investigation and you convey that, for

19   example, to your external auditor and you give them that

20   information, for example, Marcum was the external auditor who

21   audited the books of Retrophin, it is well established there

22   is no privilege between the public company and the external

23   auditors.

24         So, if you disclose something to your external

25   auditor about your financial statements or about your

11

1    disclosures of an internal investigation, there is no

2    privilege relationship and the auditor, the external auditor,

3    for example, Markham if subpoenaed, would produce that

4    information or testify about it because there's no privilege.

5    So, there are circumstances like that in this case where

6    disclosures were made both to the public and, for example, to

7    external auditors.

8              THE COURT:  But that is not the sword and shield

9    argument again, right?

10             MR. BRODSKY:  It depends how you -- if you're using

11   the internal investigation to disclose a portion of what's

12   privileged and to hold back other portions, then that would

13   be, in effect, the sword and the shield where you're using

14   information gathered, gathered pursuant to a privileged

15   communication, and I'll give you an example, Your Honor.

16             Judge Gardephe recently in a case in the Southern

17   District of New York found that a company had conducted an

18   internal investigation and went to the government and

19   disclosed conversations they had with witnesses, and

20   conversations they had on the work they did on the

21   investigation.  Judge Gardephe found that that completely

22   waived the privilege with respect to the nature of their

23   investigation.  Once they went to the government and they made

24   certain disclosures to the government -- in this case, it was

25   the SEC -- then they waived communications with all of that

12

1    subject.

2              So, we believe even though it may not be in the

3    nature of a lawsuit, if you use the privilege as a sword, for

4    example, you take information to the government and you

5    disclose it to them, you can no longer protect that

6    information.  If you take the information and you disclose it

7    to your external auditor, you can no longer then use the

8    privilege to withhold the information.  So that would be our

9    basis.

10             THE COURT:  All right.  Well, I am sure Retrophin's

11   attorney will have something to say about that.

12             You do not have to do it now.

13             MR. SHAPIRO:  When the time comes, we'll respond.

14             THE COURT:  Yes.

15             So, we will get that briefing and you know what our

16   briefing schedule is, sir.  The motions will be served on

17   March 17th.  Oppositions on March 31st.

18             MR. SHAPIRO:  I see it, yes.

19             THE COURT:  All right.  Any other motions

20   anticipated besides what we have heard so far, the

21   government's motions and the defense motions?

22             MR. BRODSKY:  Your Honor, if it helps things with

23   scheduling because I know you have a busy March, we can move

24   up our motion to compel Retrophin to produce documents on

25   subject matter waiver next week, for example, and you can move

13

1    up the schedule for Retrophin to respond so that it's all

2    briefed and argued before March, if that's helpful to your

3    schedule, Your Honor.

4              THE COURT:  Does that work for Retrophin?

5              MR. SHAPIRO:  Based on my own scheduling, I much

6    prefer the schedule that's in the scheduling order to respond

7    to what sounds like what's going to be a substantial motion so

8    I would rather stick with the existing schedule.

9              THE COURT:  I think his severance motion is going to

10   be substantial.  I did not get a sense that this other motion

11   would be too complicated.

12             MR. BRODSKY:  I would estimate, Your Honor, 15 to

13   20 pages.  It's not -- this is not a complicated area of the

14   law with respect to the use of privilege.

15             THE COURT:  All right.  Well, since Retrophin is

16   sort of caught here as a non-party, I think I would prefer to

17   accommodate their schedule on this.

18             MR. BRODSKY:  Very well, Your Honor.

19             THE COURT:  It will make our burden harder because

20   we will have many more motions to deal with in this time

21   frame.  I mean, if you find, sir, that you will be able to

22   accommodate a more, advance a schedule at all, I would

23   appreciate it.

24             MR. SHAPIRO:  Understood, Your Honor.

25             THE COURT:  Okay.  Is there anything else we should

14

1  address at this time?

2         MS. SMITH:  No, Your Honor.

3         THE COURT:  All right.  I guess then the next

4  schedule date for me is April 7th unless folks have a need to

5  come in before.

6         Does anybody anticipate needing to come to court

7  before then?

8         MS. ZELLAN:  No, Your Honor.

9         MS. SMITH:  No, Your Honor.

10        THE COURT:  What time do we have on April 7th?

11        THE CLERK:  1:30 p.m.

12        THE COURT:  All right.  Thank you.  I will see you

13  April 7th at 1:30 then.

14        MR. BRODSKY:  Thank you, Your Honor.

15        MS. ZELLAN:  Thank you.

16        MS. SMITH:  Thank you.

17        (Matter concluded.)

18

19

20            *    *    *    *    *

21

22  I certify that the foregoing is a correct transcript from the
    record of proceedings in the above-entitled matter.

23

24     /s/ Charleane M. Heading          February 27, 2017
    _____     _____
25     CHARLEANE M. HEADING                      DATE


CMH     OCR     RMR     CRR     FCRR