UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| UNITED STATES OF AMERICA, | No. 15-CR-00637 (KAM) |
| -against- | ECF Case |
| MARTIN SHKRELI and EVAN GREEBEL, | |
| Defendants. | |

### RETROPHIN, INC.'S SUPPLEMENTAL MEMORANDUM OF LAW IN OPPOSITION TO MARTIN SHKRELI'S MOTION TO COMPEL THE PRODUCTION OF DOCUMENTS

In prior briefing, Defendant Martin Shkreli sought to overcome Retrophin's assertion of the attorney-client privilege over 933 documents produced by Katten Muchin Rosenman LLP ("Katten") for Shkreli's review (the "Initial Logged Set") pursuant to this Court's Orders of November 30, 2016 and December 16, 2016 (the "Review Orders"). Shkreli argued that certain of the 933 documents in the Initial Logged Set, which he designated by color, were relevant to his defense, but he did not cite any law or explain in detail why the documents were relevant. In opposition, Retrophin argued that relevance alone is not sufficient to overcome the attorney-client privilege.

On April 26, 2017, Shkreli filed a new brief, expanding his motion dramatically. He now seeks to invalidate Retrophin's privilege over 1,934 documents, which represent nearly all of the Katten documents over which Retrophin asserted privilege (the "Full Logged Set").[1] The 1,934 documents in the Full Logged Set is more than twice the number of documents that Shkreli initially sought on his motion. Even after adding a thousand documents for the Court to consider, Shkreli fails to describe the subject matter of the documents (none of which relate to

---

[1] Shkreli is not seeking documents relating to certain commercial transactions that were logged separately with his consent. *See* Apr. 26 Br. at 2 n. 1.

the charges in the Indictment), or to explain how any of the documents would be helpful to his

defense, let alone admissible.  Shkreli does, however, for the first time, attempt to marshal legal

support for his motion.

First, Shkreli invokes *United States v. Weisberg*, 2011 U.S. Dist. LEXIS 37221

(E.D.N.Y. Apr. 5, 2011), to argue that he should be permitted to use the Full Logged Set at trial

even if the documents are privileged.  As discussed in our prior brief, Retrophin believes that

*Weisberg* was wrongly decided, and that the Court should follow Judge Furman's decision in

*United States v. Wells Fargo Bank, N.A.*, 132 F.Supp.3d 558 (S.D.N.Y. 2015).  But even if this

Court were inclined to follow *Weisberg*, Shkreli utterly fails to demonstrate (or even argue) that

any of the documents in the Full Logged Set are "so important to [his] defense that [their]

disclosure is constitutionally required." *Weisberg*, 2011 U.S. Dist. LEXIS 37221, at *5.

Second, even though Shkreli has conceded that the Initial Logged Set was privileged (*see*

Mar. 27 Br. at 16-17 (ECF No. 174-1)), he now reverses course to argue that Retrophin waived

its privilege over both the Initial Logged Set and the Full Logged Set by using the privilege as

both a sword and a shield when Retrophin made a limited subject matter waiver in July 2015 (the

"Waiver").[2]  Shkreli bases this argument on a false factual premise – that Retrophin made its

Waiver *after* it had already produced privileged materials within its scope.  In fact, Retrophin did

not produce any such material to the government, or to anyone else, until after the Waiver.

---

[2] At Shkreli's request, Retrophin subsequently waived its privilege concerning additional topics on December 6, 2017 and January 23, 2017.  Those limited subject matter waivers cannot be the basis for Shkreli's sword-and-shield argument, since he has agreed not to invoke them to seek a broader waiver.  *See* Flath Dec. ¶¶ 11-13 (ECF No. 188).

Further, none of the privileged material now sought by Shkreli has ever been disclosed to the government or any individual or entity other than Retrophin personnel or Retrophin counsel.[3]

Under Rule 502 of the Federal Rules of Evidence, an intentional waiver extends to undisclosed documents "only if . . . (2) the disclosed and undisclosed communications or information concern the same subject matter. . . ."  None of the documents in the Full Logged Set concern the same subject matters as the Waiver.  Therefore, Retrophin has not waived its privilege over the Full Logged Set.

**A.     Background**

Shkreli's motion relies on a misleading and innuendo-filled recitation of "background," which is unsupported by declaration or affidavit.  The actual facts, which are set forth in the Flath Supplemental Declaration filed concurrently with this brief ("Flath Supp. Dec."), follow.

