UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>-against-<br><br>MARTIN SHKRELI and EVAN GREEBEL,<br><br>Defendants. | No. 15-CR-00637 (KAM)<br><br>ECF Case<br><br>**SUPPLEMENTAL DECLARATION OF NICHOLAS FLATH IN OPPOSITION TO DEFENDANT SHKRELI'S MOTION TO COMPEL** |

NICHOLAS FLATH, under penalty of perjury and pursuant to 28 U.S.C. § 1746, declares:

1. I am an associate employed by the law firm Cooley LLP, counsel to Retrophin, Inc. ("Retrophin").

2. Retrophin received a grand jury subpoena from the United States Attorney's Office for the Eastern District of New York on May 14, 2014, during Martin Shkreli's tenure as chief executive officer.

3. Katten Muchin Rosenman LLP ("Katten"), acting at Shkreli's direction, and representing both Retrophin and Shkreli, made two productions in response to the subpoena, on May 23, 2014, and the second on September 15, 2014.

4. On September 30, 2014, Retrophin's board placed Shkreli on leave.

5. On October 13, 2014, Shkreli resigned his position as chief executive officer of Retrophin for "Good Reason," and also resigned as a member of Retrophin's Board of Directors, pursuant to an agreement with Retrophin which also provided, among other benefits to him, that Shkreli would have the right to purchase certain pharmaceutical licenses and assets from Retrophin for his new company.

6. Retrophin did not make any additional productions to the government until February 2, 2015.

7. The government served a second grand jury subpoena on Retrophin on January 13, 2015.

8. After conversations with the government concerning the scope of the subpoena, Retrophin, through its new counsel, Cooley LLP, began producing documents in response to this subpoena on February 2, 2015. With the exception of the four documents described *infra* at paragraph 40, none of the documents produced by Retrophin in response to the February 2, 2015 subpoena revealed privileged material.

9. Retrophin's e-mail productions to the government were drawn from its e-mail archive.

10. Retrophin's e-mail archive was created in July 2012.

11. Retrophin, not MSMB, paid the bills for the e-mail archive.

12. The e-mail archive did not require separate "passwords" to access e-mails relating to MSMB or msmbcapital.com e-mails.

13. Retrophin made oral presentations to the government on March 6, 2015, May 21, 2015, and September 11, 2015.

14. Retrophin did not disclose or quote any privileged material during its oral presentations to the government.

15. The government served additional targeted subpoenas on Retrophin on October 22, 2015, March 10, 2016, and January 30, 2017, and Retrophin made additional productions in response to these subpoenas.

16. In discussions with Retrophin's counsel following Retrophin's productions in response to the January 13, 2015 grand jury subpoena, the government stated that it intended to make a motion under the crime-fraud exception to attorney-client privilege, to compel production of documents relating to certain subjects under investigation over which Retrophin had asserted privilege.

17. In July 2015, after evaluating the merits of the government's position and the company's interest in the confidentiality of the affected documents, Retrophin waived its privilege only with respect to those specific subjects (the "Waiver").

18. Retrophin was at the time engaged in document discovery in *Donoghue v. Shkreli and Retrophin, Inc.*, S.D.N.Y. No. 14-CV-7640 (ER).

19. On July 27, 2015, Retrophin supplemented its production of documents in *Donoghue* to include formerly privileged documents within the scope of the Waiver which were responsive to the document requests in that matter.

20. After receiving this production, counsel for Shkreli in *Donoghue* advised Retrophin that Shkreli wished to assert a personal attorney-client privilege over some of the documents in question.

21. As a result of Shkreli's objection, Retrophin did not immediately produce to the government the material that was subject to the Waiver.

22. Retrophin filed a civil complaint against Shkreli in the United States District Court for the Southern District of New York on August 17, 2015, alleging that he had breached his fiduciary duty and had been a faithless servant. *See generally* Complaint, *Retrophin, Inc. v. Martin Shkreli*, S.D.N.Y. No. 15-6451 (ECF No. 1).

23. On August 19, 2015, Shkreli commenced a JAMS arbitration against Retrophin asserting contractual claims.

24. Both the federal civil case and the JAMS arbitration have been stayed.

25. Shkreli has not answered Retrophin's federal civil claims and the parties have not commenced discovery in either proceeding.

26. On September 30, 2015, Retrophin sent a letter to the government memorializing the Waiver (the "September 30 Letter"). *See* Letter from William J. Schwartz to AUSA Winston Paes dated Sep. 30, 2015 (ECF No. 106-1).

27. Retrophin withheld its production to the government of communications covered by the September 30 Waiver until after Judge Weinstein ruled that Shkreli did not have any personal privilege in the e-mails hosted in Retrophin's servers.

28. Retrophin delivered a binder of privileged materials directly to Judge Weinstein the morning the motion was heard.

29. Following Judge Weinstein's ruling, Retrophin made two productions to the government of documents within the scope of the September 30 Waiver.

30. The first of these productions occurred on December 4, 2015; the second occurred on December 6, 2016.

31. Retrophin has never advertently produced any privileged materials to the government that did not fall within the scope of the Waiver.

32. None of the privileged content in the Katten Logged Set has been disclosed to the government or any person or entity other than Retrophin personnel and Retrophin counsel.

33. Retrophin has also received five subpoenas from the Securities and Exchange Commission, beginning in May 2013.

4

34. Retrophin's productions in response to the SEC subpoenas were initially handled by Katten, acting at Shkreli's direction.

35. Retrophin did not produce privileged materials to the SEC until February 5, 2016, when it produced materials within the scope of the Waiver to the SEC.

36. Retrophin has not made any productions to the SEC since February 5, 2016.

37. Retrophin has logged as privileged a number of documents (the "Full Logged Set") that were originally produced by Katten in response to Martin Shkreli's September 28, 2016 subpoena. *See generally* Flath Dec. ¶¶ 1-15 (ECF No. 188); *see also* Retrophin, Inc.'s Privilege Log of E-mail Families to be Withheld (ECF No. 174-5); Retrophin, Inc.'s Privilege Log of Documents to be Produced with Redactions (ECF No. 174-4).

38. Retrophin has, to date, produced a total of 57,610 pages to the government and a total of 28,370 pages to the SEC. Retrophin has also produced documents to other parties, including in the AAA arbitration captioned *Thomas Koestler v. Shkreli and Retrophin*.

39. Retrophin has determined that duplicates of ten of the documents in the Full Logged Set were inadvertently previously produced in unredacted form either to the government, to the Securities and Exchange Commission, or to the parties in the AAA arbitration captioned *Thomas Koestler v. Shkreli and Retrophin*.

40. On May 2, 2017, Retrophin advised the government and the SEC that it was clawing back four of these ten documents which had been produced to the government and the SEC.

41. Retrophin is withdrawing its privilege claim over the other six documents, which it has determined were incorrectly denominated as privileged, and which had been produced either in the *Koestler* arbitration, or to the government and the SEC.

42. A summary of these ten documents is attached hereto as Exhibit A.

I declare under penalty of perjury that the foregoing is true and correct.

Executed: New York, New York
      May 4, 2017

                                    /s/ Nicholas Flath
                                    Nicholas Flath