```
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------X
```

UNITED STATES OF AMERICA,

        **MEMORANDUM AND ORDER**

    - against -

EVAN GREEBEL,        15-CR-637 (KAM)

        Defendant.

```
-----------------------------------------X
```
**MATSUMOTO, United States District Judge:**

    Before the court is defendant Evan Greebel's motion to strike language from paragraph seven of the Superseding Indictment and to dismiss Count Eight of the Superseding Indictment. (Memorandum of Law in Support of Motion to Strike Surplusage and to Dismiss Count Eight of the Superseding Indictment ("Mot."), ECF No. 178.)

    **I.  Motion to Strike**

    The disputed language appears in the first sentence of paragraph seven of the Superseding Indictment, and is italicized below:

> "In or about and between September 2009 and September 2014, the defendant MARTIN SHKRELI, together with *the defendant EVAN GREEBEL and* others, orchestrated four interrelated fraud schemes:"

(Superseding Indictment, ECF No. 60 at ¶ 7 (emphasis added.)) Mr. Greebel moves to strike the quoted language, or in the alternative the italicized phrase. (Mot. at 6).

Mr. Greebel asserts that this language is prejudicial because it implies that Mr. Greebel played a role in orchestrating all four schemes described in the Superseding Indictment. (*Id.* at 3-4.) Mr. Greebel contrasts the language in paragraph seven with the specific charges against him, which allege that he was involved in orchestrating two specific schemes in Count Seven (the "Retrophin Misappropriation Scheme") and Count Eight (the "Unrestricted Shares Scheme"). (*Id.* (citing Superseding Indictment ¶¶ 21-40.)) He also argues that the language of paragraph seven would permit the government to "enlarge" the charges against him by implicating him in the other schemes described in the Superseding Indictment. (*Id.* at 6.)

The government has opposed Mr. Greebel's motion, arguing that, when "[r]ead in context, it is clear that the government is not alleging . . . that [Mr. Greebel] orchestrated all four interrelated schemes" and that the purpose of the language is to show that Mr. Shkreli "orchestrated those schemes variously with others, including [Mr.] Greebel . . . ." (Memorandum of Law in Response to the Defendant's Remaining Substantive Motions ("Opp. Br."), ECF No. 189 at 37.) The government also denies that it would cite this section of the Superseding Indictment at trial to argue that Mr. Greebel was involved in all four schemes, and has agreed to strike the

2

phrase "the defendant EVAN GREEBEL and" from the first sentence of paragraph seven of the Superseding Indictment and to make appropriate redactions should the court choose to send the Superseding Indictment to the jury during deliberations.  (*Id.* at 37-38; Transcript of May 15, 2017 Oral Argument ("Tr.") at 6:15-20.)

**A.   Legal Standard**

"Upon the defendant's motion, the court may strike surplusage from the indictment or information."  Fed. R. Crim. P. 7(d).  "This rule introduces a means of protecting the defendant against immaterial or irrelevant allegations in an indictment or information, which may, however, be prejudicial." Fed. R. Crim. P. 7(d) advisory committee's note.

Motions to strike surplusage are "rarely granted," *United States v. Coffey*, 361 F. Supp. 2d 102, 123 (E.D.N.Y. 2005); *see United States v. Gotti*, 42 F. Supp. 2d 252, 292 (S.D.N.Y. 1999), but are granted "where the challenged allegations are not relevant to the crime charged and are inflammatory and prejudicial," *United States v. Scarpa*, 913 F.2d 993, 1013 (2d Cir. 1990) (quotation marks and citations omitted); *see also United States v. Hedgepeth*, 434 F.3d 609, 612-13 (3d Cir. 2006) (collecting cases from other circuits

applying a "conjunctive" test requiring that the allegation be both irrelevant and prejudicial).[1]

**B. Analysis**

The government claims that "it is clear that [it] is not alleging . . . in paragraph seven relating to Greebel that he orchestrated all four interrelated schemes" and that the intent of this paragraph is to "illustrate[] that Shkreli . . . did not orchestrate those schemes in a vacuum." (Opp. Br. at 37.)  The court disagrees.

Notably, the government's language in paragraph seven plainly states that Mr. Shkreli, "together with the defendant EVAN GREEBEL . . . orchestrated four interrelated fraud schemes," but Mr. Greebel is charged in two fraud schemes as reflected in Counts Seven and Eight.  Although the charging language in Counts One through Six names only Mr. Shkreli, and Counts Seven and Eight name both Mr. Shkreli and Mr. Greebel, a plain reading of the disputed language in paragraph seven states that Mr. Greebel orchestrated four interrelated fraud schemes together with Mr. Shkreli and others.

