# EXHIBIT D

**EXHIBIT A**

## AMERICAN ARBITRATION ASSOCIATION

**In the Matter of the Arbitration between:**

| | | |
|---|---|---|
| Thomas Koestler, | ) | |
| | ) | Case No. 01-15-000-42488 |
| Claimant, | ) | |
| vs. | ) | |
| | ) | |
| Retrophin, LLC and Retrophin, Inc. and Martin Shkreli, | ) | |
| | ) | |
| Respondents. | ) | |

## FINAL AWARD

The undersigned Arbitrator, having been designated in accordance with the arbitration agreement contained in a Founders' Agreement, dated March 31, 2011 (the "Founders' Agreement"), which was incorporated by reference into a Retrophin LLC Transfer and Donee Representation Letter, entered into by the parties in or about April 2012 (the "Transfer Agreement"), and having been duly sworn; and having duly heard the proofs and allegations of Claimant, represented by Park Jensen Bennett, LLP (Steven C. Bennett, Christopher Greer), Respondent Martin Shkreli, represented by Reitler Kailas & Rosenblatt (Jocelyn L. Jacobson, Julie Vlodinguer) and Respondents Retrophin, LLC and Retrophin, Inc., represented by Cooley LLP (Celia Goldwag Barenholtz, Ian Shapiro, Kevin Mead, Zachary Baron Shemtob); and a Hearing having been held; do hereby decide as follows.

Procedural Background

Koestler filed a Statement of Claim, dated July 15, 2015, in which he asserted claims for (I) breach of contract, (II) breach of good faith/fair dealing, (III) quantum meruit,

(IV) disgorgement, (V) unjust enrichment, (VI) Constructive trust, and (VII) agency.[1]

Respondents Retrophin LLC and Retrophin, Inc. (collectively "Retrophin") submitted its Answer and Cross-Claims, dated August 17, 2015, in which it denied the material allegations set forth in the Statement of Claim and asserted a cross-claim against Respondent Shkreli for breach of fiduciary duty. Respondent Martin Shkreli ("Shkreli") submitted a Response to Statement of Claim, dated August 17, 2015, in which he denied the material allegations set forth in the Statement of Claim. He submitted a Response to Cross-Claim of Retrophin, dated September 8, 2015. He further submitted a motion to dismiss the cross-claim, which was denied.

An evidentiary hearing was held before the Arbitrator on June 13, 14 and 15, 2016. Post-hearing submissions were submitted to the Arbitrator by counsel for the parties and the arbitration was formally closed on July 27, 2016.

Koestler's Claims

Koestler alleges that he was engaged by Shkreli and Retrophin to perform consulting services. Although the extent of the consulting services Koester provided and the value of such services were challenged at the Hearing, the evidence established that Koestler provided significant and meaningful services, more than just protecting his investment.

On or after April 16, 2012, Koestler and Shkreli entered into the Transfer Agreement, pursuant to which Shkreli agreed to transfer 35,000 Class A Common Units of Retrophin stock to Koestler -- 30,000 for Koestler's consulting services and 5,000 to reduce by half the purchase price for certain Retrophin shares that Koestler had previously acquired (the "35,000 Shares").

---

[1] Retrophin claims that Koestler, in his pre-hearing brief, raised additional claims. For reasons set forth in this Award, such claims need not be addressed herein.

- 2 -

4823-5923-8965/1

Cl. Ex. 123.[2] The Transfer Agreement did not include a date by which the 35,000 Shares had to be transferred.

On its face, the Transfer Agreement was between Koestler and Shkreli, ("Martin Shkreli (the "Transferor"), does hereby grant…"). Shkreli repeatedly affirmed in writing his obligation to transfer his personal shares to Koestler. Cl. Exs. 142, 154, 156, 158, 176, 178, 194; Retro. Exs. 21, 69. Although the Transfer Agreement was "agreed and accepted" by Shkreli on behalf of Retrophin LLC, it is clear that the obligation to transfer the 35,000 Shares to Koestler was assumed by Shkreli personally. The Transfer Agreement did not impose any obligation on Retrophin.

Shkreli's only defense to Koestler's claim is that Koestler failed to sign an "adoption agreement" pursuant to Section 5.1 of the Founders' Agreement. Shkreli argues that signing the adoption agreement was a condition precedent and that, due to such failure, the Transfer Agreement never became effective.[3] However, the Transfer Agreement already bound Koestler to the terms of the Founders' Agreement and the Amended and Restated Limited Liability Company Agreement, dated June 30, 2011 (the "LLC Agreement"). Therefore, the failure to sign an adoption agreement was immaterial and does not constitute sufficient grounds for avoiding the Transfer Agreement.[4]

Accordingly, Shkreli was obligated to deliver to Koestler the 35,000 Shares. Due to a 5 to 1 split pursuant to a reverse merger that occurred during or about December 12-18, 2012,

---

[2] Koestler also invested in Retrophin, in exchange for which he received 15,650 Class A Common Units of Retrophin stock.

