UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>-against-<br><br>EVAN GREEBEL,<br><br>                       *Defendant.* | ECF Case<br><br>No. 15-cr-00637 (KAM)<br><br>ORAL ARGUMENT REQUESTED |

**MR. GREEBEL'S MOTION *IN LIMINE* TO PRECLUDE THE GOVERNMENT FROM ASSERTING THAT MR. SHKRELI WAS PERSONALLY LIABLE TO MSMB INVESTORS FOR ALLEGED LOSSES WHEN, IN FACT, THE PRIVATE PLACEMENT MEMORANDA GOVERNING THE INVESTMENTS EXPRESSLY STATED OTHERWISE**

# I.  ARGUMENT

Since the original indictment in this case in December 2015 up through and *until* the government's rebuttal summation in the trial of *United States v. Martin Shkreli*, the government asserted incorrectly—as a matter of contract law—that Mr. Shkreli was personally liable for losses by MSMB Capital Management LP ("MSMB Capital") and MSMB Healthcare LP ("MSMB Healthcare") (collectively "MSMB Funds").  Because the private offering memoranda ("PPMs") governing MSMB Capital and MSMB Healthcare expressly stated that Mr. Shkreli was not personally liable, the government should be precluded from asserting otherwise during Mr. Greebel's trial.  Any assertion that Mr. Shkreli was personally liable would contradict the PPMs and have no probative value other than to mislead and confuse the jury in violation of Federal Rules of Evidence 401 and 403.  Indeed, it was during the government's rebuttal summation that the government acknowledged that Mr. Shkreli was not personally liable for losses suffered by investors in the MSMB Funds according to the PPMs.

The PPMs at issue expressly limited liability to the respective General Partners (MSMB Investors LLC and MSMB Healthcare Investors LLC) and the Advisors (MSMB Capital Management LLC and MSMB Healthcare LLC) of the MSMB Funds.  In addition, the PPMs stated that, because the General Partners and Advisors are organized as *limited liability companies*, they "do not generally have individual liability for its debts and obligations, except as may be specifically provided by law":

> **Exculpation of the General Partner, the Advisor and the Portfolio Manager**
>
> The General Partner and the Advisor, as fiduciaries, will have a responsibility to the Limited Partners to exercise good faith and fairness in all dealings affecting the Partnership.  However, the Partnership has agreed, in the Partnership Agreement, to indemnify and exculpate the General Partner, the Advisor and their respective members, managers, employees and agents (including, without

2

> limitation, the Portfolio Manager), from any liability for losses, damages or expenses resulting from their respective status as General Partner and Advisor or their acts or omissions, the Partnership's business, or their management of the Partnership's affairs, unless gross negligence, willful misconduct or willful breach of the Partnership Agreement on the part of the General Partner, the Advisor or such other parties is involved.  ***In addition, both the General Partner and Advisor are organized as a limited liability company.  Members of a limited liability company do not generally have individual liability for its debts and obligations, except as may be specifically provided by law.***  In the opinion of the SEC, indemnification for liabilities arising under the securities laws is against public policy and is therefore unenforceable. Certain state securities commissions may also limit or prohibit indemnification for securities laws liabilities.

*See* Ex. A, MSMB Capital Management Sept. 10, 2009 POM, R041786 at R041813-4 (emphasis added) (hereinafter "Limited Liability Language"); *see also* Ex. B, MSMB Healthcare January 1, 2011 POM, R032625 at R032652 (same).

Indeed, the Delaware Limited Liability Company Act states that "the debts, obligations and liabilities of a limited liability company, whether arising in contract, tort or otherwise, shall be solely the debts, obligations and liabilities of the limited liability company, and no member or manager of a limited liability company shall be obligated personally for any such debt, obligation or liability of the limited liability company solely by reason of being a member or acting as a manager of the limited liability company." Del. Code Ann. tit. 6, § 18-303; *Thomas v. Hobbs*, No. C.A. 04C-02-010 RFS, 2005 WL 1653947, at *2 (Del. Super. Ct. Apr. 27, 2005) ("As with a corporation, a member of a limited liability company may not be held liable for the debts, obligations and liabilities of the company.").

