# EXHIBIT A

**CONFIDENTIAL**
**PRIVATE OFFERING MEMORANDUM**

OFFERING OF LIMITED PARTNER INTERESTS

IN

# MSMB Capital Management LP

General Partner:

## MSMB Investors LLC
**111 Broadway**
**4th Floor, Suite 405**
**New York, New York 10006**
**Telephone: (212) 983-1310**

Managing Director:

## Marek L. Biestek

September 10th, 2009

CONFIDENTIAL PRIVATE OFFERING MEMORANDUM

# MSMB Capital Management LP

### OFFERING OF LIMITED PARTNER INTERESTS

This Confidential Private Offering Memorandum relates to the offering by MSMB Capital Management LP, a Delaware limited partnership (the "Partnership"), of limited partner interests (the "Partnership Interests") in the Partnership. The Partnership Interests are being offered to a limited number of individual or institutional investors that generally have a net worth of $1,000,000 (or meet certain other qualifications) and meet certain suitability standards. See "*Subscribing for Partnership Interests*". The sole general partner of the Partnership will be MSMB Investors LLC, a Delaware limited liability company (the "General Partner"). The General Partner will have responsibility for the management and control of the Partnership. MSMB Capital Management LLC, a Delaware limited liability company and an affiliate of the General Partner (the "Advisor," and collectively with the General Partner, "MSMB"), will serve as investment adviser to the Partnership and will have full discretionary authority and responsibility over the investments of the Partnership. Mr. Marek Biestek will act as portfolio manager for the Partnership (the "Portfolio Manager") and will be responsible for all investment decisions regarding the Partnership on behalf of the Advisor.

The Partnership's investment objective will be to seek superior absolute returns, while attempting to minimize portfolio volatility, primarily through long and short equity investments in companies located in the U.S. and throughout the world. The Advisor intends to primarily focus on short-term trading opportunities in highly liquid marketplaces. The Advisor will select investments for the Partnership through a combination of statistical and mathematical formulae and fundamental research. The Partnership's positions are anticipated to consist of a number of long positions which the Advisor believes have the potential to experience significant price appreciation and short positions which the Advisor believes have the potential to experience significant price declines. The Portfolio Manager believes that the combination of its research, analysis and formulae, along with its strategy to invest in equities and other investments, on a global basis, will provide the Partnership with an advantage over other investment vehicles that focus solely on the U.S. market.

While a substantial portion of the Partnership's portfolio is expected to consist of equity securities in U.S. and global markets, the Partnership may also invest in and trade a diverse range of securities, instruments and other investments. The Portfolio Manager expects to utilize leverage, on behalf of the Partnership, on a moderate basis primarily for investment purposes. The Partnership may employ additional investment methodologies and invest and trade in other securities, instruments and investments in the discretion of the Advisor. See "*Investment Objective and Strategy*".

**An investment in the Partnership will involve significant risks. There is no assurance that the Partnership will achieve its investment objective or be profitable. See "*Risk Factors*".**

The minimum investment in Partnership Interests will be $100,000, which may be waived, increased or reduced by the General Partner in its sole discretion. There is no prescribed minimum or maximum amount of Partnership Interests offered hereby. All subscription funds will be forwarded to the Partnership's account at its prime broker, Interactive Brokers LLC, until acceptance of the subscription. Any sales compensation to third parties in connection with any solicitation of investors in Partnership Interests will be borne by the General Partner, unless otherwise agreed by investors.

R041787

Should any subscription be rejected, or if the Partnership does not commence business for any reason, all subscription funds received will be promptly returned without interest.

———————————

THIS MEMORANDUM HAS NOT BEEN FILED WITH OR REVIEWED BY THE SECURITIES AND EXCHANGE COMMISSION OR ANY STATE SECURITIES COMMISSION. NEITHER THE SECURITIES AND EXCHANGE COMMISSION NOR ANY STATE OR FEDERAL GOVERNMENTAL AGENCY HAS PASSED UPON THE ACCURACY OR ADEQUACY OF THIS MEMORANDUM OR ENDORSED THE MERITS OF THIS OFFERING.  ANY REPRESENTATION TO THE CONTRARY IS UNLAWFUL.

THE LIMITED PARTNERSHIP INTERESTS OFFERED HEREBY HAVE NOT BEEN REGISTERED UNDER THE SECURITIES ACT OF 1933, AS AMENDED (THE "SECURITIES ACT"), NOR UNDER THE SECURITIES LAWS OF ANY STATE, AS THEY WILL BE OFFERED AND SOLD ONLY TO A LIMITED NUMBER OF INDIVIDUAL OR INSTITUTIONAL INVESTORS, IN RELIANCE UPON THE EXEMPTION PROVIDED BY SECURITIES AND EXCHANGE COMMISSION RULE 506 OF REGULATION D ADOPTED UNDER THE SECURITIES ACT AND THE RELATED EXEMPTION FROM STATE SECURITIES LAWS REGISTRATION PROVIDED BY SECTION 18(B) OF THE SECURITIES ACT.

THIS MEMORANDUM IS SUBMITTED TO A LIMITED NUMBER OF RECIPIENTS ON A CONFIDENTIAL BASIS SOLELY IN CONNECTION WITH THEIR CONSIDERATION OF AN INVESTMENT IN THE LIMITED PARTNERSHIP INTERESTS.  IT MAY NOT BE REPRODUCED IN WHOLE OR IN PART AND MAY NOT BE DELIVERED TO ANY PERSON WITHOUT THE PRIOR WRITTEN CONSENT OF THE GENERAL PARTNER.  NOTWITHSTANDING THE FOREGOING A PROSPECTIVE INVESTOR (AND EACH EMPLOYEE, REPRESENTATIVE OR OTHER AGENT OF THE INVESTOR) MAY DISCLOSE TO ANY AND ALL PERSONS, WITHOUT LIMITATION OF ANY KIND, THE TAX TREATMENT AND TAX STRUCTURE OF (I) THE PARTNERSHIP AND (II) ANY TRANSACTIONS DESCRIBED HEREIN, AND ALL MATERIALS OF ANY KIND (INCLUDING OPINIONS OR OTHER TAX ANALYSES) THAT ARE PROVIDED TO THE INVESTOR RELATING TO SUCH TAX TREATMENT AND TAX STRUCTURE. EACH PERSON ACCEPTING THIS MEMORANDUM THEREBY AGREES TO RETURN IT TO THE GENERAL PARTNER UPON REQUEST.

THIS MEMORANDUM DOES NOT CONSTITUTE AN OFFER OR SOLICITATION IN ANY STATE OR OTHER JURISDICTION IN WHICH AN OFFER OR SOLICITATION IS NOT AUTHORIZED.

THE LIMITED PARTNERSHIP INTERESTS OFFERED HEREBY ARE ILLIQUID.  NO PUBLIC MARKET FOR THE LIMITED PARTNERSHIP INTERESTS EXISTS AND IN ALL PROBABILITY NONE WILL DEVELOP.  THERE ARE SIGNIFICANT RESTRICTIONS ON THE TRANSFERABILITY OF THE LIMITED PARTNERSHIP INTERESTS.

NO REPRESENTATIONS OR WARRANTIES OF ANY KIND ARE INTENDED OR SHOULD BE INFERRED WITH RESPECT TO THE ECONOMIC RETURN OR THE TAX CONSEQUENCES FROM AN INVESTMENT IN THE PARTNERSHIP.  NO ASSURANCE CAN BE GIVEN THAT EXISTING LAWS WILL NOT BE CHANGED OR INTERPRETED ADVERSELY. PROSPECTIVE INVESTORS ARE NOT TO CONSTRUE THIS MEMORANDUM AS LEGAL OR TAX ADVICE.  EACH PROSPECTIVE INVESTOR SHOULD CONSULT HIS OWN COUNSEL AND ACCOUNTANT FOR ADVICE CONCERNING THE VARIOUS LEGAL, TAX AND ECONOMIC MATTERS CONCERNING HIS INVESTMENT.

NO OFFERING LITERATURE OR ADVERTISING IN ANY FORM SHALL BE EMPLOYED IN THE OFFERING OF LIMITED PARTNERSHIP INTERESTS EXCEPT FOR THIS

CONFIDENTIAL

R041788

MEMORANDUM AND EXHIBITS ATTACHED HERETO.  NO PERSONS OTHER THAN THE GENERAL PARTNER AND ITS REPRESENTATIVES HAVE BEEN AUTHORIZED TO MAKE REPRESENTATIONS, OR GIVE ANY INFORMATION, WITH RESPECT TO THE LIMITED PARTNERSHIP INTERESTS.

THIS MEMORANDUM MAY CONTAIN CERTAIN "FORWARD LOOKING INFORMATION" ABOUT THE PARTNERSHIP AND ITS INVESTMENT ACTIVITY IN RELIANCE UPON THE "SAFE HARBOR" PROVISIONS OF THE FEDERAL SECURITIES LAWS.  THIS INFORMATION IS SUBJECT TO VARIOUS RISKS AND UNCERTAINTIES, INCLUDING, BUT NOT LIMITED TO, THOSE DESCRIBED UNDER "RISK FACTORS" HEREIN.  ALL INVESTMENT PERFORMANCE IS INHERENTLY SUBJECT TO SIGNIFICANT UNCERTAINTIES AND CONTINGENCIES, MANY OF WHICH ARE BEYOND THE CONTROL OF THE GENERAL PARTNER. ANY SIGNIFICANT CHANGE THEREIN CAN MATERIALLY AFFECT FUTURE RESULTS. ACCORDINGLY, THERE CAN BE NO ASSURANCE THAT THE PARTNERSHIP'S INVESTMENT OBJECTIVE WILL BE ACHIEVED OR THAT THE PARTNERSHIP WILL NOT INCUR LOSSES.

———————————

INVESTMENTS BY TAX EXEMPT INVESTORS:

AN INVESTOR WHICH IS SUBJECT TO THE EMPLOYEE RETIREMENT INCOME SECURITY ACT OF 1974, AS AMENDED ("ERISA"), SUCH AS A PENSION PLAN OR INDIVIDUAL RETIREMENT ACCOUNT, OR WHICH IS AN EDUCATIONAL INSTITUTION OR OTHER ENTITY EXEMPT FROM TAXATION UNDER SECTION 501 OF THE INTERNAL REVENUE CODE OF 1986, AS AMENDED, IS URGED TO CONSULT WITH ITS ADVISORS AS TO CERTAIN CONSIDERATIONS APPLICABLE TO AN INVESTMENT IN THE PARTNERSHIP.  SEE "ERISA CONSIDERATIONS".

DUE TO THE PARTNERSHIP'S ANTICIPATED USE OF LEVERAGE, OR MARGIN BORROWINGS, IN ITS INVESTMENT ACTIVITIES, SUCH INVESTORS MAY BE SUBJECT TO FEDERAL INCOME TAXATION ON A PORTION OF THE NET GAINS AND/OR INCOME ATTRIBUTABLE TO THEIR LIMITED PARTNERSHIP INTERESTS.  SEE "CERTAIN TAX MATTERS – INVESTMENT BY TAX-EXEMPT ENTITIES".

———————————

EXEMPTION FROM REGISTRATION UNDER COMMODITY EXCHANGE ACT:

PURSUANT TO RULE 4.13(a)(3) UNDER THE COMMODITY EXCHANGE ACT, AS AMENDED (THE "CEA"), ISSUED BY THE COMMODITY FUTURES TRADING COMMISSION (THE "COMMISSION"), THE GENERAL PARTNER AND INVESTMENT ADVISOR ARE EXEMPT FROM REGISTRATION WITH THE COMMISSION AS A COMMODITY POOL OPERATOR ("CPO") AND THAT THEREFORE, UNLIKE A REGISTERED COMMODITY POOL OPERATOR, THEY ARE NOT REQUIRED TO DELIVER A DISCLOSURE DOCUMENT AND A CERTIFIED ANNUAL REPORT TO PARTICIPANTS IN THE POOL.

IN ORDER TO QUALIFY FOR THE EXEMPTION PROVIDED THE AFORESAID RULE 4.13(a)(3), THE GENERAL PARTNER AND THE INVESTMENT ADVISOR MUST MEET THE FOLLOWING GENERAL CRITERIA: (1) INTERESTS IN THE POOL (*I.E.*, THE PARTNERSHIP) ARE EXEMPT FROM REGISTRATION UNDER THE SECURITIES ACT AND SUCH INTERESTS ARE OFFERED AND SOLD WITHOUT MARKETING TO THE PUBLIC IN THE UNITED STATES; AND (2) AT ALL TIMES THE POOL MEETS ONE OR THE OTHER OF THE FOLLOWING TESTS WITH RESPECT TO ITS COMMODITY INTEREST POSITIONS, INCLUDING POSITIONS IN SECURITY FUTURES PRODUCTS, WHETHER ENTERED INTO FOR BONA FIDE HEDGING PURPOSES OR OTHERWISE: (A) THE AGGREGATE INITIAL MARGIN AND PREMIUMS REQUIRED TO ESTABLISH COMMODITY INTEREST POSITIONS, DETERMINED AT THE TIME THE MOST RECENT POSITION WAS ESTABLISHED, DOES NOT EXCEED FIVE (5) PERCENT OF THE

CONFIDENTIAL

R041789

LIQUIDATION VALUE OF THE POOL'S PORTFOLIO, AFTER TAKING INTO ACCOUNT UNREALIZED PROFITS AND UNREALIZED LOSSES ON ANY SUCH POSITIONS IT HAS ENTERED INTO; OR (B) THE AGGREGATE NET NOTIONAL VALUE OF THE POOL'S COMMODITY INTEREST POSITIONS, DETERMINED AT THE TIME THE MOST RECENT POSITION WAS ESTABLISHED, DOES NOT EXCEED ONE HUNDRED (100) PERCENT OF THE LIQUIDATION VALUE OF THE POOL'S PORTFOLIO, AFTER TAKING INTO ACCOUNT UNREALIZED PROFITS AND UNREALIZED LOSSES ON ANY SUCH POSITIONS IT HAS ENTERED INTO.

IN THE EVENT THE GENERAL PARTNER DISTRIBUTES AN ANNUAL REPORT TO POOL PARTICIPANTS (THE LIMITED PARTNERS), THE ANNUAL REPORT MUST BE PRESENTED AND COMPUTED IN ACCORDANCE WITH GENERALLY ACCEPTED ACCOUNTING PRINCIPLES CONSISTENTLY APPLIED AND, IF CERTIFIED BY AN INDEPENDENT PUBLIC ACCOUNTANT, SO CERTIFIED IN ACCORDANCE WITH RULE 1.16 UNDER THE CEA.  THE EXEMPTION ALSO REQUIRES THE GENERAL PARTNER AND/OR THE INVESTMENT ADVISOR TO FILE A CLAIM OF EXEMPTION WITH THE NATIONAL FUTURES ASSOCIATION, TO MAINTAIN CERTAIN BOOKS AND RECORDS AND SUBMIT TO SUCH SPECIAL CALLS AS THE COMMISSION MAY MAKE TO DEMONSTRATE ELIGIBILITY FOR AND COMPLIANCE WITH THE APPLICABLE CRITERIA FOR EXEMPTION UNDER RULE 4.13.

---

**NOTICE TO FLORIDA PURCHASERS:**

IN THE EVENT THAT SALES OF PARTNERSHIP INTERESTS OFFERED HEREBY ARE MADE TO FIVE OR MORE PERSONS IN THE STATE OF FLORIDA, ANY SALE IN FLORIDA MADE PURSUANT TO SECTION 517.061(11)(A)(5) OF THE FLORIDA SECURITIES AND INVESTOR PROTECTION ACT IS VOIDABLE BY THE PURCHASER THEREUNDER WITHIN THREE (3) DAYS AFTER THE FIRST TENDER OF CONSIDERATION IS MADE BY SUCH PURCHASER TO THE GENERAL PARTNER OR THE PARTNERSHIP OR ANY AGENT OF THE FOREGOING, OR WITHIN THREE (3) DAYS AFTER THE AVAILABILITY OF THAT PRIVILEGE IS COMMUNICATED TO SUCH PURCHASER, WHICHEVER OCCURS LATER.

---

**ADDITIONAL INFORMATION:**

A PROSPECTIVE INVESTOR SHOULD NOT SUBSCRIBE FOR LIMITED PARTNERSHIP INTERESTS UNLESS SATISFIED THAT HE AND/OR HIS REPRESENTATIVE HAVE ASKED FOR AND RECEIVED ALL INFORMATION WHICH WOULD ENABLE BOTH TO EVALUATE THE MERITS AND RISK OF THE PROPOSED INVESTMENT.  THE PARTNERSHIP SHALL MAKE AVAILABLE TO EACH INVESTOR OR HIS AGENT, DURING THIS OFFERING AND PRIOR TO THE SALE OF ANY LIMITED PARTNERSHIP INTERESTS, THE OPPORTUNITY TO ASK QUESTIONS OF AND RECEIVE ANSWERS FROM THE GENERAL PARTNER CONCERNING ANY ASPECT OF THE PARTNERSHIP AND ITS PROPOSED BUSINESS AND TO OBTAIN ANY ADDITIONAL INFORMATION, TO THE EXTENT THE PARTNERSHIP POSSESSES SUCH INFORMATION OR CAN ACQUIRE IT WITHOUT UNREASONABLE EFFORT OR EXPENSE.

