UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

UNITED STATES OF AMERICA

     -against-

EVAN GREEBEL,

                   *Defendant.*

ECF Case

No. 15-cr-00637 (KAM)

<u>ORAL ARGUMENT REQUESTED</u>

# MR. GREEBEL'S MOTION *IN LIMINE*
# REGARDING ALLEGED CO-CONSPIRATORS

## TABLE OF CONTENTS

Page

I. ARGUMENT ...................................................................................................................... 1

    A.   The Government Should Be Precluded from Arguing that There Are Other
        Unindicted Co-Conspirators in Count Seven ................................................................ 1

    B.   The Government Should Be Precluded from Offering Statements By Certain
        Individuals Due to the Clear Lack of Evidence of Their Role As a Co-
        Conspirator ................................................................................................................... 4

        1.   The Government Should Be Precluded from Arguing That Certain
            Individuals Are Co-Conspirators And Admitting Their Statements Under
            the Co-Conspirator Hearsay Exception ................................................................ 4

        2.   The Government Should Produce Any Co-Conspirator Statements It
            Intends to Offer at Trial and the Court Should Hold a Pretrial Evidentiary
            Hearing .................................................................................................................. 8

II. CONCLUSION ................................................................................................................ 11

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Bourjaily v. United States*,
  483 U.S. 171 (1987)......................................................................................................4

*Morpurgo v. Inc. Vil. of Sag Harbor*,
  697 F. Supp. 2d 309 (E.D.N.Y. 2010), *aff'd*, 417 F. App'x 96 (2d Cir. 2011).........................7

*United States v. Al-Moayad*,
  545 F.3d 139 (2d Cir. 2008)..........................................................................................6

*United States v. Bazezew*,
  783 F. Supp. 2d 160 (D.D.C. 2011) ...............................................................................10

*United States v. Clark*,
  18 F.3d 1337 (6th Cir.) ..................................................................................................5

*United States v. Geaney*,
  417 F.2d 1116 (2d. Cir. 1969).........................................................................................9

*United States v. Gigante*,
  166 F.3d 75 (2d Cir. 1999).....................................................................................4, 5, 7

*United States v. Gonzalez-Montoya*,
  161 F.3d 643 (10th Cir. 1998) ......................................................................................10

*United States v. Hoover*,
  246 F.3d 1054 (7th Cir. 2001) ......................................................................................10

United States v. Jackson,
  627 F.2d 1198, 1218 (D.C. Cir. 1980) ..........................................................................10

*United States v. James*,
  590 F.2d 575 (5th Cir. 1979) ..........................................................................................9

*United States v. Reda*,
  765 F.2d 715 (8th Cir. 1985) ........................................................................................10

*United States v. Tellier*,
  83 F.3d 578 (2d Cir. 1996)......................................................................................5, 6, 7

*United States v. Tipton*,
  572 F. App'x 743 (11th Cir. 2014) ................................................................................10

*United States v. Tracy*,
  12 F.3d 1186 (2d Cir. 1993)............................................................................................9

# TABLE OF AUTHORITIES
## (Cont…)

Page(s)

**Other Authorities**

5 Weinstein's Federal Evidence § 801.34[6][c][i]...........................................................................5

# I.  ARGUMENT

**A.      The Government Should Be Precluded from Arguing that There Are Other Unindicted Co-Conspirators in Count Seven**

The Superseding Indictment initially alleged that, in addition to Mr. Shkreli and Mr. Greebel, there were "others" involved in the conspiracy alleged in Count Seven.  Dkt. 60, at 30. It is now clear, however, that the government's position has changed.  Indeed, throughout Mr. Shkreli's trial—at sidebar, in motion practice, and at oral argument—the government has not offered any evidence that there were "others" involved in the conduct alleged in Count Seven.

