UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

UNITED STATES OF AMERICA

     -against-

EVAN GREEBEL,

                 *Defendant.*

ECF Case

No. 15-cr-00637 (KAM)

<u>ORAL ARGUMENT REQUESTED</u>

**MR. GREEBEL'S MOTION *IN LIMINE* TO PRECLUDE ARGUMENT OR EVIDENCE
THAT RETROPHIN'S OUTSIDE AUDITOR DETERMINED THAT THE
SETTLEMENT AGREEMENTS WERE IMPROPER**

We respectfully move to preclude the government from arguing or offering evidence that Retrophin's outside auditor (Marcum LLP) determined that the settlement agreements at issue in Count Seven were improper, including any assertion or evidence that Marcum believed there was a violation of GAAP.  As detailed below, such argument or evidence would violate Rule 403 by creating a substantial risk of undue prejudice to Mr. Greebel, and misleading and confusing the jury.

A.      **Background**

Whether the settlement agreements at issue in Count Seven were in the interests of Retrophin, Inc., is a material issue of fact in dispute between the parties.

Although the government did not call any witness from Marcum during Mr. Shkreli's trial, the government opened with the following claim:  "In the late summer of 2013, Retrophin's accountants learned about the[] settlement agreements.  And they told the Defendant that these agreements weren't proper because Retrophin owed MSMB investors nothing."  Shkreli Trial Tr. at 859:25-860:3.

In truth and in fact, pursuant to Marcum's own documents, Marcum did not find that the agreements "weren't proper."  Prior to the September 9, 2013 board meeting, which was attended by two representatives of Marcum (including one partner), Marcum sent the company a draft letter pursuant to the American Institute of Certified Public Accountants' Statement of Accounting Standard ("SAS") 114, which establishes standards and provides guidance for auditors' communications with "those charged with governance in relation to an audit of a company's financial statements," including the audit committee of a board of directors.[1]  The

---

[1]   SAS 114 superseded SAS 61 as of December 15, 2006. AICPA, AU § 380, *available at* http://www.aicpa.org/Research/Standards/AuditAttest/DownloadableDocuments/AU-00380.pdf.

September 2013 SAS 114 letter was also provided to the Retrophin board of directors prior to the

September 9, 2013 meeting.  The SAS 114 letter was finalized on September 18, 2013 and

reflects that after learning about the settlement agreements in or around July 2013, Marcum

recognized that the agreements were "entered into subsequent to the balance sheet dates" for the

year ending December 31, 2012 and the first quarter of 2013.  Ex. A (Marcum Retrophin EDNY

00002966–77) at 2.  Thereafter, Marcum recommended that Retrophin agree to the early

adoption of a new accounting standard governing joint and several liabilities and concluded that

Retrophin should have disclosed the settlement agreements "in the notes to the financial

statements for the year ended December 31, 2012 and for the quarterly period ended March 31,

2013."  *Id.* at 2.

      Marcum similarly sent the company a SAS 114 letter, dated November 8, 2013, of its

review of the company's "condensed consolidated interim financial statements" for the quarter

ending September 30, 2013.  *See* Ex. B (RTRX000014805–16).  The September and November

2013 Marcum SAS 114 letters reflect Marcum's formal and final assessment of the settlement

agreements in Marcum's own words.  For instance, Marcum's "critical accounting estimate"

with respect to those agreements states:

> During the quarter ended June 30, 2013, the Company, its Chief
> Executive Officer, and MSMB Capital ("MSMB") became parties
> to a series of agreements to settle up to $2,286,511 of liabilities,
> which Company management believes are the primary obligation
> of MSMB.  The Company adopted Accounting Standards Update
> ("ASU") 2013-04 "Obligations Resulting from Joint and Several
> Liability Arrangements for Which the Amount at the Reporting
> Date is Fixed ("ASU 2013-04").  This guidance generally states
> that a participant in a joint and several liability arrangement[]
> should record the greater of its contractual obligation under the
> agreement or the amount it expects to pay.  Making a
> determination of the amount that the Company would expect to
> pay in excess of the fixed contractual minimum is a matter of
> judgment.  The Company estimated that its range of exposure

> could be up to the full amount of the liabilities stipulated under these agreements. Accordingly, the Company recorded the full amount of the settlement liabilities stated under these agreements as the amount it expects to pay on behalf of itself and its co-obligors.

