UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

UNITED STATES OF AMERICA

     -against-

EVAN GREEBEL,

                  *Defendant.*

ECF Case

No. 15-cr-00637 (KAM)

<u>ORAL ARGUMENT REQUESTED</u>

**MR. GREEBEL'S MOTION *IN LIMINE* RELATING TO THE GOVERNMENT'S INACCURATE LEGAL ASSUMPTION THAT "FEARNOW SHARE" RECIPIENTS ARE "AFFILIATES" BECAUSE THEY WERE RETROPHIN EMPLOYEES**

# I. ARGUMENT

This Court should preclude the government from arguing at this trial that recipients of the "Fearnow" shares are "affiliates" merely because they allegedly were Retrophin employees at some point during and including December 2012, January 2013, and/or thereafter.  Based on the rules and regulations of the Securities and Exchange Commission, including, but not limited to the Rule 144 and Rule 405 (each promulgated under the Securities Act of 1933, as amended), and applicable SEC guidance, that argument is incorrect as a matter of law.  Accordingly, arguing that the "Fearnow" share recipients are "affiliates" based on the fact that they allegedly worked for Retrophin would be unduly prejudicial, confuse the law governing who (or what) constitutes an affiliate, and mislead the jury to believe wrongly that all public company employees are "affiliates" under the securities laws and regulations.

During the government's summation at the trial of *United States v. Shkreli*, the government repeatedly argued incorrectly that the Fearnow recipients were "affiliates" because they were employees of or went to work for Retrophin.  For example, during summation, the government argued that the Fearnow recipients "all affirm that *they're not affiliated* with Desert Gateway, which becomes Retrophin.  *So they're not to be employees of Retrophin or working there*."  Shkreli Trial Tr. 5300:8-10 (emphasis added).  This is an incorrect statement of law.  One does not become an "affiliate" of Retrophin by becoming an employee or by working there.  The government further argued during summation that the alleged co-conspirator Kevin Mulleady, for example, "was working for Retrophin, when he received Fearnow shares. . . . So he gets the Fearnow shares, he's an affiliate."  *Id*. 5302:2-5.  Once again, the government's statement was incorrect as a matter of law.  Mr. Mulleady would not have become an affiliate as a result of working for Retrophin.  The government also argued that the alleged co-conspirator Andrew "Vaino was a Retrophin employee through 2015.  So when he gets the Fearnow shares,

he's an affiliate." *Id*. 5302:6-7.  Again, the government's statement was legally incorrect.  Mr. Vaino would not have become an affiliate as a result of working for Retrophin.

Title 17 of the Federal Code of Regulations contains the principal set of rules and regulations issued by federal agencies regarding commodity and securities exchanges.  Chapter II of Title 17 contain the regulations issued by the Securities and Exchange Commission (the "SEC").  Part 230 of Chapter II of Title 17 contains the general rules and regulations issued by the SEC pursuant to the Securities Act of 1933.  Rule 144 of Part 230 of Chapter II of Title 17 is a regulation that sets the conditions under which restricted, unregistered, and control securities can be sold or resold.  *See* 17 C.F.R.§ 230.144 ("Rule 144").  Rule 144 provides an exemption from registration requirements to sell the securities through public markets if a number of specific conditions are met.

Restricted securities are securities acquired in unregistered, private sales from the issuing company or from an affiliate of the issuer.  Rule 144 allows public resale of restricted and control securities if a number of conditions are met.  Pursuant to Rule 144(a)(1), an "affiliate" of an issuer is defined as "a person that directly, or indirectly through one or more intermediaries, controls, or is controlled by, or is under common control with, such issuer . . . ."  17 C.F.R.§ 230.144(a)(1).  The term "control" is not defined in Rule 144, but rather Section 230.405 of Chapter II of Title 17.  Section 230.405 states at the outset: "Unless the context otherwise requires, all terms used in §§230.400 to 230.494, inclusive, or in the forms for registration have the same meanings as in the Act and in the general rules and regulations. In addition, the following definitions apply, unless the context otherwise requires."  And Section 230.405 states in relevant part:  "The term control (including the terms controlling, controlled by and under common control with) means the possession, direct or indirect, of the power to direct or cause

the direction of the management and policies of a person, whether through the ownership of voting securities, by contract, or otherwise. *Id*. § 230.405.

