UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>    -against-<br><br>EVAN GREEBEL,<br><br>                            *Defendant.* | ECF Case<br><br>No. 15-cr-00637 (KAM)<br><br><u>ORAL ARGUMENT REQUESTED</u> |

**MR. GREEBEL'S MOTION *IN LIMINE* TO PRECLUDE IRRELEVANT, MISLEADING, AND UNFAIRLY PREJUDICIAL EVIDENCE**

## TABLE OF CONTENTS

**Page**

I. INTRODUCTION ........................................................................................................... 1

II. LEGAL STANDARD...................................................................................................... 1

III. ARGUMENT ................................................................................................................... 2

    A. Evidence and Testimony Related to Mr. Shkreli's Threats to and Harassment of Tim Pierotti's Family is Irrelevant, Inflammatory, and Unduly Prejudicial in Mr. Greebel's Trial ................................................................................................ 2

    B. Evidence of Mr. Shkreli's Conduct Relating to KaloBios, Daraprim, and Controversial Public Statements Should be Inadmissible ............................................. 5

    C. Evidence of Mr. Greebel's Compensation Is Irrelevant and Unduly Prejudicial ......... 8

    D. Evidence Relating to Katten's Legal Fees Should Be Precluded ................................ 9

IV. CONCLUSION.............................................................................................................. 11

## TABLE OF AUTHORITIES

## TABLE OF AUTHORITIES

**Cases**

*Blue Cross & Blue Shield of N.J., Inc. v. Philip Morris, Inc.*,
 138 F. Supp. 2d 357 (E.D.N.Y. 2001) ...................................................................1, 7, 9, 10

*Gonzalez v. Digital Equipment Corp.*,
 8 F. Supp. 2d 194 (E.D.N.Y. 1998) ..................................................................................2, 3

*Hart v. RCI Hospitality Holdings, Inc.*,
 90 F. Supp. 3d 250 (S.D.N.Y. 2015)......................................................................................8

*Old Chief v. United States*,
 519 U.S. 172 (1997)....................................................................................................2, 3, 5

*United States v. Check*,
 582 F.2d 668 (2d Cir. 1978)..................................................................................................5

*United States v. Colombo*,
 909 F.2d 711 (2d Cir. 1990).................................................................................2, 3, 7, 10

*United States v. Costello*,
 221 F.2d 668 (2d Cir. 1955).........................................................................................1, 10

*United States v. Curley*,
 639 F.3d 50 (2d Cir. 2011)....................................................................................................4

*United States v. Khan*,
 591 F. Supp. 2d 202 (E.D.N.Y. 2008) ...............................................................................3, 4

*United States v. Morgan*,
 786 F.3d 227 (2d Cir. 2015)..............................................................................................2, 4

*United States v. Ozsusamlar*,
 428 F. Supp. 2d 161 (S.D.N.Y. 2006)...................................................................................5

*United States v. Qamar*,
 671 F.2d 732 (2d Cir. 1982)..................................................................................................5

*United States v. Savage*,
 505. F.3d 754, 761 (7th Cir. 2000) .......................................................................................5

*United States v. Schatzle*,
 901 F.2d 252 (2d Cir. 1990)..............................................................................................2, 7

*United States v. Shultz*,
 333 F.3d 393 (2d Cir. 2003)............................................................................................1, 10

*United States v. Stahl*,
   616 F.2d 30 (2d Cir. 1980)..................................................................................................8

*United States v. Sterling*,
   2017 WL 2304024 (S.D.N.Y. May 24, 2017) ...................................................................2, 7

**Rules**

Fed. R. Evid. 401 and 403........................................................................................1, 3, 7, 8, 9, 11

## I.     INTRODUCTION

Pursuant to Federal Rules of Evidence 401 and 403, we move to preclude the government from offering irrelevant, misleading, and prejudicial evidence relating to (i) Mr. Shkreli's harassment of and threats to Tim Pierotti's wife and family; (ii) Mr. Shkreli's unrelated conduct and controversial public statements relating to KaloBios and Daraprim; (iii) Mr. Greebel's compensation at Katten Muchin Rosenman LLP ("Katten"); and (iv) Katten's legal fees incurred through its work on behalf of Retrophin.

