UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

UNITED STATES OF AMERICA

    -against-

EVAN GREEBEL,

               *Defendant.*

ECF Case

No. 15-cr-00637 (KAM)

ORAL ARGUMENT REQUESTED

**MR. GREEBEL'S MOTIONS *IN LIMINE* TO PRECLUDE CERTAIN INADMISSIBLE TESTIMONY FROM THE TRIAL OF *UNITED STATES V. MARTIN SHKRELI* AND MOTION TO PRECLUDE EXPERT TESTIMONY**

## TABLE OF CONTENTS

I. Motion to Preclude Certain Inadmissible Testimony and Documents From The Trial of *United States v. Martin Shkreli* .................................................................................. 1

    A. Timothy Pierotti's Inaccurate Testimony that Evan Greebel Received Fearnow Shares is Inadmissible ................................................................................... 1

    B. Timothy Pierotti's Speculative Testimony About Mr. Greebel's Role as Counsel is Inadmissible ............................................................................... 3

    C. GX 120-14 is Inadmissible Based on Mr. Pierotti's Testimony that the Email has Nothing to do With the Fearnow Shares .................................................. 5

    D. Michael Smith's Email Dated December 11, 2012 Regarding Compliance for Personal Trading Accounts (GX 120-11) is Inadmissible ............................... 8

    E. Timothy Pierotti's Testimony About a Conference Call With Michael Fearnow is Inadmissible ..................................................................................... 8

    F. Testimony and Evidence Relating to an October 20, 2012 Letter from the SEC to Mr. Shkreli is Inadmissible ......................................................................... 9

II. Motion to Preclude The Same Expert Opinion Testimony of Deborah Oremland that the Court Prohibited During Mr. Shkreli's Trial ................................................... 10

III. Motion to Prohibit the Government From Calling an Expert Witness In the Areas of Professional Responsibility and/or Legal Ethics Because the Government has Not Met the Court's August 11, 2017 Deadline .......................................................... 12

CONCLUSION ................................................................................................................. 15

We respectfully submit this motion to preclude certain testimony and documents from being admitted into evidence to present certain issues as early as possible for the benefit of the Court, the parties, and the jury. We have not identified all testimony and exhibits from the trial of *United States v. Shkreli* that we believe are inadmissible at Mr. Greebel's trial, and we reserve the right to raise objections to such testimony or government exhibits during the trial.

I.   **Motion to Preclude Certain Inadmissible Testimony and Documents From The Trial of *United States v. Martin Shkreli***

   A.   **Timothy Pierotti's Inaccurate Testimony that Evan Greebel Received Fearnow Shares is Inadmissible**

Timothy Pierotti's testimony that Mr. Greebel received Fearnow shares and/or was on a list to receive Fearnow shares is factually untrue. As a result, the testimony is inadmissible, and we ask the Court to instruct the government to work with Mr. Pierotti so that he does not testify in that manner during the upcoming trial. During the trial of *United States v. Shkreli*, Mr. Pierotti testified in relevant part as follows:

> Q:   What was the group that was buying shares in Desert Gateway?
>
> A:   It was all kind of friends and associates or former associates. As I recall, I was me; Andy Vaino; a guy named Edmund Sullivan who had been a broker at Cowan and my understanding was a friend of Martin's; ***it was his attorney at the time, Evan Greebel;*** it was Marek; if I said Andy Vaino already, I apologize; Mulleady; Fernandez. I'm not sure if I'm leaving anybody.

Shkreli Trial Tr. 4261:2-9 (direct examination) (emphasis added).

> Q:   All right. Did I understand is your testimony on direct examination ***that Evan Greebel got shares of Retrophin?***
>
> A:   ***That's what I recall, yes***.
>
> Q:   So your recollection that Evan Greebel, the partner at Katten ***also got these shares that you and Marek and Ed Sullivan got?*** He was in that group?

