UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

UNITED STATES OF AMERICA

     -against-

EVAN GREEBEL,

                  *Defendant.*

ECF Case

No. 15-cr-00637 (KAM)

<u>ORAL ARGUMENT REQUESTED</u>

**MR. GREEBEL'S MOTION *IN LIMINE* TO ADMIT THE STEVEN ROSENFELD
ARBITRATION AND THE THOMAS KOESTLER ARBITRATION**

# TABLE OF CONTENTS

Page

I. ARGUMENT.................................................................................................................. 1

    A.    The Steven Rosenfeld Arbitration and the Thomas Koestler Arbitration are Admissible for Multiple Non-Hearsay Purposes, Relevant Under Rule 401, and Admissible Under Rule 403 .................................................... 1

        1.    Applicable Case Law .............................................................. 2

        2.    Factual Background ................................................................ 12

               a.    The Arbitration Decision and Award Relating to Dr. Rosenfeld's Consulting Agreement ............................. 12

               b.    The Arbitration Decision and Award Relating to the Draft Consulting Agreement of Mr. Koestler ......................... 14

        3.    The Arbitration Decisions and Awards Relating to Dr. Rosenfeld's Consulting Agreement and Mr. Koestler's Draft Consulting Agreement are Admissible for Non-Hearsay Purposes and Fall Within Hearsay Exceptions.......................... 16

    B.    Dr. Rosenfeld's Arbitration and Mr. Koestler's Arbitration Are Relevant Under Rule 401 .......................................................................... 19

II. CONCLUSION ........................................................................................................... 22

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Bradley v. Wells Fargo Bank, N.A.*,
   No. 12-CV-127-PB, 2014 WL 2106495 (D.N.H. May 20, 2014) ...........................................19

*Cary Oil Co., Inc. v. MG Ref. & Mktg., Inc.*,
   257 F. Supp. 2d 768 (S.D.N.Y. 2003)...........................................................................11, 12

*Collins v. N.Y.C. Transit Auth.*,
   305 F.3d 113 (2d Cir. 2002)........................................................................................10

*Munafo v. Metro. Transp. Auth.*,
   No. 00-CV-0134 (ERK), 2003 WL 21799913 (E.D.N.Y. Jan. 22, 2003) ........................10, 11

*Park W. Radiology v. CareCore Nat'l LLC*,
   675 F. Supp. 2d 314 (S.D.N.Y. 2009)...........................................................................11, 12

*Silverstein v. Chase*,
   260 F.3d 142 (2d Cir. 2001)...........................................................................................6

*Silverstein v. Smith Barney, Inc.*,
   No. 96 CIV. 8892 (JSM), 2002 WL 1343748 (S.D.N.Y. June 18, 2002), *aff'd*,
   *Silverstein v. Chase*, 61 F. App'x 743 (2d Cir. 2003)...........................................................18

*United States v. Boulware*,
   384 F.3d 794 (9th Cir. 2004) ...............................................................5, 6, 7, 9, 16, 18, 20, 22

*United States v. Dupree*,
   706 F.3d 131 (2d Cir. 2013)..............................................................................8, 9, 10, 16

*United States v. Fisher*,
   106 F.3d 622 (5th Cir. 1997), *abrogated on other grounds by Ohler v. United
   States*, 529 U.S. 753 (2000) ...................................................................2, 3, 4, 5, 20, 21, 22

*United States v. Weinstock*,
   863 F. Supp. 1529 (D. Utah 1994)....................................................................................18

**Rules**

Fed. R. Evid. 401 ...............................................................................1, 5, 6, 19, 20, 21

Fed. R. Evid. 403 ......................................................................................2, 7, 21, 22

Fed. R. Evid. 801(c)...........................................................................................9, 16

# TABLE OF AUTHORITIES
(continued)

Page(s)

Fed. R. Evid. 801(c)(2) ............................................................................................16

Fed. R. Evid. 803(14)................................................................................................6

Fed. R. Evid. 803(15)......................................................................1, 6, 7, 8, 18, 19

# I. ARGUMENT

**A.**    **The Steven Rosenfeld Arbitration and the Thomas Koestler Arbitration Are Admissible for Multiple Non-Hearsay Purposes, Relevant Under Rule 401, and Admissible Under Rule 403**

The Court should admit the powerful, relevant, and admissible evidence about the arbitration decisions and awards by two different arbitrators finding in two adversarial arbitration proceedings that Dr. Steven Rosenfeld's consulting agreement with Retrophin was not a "sham" contract, but rather lawful and enforceable, and that Thomas Koestler provided legitimate consulting services to Retrophin for which he was owed payment by Mr. Shkreli pursuant to a prior stock transfer agreement.

First, based on critically important decisions from the Fifth Circuit, the Ninth Circuit, and the Second Circuit, the arbitration orders are admissible for the non-hearsay purpose of demonstrating the legal effect of each arbitrator's decision on the legal rights and obligations of the parties to the agreements.

Second, based on Federal Rule of Evidence 803(15), the arbitration decisions are admissible for the truth of the matters asserted therein.

Third, the arbitration decisions are relevant pursuant to Federal Rule of Evidence 401 for a number of reasons.  For example, the arbitrator's decision determining the legal rights and obligations of Retrophin and Dr. Rosenfeld makes a fact of consequence—that Dr. Rosenfeld's agreement is not a "sham" contract that defrauded Retrophin, but rather a lawful agreement which was enforceable against Retrophin—more likely.  Moreover, the arbitrator's decision makes a fact of consequence—Mr. Greebel's good faith belief in the legality of the agreement— more likely.

