JMK:AES/DCP/DKK
F. #2014R00501

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X

UNITED STATES OF AMERICA

   - against -                                       15 CR 637 (KAM)

EVAN GREEBEL,

                Defendant.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X


### THE GOVERNMENT'S OPPOSITION TO THE DEFENDANT'S PRE-TRIAL MOTIONS FOR A JURY QUESTIONNAIRE AND FOR PRECLUSION AND PRODUCTION RELATED TO GRAND JURY SUBPOENAS


                                                   BRIDGET M. ROHDE
                                                   Acting United States Attorney
                                                   Eastern District of New York
                                                   271 Cadman Plaza East
                                                   Brooklyn, New York 11201

ALIXANDRA E. SMITH
DAVID C. PITLUCK
DAVID K. KESSLER
Assistant U.S. Attorneys
     (Of Counsel)

TABLE OF CONTENTS

TABLE OF CONTENTS ................................................................................................................ i

PRELIMINARY STATEMENT .................................................................................................... 1

ARGUMENT .................................................................................................................................. 2

    I.    The Defendant's Motion for an Undefined Written Jury Questionnaire
        Should Be Denied ................................................................................................... 2

    II.   The Defendant's Motion Related to Grand Jury Subpoenas Should Be Denied ....... 4

CONCLUSION ............................................................................................................................. 11

PRELIMINARY STATEMENT

The government respectfully submits the following opposition to two pre-trial motions made by the defendant Evan Greebel on August 18, 2017 and August 19, 2017: (1) to use a written jury questionnaire (Dkt. No. 328 ("Jury Questionnaire Motion"), filed on August 18, 2017); and (2) to compel the government to provide copies of all grand jury subpoenas issued in this matter and to preclude the government from using evidence obtained through grand jury subpoenas issued after the Superseding Indictment was returned (Dkt. No 339 ("GJ Subpoena Motion"), filed on August 19, 2017). For the reasons described below, these motions should be denied.

ARGUMENT

I. THE DEFENDANT'S MOTION FOR AN UNDEFINED WRITTEN JURY QUESTIONNAIRE SHOULD BE DENIED

The defendant moves to have the Court employ a "written questionnaire to the jury pool of prospective jurors due to the intense media coverage surrounding this case and the resulting possibility of bias or prejudice," and further asserting that such a questionnaire will be "highly efficient." (Jury Questionnaire Motion at 1). The defendant did not submit specific questions for the Court's consideration, setting forth only a "proposed protocol" to use with an undefined written questionnaire. (Id. at 12-13). As a written questionnaire is neither necessary in this case nor required by the case law cited by the defendant, and because the defendant has not specified the content of the written questionnaire he is requesting, the Court should deny the defendant's motion.

The defendant does not explain why the voir dire process employed by the Court in the recent trial of co-defendant and co-conspirator Martin Shkreli—which consisted of the Court (1) asking a series of questions to the venire and following up with individual voir dire where necessary and (2) employing an oral questionnaire for background information—would result in a jury that was biased or prejudiced against the defendant. While the defendant's brief details at length the negative media coverage of Shkreli leading up to and during his trial (see Jury Questionnaire Motion at 2-7), and cites caselaw warning of the risk of bias created by inadequate voir dire (see id. at 7-8), the defendant does not and cannot argue that the voir dire process employed at Shkreli's trial resulted in a jury that was infirm in any way. To the contrary, that voir dire process resulted in the successful selection of twelve jurors and six alternate jurors who were impartial with respect to Shkreli. There is no reason why that same process, when employed at

2

the trial of the defendant, would not similarly produce a set of jurors who are impartial with respect to the defendant.

The defendant's primary argument, then, appears to be that a written questionnaire would be "more efficient than oral examination alone" and result in a jury selection process shorter than at Shkreli's trial. (Jury Questionnaire Motion at 1, 10). The government disagrees. As this Court is aware, while the use of a written questionnaire may be useful and/or necessary in certain circumstances, it is not automatically a time-saving measure. At the very least, prospective jurors are required to come in to fill out the questionnaire on a date prior to the dates of jury selection; the parties and the Court must copy, review and catalog all of the questionnaires; while some jurors may be able to be struck by agreement of the parties as a result of their questionnaire answers, many others will require follow-up voir dire on one or more answers; and if additional jurors are needed beyond the original pool, the process must be re-started. Given such concerns about efficiency, the Court denied a request by Shkreli for a one-page written questionnaire in connection with his trial. See 06/19/17 Tr. at 6-9 ("using a separate jury questionnaire where jurors are called in to fill out questionnaires is going to add time to the process").[1]

