JMK:AES/DKK/DCP
F. #2014R00501

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - X

UNITED STATES OF AMERICA

    - against -                                   15 CR 637 (KAM)

EVAN GREEBEL,

              Defendant.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - X


## THE GOVERNMENT'S OPPOSITION TO THE DEFENDANT'S MOTIONS TO DISMISS COUNT SEVEN OF THE SUPERSEDING INDICTMENT


BRIDGET M. ROHDE
Acting United States Attorney
Eastern District of New York
271 Cadman Plaza East
Brooklyn, New York 11201


ALIXANDRA E. SMITH
DAVID C. PITLUCK
DAVID K. KESSLER
Assistant U.S. Attorneys
      (Of Counsel)

## TABLE OF CONTENTS

TABLE OF CONTENTS.................................................................................................... i

PRELIMINARY STATEMENT ........................................................................................ 1

ARGUMENT ...................................................................................................................... 3

    I.    Count Seven Should Not Be Dismissed Because of the "Not Guilty" Verdict in the
Shkreli Trial................................................................................................................ 4

    II.   There Is No Legal Basis To Strike The Backdating Object Of The Conspiracy Charged
In Count Seven, And Evidence Of Backdating Is Admissible ...................................... 10

    III.  There Is No Legal Basis To Strike Or Preclude Argument about The Portion of the
Conspiracy Charged In Count Seven that Relates to Settlement Agreements ............. 18

    IV.  There Is No Legal Basis To Strike Or Preclude Argument about The Portion of the
Conspiracy Charged In Count Seven that Relates to Consulting Agreements Based on
a "Right to Control" Theory ......................................................................................... 23

    V.   Count Seven Should Not Be Dismissed on the Grounds of "Multiple Conspiracies". 25

CONCLUSION ................................................................................................................. 27

PRELIMINARY STATEMENT

The defendant's motion to dismiss Count Seven of the Superseding Indictment is based on two fundamentally flawed premises.  First, the defendant assumes that the jury's acquittal of the defendant's co-conspirator Martin Shkreli on Count Seven necessarily means that the jury exonerated Shkreli and, by extension, the defendant.  But a "not guilty" verdict does not equate to exoneration, and an acquittal of one co-conspirator does not foreclose the conviction of another.  Indeed, one of the recognized consequences associated with severing the trial of co-conspirators—a severance the defendant aggressively fought for here—is the potential for inconsistent jury verdicts.  Such inconsistent verdicts are not unlawful or unconscionable; they are a potential byproduct of the jury system.

Second, the defendant assumes incorrectly that the evidence and argument presented during the trial of Shkreli constitutes the only evidence and argument available for the trial of the defendant, that the government is precluded from offering any additional evidence or argument in the defendant's trial, and that evidence and argument in the Shkreli trial amended the Superseding Indictment with respect to the defendant.  These are all flawed assumptions.  The defendant's trial is neither an extension of nor a re-do of the Shkreli trial.  It is simply another trial, governed by the same laws and rules of evidence that would apply had Shkreli's trial not taken place.  In every trial, the government has the right to make its case the way it sees fit: to decide which evidence to offer, which evidence to emphasize, and which arguments to make.  Having sought to be tried separately from Shkreli, the defendant cannot have it both ways, demanding that his trial be governed in some respects by (his view of) what happened in the Shkreli trial and yet also demanding that evidence and arguments from that trial be excluded from his trial.

Stripped of all of these flawed assumptions, each of the defendant's arguments to dismiss Count Seven of the Superseding Indictment should be rejected.  For example, Shkreli's acquittal on Count Seven in his trial is not a legal bar to the defendant's prosecution.  Similarly, efforts to challenge various aspects of the conspiracy charged in Count Seven as "legally impossible" or to reframe and circumscribe the charging "theories" advanced by the government are similarly flawed because they assume that evidence and argument presented during the Shkreli trial alters the Superseding Indictment or precludes the government from offering different or additional evidence or argument in the defendant's trial.

In this context, it is also worth noting that the defense has used this motion as a vehicle for taking unwarranted rhetorical shots at the government, none of which are relevant to the actual legal arguments that the defense raises.  The government takes very seriously the fair, evenhanded administration of the federal criminal laws.  But this brief focuses on addressing the defendant's legal arguments, not his unfounded accusations.

## ARGUMENT

The defendant offers five different arguments for dismissing Count Seven of the Superseding Indictment pursuant to Federal Rules of Criminal Procedure 7(c) and 12(b)(3)(B).[1] Each of these arguments should be rejected. Perhaps acknowledging that these arguments are generally addressed at the nature and strength of the evidence presented during the Shkreli trial, rather than at actual legal flaws in the Superseding Indictment, the defendant also asks that, "[i]n the alternative," that its motion be viewed as an in limine motion to strike certain arguments. But regardless of how these arguments are viewed, they are meritless.

---

[1] Despite the inflammatory rhetoric peppered throughout the defendant's brief, including the accusation that the government's actions "shock the conscience," the defendant does not actually move to dismiss the indictment based on prosecutorial misconduct. See United States v. Dupree, 781 F. Supp. 2d 115, 160 (E.D.N.Y. 2011) ("To constitute a due process violation on the ground of egregious government misconduct, the government's actions must be so outrageous as to 'shock the conscience.' . . . The Second Circuit has held that the defendants' 'burden of establishing outrageous investigatory conduct is very heavy,' and the power to dismiss an indictment on due process grounds should be exercised sparingly."). The defendant also suggests that the government failed to comply with the U.S. Attorney's Manual ("USAM") by not seeking approval from the U.S. Department of Justice before proceeding against him in his capacity as a lawyer. (Mot. to Dismiss at 3). That suggestion, however, plays no role in any of the legal arguments the defendant raises. Moreover, the defendant's suggestion about a violation is based on a selective quotation from the USAM, omitting that DOJ approval to indict an attorney is required only where "the client will, or is likely to, testify against the attorney pursuant to a non-prosecution, cooperation, or similar agreement with the government." USAM § 9-2.032. That condition does not apply in this case, as defense counsel are well aware. Ultimately, federal prosecutors retain "broad discretion to enforce the Nation's criminal laws." United States v. Armstrong, 517 U.S. 456, 464 (1996) ((internal quotation marks omitted). As a result, "'[t]he presumption of regularity supports' their prosecutorial decisions and, 'in the absence of clear evidence to the contrary, courts presume that they have properly discharged their official duties.'" Id. (quoting United States v. Chemical Foundation, Inc., 272 U.S. 1, 14-15 (1926)); see also, e.g., Wayte v. United States, 470 U.S. 598, 607 (1985).

