UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>-against-<br><br>EVAN GREEBEL,<br><br>                    *Defendant.* | ECF Case<br><br>No. 15-cr-00637 (KAM)<br><br><u>ORAL ARGUMENT REQUESTED</u> |

**MR. GREEBEL'S REPLY IN SUPPORT OF HIS MOTION
FOR A WRITTEN JURY QUESTIONNAIRE**

Tellingly, in its opposition to our motion for a written questionnaire for use with the pool of prospective jurors, the government barely seems to object.

In its three-page opposition, the government cites only one case, *United States v. Quinones*, which was a case we cited in our initial motion, for the indisputable proposition that the use of a written questionnaire in the *voir dire* process is "within the district court's broad discretion." Gov't Opp'n Pretrial Mot., Dkt. No. 344, at 4 (citing *Quinones*, 511 F.3d 289, 299 (2d Cir. 2007)). We agree entirely.

The government also notes that "the caselaw cited by the defendant does not *mandate* the use of a written questionnaire in this case." *Id.* (emphasis added). Once again, we agree. We never claimed the caselaw *mandated* such a process. Rather, we respectfully requested that the Court adopt this process since (a) we believe it will be highly efficient and will save a significant amount of the Court's time and (b) it will help minimize or eliminate the resulting possibility of bias or prejudice due to the intense media coverage surrounding this case, for all the reasons set forth in our initial motion.

The latter point is of particular significance in this case because, as we discussed in our motion for a written questionnaire, "part of the guarantee of a defendant's [Sixth Amendment] right to an impartial jury is an adequate *voir dire* to identify unqualified jurors." *Morgan v. Illinois,* 504 U.S. 719, 729 (1992). Where there has been extensive pretrial publicity, as here, the use of a written questionnaire is a particularly effective way to guarantee the defendant's constitutional right. *See United States v. Skilling*, 561 U.S. 358, 391 (2010) (use of a jury questionnaire and follow-up *voir dire* effectively overcame a presumption of juror prejudice based on pretrial publicity or the widespread community impact of the company's bankruptcy).

1

Mr. Shkreli's notoriety, as we noted in connection with our Motion for Severance, is exactly the type of pervasive and prejudicial publicity that can cause bias. *See, e.g., United States v. Stewart*, 433 F.3d 273, 303-06 (2d Cir. 2006) (approving of use of questionnaire to identify potential bias where there had been extensive pretrial publicity); *Wells v. Murray*, 831 F.2d 468, 472 (4th Cir. 1987) ("[E]xternal events such as pretrial publicity raise a strong possibility of jury bias . . . ."). Even prior to his arrest, Mr. Shkreli has been the subject of numerous newspaper, social media, radio, and television reports criticizing his controversial decision to raise the price of a prescription drug used to treat a rare disease by 5,000 percent. *See* Greebel Mem. of Law in Supp. of His Mot. for Severance, Dkt. No. 163, at 35-38 & n.6 (Feb. 17, 2017). Additionally, Mr. Shkreli engaged in extreme, relentless, and hostile attacks on public figures, journalists, women and the prosecutors in this case online following his arrest. *Id.* Moreover, after the substantial recent press coverage of the Shkreli trial, even more people will likely know about Shkreli now. Similarly, more people who would not otherwise be familiar with Mr. Greebel will have heard of him too, in light of articles highlighting e-mails between Mr. Shkreli and Mr. Greebel. The extensive and potentially prejudicial publicity of Mr. Shkreli and his trial militates for the use of a jury questionnaire in this case.

At the same time that it objects to the use of a jury questionnaire, the government faults us for not submitting a proposed questionnaire. As we explained previously, we did not do so (a) because we did not want to be presumptuous; but (b) if the Court would like us to do so, we would be more than happy to oblige. We did not, however, want to waste the Court's time if the Court was not inclined to consider this process at all.[1]

---

[1] If the Court grants our motion for use of a jury questionnaire, we will seek agreement with government counsel in the preparation of a draft questionnaire that can then be submitted to the Court for its review.

The government unconvincingly claims that the use of a jury questionnaire "is not automatically a time-saving measure," adding that "[a]t the very least, prospective jurors are required to come in to fill out the questionnaire on a date prior to the dates of jury selection." Gov't Opp'n Pretrial Mot., Dkt. No. 344, at 3. While it is true that prospective jurors would have to come in one day for a couple of hours to fill out the questionnaire, the government overlooks that the jury questionnaire process would save both the Court and the jurors considerable time.

As the government is aware, jury selection in the Shkreli trial lasted nearly three full trial days. Instead of having to spend days of the Court's time ferreting out the scores of jurors who say they cannot be fair, the parties will likely be able to reach agreement on excusing many jurors for cause based on their questionnaire answers – a point the government itself acknowledges. *Id*. Moreover, instead of having to come to court for several days during jury selection, many prospective jurors will presumably be informed by the Court or courthouse staff that they need not show up for the next phase of jury selection if the parties or the Court agree that these prospective jurors should be struck.

Thus, we submit that our proposed process will be a highly efficient approach that will save the Court, the parties, and potential jurors considerable time.

Finally, the government argues that since no questionnaire was used at the Shkreli trial, the same approach should be followed here. In contrast, though, we believe that what we are proposing to the Court is an efficient, logical process that would save time for the Court, the parties, and the potential jurors, and would adequately protect the rights of the parties to a fair and impartial jury. Accordingly, we respectfully request that the Court grant our motion for the use of a written jury questionnaire for this case.

Dated: New York, New York
August 30, 2017

                                                */s/ Reed Brodsky*
Reed Brodsky
Winston Y. Chan
Randy M. Mastro
Lisa H. Rubin

GIBSON, DUNN & CRUTCHER LLP
200 Park Avenue
New York, NY 10166
(212) 351-4000
rbrodsky@gibsondunn.com
*Counsel for Defendant Evan Greebel*