UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>-against-<br><br>EVAN GREEBEL,<br>      *Defendant.* | ECF Case<br><br>No. 15-cr-00637 (KAM)<br><br><u>ORAL ARGUMENT REQUESTED</u> |

**MR. GREEBEL'S REPLY MEMORANDUM OF LAW REGARDING
IRRELEVANT, MISLEADING, AND UNFAIRLY PREJUDICIAL EVIDENCE**

We respectfully submit this reply to the government's response to our motion *in limine* to preclude irrelevant, misleading, and unfairly prejudicial evidence relating to (a) Mr. Shkreli's threats to Pierotti, (b) KaloBios and Daraprim, (c) Mr. Greebel's compensation at Katten Muchin Rosenman LLP ("Katten Muchin"), and (d) Katten Muchin's legal bills to Retrophin.

A.  **Evidence and Testimony Related to Mr. Shkreli's Threats to and Harassment of Tim Pierotti's Family is Irrelevant, Inflammatory, and Unduly Prejudicial**

Remarkably, the government continues to insist that it is "relevant" and not unduly prejudicial to elicit the grotesque and disturbing threat by Mr. Shkreli—and solely Mr. Shkreli—to Mr. Pierotti that Mr. Shkreli would "go to any length necessary" including hoping "to see you and your four children homeless and will do whatever I can to assure this." Gov't Opp'n MIL, Dkt. No. 346, at 57-58. The government is unable to demonstrate the relevance of this inflammatory threat by Mr. Shkreli to Mr. Greebel; and the government is unable to argue with a straight face that the probative value is not substantially outweighed by the danger of unfair prejudice. In a case in which the government's evidence is incredibly weak, this Court should not allow the government to paint Mr. Greebel with Mr. Shkreli's highly charged and unconscionable conduct.

First, the government concedes, in effect, that there is no evidence that Mr. Greebel had knowledge of Mr. Shkreli's threats to Mr. Pierotti's wife and children. *Id.* at 60. If the government had any evidence of such knowledge by Mr. Greebel, the government would certainly have disclosed it to the Court in an effort to try to demonstrate relevance under Rule 401 and to overcome the unfair prejudice problem under Rule 403. The government's statement that "[w]e have only defendant's unsworn word that he did not know 'in advance' about the threats," *id.*, turns the government's burden to prove that Mr. Greebel is guilty of the charged

2

offenses beyond a reasonable doubt on its head.  The government should be careful about making arguments that attempt to shift the burden to a defendant to prove his or her innocence.

Second, the government hinges its argument of relevance under Rule 401 on Mr. Greebel's after-the-fact knowledge of Mr. Pierotti's allegations that Mr. Shkreli threatened his wife and children.  *Id*.  The government argues that after-the-fact knowledge by outside counsel shows that "he appeared to 'condone[ ]' that harassment by failing to criticize Shkreli or otherwise address his conduct."  *Id*.  The government's argument is frivolous.  The government speculates that Mr. Greebel failed to criticize Mr. Shkreli or otherwise address Mr. Shkreli's conduct.  Moreover, even assuming *arguendo* that Mr. Greebel did not "criticize Shkreli or otherwise address his conduct"—whatever that vague language means—the government is apparently resorting to a morality charge that the failure of outside counsel to criticize the chief executive officer of a client for his or her behavior means that outside counsel condones such conduct.  Such argument is baseless in legal ethics and law, and quite dangerous to the legal profession.  Other attorneys at Katten Muchin obviously learned about Mr. Pierotti's allegations of threats by Mr. Shkreli to Mr. Pierotti's wife and children, and the government is now suggesting that such counsel also condoned Mr. Shkreli's grotesque conduct if they failed to criticize or otherwise address that conduct.  The government cites no case law, statute, rule, or regulation in support of its argument, and there is none.  The government's argument in favor of relevance fails.

Third, the government argues that the grotesque evidence of Mr. Shkreli's written threat to Mr. Pierotti to make his family homeless "will corroborate Pierotti's testimony, including that Shkreli did in fact freeze his brokerage account."  *Id*. at 61.  But the government mixes apples and oranges.  It is unnecessary and unduly prejudicial to introduce Mr. Shkreli's threats to make

3

Mr. Pierotti's wife and four children "homeless" for the purpose of corroborating his testimony. The government cites no cases in support of this position, and we are not aware of any that do.

Fourth, the government seems to abandon its prior argument that the evidence and testimony of Mr. Shkreli's harassment of and threats to Mr. Pierotti are admissible under Rule 404(b). Gov't Opp'n MTD, Dkt. No. 345, at 6-7. Since the government does not expressly state that it is withdrawing this argument—which is should as a matter of law—we submit that the government's reliance on *United States v. Aboumousallem*, 726 F.2d 906 (2d Cir. 1984), Gov'tOpp'n, MIL, Dkt. No. 346, at 9-10, further demonstrates that its 404(b) argument is meritless. In *Aboumousallem*, the Second Circuit held the district court incorrectly adopted the government's position that, "since the Government could not have offered [404(b)] evidence" of a third-party at the trial of the defendant, the defendant could not offer 404(b) evidence of a third-party even if relevant to a defense. 926 F.2d at 911-12  The Court explained that "the standard of admissibility when a criminal defendant offers similar acts evidence as a shield need not be as restrictive as when a prosecutor uses such evidence as a sword." *Id*. at 911.

