UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

---

UNITED STATES OF AMERICA

   -against-

EVAN GREEBEL,

              *Defendant.*

ECF Case

No. 15-cr-00637 (KAM)

<u>ORAL ARGUMENT REQUESTED</u>

---

# MR. GREEBEL'S REPLY IN SUPPORT OF HIS MOTION TO PRECLUDE THE GOVERNMENT'S USE OF EVIDENCE OBTAINED FROM GRAND JURY SUBPOENAS ISSUED AFTER THE SUPERSEDING INDICTMENT, AND TO PRODUCE CERTAIN GRAND JURY SUBPOENAS

We respectfully submit this Reply in support of our motion to preclude the government from using any evidence obtained from grand jury subpoenas issued after the Superseding Indictment (S1 15 Cr. 637 (KAM)) in this case on or about June 3, 2016, and for production of copies of certain grand jury subpoenas.

The question of whether the government issued post-Superseding Indictment grand jury subpoenas is not hypothetical or academic. In this case, the government does not deny that it issued a grand jury subpoena to Retrophin dated January 30, 2017 for records relating to the Rosenfeld arbitration materials ("the 1/30/17 subpoena"). The Court ordered the government to produce this subpoena to the defendants.

As former federal prosecutors, we are well aware that, as the government says in its Opposition quoting the Second Circuit, a grand jury's "[p]ost-indictment action is permitted to identify or investigate other individuals involved in criminal schemes or to prepare superseding indictments against persons already charged." Gov't Opp'n Pretrial Mot., Dkt. No. 344, at 6 (quoting *United States v. Jones*, 129 F.3d 718, 723 (2d Cir. 1997)). But the Second Circuit has been equally clear that "*[i]t is, of course, improper for the Government to use the grand jury for the sole or dominant purpose of preparing for trial under a pending indictment.*" *Jones*, 129 F.3d at 723 (quoting *United States v. Leung*, 40 F.3d 577, 581 (2d Cir. 1994)) (emphasis added).[1]

Thus, the questions now presented to the Court are (1) whether the 1/30/17 subpoena issued by the grand jury at the government's request was "for the sole or dominant purpose of

---

[1] In its Opposition, the government cites to *United States v. Bin Laden* for this same proposition, but inadvertently notes that *Bin Laden* was a Second Circuit case, Gov't Opp'n Pretrial Mot., Dkt. No. 344, at 6, when in fact it was a decision by Judge Sand in the Southern District of New York. *See United States v. Bin Laden*, 116 F. Supp. 2d 489, 492 (S.D.N.Y. 2000).

1

preparing for trial"; and (2) whether the government used the grand jury to issue other post-Superseding Indictment subpoenas and what the purpose of those subpoenas were.

The procedural history of this case raises legitimate questions about the sole or dominant purpose of the 1/30/17 subpoena.  <u>First</u>, the grand jury returned the original Indictment in this case on December 14, 2015, *i.e.*, more than one year and eight months ago.  <u>Second</u>, on or about May 3, 2016, the government stated that it "would not be adding new defendants to this indictment" and that, "to the extent there's a superseding indictment," the government would make the decision in "less than a month." May 3, 2016 Hearing Tr. 11:21–12:14.  On or about June 3, 2016, the grand jury returned a superseding indictment charging Mr. Shkreli and Mr. Greebel with one additional count, conspiracy to commit securities fraud in Count Eight.  <u>Third</u>, at the government's behest, the grand jury issued the 1/30/17 subpoena to Retrophin – *eight months after* the Superseding Indictment.  <u>Fourth</u>, it has now been almost two years since the initial Indictment, 16 months since the government announced at the May 3, 2016 hearing that it "would not be adding new defendants to this indictment," and 15 months since the June 3, 2016 Superseding Indictment.

The timeline alone makes it abundantly clear that the investigation phase into the core conduct described and alleged in Superseding Indictment S1 15 Cr. 637 (KAM), the case before Your Honor, has to be over.

Does the government really intend to indict anyone else – nearly two years later – related to the conduct at issue in this case?  The government has already publicly named five other people as alleged co-conspirators.  *See* Greebel MTD, Dkt. No. 327, at 12 n.2 (citing Shkreli Trial Transcript).  Is the government really asking this Court to believe that after naming these five individuals publicly at the high-profile Shkreli trial before Your Honor that was covered by

2

media outlets from around the world, that now, almost two years after the initial Indictment, it intends to indict any of these other individuals? Of course not. The very notion is absurd.[2]

