UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>    -against-<br><br>EVAN GREEBEL,<br><br>                      *Defendant.* | ECF Case<br><br>No. 15-cr-00637 (KAM)<br><br><u>ORAL ARGUMENT REQUESTED</u> |

**MR. GREEBEL'S REPLY MEMORANDUM OF LAW IN SUPPORT OF HIS
MOTION *IN LIMINE* REGARDING ALLEGED CO-CONSPIRATORS**

1

We respectfully submit this reply to the government's opposition to our motion regarding alleged co-conspirators in Counts Seven and Eight. *See* Greebel MIL Regarding Alleged Co-Conspirators (Greebel Co-Conspirator MIL), Dkt. No. 335; Gov't Opp'n MIL, Dkt. No. 346, at 40–47.

I. **The Government Misstates Second Circuit Law, Ignores the Rare Circumstances of this Case, and Disregards the Policy Considerations Emphasized in *United States v. James***

***First***, the government misstates Second Circuit law. The government suggests that there is only one way for courts in the Second Circuit to consider the admissibility of co-conspirator statements; that it is "improper" to ask the government to satisfy the requirements of admissibility *before* introducing such statements to the jury; and that any limitation on its ability to offer such statements subject to connection is "explicitly barred under Second Circuit precedent." Gov't Opp'n MIL, Dkt. No. 346 at 43–45. But the government misunderstands and misrepresents the practice within the Second Circuit. Indeed, if the government was able to point to a Second Circuit case "explicitly barr[ing]" district courts from considering evidence proffered under Federal Rule of Evidence 801(d)(2)(E) before trial, it would have done so. It has not. In fact, not one of the cases cited by the government stands for the proposition that district courts are affirmatively prohibited from conducting a pretrial hearing in accordance with *United States v. James*, 590 F.2d 575, 582 (5th Cir. 1979). That the Second Circuit does not require a "*James* hearing" is quite different from an outright prohibition.

The government also fails to mention the fact that courts in the Second Circuit are, in fact, free to exercise their discretion in determining the admissibility of evidence proffered under Rule 801(d)(2)(E). In *United States v. Saneaux*, 365 F. Supp. 2d 493 (S.D.N.Y. 2005), for example, the court—after acknowledging the Second Circuit precedent under *United States v.*

2

*Geaney*, 417 F.2d 1116 (2d Cir. 1969)—did **_not_** allow the government to offer certain evidence "subject to connection." There, the government sought to introduce recorded conversations of an unindicted co-conspirator under Rule 801(d)(2)(E), but the court directed the government to "elicit and place before the jury all the evidence [the government] will rely upon to satisfy all prerequisites of admissibility, . . . so that [the court] may hear counsel argue the issue and rule upon the admissibility of the recorded [co-conspirator] declarations ***before those declarations are placed before the jury***." *Saneaux*, 365 F. Supp. 2d at 504 (emphasis added). The court explained that, while "[t]his may require the government to alter its preferred order of proof, . . . the justice of the cause requires this procedure. . . . [I]n the circumstances of this case, I am not willing to have the jury hear the [co-conspirator's] declarations early in the government's case and then, if the requisite proof on admissibility is not forthcoming thereafter, having to choose between instructing the jury to forget rather dramatic statements that they heard several days earlier or declare a mistrial, those being the only options conferred upon trial judges by [*United States v. Tracy*, 12 F.3d 1186, 1199 (2d Cir. 1993)]." *Id.* Accordingly, "the government [was] directed not to refer to the recorded [co-conspirator] declarations, directly or indirectly, when making its opening statement to the jury." *Id.*

  The government attempts to read into Second Circuit precedent a new limitation on district court judges—specifically, that district courts are "explicitly barred" from considering the admissibility of co-conspirator statements before trial. But as demonstrated by *Saneaux*, courts in the Second Circuit are fully aware of the policy concerns addressed by *James* and remain free to conduct their trials in a way that guards against unnecessary prejudice, minimizes the risk of mistrial and having to try the case all over again, and thus conserves judicial resources.

3

***Second***, the government ignores the legitimate policy concerns highlighted by several courts across the country and fails to recognize the rare circumstances of this case. As explained in our initial brief, Greebel Co-Conspirator MIL, Dkt. No. 335, at 9, the Fifth Circuit in *United States v. James* held that because of "the [d]anger [to the defendant] of injecting the record with inadmissible hearsay in anticipation of proof of a conspiracy which never materializes", and "because of the inevitable serious waste of time, energy and efficiency when a mistrial is required in order to obviate such danger," "[t]he district court should, whenever reasonably practicable, require the showing of a conspiracy and of the connection of the defendant with it before admitting declarations of a coconspirator." 590 F.2d at 582 (citations omitted). Similar concerns have been recognized by the Seventh, Eighth, Eleventh, and the D.C. Circuits.[1]

The circumstances of this case—where (i) the government's case rests largely on the interpretation of emails and other written documents; (ii) the government has revealed that it will offer a large swath of these documents *not* through testimony of a witnesses with personal knowledge but through an FBI case agent; (iii) there is no risk of an unfair preview of the government's case; and (iv) a pretrial hearing would conserve resources and avoid the burdens associated with mid-trial motion practice—all militate in favor of a pretrial hearing.

