UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>    -against-<br><br>EVAN GREEBEL,<br><br>                    *Defendant.* | ECF Case<br><br>No. 15-cr-00637 (KAM)<br><br><u>ORAL ARGUMENT REQUESTED</u> |

**MR. GREEBEL'S REPLY MEMORANDUM OF LAW IN SUPPORT OF HIS MOTION
TO PRECLUDE LAY OPINION TESTIMONY THAT
VIOLATES RULES 701, 401, AND 403**

**TABLE OF CONTENTS**

Page

I. Jackson Su's Lay Opinion Testimony About the Relationship Between Mr. Shkreli and Mr. Greebel is Inadmissible Under Rules 701, 401, and 403 .......................... 1

II. Stephen Aselage's Lay Opinion Testimony is Inadmissible Under Rules 701, 401, and 403 ................................................................................................................. 4

III. This Court Should Preclude Stephen Aselage's Lay Opinion Testimony that Katten Muchin's Legal Bills "Seemed Extremely High" ...................................... 6

IV. The Court Should Preclude Corey Massella's Lay Opinion Testimony Relating to the Stock Transfer Agreement Between Mr. Shkreli and Marek Biestek .......................... 7

V. This Court Should Preclude Timothy Pierotti's Lay Opinion Testimony Relating to "Trading Stock Back And Forth" and "Going Over The Wall" .................................. 10

We respectfully submit this reply to the government's arguments opposing our motion to preclude lay opinion testimony that violates Rules 701, 401, and 403. "It is the proponent of lay opinion testimony who must satisfy the rule's three foundation requirements." *United States v. Garcia*, 413 F.3d 201, 211 (2d Cir. 2005). The government fails to meet its burden.

**I.    Jackson Su's Lay Opinion Testimony About the Relationship Between Mr. Shkreli and Mr. Greebel Is Inadmissible Under Rules 701, 401, and 403**

This Court should reject the government's arguments seeking admission of Mr. Su's statements that "Martin was the one that mostly directed Evan to do whatever he needed and he, Martin controlled the conversation more, normally." Gov't Opp'n MIL, Dkt. No. 346, at 26-29. The nature of the relationship between Mr. Greebel and Mr. Shkreli is a central and material issue of fact in dispute. It is at the heart of the government's contention that there was an alleged conspiracy between these two men. Given the centrality of this dispute at the trial, the government should not be permitted to elicit inadmissible lay opinion testimony about the nature of the relationship. Such testimony violates Rules 701, 401, and 403.

First, the government argues incorrectly that "it is significant and revealing" that we did not move to preclude Mr. Su's observation that Mr. Shkreli and Mr. Greebel "were professional. They talked about the business or anything that had to do with Retrophin" and that Mr. Su's impression was that Mr. Greebel was a "smart, smart lawyer, yes." Gov't Opp'n MIL, Dkt. No. 346, at 25. We focused on the most significant aspects of inadmissible testimony and reserved our right to object to other aspects at trial. But, this testimony also lacks foundation for the same reasons as Mr. Su's other observations of Mr. Shkreli and Mr. Greebel, and it should also be precluded under Rules 701, 401, and 403.

Second, the government asserts—without any citation to the transcript—that Mr. Su testified that he "had the opportunity to see and hear those individuals interacting with each other

1

on numerous occasions: for Su, it was during his almost year-long tenure at Retrophin . . . ." *Id*. at 26. The government's assertion is inaccurate. The government did not cite any portion of the transcript in support of its claim, because there is no support for it. As noted in our motion, "[t]here is no evidence about how many times Mr. Su observed Mr. Shkreli and Mr. Greebel 'interacting together'." Greebel MIL to Preclude Lay Opinion Testimony that Violates Rules 701, 401, and 403 ("Greebel Lay Opinion MIL"), Dkt. No. 333, at 4. The government does *not* contest our proffer that "Mr. Su observed Mr. Shkreli and Mr. Greebel together on fewer than a handful of occasions"; "Mr. Su did not overhear and/or does not recall any of the conversations that he observed between Mr. Shkreli and Mr. Greebel and thus there is a complete lack of knowledge of the subject matter and the content of the communications"; and that there is zero evidence about the timing of Mr. Su's alleged observations of conversations between Mr. Shkreli and Mr. Greebel. *Id*. at 5. The government's sweeping generalizations without citation to the record, and failure to proffer what its witness will testify about, fail to meet its burden.

