UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>-against-<br><br>EVAN GREEBEL,<br><br>                     *Defendant.* | ECF Case<br><br>No. 15-cr-00637 (KAM)<br><br><u>ORAL ARGUMENT REQUESTED</u> |

**MR. GREEBEL'S REPLY MEMORANDUM OF LAW IN SUPPORT OF HIS MOTION
*IN LIMINE* RELATING TO THE GOVERNMENT'S INACCURATE LEGAL
ASSUMPTION THAT "FEARNOW SHARE" RECIPIENTS ARE "AFFILIATES"
BECAUSE THEY WERE RETROPHIN EMPLOYEES**

We respectfully submit this reply to the government's response to our motion *in limine* relating to the government's inaccurate legal assumption that "Fearnow Share" recipients are "affiliates" because they were Retrophin employees.  Greebel MIL Relating to the Government's Inaccurate Legal Assumption That "Fearnow Share" Recipients are "Affiliates" Because They Were Retrophin Employees ("Greebel Affiliates MIL"), Dkt. No. 337; Gov't Opp'n MIL, Dkt. No. 346, at 52-56.

A. **Government Agrees That It Will Not Argue That Fearnow Share Recipients Were Affiliates Solely Because They Were Employees of Retrophin**

We moved to preclude the government from claiming—through argument, eliciting testimony, and/or seeking the admission of exhibits—that the Fearnow recipients were "affiliates" of Retrophin because they were employees of Retrophin or went to work for Retrophin in 2012 or 2013.  Such claims would be contrary to law, severely and unduly prejudicial to Mr. Greebel, and create confusion and mislead the jury.  *See* Greebel Affiliates MIL, Dkt. No. 337, at 2-5.

The government agreed in part as follows:  "The defendant seeks only to preclude the government from arguing that certain Fearnow Share recipients were 'affiliates' of Retrophin because they were Retrophin employees.  The government does not intend to make such an argument."  Gov't Opp'n MIL, Dkt. No. 346, at 52.

We appreciate that the government will not make the argument.  The government must agree with us that, pursuant to 17 C.F.R. § 230.144, the SEC's investor publication about Rule 144, and the SEC's seminal *American Standard* No-Action Letter a mere employee of an issuer—who is not an executive officer, director, or large shareholder—does not have the "power to direct management and policies of the company in question" and thus is most certainly not an "affiliate."

1

While we appreciate that the government both recognizes the applicable law and will not argue that Fearnow Share recipients became "affiliates" of Retrophin solely because they were Retrophin employees, the government should also be precluded from eliciting testimony or seeking admission of documents suggesting that Mr. Shkreli terminated employees to prevent Fearnow Share recipients from becoming "affiliates." Introducing evidence that suggests to the jury that Mr. Shkreli terminated the employment of Fearnow Share recipients because he misunderstood the law and believed that he had to terminate them to prevent them from becoming "affiliates" in the future makes no sense. The government has failed to proffer a good faith basis to infer from Mr. Shkreli's firing of the Fearnow Share recipients that his motive was to prevent them from becoming "affiliates." Without such a good faith basis, the admission of evidence relating to Mr. Shkreli's termination of the employment of the Fearnow Share recipients will not be "relevant" under Rule 401 and certainly any probative value would be substantially outweighed by the danger of unfair prejudice, confusion, and misleading the jury. Specifically, the jury may draw the improper inference that Mr. Shkreli's firing of the employment of Fearnow Share recipients was because he was trying to prevent them from becoming "affiliates" of Retrophin; and it will create confusion and mislead the jury about whether employees can become an "affiliate" under the law merely because of their status as employees (which they cannot).

The government's argument that "the primary issue is the fact that the defendant and Shkreli acted as if they needed to prevent the Fearnow Share recipients from remaining or becoming 'affiliates' such that those individuals could receive free-trading shares," Gov't Opp'n MIL, Dkt. No. 346, at 53, makes no sense. We continue to be flummoxed by the government's legal theory. The government's focus on whether people were terminated from Retrophin in late

December 2012, seems quixotic and paradoxical. If the government's analysis is correct and the termination was a sham, then such people may still have been employees of Retrophin. However, even if they were employees of Retrophin, there is no evidence that they were officers, directors or large stockholders. As such, even if they were employees, they would not have been affiliates. Alternatively, the termination was legitimate for reasons that only Mr. Shkreli may be aware, in which case the government's argument that the email was a sham lacks basis in reality.

B.  Government Exhibit 242 is Not Admissible

The government relies on flawed arguments in seeking to admit GX 242, a December 17, 2012 email from Mr. Shkreli to a "Firmwide" email address, copying Tom Fernandez, Kevin Mulleady, Marek Biestek, Ron Tilles, Tim Pierotti, and Andrew Vaino. *See* Gov't Opp'n MIL, Dkt. No. 346, at 54-55.

