UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>-against-<br><br>EVAN GREEBEL,<br><br>*Defendant.* | ECF Case<br><br>No. 15-cr-00637 (KAM)<br><br><u>ORAL ARGUMENT REQUESTED</u> |

**MR. GREEBEL'S REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT
OF HIS MOTIONS *IN LIMINE* TO PRECLUDE CERTAIN INADMISSIBLE
TESTIMONY FROM THE TRIAL OF *UNITED STATES V. MARTIN SHKRELI*
AND TO PRECLUDE EXPERT TESTIMONY**

**TABLE OF CONTENTS**

                                                                                        Page

I. Motion to Preclude Certain Inadmissible Testimony and Documents From the Trial of *United States v. Martin Shkreli* .................................................................. 1

    A. Timothy Pierotti's Inaccurate Testimony that Evan Greebel Received Fearnow Shares Is Inadmissible ................................................................... 1

    B. Timothy Pierotti's Speculative and Unfounded Testimony About the Relationship Between Michael Fearnow and Troy Fearnow Is Inadmissible .................................................................................................. 3

    C. Timothy Pierotti's Speculative Testimony About Mr. Greebel's Role as Counsel Is Inadmissible ............................................................................... 5

    D. GX 120-14 Is Inadmissible Based on Mr. Pierotti's Testimony that an Email Has Nothing to do With the Fearnow Shares ...................................... 8

    E. Michael Smith's Email Dated December 11, 2012 Regarding Compliance for Personal Trading Accounts (GX 120-11) Is Inadmissible .......................... 8

    F. Timothy Pierotti's Testimony About a Conference Call With Michael Fearnow Is Inadmissible ............................................................................. 9

    G. Testimony and Evidence Relating to an October 20, 2012 Letter From the SEC to Mr. Shkreli Is Inadmissible ........................................................... 10

II. Motion to Preclude the Same Expert Opinion Testimony of Deborah Oremland that the Court Prohibited During Mr. Shkreli's Trial ............................................ 14

III. Motion to Prohibit the Government From Calling an Expert Witness in the Areas of Professional Responsibility and/or Legal Ethics Because the Government Has Not Met the Court's August 11, 2017 Deadline .............................................. 14

## TABLE OF AUTHORITIES

Page(s)

**Cases**

*Agfa-Gevaert, A.G. v. A.B. Dick Company*,
   879 F.2d 1518 (7thCir. 1989) ................................................................................................4

*Brown v. Keane*,
   355 F.3d 82 (2d Cir. 2004), *abrogated on other grounds by Crawford v. Washington*, 541 U.S. 36 (2004)..........................................................................................4, 5

*Livingston v. Sanchez*,
   No. 1:10-cv-01152-BAM PC, 2014 WL 3894703 (E.D. Cal. Aug. 8, 2014) ...........................6

*SEC v. Singer*,
   786 F. Supp. 1158 (S.D.N.Y. 1992).........................................................................................6

*U.S. Information Systems, Inc. v. International Brotherhood of Electrical Workers Local Union Number 3, AFL-CIO*,
   No. 00 Civ. 4763 (RMB) (JCF), 2006 WL 2136249 (S.D.N.Y. Aug. 1, 2006)........................4

*United States v. Cuti*,
   720 F.3d 4539 (2d Cir. 2013)...................................................................................................7

*United States v. Evans*,
   484 F.2d 1178 (2d Cir. 1973)...................................................................................................7

*United States v. Lang*,
   589 F.2d 92 (2d Cir. 1978).......................................................................................................4

*United States v. Lopez*,
   762 F.3d 8526 (9th Cir. 2014) .................................................................................................6

*United States v Pedroza*,
   750 F.2d 187 (2d Cir. 1984).....................................................................................................9

*United States v. Reitano*,
   862 F.2d 982 (2d Cir. 1988).....................................................................................................7

*United States v. Snodgrass*,
   635 F.3d 324 (7th Cir. 2011) ...................................................................................................6

