UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

UNITED STATES OF AMERICA

-against-

EVAN GREEBEL,

*Defendant.*

ECF Case

No. 15-cr-00637 (KAM)

ORAL ARGUMENT REQUESTED

**MR. GREEBEL'S REPLY MEMORANDUM OF LAW IN SUPPORT OF HIS MOTION *IN LIMINE* TO ADMIT THE STEVEN ROSENFELD ARBITRATION AND THE THOMAS KOESTLER ARBITRATION**

# TABLE OF CONTENTS

I.   Reply to Government's Narrow Interpretation of Dr. Rosenfeld's Arbitration .............. 1

II.  Non-Hearsay Purpose And Rule 803(15) ........................................................................ 2

III. Application of Rule 401 and Rule 403 ............................................................................ 5

We respectfully submit this reply to the government's opposition to our motion to admit the arbitration findings in Dr. Rosenfeld's arbitration and Mr. Koestler's arbitration. *See* Greebel's MIL to Admit the Steven Rosenfeld Arbitration and the Thomas Koestler Arbitration ("Greebel Arb. MIL"), Dkt. 342; Gov't Opp. MIL, Dkt. 346, at 2-10.

I.      **Reply to Government's Narrow Interpretation of Dr. Rosenfeld's Arbitration**

The government continues to disregard the jury's acquittal of Martin Shkreli on Count Seven by making statements such as the following: "Shkreli worked with the defendant to devise a scheme to misappropriate Retrophin assets to repay some of those defrauded investors." Gov't Opp. MIL, Dkt. 346, at 2. Dr. Rosenfeld's arbitration decision directly undermines the government's claim that "defrauded investors who entered into these sham consulting agreements did not perform any legitimate consulting services for Retrophin." *Id.* at 3.

Although the government tries to spin Arbitrator Vivien B. Shelanski's ruling as an issue about whether Dr. Rosenfeld's contract was "facially enforceable," *id*. at 3, that is inaccurate. Arbitrator Shelanski held extensive hearings, heard testimony from seven witnesses, and reviewed hundreds of documents submitted by both sides. Ex. A, Greebel Arb. MIL, Dkt. 342, at 1. Indeed, Arbitrator Shelanski heard more testimony and received more documents relating to the consulting agreements at issue than the government offered in connection with Mr. Yaffe's and Mr. Blanton's consulting agreements at the trial of *United States v. Shkreli*.

As reflected in the extensive written decision by Arbitrator Shelanski, Retrophin argued that: the agreement was a "sham" contract; the agreement was unenforceable because it contained a stock granted that required written approval by Retrophin's Board; Mr. Shkreli did not have actual or apparent authority to enter into an agreement with a "self-dealing component"; and Dr. Rosenfeld aided and abetted Mr. Shkreli's breach of fiduciary duty to the company.

1

*Id.* at 5-6. By contrast, Dr. Rosenfeld argued that the agreement was not a "sham" contract; that the Board had either approved of the agreement and/or granted Mr. Shkreli with the authority to enter into it; and that Dr. Rosenfeld had provided real consulting services pursuant to the agreement. *Id.* at 4, 6-11.

The government's claim that Arbitrator Shelanski did not "squarely consider whether the agreement was a sham based on illegal conduct," *id.* at 3, misses the mark. First, the government overlooks that Arbitrator Shelanski squarely rejected Retrophin's claims (including testimony and documentary evidence relating there to) that the consulting agreement was a "sham" contract. Second, it does not matter. Arbitrator Shelanski's decision setting forth the legal rights and obligations of the parties to Dr. Rosenfeld's agreement is admissible in evidence. Any attack the decision goes to the weight of the evidence, not its admissibility.

## II. Non-Hearsay Purpose And Rule 803(15)

In arguing against the admission of the arbitration decisions, the government: (1) relies again on two inapposite civil decisions by Judge Marrero for the proposition that "courts have routinely precluded the introduction of arbitration findings as hearsay"; (2) unpersuasively relegates *United States v. Fisher*, 106 F.3d 622 (5th Cir. 1997), to a footnote and abandons its prior basis for trying to distinguish the case; (3) makes significant and outcome-determinative concessions regarding the Second Circuit's decision in *United States v. Dupree*; and (4) admits that Rule 803(15) allows the admission of a statement within an arbitration decision that "purports to establish or affect an interest in property," but incorrectly asserts that such statements do not exist in either decision. We address each government position in turn.

