1

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - -X
UNITED STATES OF AMERICA,  :  15-CR-637(KAM)
                           :
                           :
                           :
     -against-             :  United States Courthouse
                           :  Brooklyn, New York
                           :
                           :
                           :
MARTIN SHKRELI AND EVAN    :  Monday, May 15, 2017
GREEBEL,                   :  2:00 p.m.
                           :
     Defendants.           :
                           :
                           :
- - - - - - - - - - - - - - - -X

TRANSCRIPT OF CRIMINAL CAUSE FOR MOTION HEARING
BEFORE THE HONORABLE KIYO A. MATSUMOTO
UNITED STATES DISTRICT JUDGE

A P P E A R A N C E S:

For the Government:       BRIDGET M. ROHDE, ESQ.
                          United States Attorney
                          Eastern District of New York
                               271 Cadman Plaza East
                               Brooklyn, New York 11201
                          BY: JACQUELYN KASULIS, ESQ.
                               ALIXANDRA E. SMITH, ESQ.
                               G. KARTHIK SRINIVASAN, ESQ.
                               Assistant United States Attorneys


For the Defendant:        GIBSON DUNN & CRUTCHER, LLP
Evan Greebel              Attorneys for the Defendant -
                          Evan Greebel
                               200 Park Avenue, 47th floor
                               New York, New York 10166
                          BY: LISA H. RUBIN, ESQ.
                               REED BRODSKY, ESQ.


Court Reporter:  Angela Grant, RPR, CRR
                 Official Court Reporter

Proceedings recorded by computerized stenography.  Transcript
produced by Computer-aided Transcription.

```
                    Proceedings                         2
```

1           (In open court at 2:01 p.m.)

2           (Defendant Evan Greebel present in open court.)

3           COURTROOM DEPUTY:  All rise.

4           This is criminal oral argument on Mr. Greebel's

5    motion to strike language from paragraph 7 of the

6    Superseding Indictment and to dismiss Count Eight of the

7    Superseding Indictment.

8           Will counsel on behalf of the government state

9    your appearances, please.

10          MS. KASULIS:  Sure.  Jacquelyn Kasulis, Alixandra

11   Smith and Karthik Srinivasan for the government.

12          Good afternoon, Your Honor.

13          THE COURT:  Good afternoon.

14          COURTROOM DEPUTY:  And on behalf of Mr. Greebel.

15          MS. RUBIN:  Lisa Rubin and Reed Brodsky for

16   Mr. Greebel.

17          MR. BRODSKY:  Good afternoon.

18          THE COURT:  Good afternoon.

19          Good afternoon, Mr. Greebel.

20          All right.  This is the defense motion so if you'd

21   like to be heard, I'm happy to hear from the defendant.

22          MR. BRODSKY:  Yes.  Thank you so much, Your Honor.

23          Our first motion is a motion to strike the

24   surplusage which is found in the prefatory language of

25   paragraph 7 of the Superseding Indictment.  As Your Honor

Proceedings                                                    3

1    knows, it appeared originally in the indictment filed in

2    December of 2015 in paragraph 7.  Then it was the allegation

3    in paragraph 7 "In or about and between September 2009 and

4    September 2014, the defendant, Martin Shkreli, together with

5    the defendant Evan Greebel and others, orchestrated three

6    interrelated fraudulent schemes."

7            And then it appeared under paragraph 7, (a) was

8    the MSMB Capital scheme; (b) was the alleged MSMB Healthcare

9    scheme; and (c) was the alleged Retrophin scheme.  Then in

10   the Superseding Indictment, as Your Honor knows, filed on or

11   about June 3, 2016, the government, on paragraph 7, had the

12   exact same prefatory language with one exception, the three

13   interrelated, alleged interrelated fraudulent schemes became

14   four interrelated fraudulent schemes; 7(a) was the MSMB

15   Capital scheme, 7(b) was the MSMB Healthcare scheme.

16           Your Honor, what this has done from the very

17   outset from our perspective is it has created the very, very

18   clear misimpression that Mr. Greebel has been charged in

19   connection with and orchestrating with Mr. Shkreli the MSMB

20   Capital Hedge Fund Scheme and the alleged MSMB Healthcare

21   Hedge Fund Scheme.

22           Now, taking a step back, that language in

23   paragraph 7 is reincorporated in all of the charges from One

24   through Seven -- One through Eight -- One through Seven and

25   then One through Eight.  Mr. Greebel is not mentioned at all

Proceedings                               4

1   in paragraphs 8 through 15 describing the MSMB Capital Hedge

2   Fund Scheme; in paragraph 16 through 20 describing the MSMB

3   Healthcare Hedge Fund Scheme; in paragraphs 41 to 47, which

4   are Counts One through Three; and Counts Four through Six,

5   paragraphs 48 to 54.

6           Then the government reflected in their recent

7   submission from their submission with respect to Rule 104

8   the request for a 104 hearing.  And then later with their

9   opposition to the motion to strike the surplusage, the

10  government appears to us essentially says that they are not

11  alleging Mr. Greebel was involved in, participated in

12  orchestrated the MSMB Capital Hedge Fund Scheme or the MSMB

13  Healthcare Hedge Fund Scheme, and, in essence, what we have

14  here is a mistake.  It appears to us the government is

15  acknowledging that.  And this mistake, this document which

16  is originally the indictment and then the Superseding

17  Indictment, is the most important document in the case.  It

18  is the most important document because it is the charges

19  against Mr. Greebel, and so it's very significant to us that

20  it appears there.  And it goes to a core of our defense.

21          And as Your Honor knows, Counts -- the hedge --

22  the MSMB -- the alleged MSMB Capital Hedge Fund Scheme and

23  then the MSMB -- the alleged MSMB Healthcare Hedge Fund

24  Scheme are the predicates.  The government uses the word

25  "interrelated," and then they serve as the predicates for

Proceedings                                    5

1    the alleged Retrophin-related schemes charged in Count Seven

2    and Counts Eight.

3              One of our core defenses, as Your Honor knows, is

4    that Mr. Greebel was lied to and so any allegation that

5    suggests he was a participant or a knowledge of the MSMB

6    Hedge Fund Schemes is quite significant and proof that

7    Mr. Greebel had no involvement and that there won't be any

8    allegation that he knew about, approved, condoned in any way

9    these MSMB hedge fund schemes.  It's quite significant to

10   our defense.

