UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

UNITED STATES OF AMERICA

-against-

EVAN GREEBEL,

Defendant.

ECF Case

No. 15-cr-00637 (KAM)

<u>ORAL ARGUMENT REQUESTED</u>

**MR. GREEBEL'S MEMORANDUM OF LAW
IN RESPONSE TO THE GOVERNMENT'S LETTER REQUEST TO PRECLUDE
EXPERT TESTIMONY OR REQUEST FOR SUPPLEMENTAL DISCLOSURES AND
*DAUBERT* HEARINGS**

# TABLE OF CONTENTS

Page

PRELIMINARY STATEMENT ........................................................................ 1

FACTUAL BACKGROUND ........................................................................... 2

ARGUMENT ................................................................................................... 5

I.     Rule 16(b)(1)(C) Was Never Triggered and Does Not Determine the Issue of
       Admissibility under Federal Rule of Evidence 702 .................................... 5

       A.     Legal Standard ................................................................................ 5

       B.     Mr. Greebel's Expert Disclosure Obligations Stem Solely from the
              Court's Pretrial Order .................................................................... 6

       C.     The Government Improperly Conflates Rule 16(b)(1)(C) Requirements
              with Admissibility under Rule 702 ................................................ 7

II.    Even If the Standards of Rule 16(b)(1)(C) Apply—Which They Do Not—Mr.
       Greebel's Expert Disclosures Are Sufficient and His Potential Defense
       Experts Should Not Be Precluded .............................................................. 8

       A.     Legal Standard ................................................................................ 8

       B.     Mr. Greebel's Expert Disclosures Provide the Government With
              Adequate Notice and A Fair Opportunity to Test the Merits of the
              Expert's Testimony Through Focused Cross-Examination ............... 10

       C.     Preclusion Is Not the Correct Remedy Under Rule 16(b)(1)(C) ........ 14

III.   The Expert Witness Testimony Challenged in the Government's Letter Is
       Admissible under Rule 702 ......................................................................... 16

       A.     Legal Standard ................................................................................ 16

       B.     Mr. Greebel's Proposed Experts Are Admissible under Rule 702 ...... 19

       C.     Professor Craig Lewis's Proposed Expert Testimony Is Reliable under
              Rule 702 ......................................................................................... 20

       D.     Alan Johnson's Proposed Expert Testimony Is Reliable under Rule
              702 .................................................................................................. 21

       E.     Matthew Ferrante's Proposed Expert Testimony Is Reliable under Rule
              702 .................................................................................................. 22

**TABLE OF CONTENTS**
**(continued)**

<u>Page</u>

F.    Professor Bryan Garner's Proposed Expert Testimony Is Reliable under Rule 702 ........................................................................................ 23

G.    Gayle Klein's Proposed Expert Testimony Is Reliable under Rule 702 .............. 24

IV.   *Daubert* Hearings Are Not Necessary to Determine Admissibility Under Rule 702 ........................................................................................................... 25

**CONCLUSION** ........................................................................................................... 28

ii

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*In re Blech Sec. Litig.*,
 No. 94 Civ. 7696, 2003 WL 1610775 (S.D.N.Y. Mar. 26, 2003) ....................................18, 23

*Chevron Corp. v. Donziger*,
 974 F. Supp. 2d 362 (S.D.N.Y. 2014)..............................................................................17, 24

*Daubert v. Merrell Dow Pharmaceuticals Inc.*,
 509 U.S. 579 (1993)....................................................................................................16, 17, 26

*Kumho Tire Co., Ltd. v. Carmichael*,
 526 U.S. 137 (1999)............................................................................................................16, 17

*PODS Enters., Inc. v. U-Haul Int'l, Inc.*,
 No. 8:12-CV-01479-T-27MA, 2015 WL 1097374 (M.D. Fla. Mar. 11, 2015)................24, 25

*SEC v. U.S. Envtl., Inc.*,
 No. 94 Civ. 6608, 2002 WL 31323832 (S.D.N.Y. Oct. 16, 2002) .............................18, 21, 25

*United States v. Ahmed*,
 No. 12 Cr. 661 (SLT), 2015 WL 1611947 (E.D.N.Y. Apr. 9, 2015)................................13, 14

*United States v. Ashburn*,
 88 F. Supp. 3d 239 (E.D.N.Y. 2015) .....................................................................................25

*United States v. Barone*,
 No. S1 09 Cr. 91 (NRB), 2010 WL 2976502 (S.D.N.Y. July 14, 2010) ................................16

*United States v. Brooks*,
 No. 06–CR–550 (JS), 2010 WL 291769 (E.D.N.Y. Jan. 11, 2010) ..................................16, 17

*United States v. Cruz*,
 363 F.3d 187 (2d Cir. 2004)......................................................................................................6

*United States v. Diakhoumpa*,
 171 F. Supp. 3d 148 (S.D.N.Y. 2016).....................................................................................26

*United States v. Finazzo*,
 No. 10-CR-457 (RRM) (RML), 2013 WL 618425 (E.D.N.Y. Feb. 19, 2013)........................5

*United States v. Heine*,
 No. 3:15–cr–238–SI, 2017 WL 449632 (D. Or. Feb. 2, 2017)................................................28

**TABLE OF AUTHORITIES**
(continued)

Page(s)

*United States v. Litvak,*
808 F.3d 160 (2d Cir. 2015)...................................................................14, 15, 17, 18, 19, 25

*United States v. Mahaffy,*
No. 05-CR-613 (ILG), 2007 WL 1213738 (E.D.N.Y. Apr. 24, 2007) ...............................9, 15

*United States v. Mehta,*
236 F. Supp. 2d 150 (D. Mass. 2002) .................................................9, 10, 11, 13, 27

*United States v. Mirilishvili,*
No. S2 CR 810, 2016 WL 751690 (S.D.N.Y. Feb. 18, 2016) ................................................26

*United States v. Romano,*
794 F.3d 317 (2d Cir. 2015).........................................................................16, 17, 18, 19

*United States v. St. Pierre,*
No. CRIM. 09-374, 2011 WL 2199375 (E.D. La. June 6, 2011) ...........................................27

*United States v. Sturman,*
No. 96 CR 318, 1998 WL 126066 (S.D.N.Y. May 20, 1998) ..........................................26, 27

*United States v. Ulbricht,*
858 F.3d 71 (2d Cir. 2017)...............................................................................7, 8, 15

*United States v. Valle,*
No. 12 Cr. 847 (PGG), 2013 WL 440687 (S.D.N.Y. Feb. 2, 2013) ......................................14

*United States v. Vasquez,*
258 F.R.D. 68 (E.D.N.Y. 2009) ...........................................................................9, 13

*United States v. Williams,*
506 F.3d 151 (2d Cir. 2007).....................................................................................26

*United States v. Wilson,*
493 F. Supp. 2d 484 (E.D.N.Y. 2006) ..............................................................................9, 15

*United States v. Young,*
No. CR-09-140-B-W, 2010 WL 1418748 (D. Me. Apr. 6, 2010) ...........................................5

*Wardius v. Oregon,*
412 U.S. 470 (1973)...........................................................................................27

**TABLE OF AUTHORITIES**
(continued)

Page(s)

**Rules**

Fed. R. Crim. P. 16 ...................................................................................................1, 5, 8, 9

Fed. R. Crim. P. 16(b)(1)(C) ......................................................................................1, 5, 8

Fed. R. Crim. P. 16(b)(1)(C)(i) .........................................................................................6

Fed. R. Crim. P. 16(d)(2) ................................................................................................14

Fed. R. Evid. 702 ............................................................................................................23

## PRELIMINARY STATEMENT

In its letter brief to the Court, the government attempts to argue that Mr. Greebel's expert disclosures on August 11, 2017 and additional disclosures on September 19, which were provided pursuant to the Court's scheduling order, are a basis for preclusion of five of Mr. Greebel's proffered experts (the "Subject Experts"). The government's argument fails for a number of reasons.

