

U.S. Department of Justice

*United States Attorney*
*Eastern District of New York*

JMK:AES/DCP/DKK
F.#2014R00501

*271 Cadman Plaza East271 Cadman Plaza East*
*Brooklyn, New York 11201Brooklyn, New York 11201*

October 4, 2017

<u>By Hand and ECF</u>

Honorable Kiyo A. Matsumoto
United States District Judge
Eastern District of New York
225 Cadman Plaza East
Brooklyn, NY 11201

      Re:  United States v. Evan Greebel
            <u>Criminal Docket No. 15-637 (KAM)</u>

Dear Judge Matsumoto:

      In his August 11, 2017 initial expert disclosures ("Initial Disclosures"), the defendant stated that five of his experts—Craig Lewis, Alan Johnson, Matthew D. Ferrante, Bryan A. Garner, and Gayle R. Klein (collectively, the "Subject Experts")—would testify about specific analyses that they presumably had performed. When the government requested that the Court set a briefing schedule so that those analyses could, if necessary, be subject to scrutiny under <u>Daubert</u>, the defendant objected. After the Court ordered the defendant to make supplemental disclosures, the defendant made a filing on September 20, 2017 (the "Supplemental Disclosures") in which he explained that the Subject Experts' analyses either have not happened, will not happen, or are in progress. Moreover, the defendant did not identify any of the documents upon which the Subject Experts purportedly relied for their analyses.

      Now, two weeks before trial, the defendant claims that he never had an obligation to disclose the bases for those expert opinions and that, even if he did, he satisfied those obligations and will neither produce the analyses his experts performed nor identify the specific documents upon which they relied. The defendant also contends he has shown that each of the Subject Experts has used a methodology that is reliable pursuant to <u>Daubert</u>.

      As discussed below and in the government's prior filings, the defendant's disclosures are inadequate. The government respectfully submits that, under the circumstances set forth above, preclusion is warranted. However, if the Court does not preclude the Subject Experts, it should order the defendant to immediately produce supplemental disclosures and schedule <u>Daubert</u> hearings.

I.       The Defendant Is Obligated to Comply with Rule 16

The defendant repeatedly argues that he has no obligation to comply with the expert disclosure requirements of Rule 16(b)(1)(C) because he did not make a formal request for disclosure of the government's experts pursuant to Rule 16(a)(1)(G). See Defendant's Opposition Brief, Dkt. No. 389 ("Def.'s Br.") at 5-7. That argument is without merit.

First, three weeks ago, the defendant confirmed that he had requested expert disclosures. Specifically, he argued he had no obligation to produce expert disclosures "because the government has not complied with [his] request for expert disclosures from the government." Dkt. No. 366 at 6, n.1 (emphasis added). The defendant does not explain how he can contend that the government refused his request for disclosures but that he never made such a request.[1]

Second, the defendant does not dispute that the Court can, as it has done in this case, order him to make expert disclosures. See Fed. R. Crim. P. 16(d)(1) ("At any time the court may, for good cause, deny, restrict, or defer discovery or inspection, or grant other appropriate relief."); United States v. Wilson, 493 F. Supp. 2d 484, 490-91 (E.D.N.Y. 2006) (ordering the government and defendant to disclose expert witnesses). Instead, he argues that both the (i) July 14, 2017 amended pretrial Order requiring the parties to disclose "a description of qualifications and a summary of expected [expert] testimony" by August 11, 2017 and (ii) September 15, 2017 Order requiring that the defendant provide supplemental disclosures in advance of Daubert briefing, required something less than the standard Rule 16 disclosures. The defendant attempts to draw a meaningful distinction when none exists.[2] Indeed, if the defendant were not obligated to disclose the bases and reasons for his experts' opinions, there would be nothing to challenge under Daubert and no reason for the Court to order Daubert briefing.

Third, the defendant cites no case in which a defendant was relieved of expert disclosure requirements under Rule 16 because he did not make a formal request for disclosures from the government.[3] Given the circumstances of this case, the defendant's attempt to argue that Rule 16's expert disclosure requirements do not apply to him rings hollow. See United

---

[1] Similarly, in his motion to preclude the government from offering expert testimony, the defendant argued he "did not have any of the information that meets the government's obligations under Rule 16." Dkt. No. 360 at 17 (emphasis added). But, under the defendant's current theory, the defendant never requested such information, so the government had no obligation to provide it.

