**GIBSON DUNN**

Gibson, Dunn & Crutcher LLP

555 Mission Street
San Francisco, CA 94105-0921
Tel 415.393.8200
www.gibsondunn.com

Winston Y. Chan
Direct: +1 415.393.8362
Fax: +1 415.374.8460
WChan@gibsondunn.com

October 11, 2017

SERVED BY ECF

Alixandra E. Smith, Esq.
David C. Pitluck, Esq.
David K. Kessler, Esq.
Assistant United States Attorneys
U.S. Attorney's Office for the Eastern District of New York
271 Cadman Plaza East
Brooklyn, New York 11201

Re:     United States v. Greebel, S1 15 Cr. 637 (KAM)

Dear Counsel:

We write pursuant to the Court's minute-entry order, dated October 6, 2017, that Mr. Greebel provide certain additional information requested by the government in its October 4 letter (Dkt. No. 390) regarding Mr. Greebel's potential experts. Although the order did not reference the government's September 25 letter, we include responses to the requests set forth therein as well. This letter thus further supplements our expert disclosures already provided as to Stephen Ferruolo, Stephen Gillers, Gayle Klein, Ronald Minkoff, and Lori Smith, and we will do the same for Alan Johnson, Craig Lewis, and Matthew Ferrante on Friday.

Below, we reproduce in **bold** typeface the government's specific requests for information. Our responses follow each request, in normal typeface. As we have discussed with and written to you, if and only if we decide to present a case-in-chief, any of the experts whom we call as witnesses will be responding in substantial part to the government's case-in-chief. Accordingly, we reserve the right to amend or expand the potential testimony of our potential experts based on the evidence and testimony admitted in the government's case-in-chief.

   A.     Stephen Ferruolo

   1.   **One of Ferruolo's opinions is that the "transfer of unrestricted stock to an employee, who is not an 'affiliate'—an executive officer, director, or large shareholder—would not make the stock restricted." (Supplemental Disclosures at 5). Please provide the bases for this opinion about what**

**GIBSON DUNN**

October 11, 2017
Page 2

      **"make[s] the stock restricted," including any applicable laws or regulations that Ferruolo applied.**

      The basis for this opinion is Dean Ferruolo's extensive professional experience, including his understanding and interpretation of Rule 144 of the Securities Act of 1933.

  2. **One of Ferruolo's opinions is that the "The purpose of a Schedule 13D filing is to provide an early warning signal of a potential change in control (e.g., hostile takeover)." (Supplemental Disclosures at 6). Please provide the bases for this opinion, including any applicable laws or regulations that Ferruolo applied.**

      The basis for this opinion is Dean Ferruolo's extensive professional experience, including his understanding and interpretation of Section 13(d) of the Securities Exchange Act of 1934.

  3. **In addition to the disclosures requested above, the government requests that, for each expert, you identify the federal and state court proceedings, and any arbitration proceedings, in which one of the above-discussed experts offered substantially similar testimony to the testimony noticed in this case.**

      Dean Ferruolo has not previously testified as an expert.

**B. Gayle Klein**

  1. **Identify the "various theories of law" pursuant to which Klein believes there were "colorable claims against Retrophin, its officers and directors" by the defrauded MSMB investors (Disclosures at 4), a summary of any specific opinions that Klein will offer regarding these "various theories of law," and the bases and reasons for any such opinions.**

      Ms. Klein would testify to the likelihood that a reasonable plaintiff's attorney would, on behalf of the MSMB investors, bring a variety of colorable claims against Retrophin (in addition to the MSMB Funds and Mr. Shkreli) under New York and Delaware law, including but not limited to the following:

    a. Aiding and abetting the MSMB Funds' breach of fiduciary duty to their investors by refusing to distribute their investors' partnership interests for cash during the wind down of the Funds, and instead distributing Retrophin shares to those investors;

October 11, 2017
Page 3

    b. Tortious interference with the MSMB Funds' business relationships with their investors during the dissolution, liquidation, and wind down of the Funds;

    c. Claims against Retrophin relating to disregarding the corporate form, based on documents that would likely emerge in discovery showing commingling of assets and shared employees; and

    d. In general, a plaintiff's lawyer tries to bring claims that not only have a good-faith basis in fact but also, if the claims are successful, against companies that will have the ability to pay damages.

The bases and reasons for these opinions are the same as those set forth in the following response.

