UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------X

UNITED STATES OF AMERICA,

                              **MEMORANDUM AND ORDER**

      - against -

EVAN GREEBEL,                  15-CR-637 (KAM)

         Defendant.

-----------------------------------------X

**MATSUMOTO, United States District Judge:**

Before the court is defendant Evan Greebel's motion to dismiss Count Seven of the Superseding Indictment. (Motion to Dismiss Count Seven of the Superseding Indictment and Memorandum ("Mem.") in Support of Motion, ECF Nos. 326, 327.) The court assumes familiarity with the facts and procedural history of this case and of the trial of Mr. Greebel's co-defendant, Martin Shkreli (the "Shkreli trial"). For the reasons that follow, the court respectfully denies Mr. Greebel's motion.

### Legal Standard

An indictment "must be a plain, concise, and definite written statement of the essential facts constituting the offense charged." Fed. R. Crim. P. 7(c)(1). "The Supreme Court has 'identified two constitutional requirements for an indictment: first, that it contains the elements of the offense charged and fairly informs a defendant of the charge against which he must defend, and, second, that it enables him to plead

1

an acquittal or conviction in bar of future prosecutions for the same offense.'" *United States v. Lee*, 833 F.3d 56, 69 (2d Cir. 2016) (quoting *United States v. Resendiz-Ponce*, 549 U.S. 102, 108 (2007)), *cert. denied*, 137 S.Ct. 2212 (2017). *See also United States v. Stringer*, 730 F.3d 120, 123–24 (2d Cir. 2013) ("We have held that to satisfy the pleading requirements of Rule 7(c)(1), an indictment need do little more than to track the language of the statute charged and state the time and place (in approximate terms) of the alleged crime." (internal quotation marks and citation omitted)).

"Generally, the indictment does not have to specify evidence or details of how the offense was committed. Simply put, the validity of an indictment is tested by its allegations, not by whether the Government can prove its case." *United States v. Walters*, 963 F. Supp. 2d 125, 130 (E.D.N.Y. 2013) (quoting *United States v. Coffey*, 361 F. Supp. 2d 102, 111 (E.D.N.Y. 2005)).

## Discussion

### A.  Effect of Acquittal of Martin Shkreli

Mr. Greebel first contends that the court should dismiss Count Seven because a jury acquitted his alleged co-conspirator, Mr. Shkreli, of the same conspiracy.  He points out that the government introduced no evidence at the Shkreli trial showing that Mr. Greebel conspired with individuals other than

Mr. Shkreli.  (Mot. at 5-13.)  The government argues that it is not bound by the evidence it presented at Shkreli trial, that it may present evidence of additional co-conspirators, and that the jury acquittal of Mr. Shkreli does not have preclusive effect on the case against Mr. Greebel.  (Government's Opposition to the Defendant's Motion to Dismiss ("Opp."), ECF No. 345 at 7-10.)

As this court noted when granting Mr. Greebel's and Mr. Shkreli's motions for severance, "[t]he Supreme Court has expressed a strong 'preference in the federal system for joint trials of defendants who are indicted together' to promote efficiency and serve the interests of justice by preventing the inequity of inconsistent verdicts."  (Memorandum and Order Granting Motion to Sever, ECF No. 198 at 10 (quoting *Zafiro v. United States,* 506 U.S. 534, 537 (1993)).  Both the Supreme Court and the Second Circuit have explained, however, that inconsistent verdicts are an aspect of our jury trial system. In *Standefer,* the Supreme Court affirmed an appellant's conviction for aiding and abetting on counts on which the alleged "principal" in the scheme had been acquitted.  *Standefer v. United States*, 447 U.S. 10, 14 (1980).  The court concluded that Congress had abolished the common-law distinction between "principals" and other participants in federal crimes.  *Id.* at 25.  The court then explained that "different juries may reach different results under any criminal statute. That is one of the

