**GIBSON DUNN**

Gibson, Dunn & Crutcher LLP

200 Park Avenue
New York, NY 10166-0193
Tel 212.351.4000
www.gibsondunn.com

Reed Brodsky
Direct: +1 212.351.5334
Fax: +1 212.351.6235
RBrodsky@gibsondunn.com

October 15, 2017

VIA ECF

The Honorable Kiyo A. Matsumoto
United States District Judge
United States District Court for the Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York 11201

Re:    *United States v. Evan Greebel*, S1 15 Cr. 637 (KAM)

Dear Judge Matsumoto:

We respectfully submit this letter in connection with the government's effort, revealed for the first time during the pretrial conference on October 6, 2017, to advance a new theory effectively amending Count Seven's theory of fraud with respect to allegedly backdated transfers of Retrophin shares.[1]  In short, as discussed below, although the Superseding Indictment clearly sets forth the theory that the alleged backdating was done for the purpose of misleading the Securities and Exchange Commission ("SEC"), the government – now faced with the defendant's argument that these shares involved private transfers and thus could not actually defraud Retrophin – is suddenly claiming that the backdating was done as a pretext to subsequently distribute Retrophin shares to investors.

This case presents the highly unusual circumstance that the government is clearly indicating its intention to constructively amend a core theory of fraud in one of the two counts of the governing indictment.  For the reasons below, we respectfully request that the Court preclude the government from raising its new theory of fraud during the government's opening statement and from presenting any argument on it in the government's summations.[2]

---

[1]    We are raising this issue now since it was only raised for the first time by the government at the October 6, 2017 pretrial conference, and thus we could not have known to file a motion *in limine* on this issue.

[2]    On October 13, 2017, the Court denied our motion to dismiss Count Seven.  *See* Dkt. 402.  Regarding the "Alleged Backdated Transfers," the Court "denie[d] this part of defendant's motion, without prejudice to renew at the close of the government's case."  *Id.* at 9.  Thus, we certainly anticipate raising these arguments at the Rule 29 stage of this case.

Beijing • Brussels • Century City • Dallas • Denver • Dubai • Frankfurt • Hong Kong • Houston • London • Los Angeles • Munich
New York • Orange County • Palo Alto • Paris • San Francisco • São Paulo • Singapore • Washington, D.C.

**GIBSON DUNN**

The Honorable Kiyo A. Matsumoto
October 15, 2017
Page 2

I.      **Background**

    A.      **The Superseding Indictment Charges Three Distinct "Schemes" in Count Seven**

On or about December 14, 2015, the government filed its Indictment against Martin Shkreli and Evan Greebel.  Dkt. No. 1.  Six months later, the government filed a Superseding Indictment against both men.  Dkt. No. 60, June 3, 2016.  Among other changes, the Superseding Indictment added Count Eight, alleging an "Unrestricted Shares Scheme" among Mr. Shkreli, Mr. Greebel, and unnamed (and unindicted) alleged co-conspirators.  *See id.* ¶¶ 36–40, 57–59.

With respect to Count Seven, the alleged "Retrophin Misappropriation Scheme," the Superseding Indictment alleges three underlying schemes:  (1) "a scheme to fabricate an investment by MSMB Capital in Retrophin," *id.* ¶¶ 22–25; (2) a scheme to cause Retrophin to enter into "fraudulent settlement agreements" with MSMB investors, *id.* ¶¶ 26–30; and (3) a scheme to cause Retrophin to enter into "sham consulting agreements with defrauded investors," *id.* ¶¶ 31–35.

The first of these underlying schemes – "The Fabricated MSMB Capital Interest" theory – is at issue here.  *Id.* ¶¶ 22-25.

In the Superseding Indictment, the government alleges that, in early November 2012, Mr. Shkreli lied to the SEC by representing that MSMB Capital "was still active" when in fact it "had essentially no assets following the February 2011 OREX trades and was in debt to Merrill Lynch."  *Id.* ¶ 24.  The Superseding Indictment further alleges that, on or about November 29, 2012, "[f]aced with an SEC inquiry," Mr. Shkreli and Mr. Greebel enlisted Marek Biestek, Kevin Mulleady, and Thomas Fernandez to transfer 75,000 total Retrophin shares to Mr. Shkreli, which Mr. Shkreli then immediately transferred to MSMB Capital, and that both sets of transfers were backdated to summer 2012 to be included on MSMB Capital's "final capitalization table."  *See id.* ¶ 25; *see also* Ex. A.  The alleged purpose of this "scheme" was "to create the appearance of an investment [in Retrophin] by MSMB Capital prior to the SEC inquiry."  Superseding Indictment ¶ 25.

