# EXHIBIT A

KeyCite Yellow Flag - Negative Treatment
Distinguished by U.S. v. Segal, N.D.Ill., January 12, 2004

2000 WL 1842410
Only the Westlaw citation is currently available.
United States District Court,
W.D. Missouri, Western Division.

UNITED STATES of America, Plaintiff,
v.
Thomas BUTNER, Defendant.

No. CRIMA980017401CRW1.
|
Nov. 14, 2000.

Defendant who was charged with perjury based on false testimony he gave as a government witness in prior criminal trial moved to dismiss indictment. The District Court, Larsen, United States Magistrate Judge, issued report and recommendation which held that: (1) government's successful opposition to new trial motion in prior trial, on basis that false testimony was not material, operated under doctrine of offensive nonmutual collateral estoppel to bar prosecution, and (2) government's reliance on a theory inconsistent with that it advanced in prior trial violated due process clause.

Dismissal recommended.

West Headnotes (10)

[1]  **Judgment**
     Criminal prosecutions
     Government was barred under doctrine of offensive nonmutual collateral estoppel from bringing perjury prosecution against defendant who testified falsely as a government witness in prior case, where government had taken position that witness's testimony was not material in prior trial, and court had agreed with that position by denying motion for a new trial based on false testimony; there was a close alignment in both time and subject matter, no important constitutional question was involved, and case involved the same issue in essentially the same controversy.

     1 Cases that cite this headnote

[2]  **Judgment**
     Nature and requisites of former adjudication as ground of estoppel in general
     Doctrine of collateral estoppel bars relitigation of an issue when (1) the issue in the prior adjudication was identical, (2) there was a final judgment on the merits, (3) the estopped party was a party or in privity with a party in the prior adjudication, and (4) the estopped party had a full and fair opportunity to be heard on the adjudicated issue.

     Cases that cite this headnote

[3]  **Judgment**
     Nature and requisites of former adjudication as ground of estoppel in general
     Collateral estoppel serves to relieve parties of the cost and vexation of multiple lawsuits, conserve judicial resources, and, by preventing inconsistent decisions, encourage reliance on adjudication.

     1 Cases that cite this headnote

[4]  **Judgment**
     Mutuality of estoppel
     Party asserting collateral estoppel need not have been a party to the prior suit, as mutuality requirement has been abandoned.

     Cases that cite this headnote

[5]  **Judgment**
     Persons not parties or privies
     In its simplest terms, doctrine of offensive nonmutual collateral estoppel provides that the party against whom it is asserted may not seek a finding different from a previous finding as long as the party had a full and fair opportunity to litigate in the previous action.

Cases that cite this headnote

[6]  **Judgment**
 ⚖ Government, state, or municipality, and officers, citizens, or taxpayers

Whether to apply the doctrine of collateral estoppel against the government is decided on a case-by-case basis, with an eye toward furthering the policy reasons supporting the doctrine.

Cases that cite this headnote

[7]  **Judgment**
 ⚖ Government, state, or municipality, and officers, citizens, or taxpayers

Application of doctrine of collateral estoppel against the government is inappropriate in cases involving important constitutional questions.

1 Cases that cite this headnote

[8]  **Judgment**
 ⚖ Government, state, or municipality, and officers, citizens, or taxpayers

If there is a close alignment in both time and subject matter, application of doctrine of collateral estoppel against the government is appropriate.

Cases that cite this headnote

[9]  **Judgment**
 ⚖ Government, state, or municipality, and officers, citizens, or taxpayers

If matter involves the same issue in essentially the same controversy as a prior action, application of doctrine of collateral estoppel against the government is appropriate.

Cases that cite this headnote

[10]  **Constitutional Law**
 ⚖ Misuse or abuse

**Criminal Law**
 ⚖ Official Action, Inaction, Representation, Misconduct, or Bad Faith

Prosecution of defendant for perjury, based on false testimony he gave as a government witness in prior criminal prosecution, was impermissibly based on theory inconsistent from that asserted by government in prior trial, in which it successfully argued that false testimony was not material and did not warrant grant of new trial, so that perjury prosecution was barred by due process clause. U.S.C.A. Const.Amend. 14.

2 Cases that cite this headnote

**Attorneys and Law Firms**

Matt Whitworth, Deputy United States Attorney, Kansas City, for plaintiff.

Elizabeth Carlyle, Lee's Summit, for defendant.

REPORT AND RECOMMENDATION
TO GRANT DEFENDANT'S MOTION
TO DISMISS THE INDICTMENT

LARSEN, Magistrate J.

*1  [1]  Before the court is defendant's motion to dismiss the indictment on the ground that it violates the principles of collateral estoppel and due process of law. Specifically defendant, who testified falsely[1] as a government witness in the case against M.J. L'Donna, argues that the government's position that defendant's testimony was not material in the L'Donna trial and the court's subsequent agreement on that issue precludes the government from now charging defendant with perjury which requires proof of materiality. I make the following findings:

1. Although the government was the plaintiff in the previous proceeding and won, offensive nonmutual collateral estoppel is the type involved in this case because Butner was not a party to the previous litigation and the finding in the previous proceeding is contrary to the government's position in this case.

2. Collateral estoppel may be asserted against the government in this case because there are no important constitutional questions involved, this case is closely aligned both in time and subject matter with the previous proceeding, it is the same issue in essentially the same controversy, and the same United States Attorney's Office and the same courts are involved in both cases.

3. The public interest in accuracy and justice of criminal results is furthered by preventing the government from relitigating the issue of materiality of Butner's statements when that issue has already been decided.

4. Preventing the government from relitigating the issue of materiality of Butner's statements promotes judicial economy, serves to relieve parts of the cost and vexation of multiple lawsuits, and prevents inconsistent decisions, which are some of the policy concerns that helped create the doctrine of collateral estoppel.

5. The issue in the prior adjudication was identical to the issue in this case.

6. There was a final judgment on the merits in the previous proceeding.

7. The government was a party in the prior adjudication.

8. The government had a full and fair opportunity to be heard on the adjudicated issue.

9. The government had incentive to vigorously defend its position in the previous proceeding and indeed won that proceeding.

10. The previous judgment is not inconsistent with one or more previous judgments.

11. There were no procedural opportunities unavailable in the first proceeding which are available in the second proceeding.

12. The use of inconsistent theories in order to maintain the conviction of L'Donna and to simultaneously convict Butner is a violation of due process.

Therefore, defendant's motion should be granted.

