

U.S. Department of Justice

*United States Attorney*
*Eastern District of New York*

JMK:AES/DCP/DKK
F.#2014R00501

*271 Cadman Plaza East*
*Brooklyn, New York 11201*

October 16, 2017

By Hand and ECF

Honorable Kiyo A. Matsumoto
United States District Judge
Eastern District of New York
225 Cadman Plaza East
Brooklyn, NY 11201

    Re: United States v. Evan Greebel
       Criminal Docket No. 15-637 (KAM)

Dear Judge Matsumoto:

    The government respectfully submits this letter in response to the defendant's motion, filed last evening, seeking to preclude the government from making certain arguments regarding the purpose of the backdating evidence detailed in the Superseding Indictment (the "Indictment"). The defendant's letter does not object to the admission of evidence about the backdating of share transfers in the fall of 2012 to create a fabricated interest in MSMB Capital – an issue that this Court has already ruled upon – but rather to the government's arguments about the purpose of creating the fabricated interest. Specifically, the defendant argues that the government should be precluded from arguing that one of the purposes of the backdating was to use Retrophin funds to pay off MSMB investors because such an argument would constructively amend the Indictment. For the reasons set forth below, the defendant's motion misconstrues the Indictment, ignores both the government's arguments at the Shkreli trial and the Court's decision denying the defendant's motion to dismiss, and is inconsistent with the law on constructive amendment. The motion should be denied.

  I. Background

    Count Seven of the Indictment charges the defendant with conspiracy to commit wire fraud, in violation of 18 U.S.C. § 1349. Indictment ¶¶ 55-56. The speaking portion of the Indictment describes three means or methods via which the defendant, Shkreli and others conspired commit wire fraud. Id. ¶¶ 21-35. One of the three means is the backdating at issue in the defendant's motion. Id. As alleged in the Indictment, each of three means served the same purpose: "to satisfy Shkreli's personal and unrelated professional debts and obligations." Id.

Count Seven is set forth in Paragraphs 55-56 of the Indictment. Paragraph 55 incorporates the allegations set forth in the speaking portion of the Indictment (paragraphs one through forty). Paragraph 56 alleges:

> In or about and between February 2011 and September 2014, both dates being approximate and inclusive, within the Eastern District of New York and elsewhere, the defendants MARTIN SHKRELI and EVAN GREEBEL, together with others, did knowingly and intentionally conspire to devise a scheme and artifice to defraud Retrophin, and to obtain money and property from Retrophin by means of materially false and fraudulent pretenses, representations and promises, and for the purpose of executing such scheme and artifice, to transmit and cause to be transmitted by means of wire communication in interstate and foreign commerce writings, signs, signals, pictures and sounds, contrary to Title 18, United States Code, Section 1343.

II.   Applicable Law

A constructive amendment to an indictment can arise when the government's proof at trial and the trial court's jury instructions "modify essential elements of the offense charged to the point that there is a substantial likelihood that the defendant may have been convicted of an offense other than the one charged by the grand jury." United States v. Vebeliunas, 76 F.3d 1283, 1290 (2d Cir. 1996) (internal quotations omitted). However, a court will not find constructive amendment where "a generally framed indictment encompasses the specific legal theory or evidence used at trial." United States v. Salmonese, 352 F.3d 608, 620 (2d Cir. 2003) (citing United States v. Wallace, 59 F.3d 333, 337 (2d Cir. 1995)); see also Stirone v. United States, 361 U.S. 212, 218 (1960) (noting that an indictment written in general terms may support conviction on an alternative bases).

