# GIBSON DUNN

Gibson, Dunn & Crutcher LLP

200 Park Avenue
New York, NY 10166-0193
Tel 212.351.4000
www.gibsondunn.com

Reed Brodsky
Direct: +1 212.351.5334
Fax: +1 212.351.6235
RBrodsky@gibsondunn.com

October 12, 2017

ORAL ARGUMENT REQUESTED

VIA ELECTRONIC MAIL AND HAND DELIVERY

The Honorable Kiyo A. Matsumoto
United States District Judge
United States District Court for the Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York 11201

Re:   United States v. Evan Greebel, S1 15 Cr. 637 (KAM)

Dear Judge Matsumoto:

We respectfully submit this letter in response to the government's letter dated October 9, 2017 ("Govt's Resp.") regarding the scope and admissibility of certain excerpts of the recording of Mr. Greebel's post-arrest interrogation by two Federal Bureau of Investigation ("FBI") agents on December 17, 2015.[1] The history of briefing and correspondence on this issue prior to the government's October 9 letter is set forth in pages 1 to 2 of our letter dated October 3, 2017, so we do not repeat it here. We respectfully request oral argument.

On or about October 11, 2017, the government agreed via email to incorporate all but one of our proposed corrections to its transcript. The government made one correction to our proposed revisions to the transcript, and we agree to this correction. Accordingly, the parties no longer have any disputes about the actual language in the chart attached as Exhibit A and thus it includes no further redline edits.

Of the 17 excerpts described in our October 3 letter, there remains no dispute between the parties regarding the content of seven of them.[2] The government now consents to our

---

[1] As discussed at the pretrial conference on October 6, 2017, Tr. 164:3–166:2, the parties have not filed their briefing on this issue on ECF prior to jury selection. *See also* Mr. Greebel's Oct. 3, 2017 Letter 1 n.1; Govt's Resp. 2 n.2.

[2] By offering select (and we believe incomplete portions of) Mr. Greebel's post-arrest statements, the government seems to be setting up to contend that Mr. Greebel either omitted information, made inaccurate statements, and/or made affirmative misrepresentations to the

**GIBSON DUNN**

Counsel
October 12, 2017
Page 2

proposed addition to Excerpt 8, Govt's Resp. 7, and there are no further disagreements regarding the content of Excerpts 3, 6, 9, 10, 11, and 12, *id.* at 5–7.  We respond to the government's contentions regarding the 10 remaining excerpts below.

I.      **Legal Standard**

We set forth the appropriate legal standard on page 3 of our October 3 letter and do not reproduce it here.  We do, however, respond briefly to the government's choice of legal authorities.

The government cites *United States v. Terry*, 702 F.2d 299 (2d Cir. 1983), for the proposition that Rule 106 "does not provide a defendant with a blanket opportunity to offer his own statements just because the government has introduced the defendant's inculpatory statements," Govt's Resp. 2, but the government fails to mention that the *Terry* court rejected the same type of argument the government is making here.  In *Terry*, the prosecution sought to introduce, as evidence of consciousness of guilt, the fact that the defendants had refused to give their palm prints to police for comparison with a print found on a bag of heroin.  702 F.2d at 313–14.  The defendants argued that Rule 106 required the trial court to admit their reason for refusing—they wanted their counsel present—as proof of their state of mind.  *Id.* at 314.  The Second Circuit agreed, holding that the district court had erred in excluding the

