*Joshua E. Dubin, Esq., P.A.*

October 9, 2017

Honorable Kiyo A. Matsumoto
United States District Court Judge
Eastern District of New York
225 Cadman Plaza East
Brooklyn, NY. 11201

Re:  <u>United States v. *Evan Greebel*, No. 15-cr-637 (E.D.N.Y.)</u>

Dear Judge Matsumoto:

As discussed at the pre-trial conference on October 6, 2017, we plan to conduct Internet research on both prospective and sitting jurors. We respectfully submit this letter providing information on the propriety and importance of this practice.[1] We also want to emphasize to Your Honor that any such research will be done in an unobtrusive manner, so that no juror will learn of the research.

There is unquestionably an expectation that lawyers conducting *voir dire* will conduct Internet research on jurors in the interest of ensuring a fair and impartial jury. Bar associations have formally recognized the significant public policy benefits of allowing lawyers to use the Internet to research jurors. "There is a strong public interest in identifying jurors who might be tainted by improper bias or prejudice." Am. Bar Assoc., Formal Op. 466, at 1 (2014). Such research may consist of "review[ing] a juror's or potential juror's Internet presence, which may include postings by the juror or potential juror in advance of and during a trial." *Id.*

> Just as the internet and social media appear to facilitate juror misconduct, the same tools have expanded an attorney's ability to conduct research on potential and sitting jurors, and clients now often expect that attorneys will conduct such research. Indeed, standards of competence and diligence may require doing everything reasonably possible to learn about the jurors who will sit in judgment on a case.

N.Y.C. Bar Assoc., Formal Op. 2012-2, *Jury Research and Social Media*, at 2.

Courts have approved of trial counsel's internet research on prospective jurors.[2] *See generally* N.Y. State Bar Assoc. Social Media Comm., *Social Media Jury Instructions Report of*

---

[1] We respectfully request that the filing of this submission, and any response from the government, on the public docket should be delayed until after the jury has been selected.

[2] In different contexts, state and federal authorities have recognized a lawyer's duty to conduct social-media research in connection with litigation. *See Cannedy v. Adams*, 706 F.3d 1148,

*the Commercial and Federal Litigation Section of the New York State Bar Association*, at 15 (2015).  The Supreme Court of Missouri held that a lawyer must use "reasonable efforts" to research potential jurors' prior litigation histories, though a state website, prior to the jury's empaneling.  *Johnson v. McCullough*, 306 S.W.3d 551 (Mo. 2010).  A New Jersey court noted that a trial judge "acted unreasonably" by preventing plaintiff's counsel from using the Internet to research potential jurors during *voir dire*.  *Carino v. Muenzen*, No. L0028-07, 2010 WL 3448071, at *10 (N.J. App. Div. Aug. 30, 2010) (finding no prejudice from the erroneous ruling).

   Moreover, the New York Rules of Professional Conduct permit lawyers to conduct internet research on both potential and seated jurors.  Rule 3.5(a)(4) generally prohibits a lawyer from communicating with members or potential members of the jury "unless authorized to do so by law or court order"; however, various bar associations in New York have interpreted the Rule to permit lawyers to conduct internet research on jurors in a way that does not result in communications with them.  N.Y.C. Bar Assoc., Formal Op. 2012-2, *Jury Research and Social Media*, at 7-8; *see also* Am. Bar Assoc., Formal Op. 14-466, at 1 (2014) (interpreting Model Rules of Prof'l Conduct R. 3.5(b)).

   In 2012, the New York City Bar Association ("NYCBA") interpreted Rule 3.5 to permit social-media research of jurors "as long as no communication occurs between the lawyer and the juror as a result of the research." *Id.*  According to the NYCBA, the central question an attorney must answer before engaging in jury research on a particular site or using a particular service is whether her actions will cause the juror to learn of the research, resulting in a "communication." *Id.* at 5.  The NYCBA reached the following conclusions:

(i)   Rule 3.5 is violated when a juror receives a "friend" request (or similar invitation to share information on a social networking site) as a result of an attorney's research;

(ii)   Rule 3.5 is violated when a juror otherwise learns of the attorney's viewing or attempted viewing of the juror's pages, posts, or comments, if the attorney was aware that her actions would cause the juror to receive such message or notification;

(iii)   Rule 3.5 *might* be violated when the above occurs, even if inadvertent or unintended;

(iv)   it is the attorney's duty to research and understand the properties of the service or website she wishes to use for jury research in order to avoid inadvertent communications;

---

1164-66 (9th Cir. 2013) (lawyer's failure to conduct Internet research that would have uncovered an abuse victim's recantation on her social media account constituted ineffective assistance of counsel); N.H. Bar Assoc., Op. 2012-13/05 (lawyers "have a general duty to be aware of social media as a source of potentially useful information in litigation, to be competent to obtain that information directly or through an agent, and to know how to make effective use of that information in litigation").

