

U.S. Department of Justice

United States Attorney
Eastern District of New York

JMK:AES/DCP/DKK  
F.#2014R00501

271 Cadman Plaza East271 Cadman Plaza East  
*Brooklyn, New York 11201Brooklyn, New York 11201*

October 9, 2017

By Hand

Honorable Kiyo A. Matsumoto  
United States District Judge  
Eastern District of New York  
225 Cadman Plaza East  
Brooklyn, NY 11201

      Re:  United States v. Evan Greebel  
            Criminal Docket No. 15-637 (KAM)

Dear Judge Matsumoto:

      On September 8, 2017, more than five weeks before the start of the trial, the government provided the defendant with a chart (the "Chart") identifying excerpts of the defendant's post-arrest statement that the government may seek to introduce in its case-in-chief. See Ex. A.  On September 27, 2017, the defendant responded with a chart objecting to the admission of one of the excerpts and proposing that certain other excerpts be appended to the government's excerpts.  See Ex. B.  The following day, after conferring with defense counsel, the government provided the defendant with a revised chart (the "Revised Chart"), incorporating certain additional excerpts where the parties were able to agree, and setting forth the final versions of 14 excerpts from the defendant's post-arrest statement that the government may seek to introduce in its case-in-chief.  See Ex. C.  On October 3, 2017, the defendant filed a motion with this Court to (i) modify six of the excerpts on the Revised Chart pursuant to Federal Rule of Evidence 106; (ii) add three entirely new excerpts from the defendant's post-arrest statement pursuant to Rule 106; and (iii) exclude from admission two of the excerpts on the Revised Chart.[1]

---

[1] In his motion, the defendant also disputes the accuracy of the transcripts of the defendant's post-arrest statements and requests that the Court "ensure accurate transcriptions." Defendant's Oct. 3, 2017 Letter ("Def. Ltr.") at 13.  Prior to submitting his October 3, 2017 motion, the defendant had not raised any issues with the government concerning the transcripts. The government respectfully submits that the parties should seek to resolve any issues regarding the transcripts on their own, and that there currently is no need for the Court to intervene because the parties have not yet had an opportunity to meet-and-confer about the specific language in the

As set forth below, the defendant's arguments are contrary to the law and should be rejected.[2]

I.   Applicable Legal Standards

   A.   FRE 106

Federal Rule of Evidence ("FRE") 106, also known as the "rule of completeness," states that "[i]f a party introduces all or part of a writing or recorded statement, an adverse party may require the introduction, at that time, of any other part—or any other writing or recorded statement—that in fairness ought to be considered at the same time." FRE 106. The Second Circuit has made clear, however, that the rule does not provide a defendant with a blanket opportunity to offer his own prior statements just because the government has introduced the defendant's inculpatory statements. See United States v. Terry, 702 F.2d 299, 314 (2d Cir. 1983) ("Rule 106 does not render admissible evidence that is otherwise inadmissible."). Rather, a defendant must demonstrate that the omitted portion of the hearsay statement is "necessary to explain the admitted portion, to place the admitted portion in context, to avoid misleading the jury, or to ensure fair and impartial understanding of the admitted portion." United States v. Johnson, 507 F.3d 793, 796 (2d Cir. 2007) (internal quotations and citations omitted); see also United States v. Jackson, 180 F.3d 55, 73 (2d Cir. 1999) ("The completeness doctrine does not, however, require the admission of portions of a statement that are neither explanatory of nor relevant to the admitted passages.") (citations omitted).

