

U.S. Department of Justice

*United States Attorney*
*Eastern District of New York*

AES/DCP/DKK                             *271 Cadman Plaza East*
F.#2014R00501                              *Brooklyn, New York 11201*

October 28, 2017

By Hand and ECF

Honorable Kiyo A. Matsumoto
United States District Judge
Eastern District of New York
225 Cadman Plaza East
Brooklyn, NY 11201

        Re:   United States v. Evan Greebel
                 Criminal Docket No. 15-637 (KAM)

Dear Judge Matsumoto:

        On October 23, 2017, the government advised the Court that many of the Rule 17 subpoenas served by the defendant in connection with this trial were improper. See Trial Transcript ("Tr.") at 1327-45. The government further advised that, once it had received and had the opportunity to review all of the Rule 17 subpoenas served by the defendant, it would make an application seeking preclusion of certain materials and information produced in response to those subpoenas, and the Court stated that it would entertain such an application. Tr. at 1338. The government now submits such application.

        Instead of requesting relevant, admissible, and specific evidence—as is required by the plain language of the rule and by the prevailing caselaw—many of the defendant's Rule 17 subpoenas impermissibly sought voluminous discovery and impeachment materials. Among other things, the defendant subpoenaed Sprint and Verizon requesting years of phone records—including the content of text messages—for multiple government witnesses. The defendant also subpoenaed various entities in order to obtain personal information about certain government witness, including the criminal and educational history of one witness and unrelated FINRA applications for another. Such requests could not conceivably fall within the scope of Rule 17.

        For the reasons set forth below, the government makes this application to preclude the defendant from relying on materials or information that he obtained through the issuance of improper subpoenas. The defendant also should be precluded from cross-examining witnesses about whether they received or responded to the improper subpoenas he served.[1]

---

[1] This application addresses Rule 17 subpoenas served by the defendant through Friday, October 28, 2017, which were received by the government between October 19, 2017 and

I.  Background

On October 16, 2017, the Court ordered the defendant to provide the government with the returns from any Rule 17 subpoenas that he had served for documents over the previous seven months. Tr. at 15:4-7. The defendant subsequently provided returns for certain Rule 17 subpoenas, but not the subpoenas themselves. Id. at 1052-55. On October 19, 2017, the Court further ordered that the defendant provide to the government with copies of all Rule 17 subpoenas that had been served seeking documents. Id. at 1056-57. The defendant provided the government with additional returns on October 19, 2017 and October 20, 2017, and then, on October 23, 2017, following an additional Court order, provided the government with additional returns and all Rule 17 subpoenas served to date. Id. at 1328-29. The defendant subsequently provided the government with a new Rule 17 subpoena that it served on Retrophin on October 27, 2017.

In total, the defendant appears to have served thirty-five Rule 17 subpoenas between March 17, 2017 and October 27, 2017, and has provided the government with more than 15,000 pages of returns. Some of the subpoenas were returnable to the Court, while others were returnable directly to defense counsel. The basis for this distinction is not clear.[2]

---

October 28, 2017. The government will bring any additional improper Rule 17 subpoenas that are served after this date to the Court's attention as they are disclosed to the government.

[2] A number of the subpoenas that the defendant issued included the following notice to the requesting party, which the defendant appears to have disregarded:

> Before requesting and serving a subpoena pursuant to Fed. R. Crim. P. 17(c), the party seeking the subpoena is advised to consult the rules of practice of the court in which the criminal proceeding is pending to determine whether any local rules or orders establish requirements in connection with the issuance of such a subpoena. If no local rules or orders govern practice under Rule 17(c), counsel should ask the assigned judge whether the court regulates practices under Rule 17(c) to 1) require prior judicial approval for the issuance of the subpoena, either on notice or ex parte; 2) specify where the documents must be returned (e.g., to the court clerk, the chambers of the assigned judge, or counsel's office); and 3) require that counsel who receives produced documents provide them to opposing counsel absent a disclosure obligation under Fed. R. Crim. P. 16.

Ex. A. Because some of the defendant's Rule 17 subpoenas included witness' personal identifying information, the government has not publicly filed the attachments to this letter on the docket.

II.     Applicable Law

Rule 17(c) of the Federal Rules of Criminal Procedure governs the issuance of subpoenas for documents in federal criminal proceedings.  Under Rule 17(c)(1), "[a] subpoena may order the witness to produce any books, papers, documents, data, or other objects the subpoena designates.  The court may direct the witness to produce the designated items in court before trial or before they are to be offered in evidence.  When the items arrive, the court may permit the parties and their attorneys to inspect all or part of them."

