

U.S. Department of Justice

*United States Attorney*
*Eastern District of New York*

| | |
|---|---|
| AES/DCP/DKK<br>F.#2014R00501 | *271 Cadman Plaza East*<br>*Brooklyn, New York 11201* |

November 2, 2017

<u>By Hand and ECF</u>

Honorable Kiyo A. Matsumoto
United States District Judge
Eastern District of New York
225 Cadman Plaza East
Brooklyn, NY 11201

    Re: United States v. Evan Greebel
      <u>Criminal Docket No. 15-637 (KAM)</u>

Dear Judge Matsumoto:

  The government respectfully submits this letter in response to the Court's request that the parties address case law regarding the admissibility of emails as business records under Federal Rule of Evidence 803(6). As set forth below, the case law is clear that emails are not business records simply because they were sent in a business context and that each purported "business record" must meet the rigorous standards of that rule. In an abundance of caution, the government also addresses the admissibility of certain documents that may have been challenged today as "hearsay."

 I. <u>Rule 803(6)</u>

  Rule 803(6) provides that "a record of an act, event, condition, opinion, or diagnosis" is not excluded by the rule against hearsay if:

> (A) the record was made at or near the time by--or from information transmitted by--someone with knowledge;
>
> (B) the record was kept in the course of a regularly conducted activity of a business, organization, occupation, or calling, whether or not for profit;
>
> (C) making the record was a regular practice of that activity;
>
> (D) all these conditions are shown by the testimony of the custodian or another qualified witness, or by a certification that complies with Rule 902(11) or (12) or with a statute permitting certification; and

> (E) the opponent does not show that the source of information or the method or circumstances of preparation indicate a lack of trustworthiness.

See, e.g., United States v. Freidin, 849 F.2d 716, 719-20 (2d Cir. 1988) ("[A]dmissibility under Rule 803(6) requires both that a memorandum have been 'kept in the course of a regularly conducted business activity' and also that it was the 'regular practice of that business activity to make the memorandum . . . .'"). "The principal precondition to admission of documents as business records pursuant to Fed. R. Evid. 803(6) is that the records have sufficient indicia of trustworthiness to be considered reliable." Saks International, Inc. v. M/V Export Champion, 817 F.2d 1011, 1013 (2d Cir. 1987)

The justification for the business records' exception to the prohibition against hearsay is that business records have the "'earmarks of reliability' or 'probability of trustworthiness.'" Cent. R. of N.J. v. Sottnek Co., 258 F.2d 85, 88 (2d Cir. 1958) (quoting Palmer v. Hoffman, 318 U.S. 109 (1943)).[1] In other words, a "business record" is the kind of record a court can rely on as "true" because the business creating the record relies on the record as "true."

II.      Emails Sent In the Course of Business Are Not Necessarily Business Records

Applying the plain language of Rule 803(6), numerous courts have held that an email sent in the course of business is not necessarily a business record. See, e.g., Queen v. Schultz, 671 F. App'x 812, 815 (D.C. Cir. 2016) (affirming exclusion of approximately 1,200 emails sent in business context because the emails "lacked the requisite 'indicia of trustworthiness' to be admitted under the hearsay exception for business records."); United States v. Cone, 714 F.3d 197, 220 (4th Cir. 2013) ("[I]t would be insufficient to survive a hearsay challenge simply to say that since a business keeps and receives e-mails, then ergo all those e-mails are business records falling within the ambit of Rule 803(6)(B)."); Morisseau v. DLA Piper, 532 F.Supp.2d 595, 621 n. 163 (S.D.N.Y. 2008) ("An e-mail created within a business entity does not, for that reason alone, satisfy the business records exception of the hearsay rule."); Carotek, Inc. v. Kobayashi Ventures, LLC, 875 F.Supp.2d 313, 346 (S.D.N.Y. 2012) (holding that emails in the business context are not business records under Rule 803(6)); In re Lyondell Chem. Co., No. 09-10023 (MG), 2016 WL 6108526, at *4 (S.D.N.Y. Bankr. Oct.

