# GIBSON DUNN

Gibson, Dunn & Crutcher LLP

200 Park Avenue
New York, NY 10166-0193
Tel 212.351.4000
www.gibsondunn.com

Randy M. Mastro
Direct: +1 212.351.3825
Fax: +1 212.351.5219
RMastro@gibsondunn.com

November 2, 2017

<u>VIA ECF</u>

The Honorable Kiyo A. Matsumoto
United States District Judge
United States District Court for the Eastern District of New York
225 Cadman Plaza East
Brooklyn, NY 11201

Re:    <u>United States v. Greebel</u>, S1 15 Cr. 637 (KAM)

Dear Judge Matsumoto:

    Pursuant to Your Honor's order this afternoon, we write in support of our application to admit email communications made in the ordinary course of Retrophin's business, including Government Exhibits 113-5, 111-26, and 111-27, for the truth of the matters asserted therein.[1]  Although the government insists that these documents are admissible solely as "background" under Federal Rule of Evidence Rule 106 and/or as evidence of Mr. Massella's then-existing state of mind, these documents constitute business records pursuant to Rule 803(6), and as such, should be admitted for their truth on that basis alone.

    As Your Honor well knows, "[a] record of an act, event, condition, opinion or diagnosis" is admissible if "the record was made at or near the time by—or from information transmitted by—someone with knowledge," "the record was kept in the course of a regularly conducted activity of a business, organization, occupation, or calling, whether or not for profit;" "making the record was a regular practice of that activity;" "all these conditions are shown by the testimony of the custodian or another qualified witness, or by a certification that complies with Rule 902(11) or (12) or with a statute permitting certification," and "neither the source of information nor the method or circumstances of preparation indicate a

---

[1] After the conclusion of the trial day, Mr. Dubin met and conferred with the government about this dispute. We have agreed to continue to "meet and confer" about other specific e-mail communications where the application of Rule 803(6) may be in dispute.  We believe, however, that email communications made in the regular conduct of Retrophin's business and between and among Retrophin employees and those of certain outside service providers, including Katten Muchin Rosenman LLP, Citrin Cooperman, and Marcum LLP, qualify as business records under Rule 803(6) admissible for the truth of the matters asserted therein.  And we believe the Court's guidance on these three exhibits will help facilitate the parties' understanding going forward.

Beijing • Brussels • Century City • Dallas • Denver • Dubai • Frankfurt • Hong Kong • Houston • London • Los Angeles • Munich
New York • Orange County • Palo Alto • Paris • San Francisco • São Paulo • Singapore • Washington, D.C.

**GIBSON DUNN**

The Honorable Kiyo A. Matsumoto
November 2, 2017
Page 2

lack of trustworthiness." Each of these factors is satisfied by the exhibits in question, as well as other emails we anticipate offering to cross-examine the government's witnesses.

As an initial matter, courts within the Second Circuit do not favor formalistic or stringent interpretations of Rule 803(6), especially where e-mails are concerned. For example, in *United States v. Stein*, the defendant moved *in limine* for an order compelling the government to "'show[] that the e-mails at issue were created pursuant to established company procedures for the systematic or routine making of company records'" before admitting an e-mail under Rule 803(6). No. S1 05 Crim. 0888 (LAK), 2007 WL 3009650, at *1 (S.D.N.Y. Oct. 15, 2007) (citations omitted). In denying the defendant's motion, Judge Kaplan held that "[s]uch a specific showing is not required, as regularity of making such records and of the business activity is all that is required. . . . The phrase 'business duty' is used interchangeably with phrases such as '[being] part of a business routine' or '[acting] in the regular course' to describe the requirement that the declarant be someone inside the business, not a third party." *Id*. (citations omitted).

Here, each of the exhibits at issue is an e-mail concerning the preparation and revision of capitalization tables in connection with Retrophin's reverse merger into Desert Gateway on or about December 12, 2012. It is through that merger that Retrophin first became a public company and was obligated to file certain public disclosures with the Securities & Exchange Commission. The exchange of the share transfer and ownership information discussed in the exhibits at issue were relied upon in the updating and finalizing of the company's capitalization tables. They also were critical to Retrophin and Citrin Cooperman's contemporaneous work to complete the transaction and to satisfy Retrophin's reporting obligations. *See In re Lyondell Chem. Co.*, Case No. 09-10023 (GCM), 2016 WL 6108526, at *3-4 (Bankr. S.D.N.Y. Oct. 19, 2016). It is therefore beyond question that these email communications were "part of a regular business practice." Fed. R. Evid. 803(6). Because the involved Retrophin and Citrin Cooperman employees made and maintained emails as part of their job responsibilities, and sent and received those emails routinely, Government Exhibits 113-5, 111-26, and 111-27 easily qualify as business records admissible under Rule 803(6).

Furthermore, it is irrelevant to that analysis that these emails are not solely between and among employees of Retrophin. Rather, the communications contained in Government Exhibits 113-5, 111-26, and 111-27 were "in furtherance of the needs" of Retrophin and Citrin Cooperman, as its financial advisor, and not for the personal purposes of any of the participants themselves. *Penberg v. HealthBridge Mgmt.,* 823 F. Supp. 2d 166, 187 (E.D.N.Y. 2011). The government has not identified and we are unaware of any Second Circuit authority standing for the proposition that communications between company

**GIBSON DUNN**

The Honorable Kiyo A. Matsumoto
November 2, 2017
Page 3

employees and outside service providers retained by that company, such as lawyers, accountants, or auditors, do not qualify as business records pursuant to Rule 803(6).

Finally, the government's current position stands in marked contrast to their treatment of the same exhibits at Mr. Shkreli's trial. Specifically, Government Exhibit 113-5 (which was marked at the Shkreli trial as Government Exhibit 123-4) was offered into evidence by the government during its direct examination of Mr. Massella, *see* Shkreli Trial Tr. at 3920:15-3921:22, and the government likewise questioned Mr. Massella about Government Exhibits 111-26 and 111-27 (which were marked at the Shkreli trial as Government Exhibits 119-25 and 119-26), which had already been admitted during the testimony of Jackson Su. *Id*. at 3916:17-3920:13; 3921:23-3922:18. At no time did the government question the authenticity or reliability of these exhibits during Mr. Shkreli's trial or seek to admit them for the limited purposes proferred by the government now.

Moreover, notwithstanding their insistence that at this trial, these exhibits cannot be offered for the truth of the matters asserted, the government used them precisely for that purpose in examining Mr. Massella at that trial. For example, with respect to Government Exhibit 113-5, the government asked Mr. Massella why, in response to receiving Government Exhibit 111-26, which attaches several share transfer agreements, he stated, "Every time we receive these it changes everything we created already. Are these the final transfers?" Shkreli Trial Tr. at 3921:13-17. Mr. Massella testified, "Because if – every time they changed the cap table we have to redo the financial statements and all the supporting documents, and it has a ripple effect." *Id*. at 3921:18-20; *see also id*. at 3921:21-22 ("Q: And was this close to the time of the reverse merger? Very much so.") At no point did the government indicate that they doubted the veracity of Mr. Massella's response, or clarify that they did not want the jury to consider the circumstances and timing surrounding his e-mailed statements for their truth.

For all the reasons identified above, we respectfully submit that the Court should receive Government Exhibits 113-5, 111-26, and 111-27 in evidence under Rule 803(6) and for the truth of the matters asserted therein.

We appreciate Your Honor's consideration of this important evidentiary question, which is pivotal to Mr. Greebel's opportunity to fully and fairly present his defense.

Respectfully,

 *s/ Randy M. Mastro*
Randy Mastro