

U.S. Department of Justice

*United States Attorney*
*Eastern District of New York*

AES/DCP/DKK  
F.#2014R00501

*271 Cadman Plaza East*
*Brooklyn, New York 11201*

November 4, 2017

By Hand and ECF  
Honorable Kiyo A. Matsumoto  
United States District Judge  
Eastern District of New York  
225 Cadman Plaza East  
Brooklyn, NY 11201

      Re:   United States v. Evan Greebel  
            Criminal Docket No. 15-637 (KAM)

Dear Judge Matsumoto:

      The government respectfully submits this letter in response to the defendant's motion to be allowed to "ask settling investor witnesses whether they are aware of the government's contention that the settlement agreements are fraudulent and whether they returned any settlement payments to Retrophin." (Dkt. No. 436 ("Mot.") at 8.)  For the following reasons, the motion should be denied.[1]  In addition, if the defendant is allowed to argue that he lacked

---

[1] The defendant addressed this "benefit of the bargain" theory in his Motion to Dismiss Count Seven, which motion was styled in the alternative as a motion in limine.  Dkt. No. 329 at 3, 23-26.  That motion did not raise the instant issue, and the defendant did not even reply to the arguments in the government's opposition related to the "benefit of the bargain."  (See Dkt. No. 345 at 21-23).  Notably, although the defendant chose to argue that Retrophin received the benefit of the bargain, his motion did not claim that evidence related to whether Retrophin's investors believed they received the benefit of the bargain was relevant.  Moreover, although defense counsel in the Shkreli trial argued that investors profited from their investments, that argument was raised to show that Shkreli had acted in good faith and, as a result, lacked an intent to defraud the investors as charged in Counts One through Six, in which the investors were the victims.  The argument was not offered to show Shkreli lacked intent to defraud Retrophin as charged in Count Seven, in which Retrophin was the victim.  See, e.g., Shkreli Trial Tr. at 5326 ("[i]f you're stalling [on repaying investors] because you're building a company so you can repay them, that's not evidence of a fraud"); 5340-41 ("[An MSMB Capital investor] said: I put in $500,000 in my wife's name and I got back $1,570,000. Why did he get back $1,570,000? He didn't threaten to sue anybody. Because Martin felt he should be getting his money back in multiples because of the aggravation he put him through. Martin Shkreli didn't have to do that. If you're committing a fraud, you don't care about your victims. . . ."); 5344-45 ("you give me

intent to defraud because Retrophin received the "benefit of the bargain" based on otherwise admissible evidence, then the government must be allowed to introduce evidence that Retrophin did not, in fact, receive such a benefit.

First, the government is not proceeding under a "right to control" theory of wire fraud. See Dkt. No. 412 at 6, n.4; Dkt. No. 345 at 23-25. Rather, the Superseding Indictment ("Indictment") clearly alleges that the defendant "engaged in a scheme to defraud Retrophin by misappropriating Retrophin's assets through material misrepresentations in an effort to satisfy Shkreli's person and unrelated debts." Indictment ¶ 21 (emphasis added). Thus, just as this Court held in denying the defendant's motion to dismiss Count Seven based on a "right to control" theory, the defendant's "reliance on caselaw regarding the 'right to control' and 'benefit of the bargain' is misplaced." Dkt. No. 402 at 14 (emphasis added).

The defendant's contention that the "benefit of the bargain" applies in every wire fraud case is based on his claim that language in the superseding indictment in this case "closely resembles" the indictment in United States v. Novak, 443 F.3d 150 (2d Cir. 2006), where the Court overturned a mail fraud conviction because the alleged victims "received all they bargained for." See Mot. at 6.[2] But Novak was a "right to control" case. There, the government alleged that contractors would not have sent certain checks to union members if they had known that the defendant was receiving kickbacks from those checks because sending the checks exposed the contractors to criminal liability for unlawful payments. Novak, 443 F.3d at 157. The government's theory of wire fraud therefore relied upon the allegation that the victim-contractors were deprived of the right to control their assets. See, e.g., United States v. Davis, 2017 WL 3328240, at *13 (S.D.N.Y. Aug. 3, 2017) (analyzing Novak as a right to control case). Here, by contrast, the government's allegation is that the defendant conspired with others to misappropriate Retrophin's assets.[3]

---

$300,000 and a year later or fourteen months later or six months later I give you back $1.5 million. Would you take that, would you take that proposal right now? Yeah, you would, you would. These people had faith in Martin. He didn't let them down, he didn't fool them, he didn't defraud them and his good faith is so real").

[2] The indictment text upon which the defendant relies—the allegation that he conspired to "obtain money and property from Retrophin" (Indictment ¶ 56)—simply tracks the text of the wire fraud statute. See 18 U.S.C. §1343 ("Whoever having devised or intending to devise any scheme or artifice to defraud, or for obtaining money or property by means of false or fraudulent pretenses…"). It is not surprising that, in alleging a wire fraud conspiracy, the indictment tracks the statute. Nor does a reference to obtaining "property" make this case a "right to control" case. The "right to control" assets is one property interest protected by the statute, not the only such interest. See, e.g., United States v. Wallach, 935 F.2d 445, 462 (2d Cir. 1991) ("The 'right to control' has been recognized as a property interest that is protected by the mail fraud statute.").

