# GIBSON DUNN

Gibson, Dunn & Crutcher LLP

200 Park Avenue
New York, NY 10166-0193
Tel 212.351.4000
www.gibsondunn.com

Reed Brodsky
Direct: +1 212.351.5334
Fax: +1 212.351.6235
RBrodsky@gibsondunn.com

November 5, 2017

VIA ECF

The Honorable Kiyo A. Matsumoto
United States District Judge
United States District Court for the Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York 11201

Re:   *United States v. Evan Greebel*, S1 15 Cr. 637 (KAM)

Dear Judge Matsumoto:

We respectfully submit this letter in response to the government's motion, dated October 28, 2017, seeking to preclude certain materials and information produced in response to our Rule 17 subpoenas.

The government seeks to prevent us from relying on information obtained through our Rule 17 subpoenas and from questioning witnesses on cross-examination as to whether they had received or responded to them.  In so seeking, the government mischaracterizes our subpoenas as improper and disregards that the Rule 17 subpoena is one of the primary mechanisms that allows a defendant in a criminal case – who lacks grand jury subpoena power – to collect documents and materials that are needed to defend against the government's charges.  For the reasons set forth below, we respectfully request that the Court deny the government's motion.

I.      Applicable Law

Federal Rule of Criminal Procedure 17(c) allows for the issuance of subpoenas to order production by witnesses of "any books, papers, documents, data, or other objects the subpoena designates.  The court may direct the witness to produce the designated items in court before trial or before they are to be offered in evidence."

Courts have applied a consistent standard in analyzing subpoenas issued under Rule 17, as laid out by the Supreme Court in *United States v. Nixon*, 418 U.S. 683 (1974).  The Court in that case required that the moving party show 1) that the requested documents are evidentiary and relevant; 2) that they are "not otherwise procurable reasonably in advance of trial by exercise of due diligence"; 3) "that the party cannot properly prepare for trial without such production and inspection in advance of trial and that the failure to obtain such inspection

**GIBSON DUNN**

The Honorable Kiyo A. Matsumoto
November 5, 2017
Page 2

may tend unreasonably to delay the trial"; and 4) that the "application is made in good faith and is not intended as a general 'fishing expedition.'" *Id.* at 699.  In other words, the requesting party must show relevancy, admissibility, and specificity.  *Id.*

It is an open question whether the same standard should apply in cases where a criminal defendant subpoenas a non-government, non-party witness.  The Supreme Court acknowledged the possibility of a more relaxed standard in *Nixon,* where it noted *in dicta* that it "need not decide whether a lower standard exists" in these situations because the subpoena at issue in that case satisfied the more strenuous standard.  *Id.* at 699 n.12.

Since then, a court with concurrent jurisdiction in this circuit has articulated a different standard for subpoenas issued to non-government non-parties.  In *United States v. Tucker*, Judge Scheindlin held that the appropriate standard for subpoenas issued by defendants to non-parties is whether the subpoenas are "reasonable, construed as 'material to the defense'" and "not unduly oppressive for the producing party."  *United States v. Tucker*, 249 F.R.D. 58, 66 (S.D.N.Y. 2008) (Scheindlin, J.).

## II.     Our Rule 17 Trial Subpoenas Are Targeted to Obtain Admissible Evidence Not Otherwise Available to Us

### A.  Background

In the months leading up to trial, we have sent out Rule 17 subpoenas in a targeted manner in an effort to defend our client against the allegations in the Superseding Indictment ("the Indictment").  The government has acknowledged that it has been able to request and receive documents from multiple third parties on a voluntary basis without the use of trial subpoenas.  We do not have that luxury as nearly all third parties require a trial subpoena from us before they are willing to produce any relevant and admissible evidence to us.

At its heart, the government's motion seems to reflect the government's view that it is troubled that we have chosen to present a counternarrative to the government's wrongheaded view of the facts – through cross-examination of the government's witnesses, through documents that the government either chose not to offer or never obtained during its investigation, and possibly through a case-in-chief of our own that includes both expert and lay witnesses.  We are deeply concerned that the government's motion is going to chill our ability to vigorously defend our client against the meritless charges.

**GIBSON DUNN**

The Honorable Kiyo A. Matsumoto
November 5, 2017
Page 3

With this backdrop in mind, our Rule 17(c) subpoenas[1] have been targeted to focus on witnesses we may call in our case-in-chief and/or relevant to our defenses at trial.

It is also well worth noting that – contrary to the Court's repeated directive to parties to try to meet and confer before filing motions – in this case, the government never tried to meet and confer with us about any issues they may have had with our Rule 17(c) subpoenas. After the Court ordered us to produce the Rule 17(c) subpoenas to the government, the government did not attempt to meet and confer with us regarding any of them. Instead, they just filed a motion without knowing all the facts.

