

U.S. Department of Justice

United States Attorney
Eastern District of New York

AES/DCP/DKK  
F.#2014R00501

271 Cadman Plaza East  
Brooklyn, New York 11201

November 11, 2017

<u>By Hand and ECF</u>  
Honorable Kiyo A. Matsumoto  
United States District Judge  
Eastern District of New York  
225 Cadman Plaza East  
Brooklyn, NY 11201

    Re:  United States v. Evan Greebel  
      <u>Criminal Docket No. 15-637 (KAM)</u>

Dear Judge Matsumoto:

   The government respectfully submits this letter in response to the defendant's request that "the defense be allowed greater latitude to cross-examine the government's witnesses." Dkt. No. 441 ("Def.'s Ltr.") at 7. Notwithstanding his recent allegation that the Court has repeatedly denied his constitutional right to confrontation, the defendant has not identified a single such violation. Instead, the defendant's letter disagrees with seven rulings about specific objections to specific questions during the first four weeks of trial. Throughout this trial—the majority of which has been spent on cross-examination of the government's witnesses—the Court has exercised its discretion by providing the defendant with great latitude in cross-examining witnesses. The defendant's nebulous request for even greater latitude—made without reference to upcoming subjects, witnesses, or lines of cross-examination—is baseless and should be summarily denied.

    I.  <u>Background</u>

   On November 8, 2017—the eleventh day of witness testimony—the defendant claimed that the Court had repeatedly denied his "right of the confrontation" and that the government was "violating the right of confrontation" by objecting to certain questions posed by defense counsel on cross-examination. Tr. at 4062:9-11, 4067:20-22. After the Court stated that it would adjourn the trial until the defendant made his written submission regarding the alleged constitutional violations and specifically identified the instances in which he believed those violations occurred, the defendant stated that he wanted to continue the trial and that his submission would seek only "prospective relief." <u>Id.</u> at 4182:1-18. The defendant subsequently filed his request for "greater latitude" during cross-examination.

II.     Applicable Law

The defendant does not dispute that "trial judges have ample means to control the scope of questioning" on cross-examination. (Def.'s Ltr. at 2.) Nor could he. Under longstanding Supreme Court precedent, district courts retain great discretion in imposing limits on cross-examination: "[T]rial judges retain wide latitude insofar as the Confrontation Clause is concerned to impose reasonable limits on such cross-examination based on concerns about, among other things, harassment, prejudice, confusion of the issues, the witness' safety, or interrogation that is repetitive or only marginally relevant." Delaware v. Van Arsdall, 475 U.S. 673, 679 (1986) ("the Confrontation Clause guarantees an opportunity for effective cross-examination, not cross-examination that is effective in whatever way, and to whatever extent, the defense might wish." (quoting Delaware v. Fensterer, 474 U.S. 15, 20 (1985) (per curiam))); see also, e.g., Watson v. Greene, 640 F.3d 501, 510 (2d Cir. 2011) ("To determine the propriety of cross-examination, as with other determinations of admissibility of evidence, courts balance prejudice versus probative value.").

"In determining whether a trial judge has abused his discretion in the curtailment of cross-examination of government witnesses, the test is whether the jury was already in possession of sufficient information to make a discriminating appraisal of the particular witness's possible motives for testifying falsely in favor of the government." United States v. Singh, 628 F.2d 758, 763 (2d Cir. 1980). "Cross-examination is not improperly curtailed if the jury is in possession of facts sufficient to make a 'discriminating appraisal' of the particular witness's credibility." United States v. Roldan-Zapata, 916 F.2d 795, 806 (2d Cir. 1990).

