

U.S. Department of Justice

United States Attorney
Eastern District of New York

AES/DCP/DKK                                   271 Cadman Plaza East
F.#2014R00501                                 Brooklyn, New York 11201

November 13, 2017

By Hand and ECF
Honorable Kiyo A. Matsumoto
United States District Judge
Eastern District of New York
225 Cadman Plaza East
Brooklyn, NY 11201

   Re: United States v. Evan Greebel
     Criminal Docket No. 15-637 (KAM)

Dear Judge Matsumoto:

   The government respectfully submits this letter in response to the defendant's letter earlier this evening regarding the testimony of government witness JS. For the reasons set forth below, JS's conduct, as testified to on direct examination, is not an appropriate subject for cross-examination under Federal Rule of Evidence 608(b). In the event the defendant is permitted to cross-examine JS under Rule 608(b) and JS asserts the Fifth Amendment, the defense is not entitled to an adverse inference instruction. Finally, because the subject matter upon which JS would assert the Fifth Amendment is entirely collateral to the issues in this case and, at most, could only be relevant for impeachment, there would be no basis upon which to strike JS' direct testimony.[1]

   I. Background

   As the Court is aware, on November 13, 2017, witness JS testified, on direct examination that, after he stopped working at Retrophin in December 2012, he accessed Retrophin's Global Relay system to access archived e-mails and saved and printed e-mails from that system. Following that testimony, defense counsel asserted that—in the opinion of

---

[1] As a practical matter, the government is currently considering options that would eliminate any issues surrounding the witness's invocation of the Fifth Amendment. If the government can proceed with such a course of action, we will discuss the proposed approach with defense counsel first thing in the morning. Nevertheless, in the event such an option is not finalized, for the reasons set forth below, the government believes that the defendant's invocation of Fifth Amendment rights should not result in an adverse inference or the striking of any testimony.

defense counsel—JS's conduct may have constituted one or more federal crimes, at which point the Court appointed CJA Counsel for witness JS.

## II. Applicable Law

### a. Rule 608(b)

"[C]ase law interpreting the express purpose of Rule 608(b) makes clear that not all prior bad acts are admissible to impeach a witness.  Such acts are only admissible insofar as they bear on a witness's propensity for truthfulness or untruthfulness." United States v. Devery, 935 F. Supp. 393, 407 (S.D.N.Y. 1996), *aff'd*, 128 F.3d 38 (2d Cir. 1997). "Applying Rule 608(b), we have held that a district court does not abuse its discretion in prohibiting inquiry, where, as here, the prior acts involve no deceit or falsification." United States v. Horsford, 422 F. App'x 29, 30 (2d Cir. 2011) (affirming preclusion of cross-examination regarding a Civilian Complaint Review Board ("CCRB") complaint against an officer*); see also, e.g.*, United States v. Nelson, 365 F. Supp.2d 381, 386 (S.D.N.Y. 2005) ( Rule 608 "does not authorize inquiry on cross-examination into instances of conduct that do not actually indicate a lack of truthfulness" (internal quotation marks omitted)).

### b. Jury Instructions When Witness Takes the Fifth Amendment

Sand's Modern Federal Jury Instructions provides the following standard instruction for the "assertion of testimony privilege by witness":

> You heard testimony from the witness that he is asserting his Fifth Amendment privilege against self-incrimination.  I instruct you that you may not consider the witness' assertion of the privilege in any way against the witness or against the defendants.  The fact that the witness asserted the privilege does not mean that he has done anything wrong.  Innocent men may assert the Fifth Amendment under our law.

1-7 Modern Federal Jury Instructions –Criminal P 7.01, Instruction.[2]

This instruction reflects well-established law that a jury should not draw any inference from a witness' decision to exercise his Fifth Amendment rights.  See United States v. Lizza Industries, Inc., 775 F.2d 492, 497 (2d Cir. 1985) ("There is always a fear of abuse or prejudice when the jury is informed of a witness's invocation of his privilege against self-incrimination.  Admittedly, it is best, whenever possible, to avoid any mention of it"); Bowels v. United States, 439 F.2d 536, 541-42 (D.C. Cir. 1970) ("It is well settled that the jury is not

---

[2] The model instruction quoted above is utilized all circuits except for the First Circuit.  As set forth in Sand, the First Circuit provides for an instruction that a jury may, but is not required to, draw an adverse inference from a witness' assertion of the Fifth Amendment.  That appears to be the instruction that the defendant requests in his letter. Def.'s Ltr. at 4.

