**GIBSON DUNN**

Gibson, Dunn & Crutcher LLP

200 Park Avenue
New York, NY 10166-0193
Tel 212.351.4000
www.gibsondunn.com

Reed Brodsky
Direct: +1 212.351.5334
Fax: +1 212.351.6235
RBrodsky@gibsondunn.com

November 20, 2017

VIA ECF

The Honorable Kiyo A. Matsumoto
United States District Court Judge
United States District Court for the Eastern District of New York
225 Cadman Plaza East
Brooklyn, NY 11201

Re:   *United States v. Greebel*, S1 15 Cr. 637 (KAM)

Dear Judge Matsumoto:

We respectfully submit this letter in support of Mr. Greebel's right to authenticate DX 120-57 for identification through the email itself and, alternatively, during cross-examination of Timothy Pierotti.

During today's court session, the government moved to preclude Mr. Greebel from even attempting to authenticate DX-120-57 during cross-examination and, moreover, to even show this email to Mr. Pierotti for purposes of refreshing recollection. The government's arguments that Mr. Greebel must authenticate the email *before* attempting to authenticate the document during cross-examination and/or to refresh recollection are meritless and improperly shift the burden of proof to the defense. First, as explained below, the Second Circuit holds that Federal Rule of Evidence 901 has a very low bar. Indeed, Rule 901 does not even require witness testimony to satisfy the standard of authenticity of a document; an email can be authenticated through email addresses and content alone without witness testimony. Second, questions about the authenticity of a document go to weight and not admissibility. Third, we have been unable to find any case standing for the government's proposition that the "metadata" of an email must be produced and/or the source of a document must be disclosed before an email can be authenticated. Finally, DX-120-57 for identification may be used to refresh recollection, and there is no basis in law or in fact to preclude the defense from attempting to refresh a witness' recollection with the document.

### A. DX-120-57 Satisfies Rule 901's "Minimal Standards" for Authenticity

Rule 901(a) governs authentication of evidence and requires only that "the proponent . . . produce evidence sufficient to support a finding that the item is what the proponent claims it is." Testimony by a witness "that an item is what it is claimed to be" satisfies the

**GIBSON DUNN**

The Honorable Kiyo A. Matsumoto
November 20, 2017
Page 2

requirement. Fed. R. Evid. 901(b)(1). Another sufficient source of authentication is the "appearance, contents, substance, internal patterns, or other distinctive characteristics of the item, taken together with all the circumstances." Fed. R. Evid. 901(b)(4). "A comparison with an authenticated specimen by . . . the trier of fact" is yet another means of authenticating evidence. Fed. R. Evid. 901(b)(3).

"The bar for authentication of evidence *is not particularly high*." *United States v. Gagliardi*, 506 F.3d 140, 151 (2d Cir. 2007) (emphasis added). The Second Circuit described Rule 901's *"minimal standards"* as a "reasonable likelihood" that "a reasonable juror could find in favor of authenticity." *Id*. (citation omitted) (emphasis added). "The proponent need not "rule out all possibilities inconsistent with authenticity, or to prove beyond any doubt that the evidence is what it purports to be." *Id.* (internal quotation marks and citation omitted).

In *Gagliardi*, the Second Circuit affirmed the district court's admission of documents containing **cut-and-pasted** "emails and transcripts of instant-message chats," over an objection that the copies were "highly dubious." Live witnesses "testified that the exhibits were in fact accurate records of [the defendant's] conversations with [third parties]," which was sufficient under Rule 901(b)(1). *Gagliardi*, 506 F.3d at 151. *Gagliardi* is squarely on all fours with the instant issue. Pursuant to *Gagliardi*, the defense should be able to attempt to authenticate DX-120-57 for identification through Mr. Pierotti during cross-examination. DX-120-57 is more reliable than the cut-and-pasted emails and transcripts of instant-message chats in *Gagliardi* which the government was able to authenticate in that case through live witness testimony over objections that the copies of the emails and transcripts were highly dubious.

Numerous courts have held that emails without live witness testimony (and without proof of metadata/source information) meet the low-standard of authenticity pursuant to Rule 901 based on the characteristics and content of the emails alone. For instance, in *United States v. Safavian*, the district court held that emails met the standard of authenticity under both Rule 901(b)(3) and (b)(4) without live witness testimony:

> The e-mails in question have many distinctive characteristics, including the actual e-mail addresses containing the "@" symbol, widely known to be part of an e-mail address, and certainly a distinctive mark that identifies the document in question as an e-mail. *See United States v. Siddiqui,* 235 F.3d 1318, 1322 (11th Cir. 2000). In addition, most of the e-mail addresses themselves contain the name of the person connected to the address . . . . Frequently these e-mails contain the name of the sender or recipient in the bodies of the e-mail, in the signature blocks at the end of the e-mail, in the "To:" and "From:" headings, and by signature of the sender. The contents of

**GIBSON DUNN**

The Honorable Kiyo A. Matsumoto
November 20, 2017
Page 3

> the e-mails also authenticate them as being from the purported sender and to the purported recipient . . . .
>
> Those e-mails that are not clearly identifiable on their own can be authenticated under Rule 901(b)(3), which states that such evidence may be authenticated by comparison by the trier of fact (the jury) with "specimens which have been [otherwise] authenticated" – in this case, those e-mails that already have been independently authenticated under Rule 901(b)(4). For instance, certain e-mails contain the address "MerrittDC@aol.com" with no further indication of what person uses that e-mail address either through the contents or in the e-mail heading itself. *See, e.g.,* Exhibit 134. This e-mail address on its own does not clearly demonstrate who was the sender or receiver using that address. When these e-mails are examined alongside Exhibit 100 (which the Court finds is authenticated under Rule 901(b)(4) by its distinctive characteristics), however, it becomes clear that MerrittDC@aol.com was an address used by the defendant.

