# GIBSON DUNN

Gibson, Dunn & Crutcher LLP

200 Park Avenue
New York, NY 10166-0193
Tel 212.351.4000
www.gibsondunn.com

Reed Brodsky
Direct: +1 212.351.5334
Fax: +1 212.351.6235
RBrodsky@gibsondunn.com

November 28, 2017

<u>VIA ECF</u>

The Honorable Kiyo A. Matsumoto
United States District Court Judge
United States District Court for the Eastern District of New York
225 Cadman Plaza East
Brooklyn, NY 11201

Re:     *United States v. Greebel*, S1 15 Cr. 637 (KAM)

Dear Judge Matsumoto:

We respectfully submit this letter in support of Mr. Greebel's right to obtain documents pursuant to Rule 17 subpoenas during trial, and to use those documents as exhibits in any possible case-in-chief if he so chooses.  To preclude the use of such documents—before the defense has even determined whether it will in fact present an affirmative defense case and before the government has concluded its case-in-chief—would be highly prejudicial and unfair.  Mr. Greebel could not have determined all of his trial exhibits for a case-in-chief prior to hearing the government's witnesses and seeing the government's evidence.

Should the Court be inclined to grant the government's improper and misguided application, we respectfully request the opportunity to be heard in oral argument first thing on Monday morning, or telephonically before then at the Court's convenience.  We are shocked that the government—contrary to its primary mission of seeking out the truth and justice—has moved to preclude use from obtaining relevant, admissible evidence for any defense case.

## Rule 16(b) Discovery and the Scope of Any Possible Defense Case-in-Chief

As a preliminary matter, a criminal defendant does not have a duty to disclose all its trial exhibits before determining whether he will present an affirmative case, and the decision whether to present a case logically hinges on an analysis of the evidence presented during the government's case-in-chief.  While Mr. Greebel complied with the Court's order to identify potential trial exhibits for any case-in-chief well in advance of trial, pursuant to Rule 16, Mr. Greebel is only obligated to produce documents to the government for a case-in-chief when and if he identifies such documents that he intends to use for a case-in-chief and then decides to present an affirmative case.

A defendant does not have to reveal his work product, trial strategies, and legal theories to the government.  *See United States v. McKeon*, 738 F.2d 26, 33 (2d Cir. 1984) ("Moreover,

**GIBSON DUNN**

The Honorable Kiyo A. Matsumoto
November 28, 2017
Page 2

where the attorney-client privilege, the privilege against self-incrimination, the fear of impeachment by a prior conviction, apprehension over having to change attorneys, the revelation of work product, trial tactics, or legal theories of defense counsel may be involved in explaining the changes in the defendant's version of events, the court should offer an opportunity to the defense to present those reasons in camera, outside the presence of the jury and of the prosecution.").

To be clear, we commit that we will not use any of the subpoenaed documents during cross examination of the case agent.  Rather, we represent to the Court that we will use them only if we decide to put on a case-in-chief.[1]  At that point, of course, upon receipt of these documents, the government may make objections on a document-by-document basis.

Critically, the government's argument that we should have produced these documents in Rule 16 discovery misses the mark.  Federal Rule of Criminal Procedure 16(b) governs "Defendant's Disclosure."  Rule 16(b)(1), which sets forth "Information Subject to Disclosure," makes it clear that documents are subject to Rule 16(b) disclosure if and only if the defense has determined that it intends to use such documents in a case-in-chief.  Fed. R. Crim. P. 16(b)(1)(A).  This is precisely why we have consistently said that—although we were providing voluminous defense discovery—it could never be all-inclusive until we fully understood and had seen the government's actual case-in-chief.  *See, e.g.*, Dkt. No. 405, Mr. Greebel's Letter dated Oct. 13, 2017 ("[I]f and only if we decide to present a case-in-chief, any of the experts whom we call as witnesses will be responding in substantial part to the government's case-in-chief.").

