JMK:AES/DCP/DKK
F. #2014R00501

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - X

UNITED STATES OF AMERICA

    -against-                           Docket No. <u>15-CR-637 (KAM)</u>

EVAN GREEBEL,

            Defendant.

- - - - - - - - - - - - - - - - - - - - - - - - - - X


<u>THE GOVERNMENT'S REQUESTS TO CHARGE</u>


BRIDGET M. ROHDE
ACTING UNITED STATES ATTORNEY
Eastern District of New York
271 Cadman Plaza East
Brooklyn, New York 11201


Alixandra E. Smith
David C. Pitluck
David K. Kessler
Assistant U.S. Attorneys
   (Of Counsel)

TABLE OF CONTENTS

PRELIMINARY STATEMENT ..................................................................................... 1

REQUEST NO. 1 (General Requests)........................................................................2

REQUEST NO. 2 (Knowingly, Intentionally, Willfully)...............................................4

    A.   Knowingly.................................................................................. 4

    B.   Willfully .................................................................................... 4

    C.   Intentionally ............................................................................. 4

REQUEST NO. 3 (Count One: Wire Fraud Conspiracy)...........................................6

    A.   Conspiracy to Commit Wire Fraud ........................................... 6

    B.   Wire Fraud: Definition and Elements ...................................... 10

    C.   Venue ...................................................................................... 16

REQUEST NO. 4 (Conscious Avoidance: Wire Fraud Conspiracy) .....................................18

REQUEST NO. 5 (Count Two: Securities Fraud Conspiracy) ...............................20

    A.   Conspiracy to Commit Securities Fraud ................................. 22

    B.   Securities Fraud: Definition and Elements .............................. 25

    C.   Affiliate ................................................................................... 31

    D.   Venue ...................................................................................... 31

REQUEST NO. 6 (Conscious Avoidance: Securities Fraud Conspiracy) ............................33

REQUEST NO. 7 (Defendant's Interest If Defendant Testifies) ...........................................35

REQUEST NO. 8 (Expert Witnesses).....................................................................36

REQUEST NO. 9 (Redactions) ...............................................................................37

    REQUEST NO. 10 (No Duty to Call Witnesses or Produce Evidence or Use Particular Investigative Techniques)..............................................................................38

CONCLUSION.......................................................................................................39

PRELIMINARY STATEMENT

Pursuant to Rule 30 of the Federal Rules of Criminal Procedure, the government respectfully requests that the Court include the following instructions in its charge to the jury. The government also requests leave to offer additional instructions as may become appropriate during the course of the trial.

REQUEST NO. 1
(General Requests)

The government requests that the Court charge the jury on the following matters

using the charges that the Court gave in the trial of the defendant's co-conspirator Martin Shkreli

("Shkreli Jury Charge"). (See ECF Dkt. No. 295 at 1-27, 81-87.)

a.   Role of the Court (Shkreli Jury Charge, I.1);

b.   Role of the Jury (Shkreli Jury Charge, I.2);

c.   Conduct of Counsel (Shkreli Jury Charge, I.3);

d.   Presumption of Innocence and Burden of Proof (Shkreli Jury Charge, I.4);

e.   Reasonable Doubt (Shkreli Jury Charge, I.5);

f.   Forms of Evidence (Shkreli Jury Charge, I.6);

g.   Direct and Circumstantial Evidence (Shkreli Jury Charge, I.7);

h.   Inferences (Shkreli Jury Charge, I.8);

i.   Admission of Defendant (Shkreli Jury Charge, I.9);

j.   Defendant's Right not to Testify (Shkreli Jury Charge, I.10);

k.   Credibility of Witnesses (Shkreli Jury Charge, I.11);

l.   Number of Witnesses (Shkreli Jury Charge, I.12);

m.   Testimony of Government Employees/Law Enforcement Witnesses (Shkreli Jury Charge, I.13);

n.   Prior Inconsistent Statements (Shkreli Jury Charge, I.14);

o.   Preparation for Testimony (Shkreli Jury Charge, I.15);

p.   No Duty to Call Witnesses or Produce Evidence or Use Particular Investigative Techniques (Shkreli Jury Charge, I.16);

q.p. Informal Agreements (Shkreli Jury Charge, I.17);

2

r.q. Consider Only this Defendant (Shkreli Jury Charge, I.18);

s.r. Approximately Dates (Shkreli Jury Charge, I.19); and

t.s. Deliberations (Shkreli Jury Charge, IV.1-7).

REQUEST NO. 2
(Knowingly, Intentionally, Willfully)

During these instructions, you will hear me use the terms "knowingly," "willfully," and "intentionally."  Therefore, I will define these terms for you.

A.  Knowingly

To act "knowingly" means to act intentionally and voluntarily, and not because of ignorance, mistake, accident, negligence, or carelessness.  Whether Mr. Greebel acted knowingly may be proven by his conduct and by all of the facts and circumstances surrounding the case.

B.  Willfully

Certain allegations in the Superseding Indictment require that the government prove beyond a reasonable doubt that Mr. Greebel acted "willfully."  "Willfully" means to act with knowledge that one's conduct is unlawful and with an intent to do something the law forbids; that is to say, with a bad purpose either to disobey or to disregard the law.  A defendant's conduct is not "willful" if it was due to negligence, inadvertence, or mistake.

C.  Intentionally

A person acts "intentionally" when he acts deliberately and purposefully.  That is, the defendant's acts must have been the product of his conscious objective decision rather than the product of a mistake or accident.

Whether a person acted knowingly, willfully, or intentionally is a question of fact for you to determine, like any other fact question.  Direct proof of knowledge and fraudulent intent is almost never available.  It would be a rare case where it could be shown that a person wrote or stated that as of a given time in the past he committed an act with fraudulent intent.  Such direct proof is not required.  The ultimate facts of knowledge and criminal intent, though subjective, may be established by circumstantial evidence, based upon a person's outward

4

manifestations, his words, his conduct, his acts and all the surrounding circumstances disclosed

by the evidence and the rational or logical inferences that may be drawn therefrom.  In either

case, the essential elements of the crime charged must be established beyond a reasonable doubt.

Authority

   Adapted from Shkreli Jury Charge, Instruction II.2.  <u>See</u> Charges of the Hon. Dora
L. Irizarry, <u>United States v. Lange, et al.</u>, No. 10-CR-968 (E.D.N.Y. 2014) (hereinafter "<u>Lange</u>");
and the Hon. Kiyo A. Matsumoto, <u>United States v. Rivera, et al.</u>, No. 13-CR-149 (E.D.N.Y. 2015)
(hereinafter "<u>Rivera</u>").

