UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

|  |  |
|---|---|
| UNITED STATES OF AMERICA<br><br>-against-<br><br>EVAN GREEBEL,<br><br>           *Defendant.* | ECF Case<br><br>No. 15-cr-00637 (KAM) |

**<u>EVAN GREEBEL'S PROPOSED JURY INSTRUCTIONS</u>**

*/s/ Reed Brodsky*
Reed Brodsky
Winston Y. Chan
Mylan L. Denerstein
Randy M. Mastro
Lisa H. Rubin

GIBSON, DUNN & CRUTCHER LLP
200 Park Avenue
New York, NY 10166
(212) 351-4000
rbrodsky@gibsondunn.com
*Counsel for Evan Greebel*

# TABLE OF CONTENTS

Page

INTRODUCTION .................................................................................................... 1

I. GENERAL RULES OF LAW ............................................................................... 2

    1.   PROPOSED INSTRUCTION 1: Role of the Court......................................... 2

    2.   PROPOSED INSTRUCTION 2:  Role of the Jury ......................................... 3

    3.   PROPOSED INSTRUCTION 3:  Conduct of Counsel ................................. 6

    4.   PROPOSED INSTRUCTION 4:  Presumption of Innocence and Burden of Proof............................................................................................................ 7

    5.   PROPOSED INSTRUCTION 5:  Reasonable Doubt .................................... 8

    6.   PROPOSED INSTRUCTION 6:  Forms of Evidence ................................... 9

    7.   PROPOSED INSTRUCTION 7:  Direct and Circumstantial Evidence: ..................... 12

    8.   PROPOSED INSTRUCTION 8:  Inferences ............................................... 14

    9.   PROPOSED INSTRUCTION 9:  Defendant's Right Not to Testify [if applicable] ................................................................................................. 15

    10.  PROPOSED INSTRUCTION 10:  Credibility of Witnesses.......................... 16

    11.  PROPOSED INSTRUCTION 11:  Impeachment of Witnesses ..................... 19

    12.  PROPOSED INSTRUCTION 12:  Testimony of Government Employees and Law Enforcement Witnesses.......................................................... 20

    13.  PROPOSED INSTRUCTION 13:  Expert Witnesses.................................... 21

    14.  PROPOSED INSTRUCTION 14:  Prior Inconsistent Statements................. 22

    15.  PROPOSED INSTRUCTION 15:  Preparation for Testimony .................... 23

    16.  PROPOSED INSTRUCTION 16:  No Duty to Call Witnesses or Produce Evidence or Use Particular Investigative Techniques........................... 24

    17.  PROPOSED INSTRUCTION 17:  Witness's Non-Prosecution and Immunity Agreements with the Government ............................................. 25

    18.  PROPOSED INSTRUCTION 18:  Approximate Dates ............................ 26

II. THE CHARGES.................................................................................................. 27

    19.  PROPOSED INSTRUCTION 19:  Summary of the Superseding Indictment; Consider Only the Charges; Consider Each Count Separately ...................... 28

# TABLE OF CONTENTS
## (continued)

Page

20. PROPOSED INSTRUCTION 20:  Knowingly, Willfully, and Intentionally Defined ........................................................................... 29

COUNT SEVEN ............................................................................................. 31

21. PROPOSED INSTRUCTION 21:  Summary of the Charge ....................................... 31

22. PROPOSED INSTRUCTION 22:  Conspiracy to Commit Wire Fraud: Elements of the Offense ................................................................... 34

23. PROPOSED INSTRUCTION 23:  First Element: Existence of the Agreement ......... 36

24. PROPOSED INSTRUCTION 24:  Second Element: Membership in the Conspiracy .................................................................................... 39

25. PROPOSED INSTRUCTION 25:  Multiple Conspiracies ........................................... 42

26. PROPOSED INSTRUCTION 26:  All Three Subprongs of Count Seven Make Up One Unitary Conspiracy ........................................................ 43

27. PROPOSED INSTRUCTION 27:  "Specific Intent to Defraud" Defined .................. 44

28. PROPOSED INSTRUCTION 28:  Wire Fraud: Definition and Elements ................. 45

29. PROPOSED INSTRUCTION 29:  First Element: Existence of a Scheme or Artifice to Defraud .................................................................... 46

30. PROPOSED INSTRUCTION 30:  Second Element: Participation in Scheme with Intent to Defraud .................................................................. 49

31. PROPOSED INSTRUCTION 31:  Third Element: Use of the Wires ......................... 51

32. PROPOSED INSTRUCTION 32:  Venue ................................................................... 53

33. PROPOSED INSTRUCTION 33:  Relationship to Retrophin's Board ...................... 55

34. PROPOSED INSTRUCTION 34:  Standards Unclear ................................................ 58

35. PROPOSED INSTRUCTION 35:  GAAP Standards .................................................. 59

36. PROPOSED INSTRUCTION 36:  Wash Trades ........................................................ 60

37. PROPOSED INSTRUCTION 37:  Alter Ego/Piercing the Corporate Veil................. 61

38. PROPOSED INSTRUCTION 38:  The Attorney-Client Relationship......................... 62

COUNT EIGHT .............................................................................................. 63

39. PROPOSED INSTRUCTION 39:  Summary of the Charge ....................................... 63

# TABLE OF CONTENTS
## (continued)

Page

40.  PROPOSED INSTRUCTION 40: Conspiracy to Commit Securities Fraud: Elements of the Offense ............................................................. 64

41.  PROPOSED INSTRUCTION 41:  Securities Fraud: The Statute and Rule ................ 66

42.  PROPOSED INSTRUCTION 42:  First Element: Fraudulent Act ............................. 67

43.  PROPOSED INSTRUCTION 43:  Puffery; Forward-Looking Statements; Optimism ................................................................................. 71

44.  PROPOSED INSTRUCTION 44:  Lockup Agreements .............................................. 73

45.  PROPOSED INSTRUCTION 45:  Second Element: Knowledge, Intent, and Willfulness ........................................................................... 74

46.  PROPOSED INSTRUCTION 46:  Third Element: Instrumentality of Interstate Commerce ............................................................................ 77

47.  PROPOSED INSTRUCTION 47:  Venue ................................................................... 79

III. DEFENSES ......................................................................................................... 80

48.  PROPOSED INSTRUCTION 48:  Good Faith .......................................................... 80

49.  PROPOSED INSTRUCTION 49:  Defense Theory of the Case ................................. 81

IV. CLOSING INSTRUCTIONS ............................................................................... 82

50.  PROPOSED INSTRUCTION 50:  Selection of a Foreperson ................................... 83

51.  PROPOSED INSTRUCTION 51:  Verdict & Deliberations ....................................... 84

52.  PROPOSED INSTRUCTION 52:  Note-Taking ........................................................ 86

53.  PROPOSED INSTRUCTION 53:  Communications with the Court ......................... 87

54.  PROPOSED INSTRUCTION 54:  Right to See Evidence .......................................... 88

55.  PROPOSED INSTRUCTION 55:  Return of Verdict ................................................. 89

56.  PROPOSED INSTRUCTION 56:  Need for Unanimity ............................................. 90

57.  PROPOSED INSTRUCTION 57:  Conclusion .......................................................... 91

## **INTRODUCTION**

You are about to enter your final duty, which is to decide the factual issues in the case.  I ask that you please pay close attention to me now.  I will go as slowly as I can and be as clear as possible.

I told you at the very start of the trial that your principal function during the trial would be to listen carefully and observe each witness who testified.  It has been obvious to me and to counsel that you have faithfully discharged this duty, and I thank you for your attentiveness and service.  Now that you have heard all the evidence in this case and the arguments of each side, it is my duty to give you instructions as to the applicable law.  My instructions will be in three parts:

First:  I will state some general rules about your role and the way in which you are to review the evidence in this case;

Second:  I will instruct you on the two counts alleged in this case and the elements that the government must prove beyond a reasonable doubt with respect to each; and

Third:  I will give you some general rules regarding your deliberations.

Do not single out any one instruction I give you as alone stating the law.  Rather, you should consider these instructions as a whole when you retire to the jury room to deliberate on your verdict.[1]

---

[1]    Adapted from *United States v. Shkreli*, S1 15 Cr. 637 (KAM) (E.D.N.Y. July 28, 2017), Jury Instructions (hereinafter "Shkreli Instructions") at 1–2.

# I. GENERAL RULES OF LAW

**1.      PROPOSED INSTRUCTION 1: Role of the Court**

You have now heard all the evidence in the case as well as the final arguments of the lawyers for the government and for Evan Greebel.

My duty at this point is to instruct you as to the law.  It is your duty to accept these instructions of law and apply them to the facts as you determine them, just as it has been my duty to preside over the trial and decide what testimony and evidence is relevant under the law for your consideration.

On these legal matters, you must take the law as I give it to you.  Even if any attorney or witness has stated a legal principle different from any that I state to you in my instructions, it is my instructions that you must follow.

You should not, any of you, be concerned about the wisdom of any rule that I state.  Regardless of any opinion that you may have as to what the law may be—or ought to be— it would violate your sworn duty to base a verdict on any other view of the law than that which I give you.[2]

---

[2]      Adapted from Shkreli Instructions at 2–3.

2.      **PROPOSED INSTRUCTION 2:  Role of the Jury**

As members of the jury, you are the sole and exclusive judges of the facts.  Your role is to pass on the weight of the evidence; determine the credibility of the witnesses; resolve such conflicts as there may be in the testimony; and draw whatever reasonable inferences you decide to draw from the facts as you have determined them.

In determining the facts, you must rely on your own recollection of the evidence. What the lawyers have said in their opening statements, in their closing arguments, in their objections, or in their questions is not evidence.  In this connection, you should bear in mind that a question put to a witness is never evidence.  It is only the answer that is evidence.  Nor is anything I may have said during the trial or may say during these instructions with respect to a factual matter to be substituted for your own independent recollection.  What I say is not evidence.

The evidence before you consists of the answers given by witnesses—the testimony they gave, as you recall it—and the exhibits and stipulations that were received in evidence.

You may not consider any answer that I directed you to disregard or that I directed struck from the record.  Do not consider such answers.

Throughout this trial, I have reminded you not to conduct any outside research into this case.  I have also instructed you to consciously avoid any media about this case. Likewise, during deliberations, you may only consider the evidence admitted at trial and may not utilize any other information obtained outside the courtroom, including, but not limited to, research on the internet, opinions or statements outside the courtroom, or other sources.  You must completely disregard any report that you have read in the press, seen on television, or heard

3

on the radio.  Indeed, it would be unfair to consider such reports, since they are not evidence and the parties have no opportunity to contradict their accuracy or otherwise explain them away.  In short, it would be a violation of your oath as jurors to allow yourselves to be influenced in any manner by such media.

Since you are the sole and exclusive judges of the facts, I do not mean to indicate any opinion as to the facts or what your verdict should be.  The rulings I have made during the trial are not any indication of my views of what your decision should be as to whether or not the government has proven that Mr. Greebel is guilty beyond a reasonable doubt.

I also ask you to draw no inference from the fact that on occasion I asked questions of certain witnesses.  These questions were only intended for clarification or to expedite matters and certainly were not intended to suggest any opinions on my part as to the verdict you should render or whether any of the witnesses may have been more credible than any other witness.  You are expressly to understand that the court has no opinion as to the verdict you should render in this case.

As to the facts, ladies and gentlemen, you are the exclusive judges.  You are to consider the evidence with impartiality.  Your verdict must be based solely on the evidence developed at trial or the lack of evidence.

In reaching your decision as to whether the government sustained its burden of proof beyond a reasonable doubt, it would be improper for you to consider any personal feelings you may have about Mr. Greebel's race, religion, national origin, sex, age, or profession.  It would be equally improper for you to allow any feelings you might have about the nature of the two crimes charged to interfere with your decision-making process.  All persons are entitled to the presumption of innocence from the start of the trial through the end, and that presumption of

innocence never wears off unless and until you have decided unanimously that the government has proven its case beyond a reasonable doubt as to each count, as I will discuss in a moment.

The fact that the prosecution is brought in the name of the United States of America entitles the government to no greater consideration than that accorded to any other party to a litigation.  By the same token, it is entitled to no less consideration.  All parties, whether government or individuals, are equal before the law.

If you have a reasonable doubt as to Mr. Greebel's guilt, you should not hesitate for any reason to find a verdict of acquittal.  On the other hand, if you should find that the government has met its burden of proving that Mr. Greebel is guilty beyond a reasonable doubt, you should not hesitate because of sympathy to render a verdict of guilty.

Proof beyond a reasonable doubt must, therefore, be proof of a convincing character that a reasonable person would not hesitate to rely on in making an important decision in his or her life.

Under your oath as jurors, you are not to be swayed by sympathy.  You are to be guided solely by the evidence in this case, and the crucial question that you must ask yourselves as you sift through the evidence is:  Has the government proven that Mr. Greebel is guilty of the count you are considering beyond a reasonable doubt?  It is for you alone to decide whether the government has proven that Mr. Greebel is guilty of each of the two counts charged solely on the basis of the evidence and subject to the law as I charge you.  If you follow your oath, and try the issues without fear or prejudice or bias or sympathy, you will arrive at a true and just verdict.[3]

---

[3]      Adapted from Shkreli Instructions at 3–7.

5

**3.**      **PROPOSED INSTRUCTION 3:  Conduct of Counsel**

It is the duty of the attorneys on each side of a case to object when the other side offers testimony or other evidence that the attorneys believe is not properly admissible.  Counsel also have the right and duty to ask the court to make rulings of law and to request conferences at the sidebar out of the hearing of the jury.  All those questions of law must be decided by me, the court.  You should not show any prejudice against an attorney or his or her client because the attorney objected to the admissibility of evidence, or asked for a conference out of the hearing of the jury, or asked the court for a ruling on the law.