Retrophin received a grand jury subpoena from the United States Attorney's Office for the Eastern District of New York on May 14, 2014, during Shkreli's tenure as chief executive officer.  *See* Flath Supp. Dec. ¶ 2.  Contrary to Shkreli's assertion (Apr. 26 Br. at 2) (ECF No. 211), this subpoena did not result in some sort of "dialogue" between Retrophin and the government behind his back.  In fact, the two productions that Retrophin made in response to the subpoena (on May 23, 2014 and September 15, 2014), were made by Retrophin's then counsel,

---

[3] Pursuant to the Court's April 27, 2017 order, Retrophin has reviewed both the Full Reviewed Set and its prior document productions to the government (a total of 57,610 pages), to the Securities and Exchange Commission (a total of 28,370 pages), and to other parties.  Flath Supp. Dec. ¶¶ 38, 39.  By means of this review, Retrophin determined that duplicates of ten (of 1,934) documents in the Full Logged Set were inadvertently previously produced to one of the foregoing parties in unredacted form.  *See Id.* ¶ 39.  As detailed in Exhibit A to the Flath Supplemental Declaration, Retrophin has advised the government and the SEC that it is clawing back four of these documents.  *Id.* ¶ 41; *id.* Ex. A.  Retrophin is withdrawing its privilege claims over the other six, which it has determined were incorrectly included in the Full Logged Set as privileged.  *Id.* ¶ 42; *see also id.* Ex. A.

Katten, acting at Shkreli's direction, and representing both Retrophin and Shkreli in the matter. Flath Supp. Dec. ¶ 3.

On September 30, 2014, Retrophin's board placed Shkreli on leave. *Id.* ¶ 4. Retrophin did not "fire" Shkreli "in violation of his employment agreement," as his counsel asserts. Apr. 26 Transcript at 3. Instead, on October 13, 2014, Shkreli agreed to resign from his role as CEO for "Good Reason," and to resign from the Board of Directors, pursuant to a settlement agreement with Retrophin in which, among other benefits, he received the right to purchase certain pharmaceutical licenses and assets for his new company. *See Id.* ¶ 5.[4]

Following Shkreli's departure, Retrophin did not make any productions to the government until the government served a second grand jury subpoena, on January 13, 2015. *Id.* ¶¶ 6-7. After conversations between the government and Retrophin's new counsel, Cooley LLP, concerning the scope of the subpoena, Retrophin began producing responsive documents on February 2, 2015.[5] *Id.* ¶ 8. Retrophin did not produce privileged material to the government except for the four inadvertently produced documents described in note 2, *supra*. *Id.* Retrophin made oral presentations to the Government on March 6, 2015, May 21, 2015, and September 11, 2015. *Id.* ¶ 13. Retrophin did not disclose or quote any privileged material during these

---

[4] Thus, Retrophin was not "uniquely incentivized" to have Shkreli criminally prosecuted because his employment agreement "provided that Retrophin could remove him from the company only in the event of a felony conviction." Mar. 27 Br. at 1 (ECF No. 174-1). Mr. Shkreli's voluntary resignation terminated his employment.

[5] Shkreli alleges that Retrophin produced MSMB emails from an email archive that required a "separate password" that Shkreli developed for MSMB to obtain access to the MSMB documents. Apr. 26 Transcript at 3. Shkreli is wrong. To the extent that Retrophin produced emails that related to MSMB or that used an msmbcapital.com email address, those emails were contained in Retrophin's email archive and were therefore within Retrophin's "custody and control." Flath Supp. Dec. ¶ 9. That single archive was created in July 2012 and Retrophin, not MSMB, paid for it. *Id.* ¶¶ 10-11. Moreover, the archive did not require a separate password to gain access to emails relating to MSMB or using the msmbcapital.com address. *Id.* ¶ 12.

-4-

presentations.  *Id.* ¶ 14.  The government served additional subpoenas on Retrophin on October 22, 2015, March 10, 2016, and January 30, 2017, and Retrophin made productions in response to those subpoenas.  *Id.* ¶ 15.