---

[1] The Second Circuit has recognized, in *dicta*, a distinction between surplusage in the "charging" paragraphs and the "means" paragraphs of an indictment, noting that surplusage in a charging paragraphs impermissibly broadens the charges considered by the grand jury.  *United States v. Kassir*, No. S2 04 CR. 356 (JFK), 2009 WL 995139, at *3 (S.D.N.Y. Apr. 9, 2009) (describing *United States v. Caine*, 441 F.2d 454, 456 (2d Cir. 1971)).  Where the means paragraphs are included by reference in the charging paragraphs, they can be "characterized as a charging paragraph."  *United States v. Mango*, No. 96-CR-327, 1997 WL 222367, at *16 (N.D.N.Y. May 1, 1997).

4

The court does not agree that it is clear from paragraph seven that Mr. Greebel is not alleged to have "orchestrated all four interrelated schemes." (Opp. Br. at 37.) The phrase in paragraph seven that "the defendant Martin Shkreli, together with the defendant Evan Greebel and others, orchestrated four interrelated fraudulent schemes" risks an improper inference that Mr. Greebel was involved in orchestrating all four schemes,[2] conduct beyond the two allegedly fraudulent schemes charged by the grand jury in the Superseding Indictment. (Opp. Br. at 37; Tr. at 27:4-7 ("We are not alleging that Mr. Greebel orchestrated those two schemes with Mr. Shkreli . . . .")) An unsupported and apparently unintentional allegation that Mr. Greebel was involved in orchestrating all four schemes broadens the actual charges against him, and creates a significant risk of jury confusion and prejudice. *See Kassir*, 2009 WL 995139, at *4 (with consent of the government, striking as impermissible "broadening language" the phrase "among other things" from an indictment alleging the defendant was "operating numerous websites which contained, *among other things*, terrorist materials.") (internal citations omitted); *Mango*, 1997 WL 222367, at *16 (striking the phrases "among others" and "among other things" from the

---

[2] To "orchestrate" is to "arrange, develop, organize, or combine so as to achieve a desired . . . effect." Webster's Third New International Dictionary 1587 (2002).

5

indictment's description of certain legal requirements); *United States v. Booth*, No. 99 CR 378 LBS, 1999 WL 1192317, at *12 (S.D.N.Y. Dec. 14, 1999) (striking, with government's consent, language inconsistent with the government's theory of the case); *United States v. DeFabritus*, 605 F. Supp. 1538, 1547 (S.D.N.Y. 1985) (striking the phrase "among other things" when used in a list of allegedly illegitimate expenditures); *United States v. DePalma*, 461 F. Supp. 778, 799-800 (S.D.N.Y. 1978) (striking the phrase "and other activities" when it could be construed as a "broad allegation" which "adds nothing to the charges . . . and creates the danger that the prosecutor at trial may impermissibly enlarge the charges.").

The cases the government cites in opposition to Mr. Greebel's motion to strike are not persuasive because they stand for the proposition that courts should not strike potentially prejudicial language in an indictment if the challenged language is relevant to the charges against a defendant. In *Scarpa*, for example, the defendants moved to strike a reference in the indictment to a well-known criminal organization, but the Second Circuit found that this reference provided important background for the charges and was later supported by evidence at trial. 913 F.2d at 1013. *See also Coffey*, 361 F. Supp. 2d at 123 (denying a motion to strike a reference to a criminal organization because the charged

6

conspiracy "allegedly occurred by virtue of defendants' relationships" with that organization). In contrast, in this case, the challenged language states that Mr. Greebel is charged with "orchestrating" all four of the four schemes, including the two MSMB schemes, with which Mr. Greebel has not been charged.

The Government has already offered to strike the offending phrase, and make appropriate redactions, in the version of the Superseding Indictment sent to the jury during deliberations "to avoid any need for further litigation on this inconsequential issue." (Opp. Br. at 38 n. 12). To avoid confusion during any stage of the trial, the court grants Mr. Greebel's motion to strike the phrase "the defendant Evan Greebel and" from the first sentence of paragraph seven of the Superseding Indictment.