[3] Evidence was submitted at the Hearing regarding whether Koestler even received the subscription agreement for signing. For reasons set forth in this Award, such issue need not be addressed herein.

[4] Shkreli also expressed his willingness to waive the requirement that Koestler sign an adoption agreement. Retro. Ex. 67.

Shkreli became obligated to deliver 155,000 Class A common units of Retrophin to Koestler (the "155,000 Shares").

Retrophin's Cross-Claim against Shkreli

Retrophin asserted a cross-claim against Shkreli, alleging breaching of fiduciary duty. As clarified by Retrophin during the Hearing, the cross-claim is based on allegations that Shkreli (1) attempted to consummate a "sham" consulting agreement with Koestler in an effort to transfer to Retrophin his personal obligation to transfer the 155,000 Shares to Koestler; and (2) reneged on his obligation to transfer the 35,000 Shares and, thereafter, the 155,000 Shares to Koestler.

Authority for this arbitration arises out of the arbitration clause in the Founders' Agreement and LLC Agreement. By virtue of the reverse merger during December 12-18, 2012, Retrophin became a corporation and the Founders' Agreement and LLC Agreement were no longer effective. Therefore, jurisdiction in this arbitration extends only through December 18, 2012. To the extent that Shkreli may have breached his fiduciary duty to Retrophin subsequent to December 18, 2012, such breach cannot properly be addressed in this arbitration.

The idea of entering into a written consulting agreement was not raised until 2013. Cl. Ex. 155. Moreover, since the proposed consulting agreement was never consummated, no damages resulted therefrom. Regarding Shkreli's breach of the Transfer Agreement, the evidence established that Shkreli reneged on his obligations under the Transfer Agreement during late November 2012 and thereafter. Retro. Ex. 37; Cl. Exs. 132, 151; Shk. Ex. 104. Koestler testified that it was not until January 2013 that Shkreli reneged on his promise to transfer the 155,000 Shares.

Koestler's primary claims against both Shkreli and Retrophin arise out of their alleged breach of an oral agreement and the Transfer Agreement. Koestler argued that Retrophin was the beneficiary of his consulting services and bound by the Transfer Agreement because Shkreli signed it on behalf of Retrophin as its Chief Executive Officer. Since Retrophin was included as a party to this arbitration based on such alleged breaches, Retrophin's attorney's fees would not have been avoided in the absence of Shkreli's breach of fiduciary duty.

Accordingly, the cross-claim is dismissed, without prejudice to Retrophin's right to assert its breach of fiduciary duty claims against Shkreli as affirmative claims and/or defenses in the appropriate forum.

Damages

Koestler seeks the delivery of the 155,000 Shares or, in the alternative, damages corresponding to the value of the 155,000 Shares.

It was not disputed that the 35,000 Shares were illiquid prior to the reverse merger since there was no public market for Retrophin stock. In addition, it was established that Koestler was not permitted to sell the 155,000 Shares for one year following the reverse merger. Koestler testified that he sold the Retrophin shares that he previously received between May 2014 and March 2015 at an average price of $15-16 per share. Accordingly, if the 155,000 Shares are not delivered by Shkreli to Koestler by August 31, 2016, then Shkreli shall be indebted to Koestler for the principal amount of $2,325,000 ($15 x 155,000 Shares).

The parties agree that the applicable interest rate for the period of time following the reverse merger is governed by Delaware law. Therefore, the interest rate of 6.5%, compounded as required under Delaware law, shall apply and interest on $2,325,000 shall accrue from April 1, 2015.

4823-5923-8965/1

Award

Shkreli shall deliver to Koestler the 155,000 Shares by August 31, 2016. In the absence of such delivery by such date, Shkreli shall pay Koestler the principal amount of $2,325,000, plus interest calculated thereon from April 1, 2015.

Administrative Costs and Arbitrator Fees

The Administrative fees and expenses of the AAA totaling $16,170 are to be borne by Shkreli. The Compensation and expenses of the Arbitrator totaling $29,975.00 are to be borne by Shkreli. Therefore, Shkreli shall pay Koestler an amount of $26,161.69 and Retrophin, LLC an amount of $9,991.67, no later than August 31, 2016.

Attorney's Fees

Section 5.15 of the Founders Agreement, which provides for the arbitration of disputes, does not provide for an award of attorney's fees. Accordingly, each party shall bear his/its own attorney's fees and related expenses.

This Final Award is in full settlement of all claims, including cross-claims, submitted to this Arbitration. All claims not expressly granted herein are hereby denied.

Dated: August 3, 2016

_____
David C. Singer, Arbitrator

4823-5923-8965/1