During the Shkreli trial, it was undisputed that the PPMs governed the terms of the investments of the MSMB investors and thus limited the liability of the General Partner and Advisor limited liability companies.  *See, e.g.*, Shkreli Trial Tr. 3294:10-25 to 3295:1-11 (David

Geller testified that he relied on the Limited Liability Language in the October 28, 2011 PPM); Shkreli Trial Tr. 935:10-14 (Sarah Hassan explaining that "the PPM, wiring instructions, and investor questionnaire" were among the "materials that were sent [her] to review prior to investing in MSMB Capital"); *id.* 1935:25-1936:3 (Lindsey Rosenwald explaining that the PPM is "something that discloses all the risk factors, discloses the business description, the people behind it; everything that should be pertinent to that investment").

Indeed, during its rebuttal summation, the government acknowledged for the first time that Mr. Shkreli "couldn't be sued [by the MSMB Capital investors], according to the PPM." Shkreli Trial Tr. 5504:24-25.  The government's admission stands in sharp contrast to the erroneous allegations from the original indictment through the government's main summation at trial during which the government alleged incorrectly that Mr. Shkreli and Mr. Greebel engaged in "a scheme to defraud Retrophin . . . in an effort to satisfy **Shkreli's personal** and unrelated professional **debts and obligations**."  Superseding Indictment, Dkt. 60 at 4 (emphasis added); *see also* government's Opening Statement, Shkreli Trial Tr. 858:9-13 ("[s]tealing cash and stock from Retrophin to pay off the defrauded MSMB Capital and MSMB Healthcare investors and **other personal debts**") (emphasis added); *see also* government's main summation, Shkreli Trial Tr. 5280:9-10 ("And **the true parties that actually have liability here that could be sued are the defendant** and MSMB.") (emphasis added).

Because Mr. Shkreli was not personally liable to the investors in the MSMB Funds as a matter of basic contract law, the government should be precluded from asserting otherwise. Specifically, the government should be precluded from asserting, in words and substance, that the investor losses in the MSMB Funds were "personal debts" of Mr. Shkreli and/or that Mr.

4

Case 1:15-cr-00637-KAM Document 334 Filed 08/19/17 Page 5 of 6 PageID #: 7659

Shkreli was one of the "true parties" who actually had liability for the losses in the MSMB Funds.

Any attempt by the government to continue to represent incorrectly that Mr. Shkreli was personally liable for investor losses in the MSMB Funds during its opening statement, its examinations of witnesses, and its summations would confuse and mislead the jury, and cause unfair prejudice to Mr. Greebel. It is impermissible to include arguments in opening or closing statements that circumvent the Federal Rules of Evidence or inaccurately represent the submitted evidence. *See United States v. Gomez*, 617 F.3d 88, 91 (2d Cir. 2010) (vacating conviction, in part, due to the government's argument in both its opening statement and its summation where it explicitly argued for the improper hearsay use of evidence). Even where it would be impossible for the government to fully construct its argument in advance, "the improvisatory nature" of a [summation or a] rebuttal summation is no license for . . . referencing facts not in the record . . ." *United States v. Certified Envtl. Servs., Inc.*, 753 F.3d 72, 95-97 (2d Cir. 2014) (vacating convictions due to the cumulative prejudice caused by prosecutorial misconduct, including evidentiary errors and the government's repeated improper comments during opening, witness questioning, and summation). In *United States v. Reyes*, 18 F.3d 65 (2d Cir. 1994), the Second Circuit vacated a conviction where the government misstated the witness's testimony during its summation. *Id.* at 69. Even though the court was "fully convinced that the discrepancy between [the] testimony and the summation was not intentional," it found that the incorrect summary of the witness's testimony combined with improper hearsay testimony were not harmless error. *Id.* at 70-72.

5

## II.  CONCLUSION

Based on the express language of the applicable PPMs, the government should be precluded from arguing that Mr. Shkreli had personal liability for investor losses in the MSMB Funds.  As the government conceded in its rebuttal summation, Mr. Shkreli did not have personal liability according to the PPMs.


Dated:   New York, New York
         August 18, 2017

>                          */s/ Reed Brodsky*
>                          Reed Brodsky
>                          Winston Y. Chan
>                          Randy M. Mastro
>                          Lisa H. Rubin
>
>                          GIBSON, DUNN & CRUTCHER LLP
>                          200 Park Avenue
>                          New York, NY 10166
>                          (212) 351-4000
>                          rbrodsky@gibsondunn.com
>                          *Counsel for Defendant Evan Greebel*