***

CONFIDENTIAL                                                                                     R041790

# TABLE OF CONTENTS

Caption      Page

SUMMARY .................................................................................................. 1

INVESTMENT OBJECTIVE AND STRATEGY ................................................. 6
    General ................................................................................................... 6
    Investment Process .................................................................................. 6
    Investments and Portfolio Composition ...................................................... 7
    Investment Techniques ............................................................................. 8
    Risk Management .................................................................................... 9

RISK FACTORS ........................................................................................... 10
    General Risks ......................................................................................... 10
    Risks Relating to Investment Strategy ....................................................... 11
    Risks Relating to Investment Techniques ................................................... 14
    Conflicts of Interest ................................................................................. 17
    Illiquid Nature of Partnership Interests ...................................................... 19
    No Distributions ..................................................................................... 20
    Lack of Participation by Limited Partners ................................................... 20
    Certain Tax Matters ................................................................................. 20
    Limited Regulatory Protection .................................................................. 21
    Exculpation of the General Partner, the Advisor and the Portfolio Manager ..... 22

THE PARTNERSHIP ...................................................................................... 23
    General Partner and Investment Advisor ..................................................... 23
    Portfolio Manager ................................................................................... 23
    Management Fee ..................................................................................... 23
    Allocations of Profits and Losses; General Partner's Incentive Allocation ....... 24
    Operating Expenses ................................................................................. 25
    Organizational Expenses .......................................................................... 25
    Execution of Portfolio Transactions .......................................................... 26
    Clearing and Settlement ........................................................................... 28
    Custody of Assets ................................................................................... 28
    Attorneys .............................................................................................. 28
    Auditors ................................................................................................ 28

THE PARTNERSHIP AGREEMENT .................................................................. 29
    Term ..................................................................................................... 29
    Management of Partnership ....................................................................... 29
    Limited Liability of Limited Partners ........................................................ 29
    Valuation of Assets ................................................................................. 30
    Withdrawals by Partners .......................................................................... 31
    New Issues ............................................................................................ 32
    Amendments .......................................................................................... 33
    Financial Records and Reports .................................................................. 33
    Liquidation of the Partnership .................................................................. 33

CONFIDENTIAL      R041791

CERTAIN TAX MATTERS ...................................................................................................... 33
    Partnership Status........................................................................................................... 34
    Taxation of Limited Partners Generally ........................................................................ 34
    Partner's Allocable Share of Gains, Income and Loss .................................................. 35
    Character of Gains and Losses....................................................................................... 36
    Section 475 Election ...................................................................................................... 36
    Short Sales ...................................................................................................................... 36
    Constructive Sales.......................................................................................................... 37
    Capital Gain and Loss Provisions .................................................................................. 37
    Limitation on Deduction of Certain Expenses............................................................... 37
    Limitation on Deduction of Interest .............................................................................. 38
    Income and Losses from Passive Activities .................................................................. 38
    Distributions of Cash..................................................................................................... 38
    Capital Withdrawals ...................................................................................................... 38
    Sales or Transfers of Partnership Interests ................................................................... 39
    Alternative Minimum Tax .............................................................................................. 39
    Other Tax Elections........................................................................................................ 39
    Tax Shelter Regulations ................................................................................................. 39
    Possible Tax Audits........................................................................................................ 40
    Certain Foreign Taxes .................................................................................................... 40
    Certain New York Tax Matters....................................................................................... 40
    Other State and Local Taxes .......................................................................................... 41
    Investment by Tax-Exempt Entities............................................................................... 41
    Investment by Non-U.S. Partners .................................................................................. 42
    Summary ......................................................................................................................... 43

ERISA CONSIDERATIONS .................................................................................................. 43
    Prudence, Diversification and Prohibited Transactions ................................................ 43
    Annual Evaluation.......................................................................................................... 43
    Plan Assets...................................................................................................................... 43
    Non-Fiduciary Status of the General Partner and the Advisor ...................................... 44

RESTRICTIONS ON TRANSFER........................................................................................... 44

PRIVACY POLICY .................................................................................................................. 45
    Collection of Investor Information.................................................................................. 45
    Disclosure of Nonpublic Personal Information ............................................................. 45
    Protection of Investor Information.................................................................................. 46
    Changes to Privacy Policy.............................................................................................. 46

SUBSCRIBING FOR PARTNERSHIP INTERESTS ............................................................. 46

EXHIBITS:
    Limited Partnership Agreement..................................................................................... A
    Subscription Agreement ................................................................................................. B
    Questionnaire for Individuals ........................................................................................ C
    Questionnaire for Organizations .................................................................................... D

CONFIDENTIAL

R041792

# SUMMARY

*The following summary is intended only for quick reference, is neither complete nor exact and is qualified in its entirety by reference to the more detailed information appearing elsewhere in this Confidential Private Offering Memorandum ("Memorandum") and the Exhibits hereto and by the terms and conditions of the Limited Partnership Agreement of the Partnership, each of which should be read carefully by any prospective investor.*

| | |
|---|---|
| **The Partnership** | MSMB Capital Management LP, a Delaware limited partnership (the "Partnership"), to be formed pursuant to a Limited Partnership Agreement, substantially in the form of Exhibit A to this Memorandum (the "Partnership Agreement"). |
| **Securities Offered** | The securities offered hereby are limited partner interests in the Partnership (the "Partnership Interests"). There is no minimum aggregate amount of Partnership Interests required to be sold in the offering. |
| **Qualification of Investors** | Limited partners in the Partnership (the "Limited Partners" and together with the General Partner (as defined below), the "Partners") must generally have a minimum net worth of $1,000,000 (or meet other qualifications), as well as meet certain suitability standards. See "*Subscribing for Partnership Interests*". |
| **Minimum Initial Investment** | The minimum initial investment in the Partnership by a Limited Partner is $100,000, which may be waived, increased or reduced by the General Partner in its sole discretion. |
| **Additional Contributions** | No Limited Partner will be obligated to contribute any capital to the Partnership in addition to his initial capital contribution. However, with the consent of the General Partner, a Limited Partner will have the right to make additional capital contributions (in a minimum amount of $50,000) at the beginning of any month or at other times with the consent of the General Partner. The terms with respect to additional capital contributions, including appropriate dates and amounts, may be waived by the General Partner in its discretion. |
| **General Partner** | The sole general partner of the Partnership will be MSMB Investors LLC, a Delaware limited liability company (the "General Partner"), with an office at 111 Broadway, 4th Floor, New York, New York 10006. The General Partner will have full responsibility for the management and control of the Partnership. Mr. Marek Biestek is managing member of the General Partner. As such, Mr. Biestek will be the individual primarily responsible for the management and control of the Partnership. |
| **Investment Advisor; Portfolio Manager** | MSMB Capital Management LLC, a Delaware limited liability company and an affiliate of the General Partner (the "Advisor," and collectively with the General Partner, "MSMB"), will serve as investment adviser of the Partnership and will have full discretionary authority and |

-1-

responsibility to invest the assets of the Partnership.  Mr. Marek Biestek, the founder and managing member of the Advisor, will serve as the portfolio manager (the "Portfolio Manager") of the Partnership on behalf of the Advisor and, as such, will be the individual primarily responsible for investing the assets of the Partnership.

**Investment Objective and Strategy**

       The Partnership's investment objective will be to seek superior absolute returns, while attempting to minimize portfolio volatility, primarily through long and short equity investments in companies located in the U.S. and throughout the world.  The Advisor intends to primarily focus on short-term trading opportunities in highly liquid marketplaces.  The Advisor will select investments for the Partnership through a combination of statistical and mathematical formulae and fundamental research.  The Partnership's positions are anticipated to consist of a number of long positions which the Advisor believes have the potential to experience significant price appreciation and short positions which the Advisor believes have the potential to experience significant price declines.  The Portfolio Manager believes that the combination of its research, analysis and formulae, along with its strategy to invest in equities and other investments, on a global basis, will provide the Partnership with an advantage over other investment vehicles that focus solely on the U.S. market.

While a substantial portion of the Partnership's portfolio is expected to consist of equity securities in U.S. and global markets,  the Partnership may also invest in and trade a diverse range of securities, instruments and investments including, without limitation, preferred stock, debt instruments, convertible debt and equity securities, warrants, options, rights, bonds, debentures, American Depositary Receipts, Global Depositary Receipts, exchange-traded funds, swaps, futures, forward contracts, indices and other derivatives, currencies, commodities, cash and cash equivalents.  The Partnership's investments may also include securities that are thinly traded and non-publicly-traded or restricted securities.  The Portfolio Manager expects to utilize leverage, on behalf of the Partnership, on a moderate basis primarily for investment purposes.   The Partnership may employ additional investment methodologies and invest and trade in other securities, instruments and investments in the discretion of the Advisor.  See "*Investment Objective and Strategy*".

**Risk Factors**

An investment in Partnership Interests will be subject to various risks, including risks relating to the newly formed nature of the Partnership, general investment risks, risks relating to the investment strategy and investment techniques to be employed by the Advisor, and the illiquid nature of the Partnership Interests.  See "*Risk Factors*".

**Incentive Allocation**

The General Partner will receive an incentive allocation (the "Incentive Allocation") from each Limited Partner's account for each fiscal year (or partial year) equal to 20% of the Limited Partner's share of Partnership

CONFIDENTIAL

R041794

net profits for the year. However, Incentive Allocations will be subject to a "high-water mark" provision, (*i.e.*, any prior losses allocated to a Limited Partner must be recouped before the General Partner may receive an Incentive Allocation from such Limited Partner). The General Partner will also receive a ratable allocation of net realized and unrealized profits or losses of the Partnership for each fiscal year based upon its own invested capital. Under the Partnership Agreement, the General Partner in its sole discretion may waive or reduce the Incentive Allocation chargeable to any Limited Partner or re-allocate any portion of its Incentive Allocation to any Limited Partner, without notice to or action by the Limited Partners; provided, however, that no such waiver or reduction shall increase the amount thereof to be borne by any other Limited Partner. See "*The Partnership – Allocations of Profits and Losses; General Partner's Incentive Allocation*".

**Management Fee**

The Advisor will be entitled to receive a management fee (the "Management Fee") from the Partnership equal to 0.25% per calendar quarter (1.0% per annum) of the Partnership's net assets. The Management Fee will be calculated based upon Partnership net assets at the opening of business on the first day of each calendar quarter (after giving effect to capital contributions and withdrawals) and will be payable in advance on such date. The Management Fee will be charged on a *pro rata* basis to the capital accounts of the Limited Partners, other than such Limited Partners, if any, as the Advisor shall designate; provided, however, that in no event shall any Limited Partner be charged a Management Fee greater than 0.25% per quarter as a result of such designation. See "*The Partnership – Management Fee*".

**Operating Expenses**

The Partnership shall pay, or reimburse MSMB or their affiliates, for all operating expenses and other costs of the Partnership not required to be borne by MSMB or their affiliates including, but not limited to: (i) accounting, auditing, and bookkeeping fees and expenses (including the allocable share of the costs, fees and expenses relating to internal accounting, bookkeeping and tax preparation functions – inclusive of salaries of MSMB personnel performing such functions – should MSMB determine not to use third party providers for such services); (ii) trading expenses and transaction costs, including, but not limited to, brokerage commissions and expenses relating to short sales, clearing and settlement charges, interest on loans and debit balances, margin interest, broker service fees and other clearing and custodial expenses; (iii) such research and portfolio management expenses as MSMB shall deem appropriate, which may include, but are not limited to, expenses incurred in connection with due diligence investigations or research as to investments or potential investments, including travel, lodging and other expenses incurred in connection with visits to companies, meetings and communications with company management, security holders, analysts and other third parties, costs of research reports, data feeds and databases, news wires and quotation services, periodical subscription fees; (iv) all fees and disbursements of the Partnership's and MSMB's attorneys, administrators, consultants and other third parties performing work benefiting the Partnership (including, without limitation, the legal

-3-

R041795

and other fees, costs and expenses of the Partnership in any threatened or actual litigation or governmental investigation or proceeding, and the amount of any judgments or settlements paid in connection with such litigation or fines or penalties levied as a result of any such proceeding or investigation); (v) insurance and bonding costs; (vi) fees (including legal fees of the Partnership and MSMB) or assessments in connection with any regulatory registrations, qualifications and/or approvals of the Partnership or MSMB, and related compliance fees and expenses, deemed appropriate by MSMB; (vii) the cost of preparation and distribution of reports and statements to Limited Partners; (viii) all filing and recording fees; (ix) all custodial fees, bank service fees, and fees or expenses associated with insuring the Partnership's assets, (x) the Management Fee; and (xi) all applicable federal, state, local and foreign taxes payable by the Partnership.

Certain expenses of the Partnership and MSMB may be borne or reimbursed by broker-dealers executing transactions for the Partnership. See *"The Partnership – Execution of Portfolio Transactions"*.

**Organizational Expenses**

The organizational expenses of the Partnership, expected not to exceed $25,000, will be borne by the Partnership. Such expenses may be amortized over a period of 60 months from the date of commencement of business of the Partnership. See *"The Partnership – Organizational Expenses"*.

**Capital Withdrawals**

Limited Partners may withdraw any or all of their capital accounts, subject to certain reserves which may be established by the General Partner to cover contingent liabilities of the Partnership, monthly at the last calendar day of each month, commencing one full month after the date of their initial investment in the Partnership, upon not less than 30 days prior written notice to the General Partner. In the case of a partial withdrawal, the withdrawal must be at least $50,000 and the Limited Partner's remaining capital must be at least the lesser of his initial capital contribution or $100,000, unless waived by the General Partner. The General Partner may, in its sole discretion, waive such minimum or permit withdrawals at other times. The General Partner will have the right to suspend redemptions under certain circumstances. The General Partner may withdraw any portion of its capital account without prior notice to the Limited Partners. See *"The Partnership Agreement – Withdrawals by Partners"*.

**Prime Broker and Custodian**

Interactive Brokers LLC ("Interactive Brokers" or the "Prime Broker") will act as prime broker for the Partnership. The Prime Broker will execute a portion of the Partnership's portfolio transactions and furnish various research and brokerage services to the Advisor. In addition to Interactive Brokers, MSMB may select other brokers to execute transactions for the Partnership on the basis of special execution capabilities, market expertise, research or recommendations provided for the benefit of the Partnership or other factors. The Prime Broker will also act as clearing firm and principal custodian for the assets of the

CONFIDENTIAL

R041796

Partnership.  The Advisor has the right to change its selection of prime broker and other brokers.  See "*The Partnership – Execution of Portfolio Transactions*" and "*--Custody of Assets*".

**Distributions of Profits**

MSMB intends to re-invest any capital gains or income from investments of the Partnership.  As is the case with partnership investments generally, Limited Partners will be subject to taxes on gains or income allocated to them, whether or not distributed.

**Possible Offshore Sister Fund**

The General Partner may, in its discretion, establish an offshore sister fund to the Partnership (the "Sister Fund").  The Sister Fund will have an investment strategy substantially identical to that of the Partnership and will be offered to U.S. tax-exempt entities and non-U.S. investors.

**Fiscal Year**

The Partnership's fiscal year will be the calendar year, subject to change in the discretion of the General Partner.

**Auditors**

The General Partner has selected Fulvio & Associates, L.L.P., as the Partnership's independent certified public accountants, which firm will issue an audit report on the annual financial statements of the Partnership.  Such firm will also prepare certain federal income tax information for the Partners. The General Partner will have the right to change the auditing and accounting firms for the Partnership without the consent of the Limited Partners.

**Partnership Reports**

Following the end of each fiscal year, the Partnership's certified public accountants will audit, for delivery by the General Partner to each Limited Partner, financial statements of the Partnership for such year, as well as a statement of such Limited Partner's capital account and certain tax information for the preparation of such Limited Partner's income tax returns.  Each Limited Partner also will receive regular communications, at least quarterly, from the General Partner.  See "*The Partnership Agreement—Financial Records and Reports*".

**Additional Information**

Prospective Limited Partners are invited to meet with Mr. Biestek for a further explanation of the terms and conditions of this offering of Partnership Interests and to obtain any additional information they require, to the extent the General Partner possesses such information or can acquire it without unreasonable effort or expense.  Requests for such information should be directed to Mr. Biestek, 111 Broadway, 4th Floor, New York, New York 10006, telephone no. (212) 983-1310.

CONFIDENTIAL                                                                                          R041797

## INVESTMENT OBJECTIVE AND STRATEGY

**General**

The Partnership's investment objective will be to seek superior absolute returns, while attempting to minimize portfolio volatility, primarily through long and short equity investments in companies located in the U.S. and throughout the world. The Advisor intends to primarily focus on short-term investments in liquid companies. The Advisor will select investments for the Partnership through a combination of statistical and mathematical formulae and fundamental research. The Partnership's positions are anticipated to consist of a number of long positions which the Advisor believes have the potential to experience significant price appreciation and short positions which the Advisor believes have the potential to experience significant price declines. The Portfolio Manager believes that the combination of its research, analysis and formulae, along with its strategy to invest in equities and other investments, on a global basis, will provide the Partnership with an advantage over other investment vehicles that focus solely on the U.S. market.

While a substantial portion of the Partnership's portfolio is expected to consist of equity securities in U.S. and global markets, the Partnership may also invest in and trade a diverse range of securities, instruments and investments including, without limitation, preferred stock, debt instruments, convertible debt and equity securities, warrants, options, rights, bonds, debentures, American Depositary Receipts, Global Depositary Receipts, exchange-traded funds, swaps, futures, forward contracts, indices and other derivatives, currencies, cash and cash equivalents. The Partnership's investments may also include securities that are thinly traded and non-publicly-traded or restricted securities. The Portfolio Manager expects to utilize leverage, on behalf of the Partnership, on a moderate basis primarily for investment purposes. The Partnership may employ additional investment methodologies and invest and trade in other securities, instruments and investments in the discretion of the Advisor.

**Investment Process**

The Advisor will primarily generate trading ideas for the Partnership's portfolio through the Portfolio Manager's mathematical and statistical research and fundamental analysis of a broad number of issuers closely monitored by the Portfolio Manager over several years. The Advisor has two principal strategies. The first of the two strategies is to enter into long positions in temporarily depressed liquid equity while simultaneously entering into short positions in a similar, but temporarily favored liquid equity. By remaining hedged with respect to market risk, industry risk and other fundamental risks, the Advisor seeks to locate and arbitrage structural market inefficiencies using proprietary mathematical and statistical models. The second of the two strategies is to enter into long positions in stocks exhibiting certain probabilistic signs of momentum, where the market has incompletely incorporated a revaluation of an equity in either long or short directions. This "Bayesian" style of momentum trading relies of proprietary statistical and mathematical modeling done by the Advisor. Both styles of trading rely on some fundamental research which is designed to optimize the formulae the Advisor uses to enter transactions.

The Advisor's fundamental analysis will be utilized by the Portfolio Manager to develop a thorough understanding of a company's finances, operations, advantages and disadvantages. The fundamental analysis may include, but not be limited to, the review of a company's return on equity, profit margins, price-earnings ratios, income and cash flow, growth rates, earnings, and debt-equity ratios. MSMB will also utilize discounted cash flow and dividend discount models to evaluate securities, as well as, proprietary mathematical/statistical analyses. In addition to its fundamental analysis the Advisor will evaluating a broad variety of considerations in its bottom-up analysis, including, but not limited to, company visits and communications with management.

-6-

CONFIDENTIAL

R041798

The Advisor will seek to select superior trading opportunities from both U.S. and non-U.S. markets and intends to diversify among a broad number of core portfolio positions. The Portfolio Manager believes that such diversification will offer a lower risk profile while maintaining the potential for capital appreciation.

## Investments and Portfolio Composition

*Primary Investments.* The Advisor expects that the Partnership's portfolio will primarily consist of long and short positions in the equity securities of approximately 150 companies located throughout the world. Other investments may include, preferred securities, convertible securities, equity and index options (including "market-basket" options), American Depositary Receipts, Global Depositary Receipts, bonds and currencies. The Partnership's investments may also include securities that are thinly traded and non-publicly-traded or restricted securities. As a general principle, the Advisor intends to select equity securities for investment on the basis of its investment methodology, and without any fixed requirements as to revenues, earnings, capitalization, industries, sectors, sub-sectors or types of investments. Notwithstanding the Advisor's global investment approach, the Advisor expects that at most times approximately 75% of the Partnership's assets will be invested in securities issued by companies in the U.S. See "--*Sector and Market Exposure*" below.

*Other Securities and Instruments.* Although it is anticipated that the Partnership will invest primarily in the securities mentioned above, the Partnership may also invest in a broad variety of securities and other instruments, whether traded on exchanges, over-the-counter or negotiated or electronic markets. As a result, the Partnership's investments, in the discretion of the Advisor, may also include: convertible and hybrid stocks and debt securities, including high-yield securities; warrants, rights, debentures; structured and other synthetic securities and related derivative instruments, such as swaps, forwards, options, caps and floors; other derivatives, including those relating to equity securities, equity indices, interest rate products, fixed-income products and indices; corporate and government securities, money market instruments, repurchase agreements, foreign currencies and interests in currencies, such as options, spot, swap and forward contracts; certificates of deposit, banker's acceptances, trust receipts and trade and commercial paper and other obligations, cash and cash equivalents, loans, bridge loans, advances, loan participations and creditor claims, whether secured or unsecured, performing or nonperforming, and irrespective of ranking; and any other instruments or other evidences of indebtedness.

*Long and Short Positions.* The Portfolio Manager anticipates that when fully invested the long and short positions in the Partnership's portfolio will consist of between 100 and 200 positions. No single position is expected to exceed (in terms of cost at time of investment) 10% of the Partnership's assets. The Advisor intends to utilize short selling both to enhance returns and to hedge long positions.

*Long Versus Short Exposure.* During typical periods, both long exposure and short exposure is expected to range between 50% and 200%. Typical, net exposure is expected to range between (20%) to 30%. Such exposures may vary under certain market conditions and are also subject to change in the discretion of the Portfolio Manager. Accordingly, the Partnership will not be required to have a net long, net short or market neutral bias.