During summation in Mr. Shkreli's trial, the government clearly articulated its true theory for Count Seven:  Mr. Shkreli, the government argued, "made a choice to steal . . . money which had been put into [a] public company . . . and to use it to pay back the investors he defrauded. *And he did it with his co-conspirator Evan Greebel*."  Shkreli Trial Tr. 5269-70 (emphasis added).  The government elaborated, "Mr. Greebel . . . we believe is a co-conspirator . . . and acting as counsel for the firm or the company."  *Id.* 5061.

Weeks into Mr. Shkreli's trial, even the Court was understandably unclear as to the identity of the alleged co-conspirators in Count Seven.  Indeed, at oral argument for the government's motion to admit several documents through the government's case agent, the Court inquired:

> The Court:        For Count 7, . . . who are the co-conspirators with Mr. Shkreli on that?
>
> Government:   Mr. Greebel.  I mean, there are others, but it's primarily Mr. Greebel.
>
> . . .
>
> The Court:        I mean, honestly, it was not really clear to me going into this trial, other than those that you specifically mentioned, who your co-conspirators were and even though you

1

> identified some of them, I am not sure what evidence there is to show that they are co-conspirators.

> Government:  I would say the majority of the e-mails are with Mr. Greebel, but to the extent that there are others, we'll let you know.

*Id.* 4488, 4515.  But the government did *not* let the Court know or offer evidence of additional alleged co-conspirators.  Nor did the government argue to the jury that there were additional alleged co-conspirators.  In fact, the government stated bluntly from the very start of the trial that Mr. Shkreli "orchestrated a plan, together with a lawyer, a co-conspirator named Evan Greebel, to use Retrophin's money to pay off his hedge fund investors." *Id.* 856 (government's Opening Statement).  The government frequently described for the Court the "conspiracy between Mr. Greebel and Mr. Shkreli" without referencing or identifying any "other" co-conspirators.  *Id.* 4491-92.

Notably, throughout Mr. Shkreli's trial, when the government *did* reference the names of additional unindicted alleged co-conspirators, it failed to connect those individuals to Count Seven.  The government, for example, identified Marek Biestek, Kevin Mulleady, Ron Tilles, and Andrew Vaino, but not once did the government connect these individuals to the conduct alleged in **Count Seven**.[1]  The Court can reasonably assume that if the government had in its

---

[1]     Although the government did attempt to tie other individuals to the *other* Counts in the eight-count Indictment at Mr. Shkreli's trial.  *See, e.g.*, Tr. 5239 (alleging Marek Biestek and Kevin Mulleady are co-conspirators for the charges relating to MSMB Healthcare (Counts Four and Five)); *id*. 2144 (connecting Kevin Mulleady to the "conspiracy counts with respect to the fund" (Counts One, Two, Four, and Five)); *id*. 4597 (alleging that Ron Tilles is a co-conspirator for Count Eight); *id*. 4744-45 (identifying Andrew Vaino as an alleged co-conspirator for Count Eight); *id*. 4456 ("Mr. Mulleady . . . would talk to potential investors and make misrepresentations regarding the funds." (Counts One, Two, Four, and Five)); 4248 (alleging Marek Biestek as a co-conspirator for Count Eight); *id*. 4732 (describing Mulleady's knowledge of Mr. Shkreli's misrepresentations (Counts One, Two, Four, and Five)); *id*. 5231 (Mulleady's

*(Cont'd on next page)*

possession evidence linking "other" co-conspirators to the alleged scheme in Count Seven, it would have offered that evidence against Mr. Shkreli, especially where the evidence on Count Seven was so thin. *See* Dkt. 305 (jury's finding Mr. Shkreli not guilty on Count Seven).

In light of the clear lack of evidence, the government should not be allowed to continue to suggest that there are "other" individuals involved in the conspiracy alleged in Count Seven. Allowing the government to do so would leave the jury with the impression that there are, in fact, other individuals connected to the Count Seven allegations, but to date the government has offered no evidence showing the involvement of anyone other than Mr. Greebel or Mr. Shkreli.