Ex. A at 3–4; *see also* Ex. B at 3 (additionally noting that "[i]n August 2013, the Company entered an additional settlement agreement for $300,000 and made payment on August 29, 2013 to settle such agreement").

Both the September and November 2013 Marcum letters also discuss the indemnification agreements and promissory notes between MSMB and Retrophin with respect to the settlement agreements. They clearly state that Retrophin and MSMB "entered into indemnification agreements whereby MSMB has agreed to defend and hold the Company harmless against all such obligations and amounts, whether paid or unpaid, arising from these agreements." They also note, however, that "[w]e were advised by Company management that MSMB is currently in the process of dissolving its operations," and that "there is uncertainty as to whether the MSMB will have sufficient liquidity to repay the Company or fund the indemnification agreements should it become necessary." Ex. A at 5; Ex. B at 5.

Most significantly, Marcum's September and November 2013 SAS 114 letters note that while an audit committee "should be adequately informed of fraud and illegal acts coming to the Accountant's attention during the course of the review," "*[n]o fraud or illegal acts were noted*" by Marcum during its review of the company's interim condensed consolidated financial statements for the first and second quarters of 2013. Ex. A at 9; Ex. B at 9.

Nowhere, however, do Marcum's letters state that Retrophin's participation in the settlement agreements was not proper. Rather, at all times, Marcum was focused on the

appropriate accounting treatment for these agreements and the related impact on Retrophin's public filings.

### B.    Argument

Pursuant to Federal Rule of Evidence 403, evidence must be excluded "if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading a jury, undue delay, wasting time, or needlessly presenting cumulative evidence."  A defendant is unfairly prejudiced where a piece of evidence has an "undue tendency to suggestion decision on an improper basis," *Gonzalez v. Digital Equipment Corp.*, 8 F. Supp. 2d 194, 199 (E.D.N.Y. 1998).  It is equally "well settled that the prosecution and defense are entitled to broad latitude in the inferences they may suggest to the jury during closing arguments, provided they do not misstate the evidence."  *United States v. Myerson*, 18 F.3d 153, 163 (2d Cir. 1994) (internal citations omitted).

Here, any claim by the government in its opening or through trial that Marcum determined the settlement agreements "weren't proper" misstates Marcum's actual assessment that no fraud or illegal acts occurred.  As a result, this Court should preclude the government from making this claim, because there is a substantial risk of undue prejudice to Mr. Greebel, confusion of the issues, and misleading the jury.

Similarly, this Court should preclude the government from asserting or offering evidence that Marcum had determined that Retrophin's failure to include the settlement agreements in its financial reporting for year-end 2012 and the first quarter of 2013 violated GAAP.  Even assuming this were true and there were a GAAP violation, a "violation of GAAP is not an element" of a conspiracy to commit wire fraud or securities fraud, *United States v. Rigas*, 490 F.3d 208, 222 (2d Cir. 2007), nor is it *per se* evidence of fraudulent intent or guilt.  *Id.* at 220

(GAAP "neither establishes nor shields guilt in a securities fraud case."). Rather, to find that a defendant had the requisite fraudulent intent under Count Seven, the jury must rely on evidence other than any alleged GAAP violation. *See Ind. Pub. Ret. Sys. v. SAIC, Inc.*, 818 F.3d 85, 93 (2d Cir. 2016), *cert. granted sub nom., Leidos, Inc. v. Ind. Pub. Ret. Sys.*, 137 S. Ct. 1395 (2017).

### C. Conclusion

For all these reasons, we respectfully request that the Court preclude the government from arguing or offering any evidence that Marcum determined that the settlement agreements were not proper, including but not limited to any argument or evidence that Marcum believed there was a violation of GAAP.

Dated:   New York, New York
         August 18, 2017

/s/ Reed Brodsky
Reed Brodsky
Winston Y. Chan
Randy M. Mastro
Lisa H. Rubin

GIBSON, DUNN & CRUTCHER LLP
200 Park Avenue
New York, NY 10166
(212) 351-4000
rbrodsky@gibsondunn.com
*Counsel for Defendant Evan Greebel*

5