 According to the SEC's investor publication about Rule 144:

> Control securities are those held by an affiliate of the issuing company. An affiliate is a person, ***such as an executive officer, a director or large shareholder,*** in a relationship of control with the issuer. Control means the power to direct the management and policies of the company in question, whether through the ownership of voting securities, by contract, or otherwise. If you buy securities from a controlling person or "affiliate," you take restricted securities, even if they were not restricted in the affiliate's hands.[1]

An employee of an issuer—who is not an executive officer, director, or large shareholder—does ***not*** have the "power to direct management and policies of the company in question" and thus is most certainly not an "affiliate." American Standard, SEC No-Action Letter, 1972 SEC No Act. LEXIS 3787 at *1 (Oct. 11, 1972) (large shareholder constitutes holder of 10% or more of the stock). In other words, whether one or more people are in "control" of an issuer is a fact-based inquiry that does *not* depend on whether a person is merely an issuer's employee. Whether one or more people are in "control" of an issuer turns on whether that person can satisfy the requirements of "control" pursuant to SEC Rules 144 and 405. *See id.* According to the SEC's investor publication and the seminal *American Standard* No-Action letter, a key factor in whether someone is an "affiliate" for purposes of exercising control over an issuer is whether the individual is a director, officer, or a large shareholder (holding 10% or more of the issuer's shares). *Id.*

---

[1] U.S. Sec. & Exch. Comm'n, *Rule 144: Selling Restricted and Control Securities* (Jan. 16, 2013), https://www.sec.gov/reportspubs/investor-publications/investorpubsrule144htm.html.

The government's arguments during summation that employees of Retrophin are automatically affiliates is incorrect as a matter of law.  *See* Shkreli Trial Tr. 5300:9-10; 5302:2-5; 5302:6-7.  We have not been able to find a single case or SEC action (or No Action Letter) where an employee has been deemed to be an "affiliate" of an issuer solely by virtue of being an employee of a company.  Indeed, if the government continues to take this position, it will be contrary to the SEC's regulations, the SEC's investor publication for Rule 144, the SEC's no-action letter, and standard industry custom and practices.

As a result, this Court should preclude the government from claiming—through argument, eliciting testimony, and/or seeking the admission of exhibits—that the Fearnow recipients were "affiliates" of Retrophin because they were employees of Retrophin or went to work for Retrophin in 2012 or 2013.  Arguments that Retrophin employees were deemed "affiliates" under the securities laws are not only contrary to law, but severely and unduly prejudicial to Mr. Greebel.  They will undoubtedly create confusion and mislead the jury.

A.      **Government Exhibit 242 is Not Admissible in Evidence**

During the trial of *United States v. Shkreli*, the Court received Government Exhibit ("GX") 242 into evidence without objection from Mr. Shkreli.  GX 242, however, should not be admitted into evidence during the trial of Mr. Greebel.

GX 242 is an email dated December 17, 2012, from Martin Shkreli using his MSMB Capital email address to a "Firmwide" email address, and he copied Tom Fernandez, Kevin Mulleady, Marek Biestek, Ron Tilles, Tim Pierotti, and Andre Vaino.  Ex. A.  The subject matter of the email is "Retrophin."  In the email, Mr. Shkreli writes, among other things, that "[e]ffectively immediately, I am the CEO of Retrophin Inc.  MSMB Capital is, as you know, liquidating its hedge funds and this process should be complete shortly.  Retrophin has 4

5

employees:  myself, Lenora Izerne, Jackson Su and Michael Smith.  If you are not on this list, you are not an employee or consultant to Retrophin and no longer an employee or consultant to Retrophin if you were previously.  The same applies to MSMB Capital."  GX 242.

GX 242 is not admissible at the trial of Mr. Greebel because it is hearsay and does not fall within any express hearsay exception.  *See* Fed. R. Evid. 801, 802, and 803.  GX 242 contains statements of Mr. Shkreli and would be offered to prove the truth of the matters asserted therein, meaning to show that Mr. Shkreli allegedly terminated the employment at Retrophin of Messrs. Fernandez, Mulleady, Biestek, Tilles, Pierotti, and Vaino on or about December 17, 2012.  *See* Ex. A.