## II.     LEGAL STANDARD

Pursuant to Rule 401, "evidence is relevant if (a) it has any tendency to make a fact more or less probable than it would be without the evidence; and (b) the fact is of consequence in determining the action." *See also United States v. Shultz*, 333 F.3d 393, 415 (2d Cir. 2003). "If a proposition of fact is not required to be proved under the applicable rule of substantive law, . . . any evidence introduced solely to prove or disprove it, directly or indirectly, is irrelevant and inadmissible; an evidentiary proposition is considered 'relevant' only if it is logically related, either directly or through an inferential chain of proof, to at least one of the formal elements of the charges made or defenses raised in the case[.]" *Blue Cross & Blue Shield of N.J., Inc. v. Philip Morris, Inc.*, 138 F. Supp. 2d 357, 365 (E.D.N.Y. 2001) (citations omitted).

Rule 403 places limitations on the admissibility of certain evidence. Pursuant to Rule 403, even relevant evidence must be excluded "if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading a jury, undue delay, wasting time, or needlessly presenting cumulative evidence." *See United States v. Costello*, 221 F.2d 668, 674 (2d Cir. 1955) (evidence is inadmissible where it tends to "mislead [rather] than [] enlighten the jury"). Unfair prejudice exists where a particular piece of evidence has an "undue tendency to suggest decision on an improper basis, commonly, though

not necessarily, an emotional one." *Gonzalez v. Digital Equipment Corp.*, 8 F. Supp. 2d 194, 199 (E.D.N.Y. 1998) (quoting *Old Chief v. United States*, 519 U.S. 172 (1997)); *see also United States v. Colombo*, 909 F.2d 711, 714 (2d Cir. 1990) (precluding evidence "linking a defendant to a rape he is not charged with" because "in the circumstance of a very close case[,]" such evidence would "muddle the jury, and . . . lead them to convict the accused because he was in general so loathsome"); *United States v. Schatzle*, 901 F.2d 252, 256 (2d Cir. 1990) (district court properly precluded evidence from several years prior to the charged conduct that would have required a "mini trial" and "focus[ed] the jury upon the wrong event"); *United States v. Sterling*, 2017 WL 2304024, at *6 (S.D.N.Y. May 24, 2017) (precluding evidence that was "entirely cumulative" of evidence already "before the jury and . . . could only have caused further irrelevant distraction") (citations omitted).

### III.  ARGUMENT

#### A.  Evidence and Testimony Related to Mr. Shkreli's Threats to and Harassment of Tim Pierotti's Family is Irrelevant, Inflammatory, and Unduly Prejudicial in Mr. Greebel's Trial

We respectfully ask the Court to preclude the government from eliciting evidence of Mr. Shkreli's threats to and harassment of Tim Pierotti's wife and family. *See, e.g.*, GX 120-19.[1] This evidence is highly charged and inflammatory, and it bears no connection whatsoever to any of the government's allegations relating to Mr. Greebel. *See United States v. Morgan*, 786 F.3d 227, 234 (2d Cir. 2015) (abuse of discretion to admit "graphic and profane" threat letter because

---

[1] Prior to trial, except for one post-arrest statement made by Mr. Shkreli, the Court reserved ruling on the admissibility of evidence relating to Mr. Shkreli's threats to and harassment of Mr. Pierotti's wife and family. *See* Court June 24, 2017 Order, Dkt. No. 257, at 13. During trial, however, Mr. Shkreli's counsel did not object again to the admission of this evidence, and thus the Court admitted it without objection. *See* Shkreli Trial Tr. 4294-95 (July 18, 2017).

2

such "highly charged" evidence was "unrelated to the charged offenses" and was "toxic" to the jury's perception of the defendant). Indeed, the government has not offered (nor could it offer) any evidence that Mr. Greebel condoned, authorized, and/or knew in advance about Mr. Shkreli's alleged threats to and harassment of Mr. Pierotti's family. As a result, it has absolutely no probative value of Mr. Greebel's state of mind, and any probative value of *Mr. Shkreli's* state of mind is substantially outweighed by the danger of unfair prejudice, confusion of the issues relating to Mr. Greebel's *mens rea*, and misleading the jury about Mr. Greebel's lack of advanced knowledge or approval of Mr. Shkreli's alleged threats.