1

> A:   *Yes.*
>
> Q:   Okay. *And you're sure about that?*
>
> A:   *I remember seeing the list of the group that was getting it and Evan was on there.*
>
> Q:   Okay. And that was the basis of your testimony this morning that Evan got shares of Desert Gateway?
>
> A:   Yes.

Shkreli Trial Tr. 4359:5-18 (emphasis added).

Mr. Pierotti's testimony that Mr. Greebel received Fearnow shares is factually untrue. Mr. Pierotti's further testimony that there was a "list of the group that was getting" Fearnow shares and that Mr. Greebel "was on there" is also factually untrue. The government has not offered (nor could it offer) any evidence that Mr. Greebel received Fearnow shares, or that Mr. Greebel appeared on any list to receive Fearnow shares. For example, the government introduced multiple versions of the capitalization table of Retrophin, and not one of those versions has Mr. Greebel on the list to receive Fearnow shares.

As Your Honor noted during one of the many sidebars arising from Mr. Pierotti's tendency to draw inaccurate inferences and make declaratory (and frequently inaccurate) statements about securities laws and regulations, "I appreciate what you're dealing with. From the early get-go it was clear he's somebody who likes to talk." Shkreli Trial Tr. 4629:15-17. Even the government stated of its own key witness—indeed, the government's only percipient witness relating to Count Eight—that Mr. Pierotti had a tendency to testify about legal conclusions even after the government warned him not to do so: "I have had this conversation, but I will speak with him again about any kind of legal conclusions or phrases along those lines." Shkreli Trial Tr. 12-14.

2

Factually untrue testimony that Mr. Greebel's receipt of Fearnow shares, and/or Mr. Greebel's appearance on a list to receive Fearnow shares, is not admissible. Given that it is untrue, it has no probative value whatsoever. It does not even pass the low threshold of Rule 401 given that the testimony does not make any fact of consequence more or less likely. Moreover, this particular testimony by Mr. Pierotti is unfairly prejudicial and misleading to the jury.

### B. Timothy Pierotti's Speculative and Unfounded Testimony About the Relationship Between Michael Fearnow and Troy Fearnow is Inadmissible

Mr. Pierotti's testimony regarding the relationship between Michael Fearnow and Troy Fearnow was obviously speculative not based on personal knowledge. Specifically, during the trial of *United States v. Shkreli*, the government asked Mr. Pierotti: "Who is Troy Fearnow?", and Mr. Pierotti volunteered: "To the best I've come to learn, he's a relative of Michael Fearnow." Shkreli Trial Tr. 4262:12-14. When Mr. Shkreli's counsel objected based on "what he's come to learn," the Court directed Mr. Pierotti to answer based on "[j]ust what you know." *Id.* at 4262:15-16. Mr. Pierotti then gave the same answer—dropping off the fact that his testimony was based on "the best I've come to learn"—stating: "He's a relative of Michael Fearnow." *Id.* at 4262:17. It is obvious that Mr. Pierotti does not have personal knowledge, as required by Federal Rule of Evidence 602, of the relationship between Michael Fearnow and Troy Fearnow. Accordingly, this Court should preclude Mr. Pierotti from so testifying.

### B. Timothy Pierotti's Speculative Testimony About Mr. Greebel's Role as Counsel is Inadmissible

Mr. Pierotti's speculative testimony about Mr. Greebel's role as counsel is inadmissible. When asked during Mr. Shkreli's trial about who Mr. Greebel was representing, Mr. Pierotti responded with a "guess." Guesses about the role of Mr. Greebel are not admissible. In this case where Mr. Greebel's role as counsel are at issue in this case—with the government by its own

3

admission unclear as to who Mr. Greebel was representing—Mr. Pierotti's testimony regarding Mr. Greebel's role based on guesswork has no probative value, is unduly prejudicial and creates confusion.

> Specifically, during the trial of *United States v. Shkreli*, Mr. Pierotti testified:
>
> Q:   And who is Evan Greebel?
>
> A:   He was ***Retrophin's*** attorney ***or Martin's*** attorney.
>
> Q:   And do you know whether he was Retrophin's attorney or Martin's attorney?
>
> A:   ***I guess*** I thought he was both.