While these arbitration decisions are certainly harmful to the government's case since they are directly contrary to one of the government's central theories in Count Seven—*i.e.*, that the consulting agreements are "shams" orchestrated by Mr. Shkreli and Mr. Greebel to pay back the personal debts of Mr. Shkreli—harm to the government's case is not a basis to exclude the evidence.

Finally, as reflected in multiple decisions in the Fifth Circuit, the Ninth Circuit, and the Second Circuit, the arbitration decisions are admissible under Federal Rule of Evidence 403. Indeed, the exclusion of similar evidence resulted in the vacating of criminal convictions in both the Fifth Circuit and the Ninth Circuit.

### 1.        Applicable Case Law

Significant precedent in the Fifth Circuit, the Ninth Circuit, and the Second Circuit compel the admission of Dr. Rosenfeld's arbitration decision and Mr. Koestler's arbitration decision for non-hearsay purposes and for the truth pursuant to an exception to the hearsay rules. Indeed, both the Fifth Circuit and the Ninth Circuit vacated convictions after district courts precluded an arbitration ruling and a state-court judgment, respectively, for the very same, but incorrect, reasons that the government moved to preclude admission of the arbitration decisions in *United States v. Shkreli*.  And Your Honor is familiar, of course, with the Second Circuit's critical decision permitting the government to admit a state-court TRO as evidence in a criminal case; in that case, the U.S. Attorney's Office for the Eastern District of New York appealed Your Honor's ruling to the Second Circuit and won the right to admit a state-court TRO in the criminal case.

*United States v. Fisher* is a seminal Fifth Circuit decision demonstrating that arbitration decisions and awards are admissible in subsequent criminal proceedings.  106 F.3d 622, 633–34

(5th Cir. 1997), *abrogated on other grounds by Ohler v. United States*, 529 U.S. 753, 758–59 (2000).  In *Fisher*, the Fifth Circuit vacated the conspiracy and substantive wire fraud, mail fraud, and bank fraud convictions based, in part, on the district court's exclusion of an arbitrator's findings that the alleged victims of the criminal charges had breached a contractual agreement and were not owed any money.  106 F.3d at 633-34.  At the heart of the government's theory of its criminal case was that former NFL players had entered into repurchase agreements with the defendants—agreeing to invest money in the bank holding company of the defendants in exchange for refinancing on purchased homes—based on fraudulent misrepresentations and misleading statements.  *Id*. at 626.  But in an arbitration proceeding that took place after, of course, the execution of the repurchase agreements at issue—where the government was not a party—an arbitrator found that the alleged victim NFL players had breached the agreements, and the defendants did not owe them any money.  *Id*. at 633.  Because the arbitration decision contradicted the government's theory of its criminal case, the government moved to preclude its admission.  The government argued, as it did in *United States v. Shkreli*, that the arbitration decision was inadmissible on the grounds that (a) it was hearsay, (b) the arbitrator did not detail his reasons for the finding, (c) the government was not a party to the arbitration proceeding, (d) the arbitration decision was not relevant, (e) the arbitration decision was extremely prejudicial, and (f) the arbitration decision would create confusion.  *Id*. at 633-34.  The district court granted the government's motion, precluded the admission of the arbitration decision, and the defendants were convicted.

The Fifth Circuit vacated the convictions, holding that "[i]t was error to exclude this evidence."  *Id*. at 634.  The Fifth Circuit recognized that the defendants were seeking to admit the evidence for non-hearsay purposes:  "[T]he arbitration results were not offered to prove

innocence, but to show that contrary to the Government's assertions, the defendants' legal position against the Players was not a 'ruse' or a position taken in bad faith."  The Fifth Circuit held that **the defendants should have been able to argue that the arbitrator's decision "showed the legitimacy of their position the athletes had breached their contracts with USSA and were not entitled to repurchase contracts**."  *Id*. at 633 (emphasis added).  The Court explained:  "This evidence was highly relevant.  Evidence that an arbitration proceeding occurred and that the defendants were not found obliged to repurchase the Players' shares **goes to the heart of the case**."  *Id*.  And the Court further ruled that "[t]he arbitration results are not so inherently confusing that the defense should have been prevented from introducing them."  *Id*.

The Fifth Circuit's decision in *United States v. Fisher* is squarely on all fours with the arbitrations at issue here.  Nevertheless, in arguing against its application here, the government misinterpreted the Court's decision.  *See* Gov't's June 9, 2017 Mem., Dkt. 237 at 13–14.  The government contended *incorrectly* that the defendants in the criminal case had argued that "the prior arbitrations were evidence of their good faith <u>at the time</u> of the charged conduct."  *Id*. at 13 (emphasis in original).  In reality, the defendants argued that the prior arbitrations were evidence of their good faith **at the time that they entered into the repurchase agreements**, not at the time that they were arrested.  Whether the arbitration took place before or after their arrest was irrelevant.[1]  The Fifth Circuit was terribly troubled that the government successfully kept out

---

[1]  The government's misinterpretation of *United States v. Fisher* becomes abundantly clear from its assertion that "[a]n after-the-fact judgment by an arbitrator sheds no light on the defendant's intent at the time he entered into the agreement."  Gov't's June 9, 2017 Mem., Dkt. 237 at 13-14.  Indeed, the Fifth Circuit in *Fisher* held the opposite—an after-the-fact arbitration decision that the defendants had not defrauded the NFL athletes in connection with the repurchase agreements was "highly relevant."  106 F.3d at 633–34.  As explained further in this motion, any argument by the government that Mr. Greebel cannot introduce the arbitration decisions because he did not participate in the

"highly relevant" evidence—the arbitration decision—that "showed the legitimacy of [the defendants'] position" that they had not defrauded the NFL athletes. 106 F.3d at 633.