The defendant also contends that "[i]ndividualized voir dire is also appropriate and within the court's discretion in cases where the potential jury pool has been exposed to extensive

---

[1] On May 12, 2017, Shkreli proposed a written questionnaire for his trial that had five questions: the prospective juror's name, age/occupation, neighborhood, whether he/she had heard anything about the case, and whether he/she had heard anything about Shkreli. The government consented to Shkreli's proposal for that limited questionnaire, after previously rejecting proposals by Shkreli for a longer one. Ultimately, all of the questions in that proposed written questionnaire were asked by the Court in its voir dire process (either during the general venire questioning or as part of the oral questionnaire).

pretrial publicity and may harbor prejudice against the defendant" and expresses a concern that, absent such individualized voir dire, jurors might be unduly influenced by the answers given by their fellow jurors. (Jury Questionnaire Motion at 10-12). However, a written questionnaire is not the only means of achieving individualized voir dire. During voir dire for Shkreli's trial, for example, the Court questioned potential jurors individually at sidebar about media exposure in order to avoid tainting the venire. The Court also asked certain other questions (e.g., regarding scheduling conflicts, other instances of bias, etc.) on an individual basis at sidebar. The government expects that the Court will employ a similar approach at the trial of the defendant, which will ameliorate any concerns raised by the defendant in this regard.

Finally, the caselaw cited by the defendant does not mandate the use of a written questionnaire in this case. Rather, that caselaw merely states that the decision to use or not to use a written questionnaire is squarely within the discretion of the Court. See, e.g., United States v. Quinones, 511 F.3d 289, 299 (2d Cir. 2007) (finding use of a written questionnaire in the voir dire process to be "within the district court's broad discretion").

For these reasons, the defendant's motion for an undefined written questionnaire should be denied.

II.   THE DEFENDANT'S MOTION RELATED TO GRAND JURY SUBPOENAS SHOULD BE DENIED

The defendant moves to "preclude the government from using any evidence obtained from grand jury subpoenas issued following the Superseding Indictment" and "for production of copies of all grand jury subpoenas issued prior to and after the superseding indictment because the subpoenas are relevant." (GJ Subpoena Motion at 1). For the reasons set forth below, the defendant's motion is both factually inaccurate and legally deficient, and should be denied.

4

A.   Relevant Facts

The criminal case against the defendant is the result of an ongoing grand jury investigation in the Eastern District of New York, during which grand jury subpoenas have been issued. On December 14, 2015, the grand jury returned an indictment that charged the defendant and/or Martin Shkreli with seven counts of wire fraud conspiracy, securities fraud conspiracy and securities fraud. On June 3, 2016, the grand jury returned a superseding indictment against the defendant and Shkreli, adding one count of conspiracy to commit securities fraud as alleged in Count Eight. On January 30, 2017, the government issued a grand jury subpoena to Retrophin seeking materials related to the arbitration proceedings between Retrophin and MSMB Healthcare investor Steven Rosenfeld (see January 30, 2017 Grand Jury Subpoena to Retrophin). Those materials were subsequently provided in discovery to the defendant.

On March 30, 2017, Shkreli filed a motion to suppress documents related to MSMB Capital and MSMB Healthcare that had been produced by Retrophin to the government in response to grand jury subpoenas, which was premised on the notion that Retrophin acted as an agent of the government and conducted an unauthorized "search" of materials related to the two MSMB entities. (See Dkt. No. 174-1). In connection with that motion, Shkreli sought to obtain all grand jury subpoenas issued by the government to Retrophin to determine, inter alia, the scope of the subpoenas and whether Retrophin had been acting as an agent for the government. The government initially provided Shkreli with a summary of the requests made in the grand jury subpoenas; subsequently, at a status conference on May 12, 2017, Shkreli asked for the grand jury subpoenas themselves and the government agreed to provide them. (See 5/12/2017 Tr. at 20-23). Because grand jury subpoenas are protected from disclosure by Federal Rule of Criminal Procedure 6(e), the government sought a court order to permit their disclosure. (See Dkt. No. 223).