I.    COUNT SEVEN SHOULD NOT BE DISMISSED BECAUSE OF THE "NOT GUILTY" VERDICT IN THE SHKRELI TRIAL

The defendant first argues that Count Seven, which alleges the defendant conspired with Shkreli and others to commit wire fraud, "must be dismissed" because a jury acquitted Shkreli and there is no evidence that the defendant conspired with anyone other than Shkreli. (Mot. to Dismiss at 5). This argument is based on a fundamental misinterpretation of Second Circuit law. The "not guilty" verdict on Count Seven in Shkreli's trial does not foreclose the defendant's prosecution here.

A.    Applicable Law

The Supreme Court has explained that a jury verdict of "not guilty" is not equivalent to a statement that the defendant was not, in fact, guilty. Specifically, the Supreme Court has "noted that the jury, though presumed to follow the instructions of the trial court, may make its ultimate decisions 'for impermissible reasons,' such as 'mistake, compromise, or lenity,' but its power to do so is 'unreviewable.'" United States v. Acosta, 17 F.3d 538, 545 (2d Cir. 1994) (quoting United States v. Powell, 469 U.S. 57, 62-65 (1984)); see United States v. Zane, 495 F.2d 683, 690 (2d Cir. 1974) ("However, the rule against disturbing inconsistent verdicts runs deeper than the principle of compromise. The validity accorded to such verdicts recognizes the sanctity of the jury's deliberations and the strong policy against probing into its logic or reasoning, which would open the door to interminable speculation."); United States v. Lillemoe, No. 15-CR-25 (JCH), 2017 WL 1022806, at *9 (D. Conn. Mar. 16, 2017) ("The law, however, is quite clear that 'one defendant's conspiracy conviction does not become infirm by reason of jury verdicts of not guilty against all of his alleged coconspirators.' United States v. Acosta, 17 F.3d 538, 545 (2d Cir. 1994). There are many reasons why a jury may or may not have rendered an inconsistent verdict and, as such, the court should not attempt to divine the precise contours of the

jury's determinations beyond their verdicts of guilty and not guilty."). As a result, a "not guilty"

verdict is not proof that the jury believed the defendant to be innocent or even that the

government failed to prove each element of a charged crime beyond a reasonable doubt.

The difference between a "not guilty" verdict and a definitive determination of

lack of guilt also means that, when faced with inconsistent jury verdicts, such as the conviction of

one co-conspirator but the acquittal of another, "[t]he most that can be said . . . is that the verdict

shows that either in the acquittal or the conviction the jury did not speak their real conclusions,

but that does not show that they were not convinced of the defendant's guilt." Id. The Second

Circuit has made clear that a defendant's conspiracy conviction "does not become infirm by

reason of jury verdicts of not guilty against all of his alleged coconspirators," let alone against

some. Acosta, 17 F.3d at 545 (emphasis added); accord, e.g., United States v. Ferry, 108 F.

App'x 676, 681 (2d Cir. 2004) ("Inconsistent verdicts are generally not reviewable. They may, for

example, be the result of jury lenity, which does not have to be provided uniformly to all

codefendants."); United States v. Gray, 421 F. App'x 11, 14 (2d Cir. 2011) ("We have held that

'one defendant's conspiracy conviction does not become infirm by reason of jury verdicts of not

guilty against all of his alleged coconspirators.'").[2]

---

[2] Other Courts of Appeal have reached the same conclusion. See, e.g., United States v. Patterson, 348 F.3d 218, 225 (7th Cir. 2003) ("[T]he reasoning of Powell . . . applies with equal force to cases where inconsistent verdicts are rendered against co-defendants on conspiracy charges."); United States v. Zuniga–Salinas, 952 F.2d 876, 878 and n.3 (5th Cir. 1992) (en banc) (holding inconsistent verdicts, where the only other named coconspirator was acquitted and no evidence was presented of "involvement by 'persons unknown,'" did not require reversal of appellant's conspiracy conviction); United States v. Vogt, 910 F.2d 1184, 1203 (4th Cir. 1990) ("[E]ven where all but one of the charged co-conspirators are acquitted, the verdict against the one may nevertheless stand."); United States v. Andrews, 850 F.2d 1557, 1561 (11th Cir. 1988) (en banc) ("Consistent verdicts are unrequired in joint trials for conspiracy: where all but one of the charged conspirators are acquitted, the verdict against the one can stand."); United States v. Valles–Valencia, 823 F.2d 381, 382 (9th Cir. 1987) ("[T]he

So long as the evidence is sufficient to support the conviction of the co-conspirator who was found guilty, that verdict will stand.  E.g., United States v. Bourne, No. 08-CR-888 (NGG), 2012 WL 149507, at *6 (E.D.N.Y. Jan. 17, 2012) (The court will not speculate as to why the jury in this case found Bourne guilty of money laundering conspiracy, but found Alleyne not guilty. The record is replete with evidence sufficient to establish every element of the conspiracy charged, including that two or more people participated in it.").

Applying these legal principles to a case in which a defendant challenged his conviction for aiding and abetting, and for conspiring with, his brother to kill someone after his brother was acquitted of that murder in a separate trial, Judge Gershon recently explained:

> The seemingly inconsistent verdicts between [the defendant's] conviction for acting in concert with [his brother] to murder Dillard and his brother's acquittal, at a prior trial, on the same charges "does no more than manifest the simple, if discomforting, reality that different juries may reach different results under any criminal statute. That is one of the consequences we accept under our jury system. While symmetry of results may be intellectually satisfying, it is not required." . . . Petitioner was entitled to "a fair trial at which the Government bore the burden of proving beyond a reasonable doubt" that he committed, aided and abetted the commission of, or was liable as a co-conspirator for the murder of Lanny Dillard. . . . "He was entitled to no less-and to no more."