Finally, the government argues nonsensically that Mr. Shkreli's highly charged threat to make Ms. Pierotti and her four children "homeless" is "financial in nature" and thus "commensurate with the crimes charged and the other conduct discussed". Gov't Opp'n MIL, Dkt. No. 346, at 61. The government cannot possibly believe that Mr. Shkreli's threat to make someone's spouse and their children homeless is purely "financial in nature" and on a par with an alleged conspiracy to control the price of Retrophin stock. The government should be reminded that introducing this type of unconscionable conduct by Mr. Shkreli has a substantial risk of convicting an innocent person—regardless of the evidence—because of the jury's emotional reaction to threatening the lives and safety of a spouse and children.  No limiting

4

instruction will cure this prejudice and, indeed, will only shine a bright light and draw further attention to the threat.

**B.        Evidence of Mr. Shkreli's Conduct Relating to KaloBios, Daraprim, and Controversial Public Statements Should be Inadmissible**

We appreciate the government's agreement that it will not introduce any evidence relating to KaloBios and Daraprim, and that it will provide notice should it seek to introduce any "controversial statements" made by Mr. Shkreli following Mr. Shkreli's departure from Retrophin in its case-in-chief. Gov't Opp'n MIL, Dkt. No. 346, at 62. We respectfully submit that the government should also provide notice of how it believes KaloBios, Daraprim, or any of Mr. Shkreli's controversial statements made after departure of Retrophin would be admissible for cross-examination of Mr. Greebel. Moreover, we respectfully ask the Court to require the government to provide it with notice of potential cross-examination of Mr. Greebel relating to these topics before attempting to ask questions should Mr. Greebel decide to testify.

**C.        Evidence of Mr. Greebel's Compensation and Katten Muchin's Legal Bills Are Irrelevant and Unfairly Prejudicial**

This Court should not permit the government to introduce speculative evidence and testimony of motive to help Mr. Shkreli commit the charged offenses based on Mr. Greebel's compensation at Katten Muchin Rosenman LLP, and the amount of money that the law firm billed to MSMB or Retrophin. It is not relevant to the charged offenses, and the risk of unfair prejudice from such compensation and billings substantially outweigh any probative value.

First, the government does not contest that a party's wealth is generally inadmissible. *See United States v. Stahl*, 616 F.3d 30, 31-32 (2d Cir. 1980) (reversing conviction); *L-3 Communications Corp. v. OSI Sys. Inc.*, No. 02 Civ. 9144 (PAC), 2006 WL 988143, at *6 (S.D.N.Y. Apr. 13, 2006) (granting motion *in limine* to preclude wealth evidence).

5

Second, the government does not contest that it has the burden of demonstrating to this Court's satisfaction that evidence of compensation and billings to MSMB and Retrophin is actually, in fact, proof of Mr. Greebel's motive. Here, the government cannot do that. The government does not allege, nor could it, that Mr. Greebel's compensation was directly correlated with his work on Retrophin. The government claims that there is "no question that Greebel's compensation was tied at least in part to the amount of hours he billed, as well as to the hours those working on his matters billed" but the government offers zero evidence to support that claim. Indeed, the government does not submit that it has any testimony or documents showing this correlation, and such direct correlation is necessary before introducing the highly charged evidence of wealth.

*United States v. Ferguson*, No. 3:06 CR 137 (CFD), 2007 WL 4240782 (D. Conn. Nov. 30, 2007), is directly on point. There, the district court excluded any evidence of the defendant's "salary and bonuses at American International Group, Inc. ('AIG')" because the government did not show that the defendant's salary and bonuses were "affected by AIG's stock price". *Id.* at *1. And, in the absence of proof that the defendant's salary and bonuses were "affected by AIG's stock price", that information about the defendant's wealth was "not probative of any financial incentive [the defendant] may have had to participate" in the alleged fraud scheme. *Id*.

Here, the government does not have any probative evidence that Mr. Greebel's salary and bonuses were affected by the amount of hours and/or the amount of billings to MSMB and/or Retrophin. Salary and bonuses at Katten Muchin during the relevant years were not based on some formula from which the jury could fairly draw an inference that Mr. Greebel's salary and bonuses were affected by his work for MSMB and/or Retrophin. Mr. Greebel had other clients; Mr. Greebel had other work; and we know that Mr. Greebel's compensation decreased—not

increased—during the period when the government suggests that Mr. Greebel would have been increasingly incentivized to assist Mr. Shkreli based on increasing number of hours and the higher amount of billings to Retrophin.  Applying the same principle as in *Ferguson*, this Court should hold that the government has failed to meet its burden of demonstrating that Mr. Greebel's salary and bonuses were affected by work for Retrophin and, therefore, such information is not probative of any financial incentive for Mr. Greebel to participate in any fraudulent scheme.