And so when the government cavalierly tells this Court in its Opposition that there is still "an ongoing grand jury investigation in the Eastern District of New York," Gov't Opp'n Pretrial Mot., Dkt. No. 344, at 5, based on the facts and the timetable set forth above, the Court has a right to wonder what exactly the government could be investigating related to the facts that lie at the core of the conduct charged in Superseding Indictment S1 15 Cr. 637 (KAM). More to the point, the Court has every right to wonder how exactly the subpoena the grand jury issued – on January 30, 2017, eight months after the Superseding Indictment – to Retrophin for records related to Dr. Rosenfeld's arbitration with Retrophin over the payment of his consulting agreement from Retrophin *could possibly have been issued*, per Second Circuit precedent, in order to "identify or investigate other individuals involved in criminal schemes or to prepare superseding indictments against persons already charged." *Jones*, 129 F.3d at 723 (citing *United States v. Sasso*, 59 F.3d 341, 352 (2d Cir. 1995)). All these facts alone strongly suggest that the "sole or dominant purpose" of the 1/30/17 subpoena to Retrophin was "preparing for trial under a pending indictment."[3] *Jones*, 129 F.3d at 723. Such use of the grand jury is simply not allowed.

And so, while the government cites case law stating that a "presumption of regularity attaches to grand jury proceedings," Gov't Opp'n Pretrial Mot., Dkt. No. 344, at 6 (citing *Leung*, 40 F.3d at 581), the facts and timetable set forth above present "some indicative sequence of

---

[2]  In addition, the standard five-year statute of limitations for most federal crimes might have elapsed by now for some of the alleged conduct.

[3]  *See also* Dkt. No. 339, our initial motion on this issue, at 5, for a more extensive discussion as to why the 1/30/17 subpoena relates solely to preparing for trial in this case.

3

events demonstrating an irregularity" and justifying closer scrutiny by this Court. *See United States v. Bin Laden,* 116 F. Supp. 2d 489, 492 (S.D.N.Y. 2000); *United States v. Raphael*, 786 F. Supp. 355, 358 (S.D.N.Y. 1992). As the Second Circuit has explained:

> The question of a grand jury's dominant purpose is not the typical question of historical fact nor even the typical inquiry as to the state of mind of a witness or a party. *It is the application of a legal standard designed to ensure that the grand jury, a body operating peculiarly under court supervision,* see In re Grand Jury Investigation of Cuisinarts, Inc., *665 F.2d 24, 31 (2d Cir.1981), cert. denied, 460 U.S. 1068, 103 S.Ct. 1520, 75 L.Ed.2d 945 (1983), is not misused by the prosecutor for trial preparation.* In applying that standard, we therefore must give more scrutiny than would be appropriate under the "clearly erroneous" standard.

*In re Grand Jury Subpoena Duces Tecum dated Jan. 2, 1985 (Simels)*, 767 F.2d 26, 29 (2d Cir. 1985) (emphasis added) (holding that the grand jury subpoena should have been quashed upon finding that subpoena's sole or dominant purpose was for preparation for trial on already pending indictment). Similarly, as a sister court in the Eastern District of New York observed, if the government were permitted to use grand jury subpoenas to gather evidence to support a case resulting from an indictment for trial, the grand jury subpoena would become a "prosecutor's tool." *United States v. Eisen*, No. CR-90-00018, 1990 WL 164681, at *11 (E.D.N.Y. Oct. 19, 1990), *aff'd*, 974 F.2d 246 (2d Cir. 1992). "The grand jury's function of considering whether citizens should not be accused of a crime should not become a fictional ruse to cloak its use by the prosecution to convict the defendant on accusations already made." *Id.* If the government wants to issue subpoenas with pretrial return dates to obtain evidence against a defendant, the government must abide by Rule 17(c)(1) and seek prior court approval. *United States v. Binh Tang Vo*, 78 F. Supp. 3d 171, 178 (D.D.C. 2015).

      Moreover, the government opposes our request for access to the subpoenas by retreating to the general notion that grand jury proceedings should remain secret. Gov't Opp'n Pretrial

4

Mot., Dkt. No. 344, at 9–10. Such reliance is misplaced. Once the investigative process is over, concerns about grand jury secrecy are ameliorated. After all, Federal Rule of Criminal Procedure 6(e)(6), entitled "Sealed Records," states "Records, orders, and *subpoenas* relating to grand-jury proceedings must be kept under seal *to the extent and as long as necessary to prevent the unauthorized disclosure of a matter occurring before a grand jury*." Fed. R. Crim. P. 6(e)(6) (emphasis added); *see also In re Grand Jury Subpoena*, 103 F.3d 234, 236–37 (2d Cir. 1996) (quoting Fed. R. Crim. P. 6(e)(6)). Underscoring this point, the Second Circuit pointed out in one case that in order to defend against a motion to quash a subpoena, "the government must reveal information about its conduct which should be kept secret from the public *until conclusion of the investigative process*." *In re Grand Jury Subpoena*, 103 F.3d at 238 (emphasis added). In short, there has already been a public and widely publicized trial on the matters in this case, the witnesses involved (many of whom testified publicly), and the alleged victims involved. Thus, any of the policy concerns undergirding the understandable principle of grand jury secrecy *during* the investigative process are greatly diminished at this juncture.