---

[1]  *See United States v. Jackson*, 627 F.2d 1198, 1218 (D.C. Cir. 1980) ("[T]he better practice is for the court to determine before the hearsay evidence is admitted that the evidence independent of the hearsay testimony proves the existence of the conspiracy sufficiently to justify admission of the hearsay declarations."); *United States v. Hoover*, 246 F.3d 1054, 1060 (7th Cir. 2001) (recognizing that a pretrial evidentiary hearing is one way to determine whether the alleged co-conspirator statements were admissible); *United States v. Reda*, 765 F.2d 715, 721 (8th Cir. 1985) (stating that the Eighth Circuit has approved the pretrial evidentiary hearing to "avoid the risk of mistrial"); *United States v. Tipton*, 572 F. App'x 743, 747 (11th Cir. 2014) (conducting a pretrial *James* hearing to determine whether the alleged co-conspirator statements qualified for admission pursuant to Rule 801(d)(2)(E)).

4

We saw at Mr. Shkreli's trial the rare circumstances of the government's method of proof. Indeed, facing the risk of damaging cross-examination, the government made a strategic decision *not* to call its previously identified witnesses and to change the nature of charged conduct by eliminating certain consulting agreements from the Jury Instructions and to lower the value of damages in Count Seven. As the government explained, it "made a decision . . . based on the way that the case was going not to call" certain witnesses. Shkreli Trial Tr. 4473:7–8.

Instead, relying largely on the hearsay exception for statements of a co-conspirator, the government introduced more than 200 documents through the testimony of FBI Special Agent Michael Braconi. *See* Shkreli Trial Tr. 4756:7–5024:13. This testimony lasted multiple days and was the subject of significant motion practice. *See* Dkt. Nos. 273, 274, 276, 278. The sheer volume of hearsay statements proffered by the government poses significant risks to Mr. Greebel. Indeed, were the Court to allow more than 200 documents into evidence—many of which will be offered subject to connection—only to later find that the government has failed to meet the requirements of *Bourjaily v. United States*, 483 U.S. 171, 175 (1987), even the strictest of limiting instructions would not "un-ring the bell." As Judge Friendly of the Second Circuit cautioned, where "a large [] proportion of the proof" has been admitted subject to connection and the government fails to satisfy Rule 801(d)(2)(E), a "cautionary instruction [is] of doubtful utility[.]" *Geaney*, 417 F.2d at 1120.

This is also not a case where a pretrial hearing would "afford[] the defen[se] a complete preview of the government's evidence." Gov't Opp'n MIL, Dkt. No. 346, at 45 (quoting *United States v. Ianniello*, 621 F. Supp. 1455, 1478 (S.D.N.Y. 1985)). Rather, the government has already held a public trial and introduced evidence on the very charges at issue in Mr. Greebel's case. Mr. Greebel, on the other hand, faces substantial risk of unfair prejudice since he could be

5

forced to rebut misleading evidence that is ultimately found to be inadmissible. Nor is this a case where a pretrial hearing would "significantly prolong[] the proceedings." *Id.* Quite the opposite. Where, as here, the government will prosecute a case based largely on emails and other documentary evidence, and where it will presumably rely heavily on the co-conspirator exception under Rule 801(d)(2)(E), motion practice is inevitable. Yet the burden on the Court, the parties, and the jury will be far more extensive during trial than if the parties were allowed to brief the issues now (not to mention how much extra court time would be wasted if there were ever a mistrial and there had to be a third trial). A pretrial hearing also provides the Court with the added benefit of understanding the parties' positions without the delay and interruption of sidebars.

Despite the government's assertions to the contrary, if this Court determines that conducting a pretrial hearing is the safest, most efficient way to guarantee a fair trial, avoid inevitable interruption, conserve judicial resources, mitigate the risk of prejudice, and guard against the grave threat of a mistrial, this Court is free to do so. Here, because the circumstances of Mr. Greebel's trial are rare, the prejudice to the government is nil, and the risks associated with following the usual *Geaney* protocol are dire, the Court should not allow the government to introduce hearsay statements from alleged co-conspirators without first determining that the government has carried its burden under *Bourjaily*.

## II. The Government Should Be Precluded From Offering Statements By Certain Individuals Due To The Clear Lack Of Evidence Of Their Role As Co-Conspirators And Should Be Precluded From Suggesting That There Are "Other" Alleged Co-Conspirators In Count Seven

We argued in our initial brief that unless the government can make a sufficient showing under Rule 801(d)(2)(E) and *Bourjaily*, the government should be precluded from suggesting there are "other" co-conspirators in Count Seven and should be precluded from offering out-of-

6

court statements from the alleged six unindicted co-conspirators in Count Eight. Greebel Co-Conspirator MIL, Dkt. No. 335, at 1–8.