Third, the government argues that Mr. Su (and other witnesses) should be able to testify about ***the nature of the relationship*** between Mr. Shkreli and Mr. Greebel based on observations on "a single occasion, or small number of occasions". *See* Gov't Opp'n MIL, Dkt. No. 346, at 27. That is preposterous. One cannot testify about a nature of the relationship between two individuals—whether one "mostly directed" the other what to do; whether one "controlled the conversations more"; whether one was a "dominant" party to the relationship—based on a single conversation or even a handful of conversations. *Garcia*, upon which the government relies for this specious proposition, does not support the government's position. In *Garcia*, the Second Circuit stated that "when an undercover agent participates in a hand-to-hand drug exchange with a number of persons" that agent can describe what he/she observes ***during that single***

*transaction*. 413 F.3d at 211-12.  The Second Circuit did not hold that the agent could draw an inference from this singular observation about the roles of the participants beyond that one transaction.  Indeed, the *Garcia* court held that it was improper for the agent to testify that Garcia was "a 'partner with Francisco Valentin in receiving cocaine from Walmer DeArmas,'" because that lay opinion testimony by the agent "was not limited to his personal perceptions but drew on the total information developed by all the officials who participated in the investigation leading to Garcia's arrest".  Id. at 210, 212.

      The same principle applies here.  The government cannot elicit Mr. Su's lay opinion about the nature of the relationship between Mr. Shkreli and Mr. Greebel over approximately 12 months based on a single conversation or a handful of conversations.  The nature of the relationship is a hotly contested issue.  Mr. Su can certainly testify—to the extent he remembers which is highly dubious based on his prior testimony—about what he observed during a single conversation, what Mr. Shkreli said to Mr. Greebel and what Mr. Greebel said in response (assuming such statements are admissible under the other Federal Rules of Evidence), and possibly what he inferred about that conversation from his observations depending on whether all aspects of Rule 701 are met.  But Mr. Su cannot extrapolate and opine based on that singular observation, or handful of observations, about an ultimate issue to be decided by the jury, that is, the nature of the relationship between Mr. Shkreli and Mr. Greebel.

      Fourth, the government's opposition conflates the specific testimony of Mr. Su that we are moving to preclude (Greebel Lay Opinion MIL, Dkt. No. 333, at 4-8) with Mr. Aselage's separate testimony.  In doing so, the government never addresses our identification of additional specific problems with Mr. Su's testimony about the nature of the relationship.  *Id*. at 5-6.  Mr. Su's lay opinion testimony is also unfairly prejudicial, particularly because it goes to a critical

3

issue of material fact in dispute. Indeed, in *Garcia*, the Second Circuit cited to the advisory committee notes in stating that lay opinion "is not properly received 'merely [to] tell the jury what result to reach'" and "courts should be wary of opinion testimony whose 'sole function is to answer the same question that the trier of fact is to consider in its deliberations'". 413 F.3d at 210.

II.  **Stephen Aselage's Lay Opinion Testimony Is Inadmissible Under Rules 701, 401, and 403**

The government's response to our motion to preclude specific elicited testimony by Stephen Aselage regarding Mr. Shkreli's relationship with Mr. Greebel, and Mr. Shkreli's relationship with Marc Panoff, suffers from the same fatal flaws.

First, the government is mistaken that Mr. Aselage "had the opportunity to see and hear those individuals interacting with each other on numerous occasions: . . . for Aselage, it was during Board meetings and other Board functions over a period of more than 18 months." Gov't Opp'n MIL, Dkt. No. 346, at 26-27. The government does not cite any record testimony for this inaccurate proposition, and it directly contradicts the testimony that the government elicited at trial: Mr. Aselage testified that he "was only physically with [Mr. Greebel] once or twice" for Board meetings. Shkreli Trial Tr. 3085:3-9; *see also* Shkreli Trial Tr. 3298:6-7, 3309:23 to 3310:20 (Mr. Aselage worked and lived in San Diego); Shkreli Trial Tr. 3347:6-13 (almost all board meetings were by telephone). The duration over which these observations occurred does not help the government. Eliciting testimony about the nature of a relationship from one or two observed interactions between Mr. Shkreli and Mr. Greebel separated by significant time over 18 months is actually terrifying.