First, the government's argument that GX 242 is admissible for the non-hearsay purpose of a "verbal action with legal consequences," Gov't Opp'n MIL, Dkt. No. 346, at 54, misses the mark. Mr. Shkreli's termination email does not have the legal consequence that the government assumes, that is, the termination of these individuals as Retrophin employees does not legally prevent the Fearnow Share recipients from becoming "affiliates."[1] Pursuant to the securities laws, one does not "become" an affiliate solely by being an employee. Furthermore, there is no evidence that either Mr. Shkreli or the board of directors of Retrophin considered making any of

---

[1]  Notably, the government relies on *United States v. DiMaria*, 727 F.2d 265, 270 n.4 (2d Cir. 1984), for the proposition that the "'verbal act' doctrine applies when 'the utterance is an operative fact which gives rise to legal consequences'" (and thus is not hearsay), Gov't Opp'n MIL, Dkt. No. 346, at 54, a proposition that strongly supports the admissibility of the arbitration decisions. *See* Greebel MIL to Admit the Steven Rosenfeld Arbitration and the Thomas Koestler Arbitration, Dkt. No. 342.

3

the recipients of Fearnow Shares officers or directors of Retrophin in December 2012 or January 2013.

Second, the government's argument that GX 242 is admissible under Rule 801(d)(2)(E) as a statement of a co-conspirator in furtherance of the charged conspiracy is a tautology. The government claims the email is listed as an overt act in furtherance of the charged conspiracy in Count Eight and therefore is a co-conspirator statement in furtherance of the charged conspiracy. *See* Gov't Opp'n MIL, Dkt. No. 346, at 54-55. The government's argument is unpersuasive. Moreover, the government's theory is that Mr. Shkreli terminated the Fearnow Share recipients to further the plan to secretly control the Fearnow Shares by preventing these recipients from becoming "affiliates." However, the government's concession that termination does not have one iota of an impact on whether the Fearnow Share recipients are "affiliates" vitiates the basis for the government's claim that Mr. Shkreli's email was sent ***in furtherance of the charged conspiracy***. In other words, Mr. Shkreli's email could not have been sent in furtherance of the charged conspiracy to control the Fearnow Shares and prevent the recipients from becoming "affiliates" because, by definition, termination had no impact on any "affiliate" status.

Third, the government contends that GX 242 is also admissible to show "the defendant's and Shkreli's states of mind, namely that they believed it was important to create the appearance of distance between Shkreli and the Fearnow Share recipients." Gov't Opp'n MIL, Dkt. No. 346, at 55. However, Mr. Shkreli's termination email cannot be used to show Mr. Greebel's state of mind—Mr. Greebel did not send the mail. Moreover, Rule 803(3) precludes admission of a document pursuant to the state of mind hearsay exception when the "statement of memory or belief [is being used] to prove the fact remembered or believed unless it relates to the validity or terms of the declarant's will." The advisory committee notes explain: "The exclusion of

4

'statements of memory or belief to prove the fact remembered or believed' is necessary to avoid the virtual destruction of the hearsay rule which would otherwise result from allowing state of mind, provable by a hearsay statement, to serve as the basis for an inference of the happening of the event which produced the state of mind." It seems obvious here that the government is seeking to admit Mr. Shkreli's termination email as the basis for an inference of the happening of the event itself.

Finally, the government simply denies in a conclusory manner that the probative value of GX 242 substantially outweighs the danger of any unfair prejudice, confusion, or misleading the jury. Gov't Opp'n MIL, Dkt. No. 346, at 55. However, there is no probative value to Mr. Shkreli's termination email where terminating these employees does not—as the government argued during Mr. Shkreli's trial but now abandons—have anything to do with whether they are or will be "affiliates." Moreover, given that the government will not be arguing that the termination email prevented the Fearnow Share recipients from becoming "affiliates," the email has a real danger of creating unfair prejudice and confusion, and misleading the jury, that the opposite is true.

C.  **The Court's *In Camera* Review of the Government's Instructions to the Grand Jury on Count Eight is Warranted**

This Court should review the government's instructions to the grand jury relating to Count Eight of the Superseding Indictment. The government has the mistaken impression that we are looking to obtain a copy of the government's legal instructions to the grand jury regarding the elements of Count Eight. We are not. We are asking the Court to review them *in camera*, and decide whether there was a legal error. Our good faith basis that the government mistakenly instructed the grand jury regarding the elements in Count Eight is that the government repeatedly argued incorrectly as a matter of law to the jury in *United States v. Shkreli* that the Fearnow

5

Share recipients were terminated in order to prevent them from becoming "affiliates" as employees of the company. The government also offered evidence that certain of those individuals went to work for Retrophin after the termination email to argue that they became "affiliates." *See* Shkreli Trial Tr. 5300:8-10; 5302:2-5; 5302:6-7.

Dated: New York, New York
August 30, 2017

/s/ Reed Brodsky
Reed Brodsky
Winston Y. Chan
Randy M. Mastro
Lisa H. Rubin

GIBSON, DUNN & CRUTCHER LLP
200 Park Avenue
New York, NY 10166
(212) 351-4000
rbrodsky@gibsondunn.com
*Counsel for Defendant Evan Greebel*

6