We respectfully submit this reply to the government's response to our motion *in limine* to preclude certain testimony and exhibits introduced through Timothy Pierotti, the same expert testimony of Deborah Oremland that this Court precluded in *United States v. Martin Shkreli*, and an unnamed and unidentified expert witness due to the government's failure to comply with this Court's deadline for expert notice. Greebel MIL to Preclude Certain Inadmissible Testimony From the Trial of *United States v. Martin Shkreli* and Motion to Preclude Expert Testimony ("Greebel Inadmissible Testimony MIL"), Dkt. No. 340; Gov't MIL, Dkt. No. 329 at 40–50; Gov't Opp'n MIL, Dkt. No. 346, at 68–80. The government initially moved to preclude testimony by nine of our ten expert witnesses, and we filed an opposition. Gov't MIL, Dkt. No. 329, at 40–50; Greebel Opp'n, Dkt. No. 347, at 40–59.

### I.  Motion to Preclude Certain Inadmissible Testimony and Documents From the Trial of *United States v. Martin Shkreli*

#### A.  Timothy Pierotti's Inaccurate Testimony that Evan Greebel Received Fearnow Shares Is Inadmissible

The government agrees that the following sworn testimony by Mr. Pierotti at Mr. Shkreli's trial was a "mistaken understanding by Pierotti of who received Fearnow Shares" and that they will instruct Mr. Pierotti not to so testify (Gov't Opp'n MIL, Dkt. No. 346, at 69): (1) During the direct examination by the government, Mr. Pierotti testified that "all kinds of friends and associates or former associates" received Fearnow Shares and he named Andy Vaino, Edmund Sullivan, Marek Biestek, Kevin Mulleady, Tom Fernandez, and Mr. Greebel and then said "I'm not sure if I'm leaving anybody" (Shkreli Trial Tr. 4261:2-9); (2) During cross-examination, Mr. Pierotti testified that "Evan Greebel got shares of Retrophin," (3) that "Evan Greebel, the partner at Katten also got these shares that you and Marek and Ed Sullivan got," and

(4) that Mr. Pierotti was "sure about it" because "I remember seeing the list of the group that was getting it and Evan was on there." Shkreli Trial Tr. 4359:5-18.

Unfortunately, during the trial, neither the government nor Mr. Shkreli's counsel corrected Mr. Pierotti's "mistaken understanding" that Mr. Pierotti was "sure" that Mr. Greebel had received Fearnow Shares. The jury at that trial received false information. Since Mr. Shkreli did not object when Mr. Pierotti provided false information during the direct-examination, and in fact further elicited such testimony during cross-examination, Mr. Shkreli obviously cannot complain about it.

The government speculates now as to why Mr. Pierotti has this "mistaken understanding"—and while this is pure speculation on the government's part, we feel compelled to respond as it most certainly is important for the Court's understanding of Mr. Pierotti's "credibility." The government states: "There is evidence that the defendant initially requested that all of the certificates for the Fearnow Shares be sent to him, and also evidence that at least one such certificate was in fact shipped to him from Standard Registrar (*See* GX 125-4). Consequently, the document Pierotti described as a "list of the group that was getting" the shares ***could have simply been*** a document showing that some or all of the Fearnow Shares were going to be mailed to, or ***were in fact mailed to***, the defendant." Gov't Opp'n MIL, Dkt. No. 346, at 68–69 (emphasis added). GX-125-4 upon which the government relies for this speculation has several lists of Fearnow Share recipients (at Standard-000465-470); and Mr. Greebel is most certainly not on any of them; it also has a copy of a Fed-X shipping label to Mr. Greebel (and Fed-X shipping labels to seven other individuals including Mr. Pierotti), but Mr. Pierotti would not have had access to that shipping label. Accordingly, there is no basis to speculate about why Mr. Pierotti was "sure" that Mr. Greebel had received Fearnow Shares.