First, the government mistakenly relies on two civil decisions. Gov't Opp. MIL, Dkt. 346, at 4. Judge Marrero's decisions in *Cary Oil* and *CareCore* do not cite any other cases

supporting exclusion of an arbitration decision. The parties offering those decisions may not have relied on the non-hearsay purpose of demonstrating the rights and obligations of the parties, and/or Rule 803(15). Moreover, Judge Marrero permitted cross-examination about them. *See Park W. Radiology v. CareCore Nat'l LLC*, 675 F. Supp. 2d 314, 330 (S.D.N.Y. 2009); *Cary Oil Co. v. MG Refining & Mktg., Inc.*, 257 F. Supp. 2d 768, 774 (S.D.N.Y. 2003).

Second, the government inexplicably relegates its discussion of *United States v. Fisher* to a footnote. Gov't Opp. MIL, Dkt. 346, at 4 n.2. This decision is devastating to the government's position. The government abandons its earlier arguments that *Fisher* was inapplicable because it was "[a]n after-the-fact judgment by an arbitrator." *See* Gov't June 9, 2017 Mem., Dkt. 237 at 13-14. Instead, the government argues that *Fisher* is not "binding on this Court." Gov't Opp. MIL, Dkt. 346, at 4 n.2. While true, the government overlooks that none of the decisions (including *Cary Oil* and *CareCore*) other than *United States v. Dupree* are binding on this Court, and the Fifth Circuit decision in *Fisher* is on all fours with the arbitrations at issue. Moreover, the government itself has frequently relied on out-of-circuit decisions in support of its motions. *See, e.g.*, Gov't Opp. MIL, Dkt. 346, at 70 (relying on a Seventh Circuit decision). The government claims that *Fisher* is "not directly applicable" because the Fifth Circuit "did not even consider whether the arbitration evidence constituted hearsay under Rule 801 or 802." *Id*. But it is patently obvious that the decisions contained hearsay, and the government in *Fisher* opposed admission, asserting that "a civil judgment is not admissible in a criminal case, particularly when the Government is not a party to both matters." 106 F.3d at 634. *Fisher*'s critical holding merits close attention: "The defendants have been found guilty of a crime and sentenced to substantial jail terms. Evidence ***that is so relevant must be extremely prejudicial to warrant its exclusion***

3

*in these circumstances*.  The arbitration results are not so inherently confusing that the defense should have been prevented from introducing them." *Id*. (emphasis added).

Third, the government's concessions regarding the Second Circuit's decision in *United States v. Dupree* are significant and outcome-determinative.  Although the government argued previously that *Dupree* was "inapposite" because the arbitration decisions at issue came years later, Gov't June 15, 2017 Letter, Dkt. 248 at 2, the government has now dropped that argument and recognizes the Second Circuit held the state-court TRO was admissible for the non-hearsay purpose of establishing the legal effect and obligations of the parties.  Gov't Opp. MIL, Dkt. 346, at 5.[1]  This time the government labels the Second Circuit's holding as "*dicta*" (which is not true)[2] and then argues against a proposition we did not advocate, that is, "*Dupree* plainly does not stand for the broader proposition that the entire contents of any arbitration or court memorandum, replete with factual and legal analysis, is admissible notwithstanding the hearsay rule." *Id*.  But we do not seek admission of the entire contents of the arbitration decisions.[3]

Fourth, the government now admits for the first time that Rule 803(15) allows the admission of statements within the arbitration decisions that "purport[] to establish or affect an interest in property," but *incorrectly* contends "[t]he plain text of that rule precludes admission of the Arbitration Decisions, because virtually none of the contents of those documents constitute a

---

[1]   The government relies on the same non-hearsay purpose of "legally operative verbal conduct" in connection with seeking admission of GX 242, citing *United States v. DiMaria*, 727 F.2d 265, 270 (2d Cir. 1984).

[2]   Ironically, the government argues here, on the one hand, that the *Dupree* Court's fulsome discussion of the admissibility of a state-court TRO for the non-hearsay purpose of verbal acts affecting the legal rights of parties is *dicta*, but then, on the other hand, contends in another portion of its brief that an email meets the same non-hearsay purpose because one sentence in a footnote in *DiMaria*, 727 F.2d at 270 n.4, stating the very same thing is binding precedent.  *See* Gov't Opp. MIL, Dkt. 346, at 54.