11             Now, the government, in their opposition, it

12   appears to acknowledge, seems to acknowledge that it's a

13   mistake.  They said we should ignore the language or that

14   the language doesn't mean what it says.  And then in a

15   footnote they say, in Footnote 12, that they offer to strike

16   the language the defendant, Evan Greebel, in paragraph 7 of

17   the prefatory language, if Your Honor sends the indictment

18   back to -- with the jury.

19             Looking at the case law, that's not sufficient.

20   If it's a mistake, it should be stricken.  And I'll explain

21   the prejudice, Your Honor, to us.

22             THE COURT:  Well, what if the government does

23   agree to strike it regardless of whether I send the

24   Superseding Indictment back to the jury, would you be

25   willing to do that, that little phrase in paragraph 7 that

Proceedings                              6

1   reads "together with the defendant Evan Greebel and," the

2   word "and"?

3           MS. KASULIS:  Your Honor, our position is that

4   there actually is no legal basis to do so so we oppose that.

5           We had offered, if the indictment was to be sent

6   back to the jury, to obviate any risk of confusion with the

7   jury that it could be stricken, but we do not believe that

8   there's a legal basis to do so.

9           THE COURT:  I mean, I'll tell you frankly, just so

10  you're prepared, I probably would allow the indictment to go

11  back to the jury with the instruction that this is not

12  evidence but rather frames the counts and defines the counts

13  that the government will have to prove, that is, Counts

14  Seven and Eight, beyond a reasonable doubt.

15          MS. KASULIS:  And, Your Honor, if Your Honor is so

16  inclined to do that, we'd have to redact the indictment

17  anyway because it would be referring to both defendants in

18  the indictment.  And so doing the additional redaction it

19  wouldn't stand out or anything like that with respect to

20  what's sent to the jury.

21          THE COURT:  All right.  Would that just moot that

22  first basis for your motion?

23          MR. BRODSKY:  Almost, Your Honor.

24          I don't want to take a position now because we

25  haven't done the research, and we would want to do the

Proceedings                                        7

1    research on whether or not we could take a position on

2    sending the indictment back with --

3              THE COURT:  All right.

4              MR. BRODSKY:  -- with the jury.

5              THE COURT:  You're definitely welcome to argue

6    against it.  I do it in cases where there's a lengthy

7    indictment.  This is not particularly lengthy.  It's only

8    really 34 pages long, but sometimes the jurors will be

9    assisted with understanding the charges if they have the

10   indictment.

11             As you know, the indictment goes well beyond just

12   reciting the elements of each of the counts, but rather sets

13   forth a lot of background facts which, again, the government

14   will have to prove beyond a reasonable doubt, but I think is

15   helpful to the reader to understand the nature of the

16   charges.

17             MR. BRODSKY:  I understand, Your Honor.  And I

18   would want to research it only because there is something

19   about an official document from a grand jury, you know.  The

20   jurors generally don't have as sophisticated understanding

21   of the criminal justice system, and although Your Honor, I'm

22   sure, will instruct them, a grand jury only needs to find

23   probable cause, 51 percent likelihood and it's a partial

24   presentation of the evidence from the government in secret.

25   An official document, we would want to think about whether

Proceedings                                                8

1    or not we would have an issue and express it to Your Honor

2    about sending an official document back.  But given that and

3    given the possibility that we -- and what the government

4    said is that they would redact, if Your Honor sent it back

5    to the jury, most of the paragraphs.  I mean, a good part of

6    this indictment, many of the pages, relate to the MSMB

7    Capital and MSMB Healthcare Hedge Fund Schemes and so a

8    significant amount of this 34 page or document would be

9    redacted and omitted and it would become even more

10   simplified.

11        THE COURT:  And your argument that the jury would

12   be confused by the language in the indictment would then be

13   moot I would think.

14        MR. BRODSKY:  Yes, Your Honor, if you do send it

15   back.

16        THE COURT:  All right.

17        MR. BRODSKY:  I would want to reserve that if Your

18   Honor does not send it back, because we object and Your

19   Honor is persuaded by our objection, the reason it should be

20   stricken is the law is very clear that if a jury could draw

21   an inference that the defendant is accused of crimes that

22   they're not charged in the indictment with, it should be

23   stricken.  The law is also clear -- and that's the United

24   States versus DeFabritus case.

25        In United States versus Booth there was -- the

Proceedings                                              9

1   Court -- the district court there said the language should

2   be stricken if it's inconsistent with the government's

3   theory.

4              And then finally, Your Honor, there's good case

5   law that reflects that if the language adds nothing to the

6   charges, it gives no further information, and it creates the

7   danger a prosecutor at trial could impermissibly enlarge the

8   charges, then it should be stricken.

9              For all those reasons it's prejudicial to us, and

10  the reason why it's significant not only with respect to

11  Your Honor sending it back to the jury, if the indictment

12  gets sent back, is we want the very clear ruling that

13  Mr. Greebel is not alleged to have orchestrated and been

14  involved in the MSMB Capital Hedge Fund Scheme and the MSMB

15  Healthcare Hedge Fund Scheme.  He hasn't been charged with

16  that.

17             The language that he's been charged with is very

18  clear in Count Seven and Eight.  And what we don't want to

19  happen at a trial is -- and I don't like to object during

20  openings -- is the government to get up and even though the

21  indictment is not sent back, we will hear the phrase

22  "interrelated schemes" and that Mr. Greebel and Mr. Shkreli

23  orchestrated it and/or they did it together.  And that would

24  be extremely damaging and impermissible from our

25  perspective.  It would be a violation of due process, it

Proceedings                                              10

1    would be a violation of inferring to the jury that

2    Mr. Greebel has been charged with something that he's not.

3    And the government, in its motion on page 12, alleged that

4    in connection with the motion where they oppose our motion

5    to strike and they oppose Mr. Shkreli's various motions,

6    they actually alleged that Mr. Greebel and Mr. Shkreli were

7    involved together improperly classifying an investment by

8    MSMB Healthcare and Retrophin as a loan.  That's a quote

9    from the government's brief on page 12.

10            And it makes us very nervous that the government

11   has included this interrelated language in at least four of

12   their briefs since the fall of last year.  Actually, it

13   started with their opposition to a stay of -- in their

14   motion opposing our motion to continue the SEC case they

15   used that language and then they picked out that language in

16   multiple other motions with respect to the Bill of

17   Particulars and with respect to severance.  And although

18   there are literally hundreds of paragraphs including sub

19   paragraphs in the indictment, that language was relied on by

20   the government in various motions, and so it makes us

21   extremely nervous if that's not stricken.