First, as the basis for excluding the Subject Experts as a result of purportedly insufficient disclosures by Mr. Greebel, the government relies exclusively on Federal Rule of Criminal Procedure 16(b)(1)(C), a reciprocal expert disclosure obligation that must be triggered by the defendant's request for the government's expert disclosures, and case law applying that rule. But this argument is totally unavailing since the government does not, and cannot, argue that Rule 16(b)(1)(C) reciprocal disclosure requirements have been triggered, for the simple reason that Mr. Greebel never requested Rule 16(a)(1)(G) disclosures from the government. Accordingly, the requirements of Rule 16(b)(1)(C) do not even apply to Mr. Greebel.

Second, even if Rule 16(b)(1)(C) were to apply to Mr. Greebel, he has disclosed more than sufficient information of each "witness's opinions, the bases and reasons for those opinions, and the witness's qualification," Fed. R. Crim. P. 16(b)(1)(C), to provide the government with adequate notice and a fair opportunity to test the merits of the expert's testimony through focused cross-examination, which is all that is required by Rule 16(b)(1)(C). Fed. R. Crim. P. 16, Advisory Comm. Notes to 1993 Amend. And, to the extent Mr. Greebel's disclosures are inadequate, the proper remedy for any purported disclosure inadequacy would be for the Court to

require Mr. Greebel to file supplemental disclosures, not to take the drastic step proposed by the government of precluding the defense experts completely.

Finally, the government improperly conflates the standard for Rule 16(b)(1)(C) disclosures with admissibility under Rule 702, and argues that Mr. Greebel has not provided sufficient information for it to challenge the Subject Experts' reliability.  On the contrary, Mr. Greebel has provided, as outlined below, more than sufficient information to establish that his proposed experts are reliable under Rule 702.  The bases of the expert witnesses' opinions are by and large, their qualifications and experience, which the government does not challenge, and to the extent the experts use any describable methodology, their methods are straight-forward and uncontroversial.

The government's actions make clear that its inappropriate requests and mistaken arguments are thinly veiled attempts to force Mr. Greebel to reveal as much of his defense theories and strategies as possible prior to trial—while at the same time shielding the government's own rebuttal expert witnesses from any disclosure whatsoever.  In this context, this is particularly challenging and nearly impossible given that the government presents its case-in-chief first and has the burden of proof.  As of today, we are not aware of which 25 of their 89 potential witnesses they intend to call nor do we know what exhibits they intend to offer.   If Mr. Greebel decides to present a case, the evidence will greatly depend on the government's case-in-chief.  Accordingly, Mr. Greebel respectfully requests that the Court deny the government's requests to preclude Mr. Greebel's experts, to compel additional expert disclosures, and to hold *Daubert* hearings.   Mr. Greebel also respectfully requests oral argument on these issues.

## FACTUAL BACKGROUND

Mr. Greebel has not requested disclosure of the government's experts pursuant to Rule 16(a)(1)(G).  On or about December 22, 2015, the government filed a letter stating that it "will

comply with Fed. R. Crim. P. 16(a)(1)(G) and Fed. R. Evid. 702, 703 and 705 and notify you in a timely fashion of any expert that the government intends to call at trial and provide you with a summary of the expert's opinion."  Gov't Rule 16 Letter at 2, Dkt. No. 16, Dec. 22, 2015.

On or about August 11, 2017, we provided timely disclosures of our potential experts pursuant to the Court's pretrial scheduling order, which required that both parties provide "a list of witnesses, including with respect to any expert witness, a description of qualifications and a summary of expected testimony."  *See* Greebel Pretrial Disclosures, Dkt. No. 312-2, Aug. 11, 2017; Scheduling Order, Dkt. No. 147, Jan. 13, 2017.  The government disclosed that it "may call, either on its direct case or as a rebuttal witness, an expert in the areas of professional responsibility and/or legal ethics for outside counsel representing companies and/or the Board of Directors," however it had not yet identified any specific experts.  *See* Gov't Pretrial Disclosures at 2, Dkt. No. 311, Aug. 11, 2017.

On or about August 14, 2017, the government proposed "a schedule for dealing with final expert disclosures, objections and/or *Daubert* hearings" and proposed "final expert disclosures for both parties (with accompanying charts, documents, resumes, etc.)" by September 8, related motion practice by September 22, and *Daubert* hearings to follow.  *See* Ex. A to Greebel Opp'n to Gov't MIL, Dkt. No. 347-1, Aug. 25, 2017.

The next day, we respectfully declined and explained our reasons in a letter to the government.  *See id.*  We explained that we may or may not call our expert witnesses and, if we call any of them, our experts will be *responding* to the government's case-in-chief, so it would be highly prejudicial, premature, and impossible for the defense to have to provide "final expert disclosures" in September, *before we had even received* (according to the government's representations to us) all of the government's discovery, trial exhibits, 3500 material, and before

we had even heard the government's case-in-chief.  (Indeed, at a minimum, the government should commit to producing **all** discovery, trial exhibits, and 3500 material before even considering any motion practice relating to our experts.)  Moreover, we explained our strong position that the government's proposal interfered with our client's right not to disclose his defenses prior to the government's case-in-chief, especially since he may or may not present a case and is under no obligation to do so.  *Id.*  Despite this, we offered in our August 15 letter, and subsequently by telephone, to provide further disclosures relating to our expert witnesses.  And we asked the government to identify the expert witnesses for which they wanted additional disclosures and what further information they would like us to disclose relating to such experts.

In lieu of seeking additional disclosures and meeting and conferring further regarding a mutually agreeable approach to briefing and/or any *Daubert* hearings (which we do not believe will be necessary), on or about August 18, the government moved to preclude nine of our ten potential expert witnesses.  Gov't Pre-Trial Mots. at 42-51, Dkt. No. 329, Aug. 18 2017.  The government argued primarily that our potential experts did not meet the low threshold of relevance under Rule 401.  Notably, although we know that the government reached out and spoke to potential legal ethics experts, the government informed us that it will not call any experts during its case-in-chief.

After briefing on the government's motions to preclude nine of our ten expert witnesses was complete, the government on or about September 7 requested additional disclosures on nine out of ten of our experts.  On September 15, 2017, the Court issued a docket-entry order setting a briefing schedule on any *Daubert* motions.  On or about September 19, we filed detailed

supplemental disclosures.  *See* Greebel Supp. Expert Disclosure, Sept. 19, 2017 (attached hereto

as Exhibit 1).