[2] Expert opinion testimony requires bases and reasons. It follows that a summary of an expert's testimony should include, as Rule 16(b)(1)(C) requires, a summary of the bases and reasons underlying those opinions.

[3] The defendant cites United States v. Cruz, 363 F.3d 187, 196 n.2 (2d Cir. 2004) for the proposition that, "[e]ven if the government, without prompting, affirmatively represents that it will disclose its experts under Rule 16, that does nothing to trigger the defendant's reciprocal obligation under the rule." Def.'s Br. at 6. Cruz had nothing to do with defense experts, defense discovery obligations, or a defendant's reciprocal discovery obligations under Rule 16.

2

States v. Phillips, No. 11-CR-180, 2011 WL 5881192, at *2 (N.D. Ohio, Nov. 23, 2011) (defendant's argument that he had no discovery obligations because he never made a "formal request" for Rule 16 discovery "exalt[ed] form over substance").

      II.      The Defendant's Disclosures Are Inadequate

The defendant argues that he cannot make additional disclosures because some of the Subject Experts will be responding to documents offered in the government's case-in-chief, and it is "premature and unnecessary" to disclose the sources upon which the Subject Experts rely. Def.'s Br. at 11-13. The defendant's arguments are without merit.

First, almost all of the disclosed opinions that are the subject of this motion are based on documents or information known to the defendant and not subject to change. For example, nothing in the government's case-in-chief will alter the trading data for Retrophin in the 2012-2014 time period upon which Lewis relies, the text of the consulting agreements that Johnson has analyzed, or the materials that Klein purportedly reviewed in reaching her opinion about lawsuits.[4] And certainly nothing in the government's case will alter the methodology that the defendant's experts intend to use (or have used).

Second, the defendant does not dispute that he has not identified which documents the Subject Experts reviewed, or how those documents form the basis for any opinion they intend to offer. Instead, the defendant argues that "much of" the experts' testimony is based on their personal experience; the experts' review is "ongoing"; and it is "premature and unnecessary" for the defendant to identify the documents the experts are reviewing. Def.'s Br. at 13.[5] In other words, the defendant does not dispute that he has not adequately identified the bases for his opinions but argues that—two weeks before trial, and with each of the Subject Experts having purportedly formed opinions based on specific analyses—it is too early to disclose what they relied upon.

---

[4] For these reasons, the defendant's attempt to equate his disclosure of the Subject Experts' opinions and methodologies to the government's disclosure of a potential rebuttal expert to respond to the testimony of one or more defense experts is similarly off the mark.

[5] These arguments also ring hollow on their own terms. For example, in his initial disclosures about Lewis, the defendant revealed that Lewis had already reached conclusions, stating that Lewis: "will testify that it is his opinion that as a group, those shareholders were net sellers of Retrophin common stock; that their trading activity, in the aggregate, would be expected to put downward pressure on the price of Retrophin common stock; and that the trading behavior of those shareholders is inconsistent with an agreement between and among Mr. Shkreli, those shareholders, and/or anyone else, including Mr. Greebel, to control the price of or the volume of trading in Retrophin stock." (Initial Disclosures at 4.) The Initial Disclosures make clear that, with respect to the opinions disclosed, Lewis's analyses are not "ongoing" and he is not still "reviewing" information. If he had not finished his analysis, then how could he have reached those specific conclusions?

The defendant cites no authority for his claim that disclosure is "premature and unnecessary." Nor could he. Rule 16 requires disclosure of the bases and reasons for an expert's testimony, and that disclosure includes the identification of documents upon which an expert relied. See United States v. Ahmed, No. 12-CR-661 (SLT), 2015 WL 1611947, at *1 (E.D.N.Y. Apr. 9, 2015) ("'providing the government with a list of sources from which the experts drew their opinions' but 'not specify[ing] which sources the expert used to reach the different opinions identified' is insufficient") (quoting Ferguson, 2007 WL 4539636, at *2)); United States v. Ferguson, No. 06-CR-137 (CFD), 2007 WL 4539646, at *2 (D. Conn. Dec. 14, 2007) ("Absent information that links specific sources to each of the experts' opinions, the government does not have the type of information envisioned by Rule 16(b)(1)(C) with which to prepare for cross-examining the experts.").[6]

In addition to these general arguments, the defendant contends that the disclosure with regard to each of the Subject Experts satisfies Rule 16. It does not.