**2. The reasons and bases for the following proffered testimony: "following the announced decision by the general partners of MSMB Capital Management LP and MSMB Healthcare LP to dissolve, liquidate and wind down the hedge funds, the general partners' refusal or inability to distribute the investors' limited partnership interests for cash and the unauthorized distribution of Retrophin shares to those investors gave rise to colorable claims against Retrophin, its officers and directors." (*Id.*).**

Ms. Klein would base her opinions on her experience, as set forth in Mr. Greebel's September 19, 2017 letter, and on her review of documents relating to this matter, including the Indictment, the Superseding Indictment, communications between investors and Mr. Shkreli and/or Mr. Greebel, and MSMB investment documents, including documents with the following beginning Bates numbers: BOA-000045, CITRON193813, DG-000000083, DG-000000090, JPMC-001465, KAT_0067403, LR00000042, LR00000044, LR00000106, LR00000108, LR00000167, LR00000182, LR00000188, LR00000193, LR00000216, LR00000226, LR00000285, LR00000401, LR00000454, LR00000477, LR00000697, LR00000781, LR00000782, LR00000783, LR00000784, LR00000829, LR00000833, LR00000887, LR00000956, LR00000980, LR00000986, LR00000994, LR00001016, LR00001041, LR00001096, LR00001233, LR00001375, LR00001649, LR00004336, MSMB000053, MSMB000054, MSMB000055, NAV0018541, NAV0018899, NAV0018933, R011454, R012685, R012688, R017581, R017913, R019740, R023217, RTRX000001967, RTRX000003154, SM-0000108.

October 11, 2017
Page 4

    Ms. Klein would also base her opinion on her review of applicable New York and Delaware case authority.

**3. In addition to the disclosures requested above, the government requests that, for each expert, you identify the federal and state court proceedings, and any arbitration proceedings, in which one of the above-discussed experts offered substantially similar testimony to the testimony noticed in this case.**

    Ms. Klein has not previously testified as an expert.

**C.    Professor Stephen Gillers[1]**

**1. A summary of the specific opinions, along with the bases and reasons for those opinions, that Gillers will offer regarding the following proffered topics for testimony (Def's Aug. 11, 2017 Ltr. Ex. B, Dkt. No. 312-2 ("Initial Disclosures") at 3):**

The basis for Professor Stephen Gillers's opinions is his extensive experience in the field of legal ethics and professional responsibility, the field in which he has been writing and teaching for nearly 40 years. Professor Gillers has authored 10 editions of his widely-used casebook, Regulation of Lawyers: Problems of Law and Ethics (Aspen Law & Business, 11th ed. 2018 forthcoming), as well as numerous articles in the mainstream press, legal press, and law reviews. In addition, Professor Gillers has provided testimony in multiple congressional hearings and has extensive speaking and lecturing experience. He has been and remains active in the profession's generation of rules governing lawyers, including by serving on multiple Bar Association committees and commissions. In serving on these commissions, Professor Gillers drafted and proposed rule changes that have been accepted and adopted into the Model Rules that many states use today.

All of Professor Gillers's opinions and anticipated testimony detailed below will be based on his professional and academic experience, including his review and analysis of thousands of legal ethics opinions and literature and his experience providing advice on legal ethics issues through his Bar Association work and his consultations with clients.

---

[1] We have not previously provided supplemental disclosures for Professor Gillers since the government did not request that we provide such supplemental disclosure until its letter of September 25, 2017.

October 11, 2017
Page 5

    a. **"[G]eneral customs and practices of governing lawyers' conduct, the New York Rules of Professional Conduct that govern such conduct, and the attorney-client relationship."**

    The basis for Professor Gillers's opinions is his extensive professional and academic experience, described above. This particular sentence from our Initial Disclosures does not reflect one of Professor Gillers's specific opinions, which are reflected below, but rather serves as an overarching summary of the subject matters on which he will testify.

    b. **That "the attorney-client relationship is one built on trust and confidence."**

    The basis for this opinion comes from New York Rule of Professional Conduct ("Rule") 1.1, the Rule of Competence. Professor Gillers would testify that in order to provide competent representation to a client, a lawyer must create a relationship of trust and confidence. The lawyer must create this relationship in order to obtain the facts the lawyer needs to then provide legal advice to the client.

    c. **That "a lawyer expects and has a right to expect candor from his or her client."**

    Professor Gillers would testify that the right to expect candor from his or her client is a prerequisite to the attorney-client relationship and to establishing a sense of trust with the client. Professor Gillers would testify that, in order to establish a relationship of trust and confidence so that the attorney can provide competent advice pursuant to Rule 1.1, a lawyer should begin the relationship with an assumption that the client is truthful and is providing accurate information. He would testify that establishing this trust and expecting candor are critical to the founding of an effective attorney-client relationship.