3

consequences we accept under our jury system." *Id.* at 25.  The
Supreme Court noted, for example, that "juries [may] acquit out
of compassion or compromise" or lenity, but the government does
not have access to "remedial procedures," such as appeal of an
acquittal, to correct verdicts that are against the weight of
the evidence. *Id.* at 22.  As a result, the Court concluded that
an acquittal should not have a preclusive effect as to another
defendant. *Id.* at 25.  With regard to conspiracies, the Second
Circuit has held that, notwithstanding the inconsistency in the
verdicts of conspirators, "one defendant's conspiracy conviction
does not become infirm by reason of jury verdicts of not guilty
against all of his alleged coconspirators." *United States v.*
*Acosta*, 17 F.3d 538, 545 (2d Cir. 1994) (citing, *inter alia*,
*United States v. Powell*, 469 U.S 57, 67 (1984)).  The reasoning
in *Standefer*, *Powell*, and *Acosta* is determinative of the instant
motion:  given the government's stated intention to present
evidence on Count Seven that may differ from the evidence
presented in the trial of Mr. Shkreli, including but not limited
to evidence of other conspirators, the government may try Mr.
Greebel on Count Seven.  Even if the government proceeds on the
theory that Mr. Shkreli was Mr. Greebel's only co-conspirator, a
different result would not be required.

Mr. Greebel relies on *United States v. Rodriguez* to
support his arguments that Count Seven should be dismissed.  In

*Rodriguez*, the indictment charged defendant Maritza Rodriguez, her co-defendant Yesenia Maria Taveras, "and others" with narcotics conspiracy. *United States v. Rodriguez*, 983 F.2d 455 (2d Cir. 1993). At the close of the government's case, the trial judge concluded that the evidence was insufficient as to Taveras, but permitted the charges against Rodriguez to go to the jury. *Id.* at 457. The Second Circuit stated that the trial judge "properly charged the jury" that they could not consider Taveras as a co-conspirator, and had to find that Rodriguez conspired with some other person. *Id.* at 459. Mr. Greebel argues that *Rodriguez* stands for the proposition that "inconsistent jury verdicts are prohibited where there is no probative evidence demonstrating beyond a reasonable doubt that the defendant conspired with anyone else to commit the crime." (Mot. at 5.) On the defense's theory, because Mr. Shkreli was acquitted of Count Seven, and because the defendant claims that at Mr. Shkreli's trial the government did not introduce evidence that any other individual conspired with Mr. Greebel, the conspiracy charge in Count Seven against Mr. Greebel must be dismissed.

There are several factors, however, that distinguish this case from *Rodriguez*. First, as the Second Circuit made clear in *Rodriguez*, its decision was dependent on the fact that the trial judge, not the jury, had acquitted Taveras of

conspiracy based on insufficiency of evidence presented at the trial. As the court explained, although a *jury* acquittal "cannot necessarily be equated with a finding that the Government failed to prove guilt beyond a reasonable doubt[, c]ourts have been less tolerant . . . of inconsistent *judicial* determinations, since there is no ambiguity in a judge's dismissal of charges." *Id.* at 459 (internal citations omitted). Thus, because the trial judge in *Rodriguez* had concluded there was insufficient evidence to support a conclusion that Taveras was a co-conspirator, it would have been contradictory and unjust for the jury to continue to consider her as a co-conspirator for purposes of the charges against Rodriguez. Unlike the judicial determination in *Rodriguez* of insufficient evidence against the defendant's only co-conspirator, because Mr. Shkreli was acquitted by a jury, this court cannot equate the jury's acquittal of Mr. Shkreli on Count Seven "with a [judicial] finding that the Government failed to prove [Shkreli's] guilt beyond a reasonable doubt." *Id.*

Second, in contrast to the procedural posture of *Rodriguez*, the government has not yet presented its case against Mr. Greebel. Mr. Greebel's motion challenges the sufficiency of anticipated evidence based on the government's case against Mr. Shkreli. The government, however, is not bound to repeat the same case it proffered against Mr. Shkreli; it may present

additional or different evidence and may argue that additional individuals conspired with Mr. Greebel.  Indeed, the so-called "Retrophin Misappropriation Scheme" charged in Count Seven alleges the involvement of Co-Conspirator 1, in addition to Mr. Greebel and Mr. Shkreli. (Superseding Indictment ¶ 25.) Moreover, although Mr. Greebel has argued that it is unrealistic that the government would not have introduced all of its evidence on Count Seven in the trial of Mr. Shkreli, defense counsel provides no authority for the court to dismiss an indictment based on a defendant's speculation about the government's trial strategy.