    B.      **Mr. Greebel's Motion to Dismiss Count Seven**

In moving to dismiss Count Seven, we argued, among other things, that the government's theory of fraud with respect to the allegedly backdated agreements is a legal impossibility because the shares at issue were neither owned by Retrophin nor in its possession custody, or control.  Rather, the shares were indisputably held by private individuals (Mr. Shkreli, Mr. Biestek, Mr. Fernandez, and Mr. Mulleady).  Accordingly, Retrophin could not have been

**GIBSON DUNN**

The Honorable Kiyo A. Matsumoto
October 15, 2017
Page 3

defrauded by these alleged transfers, even assuming they occurred.  *See* Mr. Greebel's Mem. Law Supp. Mot. Dismiss Count Seven Superseding Indictment, Dkt. No. 327 ("Motion to Dismiss") at 18–25, Aug. 18, 2017.

We asked the Court to strike from the case the government's theory that Mr. Shkreli and Mr. Greebel conspired to defraud Retrophin through the use of these allegedly backdated share transfers.  *Id.* at 22.  In response, the government focused on why the Superseding Indictment is pled sufficiently.  *See* Mr. Greebel's Reply Mem. Law Supp. Mot. Dismiss Count Seven Superseding Indictment, Dkt. No. 349 at 10, Aug. 31, 2017.

On October 13, the Court denied our motion to dismiss Count Seven.  Mem & Order, Dkt. No. 402.  The Court further denied our request to strike the government's backdating theory from the case, "without prejudice to renew at the close of the government's case." *Id.* at 9.  The Court stated that our request was "premature" and that during trial, the government "may introduce evidence that demonstrates that the backdating itself harmed Retrophin." *Id.* at 12.  The Court added, however, "If [the government] fails to do so, Mr. Greebel may move at the appropriate time to preclude the government from arguing that the jury can find Mr. Greebel guilty of conspiracy to commit wire fraud solely on the basis of the backdated transfer allegations, and may also propose jury charges that do not suggest that the backdated transfers alone constitute fraud against Retrophin." *Id.* at 12–13.

### C. The Government's New Argument at the October 6 Pretrial Conference

Having apparently abandoned its first theory of Count Seven – namely, that the Retrophin share transfers were allegedly backdated "to create the appearance of an investment [in Retrophin] by MSMB Capital prior to the SEC inquiry," Superseding Indictment ¶ 25 – the government now seeks to put forth an utterly new theory of fraud.

During the pretrial conference on October 6, 2017 – when the Court heard oral arguments on our motion to dismiss (and thus, by definition, while our motion was still pending) – the government changed its theory as to the alleged backdating.  For the first time, the government argued that the alleged backdating was not an effort to substantiate Mr. Shkreli's lie to the SEC regarding MSMB Capital's assets under management, but rather was a pretext to pay off MSMB Capital investors:

> [V]ery simply, the backdated shares create an interest that MSMB Capital holds in Retrophin that it never had.  That interest is then used *as a pretext to give Retrophin shares to various investors*.  That's one of the reasons Retrophin is defrauded through the backdating . . . .

**GIBSON DUNN**

The Honorable Kiyo A. Matsumoto
October 15, 2017
Page 4

> The only reason the investors were going to sue Retrophin was because of Mr. Shkreli's fraud, including through this backdating that created interest that didn't exist.

Pre-Trial Conf. Tr. 59:19–23, 61:3–6, Oct. 6, 2017 (emphasis added).  The government made this change in their theory in an apparent effort to salvage the backdating scheme set forth in Count Seven.[3]

## II. Legal Standard on Constructive Amendments to Charges in an Indictment

The Supreme Court has long held that the government's constructive amendment of a charge in a grand jury indictment violates the Fifth Amendment's Grand Jury Clause.  *See Stirone v. United States*, 361 U.S. 212, 215-16 (1960) (citing *Ex parte Bain*, 121 U.S. 1 (1887)).  A constructive amendment occurs when the government seeks to admit evidence, argument, or jury instructions that "broaden [] the possible bases for conviction" beyond those provided in the indictment.  *United States v. Milstein*, 401 F.3d 53, 65 (2d Cir. 2005).  It occurs when the government changes its theory as to why the defendant took action at issue in the case.

---

[3]  Indeed, as we have said repeatedly before, the government itself seems unclear about the precise nature of its allegations in this case.  The Superseding Indictment contains substantial internal confusion – even about the most basic notions of what roles the Superseding Indictment is alleging that various individuals play in the story of this case.  Approximately four months after the Superseding Indictment was returned, on September 30, 2016, the government provided us with a chart identifying individuals who had been referenced in the Superseding Indictment with phrases like "Co-Conspirator 1."  *See* Ex. A.  On page 3 of this chart, the government identifies the seven recipients of the Fearnow shares (Kevin Mulleady, Thomas Fernandez, Marek Biestek, Timothy Pierotti, Andrew Vaino, Edward Sullivan, and Ronald Tilles) as "Employees and contractors," though the government informed us in August 2017 that it now views all of them – with the exception of Timothy Pierotti for some reason – as co-conspirators on Count Eight.