## I. BACKGROUND

On July 13, 1998, the criminal trial of M.J. L'Donna began. L'Donna was charged with using interstate commerce facilities in the commission of murder for hire and transferring a firearm to be used to commit a crime of violence. Defendant Butner was approached by L'Donna who agreed to pay Butner money in exchange for his killing several individuals. Butner, who identified himself to law enforcement as Shawn Butner, participated in consensually-recorded conversations with L'Donna and turned the money she gave him over to law enforcement. During L'Donna's trial, Butner testified as follows:

 **\*2** Q. Would you state your name and spell your last name, please?

A. Shawn Paul Butner, B–U–T–N–E–R.

Q. Did you ever tell anyone that you had testified in the firefighters case?

A. I did not.

Q. You never told anyone that you were the one that turned in those responsible for the firefighter explosion?

A. No, I did not. I said I'm the one that told them about my sister and brother, about two people, that's all I said about it.

L'Donna was convicted on July 16, 1998, and subsequently the government learned that its witness was actually Thomas Butner who had indeed testified in the firefighters[2] trial. After this revelation, L'Donna filed a motion for new trial based on this newly discovered evidence. The motion was filed on August 6, 1998. L'Donna's position was that she was entitled to cross examine Butner about his previous testimony and what money he was paid in relation to the firefighters case. In denying the motion for new trial on August 18, 1998, the district court found that "[t]he newly discovered evidence is ... not material".

In its brief to the Eighth Circuit Court of Appeals, the government argued that the evidence of Butner's true identity was not material, the fact that he testified in the firefighters trial was not material, and the fact that he was paid a $500 witness fee in that case was not material. In

a separate section entitled, "4. Whether the Evidence is Material", the government stated as follows:

> The evidence relating to Butner's identity and whether he had previously testified in the firefighters case was not "material"....

A panel of the Eighth Circuit Court of Appeals agreed. On July 19, 1999, the court held that in order to get a new trial, a defendant convicted after a trial which included false testimony must show, among other things, "that the evidence was material to the issues involved". *United States v. L'Donna,* 179 F.3d 626, 629 (8th Cir.1999) (citing *United States v. Ward,* 544 F.2d 975, 977 (8th Cir.1976) and *United States v. Warren,* 140 F.3d 742, 744 (8th Cir.1998)).

Meanwhile, on July 30, 1998, before L'Donna's motion for new trial was filed with the district court, the government filed a complaint against defendant Butner charging him with one count of perjury. An indictment followed on August 19, 1998, the day after L'Donna's motion for new trial was denied by the district court. Butner, who had been released on bond, failed to appear for a court appearance on October 21, 1998, and a warrant was issued for his arrest. He was arrested on May 4, 2000, and first appeared in this district on May 12, 2000. A new attorney was appointed on that day.

On June 15, 2000, defendant moved for leave to file a motion to dismiss out of time. That motion was granted on June 19, 2000. In his motion, defendant argues that:

> The materiality standard to be used in a perjury case is identical to the standard used to determine whether Ms. L'Donna was entitled to a new trial because of Mr. Butner's false statements. The Eighth Circuit has held, "The test for the fifth element of perjury, materiality, is whether the alleged false testimony was capable of influencing the tribunal on the issue before it.... [The doctrine of collateral estoppel provides that] [t]he government, a party to the litigation, litigated the issue of materiality [and][i]t should not be permitted to do so again, particularly when it has changed sides.

*3 Defendant also argues that the inconsistency between the government's theories in the L'Donna case and this case constitutes a violation of defendant's right to due process of law.

On June 23, 2000, the government filed its response in opposition to defendant's motion to dismiss. The government argues that:

> [T]he issue of materiality in the context of a motion for new trial is a question of law for the Court. In a perjury charge, the question of materiality is an element of proof the government must satisfy and a question of fact for the jury to decide.

(emphasis omitted).

On July 3, 2000, defendant filed a motion for judicial determination of his mental competency. Two days later, he filed a reply brief in support of his motion to dismiss. In his reply, defendant argued in part as follows:

> Having successfully convinced the Eighth Circuit that Ms. L'Donna's conviction was unaffected by Mr. Butner's false statements, the government should not now be permitted to attempt to convince a jury that the conviction was affected by that testimony. The government further suggests that the burden to show materiality was higher in *L'Donna* because a new trial is a "drastic remedy." A felony conviction with a possible prison sentence of five years is no less drastic. In fact, to convict Mr. Butner, a jury would have to be convinced beyond a reasonable doubt that the evidence was material. If anything, the standard of materiality used by the Eighth Circuit required the appellant to meet a lower burden of proof of "reasonable likelihood" of influencing the jury.

On July 20, 2000, an order was entered directing the United States Marshal to transport defendant to a Medical Facility for Federal Prisoners to undergo a psychological examination.[3]

### III. COLLATERAL ESTOPPEL

Defendant argues that the doctrine of collateral estoppel [4] precludes the government from litigating the issue of materiality since the issue was already decided in the L'Donna case.

**[2]** **[3]** The doctrine of collateral estoppel bars relitigation of an issue when (1) the issue in the prior adjudication was identical, (2) there was a final judgment on the merits, (3) the estopped party was a party or in privity with a party in the prior adjudication, and (4) the estopped party had a full and fair opportunity to be heard on the adjudicated issue. *Aetna Casualty and Surety Company v. General Dynamics Corporation,* 968 F.2d 707, 711 (8th Cir.1992). Collateral estoppel serves to "relieve parties of the cost and vexation of multiple lawsuits, conserve judicial resources, and, by preventing inconsistent decisions, encourage reliance on adjudication." *Allen v. McCurry,* 449 U.S. 90, 94, 101 S.Ct. 411, 66 L.Ed.2d 308 (1980) (cited by *United States v. Mendoza,* 464 U.S. 154, 158, 104 S.Ct. 568, 78 L.Ed.2d 379 (1984)). See also *Parklane Hosiery v. Shore,* 439 U.S. 322, 326, 99 S.Ct. 645, 58 L.Ed.2d 552 (1979) (citing *Blonder–Tongue Laboratories, Inc., v. University of Illinois Foundation,* 402 U.S. 313, 328–329, 91 S.Ct. 1434, 28 L.Ed.2d 788 (1971)).