An impermissible alteration of the government's proof or the court's charge must affect an essential element of the offense. United States v. Weiss, 752 F.2d 777, 787 (2d Cir. 1985). See also United States v. LaSpina, 299 F.3d 165, 181 (2d Cir 2002) (same). Because the proof at trial is not required to be a precise replica of the charges contained in the indictment, courts in this Circuit permit "significant flexibility" in the government's proof at trial, if the defendant was provided notice of the "core of criminality to be proven at trial" as part of the indictment. See e.g., United States v. Patino, 962 F.2d 263, 266 (2d Cir. 1992) (citing United States v. Heimann, 705 F.2d 662, 666 (2d Cir. 1983)). Furthermore, "[t]he core of criminality of an offense involves the essence of a crime, in general terms; the particulars of how a defendant effected the crime falls outside that purview." United States v. D'Amelio, 683 F.3d 412, 418 (2d Cir. 2012). In the context of wire fraud, the "core of criminality" is the nature of the scheme. See, e.g. United States v. Dupre,  462 F.3d 131,140-41 (2d Cir. 2006) (no constructive amendment where evidence "concerned the same elaborate scheme to defraud"); United States v. Stitsky, 536 F. App'x 98, 102-03 (2d Cir. 2013) (summary order).

III.     Discussion

In an attempt to constrain the government's arguments about the backdating evidence detailed in the Indictment, the defendant misconstrues both the plain language of the Indictment and the law on constructive amendment.

First, the defendant's motion is premature.  There can be no claim of a constructive amendment to the Indictment because the government has neither presented proof at trial nor has the court provided jury instructions that "modify essential elements of the offense charged to the point that there is a substantial likelihood that the defendant may have been convicted of an offense other than the one charged by the grand jury."  See Vebeliunas, 76 F.3d at 1290.

Second, the defendant misconstrues the Indictment.  The speaking portion of the Indictment alleges that each of the means through which the wire fraud conspiracy was carried out had the same purpose: "to satisfy Shkreli's personal and unrelated debts and obligations."  Indictment ¶ 21.  That is, the Indictment specifically alleges that the defendant, Shkreli and others engaged in the backdating of share transfers to fabricate an interest in MSMB Capital in order to satisfy Shkreli's personal and unrelated debts and obligations.  The Indictment thus identifies both the conduct at issue and its purpose.  Given this unambiguous language in the Indictment, the defendant's attempt to limit the government to arguing that the sole purpose of the backdating evidence was to create the appearance of an MSMB Capital investment prior to the SEC inquiry is plainly without merit.  That was one purpose, but it was not the only purpose.[1]

Third, the defendant's contention that the government advanced a new theory at the October 6, 2017 status conference is incorrect.  The government made the same argument at the Shkreli trial.[2]  And, in response to the defendant's motion to dismiss Count Seven, filed in August, the government stated that the "defendant worked with Shkreli to continue to represent that MSMB Capital had invested its funds with Retrophin to MSMB Capital investors who ultimately received settlement and consulting agreements, including Sarah Hassan, Schuyler Marshall and Darren Blanton."  Dkt No. 345 at 15.

---

[1] See Shkreli Tr. at 5259:5 (government closing describing "both purposes" of the backdating scheme).

[2] See Shkreli Trial Tr. at 5257:12-5258:6 (government closing stating that the backdating scheme made it "look[] like MSMB Capital had Retrophin shares and they are issued to MSMB Capital.  And [Shkreli] now has something, rather than nothing, that he can give the MSMB Capital investors and say Oh, this is what . . . your investment was used for.  It was used to buy share in Retrophin.  And now I'm giving you those shares and here's your investment back. . . . There's absolutely no money in MSMB Capital all the way through to December of 2012 and then there's this fraudulent backdated interest in MSMB Capital which let [Shkreli] distribute shares of Retrophin for MSMB Capital as if the MSMB Capital investors had actually invested in Retrophin, which did not happen.").

Fourth, this Court's October 13 order denying the defendant's motion to dismiss addressed the theory raised by the defendant's letter. In explaining that "[t]aken as a whole, the allegations regarding backdated transfers provide important context for both the settlement and consulting agreements at issue in Count Seven and the distribution of 'Fearnow' shares at issue in Count Eight," the Court stated:

> [T]he backdated transfers created the appearance of an investment relations between MSMB Capital and Retrophin" and that "[b]ased on this allegedly 'fabricated' interest, MSMB Capital investors were led to believe that they held a significant numbers of shares in Retrophin, which may have caused them to believe that they had viable claims against Retrophin through their investment in MSMB Capital. Dkt. No. 402 at 12.