---

FBI in answering questions following his arrest about events that occurred years before.  Thus, we are entitled to question the FBI agents who took these statements from Mr. Greebel regarding the circumstances that led to the statements and the conditions under which the statements were made.  *See* Oct. 6, 2017 Pretrial Conf. Tr. 198:6–11 ("[I]f somebody puts in post-arrest statements, then the Government's going to argue that they're incomplete, or they're inaccurate, or they're misleading, or anything else, then the circumstances that led to that interview, the background context that led to it, the actual interview itself, the conditions of the interview, are all relevant."); Oct. 6, 2017 Minute Entry Order ("[R]uled that if the government introduces evidence of Mr. Greebel's post-arrest statements and the defendant makes arguments or introduces evidence regarding the conditions of arrest, the tape of the post-arrest interview may be introduced with appropriate redaction[.]").  As a result, we respectfully submit that if the government intends to offer any post-arrest statements, the government must do so through an FBI agent with personal knowledge of the interview and the preceding circumstances leading to the interview in order to lay a proper foundation.  *See* Fed. R. Evid. 602, 901(b)(1).  Should the government offer any statements through an FBI agent who was not present for the interview and has no knowledge of the immediate circumstances prior to the interview in connection with the arrest, we submit that they will be inadmissible.

**GIBSON DUNN**

Counsel
October 12, 2017
Page 3

defendants' explanations.  *Id.*; *but see id.* (error was harmless "in view of the overwhelming proof of their guilt").  Notwithstanding the government's cherry-picked language from the opinion, *Terry* squarely supports including our proposed additions.[3]

**II.   Our Proposed Additions Are Necessary to Explain the Government's Proposed Excerpts, to Place Them in Context, to Avoid Misleading the Jury, or to Ensure Fair and Impartial Understanding of any the Government's Proposed Excerpts**

    **A.   Excerpt 1**[4]

The government argues that the statements in Excerpt 1 "do not lead into, connect to, or address any of the specific questions and answers in any of the proposed excerpts that the government may offer and thus could not possibly serve to complete those excerpts pursuant to [Rule] 106."  Govt's Resp. 4 (citing *Terry*, 702 F.2d at 314; *Johnson*, 507 F.3d at 796).  The government misconstrues Rule 106 by reference to its colloquial moniker, the "rule of completeness."  In fact, under Rule 106, a party "may require the introduction . . . of *any other part—or any other writing or recorded statement*—that in fairness ought to be considered at the same time."  Fed. R. Crim. P. 106 (emphasis added).  The government cites no authority for its novel contiguousness requirement.

As described above, the *Terry* court found error where additional explanatory statements were excluded.  702 F.2d at 314.  And *Johnson* stands for the proposition that a court may exclude additional statements that relate to a different category of activity conducted at a

---

[3]    The government's other Rule 106 case authorities are inapposite.  *See United States v. Williston*, 862 F.3d 1023, 1037–39 (10th Cir. 2017) (child-abuse/murder defendant sought to admit statements that he believed child abuse was wrong, was abused himself, would never abuse his children); *United States v. Gonzalez*, 399 Fed. App'x 641, 645 (2d Cir. 2010) (defendant's statement that co-defendant "kept [him] out of the drug business to protect him" was "entirely separate issue from" admitted statement that murder victim was known to rob drug dealers); *United States v. Johnson*, 507 F.3d 793, 796–97 (2d Cir. 2007) (defendant sought to admit entire interview transcript); *United States v. Jackson*, 180 F.3d 55, 73 (2d Cir. 1999) (same); *United States v. Lumiere*, No. 16 Cr. 483 (JSR), 2017 WL 1391126, at *6–7 (S.D.N.Y. June 26, 2017) (defendant's proposed additions explaining potential legitimacy of activities were inadmissible to complete government's excerpts giving "simple historical facts about the mechanics and scope of the . . . scheme"); *United States v. Blake*, 195 F. Supp. 3d 605, 610–11 (S.D.N.Y. 2016) (defendant's exculpatory statements that family members could have used her identification during the scam were not necessary to explain admitted statements regarding defendant's relationship with co-conspirators).

[4]    The excerpts referenced herein refer to the numbered rows in Exhibit A.

different period of time from that described by admitted statements. 507 F.3d at 796. Neither case supports the government's tenuous position that a statement explaining the context of an interview, from which the government seeks to introduce 14 statements of varying lengths, is inadmissible. *See* Govt's Resp. 4.