    (v)    if an attorney cannot ascertain the functionality of a website, the attorney must proceed with great caution in conducting research on that particular site, and should keep in mind the possibility that even an accidental, automated notice to the juror could be considered a violation of Rule 3.5;

    (vi)    an attorney must not use deception – such as pretending to be someone else – to gain access to information about a juror that would otherwise be unavailable;

    (vii)    an attorney may read any publicly-available postings of the juror but must not sign up to receive new postings as they are generated;

    (viii)    research permitted as to potential jurors is permitted as to sitting jurors;

    (ix)    if an attorney learns of juror misconduct through research, the attorney must promptly notify the court (pursuant to Rule 3.5(d)); and

    (x)    an attorney may not employ a third party to do that which the attorney is herself prohibited from doing (pursuant to Rule 8.4).

*Id.* at 2.

        As noted by the NYCBA, other ethics opinions from New York bar associations are consistent with NYCBA Formal Opinion 2012-2. *See id.* at 4. For example, the New York State Bar Association ("NYSBA") found that obtaining information from an adverse party's social networking personal webpage, which is accessible to all website users, "is similar to obtaining information that is available in publicly accessible online or print media, or through a subscription research service as Niexi or Factiva and that is plainly *permitted*." N.Y. State Bar Assoc., Comm on Prof'l Ethics, Op. 843 at 2 (emphasis added); *see also* N.Y. State Bar Assoc., Social Media Comm., *Social Media Ethics Guidelines of the Commercial and Federal Litigation Section of the New York State Bar Association* (2017) (commenting on N.Y. Rules of Prof'l Conduct R. 3.5, 4.1, 5.3, 8.4) ("A lawyer may research a prospective or sitting juror's public social media profile, and posts.").

        The New York County Lawyers' Association ("NYCLA") has also published a formal opinion on the ethics of conducting juror research using social media. NYCLA Formal Opinion 743 (2011) ("NYCLA 743") examined whether a lawyer may conduct juror research during *voir dire* and trial using Twitter, Facebook and other similar social networking sites. NYCLA 743 found that it is "proper and ethical under Rule 3.5 for a lawyer to undertake a pretrial search of a prospective juror's social networking site, provided there is no contact or communication with the prospective juror and the lawyer does not seek to 'friend' jurors, subscribe to their Twitter accounts, send jurors tweets or otherwise contact them. During the evidentiary or deliberation phases of a trial, a lawyer may visit the publicly available Twitter, Facebook or other social networking site of a juror but must not 'friend' the juror, email, send tweets or otherwise communicate in any way with the juror or act in any way by which the juror becomes aware of the monitoring." NYCLA 743 at 4.

3

7413 Fairfax Dr., Bldg. F / Tamarac, Florida / 33321

Consistent with the NYCBA, the American Bar Association ("ABA") recommends that lawyers familiarize themselves with the terms of service of the various Internet platforms (*e.g.,* Facebook, LinkedIn, Instagram) before conducting research to avoid potentially unethical contact with a juror or a prospective juror. Am. Bar Assoc., Formal Op. 14-466, at 5-6 (2014). The ABA also agrees with the NYCBA and NYCLA that the lawyer should not send jurors or prospective jurors a direct or indirect "request for access" to their social media accounts, because doing so would amount to a violation of the prohibition against *ex parte* communications with jurors. *See id.* at 4 (comparing sending a "friend request" to "driving down the juror's street, stopping the car, getting out, and asking the juror for permission to look inside the juror's house because the lawyer cannot see enough when just driving past.").

With respect to inadvertent juror communications, the ABA takes a more permissive view than the NYCBA. According to the ABA, inadvertent contact, such as a notification automatically being sent to the juror or potential juror by the social media platform, *would not* make such research unethical. *Id.* at 1 ("The fact that a juror or a potential juror may become aware that a lawyer is reviewing his Internet presence when a network setting notifies the juror of such does not constitute a communication from the lawyer in violation" of the Rules of Professional Conduct.").

In conducting internet research on jurors, we will of course be guided by the parameters set forth by the foregoing ethics opinions and case law.

Respectfully yours,

Josh Dubin

cc: Alixandra Smith (by email)
David Pitluck (by email)
David Kessler (by email)

7413 Fairfax Dr., Bldg. F / Tamarac, Florida / 33321