As the Tenth Circuit recently stated, the rule of completeness "does not given an interview declarant a general right to introduce selected statements to try to counter the statements in the proponent's offered segment." United States v. Williston, ---F.3d.---, 2017 WL 2856396, at *10 (10th Cir. July 5, 2017). For example, additional portions of a defendant's statement that provide "context only insofar as [they] represents [the defendant's] self-serving attempts to shoehorn after-the-fact justifications for his actions into his descriptions of his actions … [are] not the type of material envisioned by Rule 106." United States v. Lumiere, No. 16 CR 483 (JSR), 2017 WL 1391126, at *6 (S.D.N.Y. Apr. 18, 2017). Similarly, statements that "offer[] an alternative theory of the evidence" are not "necessary to clarify or explain" a defendant's statements about the charged crimes. United States v. Blake, 195 F. Supp. 3d 605, 610-11 (S.D.N.Y. 2016). Simply put, a defendant's self-serving, exculpatory statements are inadmissible hearsay, and he or she cannot use the rule of completeness as "a mechanism to

---

transcripts and because none of the defendant's proposed edits to the transcripts affect the issues addressed in this brief.

   [2] As discussed at the October 6, 2017 pretrial conference, the defendant did not publicly file his October 3 motion, and further requested that the government's opposition not be publicly filed until the Court has an opportunity to consider whether public filing is warranted prior to jury selection. Def. Ltr. at 1, n.1. The government has no objection to the public filing of this letter prior to jury selection. However, out of an abundance of caution, the government will not file this letter on the public docket until after jury selection is complete absent an order to the contrary from the Court.

bypass hearsay rules for any self-serving testimony." United States v. Gonzalez, 399 Fed. Appx. 641, 645 (2d Cir. 2010). A self-serving statement is any statement that "tends to reduce the charges or mitigate the punishment for which the declarant might be liable." Williamson v. United States, 512 U.S. 594, 618 (1994).

    B.    FRE 403

Federal Rule of Evidence 403 provides that: "The court may exclude relevant evidence if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." The Supreme Court has observed that "[t]he term 'unfair prejudice' . . . speaks to the capacity of some concededly relevant evidence to lure the factfinder into declaring guilt on a ground different from proof specific to the offense charged." Old Chief v. United States, 519 U.S. 172, 180 (1997). Evidence is unfairly prejudicial "only when it tends to have some adverse effect upon a defendant beyond tending to prove the fact or issue that justified its admission into evidence." United States v. Figueroa, 618 F.2d 934, 943 (2d Cir. 1980). "Because virtually all evidence is prejudicial to one party or another, to justify exclusion under Rule 403 the prejudice must be unfair." Costantino v. Herzog, 203 F.3d 164, 174 (2d Cir. 2000) (emphasis in original). "The prejudice resulting to defendants from the fact that introduction of" relevant evidence is "damaging to their case is, of course, not the kind of prejudice against which Fed. R. Evid. 403 protects defendants." See United States v. DeLillo, 620 F.2d 939, 947 n.2 (2d Cir. 1980).

II.    Argument

    A.    The Defendant's Attempts to Modify His Prior Statements and Introduce Additional Statements Are Contrary to Rule 106 and Should be Rejected

The government identified fourteen excerpts of the defendant's post-arrest statement that it may introduce during its case-in-chief. See Ex. B. The defendant contends that six of these excerpts require the inclusion of additional statements under Rule 106. The defendant also seeks to introduce three additional excerpts of his own statements.

As detailed above, FRE 106 has a very circumscribed purpose: to ensure that when the government seeks to introduce a portion of a defendant's statement, related statements that are "necessary to explain the admitted portion, to place the admitted portion in context, to avoid misleading the jury, or to ensure fair and impartial understanding of the admitted portion" are not omitted. Johnson, 507 F.3d at 796. However, the rule "does not render admissible evidence that is otherwise admissible," Terry, 702 F.2d at 314; cannot be used as a "mechanism to bypass hearsay rules" to admit a defendant's self-serving or exculpatory statement, Gonzalez, 399 Fed. Appx. at 645; and "does not [] require the admission of portions of a statement that are neither explanatory of nor relevant to the admitted passages," Jackson, 180 F.3d at 73.