In United States v. Nixon, the Supreme Court stated that the party requesting a Rule 17 subpoena must demonstrate that the materials sought are (1) relevant; (2) admissible; and (3) specific.  418 U.S. 683, 700 (1974) (stating that a Rule 17 subpoena is not intended to be a "general 'fishing expedition'").  The Supreme Court further emphasized two "fundamental characteristics" of Rule 17 subpoenas.  Id. at 698.  First, Rule 17 subpoenas are "not intended to prove a means of discovery in criminal cases."  Id.  Second, Rule 17 subpoenas are intended to "expedite the trial by providing a time and place before trial for the inspection of subpoenaed materials."  Id. at 698-99.  The Supreme Court further explained that "generally, the need for evidence to impeach witnesses is insufficient to require its production in advance of trial."  Id. at 701.

Applying the principles set forth in Nixon, courts have repeatedly emphasized the narrow purpose and scope of Rule 17 subpoenas.  See, e.g., United States v. Dupree, No. 10-CR-627 (KAM), 2011 WL 2006295 (E.D.N.Y. May 23, 2011) (stating that Rule 17(c) is not a means for discovery and quashing subpoena that sought documents "well outside the time frame of the counts with which [the defendant was] charged"); United States v. Weissman, No. 01-CR-529 (BSJ), 2002 WL 31875410, at *1 (S.D.N.Y. Dec. 26, 2002) ("[I]f the moving party cannot reasonably specify the information contained or believed to be contained in the documents sought but merely hopes that something useful will turn up, the requirement of specificity will not have been met.") (internal quotation marks omitted); United States v. Ashley, 162 F.R.D. 265, 266 (E.D.N.Y. 1995) ("[C]ourts must be careful that rule 17(c) is not turned into a broad discovery device, thereby undercutting the strict limitation of discovery in criminal cases found in [Rule 16.]") (quotation and citation omitted); United States v. Khan, No. 06-cr-255 (DLI), 2009 WL 152582, at 4 (E.D.N.Y. Jan. 20, 2009) ("Impeachment evidence fails the relevance requirement of Nixon."); United States v. Cherry, 876 F. Supp. 547, 553 (S.D.N.Y. 1995) ("[D]ocuments are not evidentiary for Rule 17(c) purposes if their use is limited to impeachment.").

As this Court has noted, regardless of whether a party has standing to quash a Rule 17 subpoena, courts have addressed objections to Rule 17 subpoenas "to ensure that the subpoenas satisfy the requirement of Rule 17(c)."  Dupree, 2011 WL 2006295, at *3.  See also, e.g., In re Irving, 600 F.2d 1027,1034 (2d Cir. 1979); United States v. Weisberg, No. 08-347 (NGG), 2011 WL 1327689, at *3-4 (E.D.N.Y. Apr. 5, 2011); United States v. Vasquez, 258 F.R.D. 68 (E.D.N.Y. 2009); Khan, 2009 WL 152582, at *2-3.

3

III.     Argument

As set forth below, the defendant repeatedly used Rule 17 subpoenas to impermissibly request impeachment material and discovery, and any evidence obtained from those subpoenas should be precluded.

         A.     Ten of the Defendant's Rule 17 Subpoenas Improperly Seek Impeachment Material

First, the defendant issued subpoenas to five witnesses seeking, for the period from June 1, 2017 through the present, the production of "all communications, including text message and email exchanges, relating to (a) Martin Shkreli, (b) Retrophin, Inc., (c), Evan Greebel, and/or (d) your views about the trial of United States v. Shkreli, 15-cr-637 (E.D.N.Y.) (KAM)." See Ex. B (emphasis added). These requests were plainly made for impeachment purposes and nothing else. Indeed, when these subpoenas were raised in Court on October 24, 2017, the defendant identified no other possible purpose. See Trial Tr. at 1136:10-18.[3] In addition, the requests are improper because they seek witness statements. See, e.g., Khan, 2009 WL 152582, at *4 (A "defendant cannot obtain witness statements . . . under Rule 17.").

Second, the defendant issued four subpoenas seeking information about the employment, education, and criminal history of government witness JS between 1992 and 2006. See Ex. C. Again, these subpoenas seek solely impeachment material. The defendant's contention that he issued these subpoenas in order to obtain background information in the event he calls JS as a witness rings hollow. See Trial Tr. at 1329:6-1331:8. Rule 17 contains no provision for the subpoena of background information, and certainly not the subpoena of a government witness' criminal history records, college transcript and entire "personnel file" from prior employers. Under the defendant's theory, as long as a government witness is also on the defense witness list, Rule 17 would permit the subpoena of impeachment material under the guise of background information. But there is no such exception in the Rule and, indeed, accepting the defendant's proposed exception would gut the purpose of Rule 17 and run contrary to the case law governing the proper application of Rule 17. See United States v. Rich, No. 83-CR-579 (SWK),1982 WL 845, at *4 (S.D.N.Y. Sept. 7, 1984) ("Rule 17(c) requires a showing that the materials sought are currently admissible in evidence; it cannot be used as a device to gain understanding or explanation."). The defendant should be precluded from using or relying upon the information he obtained when cross-examining JS.