---

[1] See also United States v. Baker, 693 F.2d 183, 188 (D.C. Cir. 1982) ("The justification for [the business records] exception is that business records have a high degree of accuracy because the nation's business demands it, because the records are customarily checked for correctness, and because recordkeepers are trained in habits of precision.") (quoting McCormick, *Evidence* § 306, at 720 (2d ed. 1972)); United States v. Snyder, 787 F.2d. 1429, 1433-34 (10th Cir. 1986) ("The business records exception is based on a presumption of accuracy, accorded because the information is part of a regularly conducted activity, kept by those trained in the habits of precision, and customarily checked for correctness, and because of the accuracy demanded in the conduct of the nation's business.").

2

19, 2016) ("An email does not become a business record by virtue of merely discussing the entity's business.").[2]

We are aware of no case holding that emails sent in connection with someone's employment are <u>per se</u> business records and no case holding that emails maintained or stored by a business are <u>per se</u> business records. That is not surprising. For a number of reasons, the case law holding that an e-mail sent in the course of business is not necessarily a business record is consistent with both the language and purpose of Rule 803(6), as discussed by the Second Circuit above.

<u>First</u>, the plain language of Rule 803(6) sets forth numerous requirements that the proponent of an exhibit must establish before a document can be admitted as a business record. A party could not conceivably establish each of those requirements simply by showing that an email was sent in a business context. For example, the fact that an email was sent in the business context has no bearing on whether the email was "made at or near the time by – or from information transmitted by – someone with knowledge." Rule 803(6). Rather, courts apply "a similar approach" to emails that they apply to any other purported business record. <u>Penberg v. HealthBridge Management</u>, 823 F.Supp.2d 166, 187 (E.D.N.Y. 2011); <u>see</u> <u>also</u> <u>United States v. Stein</u>, 2007 WL 3009650, at *1 (S.D.N.Y. Oct. 15, 2007) ( concluding that "it is impossible to determine in the abstract which [business emails] defendants have in mind satisfy the Rule and which do not.").

<u>Second</u>, Rule 803(6) is titled "Records of a Regularly Conducted Activity" and specifically provides an exception to the hearsay rule only for records of an "act, event, condition, opinion, or diagnosis." But emails are sent in the business context for any number of purposes, many of which are not to record a specific act or event. <u>Cf.</u> <u>In re Lyondell Chem. Co.</u>, 2016 WL 6108526, at *4 ("Importantly, Rule 803(6) requires both that the activity recorded in the email be a regularly conducted business activity <u>and</u> that sending the email be a regular part of that activity.") (emphasis in original). In short, an email does not become a "record of a regularly conducted activity" just by virtue of being sent. <u>See</u> <u>also</u> <u>New World Trading Co. Ltd. v. 2 Feet Productions, Inc.</u>, No. 13-Civ-1251 (SAS) 2014 WL 988475, at *1 (S.D.N.Y. Mar. 13, 2014) ("An email could conceivably qualify as a business record if, for example, it confirms a sale. But most of the emails here contain unique and sporadic communications, not created as a record of any 'regularly conducted business activity.'").[3]

---

[2] <u>See</u> <u>also</u> <u>Roberts Technology Group, Inc. v. Curwood, Inc.</u>, Civ. No. 14-5677, 2016 WL 2889166, at *2 (E.D. Pa. May 17, 2016) ("Given its ubiquity, e-mail business negotiations can be fairly compared to phone discussions between businesspersons in an earlier era except we can retain the written communications in emails. Just because a third party writes an email, however, does not except the email from the hearsay rule.")

[3] For that reason, it is also insufficient foundation to simply elicit that a custodian regularly sends emails about a specific topic or engagement as part of his regularly conducted business activity. As set forth above, the email must document a specific business activity, like a sale, and not a sporadic communication. Many of the emails referenced in the defendant's

3

<u>Third</u>, the justification for the business records exception is that certain records are presumptively accurate and trustworthy. But both the case law and common sense dictate that the mere fact that an email was sent does not make it presumptively reliable for its truth. Numerous business emails are, for example, "drafted in response to unusual or 'isolated' events" – factors which counsel against the admission of memoranda as business records. <u>United States v. Strother</u>, 49 F.3d 869, 876 (2d Cir. 1995). Accordingly, the notion that every email an employee sends in the course of his or her employment is a business record would gut the purpose of the business records exception and completely upend the rationale underlying the exception.