[3] In benefit of the bargain/right to control cases, a defendant induces a victim to enter into a bargain based on misrepresentations or omissions. See, e.g., United States v. Starr, 816 F.2d 94, 97 (2d Cir. 1987) (indictment alleged that purpose of scheme "was to defraud [victims] by inducing them, by means of false and fraudulent preten[s]es . . . to pay and repay postage money."). That theory seems particularly inapplicable here, where Retrophin did not "bargain"

2

Second, if the "benefit of the bargain" argument applies, then the relevant question is whether Retrophin—the alleged victim—received the "benefit of the bargain," not whether the defrauded investors did. As all of the cases cited by the defendant demonstrate, courts seek to determine whether the victim of a "right to control" fraud ultimately received the "benefit of the bargain."[4] Here, Retrophin was the alleged victim. Moreover, the defendant's motion cites no authority for the proposition that evidence related to the non-victim party to a "bargain" is relevant to a "benefit of the bargain" argument, and we are aware of no such authority. And that makes sense. Whether a non-victim received the benefit of its bargain says nothing about whether the victim received the benefit of its purported "bargain."

Third, if the defendant is permitted to argue that Retrophin received the "benefit" of a "bargain" and to elicit from investors that Retrophin has not requested the money back, then the government must be permitted to offer evidence that Retrophin did not receive the "benefit of the bargain" and that it has sought the return of the funds from the settlement agreements directly or indirectly from the defendant and Mr. Shkreli, the alleged perpetrators of the fraud. That evidence would include, but would not be limited to: (1) testimony from board members about whether Retrophin received the benefit of the bargain; (2) evidence related to Retrophin's subsequent internal investigation that revealed for the first time the true nature and purpose of the settlement agreements; (3) the fact that Retrophin filed a civil lawsuit against Mr. Shkreli accusing him of fraud and seeking the return of the stolen funds; and (4) the fact that the criminal charges against the defendant include a forfeiture allegation. Such evidence is both relevant and necessary to rebut the defendant's strained contention that Retrophin did not suffer a cognizable harm for purposes of Count Seven simply because the defendant and Mr. Shkreli arranged for investors to "release" Retrophin in the settlement agreements and because those investors kept the money they received pursuant to those agreements. See, e.g., Regent Office Supply Co., 421 F.2d at 1182 (overturning "right to control" fraud because, among other reasons, "[n]o [victim] testified that he felt he had been cheated.").

---

and was not induced to enter into settlement agreements based on a misrepresentation or omission during a purported "bargaining." The defendant's contention that the release provisions in the fraudulent settlements agreement could have provided Retrophin with the "benefit of the bargain" is akin to arguing that a bank can receive the "benefit of the bargain" when it is robbed by a robber who, while exiting with stolen cash, provides the bank with a new lock. In both cases, the victim may have received a "benefit," but there was no bargain.

[4] United States v. Shellef, 507 F.3d 82, 87 (2d Cir. 2007) (considering if chemical manufacturers—the alleged victims—received the benefit of their bargain with defendant chemical distributor); Novak, 443 F.3d at 153 (considering if contractors—the alleged victims—received the benefit of their bargain); Starr, 816 F.2d 94, 95 (considering if customers—the alleged victims—received the benefit of their bargain with defendant operators of a bulk mail service); United States v. Regent Office Supply Co., 421 F.2d 1174, 1181 (2d Cir. 1970) (considering if customers—the alleged victims—received the benefit of their bargain with defendant salesmen); Davis, 2017 WL 3328240, at *1 (considering if Port Authority—the alleged victim—received the benefit of its bargain with defendant construction company).

3

The defendant's contention that he should be allowed to introduce evidence related to whether <u>non-victims</u> received the "benefit of the bargain" but the government should not be allowed to introduce evidence of whether the actual <u>victim</u> received the "benefit of the bargain," or about why the victim has not sought to recover its money from the investors, is meritless. The defendant contends that Retrophin's actions after Mr. Shkreli was removed are "beyond the scope of the indictment" and of the proposed questions because the board received partial information about the settlement agreements in 2013 and "did not take any action at the time." Mot. at 6. But the board did not have full information in 2013 about the settlement agreements—the defendant and Mr. Shkreli made false statements about those agreements and withheld material information—nor did they have full information in 2013 or early 2014 about subsequent settlement agreements that had been disguised as consulting agreements. Thus the defendant appears to argue that, because Retrophin took no action during a time period in which <u>it was still being defrauded</u>, the government may not offer evidence of what happened when Retrophin actually learned of the fraud. That argument should be rejected out of hand.

As set forth above, neither the investors' failure to return the settlement money nor the investors' subjective belief about whether a fraud took place is relevant to any issue before the jury. But, if such evidence is permitted, then the government should be allowed to establish what the investors actually knew (and did not know) about the fraud. To pretend that the investors blessed the settlement agreements with full information would be highly improper. For example, the government should be entitled to ask investors whether they knew they had been defrauded by Mr. Shkreli, whether they knew if the Retrophin board had approved the settlements with full information, and whether they were aware of other facts alleged in the indictment tending to show fraudulent conduct.[5]

\*   \*   \*

The defendant's motion should be denied. Moreover, if the defendant is permitted to offer other evidence or make arguments about whether Retrophin received the full "benefit" of a purported "bargain," then the government should also be permitted to offer such evidence to the contrary, including evidence that the victim does not believe it received the

---

[5] Asking "whether [investors] are aware of the government's contention that the settlement agreements are fraudulent" squarely puts at issue each investor's knowledge of the frauds.

4

benefit of the bargain and that Retrophin sought to recover money from the perpetrators of the fraud rather than the investors.[6]

                                        Respectfully submitted,

                                        BRIDGET M. ROHDE
                                        Acting United States Attorney

By:   /s/_____
        Alixandra E. Smith
        David C. Pitluck
        David K. Kessler
        Assistant U.S. Attorneys
        (718) 254-7000

---

[6] In this context, the government would not object to investors being asked whether Retrophin asked for its money back.