Our subpoenas have been targeted to obtain materials we believe are important to our defense. Moreover, the vast majority of the third parties we have subpoenaed have been represented by counsel. And we have had numerous communications with counsel for these third parties over the past several months in which we have negotiated over the scope of the subpoenas we have issued. In many cases, we have agreed to narrow the scope of our requests, including in conversations with counsel for Paul Weiss, Innisfree, government witness AG, government witness SH (who has already testified), other lay witnesses, and with Retrophin's counsel, with whom we have established a productive working relationship.

We have negotiated and worked out these issues to try to avoid burdening the Court with having to deal with any litigation over subpoenas in the middle of trial – and to date, we have been entirely successful at relieving this very busy Court of any additional such motions. Indeed, as the Court is aware, as recently as October 25, we agreed to narrow significantly our subpoena requests to the United States Securities and Exchange Commission, which led the SEC – a federal government entity – to agree to withdraw its motion to quash our subpoena, thus removing an additional issue from the Court's very full plate.

This procedural history set forth above makes the government's unannounced motion that much more peculiar. It appears that, at its core, the government's motion is a veiled effort at preventing Mr. Greebel from presenting a document-focused and fact-based counternarrative to the government's theories of its case.

---

[1] In its motion, the government seems to cast a negative light on the fact that we have "served thirty-five Rule 17 subpoenas," which led to "more than 15,000 pages of returns." There is nothing inherently unreasonable about these numbers. Indeed, the number of pages is largely the product of the type of records we received, which are primarily phone and other general records. Again, the government really seems to be taking issue with our intention to vigorously defend our client by seeking information relevant to his defense, which is a perfectly appropriate use of Rule 17.

**GIBSON DUNN**

The Honorable Kiyo A. Matsumoto
November 5, 2017
Page 4

### B. The Subpoenas at Issue Satisfy Both *Tucker* and *Nixon*

The subpoenas at issue here clearly satisfy both the *Tucker* and *Nixon* standards. This case is particularly appropriate for application of the *Tucker* standard. The court in *Tucker* held that the less stringent standard should apply where "production requested is by (A) a criminal defendant; (B) on the eve of trial; (C) from a non-party; (D) where the defendant has an articulable suspicion that the documents may be material to his defense." *Id*. at 66.

Mr. Greebel easily satisfies all four parts of this test. Of the subpoenas the government questions, we issued the first set in May of this year, when counsel for Mr. Greebel were well underway with trial preparation and planning. And even those earliest of subpoenas, all served on non-parties, carried return dates in the first week of trial—certainly satisfying the "eve of trial" requirement.

The only remaining question is whether we had an "articulable suspicion" that the documents requested "may be material to his defense," which they clearly are. Judge Scheindlin held that this more relaxed standard for subpoenas to third-party witnesses by criminal defendants is justified due to the inequalities of discovery in criminal cases. "Unlike the government, the defendant has not had an opportunity to obtain material from non-parties either through a grand jury subpoena or through Rule 16 discovery (which only applies to parties)." *Tucker*, 249 F.R.D. at 64.

In any event, our subpoenas also easily satisfy the standards set forth in *Nixon*. Here, we requested documents specifically related to the heart of our defense: that Mr. Greebel was not involved in any criminal conspiracies with Martin Shkreli. The government questions, among other requests, our subpoenas seeking phone records for numbers associated with Shkreli, two other witnesses, and Retrophin. *See* Oct. 28, 2017 Letter from A. Smith to the Honorable Kiyo A. Matsumoto at 5 ("Oct. 28 Mot."). But we have a very good strategic reason for these subpoenas (and one we are happy to share with the Court *in camera*) — a fact certainly material to his defense, and in no way comprising the type of disallowed "fishing expedition" the government asserts.[2]  *See* Oct. 28 Mot. at 6.

---

[2] The government also says cavalierly and without doing its homework that we "disregarded" a notice included in our own subpoenas advising the party seeking a subpoena to consult the local court rules and the "assigned judge" to determine the Court's Rule 17(c) practice. Oct. 28 Mot. at 2 n.2. The government's accusation is totally without merit. Indeed, we were very careful to check any applicable procedures before issuing Rule 17 subpoenas. On or about February 27, 2017, a member of our defense team called Your Honor's Chambers seeking guidance on Rule 17(c) subpoenas. The Court's deputy, after apparently checking with the Court, advised us to conduct our

**GIBSON DUNN**

The Honorable Kiyo A. Matsumoto
November 5, 2017
Page 5

The government makes much of the idea that Rule 17 is not meant to "prove a means of discovery in criminal cases." Oct. 28, 2017 Mot. at 3 (citing *Nixon*). We have not issued our Rule 17(c) subpoenas for the purposes of discovery but rather to obtain targeted, relevant, and admissible evidence for our client's defenses. Moreover, the government's interpretation of our subpoenas as discovery requests misses the mark. In *Bowman Dairy Co. v. U.S.*, from which *Nixon* followed, the Supreme Court held that Rule 17 is not meant to provide an *additional* means of discovery. 341 U.S. 214, 220 (1951). It was, however, intended to "establish[] a more liberal policy for the production, inspection and use of materials at the trial" without excluding "from the reach of process of the defendant any material that had been used before the grand jury or could be used at the trial." *Id.* at 220–21.