The Second Circuit has repeatedly affirmed the exclusion of cross-examination where a district court exercised discretion to exclude cross-examination on grounds of, inter alia, relevance, prejudice, and delay. See, e.g., United States v. Rodriguez, 648 Fed. Appx. 9, 11 (2d Cir. Apr. 27, 2016) (summary order) (affirming exclusion of cross-examination related to impeachment and noting that the right to confrontation "is not illimitable"); United States v. Morales, 474 Fed. Appx. 30 (2d Cir. 2012) (summary order) (affirming exclusion of cross-examination related to impeachment on relevance grounds); United States v. Jeffers, 402 Fed. Appx. 601 (2d Cir. 2010) (same and upholding preclusion of cross-examination that would have necessitated a "mini-trial"); United States v. Stewart, 433 F.3d 273, 312-313 (2d Cir. 2006) (same); Singh, 628 F.2d at 763-64; see also United States v. Watts, No. 10-CR-627 (KAM), 2013 WL2020178, at *4 (E.D.N.Y. May 14, 2013); United States v. Rivera, No. 13-CR-149 (KAM), 2015 WL 1966461 (E.D.N.Y. Apr. 30, 2015).

III.    Argument

The defendant's letter contradicts his own arguments to the Court, misrepresents the trial record, and misconstrues the law.

First, even after claiming that his constitutional rights have been repeatedly violated during the trial and being ordered by the Court to identify each instance in which such a violation allegedly occurred, the defendant does not identify a single alleged violation in his

letter.[1] He points to no relevant fact that was kept from the jury, let alone to any line of questioning he was prevented from pursuing. Instead, he provides a "selection of the types of improper objections" that he believes are impeding his ability to fully cross-examine witnesses. Def.'s Ltr. at 3. Moreover, defense counsel previously advised the Court that, notwithstanding the allegation of constitutional violations, "we are not alleging some massive constitutional violation here." Tr. at 4163:1-2. In this context, defendant's vague assertions of constitutional violations are dubious.

Second, the defendant's apparent contention that the government is violating his right to confrontation by objecting to questions makes no sense. When a party objects to a question, the Court then rules on the objection. The Court's ruling may or may not implicate the Confrontation Clause. But the mere act of lodging a good-faith objection to a question does not violate the defendant's right to confrontation, and the defendant points to no authority that it does.[2]

Third, the defendant's letter confuses the basis for an objection with the subject of witness testimony. The defendant claims that "the government's improper objections fall into three general categories": (i) witness demeanor, bias, and credibility; (ii) assuming facts not in evidence; and (iii) misstating the testimony." Def.'s Ltr. at 4-5. But "witness demeanor, bias, and credibility" are not grounds for objections and the government has never objected on those bases. Rather, when the government has objected to defense questions—including questions that address bias and credibility—it has done so based on the rules of evidence. In fact, as a cursory review of the examples cited by the defendant will show, the majority of the objections about which the defendant complains relate, at minimum, to the form of the question being asked.

Fourth, the defendant appears to argue that an objection that a question either (i) misstates prior testimony or (ii) assumes a fact not in evidence can constitute a violation of the Confrontation Clause. It is not surprising that the defendant cites no authority in support of this theory. As a matter of common sense, a question either states a witness' prior testimony accurately or it does not. If the question misstates the prior testimony, the questioner can rephrase the question. Either way, the Confrontation Clause plays no role.

Fifth, the defendant's reliance on United States v. Wolfson, 437 F.2d 862 (2d Cir. 1970) underscores why there are no constitutional issues here. In Wolfson, the district court

---

[1] Tr. at 4161:2-6 ("I want to be informed of your position and all the instances that you believe the Government has stepped on Mr. Greebel's constitutional rights in making objections to either evidence or testimony or questions I'd like to see that.") (emphasis added).

[2] The defendant complains that the government has not always stated the basis for its objections. The government has generally avoided saying more than "objection" pursuant to the Court's request not to make speaking objections in front of the jury; to the extent required, the government has provided the basis for such objections at side-bar. The defendant has also followed that practice. In any event, the defendant's complaint about the manner in which the government objects has no bearing on whether his constitutional right to confrontation has been violated.

precluded <u>any</u> cross-examination on a topic related to a cooperating witness's financial motive for testifying against the defendant's at trial. The line of cross-examination was plainly relevant, and the cooperating witness was critical: the jury was charged that it could convict on his testimony alone. 437 F.2d at 874. Under these circumstances, the Court held that the district court abused its discretion. The defendant identifies no ruling at this trial that even remotely approaches <u>Wolfson</u> (or the other cases upon which he relies). Indeed, notwithstanding his claim that his "lines of inquiry [are] being cut off completely," (Def.'s Ltr. at 2), the defendant does not actually identify lines of inquiry he was prevented from pursuing. Rather, the defendant focuses on rulings on objections to specific questions that were part of extended lines of inquiry that the defendant was permitted to pursue at length.