2

entitled to draw any inferences from the decision of a witness to exercise his constitutional privilege whether those inferences be favorable to the prosecution or the defense."); United States v. Nunez, 668 F.2d 1116, 1123 (10th Cir. 1981) ("[T]he requested instruction told the jury that in assessing the credibility of a witness it could consider the witness's refusal to answer questions or his invocation of the Fifth Amendment privilege. Such an instruction is inappropriate, however.").

        c. Striking Direct Testimony When Witness Takes the Fifth

When a witness invokes the Fifth Amendment, the question of whether, and to what extent, his direct testimony should be stricken depends upon whether the witness invokes the Fifth Amendment with regard to a collateral matter. See, e.g., United States v. Cardillo, 316 F.2d 606 (2d Cir. 1963). The Second Circuit has repeatedly affirmed district courts' refusal to strike a witness's direct testimony where the witness took the Fifth Amendment on collateral issues that, at most, went to the witness' credibility. See, e.g., United States v. Brooks, 82 F.3d 50, 54 (2d Cir. 1996) (affirming refusal to strike witness's direct testimony after witness asserted Fifth Amendment on questions regarding uncharged drug purchases); Dunbar v. Harris, 612 F.2d 690 (2d Cir. 1979) (affirming a refusal to strike the direct testimony of a witness who took the Fifth Amendment about his "involvement in drug dealings other than those for which appellant was charged"); United States v. Duverge Perez, 295 F.3d 249, 255 (2d Cir. 2002) (same); see also Ayala v. Ercole, 2007 WL 1135560 (E.D.N.Y. 2007) ("Collateral matters are those that bear solely on the witness' credibility") (collection cases).

    III.    Argument

        A. JS's Conduct is Not Appropriate for Cross-Examination Under Rule 608(b).

Here, JS's conduct in connection with his continued access of the Global Relay system after he stopped working at Retrophin does not go to his propensity for truthfulness or untruthfulness. It is the government's understanding that JS had was not formally terminated from his position in December 2012, but simply stopped doing work for the company. There is also no evidence that JS's access to the Global Relay system was restricted at that point. Thus, at most, JS appears to have continued to use his prior authorized access to the Global Relay system to review and print documents. See, e.g., United States v. Barret, No. 10 Cr. 809 (KAM), 2012 WL 194992 (E.D.N.Y. Jan. 23, 2012) (precluding cross-examination regarding substantiated CCRB complaints for use of abuse of authority, searching an individual without authorization, and refusing to provide name and badge number upon request); Bryant v. Serebrenik, 15 Civ. 3762 (ARR) (CLP), 2017 WL 713897, at *2 (E.D.N.Y. Feb. 23, 2017) ("[B]ecause failure to provide a name or badge number is not a dishonest act and does not bear on [the officer']s propensity for truth-telling, the evidence is not admissible under Rule 608(b), and cross examination about this topic will not be permitted").

Even if JS's access to the Global Relay system after December 2012 was unauthorized, such access would not show an intent to defraud, or otherwise bear on his