435 F. Supp. 2d 36, 40 (D.D.C. 2006). There is no requirement pursuant to Rule 901 that an email must meet some pre-testimonial standard of authenticity through metadata and/or proof of source before being able to seek to authenticate a document based on the contents and email address alone. And there can be no pre-testimonial standard of authenticity to preclude the defense from attempting to authenticate a document during cross-examination of a witness who received the email at issue.

In *Siddiqui*, the Eleventh Circuit approved the authentication of emails based on a comparison between the email address on the document at issue and the email address on another admitted exhibit, as well as the content of the email (the use of a recipient's nickname) and corroboration of the circumstances around its receipt (witness testimony regarding a phone call in which similar issues were discussed). *Siddiqui*, 235 F.3d at 1322–23. Similarly, the Seventh Circuit explained that "circumstantial evidence" was sufficient to authenticate emails in a mail- and wire-fraud prosecution. *United States v. Fluker*, 698 F.3d 988, 999-1000 (7th Cir. 2012).

Here, DX-120-57 for identification unquestionably satisfies Rule 901's "minimal standards" for authenticity. *See Gagliardi*, 506 F.3d at 151. Indeed, this Court should find that DX-120-57 is an authentic document based on the email addresses and the content of the email alone. Alternatively, the jury may confirm its authenticity by comparing Mr. Pierotti's email address on it with the same email address on other exhibits, such as GX-112-25 in evidence, pursuant to Rule 901(b)(3). Even if that does not satisfy the low-standard of authenticity,

**GIBSON DUNN**

The Honorable Kiyo A. Matsumoto
November 20, 2017
Page 4

which it should, we should be permitted to attempt to authenticate the email by questioning one of the recipients of the email on the witness stand right now (Mr. Pierotti).

In any event, such questions about the authenticity of a document go to the weight that the jury accords a piece of evidence, rather than to the question of admissibility.  *See Safavian*, 435 F. Supp. 2d at 41.

We are not aware of any case or Federal Rule of Evidence conditioning the admissibility of properly authenticated emails on the disclosure of their digital source information or metadata, or the source of the document.  As discussed above, Rule 901 provides various means of authenticating documents, but it does not include any requirement that a document's metadata or source be disclosed.

**B.    DX-120-57 May Also Clearly Be Used to Refresh Mr. Pierotti's Recollection**

A "general principal" of evidence allows that "any writing may be used to refresh the recollection of a witness, even if that writing is not made by the witness himself." *United States v. Schwartzbaum*, 527 F.2d 249, 253 (2d Cir. 1975); *see also United States v. Maldonado-Rivera*, 922 F.2d 934, 975–76 (2d Cir. 1990).  "Almost anything should be usable for the purpose of refreshing the memory of the witness; *it does not have to be admissible because it is not being admitted as evidence.  As long as a document does refresh memory, its origin is not important*."  DOJ's Courtroom Evidence Manual, 3d Ed. at 105 (quoting Steven A. Saltzburg et al., Federal Rules of Evidence Manual § 612.02 (9th ed. 2006)) (emphasis added).  Even writings that are otherwise inadmissible as evidence may be used to refresh a witness's memory.  *United States v. Baratta*, 397 F.2d 215, 221 (2d Cir. 1968).

Here, even if the Court were to deem DX-120-57 inadmissible, which it should not, we would still be entitled under bedrock Second Circuit precedent and widely accepted evidentiary principles to use the document to refresh Mr. Pierotti's recollection.

**C.    Work Product Doctrine**

In response to our request to attempt to authenticate an important email by a witness who received the document, the government has asserted that the defense should disclose where it obtained the information and/or the document.  The government is wrong.  Where the defense obtained the document has nothing to do with demonstrating its authenticity through one of the recipients of the document.  We have been unable to find a single case standing for the proposition that an individual accused of a crime must disclose his/her source of a document before attempting to authenticate such document through the government's witnesses.  For example, in *United States v. Dayan*, No. S3 03-cr-1471 (HB), 2004 WL

**GIBSON DUNN**

The Honorable Kiyo A. Matsumoto
November 20, 2017
Page 5


2937859, at *2 (S.D.N.Y. Dec. 20, 2004), the District Court denied the government's motion for production of notes, holding that "[t]he work product doctrine, of course, applies with equal or greater force in criminal cases."  A criminal defendant has limited means of defending him/herself.  The accused should not be forced to disclose sources of information and where he/she obtained documents before asking questions of witnesses about such documents.  At a minimum, the accused should be allowed to attempt to authenticate such documents through the government witnesses to meet the low-bar of Rule 901.  It is a dangerous slippery slope to require an accused to disclose information about his/her work product and the work product of his/her counsel where authenticity can be demonstrated through a variety of permissible and proper means.

*   *   *

For all these reasons, we respectfully request that the Court overrule the government's objection; that the Court admit DX-120-57 for identification into evidence based on the low-bar for authenticity under Rule 901 given the email addresses on the document and the content of the document; that, in the alternative, the Court permit the defense to attempt to authenticate the email during cross-examination of a recipient of the document; and that, should Mr. Pierotti fail to authenticate the document, the defense should be permitted to refresh recollection with the document.

Respectfully,


*/s/ Reed Brodsky*

Reed Brodsky


cc:     Alixandra E. Smith, Esq.
        David C. Pitluck, Esq.
        David K. Kessler, Esq.