There are numerous factors that a criminal defendant and his counsel have to consider in determining whether to put on a case-in-chief at all and which, if any, documents to offer in such a case-in-chief.  Among the many variables are the following:

---

[1]  It bears noting that it was in response to government objections that we endeavored to draft more narrowly tailored subpoenas in the first place.  *See* Gov't Mot. to Exclude Certain Rule 17 Documents, Dkt. 431, at 5 (objecting and arguing that certain subpoenas "broadly seek[] discovery materials and fail[] the *Nixon* relevance, admissibility and specificity requirements").  The government initially complained that we "issued numerous subpoenas requesting broad categories of documents over multi-year time periods" and that such broad requests are "precisely the kind of 'fishing expeditions' that are not permitted under Rule 17."  *Id*. at 5-6 (citation omitted).  Now that we have made good-faith efforts to placate the government's objections, the government objects to our use of the very sort of specific, targeted subpoenas endorsed by *United States v. Nixon*, 418 U.S. 683, 700 (1974).  But the government cannot have it both ways, especially where (i) we have not yet decided whether we intend to present a defense, (ii) the final days of the government's case-in-chief will bear heavily on that decision, and (iii) we have not yet argued, nor has the Court ruled on, our forthcoming motion under Rule 29.

**GIBSON DUNN**

The Honorable Kiyo A. Matsumoto
November 28, 2017
Page 3

- Very often, defense counsel will prepare for a defense case, but ultimately decide not to put one on.

- In multi-count cases, there is always a possibility—as we submit exists here—that the Court will decide to dismiss certain counts at the end of the government's case on the defendant's Rule 29 motion.  Such a dismissal of certain counts would change the scope and number of exhibits that a criminal defendant would offer in his or her case-in-chief.

- The defense cannot possibly know the extent of the government's case-in-chief, and how and what the government's witnesses testify to and their claims, until after the government's case-in-chief ends.  Indeed, many of the government witnesses testified in ways contrary to their prior statements to the government and inconsistently with how they testified in a prior proceeding and, moreover, to material information that was entirely absent from the FBI reports of interviews with them prior to trial.  Mr. Greebel could not possibly know what documents he would use and how he would respond to evidence until hearing the witness testimony.

- One of the biggest variables is whether Mr. Greebel himself will choose to testify in his own defense.  If yes, such a decision could very likely entail offering certain documents, but if no, then certain documents may not be able to be authenticated and thus could not be offered in a defense case-in-chief.

- During the course of the government's case-in-chief, the government produced new documents not previously provided to the defense and marked them as exhibits.  Mr. Greebel must be able to respond to those new documents, and send trial subpoenas to seek new materials.

- At the end of the government's case, defense counsel may choose for strategic reasons to attack some of the Indictment's counts in a defense case-in-chief, but not others.

- Defense counsel may decide that during the government's case-in-chief, the evidence was so weak on certain counts or issues, that they do not need to respond to that category of proof (or lack thereof).

Thus, there is no way for the criminal defendant to know precisely what documents he really intends to offer in his case-in-chief, if any, until the government has rested.  Accordingly, under Rule 16(b)(1)(A), although we have already produced far more documents in Rule 16(b) discovery than in the typical criminal case, there would be no way to produce all Rule

**GIBSON DUNN**

The Honorable Kiyo A. Matsumoto
November 28, 2017
Page 4

16(b) discovery until the government has rested, and we can make informed determinations about the questions set forth above.

Similarly, we also understand that if we choose to put on a defense case-in-chief, that then the government will have an opportunity to put on a rebuttal case.  We certainly agree that the same rules that we articulate in this letter would apply to any possible government rebuttal case.  That is, we have not insisted – nor could we – that the government tell us already which witnesses it might call in rebuttal or which exhibits they might choose to put on.  It was only today that the government informed us that they will identify any rebuttal expert witnesses in any rebuttal case—the government has not and could not possibly respond to a defense case without hearing the testimony of the witnesses during any defense case.

We understand and accept that the government may well decide to issue Rule 17(c) trial subpoenas for a rebuttal case to seek new documents that neither party yet has and that the government believes would be responsive to any defense case-in-chief.  Similarly, the government may decide to call additional lay witnesses.  The government has yet to disclose any rebuttal case lay witnesses or rebuttal exhibits they intend to offer – and rightfully so.  We understand that their decisions would be driven by reacting to and responding to our defense case-in-chief and determining what the scope of any possible rebuttal case would look like.  So too, we needed to view the government's entire case-in-chief before we could fully understand the scope of any possible defense case-in-chief.

**Mr. Greebel Has the Right to Use Trial Subpoenas to Obtain Documents During Trial**

Federal Rule of Criminal Procedure 17 permits parties in a criminal case to issue subpoenas to third parties to obtain documents which may then be used at trial.  The text of Rule 17(c) reads:

> (c) Producing Documents and Objects.
>
> (1) In General. A subpoena may order the witness to produce any books, papers, documents, data, or other objects the subpoena designates. The court may direct the witness to produce the designated items in court before trial or before they are to be offered in evidence. When the items arrive, the court may permit the parties and their attorneys to inspect all or part of them.