<u>REQUEST NO. 3</u>
(Count One: Wire Fraud Conspiracy)

The defendant EVAN GREEBEL is formally charged in a Superseding

Indictment. The Superseding Indictment in this case contains two counts, conspiracy to commit

wire fraud and conspiracy to commit securities fraud.  As I instructed you at the outset of this

case, the Superseding Indictment is a charge or accusation.

I will not instruct you on Count One, the wire fraud conspiracy charge.  Count

One of the Superseding Indictment charges the defendant EVAN GREEBEL with conspiracy to

commit wire fraud in connection with Retrophin as follows:

> In or about and between February 2011 and September 2014, both
> dates being approximate and inclusive, within the Eastern District
> of New York and elsewhere, the defendant EVAN GREEBEL,
> together with others, did knowingly and intentionally conspire to
> devise a scheme and artifice to defraud Retrophin, and to obtain
> money and property from Retrophin by means of materially false
> and fraudulent pretenses, representations and promises, and for the
> purpose of executing such scheme and artifice, to transmit and
> cause to be transmitted by means of wire communication in
> interstate and foreign commerce writings, signs, signals, pictures
> and sounds, contrary to Title 18, United States Code, Section 1343.

A.      <u>Conspiracy to Commit Wire Fraud</u>

I will first instruct you on conspiracy.  The relevant portion of the conspiracy

statute, Title 18, United States Code, Section 1349, provides, in relevant part that it shall be

unlawful for any person to "conspire[] to commit" wire fraud.

A conspiracy is a kind of criminal partnership, at the heart of which is an

agreement or understanding by two or more persons to violate other laws.  A conspiracy to

commit a crime is an entirely separate and different offense from the underlying crime that the

conspirators intended to commit.  Thus, if a conspiracy exists, it is still punishable as a crime,

even if it should fail to achieve its purpose.  A defendant may be found guilty of conspiracy even

6

if he was incapable of committing the substantive crime.  Consequently, for a defendant to be

guilty of conspiracy, there is no need for the government to prove that he or any other

conspirator actually succeeded in their criminal goals or even that they could have succeeded.

To prove the crime of conspiracy to commit wire fraud, the government must

prove two elements beyond a reasonable doubt:

First, that two or more persons entered into an agreement to commit wire fraud, a

crime I will define for you later in my instructions;

Second, that the defendant knowingly and intentionally became a member of the

conspiracy.

1.    First Element: Existence of the Agreement

The first element that the government must prove beyond a reasonable doubt for

Count One is that two or more persons entered into the charged agreement to commit wire fraud.

One person cannot commit a conspiracy alone.  Rather, the proof must convince you that at least

two persons joined together in a common criminal scheme.  The government need not prove that

members of the conspiracy met together or entered into any express or formal agreement.  You

need not find that the alleged conspirators stated, in words or writing, what the scheme was, its

object or purpose, or the means by which the scheme was to be accomplished.  It is sufficient to

show that the conspirators tacitly came to a mutual understanding to accomplish an unlawful act

by means of a joint plan or common design.

You may, of course, find that the existence of an agreement between two or more

persons to violate the law has been established by direct proof.  But since, by its very nature, a

conspiracy is characterized by secrecy, direct proof may not be available.  Therefore, you may

infer the existence of a conspiracy from the circumstances of this case and the conduct of the

parties involved.  In a very real sense, then, in the context of conspiracy cases, actions often

speak louder than words.  In determining whether an agreement existed here, you may consider the actions and statements of all those you find to be participants in the conspiracy as proof that a common design existed to act together for the accomplishment of the unlawful purpose stated in the Superseding Indictment.

2.     Second Element: Membership in the Conspiracy

The second element the government must prove beyond a reasonable doubt for Count One is that the defendant knowingly and intentionally became a member in the charged conspiracy.  I have explained to you what it means to act knowingly and intentionally.  A person acts knowingly and intentionally if he acts voluntarily, deliberately, and purposefully, and not because of ignorance, mistake, accident, negligence or carelessness.  In other words, did the defendant participate in the conspiracy with knowledge of its unlawful purpose and with the specific intention of furthering its business or objective? Knowledge and intent may be inferred from a secretive or irregular manner in which activities are carried out.  Whether a defendant acted knowingly may be proven by the defendant's conduct and by all of the facts and circumstances surrounding the case.

In order for a defendant to be deemed a member of a conspiracy, he need not have had a stake in the venture or its outcome.  While proof of a financial or other interest in the outcome of a scheme is not essential, if you find that a defendant did have such an interest, it is a factor you may properly consider in determining whether or not the defendant was a member of the conspiracy charged in the Superseding Indictment.

A defendant's participation in the conspiracy must be established by independent evidence of his own acts or statements, as well as those of the other alleged co-conspirators, and the reasonable inferences that may be drawn from them.

8

A defendant's knowledge may be inferred from the facts proved.  In that connection, I instruct you that, to become a member of the conspiracy, a defendant need not have been apprised of all of the activities of all members of the conspiracy.  Moreover, a defendant need not have been fully informed as to all of the details, or the scope, of the conspiracy in order to justify an inference of knowledge on his part.  In addition, a defendant need not have joined in all of the conspiracy's unlawful objectives.

In considering whether a defendant participated in a conspiracy, be advised that a conspirator's liability is not measured by the extent or duration of his participation as he need not have been a member of the conspiracy for the entire time of its existence.  In addition, each member of the conspiracy may perform separate and distinct acts and may perform them at different times.  Some conspirators play major roles, while others play minor parts in the scheme.  An equal role is not what the law requires.  Even a single act may be sufficient to draw a defendant within the ambit of the conspiracy.  The key inquiry is simply whether a defendant joined the conspiracy charged with an awareness of at least some of the basic aims and purposes of the unlawful agreement and with the intent to help it succeed.

I caution you that mere knowledge or acquiescence, without participation, in the unlawful plan is not sufficient.  Moreover, the fact that the acts of a defendant, without knowledge, merely happen to further the purposes or objectives of the conspiracy, does not make the defendant a member.  More is required under the law.  What is required is that a defendant must have participated with knowledge of at least some of the purposes or objectives of the conspiracy and with the intention of aiding in the accomplishment of those unlawful ends.  In sum, a defendant, with an understanding of the unlawful character of the conspiracy, must have

9

intentionally engaged, advised, or assisted in it for the purpose of furthering the illegal

undertaking.

If you find that the government has not proven either of these elements, then you

must find the defendant not guilty of Count One.

B.    Wire Fraud: Definition and Elements

I will now define wire fraud, which is alleged to be the object of the conspiracy

charged in Count One of the Superseding Indictment.  The relevant statute regarding wire fraud

is Section 1343 of Title 18 of the United States Code, which provides that:

> Whoever, having devised or intending to devise any scheme or
> artifice to defraud, or for obtaining money or property by means of
> false or fraudulent pretenses, representations, or promises,
> transmits or causes to be transmitted by means of wire, radio, or
> television communication in interstate or foreign commerce, any
> writings, signs, signals, pictures or sounds for the purpose of
> executing such scheme or artifice, shall be [guilty of a crime].