During the course of the trial, I may have directed an attorney to do or not to do something.  You should draw no inference against the attorney or the client.  It is the duty of the attorneys to offer evidence and press objections on behalf of their side.  It is my function to cut off counsel from an improper line of argument or questioning, and to strike answers when I think it is necessary.  But you should draw no inference from that.[4]

---

[4]      Adapted from Shkreli Instructions at 7–8.

**4.      PROPOSED INSTRUCTION 4:  Presumption of Innocence and Burden of Proof**

Evan Greebel is before you today because he has been charged in a Superseding Indictment with violations of federal law.  The Superseding Indictment is merely a statement of charges, and is not itself evidence.[5]  Mr. Greebel has pleaded not guilty to the two crimes against him in the Superseding Indictment.  Mr. Greebel is therefore presumed to be innocent of the charges against him, and that presumption alone, unless overcome beyond a reasonable doubt, is sufficient to acquit him.

To convict Mr. Greebel, the burden is on the government to prove each and every element of each of the two charges beyond a reasonable doubt.  This burden never shifts to Mr. Greebel, for the simple reason that the law presumes that Mr. Greebel is innocent.  Anyone accused of a crime—like Mr. Greebel—is never required to prove that he or she is innocent, and the law never imposes on someone accused of a crime the burden or duty of calling any witness or producing any evidence.

Every person accused of a crime starts with a clean slate and is presumed innocent of each of the charges until such time, if ever, that you as a jury are satisfied unanimously that the government has proven that the person is guilty of a given charge beyond a reasonable doubt.  If the government fails to prove every element of a charge beyond a reasonable doubt, you must find Mr. Greebel not guilty as to that charge.[6]

---

[5]      Mr. Greebel objects to the Court's providing a copy of the Superseding Indictment to the jury.  The Superseding Indictment contains the government's allegations only, and it would be extremely and unfairly prejudicial to provide it to the jury.  Along with today's proposed amended requests to charge, we will submit this week a short letter brief explaining the prejudice arising from distribution of the Superseding Indictment to the jury.

[6]      Adapted from Shkreli Instructions at 8–9.

**5.      PROPOSED INSTRUCTION 5:  Reasonable Doubt**

What is a reasonable doubt?  It is a doubt based on reason.  It is doubt that a reasonable person has after carefully weighing all the evidence.  It is a doubt that would cause a reasonable person to hesitate to act in a matter of importance in his or her personal life.  Proof beyond a reasonable doubt must, therefore, be proof of a convincing character that a reasonable person would not hesitate to rely on in making an important decision.

A reasonable doubt is not a caprice or whim; it is not a speculation or suspicion. It is not an excuse to avoid the performance of an unpleasant duty.  The law does not require that the government prove guilt beyond all possible doubt; proof beyond a reasonable doubt is what is necessary to convict a person of a count.

If, after fair and impartial consideration of all the evidence or lack of evidence concerning a particular charge against Mr. Greebel, you have a reasonable doubt, you must find Mr. Greebel not guilty of that charge.  On the other hand, if after fair and impartial consideration of all the evidence, you are satisfied that the government has proven that Mr. Greebel is guilty beyond a reasonable doubt, you should find Mr. Greebel guilty of that charge.[7]

---

[7]      Adapted from Shkreli Instructions at 9–10.

8

**6.**     **PROPOSED INSTRUCTION 6:  Forms of Evidence**

I now will instruct you as to what is evidence and how you should consider it.

**A.**     **What Is Evidence:**

The evidence in this case comes in several forms:

1.     Sworn testimony of witnesses, both on direct and cross-examination;

2.     Sworn testimony of expert witnesses, both on direct and cross-examination;

3.     Exhibits that have been received by the court in evidence;

4.     Certain exhibits admitted in evidence in the form of charts, summaries and demonstratives.  You should consider these charts and summaries as you would any other evidence; and

5.     Stipulations of fact to which all the attorneys have agreed.  A stipulation means simply that the government and the defendant accept the truth of a particular proposition or fact.  Here, the attorneys have entered into stipulations concerning certain facts and documents that are relevant to this case.  You should accept these stipulations as evidence and regard those facts as true, to be given whatever weight you choose.

If I instructed you that a certain document or statement was received for a limited purpose, you must consider that document or statement for that limited purpose only.[8]

---

[8]     Adapted from Shkreli Instructions at 10–11.

9

**B.**      **What Is Not Evidence:**

Certain things are not evidence and are to be disregarded by you in deciding what the facts are:

1.      The existence of a Superseding Indictment is not evidence.  The existence of a Superseding Indictment is not entitled to any weight in your evaluation of the facts.

2.      Arguments or statements by the attorneys are not evidence.

3.      A lawyer's questions of a witness in and of themselves are not evidence—only the answer constitutes evidence.

4.      Objections to the questions or to offered exhibits are not evidence. Attorneys have a duty to object when they believe evidence should not be received.  You should not be influenced by the objection or by the court's ruling on it.  If the objection was sustained, ignore the question.  If the objection was overruled, treat the answer like any other answer.

5.      Any testimony stricken by the court is not evidence.

6.      Any exhibits identified, but not admitted into evidence by the court, are not evidence; however, testimony regarding such exhibits is evidence. You should disregard any gaps in numbering between exhibits.

7.      Any redacted portions of any admitted exhibits admitted into evidence are not themselves evidence, and you should not speculate as to what might be contained in any redacted portions.

8.      Obviously, anything you may have seen or heard outside the courtroom is not evidence.

10

9.      Any notes you may have taken during the course of the trial are not

evidence.

Your verdict must be based exclusively on the evidence or the lack of evidence in

this case.[9]

---

7.      **PROPOSED INSTRUCTION 7:  Direct and Circumstantial Evidence:**

I told you that evidence comes in various forms, such as the sworn testimony of witnesses, expert witnesses, exhibits, charts and summaries, and stipulations.  There are, in addition, different types of evidence—direct and circumstantial.

1.      **Direct evidence**:  Direct evidence is evidence that proves a fact directly. For example, when a witness testifies to what he or she saw, heard or observed, that is called direct evidence.

2.      **Circumstantial evidence**:  Circumstantial evidence is evidence that tends to prove a disputed fact by proof of other facts.  To give a simple example, suppose that when you came into the courthouse today the sun was shining and it was a nice day, but the courtroom blinds were drawn and you could not look outside.  Then later, as you were sitting here, someone walked in with a dripping wet umbrella and, soon after, several other people walked in with wet umbrellas and dripping wet raincoats.  Because you cannot look outside of the courtroom and cannot see whether it is raining, you have no direct evidence that it is raining.  But, on the combination of the facts about the dripping wet umbrellas and raincoats, it would be reasonable for you to infer that it had begun to rain.  That is all there is to circumstantial evidence.  Using your reason and experience, you infer from established facts the existence or the nonexistence of some other fact. Whether a given inference should be drawn is entirely a matter for you, the jury, to decide.  Please note, however, that drawing an inference is not a matter of speculation or guess; it is a matter of logical inference.

12

The law makes no distinction between direct and circumstantial evidence. Circumstantial evidence is of no less value than direct evidence, and you may consider either or both, and may give them such weight as you conclude is warranted.[10]

---

[10]     Adapted from Shkreli Instructions at 14–15.

8.      **PROPOSED INSTRUCTION 8:  Inferences**

The attorneys have asked you to infer, on the basis of your reason, experience, and common sense, from one or more established facts, the existence of some other fact.

An inference is not a suspicion or a guess.  It is a reasoned, logical decision to conclude that a disputed fact exists on the basis of another fact that you know exists.

There are times when different inferences may be drawn from facts, whether proved by direct or circumstantial evidence.  The government may ask you to draw one set of inferences, while the defense may ask you to draw another.  It is for you, and you alone, to decide what inferences you will draw.

The process of drawing inferences from facts in evidence is not a matter of guesswork or speculation.  An inference is a deduction or conclusion that you, the jury, are permitted to draw, but not required to draw, from the facts that have been established by either direct or circumstantial evidence.  In drawing inferences, you should exercise your common sense.

So, while you are considering the evidence presented to you, you are permitted, but not required, to draw from the facts that you find to be proven beyond a reasonable doubt such reasonable inferences as would be justified in light of your experience.

Here again, let me remind you that, whether based on direct or circumstantial evidence, or on the logical, reasonable inferences drawn from such evidence, you must be satisfied that the government has proven that Mr. Greebel is guilty beyond a reasonable doubt before you may convict on any charge.  And your decision must be unanimous.[11]

---

[11]      Adapted from Shkreli Instructions at 15–16.

**9.**      **PROPOSED INSTRUCTION 9:  Defendant's Right Not to Testify [if applicable]**

Mr. Greebel did not testify in this case.  Under the United States Constitution, a person accused of a crime has no obligation to testify or to present any evidence, because it is the government's burden to prove that any person accused of a crime is guilty beyond a reasonable doubt.  That burden remains with the government throughout the entire trial and never shifts to the accused.  A person accused of a crime is never required to prove that he is innocent, because his innocence is presumed from the time that the accused first walks into this courtroom, throughout the trial, and throughout your deliberations, unless and until you find unanimously that the government has met its burden of proving that Mr. Greebel is guilty beyond a reasonable doubt.

Therefore, you must not attach any significance to the fact that Mr. Greebel did not testify in this case.  You must not draw any adverse inference against him because he did not take the witness stand, and you may not consider or even discuss it in any way in your deliberations in the jury room.[12]

---

[12]      Adapted from Shkreli Instructions at 16–17.

15

**10.**     **PROPOSED INSTRUCTION 10:  Credibility of Witnesses**

You the jury are the sole judges of the credibility—or believability—of the witnesses and the weight their testimony deserves.  You should carefully scrutinize all the testimony given, the circumstances under which each witness testified, and any other matter in evidence that may help you to decide the truth and the importance of each witness's testimony.

Your decisions in this respect may depend on how each witness impressed you. Was the witness candid and forthright or did the witness seem to be hiding something, being evasive or suspect in some way?  How did the witness's testimony on direct examination compare with the witness's testimony on cross examination?  Was the witness consistent in the testimony given or did the witness make inconsistent statements?  Did the witness appear to know what she or he was talking about?  Did the witness strike you as someone who was trying to report that knowledge accurately?  Did the witness appear to fail to remember, or claim not to remember, a lot about what happened?  Did the witness appear to have a selective memory— remembering some things but not others?  These are examples of the kinds of common sense questions you should ask yourselves in deciding whether a witness is, or is not, truthful.

You should also consider whether a witness had an opportunity to observe the facts he or she testified about.  Also, you should consider whether the witness's recollection of the facts stands up in light of the other evidence in the case.

How much you choose to believe a witness may also be influenced by the witness's bias.  Does the witness have a relationship with the Government or Mr. Greebel that may affect how he or she testified?  Did the witness have or receive some level of protection from the government, like immunity or an agreement that he will not be prosecuted?  Does the witness have some incentive, loyalty, or motive that might cause him or her to shade the truth?

16

Does the witness have some bias, prejudice, or hostility that may cause the witness to give you something other than a completely accurate account of the facts he or she testified to?

Evidence that a witness is biased, prejudiced, or hostile toward Mr. Greebel requires you to view that witness's testimony with caution, to weigh it with care, and to subject it to close and searching scrutiny.

You should also take into account any evidence that the witness who testified may benefit in some way from the outcome of this case. Such an interest in the outcome creates a motive to testify falsely and may sway the witness to testify in a way that advances his own interests. Therefore, if you find that any witness whose testimony you are considering may have an interest in the outcome of this trial, or an interest in taking a certain position or view of the facts, then you should bear that factor in mind when evaluating the credibility of his or her testimony and accept it with great care.

This is not to suggest that every witness who has an interest in the outcome of a case, or an interest in taking a certain position or view of the facts, will testify falsely. It is for you to decide to what extent, if at all, the witness's interest has affected or colored his or her testimony.

You have also heard evidence of discrepancies and/or inconsistencies in the testimony of certain witnesses, and counsel have argued that such discrepancies and/or inconsistencies are a reason for you to reject the testimony of those witnesses. On the one hand, evidence of discrepancies and/or inconsistencies may be a basis to disbelieve a witness's testimony. On the other hand, discrepancies and/or inconsistencies in a witness's testimony or between his or her testimony and that of others do not necessarily mean that the witness's entire testimony should be discredited. People sometimes forget things and even a truthful witness

17

may be nervous and contradict him- or herself.  It is also a fact that two people witnessing an event may see or hear it differently.  Whether a discrepancy or an inconsistency pertains to a fact of importance or only to a trivial detail should be considered in weighing its significance.

A willful falsehood always is a matter of importance and should be considered seriously.  If any witness is shown to have willfully lied about any material matter, you have the right to conclude that the witness also lied about other matters.  You may either disregard all of that witness's testimony, or you may accept whatever part of it you think deserves to be believed. It is for you to decide, based on your total impression of a witness, how to weigh his or her testimony.  You should, as always, use common sense and your own good judgment.[13]

---

[13]      Adapted from Shkreli Instructions at 17–20.