In its discussions with Retrophin's counsel following Retrophin's productions in response to the January 13, 2015 grand jury subpoena, the government stated that it intended to make a motion, under the crime-fraud exception to the attorney-client privilege, to compel production of documents relating to certain subjects under investigation over which Retrophin had asserted privilege.  *Id.* ¶ 16.  Retrophin's Waiver followed.  In July 2015, after evaluating the merits of the government's position and the company's interest in the confidentiality of the affected documents, Retrophin decided to waive its privilege with respect to the specific subjects identified by the government as subject to the crime-fraud exception.  *Id.* ¶ 17.  Shortly thereafter, Retrophin supplemented an earlier production in a civil case, in which Shkreli was a party, by producing formerly privileged documents falling within the scope of the Waiver that were responsive to the document requests in that matter.  *Id.* ¶¶ 18-19.  As a result of Shkreli subsequently suggesting that he might hold a personal privilege over some of the newly produced documents, Retrophin did not immediately produce to the government the material that was subject to the Waiver.  *Id.* ¶¶ 20-21.

Retrophin filed a civil complaint against Shkreli in the United States District Court for the Southern District of New York on August 17, 2015, alleging that he had breached his fiduciary duty and had been a faithless servant.  *Id.* ¶ 22.  Retrophin's civil complaint did not disclose or quote from any privileged materials, nor did it disclose or quote materials covered by the Waiver.  *See generally* Complaint, Ex. 4 to Shkreli's Apr. 26 Br. (ECF No. 211-4).  On August 19, 2015, Shkreli commenced a JAMS arbitration against Retrophin asserting contractual

claims.  Flath Supp. Dec. ¶ 23.  Both the federal civil case and the JAMS arbitration have been

stayed.  *Id.* ¶ 24.  Shkreli has not answered Retrophin's federal civil claims and the parties have

not commenced discovery in either proceeding.  *Id.* ¶ 25.

On September 30, 2015, Retrophin sent a letter to the government memorializing its

Waiver and specifying the discrete areas to which it applied, specifically, the allocation and

disposition of the "Fearnow" shares, the settlement agreements with MSMB investors, and the

extraordinary consulting agreements (the "September 30 Letter").  *Id.* ¶ 26 *see also* Letter from

William J. Schwartz to AUSA Winston Paes dated Sep. 30, 2015 (ECF No. 106-1).

Prior to the September 30 Letter, Retrophin had not disclosed *any* privileged information

to the government (with the exception of the four documents described in note 2, *supra*) either in

its productions, or orally.  Flath Supp. Dec. ¶¶ 14, 27, 30.  Indeed, even after sending the

September 30 Letter, Retrophin continued to withhold its production of communications covered

by the Waiver until *after* Judge Weinstein's December 2015 rulings that Shkreli did not have a

personal privilege in any of the documents.  *Id.* ¶ 27; *see also* Sealed Orders No. 1 and 2, *In re*

*Grand Jury Investigation*, E.D.N.Y. Index No. 15-MC-2227 (JBW), ECF Nos. 5 and 6.[6]

Following Judge Weinstein's ruling, Retrophin made two productions to the government

of documents covered by the Waiver.  Flath Supp. Dec. ¶ 29.  The first of these productions

occurred on December 4, 2015; the second occurred on December 6, 2016.  *Id.* ¶ 30.  All of the

documents that Retrophin produced to the government have, in turn, been produced by the

government to the defendants.  *See* Apr. 26, 2017 transcript at 18:9-10.  Retrophin has never

advertently produced any privileged materials to the government that did not fall within the

---

[6] Retrophin delivered a binder of privileged documents directly to Judge Weinstein on the
morning the motion was heard.  *See* Flath Supp. Dec. ¶ 28.

scope of the Waiver.  *Id.* ¶ 31.  Further, none of the privileged content in the Full Logged Set has been disclosed to the government or to any person or entity other than Retrophin personnel and Retrophin counsel.  *Id.* ¶ 32.[7]

In September 2016, as described in Retrophin's prior brief, Shkreli served a subpoena on Katten.  *See generally* Flath Dec. ¶ 2 (ECF No. 188).  Shkreli did not tailor the subpoena to the charges in the Indictment, but instead sought (and ultimately received under the Review Orders) all communications between himself and Katten irrespective of their underlying subject matter. *Id.* ¶¶ 7, 9.  Pursuant to the Review Orders, Retrophin logged all the documents produced by Katten over which it continued to claim privilege.  *Id.* ¶¶ 14-15.

The documents in the Full Logged Set are unrelated to the charges against Shkreli.  They concern a large number of topics involving Retrophin's business, including, among other things, commercial transactions, financings, debt offerings, corporate governance, securities filings, and employment matters.  *See generally* Retrophin, Inc.'s Privilege Log of E-mail Families to be Withheld (ECF No. 174-5); Retrophin, Inc.'s Privilege Log of Documents to be Produced with Redactions (ECF No. 174-4).