## II. Motion to Dismiss

Count Eight charges Mr. Shkreli and Mr. Greebel with conspiracy to commit securities fraud. (Superseding Indictment ¶ 57-59.) Mr. Greebel argues that Count Eight does not identify the unlawful objective of the conspiracy, and that Count Eight is therefore so unclear that Mr. Greebel cannot prepare a defense. (Mot. at 12.) The government opposes the motion, arguing that the Superseding Indictment is clear that the unlawful objective of the conspiracy alleged in Count Eight was securities fraud, by use of manipulative, deceitful, and

7

fraudulent means "to control the price and trading of Retrophin stock." (Opp. at 42.)

**A.   Legal Standard**

"The Supreme Court has 'identified two constitutional requirements for an indictment: first, [that it] contains the elements of the offense charged and fairly informs a defendant of the charge against which he must defend, and, second, [that it] enables him to plead an acquittal or conviction in bar of future prosecutions for the same offense.'" *United States v. Lee*, 833 F.3d 56, 69 (2d Cir. 2016) (quoting *United States v. Resendiz-Ponce*, 549 U.S. 102, 108 (2007)). *See also United States v. Stringer*, 730 F.3d 120, 123-24 (2d Cir. 2013); Fed. R. Crim. Proc. 7(c)(1) (an indictment "must be a plain, concise, and definite written statement of the essential facts constituting the offense charged").

The Second Circuit has "held that to satisfy the pleading requirements of Rule 7(c)(1), an indictment need do little more than to track the language of the statute charged and state the time and place (in approximate terms) of the alleged crime.  An indictment need not be perfect, and common sense and reason are more important than technicalities." *Stringer*, 730 F.3d at 124 (internal quotation marks and citations omitted).  However, "[w]here, as here, the indictment charges a conspiracy under the 'offense' clause of the

8

conspiracy statute, the conspirators must have agreed to commit the same offense to satisfy the rule that they have agreed on the essential nature of the plan." *United States v. Stavroulakis*, 952 F.2d 686, 690-91 (2d Cir. 1992) (citing *United States v. Rosenblatt,* 554 F.2d 36, 41 (2d Cir. 1977) (discussing 18 U.S.C. § 371, under which Mr. Greebel is charged).[3]

"An indictment does not . . . have to specify evidence or details of how the offense was committed.  That is because the validity of an indictment is tested by its allegations, not by whether the Government can prove its case.  When considering a motion to dismiss, the Court must treat the indictment's allegations as true." *United States v. Wey*, No. 15-CR-611 (AJN), 2017 WL 237651, at *10 (S.D.N.Y. Jan. 18, 2017) (internal quotation marks and citations omitted).

**B.   Analysis**

Count Eight of the Superseding Indictment charges the defendants with conspiracy to commit securities fraud, predicated on the conspiracy to "commit any offense against the United States" clause of 18 U.S.C. § 371, and 15 U.S.C. §§ 78j(b) and 78ff.  Count Eight of the Superseding Indictment, however, alleges more than the language of Section 371 of Title

---

[3] "If two or more persons conspire either to commit any offense against the United States . . . and one or more of such persons do any act to effect the object of the conspiracy, each shall be fined under this title or imprisoned not more than five years, or both."  18 U.S.C. § 371.

9

18, and Sections 78j(b) and 78ff of Title 15.  The charging paragraphs of Count Eight specify that defendants knowingly and willfully conspired to "use and employ manipulative and deceptive devices and contrivances" in violation of Securities and Exchange Commission Rule 10b-5, 17 C.F.R. § 240.10b-5, promulgated under Section 10(b) of the Securities Exchange Act of 1934, 15 U.S.C. § 78j(b).  (Superseding Indictment ¶ 58.)  The Superseding Indictment then tracks the language of Rule 10b-5, specifying that victims of the alleged "fraud and deceit" were "investors and potential investors in Retrophin, in connection with the purchase and sale of securities of Retrophin . . . ."  (*Id.*)

In addition, the Superseding Indictment realleges and incorporates the detailed factual allegations of paragraphs 1-40 into its eight charging paragraphs, thereby providing an amplified description of the alleged conspiracy.  Thus, paragraphs 1-40, which include paragraphs 36-40 describing the so-called "Unrestricted Shares Scheme," must be read in conjunction with the charging paragraphs of Count Eight.  The securities fraud conspiracy with which Mr. Shkreli and Mr. Greebel are charged incorporates, *inter alia,* paragraphs 37 and 38, which specifically allege that the "fraudulent objective" of the Unrestricted Shares Scheme was to enable Mr. Shkreli to "exercise control over the price and trading of