*Sector and Market Exposure.* Subject to variation in the discretion of the Portfolio Manager, the Portfolio Manager anticipates the Partnership assets will be invested in a variety of sectors without any fixed limitation. Furthermore, it is anticipated that at most times approximately 50% of the Partnership's assets will be invested in companies located in the U.S., with the remaining assets invested in companies throughout the world, without fixed limitation as to market or region.

-7-

CONFIDENTIAL

R041799

*Holding Periods.* In view of the Partnership's investment strategy, the typical holding periods for the Partnership's positions may vary substantially with anticipated holding periods of 1 hour to 2 weeks or longer. The Portfolio Manager may trade around core positions on a short-term basis and may assume some positions shorter in duration, including trading situations with a duration of several days and intra-day transactions. In instances where earnings expectations or other investment criteria are not being met, positions may be liquidated earlier than originally anticipated. The Partnership's portfolio turnover will reflect the foregoing and may exceed 1000% annually.

*Restricted Securities.* The Partnership may invest in so-called "Restricted Securities," *i.e.*, securities as to which the public resale is currently restricted under the Securities Act of 1933, as amended (the "Securities Act") and which are not immediately convertible into freely tradable securities. The Portfolio Manager intends to purchase Restricted Securities where pricing and growth characteristics justify the limited liquidity and which provide the means of achieving eventual marketability, such as registration rights under the Securities Act or the right to convert into marketable securities. The Partnership's overall investments in Restricted Securities will be limited, however, to a maximum of 10% (in terms of their cost at time of purchase) of current market value of Partnership assets.

*Initial Public Offerings.* A portion of the Partnership's portfolio may include stocks purchased in initial public offerings ("IPOs"), in situations when such companies satisfy the Advisor's investment methodology. Equity securities issued in an IPO (so-called "New Issues") are subject to certain investment restrictions imposed by the National Association of Securities Dealers, Inc. (the "NASD"). Limited Partners who are "restricted persons," within the meaning of NASD Rule 2790, are currently limited to an aggregate 10% participation in profits and losses resulting from the Partnership's investment in any New Issues. See "*Risk Factors – Conflicts of Interest*" and "*The Partnership Agreement – New Issues*".

*Cash Positions.* As a defensive strategy, or pending the identification of companies meeting the Portfolio Manager's methodology, the Partnership may hold or invest in cash, U.S. government securities, as well as commercial obligations, bankers' acceptances, certificates of deposit and other short-term money-market obligations. Accordingly, the Partnership may not be fully invested at all times.

*Other Investments.* The Advisor will be authorized to invest in all types of securities and instruments in furtherance of the Partnership's investment objective, including, but not limited to, those described above. Accordingly, such possible investments and instruments to be utilized by the Partnership will not necessarily be limited to those described herein.

**Investment Techniques**

*Short Selling.* Short selling will be employed opportunistically as a part of the Partnership's investment strategy, where the Portfolio Manager believes the security sold short is likely to decline in price, and hedging situations, where the position is intended to wholly or partially offset another position in a related security. Selling securities short involves selling securities which the Partnership does not own. In order to make delivery to its purchaser, the Partnership must borrow securities from a third party lender. The Partnership subsequently returns the borrowed securities to the lender by delivering to the lender securities purchased in the open market. The Partnership must generally pledge cash with the lender equal to the sales proceeds of the borrowed securities as well as any additional cash or securities required as collateral under applicable margin regulations. In addition to lending the securities, the lender generally pays the Partnership a fee (or rebate of interest) for the use of the Partnership's cash. The Partnership will generally realize a profit or a loss as a result of a short sale if

-8-

R041800

the price of the security decreases or increases between the date of the short sale and the date on which the Partnership covers its short position, *i.e.*, purchases the security to replace the borrowed security.

*Leverage*.   The Advisor will utilize leverage, on a moderate basis, as it considers appropriate, with respect to the Partnership's investment activities.   Leverage involves the use of borrowed funds, primarily margin borrowings, to increase the amount of invested capital in the Partnership's long or short positions, but may also include the use of options, swaps, forwards and other derivative instruments.   There is no fixed limitation on the Partnership's use or extent of leverage, other than applicable regulatory requirements.   The use of leverage can increase both the proportionate amount of potential gain, as well as of potential loss, relative to the Partnership's equity capital.   In a typical long position involving margin borrowing, for example, as much as approximately one-half of the Partnership's invested funds may be furnished by margin borrowings.   If, however, the value of the position declines (or, in the case of a margined short position, the securities sold short increase in value), the securities (or cash) serving as collateral for such margin position may be liquidated, resulting in a loss proportionately greater than would be the case absent such use of leverage.

*Options*.   The Partnership may engage in various types of options transactions, including speculative and hedging positions in options on securities, commodities, indices and other investments, including both put and call options.   Hedging activity is designed to reduce the risks relating to market fluctuations in the price of a security held long by the Partnership, as well as risks attendant to short selling, and may offset other transactions in the underlying stock or other securities held by the Partnership involved in the transaction.   Short positions maintained by the Partnership may be hedged through the purchase of call options on the securities sold short.   In certain situations, the Partnership may purchase call options as an alternative (in whole or in part) to establishing a long position, and may purchase put options as an alternative (in whole or in part) to establishing a short position.

The Partnership may write or sell options on securities and other instruments, whether or not such options are covered.   An option written by the Partnership is "covered" if (in the case of a call option) the Partnership owns the security, currency or other instrument underlying the option or has a right to acquire such underlying instrument without additional cash consideration (or for additional cash consideration held in a segregated account) or (in the case of a put option) the Partnership has an equivalent short position, or offsetting long put position, in the underlying instrument.   Although there is no absolute prohibition against uncovered options transactions by the Partnership, the Advisor is fully cognizant of the risks associated with such transactions.   Accordingly, uncovered options transactions, if any, will only be engaged in on a limited basis and not as an integral or major part of the Advisor's investment strategy.

The Partnership may also utilize certain market-wide options, such as various types of index or "market basket" options, in an effort to hedge against certain market-related risks, as the Advisor deems appropriate.   Accordingly, the Partnership may have positions in a variety of options or similar instruments.

*Other Investment Techniques*.   The Advisor will be authorized to engage in a broad variety of investment techniques, in furtherance of the Partnership's investment objective, including, but not limited to, those described above.   Accordingly, such possible investment techniques to be utilized by the Partnership will not necessarily be limited to those described herein.

**Risk Management**

The Advisor will apply risk controls in the management of the Partnership's portfolio. The Advisor will use a variety of ongoing risk management policies and practices, including monitoring

CONFIDENTIAL

R041801

and adjustment of portfolio exposure; the use of hedging instruments (including, without limitation, options against general market risks, sector risks and regional risks; application of portfolio exposure guidelines, including established entry and exit points; stop-loss guidelines; and the use of real-time portfolio evaluation tools.

Notwithstanding the above risk management practices, the Partnership's investment strategy inherently involves certain significant risks. See *"Risk Factors"* below. Moreover, there can be no assurance that the above practices will necessarily be applied in all cases, or if applied, will successfully limit risk to acceptable levels.

There is no assurance that the Partnership's investment objective will be realized or that the Partnership will be profitable.

## RISK FACTORS

*All securities investments risk the loss of capital. There can be no assurance that the Partnership will be profitable or that it will not incur losses. Prospective investors should, among other matters, consider the risks summarized below before investing in the Partnership. An investment in the Partnership is speculative, involves a high degree of risk, and is suitable only for persons who are willing and able to assume the risk of losing their entire investment.*

**General Risks**

*Lack of Operating History; Experience of Portfolio Manager.* The Partnership is a newly formed enterprise and will have no operating history upon which basis potential investors may evaluate its performance. As a newly formed enterprise, the Partnership will be subject to the typical risks attendant to any new business without an operating history, including limitations as to capital and operating resources. The success of the Partnership will be substantially dependent upon the skills of the Portfolio Manager. Any past success with Mr. Biestek's investments or investment strategy, should not be construed as indicative of the future results of the Partnership. There is no historical performance for the Partnership upon which a prospective investor could base its investment decision. As such, the Partnership is a risky investment and investors could lose all or substantially all of their investment.

*Dependence Upon Portfolio Manager.* As noted above, the success of the Partnership will substantially depend upon the efforts of the Portfolio Manager, Mr. Biestek. In the event that Mr. Biestek ceases to be responsible for Partnership investments for any reason, and although other personnel may be available to the General Partner and the Advisor, the operations of the Partnership will likely be adversely affected. The Portfolio Manager has significant business responsibilities in addition to those of the Partnership, including without limitation, the management of other investment vehicles. See *"-- Conflicts of Interest"* below.

*Dependence Upon Individual Judgment and Skill.* Although the Portfolio Manager will rely primarily upon his own fundamental research and bottom-up analysis and other methodologies in his investment decision-making, the Portfolio Manager must ultimately rely upon his own judgment, in identifying investment opportunities for the Partnership. As a result, the Portfolio Manager's selection of investments for the Partnership may be expected to involve, to a considerable degree, subjective factors and judgment on the part of the Portfolio Manager. Accordingly, success of the Partnership will be dependent to a large extent on the investment skills and judgment of the Portfolio Manager. There can be no assurance that the Portfolio Manager will successfully identify investments that fulfill the investment objective of the Partnership or that such investments will not cause the Partnership to experience losses.

CONFIDENTIAL

R041802

*Alternative Investing Generally.*   The Partnership is designed for investors seeking potential long-term growth from alternative investments, who do not require regular current income and who can accept a high degree of risk in their investments.   In view of, among other things, the Partnership's ability to invest in a wide range of securities and instruments and to use a broad variety of investment techniques, the Partnership may be deemed speculative in nature and is not intended to be a comprehensive investment program.   The Partnership is intended for investment solely by sophisticated investors who are accustomed to and fully understand the risks of such investments.

No assurance can be given that the Partnership will achieve its investment objective or that the Partnership's investment strategy will be successful.

**Risks Relating to Investment Strategy**

There are certain significant risks inherent in the Partnership's investment strategy.   Such risks include, but are not limited to, the following:

*General Investment Risk.*   The Partnership's investments will consist of securities identified by the Portfolio Manager's methodology.   Since such strategy involves identifying securities which are generally undervalued (or, in the case of short positions, overvalued) by the marketplace, success of such strategy necessarily depends upon the market eventually recognizing such value in the price of the security, which may not necessarily occur.   The Partnership's portfolio positions may undergo significant short-term declines and experience considerable price volatility.   An investment in the Partnership should not be regarded as a complete investment program and should be considered solely by investors prepared to experience possible short-term volatility and fluctuations in value in the interest of seeking attractive long-term capital appreciation.

*Limited Prior Application of Investment Approach.*   The investment strategy and approach of the Partnership has not previously been directly implemented by the Portfolio Manager.   In any event, past performance of any methodology, whether actual or constructed, should not be regarded as assuring any given future results.   Accordingly, there can be no assurance that the investment strategy and methodology of the Portfolio Manager will prove successful over time under various market conditions and events.

*Foreign Investments.*   A portion of the Partnership's assets is expected to be invested in securities denominated in foreign currencies and/or traded outside of the U.S. or comparable western nations.   Such investments require consideration of certain risks typically not associated with investing in U.S. securities.   Such risks include, among other things, trade balances and imbalances and related economic policies, unfavorable currency exchange rate fluctuations, imposition of exchange control regulation by the U.S. or foreign governments, U.S. and foreign withholding taxes, limitations on the removal of funds or other assets, policies of governments with respect to possible nationalization of their industries, political difficulties, including expropriation of assets, confiscatory taxation and economic or political instability in foreign nations.

There may be less publicly available information about certain foreign companies than would be the case for comparable companies in the U.S. and certain foreign companies may not be subject to accounting, auditing and financial reporting standards and requirements comparable to or as uniform as those of U.S. companies.   Securities markets outside the U.S., while growing in volume, have for the most part substantially less volume than U.S. markets, and many securities traded on these foreign markets are less liquid and their prices more volatile than securities of comparable U.S. companies. In addition, settlement of trades in some non-U.S. markets is slower, less systematic and more subject to

-11-

R041803

failure than in U.S. markets.  There also may be less extensive regulation of the securities markets in other countries.

Additional costs could be incurred in connection with the international investment activities of the Partnership.  Foreign brokerage commissions generally are higher than in the U.S. Expenses also may be incurred on currency exchanges when the Partnership effectively shifts investments from one country, or group of countries, to others. Increased custodian costs as well as administrative difficulties (such as the applicability of foreign laws to foreign custodians in various circumstances, including bankruptcy, ability to recover lost assets, expropriation, nationalization and record access) may be associated with the maintenance of assets in foreign jurisdictions.

Enforcing legal rights in some foreign countries is difficult, costly and slow, and there are sometimes special problems enforcing claims against foreign governments.

*Emerging Markets.*  A portion of the Partnership's assets may be invested in so-called emerging market or less developed countries ("EMC" countries).  It is possible, therefore, that a portion of the Partnership's investments may be in countries characterized by less stable economic or political conditions than in the largest mature western economies.  Emerging market investing is generally characterized as having higher levels of risk than in fully developed markets.

EMC investing involves certain considerations not usually associated with investing in securities of developed countries or of companies located in developed countries, including political and economic considerations such as: greater risks of expropriation, nationalization, and general social, political and economic instability; the small size of the securities markets in such countries and the low volume of trading, resulting in potential lack of liquidity and in price volatility; fluctuations in the rate of exchange between currencies and costs associated with currency conversion; certain government policies that may restrict the Partnership's investment opportunities; and problems that may arise in connection with the clearance and settlement of trades.  In addition, accounting and financial reporting standards that prevail in certain of such countries generally are not equivalent to standards in more developed countries. There is also generally less regulation of the securities markets in EMC than there is in more developed countries.  Placing securities with a custodian in EMC may also present considerable risks.

*Currency Risks.*  The Partnership may invest in securities denominated in currencies other than the U.S. dollar.  The Partnership, however, will value its securities and other assets in U.S. dollars.  To the extent unhedged, the value of the Partnership's assets will fluctuate with U.S. dollar exchange rates as well as with price changes of the Partnership's investments in the various local markets and currencies.  Thus, an increase in the value of the U.S. dollar compared to the other currencies in which the Partnership makes its investments will reduce the effect of increases and magnify the U.S. dollar equivalent of the effect of decreases in the prices of the Partnership's securities in their local markets.  Conversely, a decrease in the value of the U.S. dollar will have the opposite effect of magnifying the effect of increases and reducing the effect of decreases in the prices of the Partnership's portfolio positions.

*Price Volatility.*  Stocks are inherently volatile. Such volatility may result in the value of the Partnership's assets fluctuating from time-to-time more greatly than that of other investment vehicles which may be more widely diversified or which may invest in a greater variety of market sectors.  There can be no assurance that the Advisor's investment strategy, including anticipated hedging techniques, or other investment strategies or techniques, will be effective in protecting the Partnership from such price volatility.

CONFIDENTIAL

R041804

*Investments in Restricted Securities.*  The Partnership may invest up to 10% of its assets (measured at cost at the time the investment is made) in "Restricted Securities," which are securities subject to significant legal or contractual restrictions on their public resale.  Investing in Restricted Securities involves a number of significant risks.  Without the ability to resell Restricted Securities in the public markets, the Partnership may be compelled to hold such investments indefinitely or to dispose of them in private transactions on unattractive terms.  Such restrictions therefore can impair both the avoidance of losses as well as the timely realization of gains.  Although in some instances the Partnership may have registration rights or other contractual means of achieving liquidity as to its investment in Restricted Securities, such rights may in fact be limited or ineffective in achieving the secondary market desired.  Restricted Securities invested in by the Partnership may include highly speculative, developmental stage issuers, as well as securities of more seasoned companies, which can involve significant issuer or industry related risks.

*Investments With Limited or No Liquidity.*  The Partnership may take significant positions in particular securities which are relatively large as compared to their trading volume or overall market capitalization.  Such positions may at times prove more difficult to sell in a timely or efficient manner and could thus impair to some extent the Partnership's ability to fully realize portfolio gains or limit losses.  The Advisor does not intend to generally limit investments to issues of any particular minimum capitalization and may invest in smaller capitalization securities.  Such stocks often have less liquidity than large capitalization issues.

*Overall Investment Risk.*  All securities investments risk the loss of capital.  The nature of the securities to be purchased and traded by the Partnership and the investment techniques and strategies to be employed by the Advisor may increase this risk.  There can be no assurance that the investments or investment techniques employed by the Partnership will achieve the Partnership's investment objective or that the Partnership will be profitable. There can be no assurance that the Partnership will not incur losses.

**Risks Relating to Investment Techniques**

There will also be a number of significant risks inherent in the Partnership's anticipated investment techniques.  Such risks include the following:

*Short Selling.*  Short selling will be an integral part of the Advisor's investment strategy and may be utilized both in situations where the Advisor believes, on the basis of its analysis, that the securities in question are overvalued, and therefore likely to experience significant price declines, over time, or as a hedge or offset to related long positions.  Short selling inherently involves certain additional risks.  Selling securities short creates the risk of losing an amount greater than the initial investment in a relatively short period of time and the theoretically unlimited risk of an increase in the market price of the securities sold short.  There is also the risk that the securities borrowed by the Partnership in connection with a short sale would need to be returned to the securities lender on short notice. If the request for return of securities occurs at a time when other short sellers of the security are receiving similar requests, a "short squeeze" can occur, and the Partnership might be compelled, at the most disadvantageous time, to replace borrowed securities previously sold short with purchases on the open market, possibly at prices significantly in excess of the proceeds received earlier.  In addition, short selling can involve significant borrowing and other costs which can reduce the profit or create losses in particular positions.

*Options.*  The Partnership will utilize options in furtherance of its investment strategy for both speculative and hedging purposes.  Options positions may include long positions, where the Partnership is the holder of put or call options, as well as short positions, where the Partnership is the seller (writer) of an option.  Although option techniques can increase investment return, they can also involve a relatively higher level of risk.  The writing (selling) of uncovered options involves a

-13-

R041805

theoretically unlimited risk of a price increase or decline, as the case may be, in the underlying security. The expiration of unexercised long option positions effectively results in loss of the entire cost or premium paid for the option. Option premium costs, as well as the cost of covering options written by the Partnership, can reduce or eliminate position profits or create losses as well. The Partnership's ability to close out its position as a purchaser of an exchange-listed option is dependent upon the existence of a liquid secondary market on option exchanges. On occasion the Partnership may also utilize options, particularly in foreign markets, which may have limited liquidity.

The seller ("writer") of a call option which is covered assumes the risk of a decline in the market price of the underlying security or other instrument below the purchase price of the underlying instrument, less the amount of premium received by the seller, and effectively forgoes the opportunity for gain on the underlying instrument above the exercise price of the option. The buyer of a call option assumes the risk of losing its entire investment (the premium paid) in the call option. If the buyer of a call option sells short the underlying security or other instrument, a loss on the call option itself may be offset, in whole or in part, by any gain on the short sale of the underlying position.

The seller ("writer") of a put option which is covered assumes the risk of an increase in the market price of the underlying security or other instrument above the sales price (in establishing the short position) of the underlying instrument, plus the premium received by the seller, and forgoes the opportunity for gain on the underlying instrument below the exercise price of the option. The buyer of a put option assumes the risk of losing its entire investment (the premium paid) in the put option. If the buyer of a put option holds a long position in the underlying security or other instrument, a loss on the put option itself may be offset, in whole or in part, by any gain on the underlying position.