We recognize that the Court is faced with a rare situation in which the government's case has been laid bare before trial. Thus, the parties should not pretend that the government's case against Mr. Greebel exists on a blank slate. We have seen the government's proffers of any alleged co-conspirators involved in Count Seven, and the evidence—at most—relates to Mr. Greebel and Mr. Shkreli, nothing more.

Nor can the government, in good faith, suggest that it has in its possession additional evidence of "other" co-conspirators for Count Seven that, for some reason, was held back in Mr. Shkreli's trial. As evidenced by the government's ample references to additional co-conspirators for Counts One, Two, Four, Five, and Eight, *see supra* n.1, surely the government would have offered the names of other alleged co-conspirators for Count Seven had there been sufficient evidence to do so. The government has thus effectively conceded that Mr. Shkreli and Mr.

---

*(Cont'd from previous page)*

role in editing the MSMB pitch book (Counts One, Two, Four, and Five)); *id*. 5239 ("for MSMB Healthcare, the co-conspirators involved again are Marek Biestek and . . . Kevin Mulleady" (Counts Four and Five)); *id.* 5204 (discussing "the conspiracy between [Mr. Shkreli] and Marek Biestek" for MSMB Capital (Counts One and Two)); *id.* 5215 (describing Mr. Shkreli's "co-conspirator, Kevin Mulleady" with respect to MSMB Healthcare (Counts Four and Five)).

Greebel are the only alleged co-conspirators in Count Seven.  Accordingly, the government

should be precluded from arguing that there were any "other" co-conspirators involved in Count

Seven.

**B.**     **The Government Should Be Precluded from Offering Statements By Certain**
         **Individuals Due to the Clear Lack of Evidence of Their Role As a Co-Conspirator**

     **1.**     **The Government Should Be Precluded from Arguing That Certain**
         **Individuals Are Co-Conspirators And Admitting Their Statements Under**
         **the Co-Conspirator Hearsay Exception**

On or about August 16, 2017, after informing the government that we would be moving

for disclosure of the names of the unindicted co-conspirators in Count Eight, the government

identified the following six people:  (1) Ron Tilles; (2) Marek Biestek; (3) Kevin Mulleady; (4)

Thomas Fernandez; (5) Andrew Vaino; and (6) Edmund Sullivan.  *See* Exhibit A (Email from A.

Smith).

Based on the testimony and documents received into evidence during the trial of *United

States v. Shkreli*, we move to preclude the government from offering any out-of-court statements

of any of these six individuals in connection with Count Eight.  To admit a statement pursuant to

Federal Rule of Evidence 801(d)(2)(E), this Court must find that:  (1) there was a conspiracy;

(2) the members included the declarant and the party against whom the statement is offered; and

(3) the statement was made both during the course of and in furtherance of the conspiracy.

*Bourjaily v. United States*, 483 U.S. 171, 175 (1987).  The government must prove the

preliminary facts relevant to Rule 801(d)(2)(E), the existence of a conspiracy, and the

involvement of both the declarant and the party against whom the statement is offered, by a

preponderance of the evidence.  *Id.*  Moreover, the government must show that the declarant and

defendant had a "unity of interests stemming from a specific shared criminal task that justifies

Rule 801(d)(2)(E)."  *United States v. Gigante*, 166 F.3d 75, 83 (2d Cir. 1999) (defendant's

membership in a network of criminal activity, such as organized crime, does not constitute a conspiracy for the purpose of Rule 801(d)(2)(E)).

These preliminary questions of fact "must be resolved by the district court before a challenged statement may be admitted under Rule 801(d)(2)(E)." 5 Weinstein's Federal Evidence § 801.34[6][c][i]. The court may not rely on the out-of-court statements to establish those preliminary facts. *United States v. Tellier*, 83 F.3d 578, 580 (2d Cir. 1996). Instead, the court must find "some independent corroborating evidence" of the declarant and defendant's participation in the conspiracy. *Id.* (reversing convictions because the court improperly admitted a hearsay statement under Rule 801(d)(2)(E) without independent corroborating proof); *United States v. Clark*, 18 F.3d 1337, 1341-42 (6th Cir.) ("Since *Bourjaily*, all circuits addressing the issue have explicitly held absent some independent, corroborating evidence of defendant's knowledge of and participation in the conspiracy, the out-of-court statements remain inadmissible.").