Because Mr. Shkreli will obviously not be a defendant at the trial of Mr. Greebel, pursuant to Rule 801(d)(2), GX 242 is not admissible as a statement of party opponent.  Further, GX 242 is not admissible pursuant to Rule 801(d)(2)(E) as a statement "made by the party's coconspirator during and in furtherance of the conspiracy."  During Mr. Shkreli's trial, the government argued incorrectly that Mr. Shkreli's email in GX 242 was sent in furtherance of the conspiracy to trade the Fearnow shares by ensuring that the Fearnow recipients were no longer employees of Retrophin and thus they would not be deemed "affiliates" and precluded from trading the shares.  The government explained during summation:  "[T]he reason he's doing this [*i.e.*, sending the termination email] is because [Mr. Shkreli] knows [the Fearnow recipients] just all affirmed that they're not affiliates, and so they can't be working for Retrophin.  So this email he sends out, kind of wink, wink, nod, nod, nobody here works for Retrophin."  Shkreli Trial Tr. 5303:10-14.

But, the government's argument is belied by the law.  The government's argument for the admissibility of GX 242 as a co-conspirator statement in furtherance of the alleged conspiracy in

Count Eight is dependent on its assumption that terminating the employment of Fearnow recipients as Retrophin employees was necessary to prevent them from becoming "affiliates." That assumption is wrong as a matter of law.  Mr. Shkreli did not have to terminate the Fearnow recipients in order to prevent them from becoming "affiliates."  Similarly, if such people were deemed to be affiliates prior to terminating them, Mr. Shkreli could not automatically change their status as affiliates by firing them unless they had been directors or officers of Retrophin. But the government does not contend, nor could it, that any of these Fearnow recipients were directors or officers of Retrophin.  As a result, the continued employment of the Fearnow recipients at Retrophin did not make them "affiliates"—these individuals would not become "affiliates" just because they remained Retrophin employees.  Mr. Shkreli's termination of the employment of Messrs. Fernandez, Mulleady, Biestek, Tilles, Pierotti, and Vaino could not have been done in furtherance of the alleged conspiracy in Count Eight to control and trade the Fearnow shares.  Finally, given that GX 242 cannot be in furtherance of the charged conspiracy, the email does not pass the Rule 403 test.  There is a significant risk that the jury will infer from GX 242 that Mr. Shkreli fired the Fearnow recipients in order to prevent them from becoming "affiliates"—which is contrary to law, will create confusion, and will mislead the jury.

**B.     The Court Should Review the Government's Instructions Relating to Count Eight *In Camera***

Given that the government assumed incorrectly that an individual's employment at Retrophin automatically made that person an "affiliate" for purposes of precluding that person from trading the shares of the company under SEC Rule 144, this Court should review the government's instructions to the grand jury *in camera* and evaluate whether the grand jury was incorrectly informed about the law before returning the charge of Count Eight in the superseding indictment.  *See*, *e.g.*, *United States v. Hoey*, No. S3 11-CR-337, 2014 WL 2998523, at *3

(S.D.N.Y. July 2, 2014) ("[C]ourts have found error where the government incompletely or erroneously provides legal instruction to the grand jury."); *United States v. Kasper*, No. 10-CR-318S, 2011 WL 7098042, at *7 (W.D.N.Y. June 20, 2011) ("[W]hile the Government need not instruct the Grand Jury on the pertinent law, error may arise if the Government endeavors to instruct but does so incompletely or erroneously.").

## II. CONCLUSION

For all these reasons, the Court should preclude the government from arguing at this trial that recipients of the "Fearnow" shares are "affiliates" merely because they allegedly became Retrophin employees in or about late December 2012 or January 2013.

Dated:  New York, New York
        August 18, 2017

                                        */s/ Reed Brodsky*
                                        Reed Brodsky
                                        Winston Y. Chan
                                        Randy M. Mastro
                                        Lisa H. Rubin

                                        GIBSON, DUNN & CRUTCHER LLP
                                        200 Park Avenue
                                        New York, NY 10166
                                        (212) 351-4000
                                        rbrodsky@gibsondunn.com
                                        *Counsel for Defendant Evan Greebel*