    As this Court has recognized, "[e]vidence of threats may be extremely probative; however, the potential for inflaming the jury may be great." *United States v. Khan*, 591 F. Supp. 2d 202, 206 (E.D.N.Y. 2008) (citation omitted). There can be no serious dispute that Mr. Shkreli's written threat to Mr. Pierotti's wife that Mr. Shkreli would "do whatever [he] can to assure" that she and "and [her] four children [are] homeless," GX 120-19, at 3, has an extraordinary potential for inflaming the jury. There is a near-certainty that, when confronted with this evidence, the jury will unduly and unfairly allocate accountability of Mr. Shkreli's indefensible threats and generally loathsome actions toward Mr. Pierotti's family to Mr. Greebel. *See*, *e.g.*, *Colombo*, 909 F.2d at 714. This is exactly the extreme and undue prejudice that Rule 403 is designed to prevent by ensuring that a jury does not make its decision "on an improper" or an "emotional" basis. *Gonzalez v. Digital Equipment Corp.*, 8 F. Supp. 2d 194, 199 (E.D.N.Y. 1998) (quoting *Old Chief v. United States*, 519 U.S. 172 (1997)). Moreover, in a trial where the overwhelming majority of the evidence will consist of relatively monotonous emails, bank statements, and corporate documents, Mr. Shkreli's threats to Mr. Pierotti's family will shock the jury's conscience and will be without question "the government's most dramatic evidence."

*United States v. Curley*, 639 F.3d 50, 63 (2d Cir. 2011); *see also United States v. Khan*, 591 F. Supp. 2d 202, 206 (E.D.N.Y. 2008) (evidence excluded where offered "against a defendant who is not charged with any crimes of violence, intimidation, or violence"); *Morgan*, 786 F.3d at 234. Further, this is not a case where the jury will already be desensitized to inflammatory and shocking evidence. *See Curley*, 639 F.3d at 63 ("introduction of guns into the trial" was abuse of discretion where gun-related evidence tended to show the defendant was "more violent and disturbed than he appeared from the other evidence").

The government argued for admission of Mr. Shkreli's threats to and harassment of Mr. Pierotti's family on the ground that it was "direct evidence of the crime charged in Count Eight" because this evidenced in the trial against Mr. Shkreli allegedly demonstrated "that Shkreli intended to retain control over the Fearnow Shares[.]" Dkt. No. 230, at 14. Conspicuously absent was any suggestion that these threats by Mr. Shkreli were condoned, authorized, or known about in advance by Mr. Greebel. That linkage is absolutely necessary for the government to seek to admit such evidence against Mr. Greebel.

Moreover, conspicuously absent was any suggestion that Mr. Shkreli's threats to Mr. Pierotti's family—in the absence of any evidence that Mr. Greebel condoned, authorized, or knew about them in advance—has any relevance to *Mr. Greebel's mens rea* for the charged crimes. *Morgan*, 786 F.3d at 233 ("[T]he government did not argue that the death threat letter was probative of a change in *Morgan's* state of mind. But only *Morgan's* state of mind matters if the government's theory was that the death threat letter was admissible to show his consciousness of guilt."). Where there is "alternative evidence with the same or greater probative value, but with a lesser threat of unfairly prejudicing the defendant, as the proffered evidence[,] . . . the court must discount the probative value of the originally proffered evidence

4

and exclude it if its now lesser probative value is substantially outweighed by unfair prejudice to the defendant." *United States v. Ozsusamlar*, 428 F. Supp. 2d 161, 170 (S.D.N.Y. 2006) (citing *Old Chief v. United States*, 519 U.S. 172, 182–83 (1997)); *see also id.* ("The Supreme Court has instructed that district courts must take care to determine whether there exists any alternative evidence with the same or greater probative value . . ."); *United States v. Qamar*, 671 F.2d 732, 736 (2d Cir. 1982) (evidence must serve an "important purpose"); *United States v. Check*, 582 F.2d 668 (2d Cir. 1978) (evidence must meet a "clear need"). *United States v. Savage*, 505. F.3d 754, 761 (7th Cir. 2000) (evidence of threats properly excluded where the author's "violent character had already been introduced" and "[a]ny further evidence on this point, especially considering its low probative value, seem[ed] unnecessary").