Shkreli Trial Tr. 4280:7-11 (emphasis added).

Mr. Pierotti's testimony about Mr. Greebel's role speaks for itself. At first, Mr. Pierotti testifies that Mr. Greebel was *either* "Retrophin's attorney or Martin's attorney." Mr. Pierotti's answer reflects that he does not actually know, and that all Mr. Pierotti understood was that Mr. Greebel was an attorney and he communicated with (and potentially responded to questions from) Mr. Shkreli. When the government followed up to seek clarity about whether Mr. Pierotti knew "whether [Mr. Greebel] was Retrophin's attorney or Martin's attorney," Mr. Pierotti guessed. Specifically, he said: "I guess I thought he was both."

This Court should preclude the government from eliciting this testimony from Mr. Pierotti. He obviously does not know who Mr. Greebel represented, and his "guess" has no probative value. It is apparent that he does not have personal knowledge, as required by Rule 602, to testify as to the identity of Mr. Greebel's client. Fed. R. Evid. 602, Advisory Committee Notes (witnesses should testify based on personal knowledge given the "common law insistence upon the most reliable sources of information.").

4

### C.  GX 120-14 is Inadmissible Based on Mr. Pierotti's Testimony that the Email has Nothing to do With the Fearnow Shares

Government exhibit 120-14 is inadmissible because, during cross-examination, Mr. Pierotti disclosed that the email has nothing to do with the government's allegations relating to the Fearnow shares.  Shkreli Trial Tr. 4358:6-8.  It is an email Mr. Shkreli sent to people who had nothing to do with the Fearnow shares (as well as Fearnow share recipients).  Ex. A.  As a result, the email is not relevant under Rule 401; moreover, given the content and how it has nothing to do with the Fearnow shares, any probative value (which seems non-existent in connection with the charged conspiracy) is substantially outweighed by the danger of unfair prejudice, confusion, and misleading the jury.

During the government's direct examination, the government "move[d] into evidence Government [Exhibits] 120-11, 120-12, 120-14, and 120-15," and these exhibits were received into evidence without objection.  Shkreli Trial Tr. 4277:20-24.  The government then proceeded to question Mr. Pierotti about all four exhibits, except the government seemingly treated GX 120-14 in a unique manner as compared to the other three exhibits.  *Id*. at 4277-85.  The government ***asked no questions*** about GX 120-14 on direct-examination other than to carefully ask Mr. Pierotti to just read what Mr. Shkreli wrote in the email.  Specifically, the government's entire direct examination relating to GX 120-14 was as follows:

> Q:  I'm going to direct your attention to Government Exhibit 120-14 which is tab 14 in your binder.  And focusing on the top e-mail, *it's an e-mail from the defendant to a number of individuals including yourself* on December 18, 2012.  *And can you just read what the defendant wrote in this e-mail?*
>
> A:  "Friends and shareholders:  See the new article out on the deal from Forbes.  One of my priorities for the future is increasing the trading volume in the stock.  Anything anyone can do to help in this regard is welcome."

5

Shkreli Trial Tr. 4281:24 to 4282:8 (emphasis added).

The government did not ask any substantive questions to Mr. Pierotti about Mr. Shkreli's email in GX 120-14. The government never asked if Mr. Pierotti remembered it, and the government never asked if the email had anything to do with the Fearnow shares. Notably, the government also did not point out that Mr. Shkreli sent the email in GX 120-14 to people other than the Fearnow share recipients. *See* Ex. A. The first person on the email recipient list was Brent Saunders, the then-CEO of Bausch & Lomb Incorporated (and the now-CEO of Allergan, Inc.); in addition, Darren Blanton and George Haywood were also recipients of the email. The government never alleged, nor could they, that Messrs. Saunders, Blanton, and Haywood had anything to do with the Fearnow shares, or anything to do with the allegations in Count Eight. Indeed, the government produced a list of alleged unindicted co-conspirators in Count Eight this week (at our request), and none of these gentlemen, of course, were on that list.