In *United States v. Boulware*, 384 F.3d 794 (9th Cir. 2004), the Ninth Circuit Court of Appeals also vacated convictions against the defendant on all nine tax fraud counts because, as the Fifth Circuit found in *Fisher* with an arbitration decision, the district court should not have excluded evidence of a state-court judgment at the government's request. The Ninth Circuit held: "The district court abused its discretion by excluding evidence of a state-court judgment that directly supported Boulware's defense to the tax charges and that directly contradicted the government's theory of the case—that Boulware had stolen money from his closely-held corporation and gifted it to his girlfriend." *Id.* at 798–99. Once again, as in *United States v. Fisher* and *United States v. Shkreli*, the government argued against the admission of the state-court judgment that hurt the government's case, contending that, among other things, the state court judgment was not relevant, admitting the judgment would confuse the jury, and the judgment was inadmissible hearsay. *Id*. at 802. And the district court granted the government's motion, precluded admission of the state-court judgment, and the defendant was convicted.

On appeal, as in *Fisher*, the Ninth Circuit reversed and vacated the defendant's conviction. The Ninth Circuit held that the state-court judgment was relevant under Rule 401 on the issue of "[w]hether Boulware transferred the [company] funds to [his girlfriend] for personal purposes or for her to hold in trust for [the company]"—"[t]hat he pursued a successful litigation against [his girlfriend] to force her to return the monies to [the company] has some tendency to make it more likely that he gave the monies to her to hold in trust." *Id*. at 805. The *Boulware*

---

proceeding is contrary to law, makes no sense, and disregards the applicable non-hearsay purpose and hearsay exception.

court explained:  "Rule 401 does not require that [the state court judgment] 'prove'

anything.  Rule 401's only requirement is that the proffered evidence have a tendency to prove a

fact in issue and the judgment certainly has some tendency to make Boulware's explanation (that

he gave the money to [his girlfriend] to hold in trust for [the company]) more probable and the

government's theory of the case (that he simply gave the money to his girlfriend) less probable.

Rule 401 requires no more." *Id*. n.3.

The Ninth Circuit also rejected the government's argument that the state-court judgment

was hearsay.  The Ninth Circuit held: "A prior judgment is ***not hearsay***, however, ***to the extent***

***that it is offered as legally operative verbal conduct that determined the rights and duties of the***

***parties***." *Id*. at 806 (emphasis added).  Moreover, the Ninth Circuit ***held that there were two***

***hearsay exceptions*** that permitted the state-court judgment to be received in evidence for the

truth of the matters asserted therein:  Rule 803(14), which is inapplicable here, and Rule 803(15),

which is directly applicable here.  The *Boulware* Court stated that "to the extent that Boulware

offered the judgment for the truth of the matters asserted—to establish that he had not gifted the

funds to [his girlfriend] and that she was and had been holding them in constructive trust for [the

company]—the judgment met the exception set forth in Rule 803(15)." *Id*.  The Ninth Circuit

explained:

> Under the plain meaning of Rule 803(15), hearsay statements are
> admissible if they are contained within a document that affects an
> interest in property, if the statements are relevant to the purport of
> the document, and if dealings with the property since the document
> was made have not been inconsistent with the truth of the
> statements.  *See Silverstein v. Chase*, 260 F.3d 142, 149 (2d Cir.
> 2001).  Here, the state court judgment meets each of these
> requirements.  The judgment affected an interest in property by
> declaring [the company] to be the legal owner of the funds and by
> requiring [the girlfriend] to return them to [the company], and the
> statements are relevant to the purport of the document.  In addition,
> there is no indication that the parties acted inconsistently with the

> judgment; it was undisputed that the judgment was valid and could
> be authenticated.

*Id*. at 807.

The Ninth Circuit rejected the government's arguments that the state-court judgment should be excluded under Rule 403 because it was "unreliable," "would confuse the jury," and "would lead to a mini-trial to show the deficiencies in the evidence considered in the state case." *Id*. at 808. All those concerns could be addressed through a "cautionary instruction" and the trial judge's control over the admission of the evidence relating to the state court judgment. *Id*. Finally, when the government argued that the exclusion of the state court judgment was harmless error, the Ninth Circuit disagreed strongly. The Ninth Circuit declared that the state-court judgment was "crucial to Boulware's defense," "directly contradicted the government's theory of the case," and provided independent, corroboration of a core defense. *Id*. Indeed, ***it was the exclusion of the state-court judgment alone that required vacating the convictions***. The Ninth Circuit concluded that "we are not convinced beyond a reasonable doubt that the jury would have arrived at the same verdict had testimony regarding the state court judgment and the judgment itself not been excluded." *Id*. at 809.