5

B.  Applicable Law

"[T]he proper functioning of our grand jury system depends upon the secrecy of grand jury proceedings." Douglas Oil Co. of California v. Petrol Stops Nw., 441 U.S. 211, 218, (1979). The secrecy of grand jury proceedings is protected by Rule 6(e)(6) of the Federal Rules of Criminal Procedure, which requires that "all records, orders, and subpoenas relating to grand jury proceedings [must] be sealed." In re Grand Jury Subpoena, 103 F.3d 234, 237 (2d Cir. 1996) (emphasis in original). Thus, a party seeking material protected by Rule 6(e) must make a "showing of particularized need by proving 'that the material they seek is needed to avoid a possible injustice in another judicial proceeding, that the need for disclosure is greater than the need for continued secrecy, and that their request is structured to cover only material so needed.'" In re Grand Jury Subpoena, 103 F.3d at 239 (quoting Douglas Oil Co., 441 U.S. at 222); see, e.g., United States v. Thomas, 545 F. Supp. 2d 1018, 1025 (N.D. Cal. 2008) (denying defendant's request for grand jury subpoenas where "particularized need" standard was not met); cf. United States v. Barret, 824 F. Supp. 2d 419, 446 (E.D.N.Y. 2011) ("[a] review of grand jury minutes is rarely permitted without specific factual allegations of government misconduct.").

A grand jury's investigative power does not end when it indicts a defendant. Instead, "[p]ost-indictment action is permitted to identify or investigate other individuals involved in criminal schemes or to prepare superseding indictments against persons already charged." United States v. Jones, 129 F.3d 718, 723 (2d Cir. 1997) (internal citations omitted). While it is "improper to utilize a grand jury for the sole or dominating purpose of preparing an already pending indictment for trial," United States v. Bin Laden, 116 F. Supp. 2d 489, 492 (2d Cir. 2000) (quoting United States v. Dardi, 330 F.2d 316, 336 (2d Cir. 1964), this rule has "limited reach" because a "presumption of regularity attaches to grand jury proceedings, a defendant seeking to exclude evidence obtained by a post-indictment grand jury subpoena has the burden of showing

6

that the Government's use of the grand jury was improperly motivated." Id. (citing United States v. Leung, 40 F.3d 577, 581 (2d Cir. 1994); see also United States v. Sasso, 59 F.3d 341, 352 (2d Cir.1995) ("There is a presumption that [a post-indictment] subpoena had a proper purpose."); United States v. Raphael, 786 F. Supp. 355, 358 (S.D.N.Y. 1992) ( "[A]bsent some indicative sequence of events demonstrating an irregularity, a court has to take at face value the Government's word that the dominant purpose of the grand jury proceedings is proper.").

C. Argument

1. The Government Can Use Materials Obtained from Grand Jury Subpoenas Following the Superseding Indictment

The defendant now argues that it "seems" that the government has improperly used a post-indictment grand jury subpoena to prepare for trial. (GJ Subpoena Motion at 6). The only support that the defendant musters is that, following the Superseding Indictment, the government issued a grand jury subpoena to Retrophin that included a request for documents relating to the arbitration proceeding involving Retrophin and Steven Rosenfeld. Id. According to the defendant, because the government sought documents related to the arbitration after the Superseding Indictment and after it spoke to Rosenfeld, the evidence could only be for trial preparation and the government should have used a trial subpoena.

The defendant's argument runs counter to the well-settled law in this Circuit, and he cannot meet his burden and overcome the presumption that the post-superseding indictment subpoena had a proper purpose. See Raphael, 786 F. Supp. at 358. As the government has repeatedly stated, the investigation in this case is ongoing and is focused on other potential defendants and on other charges against existing defendants. The government sought a broad set of documents from Retrophin, including Dr. Rosenfeld's arbitration documents, as part of its

7

active investigation. This continued investigation, and the use of post-indictment subpoenas in connection with it, was entirely proper. See Jones, 129 F.3d at 723.

Moreover, there is absolutely nothing irregular about the sequence of events identified by the defendant to demonstrate that the subpoenas were used improperly. The defendant merely suggests that the passage of time between the indictment and the grand jury subpoena somehow demonstrates that the government was collecting evidence for trial. That generalized claim is wholly insufficient. See United States v. Bellomo, No. 02-CR-140 (ILG), 2002 WL 1267996, at *2 (E.D.N.Y. Apr. 10, 2002) ("[a]bsent is the particularized proof that the government acted arbitrarily and for an improper purpose.") (citing Leung, 40 F.3d at 57).

The defendant's reliance on In re Grand Jury Subpoena Duces Tecum Dated Jan. 2, 2984 (Simels), 767 F.2d 26, 29 (2d Cir. 1985) is misplaced. In Simels, the government served post-indictment trial subpoenas on the defendant's attorney which the government conceded were designed to obtain documents that would sustain the government's burden of proof at trial. Simels, 767 F.2d at 28-29. After the defendant objected, the government issued grand jury subpoenas seeking the identical evidence. Simels, 767 F.2d at 29. Given that sequence of events, coupled with the absence of any active grand jury investigation, the court quashed the grand jury subpoenas. Simels, 767 F.2d at 29-30. That scenario is completely different from the one alleged here, where the government has represented to the Court that the government's investigation is ongoing and has made no attempt to obtain the same documents using other means.