Lugo v. United States, No. 09-CV-00696 (NG), 2014 WL 7140456, at *8 (E.D.N.Y. Dec. 12, 2014) (quoting Standefer v. United States, 447 U.S. 10, 25 (1980)).[3]

———————————————

acquittal of all conspirators but one does not necessarily indicate that the jury found no agreement to act.").

[3] The defendant repeatedly refers to Shkreli as the "mastermind and orchestrator" of the conspiracy charged in Count Seven.  The government does not agree with this characterization.  But even if it were accurate, federal law does not distinguish between "masterminds," "orchestrators," "attorneys," "aiders and abettors," "mules," "wheelmen," or any other subcategory of criminal conspirator for purposes of determining guilt or innocence. As the Supreme Court explained in discussing aiding and abetting liability in particular, "all

B.    Argument

Had the defendant and Shkreli been tried together, with an inconsistent jury verdict of guilty for the defendant and "not guilty" for Shkreli, then the defendant would not be able to challenge the verdict on the basis of that inconsistent finding.  See, e.g., Acosta, 17 F.3d at 545 (emphasis added) (a defendant's conspiracy conviction "does not become infirm by reason of jury verdicts of not guilty against all of his alleged coconspirators").  Yet the defendant makes just such a challenge in this motion, in a situation in which an inconsistent verdict would be even less inconsistent than it would have been in a joint trial because this trial will not include the exact same evidence as in the Shkreli trial.  The fact that the defendant faces a separate trial, at his own request, does not change the legal analysis.[4]  In either situation, the defense challenge relies on the same prohibited assumption that the jury acquitted Shkreli because it found he had not conspired with the defendant, as opposed to for some other reason.

Notwithstanding the Supreme Court and Second Circuit precedent described above, the defendant proposes a different rule:  that an inconsistent conviction in a conspiracy case can stand only if there is evidence that the convicted defendant conspired with someone other than the acquitted co-conspirator.  (Mot. to Dismiss at 5-6).  But the defendant misinterprets

---

participants in conduct violating a federal criminal statute are 'principals.'  As such, they are punishable for their criminal conduct; the fate of other participants is irrelevant."  Standefer v. United States, 447 U.S. 10, 20 (1980).  Every member of a conspiracy is entitled to a fair trial, no member is entitled to more.

[4] The Supreme Court has explained that one significant reason that severance of the trial of co-defendants is disfavored is because severance can lead to the "scandal and inequity of inconsistent verdicts."  Zafiro v. United States, 506 U.S. 534, 537 (1993).

the one Second Circuit case on which it relies, United States v. Rodriguez, 983 F.2d 455, 459 (2d Cir. 1993).[5]

In Rodriguez, the Second Circuit considered a situation in which a jury found the defendant guilty of conspiracy but the district judge held that there was insufficient evidence as a matter of law to convict the defendant's alleged co-conspirator. Id. at 459. Under those circumstances, the Circuit held that the conviction still could stand if the government could show that there was sufficient evidence of additional members of the conspiracy. Id. The Circuit carefully distinguished a jury's "not guilty" verdict from a determination by a judge that evidence was insufficient, explaining that a "a jury acquittal cannot necessarily be equated with a finding that the Government failed to prove guilt beyond a reasonable doubt" but that there is "no ambiguity in a judge's dismissal of charges." Id. In other words, Rodriguez simply holds that if the government alleges that two people conspired, and a judge determines there is insufficient evidence as a matter of law to show that one of those people conspired, then the other person cannot be guilty of conspiracy. Such a rule is not applicable in this case, where no such judicial determination has been made.

Therefore, the defendant's proposal that Rodriguez requires the government to provide evidence of additional co-conspirators in light of the "not guilty" verdict for Shkreli on Count Seven is not the law in this Circuit. It is contrary to that law.[6]

_____

[5] The defendant did not address this purportedly binding precedent in its letter to the U.S. Attorney requesting that Count Seven be dismissed. See Mot. to Dismiss Ex. A.

[6] The defendant also relies on United States v. Batista, No. 06-CR-265 (DLI), 2010 WL 1193314, at *11 (E.D.N.Y. Mar. 24, 2010), an unpublished district court decision in which the court appeared to apply a requirement that, when one named co-conspirator is acquitted by the jury, the conviction of the other named co-conspirator may stand only if there is sufficient evidence that the convicted defendant also conspired with "others." In other words, the opinion appears to assume that the acquittal of a co-conspirator means that individual was not part of the

Moreover, even if the rule the defendant proposed were the law, and it is not, the defense motion should still be denied.  The defendant contends that "the extensive record from the trial of United States v. Martin Shkreli makes it plainly obvious as a matter of law that the government does not have a scintilla of evidence, much less probative evidence, that anyone other than Shkreli allegedly entered into an illegal agreement to commit wire fraud with Mr. Greebel." (Mot. to Dismiss at 8).  But the evidence presented at trial did provide a basis for concluding that others conspired with the defendant.  For example, in addition to evidence related to Mr. Yaffe, evidence at trial showed that Marek Biestek, Kevin Mulleady, and Thomas Fernandez were involved in the backdating actions discussed in detail below.

More important, however, the government is not limited in the defendant's trial to presenting just the evidence it presented in the Shkreli trial, which focused not just on the conspiracies in Counts Seven and Eight but also on two additional, complex frauds.[7]  Given that

---

conspiracy as a matter of fact and law.  To the extent that is the reasoning applied in Batista, it is squarely contrary to the Second Circuit cases cited herein, which hold that an acquittal does not mean the acquitted person did not commit the crime or that the evidence is insufficient to establish his or her guilt beyond a reasonable doubt.  Batista's apparent holding also is not supported by Rodriguez, the only Second Circuit case upon which Batista relies.  See Batista, 2010 WL 1193314, at *11 (citing only Rodriguez for the proposition that there must be evidence of "others" being involved in the conspiracy).  As discussed above, Rodriguez does not address a "not guilty" jury verdict; it addresses a judicial determination that evidence is insufficient to support an alleged co-conspirator's role in the conspiracy.  No such determination was made in Batista, and no such determination was made in the Shkreli trial.  In sum, to the extent the holding in Batista is inconsistent with the holdings of Second Circuit cases discussed herein, the Second Circuit precedent should control.