The government's reliance on alleged statements by Mr. Greebel in compensation memoranda asking for higher compensation and bonuses based on hours worked overall and billings generated by clients does not help the government.  The government still cannot tie the actual compensation and bonuses to hours and billings on MSMB and Retrophin matters.  It is not enough for the government to argue inference upon inference upon inference upon inference to show that Mr. Greebel had a financial incentive to assist Mr. Shkreli in committing the charged offenses.  It is not enough for the government to throw out numbers and then argue in a sweeping, generalized fashion that, of course, Mr. Greebel had a financial incentive to commit the charged crimes.  And yet that is just what the government is asking this Court to sanction.  For example, the government intends to argue that Mr. Greebel worked a significant number of hours for Retrophin (while also working a significant number of hours for other clients), that Mr. Greebel sought a higher salary and bonus (which was not tied directly to MSMB or Retrophin), and thus Mr. Greebel had a unique financial incentive to abandon everything to assist the chief executive officer of a client to commit charged crimes.  The government's inferences require multiple leaps in logic and speculation.  More is required to introduce highly inflammatory

evidence of wealth which creates a real and substantial risk that a jury might make a decision based on emotion rather than the actual evidence at trial.

We recognize the reality that Mr. Greebel is already facing an uphill battle overcoming a general societal prejudice against lawyers, and a general view that lawyers are greedy and overpaid.  Introducing compensation in the amount of hundreds of thousands of dollars, and introducing billings in the amount of millions of dollars, runs a substantial and unfair prejudicial risk of inflaming the jury—particularly when the government has not met its burden of demonstrating the actual compensation and bonuses paid to Mr. Greebel were directly correlated with work for MSMB and Retrophin.  If the government cannot demonstrate that Mr. Greebel's compensation and bonus for the calendar year of 2013 (or any other calendar year) was tied to work and billings for Retrophin, then the government should not be able to introduce that evidence.  The government obviously has no evidence—as it has proffered none, and we are confident that none exists—that Mr. Greebel told others that he was motivated to assist Mr. Shkreli in committing crimes for purposes of making money.

The government's argument that the risks of unfair prejudice are "illusory", Gov't Opp'n MIL, Dkt. No. 346, at 65, ignores reality and disregards findings by jurists time and time again that wealth evidence has a substantial risk of interfering with a jury's focus on the evidence.  Indeed, it disregards the Second Circuit's statements in *United States v. Quattrone*, upon which the government relies, Gov't Opp'n MIL, Dkt. No. 346, at 63, that "evidence of compensation, wealth, or lack thereof can unduly prejudice jury deliberations."  441 F.3d 153, 187 (2d Cir. 2006).  Limiting instructions will not cure the problem and, in fact, threaten to draw a spotlight on the compensation and amounts.  The government argues that such amounts will not "stand out" compared to million-dollar investments and Retrophin, Gov't Opp'n MIL, Dkt. No. 346, at

8

66, but that disregards that any information about the wealth of the accused always stands out at a trial, *see Stahl*, 616 F.2d at 32-33.

The government is already intending to introduce evidence through email communications of Mr. Greebel requesting payment from Mr. Shkreli in the amount of significant amounts of money for outstanding invoices. Accordingly, assuming the government is able to introduce such evidence pursuant to the rules of evidence, the government will already have a basis—although not a fair one, in our view—to argue that Mr. Greebel was incentivized financially to assist Mr. Shkreli in committing the charged offenses.

Finally, should this Court admit evidence of the bills by Katten Muchin to MSMB and Retrophin, this will inevitably force us to explain each invoice, all the amounts reflected therein and the legal work produced by over 80 different attorneys and time-keepers at Katten Muchin over a five-year period. Evidence of millions of dollars in billings will create the false and misleading impression that the law firm did not do real legal work for MSMB and Retrophin, and thus will require us to explain all the various matters, the work done on such matters, and offer evidence about each. This exercise—which we will feel compelled to carry out—will only serve to distract the jury from the actual evidence—or lack thereof as we will demonstrate—in the case. Accordingly, we respectfully submit that the government should not be able to introduce invoices of millions of dollars reflecting work entirely unrelated to the charges at hand, and by attorneys who had nothing to do with any of the charges at hand, simply because the government will argue that higher billings increased Mr. Greebel's financial incentives to assist Mr. Shkreli in committing a crime. This is particularly true where, as here, the government cannot draw any correlation between higher billings to MSMB/Retrophin to any higher compensation and/or bonus to Mr. Greebel.

9

Dated: New York, New York

August 30, 2017

>
> /s/ Reed Brodsky
> Reed Brodsky
> Winston Y. Chan
> Randy M. Mastro
> Lisa H. Rubin
>
> GIBSON, DUNN & CRUTCHER LLP
> 200 Park Avenue
> New York, NY 10166
> (212) 351-4000
> rbrodsky@gibsondunn.com
> *Counsel for Defendant Evan Greebel*