Moreover, grand jury subpoenas are not confidential. *See* Mem. of Decision & Order at 4, *United States v. Gigliotti*, No. 15-cr-00204 (RJD) (E.D.N.Y. Dec. 23, 2015), Dkt. No. 114, at 4 (admonishing the government that "it was improper . . . to include [] Non-Disclosure Language in grand jury subpoenas issued to witnesses"). Indeed, in discovery in this case, the government produced a pre-indictment grand jury subpoena that had been issued to NAV Consulting, Inc. *See* Jan. 16, 2015 NAV Consulting Grand Jury Subpoena.

One other point warrants mention. As noted above, at the May 3, 2016 hearing in this case, the government represented to Your Honor that it "would not be adding new defendants to this indictment" and that, "to the extent there's a superseding indictment," the government would

5

make the decision in "less than a month." May 3, 2016 Hearing Tr. 11:21–12:14. And yet, as recently as last Friday, August 25, 2017, the government wrote in explaining its continued opposition to providing us with the grand jury subpoenas, "***As the government has repeatedly stated, the investigation in this case is ongoing and is focused on other potential defendants and on other charges against existing defendants.***" Gov't Opp'n Pretrial Mot., Dkt. No. 344, at 7.

The government is now talking out of both sides of its mouth. The government cannot seriously represent to this Court that after a five-week trial against Mr. Shkreli this summer – in which a jury acquitted him on five out of eight counts with which he was charged – that the government is truly contemplating bringing new charges against him? Or that they might bring new charges against Mr. Greebel *after* his October 2017 trial before this Court? **Such a claim by the government is simply preposterous and cannot be taken seriously**.

In our initial motion, we had made two requests: (1) that the government should be precluded from using evidence obtained from grand jury subpoenas issued after the June 3, 2016 Superseding Indictment; and (2) that the government should produce all grand jury subpoenas prior to and after the superseding indictment.

Although we think request (2) is fully warranted, in order to streamline the process, we will agree to limit request (2) to two subcategories of the full set of subpoenas. These are as follows: (2.a.) all grand jury subpoenas that post-date the June 3, 2016 Superseding Indictment for the compelling reasons set forth above; and (2.b.) all subpoenas issued to witnesses the government intends to call at trial (note that the government has already provided the defendants with all the subpoenas to Retrophin).

6

Request (2.b.) is entirely reasonable and is necessary for Mr. Greebel's defense at trial. As a preliminary matter, all subpoenas produced will be subject to the Court's Protective Order. In addition, we are entitled to evaluate what documents the government sought from various parties, and what documents the government did *not* seek from those same parties. We are entitled to evaluate what steps, for example, the government took and did not take in furtherance its investigation; and whether there are documents in possession of certain parties that have not been produced. Critically, we are entitled to cross-examine government witnesses about the extent to which they complied with the grand jury subpoenas. For example, if we have evidence that certain government witnesses did not produce all documents responsive to grand jury subpoenas, and such documents are exculpatory for Mr. Greebel, we are entitled to cross-examine such witnesses regarding their non-compliance with the grand jury subpoenas. The Shkreli trial underscored the importance of this point, since there was cross-examination of government witnesses such as Lee Yaffe and others pertaining to which documents they had provided the government. *See, e.g.*, Shkreli Trial Tr. 4524–30 (cross-examination of Lee Yaffe).

Finally, as discussed above extensively, we respectfully submit that we should be permitted to evaluate the grand jury subpoenas issued by the government following the Superseding Indictment to evaluate the extent to which the government sought and obtained evidence against Mr. Greebel through the grand jury's powers after June 3, 2016 for purposes of obtaining discovery and/or preparing for trial. Courts have a special role in ensuring that "a body operating peculiarly under court supervision is not misused by the prosecutor for trial preparation." *In re Grand Jury Subpoena Duces Tecum dated Jan. 2, 1985 (Simels)*, 767 F.2d 26, 29 (2d Cir. 1985)

Dated: New York, New York

August 30, 2017

          */s/ Reed Brodsky*
          Reed Brodsky
          Winston Y. Chan
          Randy M. Mastro
          Lisa H. Rubin

          GIBSON, DUNN & CRUTCHER LLP
          200 Park Avenue
          New York, NY 10166
          (212) 351-4000
          rbrodsky@gibsondunn.com
          *Counsel for Defendant Evan Greebel*