Rather than offer evidence demonstrating the involvement of "other" alleged co-conspirators in Count Seven or of the recently named six alleged co-conspirators in Count Eight, the government responds that we "advocate for an approach . . . even more extreme than [our] request for the sort of pre-trial hearing on co-conspirator statements[.]" Gov't Opp'n MIL, Dkt. No. 346, at 45. To the contrary, we merely share Your Honor's confusion as to the identity of alleged co-conspirators in Counts Seven and Eight. Shkreli Trial Tr. 4515:4–8 (The Court: "I would like you to point me to evidence that shows that they are co-conspirators. I mean, honestly, it was not really clear to me going into this trial, other than those that you specifically mentioned, who your co-conspirators were[.]"). Accordingly, we respectfully ask the Court either to hold the government to its theory of the case or to preclude the government from referring throughout trial to numerous, unnamed, unfounded co-conspirators.

As we explained in our initial brief, the government cannot, in good faith, suggest that it will offer more expansive evidence of the "other" co-conspirators in Count Seven against Mr. Greebel than it did against Mr. Shkreli. Greebel Co-Conspirator MIL, Dkt. No. 335, at 3. The government's assertion that it will "offer evidence at the trial of [Mr. Greebel] that was not introduced at Shkreli's trial" misses the point. Gov't Opp'n MIL, Dkt. No. 346, at 46. While certain details of Mr. Greebel's case will inevitably differ from that of Mr. Shkreli, the members of the alleged conspiracy alleged in Count Seven remain the same. And although the government is of course free to offer new or different evidence relating specifically to Mr. Greebel or his role in the alleged conduct, any evidence of "other" co-conspirators in Count Seven surely would have been offered against Mr. Shkreli, especially where (i) evidence of

7

"other" co-conspirators was extremely thin, Shkreli Trial Tr. 4488:12–21 (Your Honor inquiring as to the alleged co-conspirators), and (ii) the government ultimately failed to meet its burden of proof on that Count, *see* Jury Verdict, Dkt. No. 305 (the jury finding Mr. Shkreli not guilty on Count Seven). Against this backdrop, it is reasonable to assume the government would have done everything in its control to expand (rather than diminish) Mr. Shkreli's liability. Thus, because we have seen the government's evidence with respect to "other" co-conspirators in Count Seven, and because that evidence is insufficient to satisfy Rule 801(d)(2)(E), the government should be precluded and estopped from suggesting to the jury that anyone other than Mr. Shkreli and Mr. Greebel was involved in the conspiracy alleged in Count Seven.

The same is true with respect to Count Eight. Indeed, the government's conclusory statements at Mr. Shkreli's trial that certain emails constitute "direct evidence" of alleged co-conspirators' involvement in Count Eight is a far cry from the proof required to satisfy *Bourjaily*. The government has not shown, nor has the Court found, that the six unindicted alleged co-conspirators possessed a "unity of interests" and "a specific shared criminal task" with Mr. Shkreli and Mr. Greebel. *United States v. Gigante*, 166 F.3d 75, 83 (2d Cir. 1999). Rather than offer proof that the six alleged co-conspirators did, in fact, actively and knowingly join and participate in the conspiracy alleged in Count Eight, the government reiterates its initial argument that our request is "premature pursuant to *Geaney*." Gov't Opp'n MIL, Dkt. No. 346, at 46 n.23.

But the government's invocation of *Geaney* dodges the fundamental issue. At Mr. Shkreli's trial, the government attempted to admit certain emails under Rule 801(d)(2)(E) on the grounds that the emails themselves were "very clear evidence" of the conspiracy alleged in Count Eight. Shkreli Trial Tr. 4745:17. These circular, conclusory assertions do not constitute

8

"independent corroborating proof," *United States v. Tellier*, 83 F.3d 578, 580–81 (2d Cir. 1996), that the alleged co-conspirators knowingly joined a conspiracy to achieve a "specific criminal purpose," *Gigante*, 166 F.3d at 83.

The government to date has failed to make a sufficient showing regarding the involvement of "other" alleged co-conspirators in Count Seven or the six unindicted alleged co-conspirators in Count Eight.  For the reasons explained above, allowing the government to broaden the scope of the alleged conspiracies, without first satisfying the requirements of Rule 801(d)(2)(E), poses dire risks.  Accordingly, in the absence of a sufficient showing under *Bourjaily* and its progeny, the government should be precluded from (i) implying or suggesting the involvement of "other" co-conspirators in Count Seven and (ii) offering out-of-court statements of the alleged co-conspirators in Count Eight.

Dated:   New York, New York
         August 30, 2017

*/s/* Reed Brodsky
Reed Brodsky
Winston Y. Chan
Randy M. Mastro
Lisa H. Rubin

GIBSON, DUNN & CRUTCHER LLP
200 Park Avenue
New York, NY 10166
(212) 351-4000
rbrodsky@gibsondunn.com
*Counsel for Defendant Evan Greebel*