Second, as with Mr. Su, the government should be precluded from eliciting lay opinion testimony based on less than a handful of observations about the ultimate issue for the trier of

4

fact—the nature of the relationship between Mr. Shkreli and Mr. Greebel. This is particularly true when it is apparent—and the government has not met its burden to demonstrate otherwise—that Mr. Aselage does not recall the context of the limited conversations he observed.

Third, the government's attempt to distinguish *United States v. Kaplan*, 490 F.3d 110, 117 (2d Cir. 2007), in a footnote fails. Gov't Opp'n MIL, Dkt. No. 346, at 28 n.12. The *Kaplan* Court vacated a conviction because (in relevant part) the basis for admission of lay opinion testimony by the government's cooperating witness about a specific conversation was "extremely vague." 490 F.3d at 117-19. The Court emphasized:

> "[A] witness may not testify to a matter unless evidence is introduced sufficient to support a finding that the witness has personal knowledge of the matter." Fed.R.Evd. 602; *see also United States v. Durham*, 464 F.3d 976, 982 (9th Cir. 2006) ("opinion testimony of lay witnesses must be predicated upon concrete facts within their own observation and recollection—that is facts perceived from their own senses, as distinguished from their opinions or conclusions drawn from such facts" (internal quotation marks omitted)).

*Id.* at 119. In *Kaplan*, the cooperating witness recalled details of the specific conversation at issue. Here, by contrast, the government fails to meet its burden of demonstrating that Mr. Aselage actually recalls any details about the one or two conversations he observed between Mr. Shkreli and Mr. Greebel.

Fourth, the government does not address the problems we identify pursuant to Rule 701(b) with Mr. Aselage's testimony that two people "seemed very close" and that one person was the "dominant personality." Greebel Lay Opinion MIL, Dkt. No. 333, at 10.

Fifth, the government does not address that the Court struck specific testimony about Mr. Aselage's lay opinion regarding the nature of Mr. Panoff's relationship to Mr. Shkreli when the government proffered the basis (which was both unreliable and inadmissible). Shkreli Trial Tr. 3405:25 to 3406:1; 3408:11-20; Greebel Lay Opinion MIL, Dkt. No. 333, at 13. The

5

government also does not address how Mr. Aselage's description of the nature of the relationship between Mr. Shkreli and Mr. Greebel, and Mr. Shkreli and Mr. Panoff, is remarkably similar—using the same language that Mr. Shkreli had a "dominant personality."  This is yet further evidence the testimony should not be elicited.

**III.     This Court Should Preclude Stephen Aselage's Lay Opinion Testimony that Katten Muchin's Legal Bills "Seemed Extremely High"**

Our motion relating to Mr. Aselage's lay opinion testimony that Katten Muchin's legal bills "seemed extremely high, relative to what you would expect legal costs would be for a firm our size" Greebel Lay Opinion MIL, Dkt. No. 333, at 13, is narrow, and the government's response is unsatisfactory.  Gov't Opp'n MIL, Dkt. No. 346,  at 29-30.  The government continues to fail to identify a sufficient foundation for Mr. Aselage's testimony about the size of legal bills.  That Mr. Aselage "spent more than 30 years before he joined Retrophin working in the business and operations functions of various-sized pharmaceutical companies (Shkreli Trial Tr. 3299 to 3302)," Gov't Opp'n MIL, Dkt. No. 346,  at 30, does not lay a foundation for Mr. Aselage's knowledge relating to legal bills (including size and legal services rendered) of those prior companies.  Further, the government does not address how the size of legal bills make a fact of consequence more or less likely.  *See Id*.  Finally, the government avoids addressing that the lay opinion testimony that the size of the legal bills "seemed extremely high" is unduly prejudicial.  The government admits it will argue that Mr. Greebel's motive for committing the charged conspiracies—a matter the subject of a separate motion *in limine*—was the size of the legal bills to Retrophin; accordingly, there is a real danger that Mr. Aselage's lay opinion testimony on a critical issue of fact in dispute (the alleged motive) is unfairly prejudicial.