2

We respectfully object to the government's proposal to "lead the witness through that portion of his direct examination" (Gov't Opp'n MIL, Dkt. No. 346, at 69) or any other portion of his examination. Mr. Pierotti projected confidence during his trial testimony, and he surely can follow a directive not to elicit that Mr. Greebel had Fearnow Shares. We draw attention to the Court's statement at sidebar that "I appreciate what you're dealing with. From the early get-go it was clear he's somebody who likes to talk" (Shkreli Trial Tr. 4629:15-17), but direct examinations should be done through non-leading questions. We would be happy to address our views on how this "mistaken understanding" should be addressed at the upcoming trial. With all respect to the government, we also must ask that, if the government learns during Mr. Pierotti's testimony (or anyone else's testimony of course) that what the government's witness is testifying about is inaccurate, that the government provide that information to the Court at the earliest opportunity.

### B. Timothy Pierotti's Speculative and Unfounded Testimony About the Relationship Between Michael Fearnow and Troy Fearnow Is Inadmissible

This Court should preclude Mr. Pierotti's speculative, unfounded, and hearsay testimony that Troy Fearnow is a "relative" of Michael Fearnow. Shkreli Trial Tr. 4262:17. The government attempts to redefine "personal knowledge" to include inadmissible hearsay and takes a statement made by Judge Posner out of context (using ellipsis to omit a material qualification) to assert that Mr. Pierotti can testify as to what other people told him about the relationship between Troy Fearnow and Michael Fearnow and still fall within Rule 602's definition of "personal knowledge." Gov't Opp'n MIL, Dkt. No. 346, at 69–70.

First, the government has access to Mr. Pierotti and can of course proffer the foundation for Mr. Pierotti's hearsay that he's "come to learn" that Troy Fearnow and Michael Fearnow are relatives. Such testimony is inadmissible without laying a proper foundation so that the Court

3

knows the basis for what Mr. Pierotti claims. The foundation is critical. For example, whether Mr. Pierotti learned the information from (a) a meeting with the government, (b) his own online research, or (c) from his counsel surely matters.

Second, the government incorrectly relies on Judge Posner's statement in *Agfa-Gevaert, A.G. v. A.B. Dick Company*, 879 F.2d 1518 (7th Cir. 1989), for the proposition that what Mr. Pierotti learned from some unknown person or source is Mr. Pierotti's "personal knowledge." That is a fundamental misconception. While quoting Judge Posner, the government omits through ellipsis the critical qualification that the judge made about business executives testifying about their product's quality and marketing based on what they customarily draw from customers:[1] "Business executives do not make assessments of a product's quality and marketability by inspecting the product at first hand. Their assessments are inferential, and as long as ***they are the sorts of inferences that businessmen customarily draw*** they count as personal knowledge, not hearsay." *Id*. at 1523 (emphasis added).

Indeed, the government overlooks the Second Circuit's reversal of a conviction in *United States v. Lang*, 589 F.2d 92, 97-98 (2d Cir. 1978), based on hearsay testimony from a witness who "could not have had firsthand knowledge" of "crucial" facts." Moreover, in *Brown v.*

---

[1] The government also relies on *U.S. Information Systems, Inc. v. International Brotherhood of Electrical Workers Local Union Number 3, AFL-CIO*, No. 00 Civ. 4763 (RMB) (JCF), 2006 WL 2136249, at *11 (S.D.N.Y. Aug. 1, 2006). That case relies exclusively on Judge Posner's statement for the same proposition. The court denied the hearsay objections to the proffered testimony of a tel-data consultant who could testify about what firms compete in the market because "all of his testimony rests on knowledge of the marketplace gained through years of experience and his personal knowledge of particular jobs"; but *sustained* the hearsay objections when the witnesses proffered testimony was based on what others told them and not part and parcel of their customary work: "[Mr. Lott's] statement that he was told that Mr. Graves had a union position. That statement is hearsay."; "Mr. Pinney's repetition of Patrick Marshall's statement about the shop steward's threat is hearsay because the information is based entirely on Mr. Marshall's statement"; "[Ms. Pastore's] statement that she believed the general contractor and Nead Electric split the cost of new cables was based on hearsay and is struck".