[3]   At a minimum, under *Fisher*, *Boulware*, and *Dupree*, the scope of Arbitrator Shelanski's decision reflecting the rights and obligations of the parties to Dr. Rosenfeld's consulting agreement with Retrophin, and the scope of Arbitrator Singer's decision reflecting the rights and obligations of the parties to Dr. Koestler's agreement with Mr. Shkreli, are admissible.

4

'statement . . . that purports to establish or affect an interest in property." *Id.* There are certainly statements within the arbitration decisions that do, in fact, establish or affect interest in property.[4] The government also agrees that "[i]f there were any dispute regarding whether Retrophin was responsible for the obligations under the consulting agreements, the Arbitration Decisions might be admissible under Rule 803(15)." Gov't Opp. MIL, Dkt. 346, at 6. Since the Superseding Indictment (¶ 32) alleges that Retrophin was defrauded of all the shares and cash paid to Dr. Rosenfeld, there is a material dispute regarding whether Retrophin was responsible for the obligations pursuant to Dr. Rosenfeld's consulting agreement. Notably, the government cannot distinguish the cases we cited in our motion. *Compare* Greebel Arb. MIL, Dkt. 342, at 18-19 *with* Gov't Opp. MIL, Dkt. 346, at 6 n.4.

Finally, the government cites no case law for its assertion that the hearsay "exceptions" on which we rely are "narrow." Gov't Opp. MIL, Dkt. 346, at 4. Relying on *Fisher*, *Boulware*, and *Dupree*, we seek to admit the decisions for a non-hearsay purpose and under Rule 803(15).

### III. Application of Rule 401 and Rule 403

The government's argument that the "arbitration decisions" are "irrelevant" disregards its own rendition of the low threshold of "relevance" pursuant to Rule 401, *see* Gov't Opp. MIL, Dkt. 346, at 23-24 (describing relevance as low threshold), and how the decisions contradict the government's own allegations, *id.* at 6-7.

---

[4] For example, the following statements by Arbitrator Shelanski establish or affect an interest in property: "The undersigned Arbitrator, having been duly sworn, having heard the proof, and having given full and fair consideration to the evidence submitted and all factual and legal arguments presented, does hereby issue the following relief: 1. Claimants have established their claim for breach of the Consulting Agreement and are awarded damages of $115,368. 2. ... Claimants are entitled to interest on the amount of $115,368 at the rate of 9 percent per annum, from November 20, 2014." Ex. A to Greebel Arb. MIL, Dkt. 342, at 14; and Arbitrator Shelanski's denial of Retrophin's request "to recover the value of 49,500 shares of stock and the $200,000 in cash that it paid to Claimants" for the "aggregate value" of $906,200. *Id.* at 13-14.

5

On the one hand, the government alleges that (a) Dr. Rosenfeld's consulting agreement with Retrophin was a "sham", (b) that no real consulting services were provided, and (c) that Retrophin was defrauded of every share and dollar paid to Dr. Rosenfeld. Yet on the other hand, the government argues that Arbitrator Shelanski's determination that Retrophin has an obligation to pay Dr. Rosenfeld under the agreement does not make any of these core allegations of the government's charge on Count Seven less likely. First, Arbitrator Shelanski's decision to award $115,368 to Dr. Rosenfeld and uphold Dr. Rosenfeld's receipt of an aggregate value of $906,200 ($200,000 in cash and 49,500 shares) directly undercuts the allegation in the indictment that Retrophin was defrauded of this money. *See* Superseding Ind. ¶ 32. The jury ought to know that Dr. Rosenfeld provided valid services to Retrophin; that, in turn, the company had a legal obligation to pay Dr. Rosenfeld his prior shares and money; and that Retrophin has an obligation to pay the remaining money and shares to Dr. Rosenfeld. Second, Arbitrator Shelanski's decision that Dr. Rosenfeld provided real consulting services pursuant to the agreement directly undercuts the allegation that the agreement was a "sham." For example, Arbitrator Shelanski found that, "[d]uring the period covered by the Agreement, Rosenfeld reviewed databases and spoke with contacts about potential biotechnology opportunities, some for his own investment and some that might be a fit for Retrophin, and he introduced an established scientist to a Retrophin consultant." Ex. A, Greebel Arb. MIL, Dkt. 342, at 6. Arbitrator Shelanski further found: "Although the Agreement's demands on Rosenfeld were minimal, those demands were met; there was no requirement that the services be of proven value. Retrophin failed to pay what was owed." *Id*. at 6-7. Third, Retrophin's legal obligation to Dr. Rosenfeld undercuts the government's contention that Mr. Greebel defrauded Retrophin of the shares and money paid to Dr. Rosenfeld.