22            THE COURT:  Well, let me ask you something:  Are

23   you taking the position that the government will be unable

24   to present any background information about Counts One

25   through Six given that you have a separate trial?

```
                        Proceedings                    11
```

1           MR. BRODSKY:  No.

2           THE COURT:  Because I think it was clear

3    throughout the arguments and in the briefing that the

4    government did intend to provide background evidence of what

5    happened beforehand, that is, before Mr. Greebel got

6    involved in the activities charged in Counts Seven and

7    Eight.

8           MR. BRODSKY:  Understandably, Your Honor.  They

9    will bring in that Mr. Shkreli was involved in misleading

10   investors allegedly with MSMB Healthcare and MSMB Capital

11   and we fully expect that and we understand Your Honor's

12   ruling on that area.

13          What we don't find acceptable, is because he

14   hasn't been charged in Counts One through Six and he

15   hasn't -- there's no allegation that he was involved in

16   orchestrating Counts One through Six.  The government may

17   present that argument on Counts One through Six to the jury,

18   but it should be clear that that is an allegation against

19   Mr. Shkreli and others and not an allegation against

20   Mr. Greebel.

21          And if they're going to allege otherwise, if

22   they're going to argue otherwise before the jury, we deserve

23   fair notice and we deserve the ability to, to argue against

24   that.

25          Beyond that, Your Honor, that's with respect to

Proceedings                            12

1   this case and that's why it's important, we believe you

2   should strike it with respect to this case.  But beyond that

3   allegations by the government against Mr. Greebel,

4   regardless of result in his trial, they live forever and so

5   the government and its agencies and divisions will rely on

6   the charging instrument for how they say Mr. Greebel, what

7   he was charged with.  And it's important to us that he's

8   not been charged with respect to Counts One through Six and

9   yet paragraph 7 precludes us from saying that given the

10  language.

11          So that's why, Your Honor, we believe the case law

12  supports us.  We understand the government's argument,

13  principal argument against it is they say that they're

14  not -- they're rarely granted.  But to me the argument that

15  you're rarely granted simply is a reflection of two things;

16  one, it's rare for the government to make a mistake like

17  this in an indictment.  And, two, it is, it is maybe perhaps

18  not common.  I haven't done a study as to how many people

19  move to strike when there is an allegation that's a mistake

20  in an indictment.

21          When presented though, there are cases that

22  reflect when there's a clear mistake, it should be stricken.

23          THE COURT:  Well, why isn't the language in each

24  of the first six counts where only Mr. Shkreli is named, why

25  is that not sufficient and clear and why does it create

Proceedings                                    13

1   confusion?

2          If one reads, you know, after reading the

3   paragraphs 1 through 40 are repeated and incorporated in

4   each of Counts One through Six, the very next paragraph

5   charges only Mr. Shkreli.  Why would there be a reading of

6   these counts that would suggest that Mr. Greebel was named

7   or charged in Counts One through Six?

8          MR. BRODSKY:  Unfortunately, Your Honor, because

9   of the very language in paragraph 7, the prefatory language,

10  so if that language was not there and it was not

11  reincorporated before every count -- so if you look at every

12  count, the first paragraph under every count says the

13  allegations contained in paragraphs 1 through X are

14  realleged and reincorporated, and so that includes paragraph

15  7 in each and every one.  And paragraph 7 is very clear,

16  unfortunately, that it says Martin Shkreli, together with

17  the Defendant Evan Greebel and others, orchestrated four

18  interrelated fraudulent schemes.  There is -- first of all,

19  Your Honor, that's the reasonable way to read it, we

20  certainly read it that way.  We know Your Honor quoted that

21  language in your opinion with respect to denying the -- with

22  respect to the stay issue.  The government has quoted that

23  language multiple times.  Mr. Shkreli in his motion for

24  severance or his motion for reliance on the advice of

25  counsel with respect to severance relied on that actual

Proceedings                                          14

1   language, quoted it, and suggested that Mr. Greebel was

2   involved in these MSMB Capital schemes, and that served as

3   the basis for one of his arguments for reliance on the

4   advice of counsel.  So without that language, Your Honor, I

5   would say it is clear.  But with that language,

6   unfortunately, it is not clear.

7            And we have a legitimate fear that what the

8   government will do is they'll say, you have notice that he

9   was charged with orchestrating the MSMB Capital Hedge Fund

10  Scheme and the MSMB Healthcare Hedge Fund Scheme.

11           THE COURT:  What is the good-faith basis for that

12  fear when they've represented they're not going to do that?

13           MR. BRODSKY:  What they've represented -- I've

14  tried to parse the language of their opposition, Your Honor,

15  and I'm having -- I'm struggling with understanding exactly

16  the basis for their opposition.  So if I go to their

17  opposition, to our motion to strike, and that's, again,

18  docket number 189.  And if Your Honor turns to the language

19  in their pages 36, 37, and the top of 38, it is not clear

20  what they're saying from our perspective.

21           And if there is no prejudice to the government

22  from striking this language, and we can't even fathom one,

23  the government hasn't alleged this prejudice to them from

24  striking the language.  We can't even conceive of what

25  possible prejudice there is to the government from striking

1   language that they are going to concede is not an argument

2   they're going to make, then why not strike the language?

3   Just because it's rare does not mean it's incorrect to

4   strike the language.  The correct thing to do is if they're

5   not going to allege that Mr. Greebel orchestrated with

6   Mr. Shkreli these other schemes, the correct thing to do is

7   to strike the language.  There's no harm to them.

8          And so when you weigh the harm to us and the

9   potential harms to us against the zero harm to the

10  government from striking this language --

11         THE COURT:  Other than the fact that this is in a

12  record that will survive time as you say, that is, referring

13  to the Superseding Indictment, and assuming then I don't

14  send back the Superseding Indictment with the jury, what is

15  the harm to you --

16         MR. BRODSKY:  If Your Honor --

17         THE COURT:  If they've represented they're not

18  going to, you know, expand the charges?

19         They cite in their opposition Second Circuit law

20  that the motion to strike should not be granted unless "the

21  challenged allegations are not relevant to the crime charged

22  and are inflammatory and prejudicial."

23         And then they cite other cases that say even if it

24  is prejudicial, it shouldn't be stricken if the language --

25  if evidence of the allegation is admissible and relevant to

Proceedings                                          16

1    the charge.