On or about September 25, the government filed the instant letter brief requesting that the

Court either preclude five of our proffered experts (the "Subject Experts") or, in the alternative,

compel further disclosures from them and hold *Daubert* hearings on them.  *See* Gov't *Daubert*

Letter, Dkt. No. 383, Sept. 25, 2017.

## ARGUMENT

I.     **Rule 16(b)(1)(C) Was Never Triggered and Does Not Determine the Issue of
       Admissibility under Federal Rule of Evidence 702**

A.     **Legal Standard**

Criminal defendants have an obligation to provide notice of expert witnesses to the

government under Rule 16(b)(1)(C) only "if (i) the defendant requests disclosure under

subdivision (a)(1)(G) and the government complies; or (ii) the defendant has given notice under

Rule 12.2(b) of an intent to present expert testimony on the defendant's mental condition."  Fed.

R. Crim. P. 16(b)(1)(C).  Because "requiring a defendant to provide any discovery raises

'constitutional problems,'" *United States v. Finazzo*, No. 10-CR-457 (RRM) (RML), 2013 WL

618425, at *4 (E.D.N.Y. Feb. 19, 2013), it is the defendant himself who must "trigger the

discovery procedures."  Fed. R. Crim. P. 16, Advisory Comm. Notes to 1975 Amend.; *see also*

*United States v. Young*, No. CR-09-140-B-W, 2010 WL 1418748, at *1 (D. Me. Apr. 6, 2010)

("Rule 16 sets forth a process that must be followed before its defense expert disclosure

provisions come into play.  Fed. R. Crim. P. 16(b)(1)(C)(i).  The defendant must first request that

the Government disclose its experts under Rule 16(a)(1)(G) and the Government must comply.").

In *United States v. Cruz*, 363 F.3d 187, 196 n.2 (2d Cir. 2004), the Second Circuit

emphasized that "the government's duty to disclose a summary of expert testimony is not

triggered unless the defendant requests such a summary." Even if the government, without prompting, affirmatively represents that it will disclose its experts under Rule 16, that does nothing to trigger the defendant's reciprocal obligation under the rule. *Id.* (reversing conviction for improper admission of government's expert testimony and insufficiency of the evidence).

**B.      Mr. Greebel's Expert Disclosure Obligations Stem Solely from the Court's Pretrial Order**

In this case, Mr. Greebel *never requested* that the government disclose its experts under Rule 16(a)(1)(G).  Rather, Mr. Greebel's expert disclosures on August 11, 2017 were made pursuant to the Court's January 13, 2017 pretrial order, which required that both parties provide "a list of witnesses, including, with respect to any expert witness, a description of qualifications and a summary of expected testimony."  Scheduling Order at 2, Dkt. No. 147, Jan. 13, 2017 (with the schedule of disclosures modified per the Court's Scheduling Orders of April 27, 2017, Dkt. No. 213, and July 14, 2017, Dkt. No. 266).  Mr. Greebel, in good faith, met and conferred with the government regarding supplemental disclosures, and on or about September 19, 2017 provided supplemental disclosures as to the nine experts requested by the government.

Mr. Greebel's initial and supplemental disclosures go far beyond the Court's requirement only to provide "a description of qualifications and a summary of expected testimony."  Without any obligation to do so, these disclosures reflected additional detailed specific opinions we expect each expert to offer, as well as the bases for their opinions and, where applicable, methodologies they would employ.  Moreover, we provided supplemental disclosures not only for the experts we most expect to call if we ultimately decide to put on a case-in-chief—Mr. Ferruolo, Professor  Lewis, and Mr. Johnson—but also for six other experts who may testify depending on what issues are raised during trial.  In other words, even though we have not yet determined whether these experts will testify at trial, we have provided the government with

fulsome disclosures regarding their potential testimony. We have even detailed specific opinions for experts who may testify solely in response to issues raised by the government, such as electronic metadata (Mr. Ferrante) and the meaning of particular written legal communications (Professor Garner).

### C. The Government Improperly Conflates Rule 16(b)(1)(C) Requirements with Admissibility under Rule 702

Recognizing that it has no basis to claim a reciprocal disclosure discovery violation, the government seeks to incorrectly argue that compliance with Federal Rule of Criminal Procedure 16(b)(1)(C)—regardless of whether the defendant never triggered that rule—nonetheless is a requirement for an expert's admissibility under Federal Rule of Evidence 702. Gov't *Daubert* Letter, Dkt. No. 383, Sept. 25, 2017 (stating that "in order for a court to evaluate an expert's methodology, the proponent of the expert's testimony must comply with Federal Rule of Criminal Procedure 16(b)(1)(C)").

Yet the only case that the government cites in support of its argument is *United States v. Ulbricht*, 858 F.3d 71 (2d Cir. 2017). In *Ulbricht*, the defendant had triggered its reciprocal discovery obligations under Rule 16(b)(1)(C) but nevertheless failed to disclose its expert witness until the day before the government's case was due to rest. *Id.* at 115. In determining that "intermediate sanctions short of preclusion" were inadequate under the unique circumstances of that case, the court noted that it would need to make a preliminary assessment as to the admissibility of the expert testimony and thus a lengthy continuance in the middle of trial would potentially cause the court "to lose one or both of th[e] jurors" who "had time constraints." *Id.* at 116. Clearly, the court's decision to preclude the defendant's expert was based on the defendant's untimely Rule 16(b)(1)(C) reciprocal disclosure, and had nothing to do

with any purported ruling that an expert's admissibility under Rule 702 incorporated the requirements of Rule 16(b)(1)(C).

## II.    Even If the Standards of Rule 16(b)(1)(C) Apply—Which They Do Not—Mr. Greebel's Expert Disclosures Are Sufficient and His Potential Defense Experts Should Not Be Precluded

As made clear above, any Rule 16(b)(1)(C) requirement on Mr. Greebel simply has not been triggered.  But even if the standards of that rule apply—which they plainly do not—the expert disclosures provided by Mr. Greebel are more than sufficient to provide the government with notice under Rule 16(b)(1)(C).  Moreover, the proper remedy for any purported disclosure inadequacy would be for the Court to require Mr. Greebel to file supplemental disclosures, not to take the drastic step proposed by the government of precluding the defense experts wholesale.

### A.    Legal Standard

Rule 16 provides, in relevant part,

> The defendant must, at the government's request, give to the government a written summary of any testimony that the defendant intends to use under Rules 702, 703, or 705 of the Federal Rules of Evidence as evidence at trial, if . . . the defendant requests disclosure under subdivision (a)(1)(G) and the government complies . . . .  This summary must describe the witness's opinions, the bases and reasons for those opinions, and the witness's qualifications.

Fed. R. Crim. P. 16(b)(1)(C).  The 1993 amendments to Rule 16, which added Rule 16(b)(1)(C) and the reciprocal government obligation, now numbered as Rule 16(a)(1)(G), are "intended to minimize surprise that often results from unexpected expert testimony, reduce the need for continuances, and to provide the opponent with a fair opportunity to test the merit of the expert's testimony through focused cross-examination."  Fed. R. Crim. P. 16, Advisory Comm. Notes to 1993 Amend.  The provision is "not intended to create unreasonable procedural hurdles."  *Id.*

"The difference between the civil and criminal [discovery] rules derives from the special

constitutional constraints of criminal proceedings." *United States v. Mehta*, 236 F. Supp. 2d 150, 155 (D. Mass. 2002).