A. Craig Lewis

The defendant offers the conclusory assertion that his disclosure made the methodology underlying Lewis' analyses "abundantly clear." But he nevertheless continues to decline to describe that methodology in a way that allows a determination about its reliability to be made. Def.'s Br. at 14. The defendant appears to suggest that Lewis's analysis consists of applying his experience to draw conclusions from a set of trading data, without conducting any statistical analyses, event studies, or any other kind of analysis. If that is the case, the defendant should state as much. Otherwise, the defendant should explain the methodology Lewis used. And, in either case, the defendant should identify which sets of trading records he compared to which other sets of trading records.

---

[6] The defendant's attempt to rely on United States v. Vasquez, 258 F.R.D. 68 (E.D.N.Y. 2009) underscores why his disclosures for the Subject Experts are inadequate. In Vasquez, the government disclosed that an expert's testimony about the history and structure of the criminal organization known as MS-13 was based on information obtained during the expert's 19-year career in law enforcement, such a surveillance, interviews with gang members and the review of MS-13 literature. The court found that the government's disclosures were "sufficient to give [the defendant] a fair and adequate opportunity to challenge [the] expert testimony in a Daubert motion." Id. at 74. But, unlike in Vasquez, the Subject Experts are purportedly conducting "scientific" analyses and/or providing specific opinions based on their application of various methodologies to facts in this case. They are not being offered solely to testify about customs and practices, or to testify solely based on their own experience. Cf. United States v. Litvak, 808 F.3d 160, 182 (2d Cir. 2015) (expert testimony regarding process by which investment managers value a particular security admissible based on expert's personal experience). Indeed, the defendant has noticed five other experts who appear to be solely offering opinions based on their experience and are not conducting any analyses; the government has not raised Daubert challenges to those experts. The defendant's disclosures for those experts are also insufficient pursuant to Rule 16, however, and as such the government has also requested supplemental disclosures for those experts. See September 25, 2017 Letter to Defendant, attached hereto as Exhibit A.

### B. Alan Johnson

The defendant similarly claims that the methodology underlying Johnson's analysis is clear, but again fails to describe or provide the analysis itself. For example, the defendant contends that Johnson formed opinions regarding the "key terms" of consulting agreements, but fails to identify the opinions, the key terms, or the agreements that form the basis of his comparative analysis. Id. In other words, Johnson has an undisclosed opinion about undisclosed consulting agreements containing unidentified "key" terms.

### C. Bryan Garner

In response to the government's argument that the Supplemental Disclosures fail to adequately disclose Garner's opinions, the defendant states that he "provided detailed opinions." Def.'s Br. at 11. But there is no opinion (let alone a detailed opinion) in the Supplemental Disclosures. All the defendant says is that Garner will "analyze" communications between the defendant and Shkreli and opine on what those communications "likely mean." Nor has the defendant provided a "summary" of Garner's expected testimony, as required by the pre-trial Order. If the defendant is offering Garner to testify about his purported analysis of the defendant's emails, a summary of his testimony must include a disclosure of that analysis. The defendant fails to offer one.

The defendant argues that Garner "cannot predict what his final opinions will be at trial 'without having access to all of the information on which [he] will base [his] opinion[s] at that time.'" Id. (quoting United States v. Mehta, 236 F. Supp. 2d 150, 157 (D. Mass. 2002)). That argument is a red herring. In Mehta, upon which the defendant relies, an expert stated that part of his opinion would likely be based on Jencks Act material that had not yet been produced. In contrast, the Supplemental Disclosures state that Garner's opinions are based on unidentified materials that have long been in the defendant's possession. For example, Garner's opinion on what the defendant's emails mean is purportedly based on his review of those emails. The defendant states that his experts, including Garner, do not have "access to all of the information" on which they will base their opinions, but he fails to identify any missing information.

### D. Matthew Ferrante

The defendant argues that Ferrante, like Garner, cannot predict his final opinions at this point. Def.'s Opp'n Br. at 11. But if Ferrante's opinions are based on a "digital analysis" of documents produced in this case (Initial Disclosures at 1), the defendant should provide those opinions and analysis. And if Ferrante has done no work yet at all, the defendant should say so.