    d. **That "a lawyer owes duties of confidence, loyalty and trust to his or her client."**

    Professor Gillers's opinion is based on Rule 1.6 (Confidentiality of Information), Rule 1.7 (Conflicts of Interest: Current Clients), Rule 1.8 (Current Clients: Specific Conflict of Interest Rules), and Rule 1.9 (Duties to Former Clients). Professor Gillers would testify that a lawyer owes duties of confidentiality and loyalty to his or her client, which are central to the attorney-client relationship, and which continue after the culmination of the

October 11, 2017
Page 6

relationship. Specifically, Professor Gillers's opinions are based in part on Rule 1.8(b) ("A lawyer shall not use information relating to representation of a client to the disadvantage of the client unless the client gives informed consent . . .") and Rule 1.9(c) ("A lawyer who has formerly represented a client in a matter or whose present or former firm has formerly represented a client shall not thereafter . . . use confidential information of the former client . . . or . . . reveal confidential information of the former client . . .").

e. **That "a lawyer may rely on facts and information provided by his or her client."**

Professor Gillers's opinion is based on a lawyer's duties under Rule 1.1, the Rule of Competence. As described above, a lawyer must establish a relationship of trust of confidence with his or her client. Professor Gillers would testify that in order to establish this relationship of trust and confidence, a lawyer may rely on facts and information provided by his or her client, especially when the information pertains to the client's own business.

f. **That "because of the special nature of the attorney-client privilege, lawyers guard against potential waivers of that privilege by limiting the universe of people to whom they communicate a client's request for legal advice and/or the lawyer's advice itself."**

Professor Gillers's opinion is based on the Rules of Professional Conduct that relate to confidentiality and the attorney-client privilege, including Rules 1.6(a), 1.8(b), 1.9(c), and 1.13. Professor Gillers would testify that lawyers have a clear duty not to disclose or to otherwise use information that is protected by attorney-client privilege, and that this includes information the lawyer learns from the client during the course of his or her representation. Professor Gillers would testify that attorneys have a duty to protect confidential information, and that it includes the duty to ensure that legal advice is not shared with those not subject to the attorney-client privilege.

2. **In addition to the disclosures requested above, the government requests that, for each expert, you identify the federal and state court proceedings, and any arbitration proceedings, in which one of the above-discussed experts offered substantially similar testimony to the testimony noticed in this case.**

Professor Gillers has not provided substantially similar expert testimony to the testimony he would provide in this case.

**GIBSON DUNN**

October 11, 2017
Page 7

**D.     Ronald Minkoff**

1. **The Supplemental Disclosures state that one of Minkoff's opinions relates in part to a "fail[ure] to adhere to the highest standards of professional conduct." (Supplemental Disclosures at 22).  Please identify the bases for defining the "highest standards of professional conduct," in contrast to the "rules of professional responsibility," which appear to provide the basis for another opinion Minkoff offers.**

   On the basis of his professional experience, as described on page 21 of Mr. Greebel's September 19, 2017 letter, Mr. Minkoff defines the "highest standards of professional conduct" to include applicable rules of professional responsibility, *e.g.*, New York Rule of Professional Conduct 1.2(a), as well as the applicable law of fiduciary duty and agency.

2. **The Supplemental Disclosures state that one of the bases of Minkoff's opinions is his "review of documents related to this matter." (Supplemental Disclosures at 23).  None of Minkoff's disclosed opinions address documents related to or facts specific to this case. Please identify which, if any, of Minkoff's opinions actually address facts or documents related to this case and identify all such documents.**

   Each of Mr. Minkoff's opinions, as summarized on pages 22 and 23 of Mr. Greebel's September 19, 2017 letter is informed by his review of the settlement agreements and consulting agreements at issue in Count Seven of the Superseding Indictment, including the following exhibits marked by the government for introduction in its case-in-chief:  GX 51 (Rosenwald Settlement Agreement), GX 52 (Hassan Settlement Agreement), GX 53 (Spielberg Settlement Agreement), GX 54 (Kocher Settlement Agreement), GX 55 (D. Geller Settlement Agreement), GX 56 (Lavelle Settlement Agreement), GX 57-A (Marshall Settlement Agreement – Shares), GX 57-B (Marshall Settlement Agreement – Cash), GX 58 (Rosenfeld Consulting Agreement), GX 59-A (A. Geller Consulting Agreement), GX 60 (Yaffe Consulting Agreement), and GX 61 (Blanton Consulting Agreement).