Mr. Greebel has also cited *United States v. Batista*, in which the government charged that defendants Henry Conde and Luis Batista conspired to obstruct justice.  A jury acquitted Conde but convicted Batista.  In an unpublished decision, the judge acknowledged the weight of authority permitting inconsistent verdicts, but concluded, after the government's presentation of the trial evidence, that the record did not "support an inference that Batista conspired to obstruct with others *apart from Conde, who was acquitted*," and granted Batista's motion for acquittal on the relevant charge.  *United States v. Batista*, No. 06-CR-265 S-5 DLI, 2010 WL 1193314, at *12 (E.D.N.Y. Mar. 24, 2010) (citing *Rodriguez*, 983 F.2d at 459) (emphasis added).  Although the judge did not specifically

7

explain whether or not the evidence that Conde conspired with Batista was sufficient to support the verdict of conspiracy as to Batista, the decision was rendered after the government presented its evidence. *See id.*

Mr. Greebel cites *Batista* as support for his contention that an alleged co-conspirator who is acquitted by a jury cannot be considered as a co-conspirator for the purposes of a conspiracy charge against another defendant. (*See* Mot. at 6-8.) This interpretation is squarely at odds with *Acosta*, in which all of the appellant's alleged co-conspirators were acquitted of felony charges by a jury but the Second Circuit permitted the felony conviction of the appellant to stand. *Acosta*, 17 F.3d at 545. Furthermore, *Batista* is distinguishable from the instant case because it was decided by the court on a Rule 29 motion, and not a motion to dismiss. The judge had the benefit of considering the government's evidence of a conspiracy between Conde and Batista, and appears implicitly to have concluded that the evidence was insufficient to support the government's theory against Batista. In contrast, as discussed above, Mr. Greebel is seeking to dismiss charges based not on the adequacy of the Superseding Indictment, but on what he anticipates the government's case might be. Neither *Rodriguez* nor *Batista* provide authority or a compelling basis for the court to dismiss Count Seven.

8

**B. The Alleged Backdated Transfers**

Mr. Greebel also moves to strike the "the government's theory in Count Seven that Mr. Shkreli, along with Mr. Greebel, 'conspired to defraud Retrophin by causing it to: (i) transfer Retrophin shares to MSMB Capital even though MSMB Capital never invested in Retrophin.'" (Mot. at 17 (quoting Final Jury Instructions, ECF No. 295 at 73; *see also* Superseding Indictment, ECF No. 60 at ¶¶ 7(c), 21).) Mr. Greebel argues that even if the backdated transfers described in the Superseding Indictment occurred as alleged, they do not support the government's theory that he conspired to defraud Retrophin.[1] The court denies this part of defendant's motion, without prejudice to renew at the close of the government's case.

Count Seven of the Superseding Indictment alleges, *inter alia,* that Mr. Shkreli and Mr. Greebel, "together with others, engaged in a scheme to defraud Retrophin by misappropriating Retrophin's assets . . . in an effort to satisfy [Mr. Shkreli's] personal and unrelated professional

---

[1] Mr. Greebel contends that it is "legally impossible" for these transfers to have defrauded Retrophin, and the government has argued in response that "legal impossibility" is not a defense to conspiracy. (Mot. at 13-20; Opp. at 12 (citing *United States v. Trapilo*, 130 F.3d 547, 552 n.9 (2d Cir. 1997)); Reply at 8 (citing *United States v. Ali*, 561 F. Supp. 2d 265, 267-68 (E.D.N.Y. 2008).) Because the Superseding Indictment also charges that the defendant, Shkreli and others caused Retrophin to pay $3.4 million cash in addition to Retrophin shares (Superseding Indictment at ¶ 28), the court concludes that Mr. Greebel's arguments are premature, and it need not now specifically address the issue of whether the government's charge is properly characterized as "legally impossible."

debts and obligations," including obligations he owed to investors in his MSMB hedge funds and an additional hedge fund. (Superseding Indictment at ¶ 21.) Mr. Shkreli had told MSMB Capital investors in September 2012 that he was liquidating MSMB Capital and that they could redeem their interest in cash or Retrophin shares. (*Id.* at ¶ 15.) He represented to investors that MSMB Capital had performed well, and that original investors had "just about doubled their money net of fees," when in fact the fund had no assets. (*Id.* at ¶ 15.) He also informed the SEC in November 2012 that MSMB Capital "had $2,600,000 in assets under management and was in the process of being liquidated." (*Id.* at ¶ 24.) The Superseding Indictment then alleges that Mr. Shkreli and Mr. Greebel conspired to defraud Retrophin in order to satisfy MSMB Capital investors' expectations of the value of their investments. (*Id.* at ¶ 21.)