Most glaringly, last week – for the very first time – after we had pressed the government to identify the alleged co-conspirators in Count Seven, the government named *Lee Yaffe*, among others, as a co-conspirator.  This is stunning – especially since the government had named Yaffe as the "Elea Capital Investor" in the Superseding Indictment.  *See* Indictment ¶ 32; Ex. A at 4.  Moreover, in their chart and letter dated September 30, 2016 – 10 months after the original Indictment and four months after the Superseding Indictment – the government named Yaffe as one of the "defrauded investors" in Count Seven.  *See* Ex. A at 5.  Somehow, Yaffe morphed from being labeled a "defrauded investor" in the Superseding Indictment to now being deemed a co-conspirator, as of last week.

The Honorable Kiyo A. Matsumoto
October 15, 2017
Page 5

Although "an indictment drawn in general terms may support a conviction on alternative bases," as long as the defendant is given notice of the "core of criminality" to be proven at trial, the government may not deviate from specifically described charges in a "speaking indictment."  *See United States v. Wozniak*, 126 F.3d 105, 109–10 (2d Cir. 1997).

"[C]onstructive amendments to an indictment are generally considered prejudicial *per se*," and courts are particularly vigilant in enforcing the bounds of indictments charging conspiracies to defraud.  *United States v. Mollica*, 849 F.3d 723, 729 (2d Cir. 1988).  Even if the government's deviation from the indictment does not amount to a constructive amendment, reversal of a conviction is warranted where the change causes "substantial prejudice."  *United States v. McDermott*, 245 F.3d 133, 139–40 (2d Cir. 2001).  District Courts in the Second Circuit will vacate convictions based on either the constructive amendment of the grand jury indictment or prejudicial variance from it.  *See generally United States v. Davis*, No. 13-cr-923 (LAP), 2017 WL 3328240, at *28–35 (S.D.N.Y. Aug. 3, 2017) (collecting cases).

### III.   The Government Seeks to Broaden the Bases for Liability in Count Seven, in Violation of the Fifth Amendment

Count Seven alleges a fraud conspiracy, Superseding Indictment ¶¶ 55–56, so the Court must "vigilantly enforce" Mr. Greebel's Fifth Amendment protection against "broadening the possible bases for conviction" contained in the Superseding Indictment.  *See Mollica*, 849 F.3d at 729 (courts "must be especially alert to subtle attempts to broaden the already pervasive and widesweeping nets of conspiracy prosecutions" (internal quotation marks and citation omitted)).

In *Stirone*, where the indictment charged the defendant with interfering with shipments of raw sand, the Supreme Court held that the government could not, without going back to the grand jury for a new indictment, argue at trial that downstream shipments of manufactured concrete and steel could alternatively satisfy the Hobbs Act's interstate-commerce element. 361 U.S. at 217.

Here, the government similarly seeks to improperly amend the Superseding Indictment to put forth an entirely new argument – never outlined in the speaking Superseding Indictment – to substantiate the alleged fraudulent scheme.  The Superseding Indictment clearly alleges the backdating was done to mislead the SEC, but the government now claims it was all a pretext to "give Retrophin shares to various investors."  Pre-Trial Conf. Tr. 59:19–23.  The government cannot be allowed to change its theory of fraud without going back to the grand jury, which the government cannot do at this stage of the proceedings.

**GIBSON DUNN**

The Honorable Kiyo A. Matsumoto
October 15, 2017
Page 6

*Milstein* is squarely on point. In *Milstein*, the Second Circuit vacated a conviction for "distributing misbranded drugs in interstate commerce with fraudulent intent," 401 F.3d at 58, because the government had changed its theory as to *why* the defendant had misbranded the drugs at issue, *id.* at 65 ("In the instant case, we are persuaded that the indictment, charging Milstein with misbranding due to his repackaging of the drugs, was constructively amended when the Government alleged that the drugs were misbranded because they were not sterile."). So too here, where the government at the eleventh hour seeks to reframe its theory as to *why* Mr. Shkreli, Mr. Greebel, and three others allegedly backdated agreements to transfer Retrophin shares.

In *Davis*, a wire-fraud conspiracy case, the district court thoroughly examined Second Circuit caselaw, and it held that that the government's trial arguments on two theories of fraud amounted to both constructive amendments to and prejudicial variance from the two-count indictment. 2017 WL 3328240, at *34; *see also id.* n.38 ("[T]he risk of surprise is particularly acute in fraud prosecutions."). Similarly here, the government's new theory would not only constructively amend the Superseding Indictment but would also substantially prejudice Mr. Greebel by forcing him to confront an utterly new theory of fraud on the eve of trial.

Allowing the government to change this theory of fraud, expressly set forth in the Superseding Indictment, would unilaterally "broaden the bases for conviction" on Count Seven in violation of Mr. Greebel's Fifth Amendment protections. *See Mollica*, 849 F.3d at 729.

For these reasons, we respectfully ask the Court to preclude the government from raising this new theory in its opening statement or making argument about it in its summations.

Respectfully,

*/s/ Reed Brodsky*
Reed Brodsky


Attachment


cc:   Alixandra E. Smith, Esq.
      David C. Pitluck, Esq.
      David K. Kessler, Esq.