*A. Nonmutual collateral estoppel.*

*\*4* **[4]** The party asserting collateral estoppel need not have been a party to the prior suit, as the mutuality requirement was abandoned in *Blonder–Tongue Laboratories, Inc. v. University of Illinois* Foundation, 402 U.S. 313, 91 S.Ct. 1434, 28 L.Ed.2d 788 (1971). See also *Parklane Hosiery v. Shore,* 439 U.S. 322, 99 S.Ct. 645, 58 L.Ed.2d 552 (1979). The Supreme Court found that it was no longer tenable to afford a litigant more than one full and fair opportunity for judicial resolution of the same issue:

> In any lawsuit where a defendant, because of the mutuality principle, is forced to present a complete defense on the merits to a claim which the plaintiff has fully litigated and lost in a prior action, there is an arguable misallocation of resources. To the extent the defendant in the second suit may not win by asserting, without contradiction, that the plaintiff had fully and fairly, but unsuccessfully, litigated the same claim in the prior suit, the defendant's time and money are diverted from alternative uses—productive or otherwise—to relitigation of a decided issue. And, still assuming that the issue was resolved correctly in the first suit, there is reason to be concerned about the plaintiff's allocation of resources. Permitting repeated litigation of the same issue as long as the supply of unrelated defendants holds out reflects either the aura of the gaming table or "a lack of discipline and of disinterestedness on the part of the lower courts, hardly a worthy or wise basis for fashioning rules of procedure." *Kerotest Mfg. Co. v. C–O–Two Co.,* 342 U.S. 180, 72 S.Ct. 219, 96 L.Ed. 200 (1952). Although neither judges, the parties, nor the adversary system performs perfectly in all cases, the requirement of determining whether the party against whom an estoppel is asserted had a full and fair opportunity to litigate is a most significant safeguard." *Id.* at 329.

*Parklane Hosiery v. Shore,* 439 U.S. at 328 (quoting *Blonder–Tongue Laboratories, Inc. v. University of Illinois Foundation,* 402 U.S. at 328).

In this case, defendant is attempting to assert nonmutual collateral estoppel since defendant Butner was not a party to the prior lawsuit.

*B. Offensive collateral estoppel.*

The Supreme Court in *Parklane Hosiery* defined offensive collateral estoppel as follows: "a plaintiff is seeking to estop a defendant from relitigating the issues which the defendant previously litigated and lost against another plaintiff." 439 U.S. at 329. Before offensive collateral estoppel was accepted by the courts, critics of the doctrine cited as support the following problems: (1) if a defendant in the first action is sued for small or nominal damages, he or she may have little incentive to defend vigorously, particularly if future suits are not foreseeable; (2) if the judgment relied upon as a basis for the estoppel is itself inconsistent with one or more previous judgments in favor of the defendant, estoppel is not fair; and (3) procedural opportunities may be unavailable in the first action that could readily cause a different result if available in the second action. *Parklane Hosiery,* 439 U.S. at 330–331. After considering those arguments, the Court stated:

**\*5** We have concluded that the preferable approach for dealing with these problems in the federal courts is not to preclude the use of offensive collateral estoppel, but to grant trial courts broad discretion to determine when it should be applied. The general rule should be that in cases where a plaintiff could easily have joined in the earlier action or where, either for the reasons discussed above or for other reasons, the application of offensive estoppel would be unfair to a defendant, a trial judge should not allow the use of offensive collateral estoppel.

*Id.* at 331.

**[5]** Obviously, all of the cases discussed above were civil lawsuits rather than criminal prosecutions. Therefore, the party against whom offensive nonmutual collateral estoppel was asserted was the defendant who lost the previous proceeding, not the plaintiff who won the previous proceeding as in this case. I find, however, that merely because this case does not fall within the most common example of offensive nonmutual collateral estoppel, the doctrine cannot be ignored. Put in its simplest terms, offensive nonmutual collateral estoppel provides that the party against whom it is asserted may not seek a finding different from a previous finding as long as the party had a full and fair opportunity to litigate in the previous action. In this case, the government—the party against whom offensive nonmutual collateral estoppel is asserted—may not seek a finding (that Butner's statements were material) different from the previous finding (that Butner's statements were not material) as long as the government had a full and fair opportunity to litigate in the previous action.

*C. Against the government.*
Although neither party raises this issue in the pleadings, there is case law establishing that under some circumstances, collateral estoppel may not be asserted against the government. The Eighth Circuit in *United States v. Gurley,* 43 F.3d 1188, 1198 n. 2 (8th Cir.1994), *cert. denied,* 516 U.S. 817, 116 S.Ct. 73, 133 L.Ed.2d 33 (1995), acknowledged that this is an "unsettled issue of law" comparing *United States v. Mendoza,* 464 U.S. 154, 162, 104 S.Ct. 568, 78 L.Ed.2d 379 (1984) (holding that nonmutual offensive collateral estoppel may not be asserted against the government) with *United States v. Stauffer Chemical Co.,* 464 U.S. 165, 104 S.Ct. 575, 78 L.Ed.2d 388 (1984) (holding that mutual defensive collateral estoppel may be asserted against the government). In the *Gurley* case, the Eighth Circuit did not reach the issue but chose to resolve the appeal on other grounds.

In *United States v. Mendoza,*[5] 464 U.S. 154, 104 S.Ct. 568, 78 L.Ed.2d 379 (1984), the Court held that nonmutual offensive collateral estoppel did not apply to preclude the government from relitigating the constitutionality of certain immigration administrative procedures. The Court relied, in part, on the following reasoning:

> We have long recognized that "the Government is not in a position identical to that of a private litigant," both because of the geographic breadth of government litigation and also, most importantly, because of the nature of the issues the government litigates.... Government litigation frequently involves legal questions of substantial public importance; indeed, because the proscriptions of the United States Constitution are so generally directed at governmental action, many *constitutional questions* can arise only in the context of litigation to which the government is a party. Because of those facts the government is more likely than any private party to be involved in lawsuits against different parties which nonetheless involve the same legal issues.

> **\*6** A rule allowing nonmutual collateral estoppel against the government *in such cases* would substantially thwart the development of important *questions of law* by freezing the first final decision rendered on a particular legal issue. Allowing only one final adjudication would deprive this Court of the benefit it receives from permitting *several courts of appeals* to explore a difficult question before this Court grants certiorari. Indeed, if nonmutual collateral estoppel were routinely applied against the government, this Court would have to revise its practice of waiting for a conflict to develop before granting the government's petitions for certiorari.

> The Solicitor General's policy for determining when to appeal an adverse decision would also require substantial revision.... Unlike a private litigant who generally does not forego an appeal if he believes that he can prevail, the Solicitor General considers a variety of factors, such as the limited resources of the government and the crowded dockets of the courts, before authorizing an appeal. The application of nonmutual estoppel against the government would force the Solicitor General to abandon those prudential concerns and to appeal every adverse decision in order to avoid foreclosing further review.
>
> In addition to those institutional concerns traditionally considered by the Solicitor General, the panoply of important public issues raised in governmental litigation may quite properly lead successive Administrations of the Executive Branch to take differing positions with respect to the resolution of a particular issue. While the Executive Branch must of course defer to the Judicial Branch for final resolution of questions of constitutional law, the former nonetheless controls the progress of government litigation through the federal courts. It would be idle to pretend that the conduct of government litigation ... is a wholly mechanical procedure which involves no policy choices whatever.
>
> For example, in recommending to the Solicitor General in 1977 that the government's appeal in *68 Filipinos* be withdrawn, newly appointed INS Commissioner Castillo commented that such a course "would be in keeping with the policy of the [new] Administration," described as "a course of compassion and amnesty." But for the very reason that such policy choices are made by one Administration, and often reevaluated by another Administration, courts should be careful when they seek to apply expanding rules of collateral estoppel to government litigation.
>
> 464 U.S. at 159–161 (citations and footnotes omitted) (emphasis added).