At trial, the defendant can argue that the theory set forth above was not one of the purposes of the backdated share transfers, and that those backdated transfers did not lead MSMB Capital investors to believe that they held shares in Retrophin. But that is an argument about conduct alleged in the Indictment – not conduct constructively amended to it.

Fifth, the defendant has not demonstrated that any argument by the government about the purpose of the backdating evidence diverges from the conduct charged in the Indictment, let alone in a manner that raises a "substantial likelihood" that he would be convicted of uncharged offenses. See D'Amelio, 683 F.3d at 416. The government's core theory remains the same: the defendant and others engaged in a scheme to defraud Retrophin through the means set forth in the Indictment. See, e.g., United States v. Leonard, 350 Fed. App. 480, 482 (2d Cir. 2009) (no constructive amendment where core theory of deceit was unchanged by the government's proof); United States v. Rajaratnam, 736 F. Supp. 2d 683, 686 (S.D.N.Y. 2010) (no constructive amendment where allegations in indictment are unchanged by the government's proof adding detail about the means used to commit securities fraud).

The defendant cites no authority to support his claim that a defendant's motivation for committing wire fraud conspiracy is an "essential element" of the crime with which he is charged. Indeed, the Second Circuit has stated that the "specific means" used by a defendant to effect his crime may not constitute an "essential element" for purposes of constructive amendment. See D'Amelio, 683 F.3d at 421. In Dupre, for example, the Circuit denied a constructive amendment claim where the evidence at trial proved certain fraudulent transactions, but not the transaction specified in the indictment. The Circuit found that the indictment was not constructively amended because "the evidence at trial concerned the same elaborate scheme to defraud investors as was described in the indictment." Dupre, 462 F.3d at 140-41. Here, by contrast, the defendant's argument is not even about the means through which the conspiracy was carried out, but rather about why the defendant committed wire fraud conspiracy.[3]

---

[3] The Second Circuit has continuously held that the government is entitled to significant flexibility in proof. See, e.g., Patino, 962 F.2d at 266. See also United States v. Banki, 685 F.3d 99, 119 (2d Cir. 2011) (no constructive amendment in a case involving a false statement to law

4

Sixth, the case law cited by the defendant highlights why there is no constructive amendment in this case. In United States v. Milstein, 401 F.3d 53 (2005), upon which the defendant principally relies, the Second Circuit vacated a conviction for distributing misbranded drugs. Although the indictment alleged that the defendant "sold . . . re-packaged drugs as though they were the original product," the government presented evidence at trial that the drugs were misbranded for a different reason, namely that they were incorrectly labeled "sterile." The district court instructed the jury that it could convict the defendant of distributing misbranded drugs if it found that that the defendant had untruthfully labeled the drugs "sterile." Noting that, at the time of the defendant's offenses, "there were twenty different methods of misbranding" under the applicable statutes, the Circuit held that the allegation in the indictment that the defendant committed misbranding because he re-packaged drugs as though they were originals "would not necessarily place [the defendant] on notice that the Government would also attempt to prove that the drugs were not sterile." Id. at 53.

The defendant's reliance on Milstein is entirely off the mark. First, Milstein addressed the introduction of completely new conduct not alleged in the indictment; i.e., the misbranding of contaminated drugs as "sterile." Here, in contrast, the backdating evidence at issue is set forth in detail in the Indictment. Second, the defendant's argument that Milstein found a constructive amendment because "the government had changed its theory as to why the defendant had misbranded the drugs at issue" is incorrect. Def.'s Ltr. at 6 (emphasis in original). The question in Milstein was not why the defendant misbranded drugs, but how he misbranded drugs. That is, the Court found that the evidence at trial presented conduct that was not alleged in the indictment, i.e., how the defendant committed misbranding. Here, in contrast, the issue of how the defendant participated in the backdating scheme is clearly detailed in the Indictment. Third, the defendant omits that Milstein involved a count of conspiracy to distribute misbranded drugs, and the Circuit affirmed that conviction – even as it vacated the substantive count. In so doing, the Court explained that "the overt act element of a conspiracy charge may be satisfied by an overt act that is not specified in the indictment, at least so long [as] there is no prejudice to the defendant." Milstein, 401 F.3d at 70 (internal quotation marks omitted). The distinction between a substantive count and conspiracy count is even clearer here, where the defendant is charged only with a conspiracy; there is no overt act requirement for the conspiracy