Nor does *Gonzalez* support the government's argument that Mr. Greebel's statements in Excerpt 1 are somehow merely self-serving and therefore inadmissible. *See* Govt's Resp. 4. In *Gonzalez*, the government offered one co-defendant's post-arrest statement that a murder victim was known to rob drug dealers (in order to tie the murder to the charged drug conspiracy). 399 Fed. App'x at 645. The Second Circuit affirmed the district court's denial of the defendants' request to add a statement that one co-defendant "kept [the other] out of the drug business to protect him," because such statement was "an entirely separate issue" from the admitted statement. *Id.* Here, by contrast, the issue is the interview itself, and Excerpt 1 provides necessary context for it.

### B. Excerpt 2

The government argues that its proposed Excerpt 2 comprises Mr. Greebel's "complete response to questions about how he first met" Mr. Shkreli that are "clear of their own," and that our proposed addition adds Mr. Greebel's "unprompted and self-serving statements" that are not "necessary to explain" the government's proposed excerpt. Govt's Resp. 4–5 (citing *Jackson*, 180 F.3d at 73). Unlike in *Jackson*, where the court refused to admit an entire 42-minute interview recording to "complete" the government's proposed introduction of a 90-second clip to simply establish the defendant's "awareness of the unlawfulness of the extortion scheme," 180 F.3d at 73, we propose a 32-second addition to the government's proposed 3-minute excerpt, *see* Ex. A at 1–4. Our proposed addition simply completes Mr. Greebel's answer to the agent's question, "So how, so that's how you first met [Mr. Shkreli] *and became involved and you represented MSMB Capital*?" Ex. A at 3. It should in fairness be admitted to complete the statement.

### C. Excerpt 4

The government argues that Excerpt 4 "neither follows from nor continues any excerpt that the government may seek to introduce, nor does it serve to complete any such excerpt." Govt's Resp. 5. As noted in our October 3, 2017 letter, however, Excerpt 4 follows from, continues, and serves to complete Mr. Greebel's response to the question (in Excerpt 2) "How do you know Martin Shkreli?" Ex. A at 1. Contrary to the government's assertion, Mr. Greebel's statements in Excerpt 4 do not pertain solely to "the patterns of 'deal flow' work" but rather to other "deals" on which he worked with Mr. Shkreli, namely AMAG, and Myrexis, and on "activist investor"-related matters for MSMB Capital. The 10-minute gap between Excerpts 2 and 4 is not a bar to admission under Rule 106, which allows for the

Counsel
October 12, 2017
Page 5

admission of "any other portion" of a recording that should fairly be considered. *See* Fed. R. Evid. 106.

### D. Excerpt 5

The government argues that "there is nothing confusing" about Mr. Greebel's negative response to the agent's question "Did you help change [Retrophin] from an—into an LLC?" Govt's Resp. 5. But our proposed addition to Excerpt 5 explains a different statement: "I was not predecessor counsel." Ex. A at 6. As indicated by the agent's statements in our proposed addition, the agent's line of questioning was premised on a misunderstanding of Mr. Greebel's role. Our proposed addition certainly ought be admitted to explain that role.

### E. Excerpt 7

The government argues that our proposed addition to the beginning of Excerpt 7 is merely "self-serving," and that our proposed addition to the end of Excerpt 7 "add[s] confusion where none exists." Govt's Resp. 6. First, it is the government's own proposed excerpt that references the PIPE transactions, Ex. A at 9, so our first proposed addition is *necessary* to explain and give context to what those transactions entailed. The government cites no authority for its contention that additional statements are inadmissible under Rule 106 where "other admissible evidence" might help explain the point to the jury.

Second, the government's proposed excerpt ends with a classic literary cliffhanger:

> Question: Did you have any knowledge that they were MSMB investors?
>
> Answer: Not at the time.