The vast majority of the defendant's proposed modifications and additions seek to employ FRE 106 for exactly these improper purposes and should be rejected. The following is a statement-by-statement analysis of the defendant's proposals.[3]

1. <u>Excerpt 1</u>

Excerpt 1 is a separate set of statements that the defendant proposes should be admitted if any of the government's other excerpts are admitted. Excerpt 1 consists of two sets of statements from the defendant's post-arrest interview; the statements before and after the ellipses (noted in the chart as "….") are separated by approximately 23 minutes of additional conversation between the defendant and the agents, in which the agents and the defendant further discuss the arrest warrant mentioned in the first statement; the defendant provides information about himself, his family, his employment and his assets; and the defendant voluntarily signs an advice of rights form waiving his <u>Miranda</u> rights.[4] These two sets of statements—which are themselves incomplete excerpts from the post-arrest discussion—do not lead into, connect to, or address any of the specific questions and answers in any of the proposed excerpts that the government may offer and thus could not possibly serve to complete those excerpts pursuant to FRE 106. <u>Terry</u>, 702 F.2d at 314; <u>Johnson</u>, 507 F.3d at 796. The excerpt should therefore be precluded.

The defendant acknowledges as much, instead claiming that these statements are generally necessary to "explain why the FBI was interrogating" the defendant and "provide context to the entire interview and *all of Mr. Greebel's statements*." Def. Ltr. at 4 (emphasis added). The defendant further argues that Excerpt 1 is necessary so that the jury does not mistakenly think that the defendant's post-arrest interview took place before his arrest.

However, Excerpt 1 is plainly just an effort to introduce the defendant's self-serving statements for the truth of the matter asserted—that he did not know why he was arrested and that he was "a little surprised I'm here." This is clearly impermissible and Excerpt 1 should also be precluded on this basis. <u>Gonzalez</u>, 399 Fed. Appx. at 645 (a defendant cannot use FRE 106 to circumvent the hearsay rules and admit otherwise inadmissible self-serving statements). As for the defendant's purported concern that the jury may think that his post-arrest statements occurred prior to his arrest, such concern can easily be cured by testimony from the witness offering the post-arrest statements, or by a stipulation, to the undisputed fact that the defendant's post-arrest statements were, in fact, made after his arrest.

2. <u>Excerpt 2</u>

Excerpt 2 consists of the defendant's complete response to questions about how he first met his co-conspirator Martin Shkreli. The defendant seeks to modify Excerpt 2 by

---

[3] The excerpts referenced herein refer to Exhibit C to the defendant's October 3, 2017 letter, attached here as Exhibit D.

[4] The complete video of the defendant's post-arrest interview is attached hereto for the Court only as Exhibit E (the defendant previously received this video on December 22, 2015 as GREEBEL000001).

adding his unprompted and self-serving statements that he did not have an ability to verify information in filings and that he had "no knowledge of anything about [Shkreli's] fund." Ex. D at 4.  The statements the defendant seeks to admit are not "necessary to explain" the portion of the transcript that the government may seek to admit because the defendant's statements about meeting Shkreli are clear on their own.[5]  Jackson, 180 F.3d at 73.  As a result, the defendant's requested modification should be rejected.

        3.      Excerpt 3

The defendant did not object to or seek to modify Excerpt 3.

        4.      Excerpt 4

The defendant seeks to separately introduce Excerpt 4, which is almost two minutes long, as purported "context" for statements that the defendant made approximately ten minutes earlier in the interview about how he met Shkreli.  Excerpt 4 neither follows from nor continues any excerpt that the government may seek to introduce, nor does it serve to complete any such excerpt.  Instead, Excerpt 4 consists of the defendant talking generally about the patterns of "deal flow" work and recounting an unrelated conversation with Shkreli about life-saving drugs.  Ex. D. at 4-5.  The only connection between Excerpt 4 and the excerpts the government seeks to introduce is that both broadly relate to the defendant's relationship with Shkreli, which is insufficient to permit admission under Rule 106.  Terry, 702 F.2d at 314; Johnson, 507 F.3d at 796; see also discussion regarding Excerpt 15.  Indeed, under that standard, nearly every otherwise inadmissible statement by a defendant relating to a charged conspiracy would become admissible.  This excerpt should be rejected.