Third, the defendant subpoenaed the Financial Industry Regulatory Authority ("FINRA") for "all documents relating to any securities license or regulatory application, including but not limited to the applications themselves, all sworn documents relating to those applications, and any Form U-4 relating to such applications" submitted by government witness

---

[3] The defendant has provided the government with four subpoenas requesting this information. However, the government is in possession of a fifth such subpoena, which is directed to witness JS and which the government raised with the Court on October 19, 2017. Tr. at 1052:15-22. It does not appear that the defendant produced this subpoena to the government.

4

TP. Ex. D.  The defendant's request for a government witness's sworn statements about issues having nothing to do with this case was, again, solely for impeachment purposes.  The defendant should not be permitted to rely on them during cross-examination.[4]

      B    The Defendant's Rule 17 Subpoenas Improperly Seek Discovery

    First, the defendant subpoenaed Verizon and Sprint for, among other things, nearly four years of call records, billing records, and the content of text messages for phone numbers associated with Shkreli and two government witnesses.  Ex. E.  The scope the requested information demonstrate that these records are merely a prohibited "fishing expedition."  Moreover, it is difficult to fathom how the defendant's request for the content of all of a witness' personal text messages could be permissible under Rule 17.  The government assumes that neither Verizon nor Sprint responded to these plainly improper subpoenas, as the defendant has not provided any returns, but in the event that they do, use of any returns should be precluded as they were obtained in violation of Rule 17.

    Second, the defendant subpoenaed Peerless Network of New York LLC for phone and billing records reflecting any phone calls made to or from a phone number associated with Retrophin for nearly four years.  Ex. F.  As with the Verizon and Sprint subpoenas, the Peerless subpoena broadly seeks discovery materials and fails the Nixon relevance, admissibility and specificity requirements.[5]

    Third, as set forth in the table below, the defendant issued numerous subpoenas requesting broad categories of documents over multi-year time periods.  These subpoenas—most of which seek all correspondence between various parties without any subject matter

---

[4] In addition, the defendant provided the government with two subpoenas that it served on Retrophin, Inc. on Friday, October 27, 2017 and Saturday, October 28, 2017, while government witness SR was on cross-examination.  These subpoenas are returnable on October 30, 2017 at 9:00 a.m.—prior to when witness SR retakes the stand.  They seek the following documents: "Emails, including any attachments, sent or copied to any member of Retrophin, Inc.'s ("Retrophin") [B]oard of [D]irectors between October 25, 2013 and November 15, 2013 that attach partial or full drafts or the final version of Retrophin's Form S-1 (which was filed with the SEC on or about November 15, 2013)"; "Marc Panoff's July 2, 2013 email to Martin Shkreli, Steven Aselage, Steven Richardson and Evan Greebel, with all attachments"; and "Ken Banta's September 16, 2013 email to Evan Greebel, copying Marc Panoff."  Given that the defendant had previously subpoenaed witness SR directly for at least some of these communications (for example, his June 26, 2017 subpoena sought "Any document reflecting Your receipt of a draft or final version of Retrophin's S-1 from in or about November 2013" and "all communications between [Richardson] and any employees and/or board members of Retrophin") and had previously served two other subpoenas for documents on Retrophin (in subpoenas dated July 21, 2017 and October 13, 2017), the timing of this subpoena suggests that the defendant waited to make these requests until the witness was on cross-examination.

[5] The defendant has not provided the government with any returns from Peerless, and so it appears that Peerless, like Verizon and Sprint, did not respond.

limitations—are precisely the kind of "fishing expeditions" that are not permitted under Rule 17. See, e.g., United States v. Robinson, No. 16-cr-545 (ADS) 2017 WL 1331274, at *4 (E.D.N.Y. Apr. 10, 2017) (stating that "blanket 'any and all' subpoenas . . . are quashed by courts."); Mendinueta-Ibarro, 956 F.Supp.2d at 513 ("Subpoenas seeking 'any and all' materials, without mention of 'specific admissible evidence,' justify the inference that the defense is engaging in the type of 'fishing expedition' prohibited by Nixon."); Cherry, 876 F. Supp. at 552-53 ("In this respect, Rule 17(c) can be contrasted with the civil rules which permit the issuance of subpoenas to seek production of documents or other materials which, although not themselves admissible, could lead to admissible evidence."). The defendant clearly cannot meet his burden of showing that all of these categories of documents he subpoenaed (and the thousands of pages he has now received) are relevant, admissible, and specific, as required by Nixon.[6]