III. <u>The Emails the Government Offered into Evidence Today Were Admissible Under the Rules of Evidence</u>

The defendant did not object to the relevance of any document offered during Mr. Massella's testimony. Instead, beginning with GX 113-5 in the middle of the direct examination, the defendant appears to have objected to a handful of exhibits as "hearsay" and suggested the only valid basis for admitting such documents would be that they were business records pursuant to FRE 803(6). Although the government offers none of the disputed exhibits as a business record, each document is admissible notwithstanding the "hearsay" objection.[4]

**GX 113-5** is a December 3, 2012, email from Mr. Massella to Mr. Su sent after Mr. Massella and Ms. Chew received additional share transfers. The email is relevant for the non-hearsay purpose of explaining why Mr. Massella continued to inquire about the nature of the share transfers, as well as to provide the context of the efforts Mr. Massella and Ms. Chew undertook to prepare Retrophin's books and records in advance of the reverse merger. <u>See, e.g.</u>, <u>Ryan v. Miller</u>, 303 F.3d 231, 252–53 (2d Cir. 2002) ("Testimony containing hearsay may be admissible not for its truth but as background information if (1) "the non-hearsay purpose by which the evidence is sought to be justified is relevant," and (2) "the probative value of this evidence for its non-hearsay purpose is [not] outweighed by the danger of unfair prejudice resulting from the impermissible hearsay use of the declarant's statement."). The Second Circuit also particular has recognized that statements such as the ones in GX 113-5, which are "helpful in clarifying noncontroversial matter[s] without causing unfair prejudice on significant disputed matters," are admissible. <u>Id.</u>

**GX 111-27** is a December 3, 2012, email from Ms. Chew to Mr. Su and Mr. Massella. The purportedly "hearsay" statements consist entirely of questions from Ms. Chew and therefore are plainly not being offered for their "truth." <u>See</u> <u>United States v. Oguns</u>, 921 F.2d 442, 449 (2d Cir. 1990) ("An inquiry is not an 'assertion,' and accordingly is not and cannot be a hearsay statement." (quotation marks omitted)). The email is relevant to help explain why

---

objections consist of a question, a comment or a request. Those are plainly not documenting a business activity.

[4] The government sets forth here some bases pursuant to which these exhibits are admissible, not all of the bases.

4

Retrophin's accountants continued to investigate these last-minute share transfers. Similarly, **GX 113-6**, an email the defendant received, is not being offered for its truth but to illustrate the defendant's involvement in the efforts to finalize Retrophin's finances in advance of the reverse merger.

**GX 113-7** is not offered for the "truth" that other MSMB entities would, in fact, "pay what they owe Retrophin." See FRE 801(c).

**GX 113-10** is a statement by the defendant. See FRE 801(d)(2).

**GX 113-17** is a statement by the defendant's co-conspirator offered to show the effect on the defendant, including to show his knowledge of transactions that sent hundreds of thousands of dollars to Mr. Shkreli and the MSMB funds during the time that defrauded hedge fund investors were seeking redemptions from the funds.

**GX 113-12** and **GX 113-18** were offered to show the effect on the defendant, specifically to show the defendant's knowledge of Mr. Shkreli's compensation and, therefore, of his ability to pay defrauded hedge fund investors.

**GX 113-15** is a statement by the defendant. See FRE 801(d)(2).

Should the defendant object to a specific exhibit in a future examination on the grounds that its admission would violate the general prohibition against hearsay, the government will, as it has done throughout the trial, provide the bases for admission of the exhibit.

> Respectfully submitted,
>
> BRIDGET M. ROHDE
> Acting United States Attorney
>
> By:   /s/_____
>        Alixandra E. Smith
>        David C. Pitluck
>        David K. Kessler
>        Assistant U.S. Attorneys
>        (718) 254-7000