The government's claims that our subpoenas "broadly seek discovery materials" and "fail the *Nixon* relevance, admissibility and specificity requirements," Oct. 28 Mot. at 5–6, are meritless. Our requests belie these claims. As just one example, the government takes issue with our March 17, 2017 subpoena to Troy Fearnow and Michael Fearnow seeking "correspondence and email communications about the reverse merger between Desert Gateway, Inc. and Retrophin, Inc." Oct. 28 Mot. at 6. The specificity of these terms themselves refute the government's suggestion that our requests seek correspondence "without any subject matter limitations." *Id.* Indeed, it is in no way clear to us how requesting information about one particular event — a reverse merger between two named companies, including a company like Retrophin that is so central to this case's story line — fails to constitute a subject-matter limitation. In any event, neither Troy Fearnow nor Michael Fearnow produced any responsive documents.

Further, the *Nixon* Court itself noted that non-party subpoenas under Rule 17 are appropriate where "the party cannot properly prepare for trial without such production and inspection." *Nixon*, 418 U.S. at 699. That is the case here. As we have already noted, we do not have the benefit of grand jury subpoena power.

We have raised concerns about the withholding and/or delayed production of *Brady* and *Giglio* material in this case. *See, e.g.,* Trial Tr. at 1359:1–5. Without the ability to subpoena

---

    own research, which we continued to do. We then reviewed the Local Rules; we reviewed the Court's rules; we consulted with the Clerk's Office; and we spoke with multiple experienced defense attorneys who had issued trial subpoenas in connection with other criminal cases in the Eastern District of New York. We then followed what we understood to be the practice in the Eastern District of New York, and in compliance with the rules and procedures.

**GIBSON DUNN**

The Honorable Kiyo A. Matsumoto
November 5, 2017
Page 6

third parties for material information, we would have no other means by which to procure documents potentially crucial to Mr. Greebel's defense.

### C.   The Rule 17 Subpoenas Do Not Improperly Seek Impeachment Material

The government also claims that we impermissibly sought impeachment material with our subpoenas, again relying on *Nixon*.  But once more, the government fails to consider the whole context: while the *Nixon* court held that "[g]enerally, the need for evidence to impeach witnesses is insufficient to require its production in advance of trial," it also held that where "there [were] other valid potential evidentiary uses for the same material," the District Court had not erred in authorizing the subpoena *duces tecum*.

The Second Circuit has similarly held, affirming a district court's order compelling production of union authorization cards where the cards "may provide the defendants with a basis for asserting an entrapment defense," and where "the defendants could certainly utilize the cards in attempting to impeach [the witness's] credibility."  *In re Irving*, 600 F.2d 1027, 1034 (2d Cir. 1979) ("We conclude that the requirements of Rule 17(c) were satisfied.").

The government particularly complains about our subpoenas relating to government witness JS, seeking information about the witness's criminal history, past employment, and educational experience.  *See* Oct. 28 Mot. at 4.  In the first instance, without knowing whether the government was going to actually call JS as a witness, we made plans to call JS (should we put on a case-in-chief) if the government did not call him.  In preparation for our direct examination of JS, we grew concerned that JS's representations regarding his educational and employment history were not credible, and we did not want to elicit such testimony without having evidentiary support for JS's background.  Moreover, even assuming *arguendo* that evidence relating to JS's educational and criminal history also simultaneously served an interest in obtaining potential impeachment material, these requests were consistent with our need to "properly prepare for trial."  Nevertheless, to simplify the matters before this Court and given that the government will be calling JS as a witness, we agree not to use the educational materials that we received during the cross-examination of JS.

Finally, since we have produced all the Rule 17(c) subpoenas we have issued as well as all the subpoena returns, instead of trying to stand in the shoes of counsel for the various third party subpoenas they identify on pages six through eight of their motion – all of whom we have successfully negotiated with – the government should identify any specific remaining documents that they believe somehow violate Rule 17.

**GIBSON DUNN**

The Honorable Kiyo A. Matsumoto
November 5, 2017
Page 7

\* \* \*

For the reasons set forth above, we respectfully submit that the Court should deny the government's motion.

Respectfully,

*/s/ Reed Brodsky*
Reed Brodsky


cc:     Alixandra E. Smith, Esq.
        David C. Pitluck, Esq.
        David K. Kessler, Esq.