For example, the Court afforded the defendant great latitude—over the government's objection—to repeatedly question Mr. Massella about the circumstances of his departure from Citrin Cooperman. Nevertheless, the defendant claims that he was "prevented from testing Mr. Massella's" credibility because the Court sustained a particular objection to a compound question. The defendant does not explain how he was "prevented" from doing anything, and his complaint is belied by the record.

<u>Sixth</u>, setting aside any suggestion of constitutional violations, the defendant's "examples" of improper objections do not even identify arguably improper objections. In some instances, the defendant misrepresents the record. For example, the defendant makes much of the Court's ruling sustaining an objection to this question to Mr. Blanton: "And in that connection, you represented Mr. Shkreli to investors as someone doing great things, didn't you, sir?" Def.'s Ltr. at 6-7. The defendant claims that the witness' answer "would have allowed the jury to evaluate Mr. Blanton's credibility with respect to a crucial issue on this case." <u>Id.</u> at 7. But the defendant omits that, immediately after sustaining the objection, the Court instructed defense counsel to rephrase the question, defense counsel rephrased the question, and the witness answered it. Tr. at 3814:16-3815:1. In other instances, the defendant appears to criticize the Court for sustaining perfectly reasonable objections. For example, the defendant claims that he was "cut short in his efforts to inquire about Retrophin's disclosure of Mr. Blanton's consulting agreement in the SEC filings" because the Court sustained an objection to this question: "They disclosed exactly how many shares you were going to receive as a consultant, the term expired on December, 31, 2014. Correct?" Def.'s Ltr. at 7. As a preliminary matter, this question is objectionable as to form: it is not clear whether defense counsel was asking the witness about the payment terms, the expiration date, or both. Moreover, the witness had just testified that he did not know if Retrophin had publicly-filed information about his consulting agreement, and defense counsel had already inquired as to the terms of the agreement. Sustaining an objection in this context was well within the Court's discretion. <u>See, e.g.</u>, <u>Van Arsdall</u>, 475 U.S. at 679.

<u>Finally</u>, many of the defendant's arguments appear to rely on his claim that "[defense counsel] cannot be curtailed under the confrontation clause from going in to [witness] bias] in any manner in which he so chooses." Tr. 4149:15-16. But that is not the law, even as stated in the defendant's own letter. The law is clear that "the Confrontation Clause guarantees an <u>opportunity</u> for effective cross-examination, <u>not cross-examination that is effective in whatever way, and to whatever extent, the defense might wish</u>." <u>Van Arsdall</u>, 475 U.S. at 679 (1986)) (emphasis altered).

4

IV.     Conclusion

Throughout this trial, the Court has afforded the defense with more than sufficient latitude to conduct effective cross-examination. Indeed, significantly more than half of this trial to date has been spent on cross-examination.[3] There has been no violation of the defendant's right to confrontation. And there is no basis upon which the Court should grant the defendant's vague, prospective request for "greater latitude" on cross-examination. Rather, the Court should continue to consider and then rule on each objection that arises in turn. For the reasons set forth above, the defendant's request should be denied.

Respectfully submitted,

BRIDGET M. ROHDE
Acting United States Attorney

By:     /s/
        Alixandra E. Smith
        David C. Pitluck
        David K. Kessler
        Assistant U.S. Attorneys
        (718) 254-7000

---

[3] Indeed, for all but one of the government's witnesses to date, the Court has permitted the defendant to cross-examine each witness for either the same or a longer period of time than each witness testified on direct examination. And in many instances—including for witnesses Bernadette Davida, Sarah Hassan, Steven Richardson and Corey Massella—the Court permitted the defendant to cross-examine a government witness for nearly twice as long as the witness was on direct examination.