3

propensity for truthfulness or untruthfulness. Moreover, even if the defense were to be permitted to cross-examine JS about that conduct, the defense is <u>not</u> permitted to suggest to the witness or to the jury that such conduct constitutes a federal or state crime. The mere existence of <u>allegations</u> of criminal conduct is not the subject of permissible cross-examination under Rule 608(b). "Arrest without more does not . . . impeach the integrity or impair the credibility of a witness. It happens to the innocent as well as the guilty. Only a conviction, therefore, may be inquired about to undermine the trustworthiness of a witness." <u>Michelson v. United States</u>, 335 U.S. 469, 482 (1948); <u>see also Daniels v. Loizzo</u>, 986 F. Supp. 245, 252 (S.D.N.Y. 1997) (quoting <u>Michelson</u> and excluding evidence of a plaintiff's arrests that did not result in convictions); <u>Kelly v. Fisher</u>, No. 86 Civ. 1691, 1987 WL 16593, at *2 (S.D.N.Y. Sept. 2, 1987) (same). See <u>United States</u> v. <u>Belk</u>, No. 01 Cr. 180, 2002 WL 342585, at *4 (S.D.N.Y. March 4, 2002) (preluding cross examination regarding pending allegations; explaining that "[t]o provide the jury with information sufficient to weigh fairly the significance of the charge would delay the trial needlessly and distract the attention of the jury from the issues that are central to the criminal charges in this case"). That is, the fact that a witness can be cross-examined on his or her conduct that goes to truthfulness or untruthfulness does not somehow permit the defense to also question a witness about whether such conduct could potentially violate a particular law. That latter line of cross-examination does not actually go to the witness's credibility, but rather to the impermissible suggestion—far beyond the scope of what Rule 608(b) permits—that the witness has broken the law.

B.  <u>There Should Be No Adverse Inference Instruction</u>

The defendant further argues that if JS takes the Fifth Amendment in response to questions about his conduct related to the use of the Global Relay system after he stopped working at Retrophin, the jury should receive an adverse inference instruction. Def.'s Ltr. at 4. Such an instruction would be inconsistent with Sand's model jury instructions, as well as the well-settled principles set forth in the case law cited above that a jury should draw no inference from a witness' decision to take the Fifth Amendment. As the D.C. Circuit explained:

> The rule is grounded not only in the constitutional notion that guilt may not be inferred from the exercise of the Fifth Amendment privilege but also in the danger that a witness's invoking the Fifth Amendment in the presence of the jury will have a disproportionate impact on their deliberations. The jury may think it high courtroom drama of probative significance when a witness 'takes the Fifth.' In reality the probative value of the event is almost entirely undercut by the absence of any requirement that the witness justify his fear of incrimination and by the fact that it is a form of evidence not subject to cross-examination.

<u>Bowles</u>, 439 F.2d at 543-432. The standard jury instructions and the same principles should apply here.

      C. <u>If JS Asserts the Fifth Amendment, His Testimony Should not Be Stricken</u>

As set forth above, the Second Circuit has repeatedly affirmed district courts' refusal to strike a witness's direct testimony where the witness took the Fifth Amendment on collateral issues that, at most, went to the witness' credibility. Here, the subject matter at issue plainly has no bearing on any fact at issue in this case and could only conceivably be used for impeachment. Moreover, as set forth above, the line of questioning should not be permitted for impeachment under Rule 608(b). <u>See, e.g.</u>, <u>Lindsey v. Heath</u>, 12-CV-2150 (ERK), 2015 WL 3849939, at *2 (E.D.N.Y. June 22, 2015) ("Here, the witness invoked his privilege in response to a question of whether he was facing pending charges in Nassau County. This line of questioning has, at best, an attenuated effect on his general credibility, which is a quintessential example of a collateral matter."). The defendant does not and cannot argue that the subject matter has any bearing on this case beyond impeachment. Thus, if the defendant takes the Fifth Amendment, there will be no basis upon which to strike his testimony.[3]

The defendant's reliance on <u>Cardillo</u> underscores why striking JS's testimony would be entirely inappropriate here. In <u>Cardillo</u>, the Second Circuit affirmed the district court's decision not to strike a witness' testimony after he took the Fifth Amendment regarding unrelated criminal conduct. 316 F.2d at 611. The Court distinguished that witness' testimony from the testimony of a witness who took the Fifth Amendment relating to issues directly bearing on the facts at issue in the case. <u>Id.</u> at 613 ("Disclosure of a direct lie relating to the events testified to might have had far more influence on the court's ultimate decision than testimony merely establishing the unsavory character of the witness by admissions of prior crimes."). Because the subject matter is collateral, there is no basis to strike.

      Respectfully submitted,

      BRIDGET M. ROHDE
      Acting United States Attorney

By:  /s/ _____
      Alixandra E. Smith
      David C. Pitluck
      David K. Kessler
      Assistant U.S. Attorneys
      (718) 254-7000

---

[3] At most, the witness' testimony about this specific issue would be stricken.