Fed. R. Crim. P. 17(c).

The use of trial subpoenas during the course of a trial is commonplace.  *See, e.g., United States v. Turner*, 104 F.3d 217, 220 (8th Cir. 1997) (noting that information gleaned during

**GIBSON DUNN**

The Honorable Kiyo A. Matsumoto
November 28, 2017
Page 5

trial "was discovered as a result of a subpoena issued during trial by defense counsel."); *United States v. Broombaugh*, 2017 WL 2734636, at *1 (D. Kan. June 26, 2017) (issuing an order granting defendant's motion to issue trial subpoenas to two witnesses); *United States v. Manghis*, 2010 WL 349583, at *1 (D. Mass. Jan. 22, 2010) (asserting that "[i]f defense counsel can show the need for particular documents or witness testimony, the Court will consider whether new subpoenas should be issued during trial.  If necessary, the Court can temporarily suspend its proceedings to allow the defendant an opportunity to review any documents produced pursuant to such a subpoena"); *United States v. Maloney*, 37 F.R.D. 441, 446 (W.D. Pa. 1965) (noting that although it was quashing defendant's pending motion in light of its, *inter alia*, "extremely broad language," the government was "placed upon notice of the intentions of the defendant, and should be ready to meet all proper demands for the production of any material which may become relevant during the course of the trial without unduly delaying the proceedings").

Mr. Greebel has the right to issue Rule 17 trial subpoenas throughout the course of the trial, and can use these documents during any potential case-in-chief.

### *United States v. Weiss* **Is Not Applicable**

In making its argument that the Court preclude Mr. Greebel's ability to use documents not yet produced, the government cites only *United States v. Weiss*, 930 F.2d 185 (2d Cir. 1991), a Second Circuit opinion from 1991.  However, *Weiss* is entirely distinguishable from the facts at hand.

First, *Weiss* did not involve a trial subpoena served pursuant to Rule 17.  The documents at issue in *Weiss* were uniquely located solely in the possession of the defendant.  Such specific documents had been requested by the government previously and could not be obtained other than from the defendant by the government, and the government sought them "well before the commencement of trial."  *Id.* at 199.  In the present case, we believe that responsive documents are located in the possession of Retrophin from whom the government has obtained numerous documents before and during the trial.

Second, the Second Circuit's decision in *Weiss* makes clear that defense counsel had previously proffered that they intended to use the documents in their case-in-chief.  By clearly designating the documents as case-in-chief documents, the defense was then obligated to disclose such specifically identifiable documents under Rule 16(b).  By contrast, we had not determined that we needed these documents until this point in the government's case-in-chief.  Moreover, we have not yet determined which of these documents we intend to use, nor have we made an ultimate determination as to whether we intend to present an affirmative case.

# GIBSON DUNN

The Honorable Kiyo A. Matsumoto
November 28, 2017
Page 6

Third, the court had already specifically ordered that defense counsel produce the very specific documents in the possession of the defendant "*immediately*" *Id.* (emphasis added). The court further warned that "if the documents were not produced immediately they would not be admitted." *Id.* Counsel for Weiss then violated that order by failing to produce those specific documents (uniquely in the possession of the defendant and not apparently obtainable by the government from other parties) in response to the court order. We have never sought these specific documents before; and these documents were available and accessible to the government.

Fourth, as discussed in greater detail below, the Court in *Weiss* found that permitting the defense to use the documents in question would "have given the defense an unfair advantage" because the documents were produced after the government had rested its case and "the relevant government witnesses who could have provided information about the documents were out of state." *Id.* Here, the documents have been subpoenaed and will be produced before the government rests its case, and while the government still has an opportunity to use and respond to the documents received.

The Second Circuit in *Weiss* did not cite to any case law in support of its holding on this point. The court summarily found that the defense was obligated to disclose the documents at issue pursuant to Rule 16(b), but this was seemingly based on the fact that defense counsel had already acknowledged that they would use the documents in their case-in-chief—laying the foundation for the obligation. The ruling by the *Weiss* court was therefore based more on the facts of the case than any binding legal precedent. To apply this ruling to Mr. Greebel would be highly unfair and inappropriate.