The elements of wire fraud are:

First, that there was a scheme or artifice to defraud or to obtain money or property

by false and fraudulent pretenses, representations or promises, as alleged in the Superseding

Indictment;

Second, that the defendant knowingly and willfully participated in the scheme or

artifice to defraud, with knowledge of its fraudulent nature and with specific intent to defraud;

and

Third, that in the execution of that scheme, the defendant used or caused the use

of interstate wires.

1.    First Element – Existence of a Scheme or Artifice to Defraud

The first element of wire fraud is that there was a scheme or artifice to defraud and to obtain money or property from it by means of false or fraudulent pretenses, representations or promises.

A "scheme or artifice" is simply a plan for the accomplishment of an objective. "Fraud" is a general term which embraces all the various means that an individual can devise and that are used by an individual to gain an advantage over another by false representations, suggestions, suppression or omission of the truth, or deliberate disregard for the truth.

A "scheme or artifice to defraud" for the purposes of the wire fraud statute is any plan, device, or course of action designed to obtain money or property by means of false representations.  Thus, a "scheme to defraud" is a plan to deprive another of money or property by trick, deceit, deception or swindle, or overreaching.  The scheme to defraud giving rise to the wire fraud conspiracy charged in Count One is alleged to have been carried out by making false representations.  A statement, representation, claim, or document is false if it is untrue when made and was known at the time to be untrue by the person making it or causing it to be made. A representation or statement is fraudulent if it was falsely made with the intention to deceive.

Deceitful statements of half-truths or the concealment or omission of material facts, and the expression of an opinion not honestly entertained may constitute false or fraudulent representations under the statute.  In particular, a fraudulent representation may include the failure to disclose material information if the defendant was under a legal, professional or contractual duty to make such a disclosure.  ~~You have heard testimony regarding the fiduciary duties of corporate officers and directors.  One such duty, the duty of loyalty,~~

One such duty to disclose arises in the context of an attorney.  An attorney acts as an agent of his client and serves as a fiduciary with respect to matters within the scope of his

agency.  As a result of this relationship, an attorney owes his client a duty of disclosure, which means that the attorney has a duty to give his client information known to the attorney which is relevant to the affairs entrusted to him and that the client would desire to have.  This duty exists if the attorney knows facts which, in view of his relationship with the client, the attorney knows may affect the desires of his client as to his own conduct or the conduct of the client or of another agent.[1]

Another such duty, which applies to corporate officers and directors, is the duty of loyalty.  That duty mandates that the best interest of the corporation and its shareholders takes precedence over any interest possessed by a director or officer, and not shared by the stockholders generally.  However, in order for a failure to disclose material information to constitute a fraudulent representation for purposes of the wire fraud statute, the defendant must

---

[1] C.I.R. v. Banks, 543 U.S. 426, 436 (2005) ("The relationship between client and attorney, regardless of the variations in particular compensation agreements or the amount of skill and effort the attorney contributes, is a quintessential principal-agent relationship. Restatement (Second) of Agency § 1, Comment *e* (1957) (hereinafter Restatement); ABA Model Rules of Professional Conduct Rule 1.3, and Comment 1; Rule 1.7, and Comment 1 (2002)."); Johnson v. Priceline.com, Inc., 711 F.3d 271, 277 (2d Cir. 2013) ("Where these elements are satisfied, '[a]n agent is a fiduciary with respect to matters within the scope of his agency.' Second Restatement § 13. Two of the fiduciary duties owed by an agent to his principal are pertinent here. First, an agent owes a duty of disclosure, specifically, a 'duty to use reasonable efforts to give his principal information which is relevant to affairs entrusted to him and [that] the principal would desire to have.' *Id.* § 381. . . ."); Evvtex Co. v. Hartley Cooper Assocs. Ltd., 102 F.3d 1327, 1332 (2d Cir. 1996) ("Specifically, an agent is 'subject to a duty to use reasonable efforts to give his principal information which is relevant to affairs entrusted to him and which, as the agent has notice, the principal would desire to have and which can be communicated without violating a superior duty to a third person.' Restatement (Second) of Agency § 381. This duty exists if the agent has notice of facts which, in view of its relations with the principal, the agent 'should know may affect the desires of his principal as to his own conduct or the conduct of the principal or of another agent.' *Id.* cmt. a."); Restatement (Second) of Agency § 381 (1958) ("Unless otherwise agreed, an agent is subject to a duty to use reasonable efforts to give his principal information which is relevant to affairs entrusted to him and which, as the agent has notice, the principal would desire to have and which can be communicated without violating a superior duty to a third person.") ; see generally United States v. Chestman, 947 F.2d 551, 568 (2d Cir. 1991) ("The common law has recognized that some associations are inherently fiduciary. Counted among these hornbook fiduciary relations are those existing between attorney and client . . . ."); In re Agent Orange Prod. Liab. Litig., 800 F.2d 14, 17 (2d Cir. 1986) ("As a matter of professional responsibility, an attorney owes a duty of loyalty to his client. This duty encompasses an obligation to defer to the client's wishes on major litigation decisions, not to divulge confidential communications from the client, and not to accept representation of a person whose interests are opposed to those of the client.").

have actually known such disclosure was required to be made, and must have failed to make such disclosure with the intent to defraud.

The fraudulent representation must relate to a material fact or matter.  A material fact in the context of wire fraud is one that reasonably would be expected to be of concern to a reasonable and prudent person in relying upon the representation or statement in making a decision.

 The deception need not be premised upon spoken or written words alone.  The arrangement of words, or the circumstances in which they are used may convey a false and deceptive appearance.  If there is intentional deception, the manner in which it is accomplished does not matter.

In addition to proving that a statement was false or fraudulent and related to a material fact, in order to establish a scheme to defraud, the government must prove that the alleged scheme contemplated depriving another of money or property.

It is not necessary that the government prove that the defendant actually realized any gain from the scheme or that the intended victim actually suffered any loss.

2.    Second Element – Participation in Scheme with Intent

The second element of wire fraud is that the defendant participated in the scheme to defraud knowingly, willfully and with the specific intent to defraud.

I already instructed you as to the meaning of "knowingly" and "willfully." I refer you to those instructions as they apply here also. (See page __.) For the purposes of the wire fraud statute, an "intent to defraud" means to act knowingly and with specific intent to deceive for the purpose of causing some financial or property loss to another.