**11.**     **PROPOSED INSTRUCTION 11:  Impeachment of Witnesses**

You may reject the testimony of any witness who has been contradicted or impeached, if you find the witness not to be credible.  A witness is impeached, for example, when he or she testified to something that was inconsistent with what he or she testified to in the past, or inconsistent with documents, the testimony of another witness, or other evidence.  You also have to decide which witnesses to believe and which facts are true.  To do this you must look at all the evidence, drawing on your own common sense and personal experience.  You should keep in mind that the burden of proving its case beyond a reasonable doubt is always on the government and that Mr. Greebel is not required to call any witnesses or offer any evidence, because he is presumed to be innocent.[14]

---

[14]     Shkreli Instructions at 20–21.

12.     **PROPOSED INSTRUCTION 12:  Testimony of Government Employees and Law Enforcement Witnesses**

In this case, you have also heard testimony from two witnesses who work for the FBI and one witness who works for FINRA.  The testimony of these three witnesses should be evaluated in the same manner as the testimony of any other witness.  The fact that a witness may be employed by the government does not mean that you may accord his or her testimony any more or less weight than that of any other witness.  At the same time, defense counsel may question the credibility of a witness employed by the government, including a witness who works in law enforcement, on the grounds that his or her testimony may be colored by a personal or professional interest in the outcome of the case.  It is for you to decide, after weighing all the evidence, in light of the instructions I have given you about factors relevant to determining the credibility of any witness, whether you accept the testimony of a government employee witness and what weight, if any, it deserves.[15]

---

[15]     Adapted from Shkreli Instructions at 21–22.

13.     **PROPOSED INSTRUCTION 13:  Expert Witnesses**

In this case, I have permitted certain witnesses to express their opinions about matters that are in issue.  A witness may be permitted to testify to an opinion on those matters about which he or she has special knowledge, skill, experience, and training.  Such testimony is presented to you on the theory that someone who is experienced and knowledgeable in the field can assist you in understanding the evidence or in reaching an independent decision on the facts.

In weighing this opinion testimony, you may consider the witness's qualifications, his or her opinions, and the reasons for testifying, as well as all the other considerations that ordinarily apply when you are deciding whether to believe a witness's testimony.  You may give the opinion testimony whatever weight, if any, you find it deserves in light of all the evidence in this case.  You should not, however, accept opinion testimony merely because I allowed the witness to testify concerning his or her opinion.  Nor should you substitute it for your own reason, judgment, and common sense.  The determination of the facts in this case rests solely with you.[16]

---

[16]     3 L. Sand, *et al.*, *Modern Federal Jury Instructions*, Instruction 7-21; *United States v. Simon,* 425 F.2d 796 (2d Cir. 1969).

21

**14.      PROPOSED INSTRUCTION 14:  Prior Inconsistent Statements**

You have heard evidence that certain witnesses made statements on earlier occasions that counsel argues are inconsistent with the witnesses' trial testimony.  Evidence of what is arguably a prior inconsistent statement was placed before you for the limited purpose of helping you decide whether to believe the trial testimony of the witness who contradicted himself or herself.  If you find that the witness made an earlier statement that conflicts with his trial testimony, you may consider that fact in deciding how much of his trial testimony, if any, to believe.

In making this determination, you may consider whether the witness purposely made a false statement or whether it was an innocent mistake; whether the inconsistency concerns an important fact or whether it had to do with a small detail, whether the witness had an explanation for the inconsistency, and whether that explanation appealed to your common sense.

It is exclusively your duty, based on all the evidence and your own good judgment, to determine whether the prior statement was inconsistent, and, if so, how much, if any, weight should be given to the inconsistent statement in determining whether to believe all, part, or none of the witness's testimony.[17]

---

[17]      Adapted from Shkreli Instructions at 22–23.

15.     **PROPOSED INSTRUCTION 15:  Preparation for Testimony**

During the course of trial, you heard testimony that the attorneys for the parties interviewed witnesses when preparing for and during trial.  Attorneys have an obligation to prepare their case as thoroughly as possible, and in the discharge of that responsibility properly interview witnesses in preparation for the trial and from time to time as may be required during the course of the trial.[18]

---

[18]     Adapted from Shkreli Instructions at 23.

16.     **PROPOSED INSTRUCTION 16:  No Duty to Call Witnesses or Produce Evidence
        or Use Particular Investigative Techniques**

      Although the government bears the burden of proof beyond a reasonable doubt, and although a reasonable doubt can arise from the lack of evidence, you are instructed that there is no legal requirement that the government use any specific investigative techniques.  Therefore, although you are to carefully consider the evidence adduced by the government, you are not to speculate as to why they used the techniques they did or why they did not use other techniques.

      In this regard, I also charge you that all persons who may have been present at any time or place mentioned in the case, or who may appear to have some knowledge of the issues in this case, need not be called as witnesses.  Both the government and the defense have the same right to subpoena witnesses to testify on their behalf.  There is no duty, however, to call a witness whose testimony would be merely cumulative of testimony already in evidence, or who would merely provide additional testimony to facts already in evidence.  Nor does the law require that all things mentioned during the course of the trial be produced as exhibits.  I remind you, however, that because the law presumes that Mr. Greebel is innocent, the burden of proving his guilt beyond a reasonable doubt is on the government throughout the trial and never leaves unless and until the jury unanimously finds that Mr. Greebel is guilty beyond a reasonable doubt. A person accused of a crime never has the burden of proving his innocence or of producing any evidence or calling any witnesses at all.[19]

---

[19]     Adapted from Shkreli Instructions at 23–24.

17.     **PROPOSED INSTRUCTION 17:  Witness's Non-Prosecution and Immunity
Agreements with the Government**

You have heard the testimony of Alan Geller, who has been promised by the
government that in exchange for testifying, he will not be prosecuted for any crimes that he may
have admitted in interviews with the prosecutors.  You have also heard from Jackson Su, who
has been promised by the government that any testimony he gave in this case regarding his
access of the computer systems of Retrophin, Inc. between in or around December 2012 through
June 2013 after his departure from Retrophin on or around December 13, 2012, will not be used
against him in any criminal case.  These promises are not formal orders of immunity by the court
but were arranged directly between the witnesses and the government.

The government is permitted to make these kinds of promises and is entitled to
call as witnesses people to whom these promises are given.  However, the testimony of a witness
who has been promised that he will not be prosecuted or who has been granted immunity for his
testimony by the government should be examined by you with greater care than the testimony of
an ordinary witness.  You should scrutinize it closely to determine whether it is colored in such a
way as to place guilt on the accused to further the witness's own interests, for, such a witness,
confronted with the realization that he can win his own freedom from prosecution by helping to
convict another, has a motive to falsify his testimony.

Such testimony should be received by you with suspicion, and you may give it
such weight, if any, as you believe it deserves.[20]

---

[20]     Adapted from Shkreli Instructions at 24–25.

18.     __PROPOSED INSTRUCTION 18:  Approximate Dates__

        The Superseding Indictment charges that the offenses at issue took place "in or about" and "between" certain dates.  The proof need not establish with certainty the exact date of the alleged offenses.  The law requires a substantial similarity between the date alleged in the Superseding Indictment and the date established by the evidence.[21]

---

[21]     Shkreli Instructions at 27.

## II. <u>THE CHARGES</u>

I will now turn to the second part of my instructions.  In this part, I will instruct you as to the specific elements of the crimes charged that the government must prove beyond a reasonable doubt to warrant a finding of guilt in this case.

19.     **PROPOSED INSTRUCTION 19:  Summary of the Superseding Indictment;
Consider Only the Charges; Consider Each Count Separately**

I will begin by summarizing for you the two charges alleged in the Superseding Indictment, which as I mentioned is merely a statement of the charges, and is not evidence.  Mr. Greebel is not charged with committing any crime other than the offenses contained in the Superseding Indictment.

The Superseding Indictment contains a total of two counts against Mr. Greebel. Each of the two counts alleges that Mr. Greebel committed a different crime.

In Count Seven, Mr. Greebel is charged with conspiracy to commit wire fraud.  In Count Eight, he is charged with conspiracy to commit securities fraud.

You must consider Counts Seven and Eight separately, and you must return a separate verdict for each count in which he is charged.  Whether you find Mr. Greebel guilty or not guilty as to one offense should not affect your verdict as to the second offense.[22]

---

[22]     Adapted from Shkreli Instructions at 27–29.

28

**20.**     **PROPOSED INSTRUCTION 20:  Knowingly, Willfully, and Intentionally Defined**

During these instructions, you will hear me use the terms "knowingly," "willfully," and "intentionally."  Therefore, I will define these terms for you.

**A.     Knowingly**

To act "knowingly" means to act intentionally and voluntarily, and not because Mr. Greebel was misled, deceived, had material information omitted from him, or because of ignorance, mistake, accident, negligence, or carelessness.  Whether Mr. Greebel acted knowingly or because he was misled, deceived, had material information omitted from him, or because of ignorance, mistake, accident, negligence or carelessness may be proven by his conduct and by all the facts and circumstances surrounding the case.[23]

**B.     Willfully**

Both Counts Seven and Eight require that the government prove beyond a reasonable doubt that Mr. Greebel acted "willfully.  "Willfully" means to act with knowledge that one's conduct is unlawful and with an intent to do something the law forbids; that is to say, with a bad purpose either to disobey or to disregard the law.  A person's conduct is not "willful" if it was due to negligence, inadvertence, or mistake, being misled or deceived by someone else, having material information omitted or withheld, or was the result of a good-faith misunderstanding.[24]

---

[23]     Adapted from Shkreli Instructions at 29.

[24]     *United States v. Cassese*, 428 F.3d 92, 98 (2d Cir. 2005) (willfulness requires "a realization on the defendant's part that he was doing a wrongful act, in a situation where the knowingly wrongful act involved a significant risk of effecting the violation that has occurred.").

### C.     Intentionally

A person acts "intentionally" when he acts deliberately and purposefully.  That is, the actions of a person accused of a crime must have been the product of his conscious, objective decision rather than the product of a mistake, misunderstanding, deception, having material information withheld or omitted from him, or accident.

Whether a person acted knowingly, willfully, and intentionally is a question of fact for you to determine, like any other fact question.  Direct proof of knowledge and fraudulent intent may not be available and is not required.  The ultimate facts of knowledge and criminal intent, though subjective, may be established by circumstantial evidence, based on a person's outward manifestations, words, conduct, acts, and all the surrounding circumstances disclosed by the evidence and the rational or logical inferences that may be drawn therefrom.  Regardless of whether a person acted knowingly, willfully, or intentionally, the government must prove all of the essential elements of the crime charged beyond a reasonable doubt.  You may consider whether a person was deceived, misled, or had material information omitted or withheld from him in determining whether the government has proved beyond a reasonable doubt that the person acted intentionally.[25]

---

[25]     Adapted from Shkreli Instructions at 30.

## COUNT SEVEN

21.     **PROPOSED INSTRUCTION 21:  Summary of the Charge**

I will next instruct you on the wire fraud conspiracy charge.  Count Seven of the

Superseding Indictment charges Mr. Greebel with wire fraud conspiracy in connection with

Retrophin as follows:

> In or about and between February 2011 and September 2014, both dates being
> approximate and inclusive, within the Eastern District of New York and
> elsewhere, the defendant EVAN GREEBEL and Martin Shkreli, together with
> others, did knowingly and intentionally conspire to devise a scheme and artifice to
> defraud Retrophin, and to obtain money and property from Retrophin by means of
> materially false and fraudulent pretenses, representations and promises, and for
> the purpose of executing such scheme and artifice, to transmit and cause to be
> transmitted by means of wire communication in interstate and foreign commerce
> writings, signs, signals, pictures and sounds, contrary to Title 18, United States
> Code, Section 1343.

> The government alleges that "Martin Shkreli and Evan Greebel, together with

others, engaged in a scheme to defraud Retrophin by misappropriating Retrophin's assets

through material misrepresentations and omissions in an effort to satisfy Shkreli's personal debts

and obligations."[26]  Mr. Greebel contends that [to be supplemented at the end of any defense

case].

The government alleges that "[f]aced with an SEC inquiry, . . . Martin Shkreli and

Evan Greebel, together with others, engaged in a scheme to fabricate an investment by MSMB

Capital in Retrophin LLC and engineered a series of fraudulent transactions that were backdated

to the summer of 2012 to create the appearance of an investment by MSMB Capital prior to the

SEC inquiry."[27]  Mr. Greebel contends that [to be supplemented at the end of any defense case].

---

[26]     Superseding Indictment ¶ 21.

[27]     Superseding Indictment ¶ 25.

The government alleges that "[i]n or about and between February 2013 and August 2013, . . . Martin Shkreli and Evan Greebel, together with others, caused Retrophin to enter into settlement agreements with three Capital Limited Partners and four Healthcare Limited Partners to resolve claims and threats of claims made by the limited partners against Shkreli and the MSMB Funds."[28]  Mr. Greebel contends that [to be supplemented at the end of any defense case].

The government alleges that "[i]n furtherance of the scheme, Shkreli and Greebel assured Retrophin and the auditors that the promissory notes would be repaid."[29]  Mr. Greebel contends that [to be supplemented at the end of any defense case].

The government alleges that "[a]fter Retrophin's external auditors had determined that Retrophin was not responsible for the claims settled in the settlement agreements, . . . Martin Shkreli and Evan Greebel, together with others, devised an alternative approach to settle with defrauded limited partners from Shkreli's hedge funds: settlement agreements under the guise of consulting agreements."[30]  Mr. Greebel contends that [to be supplemented at the end of any defense case].

The government alleges that "[a]s with the settlement agreements, . . . Martin Shkreli and Evan Greebel, together with others, devised the sham consulting agreements to conceal the material misrepresentations that Shkreli made to the Capital Limited Partners and

---

[28]     Superseding Indictment ¶ 26.

[29]     Superseding Indictment ¶ 30.