**B.      The Motion Should be Denied**

      **1.      Shkreli fails to demonstrate that upholding Retrophin's attorney-client privilege over the Full Logged Set is constitutionally unfair.**

*United States v. Weisberg*, 2011 U.S. Dist. LEXIS 37221 (E.D.N.Y. Apr. 5, 2011) is the centerpiece of Shkreli's argument that even if the documents in the Full Logged Set are

---

[7] Retrophin has also received five subpoenas from the Securities and Exchange Commission, beginning in May 2013.  Flath Supp. Dec. ¶ 33.  As with the productions to the Government, Retrophin's productions in response to the SEC subpoenas were initially handled by Katten at Shkreli's direction.  *Id.* ¶ 34.  Retrophin did not produce privileged materials to the SEC until February 5, 2016, when it produced materials within the scope of the Waiver.  *Id.* ¶ 35. Retrophin has not made any productions to the SEC since February 5, 2016.  *Id.* ¶ 36.

privileged, he should be able to use them in his defense.  Apr. 26 Br. at 5-6.  For the reasons

stated in Retrophin's prior brief on this motion, the Court should adopt the rationale of *United

States v. Wells Fargo Bank, N.A.*, 132 F.Supp.3d 558 (S.D.N.Y. 2015), not that of *Weisberg*.  *See*

Apr. 10 Mem. in Opp. at 5-6 (ECF No. 187).  *Wells Fargo* makes clear that an advice-of-counsel

defense cannot override the attorney-client privilege.  132 F.Supp.3d at *563.  Shkreli attempts

to distinguish *Wells Fargo* on the sole ground that it was a civil case, not a criminal case. But, as

the Supreme Court has noted, "there is no case authority for the proposition that the privilege

applies differently in criminal and civil cases."  *Swidler & Berlin v. United States*, 524 U.S. 399,

408-09 (1998).

Even under *Weisberg*, however, Shkreli still must show that "the evidence is so valuable

that to prohibit its admission would violate the defendant's constitutional right to present a

defense."  2011 U.S. Dist. LEXIS 37221, at *14-15.  Shkreli does not come close to satisfying

this standard with respect to the Full Logged Set, offering only his conclusory assertion that the

documents are "relevant."  Apr. 26 Br. at 1.  That bald assertion does not meet the stringent

constitutional standard set forth in *Weisberg.  See In re John Doe Corp.*, 675 F.2d 482, 489 (2d

Cir. 1982) (the privilege is an "exception to the critically important duty of citizens to disclose

relevant evidence in legal proceedings"); *see also Schatzki v.Weiser Capital Mgmt., LLC*, 2016

U.S. Dist. LEXIS 94165, at *7 (S.D.N.Y. July 18, 2016) ("Were parties entitled to any attorney-

client communication relevant to any claim or defense, the privilege would be eviscerated.").

In his earlier brief, Shkreli argued that certain subsets of documents in the Initial Logged

Set were "highly relevant" or even "critical" to his defense, pointing only to the broad

descriptions on the privilege logs. *See* Mar. 27 Br. at 17-20 (ECF No. 174-1).  Yet even in

*Weisberg*, the court quashed requests that were posed at this level of generality.  *See* 2011 U.S.

Dist. LEXIS 37221, at *24 (a request tailored based on descriptions in a privilege log "fails to meet the relevance, specificity, or admissibility requirements of Rule 17(c)").  Indeed, *Weisberg* only set aside the privilege with respect to a limited set of documents based on a substantive *ex parte* evidentiary proffer provided by the defendant, in which he set forth specific reasons why the requested documents were "necessary to his defense."  *Id.* at *25-26.  To our knowledge, Shkreli has not made any effort, *ex parte* or otherwise, to actually demonstrate which of the Initial Logged Set (let alone the Full Logged Set) are both critical to his defense and admissible. The dearth of support for Shkreli's motion is particularly glaring given that, unlike in *Weisberg*, most of the underlying documents are already in Shkreli's possession, pursuant to the Review Orders.  If Shkreli truly believed that particular documents were relevant, admissible, and critical to his defense, he could have easily explained his reasoning to the Court.  That he has not done so, speaks volumes.