10

Retrophin's stock" through manipulation and control of the ownership of what should have been free-trading or unrestricted shares. (Superseding Indictment ¶¶ 37-38.) When the allegations of the preceding paragraphs are read in combination with the charging paragraphs, the indictment alleges more than sufficient detail to survive a motion to dismiss. *United States v. Heredia*, No. 02 CR 1246 (SWK), 2003 WL 21524008, at *3 (S.D.N.Y. July 3, 2003) (indictment charging conspiracy to commit securities fraud under Section 371 sufficient when it tracks the language of the securities fraud statute and "contains extensive factual allegations" about defendant's agreement and involvement in the conspiracy); *United States v. Hanna*, 198 F. Supp. 2d 236, 243 (E.D.N.Y. 2002) (indictment including charges of conspiracy to commit securities fraud under Section 371 sufficient where the indictment tracked the language of the statute and provided approximate "dates and places . . . of the alleged crimes"). The Superseding Indictment sufficiently alleges that Mr. Greebel knowingly and willfully agreed to assist Mr. Shkreli to fraudulently gain and conceal control of unrestricted Retrophin shares, through manipulative, deceptive, and fraudulent means, in violation of Securities Exchange Act Section 10(b) and its implementing rule, Rule 10b-5.

Mr. Greebel argues that the Superseding Indictment does not clearly state the objective of the conspiracy, and that there is a "lack of clarity" regarding the nature of the conspiratorial agreement.  (Mot. at 10).  For example, he argues that if the alleged object of the conspiracy was a plan "to settle liabilities owed by the MSMB Funds and Shkreli" by using unrestricted Retrophin shares to compensate "defrauded investors" in the MSMB funds, the count should be dismissed as to Mr. Greebel because "[t]here is no allegation, nor . . . evidence . . . that Mr. Greebel was aware of such an objective."  (*Id.* at 11-12 (citing Superseding Indictment ¶ 39.))

The allegations of the Superseding Indictment are clear, however, that using the unrestricted shares "to settle liabilities owed by the MSMB Funds and Shkreli" was not the object of the conspiracy, but was instead an example of how Mr. Shkreli, allegedly acting in concert with Mr. Greebel, fraudulently exercised control over the unrestricted shares.  For example, the Superseding Indictment alleges that one of the overt acts in furtherance of the conspiracy charged in Count Eight was a March 2013 email conversation between Mr. Shkreli and Mr. Greebel regarding the use of unrestricted shares under Mr. Shkreli's control "to settle a dispute with a defrauded MSMB Healthcare investor."  (Superseding Indictment ¶ 59(k).)

12

*United States v. Rosenblatt*, which Mr. Greebel cites, does not support his motion to dismiss Count Eight. In *Rosenblatt*, the defect in the indictment was that the government charged both conspirators with a violation of the general conspiracy statute, 18 United States Code Section 371, but – as the government stipulated in that case – the defendant-appellant was misled by his co-defendant as to the substantive crime they were agreeing to commit. *See* 554 F.2d at 38-39 (explaining that the defendants "agreed to defraud the United States, but neither agreed on the type of fraud"). Here, the government has not so stipulated, and instead charges both defendants with conspiracy to commit securities fraud.

Mr. Greebel further argues that "the government should plead additional facts" to allege a violation under Section 10(b), (Mot. at 10), and that the Superseding Indictment does not sufficiently allege why the defendants' acts of "exercising control over the price and trading of Retrophin stock" was fraudulent. (Reply Memorandum of Law in Further Support of Motion to Strike Surplusage and to Dismiss Count Eight of the Superseding Indictment ("Reply Br."), ECF No. 193 at 8-9.)

Mr. Greebel's arguments are not persuasive. The fraudulent nature of the scheme is clearly alleged: the defendants are charged not simply with "exercising control over the price and trading" of securities, but with concealing that

13

control, through active misrepresentation, manipulations, and the failure to report this control as required by Rule 13d-1. *See Wey*, 2017 WL 237651, at *8 (concluding that allegations of, *inter alia*, "substantial affirmative conduct designed to . . . circumvent Rule 13d-1's reporting requirements," including structuring holdings to avoid disclosure thresholds, was sufficient to state a violation of Section 10(b)).

Furthermore, the actions alleged are sufficient to state violations of Rule 10b-5. Rule 10b-5 provides in pertinent part that:

> It shall be unlawful for any person, directly or indirectly . . .
>
> (a) To employ any device, scheme, or artifice to defraud,
>
> (b) To make any untrue statement of a material fact or to omit to state a material fact . . . or
>
> (c) To engage in any act, practice, or course of business which operates or would operate as a fraud or deceit upon any person,
>
> in connection with the purchase or sale of any security.