The profitability of the Partnership's option trading may depend upon the attractiveness of option premiums relative to such factors as price volatility, strike price and expirations. Numerous factors can affect the level of option premiums. Although high premiums can make option writing more attractive, they can effectively preclude other favorable trading opportunities. Profitability in options trading may further depend upon a variety of market factors, such as the presence of a requisite degree of volatility, liquidity in pricing options and the underlying securities, efficiency of trading execution and the absence of so-called catastrophic or aberrational market factors. Successful implementation of option strategies generally requires a high degree of trading skill and expertise as well as sufficient access to enabling technology.

*Leverage; Interest Rates; Margin.* As discussed elsewhere herein, the Advisor expects to utilize leverage, on behalf of the Partnership, on a moderate basis primarily for investment purposes to increase investment positions or to make additional investments, but may also use leverage, when deemed appropriate, to facilitate Limited Partner withdrawals. In addition, the Partnership may "leverage" its investment return with options, warrants, swaps, forwards and other derivative instruments.

While leverage (including the use of derivatives) presents opportunities for increasing the Partnership's total return, it has the effect of potentially increasing losses as well. Accordingly, any event that adversely affects the value of an investment, either directly or indirectly, could be magnified to the extent that leverage is employed. The effect of the use of leverage by the Partnership in a market that moves adversely to the investments of the entity employing the leverage, could result in a loss to the Partnership that would be greater than if leverage were not employed by the Partnership. In addition, to the extent that the Partnership borrows funds, the interest cost at which the Partnership can borrow will affect the operating results of the Partnership.

The use of short-term margin borrowings by the Partnership may result in certain additional risks to the Partnership. For example, should the securities that are pledged to brokers to

CONFIDENTIAL

secure the Partnership's margin accounts decline in value, or should brokers from which the Partnership has borrowed increase their maintenance margin requirements (*i.e.*, reduce the percentage of a position that can be financed), then the Partnership could be subject to a "margin call," pursuant to which the Partnership must either deposit additional funds with the broker or suffer mandatory liquidation of the pledged securities to compensate for the decline in value. The broker will typically have the right to liquidate the Partnership's portfolio in certain circumstances. In the event of a precipitous drop in the value of the assets of the Partnership, the Partnership might not be able to liquidate assets quickly enough to pay off the margin debt and might suffer mandatory liquidation of positions in a declining market at relatively low prices.

*Derivatives.* The derivatives markets are frequently characterized by limited liquidity, which can make it difficult as well as costly to close out open positions in order to either realize gains or to limit losses. Additionally, many derivatives are valued on the basis of dealers' pricing of these instruments. However, the price at which dealers value a particular derivative and the price which the same dealers would actually be willing to pay for such derivative should the Advisor be required to sell such position may be materially different. Such differences may have a materially adverse effect on the Partnership if it is required to sell derivative instruments in order to raise funds for margin purposes or to pay withdrawals.

The pricing relationships between derivatives and the underlying instruments on which they are based may not conform to anticipated or historical patterns, resulting in unanticipated losses.

The stability and liquidity of forwards, swaps, repurchase agreements, and other over-the-counter derivative transactions depend in large part on the creditworthiness of the parties to the transaction. If there is a default by the counterparty to a transaction, the Partnership may have contractual remedies pursuant to the agreements related to the transaction; however, exercising such contractual rights may involve delays or costs, or may not be successful, which could adversely affect the Partnership. It is possible that in the event of a counterparty credit default, the Partnership may not be able to recover all or a portion of its investment in such derivative instrument and may be exposed to additional liability (*i.e.*, the obligations associated with what has become an unhedged position). The Partnership is also subject to the risk of the failure of any of the exchanges on which its positions trade or of their clearinghouses or of counterparties.

*Institutional Risk.* The institutions, including brokerage firms and banks, with which the Partnership does business, or to which securities have been entrusted for custodial and prime brokerage purposes, may encounter financial difficulties or compliance, reporting or valuation errors or omissions that impair the operational capabilities or net asset value of the Partnership. Brokers may trade with an exchange as a principal on behalf of the Partnership, in a "debtor-creditor" relationship, unlike other clearing broker relationships where the broker is merely a facilitator of the transaction. Such broker could, therefore, have title to all of the assets of the Partnership (for example, the transactions which the broker has entered into on behalf of the Partnership as principal as well as the margin payments which the Partnership provides). In the event of such broker's insolvency, the transactions which the broker has entered into as principal could default and the Partnership's assets could become part of the insolvent broker's assets, to the detriment of the Partnership. In this regard, the Partnership's assets may be held in "street name" such that a default by the broker may cause the Partnership's rights to be limited to that of an unsecured creditor.

*Brokerage and other Transactional Expenses.* The Partnership's activities may at times involve a high level of trading (including significant short-term and "intra-day" trades) resulting in very high portfolio turnover that may generate substantial transaction costs. These costs will be borne by the

-15-

R041807

Partnership regardless of its profitability. As a result, the expenses of the Partnership may be greater than the total expenses incurred and/or fees charged in other comparable investment vehicles.

*Limitations on Hedging Strategies.* It is anticipated that the Advisor will employ hedging techniques in connection with the Partnership's investment strategy. However, it will not be a requirement that all of the Partnership's positions be hedged. Moreover, such strategies are intended to hedge against certain risks, often general market risk such as a price decline in the overall equity markets, but will not hedge against other risks, such as issuer risk, industry risk or catastrophic risk, any of which could be significant. The costs of hedging necessarily reduce the profitability of the position sought to be hedged. There is no assurance that the Advisor's intended hedging strategies can necessarily be implemented or if established will necessarily succeed in eliminating the intended risk.

Hedging against a decline in the value of a portfolio position does not eliminate fluctuations in the values of portfolio positions or prevent losses if the values of such positions decline, but establishes other positions designed to gain from those same developments. For a variety of reasons, however, the Advisor may not seek or be able to establish a sufficiently accurate correlation between hedging instruments and the portfolio holding or holdings sought to be hedged. Such imperfect correlation may prevent the Partnership from achieving the intended hedge or expose the Partnership to risk of loss. There may be risks which are not identified, and therefore unhedged, or there may be risks where an efficient hedging strategy is unavailable. It will not be an objective for the Partnership to be hedged significantly at all times. It should be assumed, therefore, that the Partnership's portfolio may still be exposed to significant risks, including issuer, industry and sector risks, notwithstanding the Advisor's intended hedging strategies.

**Conflicts of Interest**

There are likely to be a number of conflicts of interest between the General Partner, the Advisor and the Portfolio Manager, on the one hand, and the Partnership and the Limited Partners, on the other. Among those which should be considered by each prospective Limited Partner are the following:

*Possible Conflicts with Other Investment Vehicles or Clients.* MSMB may serve as investment adviser to other entities or accounts, some with investment strategies and policies similar to that of the Partnership. MSMB or its affiliates may participate in or sponsor other investment vehicles, and possibly have additional advisory clients, in the future. The General Partner may also determine to engage in other businesses. The existence of such multiple entities or clients, or other businesses, necessarily creates a number of potential conflicts of interest.

*Allocation Issues.* Other clients or vehicles managed by the Advisor or its affiliates may invest in the same securities as will the Partnership. Certain accounts and clients may purchase similar securities. MSMB intends to allocate investment opportunities among the Partnership and any other managed entities and clients by applying such considerations as it deems appropriate, including relative size of such entities, amount of available capital, size of existing positions in the same or similar securities, leverage and tax consideration and other factors. Although such allocations may generally be *pro rata* as to the Partnership and other such entities and clients, will not necessarily be so. The Partnership will not be entitled to investment priority over the other investments vehicles or managed accounts managed by MSMB or their affiliates may not necessarily participate in every investment opportunity. In cases where a limited amount of a security or other instrument is available for purchase, the allocation of such security or other instrument, as between the Partnership and any other such investment vehicles and managed accounts, may necessarily reduce the amount thereof available for purchase by the Partnership or the attractiveness of investment terms.

-16-

CONFIDENTIAL

R041808

Time Commitments. MSMB intends to devote significant efforts to management of the Partnership and believes it has the resources necessary to devote to the Partnership. However, the fact that the managing director of MSMB has other investment management responsibilities may affect the time MSMB personnel devote to the investment activities of the Partnership. MSMB may retain additional personnel as it deems necessary.

*Valuations and Other Matters.* The General Partner will be responsible for a variety of important matters affecting the Partnership. Among other matters, the General Partner will determine the value of the securities held by the Partnership. Such valuation affects both reported Partnership performance as well as the calculation of both the Incentive Allocation (as defined herein) payable to the General Partner and the Management Fee (as defined herein) payable to the Advisor. Although the Partnership Agreement will prescribe the method of valuing different types of Partnership investments, which generally involve current market price information, there may be investments as to which current or reliable market price information is unavailable, in which event the General Partner has discretion in determining the appropriate means of valuation. Furthermore, in the event the General Partner is provided with, or otherwise comes into possession of, information which leads the General Partner to determine that one or more valuations of Partnership assets for a prior period are inaccurate, the General Partner will have the authority to adjust or amend such prior valuations as the General Partner deems appropriate, and to adjust or amend any reports or statements of the Partnership (whether or not previously issued) with respect to such prior periods.

In general, the Partnership Agreement will provide the General Partner with broad discretion as to determination or resolution of a wide variety of matters, including economic and tax allocations, Partner withdrawals (on other than regular withdrawal dates), distributions and other issues, any of which could significantly affect a particular Limited Partner or Partners.

*Allocations of Profits and Losses; General Partner's Incentive Allocation.* In addition to sharing in net profits on the basis of its capital, the General Partner will be entitled to receive an Incentive Allocation equal to 20% of the net profits initially allocated to each Limited Partner for each fiscal year, but will be allocated net losses solely on the basis of its invested capital. Although this type of relative allocation of profits and losses has largely become a customary standard for private investment partnerships, it can be characterized as creating an incentive to the General Partner for speculative investment and thus a potential conflict with the interests of the Limited Partners. Since the allocation will be based upon portfolio gains, both realized and unrealized (net of realized and unrealized losses), it is possible that the General Partner may receive an Incentive Allocation based upon unrealized appreciation in particular positions which is not in fact achieved upon eventual disposition of such positions. Although the Portfolio Manager believes the terms of the General Partner's Incentive Allocation are typical of investment partnerships generally, such terms have been determined unilaterally by the General Partner and do not reflect arms' length negotiation.

*New Issues.* Under the provisions of NASD Rule 2790 (the "New Issue Rule"), "restricted persons" (as defined in the New Issue Rule) are permitted to participate in the purchase by the Partnership of New Issues, provided that such restricted persons' aggregate participation in the Partnership does not exceed 10% of the participation by all partners. The Partnership Agreement contains provisions that permit restricted persons (including the General Partner and any affiliated partners) to participate in the profits and losses relating to New Issues, ratably with their respective Capital Accounts, subject to such 10% limitation.

As permitted by the New Issue Rule, the General Partner will be entitled to receive its 20% Incentive Allocation on any profits resulting from New Issues. Such an arrangement may be regarded as creating a financial conflict of interest between the General Partner and the Limited Partners.

CONFIDENTIAL

R041809

In particular, Limited Partners bear the risk of possibly speculative investments in New Issues, in which the General Partner would only have a portion of its own capital at risk but receives an Incentive Allocation as to any profits.

*Possible Conflicts Regarding Brokerage Allocations.* The Advisor may allocate brokerage for the Partnership on the basis of the broker's agreement to pay all or part of certain expenses of MSMB, or otherwise furnish certain products or services to MSMB. See "*The Partnership – Execution of Portfolio Transactions*". Some of the services and/or products may or may not be reimbursed and may be provided at, below, or above market cost to the MSMB. The Advisor will generally not endeavor to allocate, as among the Partnership and any other accounts or entities managed by MSMB, particular items of expenses paid relative to the account or entity generating the particular commission revenues utilized for payment, except in limited circumstances when deemed practicable and appropriate. As a result, such services and other benefits derived from such arrangements may not be allocated proportionately to the accounts or entities which actually generated such services or other benefits. Accordingly, brokerage allocations from the Partnership may also have the effect of indirectly benefiting other accounts and entities, if any, managed by MSMB, and vice versa.

To the extent such arrangements result in the payment by such brokers of expenses that would otherwise be borne by MSMB, MSMB may realize an economic benefit from such transactions. Such arrangements will not exclusively determine the selection and continued utilization of a broker or prime broker for the Partnership. The Advisor reserves the right, in its sole discretion, to make such arrangements and change or add prime brokers and/or custodians without prior notice to Limited Partners. In addition, certain brokers, including the Prime Broker, may provide capital introduction services to the Partnership and/or MSMB. As a result of the foregoing, such arrangements and services may create a conflict of interest with respect to the Advisor's allocation of the Partnership's portfolio transactions among brokers.

*Possible Agreements with Certain Limited Partners.* The Partnership and MSMB may from time to time enter into agreements with one or more Limited Partners whereby in consideration for agreeing to invest certain amounts in the Partnership or other consideration deemed material to the Partnership, such Limited Partners may be granted rights not otherwise afforded to other Limited Partners, including, without limitation, rights with respect to the purchase of additional Partnership Interests, the withdrawal of Partnership Interests, the receipt of reports from the Partnership on a more frequent basis or that include information not provided to other Limited Partners, the payment of a reduced Incentive Allocation and/or Management Fee or the receipt of a share of the Incentive Allocations and/or Management Fee. The Partnership and MSMB may enter into such agreements, without the consent of or notice to the other Limited Partners and authority to do so is provided for in the Partnership Agreement.

*Information Provided by the Portfolio Manager.* Factual information contained in this Memorandum, including without limitation, intended investment strategy and policies, performance or financial data, if any, and biographical and certain other information, has been furnished largely by the Portfolio Manager and in general has not been independently confirmed or verified. Therefore, Limited Partners should seek to confirm such information, seek additional information or conduct further investigation as they deem appropriate in connection with a decision to invest in the Partnership.

*Conflicts Regarding Role of Counsel.* Counsel to the Partnership in this offering has represented, and continues to represent, MSMB and the Portfolio Manager in certain matters. Such counsel does not purport to represent the separate interests of the Limited Partners and has assumed no obligation to do so. Accordingly, the Limited Partners have not had the benefit of independent counsel in

-18-

the structuring of the Partnership or determination of the relative interests, rights and obligations of the General Partner, the Advisor and the Limited Partners.

**Illiquid Nature of Partnership Interests**

The Partnership Interests may be acquired for investment purposes only and not with a view to their resale or other distribution. The Partnership Interests will not be registered under the Securities Act of 1933, as amended (the "Securities Act") in reliance on an exemption provided by Section 4(2) of the Securities Act and Rule 506 of Regulation D thereunder. The Partnership Agreement will substantially restrict the transferability or assignability of Partnership Interests or withdrawal from the Partnership. The General Partner's consent will be a condition to any transfer or assignment, and such consent is within its sole discretion. See "*Restrictions on Transfer*".

Withdrawals of capital by a Limited Partner may only be made monthly, as of the final day in each calendar month, but only upon at least 30 days prior written notice to the General Partner and commencing one full month after the date of their initial investment in the Partnership. Withdrawals at other times may be permitted, but only in the sole discretion of the General Partner.

If a Limited Partner wishes to transfer all or part of his Capital Account, even if all conditions for such transfer are met, he may find no transferee for his Partnership Interests, because of market conditions or the general limited liquidity of the Partnership Interests.

The General Partner shall have the right to require the withdrawal of a Limited Partner, or require a Limited Partner to withdraw all or a portion of its Capital Account, for any reason, by written notice to such Limited Partner. All such required withdrawals are in the sole discretion of the General Partner and may be required of one or more Limited Partners. In addition, the General Partner may require a Limited Partner to immediately withdraw all or any portion of its capital at any time after the date such Limited Partner makes a voluntary withdrawal request and prior to the date the withdrawal proceeds are required to be tendered to such Limited Partner. See "*The Partnership Agreement – Withdrawals by Partners*".

**No Distributions**

The General Partner does not anticipate the Partnership making distributions to its Limited Partners. The Partnership, as an entity, assuming that it is treated as a partnership for federal income tax purposes, will not be subject to any federal income tax and each Limited Partner, in computing his own federal income tax liability for a taxable year, will be required to take into account his allocable share of all items of Partnership income, gain, loss, deduction or credit for the Partnership taxable year ending within or with such taxable year of the Limited Partner, regardless of whether such Limited Partner has received any distributions from the Partnership. Thus, a Limited Partner's income tax liability in any particular year is likely to exceed the amount of distributions, if any, received by him. Limited Partners desiring to receive periodic cash returns from their investment in the Partnership, whether for purposes of funding tax liabilities or otherwise, will be required to withdraw some portion of their capital account to do so.

**Lack of Participation by Limited Partners**

Limited Partners will have no right to participate in management decisions of the Partnership and their right to vote in a variety of matters, including amendments to the Partnership Agreement, will be restricted. See "*The Partnership Agreement – Management of Partnership*".

CONFIDENTIAL

R041811

**Certain Tax Matters**

While the Partnership will file information returns as a partnership for Federal income tax purposes, neither a ruling from the Internal Revenue Service nor an opinion of counsel has been or will be sought as to the Partnership's status as such. The positions to be taken by the Partnership as to the tax consequences of particular investment strategies or positions may not be accepted by the Internal Revenue Service or the taxing authorities of other jurisdictions. In general, tax laws are subject to change, perhaps significantly, and possible future changes in Federal, state or local law, as well as foreign laws, could adversely affect the tax consequences to the Limited Partners.

The information return of the Partnership could be audited by the Internal Revenue Service and adjustments to the Partnership's return could occur as a result. Any such adjustments could subject the Limited Partners to additional tax, interest and penalties, as well as incremental accounting and legal expenses. The Partnership Agreement provides that the General Partner has the authority to bind all Partners with the Internal Revenue Service on certain matters. In addition, the audit of Partnership returns could lead to audits of the individual returns of the Limited Partners, resulting in adjustments and additional tax with respect to non-Partnership items. See *"Certain Tax Matters – Possible Tax Audits"*.

The Portfolio Manager may take into account income tax considerations, including after-tax returns, in making decisions to buy or sell securities. However, in general, such considerations will be only a part of the overall investment process. Accordingly, although the Partnership's stated investment objective will be to seek superior absolute returns, realized gains of the Partnership may or may not qualify for long-term capital gains treatment.

Depending upon circumstances the General Partner may make an election, under Section 475(f) of the Internal Revenue Code, to have the Partnership obtain "mark-to-market" treatment as a securities trader, in order to avoid the applicability of certain potentially adverse Code provisions, such as those relating to wash sales and mixed straddles. By reason of such an election, effectively all of the gains and losses of the Partnership relating to "securities," as defined, would be treated as ordinary income or loss rather than capital gain or loss. See *"Certain Tax Matters – Section 475 Election"*.

If the Internal Revenue Service were to classify the Partnership as an "investor," rather than as a "trader," for Federal income tax purposes, certain expenses of the Partnership, including the Management Fee, would be subject to various limitations on deductibility by the Limited Partners. See *"Certain Tax Matters – Limitation on Deduction of Certain Expenses"*.

On account of the Partnership's contemplated use of leverage, certain tax-exempt investors, including pension plans, individual retirement accounts and foundations, may be subject to the federal unrelated business income tax on that portion of their share of Partnership gains and income attributable to leverage. See *"Certain Tax Matters – Investment by Tax-Exempt Entities"*.

The summary set forth in this Memorandum as to certain tax matters does not purport to be complete and may not be current at the time of investment. Prospective Limited Partners should consult their own tax advisors with respect to the tax consequences of an investment in the Partnership.