In this case, the government cannot meet its burden of establishing through some independent corroborating evidence that the alleged co-conspirators satisfy all three requirements under *Bourjaily*. The government's evidence relating to the alleged co-conspirators consists of nothing more than a few emails and is a far cry from demonstrating a "unity of interests" and "a specific shared criminal task" among these individuals, Mr. Shkreli, and Mr. Greebel. *United States v. Gigante*, 166 F.3d 75, 83 (2d Cir. 1999). The government has argued that certain emails from alleged co-conspirators are "direct evidence" of the charged conspiracy and that, therefore, these out-of-court statements should be admitted pursuant to Rule 801(d)(2)(E). *See generally* Dkt. 278. But the government cannot "use a hearsay statement to provide the sole foundation for its own admission." *United States v. Tellier*, 83 F.3d 578, 581 (2d Cir. 1996), and

absent any "independent corroborating evidence" that the alleged co-conspirators joined and participated in the conspiracy alleged in Count Eight, their out-of-court statements are inadmissible under *Bourjaily*. *Tellier*, 83 F.3d at 580.

Notably, to the extent the Court admitted statements by these individuals in Mr. Shkreli's trial, it "made no findings, by a preponderance of evidence or otherwise, about the existence of a conspiracy" between Mr. Shkreli, Mr. Greebel, and these unindicted alleged co-conspirators.[2] *United States v. Al-Moayad*, 545 F.3d 139, 174 (2d Cir. 2008).  In *Al-Moayad*, the Second Circuit vacated the defendants' convictions for conspiracy to assist a terrorist organization where the district court admitted a form allegedly showing a connection between the declarant and one of the defendants.  *Id.*  Because the document in question "provide[d] no information about [the declarant's] relationship with [the defendant] other than the fact that he wrote [the defendant's] name as his recommender" and because it was unclear whether the defendant "was aware that [the declarant] listed him on the form[,]" it was insufficient to satisfy Rule 801(2)(d)(E).  *Id.* Similarly, a video of a wedding speech did not meet the requirements for the co-conspirator exception because "[n]o independent evidence showed that either defendant was involved in a joint conspiracy with [the declarant], other than their general ties to [a terrorist organization]." *Id.* at 175.

Here, the government's proffer of certain emails between Retrophin employees and Mr. Shkreli, *see, e.g.*, Tr. 4744-45, shows nothing "other than their general ties" to Retrophin.  *Al-Moayad*, 545 F.3d at 175.  At Mr. Shkreli's trial, for example, the government argued that certain

---

[2]    The Court stated that certain statements were admissible as "statements of a party opponent or its agents and employees."  Shkreli Trial Tr. 4608; *see also id*. 4598:1-12. Notably, however, Messrs. Vaino, Mulleady, Tilles, and Biestek were not agents or employees of Mr. Greebel.

emails from Mr. Biestek and Mr. Vaino constituted "direct evidence that . . . they agreed to say that they were not affiliates when in fact they were working for Retrophin," and that—based on this representation—Messrs. Biestek and Vaino were co-conspirators for Count Eight.  Shkreli Trial Tr. 4745:7-9.  The government argued that Mr. Biestek's and Mr. Vaino's willingness to forfeit their shares constitutes "very clear evidence" of the conspiracy alleged in Count Eight. Shkreli Trial Tr. 4745:17.  The government will presumably make similar arguments for the additional alleged co-conspirators.