Here, evidence of Mr. Shkreli's threats to and harassment of Mr. Pierotti's family has absolutely no probative value of Mr. Greebel's state of mind. Introducing such highly inflammatory evidence would only poison the jury's opinion of Mr. Greebel. It is quite surprising that the United States Department of Justice would endeavor to seek to admit such evidence at Mr. Greebel's trial. Because there is no evidence that Mr. Greebel authorized, condoned, or knew about in advance Mr. Shkreli's alleged threats to and harassment of Mr. Pierotti's family, such evidence will not make any fact of consequence in connection with Mr. Greebel's alleged liability more or less likely, and such evidence will serve to inflame and unduly prejudice the jury against Mr. Greebel, we respectfully request that the Court preclude admission of such threats and harassment of Mr. Pierotti's family.

B.   **Evidence of Mr. Shkreli's Conduct Relating to KaloBios, Daraprim, and Controversial Public Statements Should be Inadmissible**

We respectfully ask the Court to preclude the government from offering evidence relating to Mr. Shkreli's acquisition of shares in KaloBios Pharmaceuticals, Inc. ("KaloBios"), his raising

5

the price of Daraprim by approximately 5,000 percent, and his controversial public statements, during its case-in-chief, any cross-examination of Mr. Greebel should he testify at trial, and during any rebuttal case by the government.

*First*, in 2015 Mr. Shkreli and two other investors successfully acquired a majority position in KaloBios, prompting a strong reaction from certain observers of the financial industry. Indeed, after Mr. Shkreli announced his majority stake, the company's share price increased dramatically, which "for a company that seemed set for bankruptcy until Shkreli invested and took the helm, had some crying market manipulation." *See* Corinne Jurney, *Martin Shkreli, Twitter and Moving Markets in 140 Characters or Less*, Forbes (Dec. 3, 2015), https://www.forbes.com/sites/corinnejurney/2015/12/03/martin-shkreli-twitter-and-moving-markets-in-140-characters-or-less.

*Second*, that same year, Mr. Shkreli, as CEO of Turing Pharmaceuticals ("Turing"), raised the price of prescription drug Daraprim from $13.50 to $750. This decision not only garnered negative media attention in 2015 but also affected jury selection for Mr. Shkreli's trial last month. *See* Dan Mangan, *Shrkeli Jury Picking Goes Very Slow: "I Think He's a Very Evil Man," One Woman Says*, CNBC (June 26, 2017), https://www.cnbc.com/2017/06/26/shkreli-jury-picking-goes-very-slow-woman-calls-him-evil-man.html (noting that several potential jurors "believed incorrectly [Mr. Shkreli] had been responsible for the price increase of another drug besides his own").

*Third*, the government and the Court are well aware of Mr. Shkreli's "controversial public statements" and his "active and deeply divisive media presence." Dkt. No. 163, at 34-38;

6

Dkt. No. 261, at 1.[2]  Indeed, as we noted in our memorandum in support of severance, one journalist has described Mr. Shkreli's Twitter feed as "a biohazard site" for its "toxic mix of hubris, arrogance, insults, and self-promotion" and a "spectacle of narcissism and lack of self-awareness."  Dkt. No. 163, at 35 n.6.  *The New York Times* has commented that "[b]efore the arrest, based on his tweets and live videos, [Mr. Shkreli] almost seemed to be playing the role of a movie bad guy."  *Id.*