On cross-examination, when Mr. Pierotti was questioned directly about GX 120-14, Mr. Pierotti testified that he did not remember the email and that it was ***"unrelated"*** to his testimony about Mr. Shkreli's alleged statements to "buy and sell and buy and sell" to create volume with the Fearnow shares. Specifically, after Mr. Pierotti testified that "one thing that occurred" was that he "and the others were going to buy and sell and buy and sell and create volume" with the Fearnow shares, Shkreli Trial Tr. 4352:24 to 4353:3, there was a sidebar and then Mr. Pierotti was questioned about GX 120-14:

> Q: We're going to start Mr. Pierotti with something already in evidence as [ ] 120-14. It's an e-mail to you and other people from Martin dated December 18, 2012. It's 120-14. Do you see that, sir?
>
> A: Yeah.
>
> Q: Okay. And you were asked about that on your direct examination. Do you remember being asked about this?

6

> A:   Was I asked about this specific e-mail?
>
> Q:   I thought you were, but let me follow up. You're sent this e-mail, you and others from Martin and Martin says, "See the new article out on the deal from Forbes." Do you remember now that you talked about this on direct?
>
> A:   Yeah, I remember talking about it on direct and I remember the 30 under 30 thing from Forbes.
>
> Q:   Right. Then he says, "One of my priorities for the future is increasing the trading volume in our stock. Anything anyone can do to help in this regard is welcome." Right? He says that?
>
> A:   Yeah.
>
> Q:   Okay. Well, now he's not asking you to trade with Biestek and Biestek to trade with Mulleady and so forth in this e-mail, correct?
>
> A:   ***I don't remember this e-email, actually. I mean, I don't remember getting it. When I said that there was discussions about trading the stock, it's not – it's unrelated to that e-mail.***

Shkreli Trial Tr. 4357:6 to 4358:8.

Based on Mr. Pierotti's admission that GX 120-14 was unrelated to his contention that Mr. Pierotti had told people to buy and sell and buy and sell the Fearnow shares to increase the volume of trading, the government should be precluded from offering into evidence GX 120-14. Mr. Pierotti's testimony is clear that GX 120-14 does not make any fact of consequence relating to the government's allegations about the use of Fearnow shares more likely. Moreover, people other than the Fearnow recipients were sent this email; since the government does not allege that any of those people were involved in the charged conspiracy in Count Eight, the government cannot allege with a straight face that Mr. Shkreli's email in GX 120-14 was sent in furtherance of that charged conspiracy. Given the content of the email—with Mr. Shkreli stating, among other things, that "[o]ne of my priorities for the future is increasing the trading volume in our

7

stock - anything anyone can do to help in this regard is welcome"—the non-existent probative value is highly outweighed by the danger of unfair prejudice, confusion, and misleading the jury. It would be unfair, unduly prejudicial, and misleading to suggest to the jury that GX 120-14 was proof of the charged conspiracy in Count Eight relating to the Fearnow shares.

### D.  Michael Smith's Email Dated December 11, 2012 Regarding Compliance for Personal Trading Accounts (GX 120-11) is Inadmissible

The Court should not receive into evidence government exhibit 120-11 because it constitutes hearsay for which there is no applicable exception at the trial of Mr. Greebel.  GX 120-11 is an email dated December 11, 2012 from Michael Smith to Messrs. Shkreli, Biestek, Pierotti, Fernandez, Mulleady, Tilles, and Vaino, as well as Lenora Izerne.  Ex. B.  The subject of the email is "Compliance for Personal Trading."  *Id.*  The email was offered and received into evidence without objection during Mr. Pierotti's testimony.  Shkreli Trial Tr. 4277:2–6; 4278:2–21.  Mr. Greebel is not on this email, and the government does not allege that Mr. Greebel ever received this email.  Since Mr. Smith is not an alleged unindicted co-conspirator in Count Eight, Mr. Smith's statements are hearsay.  And no applicable exception to the hearsay rules apply.