The government's attempts to distinguish *Boulware* do not withstand scrutiny. *See* Gov't's June 15, 2017 Letter, Dkt. No. 248, at 2-3. First, the government incorrectly asserts that "the only arguably pertinent portion of the *Boulware* decision is the portion related to FRE 803(15) . . .", *id*. at 2—overlooking the Ninth Circuit's holding that the judgment was admissible for the non-hearsay purpose of "legally operative verbal conduct that determined the rights and duties of the parties. 384 F.3d at 806. Second, the government did not dispute that Rule 803(15) applies, but instead asserted that Mr. Shkreli did not explain how it applied to this case. As reflected below, we do. Third, the government's argument that the party moving to admit a prior

state court judgment must have been a participant in the underlying civil proceeding, Gov't's June 15, 2017 Letter, Dkt. No. 248 at 3, lacks any judicial support and makes no sense. The applicable non-hearsay exception of verbal conduct that determines the rights and duties of the parties, and Rule 803(15), is not impacted by whether the party moving to admit a judgment participated in the civil proceeding. The government's argument is about the relevance of the judgment and the weight of the evidence, not its admissibility. Fourth, the government's argument that *Boulware* was distinguishable because the arbitrator who found in Dr. Rosenfeld's favor expressly stated she was not making a determination regarding the legality or illegality of Mr. Shkreli's conduct misses the point. The arbitration decision is not being offered to prove the legality or illegality of a defendant's conduct, but rather as evidence pursuant to a proper non-hearsay purpose and under a valid hearsay exception. Finally, the government surprisingly argues without any legal support that no arbitration decision can be admissible because, unlike the civil judgment in *Boulware*, an arbitration decision is not the product of "full and complete 'adversarial testing' of the relevant factual issues." *Id.* The government cites no support for the notion that arbitration proceedings are not adversarial; such a view would be shocking news to participants in arbitrations and district courts which review them; the argument overlooks decisions like *Fisher*; and it ignores the reality of the highly contested arbitration proceeding between Dr. Rosenfeld and Retrophin, and Mr. Koestler's arbitration proceeding.

In *United States v. Dupree*, 706 F.3d 131 (2d Cir. 2013), the United States Attorney's Office for the Eastern District of New York moved to admit a state-court temporary restraining order ("TRO") in a criminal case "as evidence that Dupree knew of, and intended to violate, a contractual obligation to maintain funds at Amalgamated Bank when he executed a series of withdrawals and money transfers that deprived the Bank of property to which it was

entitled."  When Your Honor denied this request, the government filed an immediate interlocutory appeal, divesting the district court of jurisdiction over one count in the indictment as the remaining counts proceeded to trial.  The Second Circuit reversed and ruled that a state-court TRO was admissible in evidence.  The Second Circuit explained that hearsay evidence was admissible when it fell within a hearsay exception or when offered for a non-hearsay purpose.  Specifically, the Second Circuit stated:  "Hearsay is admissible only if it falls within an enumerated exception.  However, '[i]f the significance of an offered statement lies solely in the fact that it was made, no issue is raised as to the truth of anything asserted, and the statement is not hearsay.'  Thus, a statement offered to show its effect on the listener is not hearsay."  *Id*. at 136 (internal citations omitted).

Significantly, even though the government in *Dupree* relied on the non-hearsay purpose of the order's effect on the listener, the Second Circuit also held that the state-court TRO was admissible for a second non-hearsay purpose:  to establish the legal effect and obligations of the TRO on the parties.  Specifically, the Second Circuit stated:

> Even if the Order's relevance did lie in its legal effect, moreover, ***no hearsay problem would ensue, as the question whether a court's command imposes legal obligations on a party is outside the hearsay rule's concerns***.  *See* Fed.R.Evid. 801(c) advisory committee's note (***explaining that verbal acts, meaning statements affecting the legal rights of parties, are excluded from the definition of hearsay***); see also United States v. Boulware, 384 F.3d 794, 806 (9th Cir. 2004) ('A prior judgment is not hearsay ... to the extent that it is offered as legally operative verbal conduct that determined the rights and duties of the parties.')."

Id. at 137 (emphasis added).  Thus, the government's prior argument in *United States v. Shkreli* that *Dupree* is "inapposite" because the arbitration decision came years later, Gov't's June 15, 2017 Letter, Dkt. 248 at 2, misses the mark.  Dr. Rosenfeld's arbitration decision is admissible for the non-hearsay purpose of the legal obligations that it imposed on the parties to Dr.

Rosenfeld's consulting agreement—it is an act affecting the legal rights of parties and thus "excluded from the definition of hearsay." *See Dupree*, 706 F.3d at 137.

Regarding the concern that "a jury might place undue emphasis on the Order simply because a judge issued it, and that introducing the Order might confuse the issues and mislead the jury," the Second Circuit noted that "such dangers can often be cured by careful limiting instructions . . . and we see no basis on the present record for concluding that such instructions would be ineffective here." *Id.* at 138-39.

In addition, both the Second Circuit and Judge Korman have held that arbitration decisions and awards were probative and are admissible in employment discrimination lawsuits. *See Collins v. N.Y.C. Transit Auth.*, 305 F.3d 113, 115 (2d Cir. 2002); *Munafo v. Metro. Transp. Auth.*, No. 00-CV-0134 (ERK), 2003 WL 21799913, at *26 (E.D.N.Y. Jan. 22, 2003). In *Collins*, the district court took the arbitration decision into account when granting summary judgment and dismissing claims of race-based and retaliatory termination. The Second Circuit upheld the admission of the arbitration decision for purposes of evaluating the evidence in the case: "Where an employee's ultimate termination depends upon, and is allowed by, a decision of an independent and unbiased arbitrator based on substantial evidence after a fair hearing, the arbitration decision has probative weight regarding the requisite causal link between an employee's termination and the employer's illegal motive." 305 F.3d at 115. Subsequently, in a First Amendment retaliatory action in *Munafo*, Judge Korman relied on *Collins* in ruling that an arbitration decision was admissible in evidence. Judge Korman held that

> the arbitration decisions Munafo seeks to exclude are official determinations of discipline rendered by the system of neutral arbitration provided for in the applicable union-negotiated collective bargaining agreement. They establish the final disciplinary penalties imposed on Munafo and set forth the reasons why those penalties were found warranted. It would be impossible to fully explore the pivotal factual issues surrounding whether defendants' decision to terminate

> Munafo was proper or retaliatory without permitting defendants to introduce the
> final determinations of discipline and the justifications thereof.