Similarly, the defendant's citations to cases outside of the Second Circuit are not applicable here. (See GJ Subpoena Motion at 4). In United States v. Brothers Construction Co. of Ohio, 219 F.3d 300 (4th Cir. 2000), the court had evidence that certain portions of certain witnesses' post-indictment grand jury testimony were specifically designed to gain evidence for

8

use at trial, and therefore barred use of certain portions of the testimony that was gathered for an improper purpose. See id. (district court barred the government use of grand jury testimony at trial for witnesses who were recalled to the grand jury after an indictment had already been issued in the underlying case). In United States v. McTague, No. 5:14-CR-00055, 2015 WL 13158499, at *8 (W.D. Va. Dec. 10, 2015), reconsideration denied sub nom. United States v. Rosalba, No. 5:14-CR-055, 2017 WL 1064952 (W.D. Va. Jan. 9, 2017), the court excluded grand jury testimony from certain government witnesses after it had granted the government's "eleventh hour" motion for continuance due to staffing issues and following a superseding indictment issued seven days prior to trial. The Court held that, "[g]iven this unique combination of circumstances, the court finds it fundamentally unfair to allow the government unfettered use of this late-breaking and wide-ranging grand jury testimony without an appropriate evidentiary limitation." Id. As discussed in detail above, there is no such indication of impropriety here.[2] Accordingly, the defendant's motion to preclude the government from using materials gathered from post-indictment grand jury materials should be denied.

2. The Government Should Not Be Required to Disclose All Grand Jury Subpoenas

The defendant argues that the government should be required to produce all grand jury subpoenas issued in this case, even if issued before the superseding indictment. In support of his motion, the defendant simply claims that the subpoenas are "not confidential" and are "relevant to facts of consequences in this case." (GJ Subpoena Motion at 6). The defendant contends he is "entitled" to a litany of information he speculates the full set of grand jury

---

[2] The defendant's efforts to exclude the government's use of evidence from the January 30, 2017 Retrophin grand jury subpoena is particularly perplexing, as the defendant himself has moved to introduce evidence from the arbitration proceedings at trial.

9

subpoenas "may" provide, such as exculpatory information that was not produced or that a witness did not comply with a grand jury subpoena. (Id.). The defendant's broad request is unsupported by law and should be denied.

       The defendant's proffered rationale for a wholesale breach of grand jury secrecy is simply that the subpoenas are relevant to facts of consequence in the case. This limitless fishing expedition does not and cannot meet the high standard of demonstrating the "particularized need" that the subpoenas are "needed to avoid a possible injustice" or that the "need for disclosure is greater than the need for secrecy."[3] In re Grand Jury Subpoena, 103 F.3d at 239. If the Court were to order the production of the grand jury subpoenas on the entirely speculative grounds that they are relevant, that would effectively open the flood gates for all grand jury subpoenas to all trial defendants and would gut the secrecy provisions of Rule 6(e) entirely. It is thus not surprising that the defendant does not cite one case where such broad disclosure of grand jury subpoenas was authorized by a court. To the contrary, the production of grand jury subpoenas is inconsistent with Rule 6(e) because it "may reveal the essence of the grand jury proceedings." United States v. Diaz, 236 F.R.D. 470, 479-80 (N.D. Cal. 2006).

       Finally, the defendant's argument that the government should disclose all subpoenas because it disclosed one subpoena, the NAV Consulting subpoena, is baseless. That subpoena was produced in discovery to the defendant and Shkreli only after NAV Consulting, a third party, had produced it back to the government with a Bates stamp. There is no basis to find

---

[3] Even if the defendant came close to demonstrating that particularized need, he has made absolutely no attempt to structure his request to "cover only material so needed." In re Grand Jury Subpoena, 103 F.3d at 239. Indeed, the defendant has requested every grand jury subpoena issued by the government without any attempt to show how each subpoena is necessary.

10

that the government should disclose a currently undisclosed grand jury subpoena, let alone require that it do so.

\* \* \* \* \*

## CONCLUSION

For the foregoing reasons, the government respectfully submits that the Jury Questionnaire Motion and the GJ Subpoena Motion should be denied.

Dated: Brooklyn, New York
       August 25, 2017

                                                Respectfully submitted,

                                                BRIDGET M. ROHDE
                                                Acting United States Attorney
                                                Eastern District of New York

                             By:    /s/_____
                                                Alixandra E. Smith
                                                David C. Pitluck
                                                David K. Kessler
                                                Assistant U.S. Attorneys
                                                (718) 254-7000

cc:    Clerk of the Court (KAM)
        Defense Counsel (By ECF and Email)