[7] The defendant repeatedly tries to suggest that the government is somehow estopped from offering any evidence beyond what it offered in the Shkreli trial.  (See, e.g., Mot. to Dismiss at 8 (making the strange assertion that "it plainly obvious as a matter of law that the government does not have" any additional evidence), at 9 ("The government never alluded to, much less mentioned, any other alleged co-conspirator in Count Seven until its rebuttal summation"), at 11 ("the government did not even attempt to offer to the Court the name of a co-conspirator in Count Seven other than Mr. Shkreli and Mr. Greebel"), at 13 ("The

there are only two counts at issue in the trial against the defendant, and that the defendant, as Retrophin's outside counsel, was differently situated with respect to Retrophin as compared to Shkreli, the government expects to present additional evidence and testimony regarding those two counts at the defendant's trial.  Cases such as United States v. Batista, on which the defendant solely relies, are inapposite here because they involve a review of the evidence presented during the trial of the defendant with respect to other co-conspirators.  But there has been no trial of the defendant, and there is no trial record to review.  The defendant sought and received a separate trial from Shkreli, and the government intends to conduct such a trial in October.

II.   THERE IS NO LEGAL BASIS TO STRIKE THE BACKDATING OBJECT OF THE CONSPIRACY CHARGED IN COUNT SEVEN, AND EVIDENCE OF BACKDATING IS ADMISSIBLE

The defendant asserts that the government's "theory" in Count Seven that the defendant conspired with others to defraud Retrophin via backdated share transfer agreements that created an interest in Retrophin for MSMB Capital even though MSMB Capital never invested in Retrophin is "impossible as a matter of law."  (Mot. to Dismiss at 13-17).  Accordingly, the defendant contends—without reference to a single case or other authority—that the Court should "strike [that] theory in Count Seven."  (Id. at 17).  The defendant also moves to preclude all evidence of the backdated share transfers on the ground that, regardless of whether the Court grants his motion to strike, such evidence purportedly has no probative value and is in any event unduly prejudicial, because "backdating is not per se improper."  (Id. at 19).

_____

government has therefore effectively conceded that Mr. Shkreli is the only possible alleged co-conspirator to Mr. Greebel.")).  There is no legal basis for this argument.  Moreover, the defendant repeatedly misrepresents the record in making this argument, for example by stating that the rebuttal conceded "the charged conspiracy . . . was between two people" (id. at 9), but citing a transcript excerpt that merely discusses the fact the Shkreli and the defendant did conspire.

These arguments are baseless.  A court does not have the authority to dismiss or strike a properly pled charge in an indictment.  And contrary to the premise of the defendant's motion, alleged legal or factual impossibility is not a defense to a conspiracy charge.  Even if it were, the evidence of the actions taken by the defendant and others to create the backdated interest in Retrophin for MSMB Capital is plainly relevant and admissible for two reasons.  It is relevant as evidence of one object of the conspiracy charged in Count Seven, the creation of the MSMB Capital interest.  And it is also relevant as evidence of the defendant's knowledge and intent for the other objects of the conspiracy charged in Count Seven, as well as of the conspiracy charged in Count Eight.

A.   There Is No Legal Basis to Strike the Properly Pled Count

It is black-letter law that an "indictment is sufficient if it, first, contains the elements of the offense charged and fairly informs a defendant of the charge against which he must defend, and, second, enables him to plead an acquittal or conviction in bar of future prosecutions for the same offense." Hamling v. United States, 418 U.S. 87, 117 (1974); see also, e.g., United States v. Alfonso, 143 F.3d 772, 776 (2d Cir. 1998).  To state an offense, "'an indictment need do little more than to track the language of the statute charged and state the time and place (in approximate terms) of the alleged crime.'" United States v. Yannotti, 541 F.3d 112, 127 (2d Cir. 2008) (quoting Alfonso, 143 F.3d at 776).

Nor is a defendant permitted to challenge an indictment or a portion thereof "on the ground that [it] [is] not supported by adequate or competent evidence." Costello v. United States, 350 U.S. 359, 364 (1956).  On the contrary, before trial, "the allegations of [an] indictment must be taken as true." Boyce Motor Lines v. United States, 342 U.S. 337, 343 n.16 (1952).  Put differently, "there is no summary judgment in criminal cases." United States v. Elie, 10-CR-0336, 2012 WL 383403, at *1 (S.D.N.Y. Feb. 7, 2012) (rejecting motion to dismiss under this

11

"very well established principle"); United States v. Gutierrez, 181 F. Supp. 2d 350, 356 (S.D.N.Y. 2002) (same).   After the government presents its case at trial, if he wishes, the defendant may make an argument that the evidence is insufficient as to one or more elements of the offenses with which he is charged.  Until then, his "argument is premature."  United States v. Woodbine, No. 02-CR-150, 2003 WL 1212972, at *3 (S.D.N.Y. Mar. 17, 2003).

The defendant does not claim that the law is otherwise.  He cites no legal authority whatsoever in support of his request for this Court to "strike" a properly pled portion of an indictment, much less to do so on the ground that, contrary to the express allegations of the Superseding Indictment, he did not commit a crime.  In arguing that the Court should nevertheless take this step, the defendant suggests that what he seeks is not a ruling that the Superseding Indictment's allegations are wrong, but merely that one of those allegations—that he conspired to defraud Retrophin in connection with the creation of a backdated interest in Retrophin for MSMB Capital—is purportedly "impossible as a matter of law."  (Mot. to Dismiss at 17).  That suggestion is meritless.

As an initial matter, as is apparent from the defendant's repeated citation of evidence at the trial of Shkreli, the defendant's argument is factual, not legal.  In any event, it is well-established that neither factual nor legal impossibility is a defense to a conspiracy.  See, e.g., United States v. Williams, 553 U.S. 285, 300 (2008) ("As with other inchoate crimes—attempt and conspiracy, for example—impossibility of completing the crime because the facts were not as the defendant believed is not a defense"); United States v. Trapilo, 130 F.3d 547, 552 n.9 (2d Cir. 1997) ("Where . . . an indictment alleges conspiracy, legal impossibility affords a conspirator no defense."); United States v. Wallach, 935 F.2d 445, 470 (2d Cir. 1991).