6

IV.  **The Court Should Preclude Corey Massella's Lay Opinion Testimony Relating to the Stock Transfer Agreement Between Mr. Shkreli and Marek Biestek**

Corey Massella's Gifting Opinion, Cap Table Opinions, and Backdating Opinion are inadmissible. *See* Greebel Lay Opinion MIL, Dkt. No. 333, at 14-17. Indeed, the cases upon which the government relies—*United States v. Rigas*, 490 F.3d 208 (2d Cir. 2007), and *United States v. Cuti*, 720 F.3d 453 (2d Cir. 2005)—squarely support our motion. Mr. Massella's Gifting Opinion, Cap Table Opinions, and Backdating Opinion were "gleaned from other . . . cases" and "based on specialized experience that [Mr. Massella] had accumulated from other cases" (*Cuti*, 720 F.3d at 460), and thus are inadmissible.

First, the government agrees that it does not intend to elicit testimony "that SEC rules prohibit backdating." Gov't Opp'n MIL, Dkt. No. 346, at 31 n.14. We agree. Accordingly, the government cannot elicit all of the following statements by Mr. Massella—which are inaccurate as a matter of law and based on allegedly specialized knowledge from other cases:

- "***Because you can't change the date. That would be called backdating.***" Shkreli Trial Tr. 3920:3-4 (emphasis added).

- "***It's not allowed and we are not allowed to go back and retroactively change a legal document.***" Shkreli Trial. Tr. 3920:6-7 (emphasis added)

- "***There are SEC rules that just – just do not allow it legally." Shkreli Trial Tr***. 3920:9-10 (emphasis added).

While the Court struck the statement in the third bullet-point above at the request of Mr. Shkreli's counsel, the prior two statements reflected above—"[b]ecause you can't change the date. That would be called backdating" and "It's not allowed and we are not allowed to go back and retroactively change a legal document"—make the same point in different words and thus are equally inadmissible. All three are inaccurate as a matter of law; reliant upon non-existent SEC rules; and based solely on purported specialized knowledge (which is inaccurate).

7

Second, contrary to the government's newly minted interpretation of Mr. Massella's testimony, Mr. Massella did *not* testify about "the fact that the share transfer agreements were backdated." Gov't Opp'n MIL, Dkt. No. 346, at 31. Mr. Massella testified that he had no personal knowledge about any backdating. Specifically, Mr. Massella testified that he wrote "WTF" "[o]ut of frustration that everything kept changing" (Shkreli Trial Tr. 3913:11-19); that he did not know who wrote the date of "11/29/12" on the stock transfer agreement (GX 119-15) (Shkreli Trial Tr. 3975:11-25); and that he assumed (incorrectly as we know from Mr. Su's testimony that it was he, Mr. Su, who wrote the date of 11/29/2012) that Mr. Shkreli wrote the date and not Mr. Su (Shkreli Trial Tr. 3976:14 to 3977:8). Any testimony by Mr. Massella that he would have been concerned had the stock agreements been backdated is inadmissible, because the basis for Mr. Massella's concerns is an improper legal opinion that backdating is prohibited by SEC rules. As the Second Circuit held in *Cuti*, *Garcia*, and *Rigas*, lay opinion testimony cannot "address what the appropriate accounting technique should have been," *Cuti*, 720 F.3d at 460; cannot be "rooted exclusively [in the witness's expertise]" (*Cuti*, 720 F.3d at 460); cannot be based on his knowledge or reasoning when that "depended, in whole or in part, on [the witness's] specialized training and experience", *Garcia*, 413 F.3d at 216; *see also Cuti*, 720 F.3d at 460; *Rigas*, 490 F.3d at 225; and cannot be based on alleged "specialized experience" accumulated from other matters, *Cuti*, 720 F.3d at 460; *see also Garcia*, 413 F.3d at 216 (officer's experience "in various narcotics investigations" informed his lay opinion).

The government's attempt to elicit the improper lay opinion testimony about backdating through "hypothetical questions," Gov't Opp'n MIL, Dkt. No. 346, at 33, does not salvage the fatal problem with the testimony. The Second Circuit decision upon which the government relies, *Cuti* expressly holds that hypothetical questions must be "limited by the factual foundation

8

laid in earlier admitted testimony and exhibits" and "based on undisputed accounting rules." 720 F.3d at 458. Since there was no dispute about the accounting rules in *Cuti*, and the accountant testified to what his view of the transaction would have been had he been informed about certain undisputed side agreements, the lay opinion testimony was admissible. *Id*. at 459-60. But here, by contrast, Mr. Massella's answer to the hypothetical about the backdated stock agreements is based on a fundamental misunderstanding of SEC rules; based on disputed issues of fact; and, to the extent the government does not concede the point, there is no question that there is a dispute over whether backdating violates accounting rules.