4

*Keane*, 355 F.3d 82, 90 (2d Cir. 2004), *abrogated on other grounds by Crawford v. Washington*, 541 U.S. 36 (2004), the Second Circuit stated that "[a]n assertion of fact based on conjecture and surmise, to which the declarant would not be allowed to testify if called to the witness box, does not become admissible under an exception to the hearsay rule merely because it was uttered out of court in a state of excitement." The Second Circuit explained that "[a] statement expressing conjecture on a question as to which the declarant lacks personal knowledge simply cannot bear 'particularized guarantees' of reliability to overcome the Sixth Amendment presumption of inadmissibility of hearsay statements." *Id*.

      C.      **Timothy Pierotti's Speculative Testimony About Mr. Greebel's Role as Counsel Is Inadmissible**

Mr. Pierotti's speculative testimony that "[Mr. Greebel] was Retrophin's attorney *or* Martin's attorney" that then shifted to a "*guess*" that he "thought [Mr. Greebel] was both" is inadmissible. Shkreli Trial Tr. 4280:7–11. The government misreads Rule 602's personal knowledge requirement to include "guesses."

First, there is no question that the nature of the relationship between Mr. Shkreli and Mr. Greebel is a central issue in dispute at this trial. That the government needs Mr. Pierotti's speculative testimony about whom Mr. Greebel represented as counsel is telling about its case. But, given the centrality of the dispute over the nature of the relationship, the government must elicit trustworthy and admissible testimony regarding the issue, not speculative testimony from Mr. Pierotti who obviously talks a lot, was proven to be unreliable in general (*e.g.*, his testimony that he was "sure" that Mr. Greebel received Fearnow Shares), and who first testified that Mr. Greebel represented *either* Retrophin *or* Mr. Shkreli, and then testified that "*I guess* I thought he was both."

5

Second, Mr. Pierotti's "guess" is not admissible. *See United States v. Snodgrass*, 635 F.3d 324, 330 (7th Cir. 2011) (affirming district court's exclusion of witness's testimony that the defendant had a "hostile relationship" with a third party because it was "based upon hearsay and speculation and not of personal knowledge"); *United States v. Lopez*, 762 F.3d 852, 863–6 (9th Cir. 2014) (district court erred in admitting border patrol agent's lay opinion testimony that the defendant had been physically removed because it was not based on personal knowledge "produced by the direct involvement of the senses"); *Livingston v. Sanchez*, No. 1:10-cv-01152-BAM PC, 2014 WL 3894703, at *5 (E.D. Cal. Aug. 8, 2014) (plaintiff "may not testify regarding his speculation or guesses that Defendants were aware of the hunger strike").

Third, the government's string cite of cases for admitting Mr. Pierotti's "guess" does not withstand scrutiny. In *SEC v. Singer*, 786 F. Supp. 1158, 1166 (S.D.N.Y. 1992), in the context of denying the defendant's motion for summary judgment on the issue of whether he learned from WearEver's board member about the company's LBO before purchasing shares, Judge McKenna held that the board member's testimony of his "belief that he told Singer about the LBO" was based on the board member's personal knowledge. This board member and Mr. Singer had a "very close personal friendship. The two communicated many times a week, in person, by phone, or by fax, and socialized together"; "[i]t was characteristic of their relationship that [the board member] would speak to Singer in confidence about professional, legal and personal problems"; and the board member "characterized their relationship as being so close that there was a 'stream of consciousness' between them." *Id*. at 1161. The board member's testimony about his "belief" that he told Mr. Singer about the LBO is not comparable to Mr. Pierotti's speculative testimony about Mr. Greebel's role. The board member was close to Mr. Singer, speaking with him every day and conveying all information to him all the time; by

6

contrast, the government has not established that Mr. Pierotti had any communication with Mr. Greebel, and does not have reliable observations to know one way or the other whether Mr. Greebel was representing Retrophin or Mr. Shkreli.