The government seems to argue that the arbitration decisions would only be relevant under Rule 401 if they made some findings about whether or not Mr. Greebel engaged in fraud. Gov't Opp. MIL, Dkt. 346, at 7. But the parties' legal obligations and duties to Dr. Rosenfeld's consulting agreement and Mr. Koestler's stock agreement are critical to Mr. Greebel's defense.

The government also incorrectly invokes Rule 403 to ask this Court to exclude this highly relevant evidence. *Id*. at 7. The government's reliance on *United States v. Awadallah* is misplaced. There, the Second Circuit affirmed Judge Shira Scheindlin's order precluding the government from calling a grand juror to testify about the defendant's demeanor when answering questions. 436 F.3d 125, 133 (2d Cir. 2006). The Second Circuit repeated the Supreme Court's explanation of Rule 403 for a criminal defendant:

> As the Supreme Court, considering Rule 403, has explained that unfair prejudice, as to a criminal defendant, speaks to the capacity of some concededly relevant evidence to lure the fact finder into declaring guilty on a ground different from proof specific to the offense charged, or in other words, an undue tendency to suggest decision on an improper basis.

*Id*. (citations omitted). In excluding the testimony of a grand juror, the Second Circuit agreed with Judge Scheindlin that "[o]ne of the fundamental risks at a criminal trial is that the jury will infer the defendant's guilt from the fact of his indictment. Courts always stress that an indictment is merely a charge or accusation and that the Government must now prove the defendant's guilt beyond a reasonable doubt." *Id.* Judge Scheindlin's rejecting of the government's attempt to call a grand juror to testify about defendant's guilt is inapposite.

The government's further reliance on *United States v. Al-Moayad* is odd given that the Second Circuit vacated the convictions because, in relevant part, the government admitted "highly charged and emotional" testimony with "minimal evidentiary value." 545 F.3d 139, 159-60 (2d Cir. 2008). Even though the defendants were not charged with planning or carrying

7


out a bus bombing, the government called a witness who testified at length about the bombing and his cousin's death. *Id*. at 160. The Second Circuit held that "an eyewitness account of a violent, destructive, and fatal suicide bombing . . . was a blatant appeal to the jury's emotions and prejudices." *Id*. at 161. *Al-Moayad* stands for the proposition that the government should be careful about seeking admission of testimony designed to appeal to emotions and prejudices. By contrast, here, we are seeking to admit unemotional, highly relevant determinations regarding the legal rights and obligations of the parties to Dr. Rosenfeld's consulting agreement and Mr. Koestler's stock agreement and commitments.[5]

The government makes no mention of the Rule 403 analysis in *United States v. Fisher*, *United States v. Boulware*, and *United States v. Dupree* in arguing for exclusion under the same rule. The government's arguments to exclude the decisions mimic the concerns that the district courts accepted from the government in *Fisher* and *Boulware* only to have the Fifth Circuit and the Ninth Circuit vacate the convictions on appeal due to the exclusions. In *Fisher*, the court rejected the government's arguments that the arbitration decision was extremely prejudicial and would create confusion. 106 F.3d at 633-34. In *Boulware*, the Ninth Circuit held that the government's concerns that the state-court judgment was "unreliable," "would confuse the jury," and "would lead to a mini-trial to show the deficiencies in the evidence considered in the state case," could be addressed through a "cautionary instruction" and the trial judge's control over the admission of the evidence. 384 F.3d at 808.

Moreover, the very same government that appealed Your Honor's decision to exclude a state-court TRO in *Dupree*, arguing that the state court order would *not* create confusion or

---

[5] The government's parenthetical citation to *Abramowitz v. Inta-Boro Acres, Inc.*, No. 98-CV-4139 (ILG), 1999 WL 1288942, at *6 (E.D.N.Y. Nov. 16, 1999), is inapposite because of the special statutory application of the Age Discrimination in Employment Act ("ADEA"). There, the district court excluded the documents at issue pursuant to Rule 403 for reasons inapplicable to this criminal case. *Id*. at *9.