2          You've conceded that evidence regarding Counts One

3    through Six will be admissible and relevant to the jury's

4    understanding of Counts Seven and Eight so I'm not getting a

5    sense of what your showing of prejudice is.

6          MR. BRODSKY:  The showing of prejudice, Your

7    Honor, is just that language.  We have no issue --

8          THE COURT:  But you can't -- talk about

9    tautologies.  It's prejudiced because the language is

10   prejudicial.

11         MR. BRODSKY:  I'm sorry, Your Honor.  Let me list

12   out the various prejudice.

13         THE COURT:  All right.  Because they've already

14   said they're not going to be expanding the charges; that the

15   jury will be instructed accordingly; that Mr. Greebel is

16   only charged in these two counts, Count Seven and Eight.

17   And, again, even if prejudiced -- even if prejudicial, it

18   shouldn't be stricken if evidence regarding the allegation

19   is admissible and relevant.

20         MR. BRODSKY:  Well, we cite some cases, Your

21   Honor, where courts did -- district courts did, despite that

22   other language from cases, strike the language because it

23   was clearly a mistake and clearly inconsistent with the

24   government's theory of the case.  The same holds true here,

25   it's inconsistent with the government's theory of the case,

Proceedings                                      17

1   and it's -- and it creates a risk of confusion.

2        If the government is going to stand up and say we

3   are not going to allege ever in front of this jury that

4   Mr. Greebel orchestrated with respect to the scheme to

5   defraud MSMB Capital Hedge Fund investors and MSMB

6   Healthcare Hedge Fund investors, and Your Honor doesn't send

7   back the indictment and they're not going to make such an

8   argument and they're precluded from making such an argument,

9   then the prejudice to us is in the future with respect to

10  people picking up the indictment and the probation officer,

11  God forbid if there was any, a finding of guilt, which we

12  don't believe there would be on the evidence, and the way

13  other -- even if there's an acquittal, Your Honor, the way

14  other federal government agencies work, if you ever apply

15  for a job or you ever look for something, they always look

16  to the indictment as to what the charging language is.

17       THE COURT:  I don't necessarily know that you have

18  an evidentiary basis for making that statement.  I mean, and

19  even if it were true, the indictment here clearly fails to

20  charge Mr. Greebel in Counts One through Six.  You know, the

21  name is capitalized, his name doesn't appear anywhere in

22  those first six counts.  I'm just not sure how you could

23  argue that this is a risk.

24       MR. BRODSKY:  Well, the only thing I'd rely on,

25  Your Honor, for that is how the average reader, the

Proceedings                                    18

1    reasonable person, would read paragraph 7.  And how it's

2    been cited over and over again by the government and it was

3    cited for Mr. Shkreli for his purposes.  And so we read this

4    language, and we parsed this indictment from December of

5    2015 and then the Superseding Indictment, and we certainly

6    read this language as alleging that Mr. Greebel is being

7    charged, although he's not charged in Counts One through

8    Six, he is -- there is a serious allegation here that Martin

9    Shkreli, together with Evan Greebel and others, orchestrated

10   all four schemes, and we did take it that way.  And I think

11   that's a reasonable inference to draw, and I think other

12   people will draw the same inference and I know the language

13   has appeared repeatedly in briefs and in arguments.

14        I know the government concedes or recognizes

15   because in their opposition they say it is "farfetched for

16   anyone to believe that the government has accused or will

17   accuse Mr. Greebel of being involved in the hedge fund

18   schemes."  And if that's the case, all I say is we can moot

19   all of this by the same concession they give if you give the

20   indictment back to the jury.

21        If you give the indictment back to the jury, the

22   government says, okay, strike the language, but otherwise

23   they don't want to.  And what confuses me is why?  If

24   there's no prejudice to them, and we feel deeply prejudiced

25   by it --

Proceedings                                    19

1      THE COURT:  But feeling it and showing it are two

2  different things.

3      MR. BRODSKY:  And the only way I can show it, Your

4  Honor, is to say that the arguments related to this will

5  create confusion.  It certainly confused us.  And it is,

6  under the case law, if it's inconsistent with the

7  government's theory, it should be surplusage and stricken.

8      All I can rely on, Your Honor, is the cases before

9  us that say, you know, where the government has alleged, for

10  example, among other -- use the language among other things

11  in indictment, courts have struck that.  And all I can rely

12  on are these prior cases and the case law that says if it's

13  inconsistent with the government's theory, it should be

14  stricken.  And if it doesn't add anything and it creates a

15  danger of prejudice, it creates a risk of jury confusion.

16  And it's hard for me to identify beyond that because there's

17  been no trial and there's been no proceeding.  But in light

18  of the government's view that it should be stricken if it

19  goes back to a jury, let's just strike it and it will

20  satisfy our concerns about the risks that are presented by

21  this.

22      Thank you, Your Honor.

23      THE COURT:  Thank you.

24      MR. BRODSKY:  Should we go back -- I know we have

25  another motion.  Maybe it makes sense, Your Honor, if I step

Proceedings                                        20

1    down.

2            THE COURT:  All right.  Let's hear from

3    Ms. Kasulis and then you can come back.

4            MS. KASULIS:  Your Honor, just to respond briefly

5    because I think it's clear that the Court understands the

6    issues here.  You know, we have stated we, obviously, know

7    who is charged in which count in this case and we are --

8    this language is certainly not going to allow us to stand up

9    and say that Mr. Greebel is charged in Counts One through

10   Eight particularly because now that there's been severance,

11   there will be no Counts One through Six that we're even

12   discussing.  It's just the Count Seven and Eight so I don't

13   think this language creates any danger along those lines.

14           THE COURT:  Well, let's go back.

15           If paragraph 7 though is going to be partly

16   redacted, Superseding Indictment, would you then change the

17   language to talk about orchestrating, would it be two

18   interrelated fraud schemes?  I guess, you know, what kind of

19   redaction would you propose?  And I'm just trying to get to

20   a solution where you, the government and Mr. Greebel's

21   counsel could just realize a sufficient comfort level to

22   come to some sort of an agreement on this.

23           MS. KASULIS:  And I think that's certainly

24   something we would consider doing is saying two interrelated

25   schemes.  I haven't thought, you know, a lot about what this

1   redacted version would look like, but I think that's

2   certainly a suggestion that makes sense with respect to

3   redacting the indictment.  So we could certainly attempt to

4   create a redacted version with defense to submit to the

5   Court, and if there are any sort of differences of opinion

6   on certain language, we can then submit just those

7   differences to Your Honor if that's how Your Honor would

8   like us to proceed.