As demonstrated by the cases cited by the government, courts typically find that disclosures are inadequate under Rule 16 when they fail to "describe any opinions that would be offered by the witness," *United States v. Mahaffy*, No. 05-CR-613 (ILG), 2007 WL 1213738, at *2 (E.D.N.Y. Apr. 24, 2007), or "any basis for the opinion," *United States v. Wilson*, 493 F. Supp. 2d 484, 489 (E.D.N.Y. 2006). By contrast, where the bases of an expert's testimony "are the product of" extensive experience and "not a particular set of documents that can be readily produced," the description of the bases as the expert's "analy[sis] and reli[ance] upon various sources during the course of his career" is sufficient. *United States v. Vasquez*, 258 F.R.D. 68, 74 (E.D.N.Y. 2009) (finding that the government's Rule 16(a)(1)(G) disclosure of the bases and reasons for an expert testifying on MS-13 gang customs was sufficient even though it contained only a general list of sources, such as "information obtained at conference" and "MS-13 literature"). Likewise, in *Mehta*, the district court reversed the magistrate judge's order granting the government's request that the defendant supplement his expert disclosures. 236 F. Supp. 2d at 155–57. The judge held that the defendant was not required under Rule 16(b)(1)(C) to disclose *why* he came to his conclusion on his classification of bank deposits and that the description of his methodology was sufficient where he stated generally what types of information he would review, including the "'records and schedules' the government had produced as well as the expert's own factual investigation." *Id.* at 156.

In addition, courts have held that the expert disclosures of criminal defendants can be sufficient even if they are incomplete (which they are not in this case). In *Mehta*, the court specifically took issue with the requirement that the expert predict what his final opinion would

be at trial "without having access to all of the information on which he will base his opinion at that time," such as Jencks Act material. *Id.* at 157; *see also id.* at 155.  The disclosures indicated that information that has not yet been provided by the government would "constitute part of the basis for his expert's opinion" and thus "the expert clearly has not finalized his opinion." *Id.* at 157.  Forcing "production of an incomplete opinion and set[ting] a potential impeachment trap for the defense expert" would "be to require not an expert summary, but effectively an expert deposition" and result in "grossly incongruent and inequitable disclosure obligations." *Id.*

> **B.  Mr. Greebel's Expert Disclosures Provide the Government with Adequate Notice and A Fair Opportunity to Test the Merits of the Expert's Testimony Through Focused Cross-Examination**

Mr. Greebel's expert disclosures provide the government with more than enough information under the requirements of Rule 16(b)(1)(C)—which in any event do not even apply here.  We begin by noting that the government is simply wrong to allege that Mr. Greebel's initial disclosures "strongly suggested" defense experts had completed their analyses.  Gov't *Daubert* Letter at 2, Dkt. No. 383, Sept. 25, 2017.  Not only is this an inaccurate reading of Mr. Greebel's disclosures, but, the expert witnesses' review and analyses could not possibly be complete as the government still has not completed its production of discovery, trial exhibits, or 3500 material, nor has it presented its case-in-chief.  Moreover, the government cites no authority requiring criminal defense experts to have completed their analyses by the time of expert disclosures.  Nor could they.  As discussed in detail below, the government itself has recently argued in favor of its right to offer expert testimony whose "scope . . . [would] not be known by the government until after the close of the defendant's case."  Opp'n to Mr. Greebel's Mot. to Preclude Expert Testimony at 79, Dkt. No 346, Aug. 25, 2017.  Similarly, it is

10

impossible for Mr. Greebel to know the exact scope of its proposed expert testimony until the government's case-in-chief has been presented.

For each of the Subject Experts challenged in the government's letter brief, we have provided detailed opinions and the bases for those opinions, where applicable.  First, the government argues that "the Supplemental Disclosures for  Mr. Ferrante and Professor Garner do not adequately state those witnesses' opinions, as required by Rule 16."  Gov't *Daubert* Letter at 7, Dkt. No. 383, Sept. 25, 2017.  Like the expert opinion in *Mehta*, Mr. Ferrante's and Professor Garner's testimony, further described in Section III below, will be based on their analyses of documents and communications offered by the government in its case-in-chief.  Mr. Ferrante and Professor Garner cannot predict what their final opinions will be at trial "without having access to all of the information on which [they] will base [their] opinion[s] at that time." *Mehta*, 236 F. Supp. 2d at 157.  The government's request to force "production of an incomplete opinion and set[ting] a potential impeachment trap for the defense expert" would result in "grossly incongruent and inequitable disclosure obligations." *Id.* at 157.

The government's argument that Mr. Ferrante's and Professor Garner's disclosures are deficient and therefore that their testimony should be precluded is particularly problematic given the government's own position in its Opposition to Mr. Greebel's Motion to Preclude Expert Testimony at 79, Dkt. No. 356, Aug. 31, 2017.  In its updated witness list filed on August 11, 2017, the government states that "[w]ith regard to potential expert witnesses, the government anticipates that it may call, either on its direct case or as a rebuttal witness, an expert in the areas of professional responsibility and/or legal ethics for outside counsel representing companies and/or the Board of Directors."  Gov't Amended Pretrial Disclosure, Dkt. No. 311, Aug. 11,

2017.  Mr. Greebel moved to preclude the government's experts for failure to identify an expert

witness.  Mot. to Preclude Expert Testimony at 13, Dkt. No. 340.  The government responded:

> The defendant now moves to preclude the government from calling any
> such expert, including even on a rebuttal case, because the government
> "failed to comply" with the pretrial scheduling order.  (Testimony Motion
> at 12-13).  No such preclusion is warranted.  **The government has
> provided the defendant with ample notice of a potential expert
> witness**, who appears likely to testify on the same or similar subjects as at
> least one expert witness the defendant has already retained, Stephen
> Gillers.
>
> The defendant has not cited any basis for preclusion other than the timing
> of the pre-trial scheduling order.  **The defendant also does not explain
> how the government could ever be precluded now from calling an
> expert witness in its rebuttal case, given that the scope of such
> rebuttal case will not be known by the government until after the close
> of the defendant's case.  As both the government and the defendant
> recognize, the August 11 submissions will of course evolve as the trial
> date nears.  Surely the defendant will not agree to be held to a rule in
> which it is barred from adding witnesses or evidence (or modifying
> expert opinions) after August 11.**  Nevertheless, to the extent the
> government determines it will call in its case-in-chief an expert as
> described in its August 11, 2017 disclosure, the government will provide a
> supplemental witness list including that expert, his or her qualifications
> and a summary of his or her anticipated testimony by September 8, 2017.

Opp'n to Mr. Greebel's Mot. to Preclude Expert Testimony at 79, Dkt. No 346, Aug. 25, 2017

(emphasis added).