### E. Gayle Klein

The defendant still fails to specifically identify the documents upon which Klein relied or the legal claims she believes are viable or appropriate. See Def.'s Br. at 24. As such, her proffered testimony remains impermissibly vague. The government should be able to test Klein's opinions and analysis, as it would any other expert. The disclosure that Klein would bring unidentified "colorable claims" does not permit it to do so.

5

### III. The Defendant Has Not Met His Burden to Show that the Subject Experts' Testimony is Admissible

The disclosures provided by the defendant do not meet his burden of showing that the purported opinions of the Subject Experts are based on reliable methodologies under Rule 702 and Daubert.

As a general matter, the defendant relies heavily on his assertion that the Subject Experts are qualified to offer their opinions, attaching each of their resumes for a third time in these proceedings. But an expert's qualifications do not end the analysis; if that were the case, then an expert could use a wholly unreliable methodology by arguing that she is generally qualified to opine on a topic. The relevant question here is whether each of the Subject Expert's opinions is reliable, not whether the Subject Experts is qualified to opine on a subject.

With regard to Lewis, the defendant states that "the bulk of [ ] Lewis's analysis will be his review of the trading data based on his professional and academic experience" and that Lewis will "review the trading activity of Retrophin common stock using his extensive knowledge of financial markets and institutions . . . to form an opinion." Def.'s Br. at 20. In other words, the defendant appears to suggest that Lewis conducted no statistical analysis, no regressions, no event studies, and no other such analyses. If that is the case, the defendant should say so. As long as he suggests Lewis may have done more than apply his experience to trading data, it is impossible to determine whether Lewis's methodology is reliable because the methodology remains unclear.

The defendant's reliance on SEC v. U.S. Envtl., Inc., No. 94 Civ. 6608 (PKL), 2002 WL 31323832 (S.D.N.Y. 2002), illustrates this issue. Def.'s Br. at 21. In that case, the court held that an opinion related to trading activity is admissible, but only after the expert had submitted a report, charts, and a trading schedule based on broker-dealer records. That is, only after the expert had disclosed his analysis.

With regard to Johnson, the defendant argues that Johnson's "analysis is aimed plainly at identifying "publicly filed consulting agreements" with provisions "similar to those at issue" in this case. Id. The specifics on how Johnson sought to achieve this goal remain undisclosed. So do the consulting agreements themselves. The reliability of Johnson's analysis therefore cannot be evaluated. If Johnson's "analysis" really consists simply of reading various consulting agreements he deemed "similar" to those at issue, then it is critical that the government and the Court understand how he identified those "similar agreements." By failing to identify the steps in that methodology, the defendant has not shown that this similar-contract-identifying-process is reliable at all.

With regard to Garner, the defendant states that Garner may testify about the "quite relevant topic" of what the defendant's and Shkreli's statements "likely meant" and that he will "tease out nuances of meaning and usage that elide [sic] casual observation." Id. at 23-24. To be clear, Garner is being offered specifically to tell the jury what Shkreli and the defendant meant when they communicated with each other. The government agrees that what

6

the defendant meant when communicating with a co-conspirator is relevant. But that is plainly a question for the jury, not Garner, to answer.

Moreover, the "methodology" that Garner will apply is obviously unreliable. His supposed analysis will supposedly be based on his "personal knowledge"—the defendant does not say of what—and his "wealth of knowledge and references, not any methodological algorithm." Id.[7] None of that gives him any basis for concluding what two people he has never met, one of whom is not even a lawyer, must have meant when they emailed with each other regarding events of which he has no personal knowledge. Garner is not a mind reader, and he is not an expert in Evan Greebel or Martin Shkreli. The current record provides no basis upon which anyone could conclude that Garner's methodology is reliable.[8] If there is something more of substance to this email-reading exercise, the defendant has not disclosed it.