3. **In addition to the disclosures requested above, the government requests that, for each expert, you identify the federal and state court proceedings, and any arbitration proceedings, in which one of the above-discussed experts offered substantially similar testimony to the testimony noticed in this case.**

**GIBSON DUNN**

October 11, 2017
Page 8

Mr. Minkoff has not provided substantially similar expert testimony to the testimony he would provide in this case.

**4. Background and Qualifications**

Mr. Minkoff clarified that *The New York Legal Ethics Reporter* is a periodical, not a "monthly periodical," and that:

> He is actively involved in various professional associations. He has served on and has chaired committees relating to professional responsibility and professional discipline (among numerous other committees) of the New York City Bar Association and the New York State Bar Association, and the New York County Lawyers' Association. He has served on the New York State Bar Association's Committee on Standards of Attorney Conduct. He serves on the Policy Implementation Committee of the American Bar Association's Center for Professional Responsibility. He is a former President of the Association of Professional Responsibility Lawyers. He regularly attends and is invited to speak at a variety of national conferences on issues of professional responsibility.

**E. Lori Smith**

**1. One of the opinions in the Supplemental Disclosure that Smith will offer is that "Retrophin fully disclosed in its public filings that company management believed there was uncertainty as to whether the promissory notes could be repaid, which caused Retrophin and the auditor to book the unpaid note amounts as expenses." Please advise if Smith is going to offer an analysis of the sufficiency of the disclosure of the indemnification notes and, if so, identify the basis (factual or otherwise) and methodology for such an analysis.**

Professor Smith's potential testimony as to the subject disclosure would focus on the practices of an outside auditor surrounding such a disclosure. For example, because the outside auditor did not raise the subject disclosure to the Audit Committee of Retrophin's Board of Directors in the auditor's letter dated September 9, 2013, which was sent to the Audit Committee in advance of the September 9 Board meeting, or in the auditor's final signed letter dated September 18, 2013, the outside auditor must have determined that the settlement agreements, indemnification agreements, and promissory notes were fully disclosed in the company's second quarter ended June 30, 2013 10-Q filed on

October 11, 2017
Page 9

September 16, 2013.  In addition, Professor Smith further bases this conclusion on the auditor's provision of an unqualified opinion of the company's amended 2012 10-K filed on September 16, 2013.

2. **The Supplemental Disclosures state that one of the bases of Smith's 4 opinions is her "review of documents relating to this matter." (Supplemental Disclosures at 27).  Please identify such documents.**

   2012 amended 10-K filed on September 16, 2013; amended first quarter ended March 31, 2013 10-Q filed on September 16, 2013; second quarter ended June 30, 2013 10-Q filed on September 16, 2013; Marcum letter dated September 9, 2013 to the Audit Committee of Retrophin's Board of Directors, Bates stamped R019397; September 9, 2013 email, Bates stamped R019332; September 9, 2013 Board of Directors meeting agenda, Bates stamped RTRX000002120; Marcum letter dated September 18, 2013 to the Audit Committee of Retrophin's Board of Directors from the Marcum Laptop; Marcum memo re "Auditor's Preliminary Expectations" dated July 24, 2013 from the Marcum laptop; and Marcum memo re "Significant Issues Memorandum" dated September 13, 2013 from the Marcum Laptop.

3. **The Supplemental Disclosures state that one of the bases of Smith's opinions are "applicable accounting and auditing standards and principles."  Please identify those standards and principles.**

   ASC 310, ASC 405, ASC 450, ASC 850, AU 110, AU 210, AU 316, AU 317, AU 325, AU 334, AU 337, AU 342, AS 3, AS 5, AS 8, AS 9, AS 11, AS 12, AS 13, AS 14, AS 16, ASU 2013-04, AICPA Code of Professional Conduct 0.300.060, FASB Concept Statement 6, FASB Concept Statement 8, PCAOB ET Section 101.

4. **In addition to the disclosures requested above, the government requests that, for each expert, you identify the federal and state court proceedings, and any arbitration proceedings, in which one of the above-discussed experts offered substantially similar testimony to the testimony noticed in this case.**

   Professor Smith has not previously testified as an expert.

   \*     \*     \*

Please let us know if you have any additional questions.

**GIBSON DUNN**

October 11, 2017
Page 10


Sincerely,

*/s/ Winston Y. Chan*
Winston Y. Chan



cc: Clerk of the Court (via ECF)