First, "in or about November and December 2012," Mr. Shkreli and Mr. Greebel allegedly fabricated an investment by MSMB Capital into Retrophin. (*Id.* at ¶ 25.) Specifically, Mr. Shkreli and Mr. Greebel allegedly offered several Retrophin shareholders (referred to as Co-Conspirator 1 and Corrupt Employees 1 and 2 in the Superseding Indictment) free trading or "Fearnow" shares in Retrophin in exchange for transferring their Retrophin shares to Mr. Shkreli pursuant to transfer agreements which were backdated to summer of 2012. (*Id.*) Mr. Shkreli then

10

immediately transferred these shares to MSMB Capital, also pursuant to a backdated agreement. (*Id.*) As a result of these transactions, on December 3, 2012 the Retrophin capitalization table showed that MSMB Capital had an interest in Retrophin for 75,000 shares. (*Id.* at ¶ 25(j).) Second, the Superseding Indictment alleges that Mr. Shkreli and Mr. Greebel "caused Retrophin to enter into settlement agreements" with several MSMB Capital and MSMB Healthcare investors "to resolve claims and threats of claims made by the limited partners against [Mr. Shkreli] and the MSMB Funds." (*Id.* at ¶ 26.) The agreements with the MSMB Capital investors were intended to "conceal the material misrepresentations" concerning "performance and liquidity" of the MSMB funds, and the false and inflated valuation of Retrophin that led these investors to believe that they had an interest in Retrophin. Thus, the defendant, Mr. Shkreli and others "caused Retrophin to pay more than $3.4 million in cash and Retrophin stock to settle claims for which Retrophin was not responsible." (*Id.* at ¶¶ 27, 28.) Third, after Retrophin's auditor raised concerns about the settlement agreements, the Superseding Indictment alleges that Mr. Greebel and Mr. Shkreli caused Retrophin to enter into "sham" consulting agreements with aggrieved investors in Mr. Shkreli's funds. (*Id.* at ¶¶ 31-32.)

Taken as a whole, the allegations regarding the backdated transfers provide important context for both the settlement and consulting agreements at issue in Count Seven and the distribution of "Fearnow" shares at issue in Count Eight. With regard to the settlement and consulting agreements, the backdated transfers created the appearance of an investment relationship between MSMB Capital and Retrophin. Based on this allegedly "fabricated" interest, MSMB Capital investors were led to believe that they held a significant number of shares in Retrophin, which may have caused them to believe that they had viable claims against Retrophin through their investment in MSMB Capital. With regard to Count Eight, Mr. Shkreli was able to convince "Co-Conspirator 1" and "Corrupt Employees 1 and 2" to engage in the backdated transfers based on the promise of the free trading "Fearnow" shares. (*See id.* at ¶ 25; Opp. at 15-16.)

Mr. Greebel argues that the jury may improperly believe that it can convict Mr. Greebel of fraud against Retrophin based only on the alleged backdated transfers. These arguments are premature. Over the course of the trial, in connection with the so-called Retrophin Misappropriation Scheme, the government may introduce evidence that demonstrates that the backdating itself harmed Retrophin. If it fails to do so, Mr. Greebel may move at the appropriate time to preclude the

government from arguing that the jury can find Mr. Greebel
guilty of conspiracy to commit wire fraud solely on the basis of
the backdated transfer allegations, and may also propose jury
charges that do not suggest that the backdated transfers alone
constitute fraud against Retrophin.  As discussed, however,
because evidence of these backdated transfers provide context
for the alleged fabricated MSMB Capital interest in Retrophin,
the settlement and consulting agreements at issue in Count
Seven, and the allegations relating to the Fearnow shares in
Count Eight, the court will not preclude the government from
introducing evidence relating to the share transfers.