The Court held as follows: "We hold, therefore, that nonmutual offensive collateral estoppel simply does not apply against the government in such a way as to preclude relitigation of issues *such as those involved in this case*.... We accordingly hold that the Court of Appeals was wrong in applying nonmutual collateral estoppel against the government *in this case*." *Id.* at 162, 164 (emphasis added).

**\*7** On the same day it rendered its decision in *Mendoza,* the Supreme Court held in *United States v. Stauffer Chemical Co.,* 464 U.S. 165, 169, 104 S.Ct. 575, 78 L.Ed.2d 388 (1984), that "the doctrine of mutual defensive collateral estoppel is applicable against the government to preclude relitigation of the same issue already litigated against the same party in another case involving virtually identical facts." [6] The Court likened the *Stauffer* case to *Montana v. United States,* 440 U.S. 147, 99 S.Ct. 970, 59 L.Ed.2d 210 (1979), wherein the Court held that the United States was estopped from relitigating in federal court the question of whether the Montana gross receipts tax on contractors of public, but not private, construction firms violated the Supremacy Clause of the United States Constitution. A public contractor, financed and directed by the federal government, had already litigated that question in state court, and the Montana Supreme Court unanimously had upheld the tax.

The Court stated that in *Montana,* it approved the use of collateral estoppel against the government after determining (1) mutuality of parties was present, (2) the issue sought to be relitigated was identical to the issue already unsuccessfully litigated in state court, and (3) there had been no change in controlling facts or legal principles since the state court action. The Court then looked to see whether there were any special circumstances warranting an exception to the otherwise applicable rules of preclusion. "One exception which we mentioned as possibly relevant is the exception for 'unmixed questions of law' arising in 'successive actions involving unrelated subject matter.' Noting that the exception ... is 'difficult to delineate,' we nonetheless had no trouble finding it inapplicable in *Montana* because of the *close alignment in both time and subject matter* between the federal court and the state court actions." *United States v. Stauffer Chemical Co.,* 464 U.S. at 169–170 (citations omitted) (emphasis added). The Court attempted to describe the exception, but stated that "[t]he description of the exception ... is not very illuminating" and "we are frank to admit uncertainty as to its application." *Id.* at 170 n. 3 and 171.

> The exception seems to require a determination as to whether an "issue of fact" or an "issue of law" is sought to be relitigated and then a determination as to whether the "issue of law" arises in a successive case that is

so unrelated to the prior case that relitigation of the issue is warranted. Yet we agree that, for purpose of determining when to apply an estoppel,

> "[w]hen the claims in two separate actions between the same parties are the same or are closely related ... it is not ordinarily necessary to characterize an issue as one of fact or of law for purposes of issue preclusion.... In such a case, *it is unfair to the winning party and an unnecessary burden on the courts to allow repeated litigation of the same issue in what is essentially the same controversy,* even if the issue is regarded as one of 'law'." Restatement (Second) of Judgments § 28 comment b (1982).

***8** Thus in *Montana,* without assigning the label "issue of law" to the claim sought to be relitigated, we determined that the exception was inapplicable because of *the close alignment of time and subject matter* between the state court action and the federal court action. If the exception was inapplicable in *Montana* as we held that it was, we have no trouble concluding that it is also inapplicable here.

United States v. Stauffer Chemical Co., 464 U.S. at 171–172 (emphasis added).

[6] [7] [8] [9] Through this maze of estoppel law and reasoning winds the following common thread: Whether to apply the doctrine of collateral estoppel against the government is decided on a case-by-case basis with an eye toward furthering the policy reasons supporting the doctrine.[7] With that in mind, I point out the following "rules" that can be ascertained from a close study of the cases discussed above: (1) Collateral estoppel is inappropriate in cases involving important constitutional questions, (2) if there is a close alignment in both time and subject matter, collateral estoppel is appropriate, and (3) if it is the same issue in essentially the same controversy, collateral estoppel is appropriate.

In this case no important constitutional question is at issue. The question is merely whether one series of statements made by Thomas Butner can be immaterial as to L'Donna's motion for new trial and at the same time material as to defendant's perjury case. That is purely a factual issue pertaining only to this one event.

In this case, there is a close alignment in both time and subject matter. The criminal complaint charging defendant with perjury was filed on July 30, 1998, and the indictment was returned on August 19, 1998. L'Donna filed her motion for new trial placing this issue in controversy on August 8, 1998, and the motion was ruled by the district court on August 18, 1998, after briefing by both L'Donna and the government. Therefore, at the very same time the government was urging the court to find that the statements were not material, it was pursuing a criminal action against defendant Butner wherein it would be required to prove that the very same statements were material.

Finally, this is the same issue in essentially the same controversy. It is not merely a case of similar facts— these two cases, the one against M.J. L'Donna and the one against defendant Butner, involve the very same statements made by Butner during L'Donna's criminal trial.[8]

The one final question on this issue is whether mutuality of parties is essential to the holdings supporting the use of collateral estoppel against the government in this case. I find that it is not. The reasoning behind the cases where mutuality of parties did not exist involve broad questions of law that are presented to multiple courts, i.e., the Supreme Court noted the importance of obtaining the views of "several courts of appeals". Here we do not have multiple courts or even multiple offices of the United States Attorney. This case deals only with the Western Division of the Western District of Missouri. There will be no differing views from different courts—it is one United States Attorney's Office putting forth one factual situation and urging one court to adopt two different rules. The fact that L'Donna was the criminal defendant in the first case while Butner is the criminal defendant in the second case really doesn't matter—it boils down to the very same statement made by Butner during L'Donna's trial.

***9** I find that based on the above, the cases holding that collateral estoppel may not be asserted against the government do not apply and the cases holding that collateral estoppel may be asserted against the government do apply. I further find that mutuality of parties is inapplicable in this case because the issue centers on one set of statements made by Butner but litigated in two separate cases. That, however, does not end the inquiry.

*D. Civil versus criminal proceedings.*

The collateral estoppel issue has arisen, albeit infrequently, in criminal cases which hold that an accused may be convicted of aiding and abetting even though the principal is acquitted. After researching that issue, I have determined that the bar on asserting collateral estoppel against the government in criminal cases has been restricted to aiding and abetting cases and does not apply to the case at bar.