---

enforcement where the government arguably changed its theory at trial by introducing an alternative motive for the defendant's decision to lie); D'Amelio, 683 F.3d at 412 (no constructive amendment where the indictment specified only use of the internet, but the jury instruction permitted a conviction based also on use of the telephone); United States v. Skelly, 442 F.3d 94 (2d Cir. 2006) (no constructive amendment where indictment put defendant on notice of fraudulent scheme of illegal sales practices, and proof at trial further described the modus used by the defendant to accomplish the illegal sales practices); United States v. Knuckles, 581 F.2d 305, 312 (2d Cir. 1978) (no constructive amendment where the charge was distribution of heroin and the proof at trial involved the distribution of cocaine, and the jury charge permitted conviction based on the distribution of either drug because the core of the criminality was distribution of narcotics).

charged in Count Seven; and the objects of the charged conspiracy are clearly set forth in the Indictment.

United States v. Davis, No. 13-CR-923 (LAP), 2017 WL 3328240 (S.D.N.Y. Aug. 3, 2017), is similarly inapplicable. In Davis, the district court found that the indictment lacked the allegations necessary to proceed on a "right to control" theory and that there was "no allegation in the indictment that [came] close to the right to control theory contained in the jury instruction." Id. at *32. As a result, the court found that both the evidence and jury instructions on the right to control theory constituted a constructive amendment. Id. at *33.[4] Moreover, the court found that the government presented evidence of multiple theories of economic harm that were not in the indictment. That is, the court found that that the indictment, evidence at trial, and jury instructions implicated multiple "factual complexes" and "different courses of conduct." Id. at *34. Here, by contrast, prior to the introduction of any evidence, and before the jury has been charged, the defendant seeks to preclude the government from arguing about the purpose of a course of conduct specifically alleged in the indictment.[5]

In sum, the defendant's motion is contrary to the Indictment, this Court's ruling on the defendant's motion to dismiss, and the law on constructive amendment.

---

[4] The government is not proceeding on a right to control theory in this case. See Dkt No. 345 at 23-25.

[5] The defendant also relies on Stirone v. United States, 361 U.S. 212, 218 (1960), in which a verdict was based on "a complex of facts distinctly different from that which the grand jury set forth in the indictment." See D'Amelio, 683 F.3d at 419 (2d Cir. 2012) (internal quotation marks omitted). The indictment in Stirone alleged a Hobbs Act violation based on the obstruction of sand shipments into Pennsylvania, where the sand then would be used to make concrete in order to construct a steel mill. At trial, however, the government presented evidence that the obstruction of sand shipments affected prospective steel shipments from the not-yet-construed steel in Pennsylvania into other states. The Supreme Court found that "[t]he indictment [could not] fairly be read as charging interference with movements of steel from Pennsylvania to other States." Id. at 273. That is, the Court found that the defendant could have been convicted of an offense other than the one charged by the grand jury. The circumstances of Stirone plainly do not apply here.

6

IV.	Conclusion

        For the reasons set forth above, the defendant's motion should be denied.

        Respectfully submitted,

        BRIDGET M. ROHDE
        Acting United States Attorney

By:   /s/
        Alixandra E. Smith
        David C. Pitluck
        David K. Kessler
        Assistant U.S. Attorneys
        (718) 254-7000

cc:	All counsel (via ECF)