Ex. A at 12. Our proposed addition to the end of Excerpt 7 completes Mr. Greebel's response and explains that "they" were not only MSMB investors but "also" investors in Retrophin. *See id.* at 12–13. By seeking to prevent the admission of these additional excerpts, the government seeks to give the jury an entirely misleading sense of how Mr. Greebel answered the question. Our proposed excerpts are classic completeness responses that must be included to complete Mr. Greebel's answer.

### F. Excerpt 13

The government argues that Excerpt 13 is admissible because we passingly refer to the agent's hearsay statement as a "question"; Mr. Greebel's *non sequitor* is somehow still clear enough to be relevant; the agent's affirmative statement "I know you guys"—*i.e.*, Mr. Greebel and Mr. Shkreli—"had a relationship on different deals for different companies

before" is actually part of a question; and Mr. Greebel's response "Again, I represent companies. I don't represent..." speaks for itself. *See* Govt's Resp. 8–9.

Our reference to the agent's "question" on page 8 of our October 3, 2017 letter merely follows the government's convention of labelling every statement by the FBI agent as a "Question" and every statement by Mr. Greebel as an "Answer." *See* Ex. A to Govt's Resp. at 1 n.1 ("In the text, the questioner is the FBI agent and the answer is given by the defendant."). Doing so does not waive our hearsay objections to the content of the agent's statements themselves.

The only portion of the agent's statement bearing even passing resemblance to a question is "do you continue to talk to Martin sporadically." Ex. A at 18. The government cannot seriously contend that Mr. Greebel's response, "Again, I represent companies, I don't represent..." is responsive or clear.

The government's argument that the agent's two hearsay statements—"October 14th, you're kind of done" and "I know you guys had a relationship on different deals for different companies before," *id.*—are "necessary context to explain [Mr. Greebel's] response," Govt's Resp. 9, is absurd. The government identifies no Rule of Evidence allowing it to introduce its own agent's hearsay as "context." Moreover, the agent's statements do no such thing. Excerpt 13 should be excluded altogether.

The necessary context to Mr. Greebel's statement, if Excerpt 13 is admitted, is our proposed addition, in which Mr. Greebel denies any "personal relationship" with Mr. Shkreli. *See* Ex. A at 18. That is why Mr. Greebel's second response begins with "Again," to correct the agent's insinuation that Mr. Greebel "had a relationship" with Mr. Shkreli.

### G. Excerpt 14

The government consents to our proposed addition to the end of Excerpt 14. Govt's Resp. 7.

With respect to our proposed addition of four lines (12 seconds) to the beginning, the government argues, "Rule 106 addresses 'completeness' of statements—not latent misunderstandings." *Id.* The government ignores that a central purpose of Rule 106 is to avoid any "misleading impression created by taking matters out of context." Fed. R. Evid. 106, Advisory Comm. Notes to 1972 Proposed Rules. That is why courts will admit additional statements "necessary . . . to avoid misleading the jury." *See United States v. Klein*, No. 16-cr-442 (JMA), 2017 WL 839765, at *2 (E.D.N.Y. Mar. 1, 2017). For the same reason, our proposed extremely short addition of four lines to the beginning of Excerpt 14 should be admitted.

**GIBSON DUNN**

Counsel
October 12, 2017
Page 7

### H. Excerpt 15

The government argues that Excerpt 15 is "clear in and of [itself]" and that our proposed additions are akin to proposed additions the Second Circuit rejected in *Johnson*, 507 F.3d at 796. Govt's Resp. 7–8. First, we of course did argue in our October 3 letter that Excerpt 15 is confusing and incomplete, because we argued that additional statements are necessary to explain its contents. *See* Mr. Greebel's Letter dated Oct. 3, 2017 at 10–11.