        5.      Excerpt 5

In Excerpt 5, the government seeks to introduce a short segment in which the defendant discusses Retrophin's status as a limited liability corporation ("LLC").  The defendant seeks to modify Excerpt 5 by adding a number of his statements describing his role (and more specifically, the terminology to describe his role) as Retrophin's lawyer.  The defendant contends that the government's proposed excerpt "excludes most of Mr. Greebel's explanation of his role." Def. Ltr. at 5.

        The defendant's argument is without merit.  In the excerpt the government may introduce, the agent asked the defendant if he helped change Retrophin into an LLC and the defendant responded "no."  Ex. D at 6.  There is nothing confusing about that response and no discussion of the defendant's role that would need clarification.  The defendant argues that the government's proposed excerpt "risks misleading the jury into assuming, as the FBI agent incorrectly did, that Mr. Greebel was 'general counsel' of Retrophin," (Def. Ltr. at 6-7), but the

---

[5] The defendant claims that the FBI agent was "apparently encouraging [the defendant's] further elaboration by saying "okay" and "mm-hmm" in response to the defendant's own statements that he now seeks to admit. Def. Ltr. at 4.  These are plainly not words of encouragement.  And if they were, it would be irrelevant to the Rule 106 analysis.

government's proposed excerpt includes no reference to or discussion of the defendant as "general counsel." Nor does the proposed addition make clear the defendant's role. The defendant's requested modification should be rejected in its entirety.

      6.     Excerpt 6

The defendant proposed changes to the transcript of Excerpt 6, but not to the context of the excerpt. As set forth above, the government submits that the parties should try to resolve any issues regarding the transcript without involving the Court.

      7.     Excerpt 7

Excerpt 7 consists of the defendant's statements about the process that led to the signing of the settlement agreements at issue in this case and the defendant's understanding of the individuals who obtained those agreements. The defendant seeks to modify this excerpt by adding his statements both before and after the excerpt the government may seek to introduce.

With respect to the beginning of the excerpt, the defendant seeks to add a dialogue in which he discusses Retrophin's private-investment-in-public-equity ("PIPE") transaction, including the defendant's self-serving statement that he "had no understanding" of how the money raised in the PIPE would be used. Ex. D at 9. The defendant argues that modification is needed to explain the discussion in the excerpt the government seeks to admit. But the only reference to the PIPE in the government's excerpt occurs when the agent asks if the individuals who received settlement agreements were "investors in the PIPE," and the defendant responds "no." Id. at 9. Moreover, the jury will already understand the reference to the PIPE based on other admissible evidence in this case, and the defendant's statements that he had no understanding of how the money raised in the PIPE does nothing to further the jury's understanding of the fact that it was defrauded MSMB Capital and MSMB Healthcare investors who received settlement agreements.

The excerpt the government seeks to admit ends with the agent asking the defendant if he knew whether the individuals who received settlement agreements were MSMB investors. Id. at 12. The defendant responded, "[n]ot at the time." Id. The defendant seeks to admit his additional statements about his subsequent knowledge of the individuals who received settlement agreements. But those statements are not necessary to clarify the defendant's statement that, at the time, he did not know that the individuals were MSMB investors. The defendant claims that "[t]o include the government's proposed excerpt without Mr. Greebel's clarification would mislead the jury to believe that Mr. Greebel told the FBI that he did not know at some point that the investors were both MSMB investors and investors in Retrophin." Def. Ltr. at 6. Not so. The defendant did not say that he did not know "at some point" that the individuals were MSMB investors; he said that he did not know "at the time." The defendant is adding confusion where none exists.[6]

---

    [6] The defendant misleadingly states that his proposed addition is necessary because the agent responded during the interview by saying "thank you for the clarification." Def. Ltr. at 7. But the defendant's "clarification" was not that he, at some time, learned that the individuals

6

8.  Excerpt 8

The government consents to the defendant's proposed addition to Excerpt 8.

9.  Excerpts 9-12

The defendant proposed changes to the transcript of Excerpt 9-12, but not to the context of the excerpts.