| Subpoena Date[7] | Subpoena Recipient(s) | Date Range for Requested Documents | Requested Documents |
|---|---|---|---|
| March 17, 2017 | Andrew Vaino; Ed Sullivan; Marek Biestek; Ron Tilles; Tom Fernandez | November 1, 2012 – September 30, 2014 | "Correspondence and email communications with individuals employed by or otherwise associated with Retrophin." |
| March 17, 2017 | Innisfree | August 1, 2011– March 31, 2013 | "Correspondence and email communications between Innisfree and Martin Shkreli"; "Correspondence and email communications between Innisfree and the MSMB Entities or Ironman." |
| March 17, 2017 | Fensterstock & Partners LLP | February 1, 2011– January 1, 2014 | "Correspondence and email communications between Fensterstock and Katten Muchin Rosenman LLP about the MSMB Entities and/or Martin Shkreli." |
| March 17, 2017 | Troy Fearnow; Michael Fearnow | October 1, 2012 – September 30, 2014 | "Correspondence and email communications about the reverse merger between Desert Gateway, Inc. and Retrophin, Inc." |

---

[6] The table below includes only a selection of the overly broad requests in the subpoenas referenced therein. Copies of the subpoenas referenced in the table are attached at Exhibit G.

[7] The "Subpoena Date" column refers to the date the subpoena was signed by the Clerk of Court. The government does not know exactly when each subpoena was served.

6

| Subpoena Date[7] | Subpoena Recipient(s) | Date Range for Requested Documents | Requested Documents |
|---|---|---|---|
| March 17, 2017 | Paul, Weiss, Rifkind, Wharton, & Garrison | June 1, 2011–August 1, 2013 | "Correspondence and email communications between Paul Weiss and Martin Shkreli or Marek Biestek regarding In re: MSMB Capital Management LLC Valuation (NY-8799) or In re: MSMB Capital Management (NY-8613)." |
| March 17, 2017 | Interactive Brokers | August 1, 2011–August 31, 2013 | "Records relating to MSMB Capital Management LLC, MSMB Capital Management LP, MSMB Healthcare LLC and MSMB Healthcare LP (the 'MSMB Entities'), Martin Shkreli, or Marek Biestek." |
| March 17, 2017 | Steve Rosenfeld and Park Avenue Discoveries, LLC | No date range | "Any and all documents and materials relating to the arbitration Park Avenue Discoveries, LLC and Dr. Steven Rosenfeld v. Retrophin, Inc." |
| March 17, 2017 | McCormick & O'Brien, LLP | February 1, 2011 – January 1, 2014 | "Correspondence and email communications between McCormick and the Financial Industry Regulatory Authority relating to the MSMB Entities and/or Martin Shkreli." |
| March 17, 2017 | Anslow & Jaclin, LLP | October 1, 2012 – September 30, 2013 | "Non-privileged correspondence and email communications about the transfer or holding of shares in Desert Gateway, Inc. and/or Retrophin, Inc." |
| March 17, 2017 | Edwards Wildman & Palmer | January 1, 2011–April 30, 2013 | "Non-privileged correspondence and email communications between the [subpoena recipient] and investors in the MSMB Entities, Retrophin, LLC and/or Retrophin, Inc." |
| March 17, 2017 | E*Trade Financial Corporation | November 1, 2012 – September 30, 2014 | "[R]ecords relating to E-Trade accounts in the name of Martin Shkreli." |

7

| Subpoena Date[7] | Subpoena Recipient(s) | Date Range for Requested Documents | Requested Documents |
|---|---|---|---|
| March 17, 2017 | Scottrade Financial Services, Inc. | December 1, 2012 – September 30, 2014 | Records relating to nine individuals. |
| March 17, 2017 | Kleinberg Kaplan Wolff & Cohen | February 1, 2011 – January 1, 2014 | "Correspondence and email communications with the MSMB Entities." |
| June 26, 2017 | Gusrae Kaplan Nusbaum PLLC | February 1, 2011 – September 30, 2012 | "Correspondence and email communications between Gusrae Kaplan and Merrill Lynch, Pierce Fenner & Smith, Inc. relating to the MSMB Entities and/or Martin Shkreli." |
| July 21, 2017 | Steven Aselage; Neal Golding; Steven Richardson | Varying | "In connection with Your role as a member of the Retrophin Board of Directors from September 1, 2013 through October 1, 2014, produce (i) all communications between You and any employees and/or board members of Retrophin and (ii) all notes taken by You." |

III.   Conclusion

For the reasons set forth above, the defendant should be precluded from relying on materials or information he obtained through the issuance of improper Rule 17 subpoenas. The defendant also should be precluded from cross-examining witnesses about whether they received or responded to the improper subpoenas he served.

Respectfully submitted,

BRIDGET M. ROHDE
Acting United States Attorney

By:   /s/
Alixandra E. Smith
David C. Pitluck
David K. Kessler
Assistant U.S. Attorneys
(718) 254-7000