Moreover, the case of *United States v. Hatfield* is highly instructive. No. 06-CR-0550, 2009 WL 10673619, at *1 (E.D.N.Y. Apr. 22, 2009) ("[I]t is overwhelmingly clear that the 'Government's right of discovery . . . is confined to matters which the defendant intends to produce at the trial.'" (quoting *United States v. Nobles*, 422 U.S. 225, 235 (1975))). In *Hatfield*, the district court, Judge Seybert, rejected the government's argument that the defendant was obligated to produce certain items and documents, because the defendant had not indicated that he would use the evidence in his case-in-chief. 2009 WL 10673619, at *2.

Here, we did not previously intend to use the subpoenaed documents at issue in our case-in-chief. Indeed, we have not yet determined whether or not we will present an affirmative defense case. Out of an abundance of caution, and in response to the government's case, once we identified additional documents we may use during our case-in-chief, if we present one, we issued trial subpoenas and disclosed those subpoenas to the government, consistent with our continuing disclosure obligations under Rule 16(c).

**GIBSON DUNN**

The Honorable Kiyo A. Matsumoto
November 28, 2017
Page 7

Even if we had failed to comply with our Rule 16 obligations, which we have not, preclusion is an inappropriate remedy given the Court's alternatives under Rule 16(d) and its own inherent authority, *see Nobles*, 422 U.S. at 231. We have committed to voluntary disclosure of any returns from the instant subpoenas, so compelled discovery is inapplicable. If the government requires additional time to review the returns, the Court may grant it. There is no need in this case to resort to preclusion, which is the most serious sanction provided in Rule 16(d).

**It Is Reversible Error to Preclude Mr. Greebel From Using Documents Subpoenaed through Proper Trial Subpoenas in Question**

To preclude Mr. Greebel from using the documents in his case-in-chief would be highly prejudicial, patently unfair, and would be reversible error.

"Whether rooted in the Due Process Clause of the Fifth Amendment or in the Compulsory Process Clause of the Sixth Amendment, the Constitution guarantees criminal defendants the right to present a defense." *United States v. Blum*, 62 F.3d 63, 67 (2d Cir. 1995); *see also Chambers v. Mississippi*, 410 U.S. 284, 302 (1973) (holding that "[f]ew rights are more fundamental than that of an accused to present witnesses in his own defense" and that exclusion of "critical evidence . . . denied [the defendant] a trial in accord with traditional and fundamental standards of due process." ).

"Such a right, however, must be balanced against a court's leave to set reasonable limits on the admission of evidence . . . . Accordingly, we review the district court's evidentiary decision under an abuse of discretion standard." *Blum*, 62 F.3d at 67. The Second Circuit reversed Blum's conviction on several counts where proffered defense evidence that the district court judge precluded went to the "core of the prosecution's case," holding that it could not "view the exclusion of [such] testimony as harmless." *Id.* at 69.

"The two great rights of the accused at trial are the right to challenge the evidence brought forward by the state and the right to affirmatively make a defense. This latter right, really the right to 'compulsory process', but better understood when called the 'right to present a defense,' *Washington v. Texas*, 388 U.S. 14, 87 S.Ct. 1920, 18 L.Ed.2d 1019 (1967); *People v. Hudy*, 73 N.Y.2d 40, 538 N.Y.S.2d 197 (1988), is the right most directly concerned with ensuring that innocent persons are not convicted." Mark J. Mahoney, *The Right to Present a Defense* 1 (Nov. 9, 2011), *available at* http://www.harringtonmahoney.com/content/Publications/Mahoney%20-%20Right%20to%20Present%20a%20Defense.pdf.

"The fundamental right to compulsory process is implemented though hardly exhausted, by the terms of Federal Rule of Criminal Procedure 17(c), which unqualifiedly authorizes a

**GIBSON DUNN**

The Honorable Kiyo A. Matsumoto
November 28, 2017
Page 8

defendant to subpoena 'books, papers, document, or other objects.' . . . Each defense subpoena implicates 'the right to present a defense' acknowledged by the Supreme Court in *Washington v. Texas*, 388 U.S. 14 (1967)." *Id.* at 33.

**There Is No Prejudice to the Government From Allowing Mr. Greebel to Use These Documents in His Case-in-Chief**

The government will not be prejudiced by allowing Mr. Greebel to use the documents in question in his case-in-chief. The subpoenaed documents will be provided to both parties several days in advance of when the government will rest its case, and before the government completes its direct examination of Special Agent Delzotto. The government will also receive the documents in advance of its own cross-examination of the defense witnesses, and will subsequently have an opportunity to subpoena and produce any additional documents it wishes to use during its rebuttal case or during cross-examination of Mr. Greebel's affirmative witnesses.