I will remind you, however, that the question of whether a person acted knowingly, willfully and with intent to defraud is a question of fact for you to determine, like any other fact question. This question involves the defendant's state of mind. As I said before, direct proof of knowledge and fraudulent intent is not necessary. The ultimate facts of knowledge and criminal intent, though subjective, may be established by circumstantial evidence, based upon a person's outward manifestations, his or her words, his or her conduct, his or her acts and all the surrounding circumstances disclosed by the evidence and the rational or logical inferences that may be drawn from them. Circumstantial evidence, if believed, is of no less value than direct evidence.

Under the wire fraud statute, even false representations or statements, or omissions of material facts, do not amount to a fraud unless done with fraudulent intent. However misleading or deceptive a plan may be, it is not fraudulent if it was devised or carried out in good faith. An honest belief in the truth of the representations made by a defendant is a complete defense, however inaccurate the statements may turn out to be. A defendant, however, has no burden to establish a defense of good faith.

There is another consideration to bear in mind in deciding whether or not the defendant acted in good faith. You are instructed that if the defendant conspired to commit wire

14

fraud, then a belief by the defendant, if such a belief existed, that ultimately everything would work out so that no one would lose any money does not require you to find that the defendant acted in good faith.  No amount of honest belief on the part of the defendant that the scheme would, for example, ultimately make a profit for investors, will excuse fraudulent actions or false representations caused by him to obtain money or property.  I reiterate, however, that an "intent to defraud" for the purposes of the wire fraud statute means to act knowingly and with specific intent to deceive for the purpose of causing financial loss or property loss to another.  As a practical matter, then, you may find intent to defraud if the defendant knew that his conduct as a participant in the scheme was calculated to deceive and, nonetheless, he associated himself with the alleged fraudulent scheme for the purpose of causing loss to another.

> 3.  <u>Third Element – Use of the Wires</u>

The third and final element of wire fraud is the use of an interstate or international wire communication in furtherance of the scheme to defraud.  The wire communication must pass between two or more states, or it must pass between the United States and a foreign country.  A wire communication includes a wire transfer of funds between banks in different states, telephone calls, emails and facsimiles between two different states.

The item sent through the wires need not itself contain a fraudulent representation.  However, it must further or assist in the carrying out of the scheme to defraud.  It is not necessary for the defendant to be directly or personally involved in the wire communication, as long as the communication was reasonably foreseeable in the execution of the alleged scheme to defraud in which the defendant is accused of participating.

I remind you that the government need not prove that the defendant actually committed wire fraud, the unlawful act charged as the object of the conspiracy in Count One.  Rather, what the government must prove beyond a reasonable doubt is that the purpose of the

conspiracy was to commit wire fraud, and that the defendant knowingly and intentionally joined that conspiracy.

      C.    <u>Venue</u>

        I have explained to you the elements the government must prove beyond a reasonable doubt as to Count One.  The government must also prove venue.  Unlike the elements I just explained to you that the government must prove beyond a reasonable doubt, the government must prove venue by a preponderance of the evidence.  To establish a fact by a preponderance of the evidence means to prove that the fact is more likely true than not.  A preponderance of the evidence means the greater weight of the evidence, both direct and circumstantial.  It refers to the quality and persuasiveness of the evidence, not to the quantity of evidence.

        To establish venue for wire fraud conspiracy as charged in Count One, the government must prove that it is more likely than not that an overt act in furtherance of the conspiracy occurred, at least in part, in the Eastern District of New York, which consists of the Counties of Kings (also known as Brooklyn), Queens, Richmond (also known as Staten Island), Nassau, and Suffolk.  In this regard, the government need not prove that the crime charged was committed in the Eastern District of New York or that the defendant or any alleged coconspirator was even physically present here. It is sufficient to satisfy the venue requirement if an overt act in furtherance of the conspiracy occurred within the Eastern District of New York. This includes not just acts by the defendant or his coconspirators, but also acts that the conspirators caused others to take that materially furthered the ends of the conspiracy.

        Therefore, if you find that it is more likely than not that an act or transaction in furtherance of the wire fraud conspiracy took place in the Eastern District of New York, the government has satisfied its burden of proof as to venue as to Count One.

Again, I caution you that the preponderance of the evidence standard applies only to venue.  The government must prove each of the elements of conspiracy to commit wire fraud in Count One beyond a reasonable doubt.

* * * * *

In sum, if you find that the government has failed to prove either of the elements of conspiracy for Count One beyond a reasonable doubt, then you must find Mr. Greebel not guilty of wire fraud conspiracy.  To find Mr. Greebel guilty of conspiracy to commit wire fraud as charged in Count One, you must find that the government has proven, beyond a reasonable doubt, both elements of conspiracy as charged in Count One, and that the government has also established venue on that count by a preponderance of the evidence.

<u>Authority</u>

Adapted from Shkreli Jury Charge, instructions for Counts One and Four, Two and Five, and Seven; <u>see</u> <u>Lange</u> and <u>Rivera</u>; Sand, <u>et al.</u>, <u>Modern Federal Jury Instructions</u>, Instruction 3-11.

17

<u>REQUEST NO. 4</u>
(Conscious Avoidance: Wire Fraud Conspiracy)

[*If Applicable*]

As I explained, for purposes of Count One, the Government is required to prove that the defendant knowingly and intentionally became a member of the conspiracy and that the object of the conspiracy was to commit wire fraud.  In determining whether the defendant acted knowingly with respect to the object or objects of the conspiracy, you may consider whether the defendant deliberately closed his eyes to what would otherwise have been obvious to him.

If you find beyond a reasonable doubt that the defendant was aware that there was a high probability that his co-conspirators' objective was to violate the law as charged in Count One but that the defendant deliberately avoided confirming this fact, you may treat this deliberate avoidance of positive knowledge as the equivalent of knowledge of the object of the charged conspiracy.  However, if you find that the defendant actually believed that he or his co-conspirators were acting in a lawful manner, he may not be convicted of the charge in Count One.

Moreover, guilty knowledge may not be established by demonstrating that the defendant was merely negligent, foolish, or mistaken.  There is a difference between knowingly participating in the conspiracy and knowing the objects of the conspiracy.  "Conscious avoidance" or "willful blindness" as I have described it cannot be used as a basis for finding that the defendant knowingly joined the conspiracy.  It is logically impossible for a defendant to join the conspiracy unless he or she knows the fact that the conspiracy exists.

However, if you find beyond a reasonable doubt that the defendant chose to participate in a joint undertaking, you may consider whether the defendant deliberately avoided

18

confirming an otherwise obvious fact: that the purpose of the partnership he joined was to violate

the law as charged in Count One.