[30]     Superseding Indictment ¶ 31.

32

Healthcare Limited Partners about, *inter alia*, performance and liquidity."[31]  Mr. Greebel

contends that [to be supplemented at the end of any defense case].

        In sum, the government has alleged that Mr. Greebel, Mr. Shkreli, and others[32]

knowingly, willfully, and intentionally engaged in a conspiracy to defraud Retrophin to (i)

allegedly backdate transfers of Retrophin shares to MSMB Capital in or about December 2012

even though MSMB Capital allegedly never invested in Retrophin; (ii) enter into settlement

agreements with allegedly defrauded MSMB Capital and MSMB Healthcare investors to settle

liabilities allegedly owed by MSMB Capital, MSMB Healthcare, and Mr. Shkreli; and (iii) enter

into two allegedly sham consulting agreements—one with an allegedly defrauded MSMB

Capital investor named Darren Blanton and one with an allegedly defrauded MSMB Healthcare

investor named Alan Geller.  Specifically, the government alleges that Retrophin was defrauded

as a result of Mr. Greebel's and Mr. Shkreli's failure to disclose the settlement and consulting

agreements to the board of directors before their execution.

---

[31]    Superseding Indictment ¶ 34.

[32]    Putting aside Mr. Shkreli, who was named in the Superseding Indictment and acquitted of Count Seven, the government has failed to demonstrate by even a preponderance of the evidence that any other individual engaged in a conspiracy to defraud Retrophin with Mr. Greebel.

22.     **PROPOSED INSTRUCTION 22:  Conspiracy to Commit Wire Fraud: Elements of the Offense**

I will now instruct you on conspiracy.  A conspiracy is a kind of criminal partnership, at the heart of which is an agreement or understanding by two or more persons to violate other laws.  A conspiracy to commit a crime is an entirely separate and different offense from the underlying crime that the conspirators intended to commit.  Thus, if a conspiracy exists, it is still punishable as a crime, even if it should fail to achieve its purpose.  A person accused of conspiracy may be found guilty of conspiracy even if he was incapable of committing the substantive crime.  Consequently, for a person to be guilty of conspiracy, there is no need for the government to prove that he or any other conspirator actually succeeded in their criminal goals or even that they could have succeeded.

To prove a conspiracy to commit wire fraud, the government must prove the following three elements beyond a reasonable doubt:

First, that two or more persons entered into an agreement to commit wire fraud;

Second, that Mr. Greebel knowingly and intentionally became a member of the conspiracy;[33] and

Third, that either the agreement was formed or that an overt act was committed in the Eastern District of New York, which includes the boroughs of Queens, Brooklyn, Staten Island, and the counties of Suffolk and Nassau, New York.[34]

---

[33]     Adapted from Shkreli Instructions at 51–52, 71.

[34]     The Second Circuit has held that venue need only be proven by a preponderance of the evidence.  *See United States v. Rommy*, 506 F.3d 119 (2d Cir. 2007).  In light of *Blakely v. Washington*, 542 U.S. 296 (2004), however, every issue must be proven beyond a reasonable doubt, so defendants seek to preserve this argument for *en banc* or certiorari review.

You must reach a unanimous decision in connection with each element.

23.     **PROPOSED INSTRUCTION 23:  First Element: Existence of the Agreement**

The first element that the government must prove beyond a reasonable doubt for Count Seven is that two or more persons entered into the charged agreement with specific intent to commit every element of wire fraud.  One person cannot commit a conspiracy alone.

In this case, the government has alleged that there are the following co-conspirators in Count Seven:  Mr. Greebel, Mr. Shkreli, Kevin Mulleady, Thomas Fernandez, Marek Biestek, Lee Yaffe, and Marc Panoff.[35]

I instruct you that in determining whether two or more persons knowingly and willfully conspired to commit the charges alleged in Count Seven, do not consider Martin Shkreli.  In other words, you must find beyond a reasonable doubt that Mr. Greebel knowingly and willfully conspired with somebody *other than* Martin Shkreli.[36]  You will recall that this

---

[35]     For purposes of preserving our request in any appeal, we renew our request that the Court instruct the jury that, in a prior proceeding, Mr. Shkreli was acquitted and found not guilty of the alleged conspiracy in Count Seven. *See* Dkt. 305 at 2–3.  *See* Mr. Greebel's Memorandum of Law in Support of Motion to Dismiss Count Seven of Superseding Indictment, Dkt. 327 at 5–13; *see also* Tr. 949:22–950:19 (Oct. 19, 2017) ("Now, Your Honor, I submit, we said to Your Honor Count Seven shouldn't even go forward, and we also said to Your Honor that if it does go forward, **you should be giving an instruction to this jury at the end of the case that they cannot find, consistent with *Rodriguez* and the Second Circuit's decision there, that they cannot find that Shkreli is the co-conspirator**.  But now the case is going to go forward and I submit to Your Honor the Government is going to argue and ask the Court and all of us to put blinders on that Shkreli is the co-conspirator.  Shkreli is the dominant party.  Shkreli is the person who you should find co-conspired with Evan Greebel.  Now, they're going to say others too, but they're going to say Shkreli.  And so much evidence about Shkreli and they're going to say he's the co-conspirator on Count 7 and you should convict Evan Greebel of conspiracy, because he conspired with Martin Shkreli.  They lost that case.  **If they're going to be allowed to argue that, the only way to have a fair trial here, as a matter of due process and fundamental fairness, and to not mislead a jury, because of the prosecutor's special duty not to mislead a jury, is for us to be able to tell that jury that Martin Shkreli was acquitted as a co-conspirator.**" (emphasis added)).

[36]     *See United States v. Rodriguez*, 983 F.2d 455, 459 (2d Cir. 1993) (approving the district court's instruction: "In determining whether two or more persons knowingly and willfully conspired, do not consider [the dismissed co-conspirator]. In other words, you must find beyond

count says that the conspiracy was between Mr. Shkreli, Mr. Greebel, and others.  You cannot

consider in determining whether there is a conspiracy the involvement or actions of Mr. Shkreli.

Accordingly, to convict Mr. Greebel of conspiracy, you must find that the government has

proven beyond a reasonable doubt that Mr. Greebel knowingly and willfully conspired with

someone <u>other than</u> Mr. Shkreli.[37]

The proof must convince you that at least two persons joined together in a

common criminal scheme with respect to the essentials of the alleged plan.  The government

need not prove that members of the conspiracy met together or entered into any express or

formal agreement.  You need not find that the alleged conspirators stated, in words or writing,

what the scheme was, its object or purpose, or the means by which the scheme was to be

accomplished.  It is sufficient to show beyond a reasonable doubt that the conspirators tacitly

came to a mutual understanding to accomplish an unlawful act by means of a joint plan or

common design.  But proof that people simply met together from time to time and talked about

common interests, or engaged in similar conduct, is not enough to establish a criminal

agreement.[38]

---

a reasonable doubt that two or more persons besides [that person] knowingly and willfully
conspired.  You will recall that this count says that the conspiracy was between [the defendant,
the dismissed co-conspirator] and others.  You cannot consider in determining whether there is a
conspiracy [the dismissed co-conspirator].").

[37]     *See id.* at 458–59 (holding that inconsistent conspiracy verdicts are not allowed where
there is no probative evidence demonstrating beyond a reasonable doubt that the defendant
conspired with anyone else); *see also United States v. Batista*, No. 06 CR 265 (S-5) 2010 WL
1193314, at *10–12 (E.D.N.Y. Mar. 24, 2010) (granting defendant's motion for a judgment of
acquittal of conspiracy, because defendant could not be found guilty as a matter of law where the
co-defendant was acquitted and there was no evidence that any other person had conspired).

[38]     Sand, Instruction 19-4 (modified); Sixth Circuit Pattern Criminal Jury Instruction 3.02
("This does not require proof of any formal agreement, written or spoken.  Nor does this require
proof that everyone involved agreed on all the details.  But proof that people simply met together

You may, of course, find that the existence of an agreement between two or more persons to violate the law has been established by direct proof.  But since, by its very nature, a conspiracy is characterized by unusual secrecy, direct proof may not be available.  Therefore, you may infer the existence of a conspiracy from the circumstances of this case and the conduct of the parties involved.  In a very real sense, then, in the context of conspiracy cases, actions often speak louder than words.  In determining whether an agreement existed here, you may consider the actions and statements of all those you find to be participants in the conspiracy, excluding Mr. Shkreli, as proof that a common design existed to act together for the accomplishment of the alleged unlawful purpose stated in the Superseding Indictment.  If you find that the actions and statements of Mr. Greebel and the alleged co-conspirator are not consistent with proof of a common design to act together for the accomplishment of the alleged unlawful purpose stated in the Superseding Indictment, or that Mr. Greebel was deceived, misled, or had material information omitted or withheld from him, then you must find that there was no agreement to commit wire fraud.  I remind you that you must reach a unanimous decision in connection with each element.

---

from time to time and talked about common interests, or engaged in similar conduct, is not enough to establish a criminal agreement.") (endorsed by Sand).

24.     **PROPOSED INSTRUCTION 24:  Second Element: Membership in the Conspiracy**

The second element the government must prove beyond a reasonable doubt for

Count Seven is that Mr. Greebel knowingly, willfully, and intentionally became a member in the

charged conspiracy.  I have explained to you what it means to act knowingly and intentionally.

A person acts knowingly and intentionally if he acts voluntarily, deliberately, and purposefully,

and not because of ignorance, mistake, accident, negligence or carelessness, or being misled,

deceived, or having material information withheld from or omitted by someone else.  In other

words, did Mr. Greebel participate in the conspiracy with knowledge of its unlawful purpose and

with the specific intention of furthering its business or objective?  Knowledge and intent may be

inferred from an irregular manner in which activities are carried out.[39]  Whether a person acted

knowingly may be proven by the person's conduct and by all the facts and circumstances

surrounding the case.

For a person to be deemed a member of a conspiracy, he or she need not have had

a stake in the venture or its outcome.  While proof of a financial or other interest in the outcome

of a scheme is not essential, if you find that a person did have such an interest, it is a factor you

---

[39]     Given that the attorney-client relationship is based on confidentiality, and it is incumbent on an attorney to maintain the client's secrets, we respectfully submit that any instruction that "secrecy" is somehow evidence of improper conduct is wrong as a matter of law in this case. *See* Confidentiality of Information, Ann. Mod. Rules Prof. Cond. § 1.6 ("(a) A lawyer shall not reveal information relating to the representation of a client unless the client gives informed consent, the disclosure is impliedly authorized in order to carry out the representation or the disclosure is permitted by paragraph (b) [enumerating limited circumstances in which revealing information is permitted].").

may properly consider in determining whether or not the person was a member of the conspiracy charged in the Superseding Indictment.

Mr. Greebel's participation in the alleged conspiracy must be established by independent evidence of his own acts or statements and the reasonable inferences that may be drawn from them.

A person's knowledge may be inferred from the facts proved.  In that connection, I instruct you that, to become a member of the conspiracy, a person need not have been apprised of all the activities of all members of the conspiracy.  Moreover, a person need not have been fully informed as to all the details, or the scope, of the conspiracy in order to justify an inference of knowledge on his part.  In addition, a defendant need not have joined in all the conspiracy's unlawful objectives.

Each member of the conspiracy may perform separate and distinct acts and may perform them at different times.[40]  Some alleged conspirators may play major roles, while others may play minor parts in the alleged scheme.  An equal role is not what the law requires.  Even a single act may be sufficient to draw a defendant within the ambit of the conspiracy.  The key inquiry is simply whether a defendant joined the conspiracy charged with an awareness of at least some of the basic aims and purposes of the unlawful agreement and with the intent to help it succeed.

I caution you that mere knowledge or acquiescence, without participation, in the alleged unlawful plan is not sufficient.  Moreover, the fact that the acts of a person, without

---

[40]     We respectfully ask the Court to delete its instruction that Mr. Greebel's "liability is not measured by the extent or duration of his participation" in a conspiracy since the government has alleged Mr. Greebel participated for the whole duration of both charged conspiracies.

knowledge, merely happen to further the purposes or objectives of the alleged conspiracy, does not make the person a member.  More is required under the law.  Additionally, mere presence of Mr. Greebel where a crime is being committed, even coupled with knowledge by Mr. Greebel that a crime is being committed, is not sufficient to prove Mr. Greebel's membership in the alleged conspiracy.  What is required is that a defendant must have participated with knowledge of at least some of the purposes or objectives of the conspiracy and with the specific intention of aiding in the accomplishment of every element of those unlawful ends.  In sum, a defendant, with an understanding of the unlawful character of the conspiracy, must have intentionally engaged, advised, or assisted in it for the purpose of furthering the illegal undertaking.[41]

I remind you that you must reach a unanimous decision in connection with each element.

---

[41]     Adapted from Shkreli Instructions at 54–57.

25.     **PROPOSED INSTRUCTION 25:  Multiple Conspiracies**

You must determine whether the conspiracy charged in the Superseding Indictment existed, and, if it did, whether Mr. Greebel was a member of it.  If you find that the conspiracy charged did not exist, then you must return a not guilty verdict, even though you find that some other conspiracy existed.  If you find that Mr. Greebel was not a member of the conspiracy charged in the Superseding Indictment, then you must find Mr. Greebel not guilty, even if you find that Mr. Greebel may have been a member of some other conspiracy.[42]

In order to prove a single conspiracy, the government must prove beyond a reasonable doubt that each alleged member agreed to participate in what he or she knew to be a collective venture directed toward a common goal.[43]

---

[42]     Adapted from Sand, Instruction 19–5.