      **2.**      **Retrophin is not using the privilege as a sword and a shield**.

In his initial brief, Shkreli conceded that the documents listed in the Initial Logged Set were covered by the attorney-client privilege.  *See* Mar. 27 Br. at 16-17.  Shkreli now reverses course.  Invoking the metaphor that a party may not use the privilege as both a sword and a shield, Shkreli claims that Retrophin has waived privilege not only over the Initial Logged Set, but over the Full Logged Set, by first "strategically" producing privileged documents to the government and then trying to protect them with a limited subject matter waiver.  Apr. 26 Br. at 9-10.[8]  Using a metaphor in a brief is one thing; taking poetic license with the facts is quite

---

[8] The cases cited by Shkreli show only that the privilege is construed strictly and that the proponent has the burden of establishing the elements of privilege.  *See* Apr. 26 Br. at 9-10 (citing *United States v. Mejia*, 655 F.3d 126 (2d Cir. 2011); *In re Grand Jury Proceedings,* 219 F.3d 175 (2d Cir. 2000)).  Neither of Shkreli's cases supports his sword-and-shield argument. *See Mejia*, 655 F.3d at 132-135 (no privilege because inmate knew his calls were recorded by the

another.  Shkreli falsely asserts that Retrophin first produced harmful privileged documents to the government, and then tried to "limit" its waiver by creating the subject matters in its September 30 Letter to encompass the harmful productions.  Apr. 26 Br. at 9.   The real facts are these: Retrophin did not produce *any* privileged material to the government until December 4, 2015 (after the transmission of its waiver letter and the ruling by Judge Weinstein), and never produced to the government any privileged material outside the scope of the Waiver.  None of the privileged material in the Full Logged Set falls within the scope of the Waiver; accordingly, none has been disclosed to the government or to any other third party.

Given that Retrophin has consistently adhered to its waiver, Shkreli's argument seems to boil down to the assertion that since Retrophin has waived the privilege as to some subjects, it cannot maintain the privilege as to others.  *See* Apr. 26 Br. at 10 (arguing that Retrophin has waived "in a wholesale fashion").  That is not the law.

The scope of a party's privilege waiver is governed by Rule 502 of the Federal Rules of Evidence, which provides that a "waiver extends to an undisclosed communication or information in a federal or state proceeding only if: (1) the waiver is intentional; (2) the disclosed and undisclosed communications or information concern the same subject matter; and (3) they ought in fairness to be considered together."  Fed. R. Evid. 502(a); *see also In re Symbol Techs., Inc. Sec. Litig.*, 2016 U.S. Dist. LEXIS 139200, at *16-18 (E.D.N.Y. Sep. 30, 2016).

Retrophin does not dispute that the Waiver was intentional. However, the Full Logged Set does not "concern the same subject matter" as the Waiver.  Under the plain text of Rule 502(a), a party's waiver is "limited to the subject matter of the documents for which privilege

---

Bureau of Prisons); *In re Grand Jury Proceedings*, 219 F.3d at 182-190 (considering whether disclosure of documents to the grand jury waived the privilege).

has been surrendered." *Newmarkets Partners, LLC v. Sal. Oppenheim Jr. & Cie. S.C.A.*, 258 F.R.D. 95, 110 (S.D.N.Y. 2009) (internal quotation marks and citation omitted). Furthermore, "the scope of any subject matter waiver ordinarily is quite narrow." *Swift Spindthrift Ltd. v. Alvada Ins., Inc.*, 2013 U.S. Dist. LEXIS 104296 at *15 (S.D.N.Y. July 24, 2013) (internal quotation marks and citation omitted); *see also Harbinger F&G, LLC v. OM Group (UK)*, 2013 U.S. Dist. LEXIS 132009, at *14-16 (S.D.N.Y. Aug. 22, 2013) (making clear that any intentional waiver only applied to the waived documents' subject matter and not to any other topics).

Retrophin limited its Waiver to the topics on which the government was going to seek a crime-fraud ruling, and did not attempt to preserve privilege claims over any documents from Katten's productions that were within the scope of that Waiver. The documents in the Full Logged Set are a hodgepodge of communications concerning events and transactions totally unrelated to the charges in the Superseding Indictment. There is no reason the documents in the Full Logged Set ought in fairness to be lumped together with materials falling within the circumscribed subject matters of the Waiver.

## **CONCLUSION**

Defendant Martin Shkreli's motion to compel should be denied.

Dated: New York, New York
         May 4, 2017

                                        COOLEY LLP

                                        By:   /s/William J. Schwartz
                                              William J. Schwartz
                                              Ian R. Shapiro
                                              Nicholas A. Flath
                                        1114 Avenue of the Americas
                                        New York, New York 10036
                                        Tel. (212) 479-6000
                                        Fax. (212) 479-6275

                                        *Attorneys for Non-party Retrophin, Inc.*