17 C.F.R. § 240.10b-5. These "three prongs" of Rule 10b-5 "are disjunctive . . . such that the government can obtain a conviction by proving any one of them." *Wey*, 2017 WL 237651, at *6 (citation omitted). Section 10b and Rule 10b-5 are to be interpreted "flexibly and broadly, rather than technically or

14

restrictively." *VanCook v. SEC*, 653 F.3d 130, 138 (2d Cir. 2011) (quoting *SEC v. Zandford*, 535 U.S. 813, 819 (2002)); *see United States v. Russo*, 74 F.3d 1383, 1390 (2d Cir. 1996) ("The Supreme Court has interpreted Section 10(b) and Rule 10b-5 expansively in accordance with congressional intent to minimize fraud in securities trading."). Here, the indictment clearly alleges, *inter alia*, that the defendants represented that certain Retrophin employees were no longer employees and arranged for them to purchase "the entirety of Retrophin's unrestricted or free trading shares" "for a nominal amount," divided the ownership to fall below the reporting thresholds of Rule 13d-1, made false claims about Mr. Shkreli's ownership and control on a December 20, 2012 Retrophin Schedule 13D filing, and falsely backdated an investment by MSMB Capital into Retrophin. (Superseding Indictment ¶¶ 36-40.)

The foregoing allegations are more than sufficient detail to inform Mr. Greebel of the charges against him. *See Wey*, 2017 WL 237651, at *8; *United States v. Heredia*, No. 02-CR-1246, 2003 WL 21524008, at *3 (S.D.N.Y. Jul. 3, 2003) (denying motion to dismiss a charge of conspiracy to commit securities fraud where the indictment alleged, *inter alia*, "a scheme to manipulate the price and volume" of a publicly-traded security); *United States v. Royer*, 549 F.3d 886, 900 (2d Cir. 2008) (upholding a conviction for securities fraud where the

15

defendants attempted to "artificially affect the prices of various securities"); *United States v. Ashley*, 905 F. Supp. 1146, 1153-54 (E.D.N.Y. 1995) (denying motion to strike a count of conspiracy to commit wire fraud under Section 371 which tracked the language of the wire fraud statute and provided "the time and place of the alleged crime").

Mr. Greebel attempts to challenge the sufficiency of the complaint by proffering potentially legitimate justifications for certain of the allegations in the Superseding Indictment. With reference to ¶ 39 of the Superseding Indictment, which alleges that Mr. Shkreli and Mr. Greebel "prevented . . . employees . . . from selling their unrestricted or free trading shares," Mr. Greebel argues that preventing the recipients of Fearnow shares from trading would not be unlawful if, as corporate insiders, those recipients had material, nonpublic information.[4] (Reply Br. at 8.) Mr. Greebel separately asserts that Mr. Shkreli had other, criminal, reasons for engaging in the charged conduct, about which Mr. Greebel was unaware at the time. (Reply Br. at 7).

At trial, Mr. Greebel may seek to introduce evidence of alternative explanations for the conduct alleged in the

---

[4] Mr. Greebel also argues that "parking" of Retrophin shares was not *per se* illegal, citing to *Russo*, 74 F.3d at 1383. (Mot. at 12; Reply Br. at 9). *Russo* is particularly inapposite. In that case, the Second Circuit held that "parking" was a business term that did not require a definition for the jury, and upheld the appealed conviction. *Id.* at 1393-94. The Superseding Indictment does not use the term "parking."

16

Superseding Indictment.  On a motion to dismiss, however, the court must accept as true all allegations in the Superseding Indictment.  *Wey*, 2017 WL 237651, at *10 (citing *United States v. Goldberg*, 756 F.2d 949, 950 (2d Cir. 1985)).  Count Eight of the Superseding Indictment sufficiently alleges a conspiracy to commit securities fraud, and Mr. Greebel's role in that conspiracy.

## CONCLUSION

For the foregoing reasons, Mr. Greebel's motion to strike specific language from paragraph seven of the Superseding Indictment is **GRANTED**.  Specifically, the phrase "the defendant EVAN GREEBEL and" is stricken from paragraph seven of the Superseding Indictment.  Mr. Greebel's motion to dismiss Count Eight of the Superseding Indictment is **DENIED**.

**SO ORDERED.**

Dated:    August 4, 2017
          Brooklyn, New York

                                        /s/
                              Hon. Kiyo A. Matsumoto
                              United States District Judge

17