**Limited Regulatory Protection**

The Partnership and MSMB will be subject in certain respects to regulation by the Securities and Exchange Commission (the "SEC"). However, the Partnership will not be registered under the Investment Company Act of 1940, as amended (the "Investment Company Act") and the Partnership

-20-

Interests will not be registered under the Securities Act or any similar state law, in reliance upon various exemptions. Accordingly, Limited Partners will not have the benefit of certain regulatory protections of such laws afforded by such registrations.

In general, the Investment Advisers Act of 1940, as amended (the "Advisers Act") requires the registration with the SEC of all investment advisers having at least $30 million under management and 15 or more clients. However, the General Partner and Advisor are currently exempt from the registration requirements of the Advisers Act, and comparable state laws, and are not subject to the same degree of regulation by the SEC as an investment adviser registered under the Advisers Act. Furthermore, the General Partner and Advisor are generally not subject to examination by the SEC and are not required to maintain the same compliance procedures as a registered adviser.

Notwithstanding the foregoing, the General Partner and/or the Advisor may voluntarily register under the Advisers Act in the future, or may be required to register as a result of a modification of applicable securities laws or regulations. Registration by MSMB, or changes in applicable securities laws or regulations, could impose additional compliance, or financial burdens (including, but not limited to, registration and compliance fees and expenses), upon the Partnership and MSMB or affect their respects operations in other respects.

To the extent that the Advisor employs regulated futures instruments in its investment strategy for the Partnership, it relies upon a rule which effectively exempts MSMB from registration as a commodity pool operator with the Commodity Futures Trading Commission so long as (among other requirements) certain portfolio limitations are met. It is intended that any regulated futures activities of the Partnership will fall within the foregoing limitations.

In recent periods both the SEC and the U.S. Congress, as well as foreign authorities, have devoted increased attention to the issue of whether hedge funds and other private investment vehicles should be subject to increased or different modes of regulation, and various legislation is pending in Congress. Changes in applicable securities laws or regulations could impose additional compliance or financial burdens upon the Partnership and its operations in other respects.

Although the Partnership may be subject to securities laws of certain jurisdictions in which the Partnership Interests may be offered for sale, there can be no assurance that the Partnership will be subject to significant regulation under the securities laws of any particular jurisdiction. In general, there may be other aspects of current or future regulation of investment partnerships, investment advisers and their affiliates or associated persons which could have an impact upon the Partnership's investment activities or operations.

**Exculpation of the General Partner, the Advisor and the Portfolio Manager**

The General Partner and the Advisor, as fiduciaries, will have a responsibility to the Limited Partners to exercise good faith and fairness in all dealings affecting the Partnership. However, the Partnership has agreed, in the Partnership Agreement, to indemnify and exculpate the General Partner, the Advisor and their respective members, managers, employees and agents (including, without limitation, the Portfolio Manager), from any liability for losses, damages or expenses resulting from their respective status as General Partner and Advisor or their acts or omissions, the Partnership's business, or their management of the Partnership's affairs, unless gross negligence, willful misconduct or willful breach of the Partnership Agreement on the part of the General Partner, the Advisor or such other parties is involved. In addition, both the General Partner and Advisor are organized as a limited liability company. Members of a limited liability company do not generally have individual liability for its debts and obligations, except as may be specifically provided by law. In the opinion of the SEC,

-21-

R041813

indemnification for liabilities arising under the securities laws is against public policy and is therefore unenforceable.   Certain state securities commissions may also limit or prohibit indemnification for securities laws liabilities.

CONFIDENTIAL

R041814

## THE PARTNERSHIP

**General Partner and Investment Advisor**

The sole general partner of the Partnership will be MSMB Partners LLC, a Delaware limited liability company (the "General Partner"). The General Partner will have full responsibility for the management and control of the Partnership. Mr. Marek Biestek is the founder and managing member of the General Partner. As such, Mr. Biestek will be the individual primarily responsible for the management and control of the Partnership.

MSMB Capital Management LLC, a Delaware limited liability company and an affiliate of the General Partner (the "Advisor," and collectively with the General Partner, "MSMB"), will serve as investment adviser of the Partnership and will have full discretionary authority and responsibility to invest the assets of the Partnership. Mr. Marek Biestek, the founder and managing member of the Advisor, will serve as the portfolio manager (the "Portfolio Manager") of the Partnership on behalf of the Advisor and, as such, will be the individual primarily responsible for investing the assets of the Partnership.

One or more affiliates of MSMB may in the future be appointed to replace the General Partner or the Advisor, or the responsibilities of the General Partner or the Advisor, in their respective capacities with respect to the Partnership, may be assigned to one or more affiliates of MSMB, without the consent of the limited partners, provided, that in any such event Mr. Biestek continues to serve as the Partnership's Portfolio Manager.

**Portfolio Manager**

The following is a summary of the business and educational background of the Portfolio Manager, who will be responsible for all investment decisions of the Partnership.

*Marek Biestek.* Prior to forming MSMB, Mr. Biestek was a professional trader at RBC Capital Markets.

**Management Fee**

The Advisor will be entitled to receive a management fee (the "Management Fee") from the Partnership, payable quarterly at the rate of 0.25% per calendar quarter (*i.e.,* 1.0% per annum) of the net asset value of the Partnership, for the investment advisory and other management services to be provided to the Partnership. The Management Fee will be calculated on the basis of 0.25% of Partnership net assets at the opening of business on the first business day of each calendar quarter (after giving effect to capital contributions and withdrawals) and will be due and payable in advance on such date. The Management Fee will be charged on a *pro rata* basis to the capital accounts of the Limited Partners, other than such Limited Partners, if any, as the Advisor shall designate; provided, however, that in no event shall any Limited Partner be charged a Management Fee greater than 0.25% per quarter as a result of such designation. Limited Partners admitted to the Partnership during a calendar quarter will be charged a ratable portion of the Management Fee for the balance of the calendar quarter. The Advisor, in its sole discretion, may waive or reduce the Management Fee chargeable to any Limited Partner.

**Allocations of Profits and Losses; General Partner's Incentive Allocation**

*The following is a brief summary only of the principal terms of Article 4 of the Limited Partnership Agreement of the Partnership (the "Partnership Agreement"). For a complete description of*

CONFIDENTIAL

R041815

*the allocations of the profits and losses and definitions of the terms used in connection herewith, prospective investors should study carefully the Partnership Agreement included as Exhibit A to this Memorandum. Certain capitalized terms used herein have the respective meanings set forth in the Partnership Agreement.*

For purposes of the allocations described below, "Investment Gains" are the excess of aggregate realized and unrealized increases in the value of the Partnership's securities positions, over aggregate realized and unrealized decreases in such value, during a Valuation Period. Conversely, "Investment Losses" are the excess of aggregate realized and unrealized decreases in value of the Partnership's securities positions, over aggregate realized and unrealized increases in such value, during a Valuation Period. Net Operating Profits and Net Operating Losses are the excess of income earned (other than from the sale or purchase of securities) over expenses incurred (other than those related to such sales or purchases), and the excess of such expenses over such income, respectively, during a Valuation Period.

The General Partner will receive its *pro rata* share, based on its capital account, of the Net Profits (defined as any excess of Investment Gains and Net Operating Profits over Investment Losses and Net Operating Losses) of the Partnership for each Fiscal Year, plus an incentive allocation (the "Incentive Allocation") equal to 20% of the Net Profits originally allocated to each Limited Partner for such Fiscal Year, as more fully described below.

For each Fiscal Year (including a partial year) in which the Partnership has a Net Profit (defined as any excess of Investment Gains and Net Operating Profits over Investment Losses and Net Operating Losses), such Net Profit will first be allocated to all Partners (including the General Partner) in proportion to their relative Opening Capital Balances (as defined). At the end of each Fiscal Year the General Partner will be re-allocated from each Limited Partner an Incentive Allocation equal to 20% of the Net Profits originally allocated to such Limited Partner for such Fiscal Year. However, if a Limited Partner has any prior Net Losses allocated to him or her for any previous Fiscal Year or Years (a "Loss Year"), the General Partner will not receive an Incentive Allocation from that Limited Partner for any subsequent Fiscal Year until such time as, and only to the extent that, the cumulative Net Profits allocated to such Limited Partner subsequent to such Loss Year or Years exceeds such prior allocated Net Losses. If a Limited Partner withdraws capital from the Partnership, however, the amount of prior Net Losses that must be recovered before an Incentive Allocation can be made to the General Partner will be reduced in proportion to the withdrawal. In the event of a withdrawal during a Fiscal Year, the General Partner may receive an Incentive Allocation from the withdrawing Limited Partner as if such withdrawal date were the end of a Fiscal Year. The General Partner in its sole discretion may waive or reduce the Incentive Allocation chargeable to any Limited Partner or re-allocate any portion of its Incentive Allocation to any Limited Partner.

For each Fiscal Year in which the Partnership has a Net Loss, such Net Loss will be allocated to all Partners (including the General Partner) in proportion to their relative Opening Capital Balances. If such allocation of Net Losses, however, would result in a negative capital balance in the account of any Limited Partner such Losses will be allocated to the General Partner to the extent of such negative balance. If there is more than one Valuation Period (as defined) during a Fiscal Year, then Net Profits and Net Losses are allocated to the Partners who are Partners at the end of each Valuation Period in a manner consistent with the foregoing provisions. Valuation Periods generally are the Fiscal Years of the Partnership, except that capital contributions and withdrawals during a Fiscal Year will create appropriate interim Valuation Periods to reflect the same.

**Operating Expenses**

-24-

                                                                                   R041816

The Partnership shall pay, or reimburse MSMB or their affiliates, for all operating expenses and other costs of the Partnership not required to be borne by MSMB or their affiliates including, but not limited to: (i) accounting, auditing, and bookkeeping fees and expenses (including the allocable share of the costs, fees and expenses relating to internal accounting, bookkeeping and tax preparation functions – inclusive of salaries of MSMB personnel performing such functions – should MSMB determine not to use third party providers for such services); (ii) trading expenses and transaction costs, including, but not limited to, brokerage commissions and expenses relating to short sales, clearing and settlement charges, interest on loans and debit balances, margin interest, broker service fees and other clearing and custodial expenses; (iii) such research and portfolio management expenses as MSMB shall deem appropriate, which may include, but are not limited to, expenses incurred in connection with due diligence investigations or research as to investments or potential investments, including travel, lodging and other expenses incurred in connection with visits to companies, meetings and communications with company management, security holders, analysts and other third parties, costs of research reports, data feeds and databases, news wires and quotation services, periodical subscription fees; (iv) all fees and disbursements of the Partnership's and MSMB's attorneys, administrators, consultants and other third parties performing work benefiting the Partnership (including, without limitation, the legal and other fees, costs and expenses of the Partnership in any threatened or actual litigation or governmental investigation or proceeding, and the amount of any judgments or settlements paid in connection with such litigation or fines or penalties levied as a result of any such proceeding or investigation); (v) insurance and bonding costs; (vi) fees (including legal fees of the Partnership and MSMB) or assessments in connection with any regulatory registrations, qualifications and/or approvals of the Partnership or MSMB, and related compliance fees and expenses, deemed appropriate by MSMB; (vii) the cost of preparation and distribution of reports and statements to Limited Partners; (viii) all filing and recording fees; (ix) all custodial fees, bank service fees, and fees or expenses associated with insuring the Partnership's assets, (x) the Management Fee; and (xi) all applicable federal, state, local and foreign taxes payable by the Partnership.

Certain expenses of the Partnership and MSMB may be borne or reimbursed by broker-dealers executing transactions for the Partnership. See "--*Execution of Portfolio Transactions*" below.

## Organizational Expenses

The organizational expenses to be incurred in connection with the formation of the Partnership, expected not to exceed $25,000, will be paid or reimbursed by the Partnership. For financial reporting and tax purposes, these expenses will be capitalized and amortized ratably over the first 60 months of the Partnership's operations. The General Partner regards such five-year amortization method as more equitable to the Partners than that required under U.S. generally accepted accounting principles, which currently provide that organizational expenses should be charged fully in the period incurred. If such expenses are deemed material for accounting purposes, however, such amortization method may result in a qualification in the auditors' report on the Partnership's financial statements in which case, the General Partner may, in its sole discretion, discontinue such amortization of the Partnership's organizational expenses.

## Execution of Portfolio Transactions

The Advisor will have full investment discretion with respect to the initiation of all securities transactions for the Partnership as well as full authority to select broker-dealers to execute such transactions and to negotiate the rates of compensation the Partnership pays with respect to such transactions. The Partnership's securities transactions may generate a substantial amount of brokerage commissions and other compensation, all of which the Partnership will be obligated to pay. Interactive Brokers ("Interactive Brokers" or the "Prime Broker") will serve as the prime broker for the Partnership.

-25-

R041817

Interactive Brokers will have certain administrative responsibilities, including, but not limited to, the issuance of account statements and information with respect to securities transactions effected through other broker-dealers.  Interactive Brokers will be allocated a portion of the Partnership's securities transactions, subject to principles of best execution.  The Advisor may utilize a number of broker-dealers, in addition to the Prime Broker, to effect transactions for the Partnership.  Broker-dealers will be selected based upon a variety of factors, including the amount of commission, quality of execution, expertise in particular markets, the reputation, experience and financial stability of the broker-dealer involved and the quality of service, familiarity both with investment practices generally and the techniques employed by the Partnership, research and analytic services and clearing and settlement capabilities, subject at all times to principles of best execution.  In addition to using brokers as "agents" and paying commissions, the Partnership may buy or sell securities directly from or to dealers acting as principal at prices that include markups or markdowns, and may buy securities from underwriters or dealers in public offerings at prices that include compensation to the underwriters and dealers.  The Advisor may, in its sole discretion, change the prime broker of the Partnership.

In addition to the foregoing principles of broker-dealer selection, the Advisor intends to allocate a portion of the Partnership's brokerage business to brokers on the basis of certain considerations, including the investment research provided by such firms, securities allocation, the availability of margin or other leverage, block positioning or other special execution capabilities or other services and products provided to the Partnership and/or MSMB.  Such services may include, but not be limited to, written information and analyses concerning specific securities, companies or sectors; market, financial and economic studies and forecasts; financial publications; statistic and pricing services, as well as discussions with research personnel, along with hardware, software, databases and other technological, technical and telecommunication services (including wireless services), lines and equipment utilized in the investment management process (including updates, modifications, improvements, maintenance, offsite or onsite backup, repairs and replacements), facilitation of meetings with company management, participation in conferences, office space and facilities, and research related travel and entertainment expenses.  In so allocating brokerage, the commissions the Partnership will pay to such broker-dealers may not necessarily represent the lowest commission rate available, but will reflect the Advisor's evaluation of the research and other services supplied by such brokers and which benefit the Partnership, either alone or together with the other clients of MSMB.  In each case, the Advisor will make a determination that the amount of any increased commission costs on account of such research or other services is reasonable relative to the value of services so provided.

The Advisor also intends to allocate brokerage on the basis of broker-dealers' agreements to pay all or part of certain expenses that would otherwise be borne by the Partnership, such as its legal, audit, accounting, and other operating expenses, described above under "*Operating Expenses*", or by MSMB, or on the basis of broker-dealers' agreements to otherwise furnish the same to the Partnership or MSMB, such as office space, equipment and other services including, but not limited to: a license to access and use office space(s) and equipment; ancillary office services and amenities; computer equipment; telephone equipment; access to computer and telephone network(s); telephone, data, and internet connections and transmission services; hardware and software; use of furniture and appliances; use of technical and office personnel; portfolio management and accounting equipment, applications and services; utilities; office supplies, data and records management; mail services; facilitation of research and market data subscriptions and services; and consultation services.  Some of the services may or may not be reimbursed and may be provided at, below, or above market cost to MSMB.  The Advisor may also determine to allocate a portion of the Partnership's brokerage business to firms whose employees participate as brokers in the introduction of investors to the Partnership or who agree to bear the expense of capital introduction, marketing or related services by third parties.  It should be noted, that it is expected that the provision of some or all of these items may be tied to a minimum level of commission business that is generated by the Partnership and such items may be paid for through "soft" or commission dollars.

-26-

R041818

To the extent such allocations result in the payment by such brokers of expenses that would otherwise be borne by MSMB, MSMB may realize an economic benefit from such transactions. The Partnership may be deemed to be paying for these services with "soft" or commission dollars. Although the Advisor believes that the Partnership will benefit from many of the services obtained with soft dollars generated by Partnership portfolio transactions, the Partnership may not benefit exclusively. MSMB and the other accounts or entities managed by MSMB may also derive direct or indirect benefits from some or all of these services, particularly to the extent that MSMB uses "soft" or commission dollars to pay for expenses that MSMB may otherwise be required to pay. The Advisor intends to allocate "soft" dollars and other benefits among the Partnership and any other accounts or entities managed by MSMB, however, "soft" dollars and other benefits may not necessarily be allocated proportionately to the accounts which actually generated such "soft" dollars or other benefits.

The relationships with broker-dealers that provide soft dollar services to MSMB may influence the Advisor's judgment in allocating brokerage business and create a conflict of interest in using the services of those broker-dealers to execute the Partnership's portfolio transactions. The Advisor believes that these relationships will be beneficial to MSMB and the Partnership, but the Partnership trades executed through these firms may or may not be at the best price otherwise available. Prospective investors who consider such soft dollar practices material to their investment decision should consult with the Portfolio Manager.

Section 28(e) of the U.S. Securities Exchange Act of 1934, as amended (the "Exchange Act") provides a "safe harbor" to investment managers who use commission dollars of their advisory accounts ("soft" dollars) to obtain investment research and brokerage services that provide lawful and appropriate assistance to the managers in performing investment decision-making responsibilities. Conduct outside of the safe harbor of Section 28(e) is subject to the traditional standards of fiduciary duty under state and federal law. Notwithstanding the Advisor's good faith determination that the amount of commissions the Partnership pays to broker-dealers is reasonable in relation to the value of research, brokerage and other services provided, to the extent that Advisor uses "soft" dollars to pay for products or services that provide administrative or other non-research assistance to MSMB, such payments will not fall within the safe harbor of Section 28(e) but will be lawful if consistent with such other fiduciary standards applicable to the Advisor.

The research obtained through the Partnership's brokerage allocations, whether or not directly useful to it, may be useful to MSMB in connection with services rendered to other accounts or entities managed by MSMB. Similarly, research obtained by MSMB for commissions paid to brokers in the course of managing other accounts or entities may be useful to the Partnership. The Advisor, in considering the reasonableness of brokerage commissions paid by the Partnership, will not attempt to allocate the relative costs or benefits of research as between the Partnership and its other accounts or entities except in limited circumstances where appropriate.

When MSMB deems the purchase and sale of securities to be in the best interest of the Partnership and any other managed accounts or entities, it may aggregate the securities to be purchased or sold in order to obtain superior execution and/or lower brokerage expenses. In particular, execution prices for identical securities purchased or sold on behalf of multiple accounts or entities in any one business day may be averaged. In such events, allocation of the securities purchased or sold, as well as expenses incurred in the transaction, will be made among the Partnership and any other participating accounts or entities by applying such considerations as MSMB deems appropriate, including, without limitation, relative account size of such accounts and entities, amount of available capital, size of existing positions in the same or similar securities, impact of leverage, tax considerations, legal or other restrictions applicable to one or more of such accounts and/or entities, and other factors. Although such

CONFIDENTIAL                                                                                      R041819

allocations may typically be *pro rata* as to the Partnership and other such accounts and entities, they will not necessarily be so, where allocation considerations, such as availability of capital, positions in similar securities or differing objectives dictate a different result. The Partnership may not necessarily be entitled to investment priority over the other managed accounts or entities and may not participate in every investment opportunity. MSMB will endeavor to make all investment allocations in a manner which it considers to be the most equitable to all accounts and clients.