But emails from Retrophin employees to the company's outside counsel—even viewed in the light most favorable to the government—come nowhere near the necessary level of proving, by a preponderance of the evidence, that there was a conspiracy between Mr. Shkreli, Mr. Greebel, and these alleged co-conspirators.  Indeed, the fact that two private individuals were willing to voluntarily transfer or sell a small portion of their shares in exchange for removing or solving threats to Retrophin is woefully insufficient to show a "unity of interests" and "a specific shared criminal task" among the alleged co-conspirators, Mr. Shkreli, and Mr. Greebel.  As the Second Circuit recognized in *Gigante*, evidence of a person's "role in a general process and network" of allegedly criminal activity, without a showing that the person's statements were made "in furtherance of a specific criminal purpose," is insufficient to satisfy *Bourjaily*.  166 F.3d at 83 (quotations omitted).

Furthermore, regardless of the existence of any alleged conspiracy, the government has not offered "independent corroborating proof," *Tellier*, 83 F.3d at 580, that these individuals knowingly joined a conspiracy to achieve the specific unlawful objective alleged in Count Eight. Indeed, it is a fundamental principle that conspiracy requires "a meeting of the minds[.]" *Morpurgo v. Inc. Vil. of Sag Harbor*, 697 F. Supp. 2d 309, 337 (E.D.N.Y. 2010), *aff'd*, 417 F.

App'x 96 (2d Cir. 2011).  Here, the government has asserted that the alleged unlawful objective of the Count Eight conspiracy was "to control the price and trading of Retrophin stock."  Dkt. 189, at 42.  The government reiterated at Mr. Shkreli's trial that the objective of the Count Eight conspiracy was to "secretly control" shares of Retrophin stock and to "manipulate the price of those shares" and thus "manipulate the market in Retrophin stock."  Shkreli Trial Tr. 857:2-3.

But the government's conclusory statements that certain one-off emails constitute "clear evidence" of an alleged conspiracy are glaringly insufficient to show a meeting of the minds between Mr. Shkreli, Mr. Greebel, and the alleged co-conspirators—let alone an agreement with the specific goal of manipulating the market in Retrophin stock.  The government's evidence to date is thus entirely inadequate to satisfy Rule 801(d)(2)(E).

### 2. The Government Should Produce Any Co-Conspirator Statements It Intends to Offer at Trial and the Court Should Hold a Pretrial Evidentiary Hearing

Several Circuits have held that district courts should, "whenever reasonably practicable, require the showing of a conspiracy and of the connection of the defendant with it before admitting declarations of a coconspirator."  *Id.*  In this case, where it is already clear that the proof of a conspiracy will be a substantial issue, we submit that the better, safer approach is to address these issues before trial.  Indeed, in the seminal Second Circuit case on this issue, *United States v. Geaney*, in an opinion by Judge Friendly, the Court of Appeals recognized the dire consequences of admitting out-of-court statements by alleged co-conspirators without first finding, by a preponderance of the evidence, independent corroborating proof that the declarants had joined the alleged conspiracy:

> [T]he judge must determine, when all the evidence is in, whether in his view the prosecution has proved participation in the conspiracy, by the defendant against whom the hearsay is offered, by a fair preponderance of the evidence independent of the hearsay utterances. . . . If it has not, the judge must instruct the jury to disregard the hearsay or, *when this was so large a proportion of*

> *the proof as to render a cautionary instruction of doubtful utility,*
> *as could well have been the case here, declare a mistrial if the*
> *defendant asks for it.*

*United States v. Geaney*, 417 F.2d 1116, 1120 (2d. Cir. 1969) (emphasis added).  Though Second

Circuit precedent enables district courts to admit co-conspirator statements subject to connection,

*United States v. Tracy*, 12 F.3d 1186, 1199 (2d Cir. 1993), even *Geaney* recognized the

significant risk of prejudice and the "doubtful utility" of a limiting instruction where there is

insufficient independent, corroborating evidence to prove that the declarant is a member of the

alleged conspiracy.  417 F.2d at 1120.[3]  The rare circumstances of this case pose significant risk

of unfair prejudice and militate in favor of a pretrial evidentiary hearing regarding the

admissibility of statements by alleged co-conspirators.