Evidence relating to Mr. Shkreli's efforts to acquire a large stake in KaloBios, his decision to raise the price of Daraprim, and his notorious public persona are irrelevant to the charged conduct and serve only to distract and confuse the jury.  *United States v. Sterling*, 2017 WL 2304024, at *6 (S.D.N.Y. May 24, 2017) (precluding evidence that "could only have caused further irrelevant distraction"); *see also Blue Cross and Blue Shield of New Jersey, Inc. v. Philip Morris, Inc.*, 138 F. Supp. 2d 357, 365 (E.D.N.Y. 2001).  Mr. Shkreli's acquisition of KaloBios shares, his decision to raise the price of Daraprim, and his notorious public persona are not at issue in Mr. Greebel's case.  Evidence of this irrelevant, controversial conduct would be unduly prejudicial and confuse and mislead the jury.  *United States v. Colombo*, 909 F.2d 711 (2d Cir. 1990) (evidence properly excluded that would "muddle the jury").  Because such evidence would serve only to "focus[] the jury upon the wrong event[s]," *Schatzle*, 901 F.2d at 256, it should be precluded under Rule 403.

---

[2]  The final section of Mr. Greebel's Memorandum in Support of Severance and the exhibits cited therein provide additional examples of Mr. Shkreli's notorious public persona.  Mem. Law Supp. Mot. to Sever, Dkt. No. 163, at 34-38.

7

### C. Evidence of Mr. Greebel's Compensation Is Irrelevant and Unduly Prejudicial

We respectfully ask the Court to preclude any evidence of Mr. Greebel's compensation at Katten under Rule 401 and Rule 403. *Hart v. RCI Hospitality Holdings, Inc.*, 90 F. Supp. 3d 250, 264 (S.D.N.Y. 2015) (plaintiff's "recitation of her income . . . [was] likely to provide a significant source of confusion and distraction" and could "prompt the jury to be angry"). The Second Circuit has reversed a conviction based on the government's prejudicial use of, and references to, a defendant's income. *United States v. Stahl*, 616 F.2d 30, 33 (2d Cir. 1980). Evidence relating to a defendant's compensation was "intend[ed] to arouse prejudice against the defendant because of his wealth" and that such evidence "appeal[ed] to class prejudice." *Id.*, at 33.

During the relevant period at issue, Mr. Greebel was a partner at Katten and earned at least three hundred thousand dollars per year in total compensation. Mr. Greebel's compensation was many multiples more than the median household income for the counties from which the jury will be drawn.[3] Evidence of Mr. Greebel's income thus poses a significant risk that jurors will make their decision based *not* on evidence relating to the charged conduct but on an "emotional" or other "improper basis"—*i.e.*, due to bias or prejudice toward someone they perceive to have earned a disproportionately high income. This is the very sort of class-based prejudice the Second Circuit sought to guard against in *Stahl*.

---

[3] According to the latest data from the United States Census Bureau, the following counties have the following median incomes: Brooklyn: $48,201; Nassau: $99,256; Suffolk: $88,663; Staten Island: $73,197; Queens: $57,720. *See* U.S. Census Bureau, "Quick Facts," *available at* https://www.census.gov/quickfacts/fact/map/richmondcountystatenislandboroughnewyork,suffolkcountynewyork,nassaucountynewyork,queenscountyqueensboroughnewyork,bronxcountybronxboroughnewyork,kingscountybrooklynboroughnewyork/INC110215

8

Nor does evidence related to Mr. Greebel's compensation "logically relate[], either directly or through an inferential chain of proof, to at least one of the formal elements of the charges made or defenses raised in the case[.]" *Blue Cross and Blue Shield of New Jersey, Inc. v. Philip Morris, Inc.*, 138 F. Supp. 2d 357, 365 (E.D.N.Y. 2001) (citations omitted). The government will likely argue that Mr. Greebel's annual billable hours were affected by his work on behalf of Retrophin and the MSMB Entities and that therefore Mr. Greebel's compensation is relevant to his motive. But any attempt by the government to connect Mr. Greebel's compensation to the alleged conspiracies is unavailing. Indeed, the evidence clearly shows that Mr. Greebel's compensation is not based on his billable work for Retrophin and the MSMB Entities, since his compensation actually *decreases* for the years in which he did the *most* work for these companies. Any marginal relevance of this evidence is thus vastly outweighed by the significant risk of prejudicing or biasing the jury against Mr. Greebel, and such evidence runs afoul of Rule 403's balancing test.