### E.  Timothy Pierotti's Testimony About a Conference Call With Michael Fearnow is Inadmissible

During Mr. Shkreli's trial, Mr. Pierotti testified about a telephone conference with Michael Fearnow during which several people, including Mr. Pierotti, were apparently in Mr. Shkreli's office in Manhattan.  Shkreli Trial Tr. 4274:24–4276:3.  Mr. Pierotti testified that he did not remember who else was present but that there were "a number of other people [] in the room."  Shkreli Trial Tr. 4275:5–11.  When the government questioned Mr. Pierotti about the call, he described a number of topics including the purchase of Desert Gateway.  Shkreli Trial Tr. 4275:12–13.  This testimony should be precluded in its entirety, as all of the purported

8

statements are hearsay and none of the statements fall within any hearsay exclusions or exceptions under Rules 801, 803, or 804.

For example, Mr. Pierotti should be precluded from testifying that Mr. Shkreli stated during this telephone conference with Michael Fearnow that "some shares will be held back." Shkreli Trial Tr. 4276:1. This statement is hearsay, and there is no applicable exception. The statement cannot be offered as a co-conspirator statement under Rule 801(d)(2)(E); there is no evidence that Mr. Shkreli's statement has anything to do with or was in furtherance of the charged conspiracy in Count Eight. *See United States v. Tellier*, 83 F.3d 578, 580 (2d Cir. 1996); *United States v. Gigante*, 166 F.3d 75, 83 (2d Cir. 1999). Further, Mr. Pierotti had no recollection of any explanation for the statement. Shkreli Trial Tr. 4276:2–3. As a result, it has little-to-no probative value. Finally, offering this snippet of a conference call without any information as to who was present in Mr. Shkreli's office other than Mr. Shkreli and Mr. Pierotti and without any further context is unduly prejudicial, and that prejudice substantially outweighs any probative value.

### F. Testimony and Evidence Relating to an October 20, 2012 Letter from the SEC to Mr. Shkreli is Inadmissible

The government should be precluded from offering into evidence an October 20, 2012 letter from the U.S. Securities and Exchange Commission ("SEC") to Mr. Shkreli. The government has offered no proof whatsoever that Mr. Greebel was aware of this letter or of Mr. Shkreli's response thereto, and any attempt to use this letter will create the risk of confusing the jury as to Mr. Shkreli's involvement in the Mr. Shkreli's correspondence with the SEC. Nor has the government demonstrated that this correspondence is related to the charged conspiracies in Counts Seven and Eight. Indeed, Mr. Shkreli's representations to the SEC do not shed any light on facts of consequence relating to the alleged misappropriation of Retrophin assets or the

9

alleged conspiracy to control the price and volume of Retrophin stock.  Similarly, the government should be precluded from eliciting Jackson Su's testimony relating to the October 20, 2012 SEC letter.  *See* Shkreli Trial Tr. 2249:25–2252:15.  Mr. Su's testimony that he obtained the SEC letter from Mr. Shkreli's email account and posted the letter on an online blog is, like the letter itself, completely irrelevant to the charges in Counts Seven and Eight, poses a risk of unfair prejudice, and would confuse the issues and mislead the jury.  Fed. R. Evid. 403.

## II. Motion to Preclude The Same Expert Opinion Testimony of Deborah Oremland that the Court Prohibited During Mr. Shkreli's Trial

We respectfully move to preclude the same expert opinion testimony of Deborah Oremland that this Court prohibited during Mr. Shkreli's trial.  Moreover, we move to preclude certain specific opinion testimony elicited from Ms. Oremland during her direct examination and cross-examination without objection from the government or Mr. Shkreli.