2003 WL 21799913, at *27.

In connection with its motion to preclude Mr. Shkreli from admitting Dr. Rosenfeld's

arbitration decision, the government mistakenly relied on two decisions by the Honorable Victor

Marrero of the Southern District of New York for the proposition that "[c]ourts have routinely

precluded the introduction of arbitration findings as hearsay," Gov't Mot. *in Limine*, Dkt. 230,

at 29–30.  Neither of Judge Marrero's decisions—*Cary Oil Co., Inc. v. MG Ref. & Mktg., Inc.*,

257 F. Supp. 2d 768, 773-74 (S.D.N.Y. 2003), and *Park W. Radiology v. CareCore Nat'l LLC*,

675 F. Supp. 2d 314, 329-30 (S.D.N.Y. 2009)—cites to any authority for the proposition that

arbitration findings are inadmissible.  *CareCcore* cites to *Cary Oil*, and *Cary Oil* does not cite

any case law, making no mention of the Second Circuit's decisions in *Collins* and *Dupree*, the

Fifth Circuit's decision in *Fisher*, or the Ninth Circuit's decision in *Boulware*.  Neither of Judge

Marrero's decisions provides sufficient information about the factual allegations and the

arbitrations to understand the relationship between the federal dispute and the arbitration

decision.

In *Cary Oil*, there is no information about how the nature of the dispute between the

parties is related, if at all, to an arbitration between the defendants and two of its former

employees.  In *CareCore*, there is no information about how the antitrust action is related, if at

all, to the arbitration involving the defendant.  Critically, it is apparent that the party who sought

to introduce the arbitration decision in each case did not offer any non-hearsay purposes for

seeking to introduce the evidence and did not rely on any exceptions to the hearsay rules for its

admissibility.  Further, in *CareCore*, Judge Marrero stated that the party seeking admission of

the arbitration decision was not calling the arbitrator and was introducing the decision to prove

11

its "substance and outcome," which made it hearsay.  675 F. Supp. 2d at 329.  Finally, in *Cary Oil*, Judge Marrero expressly permitted use of the arbitration decision to cross-examine witnesses "to demonstrate bias . . . or to raise questions" regarding the "credibility" of testimony including "relevant discussion" of the arbitration decision and related testimony "as it bears upon the bias or credibility" of witnesses.  257 F. Supp. 2d at 774.

2. **Factual Background**

   a. **The Arbitration Decision and Award Relating to Dr. Rosenfeld's Consulting Agreement**

In February 2014, Dr. Rosenfeld, his related entity Park Avenue Discoveries LLC ("Park Avenue"), and Retrophin, Inc. executed a "Consulting Agreement, which . . . called for [Dr. Rosenfeld] to receive a cash payment of $200,000 plus 66,000 shares of Retrophin stock" and required Dr. Rosenfeld/Park Avenue to provide "consulting services . . . on strategic and corporate governance matters."  Ex. A (Final Decision, at 3).  Pursuant to his duties under the Consulting Agreement, Dr. Rosenfeld "engaged in multiple activities related to or on behalf of Retrophin," including "investing in and researching two databases," "contacting persons he knew . . . who had connections to pharmaceutical companies[,]" "work[ing] extensively on the potential acquisition" of a particular drug, researching other "drug acquisition possibilities," and arranging meetings with individuals connected to Retrophin.  *Id.* at 4.  Nonetheless, Retrophin refused to pay Dr. Rosenfeld/Park Avenue for the services he provided on the ground that this arrangement was an alleged sham agreement.

After Retrophin refused to pay, Dr. Rosenfeld/Park Avenue initiated an arbitration against the company pursuant to the mandatory arbitration provision of the agreement to enforce his rights under the consulting agreement.  The arbitration was conducted pursuant to JAMS Streamlined Rules, Ex. A (Final Decision, at 1), and was presided over by a neutral, independent

arbitrator with decades of legal experience who has resolved hundreds of disputes across a variety of subject matters. Ex. B (Shelanski Bio). The proceedings lasted six days, included sworn testimony from eight witnesses and more than 100 exhibits. Ex. A (Final Decision, at 1). Dr. Rosenfeld, as well as the respondent Retrophin, Inc., were represented by counsel throughout the proceedings, introduced extensive evidence in support of their cases (including direct examination testimony from their own witnesses), and had the opportunity to cross-examine any adverse witnesses. Ex. A (Final Decision, at 1). Indeed, a critical witness in the proceedings was Stephen Aselage whom the government called as a witness during Mr. Shkreli's criminal trial. The arbitrator memorialized her final decision in a written opinion containing factual findings and legal conclusions regarding the parties' rights and obligations. Ex. A (Final Decision).

In her 15-page detailed and thoughtful written opinion, the neutral, independent arbitrator concluded, in relevant part, that Dr. Rosenfeld's breach of contract claim was valid and that Retrophin was required to pay Dr. Rosenfeld pursuant to the consulting agreement. Indeed, the arbitrator ruled:

> [T]he Consulting Agreement is an express and enforceable agreement between the parties that was breached by Retrophin. Although the Agreement's demands on Rosenfeld were minimal, those demands were met; there was no requirement that the services be of proven value.

*Id.* at 6-7. She cited to the services that Dr. Rosenfeld provided "during the period covered by the Agreement" including that he "reviewed databases and spoke with contacts about potential biotechnology opportunities, some for his own investment and some that might be a fit for Retrophin, and he introduced an established scientist to a Retrophin consultant." Accordingly, in

exchange for what the arbitrator found to be Dr. Rosenfeld's 's legitimate consulting services,

Retrophin was ordered to pay $115,368 plus interest.