12

It is equally well-established that success is not an element of a conspiracy.  "An essential element of the government's proof in a mail fraud prosecution or a wire fraud prosecution is proof of a 'scheme or artifice to defraud.'" United States v. Starr, 816 F.2d 94, 98 (1987).  "However, the government is not required to prove that an intended victim was actually defrauded to establish a violation by the defendant[.]" Id.; see also, e.g., United States v. Gotti, 459 F.3d 296, 311 (2d Cir. 2006) ("it is the scheme itself, rather than its success, that is the required element for conviction").

Consequently, even if the defendant's factual assertions were correct, he would not be entitled to dismissal.  The jury is not going to be asked to determine whether Retrophin "was defrauded" (Mot. to Dismiss at 13, 16, 17), or whether the scheme with which the defendant is charged was likely to or could have succeeded.  Rather, the jury is going to be asked to determine whether the defendant agreed to engage in a scheme to defraud Retrophin—regardless of the likelihood, or lack thereof, of its success.

The defendant's suggestion to the contrary—that because, in his view, the conduct he is alleged to have agreed to undertake could not have resulted in defrauding his victim—is on all fours with the argument proffered by the defendant in United States v. Helmsley, 941 F.2d 71 (1994).  In Helmsley, the defendant asserted that her conviction for mail fraud, arising from a scheme to defraud New York State of taxes she believed she owed, could not stand "because there was no proof of taxes actually due," and therefore "the alleged fraud did not deprive its victim of a property interest." Id. at 94.  The Second Circuit rejected the argument, explaining that "[t]he absence of proof of taxes actually due to New York State is immaterial because success of a scheme to defraud is not required." Id. Rather, "if [the defendant] used the mails in an effort to

defraud New York State of tax dollars owed to it, even if in the end she owed no taxes, the requisite elements of Section 1341 have been met." Id.

So too here.  The defendant is charged with conspiring to commit fraud in multiple ways.  Whether or not that conspiracy could have succeeded, if he agreed to enter into it, he is guilty.  In short, "Under both the mail fraud and wire fraud statutes, the thing which is condemned is (1) the forming of the scheme to defraud, however and in whatever form it may take, and (2) a use of mail and wire communications in its furtherance.  If that is satisfied, more is not required." Trapilo, 130 F.3d at 551 (footnote and internal quotation marks omitted; alterations incorporated).

B.     Evidence of Backdating Is Plainly Admissible

The defendant also seeks to preclude all evidence of the backdated stock transfer agreements as either irrelevant pursuant to Federal Rule of Evidence 401 ("Rule 401"), or unduly prejudicial pursuant to Federal Rule of Evidence 403 ("Rule 403").  (Mot. to Dismiss at 17-20).  The defendant's primary argument in support of this request is that the backdated stock transfer agreements "did not defraud Retrophin" and thus "the evidence relating to the alleged backdating of share transfers does not have a tendency to make any fact of consequence in proving that Retrophin was allegedly defrauded more or less probable."  (Id. at 17-18).

As an initial matter, even if the defendant was correct that the backdated stock transfer agreements in no way defrauded Retrophin—and the government does not agree—those agreements (and related evidence, including emails discussing and transmitting those agreements, testimony about the agreements, etc.) would still be relevant, admissible evidence of the defendant's intent and knowledge of the remaining objects of the conspiracy charged in Count Seven and the conspiracy charged in Count Eight.  As the Court knows from prior briefing in the case and from evidence introduced at the Shkreli trial, MSMB Capital never invested in Retrophin; in fact, Shkreli lost all of the money in MSMB Capital prior to the formation of

14

Retrophin.  The capitalization table for Retrophin reflected that MSMB Capital never invested in

Retrophin, and MSMB Capital appeared nowhere on that capitalization table prior to December

2012.  Subsequently, in November and early December 2012, the defendant, Shkreli and others

used the backdated share transfer agreements to create an interest in Retrophin for MSMB

Capital.

       The defendant knew, from his involvement in the creation and execution of those

agreements and his work on the capitalization table (as outside counsel, the defendant was

ultimately responsible for oversight of the capitalization table and its contents), that the only

Retrophin shares that were distributed to MSMB Capital came from that backdated interest, and

that MSMB Capital never invested in Retrophin (because no funds from MSMB Capital were

used to purchase the Retrophin shares for MSMB Capital).  Nevertheless, the defendant conspired

with Shkreli to perpetuate the lie that MSMB Capital was an ongoing, viable hedge fund that had

invested in Retrophin.  Not only did the defendant draft and then file with the Securities and

Exchange Commission ("SEC") a Form 13D that stated that the Retrophin shares held by MSMB

Capital had been purchased by MSMB Capital with working capital—a blatant falsehood—but

the defendant worked with Shkreli to continue to represent that MSMB Capital had invested its

funds with Retrophin to MSMB Capital investors who ultimately received settlement and

consulting agreements, including Sarah Hassan, Schuyler Marshall and Darren Blanton.

       In addition, evidence related to the backdated share transfers is further evidence of

the defendant's knowledge and intent in connection with the conspiracy charged in Count Eight.

The defendant knew that Mulleady, Biestek and Fernandez had agreed to transfer shares of

Retrophin that they had received as compensation for work done as employees of Retrophin to

Shkreli for no consideration because Shkreli was going to give them the opportunity to receive Fearnow Shares.

Even if this evidence did not go directly to the defendant's knowledge and intent of the other objects of Count Seven and the conspiracy charged in Count Eight (again, in addition to direct evidence of the first object of the conspiracy charged in Count Seven), it would still be admissible as background for those conspiracies. Evidence of a crime is not limited to "that which directly establishes an element of the crime." United States v. Gonzalez, 110 F.3d 936, 941 (2d Cir. 1997). "To be relevant, evidence need only tend to prove the government's case, and evidence that adds context and dimension to the government's proof of the charges can have that tendency." Id. In addition, "[b]ackground evidence may be admitted to show, for example, the circumstances surrounding the events or to furnish an explanation of the understanding or intent with which certain acts were performed." United States v. Coonan, 938 F.2d 1552, 1561 (2d Cir. 1991) (quoting United States v. Daly, 842 F.2d 1380, 1388 (2d Cir. 1988)). On this basis alone, evidence of the backdated share transfer agreements is admissible.