Third, the government does not address that the specific Gifting Opinion and Cap Table Opinions we are moving to preclude are based on Mr. Massella's specialized knowledge and expertise outside the matter he worked on with respect to Retrophin. Mr. Massella's Gifting Opinion is based on, according to his sworn testimony, "my experience." Shkreli Trial Tr. 3911:16. Similarly, Mr. Massella's Cap Table Opinions were based on, according to his sworn testimony, his prior experience and expertise in other matters. Shkreli Trial Tr. 3914:12-22.

Finally, the government has not met its burden of demonstrating that Mr. Massella's Gifting Opinion, Cap Table Opinions, and Backdating Opinion pass the Rule 401 and Rule 403 tests. The government's statements are conclusory, and do not demonstrate what fact of consequence each specialized opinion of Mr. Massella makes more or less likely in Mr. Greebel's case, and the government does not show how the alleged probative value substantially outweighs the danger of unfair prejudice, confusion of the issues, and misleading the jury, particularly given that Mr. Massella's lay opinions are inaccurate and contrary to industry practice. *See* Gov't Opp'n MIL, Dkt. No. 346, at 33.

### V. This Court Should Preclude Timothy Pierotti's Lay Opinion Testimony Relating to "Trading Stock Back And Forth" and "Going Over The Wall"

It appears that the government agrees Mr. Pierotti cannot testify pursuant to *Cuti*, *Garcia*, and *Rigas* about stock trading generally and the general purposes of trading back and forth. *See* Gov't Opp'n MIL, Dkt. No. 346, at 35. If Mr. Pierotti's testimony about "trade the stock" is limited to what he understood Mr. Shkreli to mean, and there is a foundation properly laid for Mr. Pierotti's understanding of what he believed Mr. Shkreli meant (and the testimony is admissible under Rules 401, 403 and hearsay), then this would not be improper lay opinion testimony. Shkreli Trial Tr. 4264:24. But, Mr. Pierotti cannot testify more generally, as he did during Mr. Shkreli's trial, about how "[s]tocks are more valuable if they have more liquidity," that "the liquidity is measured by the volume of the stock," and that "if a group of people decided to just trade stock back and forth amongst themselves for the purpose of creating volume, that would be insider trading." Shkreli Trial Tr. 4265:1-6.

However, the government's insistence that Mr. Pierotti can testify about what over-the-wall means on Wall Street in general and how it works on Wall Street (Gov't Opp'n MIL, Dkt. No. 346 at 35-36)—"[i]t never happens on Wall Street" and "That is not the way it works" and "That is how it works on Wall Street"—is contrary to *Cuti*, *Garcia*, and *Rigas*. *United States v. Thornhill*, 667 Fed. Appx. 310 (2d Cir. 2016) (summary order), and *United States v. Brewer*, 36 F.3d 266, 271 (2d Cir. 1994), upon which the government relies, do not overrule *Cuti*, *Garcia*, and *Rigas*. While Mr. Pierotti can testify as to what he believed Mr. Shkreli meant about "over the wall"—assuming *arguendo* that such testimony is admissible pursuant to Rule 401, Rule 403, and the hearsay rules—he cannot testify about how things work on Wall Street. The latter lay opinion testimony is "rooted exclusively [in the witness's expertise]" (*Cuti*, 720 F.3d at 460); "depended, in whole or in part, on his [alleged] specialized training and experience" (*Garcia*,

10

413 F.3d at 216; *Cuti*, 720 F.3d at 460; *Rigas*, 490 F.3d at 225); and based on alleged "specialized experience" accumulated from other experiences, Cuti, 720 F.3d at 460; see also Garcia, 413 F.3d at 216.

Dated: New York, New York
August 30, 2017

/s/ Reed Brodsky
Reed Brodsky
Winston Y. Chan
Randy M. Mastro
Lisa H. Rubin

GIBSON, DUNN & CRUTCHER LLP
200 Park Avenue
New York, NY 10166
(212) 351-4000
rbrodsky@gibsondunn.com
*Counsel for Defendant Evan Greebel*

11