The government's other cases support our motion to preclude Mr. Pierotti's speculative testimony. *United States v. Cuti* states that, under Rule 602, "a witness who testifies to a fact which can be perceived by the senses must have had an opportunity to observe, and must have actually observed the fact." 720 F.3d 453, 458–59 (2d Cir. 2013) (quoting Rule 602 advisory committee notes). Mr. Pierotti's "guess" about who Mr. Greebel represented is not based on facts perceived by his senses and that he actually observed. Moreover, in *Cuti*, the "fact witnesses of a unique sort" were a long-standing in-house accountant and outside auditor who could respond to hypotheticals as to whether the accounting would have changed so long as the fact they were asked about was "independently established," the accounting rules were "undisputed," and the "limitations left little room for the witnesses to engage in speculation". Mr. Pierotti's "guess" about whom Mr. Greebel represented falls right into the category of speculation precluded by *Cuti*. The Second Circuit's finding in *United States v. Reitano*, 862 F.2d 982, 987 (2d Cir. 1988), that an undercover agent could "estimate" the amounts wagered based on his personal observations of the wagers demonstrates that Mr. Pierotti's unfounded "guess" is inadmissible. And finally the same is true for the Second Circuit's decision in *United States v. Evans*, 484 F.2d 1178, 1181–82 (2d Cir. 1973), where the Court found that three eyewitnesses to a robbery could testify about their personal observations of the robber without "absolute certainty" as "each observed the robber at the time of the robbery, for an adequate length of time to perceive at least his general features, his sex, stature, bearing, the color of his skin, and even his fingernails."

7

In essence, Mr. Pierotti's speculative and unfounded testimony about who Mr. Greebel represented is unhelpful to a jury and should not be permitted.

### D. GX 120-14 Is Inadmissible Based on Mr. Pierotti's Testimony that an Email Has Nothing to do With the Fearnow Shares

In response to our motion to preclude admission of GX 120-14, the government does not dispute that: (a) Mr. Pierotti did not recall receiving Mr. Shkreli's email in GX 120-14; (b) Mr. Pierotti's sworn testimony is that this email is "unrelated" to his testimony about Mr. Shkreli's alleged statements to "buy and sell and buy and sell" to create volume with the Fearnow Shares; (c) This email has nothing to do with trading Fearnow Shares; (d) Other recipients of this email—including Brent Saunders (then-CEO of Bausch & Lomb and now CEO of Allergan), Darren Blanton, and George Haywood—are not co-conspirators in Count Eight; and (e) The government is offering the email for the truth of the statements therein.

Yet, the government argues that Mr. Shkreli's email in GX 120-14 is still admissible because Mr. Pierotti's "interpretation of an email sent by another individual, which the witness did not even remember receiving, is not 'proof' of what the email's author intended in writing the email." Gov't Opp'n MIL, Dkt. No. 346, at 73. But, the government cannot disown the "interpretation" of its sole witness to the alleged conspiracy in Count Eight, and argue that it means something else unless the government is prepared to acknowledge that Mr. Pierotti's sworn testimony that it is "unrelated" to the Fearnow Shares is wrong. This Court should find that GX 120-14 is inadmissible.

### E. Michael Smith's Email Dated December 11, 2012 Regarding Compliance for Personal Trading Accounts (GX 120-11) Is Inadmissible

The government's arguments that it is not offering Michael Smith's email in GX 120-11 for its truth, but instead as a "command" directed at Mr. Pierotti and as "background" to explain why Mr. Pierotti "became concerned that Shkreli wanted to improperly control his Fearnow

8

shares", Gov't Opp'n MIL, Dkt. No. 346, at 74, are meritless. The government offers Mr. Smith's email for purposes of arguing to the jury the truth of what is asserted therein, that is, for the truth of Mr. Smith's statements that (1) "I will need everyone to give me a summary of their holdings every morning", (2) "I only need the holdings summary of the Scottrade account you recently opened", (3) "In the future, I may also require holdings summaries from any other accounts that are being actively traded," and (4) "If in the future I need a statement of one of your other accounts, you would have to find a statement that lists each of your positions individually."