8

mislead the jury, now takes the opposite position in an attempt to exclude similar evidence. And the Second Circuit in *Dupree* accepted the same government's arguments that "such dangers can often be cured by careful limiting instructions . . . and we see no basis on the present record for concluding that such instructions would be ineffective here." 706 F.3d at 138-39. As in *Fisher*, *Boulware*, and *Dupree*, this Court can provide limiting instructions to address the government's expressed concerns about the risk of confusion and what the jury can and cannot do with the arbitration decisions. *See* Gov't Opp. MIL, Dkt. 346, at 7-10. The government's argument that the admissibility of the arbitration decisions "may also lead the jury to make inappropriate credibility determinations, including giving undue deference to the arbitrators who handled the proceedings" would mean that no trial court could ever admit any arbitration decision or court order into evidence. That is contrary to the Second Circuit's decision in *Dupree* that the alleged danger that "a jury might place undue emphasis on the Order simply because a judge issued it" can often be cured by careful limiting instructions. 706 F.3d at 138-39.

While credibility determinations rest with the jury, the government's desire to exclude highly relevant evidence in the name of witness credibility jeopardizes our client's right to defend himself. The government's reliance on the Fifth Circuit's decision in *Streber v. Hunter*, 221 F.3d 701, 737-38 (5th Cir. 2000), is inapposite because the defendants there moved to admit a Tax Court opinion to show that the Tax Court had determined that one of the plaintiffs was "not credible" and that she "failed to tell the truth."

Finally, contrary to *Fisher*, *Boulware*, and *Dupree*, the government argues admission of the decisions "would lead to a distracting, wasteful, and inefficient trial within a trial," Gov't Opp. MIL, Dkt. 346, at 9, and thus the legal rights and obligations of the parties to these agreements should be concealed from the jury. This argument makes no sense. The legal

9

obligations of the parties to Dr. Rosenfeld's and Mr. Koestler's agreements cannot be ignored merely because the government does not like those facts. Without any support, the government claims that it would have "to put on a lengthy presentation of evidence to demonstrate that the proceedings were based on evidence in the criminal case, that witnesses may have provided inaccurate testimony and that certain key facts were not brought forth during the proceeding." *Id.* at 10. But the government fails to identify a single additional witness it would have to call. If a witness at the criminal trial provided "inaccurate testimony" at an arbitration, the government can cross-examine that witness. If the government had evidence that a witness relating to the legal rights and obligations of these agreements did not disclose "key facts," the government can cross-examine the witness about that issue. And the government's claim that a trial within a trial "would also require exposing the jury to various tangential legal issues," *id.*, ignores this Court's ability to control the scope of testimony and evidence at trial.

In making this "trial within a trial" claim, the government invokes the Second Circuit's decision in *United States v. Aboumoussallem*, 726 F.2d 906 (2d Cir. 1984), for the proposition that this Court should exclude the arbitration decisions. But *Aboumoussallem* supports our motion.[6] Indeed, the Second Circuit was highly critical of the district court's exclusion of evidence on the basis that it would result in a "trial within a trial." *Id.* at 912. Specifically, the Second Circuit stated: "The testimony of Golding and Mina, and rebutting evidence, if presented, would probably not have consumed much time nor greatly perplexed the jury." *Id.* The same is true with respect to the arbitration decisions here.

---

[6] *United States v. Aboumoussallem* also squarely supports our position that Rule 404(b) has a heightened standard when the government seeks to admit other acts of the defendant on trial, but a much lower standard when the defense seeks to admit other acts of third-parties. *See* Greebel Reply Mem. Law Regarding Irrelevant, Misleading, and Unfairly Prejudicial Evidence, Dkt. 351, at 3.

10

Dated: New York, New York
August 30, 2017

/s/ Reed Brodsky
Reed Brodsky
Winston Y. Chan
Randy M. Mastro
Lisa H. Rubin

GIBSON, DUNN & CRUTCHER LLP
200 Park Avenue
New York, NY 10166
(212) 351-4000
rbrodsky@gibsondunn.com
*Counsel for Defendant Evan Greebel*

11