9           THE COURT:  But why such a strong resistance to

10   just striking this anyway?  I understand the case law is in

11   your favor, the Second Circuit case law, but, you know, and

12   I understand that some of the arguments that the defense

13   makes are maybe not based on a reasonable reading of the

14   indictment, but why not just take it out?

15           MS. KASULIS:  Your Honor, I think, you know, we

16   feel strongly that there is no legal basis, and we charge a

17   lot of cases in this manner.  And so just because, well, you

18   know, what's the harm of striking sort of opens us up to

19   then sort of, you know, redlining our indictment about, oh,

20   like does the government really need that sentence or that

21   sentence?  And I think we just don't want to go down that

22   path.  We really don't see what the legal basis is here.

23   We've proposed solutions obviously that could, you know,

24   address any of the concerns that Mr. Greebel has.  And so we

25   just don't see, you know -- we don't support striking that

Proceedings                                          22

1    kind of language in this instance.

2         THE COURT:  Well, all right.  I think that if this

3    indictment were to go to the jury just to sort of guide them

4    as to what the charges are, and you've agreed to strike this

5    language from paragraph 7, it just seems odd to me that you

6    would just resist because you want to keep it in there.  You

7    would resist striking it whether or not this goes back.  I

8    think, you know, certainly as we know you're going to be

9    presenting evidence of the first two schemes involving only

10   Mr. Shkreli or I should say in which he's charged, why not

11   just agree in this instance?

12        MS. KASULIS:  Your Honor, I know -- look,

13   obviously we understand the concern.  I mean, again, we just

14   don't think there's a basis from which to do so.  And, you

15   know, again, any risk of confusion, there really has been no

16   demonstrated prejudice.  And, again, a concern that this

17   just opens the government up to just editing of our

18   indictments going forward because, you know, oh, what's the

19   harm and it just addresses this concern that there doesn't

20   seem to be much basis for the concern, I think that's just a

21   road that we do not want to go down.

22        And, again, we're also concerned, Your Honor, that

23   this sort of focusing on this language is really about a

24   bigger issue which is limiting the government with respect

25   to evidence of the two, the first two MSMB schemes charged

Proceedings                                          23

1   in the indictment.  And so, you know, while we have said

2   that it is farfetched that we would argue that Mr. Greebel

3   orchestrated the four schemes with Mr. Shkreli, there's

4   obviously, the government is going to seek to admit a lot of

5   evidence regarding the MSMB schemes because it really

6   informs, obviously, the two Retrophin schemes in which

7   Mr. Greebel is charged.

8            You know, I just wanted to make -- to correct the

9   record.  I don't think that there was any misstatement, but

10  just to make clear, what we had said previously with respect

11  to Mr. Greebel's involvement in the MSMB schemes was that we

12  do not see any evidence that Mr. Greebel, with Mr. Shkreli,

13  made those material misreps and omissions to the investors,

14  but knowledge regarding what happened with respect to those

15  investors and their money and the coverup later on in

16  various ways in order to try to address those investors' ire

17  over what had happened is very relevant to Mr. Greebel's

18  case.  And so we just want to make sure that the record is

19  clear with respect to what we have argued in the past, what

20  we have always argued with respect to Mr. Greebel and how

21  the two MSMB schemes, facts related to those schemes are

22  absolutely relevant to Count Seven and Eight and we will

23  move to introduce that evidence at trial.

24            THE COURT:  All right.  Thank you.

25            MR. BRODSKY:  Your Honor, may I just briefly --

Proceedings                                    24

1          THE COURT:  Yes.

2          MR. BRODSKY:  -- respond to that with respect to

3    the first argument?

4          We have found cases, and I can't cite them to you

5    sitting right here, where the government in the past in

6    published decisions has agreed to strike language in

7    indictments.  So the first argument which is that the

8    government doesn't want to agree to strike language because

9    they anticipate future arguments about striking language,

10   that water is under the bridge.  The government in the past

11   has agreed to strike language which is inaccurate.

12         In addition, courts have struck language.  So the

13   precedent -- there's a whole doctrine of surplusage because

14   of this.  And I only think people move to strike when they

15   have a good-faith basis and they have arguments to do so,

16   otherwise the motions are denied.

17         Secondly, Your Honor, we commit to you, we will

18   not argue that if you strike this language it will have any

19   impact on our argument with respect to -- we will not argue

20   the striking of this language limits the government in their

21   ability with respect to what evidence they want to admit in

22   the MSMB Healthcare and the MSMB Capital Hedge Fund Schemes.

23         They will seek to admit what they believe to be

24   relevant evidence is, and as that evidence is admitted or

25   not admitted, we will make the appropriate arguments.  But

Proceedings                                  25

1   we will never be arguing to Your Honor that because language

2   was struck that reflects Mr. Greebel's not charged in those

3   schemes, it means that the evidence is further limited.

4   That is not an argument you will hear from us.

5           Should I turn to the motion to dismiss,

6   Count Eight?

7           THE COURT:  Did you want to say something else?

8           MS. KASULIS:  Just very briefly, Your Honor.

9           In the instances where the government has agreed

10  to strike language, as Mr. Brodsky stated, is because it

11  conceded that the language was inaccurate, and that's not

12  what we're doing here.  We haven't conceded that the

13  language is inaccurate, and, therefore, we believe there is

14  no basis from which to strike.

15          THE COURT:  Well, I think the word "orchestrated"

16  suggests that he was involved somehow in putting together

17  and effectuating four interrelated schemes, and that's where

18  I somewhat have some hesitation in accepting the

19  government's view.

20          It is technically inaccurate that Mr. Greebel and

21  Mr. Shkreli together formulated and participated in the MSMB

22  fraud scheme.  But I agree with the government that as

23  charged and as extensively disclosed, that Mr. Greebel is

24  charged with knowing about this history of the MSMB scheme

25  and assisting Mr. Shkreli in packaging it in a way to effect

Proceedings                                              26

1   and obtain Retrophin assets to nullify MSMB investors.

2          MR. BRODSKY:  I understand what the government

3   intends to try to prove to the jury.