Applying the government's own argument as cited above, the government does not

explain how Mr. Greebel "could ever be precluded now from calling an expert witness" who will

respond directly to documents admitted during the government's case-in-chief, "given that the

scope of such . . . case will not be known by [Mr. Greebel] until after the close of the

[government's] case." *See id.*  On the point that it is too early to disclose full details regarding a responsive and contingent expert witness, we agree entirely with the government.[1]

The government additionally criticizes Mr. Greebel's disclosure as insufficiently describing the bases for the Subject Experts' potential opinions.  Gov't *Daubert* Letter at 9, Dkt. No. 383, Sept. 25, 2017.   However, as in *Vasquez*, much of Mr. Greebel's potential experts' potential testimony is based on their extensive professional experience and the various sources of information, including academic research and literature, they have encountered over the course of their careers.  258 F.R.D. at 74.  The government does not, and could not, challenge the sufficiency of disclosure or the reliability of the qualifications of the Subject Experts.  Moreover, the Subject Experts' review and analyses are ongoing and it is premature and unnecessary for Mr. Greebel to provide more detailed information on the specific sources they are reviewing.  In *Mehta*, the court held that defendant's methodology was sufficiently disclosed where its incomplete analysis included "the expert's own factual investigation."  236 F. Supp. 2d at 156.  The government provides no support for its argument that "defendant is required to provide" "which documents the experts reviewed" and "those documents form the basis of any of the opinions the experts intend to offer."  The case cited by the government, *Ahmed*, does not require the defendant to list out which specific documents were reviewed by the expert.  Rather it finds that the disclosure "clearly indicates the sources these experts are relying on." *United States v. Ahmed*, No. 12 Cr. 661 (SLT), 2015 WL 1611947, at *2 (E.D.N.Y. Apr. 9, 2015).

Finally, the government argues that the disclosures fail to describe the methodology behind the potential opinions of Professor Lewis, Mr. Johnson and Ms. Klein.  Gov't *Daubert*

---

[1]     Though we do not agree that this prevents disclosure of the identity of that witness and some aspect of his or her potential opinion, which the government has failed to do and is the basis of Mr. Greebel's motion *in limine*.

Letter at 7–9, Dkt. No. 383, Sept. 25, 2017.  For each of these experts, the government complains that the use of the term "analyzing" "is merely an indication that some methodology was used." *Id.*  But it is abundantly clear what "analyze" means in relation to each of these experts:  for Professor Lewis, this means adding up trading volume, comparing trading volume between individuals, and applying his expansive knowledge and experience to form opinions regarding the trading activity; for Mr. Johnson, this means reviewing consulting agreements and their various provisions, and likewise applying his expansive knowledge and experience to form opinions regarding the key terms of consulting agreements and similarities amongst them; for Ms. Klein, this means legal research and reading cases and statutes, and likewise applying her expansive knowledge and experience to form opinions regarding the viability of settlement claims.  The government's insistence that there is some hidden methodology is plainly incorrect. Ex. 1, Greebel Supp. Expert Disclosure at 8–12, 19-20, Sept. 19, 2017.

In sum, Mr. Greebel's disclosures provide more than sufficient information regarding the opinions, bases and opinions for those opinions, and, if applicable, any underlying methodology, to provide the government with adequate notice and fair opportunity to test the merit of the expert's testimony through focused cross-examination.

## C.    Preclusion Is Not the Correct Remedy Under Rule 16(b)(1)(C)

Although Rule 16(d) grants courts the flexibility to respond to supposedly inadequate disclosures with a variety of measures, including compelling discovery, granting a continuance, precluding the evidence, and "enter[ing] any other order that is just under the circumstances," Fed. R. Crim. P. 16(d)(2), preclusion, is "a drastic remedy" that courts avoid if supplemental

disclosures may be adequate. *Ahmed*, 2015 WL 1611947, at *2; *see also United States v. Valle*, No. 12 Cr. 847 (PGG), 2013 WL 440687, at *6 (S.D.N.Y. Feb. 2, 2013).

The Second Circuit's decision in *United States v. Litvak*, 808 F.3d 160, 180 n.25 (2d Cir. 2015) highlights the prejudice that may result from the drastic remedy of preclusion of a criminal defendant's experts.  In *Litvak*, the Second Circuit vacated the criminal convictions because the district court excluded the proffered expert testimony of an expert, a professor with extensive practical experience as a former participant in RMBS securities transactions. The Second Circuit held that "the District Court exceeded its allowable discretion in excluding the expert's testimony in respect of the process by which investment managers value RMBS and the likely impact on the final purchase price of a broker's statements made to a counterparty during the course of negotiating a RMBS transaction." 808 F.3d at 182.  Because the expert's testimony was relevant to the jury's determination of materiality and could have countered the government's arguments, it was reversible error to preclude the expert testimony.  *Id.* at 183–85.

In the only three cases that the government cites where the court granted preclusion, the defendants either failed to comply with a court-ordered disclosure deadline and/or provided expert disclosures at the close of the government's case.  *Ulbricht*, 858 F.3d at 115–16 (defense disclosed an expert witness on the day before the government's case was due to rest); *Mahaffy*, 2007 WL 1213738, at *3 (defense failed to comply with the court's pre-trial order to disclose the names of the expert witnesses and then disclosed a defense expert witness on the first day of trial); *Wilson*, 493 F. Supp. 2d at 486–88 (defense not only failed to comply with the court's pre-trial order to disclose defense experts witnesses by three days before trial, but also did not

15

provide the name of the expert until after the trial began).  None of these situations apply in this case.

Mr. Greebel has provided timely disclosures pursuant to the Court's pretrial scheduling order—and we provided these disclosures on August 11, 2017, more than two months in advance of trial.  In addition, on or about September 19, 2017—approximately one month before the trial—Mr. Greebel provided an additional 27 pages of detailed supplemental disclosures to the government including detailed opinions, bases, and description of methodology.  Thus, the circumstances here are *completely different* than in the three cases relied on by the government in which the defendants failed to comply with the court's scheduling orders and provided incomplete disclosures in the middle of the trial.  Indeed, given that the trial has not yet even started, there can be no prejudice to the government as a result of any purported disclosure insufficiency, where some or all of the potential defense experts may not even testify depending on the government's case in chief.  It would, like in *Litvak*, be prejudicial to preclude Mr. Greebel from offering relevant expert testimony when Mr. Greebel has submitted expert disclosures pursuant to the Court's scheduling orders and provided more than sufficient notice to the government.  If anything, it is the government that has utterly failed to comply with the court's scheduling order in its refusal even to identify or summarize its potential rebuttal experts.

## III.    The Expert Witness Testimony Challenged in the Government's Letter Is Admissible under Rule 702

### A.    Legal Standard

Federal Rule of Evidence 702 "imposes on the trial judge an obligation to determine whether the expert's specialized knowledge will assist the trier of fact, *i.e.*, will be not only relevant, but reliable."  *United States v. Romano*, 794 F.3d 317, 330 (2d Cir. 2015) (citing *Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137, 152 (1999); *Daubert v. Merrell Dow*

*Pharmaceuticals Inc.*, 509 U.S. 579, 589 (1993)).  The Second Circuit interprets this standard as

applying a "presumption of admissibility" to evidence and a "bias" towards allowing the

"adversary system to test shaky but admissible evidence."  *United States v. Barone*, No. S1 09

Cr. 91 (NRB), 2010 WL 2976502, at *1 (S.D.N.Y. July 14, 2010) (internal quotations omitted).