Finally, with respect to Klein, the defendant's disclosures have hamstrung the ability of the parties to analyze the reliability of her methodology by not disclosing sufficient

---

[7] The defendant cites two cases that he claims involved linguistic experts opining on the "specific meaning of words in context." Def.'s Br. at 24. Neither is remotely similar to Garner's proffered testimony here. In PODS Enters., Inc. v. U-Haul Int'l Inc., No. 8:12-CV-01379-T-27MA, 2015 WL 1097374, at *4 (M.D. Fla. Mar. 11, 2015), an expert linguist opined that a particular word was "generic" for purposes of the Lanham Act. He did so by analyzing six categories of materials, including industry usage, usage in patents, and media usage. That is, the expert offered a specific opinion about a specific question based on a disclosed methodology. And in Chevron Corp. v. Donziger, a professor of forensic linguistics testified about the narrow question of whether certain documents were plagiarized based on an analysis of other similar work. See 974 F. Supp. 2d 362, 648 (S.D.N.Y. 2014), aff'd, 833 F.3d 74 (2d Cir. 2016) (expert allowed to opine about whether internal work product from one party in arbitration appeared in purportedly neutral report of arbitrator). A more appropriate comparison is Lind v. Int'l Paper Co. and Temple Inland, Inc., No. A-13-CV-249, 2014 WL 11332304 (W.D. Tx. Mar. 12, 2014), in which Garner himself was precluded from testifying about the meaning of terms in a contract based on, among other things, grammatical principles. Garner's testimony was excluded because the court held that the interpretation of contracts is a question for the courts. Here, Garner's testimony should be excluded because the interpretation of the defendant's emails is a question for the jury.

[8] The defendant quotes In re Blech Sec. Litig., 94-Civ-7696 (RWS), 2003 WL 1610775, at *20 (S.D.N.Y. Mar. 26, 2003), for the uncontroversial proposition that, "[i]n certain fields, experience is the predominant, if not sole, basis for a great deal of reliable expert testimony." In Blech, the court permitted an expert with specialized knowledge of the stock brokerage industry to "testify as to what ordinary broker activity entails and as to the customs and practices of the industry." Id. at *20. But the court precluded that expert from testifying about whether certain trades were proper because, among other things, "[h]e engaged in no express methodology to reach his conclusions." Id. at *21. The same analysis applies here: Garner's experience might conceivably qualify him to testify as to certain customs and practices of linguistic analysis generally. But without a disclosed opinion, basis, or methodology, his opinions about the meanings of certain emails should be precluded.

7

information, as discussed above. Similarly, with respect to Ferrante, the defendant has not even disclosed a methodology beyond that Ferrante will use "[t]ools and techniques utilized in computer forensics." The defendant does not even say which "tool" Ferrante will use, providing only examples of forensic tools he might use.

In sum, as the Second Circuit recently stated, "[t]he district court cannot perform [the] complex evaluation of an expert's proposed methodology without a clear articulation of what the expert's opinions are and, even more importantly, of the bases for those opinions." United States v. Ulbricht, 858 F.3d 71, 115 (2d Cir. 2017). Notwithstanding that the "complex evaluation of an expert's proposed methodology" is governed by Rule 702, and the "clear articulation" of an expert's opinions and the bases for those opinions is governed by Rule 16, the defendant argues that the government "improperly conflates Rule 16(b)(1)(C) Requirements with Admissibility under Rule 702." Def.'s Br. at 7. But as the Second Circuit stated and the defendant's disclosures in this case illustrate, a failure to provide the bases for an expert's opinions can prevent the Court from being able to perform its gatekeeping function.

IV.  Conclusion

For the reasons set forth above, the government respectfully submits that the Subject Experts be precluded from testifying. In the alternative, the Court should order the defendant to immediately produce supplemental disclosures and schedule Daubert hearings.[9]

        Respectfully submitted,

        BRIDGET M. ROHDE
        Acting United States Attorney

By: /s/_____
   Alixandra E. Smith
   David C. Pitluck
   David K. Kessler
   Assistant U.S. Attorneys
   (718) 254-(718) 254-7000

---

[9] The defendant argues that Daubert hearings are not necessary to determine whether the proposed testimony of the Subject Experts is admissible. For the reasons set forth above, the defendant's Supplemental Disclosures do not allow the Court to perform its gatekeeping function under Daubert or the government to prepare for cross-examination. As stated in the government's moving brief, if additional disclosures establish that the proffered testimony of one or more of the Subject Experts complies with Rule 702 and Daubert, the government will withdraw its request for a Daubert hearing with respect to those experts. Absent that, the Court should schedule Daubert hearings for each of the Subject Experts so that the Court and the government properly can evaluate each methodology.