### C.   The Applicability of a "Right to Control" Theory

In addition to his arguments concerning backdating,
Mr. Greebel moves to dismiss Count Seven on the basis that it
rests on a flawed "right to control" theory.  Based on the
government's case in the Shkreli trial, Mr. Greebel contends
that the government incorrectly assumes that "Mr. Shkreli and
Mr. Greebel had a duty" to seek board approval before entering
into settlement agreements with investors in Mr. Shkreli's hedge
funds.  (Mot. at 21.)  Mr. Greebel argues that he had no such
duty, that Retrophin received the "benefit of the bargain" with
regard to the settlement agreements, and that the government's
theory "violates due process and the rule of lenity."  (*Id.* at
22.)  The court respectfully disagrees.

First, Mr. Greebel's arguments regarding a duty to disclose are premature.  The government's arguments at the Shkreli trial concerning Delaware General Corporation Law § 144 were made in response to specific arguments by Mr. Shkreli's counsel.  (*See* Shkreli Trial Tr. 4575:22-4577:12 (discussing Mr. Shkreli's fiduciary duties to Retrophin).)  As outside counsel to Retrophin, Mr. Greebel's duties to the Retrophin board may differ from Mr. Shkreli's duties as a corporate officer.  If, at the close of the evidence, Mr. Greebel believes that the government has failed to establish the existence of a duty to disclose, and that the lack of such a duty is dispositive of the fraud charged in Count Seven, he may raise the issue with the court at that time.

Second, Mr. Greebel's reliance on caselaw regarding the "right to control" and "benefit of the bargain" is misplaced.  In *United States v. Davis*, the jury convicted the defendants of a count of wire fraud based on a right to control theory, but the judge granted the defendants' post-verdict motion for acquittal, because the alleged victim had received the "benefit of the bargain."  *United States v. Davis*, No. 13-CR-923 (LAP), 2017 WL 3328240, at *9-12, 24 (S.D.N.Y. Aug. 3, 2017), *appeal filed*, No. 17-3190 (2d Cir. October 4, 2017).  In contrast, the government specifically requested that the court *strike* a "right to control" jury instruction from the charges in

14

the Shkreli trial, stating that it was not proceeding on that theory. (Shkreli Trial Tr. 5130:23-5131:13.) Mr. Greebel is essentially asking the court to strike Count Seven on the basis of his contentions concerning the sufficiency of evidence at a separate trial, with regard to a theory of the case not advanced by the government at that trial. The evidentiary analysis required by Mr. Greebel's motion is properly left to a Rule 29 motion at the close of the government's case in this trial. The Superseding Indictment sufficiently alleges that Mr. Shkreli and Mr. Greebel conspired to defraud Retrophin by misappropriating its assets to pay off obligations for which Retrophin was not responsible.

D. **Motion to Dismiss for Alleging Multiple Conspiracies**

As a final basis for dismissing Count Seven, Mr. Greebel argues that the Superseding Indictment improperly alleges multiple conspiracies in one count. Mr. Greebel argues that because the alleged backdating scheme would have defrauded the SEC, but not Retrophin, it does not share a "common goal" with the conspiracy alleged in Count Seven. (Mot. at 29.) This motion is denied as untimely. As a substantive motion that is based solely on the Superseding Indictment, Mr. Greebel should have brought this motion by March 27, 2017 – the date on which he moved to strike surplusage from paragraph seven of the Superseding Indictment and to dismiss Count Eight. (*See* ECF

15

Scheduling Order of March 15, 2017, granting Mr. Greebel's request for an extension for substantive non-*in limine* motions.)

Furthermore, Mr. Greebel's arguments here are unavailing for the same reasons that the court must deny his motion to dismiss the portion of Count Seven relating to the alleged backdating scheme.  For the purposes of a motion to dismiss, Count Seven of the Superseding Indictment sufficiently and appropriately alleges a single count of wire fraud conspiracy.

### CONCLUSION

For the foregoing reasons, Mr. Greebel's motion to dismiss Count Seven of the Superseding Indictment is **DENIED**.

**SO ORDERED.**

Dated:     October 13, 2017
           Brooklyn, New York

                            _____/s/_____
                            Hon. Kiyo A. Matsumoto
                            United States District Judge

16