The controlling case on this issue is *Standefer v. United States,* 447 U.S. 10, 100 S.Ct. 1999, 64 L.Ed.2d 689 (1980), in which Standefer was accused of aiding and abetting a revenue official (Cyril Niederberger) in accepting compensation in addition to that authorized by law. Niederberger was acquitted of accepting unlawful payments. After Niederberger's trial and before his own trial, Standefer moved to dismiss the charges arguing that he could not be convicted of aiding and abetting the principal when the principal had been acquitted. His motion was denied, he was convicted, the court of appeals affirmed, and the Supreme Court granted certiorari.

Standefer raised two issues before the Supreme Court: (1) 18 U.S.C. § 2 (aiding and abetting) did not intend to authorize prosecution of an aider and abettor after the principal had been acquitted, and (2) the doctrine of nonmutual collateral estoppel barred the government from proceeding with the prosecution after Niederberger's acquittal. The Court traced the origins of aiding and abetting back to English common law and discussed very thoroughly its advancement to modern American jurisprudence. In summary, the Court noted that at early common law all parties to a felony received the death penalty; therefore, certain procedural rules developed tending to shield accessories from punishment. *Standefer v. United States,* 447 U.S. at 15. Among them was the rule that an accessory could not be convicted without the prior conviction of the principal offender. "In every way, 'an accessory follow[ed], like a shadow, his principal.' " *Id.* quoting 1 J. Bishop, Criminal Law § 666 (8th ed. 1892). This procedural bar applied only to the prosecution of accessories in felony cases, not in misdemeanor cases where an assistant could be prosecuted after the principal was acquitted. Further, a principal in the second degree could be convicted despite the acquittal of the first-degree principal. *Id.* at 16.

In 1848, Parliament enacted a statute which permitted an accessory to be convicted even though the principal was acquitted. Congress followed in 1899 by enacting the first statute in this country which provided that "all persons concerned in the commission of a crime, whether it be felony or misdemeanor, and whether they directly commit the act constituting the crime or aid and abet in its commission, though not present, are principals, and to be tried and punished as such." Title 18, United States Code, Section 2 was enacted in 1909. It stated:

> *10 Whoever directly commits any act constituting an offense defined in any law of the United States, or aids, abets, counsels, commands, induces, or procures its commission, is a principal.

The Supreme Court, in its discussion of the historical law on aiding and abetting, stated, "Read against its common-law background, the provision evinces a clear intent to permit the conviction of accessories to federal criminal offenses despite the prior acquittal of the actual perpetrator of the offense." *Standefer v. United States,* 447 U.S. at 19. The legislative history of § 2 confirmed that acquittal of a principal was no bar to conviction of an aider and abettor. *Id.* at 19–20.

Moving to the issue of collateral estoppel, the Court noted that:

> [N]onmutual collateral estoppel was unknown to the common law and to the Congress when it enacted § 2 in 1909. It emerged in a civil case in 1942, *Bernhard v. Bank of America Nat. Trust & Savings Assn.,* 19 Cal.2d 807, 122 P.2d 892. This Court first applied the doctrine in *Blonder–Tongue Laboratories, Inc. v. University of Illinois Foundation,* 402 U.S. 313, 91 S.Ct. 1434, 28 L.Ed.2d 788 (1971) [, and again] this past Term ... [in] *Parklane Hosiery Co. v. Shore,* 439 U.S. 322, 99 S.Ct. 645, 58 L.Ed.2d 552 (1979). In both cases, application of nonmutual estoppel promoted judicial economy and conserved private resources without unfairness

> to the litigant against whom estoppel was invoked.

*Standefer v. United States,* 447 U.S. at 21.

The Court then discussed three concerns which made application of collateral estoppel in criminal cases different from civil cases: (1) the government's full and fair opportunity to litigate, (2) the law of evidence, and (3) the important federal interest in enforcement of the criminal law.

*1. Full and fair opportunity to litigate.*

This, however, is a criminal case, presenting considerations different from those in *Blonder–Tongue* or *Parklane Hosiery.* First, in a criminal case, the Government is often without the kind of "full and fair opportunity to litigate" that is a prerequisite of estoppel. Several aspects of our criminal law make this so: the prosecution's discovery rights in criminal cases are limited, both by rules of court and constitutional privileges; it is prohibited from being granted a directed verdict or from obtaining a judgment notwithstanding the verdict no matter how clear the evidence in support of guilt; it cannot secure a new trial on the ground that an acquittal was plainly contrary to the weight of the evidence; and it cannot secure appellate review where a defendant has been acquitted.

> The absence of these remedial procedures in criminal cases permits juries to acquit out of compassion or compromise or because of " 'their assumption of a power which they had no right to exercise, but to which they were disposed through lenity.' " It is of course true that verdicts induced by passion and prejudice are not unknown in civil suits. But in civil cases, post-trial motions and appellate review provide an aggrieved litigant a remedy; in a criminal case the Government has no similar avenue to correct errors. Under contemporary principles of collateral estoppel, this factor strongly militates against giving an acquittal preclusive effect.

**\*11** *Id.* at 22–23. The Court noted, "The estoppel doctrine ... is premised upon an underlying confidence that the result achieved in the initial litigation was substantially correct. In the absence of appellate review, or of similar procedures, such confidence is often unwarranted." *Id.* at 23 n. 18.

*2. The law of evidence.*

The Court was concerned with the evidentiary rules which sometimes make evidence admissible against one defendant while inadmissible against another.

> The exclusionary rule, for example, may bar the Government from introducing evidence against one defendant because that evidence was obtained in violation of his constitutional rights. And the suppression of that evidence may result in an acquittal. The same evidence, however, may be admissible against other parties to the crime "whose rights were [not] violated." In such circumstances, where evidentiary rules prevent the Government from presenting all its proof in the first case, application of nonmutual estoppel would be plainly unwarranted.

*Id.* at 23–24.

This concern, however, is really not unique to criminal law. The same issue is also raised in civil cases: The Supreme Court held that a bar to the application of collateral estoppel exists when procedural opportunities are unavailable in the first action but may be available in the second action and could cause a different result. *Parklane Hosiery,* 439 U.S. at 330–331. Clearly this exception, applied in civil cases, is also applicable in criminal cases.

*3. Important federal interest in enforcement of the criminal law.*

Finally, the Court pointed out the important federal interest in enforcing the criminal law by quoting from the Court of Appeals:

> "[T]he purpose of a criminal court is not to provide a forum for the ascertainment of private rights. Rather it is to vindicate the public interest in the enforcement of the criminal law while at the same time safeguarding the rights of the individual defendant. The public

> interest in the accuracy and justice of criminal results is greater than the concern for judicial economy professed in civil cases...."

*Standefer v. United States,* 447 U.S. at 25.

It seems, then, at first glance, that collateral estoppel has no place in criminal courts. This case, however, is not the usual criminal case, and the concerns listed above do not come into play here as a result. The sole fact which throws this case into a different category from all other criminal cases is the government's contradictory position as to the materiality of Butner's statements.