Second, *Johnson* involved two sets of statements from a confession: the government's proposed set of statements detailing the defendant's plan to rob an apartment, and the defendant's proposed additions, which detailed "what happened inside the apartment and afterwards." 507 F.3d at 796. The Second Circuit affirmed the district court's refusal to admit the defendant's proposed additions, because the confession was "appropriately divided into two parts," the planning of the conspiracy and the execution of the robbery. *Id.* The government makes no similar claim regarding Excerpt 15, which concerns consulting agreements and their consideration at Retrophin board meetings. *See* Ex. A at 22–30.

In contrast to *Johnson*, there is neither a "subject" nor temporal difference between the topic of discussion in the government's proposed excerpt and our proposed additions. For the reasons set forth in our October 3 letter, both of our proposed additions should be admitted.

### I. Excerpt 16

The government contends that Excerpt 16, regarding Marek Biestek, is admissible because "Biestek was involved in the conduct charged in both Count Seven and Count Eight and had sustained, repeated interactions with Greebel in connection with that conduct." Govt's Resp. 9–10. The government does not dispute that the agent's question, "Um, what about Marek Biestek?" is unclear and confusing. Instead, the government contends that Mr. Greebel "responded to the question when it was asked." *Id.* at 10. But the fact of Mr. Greebel's response does nothing to clarify the agent's ambiguous question.

Moreover, the government's allegation that Mr. Biestek "coordinated contacting most of the Fearnow share recipients on Greebel's behalf and served as a conduit for information about the shares both at the time that the shares" does not make the agent's question and Mr. Greebel's response relevant under Rule 401 to either the alleged "backdating" in Count Seven or to Count Eight, which was not even charged at the time of the post-arrest interview on December 17, 2015.[5]

---

[5]   Count Eight was not included as a charge until six months later, when the government superseded the Indictment on or about June 3, 2016.

**GIBSON DUNN**

Counsel
October 12, 2017
Page 8


Admitting Excerpt 16 would cause Mr. Greebel unfair prejudice under Rule 403 by confusing the jury and causing a mini-trial on the meaning of the various unclear and ambiguous statements it contains.

### J. Excerpt 17

The government argues that Excerpt 17 is inadmissible because it "neither leads in to nor follows from any of the government's excerpts." Govt's Resp. 8. As explained above with regard to Excerpts 1 and 4, this argument lacks merit.

Moreover, the government misdirects the Court by arguing that "the law does not recognize a 'consciousness of innocence' exception to the hearsay rules." *Id.* Of course, the admissibility of Excerpt 17—as with every one of Mr. Greebel's statements that we propose including—rests on Rule 106, which itself contains a hearsay exception for related statements. *Kleim*, 2017 WL 839765, at *2. That Excerpt 17 is evidence of Mr. Greebel's consciousness of innocence goes to its relevance and probative value, as the Second Circuit has recognized. *See United States v. Biaggi*, 909 F.2d 662, 691 (2d Cir. 1990) (defendant's rejection of offer of immunity in exchange for testifying as to wrongdoing is relevant and admissible to show defendant's consciousness of innocence).

We do not need recourse to another hearsay exception under the Federal Rules of Evidence, because Excerpt 17 is necessary to provide context for the interview itself and therefore admissible under Rule 106.

*   *   *

For all these reasons, should the government seek to offer its proposed excerpts at trial and should the Court receive such excerpts in evidence, we respectfully submit that the Court (1) admit the foregoing additional statements as "necessary to explain the admitted portion, to place the admitted portion in context, to avoid misleading the jury, or to ensure fair and impartial understanding of the admitted portion," *Klein*, 2017 WL 839765, at *2, and (2) exclude Excerpts 13 and 16.

Respectfully submitted,


*/s/ Reed Brodsky*
Reed Brodsky


Enclosures

**GIBSON DUNN**

Counsel
October 12, 2017
Page 9

cc: Alixandra E. Smith, Esq. (by e-mail)
David C. Pitluck, Esq. (by e-mail)
David K. Kessler, Esq. (by e-mail)