10. Excerpt 14

In Excerpt 14, the government identified a number of the defendant's post-arrest statements about the consulting agreements. The defendant seeks to add statements at the beginning and at the end of the government's excerpt. The government consents to the addition at the end of the excerpt ("Question: CFO would have to be approved. Answer: Exactly." (see Ex. D at 22)) but not to the one at the beginning.

At the beginning of the excerpt, the defendant seeks to add the agent's statement that his understanding is that the consulting agreement came "a little bit later" in the timeline than the settlement agreements, and the defendant's responds that that is "not true." Ex D. at 18-19. The defendant contends that this statement is necessary to "clarif[y] any <u>latent misunderstanding</u> about the relative timing of consulting agreements and settlement agreements." Def. Ltr. at 9 (emphasis added). The defendant identifies no "latent misunderstanding" that could possibly result from the government's proposed excerpt. Even if he could, Rule 106 addresses "completeness" of statements—not latent misunderstandings.

11. Excerpt 15

Excerpt 15 contains statements regarding certain consulting agreements that "stand out" to the defendant. Ex. D at 23. In the government's excerpt, the defendant discusses Shkreli's relationship with some of the individuals who received consulting agreements. Id. at 23-26. The defendant seeks to modify the government's excerpt by adding two lengthy excerpts regarding board discussions about consulting agreements in general; his own statements concerning board discussions about certain specific consulting agreements; and self-serving statements such as "the board clearly was aware, reviewing them, and approving them" and "we didn't need [board approval] for any of them." Id. at 26-30.

The defendant contends that his proposed additions provide "context" and are an "explanatory continuation of the government's proposed excerpt about consulting agreements and board approvals of the same, and thus logically should be included with it." Def. Ltr. at 11. The defendant is incorrect. The government's excerpt is neither confusing nor incomplete, and the defendant notably does not argue otherwise. That should end the analysis. Rule 106 does not allow for "explanatory continuation" of excerpts that are clear in and of themselves. In other words, Rule 106 addresses the completeness of statements, not of entire subjects. For example,

---

who entered into settlement agreements were MSMB investors, but rather that they were "also" MSBM investors. Ex. D at 11-12.

7

applying Rule 106, the Second Circuit has held that a defendant could not introduce a portion of his confession relating "to the execution of a robbery," where the portion introduced by the government concerned only "plans to execute the robbery." Johnson, 507 F.3d at 796 (emphasis in original). Statements about the execution of the robbery may have been an "explanatory continuation" of the plans to execute the robbery, but that did not make the statements admissible under Rule 106. The same analysis applies here.

12. Excerpt 17

In Excerpt 17, the defendant seeks to add his statement that he was "still confused why I'm here" as "helpful context for the entire interview" and relevant evidence "establishing Mr. Greebel's consciousness of innocence." Def. Ltr. at 12. As with Excerpts 1 and 4, the defendant's proposed excerpt neither leads in to nor follows from any of the government's excerpts. And the law does not recognize a "consciousness of innocence" exception to the hearsay rules. To the contrary, the rule of completeness is not "a mechanism to bypass hearsay rules for . . . self-serving testimony." Gonzalez, 399 Fed. Appx. at 645.[7]

B. The Defendant's Objections to the Admissibility of His Post-Arrest Statements Should Be Denied

The defendant argues that two of his post-arrest statements are inadmissible. For the reasons set forth below, the defendant is incorrect.

1. Excerpt 13

Excerpt 13 consists of the following exchange:

Agent: "Okay. And then, so—October 14th, you're kind of done. When—do you continue to talk to Martin sporadically because I know you guys had a relationship on different deals for different companies before. Or is he…"

Defendant: "Again, I represent companies, I don't represent. . ."

The defendant argues that this excerpt should be excluded because the agent's question is an "inadmissible statement"; the agent's question is "never actually answered; "the agent's statement is "inadmissible hearsay"; and the defendant's answer is "meaningless" and "will create confusion." Def. Ltr. at 8-9. The defendant's arguments are without merit.[8]

---

[7] The defendant also seeks to introduce the exchange that follows, in which the defendant stated, in sum and substance, that he did not have the kind of interactions with Shkreli in which Shkreli told him much. See Ex. D at 31. This statement is inadmissible for the same reasons, including that it "completes" nothing.