Even assuming *arguendo* that the government's argument that mid-trial production of documents is prejudicial (which is not true and also contrary to how the government has produced documents in the midst of its trial without prior notice to us), this argument ignores the very requirements of Rule 17 production. Indeed, it is well recognized that a witness, having been served with a Rule 17 subpoena, is required *only* to produce the requested documents on the date of his or her testimony. Fed. R. Crim. P. 17. Even if we accept the government's argument that mid-trial production of documents is prejudicial, this argument ignores the very requirements of Rule 17 production. It is well recognized that a witness, having been served with a Rule 17(c) subpoena, is only required to produce these materials *at trial* unless directed to produce them earlier by the Court. Fed. R. Crim. P. 17(c)(1).

The government can make no showing of unfair prejudice from our pursuit of relevant, admissible evidence for our case-in-chief from Retrophin and other parties because the government had years to obtain such documents, and decided for whatever reasons not to do so. The government cannot claim prejudice now from its failures to obtain all of the critical documents that were readily available to the government through grand jury subpoenas, voluntary productions from Retrophin and other parties who have produced documents voluntarily without subpoena to the government prior to and during the course of the trial, and trial subpoenas.

The government asserts that it would be unduly prejudiced by Mr. Greebel's use of these documents. But in so arguing, the government fails to acknowledge that it has also identified numerous additional exhibits since trial began, and disclosed those to Mr. Greebel with little time for him to make use of them. If the government faces a disadvantage by receipt of the subpoenaed documents now, Mr. Greebel certainly faced such a disadvantage throughout

GIBSON DUNN

The Honorable Kiyo A. Matsumoto
November 28, 2017
Page 9

trial.  Indeed, since trial began, the government has identified approximately 218 additional exhibits.  *See* Exhibit A (listing the government's newly marked documents).  Of those, only 28 were replacement versions of documents, meaning that the government marked as new exhibits approximately 190 documents during the course of trial.  We know that some portion of these documents were obtained by the government during the course of trial.  Not only did the government identify these during the course of the trial, but some of the government's exhibits were even produced the night before the relevant witness testified and the government used many of those exhibits the day after production—and in some instances, the very same day we became aware that the government intended to offer these documents as exhibits at trial.

\*     \*     \*

It is shocking that the government is seeking to preclude us from attempting to obtain admissible evidence in any case-in-chief by the defense.  The government is asking the Court to do something that is beyond the pale and would constitute reversible error.  It would be fundamentally unfair and extraordinarily and unduly prejudicial to prevent the defense from obtaining a relatively narrow group of documents for a possible case-in-chief.  Should the government prevail on this misguided application, it would dramatically alter our decisions with respect to our defense, and cause severe prejudice to Mr. Greebel's right to a fair trial.

The notion that the government, whose mission is to focus on truth and justice, is attempting to stop the defense from obtaining potentially relevant and admissible evidence is truly surprising and contrary to the interests of justice.  If the government believes in its case, it should not be afraid of the disclosure of evidence that the defense obtained through validly issued trial subpoenas.  We appeal to the Court to not let the government act contrary to the interests of justice and to the rights of an accused to defend him- or herself, particularly where the documents we seek were readily available to the government for years.

For all these reasons, we respectfully submit that the Court should deny the government's motion.[2]  Mr. Greebel has the right to use Rule 17 subpoenas to obtain documents that are

---

[2]   In response to the Court's request for information regarding whether we have any of the documents that we are seeking now through trial subpoena, we are able and willing to provide that information to the Court on an *ex parte* and *in camera* basis.  We do not believe that this should make any difference to the Court's decision.  We firmly believe that a person accused of a federal crime has every right to issue trial subpoenas at any time during the course of the trial, including during any case-in-chief of the government and during any case-in-chief of the accused.  While the Court ordered the parties to order disclosure of trial exhibits prior to trial, it is axiomatic that the defense cannot possibly identify any and all exhibits that it intends to use in its case-in-chief until the defense hears the government's witnesses and sees the government's evidence.  The government has also obtained and used trial exhibits during the trial and those should be stricken if the government's position were correct.

# GIBSON DUNN

The Honorable Kiyo A. Matsumoto
November 28, 2017
Page 10

necessary to any possible case-in-chief.  In addition, Mr. Greebel has complied with Rule 16(b) since that rule's provisions require production of documents that "the defendant intends to use . . . in the defendant's case-in-chief at trial."

Respectfully submitted,

*/s/ Reed Brodsky*

Reed Brodsky

cc:     All counsel (via ECF)