Authority

Adapted from: the charge given by the Hon. Vernon S. Broderick in <u>United States v. Ng Lap Seng</u>, No. 15-CR-706 (VSB) (S.D.N.Y. July 26, 2017), as reflected in the trial transcript for proceedings on July 26, 2017 (ECF Dkt. No. 610); and from Sand <u>et al.</u>, <u>Modern Federal Jury Instructions</u>, 3A-2.  <u>See id.</u> cmt. ("Instruction 3A-2 is appropriate when a defendant has claimed a . . .  lack of knowledge as to the unlawful aims of a conspiracy, but the evidence suggests deliberate ignorance.").

"A conscious-avoidance charge is appropriate when (a) the element of knowledge is in dispute, and (b) the evidence would permit a rational juror to conclude beyond a reasonable doubt that the defendant was aware of a high probability of the fact in dispute and consciously avoided confirming that fact."  <u>United States v. Hopkins</u>, 53 F.3d 533, 542 (2d Cir. 1995) (citations and internal quotation marks omitted).  The Second Circuit has cautioned that "the prosecutor should request that the 'high probability' and 'actual belief' language be incorporated into every conscious avoidance charge."  <u>United States v. Feroz</u>, 848 F.2d 359, 360 (2d Cir. 1988) (per curiam) ("[K]nowledge of the existence of a particular fact is established (1) if a person is aware of a high probability of its existence, (2) unless he actually believes that it does not exist.").  Second Circuit "precedents establish that the doctrine [of conscious avoidance] may be invoked to prove defendant had *knowledge* of the unlawful conspiracy.  But we do not permit the doctrine to be used to prove intent to participate in a conspiracy.  The reason for this distinction is that common sense teaches it is logically impossible to intend and agree to join a conspiracy if a defendant does not know of its existence.  Yet once defendant's participation in a conspiracy has been proved, conscious avoidance may properly be used to prove his knowledge of its unlawful objectives."  <u>United States v. Reyes</u>, 302 F.3d 48, 54–55 (2d Cir. 2002).

REQUEST NO. 5
(Count Two: Securities Fraud Conspiracy)

I will next go over the securities fraud conspiracy charge. Count Two of the

Superseding Indictment charges the defendant EVAN GREEBEL with conspiracy to commit

securities fraud in connection with Retrophin as follows:

> In or about and between November 2012 and September 2014, both dates being approximate and inclusive, within the Eastern District of New York and elsewhere, the defendant EVAN GREEBEL, together with others, did knowingly and willfully conspire to use and employ manipulative and deceptive devices and contrivances, contrary to Rule 10b-5 of the Rules and Regulations of the United States Securities and Exchange Commission, Title 17, Code of Federal Regulations, Section 240.10b-5, by: (a) employing devices, schemes and artifices to defraud; (b) making untrue statements of material fact and omitting to state material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading; and (c) engaging in acts, practices and courses of business which would and did operate as a fraud and deceit upon investors and potential investors in Retrophin, in connection with the purchase and sale of securities of Retrophin, directly and indirectly, by use of means and instrumentalities of interstate commerce and the mails, contrary to Title 15, United States Code, Sections 78j(b) and 78ff.

> In furtherance of the conspiracy and to effect its objects, within the Eastern District of New York and elsewhere, the defendant EVAN GREEBEL, together with others, committed and caused to be committed, among others, the following:

> a. On or about December 12, 2012, GREEBEL sent an email to Co-Conspirator 1, attaching six stock purchase agreements, and stated, in part, "attached are purchase agreements for the acquisition of the [unrestricted] stock. . . . Please ask each person to sign the last page and return it to me."

> b. On or about December 13, 2012, GREEBEL sent an email to Co-Conspirator 1 and another one of the seven employees and contractors who received unrestricted or free trading shares, and stated, in part, "Please send me an email confirming the following: I represent that I am not an officer, a director, or holder of 10% or more of the outstanding equity securities of Desert

20

Gateway and do not, alone or together with any other person, exercise control over Desert Gateway."

c.      On or about December 17, 2012, Martin Shkreli sent an email to all employees, copying six of the seven employees and contractors who received unrestricted and free trading shares, and stated that Retrophin now had four employees and that everyone else, including the employees and contractors who received the unrestricted or free trading shares, were no longer employees or consultants to Retrophin or MSMB even though they could continue using Retrophin's office space as a courtesy.  Martin Shkreli then forwarded this email to GREEBEL

d.      On or about December 20, 2012, GREEBEL sent an email to Martin Shkreli, attaching a Schedule 13D, and stated, "Attached is a draft of the 13D.  We should discuss."

e.      On or about December 20, Martin Shkreli filed a Schedule 13D with the SEC that failed to disclose his control over any of the unrestricted or free trading shares.

f.      On or about January 2, 2013, Martin Shkreli sent an email to GREEBEL requesting GREEBEL's thoughts on a draft email that Martin Shkreli wanted to send to one of the seven employees and consultants who received unrestricted or free trading shares and who was selling his RTRX stock.  In the draft email, Martin Shkreli stated, in part, "I have decided to commence litigation against you for failing to honor the agreement we made in our office on December 10th.  You agreed to work for MSMB . . . Instead you have failed to come to the office and will not even return my telephone calls."  Less than thirty minutes later, GREEBEL replied to Martin Shkreli, and stated, "Very risky given what you[r] agreement was – could be opening a much bigger can of worms."

g.      On or about January 18, 2013, GREEBEL sent an email to Martin Shkreli, and stated, in part, "I just need the [$100,000] and can be patient again; ive [sic] gotten you out of paying a lot of people, I cant [sic] be left stuck at this point on this."  Later that day, GREEBEL sent another email, and stated, in part, "[I've] repeadtedy [sic] done all you ask and very rarely chase you for money."

h.      On or about February 19, 2013, Martin Shkreli filed an amended Schedule 13D with the SEC that failed to disclose his control over any of the unrestricted or free trading shares.

21

i.      On or about March 8, 2013, GREEBEL sent an email to Martin Shkreli, and stated, "[John Doe 1] and the 'purchasers' are signing an amendment to their purchase agreement and in the amendment the 'purchaser' is directing [John Doe 1] to have the stock delivered to the designated people."

j.      On or about April 10, 2013, GREEBEL sent an email to John Doe 1 and Martin Shkreli, and stated, in part, "The 50k [unrestricted or free trading] shares that were owed to [Co-Conspirator 1] should be broken down as follows . . . ."

k.      On or about May 9, 2013, in response to an email from GREEBEL requesting the source of unrestricted or free trading shares to settle a dispute with a defrauded MSMB Healthcare investor, Martin Shkreli stated, "Take from anyone – I don't care – do the math?"

l.      On or about January 15, 2014, GREEBEL sent an email to Martin Shkreli concerning a request by Investor 1 for, inter alia, 100,000 unrestricted or free trading shares and stated, in part, "As you may recall, we discussed that [Co-Conspirator 1] could transfer 100k shares of stock to [Investor 1] and we could have the board approve a 100k grant of new RTRX stock to [Co-Conspirator 1]."  In response, Martin Shkreli stated, in part, "Smarter thing to do is to give him 200K restricted stock and have him swap any and all he wants for free trading from our employees."