[43]     *United States v. Geibel*, 369 F.3d 682, 689 (2d Cir. 2004) ("In order to prove a single conspiracy, the government must show that each alleged member agreed to participate in what he knew to be a collective venture directed toward a common goal.") (internal citations omitted).

26.     **PROPOSED INSTRUCTION 26:  All Three Subprongs of Count Seven Make Up One Unitary Conspiracy**

The single conspiracy charged in Count Seven comprised three alleged objectives, as I have described to you: (1) allegedly fabricating an interest in Retrophin by MSMB Capital through backdated transfer agreements; (2) allegedly using Retrophin assets to settle liabilities owed by MSMB Capital, MSMB Healthcare, and Mr. Shkreli; and (3) allegedly causing Retrophin to enter into alleged "sham" consulting agreements for the same purpose.

In sum, in order to prove that Mr. Greebel is guilty of Count Seven, the government must prove beyond a reasonable doubt that there was a single conspiracy between Mr. Greebel and others to achieve all three objectives charged in Count Seven.  If you find that the conspiracy charged in Count Seven did not exist, or that Mr. Greebel was not a member of it, or that Mr. Greebel was a member of some other conspiracy, you cannot find Mr. Greebel guilty of the conspiracy charged in Count Seven.[44]

---

[44]     Adapted from Sand, Instruction 19–5; *see also Geibel*, 369 F.3d at 689.

27.     **PROPOSED INSTRUCTION 27:  "Specific Intent to Defraud" Defined**

You have been instructed that to sustain its burden of proof, the government must also prove that Mr. Greebel acted with the specific intent to defraud Retrophin.  Fraudulent intent is established when some actual harm or injury was contemplated by the schemer against Retrophin.  It can be described as a plan to deprive a person of something of value by trick, deceit, chicanery, or overreaching.  Thus, it is not enough for the government to prove beyond a reasonable doubt that Mr. Greebel knowingly and willfully engaged in wire fraud; rather, the government must also prove beyond a reasonable doubt that the defendant acted with the specific intent to harm Retrophin.[45]

---

[45]     *United States v. Gole*, 158 F.3d 166, 167–68 (2d Cir. 1998); *Dinome*, 86 F.3d at 283; *United  States v. D'Amato*, 39 F.3d 1249, 1257 (2d Cir. 1994); *United States v. Soto*, 716 F.2d 989, 993 (2d Cir. 1983); *United States v. Autori*, 212 F.3d 105, 115 (2d Cir. 2000) (quoting *McNally v. United States*, 483 U.S. 350, 358 (1987)) (There must be a plan to deprive a person "'of something of value by trick, deceit, chicane or overreaching.'").

44

28.     **PROPOSED INSTRUCTION 28:  Wire Fraud: Definition and Elements**

I will now define wire fraud, which is alleged to be the object of the conspiracy charged in Count Seven.  The relevant statute regarding wire fraud is Section 1343 of Title 18 of the United States Code, which provides that:

> Whoever, having devised or intending to devise any scheme or artifice to defraud, or for obtaining money or property by means of false or fraudulent pretenses, representations, or promises, transmits or causes to be transmitted by means of wire, radio, or television communication in interstate or foreign commerce, any writings, signs, signals, pictures or sounds for the purpose of executing such scheme or artifice, shall be [guilty of a crime].

The elements of wire fraud are:

First, that there was a scheme or artifice to defraud or to obtain money or property by false and fraudulent pretenses, representations, or promises, as alleged in the Superseding Indictment;

Second, that the defendant knowingly and willfully participated in the scheme or artifice to defraud, with knowledge of its fraudulent nature and with specific intent to commit a contemplated harm against Retrophin; and

Third, that in the execution of that scheme, the defendant used or caused the use of interstate wires.[46]

---

[46]     Adapted from Shkreli Instructions at 63–64, 72–73.

29.    **PROPOSED INSTRUCTION 29:  First Element: Existence of a Scheme or Artifice to Defraud**

The first element of wire fraud is that there was a scheme or artifice to defraud Retrophin by causing Retrophin to:  (i) allegedly transfer Retrophin shares to MSMB Capital even though MSMB Capital allegedy never invested in Retrophin; (ii) enter into settlement agreements with allegedly defrauded MSMB Capital and MSMB Healthcare investors to settle liabilities owed by MSMB Capital, MSMB Healthcare, and Mr. Shkreli; and (iii) enter into two allegedly sham consulting agreements with an allegedly defrauded MSMB Capital investor named Darren Blanton and an allegedly defrauded MSMB Healthcare investor named Alan Geller. Specifically, the government alleges that Retrophin was defrauded as a result of Mr. Greebel's and Mr. Shkreli's failure to disclose the settlement and consulting agreements to the board of directors prior to their execution.[47]

To find that the government has proven beyond a reasonable doubt that there was a scheme to defraud Retrophin through the settlement and consulting agreements, you must find beyond a reasonable doubt all of the following:  (1) that Mr. Shkreli did not have authority under the policies and procedures of Retrophin to enter into these agreements, (2) that Mr. Shkreli had a duty to disclose the agreements or the substance thereof to the board of directors, (3) that these agreements or the substance thereof were not disclosed to the board of directors, (4) that Mr. Greebel knew that Mr. Shkreli did not have the authority to enter into these agreements and that they were not disclosed to the board, (5) that Mr. Greebel had a duty to determine that Mr. Shkreli failed in his duties to disclose such agreements or the substance thereof to the board of directors and that the agreements were not disclosed, (6) that Mr. Greebel had a duty to disclose

---

[47]    Adapted from Shkreli Instructions at 73.

the agreements or the substance thereof to the board of directors, (7) that the agreements or the substance thereof were not otherwise disclosed to the board of directors or its members by Mr. Greebel or otherwise, and (8) that had Retrophin's board of directors learned of the agreements or the substance thereof prior to their execution, they would not have entered into them.

The Bylaws of a company govern the duties and obligations of the board members and its officers.[48]  In determining whether any person had a duty to disclose information, you should look to determine whether the Bylaws of Retrophin or other written direction or policy given to such person specifically require such disclosure.

A "scheme or artifice" is simply a plan for the accomplishment of an objective. "Fraud" is a general term that embraces all the various means that an individual can devise and that are used by an individual to gain an advantage over another by false representations, suggestions, suppression or omission of the truth, or deliberate disregard for the truth.

A "scheme or artifice to defraud" for the purposes of the wire fraud statute is any plan, device, or course of action designed to obtain money or property by means of false representations.  Thus, a "scheme to defraud" is a plan to deprive another of money or property by trick, deceit, deception or swindle, or overreaching.  Count Seven alleges that there was a scheme or artifice to defraud or to obtain money or property by false and fraudulent pretenses, representations, or promises, as alleged in the Superseding Indictment.  A statement, representation, claim, or document is false if it is untrue when made and was known at the time

---

[48]    *See, e.g., Gonzalez v. Shanker*, 533 F.2d 832, 836 n.8 (2d Cir. 1976) ("[T]he powers, duties, and responsibilities of the Board [are established] under its by-laws."); *Grand Union Mount Kisco Employees Fed. Credit Union v. Kanaryk*, 848 F. Supp. 446, 447 (S.D.N.Y. 1994) (observing that the board's duties and responsibilities were set forth, in relevant part, in the company's bylaws).

47

to be untrue by the person making it or causing it to be made.  A representation or statement is fraudulent if it was falsely made with the intention to deceive.

Deceitful statements of half-truths or the concealment or omission of material facts when under a duty to disclose those facts, and the expression of an opinion not honestly entertained may constitute false or fraudulent representations under the statute.[49]  The fraudulent representation must relate to a material fact or matter.[50]  A material fact in the context of wire fraud is one that reasonably would be expected to be of concern to a reasonable and prudent person in relying upon the representation or statement in making a decision.[51]  A misrepresentation must be more than white lies repugnant to standards of business morality.[52]  A scheme to defraud does not exist when the allegedly false representations were not directed to the nature of the bargain.[53]

In addition to proving that a statement was false or fraudulent and related to a material fact, in order to establish a scheme to defraud, the government must prove that the alleged scheme contemplated depriving Retrophin of money or property.

It is not necessary that the government prove that the defendant actually realized any gain from the scheme or that the intended victim actually suffered any loss.[54]

I remind you that you must reach a unanimous decision in connection with each element.

---

[49]    Shkreli Instructions at 65.

[50]    *Id.* at 65.

[51]    *Id.* at 65–66.

[52]    *United States v. Regent Office Supply Co.*, 421 F.2d 1174, 1179 (2d Cir. 1970).

[53]    *Id.*

[54]    Adapted from Shkreli Instructions at 64–66.

48

30.    **PROPOSED INSTRUCTION 30:  Second Element: Participation in Scheme with Intent to Defraud**

The second element of wire fraud is that Mr. Greebel participated in the scheme to defraud knowingly, willfully, and with the specific intent to defraud.[55]

I already instructed you as to the meaning of "knowingly" and "willfully."  I refer you to those instructions as they apply here also.  For the purposes of the wire fraud statute, an "intent to defraud" means to act knowingly and with specific intent to deceive for the purpose of causing some financial or property loss to another.

I will remind you, however, that the question of whether a person acted knowingly, willfully, and with intent to defraud is a question of fact for you to determine, like any other fact question.  This question involves Mr. Greebel's state of mind.[56]

There are many factors you should consider in determining whether Mr. Greebel acted with fraudulent intent, including (i) whether he was lied to, intentionally misinformed, or otherwise not provided with material information pertaining to the alleged fraud and (ii) whether he gave instructions or advice that were ignored.  With respect to the settlement agreements at issue in Count Seven, you should also consider (i) whether the Retrophin board of directors was

---

[55]    The government has requested a charging instruction on conscious avoidance.  Mr. Greebel vigorously opposes the inclusion of such an instruction.  A conscious avoidance charge should only be given if (1) the defendant asserts the lack of some specific aspect of knowledge required for conviction, *see United States v. Civelli*, 883 F.2d 191, 194 (2d Cir. 1989), and (2) the appropriate factual predicate for the charge exists, i.e., "the evidence is such that a rational juror may reach [the] conclusion beyond a reasonable doubt . . . . that [the defendant] was aware of a high probability [of the fact in dispute] and consciously avoided confirming that fact," *United States v. Rodriguez*, 983 F.2d 455, 458 (2d Cir. 1993).  "Unless these two requirements are satisfied, the instruction should not be given."  *United States v. Ferrarini*, 219 F.3d 145, 154 (2d Cir. 2000).

[56]    Adapted from Shkreli Instructions at 66–67.

49

advised of such settlement agreements and (ii) whether litigation threats were made by certain parties against Retrophin.  With respect to the two consulting agreements at issue in Count Seven relating to Darren Blanton and Alan Geller, I instruct you to keep in mind that certain consultants, by the terms of their consulting agreements, needed only be available to perform consulting services and were not required to perform such services under their consulting agreements.

Under the wire fraud statute, even false representations or statements, or omissions of material facts, do not amount to a fraud unless done with fraudulent intent.  Where the allegedly defrauded party perceived no fraud and felt no harm, there is no fraudulent intent. Fraudulent intent is also lacking when the falsity of the alleged representations were not shown to be capable of affecting the allegedly defrauded party's understanding of the bargain nor of influencing his assessment of the value of the bargain to him.[57]

Additionally, I instruct you that however misleading or deceptive a plan may be, it is not fraudulent if it was devised or carried out in good faith.  An honest belief in the truth of the representations made by a defendant is a complete defense, however inaccurate the statements may turn out to be.  A defendant, however, has no burden to establish a defense of good faith.[58]

I remind you that you must reach a unanimous decision in connection with each element.

---

[57]    *United States v. D'Amato*, 39 F.3d 1249, 1257 (2d Cir. 1994); *United States v. Regent Office Supply Co.*, 421 F.2d 1174, 1179 (2d Cir. 1970).

[58]    Adapted from Sand, Jury Instruction 44–5.

**31.    PROPOSED INSTRUCTION 31:  Third Element: Use of the Wires**

The third and final element of wire fraud is the use of an interstate or international wire communication in furtherance of the scheme to defraud.  The wire communication must pass between two or more states, or it must pass between the United States and a foreign country. A wire communication includes a wire transfer of funds between banks in different states, telephone calls, emails, and facsimiles between two different states.

The item sent through the wires need not itself contain a fraudulent representation.  However, it must further or assist in the carrying out of the scheme to defraud.  It is not necessary for the defendant to be directly or personally involved in the wire communication, as long as the communication was reasonably foreseeable in the execution of the alleged scheme to defraud in which the defendant is accused of participating.  A wire communication is not in furtherance of a scheme to defraud when it is not sent in the execution of, or for the purpose of, executing the scheme.  If a wire communication increases the probability that the defendant would be detected and apprehended, it is not "in furtherance of" a scheme to defraud.  When a wire communication is immaterial to any consummation of the scheme, the federal wire fraud statute is not implicated.  The government must prove a sufficient connection between the wire and the execution of the scheme.[59]

I remind you that the government need not prove that Mr. Greebel actually committed wire fraud, the unlawful act charged as the object of the conspiracy in Count Seven. Rather, what the government must prove beyond a reasonable doubt is that Mr. Greebel knowingly, willfully, and intentionally joined that conspiracy with the specific intent to commit

---

[59]     *Kann v. United States,* 323 U.S. 88, 94–95 (1944).

51

every element of wire fraud.  I remind you that you must reach a unanimous decision in

connection with each element.[60]

---

[60]   Adapted from Shkreli Instruction at 69–70.