**Clearing and Settlement**

Clearing and settling functions normally include, among other matters, arranging for (i) the receipt and delivery of securities purchased, sold, borrowed and loaned, (ii) the making and receiving of payments therefor, (iii) custody of securities fully paid for or not fully paid for and, therefore compliance with margin and maintenance requirements, (iv) custody of all cash, dividends and exchanges, distributions and rights accruing to the Partnership's account, and (v) tendering securities in connection with cash tender offers, exchange offers, mergers or other corporate reorganizations. So long as Interactive Brokers acts as Prime Broker, the Partnership will clear and settle its securities transactions through Interactive Brokers or its clearing affiliate.

**Custody of Assets**

The General Partner intends to initially entrust the custody of the Partnership's assets to Interactive Brokers. The General Partner may change the Partnership's custodian, or retain additional custodians, in its sole discretion; however, the General Partner will entrust the assets of the Partnership to the custody of a federal or state bank or trust company or a brokerage firm which is a member of the New York or American Stock Exchange, or to foreign banks or firms of comparable standing, and with insurance coverage in scope and amount satisfactory to the General Partner. In no event will the General Partner have physical custody of any of the Partnership's assets.

**Attorneys**

Cobb & Associates LLC, Westport, Connecticut, has acted as counsel to the Partnership in connection with organizational matters. Such firm has also represented the General Partner and its affiliates with regard to the Partnership. Such firm is not purporting to represent the interests of prospective Limited Partners.

**Auditors**

Fulvio & Associates, L.L.P., New York, New York will serve as the Partnership's independent accountants. Such firm will audit the annual financial statements of the Partnership and prepare a statement of each Partner's capital account for such year. Following the end of each fiscal year of the Partnership, the General Partner will deliver to each Limited Partner a copy of the audited financial statements of the Partnership as well as certain tax information required to prepare its income tax returns. The General Partner will have the right to change the auditing and accounting firms for the Partnership without the consent of the Limited Partners.

## THE PARTNERSHIP AGREEMENT

The rights and obligations of the Partnership's Partners will be governed by the Partnership Agreement, the anticipated form of which is included as Exhibit A to this Memorandum. Each prospective Limited Partner should review the entire Partnership Agreement carefully before

-28-

R041820

subscribing.  The statements herein concerning the Partnership Agreement are merely a brief summary of certain provisions thereof, do not purport to be complete and are qualified in their entirety by reference to the Partnership Agreement itself.  Certain capitalized terms used herein have the respective meanings set forth in the Partnership Agreement.  See "*The Partnership – Allocations of Profits and Losses*" above for a description of the Partnership Agreement provisions relating to allocation of profits and losses.

**Term**

The Partnership will commence investment activities upon the election of the General Partner to do so (following receipt of Capital Contributions as it shall deem adequate for such purpose), and will continue until December 31, 2037, unless earlier terminated pursuant to the terms of the Partnership Agreement.

**Management of Partnership**

The General Partner will have full and complete management and control of the business and operations of the Partnership, including investment of the Partnership's assets.  The Advisor has been appointed by the General Partner to serve as investment adviser of the Partnership and, as such, will have full discretionary authority and responsibility over the investment of the Partnership's assets.  Limited Partners will not participate in the management or control of the Partnership's business or operations.  MSMB, as well as its personnel (including the Portfolio Manager), may engage in other business ventures, including those which may be competitive with the operations and business of the Partnership and shall only be required to devote such time to the business of the Partnership as is deemed necessary in their sole discretion.

One or more affiliates of MSMB may in the future be appointed to replace the General Partner and/or the Advisor, or the responsibilities of the General Partner and/or the Advisor with respect to the Partnership, may be assigned to one or more affiliates of MSMB, without the consent of the limited partners, provided, that in any such event Mr. Biestek continues to serve as the Partnership's Portfolio Manager.

**Limited Liability of Limited Partners**

Once a Capital Contribution has been paid for in full, the holder of that Partnership Interest will have no further obligation to make additional Capital Contributions.  A Limited Partner's liability to the Partnership will be limited to the amount he has contributed to the capital of the Partnership and any profits thereon.  To the extent required by law, a Limited Partner may be obligated to return all or part of a withdrawal or other distribution from the Partnership if received at a time when the Partnership had insufficient assets to discharge Partnership liabilities.

CONFIDENTIAL                                                                                                                    R041821

**Valuation of Assets**

For purposes of determining Investment Gains and Losses, Net Operating Profits and Losses and all other purposes under the Partnership Agreement, the assets of the Partnership shall be valued as follows:

(a)      *Listed, NMS, NASDAQ, Etc. Securities.*  Freely marketable securities or other investments that are listed or admitted to trading on any U.S. or foreign stock exchange or the U.S. NASDAQ National Market System or comparable foreign market system (the "NMS"), or reported upon by the National Association of Securities Dealers Automated Quotation System ("NASDAQ") or other primary U.S. or foreign quotation system reporting "last sale" information, shall be valued as follows: (i) at the last reported sale price of the security on the applicable primary exchange reporting system, the NMS, NASDAQ or other quotation system, as the case may be, at the close of business of the regular trading session on the valuation date; or in case there shall have been no sale of such security on such date, then (ii) at the representative "bid" price for such security on such primary reporting system, the NMS, NASDAQ or other system, as the case may be, at the close of business of the regular trading session on the valuation date; or if no such "bid" price is reported on such date, then (iii) at such price as the General Partner deems to be fair value.

(b)      *Marketable Securities Not Subject to "Last Sale" Information.*  Freely marketable securities or other investments traded over-the-counter or in another market but not listed or admitted to trading on any U.S. or foreign stock exchange or the NMS, or subject to any other U.S. or foreign quotation system reporting "last sale" information, shall be valued as follows: (i) at the representative "bid" price at the close of the regular trading session on the date of determination, as reported in the primary U.S. or foreign quotation system (or, if not so reported, then as reported by a recognized quotation service); or, if not so reported, then (ii) at the average representative "bid" prices of one or more primary market-makers or dealers in such securities or other investments on the valuation date; or (iii) if there are no primary market-makers or dealers in such securities or other investments on the valuation date, then at such price as the General Partner deems to be fair value.

(c)      *Securities With a Limited Market.*  Securities or other investments without an active trading market, as hereinafter defined, shall be assigned fair value by the General Partner based upon: (i) recent sale price(s), (ii) opinions of brokers who trade actively in the securities, (iii) comparison with market values for similar companies, (iv) the investment risk and/or potential, (v) marketability (if any) and/or (vi) such other factors as the General Partner, in its sole discretion, deems appropriate.  An "active trading market" shall be deemed to be one in which quotations are available and published on a reasonably consistent basis via an international news wire service to include, but not be limited to, Reuters, Bloomberg, Knight Ridder or Dow Jones.

(d)      *Short Positions.*  Securities held short by the Partnership shall be valued as respectively provided in (a), (b) or (c) above, as applicable, except that the "asked" price shall be substituted for the "bid" price when applicable.  The value of securities or other investments held short by the Partnership shall be treated as a liability of the Partnership and, together with the amount of any margin or other loans on account thereof, shall be subtracted from the Partnership's assets in determining net assets.

(e)      *Options.*  Options listed on an exchange shall be valued at the mean between the representative "bid" and "asked" prices at the close of business on the date of determination and other options shall be valued at their fair value, as determined by the General Partner.  Premiums from the sale of options written by the Partnership shall be included in the assets of the Partnership and the market value of such options shall be included as a liability of the Partnership.

CONFIDENTIAL                                                                                                      R041822

(f)     *Dividends.*   Dividends declared but not yet received, and rights in respect of Investments which are quoted ex-dividend or ex-rights, shall be included at the fair value thereof, less any applicable taxes thereon, as determined by the General Partner which may, but need not, be the fair market value so determined on the day the particular securities are first quoted ex-dividend or ex-rights.

(g)     *Cash Items.*   Short-term money market instruments and bank deposits shall be valued at cost (together with accrued and unpaid interest) or market, depending on the type of investment, as the General Partner shall deem appropriate.

(h)     *Other Assets.*   The value of any other Partnership assets (or the value of the assets mentioned in paragraphs (a) through (g) above in situations not covered thereby, or in the event of any other happening determined by the General Partner in its discretion to make another method of valuation advisable) shall be their fair value determined in such manner as may be selected from time to time by the General Partner in its discretion.

(i)     *Liabilities.*   All liabilities of the Partnership, including appropriate accruals for the Management Fee and other expenses, accruals for interest due and any reserve or reserves deemed appropriate by the General Partner, for any contingent liabilities, shall be treated as liabilities of the Partnership and subtracted from total assets to determine net assets.

The General Partner's pricing determinations, so long as made in good faith, shall be final and conclusive as to all of the Partners.  To the extent applicable to valuation of any of the aforesaid assets, the General Partner shall follow generally accepted accounting principles, except when it in its discretion deems the same to be inequitable or inappropriate.

**Withdrawals by Partners**

Limited Partners may withdraw any or all of their Capital Accounts, subject to certain reserves which may be established by the General Partner to cover contingent liabilities of the Partnership, monthly, as of last day of each calendar month, commencing one full month after the date of their initial investment in the Partnership, upon not less than 30 days prior written notice to the General Partner.  No partial withdrawal request that is less than $50,000 or that would reduce a Limited Partner's Capital Account below the lesser of a Limited Partner's initial Capital Contribution or $100,000 (or such lesser amount as may be determined by the General Partner) will be permitted, unless waived by the General Partner.

Limited Partners may not withdraw at other times nor transfer or assign their Partnership Interests to others without the consent of the General Partner, which is in the sole discretion of the General Partner. In connection with any withdrawal by a Limited Partner requiring the General Partner's consent, the General Partner may deduct for the account of the Partnership a withdrawal fee from the withdrawing Limited Partner's Capital Account in such amount as the General Partner shall deem appropriate.

The General Partner, in its sole discretion, may waive, reduce or modify any terms related to withdrawals for a Limited Partner pursuant to a written agreement with the Limited Partner, or otherwise.

Limited Partners withdrawing 90% or less of their Capital Account will receive payment from the Partnership of the withdrawn amount within 30 days following the effective withdrawal date. Limited Partners withdrawing over 90% of their Capital Account will receive 90% of the amount withdrawn within 30 days following the effective withdrawal date, and the balance of the amount

-31-

withdrawn within 30 days following delivery of the audited financial statements of the Partnership inclusive of the withdrawal date, together with interest on such latter amount (at the prevailing rate applicable to Partnership credit balances) accruing from the withdrawal date, unless the General Partner consents to delivery of such remaining balance at an earlier date.  The General Partner may require a Limited Partner to withdraw all or any part of his Capital Account from the Partnership at any time, for any reason, including without limitation, after the date a Limited Partner makes a voluntary withdrawal request and prior to the date the withdrawal proceeds are required to be tendered to such Limited Partner.

Notwithstanding the foregoing, in the event of a complete withdrawal by a Limited Partner which has an interest in securities without an active trading market held by the Partnership, such Partner shall nonetheless remain a Limited Partner for the limited purpose of appropriately allocating and distributing such Partner's ratable share of net realized gains as to such securities as promptly as practicable following the disposition of such securities, unless the General Partner elects in lieu thereof to distribute in kind such Partner's share of such securities as of the withdrawal date.

The General Partner will have the right, in its sole discretion, to suspend all withdrawals by Limited Partners during one or more of the following circumstances:  (i) during the existence of any state of affairs which, in the opinion of the General Partner, makes the disposition of the Partnership's investments impractical or prejudicial to the Partners, or where such state of affairs, in the opinion of the General Partner, makes the determination of the price or value of the Partnership's investments impractical or prejudicial to the Partners; or (ii) where any withdrawals or distributions, in the opinion of the General Partner, would result in the violation of any applicable law or regulation.  All Limited Partners will be notified of any such suspension, and the termination of any such suspension, by means of a written notice, delivered as promptly as is practicable, from the General Partner.

The General Partner may, in its sole discretion, make distributions to any Limited Partner withdrawing all or any part of his Capital Account or upon dissolution of the Partnership wholly or in part in portfolio securities or other assets of the Partnership (and valued in the same manner as in computing net asset value pursuant to the Partnership Agreement).  Such distributions may consist of such assets selected by the General Partner and may not be *pro rata* as to all assets of the Partnership.

As of any monthly withdrawal date, the General Partner may withdraw any or all of its Capital Account, without notice to or action by the Limited Partners.

**New Issues**

The Partnership Agreement contains provisions intended to comply with the requirements of Rule 2790 (the "New Issue Rule") of the Rules of Conduct of the National Association of Securities Dealers, Inc. (the "NASD"), governing the purchase of certain "new issue" securities, which are generally underwritten initial public offerings of common equity ("New Issue Securities").  Specifically, the Partnership Agreement will provide that if the Partnership purchases any New Issue Securities and the allocation of any item of cost, expense, profit, gain, income or loss with respect to such New Issue Securities (a "New Issue Item") would result in an aggregate allocation thereof to Partners (including the General Partner) who are "restricted persons" within the meaning of the New Issue Rule ("Restricted Partners") in excess of 10% (or such other maximum percentage then permitted by the New Issue Rule) of the amount of such New Issue Item allocated to all Partners, then the amount of such excess allocation shall be immediately re-allocated solely to those Partners who are not Restricted Partners in accordance with the general profit and loss allocation provisions under the Partnership Agreement.

-32-

R041824

**Amendments**

The Partnership Agreement may be amended at any time upon the written consent of the General Partner and Limited Partners holding a majority in amount of the Capital Accounts of the Limited Partners, to the extent permitted by law. In addition, the General Partner will have the right, without consent or prior notice to the Limited Partners, to make certain technical amendments to the Partnership Agreement or amendments which do not adversely affect any existing Limited Partner, provided, however, that without the specific consent of each Partner adversely affected thereby, no amendment may (i) reduce the Capital Account of any Partner or impair his rights of withdrawal with respect thereto, (ii) change the respective liabilities of the General Partner and the Limited Partners, (iii) have the effect of allocating net profits and losses generally other than in proportion to the respective Capital Account balances of the Partners, subject to the General Partner's Incentive Allocation; or (iv) change the provisions of the Partnership Agreement regarding amendments. Prospective Limited Partners should be aware, accordingly, that other than the specific amendments enumerated above, amendments to the Partnership Agreement affecting their interests may be made without necessarily obtaining their consent.

**Financial Records and Reports**

The General Partner, at the Partnership's expense, shall engage an independent certified public accounting firm to audit the annual financial statements of the Partnership. The General Partner shall also provide income tax information to each Limited Partner to enable them to file their federal, state and local income tax returns. Each Limited Partner will be sent the annual audited financial statements of the Partnership and annual tax information as soon as practicable after the end of each fiscal year. The General Partner will also send to each Limited Partner a report as to the Partnership's performance following the end of each fiscal quarter.

The Partnership Agreement designates the General Partner as the "tax matters partner" of the Partnership. As such, the General Partner will receive the IRS's initial notice with respect to any Partnership administrative adjustment initiated by the IRS. Although each Limited Partner will be entitled to participate in the administrative proceedings at the Partnership level, the General Partner will determine whether the Partnership, as such, will challenge any adjustment proposed by the IRS.

**Liquidation of the Partnership**

The General Partner may at any time determine to liquidate and dissolve the Partnership without any action by the Limited Partners. In addition, the General Partner may at any time, with the written consent of Limited Partners holding not less than two-thirds (66-2/3%) in amount of the Capital Accounts of the Limited Partners, withdraw from the Partnership and appoint a successor General Partner. Upon the adjudication of bankruptcy or insolvency of the General Partner, the Limited Partners may, upon the written consent of Limited Partners holding not less than two-thirds (66-2/3%) in amount of the Capital Accounts of the Limited Partners, continue the Partnership and appoint a successor General Partner or Partner. In the absence of such written consent, the Partnership will be dissolved. The General Partner will be deemed to have withdrawn as a general partner of the Partnership upon its bankruptcy, insolvency, liquidation or dissolution.

## CERTAIN TAX MATTERS

The following summary represents certain federal income tax considerations, as well as certain other tax matters, applicable to an investor in the Partnership. This summary is based upon the Internal Revenue Code of 1986, as amended (the "Code"), Treasury regulations, Internal Revenue Service

CONFIDENTIAL

R041825

("IRS") rulings and decisions now in effect, which are subject to change, and any such change could affect the substance of this summary. Moreover, currently and in recent years the U. S. Congress has considered various major federal income tax legislative proposals, many of which, if passed, would change substantially a number of the significant Code provisions discussed below. Prospective Limited Partners, together with their tax advisors, should familiarize themselves with relevant aspects of any such pending legislation.

This summary does not discuss all aspects of federal income taxation that may be relevant to a particular Limited Partner in light of his personal investment circumstances or to certain types of Limited Partners subject to special treatment under the Code (for example, insurance companies, banks, dealers in securities, foreign persons and, except as specifically discussed under "--*Investment by Tax-Exempt Entities*" below, tax-exempt organizations) and does not discuss any aspects of state, local, or foreign tax laws which may be applicable to a Limited Partner. **This summary is not intended or written to be used, and cannot be used, for the purpose of avoiding U.S. federal, state, or local tax penalties. Accordingly, a prospective Limited Partner is urged to consult his or its own tax advisors regarding an investment in the Partnership and its consequences.**

**Partnership Status**

Treasury regulations provide rules for determining when an unincorporated organization may be classified as a partnership, rather than an association taxable as a corporation. Under Treasury regulations, a newly formed domestic entity that is not denominated as a corporation will be automatically classified as a partnership, unless an election is filed to classify the entity as an association. The Partnership will not file such an election and no other affirmative action need be taken to ensure that its partnership classification is retained. Under a transition rule in the final regulations, the IRS generally will not challenge a partnership's classification as such for periods to which existing regulations apply if the entity had a reasonable basis for the claimed classification. Accordingly, by reason of such regulations the General Partner believes the Partnership will be treated as a partnership and not as a corporation for federal tax purposes.

Under the Code, certain partnerships whose interests are actively traded on an established securities market, or are readily tradable on a secondary market "or the substantial equivalent thereof" may be treated as "publicly traded partnerships" ("PTPs"). PTPs lose their status as partnerships for federal income tax purposes and are generally taxed as corporations. Treasury regulations provide, however, that partnerships with income solely from transactions in securities and certain other instruments are excluded from PTP status. By reason of the foregoing, and upon advice of counsel, the General Partner believes that the Partnership will not qualify as a PTP and therefore will be treated as a partnership for Federal income tax purposes.

**Taxation of Limited Partners Generally**

The Partnership, as an entity, assuming that it is treated as a partnership for federal purposes, will not be subject to any federal income tax and each Limited Partner, in computing his own federal income tax liability for a taxable year, will be required to take into account his allocable share of all items of Partnership income, gain, loss, deduction or credit for the Partnership taxable year ending within or with such taxable year of the Limited Partner, regardless of whether such Limited Partner has received any distributions from the Partnership. The General Partner does not currently expect to make regular distributions to Partners but rather to reinvest any realized gains and income of the Partnership. Thus, each Limited Partner should be prepared to satisfy any income tax liability as to his share of Partnership items from funding sources other than Partnership distributions.