   The Fifth Circuit in *United States v. James*, 590 F.2d 575, 582 (5th Cir. 1979), found that

because of "the danger [to the defendant] of injecting the record with inadmissible hearsay in

anticipation of proof of a conspiracy which never materializes," and "because of the inevitable

serious waste of time, energy and efficiency when a mistrial is required in order to obviate such

danger," "[t]he district court should, whenever reasonably practicable, require the showing of a

conspiracy and of the connection of the defendant with it before admitting declarations of a

coconspirator."  (Internal citations omitted).

   This process has been strongly recommended in the Fifth, Tenth, and the District of

Columbia Circuits.  In *United States v. Jackson*, for example, the D.C. Circuit explained that

"[a]s to the procedural timing of the determination by the trial judge, the better practice is for the

---

[3]   The Supreme Court has declined to express an opinion "on the proper order of proof that trial
courts should follow in concluding that the preponderance standard has been satisfied in an
ongoing trial and other circuits[.]"  *United States v. James*, 590 F.2d 575, 582 (5th Cir.
1979).

court to determine before the hearsay evidence is admitted that the evidence independent of the hearsay testimony proves the existence of the conspiracy sufficiently to justify admission of the hearsay declarations."  627 F.2d 1198, 1218 (D.C. Cir. 1980); *see also United States v. Gonzalez-Montoya*, 161 F.3d 643, 648 (10th Cir. 1998) (reiterating the court's "strong preference for *James* proceedings where the government relies on co-conspirator statements").[4]  Even where the court does not order a pretrial hearing, courts have required the government to "promptly produce to the [c]ourt and to the defendants all such co-conspirator statements that it intends to use as evidence at trial."  *United States v. Bazezew*, 783 F. Supp. 2d 160, 166 (D.D.C. 2011)).

Just last month, the Court, the government, and counsel for Mr. Shkreli spent a significant amount of time on motion practice and oral argument—in the middle of trial—to address the admissibility of certain statements made by alleged co-conspirators.  *See* Dkt. 273; Dkt. 274; Dkt. 276; Dkt. 278.  While this delay was unexpected and unavoidable in the first instance, we now know that similar issues will likely arise at Mr. Greebel's trial.  Thus, a pretrial evidentiary hearing will allow the Court to hear from both sides unhindered by the constraints of mid-trial briefing and having a jury waiting in the jury room.  The Court can thus resolve foreseeable evidentiary disputes and avoid unnecessary interruptions at trial.

---

[4]    The Seventh, Eighth, and Eleventh Circuits have also recognized that a pretrial evidentiary may be appropriate to determine whether co-conspirator statements are admissible as an exception to the hearsay rule.  *United States v. Hoover*, 246 F.3d 1054, 1060 (7th Cir. 2001) (recognizing that a pretrial evidentiary hearing is one way to determine whether the alleged co-conspirator statements were admissible); *United States v. Reda*, 765 F.2d 715, 721 (8th Cir. 1985) (stating that the Eighth Circuit has approved the pretrial evidentiary hearing to "avoid the risk of mistrial"); *United States v. Tipton*, 572 F. App'x 743, 747 (11th Cir. 2014) (conducting a pretrial *James* hearing to determine whether the alleged co-conspirator statements qualified for admission pursuant to Rule 801(d)(2)(E)).

## II.  CONCLUSION

Mr. Greebel is in an unusual position where, in light of Mr. Shkreli's trial, (i) the parties now know that the government intends to offer out-of-court statements by several alleged co-conspirators and (ii) a pretrial hearing would allow the Court and the parties to resolve key evidentiary issues without interrupting trial.  Given these circumstances, Mr. Greebel asks the Court to require the government to produce any co-conspirator statements it intends to offer in advance of trial and to order a pretrial evidentiary hearing to determine their admissibility.

Dated:   New York, New York
        August 18, 2017

/s/ Reed Brodsky
Reed Brodsky
Winston Y. Chan
Randy M. Mastro
Lisa H. Rubin

GIBSON, DUNN & CRUTCHER LLP
200 Park Avenue
New York, NY 10166
(212) 351-4000
rbrodsky@gibsondunn.com
*Counsel for Defendant Evan Greebel*

11