D. **Evidence Relating to Katten's Legal Fees Should Be Precluded**

Similarly, we respectfully ask the Court to preclude the government from offering evidence relating to the legal fees incurred by Katten through its work on behalf of Retrophin and MSMB under Rules 401 and 403. Evidence of Katten's legal fees does not logically relate to any of the elements of the charges against Mr. Greebel; it serves only to prejudice or bias the jury against him, by giving the unfair and incorrect perception that Mr. Greebel was paid $10 million for his work on behalf of Retrophin and MSMB. This is simply not true.

Throughout the course of this case, counsel for Mr. Shkreli and the government have repeatedly referred to Katten's legal fees, suggesting that there are implications to be drawn from the fact that they were in the multiple millions of dollars. *See, e.g.*, Hearing Tr. 116:20–24 (Apr. 7, 2017) (Mr. Brafman: "But just so the position is clear, we intend to take the position at trial,

9

one way or another, that my client hired a very, very good lawyer from a very, very prominent firm to which he paid $10 million for the distinction of getting indicted."); Hearing Tr. 7:8–10 (Apr. 7, 2017) (Mr. Brafman: "So, on the issue of criminal intent, the law firm providing the services billed Mr. Shkreli almost $10 million for their services."); Shkreli Trial Tr. 871:17–22 ("And on Counts Seven and Eight, Mr. Shkreli paid a big law firm in New York $10 million in legal fees."). Also during the trial, the government elicited testimony from Steve Aselage in which he said: "[W]hat we saw from Katten were bills that were excessive . . ." Shkreli Trial Tr. 3434:12–17. To the extent that the government attempts to offer evidence or elicit testimony relating to Katten's legal fees during the trial of Mr. Greebel, any such evidence should be precluded since its prejudicial effect outweighs any *potential* probative value.

Evidence relating to Katten's legal fees does not "logically relate[], either directly or through an inferential chain of proof, to at least one of the formal elements of the charges made or defenses raised in the case[.]" *Blue Cross and Blue Shield*, 138 F. Supp. 2d at 365 (citations omitted). Nor does it have "any tendency to make a fact more or less probable than it would be without the evidence" or serve to be "of consequence in determining the action." *Shultz*, 333 F.3d at 415. Katten legal fee evidence serves only to "mislead [rather] than [] enlighten" and to "muddle the jury." *Costello*, 221 F.2d at 674; *Colombo*, 909 F.2d at 714.

The fact that Katten billed almost $10 million in legal fees does not reflect the amount of money Mr. Greebel received from his representation of Retrophin and/or MSMB. Nor does it reflect the amount of money that Katten as a firm received from the representation. While Katten actually billed approximately $9 million with respect to Retrophin/MSMB matters, the firm only collected somewhere between $5 and $6 million in fees. Furthermore, these numbers do not reflect take-home compensation for Mr. Greebel, and the fees reflect work completed by

10

approximately 90 different timekeepers across the firm—attorneys and staff, within both the corporate and litigation practice groups. The lack of any clear connection between Katten's legal fees and the elements of the charge against Mr. Greebel necessitate the preclusion of such evidence under the balancing test of Rule 403.

An attempt to use evidence relating to Katten legal fees to draw an inference as to Mr. Greebel's motive to conspire to commit wire or securities fraud would be unfairly prejudicial, mislead the jury, and create confusion. Given that any possibility of probative value is substantially outweighed by these extremely prejudicial effects, evidence or testimony regarding Katten legal fees should be precluded at Mr. Greebel's trial.

## IV. CONCLUSION

For the foregoing reasons, we respectfully request that the Court preclude the government from offering this irrelevant, misleading, and unfairly prejudicial evidence at trial.

Dated: New York, New York
August 18, 2017

                                                */s/ Reed Brodsky*
Reed Brodsky
Winston Y. Chan
Randy M. Mastro
Lisa H. Rubin

GIBSON, DUNN & CRUTCHER LLP
200 Park Avenue
New York, NY 10166
(212) 351-4000
rbrodsky@gibsondunn.com
*Counsel for Defendant Evan Greebel*