During Mr. Shkreli's trial, Your Honor ruled that Ms. Oremland was precluded from offering expert opinion testimony.  Specifically, Your Honor explained:

> My concern is that with regard to the objection to the "because" part of the regulations, that she would be offering more opinion testimony than fact testimony.  She would be relying on her expertise and experience as a chief of the Criminal Prosecution Assistance Group at FINRA, and her experience and knowledge, her specialized knowledge about the regulatory financial aspects of her job, and that the "because" part would tread very closely to linking that testimony to the facts in the case.
>
> And, I think that that part of her testimony should be excluded.  It just – I think runs the risk that she will be – although not directly linking, ultimate issues with her testimony, it would be too close of a connection for the jury to ignore and would risk usurping the jury's function as the fact finder and the body that would apply the instructions on the law.
>
> I do believe that her testimony regarding what the regulations provide would be helpful to the jury, to understand the

10

> landscape that would give some background to the testimony that we have been hearing. The jury must be wondering why all of this focus by the Government and the defense on these various forms and various parts of these forms that were highlighted for the jury.
>
> So, as long as this witness does not testify about the purpose of the regs or you know, paint scenarios about why the regs would be necessary to prevent certain problems that affect the market and the investing public, I think that that testimony should be appropriate.

Shkreli Trial Tr. 3857:4–3858:6. We submit the same ruling should apply to Mr. Greebel's trial.

On August 11, 2017, the government notified us that, among other things, the government "also anticipates that it will call as a fact witness Deborah Oremland of the Financial Industry Regulatory Agency ('FINRA')." Gov't's Aug. 11, 2017 Letter to Court at 2. The government further stated:

> Ms. Oremland's anticipated testimony will include ***an explanation of certain*** Securities and Exchange Commission ("SEC") rules, regulations and forms, including Rule 144, which governs the holding and sale of restricted securities, and Schedule 13D forms, which require the disclosure of ownership, including beneficial ownership, of stock of a publicly-traded company. To the extent that the defendant may argue that some or all of Ms. Oremland's anticipated testimony constitutes expert testimony, the government disagrees; nevertheless, the government is prepared to qualify Ms. Oremland as an expert on those areas of testimony if necessary.

*Id.* As the government stated in its July 14, 2017 filing relating to Ms. Oremland's testimony in the Shkreli trial, "FINRA does not allow CPAG employees to render opinions when testifying." Dkt. No. 267 at 3.

Given that FINRA precludes Ms. Oremland from offering opinions, we respectfully submit that any testimony by Ms. Oremland relating to any of the following would constitute opinion testimony and thus should not be permitted to be elicited through Ms. Oremland:

11

- The purpose of any rule, regulation or form, including Rule 144 and Schedule 13D;
- An explanation of why Schedule 13D requires disclosure of beneficial ownership of more than 5% of the voting class of a company's shares;
- Whether and/or how ownership of more than 5% could have an impact on the share price of an issuer; and/or
- Whether and/or how control over any portion of a company's stock could affect the trading volume and/or price of that stock.

Moreover, we respectfully submit that certain portions of the testimony of Ms. Oremland during the Shkreli trial crossed over the line into impermissible opinion testimony that is outside the scope of Ms. Oremland's responsibilities at FINRA. Specifically, we move to preclude the government from eliciting the following testimony:

- Ms. Oremland's testimony regarding the definition of an "affiliate" pursuant to Rule 144.  Ms. Oremland's testimony, for example, included that an affiliate "is someone who can exert a certain amount of control over a company, either they are an officer or director or they own a large amount of shares *or they are controlled by someone who is an affiliate*."  Shkreli Trial Tr. 4170:1-4 (emphasis added).

- Ms. Oremland's testimony during cross-examination that it was her opinion that members of the board of directors of a public company might not have to read the public filings:  "And a board of directors is obligated to make sure those documents are accurate, is that right?  I am not sure.  The board of directors of a company might not – like, each individual of the board might not review all the documents that are filed by the company with the SEC.  The board is kind of – they're pretty high level.  And the officers and directors of the company, those are the individuals, the CEO and the CFO, they're the ones who are signing the filings before they file them with the SEC.  So I can't say whether all the board reviews them."  Shkreli Trial Tri. 4194:2-11.