> **b.** **The Arbitration Decision and Award Relating to the Draft Consulting Agreement of Mr. Koestler**

Following months of discussions between Mr. Koestler and Retrophin, Inc., Ex. C

(R043448), on or about July 15, 2015, Mr. Koestler filed a Statement of Claim against Retrophin

LLC, Retrophin, Inc., and Mr. Shkreli before the American Arbitration Association in an effort

to resolve his claim for payment for his consulting services. Ex. D (Ex. A to Confirmation of

Koestler's Award, Final Award at 1). Mr. Koestler alleged that he was owed payment of

155,000 Retrophin shares pursuant to a stock transfer agreement signed by Mr. Shkreli as

payment for months of consulting services. The dispute over these shares resulted in a draft

consulting agreement providing for payment of 155,000 Retrophin shares to Mr. Koestler.

Mr. Koestler filed the arbitration before the AAA as required by the arbitration clauses in

the LLC agreement and the Founders' Agreement, which were both incorporated by reference

into the executed stock transfer agreement. Ex. E (Exhibit D to Confirmation of Koestler Award,

LLC Agreement, Section 13.4]; Ex. F (Koestler Transfer and Donee Representation Letter,

R014771). The arbitration clause stated that "any award or decision obtained from any such

arbitration proceeding shall be final and binding on the parties, and judgment upon any award

thus obtained may be entered in any court having jurisdiction thereof." *Id.* As per the

commercial arbitration rules of the AAA, David Singer was duly appointed as a neutral and

independent arbitrator. Ex. G (Singer Bio).

On or about August 3, 2016, the arbitrator issued a six-page opinion outlining his factual

and legal findings. Ex. D (Final Award). He did not find that Mr. Koestler's draft consulting

agreement was a "sham," as alleged by Retrophin in its cross-claims against Mr. Shkreli. *Id.* at

4.  Instead, in dismissing Retrophin's cross-claims, the arbitrator merely found (i) that he lacked authority under the arbitration clause to hear Retrophin's breach-of-fiduciary duty claim; (ii) that "since the proposed consulting agreement was never consummated, no damages [to Retrophin] resulted therefrom"; and (iii) that, given Mr. Koestler's allegations that Retrophin was the beneficiary of his consulting services and bound by the stock transfer agreement signed by Mr. Shkreli on behalf of Retrophin, Retrophin could not have avoided its attorneys' fees related to Mr. Koestler's arbitration.  *Id.*  The arbitrator further held that "[a]lthough the extent of the consulting services [Mr. Koestler] provided and the value of such services were challenged at the Hearing, the evidence established that [Mr. Koestler] provided significant and meaningful services, more than just protecting his investment."  *Id.* at 2.  In addition, the arbitrator found that the executed stock transfer agreement where Mr. Shkreli agreed to transfer the shares to Mr. Koestler for his consulting services was a personal obligation even though the agreement was "agreed and accepted" by Mr. Shkreli on behalf of Retrophin LLC.  *Id.* at 2-3.  Accordingly, in exchange for Mr. Koestler's legitimate consulting services, Mr. Shkreli was ordered to transfer 155,000 Class A common units of Retrophin to Mr. Koestler, or, in the alternative, the approximate equivalent value of $2,325,000 plus interest.  *Id.* at 3-6.

On or about September 14, 2016, Mr. Koestler petitioned the Southern District of New York to confirm the arbitration award and judgment, Ex. H (Petition to Confirm Arbitration Award and Judgment), and on February 6, 2017 the district court confirmed the August 2, 2016 arbitration decision and entered judgment against Mr. Shkreli.  Ex. I (Order and Judgment).

**3.** **The Arbitration Decisions and Awards Relating to Dr. Rosenfeld's Consulting Agreement and Mr. Koestler's Draft Consulting Agreement are Admissible for Non-Hearsay Purposes and Fall Within Hearsay Exceptions**

Mr. Greebel seeks to admit the arbitration decision and award relating to the Dr. Rosenfeld's consulting agreement and Mr. Koestler's draft consulting agreement for non-hearsay purposes.  Pursuant to Rule 801(c)(2), "hearsay" is when "a party offers in evidence to prove the truth of the matter asserted in the statement."

*First*, Mr. Greebel is offering the arbitration decision, award, and order upholding the legality and enforceability of Dr. Rosenfeld's consulting agreement for the non-hearsay purpose of demonstrating the legal effect of the arbitrator's decision on the legal rights and obligations of the parties to the consulting agreement, Retrophin and Dr. Rosenfeld.  As the Ninth Circuit explained with respect to a state-court judgment in *United States v. Boulware*, the arbitration by Dr. Rosenfeld is not hearsay to the extent it is "offered as legally operative verbal conduct that determined the rights and duties of the parties."  386 F.3d at 806.  Relying in part on *Boulware*, the Second Circuit reached a similar conclusion in *United States v. Dupree* with respect to the admissibility of a state-court TRO.  706 F.3d at 137 ("[N]o hearsay problem would ensue, as the question whether a court's command imposes legal obligations on a party is outside the hearsay rule's concerns.  *See* Fed.R.Evid. 801(c) advisory committee's note (explaining that verbal acts, meaning statements affecting the legal rights of parties, are excluded from the definition of hearsay).").