The defendant lodges one additional argument for why evidence of the backdated share transfer agreements is allegedly unduly prejudicial pursuant to Rule 403: because "backdating as a practice is not per se improper and indeed is accepted practice and can be entirely proper." (Mot. to Dismiss at 19). The defendant asserts that giving a document an earlier date than the current date "for the purpose of memorializing an agreement or transaction that actually occurred on the 'backdated' date is legitimate." (Id.). As a result, because in some instances giving a document an earlier date may be appropriate, the defendant contends that evidence of the backdated share transfer agreements is too confusing and misleading to be presented to the jury. (Id.).

This argument is a red herring.  First, and foremost, the "prejudice resulting to [the defendant] from the fact that introduction of" relevant evidence is "damaging to their case is, of course, not the kind of prejudice against which Fed. R. Evid. 403 protects defendants."  See United States v. DeLillo, 620 F.2d 939, 947 n.2 (2d Cir. 1980).

Second, the circumstances under which the share transfer agreements were backdated do not fit the "industry practice" that the defendant's expert will allegedly testify to of "backdate[ing] stock transfer and other agreements to reflect when the oral understanding was reached."  (Mot. to Dismiss at 20).  The evidence shows that the defendant, Shkreli and others were not merely memorializing earlier oral agreements from June and July 2012 to create an interest in Retrophin for MSMB Capital.  For example, in a text message sent on November 30, 2012, Shkreli told Fernandez that Fernandez would "surrender all of your stock to me and have zero" and that, in return, Fernandez would be able to "buy from troy fearnow … approximately 5% of the post-merger outstanding common shares of Retrophin."  (Shkreli GX 224).  Shkreli further states that "in the event you are unable to buy the stock from fearnow … I will return to you the shares you are planning to surrender today."  (Id.).  That agreement between Shkreli and Fernandez was reached on that date—November 30, 2012—and yet the transfer agreement between Shkreli and Fernandez was dated July 1, 2012.  (Shkreli GX 119-25).  There is nothing in the text message to suggest that the share transfer between Shkreli and Fernandez was reached four months earlier; in fact, it would have been impossible for them to do so, since Shkreli had not decided to purchase the Desert Gateway shell at that point and could not have offered up the Fearnow Shares in exchange for the transfer.

Finally, even if the circumstances surrounding the share transfer agreements did fit the "industry practice" that the defendant's expert will allegedly describe—or, as is more likely,

17

the defendant will claim that he <u>believed</u> that the share transfers fit that industry practice in an attempt to show that he was not involved in the charged conspiracies—this argument goes to the weight that the jury should afford the evidence of the backdated share transfer agreements, not their admissibility.  What inferences, if any, to draw from the evidence is for the jury at trial.  <u>See</u>, <u>e.g.</u>, <u>United States v. Morrison</u>, 153 F.3d 34, 49 (2d Cir. 1998).  It is not unduly confusing for the jury to have the government argue that—if the defendant can in fact establish the existence of such an "industry practice"—the backdating of the share transfer agreements was improper because there was no earlier oral agreement between the parties to those agreements.  The defendant can then argue that the backdating was not improper because there allegedly was such an earlier oral agreement.  The government anticipates that the parties will have differing interpretations of the evidence and how the law is applied to such evidence on many points related to the charged conspiracies.  Such differing interpretations of evidence are not unduly prejudicial, and do not warrant exclusion of evidence pursuant to Rule 403.

III.    <u>THERE IS NO LEGAL BASIS TO STRIKE OR PRECLUDE ARGUMENT ABOUT THE PORTION OF THE CONSPIRACY CHARGED IN COUNT SEVEN THAT RELATES TO SETTLEMENT AGREEMENTS</u>

The defendant next contends that the government's "theory on Count Seven that the settlement agreements 'defrauded' Retrophin cannot stand as a matter of law" for two reasons: (1) Section 144 of the Delaware General Corporate Law did not create an obligation to disclose anything about the settlement agreements; and (2) "it is now clear that the government's case is based on a 'right to control' theory" but that theory fails as a matter of law.  (Mot. to Dismiss at 21).  These arguments, whether viewed as a motion to dismiss or as a motion <u>in limine</u> to preclude certain arguments or evidence, misrepresent the record and should be rejected out of hand.

18

A.    There Is No Basis for Dismissing Count Seven with Respect to the Settlement
      Agreements

The defendant provides no basis for dismissing any portion of Count Seven of the

Superseding Indictment.  As discussed, the text of Count Seven of the Superseding Indictment

more than satisfies the minimal legal requirements for a valid charging instrument.  Hamling, 418

U.S. at 117 (indictment is sufficient if it "contains the elements of the offense charged and fairly

informs a defendant of the charge against which he must defend, and, second, enables him to

plead an acquittal or conviction in bar of future prosecutions for the same offense.").

The defendant does not contest this.  Instead, the defendant suggests that the

Superseding Indictment must be read implicitly to incorporate the additional limitations that

Shkreli and the defendant made no affirmative misrepresentations and that, to the extent they

failed to disclose information, their only duty to disclose arose from Delaware General Corporate

Law § 144.  Of course the Superseding Indictment does not say any of that, and the government

has never suggested it should be read that way.  The defendant provides no citation in which the

government agreed that the only source of Shkreli's obligation to disclose arose from Section 144,

let alone a citation in which the government conceded that this defendant's sole obligation to

disclose arose from Section 144.  As the defendant has explained, the Court did instruct the jury

about obligations to disclose but did not instruct the jury about Section 144.[8]  Finally, in any

_____

[8] As both the Court and the government recognized in the Shkreli trial, a duty to
disclose exists irrespective of Section 144.  See, e.g., Final Jury Instructions, 15-CR-637, Dkt.
No. 295, at 72 ("A fraudulent representation may include the failure to disclose material
information if the defendant was under a legal, professional or contractual duty to make such
a disclosure. You have heard testimony regarding the fiduciary duties of corporate officers
and directors. One such duty, the duty of loyalty, mandates that the best interest of the
corporation and its shareholders takes precedence over any interest possessed by a director or
officer, and not shared by the stockholders generally."); Gov't's 7/22/2017 Ltr., Dkt. No. 280
(discussing general Second Circuit and Delaware law about duties of corporate officers).  The

event, if the defendant really intends to argue that, as lead outside counsel to a company and a

practicing lawyer in the State of New York, he somehow had no duty to disclose material

information to his client Retrophin, he should provide some authority to support that contention.