Moreover, the government cannot introduce hearsay evidence that is inadmissible under the rules of evidence as "background" to the charged conspiracy. Indeed, the case cited by the government in *United States v Pedroza* holds: "The government argues that the hearsay statements were properly admitted as 'background.' There is no such exception to the hearsay rule." 750 F.2d 187, 200 (2d Cir. 1984). While the *Pedroza* Court recognized under limited circumstances "background" evidence could be offered to "to show the circumstances surrounding the events," as the Court found in *Pedroza*, "[h]ere there was no purpose for the hearsay testimony except for its truth." *Id*. Indeed, the government argued during summation that the email proved the truth of the matter asserted therein, that is, that Mr. Shkreli wanted people to open up Scottrade accounts so that he could monitor trading. *See* Shkreli Trial Tr. 5307:24–5308:9

### F. Timothy Pierotti's Testimony About a Conference Call With Michael Fearnow Is Inadmissible

The government falls short of meeting its burden to show the admissibility of Mr. Pierotti's testimony about a call with Michael Fearnow and Mr. Shkreli during which he did not know who else attended and could not explain what was meant by Mr. Shkreli's comment that

9

"some shares will be held back." Shkreli Trial Tr. 4274–76; Gov't Opp'n MIL, Dkt. No. 346, at 71–72. The government states without explanation that Mr. Shkreli's words to Michael Fearnow and Mr. Pierotti constitute a co-conspirator statement made in furtherance of the conspiracy, but the government does not meet its burden by just claiming so. Indeed, the few words that Mr. Pierotti recalls is vague and ambiguous in meaning; Mr. Pierotti testified that he could not explain them (Shkreli Trial Tr. 4276:2–3); and the government's own disclosures on August 16, 2017 that neither Mr. Pierotti nor Michael Fearnow are alleged co-conspirators undercuts the notion that Mr. Shkreli's statement to two people who are not co-conspirators could be made in furtherance of the charged conspiracy in Count Eight. The government's alternative argument that the statements are not being offered for the truth, Gov't Opp'n MIL, Dkt. No. 346, at 72, makes no sense. The government can certainly elicit that there was a meeting/call, who attended, and the topics of conversation, but the statements made by Mr. Shkreli are hearsay that do not fall within any exception, and there is no purpose to offer the words "some shares will be held back" except for the truth.

### G. Testimony and Evidence Relating to an October 20, 2012 Letter From the SEC to Mr. Shkreli Is Inadmissible

In arguing for admission of the Government Exhibit 347—the SEC Staff's October 1, 2012, email and letter to MSMB Capital Management LLC sent directly to Mr. Shkreli—the government overreaches and inaccurately describes the document. The SEC Staff's October 1, 2012 email and attachment to Mr. Shkreli are inadmissible at this trial.

First, the government inaccurately states that GX 347 attached *a subpoena* from the SEC to Mr. Shkreli when, in reality, it was a letter requesting a voluntary production of documents. This is a material inaccuracy. The government states in relevant part:

> [T]he government believes the defendant is referring to a letter sent
> by the SEC to Shkreli on October 1, 2012, which was introduced at

10

> the Shkreli trial as GX 347. That letter *attached a subpoena* seeking information from Shkreli related to the SEC's investigation into the fraud perpetrated by the defendant on MSMB Capital investors. Shkreli responded *to that subpoena* on November 4, 2012 (introduced at the Shkreli trial as GX 218) . . .

Gov't Opp'n MIL, Dkt. No. 346, at 74–75 (emphasis added).

But GX 347 is an email with an attached letter—not a subpoena—and the letter states:

> The staff of the United States Securities and Exchange Commission is conducting *an informal investigation* in the above-referenced matter [MSMB Capital Management LLC Valuation] to determine whether there have been violations of the federal securities laws. In connection with this investigation, *the staff requests that MSMB* (as defined in the attached document request) *voluntarily produce the documents* and information described in the attachment by October 16, 2012.

GX 347 (emphasis added).