4          As we pointed out to Your Honor through email

5   communications, Mr. Shkreli lied to Mr. Greebel about

6   various things related to MSMB, including the very lie they

7   intend to prove against Mr. Shkreli which is that he told

8   Mr. Greebel MSMB entities had $40 million under management.

9   It is very significant to us that if the jury stands up and

10  they say Mr. Greebel knew about and learned about these lies

11  to investors, well, we'll obviously put on our evidence that

12  will show that Mr. Shkreli lied to him as well.  And so I

13  understand the government's argument about they want to

14  allege in connection with Count Seven and Eight that there

15  was a conspiracy and Mr. Greebel knew about these bad things

16  and, therefore, participated in it.  And we welcome them in

17  doing it because we think it strengthens our case and it

18  strengths our defense when we're able to show these are

19  lies.

20         But what we feel is important is they seem to say

21  they're not alleging he orchestrated the two schemes, but

22  they don't want to acknowledge that as you -- a fair reading

23  of the language, is that he is accused of that.

24         THE COURT:  Well, let's just ask again, Ms.

25  Kasulis, I think you did admit to this in your papers, but

Proceedings                    27

1    just so I'm clear, the government is not alleging that

2    Mr. Greebel orchestrated this scheme, the MSMB Healthcare

3    and MSMB Capital Hedge Fund Schemes; is that correct?

4         MS. KASULIS:  That's correct.  We are not alleging

5    that Mr. Greebel orchestrated those two schemes with

6    Mr. Shkreli, but we are alleging that Mr. Greebel was

7    involved during the time period of the MSMB schemes with

8    regard to covering up, the coverup or the paying back or

9    creating interest, et cetera -- there's a number of

10   different ways this occurred -- in attempting to make those

11   investors whole.  So that is our -- those are our

12   allegations with respect to Mr. Greebel's involvement in the

13   schemes.

14        MR. BRODSKY:  And just to followup, Your Honor,

15   when they say "in the schemes," I think what they mean are

16   schemes in Count Seven and Eight, the Retrophin and the

17   unrestricted share schemes.  And they don't mean the Counts

18   One or Four, which are the conspiracies; and then Counts One

19   through Six which are the MSMB Capital and the MSMB

20   Healthcare Schemes.

21        And the reason why these are so important us to,

22   drawing these lines and making it clear is because,

23   obviously, we view every document in our defense through the

24   prism of what the allegation is.  And the more clarity we

25   have about what the allegation is, the more we can defend

Proceedings                            28

1   against that allegation.

2          And so, you know, I think the government is saying

3   if they want to allege what they're alleging with respect to

4   Mr. Greebel, they're going to do it in connection with Count

5   Seven and Eight.  They're not doing it in connection with

6   Counts One through Six.

7          THE COURT:  Confirm?

8          MS. KASULIS:  Confirmed, Your Honor.

9          I feel like we're talking in circles here.  I

10  think our position has been clear throughout this case thus

11  far, and so I'm happy to answer any additional questions the

12  Court has, otherwise I'm going to sit down on this one.

13         THE COURT:  All right.

14         Do you want to move on to your second motion?

15         MR. BRODSKY:  Yes, Your Honor, I do.

16         With respect to the motion to dismiss Count Eight,

17  the government has failed to identify the illegal objective

18  of the agreement.  The case law is clear that you can lay

19  out the statutory language, but you need to do more where it

20  just charges generic terms.

21         For example, in United States versus Rosenblatt,

22  554 F.2d 36, pinpoint cite 41, Second Circuit case in 1977

23  that says you can repeat the generic terms of a statute, but

24  it is not sufficient that the indictment shall charge the

25  offense in the same generic terms as in the definition; but

Proceedings                                    29

1    it must state the species, it must descend to particulars.

2          And the indictment here does not allege the

3    objective because what the government says in their

4    opposition brief is that the alleged objective is to

5    "fraudulently control the price and trading of the company

6    stock while concealing the CEO's ownership and control over

7    the company shares."  That's from the government's

8    opposition brief at 42.

9          The government says that such control constitutes

10   a violation of the securities laws, but that is, in essence,

11   a tautology because it doesn't explain what is the

12   fraudulent objective.  Is the objective what the government

13   says, just to fraudulently control the price and trading of

14   the company's stock, because if that is it, just to control

15   the price and trading, then there are instances in which

16   companies prevent people from trading their stock or they

17   take legal actions to control the price of their stock.  And

18   so that is -- sweeps too broadly to define the objective.

19         Is the government arguing that the unlawful

20   objective was to prevent the recipients of the Fearnow

21   shares from actually trading the stock, because that's one

22   possible objective.  We theorize that that could be an

23   objective that the government is arguing, and if that's

24   their legal objective, we would want to know this.

25         Parking stock, as Your Honor knows, is not in and

1   of itself an illegal objective, it's just a means and

2   methods of getting there.

3           Is the government arguing that the unlawful

4   objective was that the Fearnow recipients were going to

5   trade with each other and they were going to trade their

6   shares, engage in wash trading, for example.  That would be

7   an illegal objective that they're trying to manipulate the

8   stock, and we would understand what the objective is and

9   then we could defend against that charge.

10          Is the government arguing both?  Is the

11  government -- what we don't think the government can argue

12  is that concealment is an unlawful objective.  If that is

13  what they're arguing, if they're arguing is concealing his

14  ownership of the Fearnow shares is the illegal objective,

15  that's great clarity for us and we would appreciate knowing

16  that.

17          We contrast this, Your Honor, with the allegation

18  in Count One on conspiracy and the allegation in Count Four

19  where it's very clear that they say the conspiracy between

20  Mr. Shkreli and others, not including Mr. Greebel, is to

21  make material misstatements and material omissions to MSMB

22  Capital investors.  For example, in Count One, about assets

23  under management, about whether there's an auditor, about

24  whether or not what the returns are and the performance of

25  the returns, performance of the fund.

Proceedings                                    31

1           Count Four, it's very clear that the illegal

2    objective between Mr. Shkreli in the gist of the illegal

3    agreement is that Mr. Shkreli and others, excluding

4    Mr. Greebel, are going to make lies and material omissions

5    about MSMB -- to MSMB Healthcare investors about assets

6    under management and the returns.  But what's not clear to

7    us, and it's not clear after the government's opposition, is

8    what is the illegal objective.  And that seems to be

9    something that the government can tell us, inform us without

10   cabining themselves.  We're not asking for a list of all the

11   means and methods.  You know, parking is one of the methods.

12   We're not asking for that.

13           What we're asking for is just clarity on what

14   exactly is the unlawful agreement, and since they haven't

15   alleged it and we don't believe they -- maybe they are

16   unable to allege it.  If they are unable to allege it, we

17   would move to dismiss.  But we feel that it's important to

18   determine this now.  And if the government is unable to

19   allege a specific illegal objective, then to dismiss that

20   count.