A wide range of both scientific and other expert testimony is admissible under the liberal

standard of *Daubert* and *Kumho Tire*, as long as it is reliable and relevant.  *See, e.g.*, *id.*

(admitting expert handwriting analysis); *United States v. Brooks*, No. 06-CR-550 (JS), 2010 WL

291769, at *3-4 (E.D.N.Y. Jan. 11, 2010) (admitting expert testimony on handwriting

comparison, GAAP procedures, general accounting practices, corporate governance, and the role

of a CEO); *see also Chevron Corp. v. Donziger*, 974 F. Supp. 2d 362, 648–50 (S.D.N.Y. 2014)

(admitting expert analysis comparing documents for signs of plagiarism).

   *Daubert* suggests some factors to consider in analyzing the reliability of expert

testimony, but the Supreme Court has reiterated that the trial court's "gatekeeping inquiry must

be 'tied to the facts' of a particular 'case.'"  *Romano*, 526 F.3d at 30 (quoting *Kumho Tire*, 526

U.S. at 150 (quoting *Daubert*, 509 U.S. at 591)).  In the context of scientific expert testimony,

these factors may include the testability, peer review, error rate, and general professional

acceptance of any proffered scientific theories.  *Brooks*, 2010 WL 291769, at *2 (citing *Daubert*,

509 U.S. at 593–96).  However, "the law grants a district court the same broad latitude when it

decides how to determine reliability as it enjoys in respect to its ultimate reliability

determination."  *Id.* (quoting *Kumho Tire*, 526 U.S. at 142) (internal citation marks omitted).

"*Daubert* makes clear that the factors it mentions do not constitute a 'definitive checklist or

17

test.'" *Romano*, 526 F.3d at 30 (quoting *Kumho Tire*, 526 U.S. at 150 (quoting *Daubert*, 509 U.S. at 591)).

The Second Circuit has noted that "the *Daubert* factors do not all necessarily apply even in every instance in which reliability of scientific testimony is challenged, and in many cases, **the reliability inquiry may instead focus upon personal knowledge and experience of the expert**." *United States v. Litvak*, 808 F.3d 160, 180 n.25 (2d Cir. 2015) (quoting *Kumho Tire v. Carmichael*, 526 U.S. 137, 148–49 (1999)) (emphasis added). "Experts of all kinds tie observations to conclusions through the use of what Judge Learned Hand called 'general truths derived from . . . specialized experience.'" *Id.* In *Litvak*, for example, the improperly excluded expert witness testimony was primarily based on his first-hand experience as a trader in RMBS securities at issue in the case. *Id.* at 180. Indeed, courts in the Second Circuit "regularly permit" experts to testify based solely on personal knowledge and experience. *Id.* (citing *Romano*, 794 F.3d at 333 (finding no abuse of discretion in admission of expert testimony regarding coin valuation even though "it is possible that [the expert's] methods are not entirely replicable because they are based in part on his personal experience as a coin dealer")); *In re Blech Sec. Litig.*, No. 94 Civ. 7696, 2003 WL 1610775, at *21 (S.D.N.Y. Mar. 26, 2003) (admitting securities industry expert's testimony "as to what ordinary broker activity entails and as to the customs and practices of the industry"); *SEC v. U.S. Envtl., Inc.*, No. 94 Civ. 6608, 2002 WL 31323832, at *3 (S.D.N.Y. Oct. 16, 2002) (admitting expert's testimony that "certain trading patterns would raise 'red flags'" based on expert's "knowledge of typical trading activity and

18

the types of trading patterns that an experienced trader would recognize as irregular, and as such, are supported by his 30 years of experience in the securities industry")).

As the government recognizes, Gov't *Daubert* Letter at 10 & n. 9, Dkt. No. 383, Sept. 29, 2017, the question of relevancy of the Subject Experts' testimony has already been briefed to the Court, *see generally* Govt's Pre-Trial Mots. at 40–49, Dkt. No. 329, Aug. 18, 2017; Greebel Mem. Law Opp. Govt's Mot. *in Limine* at 40–59, Dkt. No. 347, Aug. 25, 2017; Gov't Reply in Further Supp. of Its Pre-Trial Mots. at 49–60, Dkt. No. 348, Aug. 31, 2017. For the reasons set forth in our opposition to the government's pre-trial motions *in limine* at 40-59, Dkt. No. 347, Aug. 25, 2017, the Subject Experts' testimony is relevant. For the following reasons, the Subject Experts' testimony is also reliable and therefore admissible pursuant to Rule 702.

### B.     Mr. Greebel's Proposed Experts Are Admissible under Rule 702

Mr. Greebel has outlined the bases and reasons for nine out of ten of his proposed defense experts, including the Subject Experts, in the supplemental disclosures attached hereto as Exhibit 1, which it now incorporates by reference. As described in detail in Exhibit 1, each of the proposed experts rely in large part on their professional and/or academic experience. In determining admissibility under Rule 702, this Court is not bound to the *Daubert* factors, which "do not constitute a 'definitive checklist or test,'" *Romano*, 526 F.3d at 30. Instead, here, like in *Litvak*, "the reliability inquiry" should "focus upon personal knowledge and experience of the expert." 808 F.3d at 180 n.25. As demonstrated by the description of each expert's qualifications in Exhibit 1, it is beyond dispute that Mr. Greebel's proposed experts are experts in their respective fields and that their personal knowledge and experience is undoubtedly reliable. Notably, the government has not challenged any of the Subject Experts' qualifications. To the extent experts are performing analyses that may form the bases of their opinions that could be described beyond simply the application of the expert's knowledge and experience, Mr.

19

Greebel details the methods used and steps taken.  Ignoring the clear reliability of each experts' professional and/or academic experience, the government focuses on these methods as a red herring.  As described in detail below, however, the government's objections to the methodology of the Subject Experts are misleading and inappropriate.

### C.     Professor Craig Lewis's Proposed Expert Testimony Is Reliable under Rule 702

Professor Lewis will base his opinions on his extensive professional and academic experience; his own academic research and literature; outside academic research and literature; and his education.  In addition, Professor Lewis will analyze the trading activity in the common stock of Retrophin as outlined in the Supplemental Disclosure.  Ex. 1, Greebel Supp. Expert Disclosures at 8–9, Sept. 19, 2017.  The government argues that the disclosure does not indicate the methodology behind the analyses described in the disclosure, however the government fails to recognize that the bulk of Professor Lewis's analysis will be his review of the trading data based on his extensive professional and academic experience.

The proposition that the term "analyzing" indicates "some methodology was used" that Mr. Greebel is failing to disclose," Gov't *Daubert* Letter at 7–8, Dkt. No. 383, Sept. 25, 2017, suggests the government is unnecessarily reading something inexplicable into the term "analyzing."  There is no hidden methodology here.  Professor Lewis will, as stated in the disclosure, review the trading activity of Retrophin common stock using his extensive knowledge of financial markets and institutions, formed through his decades of academic research and teaching in the field of finance and service as the Chief Economist of the U.S. Securities and Exchange Commission, to form an opinion.  The application of an expert's

knowledge to form an opinion related to trading activity is admissible evidence.  *See U.S. Envtl.*, 2002 WL 31323832, at *3.