The first concern expressed by the *Standefer* Court dealt with the government's full and fair opportunity to litigate. It stated that "in civil cases, post-trial motions and appellate review provide an aggrieved litigant a remedy; in a criminal case the Government has no similar avenue to correct errors". Obviously that is true is most criminal cases; however, it is not the case here. In this case, the government did indeed participate in post-trial motions and appellate review. The government had an opportunity to argue its position to the district court and again to the court of appeals. Indeed the government won at both stages. Therefore, it is clear that the government had a full and fair opportunity to litigate.

 **\*12** The second concern expressed by the *Standefer* Court dealt with evidentiary issues that are not applicable here. There were no evidentiary bars in the first trial.

The third concern expressed by the *Standefer* Court dealt with the competing interests: the interest in enforcing the criminal law and the interest in judicial economy, i.e., the policy against relitigating issues already decided. This concern actually works against the government because in this case the interests do not compete. In its response, the government states that "to permit a cooperating government witness to intentionally lie to a jury and District Judge during the course of a jury trial concerning his identity and background would create an unacceptable precedent." This is true; however, the government must maintain its duty to seek justice as well as truth. Justice does not flow when the government urges one thing out of one side of its mouth and another out of the other side of its mouth.

To allow the government to proceed with this case and argue both to a jury and to the court that Butner's statements were material after the government successfully persuaded the district court and the court of appeals that the statements were not material would make a mockery of our justice system (the public has an interest in the accuracy and justice of criminal results, *Standefer v. United States,* 447 U.S. at 25) and would not promote judicial economy since the court's time would be spent relitigating an issue that has already been decided.

Based on all of the above, I find that there is no bar to asserting collateral estoppel in this case based on the government being a party, this being a criminal case, or the absence of mutuality of parties. The next step is to return to the basic requirements of and exceptions to collateral estoppel to determine whether it is appropriate to apply the doctrine in this case.

*The issue in the prior adjudication was identical.* The first element of collateral estoppel is whether the issue in the prior adjudication was identical. Here the government argues that the issue was not identical: "[T]he issue of materiality in the context of a *motion for new trial* is a *question of law* for the Court. In a *perjury charge,* the question of materiality is an element of proof the government must satisfy and a *question of fact* for the jury to decide." The government offers no legal authority to support this proposition.

As discussed at length above (see page 18), the Supreme Court does not place as much importance on the fact/law issue as does the government in a case like this. In *United States v. Stauffer Chemical Co.,* the Court, quoting the Restatement (Second) of Judgments, stated that "it is unfair to the winning party and an unnecessary burden on the courts to allow repeated litigation of the same issue in what is essentially the same controversy, even if the issue is regarded as one of 'law'.... [B]ecause of the close alignment of time and subject matter between the [two actions], [the exception for 'unmixed questions of law' does not apply.]" 464 U.S. at 171–172. Therefore, I am not persuaded by the fact/law distinction relied upon by the government.

 **\*13** The district court, in denying L'Donna's motion for new trial, held that Butner's statements were not material. The government furthered that argument in its brief to the Eighth Circuit Court of Appeals where it stated, "The evidence relating to Butner's identity and whether

he had previously testified in the firefighters case was not 'material' ". The Eighth Circuit, in affirming the denial of a new trial, cited *United States v. Ward,* 544 F.2d 975, 977 (8th Cir.1976), and found that the defendant must show: (1) that the evidence had not been discovered until after the trial, (2) that the defendant had used due diligence before the trial, (3) that the evidence was not merely cumulative or impeaching, (4) *that the evidence was material to the issues involved,* and (5) that the newly-discovered evidence would probably produce an acquittal at a new trial. *United States v. L'Donna,* 179 F.3d 626, 629 (8th Cir.1999).

Title 18, United States Code, Section 1621 (perjury) requires proof of the following elements: (1) the defendant testified under oath, (2) the testimony was false, (3) at the time he testified the defendant knew the testimony was false, (4) the defendant voluntarily and intentionally gave the testimony, and (5) *the testimony was material.*

Clearly the issue in the prior case was identical to the one here—the issue in both cases is whether the statements made by Butner during L'Donna's trial were material. As mentioned above, the government cites no authority for its proposition that the materiality question is different in a motion for new trial and a perjury prosecution, and I have been able to find none. [9]

I find that the first element of collateral estoppel has been satisfied.

*There was a final judgment on the merits.* There is no dispute about this element: the district court held that L'Donna was not entitled to a new trial based on Butner's false testimony, and that finding included the specific finding that Butner's statements were not material. The court of appeals affirmed that ruling. Therefore, there was a final judgment on the merits.

*The estopped party was a party or in privity with a party in the prior adjudication.* Again there is no question that the government was a party in the prior adjudication. The two cases were brought by the same United States Attorney's Office, the same division, and even the same lawyer. [10]

*The estopped party had a full and fair opportunity to be heard on the adjudicated issue.* Once again, there is no question that this element has been satisfied. The government briefed the issue in response to L'Donna's motion for new trial, and persuaded the district court to rule in the government's favor on that issue. The government then had an opportunity to prepare a written brief and to orally argue the case before the Eighth Circuit Court of Appeals. Once again, the government persuaded the court to rule in the government's favor. [11]

**\*14** Based on the above discussion, I find that the four elements necessary to assert collateral estoppel exist in this case.

*Exceptions.* As discussed above, the Supreme Court in *Parklane Hosiery* outlined several situations which would make the application of collateral estoppel inappropriate: if a defendant in the first action is sued for small or nominal damages, he or she may have little incentive to defend vigorously, particularly if future suits are not foreseeable; (2) if the judgment relied upon as a basis for the estoppel is itself inconsistent with one or more previous judgments in favor of the defendant, estoppel is not fair; and (3) procedural opportunities may be unavailable in the first action that could readily cause a different result if available in the second action. *Parklane Hosiery,* 439 U.S. at 330–331. I find that none of these exceptions apply in this case.

The government had incentive to vigorously defend its position in the L'Donna case: it was attempting to avoid the "drastic remedy" of a new trial. Not only did the government vigorously defend its position, it won. This first exception clearly is not applicable here.

The judgment relied upon, i.e., the L'Donna decision, is not inconsistent with one or more previous judgments. There is only one previous judgment. This exception, therefore, does not apply.

Finally, there were no procedural opportunities unavailable in the first action that could readily cause a different result if available in the second action. This exception does not apply.

Based on all of the above, I make the following findings:

1. Although the government was the plaintiff in the previous proceeding and won, offensive nonmutual collateral estoppel is the type involved in this case because Butner was not a party to the previous litigation and

the finding in the previous proceeding is contrary to the government's position in this case.