[8] The defendant cites Rule 801 and 802 in support of his claim that the agent's statement is hearsay. Def. Ltr. at 8. He cites no other rule in support of his motion to preclude this excerpt.

8

First, the defendant's contention that the agent's statement is not a "question" is belied by his own brief, in which he in fact identifies the agent's question in arguing that "<u>the agent's question</u>, 'do you continue to talk to Martin sporadically' is never actually answered.'" <u>Id.</u> at 8 (emphasis added).

Second, the fact that the defendant may not have directly answered the agent's question does not render the defendant's statement inadmissible (or even confusing, as the defendant argues).

Third, the government is not offering the agent's statement that "I know you guys had a relationship on different deals for different companies before" for its truth, but rather as part of the question that leads to the defendant's response. Moreover, it is plainly this part of the agent's question that the defendant responded to when he interrupted the agent and said that he "represent[s] companies." The agent's statement is therefore necessary context to explain the defendant's response.

Fourth, the defendant's argument that his statement is "meaningless" and "will create confusion among the jury as to its meaning" is incorrect. The defendant's statement in this excerpt was seven words: He said he represents companies, as opposed to representing something else. The defendant can argue the meaning of his statements to the jury, but those statements are admissible.[9]

2. <u>Excerpt 16</u>

Excerpt 16 consists of the defendant's statements in response to the question "Um, what about Marek Biestek?" The defendant responds that he "had nominal interactions with [Biestek]," and that "[h]e never really had any direct interaction with him." Ex. D at 30. The defendant moves to preclude the admission of this excerpt under Rules 401 and 403 on the theory that the agent's question and the defendant's responses are "ambiguous." Def. Ltr. at 11-12.

The defendant's objection should be summarily denied. Biestek was involved in the conduct charged in both Count Seven and Count Eight, and had sustained, repeated

---

The statement is not being offered for its truth but rather to put the <u>defendant's</u> statement in context—to make the excerpt complete.

[9] The defendant argues that, if Excerpt 13 is admitted, Rule 106 requires the admission of the preceding exchange, in which the agent asked: "So, did you and Martin have a personal relationship at all?" and the defendant responded "[n]o." Def. Ltr. at 9; Ex. D at 18. The defendant's contention that this addition is necessary to explain what the agent meant by "relationship" in Excerpt 13 is meritless. In the excerpt the government seeks to introduce, the agent specifically referred to the defendant and Shkreli's "*relationship on different deals for different companies*." Ex. D. at 18 (emphasis added). No "explanatory context" is necessary. Def. Ltr. at 9.

interactions with Greebel in connection with that conduct, including the backdating of stock transfers to create the interest in MSMB Capital and the allocation and re-allocation of the Fearnow shares (Biestek coordinated contacting most of the Fearnow share recipients on Greebel's behalf and served as a conduit for information about the shares both at the time that the shares were distributed and in later periods when the shares were moved around at Greebel's direction to benefit Shkreli). The defendant's statements about his interactions with a co-conspirator—including his denial of the existence of such interactions when the evidence clearly shows otherwise—are clearly relevant under Rule 401, and his statements specifically about Biestek are hardly confusing. Clearly, the defendant did not think the agent's question was ambiguous. He responded to the question when it was asked by describing his interactions with Biestek.

III.   Conclusion

For the reasons set forth above, and with the exception of the defendant's suggestions regarding additions to Excerpt 8 and one addition to Excerpt 14, the defendant's motion to add, modify, and preclude certain of his post-arrest statements should be denied in its entirety.

Respectfully submitted,

BRIDGET M. ROHDE
Acting United States Attorney

By:   /s/_____
Alixandra E. Smith
David C. Pitluck
David K. Kessler
Assistant U.S. Attorneys
(718) 254-7000

cc:   Counsel for defendant Evan Greebel (via email)