A.      Conspiracy to Commit Securities Fraud

I have already instructed you on conspiracy generally when discussing Count One, the conspiracy to commit wire fraud.  (See page __.)  There are some additional instructions I will provide that relate to the conspiracy to commit securities fraud charged in Count Two.

To prove the crime of conspiracy to commit securities fraud, the government must prove four elements beyond a reasonable doubt:

First, that two or more persons entered into an agreement to commit securities fraud, a crime I will define for you in a few minutes;

Second, that the defendant knowingly and intentionally became a member of the conspiracy; and

Third, that one of the members of the conspiracy committed at least one of the overt acts charged in the Superseding Indictment; and

Fourth, that at least one overt act was in furtherance of some object or purpose of the conspiracy as charged in the Superseding Indictment.

As with conspiracy to commit wire fraud, a defendant may be found guilty of conspiracy to commit securities fraud even if he was incapable of committing the substantive crime.  Consequently, for a defendant to be guilty of conspiracy, there is no need for the government to prove that he or any other conspirator actually succeeded in their criminal goals or even that they could have succeeded.

I will now discuss the four elements that the government must prove beyond a reasonable doubt to prove the charge of conspiracy to commit securities fraud.

1.     First Element: Existence of the Agreement

The first element that the government must prove beyond a reasonable doubt for Count Two is that two or more persons entered into the charged agreement to commit securities fraud.  I have previously explained to you what it means to enter into an agreement for purposes of a conspiracy.  (See page __.)

2.     Second Element: Membership in the Conspiracy

The second element the government must prove beyond a reasonable doubt for Count Two is that the defendant knowingly and intentionally became a member in the charged conspiracy.  I have previously explained to you what it means to knowingly and intentionally become a member of a conspiracy.  (See page __.)

3.     Third Element: Overt Acts

The third element the government must prove beyond a reasonable doubt for Count Two is that one of the members of the conspiracy knowingly committed at least one of the overt acts charged in the Superseding Indictment, as I read them before.

In order for the government to satisfy this element, it is not required that all of the overt acts alleged in the Superseding Indictment be proven or that the overt act was committed at precisely the time alleged in the Superseding Indictment.  It is sufficient if you are convinced beyond a reasonable doubt that the overt act occurred at or about the time and place stated.  Similarly, you need not find that the defendant himself committed the overt act.  It is sufficient for the government to show that one of the conspirators knowingly committed an overt act in furtherance of the conspiracy, since, in the eyes of the law, such an act becomes the act of all of the members of the conspiracy.

4.      Fourth Element: In Furtherance of Some Objective of the Conspiracy

Finally, if you find that an overt act or acts were committed, the government must prove beyond a reasonable doubt that the overt act or acts were done specifically to further some objective of the conspiracy.

In order for the government to satisfy this element, it must prove, beyond a reasonable doubt, that at least one overt act was knowingly and willfully done, by at least one conspirator, in furtherance of some object or purpose of the conspiracy as charged in the Superseding Indictment.  In this regard, you should bear in mind that the overt act, standing alone, may be an innocent, lawful act.  Frequently, however, an apparently innocent act sheds its harmless character if it is a step in carrying out, promoting, aiding or assisting the conspiratorial scheme.  Therefore, you are instructed that the overt act does not have to be an act which, in and of itself, is criminal or constitutes an objective of the conspiracy.

In sum, in order to prove that the defendant is guilty of Count Two, the government must prove, beyond a reasonable doubt: 1) that the defendant entered into an agreement with one or more individuals to commit securities fraud; 2) that the defendant knowingly and intentionally joined the conspiracy; 3) that at least one of the overt acts alleged in the Superseding Indictment was committed by at least one member of the conspiracy; and 4) that the overt act was committed specifically to further some objective of the conspiracy.

If you find that the government has not proven any one of these elements, then you must find the defendant not guilty of Count Two.  Remember, however, that the government need not prove that the defendant actually committed securities fraud, the unlawful acts charged as the object of the conspiracy in Count Two.

B.      Securities Fraud: Definition and Elements

I will now define securities fraud, which is alleged to be the object of the conspiracy charged in Count Two of the Superseding Indictment.  The relevant statute is Section 10(b) of the Securities Exchange Act of 1934.  That law provides in relevant part that:

> It shall be unlawful for any person, directly or indirectly, by the use of any means or instrumentality of interstate commerce or of the mails, or any facility of any national securities exchange –
> (b) To use or employ, in connection with the purchase or sale of any security registered on a national securities exchange or any security not so registered . . . any manipulative or deceptive device or contrivance in contravention of such rules and regulations as the [Securities and Exchange Commission ("SEC")] may prescribe as necessary or appropriate in the public interest or for the protection of investors.

Based on its authority under this statute, the SEC enacted Rule 10b-5, which provides:

> It shall be unlawful for any person, directly or indirectly, by the use of any means or instrumentality of interstate commerce, or of the mails or of any facility of any national securities exchange,
> (a) To employ any device, scheme, or artifice to defraud,
> (b) To make any untrue statement of a material fact or to omit to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading, or
> (c) To engage in any act, practice, or course of business which operates or would operate as a fraud or deceit upon any person, in connection with the purchase or sale of any security.

The following are the three elements of the crime of securities fraud.

1.     First Element - Fraudulent Act

The first element is that, in connection with the purchase or sale of a security, a defendant did one or more of the following:

(1) employed a device, scheme or artifice to defraud, or

(2) made an untrue statement of a material fact or omitted to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading, or

(3) engaged in an act, practice or course of business that operated, or would operate, as a fraud or deceit upon a purchaser or seller of any security.

In this case, the charged conspiracy to commit securities fraud related to the purchase or sale of Retrophin stock, which is a security.

Let me now explain some of these terms.

- *Device, Scheme, or Artifice to Defraud*:  A device, scheme or artifice to defraud is a plan for the accomplishment of a fraud.  Fraud is a general term which embraces all efforts and means that individuals devise to take advantage of others. The law that the defendant is alleged to have violated prohibits all kinds of manipulative and deceptive acts.  The fraudulent or deceitful conduct alleged need not relate to the investment value of the securities involved in the case.

  Any conduct that is designed to deceive or defraud investors by controlling or artificially affecting the price of securities is prohibited.  An essential element of manipulation of securities is the deception of investors into believing that the prices at which they purchase and sell securities are determined by the natural interplay of supply and demand.