**32.**   **PROPOSED INSTRUCTION 32:  Venue**

I have explained to you the elements the government must prove beyond a reasonable doubt as to Count Seven.  The government also must prove venue.  As I explained to you earlier, the government must prove venue beyond a reasonable doubt.[61]

To establish venue for conspiracy to commit wire fraud as charged in Count Seven, the government must prove beyond a reasonable doubt that an overt act in furtherance of the conspiracy was committed in the Eastern District of New York, which consists of the Counties of Kings (also known as Brooklyn), Queens, Richmond (also known as Staten Island), Nassau, and Suffolk.  The overt act does not have to be an overt act that is charged in the Superseding Indictment in furtherance of the conspiracy.  In this regard, the government need not prove that the alleged crime was committed in the Eastern District of New York or that Mr. Greebel or any alleged co-conspirator was physically present here.  It is sufficient to satisfy the venue requirement if an overt act in furtherance of the conspiracy occurred within the Eastern District of New York.

This includes not just acts by Mr. Greebel or his co-conspirators, but also acts that the conspirators caused others to take that materially furthered the ends of the conspiracy.

Therefore, if you find beyond a reasonable doubt that an overt act in furtherance of the conspiracy took place in the Eastern District of New York, the government has satisfied its burden of proof as to venue as to Count Seven.

---

[61]    The Second Circuit has held that venue need only be proven by a preponderance of the evidence.  *See United States v. Rommy*, 506 F.3d 119 (2d Cir. 2007).  In light of *Blakely v. Washington*, 542 U.S. 296 (2004), however, every issue must be proven beyond a reasonable doubt, so defendants seek to preserve this argument for en banc or certiorari review.

I remind you that the government must prove each of the elements of all the counts beyond a reasonable doubt.

\* \* \* \* \*

In sum, if you find that the government has failed to prove any one of the elements for Count Seven, beyond a reasonable doubt, then you must find Mr. Greebel not guilty of wire fraud conspiracy for that count.  To find Mr. Greebel guilty of conspiring to commit wire fraud as charged in Count Seven, you must find that the government has proven, beyond a reasonable doubt, each and every element of the conspiracy to commit wire fraud as alleged in Count Seven.

33.     **PROPOSED INSTRUCTION 33:  Relationship to Retrophin's Board**

In the public corporation context, a corporation is not required to disclose a fact merely because a reasonable investor would very much like to know that fact.  Rather an omission is actionable only when the corporation is subject to a duty to disclose the omitted facts pursuant to the applicable federal securities laws.  When determining whether the government has proved beyond a reasonable doubt the elements of any of the charges, you therefore cannot consider a witness's testimony regarding what he/she "would have liked to have known."[62]

Mr. Greebel's only duty to disclose certain information to Retrophin's board of directors arises under the Sarbanes-Oxley Act.  Specifically, Mr. Greebel, in his role as outside counsel, was only required to disclose evidence of a material violation of state or federal securities law.[63]  An outside lawyer has an affirmative duty to disclose to a company's board only when he or she has credible evidence that it is reasonably likely that a material violation has

---

[62]     *In re Time Warner Securities Litigation*, 9 F.3d 259, 267 (2d Cir. 1993) (In the public corporation context, a corporation "is not required to disclose a fact merely because a reasonable investor would very much like to know that fact. Rather, an omission is actionable under the securities law only when the corporation is subject to a duty to disclose the omitted facts."); *see also San Leandro Emergency Medical Group Profit Sharing Plan v. Philip Morris Companies, Inc.*, 75 F.3d 801, 810-11 (2d Cir. 1996) (no requirement to disclose internal deliberations regarding alternative marketing strategies).

[63]     Outside counsel's duty to disclose arises only under the Sarbanes-Oxley Act ("SOX"). *See* SOX § 307 (17 C.F.R. § 205). Section 307 requires "an attorney to report evidence of a material violation of securities law or breach of fiduciary duty or similar violation by the company or any agent thereof, to the chief legal counsel or the chief executive officer of the company (or the equivalent thereof)." *Id.*

55

occurred.[64]  "An attorney is not required (or expected) to report gossip, hearsay, or innuendo."[65]

It is not enough that an outside attorney merely witnessed "a combination of circumstances from

which the attorney, in retrospect, should have drawn an inference" about the allegedly unlawful

conduct.[66]  I also instruct you that even if you find that Mr. Greebel knew that there was a

material violation of securities law and he did not report it to the Board of Directors, that alone is

not a crime, and you should not find him guilty for that reason.[67]  In addition, Mr. Greebel's

duties as outside counsel are not the same as those of a company's general counsel.  I instruct

---

[64]     "Evidence of a material violation means credible evidence, based upon which it would be
unreasonable, under the circumstances, for a prudent and competent attorney not to conclude that
it is reasonably likely that a material violation has occurred, is ongoing, or is about to occur." 17
C.F.R. § 205.2(e).

[65]     *See In re Implementation of Standards of Prof'l Conduct for Attorneys*, Release No. 8185
(Jan. 29, 2003) ("An attorney is obligated to report when, based upon that credible evidence, 'it
would be unreasonable, under the circumstances, for a prudent and competent attorney not to
conclude that it is reasonably likely that a material violation has occurred, is ongoing, or is about
to occur.'  **This formulation, while intended to adopt an objective standard, also recognizes
that there is a range of conduct in which an attorney may engage without being
unreasonable**.  The 'circumstances' are the circumstances at the time the attorney decides
whether he or she is obligated to report the information.  These circumstances may include,
among others, the attorney's professional skills, background and experience, the time constraints
under which the attorney is acting, the attorney's previous experience and familiarity with the
client, and the availability of other lawyers with whom the lawyer may consult.  Under the
revised definition, an attorney is not required (or expected) to report 'gossip, hearsay, [or]
innuendo.'  Nor is the rule's reporting obligation triggered by 'a combination of circumstances
from which the attorney, in retrospect, should have drawn an inference,' as one commenter
feared.") (emphasis added).

[66]     *Id.*

[67]     The sanctions and discipline provisions in SOX § 307 provide only for civil remedies or
SEC disciplinary action in the event an attorney violates the reporting rules.  17 C.F.R. §
205.6(c).  They do not contemplate private rights of action for noncompliance with the provision,
and the rule as implemented *does not mention the possibility of criminalizing violations*.  Indeed,
to our knowledge, there have been no cases where an attorney's failure to disclose or an alleged
violation of SOX 307 has been made the basis of a crime.

you that, in general, the duties that extend to a company's internal counsel do not extent to

outside counsel.[68]

---

[68]     *See* 17 C.F.R. § 205.3(b)(2) ("The chief legal officer (or the equivalent thereof) shall cause [outside counsel's] inquiry into the evidence of a material violation as he or she reasonably believes is appropriate to determine whether the material violation described in the report has occurred, is ongoing, or is about to occur.  If the chief legal officer (or the equivalent thereof) determines no material violation has occurred, is ongoing, or is about to occur, he or she shall notify the reporting attorney and advise the reporting attorney of the basis for such determination.").

34.     **PROPOSED INSTRUCTION 34:  Standards Unclear**

If you find that the Company's Bylaws, policies and procedures imposed obligations to disclose on outside counsel that were vague, unclear, or subject to more than one interpretation, then you must find that Mr. Greebel did not act knowingly, willfully, and with a specific intent to defraud Retrophin.  Further, if you find that Mr. Greebel believed in good faith that any disclosure obligations were ambiguous, vague, unclear, or subject to more than one interpretation, then you must find that Mr. Greebel did not act knowingly, willfully, and with a specific intent to defraud Retrophin.  A person cannot be found to have acted knowingly, willfully, and with a specific intent to defraud Retrophin, where any obligations to disclose the settlement and consulting agreements at issue to the board of directors were vague, unclear, or subject to more than one interpretation.

The government has the burden of proving beyond a reasonable doubt that the applicable disclosure standards were clear and that the defendant understood the law and the disclosure standards in question.  If the government fails to satisfy this burden of proof, you must enter a verdict of not guilty.[69]

---

[69]     *United States v. Whiteside*, 285 F.3d 1345, 1351 (11th Cir. 2002); *United States v. Pirro*, 212 F.3d 86, 90–91 (2d Cir. 2000); *Siddiqi v. United States*, 98 F.3d 1427, 1439 (2d Cir. 1996); *United States v. Migliaccio*, 34 F.3d 1517, 1525 (10th Cir. 1994); *United States v. Levin*, 973 F.2d 463 (6th Cir. 1992); *Funke v. Life Fin. Corp.*, 237 F. Supp. 2d 458, 468–69 (S.D.N.Y. 2002).

**35.**   **PROPOSED INSTRUCTION 35:  GAAP Standards**

The government has offered evidence regarding generally accepted accounting principles, or GAAP.  GAAP are standards used by accountants to prepare financial statements. I instruct you that a violation of GAAP is not an element of a conspiracy to commit wire fraud or securities fraud.[70]  GAAP compliance is also not evidence of fraudulent intent or guilt.[71]  Rather, to find that Mr. Greebel had the requisite fraudulent intent under Count Seven, you must rely on evidence other than any alleged GAAP violation.[72]

---

[70]   *United States v. Rigas*, 490 F.3d 208, 222 (2d Cir. 2007).

[71]   *See id.* at 220 (GAAP "neither establishes nor shields guilt in a securities fraud case.").

[72]   *See Ind. Pub. Ret. Sys. v. SAIC, Inc*., 818 F.3d 85, 93 (2d Cir. 2016), *cert. granted sub nom.*, *Leidos, Inc. v. Ind. Pub. Ret. Sys.*, 137 S. Ct. 1395 (2017).

**36.     PROPOSED INSTRUCTION 36:  Wash Trades**

A wash trade is a transaction made without an intent to take a genuine, bona fide position in the market, such as a simultaneous purchase and sale designed to negate each other so that there is no change in financial position.  A wash trade means entering into, or purporting to enter into, transactions to give the appearance that purchases and sales have been made, without resulting in a change in the trader's market position.[73]

---

[73]     *Reddy v. Commodity Futures Trading Comm'n*, 191 F.3d 109, 115 (2d Cir. 1999) (internal citations omitted); CFTC Glossary: A Layman's Guide to the Language of the Futures Industry (1997).

37.     **PROPOSED INSTRUCTION 37:  Alter Ego/Piercing the Corporate Veil**

Mr. Greebel asserts that the settlements entered into with MSMB Capital and MSMB

Healthcare investors were executed in the best interest of Retrophin to avoid litigation against

Retrophin at a vulnerable time in Retrophin's new life as a public company.  By contrast, the

government has argued that the settlements entered into with MSMB Capital and MSMB

Healthcare investors were executed with the purpose of defrauding Retrophin of its assets.  For

purposes of evaluating Mr. Greebel's and the government's contentions, I instruct you that,

under Delaware law, whether MSMB Capital and MSMB Healthcare investors would be able to

successfully file a lawsuit against Retrophin would depend on multiple factors regarding the

relationship between MSMB entities and Retrophin.  Such factors include whether the

corporation was adequately capitalized for the corporate undertaking; whether the corporation

was solvent; whether corporate formalities were observed; and whether the dominant shareholder

siphoned corporate funds.[74]  To prevail under the alter-ego theory of piercing the veil, a plaintiff

would not have needed to prove that there was actual fraud but must show a comingling of the

operations of the entity and its owner plus an overall element of injustice or unfairness.[75]

---

[74]     *United States v. Golden Acres, Inc*., 702 F. Supp. 1097, 1104 (D. Del. 1988), *aff'd sub
nom. Golden Acres, Inc. v. Sutton Place Corp*., 879 F.2d 857 (3d Cir. 1989), *and aff'd sub nom.
Appeal of J.L. Capano, Inc*., 879 F.2d 857 (3d Cir. 1989), *and aff'd*, 879 F.2d 860 (3d Cir. 1989).

[75]     *NetJets Aviation, Inc. v. LHC Commc'ns, LLC*, 537 F.3d 168, 176 (2d Cir. 2008)

38.     **PROPOSED INSTRUCTION 38: The Attorney-Client Relationship**

A fundamental principle in the client-lawyer relationship is that, in the absence of the client's informed consent, the lawyer must not reveal information relating to the representation.  This contributes to the trust that is the hallmark of the client-lawyer relationship. The client is thereby encouraged to seek legal assistance and to communicate fully and frankly with the lawyer even as to embarrassing or legally damaging subject matter.  The lawyer needs this information to represent the client effectively and, if necessary, to advise the client to refrain from wrongful conduct.  Almost without exception, clients come to lawyers in order to determine their rights and what is, in the complex of laws and regulations, deemed to be legal and correct.[76] Therefore, an attorney has a reasonable expectation that his or her client will honestly and openly share all information necessary for the attorney to provide full, fair, and appropriate legal advice.

---

[76]     ABA Model Rule 1.6 Comment [2].

## COUNT EIGHT

**39.     PROPOSED INSTRUCTION 39:  Summary of the Charge**

Count Eight of the Superseding Indictment charges Mr. Greebel with conspiracy

to commit securities fraud in connection with Retrophin as follows:

In or about and between November 2012 and September 2014, both dates being approximate and inclusive, within the Eastern District of New York and elsewhere, the defendant EVAN GREEBEL and Martin Shkreli, together with others, did knowingly and willfully conspire to use and employ manipulative and deceptive devices and contrivances, contrary to Rule 10b-5 of the Rules and Regulations of the United States Securities and Exchange Commission, Title 17, Code of Federal Regulations, Section 240.10b-5, by: (a) employing devices, schemes and artifices to defraud; (b) making untrue statements of material fact and omitting to state material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading; and (c) engaging in acts, practices and courses of business which would and did operate as a fraud and deceit upon investors and potential investors in Retrophin, in connection with the purchase and sale of securities of Retrophin, directly and indirectly, by use of means and instrumentalities of interstate commerce and the mails, contrary to Title 15, United States Code, Sections 78j(b) and 78ff.