-34-

The amount of tax due, if any, with respect to gains and income of the Partnership is determined separately for each Limited Partner.  The Partnership is required to file annually an information return on IRS Form 1065 and, following the close of its taxable year, to provide each Limited Partner with a Schedule K-1 indicating such Limited Partner's share of the income, gain, losses, deductions, credits and items of tax preference of the Partnership.  Each Limited Partner, however, is responsible for keeping his or her own records for determining such Limited Partner's tax basis in his or her Partnership interest and calculating and reporting any gain or loss resulting from a distribution or disposition of a Partnership interest.

The Partnership will use the accrual method of accounting to determine its profit or loss for federal income tax purposes.  The Partnership will adopt the calendar year as its taxable year for accounting and income tax purposes.  In the unlikely event, however, that one or more Limited Partners having an aggregate interest in Partnership profits and capital of more than 50%, or all Limited Partners having a 5% or greater interest in profits or capital, have a taxable year other than the calendar year (disregarding for this purpose certain Limited Partners that are not subject to U.S. federal income taxation), the Partnership may be required to adopt or change to a taxable year other than the calendar year.

**Partner's Allocable Share of Gains, Income and Loss**

Allocations of Partnership gains, income and losses will be valid under applicable Treasury regulations if they meet the "substantial economic effect" test, or are made in accordance with the Partner's Partnership Interests.  Under the Partnership Agreement, allocations of profits and losses for tax purposes are to be made in accordance with the Partners' respective economic interests in the Partnership and applicable Treasury regulations.  Moreover, the General Partner will, as a matter of policy, seek to allocate realized gains and losses for tax purposes to those Partners who received the economic benefit of such gains or losses in prior periods.  However, because such Treasury regulations are complex and subject to interpretation, and on account of possible limitations imposed by such regulations or by practical circumstances on the Partnership's ability to make uniform allocations for both economic and tax purposes, there can be no assurance that allocations of gains and losses made for tax purposes will necessarily coincide with allocated economic benefits in all cases or that the IRS would not interpret such regulations to require that particular allocations be made in a manner different from that made by the Partnership.  If the allocations provided by the Partnership Agreement are not respected by the IRS for federal income tax purposes, the amount of income or loss, if any, allocated to any Limited Partner for federal income tax purposes may be increased or reduced.

Under the allocation provisions in the Partnership Agreement, in the event of the withdrawal of a Limited Partner from the Partnership, the General Partner will have the right to make a special allocation of realized gains and losses of the Partnership to the withdrawing Partner, but only if and to the extent that the withdrawing Partner would otherwise have an equivalent taxable gain or loss with respect to his Partnership Interest upon the withdrawal.  The purpose of such provision is to more equitably allocate realized gains and losses to the Partners without adversely affecting either the withdrawing or continuing Partners.  There is no assurance, however, that such special allocation provision will necessarily be accepted by the IRS.

The amount of any Partnership loss (including capital loss) allocated to a Limited Partner pursuant to the Partnership Agreement will be includable on his personal income tax return subject to various limitations.  First, such allocated loss will be limited to the adjusted tax basis of his Partnership Interests which is "at risk" as of the Partnership taxable year in which such loss occurs.  Second, because of the limitations imposed upon the deductibility of capital losses, a Limited Partner's allocable share of the Partnership's net capital losses, if any, may not materially reduce a Limited Partner's federal income

CONFIDENTIAL

R041827

tax on ordinary income.  See "--*Capital Gain and Loss Provisions*" below.  Third, a Limited Partner's allocable share of certain expenses of the Partnership (for example, accounting and legal fees) may constitute miscellaneous itemized deductions which will only be deductible by an individual Limited Partner who itemizes deductions to the extent that such deductions, together with the Limited Partner's other miscellaneous itemized deductions, exceed 2% of his adjusted gross income, unless the Partnership qualifies as a "trader" for federal income tax purposes.  See "--*Limitation on Deduction of Certain Expenses*" below.

**Character of Gains and Losses**

In general, gain or loss recognized by the Partnership on the disposition of an asset will be a capital gain or loss.  However, gain recognized on the disposition of a debt obligation purchased by the Partnership at a market discount (generally, at a price less than its principal amount) will be treated as ordinary income to the extent of the portion of the market discount which accrued during the period of time the Partnership held the debt obligation.  For purposes of determining whether capital gain or loss recognized by the Partnership on the disposition of an asset is long-term or short-term, the holding period of the asset may be affected if (i) the asset is used to close a "short sale" (which includes for certain purposes the acquisition of a put option) or is substantially identical to another asset so used, (ii) the asset is otherwise held by the Partnership as part of a "straddle" (which term generally excludes a situation where the asset is stock and the Partnership grants a qualified covered call option (which, among other things, must not be deep-in-the-money) with respect thereto) or (iii) the asset is stock and the Partnership grants an in-the-money qualified covered call option with respect thereto.  In addition, the Partnership may be required to defer the recognition of a loss on the disposition of an asset held as part of a straddle to the extent of any unrecognized gain on the offsetting position.  Any gain recognized by the Partnership on the expiration of, or any gain or loss recognized by the Partnership from a closing transaction with respect to, an option written by the Partnership will be treated as a short-term capital gain or loss.

**Section 475 Election**

Depending upon circumstances the General Partner may elect to have "mark-to-market" treatment applied to the Partnership's activities, as a securities trader, under Code Section 475(f), in order to avoid the potentially adverse impact of the wash sale and mixed straddle provisions of the Code, and to simplify the Partnership's tax reporting.  By reason of such an election, effectively all of the gains and losses of the Partnership relating to "securities," as defined, would be treated as ordinary income or loss rather than capital gain or loss.  With respect to securities held at the end of the tax year, such gain or loss will be determined as if such securities were sold at their fair market value at year-end.  In the event of such election Limited Partners will accordingly be subject to tax at ordinary income rates on their allocable share of the Partnership's taxable gains and income, irrespective of the Partnership's actual holding period for such securities, including tax based upon unrealized appreciation at year-end as aforesaid.

**Short Sales**

The Partnership will be subject to certain short sale rules which may affect the character and timing of gain or loss recognized by the Partnership for federal income tax purposes.  Under these rules, a short sale not otherwise covered by the straddle rules remains open until the short seller delivers the property to the lender and closes the transaction.  Any gain or loss from closing a short sale is generally treated as gain or loss from the sale or exchange of a capital asset.  Any such gain will be short-term capital gain, if the taxpayer holds no offsetting long position and, on the date of such short sale, the taxpayer holds substantially identical property for one year or less or if the taxpayer acquires substantially identical property prior to closing such short sale.  Any loss sustained on closing the short sale is a long-

CONFIDENTIAL

term capital loss if the taxpayer holds at the time of the short sale substantially identical property for more than one year.  If a short sale is entered into as part of a straddle, the "modified short sale rule" applies in lieu of the normal short sale provision and certain carrying charges properly allocable to positions of the straddle must be capitalized.  Under the modified short sale rule, the holding period of any position that is part of a straddle is suspended and does not begin to run again until the offsetting position is disposed of.  Thus, in the case of a taxpayer who is not a dealer, any gain from the disposition of the short position is generally short-term capital gain.  However, any loss on one position of a straddle is long-term capital loss, if, at the time the straddle was established, the other position was held for more than one year.

**Constructive Sales**

The Code treats certain common financial transactions as "constructive sales" of related appreciated property that is stock, a partnership interest or certain debt instruments.  For example, a short-against-the-box transaction (*i.e.*, a short sale of stock where the taxpayer also holds the stock) will be treated as a constructive sale of the appreciated stock sold short.  A futures or forward transaction or a total return swap may also give rise to a constructive sale of the related appreciated property.  A constructive sale will accelerate gain but not loss.  The Code provides special rules to prevent the application of the constructive sale rule if: (i) the transaction is closed within 30 days after the end of the taxable year (*i.e.*, the offsetting positions are closed); (ii) the appreciated financial position is held for 60 days following the date the transaction is closed; and (iii) at no time during such 60-day period is the holder's risk of loss with respect to such financial position reduced.  If applicable to the Partnership, the constructive sale provision would accelerate gains.

**Capital Gain and Loss Provisions**

The top marginal individual tax rate on adjusted net capital gains is currently 15%.  Such rate applies to assets held for more than one year and is applicable to both the regular income tax and the alternative minimum tax.  Net short-term gains not qualifying for such long-term treatment are generally subject to tax at ordinary income rates.

Qualifying dividends received by an individual (including, in the case of a partnership, its partners who are individuals) from domestic corporations and qualified foreign corporations will be treated as net capital gains for purposes of applying the capital gains rates for both the regular income tax and the alternative minimum tax.

Under Code Section 1211, an individual taxpayer can deduct up to $3,000 ($1,500 for married taxpayers filing separately) of net capital losses against ordinary income in any year.  Excess capital losses that are not used to reduce ordinary income in a particular taxable year may be carried forward to, and treated as capital losses incurred in, future years.  A corporate taxpayer can deduct capital losses only against capital gains, and any net capital loss can generally be carried back three years and carried forward five years.

**Limitation on Deduction of Certain Expenses**

Depending upon whether the Partnership is classified as an "investor" or a "trader" for federal income tax purposes, all or a portion of the Partnership's expenses, including the Management Fee, may be subject to the "2% floor" rule under Code Section 67 with respect to miscellaneous itemized deductions and thus may not be deductible by an individual Limited Partner.  Such classification of the Partnership will depend upon its securities activities, including trading frequency, holding periods and other factors.  Based upon its contemplated activities, and discussions with its professional advisors, the General Partner believes it likely that the Partnership will be classified as a "trader" and the "2% floor"

-37-

R041829

limitation on miscellaneous deductions will not be applicable to Partnership expenses recognized by Limited Partners. In the event, however, that the IRS were to regard the Partnership as an "investor," then each Limited Partner's share of such expenses plus all of the Limited Partner's other miscellaneous itemized deductions (such as personal investment advisory, legal and accounting fees) would be deductible only to the extent such amount exceeds 2% of the Limited Partner's adjusted gross income.

**Limitation on Deductions of Interest**

The deduction by an individual Limited Partner of his allocable share of interest expenses of the Partnership, or of any interest expense of the Limited Partner paid or accrued on indebtedness properly allocable to the Limited Partner's Partnership Interest, may be subject to the investment interest limitation rules of Code Section 163(d), which provision limits an individual taxpayer's deduction of investment interest expense in any year to his net investment income for such year, as defined in such section. As described below, the Partnership's activities will not be treated as passive activities preventing treatment of such interest as an investment expense and application of this limitation rule. The amount disallowed may be carried over to and deducted in subsequent years to the extent it would be deductible if incurred in that year. This limitation, if applicable, will be computed separately by each Limited Partner and not by the Partnership.

**Income and Losses from Passive Activities**

Code Section 469 significantly restricts the deductibility of losses incurred from business activities in which the taxpayer (limited to individuals, certain estates and trusts, personal service corporations or closely held corporations) does not materially participate ("passive activities"). Such losses generally will be deductible only to the extent of income from other passive activities. Portfolio income (such as dividends, interest, royalties and gains from the sale of property producing such income or held for investment) is not treated as income from a passive activity. Further, under temporary Treasury regulations, an activity of trading personal property for the account of owners of an interest in the activity is not to be considered a passive activity. Therefore, a Limited Partner's allocable share of Partnership's income or gain should be treated as income not derived from a passive activity and may not be offset by passive losses which the Limited Partner may have from other investments.

**Distributions of Cash**

The amount of cash distributions from a partnership generally is not equivalent to the amount of partnership income as determined for federal income tax purposes. If cash distributions to a Limited Partner during or with respect to any calendar year exceed the Limited Partner's share of the Partnership's taxable income for that year, the excess will constitute a return of capital to the Limited Partner for federal income tax purposes to the extent of the adjusted tax basis of his Partnership Interests. A return of capital will not be reported as taxable income by a Limited Partner for federal income tax purposes, but it will reduce (but not below zero) the adjusted tax basis of his Partnership Interests. Cash distributions by the Partnership to a Limited Partner normally will not be taxable to a Limited Partner to the extent his adjusted tax basis equals or exceeds the cash distribution received. Any cash distribution in excess of a Limited Partner's adjusted tax basis will be taxable as a gain from a sale or exchange of his Partnership Interests and generally will be treated as a sale of a capital asset.

**Capital Withdrawals**

If a Limited Partner withdraws amounts from its Capital Account, and the withdrawal payment is satisfied solely in cash, the following rules will generally apply: (i) the Limited Partner will recognize a gain to the extent the withdrawal payment exceeds the Limited Partner's adjusted tax basis in

CONFIDENTIAL

R041830

its Partnership Interest; and (ii) in the case of a complete withdrawal, the Limited Partner will recognize a loss to the extent of any excess of such adjusted tax basis over the amount of the withdrawal payment. Any such gain or loss will be treated as from a sale or exchange of a capital asset. See "--*Income and Losses from Passive Activities*" above for discussion of the characterization of the income, gain or loss derived from the Partnership.

**Sales or Transfers of Partnership Interests**

Upon the sale or exchange of Partnership Interests, the selling Limited Partner generally will recognize capital gain or loss measured by the difference between the consideration received and the adjusted tax basis of the Partnership Interests (adjusted for the Limited Partner's allocable share of Partnership income, gain, loss or deduction attributable to the Partnership Interests for the portion of the year the Partnership Interests are owned by the Limited Partner). Such capital gain or loss will be treated as long-term gain or loss if the Limited Partner held the Partnership Interests for longer than one year. See "--*Income and Losses from Passive Activities*" above, regarding the characterization of gains and losses resulting from the sale or transfer of Partnership Interests.

**Alternative Minimum Tax**

The Code provides a two-tier, graduated rate schedule for the alternative minimum tax applicable to individuals. A taxpayer is liable for the alternative minimum tax in addition to, but only to the extent it exceeds, the taxpayer's regular tax. A taxpayer's alternative minimum taxable income is essentially its taxable income, as adjusted for certain items and increased by items of tax preference. The alternative minimum tax is not imposed on the Partnership, as such. Instead, each Limited Partner takes into account its share of the Partnership's tax preference and other items for the purpose of computing its liability for the alternative minimum tax. Therefore, prospective Limited Partners are urged to consult their own tax advisors with respect to the effect of an investment in the Partnership on their own alternative minimum tax situation.

**Other Tax Elections**

The Code provides, in certain instances, for optional adjustments to the basis of Partnership property upon cash distributions to a partner and transfers of interests, provided that a Partnership election has been made pursuant to Section 754 of the Code. The general effect of such an election is that transferees of interests are treated, for purposes of computing gain, as though they had acquired a direct interest in the Partnership assets. The General Partner may, but is unlikely to, make such an election. If such election is not made, a transferee of Partnership Interests will be allocated gain or loss from the sale of a Partnership asset based on the transferee's share of the Partnership's tax basis (generally, its cost) in such asset, rather than on the portion of the transferee's purchase price for its Partnership Interests allocable to such asset.

The Code provides for mandatory elections pursuant to Section 754 under certain circumstances.

The General Partner intends to cause the Partnership to adopt the accrual method of accounting and December 31 as its fiscal year-end.

**Tax Shelter Regulations**

The IRS has issued regulations regarding certain tax shelter matters pursuant to Section 6011 of the Code. The regulations set forth rules for disclosure of reportable transactions, registration of

CONFIDENTIAL

R041831

reportable tax shelters and list maintenance of potentially abusive tax shelters. Among other matters, taxpayers will be required to report (on Form 8886, which is to be filed with the annual tax return) certain "reportable transactions," as defined, which include certain IRS listed transactions, confidential transactions, transactions with contractual protection, loss transactions, transactions with a significant book-tax difference and transactions with a brief asset holding period. Although the General Partner will endeavor to advise Limited Partners as to transactions known to it to be reportable under such provisions, Limited Partners will be responsible for determining whether the reporting rules or other provisions of the regulations will apply to them and should consult their own tax advisers in this regard. Failure to comply with Section 6011 can involve significant penalties.

**Possible Tax Audits**

An audit of the Partnership's federal informational tax return may precipitate an audit of the Limited Partner's federal income tax returns. Further, any such audit might result in adjustments by the IRS to items of non-Partnership income or loss. Any additional federal income tax due as a result of any such adjustment will bear interest (compounded daily) at rates established quarterly by the IRS.

The Code provides procedures for partnership tax audits that will apply to the Partnership. Under these procedures, the tax treatment of items of Partnership income, loss, deduction and credit will be determined in a unified audit of the Partnership and all Limited Partners are required, on their individual returns, to treat Partnership items in a manner that is consistent with the treatment of such items on the Partnership's return. This unified concept applies in judicial as well as administrative proceedings. The Code contains elaborate procedural rules for the implementation of these procedures.

In particular, investors should note that the Code creates the concept of a "tax matters partner," which, in the case of the Partnership, is the General Partner. The tax matters partner is required by Treasury regulations to keep other partners informed of all administrative and judicial proceedings and has certain other responsibilities and obligations. If the tax matters partner fails to seek judicial review of a proposed adjustment of partnership items, other partners may seek such review. Only one judicial proceeding may proceed with respect to a partnership.

**Certain Foreign Taxes**

The Partnership may invest from time to time in debt and equity securities and related instruments of foreign companies that are traded in U.S. markets. Interest or dividends that may be received by the Partnership from sources within foreign countries may be subject to foreign taxes withheld at the source. The United States has entered into tax treaties with many foreign countries that may entitle the Partnership to a reduced rate of, or exemption from, taxes on such income. It is impossible to determine the effective rate of foreign tax in advance because the amount of the Partnership's assets to be invested in various countries is not known. Each Partner will be required to include in gross income its allocable share of the entire foreign source interest or dividends (without reduction for the foreign taxes withheld thereon or otherwise payable by the Partnership with respect thereto) but will be treated as having paid its allocable share of such foreign taxes and will therefore be allowed to either deduct such amount in computing taxable income or use such amount (subject to various Code limitations) as a foreign tax credit against federal income tax (but not both).

**Certain New York Tax Matters**

The Partnership should not be subject to the New York City unincorporated business tax, which is not imposed on a partnership that purchases and sells securities for its own account. By reason of a similar "own account" exemption, a nonresident individual Partner should not be subject to New

CONFIDENTIAL

R041832

York State personal income tax with respect to its share of income or gain realized directly by the Partnership. A nonresident individual Partner will not be subject to New York City earnings tax on nonresidents with respect to its investment in the Partnership.

New York State has adopted regulations that, in general, treat a non-New York corporation as doing business in New York, and therefore subject to New York franchise tax, if it owns certain limited partnership interests in a partnership doing business in New York. The regulations, however, contain an exception where the partnership is a "portfolio investment partnership," which is defined generally as a partnership that meets the gross income requirements of Section 851(b)(2) of the Code. Based upon the Partnership's current investment policies, the General Partner believes that the Partnership will qualify as a portfolio investment partnership under the Code and current regulations.

The New York City Department of Finance has adopted similar regulations providing that a corporation whose only contact with New York City is the ownership of a limited partnership interest in a "portfolio investment partnership" (defined as above) will not be deemed to be doing business in New York City (and therefore not subject to the New York City general corporation tax), provided that the corporation is not actively engaged in the partnership business, does not control the partnership or any general partner and has no intent of tax avoidance. Accordingly, a corporate Limited Partner not otherwise engaged in business in New York City and otherwise meeting the foregoing test is unlikely to be subject to the New York City corporation tax solely by reason of an investment in Partnership Interests, by reason of the Partnership's status as a portfolio investment partnership.

**Other State and Local Taxes**

In addition to the federal income tax and certain New York State and city tax consequences described above, prospective investors should consider other potential state and local tax consequences of an investment in the Partnership. State and local laws often differ from Federal income tax laws with respect to the treatment of specific items of income, gain, loss, deduction and credit. A Partner's distributive share of the taxable income or loss of the Partnership generally will be required to be included in determining its reportable income for state and local tax purposes in the jurisdiction in which it is resident. Prospective Limited Partners should consult their own tax advisors in this regard.