III. **Motion to Prohibit the Government From Calling an Expert Witness In the Areas of Professional Responsibility and/or Legal Ethics Because the Government has Not Met the Court's August 11, 2017 Deadline**

We respectfully move to preclude the government from calling an expert witness in "the areas of professional responsibility and/or legal ethics" because the government failed to comply with Your Honor's pretrial scheduling order by not identifying such

12

expert witness by August 11, 2017.  *See* Court's Amended Criminal Pretrial Scheduling Order, Dkt. No. 266 (July 14, 2017).

Prior to indicting an attorney working at a law firm serving as outside counsel to a company, the government could have identified and consulted with an expert witness in the area of professional responsibility and legal ethics for outside counsel representing companies.  Indeed, we certainly wish the government had done so.  But, unfortunately, the government did not to do that.  Since the indictment in December 2015, the government has had over 19 months to identify and then notify us by the August 11 deadline of an expert witness in the area of professional responsibility and legal ethics.  But the government did not do that.  Instead, in its August 11, 2017, letter, the government stated:

> With regard to potential expert witnesses, the government anticipates that it may call, either on its direct case or as a rebuttal witness, an expert in the areas of professional responsibility and/or legal ethics for outside counsel representing companies and/or the Board of Directors.  Once the identity and particular subject matter of the expert witness, if any, is identified, the government will provide additional notice to the defendant pursuant to Federal Rule of Criminal Procedure 16(a)(1)(G).

Gov't's Aug. 11, 2017 Letter to Court at 2.  We respectfully submit that the government's deadline for identifying and notifying expert witnesses has passed; and that there is no good cause for the government's delay.

By contrast, on August 11, 2017, we provided the government with notice of the names of our ten expert witnesses, the areas of and certain opinions regarding their anticipated testimony, and their qualifications.  Each of our noticed experts have sterling qualifications and, if called, would provide testimony that is both highly relevant and admissible.  Each one addresses certain potential prosecution theories, and thus we are

13

prepared to challenge fundamental misconceptions that the government has regarding corporate attorneys and corporate practices, among other things. While we may not call all of these experts, we wanted to be prepared to call whichever experts we needed to address the government's case-in-chief. From inception through the present—even after the trial of Mr. Shkreli—we remain flummoxed by what the government's evidence is against our client; by the government's theories of prosecution; and by how the government will attempt to prove its case.

      Prior to and after August 11, 2017, we sought multiple meet and confers with the government, and we hope to continue to meet and confer with them at their convenience to narrow the issues and preserve the Court's time. With respect to our expert disclosures, for example, we have informed the government that we will be happy to provide more disclosures if and when they inform us that they need additional disclosure regarding any or all of our expert witnesses. (Since our expert disclosures, the government has not asked us to provide any supplemental information relating to our experts.) We declined the government's suggestion to produce final expert disclosures and to schedule motions and hearings in September. While we offered to schedule some experts for motion practice and hearings before trial, we explained that our experts will be responding to the government's case-in-chief and, therefore, it would be highly prejudicial to the defense and premature to require the accused to finalize expert disclosures before the government has even put on a case. We explained how this was particularly true given that the government told us that they would be producing more discovery before trial (as they did on August 10) and that they anticipated marking more documents as exhibits before trial; and that we needed to reserve our right to have experts

respond to the government's further discovery, 3500 material, witness testimony, and exhibits.

## CONCLUSION

For the foregoing reasons, the Court should preclude the foregoing testimony and documents from being admitted into evidence to present certain issues as early as possible for the benefit of the Court, the parties, and the jury.

Dated:   New York, New York
              August 18, 2017

> */s/ Reed Brodsky*
> Reed Brodsky
> Winston Y. Chan
> Randy M. Mastro
> Lisa H. Rubin
>
> GIBSON, DUNN & CRUTCHER LLP
> 200 Park Avenue
> New York, NY 10166
> (212) 351-4000
> rbrodsky@gibsondunn.com
> *Counsel for Defendant Evan Greebel*