The arbitrator's decision to uphold the legality and enforceability of Dr. Rosenfeld's agreement sets forth the legal rights and obligations of both Retrophin and Dr. Rosenfeld pursuant to the consulting agreement.  That is not hearsay.  It is an act that affects the legal rights of the parties to the agreement.  And those legal rights are relevant.  The fact that Retrophin had a legal obligation to satisfy the consulting agreement with Dr. Rosenfeld makes a significant fact

16

of consequence—whether the agreement was a "sham"—less likely.  It matters not, as the government argued in connection with the Shkreli trial, that the arbitration decision was decided in January 2017.  What matters is that the government has asserted that Retrophin was defrauded through Dr. Rosenfeld's agreement and that, in fact, an arbitrator determined that Retrophin received the benefit of the terms of the consulting agreement and had a legal obligation to comply with its terms.

Moreover, Dr. Rosenfeld's arbitration decision, award, and order directly contradict the government's theory relating to the consulting agreements in Count Seven (for which Mr. Shkreli was acquitted).  Pursuant to the government's theory, Dr. Rosenfeld's consulting agreement has no legal effect and is illegal, that Retrophin received no benefits under the agreement—and that Mr. Shkreli, together with Mr. Greebel, knowingly, willfully, and intentionally caused Retrophin to enter into this so-called "sham" agreement for purposes of stealing Retrophin's assets.  But, the arbitrator found otherwise and required Retrophin to uphold the agreement.  The arbitrator's findings with respect to the validity of the consulting services provided by Dr. Rosenfeld corroborates Mr. Greebel's state of mind and belief that the consulting agreement with Dr. Rosenfeld was valid and lawful and that Dr. Rosenfeld was expected to provide legitimate consulting services.

The government cannot have it both ways—they cannot claim that these consulting agreements are sham contracts that defrauded Retrophin, and then preclude the introduction of compelling evidence that Retrophin has a legal obligation to comply with the same agreement. Significantly, the arbitrator rejected each and every one of Retrophin's arguments that Dr. Rosenfeld's consulting agreement was a "sham" contract—the very same arguments that the government has alleged in this case.

**Second,** Mr. Greebel is offering the arbitration decision, award, and order upholding the legality and enforceability of Mr. Koestler's draft consulting agreement for the non-hearsay purpose of demonstrating the legal effect of the arbitrator's decision on the legal rights and obligations of the parties to the draft consulting agreement and the stock purchase agreement, Mr. Shkreli and Mr. Koestler.

**_Third_**, just as the Ninth Circuit held with respect to the state-court judgment, Dr. Rosenfeld's arbitration and Mr. Koestler's arbitration are admissible for the truth of the matters pursuant to Rule 803(15).  Rule 803(15) states that, regardless of whether the declarant is available as a witness, "Statements in Documents That Affect an Interest in Property" are not excluded by the rule against hearsay, meaning "[a] statement contained in a document that purports to establish or affect an interest in property if the matter stated was relevant to the document's purpose—unless later dealings with the property are inconsistent with the truth of the statement or the purport of the document."

Both within and outside the Second Circuit, courts have liberally construed Rule 803(15) to include "various documents utilized in financial matters that 'affect' a transaction and therefore may influence an interest in property."  _United States v. Weinstock_, 863 F. Supp. 1529, 1533-35 (D. Utah 1994) (admitting under Rule 803(15) the affidavit of a deceased man that he was the owner of shares of stock and that he needed new certificates because the old ones had been lost or stolen) (citation omitted); _see also Silverstein v. Smith Barney, Inc._, No. 96 CIV. 8892 (JSM), 2002 WL 1343748, at *2 (S.D.N.Y. June 18, 2002) (relying, in part, on _Weinstock_ in admitting under Rule 803(15) a document referencing an individual's intent to transfer shares for the purpose of settling a debt even though the individual had not signed the document), _aff'd_, _Silverstein v. Chase_, 61 F. App'x 743, 744–45 (2d Cir. 2003); _Boulware_, 384 F.3d at 807 (9th

Cir. 2004) (admitting under Rule 803(15) a state court judgment); *Bradley v. Wells Fargo Bank, N.A.*, No. 12-CV-127-PB, 2014 WL 2106495, at *1–*2 (D.N.H. May 20, 2014) (admitting under Rule 803(15) a confirmatory affidavit that was attached to a foreclosure deed).

Dr. Rosenfeld's arbitration and Mr. Koestler's arbitration meet all the requirements set forth above. These arbitrations affected an interest in property by (i) declaring that Dr. Rosenfeld's consulting agreement was valid and requiring Retrophin to comply and (ii) declaring that Mr. Koestler provided legitimate consulting services to Retrophin and was owed payment by Mr. Shkreli for those services pursuant to the stock transfer agreement. Moreover, the parties have acted consistently with the arbitration rulings/judgments. It is undisputed that both arbitration rulings are valid. Indeed, the Ninth Circuit upheld the admissibility of the truth of the matters asserted within the state-court judgment in *United States v. Boulware* for exactly the same reasons.

**Fourth**, if necessary, Mr. Greebel reserves the right to call the arbitrators in the arbitration proceedings as witnesses in his case-in-chief.

**B.     Dr. Rosenfeld's Arbitration and Mr. Koestler's Arbitration Are Relevant Under Rule 401**

The arbitration decisions, awards, and orders relating to Dr. Rosenfeld's consulting agreement and Mr. Koestler's draft consulting agreement are relevant. Under Rule 401, "relevant evidence" means "means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." A centerpiece of the government's allegations in Count Seven of the charged "Retrophin Conspiracy" is that the consulting agreements, including but not limited to Dr. Rosenfeld's consulting agreement, are "sham" contracts designed to steal Retrophin's assets for purposes of paying back alleged victims of the alleged MSMB hedge fund

19

fraudulent conduct.  The arbitration decisions, awards, and orders upholding the legality of Dr. Rosenfeld's consulting agreement and the legitimacy of the services Mr. Koestler provided that were the subject of the draft consulting agreement have a tendency to show that it is more probable that these and other similar consulting agreements entered into under similar circumstances—particularly from the vantage point of Mr. Greebel—were not "sham" contracts.