The government is aware of none.[9]

The defendant also suggests the Superseding Indictment is subject to an additional,

unwritten limitation:  that the defendant, Shkreli, and others conspired only to deprive Retrophin

of its "right to control" assets.  (Mot. to Dismiss at 21).  But, again, the Superseding Indictment,

which never refers to a "right to control," contains no such limitation.  Nor did the government

ever suggest or concede that the Superseding Indictment must be interpreted through a theory of

"right to control."  Although the defendant argues that, "Based on the government's summations

and the theory in the final jury instructions . . . it is now clear that the government's case is based

on a 'right to control' theory," the defendant does not actually cite anything in the record to

---

discussion at the Shkreli trial related to Rule 144 arose in response to a defense suggestion
that Shkreli did not violate the law by sua sponte giving away Retrophin assets for his own
purposes.  (See, e.g., Tr. 4577:6-12 ("[W]e will provide additional suggested instructions on
the law of Delaware because this suggestion [by defense counsel] that, you know, the
defendant can do whatever he wants again in terms of issuing shares and money of a public
corporation is contrary to law and is in general and is particularly contrary to law on related
party transactions.").

[9] For these reasons, the Court should reject the defendant's request that the Court
review the instructions provided to the Grand Jury because the "government appears to have
obtained an indictment on Count Seven based on a faulty understanding of the law."  (Mot.
to Dismiss at 22-23).  The government has never suggested that the sole basis for Shkreli's
and the defendant's obligation to disclose arose from Section 144.  The defendant's duties
arise under, among other things, Second Circuit and Delaware law, New York State common
law and the New York Rules of Professional Conduct.  See, e.g., New York Rules of
Professional Conduct Preamble ¶ 2 ("The touchstone of the client-lawyer relationship is the
lawyer's obligation . . . to act with loyalty during the period of the representation"); id. Rule
1.4 note 7 ("A lawyer may not withhold information to serve the lawyer's own interest or
convenience or the interests or convenience of another person.").

support that argument.  Nor could it.  The government summation does not refer to a "right to control" with respect to Count Seven, and the final jury instructions do not refer to a "right to control."[10]

B.    Retrophin Did Not Receive the "Benefit of the Bargain" with Respect to the Settlement Agreements

To the extent the defendant's motion to dismiss Count Seven is instead considered a motion in limine to preclude the government from arguing that Shkreli and the defendant conspired to "deny Retrophin the right to control its assets by depriving it of information necessary to make discretionary economic decisions," the motion still should be denied.  (See Mot. to Dismiss at 23).

Relying primarily on United States v. Davis, No. 13-CR-923 (LAP), 2017 WL 3328240, at *8 (S.D.N.Y. Aug. 3, 2017), the defendant's contention is that Retrophin was not defrauded because "Retrophin received the benefit of the bargain—the release of any claims from MSMB investors."  (Mot. to Dismiss at 25).  There are two flaws with this argument.

First, Retrophin did not "bargain" at all.  This is not a situation in which Retrophin negotiated with MSMB investors to secure settlement agreements but the defendant and Shkreli made misrepresentations or omissions that nevertheless resulted in Retrophin obtaining the settlement agreements.  Here, Retrophin never sought a settlement agreement and never negotiated for one.  Instead, the defendant and Shkreli sat on both sides of the negotiating table

---

[10] In fact, the government requested that the Court remove a reference to property in the proposed jury instructions as including "intangible assets such as the right to control the use of one's assets" in order to avoid confusion related to "inside information and things along that line."  Tr. 5130-31.

and engaged in self-dealing.  In such a situation, which <u>Davis</u> does not address, it cannot be said that Retrophin received what it asked for, because it never asked for what it received.

Second, there is no basis for concluding before the trial that Retrophin did receive the "full economic benefit" of the bargain.  For example, the waiver in the settlement agreement protects the MSMB entities and Shkreli himself, as well as Retrophin.  Thus the defendant and Shkreli conspired to make Retrophin pay not just to protect itself from litigation but also to protect hedge funds with which it was not associated and Shkreli in his personal capacity.  Those terms, part of the "essential element of the bargain," <u>Davis</u>, 2017 WL 3328240, at *8, were concealed.  This is fraud, even under <u>Davis</u>.  Even assuming Retrophin had wanted to bargain to protect itself from liability, there is no reason to believe it ever would have agreed to pay to protect MSMB or Shkreli personally, especially when Shkreli could have used his own assets to obtain those releases.  <u>See</u> <u>id.</u> at *9 (explaining that, in "right to control" cases, "convictions have been upheld where the deceit had the potential to cause economic harm to the victim").  Causing Retrophin to enter into contracts of which it was unaware also "exposed" the company "to economic risk," including the risk that Retrophin might be sued for violating the terms of the (undisclosed) settlement agreements.  <u>See, e.g.</u>, <u>Davis</u>, 2017 WL 3328240, at *11 (discussing <u>United States v. Dinome</u>, 86 F.3d 277 (2d Cir. 1996), in which a misrepresentation to a bank in a mortgage application created "undisclosed economic risk for the bank").  At a minimum, the extent to which there was a "bargain" and to which Retrophin received the "benefit of the bargain" are questions of fact for the jury to consider in light of the full evidence presented at the upcoming trial.

Finally, in addition to his arguments based on <u>Davis</u>, the defendant also argues that a "right to control theory itself is simply too vague to satisfy due process."  (Mot. to Dismiss at

26).  Not so.  The theory is simply that the defendant and Shkreli conspired to withhold material information from Retrophin's Board, including that the settlement agreements were being used to repay disgruntled investors in Shkreli's previous hedge fund who had no connection to Retrophin, in order to use Retrophin's assets to pay those debts.  The defendant's only real suggestion of ambiguity is that there was an "absence of any clear duty to disclose" information to the Board of Directors.  (Mot. to Dismiss at 26).  As discussed above, if the defendant wishes to cite authority for the proposition that an attorney for a company has no duty to disclose material information to his client, he should do so.[11]

IV.    THERE IS NO LEGAL BASIS TO STRIKE OR PRECLUDE ARGUMENT ABOUT
       THE PORTION OF THE CONSPIRACY CHARGED IN COUNT SEVEN THAT
       RELATES TO CONSULTING AGREEMENTS BASED ON A "RIGHT TO
       CONTROL" THEORY

        The defendant argues that the government's "theory" that the defendant and Shkreli "conspired to deny Retrophin the right to control its assets by depriving it of information necessary to make discretionary economic decisions through the consulting agreements" fails as a matter of law.  (Mot. to Dismiss at 27).  This argument should be rejected.