Second, the government cannot use October 2012 (GX 347) and November 2012 (GX 218) communications solely between the SEC Staff and Mr. Shkreli to prove Mr. Greebel's knowledge of that investigation, particularly when the government has already admitted in court that it has no proof that Mr. Greebel was aware of the SEC investigation in 2012. The government contends that "[t]he SEC's [October 1, 2012] *letter and attached subpoena* which address the events that precipitated the fraud alleged in Count Seven of the Superseding Indictment, *are relevant to show that the defendant knew about the ongoing SEC investigation* of the defendant and concealed material information from the Retrophin board, his client." Gov't Opp'n MIL, Dkt. No. 346, at 75 (emphasis added). To state the obvious, the government cannot use the October 1, 2012 email/letter to Mr. Shkreli (GX 347) and Mr. Shkreli's November 4, 2012 response (GX 218) *to prove Mr. Greebel's knowledge* of an ongoing informal investigation by the SEC Staff into MSMB. Indeed, as reflected during the hearing of November 22, 2016, the Deputy General Counsel corrected the government's inaccurate initial perception

11

that Katten Muchin Rosenman ("Katten Muchin") had represented MSMB and Mr. Shkreli in responding to an SEC inquiry in 2012, and informed the government that Katten Muchin did not represent either MSMB or Mr. Shkreli in connection with the SEC investigation until the summer of 2013.  Hearing Tr. 75:13–25.

Third, we respectfully submit that the government does not have a good-faith basis to ask Mr. Aselage and Mr. Richardson whether Mr. Greebel informed either of them about an ongoing SEC investigation and/or USAO investigation unless and until the government demonstrates to Your Honor that: (a) the SEC and/or USAO were conducting an investigation into Retrophin, Inc., and Mr. Greebel was aware that the SEC and/or USAO were conducting an investigation into Retrophin, Inc., at that time, as opposed to an investigation of certain individuals and that Retrophin was a non-party witness; (b) Mr. Greebel had a duty to disclose the SEC and/or USAO investigation into MSMB to the Board of Directors of Retrophin at that time; or (c) the SEC and/or USAO were conducting an investigation into Mr. Shkreli, Mr. Greebel was aware that it was an investigation into Mr. Shkreli, and Mr. Greebel had a duty to disclose such investigation to the Board of Directors of Retrophin at the time.

If the SEC and the USAO were not conducting an investigation into Retrophin (and/or Mr. Greebel was not aware of such investigation), and Mr. Greebel did not have a duty to disclose an investigation into MSMB or Mr. Shkreli to Retrophin's Board (and/or Mr. Greebel was not aware of some relevant aspect of that investigation that impacts such duty), then the government's questions to Messrs. Aselage and Richardson would not be asked in good faith. Such questions would unfairly and improperly assume that Mr. Greebel knew about the investigations and that he had a duty to report them to Retrophin's Board.  In any event, GX 347 and GX 218 have nothing to do with the issue of whether Mr. Greebel had to report an

12

investigation to Retrophin's Board, because those documents are communications between the SEC Staff and Mr. Shkreli, on behalf of MSMB, in October and November 2012 when Mr. Greebel was unaware of any such investigation.

Fourth, Mr. Su's testimony that he posted the SEC's October 2012 letter (which again is not a subpoena) in January 2014, a request from a prestigious former federal prosecutor at Katten Muchin (not Mr. Greebel) that the SEC Staff assist in removing the confidential letter, and the SEC Staff's decision to take steps to remove the letter from the public are not admissible. Such testimony and evidence does not make any fact of consequence more or less likely. The government's contention that it makes it more likely that "the defendant and Shkreli took steps to actively conceal the SEC investigation from Retrophin's Board of Directors and its shareholders," Gov't Opp'n MIL, Dkt. No. 346, at 76, belies common sense. The government's argument makes a number of assumptions that require this Court to first find that Mr. Greebel had a duty to disclose the SEC letter to "Retrophin's Board of directors" and a separate duty to disclose the letter to "its shareholders." The government's argument also requires proof that Mr. Greebel somehow strong-armed and/or deceived a former federal prosecutor working at Katten Muchin into taking steps to remove a confidential SEC letter from a public website—and then somehow caused the former federal prosecutor to deceive the SEC Staff into going along with this plan—in an effort to "conceal the SEC investigation from Retrophin's Board of Directors and its shareholders." Just listing out many of the assumptions that the government would have to prove before being able to admit such testimony and documents through Mr. Su demonstrates that it is inadmissible and mind boggling.