21           THE COURT:  What is it about paragraphs 36 through

22   40 in the Superseding Indictment that you find is difficult

23   to understand about the fraudulent acts alleged in Count

24   Eight?

25           MR. BRODSKY:  Your Honor, I'm looking for the

Proceedings                          32

1   objective and --

2            THE COURT:  If the objective is to defraud, to

3   hide, to conceal, to manipulate without telling anybody by

4   engaging in misrepresentations, what is deficient?

5            MR. BRODSKY:  Well, what they say in paragraph 36

6   is, at the beginning, that there is an objective to defraud

7   investors and potential investors by concealing his

8   ownership and control of the shares.  And if that is the

9   illegal objective, then we are prepared to address that.

10  But there is then language that suggests it's something

11  other than that.  And 37 says nothing about what the purpose

12  of the scheme is.  38 says nothing about the purpose.  It

13  just provides overt acts allegedly in furtherance of the

14  scheme.

15           But the argument that all it is -- if that is what

16  they're alleging, and we're just looking for clarity.  If

17  they're just alleging that it was concealment of

18  Mr. Shkreli's ownership of the shares, that's one thing.

19  They then say, in their opposition to the motion, that it's

20  about controlling the price.  But controlling the price has

21  legal -- there's -- legal encompasses legal conduct.  And so

22  we want to understand is it to control the price for

23  purposes of getting people to trade the Fearnow shares?  Is

24  it to control the price because he's preventing them from

25  trading the shares?

Proceedings                              33

1            If we don't have an understanding of what the

2       alleged agreement is between Mr. Shkreli and Mr. Greebel,

3       it's impossible for us to know what we're supposed to defend

4       against.  It's impossible for us to understand what the

5       nature of the charge is.

6            They've gone beyond the statutory language.

7       They've alleged general language which doesn't provide us

8       with any information about what exactly the illegal

9       objective is.

10           Thank you for your time, Your Honor.

11           THE COURT:  Okay.  Thank you.

12           MS. KASULIS:  Your Honor, just briefly.

13           With respect to paragraphs 36 through 40, I do

14      believe that the object or object of the conspiracy is

15      clear.  At the end of paragraph 37, the last sentence is

16      "Shkreli, together with Greebel, selected these employees

17      and contractors to receive the entirety of Retrophin's

18      unrestricted or free trade in shares because Shkreli wanted

19      to exercise control over the price and trading of Retrophin

20      stock."

21           In the very next paragraph, the introductory

22      clause is, "to achieve this fraudulent objective."  And so I

23      think it's clear from the indictment that the government

24      does, in fact, allege an illegal objective which is

25      fraudulent exercise or control over the price and trading of

Proceedings                                    34

1    Retrophin's shares.  And one of the ways in which he did

2    that was to make sure that he either controlled or

3    beneficially owned all of Retrophin's free trading shares.

4              For the purpose of this motion --

5              THE COURT:  Well, just so -- I want to stop you

6    there.

7              The defendant is arguing that controlling shares

8    is not illegal.  But what I'm reading is that the indictment

9    charges that there was concealment about how to get there.

10             MS. KASULIS:  That's correct.

11             THE COURT:  How to get to the control.  How to get

12   to the control of the share price and how to get to the

13   control of the number of free trading shares.

14             And although those objectives may not be, per se,

15   illegal, my understanding is what is being charged here is

16   that the concealment to get there, the intent to conceal or

17   to manipulate was part and parcel of the charge, the

18   fraudulent conduct.

19             That's my understanding, but I'd like to be

20   corrected if I've misread it.

21             MS. KASULIS:  That's exactly right, Your Honor.

22             And the reason for that concealment and control

23   was to ultimately control the price and the trading of the

24   stock.  The trading and the price go hand and hand

25   typically.  But that is the objective and that is what is

Proceedings                                    35

1   stated in the indictment, and based on our reading of the

2   law that is sufficient to survive a motion to dismiss.

3            The defendants are -- the defendant, excuse me,

4   I'm used to everyone being together.  The defendant is

5   clearly on notice as to what the nature of the charges are.

6   We track the language of both 371 and the relevant

7   securities statutes and we provide even more information

8   than that through the relevant paragraphs in the speaking

9   indictment.

10           It's clear what the object of the conspiracy was

11  as charged and is set forth in the indictment, and on that

12  basis there is no reason to dismiss, to take such an extreme

13  action as dismissing a count of an indictment.  I mean, what

14  it sounds like they want is just more information and that's

15  not the basis for a motion to dismiss.  And so we believe,

16  based on the reading of the law and what is clearly set

17  forth in the indictment, that there is no basis to dismiss

18  Count Eight here.

19           THE COURT:  Did you want to be heard further,

20  Mr. Brodsky?

21           MR. BRODSKY:  Just, Your Honor, I mean, again, if

22  the illegal objective is to conceal Mr. Shkreli's ownership,

23  that's one thing and we can address that.  If it's control

24  the price, again, because that sweeps broadly and there's

25  sometimes where companies control lawfully and sometimes

1   they do it unlawfully.  We would want to be able to

2   understand and we think it should be dismissed if it's

3   beyond concealment and they're alleging control, there was

4   an agreement to control the price in some unlawful way

5   without explaining what's the unlawful way.  We offered a

6   number of examples.  It is unlawful -- it is the unlawful

7   objective because Shkreli was going to prevent people from

8   trading or is it the other unlawful objective that he was

9   going to get people to trade to inflate the price?

10          If you look at it from our perspective, Your

11   Honor, in preparing a defense, it's hard for us to know

12   whether we're preparing a defense against legal control,

13   we're preparing a defense that Mr. Shkreli has alleged to

14   have gotten together with Mr. Greebel and others to say you

15   people cannot trade your Fearnow shares.  I'm giving it to

16   you.  I'm holding it in my name and you can't trade it at

17   all.  Or are we defending a different type of case which is

18   completely different, the unlawful objective of you people

19   trade with each other to inflate the price.

20          In the indictments we've seen with respect to

21   conspiracy, when you charge a general conspiracy, it's not a

22   substantive count.  There is no substantive count.  So when

23   you charge a general conspiracy and you have to charge a

24   specific intent for the individual to have engaged in this

25   conspiracy and you have to charge an agreement between two

Proceedings                                    37

1    or more people to do it.  And you say Mr. Greebel had an

2    agreement, we just want to understand what's the agreement.