Moreover, the government ignores that Mr. Greebel's supplemental disclosure includes additional detail regarding the methodology when possible.  For example, Professor Lewis is "aggregating the Fearnow share recipients' trading volume, in the aggregate and as individuals, by day and by month to examine trading behavior" and "comparing each Fearnow share recipient's trading behavior to the other Fearnow share recipients and to other accounts buying and selling Retrophin shares during multiple periods."  Ex. 1, Greebel Supp. Expert Disclosures at 9, Sept. 19, 2017.  These straightforward methods, which include identifying trading activity by an individual's name and adding up the trading volume, are unquestionably reliable.  Not surprisingly, the government has not, and cannot, argue that these methods are unreliable or could not be tested and replicated.

Rather than suggest that a *Daubert* hearing is necessary, the government's arguments that Mr. Greebel fails to provide full disclosure of the methodology when there is nothing else to disclose establish the opposite.  The methods being employed are simple and do not require pages and pages of explanation, much less a full hearing for the Court to find that they are reliable.

### D.    Alan Johnson's Proposed Expert Testimony Is Reliable under Rule 702

Similarly, the government attempts to argue that we have not provided sufficient information on Mr. Johnson's methods.  But Mr. Johnson's analysis is aimed plainly at identifying publicly filed consulting agreements with provisions similar to those at issue in Mr. Greebel's case.  And so again, the government's suspicion of undisclosed methodologies behind the term "analyzing" is unwarranted.  Mr. Johnson's potential opinion will be based on his comparison of consulting agreements, and the methods he is using to identify these agreements

are described in detail within the disclosure.  In addition, his ability to accurately identify these agreements is based in large part on his 25 years of experience providing executive compensation consulting for over a thousand client companies, including the review of his client companies' various employment, severance, and consulting-related agreements.  Like Professor Lewis, the methods being employed are straightforward: Mr. Johnson will be applying his extensive knowledge to available information and data to form his opinion.

**E.      Matthew Ferrante's Proposed Expert Testimony Is Reliable under Rule 702**

The government does not challenge the disclosure of Mr. Ferrante's methodology, Ex. 1, Greebel Supp. Expert Disclosure at 16, Sept, 19, 2017.  Inexplicably, the government states that a *Daubert* hearing could test "whether Ferrante's methodology for analyzing metadata is subject to industry standards," yet the government does not make a single argument as to how the methods described in Mr. Ferrante's supplemental disclosure are unreliable.  Gov't *Daubert* Letter at 10, Dkt. No. 383, Sept. 25, 2017.

To the extent that the reliability of Mr. Ferrante, a former Special Agent with the United States Secret Service, is in question, his methods can be independently corroborated by any competent third party digital forensic examiner, government or private, using the same or similar scientific processes and procedures.  The tools and technologies utilized in computer forensics, *e.g.*, Access Data's FTK Imager, Access Data's Forensic Tool Kit, and Magnet AXIOM Forensics, are specialized scientific programs that have been thoroughly and independently tested, validated, and accepted in U.S. federal and state courts of law, as well as local, state, and

22

federal law enforcement agencies.  In addition, the reliability of Mr. Ferrante's methods are established by his extensive training and experience in computer forensics.

### F.    Professor Bryan Garner's Proposed Expert Testimony Is Reliable under Rule 702

Professor Garner will base his opinions on his extensive personal knowledge of and accomplished professional experience analyzing legal terms and their usage.  Mr. Garner is among the foremost authorities on the meaning of English words in legal contexts, having published numerous books on the subject, including *Black's Law Dictionary*; *Garner's Dictionary of Legal Usage*; *The Chicago Guide to Grammar, Usage, and Punctuation*; *The Elements of Legal Style*; *The Redbook: A Manual on Legal Style*; and, with the late Justice Antonin Scalia, *Reading Law: The Interpretation of Legal Texts*.  The Advisory Committee Notes to Rule 702 recognize, "'In certain fields, experience is the predominant, if not sole, basis for a great deal of reliable expert testimony.'"  *In re Blech*, 2003 WL 1610775, at *20 (quoting Fed. R. Evid. 702, Advisory Comm. Notes to 2000 Amend.).  Just so in the fields of English grammar and legal usage, in which Mr. Garner is an indisputable expert.  Lexicography and linguistic analysis depend on the linguist's wealth of knowledge and references, not any methodological algorithm.

The government misconstrues Professor Garner's disclosure to state that he would "solely" opine that context matters in any communication.  *See* Gov't *Daubert* Letter at 7, Dkt. No. 383, Sept. 25, 2017.  From this false premise, the government not only concludes that Professor Garner's opinion would be unhelpful—"a jury does not need an expert to tell it merely that communications depend on context," *id.*—but also seems to argue that Professor Garner is an unreliable expert on the quite relevant topic of what Mr. Greebel's and Mr. Shkreli's statements, made in the legal context of an attorney-client relationship, likely meant, *see id.* at 10

("And for the reason [*sic*] set forth above, the defendant has not shown that the Subject Experts' testimony is reliable.").

The government ignores that Professor Garner would, based on his extensive personal knowledge and expertise, analyze communications between Mr. Greebel and Mr. Shkreli offered into evidence in the government's case-in-chief.  Ex. 1, Greebel Supp. Expert Disclosures at 17-18, Sept. 19, 2017.  Thus, Mr. Garner would not testify "merely that communications depend on context," but rather would analyze specific legal communications in context.  Other courts have admitted linguistics experts to opine on the specific meaning of words in context.  *See, e.g.*, *PODS Enters., Inc. v. U-Haul Int'l, Inc.*, No. 8:12-CV-01479-T-27MA, 2015 WL 1097374, at *2 (M.D. Fla. Mar. 11, 2015) (admitting expert testimony on the meaning of "genericness" under the Lanham Act, an inquiry which "is based on the use of a word in its relevant context"); *see also Donziger*, 974 F. Supp. 2d at 650 (admitting expert testimony comparing language in foreign judgment and plaintiff's unfiled work product).  A lay person, even a trained lawyer, may feel confident in her grasp of the English language in a variety of contexts, but a linguistic expert such as Professor Garner can marshal a lifetime's worth of knowledge and experience to tease out nuances of meaning and usage that elide casual observation.  For these reasons, Professor Garner's testimony would be both reliable and helpful to the jury.

## G.    Gayle Klein's Proposed Expert Testimony Is Reliable under Rule 702

As noted in our Supplemental Disclosures, Ms. Klein has practiced trial litigation for more than two decades.  She has earned numerous accolades for her successful representation of both plaintiffs and defendants in complex commercial and securities actions.  The government makes no objection to her qualifications in the field of commercial litigation, nor could it.  Under the guise of seeking the "methodology" underlying Ms. Klein's disclosed opinions, which the government does not object to, either, the government seeks to compel further disclosure of her

24

"legal research and analysis."  Gov't *Daubert* Letter at 8–9 & n.6, Dkt. No. 383, Sept. 25, 2017.

The government does not elaborate on what kind of information would substantiate that Ms.