2. Collateral estoppel may be asserted against the government in this case because there are no important constitutional questions involved, this case is closely aligned both in time and subject matter with the previous proceeding, it is the same issue in essentially the same controversy, and the same United States Attorney's Office and the same courts are involved in both cases.

3. The public interest in accuracy and justice of criminal results is furthered by preventing the government from relitigating the issue of materiality of Butner's statements when that issue has already been decided.

4. Preventing the government from relitigating the issue of materiality of Butner's statements promotes judicial economy, serves to relieve parts of the cost and vexation of multiple lawsuits, and prevents inconsistent decisions, which are some of the policy concerns that helped create the doctrine of collateral estoppel.

5. The issue in the prior adjudication was identical to the issue in this case.

6. There was a final judgment on the merits in the previous proceeding.

 **\*15** 7. The government was a party in the prior adjudication.

8. The government had a full and fair opportunity to be heard on the adjudicated issue.

9. The government had incentive to vigorously defend its position in the previous proceeding and indeed won that proceeding.

10. The previous judgment is not inconsistent with one or more previous judgments.

11. There were no procedural opportunities unavailable in the first proceeding which are available in the second proceeding.

Therefore, I find that the indictment in this case should be dismissed because the government is barred by the doctrine of collateral estoppel from attempting to prove an essential element of the perjury offense, i.e., that the false statements were material.

## IV. DUE PROCESS OF LAW

Defendant next argues that the government's inconsistent-theories approach violates his due process rights. I agree.

The main case relied on by defendant is *Smith v. Groose,* 205 F.3d 1045 (8th Cir.2000), *cert. denied,* 531 U.S. 985, 121 S.Ct. 441, 148 L.Ed.2d446, 2000 WL 1337423 (November 6, 2000). In that case, the Eighth Circuit Court of Appeals granted a writ of habeas corpus because the Jackson County Prosecutor's Office convicted multiple defendants of murdering the same people by using inconsistent theories.

The main witness in the cases was Anthony Lytle. Lytle gave a statement to police on November 30, 1983 (four days after the murders of Pauline and Earl Chambers). He stated that he and three others (all juveniles) went to the Chambers house planning to burglarize it. When they arrived, they saw that the front door had been kicked in and a burglar, Michael Cunningham, was inside. Cunningham told the four juveniles they could go in and take what was left. Lytle saw a body in a doorway and asked Cunningham what he did to the guy, and Cunningham stated, "Don't worry about it. We took care of it."

Two days later, on December 2, 1983, Lytle gave another statement to police. In this second statement, Lytle stated that Pauline and Earl Chambers were alive when the four juveniles entered the house and that he subsequently saw one of the juveniles, James Bowman, stabbing Earl Chambers.

At the trial of Jon Smith (one of the juveniles), the government used the second statement (the December 2 statement) of Anthony Lytle. Smith was convicted of felony murder since he was in the house committing a burglary at the time his co-hort, James Bowman, committed the murders. Four months later, the government tried the original burglar, Michael Cunningham, for the murders of Pauline and Earl Chambers. During Cunningham's trial, the government used Anthony Lytle's first statement (the November 30 statement). Cunningham was convicted of murder since

Lytle stated that the couple was dead when the four juveniles entered the house and that Cunningham had said he had taken care of it.

Smith lost on all of his direct appeals, and the federal district court declined to grant a writ of habeas corpus. Smith appealed. The Eighth Circuit had before it the question of "whether the Due Process Clause forbids [the government] from using inconsistent, irreconcilable theories to secure convictions against two or more defendants in prosecutions for the same offenses arising out of the same event." *Smith v. Groose,* 205 F.3d at 1049. The court held that it did.

*16 We begin with the government's fundamental interest in criminal prosecution: "not that it shall win a case, but that justice shall be done." *Berger v. United States,* 295 U.S. 78, 88, 55 S.Ct. 629, 79 L.Ed. 1314 (1935); *see United States v. Agurs,* 427 U.S. 97, 111, 96 S.Ct. 2392, 49 L.Ed.2d 342 (1976). Although the prosecutor must prosecute with earnestness and vigor and "may strike hard blows, he is not at liberty to strike foul ones." See id.

*Smith v. Groose,* 205 F.3d at 1049.

In its opinion, the Eighth Circuit discussed several cases from other circuits dealing with similar circumstances. In *Thompson v. Calderon,* 120 F.3d 1045, 1058–59 (9th Cir.1997) (en banc), vacated on other grounds, 523 U.S. 538, 118 S.Ct. 1489, 140 L.Ed.2d 728 (1998), a plurality of the Ninth Circuit held that the state of California violated Thompson's due process rights by arguing at the trial that he alone committed a murder, and then arguing at a subsequent trial that another defendant actually committed the same murder. After noting the fundamental duty of prosecutors "to vindicate the truth and to administer justice," the court pointed out that the prosecutor in the second trial "returned to his original theory and discredited the very evidence he had previously offered in Thompson's trial." *Smith v. Groose,* 205 F.3d at 1049–50 (quoting *Thompson v. Calderon,* 120 F.3d at 1048–59).

In *Drake v. Francis,* 727 F.2d 990, 994 (11th Cir.1984), the prosecutor convicted two different defendants of the same murder. A panel of the Eleventh Circuit noted that the two theories were "fairly consistent" because the argument was that both defendants played a role in the murder. Therefore, no due process violation was found.

On rehearing en banc, the majority declined to reach the issue, granting relief on other grounds. However Judge Clark, who specially concurred with the result, concluded that "[t]he state cannot divide and conquer in this manner. Such actions reduce criminal trials to mere gamesmanship and rob them of their supposed purpose of a search for truth." *Smith v. Groose,* 205 F.3d at 1050 (quoting *Drake v. Francis,* 762 F.2d 1449, 1479 (11th Cir.1985) (Clark, J., specially concurring)).

After discussing the above cases, the Eighth Circuit concluded as follows:

> In short, what the State claimed to be true in Smith's case it rejected in Cunningham's case, and vice versa. The State points out in its brief that "[t]here is no question that the victims were killed during the burglary either before or after the petitioner began to participate." This is precisely the point—the State argued in one case, "before," and in another case, "after," in its successful attempt to prove beyond a reasonable doubt that the Chamberses were murdered at two different times.... This before/after distinction is the heart of the prosecutorial inconsistency that allowed the State to convict as many defendants as possible in a series of cases in which the question of timing was crucial....
>
> The State's duty to its citizens does not allow it to pursue as many convictions as possible without regard to fairness and the search for the truth....
>
> *17 [W]e hold only that the use of inherently factually contradictory theories violates the principles of due process.... Smith's situation is unusual, and we doubt that claims such as his will often occur. To violate due process, an inconsistency must exist at the core of the prosecutor's cases against defendants for the same crime.... "Society wins not only when the guilty are convicted but when criminal trials are fair; our system of the administration of justice suffers when any accused is treated unfairly." See *Brady v. Maryland,* 373 U.S. 83, 87, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963).