27

- *False Statements and Omissions*:  A statement, representation, claim, or document is false if it is untrue when made and was then known to be untrue by the person making it or causing it to be made.  A representation or statement is fraudulent if it was made with the intention to deceive.  False or fraudulent statements under the statute may include the concealment of material facts in a manner that makes what is said or represented deliberately misleading.  The deception need not be based upon spoken or written words alone.  The arrangement of the words, or the circumstances in which they are used, may convey the false and deceptive appearance.  If there is deception, the manner in which it is accomplished does not matter.

- *"In Connection With"*:  The "in connection with" aspect of this element is satisfied if there was some nexus or relation between the allegedly fraudulent conduct and the sale or purchase of securities.  Fraudulent conduct may be "in connection with" the purchase or sale of securities if the alleged fraudulent conduct "touched upon" a securities transaction.  The government need not prove that a defendant actually participated in any securities transaction if he was engaged in fraudulent conduct that was "in connection with" a purchase or sale of securities.  Again, I remind you that, in this case, the charged conspiracy to commit securities fraud relates to the purchase or sale of Retrophin stock. It is no defense to an overall scheme to defraud that a defendant may not have been involved in the scheme from its inception or may have played only a minor role with no contact with the investors and purchasers of the securities in question.  Nor is it necessary for you to find that a defendant was the actual seller or offeror of the securities.  It is sufficient if a defendant participated in the scheme or fraudulent conduct that involved the purchase or sale of securities.  By the same token, the government need not prove that

28

a defendant personally made the misrepresentation or that he omitted the material fact.  It is sufficient if the government establishes that the defendant caused the statement to be made or the fact to be omitted.  With regard to the alleged misrepresentations and omissions, you must determine whether the statement was true or false when it was made, and, in the case of alleged omissions, whether the omission was misleading.

- *Material Fact*: The government must also establish that the fact or facts that were misstated or omitted in connection with the purchase or sale of any securities were material under the circumstances.  "A misrepresentation is material under Section 10(b) of the Securities Exchange Act and Rule 10b–5 where there is a substantial likelihood that a reasonable investor would find the misrepresentation important in making an investment decision."  If there was a material misrepresentation or omission of a material fact, it does not matter whether the intended victims were gullible buyers or sophisticated investors, because the securities laws protect the gullible and unsophisticated as well as the experienced investor.

It does not matter whether the alleged unlawful conduct was successful or not, or that a defendant profited or received any benefits as a result of the alleged scheme.  Success is not an element of the crime charged.

2.    Second Element - Knowledge, Intent and Willfulness

The second element is that a defendant acted knowingly, willfully and with intent to defraud.

As I explained before, a person acts "knowingly" if he acts purposely and voluntarily and not because of ignorance, mistake, accident, negligence, or carelessness.

"Willfully" means to act knowingly and purposely, with an intent to do something the law forbids, that is to say, with bad purpose either to disobey or to disregard the law.

29

"Intent to defraud" in the context of the securities laws means to act knowingly and with intent to deceive.

3.    Third Element - Instrumentality of Interstate Commerce

The third and final element is that a defendant knowingly used, or caused to be used, the mails or any means or instrumentalities of transportation or communication in interstate commerce in furtherance of the scheme to defraud.  This would include the use of a telephone, a bank wire transfer or an email sent over the Internet that traveled across state lines.

It is not necessary that a defendant be directly or personally involved in any mailing, wire, or use of an instrumentality of interstate commerce.  If the defendant was an active participant in the scheme and took steps or engaged in conduct which he knew or reasonably could foresee would naturally and probably result in the use of interstate means of communication, then you may find that he caused the mails or an instrumentality of interstate commerce to be used.

When one does an act with the knowledge that the use of interstate means of communication will follow in the ordinary course of business, or where such use reasonably can be foreseen, even though not actually intended, then he causes such means to be used.

It is not necessary that the items sent through interstate means of communication contain the fraudulent material, or anything criminal or objectionable.  The interstate means of communication may be entirely innocent.

The use of interstate communications need not be central to the execution of the scheme, and may even be incidental to it.  All that is required is that the use of the interstate communications bear some relation to the object of the scheme or fraudulent conduct.  In fact, the actual offer or sale need not be accomplished by the use of interstate communications, so

30

long as a defendant is still engaged in actions that are a part of the fraudulent scheme when interstate communications are used.

I remind you that the government need not prove that the defendant actually committed securities fraud, the unlawful act charged as the object of the conspiracy in Count Two.

C.    <u>Affiliate</u>

In connection with Count Two, you have also heard the parties use the term "affiliate."  An "affiliate" of an issuer under the law means a person that directly, or indirectly through one or more intermediaries controls, or is controlled by, or is under common control with, such issuer.  Whether a person is an affiliate of Retrophin is a question of fact for the jury.

D.    <u>Venue</u>

I have explained to you the elements the government must prove beyond a reasonable doubt as to Count Two.  The government also must prove venue.  As I explained to you earlier, the government must prove venue only by a preponderance of the evidence.  I remind you that to establish a fact by a preponderance of the evidence means to prove that the fact is more likely true than not.

To establish venue for securities fraud as charged in Count Two, the government must prove that it is more likely than not that: (1) the defendant intentionally and knowingly caused an act or transaction constituting a securities fraud to occur in the Eastern District of New York, which consists of the Counties of Kings, Queens, Richmond, Nassau, and Suffolk, or (2) it was foreseeable that such an act or transaction would occur in the Eastern District of New York and it did.

The government need not prove that the defendant personally was present in the Eastern District of New York.  It is sufficient to satisfy the venue requirement if the defendant

31

intentionally and knowingly caused an act or transaction constituting a securities fraud to occur, at least in part, within the Eastern District of New York. The government also must prove that the act or transaction must be a part of the actual crime of securities fraud and not merely a step taken in preparation for the commission of the crime.

Therefore, if you find that it is more likely than not that an overt act in furtherance of the conspiracy took place in the Eastern District of New York, the government has satisfied its burden of proof as to venue as to Count Two. Again, I caution you that the preponderance of the evidence standard applies only to venue. The government must prove each of the elements beyond a reasonable doubt.

* * * * *

In sum, if you find that the government has failed to prove any one of the elements for Count Two beyond a reasonable doubt, then you must find the defendant not guilty of securities fraud conspiracy for that count. To find the defendant guilty of conspiring to commit securities fraud as charged in Count Two, you must find that the government has proven, beyond a reasonable doubt, each element of the conspiracy to commit securities fraud, and that the government has also established venue for that count by a preponderance of the evidence.