**40.     PROPOSED INSTRUCTION 40: Conspiracy to Commit Securities Fraud: Elements of the Offense**

I will now instruct you on conspiracy to commit securities fraud.  I have already explained what it means to conspire to commit an offense.  Those same instructions apply to Count Eight.

The relevant portion of the securities-fraud conspiracy statute, Title 18, United States Code, Section 371, provides in relevant part that it shall be unlawful for "two or more persons [to] conspire either to commit any offense against the United States, or to defraud the United States, or any agency thereof in any manner or for any purpose, and one or more of such persons do any act to effect the object of the conspiracy[.]"

To prove the crime of conspiracy to commit securities fraud, the government must prove <u>five</u> elements beyond a reasonable doubt:

<u>First</u>, that two or more persons entered into an agreement to commit every element of wire fraud; and

<u>Second</u>, that Mr. Greebel knowingly, willfully, and intentionally became a member of the conspiracy with the specific intent to cause the contemplated harm alleged in Count Eight of the Superseding Indictment; and

<u>Third</u>, that one of the members of the conspiracy committed at least one of the overt acts for the purpose of advancing or helping the alleged conspiracy; and

<u>Fourth</u>, that at least one overt act was in furtherance of some object or purpose of the conspiracy as charged in the Superseding Indictment.

Fifth, that either the agreement was formed or that an overt act was committed in the Eastern District of New York, which includes the boroughs of Queens, Brooklyn, Staten Island, and the counties of Suffolk and Nassau, New York.[77]

I remind you that you must reach a unanimous decision in connection with each element.

---

[77] The Second Circuit has held that venue need only be proven by a preponderance of the evidence. *See United States v. Rommy*, 506 F.3d 119 (2d Cir. 2007). In light of *Blakely v. Washington*, 542 U.S. 296 (2004), however, every issue must be proven beyond a reasonable doubt, so defendants seek to preserve this argument for *en banc* or certiorari review.

**41.**     **PROPOSED INSTRUCTION 41:  Securities Fraud: The Statute and Rule**

The relevant statute is Section 10(b) of the Securities Exchange Act of 1934.

That law provides in relevant part that:

It shall be unlawful for any person, directly or indirectly, by the use of any means or instrumentality of interstate commerce or of the mails, or any facility of any national securities exchange –
(b) To use or employ, in connection with the purchase or sale of any security registered on a national securities exchange or any security not so registered .  .  . any manipulative or deceptive device or contrivance in contravention of such rules and regulations as the [Securities and Exchange Commission ("SEC")] may prescribe as necessary or appropriate in the public interest or for the protection of investors.

Based on its authority under this statute, the SEC enacted Rule 10b-5, which

provides:

It shall be unlawful for any person, directly or indirectly, by the use of any means or instrumentality of interstate commerce, or of the mails or of any facility of any national securities exchange,
(a)  To employ any device, scheme, or artifice to defraud,
(b)  To make any untrue statement of a material fact or to omit to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading, or
(c)  To engage in any act, practice, or course of business which operates or would operate as a fraud or deceit upon any person, in connection with the purchase or sale of any security.

**A.**     **Securities Fraud - Definition and Elements**

In order to meet its burden of proof as to Count Eight, the government must prove

beyond a reasonable doubt that Mr. Greebel conspired with the specific intent to commit every

element of the crime of securities fraud.  Those elements are:

42.     **PROPOSED INSTRUCTION 42:  First Element: Fraudulent Act**

The first element that the government must prove beyond a reasonable doubt is that, in connection with the purchase or sale of a security in Retrophin, Mr. Greebel conspired with Mr. Shkreli to:

(1)  employ a device, scheme, or artifice to defraud the market of potential investors in Retrophin, or

(2)  made an untrue statement of a material fact or omitted to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading, or

(3)  engaged in an act, practice, or course of business that operated, or would operate, as a fraud or deceit upon a purchaser or seller of Retrophin.

To prove this element, it is necessary for the government to establish one of these three allegedly unlawful acts in connection with the sale or purchase of Retrophin stock.  But you must be unanimous as to which type of allegedly unlawful conduct you find to have been proven beyond a reasonable doubt.

Let me now explain some of these terms.

- *Device, Scheme, or Artifice to Defraud*:  A device, scheme or artifice to defraud is a plan for the accomplishment of a fraud.  Fraud is a general term that embraces all efforts and means that individuals devise to take advantage of others through lies and deception.

- *False Statements and Omissions*:  A statement, representation, claim, or document is false if it is untrue when made and was then known to be untrue by the person making it or causing it to be made.  A representation or statement is fraudulent if it was made with the intention to deceive.  False or fraudulent statements under the statute may include the

concealment of material facts in a manner that makes what is said or represented deliberately misleading.  Any omitted information must be material, and there must be a duty to disclose such information.

    The deception need not be based on spoken or written words alone.  The arrangement of the words, or the circumstances in which they are used, may convey the false and deceptive appearance.  If there is deception, the manner in which it is accomplished does not matter.

- *"In Connection With"*:  You need not find that Mr. Greebel actually participated in any securities transaction if you find that the government proved beyond a reasonable doubt that he was engaged in fraudulent conduct that was "in connection with" a purchase or sale of securities.  To find that the "in connection with" element is satisfied, you must find beyond a reasonable doubt that there was some nexus or relation between the allegedly fraudulent conduct and the sale or purchase of securities.  Fraudulent conduct may be "in connection with" the purchase or sale of securities if you find that the alleged fraudulent conduct "touched upon" a securities transaction.

    It is no defense to an overall scheme to defraud that Mr. Greebel may not have been involved in the scheme from its inception or may have played only a minor role with no contact with the investors and purchasers of the securities in question.  Nor is it necessary for you to find that Mr. Greebel was the actual seller or offeror of the securities.  It is sufficient if you find by a reasonable doubt that Mr. Greebel participated in the scheme or fraudulent conduct that involved the purchase or sale of securities.  By the same token, the government need not prove that Mr. Greebel personally made the misrepresentation or that he omitted the material fact necessary to make the statements

made not misleading.  It is sufficient if the government proves beyond a reasonable doubt that Mr. Greebel caused the statement to be made or the fact to be omitted.  With regard to the alleged misrepresentations and omissions, you must determine whether the statement was true or false when it was made, and, in the case of alleged omissions, whether the omission was misleading and that there was a duty to disclose the omitted information.

As a reminder, however, Mr. Greebel is charged only with conspiring in an alleged unlawful plan to commit securities fraud, not a substantive crime of securities fraud.  Mere knowledge or acquiescence, without participation, in such unlawful plan is not sufficient.  Moreover, the fact that the acts of a defendant, without knowledge, merely happen to further the purposes or objectives of the alleged conspiracy, does not make the defendant a member.  More is required under the law.  Additionally, mere presence of Mr. Greebel where a crime is being committed, even coupled with knowledge by Mr. Greebel that a crime is being committed, is not sufficient to prove Mr. Greebel's membership in the alleged conspiracy.

What is required is that a defendant must have participated with knowledge of at least some of the purposes or objectives of the conspiracy and with the specific intention of aiding in the accomplishment of every element of those unlawful ends.  In sum, a defendant, with an understanding of the unlawful character of the conspiracy, must have intentionally engaged, advised, or assisted in it for the purpose of furthering the illegal undertaking.

- *Material Fact*: If you find that the government has established beyond a reasonable doubt that a statement was false or omitted in connection with the purchase or sale of any

69

securities, you must next determine whether the fact misstated or omitted was material under the circumstances.  "A misrepresentation is material under Section 10(b) of the Securities Exchange Act and Rule 10b–5 where there is a substantial likelihood that a reasonable investor would find the misrepresentation important in making an investment decision."  It is not enough that a statement is false or incomplete, if the misrepresented fact is otherwise insignificant.  Therefore, the government must prove beyond a reasonable doubt that the misleading information would have been reasonably likely to influence Retrophin shareholders under the circumstances in making a determination required to be made.[78]  If you find that there was a material misrepresentation or omission of a material fact when there was a duty to disclose, it does not matter whether the intended victims were gullible buyers or sophisticated investors, because the securities laws protect the gullible and unsophisticated as well as the experienced investor.

---

[78]    *Basic Inc. v. Levinson*, 485 U.S. 224 (1988) ("It is not enough that a statement is false or incomplete, if the misrepresented fact is otherwise insignificant."); *United States v. Bonventre*, 646 Fed. App'x 73, 85 (2d Cir. 2016) (misrepresentations were "reasonably likely to influence" lenders' subjective decisions regarding whether to extend a loan); *United States v. Rigas*, 290 F.3d 208, 234 (2d Cir. 2008) (misleading information would have been "reasonably likely to influence" a reasonable hedge fund investor under the circumstances "in making a determination required to be made") (citing *Weinstock v. United States*, 231 F.2d 699, 701 (D.C. Cir. 1956) ("materiality must be judged by the facts and circumstances in the particular case")); ABA, Model Jury Instructions: Securities Litigation § 2.03[2][a] (modified).

43.     **PROPOSED INSTRUCTION 43:  Puffery; Forward-Looking Statements; Optimism**

Even if a statement is untrue or misleading, it is not material and cannot support a charge of securities fraud if it constitutes puffery or sales talk that no reasonable investor would consider important in deciding whether to invest.  People in charge of a company are not required to take a gloomy, fearful, or defeatist view of the future.  Marketing pitches, expressions of general optimism, self-praise, and similar corporate cheerleading may be immaterial because they qualify as mere puffery, the type of superlatives that are common in business, and therefore are not the type of statements on which a reasonable investor would rely.

Statements of optimism and opinion are also not considered material when accompanied by cautionary language or disclosures, such as the disclosures of risks.  Statements that are accompanied by appropriate cautionary language and disclosures of risk cannot be considered material and cannot support a securities fraud charge.

Likewise, statements of mere belief or disbelief in current or future events, not accompanied by objective evidence that the statement also expressly or impliedly asserted something false or misleading about its subject matter, are not material as a matter of law, because no one would reasonably rely on another person's ability to predict the future.[79]

---

[79]     *Eca & Local 134 IBEW Joint Pension Trust of Chi. v. JP Morgan Chase Co.*, 553 F.3d 187, 197–98 (2d Cir. 2009); *Rombach v. Chang*, 355 F.3d 164, 174 (2d Cir. 2004); *Shields v. Citytrust Bancorp.*, 25 F.3d 1124, 1129–30 (2d Cir. 1994) ("People in charge of an enterprise are not required to take a gloomy, fearful or defeatist view of the future; subject to what current data indicates, they can be expected to be confident about their stewardship and the prospects of the business that they manage."); *Vulcan Metals Co. v. Simmons Mfg. Co.*, 248 F. 853, 857 (2d Cir. 1918) (Hand, J.); *San Leandro Emergency Medical Group Profit Sharing Plan v. Phillip Morris Comp., Inc.*, 75 F.3d 801 (2d Cir. 1996); *Parnes v. Gateway 2000*, 122 F.3d 539, 548 (7th Cir. 1997); Va. *Bankshares v. Sandberg*, 501 U.S. 1083, 1095–96 (1991) (statements of mere belief or disbelief in current or future events, not accompanied by objective evidence that the statement

I remind you that you must reach a unanimous decision in connection with each element.

---

also expressly or impliedly asserted something false or misleading about its subject matter, are not material as a matter of law).

44.     **PROPOSED INSTRUCTION 44:  Lockup Agreements**

You have heard testimony regarding placing restrictions on the trading of shares of stock of a new public company.  The government alleges that Mr. Greebel and others conspired to enable Shkreli to control the price and trading of the Fearnow shares of stock.  Mr. Greebel argues [to be supplemented at the end of any defense case].  As you consider the facts, I instruct you that it is legal for new companies to restrict the trading in shares through what are known as "lockup agreements" which prohibit recipients from selling their shares for a set period of time.  In other words, their shares are "locked up."  Before a company goes public, the company and its underwriter typically enter into a lockup agreement to ensure that shares owned by these recipients do not enter the public market too soon after the offering, or IPO.[80]  In the SEC's view, lockup agreements are "common because they prevent pre-IPO shares from flooding and destabilizing the market for newly issued shares."[81]  They typically "have nothing to do with potential control, long-term ownership, or evading disclosure rules."[82]

I instruct you that it is lawful to impose restrictions on the sale of stock of new companies and you must not draw any negative conclusions from the existence, if any, of lockup agreements.

---

[80]     https://www.sec.gov/fast-answers/answerslockuphtm.html.

[81]     SEC Amicus Brief, *In re Facebook, Inc., IPO Sec. & Deriv. Litig.*, 43 F. Supp. 3d 369 (S.D.N.Y.), *aff'd sub nom. Lowinger v. Morgan Stanley & Co. LLC*, 841 F.3d 122 (2d Cir. 2016).

[82]     *Id.*

**45.**     **PROPOSED INSTRUCTION 45:  Second Element: Knowledge, Intent, and Willfulness**

The second element that the government must establish as to Count Eight is that Mr. Greebel conspired knowingly, willfully, and with intent to defraud.

As I explained before, a person acts "knowingly" if he acts purposely and voluntarily and not because of ignorance, mistake, accident, negligence, or carelessness, or as a result of being misled, deceived, having had material information omitted from him by someone else.