**Investment by Tax-Exempt Entities**

Before investing in the Partnership, a tax-exempt investor should consider the special income tax rules applicable to it. The following discussion relates solely to the issue of "unrelated business taxable income" under the Code and no other federal, state or local income tax matters.

Qualified pension plans, individual retirement accounts and certain other tax-exempt entities ("Exempt Investors") are subject to federal income tax with respect to any "unrelated business taxable income" (determined in accordance with Code Sections 511 through 514) and are required to file federal income tax returns if they have gross unrelated business income in excess of $1,000, whether or not any tax is actually due.

"Unrelated business taxable income" includes income derived from a trade or business carried on by a tax-exempt entity or by a partnership of which the entity is a member. Under the Code, any gain or income earned from "debt financed" property is treated as income from an unrelated business. As described elsewhere herein, the Partnership will incur margin indebtedness in connection with its investment activities and a ratable portion of income and gains on any such leveraged investments would be unrelated business taxable income. Further, if an Exempt Investor incurs a debt to acquire its Partnership Interests, income such Exempt Investor derives from the Partnership will be unrelated

-41-

R041833

business taxable income. **Accordingly, an investment in the Partnership is likely to result in some unrelated business taxable income for an Exempt Investor, which could be substantial. Exempt Investors are urged to consult their own tax advisors in this regard.**

On account of the adverse impact of unrelated business taxable income, in any amount, on the status of charitable remainder trusts, such trusts will not be permitted to invest in the Partnership.

Under Code Section 512(c)(2), all income derived by tax exempt entities from publicly traded partnerships is treated as unrelated business taxable income. However, based on Treasury regulations and as noted above, it is the General Partner's belief that the Partnership should not be treated as a publicly traded partnership.

**Investment by Non-U.S. Partners**

In general, a Partner who is not a U.S. citizen, resident or non-resident alien or otherwise generally subject to U.S. income tax (a "non-U.S. Partner") may nonetheless be subject to federal income tax based upon his ratable share of Partnership income if such income is deemed "effectively connected" with the conduct of a "U.S. trade or business." The Partnership will be engaged in the trading or investing of securities for its own account. The Code, as amended by the Taxpayer Relief Act of 1997, provides that trading in stock or securities does not constitute engaging in a trade or business in the U.S., provided that the entity is not a "dealer in securities." Effective January 1, 1998, such amendments eliminated the prior additional requirement that the entity's principal office be located outside the United States. A "dealer in securities" for this purpose is a person engaged in the regular business of buying and selling securities to its customers. The General Partner believes, upon advice of counsel, that the Partnership, based upon its anticipated activities, should not be regarded as a dealer in securities and therefore should not be considered to be engaged in a trade or business in the U.S. for purposes of the foregoing provisions. Accordingly, non-U.S. Partners not otherwise subject to U.S. income tax should not be subject to U.S. federal income tax with respect to their share of Partnership gains and income, subject to the observations noted below.

Assuming the Partnership is not considered engaged in a trade or business in the U.S., non-U.S. Partners will, nonetheless, be subject to withholding at the source on account of U.S. income taxes on dividends and non-portfolio interest received by them from the Partnership, at a rate of 30% of the gross amount. In general, no U.S. income tax will be withheld or payable on "portfolio interest" received by non-U.S. Partners from the Partnership. In general, interest earned by the Partnership on its investments is expected to qualify as portfolio interest. The term "portfolio interest" generally means any interest (including original issue discount) paid on any obligation that (i) is in bearer form and meets certain requirements designed to ensure that such obligations will be sold or resold only to non-U.S. Persons; or (ii) is in registered form and with respect to which the U.S. Person responsible for tax withholding has received a statement stating that the beneficial owner is not a U.S. Person. However, the 30% withholding tax will apply to portfolio interest paid to a "10 percent shareholder" which, in the case of an obligation issued by a corporation, means any person who owns 10% or more of the total combined voting power of all classes of voting stock.

Non-U.S. Partners not otherwise subject to U.S. federal income tax will not be subject to such taxes on any gain recognized on the sale or other transfer of their Partnership Interests. However, a non-U.S. Partner who is an individual may be subject to U.S. federal estate, inheritance or gift taxes as a result of the transfer of Partnership Interests by way of gift or upon death.

The names of all Partners, including non-U.S. Partners, and their respective shares of Partnership income and other tax items must be disclosed in the information return filed by the

-42-

R041834

Partnership with IRS. However, under current law and regulations a non-U.S. Partner not otherwise having "effectively connected" U.S. income is not required to file a return.

**Summary**

The foregoing statements are not intended as a substitute for careful tax planning, particularly since the income tax consequences of an investment in the Partnership may not be the same for all taxpayers. In addition, the foregoing does not purport to address all tax aspects of the investment, some of which may be material. There can be no assurance that the Partnership's or a Limited Partner's tax returns will not be audited by the IRS, or that no adjustments to the returns will be made as result of such an audit. **Accordingly, prospective Limited Partners in the Partnership are urged to consult their tax advisors with specific reference to their own tax situations under federal law and the provisions of other applicable laws before subscribing for Partnership Interests.**

## ERISA CONSIDERATIONS

**Prudence, Diversification and Prohibited Transactions**

To the extent applicable, each prospective investor that is an employee benefit plan (within the meaning of Section 3(3) of the Employee Retirement Income Security Act of 1974, as amended ("ERISA")) should consider whether an investment in Partnership Interests (i) satisfies the diversification requirements of Section 404(a)(1)(C) of ERISA and (ii) is prudent in accordance with the requirement of Section 404(a)(1)(B) of ERISA and the regulations promulgated thereunder, keeping in mind, among other factors, the long-term and illiquid nature of the investment. Employee benefit plans, along with individual retirement accounts ("IRAs") and retirement plans qualified under Sections 401(a) or 403(a) of the Code, should consider whether (i) the investment is a prohibited transaction under Section 406 of ERISA and/or Code Section 4975, and (ii) the investment will generate unrelated business taxable income. See "*Certain Tax Matters – Investment By Tax-Exempt Entities*".

**Annual Evaluation**

To enable fiduciaries of plans subject to annual reporting requirements under ERISA to file annual reports as they relate to an investment in Partnership Interests and to enable an IRA trustee or custodian to report annually the value of IRA investments in the Interests, such fiduciaries, trustees and custodians will be furnished with statements of the fair market value of their Partnership Interests within 90 days after the close of each year. There can be no assurance, however, that such value could or will actually be realized upon liquidation or withdrawal of capital in the event the Partnership liquidated assets for such purpose.

**Plan Assets**

ERISA generally requires that the assets of employee benefit plans be held in trust and that the trustees or a duly authorized "investment manager" (within the meaning of Section 3(38) of ERISA) have exclusive authority and discretion to manage and control assets of such plans. ERISA also imposes certain duties on persons who are fiduciaries of employee benefit plans and prohibits certain transactions between such plans and the fiduciaries of such plans. Under the Code, similar prohibitions apply to all qualified plans, IRAs and certain Keogh plans that would not otherwise be subject to ERISA. If the assets of the Partnership were deemed to be "plan assets" under ERISA, (i) the prudence and other requirements of Title I of ERISA would apply to investments made by the Partnership, (ii) the General Partner and the Advisor would be plan "fiduciaries" under ERISA with respect to Employee Benefit Plans

CONFIDENTIAL

R041835

which acquire any Partnership Interests, and (iii) certain transactions of the Partnership, or into which the Partnership may seek to enter, might constitute "prohibited transactions" under ERISA and the Code.

Under U.S. Department of Labor regulations defining the term "plan assets" (the "Plan Asset Regulations"), when "Benefit Plan Investors" (as defined below) have a "significant" interest in a commingled investment vehicle (such as the Partnership), the underlying assets of such vehicle become "plan assets", triggering ERISA requirements.  The Plan Asset Regulations provide, in effect, that the investment by benefit plan investors in a partnership would not be deemed to be "significant" if less than 25% of each class of equity interests in the partnership (such as the Partnership Interests) is held by Benefit Plan Investors.  For purposes of this 25% rule, the interest of the General Partner (other than in the capacity of an IRA or other benefit plan investor) will be disregarded.

On August 17, 2006, President Bush signed into law the Pension Protection Act of 2006, which amends numerous provisions of ERISA in key respects.  Among such amendments is a statutory change in the definition of "Benefit Plan Investor" from that set forth in the Plan Asset Regulations.  As so amended, "Benefit Plan Investors" are limited to include solely (i) Employee Benefit Plans subject to Title I of ERISA; (ii) IRAs and other retirement plans and accounts subject to Section 4975 of the Code; and (iii) any other entity whose underlying assets include "plan assets" by reason of any Benefit Plan Investor's investment in such entity.

**Non-Fiduciary Status of the General Partner and Advisor**

The General Partner currently intends to limit participation in the Partnership by Benefit Plan Investors to less than 25% of Limited Partner capital so as to qualify under such provisions of the Plan Asset Regulations, as amended.  Accordingly, the assets of the Partnership should not be deemed "plan assets" and neither the General Partner nor the Advisor should be regarded as "fiduciary" (within the meaning of ERISA) with respect to any employee benefit plans that are Limited Partners.

Under ERISA and related regulations, even if the 25% limit under the Plan Asset Regulations is exceeded, neither the General Partner nor the Advisor will be deemed a "fiduciary" with respect to Limited Partners that are IRAs, certain owner-employee plans (such as Keogh plans) and other specified plans not subject to the ERISA fiduciary provisions, even if they are Benefit Plan Investors, so long as the General Partner and the Principals are not trustees or other named fiduciaries under such accounts or plans.  In such event, however, the capital accounts of such Limited Partners that are IRAs or certain other such plans will nonetheless be subject to the "prohibited transaction" restrictions in Section 4975 of the Code.

**RESTRICTIONS ON TRANSFER**

A Limited Partner may not transfer or assign his Partnership Interest without the prior written consent of the General Partner, which consent may be withheld in the sole discretion of the General Partner.  A transferee of all or any part of a Limited Partner's Interest shall become a substitute Limited Partner only with the consent of the General Partner, which consent may be granted or refused in the sole discretion of the General Partner, and only upon compliance with all applicable provisions of law. The death, incompetency or dissolution of a Limited Partner will not terminate the Partnership, but such Limited Partner's share of Partnership profits and losses and his obligations under the Partnership Agreement will devolve on his representatives.  Such representatives or their assignee may become a Limited Partner only with the written consent of the General Partner.

CONFIDENTIAL

R041836

The Partnership Interests have not been registered under the Securities Act of 1933, as amended. The Partnership Interests are being offered and will be sold in the absence of such registration by reason of an exemption under Section 4(2) of the Securities Act and Regulation D promulgated thereunder. The Limited Partners have not been, and will not be, granted the right to require the registration of the Partnership Interests, and, the Partnership has no intention to so register the Partnership Interests. The provisions of Rule 144, promulgated under the Securities Act, will not be available to Limited Partners who may desire to sell their Interests.

The availability of the foregoing exemption from registration under the Securities Act is dependent, in part, upon the financial status of each Limited Partner and the suitability of such an investment for him. Accordingly, each subscriber of Partnership Interests will be required to make certain representations and warranties to the General Partner and the Partnership and to agree to indemnify, hold harmless and pay all judgments and claims against the General Partner for any liability incurred as a result of any misrepresentation or any warranty not performed by the subscriber. Each subscriber's attention is directed to the Subscription Agreement, a copy of which is attached as Exhibit B to this Memorandum, for a complete description of these warranties and representations.

## PRIVACY POLICY

This privacy policy explains the manner in which the Partnership and the General Partner collect, utilize and maintain nonpublic personal information about the Partnership's investors, as required under recently enacted Federal legislation. This privacy policy only applies to nonpublic information of investors who are individuals (not entities).

### Collection of Investor Information

The Partnership collects personal information about its investors mainly through the following sources: Subscription forms, investor questionnaires and other information provided by the investor in writing, in person, by telephone, electronically or by any other means. This information includes name, address, nationality, tax identification number, and financial and investment qualifications; and transactions within the Partnership, including account balances, investments and withdrawals.

### Disclosure of Nonpublic Personal Information

The Partnership will not sell or rent investor information. The Partnership will not disclose nonpublic personal information about its investors to nonaffiliated third parties or to affiliated entities, except as permitted by law. For example, the Partnership may share nonpublic personal information in the following situations:

- To service providers in connection with the administration and servicing of the Partnership, which may include attorneys, accountants, auditors and other professionals. The Partnership may also share information in connection with the servicing or processing of Partnership transactions;

- To affiliated companies in order to provide the Limited Partners with ongoing advice and assistance with respect to the services provided through the Partnership and to introduce them to other services that may be of value to them;

-45-

R041837

- To respond to a subpoena or court order, judicial process or regulatory authorities;

- To protect against fraud, unauthorized transactions (such as money laundering), claims or other liabilities; and

- Upon consent of an investor to release such information, including authorization to disclose such information to persons acting in a fiduciary or representative capacity on behalf of the investor.

**Protection of Investor Information**

The Partnership's policy is to require that all employees, financial professionals and companies providing services on its behalf keep client information confidential.

The Partnership will maintain safeguards that comply with federal standards to protect investor information. The Partnership will restrict access to the personal and account information of investors to those employees who need to know that information in the course of their job responsibilities. Third parties with whom the Partnership shares investor information must agree to follow appropriate standards of security and confidentiality.

The Partnership's privacy policy will apply to both current and former investors. The Partnership may disclose nonpublic personal information about a former investor only to the same extent as permitted for a current investor.

**Changes to Privacy Policy**

The Partnership may make changes to its privacy policy in the future. The Partnership will not make any change affecting an individual Limited Partner without first sending such Partner a revised privacy policy describing the change. In any case, the Partnership will send each individual Limited Partner a copy of the Partnership's current privacy policy at least once annually, as long as he or she continues to be an investor in the Partnership.

## SUBSCRIBING FOR PARTNERSHIP INTERESTS

An investment in the Partnership Interests will involve a significant degree of risk and is suitable only for persons having substantial financial resources who understand the long-term nature, the consequences of and the risks associated with, the investment. A subscription for Partnership Interests will be accepted only from a person with respect to whom the General Partner has reasonable grounds to believe, and shall believe immediately prior to sale, after making reasonable inquiry, either (i) has knowledge and experience in financial and business matters such that it is capable of evaluating the merits and risks of this investment or (ii) has or together with his Purchaser Representative (as that term is defined in Regulation D promulgated under the Securities Act) have such knowledge and experience in financial and business matters that they are capable of evaluating the merits and risks of this investment and that such person is able to bear the economic risk of this investment. The minimum subscription will be $100,000, except that the minimum subscription amount may be waived, increased or reduced by the General Partner in its sole discretion.

The offering of Partnership Interests is intended to comply with the requirements of Rule 506 of Regulation D promulgated under the Securities Act. Accordingly, the General Partner's intention

CONFIDENTIAL

R041838

is to accept subscriptions for Partnership Interests solely from individual and institutional investors which qualify as "accredited investors," as that term is defined in Rule 501 of Regulation D promulgated under the Securities Act, and whose participation in the Partnership would not require the Partnership to register or qualify the Partnership Interests for offer or sale under state securities laws.  The term "accredited investor" includes: (i) an individual who makes a written representation that he or it is the sole party in interest and either (A) has a net worth in excess of $1,000,000 or (B) has had an individual income in excess of $200,000 in each of the two most recent years or joint income with his spouse in excess of $300,000 in each of those years and has a reasonable expectation of reaching the same income level in the current year; or (ii) an organization that has at least $5,000,000 in total assets or all beneficial interests in which are owned by individuals or other organizations described in clause (i) or this clause (ii).  See the forms of Questionnaire for Individuals and Organizational Purchasers annexed as Exhibits C and D, respectively, to this Memorandum.  Notwithstanding the foregoing, the General Partner, in its sole discretion, may, subject to compliance with applicable federal and state regulation, accept a subscription for Partnership Interests from an investor that is not an "accredited investor."

The General Partner, in its sole discretion, may decline to accept from certain "private investment companies" initial and additional Capital Contributions that would exceed 10% of the total capital of the Limited Partners, in order to assure availability of an exemption of the Partnership from registration as an investment company under the Investment Company Act.  Prospective investors that may be classified as private investment companies should discuss with the General Partner whether the 10% restriction will be applicable to them.

To subscribe for Partnership Interests, prospective subscribers should complete and execute (and have notarized, where applicable) one copy of each of (i) the Limited Partnership Agreement; (ii) the Subscription Agreement; and (iii) the applicable Purchaser Questionnaire (for Individuals or Organizations, as appropriate).  These documents should be sent or delivered to MSMB Investors LLC, Mr. Marek Biestek, 708 3rd Avenue, 5th Floor, New York, New York 10017.  Capital Contributions should be delivered to the Partnership's account at Interactive Brokers by federal wire transfer.  Subscribers should contact the General Partner for wiring instructions.

Upon acceptance of Limited Partners into the Partnership, the General Partner will return to each investor whose subscription has been accepted a fully executed copy of his or its Subscription Agreement and an executed counterpart of the Partnership Agreement.  The General Partner reserves the right to reject any subscription for Partnership Interests for any reason.  If a Capital Contribution is not accepted, or if the Partnership does not commence operations for any reason, the funds received (together with interest earned, if any) will be returned to each subscriber.

As a result of anti-money laundering legislation enacted by the U.S. federal government (known as the "PATRIOT Act"), and any future amendments to such legislation, MSMB may be required to establish an anti-money laundering program which, among other things, may require MSMB to take measures to verify the identities of existing and prospective Limited Partners and to identify the source of funds invested in the Partnership.  In the event that MSMB determines, in its discretion, that verification of identity of an existing or prospective investor or identification of the source of funds is required, the applicable investor will be required to provide the Partnership with all requested information and documentation.  By way of example, an individual may be required to produce, among other things, a copy of a passport or identification card duly certified by a public authority such as a notary public, the police or the ambassador in his or her country of residence, together with evidence of his or her address such as a utility bill or bank statement.  In the case of corporate subscribers, production of a certified copy of charter documentation, as well as the names and addresses of all directors, officers and/or beneficial owners may be required.

-47-

R041839

MSMB reserves the right to request any documentation and information that is deemed by it to be necessary in order for it to comply with applicable anti-money laundering laws and any anti-money laundering program established by it.  This may result in Partnership Interests on a date subsequent to the desired issuance date.  Furthermore, MSMB may, in its discretion, effect a mandatory withdrawal of a Limited Partner, or reject a subscription by an investor, in the event that MSMB does not receive satisfactory information or documentation, or if MSMB believes that it would be a violation of applicable anti-money laundering laws or an established anti-money laundering program for such person to be admitted or remain as a Limited Partner, as applicable.

MSMB may pay, but only in its discretion, to certain parties which introduce investors for the Partnership compensation on a negotiated basis, payable from a portion of the Incentive Allocation and/or Management Fee, based upon the assets attributable to such subscriber.  Such compensation will not decrease such subscriber's investment or increase any expense attributable to the Partnership or any subscriber.

All original documentation relating to subscriptions and the formation of the Partnership will be kept at the offices of the Partnership.  Each prospective investor or his authorized representative may review such documents at any reasonable time, upon reasonable written notice to the General Partner.  Prospective investors are invited to meet with Mr. Biestek so that he may answer any questions raised by them or their representatives in connection with the offering and MSMB will provide them with any additional related information available to it that can be acquired without unreasonable effort or expense.

\*\*\*

CONFIDENTIAL                                                                                    R041840