Indeed, in *United States v. Fisher*, the Fifth Circuit found similar evidence to be "highly relevant" for the same reasons.  The Fifth Circuit explained:  "This evidence [of the arbitration] was highly relevant.  Evidence that an arbitration proceeding occurred and that the defendants were not found obliged to repurchase the Players' shares goes to the heart of the case."  106 F.3d at 633.  Similarly, in *United States v. Boulware*, the Ninth Circuit held that a state-court judgment that the defendant's girlfriend did not receive a gift but rather held money in trust for the defendant's company had "some tendency to make it more likely that [the defendant] gave the monies to her to hold in trust."  384 F.3d at 805.  Notably, as explained by the Ninth Circuit, Rule 401 does not require that the arbitrations prove something specific—although in this case it proves and corroborates Mr. Greebel's good-faith understanding of the legality of such agreements—but only requires a low-threshold showing that the arbitrations have a tendency to prove a fact in issue.  Just as the state-court judgment in *Boulware* had "some tendency to make Boulware's explanation (that he gave the money to [his girlfriend] to hold in trust for [the company]) more probable and the government's theory of the case (that he simply gave the money to his girlfriend) less probable," *id.* n.3,  Dr. Rosenfeld's arbitration decision and Mr. Koestler's arbitration decision have some tendency to make the government's theory that Mr. Greebel knew that these were sham agreements less probable.

In its motion to preclude admission of the arbitration decisions for the trial against Mr. Shkreli, the government's argument that Dr. Rosenfeld's arbitration and Mr. Koestler's arbitration are "irrelevant" is divorced from Rule 401.  *See* Gov't's Mot. *in Limine*, Dkt. 230, at 25-28.  The government did not cite Rule 401 or explain why the arbitration decisions do not have a "tendency" to make the existence of "any fact that is of consequence" to the case "more or less probable."  The government conceded that, in Dr. Rosenfeld's arbitration, "the arbitrator found that Retrophin owed money to him pursuant to his consulting agreement," *id*. at 26, but the government did not explain why that finding had no tendency to make any fact relating to the enforceability of the arbitration agreements more or less probable.  The government appeared to argue that Mr. Koestler's arbitration was not relevant because the "arbitrator determined that it was solely Shkreli's personal obligation to provide Retrophin shares to Defrauded Employee [Koestler], and that Retrophin was not responsible for providing any shares to Defrauded Employee [Koestler]."  *Id*.  The flaw in the government's argument as to its case against Mr. Greebel is that the arbitrator upheld the legitimacy, and consequential legal rights arising therefrom, of the consulting services that Mr. Koestler provided to Retrophin.  Thus, Mr. Greebel should be permitted to lay a foundation for the admissibility of the draft consulting agreement related to these consulting services and then admit evidence relating to Mr. Koestler's arbitration to corroborate and support Mr. Greebel's good-faith understanding of the legality of Mr. Koestler's draft consulting agreement, and other similar consulting agreements at issue in this case.

The government's argument that Dr. Rosenfeld's arbitration and Mr. Koestler's arbitration should be excluded pursuant to Rule 403 misses the mark widely.  Indeed, it is the exclusion of the same type of evidence in *United States v. Fisher* and *United States v. Boulware*

that resulted in the Fifth and Ninth Circuit Courts of Appeals, respectively, vacating each respective defendant's criminal conviction.  Pursuant to Rule 403, "[t]he court may exclude relevant evidence if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence."  In its pretrial motion for Mr. Shkreli's trial, the government argued "unfair prejudice," stating that "as in *Carecore* and *Cary Oil*, the findings are also unduly prejudicial because Mr. Shkreli will essentially ask the jury to abandon its independent review of the evidence and accept the findings of the arbitrators."  Gov't Mot. *in Limine*, Dkt. 230, at 28.  But Mr. Greebel is not seeking to admit Dr. Rosenfeld's arbitration and Mr. Koestler's arbitration for purposes of asking the jury to abandon its independent review of the evidence.  Instead, as explained above, Mr. Greebel is seeking to admit the evidence for multiple non-hearsay purposes and within an express hearsay exception.

When the government made the same argument about "unfair prejudice" in *United States v. Fisher*, the Fifth Circuit rejected it, finding that the government could make their points about the arbitrator's findings during cross-examination and they were fully capable of making these arguments to the jury.  Similarly, when the government made the same argument about "unfair prejudice" in *Boulware*, the Ninth Circuit also rejected it, finding that the government's concerns could be addressed through a "cautionary instruction" and the trial judge's control over the admission of the evidence relating to the state-court judgment.  384 F.3d at 808.

## II. CONCLUSION

For all these reasons, this Court should admit the evidence of the decisions, awards, and orders in Dr. Rosenfeld's arbitration and Mr. Koestler's arbitration.

Dated:   New York, New York
            August 18, 2017

                                      /s/ Reed Brodsky
                                      Reed Brodsky
                                      Winston Y. Chan
                                      Randy M. Mastro
                                      Lisa H. Rubin

                                      GIBSON, DUNN & CRUTCHER LLP
                                      200 Park Avenue
                                      New York, NY 10166
                                      (212) 351-4000
                                      rbrodsky@gibsondunn.com
                                      *Counsel for Defendant Evan Greebel*