        First, the defendant's attempt to redefine the charge in the Superseding Indictment based on its misperception of the government's "theory" of fraud in the Shkreli trial should be rejected for the same reasons given above with respect to the settlement agreements.  The charge in the Superseding Indictment is clear, does not depend on a "right to control" theory, and is unaltered by the course of the Shkreli trial.

_____

        [11] The defendant may argue that he did not believe the information he withheld was significant, or that he believed he was acting in the best interests of his client.  He is free to do so.  But his ability to try to offer such <u>evidence</u> does not negate the existence of the legal duty.

Second, there is no basis for precluding a "right to control" theory of the fraud related to the consulting agreements. As an initial matter, as with the settlement agreements, Retrophin did not receive the "benefit of the bargain" for the consulting agreements because it never bargained for them at all. See supra Section III.

Moreover, the defendant incorrectly assumes that Retrophin received the "benefit of the bargain," assuming a "bargain" could be said to exist. The defendant's argument assumes that the consulting agreements "operated essentially as options agreements," and Retrophin therefore received the "benefit of the bargain" because it obtained the option to use the consultants. (Mot. to Dismiss at 27). Whether these sham consulting agreements "operated essentially as options agreements" and provided any benefit to Retrophin are not questions of law; they are questions of fact for the jury. The defendant also argues that it is "inappropriate for the government to contend that Mr. Shkreli agreed to pay the consultants 'too much' for their services" because the "government should not substitute its judgment on the value conveyed pursuant to the consulting agreement." (Id. at 28). But the jury, not the government. will decide whether Retrophin received value in exchange for the assets it gave up, as orchestrated by Shkreli and the defendant.

And, by failing to disclose the true purpose of these agreements, the defendant and Shkreli inflicted additional harms on Retrophin, including by exposing the company to liability (and economic harm) arising out of potential breaches of a consulting agreement the company did not want and by deceiving others at the company into believing that consultants were available when they were not.

In sum, the defendant is free to argue and to offer admissible evidence to the effect that Retrophin received the "benefit of the bargain" related to the sham consulting agreements.

But that argument is not a basis for dismissing Count Seven or precluding argument and evidence about the issue.

## V.    COUNT SEVEN SHOULD NOT BE DISMISSED ON THE GROUNDS OF "MULTIPLE CONSPIRACIES"

The defendant finally contends Count Seven should be dismissed because the "very language of the [Superseding] Indictment" improperly alleges two conspiracies with two separate "common goals" in the same count.  (Mot. to Dismiss at 29).   That argument is meritless for three reasons.

First, this argument is untimely.  The deadline for filing a motion to dismiss the Superseding Indictment was in March 2017.  See Amended Pretrial Scheduling Order, Jan. 13, 2017, Dkt. No. 147; see also Scheduling Order, Mar. 15, 2017.  In fact, the defendant filed such a motion in a timely manner regarding Count Eight, not Count Seven.  See Dkt. No. 177.   The defendant has not explained his failure to move to dismiss Count Seven based on the "very language" of the Superseding Indictment, an argument he plainly could have made six months ago.

Second, Count Seven alleges a single conspiracy.  Specifically, Count Seven alleges that the defendant, Shkreli, and others "knowingly and intentionally conspire[d] to devise a scheme and artifice to defraud Retrophin, and to obtain money and property from Retrophin by means of materially false and fraudulent pretenses, representations and promises."  (Superseding Indictment ¶ 56).  There is nothing improper about this charging text, which the defendant does not even quote or cite.  Other parts of the speaking Superseding Indictment describe various actions the defendant took related to this charged scheme.  (See Superseding Indictment ¶ 21 ("that defendant, Shkreli, and others "engaged in a scheme to defraud Retrophin by

misappropriating Retrophin's assets . . . to satisfy SHKRELI's personal and unrelated professional debts and obligations"); <u>see</u> <u>id.</u> ¶¶ 21-35 (describing parts of the scheme)).

The defendant quibbles that one paragraph of the speaking indictment refers to an effort to deceive the SEC (Mot. to Dismiss at 29), but that argument ignores not just the text of the actual charging paragraph but also the context of that paragraph related to the SEC, which shows that even the effort to deceive the SEC involved deliberately misappropriating Retrophin assets.  In other words, the best the defendant can argue is that the Superseding Indictment taken as a whole describes a properly charged conspiracy to defraud Retrophin through several different kinds of actions.  <u>See</u> <u>United States v. Geibel</u>, 369 F.3d 682, 689 (2d Cir. 2004) ("a single conspiracy is not transformed into multiple conspiracies merely by virtue of the fact that it may involve two or more phases or spheres of operation, so long as there is sufficient proof of mutual dependence and assistance").

<u>Third</u>, even if Count Seven of the Superseding Indictment somehow could be read to allege a conspiracy with multiple objectives, the remedy is not dismissal of the count.  Instead, where a charged conspiracy has multiple objectives, the government need "only to prove agreement on one of the objectives charged in the indictment in order to establish that a conspiracy existed."  <u>United States v. Berger</u>, 224 F.3d 107, 113 (2d Cir. 2000); <u>see</u> <u>United States v. Papadakis</u>, 510 F.2d 287, 297 (2d Cir. 1975).  Moreover, any confusion or potential prejudice about multiple conspiracies may be cured through an appropriate jury instruction.  <u>See</u> <u>Berger</u>, 224 F.3d at 114.

<u>CONCLUSION</u>

For the foregoing reasons, the government respectfully submits that the defendant's

motion to dismiss Count Seven should be denied.

Dated:  Brooklyn, New York
         August 25, 2017

Respectfully submitted,

BRIDGET M. ROHDE
Acting United States Attorney
Eastern District of New York

By:      /s/
         Alixandra E. Smith
         David C. Pitluck
         David K. Kessler
         Assistant U.S. Attorneys
         (718) 254-7000

cc:    Clerk of the Court (KAM)
       Defense Counsel (By ECF and Email)

27