Finally, the government does not address our Rule 403 argument that GX 347 (and also GX 218) pose an unfair risk of unfair prejudice, confusion, and misleading the jury.

13

## II. Motion to Preclude the Same Expert Opinion Testimony of Deborah Oremland that the Court Prohibited During Mr. Shkreli's Trial

We moved to preclude the same expert opinion testimony of Ms. Oremland that the Court prohibited during Mr. Shkreli's trial. *See* Greebel Inadmissible Testimony MIL at 10–12. The government moves for reconsideration of Your Honor's ruling. The government's reasons are meritless and already addressed by Your Honor's ruling and explanation in *United States v. Martin Shkreli*.

## III. Motion to Prohibit the Government From Calling an Expert Witness in the Areas of Professional Responsibility and/or Legal Ethics Because the Government Has Not Met the Court's August 11, 2017 Deadline

The government did not meet this Court's deadline for providing expert notice, and the government does not offer "good cause" for its failure to comply with the deadline. The government never conferred with a legal ethics expert prior to indicting Mr. Greebel; since the indictment in December 2015, the government had over 19 months to identify and speak with an expert before the Court's pretrial deadline; the government requested a 3-week extension of the pretrial order deadlines, which this Court generously granted, but then did not identify the name of an expert, qualifications, and the proffered testimony; and the time for identifying and noticing experts sufficiently in advance of trial has passed.

The government's assertion that it "has provided the defendant ample notice of a potential expert witness, who appears likely to testify on the same or similar subjects" as the defense expert, Gov't Opp'n MIL, Dkt. No. 346, at 79, is neither "ample" nor "notice." We do not have any of the information that meets the government's obligations under Rule 16.

The government's argument that the Court's deadlines will "evolve as the trial date nears," Gov't Opp'n, Dkt. No. 346, at 79, does not make sense. We do not understand what the government means other than to inform the Court that it may disclose at its discretion trial

14

exhibits beyond the deadline of August 11; that it may disclose at its discretion new witnesses beyond the deadline of August 11; and that it may produce new discovery at its discretion beyond the deadline.  We believe that the government needs to demonstrate good cause to Your Honor before it can violate these deadlines, and that it should seek the Court's approval in advance.

The government's argument that "the fact that the defendant has noticed specific purported experts on specific topics is largely a matter of form over substance because the defendant contends that none of its experts have finalized or will finalize opinions or disclosures until after the government's case," Gov't Opp'n, Dkt. No. 346, at 79, is troubling.  We disclosed the names of all ten of our potential experts by the August 11, 2017 deadline—and we do not have any obligation to put on a case; we disclosed the substance of the anticipated testimony—more than just the "topics"—as the government surely knows; and we disclosed sufficient information to prompt the government to move to argue that the testimony of 9 of our 10 experts is "irrelevant" and "inadmissible" (contrary to the Second Circuit's decision in *United States v. Litvak*).  Finally, the government's contention that we should have finalized our expert disclosures by August 11, 2017, improvidently shifts the burden of proof to the defense.  This is particularly true because the government has informed us that they expect to produce more discovery to us in the case; that they expect to identify more trial exhibits; and our expert witnesses should be entitled to respond to the government's case-in-chief.  Our right to supplement our expert disclosures to respond to the government's new productions of discovery and trial exhibits, as well as the government's case-in-chief, is not good cause to bypass this Court's deadline of expert disclosures.

15

Dated: New York, New York
August 30, 2017

/s/ Reed Brodsky
Reed Brodsky
Winston Y. Chan
Randy M. Mastro
Lisa H. Rubin

GIBSON, DUNN & CRUTCHER LLP
200 Park Avenue
New York, NY 10166
(212) 351-4000
rbrodsky@gibsondunn.com
*Counsel for Defendant Evan Greebel*