3    And we think that's fair to ask for that.  And if they're

4    unable to articulate it, then we believe that it will be

5    dismissed.  Either Your Honor will dismiss it now or Your

6    Honor will dismiss it later.  But we think without them

7    alleging an unlawful objective, how can they possibly charge

8    the case?

9              Thank you, Your Honor.

10             THE COURT:  All right.  Anything else?

11             MS. KASULIS:  Your Honor, we just, again, we think

12   that the objective, the fraudulent objective is clear.  It's

13   to exercise control over the price of trading Retrophin

14   stock, and the concealment of Mr. Shkreli's control over all

15   of the free trading shares of the stock and the way in which

16   that fraudulent objective was achieved.

17             And so I think it's very clear on the face of the

18   indictment what Mr. Greebel needs to defend against at

19   trial, and, therefore, there is no basis to dismiss this

20   count.

21             THE COURT:  All right.  Thank you.

22             We expect to issue a decision subsequently.

23             And is there anything else I should address right

24   now before we adjourn?

25             MR. BRODSKY:  The only thing, Your Honor, we would

Proceedings                                          38

1    respectfully ask is we know you issued an order on Friday

2    regarding a meet and confer with respect to the subpoenas.

3    We would appreciate being a participant in the meet and

4    confers with respect to the subpoenas, the grand jury

5    subpoenas to Retrophin.

6               THE COURT:  Well, I suppose you'll have to work

7    that out with Retrophin because, you know, you've taken a

8    little bit of a position of repose in all of this

9    litigation, and I'm not sure what you want to do, how you

10   want to insert yourself into these discussions.  I suppose

11   you could call on the phone and speak to Mr. Shkreli's

12   counsel or Retrophin's counsel and see how you would intend

13   to participate.

14              MR. BRODSKY:  We want to -- I'm sorry to

15   interrupt, Your Honor.

16              What we don't want to do is -- what Mr. Shkreli

17   has requested and so forth, that's between him and Retrophin

18   and maybe the government.

19              Our understanding is that the government has

20   issued a number of grand jury subpoenas to Retrophin and

21   that there was going to be some discussion about seeing

22   those subpoenas to Retrophin.  And those documents that

23   Retrophin produced to the government and then were produced

24   to us do impact us, and so we wanted to be a part of is the

25   part of the meet and confer with respect to those grand jury

Proceedings                              39

1    subpoenas.

2            For example, if the government is going to share

3    those grand jury subpoenas, we think they should provide

4    copies of them, but if they aren't going to share them or if

5    they are going to share them or if they're going to do it

6    pursuant to some protective order, we wanted to be a

7    participant in that.

8            THE COURT:  Which is why maybe you should have

9    shown up on Friday.  I mean, they're actively discussing it

10   as far as I understand.  They have tight timeframes.

11           So, Ms. Smith, you can work with Mr. Brodsky on

12   this if you'd like to.

13           MS. SMITH:  Your Honor, we are in discussions with

14   Mr. Shkreli.  We had provided him additional information

15   after the conference and they're getting back to us as to

16   whether they even need the actual physical documents.

17           Obviously, the trial for this case is much later

18   so we will definitely resolve with Mr. Shkreli by Friday and

19   I'm happy to inform Mr. Greebel's counsel of whatever

20   resolution we reach.  And if he has any objections to that

21   or wants additional information as well, we can discuss it

22   with him.

23           I just don't want to hold up the Friday timetable

24   for Mr. Shkreli if there are any additional issues with Mr.

25   Greebel, but we're happy to share the result, the outcome

Proceedings                                40

1   of those discussions.

2          THE COURT:  All right.  Thank you.

3          MR. BRODSKY:  Your Honor, what I hear the

4   government saying is as early as today or tomorrow they'll

5   provide us with the information.

6          What I don't want --

7          THE COURT:  I didn't hear them say that, sir, but

8   why don't you speak about it with Ms. Smith because your

9   client's trial is significantly later than Mr. Shkreli's

10  trial, and we are focusing very hard on getting everybody

11  ready for the June trial.

12         Your trial is four months later.  You've heard Ms.

13  Smith say she'll work with you.  And I'm not going to order

14  anything in particular regarding the subpoenas at this

15  point.  She did provide information, which I think is in the

16  docket, is it not, as to what the subject matters in the

17  subpoena were?

18         MS. SMITH:  That is correct, we did.

19         MR. BRODSKY:  Yes, Your Honor, we read that.

20         THE COURT:  And I think your client, with all due

21  respect, is definitely not similarly situated to Mr. Shkreli

22  in terms of his ability to necessarily seek to breach his

23  asserted privilege or Retrophin's asserted privilege.  I

24  think your client was the attorney and so I just would hate

25  to get distracted or thrown off track because you're now

Proceedings                          41

1   asking for information which Ms. Smith has already indicated

2   that she'll work with you to produce.

3              MR. BRODSKY:  Very well, Your Honor.

4              What we didn't want to happen was to be prejudiced

5   if there was some solution worked out or some ruling.  We --

6   what we don't want, Your Honor, is and, respectfully, we can

7   do it this way, Your Honor, if in two or three months we

8   filed a different type of motion with respect to Retrophin,

9   what we didn't want to happen, Your Honor, is we didn't want

10  the Court to say, look, you had an opportunity to

11  participate.

12             THE COURT:  Well, I did set briefing schedules.

13  I'm not interested, in the middle of my trial with

14  Mr. Shkreli and the trial that follows immediately on the

15  heels of Mr. Shkreli's trial and will take me another four

16  months to try through the summer, to have you bombarding me

17  with motions that had already been set up as far as dates.

18             The only motions you're going to be allowed to

19  file are those that might be impacted by the outcome of the

20  trial.  You're on the same schedule as everybody else.

21             MR. BRODSKY:  Understood, Your Honor.

22             THE COURT:  All right.  Good.

23             Is there anything else?

24             MS. KASULIS:  No, Your Honor.

25             THE COURT:  Thank you.

Proceedings                                    42

1          MR. BRODSKY:  Thank you, Your Honor.

2          MS. RUBIN:  Thank you, Your Honor.

3          (Proceedings adjourned at 2:59 p.m.)

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

ANGELA GRANT, RPR, CRR
*I certify that the foregoing is a correct transcript from the record of proceedings in the above-entitled matter*
/s/ Angela Grant   May 16, 2017