Klein conducted a "reliable legal analysis," *id.* at 10.  But the Court does not need to know the

names of every case Ms. Klein reviewed, or whether she searched for them on Westlaw or

LexisNexis, in order to determine Ms. Klein's reliability.  She has analyzed the claims in this

case and conducted research of statutes and caselaw like any other lawyer would.  Moreover, she

reviewed various background documents relating to this matter, including the Indictment, the

Superseding Indictment, communications between investors and Mr. Shkreli and/or Mr. Greebel,

and MSMB investment documents.  The reliability of Ms. Klein's opinions is based on her

decades of experience bringing and defending similar claims worth hundreds of millions of

dollars in total.  Ms. Klein would not opine on any ultimate legal issues in this case, but would

rather testify that she could, under the circumstances, have brought colorable claims against the

companies.  Other courts have admitted expert testimony, based on personal knowledge and

decades of professional experience, that certain conduct would raise legal "red flags."  *See, e.g.*,

*U.S. Envtl.*, 2002 WL 31323832, at *3; *see also Litvak*, 808 F.3d at 180 n.25 (*Daubert* reliability

inquiry may "focus upon personal knowledge and experience of the expert").  Similarly here, the

Court should find Ms. Klein's proposed testimony to be reliable.

## IV.    *Daubert* Hearings Are Not Necessary to Determine Admissibility Under Rule 702

As an initial matter, *Daubert* hearings are not necessary for the Court to determine

whether the proffered testimony of an expert is relevant under Rules 401 and 403.  The issue of

relevance is fully briefed before the Court, and a *Daubert* hearing is unnecessary to examine it.

Neither are hearings always necessary to establish the Subject Experts' reliability and

qualifications.  "Nothing requires a district court to hold a formal *Daubert* hearing in advance of

qualifying an expert witness."  *United States v. Ashburn*, 88 F. Supp. 3d 239, 244 (E.D.N.Y.

2015) (citing *United States v. Williams*, 506 F.3d 151, 161 (2d Cir. 2007)).  A separate hearing is

particularly unnecessary where experts' "reliability and qualifications . . . can be answered

through the foundation that the [examining party] will establish before turning to each expert's

conclusion," and the opposing party "may conduct additional questioning of the witness at trial."

*See United States v. Diakhoumpa*, 171 F. Supp. 3d 148, 152–53 (S.D.N.Y. 2016); *see also*

*United States v. Mirilishvili,* No. S2 CR 810, 2016 WL 751690, at *4 (S.D.N.Y. Feb. 18, 2016)

(objections to the "accuracy," "reliability," or "validity" of pain-management expert's opinions

were better left for cross-examination).  Moreover, where a proffered defense expert's

"credentials are unchallenged by the Government" and the "proffered testimony is neither novel

nor unorthodox," a trial court will admit the testimony without a *Daubert* hearing, even despite

an allegedly incomplete disclosure of the expert's bases.  *See United States v. Sturman*, No. 96

CR 318, 1998 WL 126066, at *2–3 (S.D.N.Y. May 20, 1998).

      The government claims that a *Daubert* hearing would enable the Court to "consider":

> (i) whether Garner has a sufficient basis to opine about the meaning of
> communications between two individuals, one of whom is not a lawyer
> and neither of whom he has ever met, and whether Garner's opinions
> about the meaning of communications between the defendant and Shkreli
> are based on "reliable principles and methods" (Rule 702(c)); (ii) whether
> Johnson's and Lewis's ongoing "analyses" of consulting agreements and
> trading data have "acceptance within the relevant scientific community"
> and are otherwise reliable (Daubert, 509 U.S. at 594); (iii) whether
> Ferrante's methodology for analyzing metadata is subject to industry
> standards; and (iv) whether Klein's legal opinions are based on a reliable
> legal analysis.

Govt's *Daubert* Letter at 10, Dkt. No. 383, Sept. 25, 2017.  The government does not provide

any support for why a *Daubert* hearing is necessary to consider these issues.  Moreover, the

government does not challenge the qualifications of any of the Subject Experts, and none of them

proposes to opine on "novel [or] unorthodox" or particularly complex theories, so a separate

*Daubert* hearing is unnecessary to test their qualifications or reliability.  *See Sturman*, 1998 WL 126066, at *2–3.

If the Court determines that a *Daubert* hearing should take place for one or more of the Subject Experts, such a hearing should not take place before trial.  The plain fact is that holding a pre-trial *Daubert* hearing would give the government an unfair and unwarranted opportunity to confront our witnesses early and preview Mr. Greebel's defenses while the government still has time to make adjustments to its case-in-chief.  It would also improperly freeze any affected expert's testimony before they had the chance to respond to the government's case-in-chief— which is of course the very purpose of a defense expert in a criminal case.  *See United States v. St. Pierre*, No. CRIM. 09-374, 2011 WL 2199375, at *2 (E.D. La. June 6, 2011) ("Confronted with a motion for a *Daubert* hearing, a criminal defendant could be presented with a difficult choice between revealing trial strategy in advance or taking the risk that resisting a pre-trial *Daubert* determination will prejudice his or her right to present expert testimony at trial."); *Wardius v. Oregon*, 412 U.S. 470, 475 n.9 (1973) (government prosecutors have inherent discovery advantages, so "if there is to be any imbalance in discovery rights, it should work in the defendant's favor").  In the context of discovery, another court has warned that forcing "production of an incomplete opinion and set[ting] a potential impeachment trap for the defense expert" would result in "grossly incongruent and inequitable disclosure obligations."  *Mehta*, 236 F. Supp. at 157.

Ordering a pre-trial *Daubert* hearing here would lay a similar "impeachment trap" for the Subject Experts.  It would also prejudice Mr. Greebel's right to a fair trial by forcing him to choose between revealing his trial strategy or resisting disclosure and thus risking preclusion of his chosen witnesses.  Given the inherent advantages the government already enjoys, the Court

should postpone any *Daubert* hearing until the close of the government's case-in-chief, as other courts have.  *See, e.g.*, *United States v. Heine*, No. 3:15-cr-238-SI, 2017 WL 449632, at *11 (D. Or. Feb. 2, 2017) (postponing a *Daubert* hearing on defendant's expert until after the "government has rested its case[] and out of the presence of the jury," because the expert would respond to the government's evidence).

Finally, the government's demand for pre-trial *Daubert* hearings is particularly inappropriate in light of its own recognition that its own rebuttal witnesses need not even be identified, much less subject to pre-trial examination by Mr. Greebel, until after the defense case is over.  The disparate treatment sought by the government is galling, to say the least.

### CONCLUSION

For all these reasons, the Court should deny the government's requests to preclude Mr. Greebel's experts, to compel additional disclosures from the Subject Experts, and to hold *Daubert* hearings on the Subject Experts.

Dated:   New York, New York
        October 2, 2017

/s/ Winston Chan
Reed Brodsky
Winston Y. Chan
Randy M. Mastro
Lisa H. Rubin

GIBSON, DUNN & CRUTCHER LLP
200 Park Avenue
New York, NY 10166
(212) 351-4000
WChan@gibsondunn.com
*Counsel for Defendant Evan Greebel*