*Smith v. Groose,* 205 F.3d at 1050–1052.

**[10]** The holding of *Smith* applies here: The use of inherently factually contradictory theories violates the principles of due process. The government is attempting to proceed under the theory that Butner's statements in

the L'Donna trial were material while at the same time arguing to the courts during the L'Donna case that the statements were not material. This violates the principles of due process.

The government attempts to distinguish the *Smith* case merely by pointing out that its theories are not inconsistent because in one case the question of materiality is an issue of law for the court and in the other case the question of materiality is an issue of fact for the jury. As discussed above, that is a distinction without a difference.

For the above reasons, I find that the use of inconsistent theories in order to maintain the conviction of L'Donna and to simultaneously convict Butner is a violation of due process.

V. CONCLUSION

The government certainly has legitimate concerns in this case. In its response, the government points out that "it is illogical to suggest that [the government] should be precluded from prosecuting a cooperating government witness when he intentionally deceives the Court and jury unbeknownst to the government, under oath, concerning his identity and background.... [T]o permit a cooperating government witness to intentionally lie to a jury and District Judge during the course of a jury trial concerning his identity and background would create an unacceptable precedent."

I agree with the government's concerns, and I am certain that there are few if any who would honestly say that those concerns are not legitimate. However, the defendant, in his reply, suggested an alternate statute that could be used to punish such individuals and that does not contain a materiality element. I, too, have come up with a remedy or two other than prosecuting Butner for perjury using inconsistent theories. Therefore, the perjury statute was neither the only remedy nor obviously the appropriate remedy for the false statements.

Based on all of the above, it is

RECOMMENDED that the court, after making an independent review of the record and the applicable law, enter an order granting defendant's motion to dismiss the indictment.

Counsel are advised that, pursuant to 28 U.S.C. § 636(b)(1), each has ten days from the date of receipt of a copy of this report and recommendation to file and serve specific objections unless an extension of time for good cause is obtained.

**All Citations**

Not Reported in F.Supp.2d, 2000 WL 1842410

Footnotes

1  Defendant's motion assumes that the statements were false without so admitting. Because the truth of the statements is not at issue in this motion, I too will assume the statements were false.
2  The "firefighters" trial refers to *United States v. Edwards,* 159 F.3d 1117 (8th Cir.1998), wherein five individuals were convicted of starting an arson fire resulting in an explosion which killed several Kansas City firefighters.
3  The examination has now been completed; however, the motion for judicial determination of mental competency has not been resolved.
4  Also known as issue preclusion. Although issue preclusion is the more recent term, I will use the term collateral estoppel in this Report in order to remain consistent with the quotations from older cases which use the term collateral estoppel.
5  In 1942 Congress passed the Nationality Act, § 701 of which provided that non-citizens who served honorably in the Armed Forces of the United States during World War II were exempt from some of the usual requirements for nationality. In particular, such veterans were exempt from the requirement of residency within the United States and literacy in the English language. Congress later provided by amendment that all naturalization petitions seeking to come under § 701 must be filed by December 31, 1946. Section 702 of the Act provided for the overseas naturalization of aliens in active service who were eligible for naturalization under § 701 but who were not within the jurisdiction of any court authorized to naturalize aliens. In order to implement that provision, the INS from 1943 to 1946 sent representatives abroad to naturalize eligible alien servicemen. Mendoza served as a doctor in the Philippine Commonwealth Army from 1941 until his discharge in 1946. Because Japanese occupation of the Philippines had made naturalization of alien servicemen there impossible before the liberation of the Islands, the INS did not designate a representative to naturalize eligible

| | |
|---|---|
| | servicemen there until 1945. Because of concerns expressed by the Philippine government to the United States, however, to the effect that large numbers of Filipinos would be naturalized and would immigrate to the United States just as the Philippines gained their independence, the Attorney General subsequently revoked the naturalization authority of the INS representative. Thus all naturalizations in the Philippines were halted for a nine-month period from late October 1945 until a new INS representative was appointed in August of 1946. Mendoza's claim for naturalization was based on the contention that the conduct of the government deprived him of due process of law. The district court held that the government could not relitigate the due process issue because that issue had already been decided against the government in *In re Naturalization of 68 Filipino War Veterans,* 406 F.Supp. 931 (N.D.Cal.1975), a decision which the government had not appealed. The Court of Appeals affirmed and the Supreme Court granted certiorari. |
| 6 | In March 1980 when the EPA tried to inspect one of Stauffer's Tennessee plants using private contractors in addition to full-time EPA employees, Stauffer refused to allow the private contractors to enter the plant because they were not authorized representatives under the Clean Air Act, 42 U.S.C. § 7414(a)(2). Stauffer argued in court that the government should be estopped from relitigating the question of whether private contractors are authorized representatives under § 7414(a)(2) because it had already litigated that question against Stauffer and lost in connection with an attempted inspection of one of Stauffer's plants in Wyoming. Both the district court and the court of appeals held that the government was estopped from relitigating the statutory issue against Stauffer. The Supreme Court agreed. |
| 7 | In *Mendoza,* where the Court did not allow collateral estoppel to be asserted against the government, the Court was careful to use the limitation "in this case" each time the holding was enunciated. In *Stauffer Chemical Co.,* the Court stated that not applying collateral estoppel against the government "would substantially frustrate the doctrine's purpose of protecting litigants from burdensome relitigation and of promoting judicial economy." 464 U.S. at 172, citing *Parklane Hosiery Co. v. Shore,* 439 U.S. at 326. |
| 8 | As an analogy, imagine a case wherein two defendants are charged with bank robbery and have separate trials. During the first case, it is determined that the bank was not federally insured, an element that must be proved by the government. I doubt anyone would argue that the government should be allowed to proceed with the second case and again try to argue that the bank had been federally insured at the time of the robbery. |
| 9 | The government's distinction between a question of law and a question of fact is immaterial: in *Parklane Hosiery v. Shore,* the Supreme Court dealt with a nonjury trial ending in a declaratory judgment for the SEC, and collateral estoppel was asserted in the subsequent trial for damages brought by a class of investors. 439 U.S. 322, 99 S.Ct. 645, 58 L.Ed.2d 552. |
| 10 | Although one AUSA prepared the brief, the appeal was argued by the same attorney who prepared the response to this motion. |
| 11 | I note here that if the court had held that the statements were material and granted L'Donna's motion for new trial, the government could not have asserted collateral estoppel against defendant Butner because he was not a party to the prior proceeding. However, the government would have been able to cite the Eighth Circuit opinion as authority for its materiality position in the Butner case. Although collateral estoppel would not exist, precedent would. |

---

**End of Document** © 2017 Thomson Reuters. No claim to original U.S. Government Works.