Authority

Adapted from Shkreli Jury Charge, instructions for Counts Three and Six, One and Four, and Eight; see Lange; Sand, et al., Modern Federal Jury Instructions, Instructions 57-20, 57-21, 57-25; Hon. Denny Chin, United States v. Nouri, No. 07-CR-1029 (S.D.N.Y.); Hon. Leonard B. Sand, United States v. Pignatiello, No. 96-CR-032 (S.D.N.Y.). See United States v. Santoro, 302 F.3d 76, 81 (2d Cir. 2002) ("Unlike customers who independently find their stocks and whose brokers merely execute trades at their command, customers who rely on investment recommendations reasonably trust their brokers to fully disclose all information pertinent to the recommendation and quality of the investment."); United States v. Szur, 289 F.3d 200, 210 (2d Cir. 2002). See also United States v. Lange, 834 F.3d 58, 69-71 (2d Cir. 2016) (citing United States v. Tzolov, 642 F.3d 314, 319 (2d Cir. 2011)); United States v. Svoboda, 347 F.3d 471, 483 (2d Cir. 2003) (securities fraud venue)).

REQUEST NO. 6
(Conscious Avoidance: Securities Fraud Conspiracy)

[*If Applicable*]

As I explained, for purposes of Count Two, the Government is required to prove, among other things, that the defendant knowingly and intentionally became a member of the conspiracy and that the object of the conspiracy was to commit securities fraud. In determining whether the defendant acted knowingly with respect to the object or objects of the conspiracy, you may consider whether the defendant deliberately closed his eyes to what would otherwise have been obvious to him.

If you find beyond a reasonable doubt that the defendant was aware that there was a high probability that his co-conspirators' objective was to violate the law as charged in Count Two but that the defendant deliberately avoided confirming this fact, you may treat this deliberate avoidance of positive knowledge as the equivalent of knowledge of the object of the charged conspiracy. However, if you find that the defendant actually believed that he or his co-conspirators were acting in a lawful manner, he may not be convicted of the charge in Count Two.

Moreover, guilty knowledge may not be established by demonstrating that the defendant was merely negligent, foolish, or mistaken. There is a difference between knowingly participating in the conspiracy and knowing the objects of the conspiracy. "Conscious avoidance" or "willful blindness" as I have described it cannot be used as a basis for finding that the defendant knowingly joined the conspiracy. It is logically impossible for a defendant to join the conspiracy unless he or she knows the fact that the conspiracy exists.

However, if you find beyond a reasonable doubt that the defendant chose to participate in a joint undertaking, you may consider whether the defendant deliberately avoided

33

confirming an otherwise obvious fact: that the purpose of the partnership he joined was to violate the law as charged in Count Two.

<u>Authority</u>

Adapted from: the charge given by the Hon. Vernon S. Broderick in <u>United States v. Ng Lap Seng</u>, No. 15-CR-706 (VSB) (S.D.N.Y. July 26, 2017), as reflected in the trial transcript for proceedings on July 26, 2017 (ECF Dkt. No. 610); and from Sand <u>et al.</u>, <u>Modern Federal Jury Instructions</u>, 3A-2.  <u>See</u> <u>id.</u> cmt. ("Instruction 3A-2 is appropriate when a defendant has claimed a . . .  lack of knowledge as to the unlawful aims of a conspiracy, but the evidence suggests deliberate ignorance.").

## REQUEST NO. 7
(Defendant's Interest If Defendant Testifies)

In a criminal case, a defendant cannot be required to testify, but, if he chooses to testify, he is, of course, permitted to take the witness stand on his own behalf.  In this case, the defendant decided to testify.  You should examine and evaluate the testimony of the defendant just as you would the testimony of any witness with an interest in the outcome of this case.


Authority

Adapted from Rivera; Sand, et al., Modern Federal Jury Instructions, Instruction 7-4.

35

REQUEST NO. 8
(Expert Witnesses)

[*If applicable*]

In this case, I have permitted certain witnesses to express their opinions about matters that are in issue.  A witness may be permitted to testify to an opinion on those matters about which he or she has special knowledge, skill, experience, and training.  Such testimony is presented to you on the theory that someone who is experienced and knowledgeable in the field can assist you in understanding the evidence or in reaching an independent decision on the facts.

In weighing this opinion testimony, you may consider the witness's qualifications, his or her opinions, the reasons for testifying, as well as all of the other considerations that ordinarily apply when you are deciding whether or not to believe a witness's testimony.  You may give the opinion testimony whatever weight, if any, you find it deserves in light of all the evidence in this case.  You should not, however, accept opinion testimony merely because I allowed the witness to testify concerning his or her opinion.  Nor should you substitute it for your own reason, judgment, and common sense.  The determination of the facts in this case rests solely with you.

Authority

Adapted from Rivera; Sand, et al., Modern Federal Jury Instructions, Instruction 7-21.

36

REQUEST NO. 9
(Redactions)

Among the exhibits received in evidence, there are some documents that are redacted.  "Redacted" means that part of the document was taken out.  You are to concern yourself only with the part of the document that has been admitted into evidence.  You should not consider any possible reason why the other part of it has been redacted.


Authority

Adapted from the Charge of the Hon. Kimba M. Wood, United States v. Cespedes-Pena, 14-CR-520 (S.D.N.Y. 2015).

## REQUEST NO. 10
### (No Duty to Call Witnesses or Produce Evidence or Use Particular Investigative Techniques)

Although the government bears the burden of proof, and although a reasonable doubt can arise from lack of evidence, you are instructed that there is no legal requirement that the government use any specific investigative techniques or pursue every investigative lead to prove its case. Therefore, although you are to carefully consider the evidence adduced by the government, you are not to speculate as to why they used the techniques they did or why they did not use other techniques. The government and its investigative techniques are not on trial.

In this regard, I also charge you that all persons who may have been present at any time or place mentioned in the case, or who may appear to have some knowledge of the issues in this case, need not be called as witnesses. Nor does the law require that all things mentioned during the course of the trial be produced as exhibits. I remind you, however, that the government bears the burden of proof.


Authority

Adapted from Rivera; Sand, Modern Federal Jury Instructions, Instruction 4-4; United States v. Saldarriaga, 204 F.3d 50, 52 (2d Cir. 2000) (per curiam) et al., United States v. Knox, 687 Fed. Appx. 51, 54-55 (2d Cir. Apr. 14, 2017) (summary order).

<u>CONCLUSION</u>

The government respectfully requests that the Court include the foregoing in its instructions to the jury.  In addition, the government requests the opportunity to submit further instructions or amend those submitted as appropriate.

Dated:  Brooklyn, New York
        August 11November 28, 2017

                                       Respectfully submitted,

                                       BRIDGET M. ROHDE
                                       Acting United States Attorney
                                       Eastern District of New York

By:     /s/
                                         Alixandra E. Smith
                                       David C. Pitluck
                                       David K. Kessler
                                       Assistant U.S. Attorneys
                                       (718) 254-7000

cc:     Clerk of the Court (KAM) (by ECF)
        All counsel of record (by ECF)

39