"Willfully" means to act knowingly and purposely, with an intent to do something the law forbids; that is to say, with bad purpose either to disobey or to disregard the law.  A person's conduct is not "willful" if it was due to negligence, inadvertence, or mistake, being misled or deceived by someone else, having material information omitted or withheld, or was the result of a good-faith misunderstanding.

"Intent to defraud" in the context of the securities laws means to act knowingly and with intent to deceive.  A person acts "intentionally" when he acts deliberately and purposefully.  That is, the actions of a person accused of a crime must have been the product of his conscious, objective decision rather than the product of a mistake, misunderstanding, deception, having material information withheld or omitted from him, or accident.

The question of whether a person acted knowingly, willfully, and with intent to defraud is a question of fact for you to determine, like any other fact question.  This question involves one's state of mind.

Direct proof of knowledge and fraudulent intent may not be available.  It would be uncommon if it could be shown that a person wrote or stated that, as of a given time in the past, he committed an act with fraudulent intent.  Such direct proof is not required.

The ultimate facts of knowledge and criminal intent, though subjective, may be established by circumstantial evidence, based on a person's outward manifestations, words, conduct, acts, and all the surrounding circumstances disclosed by the evidence and the rational or logical inferences that may be drawn therefrom.

I already have instructed you as to what circumstantial evidence is and the inferences that may be drawn from it.  Those instructions also apply here.  What is referred to as drawing inferences from circumstantial evidence is no different from what people normally mean when they say, "use your common sense."  Using your common sense means that, in deciding whether Mr. Greebel possessed or lacked an intent to defraud, you do not limit yourself to what Mr. Greebel said, but you also look at what he did and what others did in relation to Mr. Greebel and, in general, everything that occurred.

Circumstantial evidence, if believed, is of no less value than direct evidence.  In either case, the essential elements of the crime charged must be established by the government beyond a reasonable doubt.

Under the anti-fraud statutes, even false representations or omissions of material facts do not amount to a fraud unless done with fraudulent intent.  However misleading or deceptive a plan may be, it is not fraudulent if it was devised or carried out in good faith.  An honest belief in the truth of the representations made by a defendant is a complete defense, however inaccurate the statements may turn out to be.

As a practical matter, then, to prove the charge against a defendant, the government must establish beyond a reasonable doubt that the defendant knew that his conduct as a participant in the scheme was calculated to deceive and, nonetheless, he associated himself with the alleged fraudulent scheme.

If you find that Mr. Greebel did not act knowingly, willfully, and with the intent to deceive, then you must find Mr. Greebel not guilty.  On the other hand, if you find that the government has established beyond a reasonable doubt not only the first element, but also this second element, that Mr. Greebel acted knowingly, willfully, and with the intent to deceive, then you must consider the third element.  I remind you that you must reach a unanimous decision in connection with each element.

**46.      PROPOSED INSTRUCTION 46:  Third Element: Instrumentality of Interstate Commerce**

        The third and final element that the government must prove beyond a reasonable doubt as to Count Eight is that Mr. Greebel knowingly conspired with the specific intent to use, or caused to be used, the mails or any means or instrumentalities of transportation or communication in interstate commerce in furtherance of the scheme to defraud.  This would include the use of a telephone, a bank wire transfer, or an email sent over the Internet that traveled across state lines.

        It is not necessary that a defendant be directly or personally involved in any mailing, wire, or use of an instrumentality of interstate commerce.  If the defendant was an active participant in the scheme and took steps or engaged in conduct that he knew or reasonably could foresee would naturally and probably result in the use of interstate means of communication, then you may find that he caused the mails or an instrumentality of interstate commerce to be used.

        When one does an act with the knowledge that the use of interstate means of communication will follow in the ordinary course of business, or where such use reasonably can be foreseen, even though not actually intended, then he causes such means to be used.

        It is not necessary that the items sent through interstate means of communication contain the fraudulent material, or anything criminal or objectionable.  The interstate means of communication may be entirely innocent.

        The use of interstate communications need not be central to the execution of the scheme, and may even be incidental to it.  All that is required is that the use of the interstate communications bear some relation to the object of the scheme or fraudulent conduct.  In fact,

77

the actual offer or sale need not be accomplished by the use of interstate communications, so long as the defendant is still engaged in actions that are a part of the fraudulent scheme when interstate communications are used.  I remind you that you must reach a unanimous decision in connection with each element.

You have also heard the parties use the term "affiliate."  An "affiliate" of an issuer under the law means a  person, such as an executive officer, a director, or a 10% or more shareholder, in a relationship of "control" with the issuer.  "Control" means the power to direct the management and policies of the company in question, whether through the ownership of voting securities, by contract, or otherwise.  If you buy securities from a controlling person or "affiliate," you take restricted securities, even if they were not restricted in the affiliate's hands.[83]

---

[83]     17 C.F.R. 230.144; United States Securities & Exchange Commission, *Rule 144: Selling Restricted and Control Securities*, *available at* https://www.sec.gov/reportspubs/investor-publications/investorpubsrule144htm.html; American Standard, SEC No-Action Letter, 1972 SEC No Act. LEXIS 3787 at *1 (Oct. 11, 1972) (referring to a person's status as a "10% shareholder" as one of the indicia of "control").

47.     **PROPOSED INSTRUCTION 47:  Venue**

I have previously instructed you on venue for wire fraud conspiracy.  Those instructions apply here as well.

## III. DEFENSES

**48.**     **PROPOSED INSTRUCTION 48:  Good Faith**

Because the government must prove beyond a reasonable doubt that Mr. Greebel, whom you are considering, acted knowingly, willfully, and with a specific intent to defraud, good faith is an absolute defense to every charge in this case.

A statement made with a good-faith belief in its accuracy does not amount to a false statement and is not a crime.  This is so even if the statement is, in fact, erroneous.  If the defendant believed in good faith that he was acting properly, even if he was mistaken in that belief, and even if others were injured by his conduct, there would be no crime.

The burden of establishing lack of good faith and criminal intent beyond a reasonable doubt rests on the prosecution.  Mr. Greebel is under no burden to prove his good faith; rather, the prosecution must prove bad faith or knowledge of falsity beyond a reasonable doubt.  If the evidence in the case leaves you with a reasonable doubt as to whether Mr. Greebel, whom you are considering, acted in good faith, you must find Mr. Greebel not guilty.[84]

---

[84]     Adapted from Sand, Jury Instruction 8–1.

**49.**      **PROPOSED INSTRUCTION 49:  Defense Theory of the Case**

[To be supplemented at the end of any defense case][85]

---

[85]    *See United States v. GAF Corp.*, 928 F.2d 1253, 1262 (2d Cir. 1991) ("This Court has repeatedly recognized a criminal defendant's right to a jury charge which reflects the defense theory.").

## IV. <u>CLOSING INSTRUCTIONS</u>

I have now outlined for you the rules of law applicable to the charges in this case and the processes by which you should weigh the evidence and determine the facts.  In a few minutes, you will retire to the jury room for your deliberations.

**50.**     **PROPOSED INSTRUCTION 50:  Selection of a Foreperson**

When you retire, you will choose one member of the jury as your foreperson.

That person will preside over the deliberations and speak for you here in open court.  In order for

your deliberations to proceed in an orderly fashion, you must have a foreperson, but of course,

his or her opinion or vote are not entitled to any greater weight than that of any other juror.

**51.** **PROPOSED INSTRUCTION 51:  Verdict & Deliberations**

The government, to prevail, must prove the essential elements by the required degree of proof, as already explained in these instructions.  If the government succeeds, your verdict should be guilty as to the count; if it fails, your verdict should be not guilty as to the count.  To report a verdict, it must be unanimous.

Your function is to weigh the evidence in the case and determine whether or not the defendant is guilty, based solely upon such evidence.

Each juror is entitled to his or her opinion; each should, however, exchange views with his or her fellow jurors.  That is the very purpose of jury deliberation—to discuss and consider the evidence; to listen to the views of fellow jurors; to present your individual views; to consult with one another; and to reach an agreement based solely and wholly on the evidence—if you can do so without doing violence to your own individual judgment.

Each of you must decide the case for yourself, after consideration, with your fellow jurors, of the evidence in the case.

But you should not hesitate to change an opinion that, after discussion with your fellow jurors, appears erroneous.

However, if, after carefully considering all the evidence and the arguments of your fellow jurors, you entertain a conscientious view that differs from the others, you are not to yield your conviction simply because you are outnumbered.

Your final vote must reflect your conscientious conviction as to how the issues should be decided.  Your verdict, whether guilty or not guilty, must be unanimous.

As you deliberate, your function is to weigh the evidence in the case and to determine whether the defendant is guilty beyond a reasonable doubt, solely upon the basis of

such evidence.  Under your oath as jurors, you may not consider any consequences, including the punishment that may be imposed upon the defendant, if he is convicted, to influence your verdict, or in any way enter into your deliberations.  The duty of imposing punishment rests exclusively with the court.

In addition, during your deliberations, you must not communicate with or provide any information to anyone by any means about this case.  You may not use any electronic device or media, such as the telephone, a cell phone, smart phone, iPhone, Blackberry or computer, the internet, any internet service, any text or instant messaging service, any internet chat room, blog, or website such as Facebook, Instagram, LinkedIn, YouTube, or Twitter, to communicate to anyone any information about this case or to conduct any research about this case.  In other words, you cannot talk to anyone on the phone, correspond with anyone, or electronically communicate with anyone about this case, except with your fellow jurors in the jury room during deliberations.

Along the same lines, you should not try to access any information about the case or do research on any issue that arose during the trial from any outside source, including dictionaries, reference books, or anything on the Internet.

Information that you may find on the Internet or in a printed reference might be incorrect or incomplete.  In our court system, it is important that you not be influenced by anyone or anything outside this courtroom.  Your sworn duty is to decide this case solely and wholly on the evidence that was presented to you in this courtroom.

**52.**     **PROPOSED INSTRUCTION 52:  Note-Taking**

        Your notes are to be used solely to assist you and are not to substitute for your recollection of the evidence in the case.  Do not assume simply because something appears in a juror's notes that it necessarily took place in court.  Instead, it is your collective memory that must control as you deliberate upon the verdict.  The fact that a particular juror has taken notes entitles that juror's views to no greater weight than those of any other juror, and your notes are not to be shown to any other juror during your deliberations.

**53.**     **PROPOSED INSTRUCTION 53:  Communications with the Court**

If it becomes necessary during your deliberations to communicate with me for any reason, simply send me a note signed by your foreperson or by one or more other members of the jury.  No member of the jury should ever attempt to communicate with me or with any court personnel by any means other than a signed writing.  I will not communicate with any member of the jury on any subject touching on the merits of this case other than in writing or orally here in open court.  Do not ever disclose how the jury stands numerically or otherwise on the question of guilt or innocence.

**54.      PROPOSED INSTRUCTION 54:  Right to See Evidence**

You will have the exhibits and a list of exhibits received in evidence during the course of the trial in the jury room with you.  If you wish to have any portion of the testimony repeated, you may simply indicate that in a note.  Be as specific as you can be if you make such a request.  Let us know which exhibit or which part of which witness's testimony you want to hear, and please be patient while we locate it.  If you need further instructions on any point of law, you should also indicate that in a note.

**55.**      **PROPOSED INSTRUCTION 55:  Return of Verdict**

When you have reached a verdict, simply send me a note signed by your foreperson that you have reached a verdict.  Do not indicate in the note what the verdict is.

To report a verdict, it must be unanimous, and you must be prepared to render a verdict for the defendant as to both Counts Seven and Eight of the Superseding Indictment.  To help you, I have prepared a verdict form that may be of assistance to you in your deliberations. On the verdict sheet are spaces marked "guilty" or "not guilty" for both counts.  The form is in no way intended to indicate how you must deliberate or decide the facts of this case.  The foreperson should use a check mark in the appropriate space indicating "guilty" or "not guilty" for each count of the Superseding Indictment with which Mr. Greebel is charged.  The foreperson should also place his or her initials and the date beside each mark on the verdict form.

**56.**      **PROPOSED INSTRUCTION 56:  Need for Unanimity**

As I have instructed you, in order to find Mr. Greebel guilty on Count Seven or Count Eight, you must unanimously agree that the government has proven beyond a reasonable doubt that Mr. Greebel knowingly, and willfully, with the intent to defraud, entered into an agreement with at least one other person to commit every element of wire fraud in Count Seven or every element of securities fraud in Count Eight.

Your verdict must also be unanimous in another sense.  All twelve of you must agree on the specific object Mr. Greebel allegedly agreed to try to accomplish.  It is not enough to convict if some of you find that the government has proven an agreement to knowingly, willfully, and with intent to defraud accomplish one unlawful objective while others of you find that the government has proven an agreement to accomplish a different unlawful objective.  If you do not all agree unanimously that the government has proven beyond a reasonable doubt an agreement to knowingly and willfully accomplish the same unlawful objective, you must return a verdict of not guilty.[86]

---

[86]      Sand, Instruction 9-7A (modified); *United States v. Helmsley*, 941 F.2d 71, 91 (2d Cir. 1991).

**57.      PROPOSED INSTRUCTION 57:  Conclusion**

Finally, I want to remind you of the oath you took when you were sworn as a juror at the beginning of this case.  Remember, in your deliberations, that this case is no passing matter for the government or Mr. Greebel.  The parties and the court rely on you to give full and conscientious deliberation and consideration to the issues and evidence before you.  By so doing, you carry out to the fullest your oaths as jurors:  to well and truly try the issues of this case and a true verdict render.

Before asking you to retire and begin your deliberations, let me first consult with counsel to be certain I have not overlooked any point.