# GIBSON DUNN

Gibson, Dunn & Crutcher LLP

555 Mission Street
San Francisco, CA 94105-0921
Tel 415.393.8200
www.gibsondunn.com

Winston Y. Chan
Direct: +1 415.393.8362
Fax: +1 415.374.8460
WChan@gibsondunn.com

November 30, 2017

VIA ECF

The Honorable Kiyo A. Matsumoto
United States District Judge
United States District Court for the Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York 11201

Re:     *United States v. Greebel*, S1 15 Cr. 637 (KAM)

Dear Judge Matsumoto:

We respectfully write in connection with the government's letter dated November 28, 2017, herein attached, identifying four expert witnesses the government may seek to call in its rebuttal case.  For the following reasons, we respectfully request that the Court compel the government immediately to comply with its disclosure obligations pursuant to Federal Rule of Criminal Procedure ("Rule") 16 and the Court's July 14, 2017 Amended Pretrial Scheduling Order, Dkt. No. 266.[1]  Before filing this motion, we asked the government to commit to providing supplemental disclosures by no later than December 1, 2017 at 12 noon, but the government declined.

I.     Background

On December 22, 2015, the government committed to notifying Mr. Greebel "in a timely fashion of any expert that the government intends to call at trial and provid[ing] [Mr. Greebel] with a summary of the expert's opinion."  Dkt. No. 16 at 2.  The Court's July 14, 2017 Amended Pretrial Scheduling Order set a deadline of August 11 for such disclosures.  *See* Dkt. No. 266 at ¶ 4 & n.2 (amending Dkt. No. 147 at ¶ 3(iv) (requiring "a list of witnesses, including with respect to any expert witness, a description of qualifications and a summary of expected testimony").

---

[1]     We spoke with one of the government's experts previously with respect to potentially serving as our expert for this case.  We have raised this issue with that expert and will await to hear whether the government will be withdrawing that expert's name from its list of potential rebuttal experts before raising the matter with the Court.

Beijing • Brussels • Century City • Dallas • Denver • Dubai • Frankfurt • Hong Kong • Houston • London • Los Angeles • Munich
New York • Orange County • Palo Alto • Paris • San Francisco • São Paulo • Singapore • Washington, D.C.

**GIBSON DUNN**

The Honorable Kiyo A. Matsumoto
November 30, 2017
Page 2

On August 11, 2017, we provided timely disclosures of the identities and qualifications of all of our potential experts, as well as summaries of their expected testimony. *See* Dkt. No. 312-2. The government only disclosed that it "may call, either on its direct case or as a rebuttal witness, an expert in the areas of professional responsibility and/or legal ethics for outside counsel representing companies and/or the Board of Directors," but the government did not identify any specific experts or give summaries of any expected expert testimony. *See* Dkt. No. 311 at 2.

In a letter dated September 7, also attached herein, the government advised us that it would not call an expert in its case-in-chief, except to the extent the Court allowed Deborah Oremland to offer some expert testimony. The government further wrote, "Once the defense has provided supplemental disclosures and the Court has determined which, if any, testimony may be offered at trial by the experts noticed by the defendant, the government will identify and provide relevant disclosures for any rebuttal experts it may seek to call."

On September 19, we filed detailed supplemental disclosures further describing our proposed experts' backgrounds and qualifications, as well as summaries and bases of their expected testimony. Dkt. No. 389-1.

In response to the government's additional requests for specific information regarding the expected testimony, bases, and prior court appearances of eight of our experts, and at the Court's direction, we filed further supplemental disclosures on October 11 and 13. Dkt. Nos. 401, 405.[2]

On November 21, we requested that the government disclose, by November 28, "its rebuttal experts, if any, including summaries of any such expert's qualifications and opinions, as well as the bases and methodologies thereof." Dkt. No. 454 n.3.

Now, just a few days before it rests its six-week case-in-chief, the government disclosed the identities and qualifications of four proposed rebuttal experts. However, the government failed to summarize their expected testimony. Astoundingly, for each of its proposed rebuttal experts, the government states only that they will "address one or more opinions offered by" certain of our defense experts without identifying those opinions and providing the opinions offered by the rebuttal experts and their methodologies.

---

[2] We also filed extensive additional *Daubert* briefing on nine of our proposed experts, and the Court held a *Daubert* hearing on Alan Johnson on November 4.

**GIBSON DUNN**

The Honorable Kiyo A. Matsumoto
November 30, 2017
Page 3

The government also does not describe the specific bases for each expert's expected testimony, including which "legal or regulatory principals, rules, and guidance" Professor Coffee will rely on; which "regulatory rules and guidance" Professor Wintoki and Mr. Clarke will rely on; which legal or ethical principles, rules, and guidance" Professor Green will rely on; and which "documents related to this matter" all four experts will rely on.

The government's disclosures violate the letter and spirit of expert disclosure requirements, and fail to meet the requests that the government sought from us relating to our experts. Before filing this motion, we asked the government to commit to providing supplemental disclosures by no later than December 1, 2017 at 12 noon, but the government declined.

The government argues that it cannot possibly know which opinions its experts will have to respond to without knowing more about which of our experts will testify and what they will say. The government's argument makes no sense. At the government's insistence, we provided repeated and multiple supplemental disclosures without knowing the government's case-in-chief. The same is true for the government also, but the government overlooks this undesirable fact, and we believe the same rules about disclosure should apply to both parties.

II.   **The Government Must Disclose Its Proposed Experts' Expected Opinions, as Well as the Specific Bases for Those Opinions**

Rule 16(a)(1)(G) requires the government to provide "a written summary of any [expert] testimony that the government intends to use . . . in its case-in-chief at trial." The summary "must describe the witness's opinions, the bases and reasons for those opinions, and the witness's qualifications." "[W]here . . . the government represents to the defendant that it will comply with Rule 16's requirements pertaining to expert testimony, the government bears the burden of following through on that representation." *United States v. Cruz*, 363 F.3d 187, 196 n.2 (2d Cir. 2004). Inadequate disclosure is grounds for preclusion of the government's proffered expert. *Id.*

The Second Circuit has in the past admonished Assistant United States Attorneys for the Eastern District of New York from narrowly reading Rule 16(a)(1)(G) as giving them "carte blanche in every case to spring a surprise expert witness on an unsuspecting defendant who has long since disclosed his own expert's prospective testimony. *United States v. Tin Yat Chin*, 476 F.3d 144, 146 (2d Cir. 2007). The court explained that "no defense counsel, no matter how experienced, can fairly be asked to cross-examine on a moment's notice a witness who comes clothed with all the impressive credentials and specialized training of an expert and whose opinions and methods with respect to the case at hand have been subject to no prior scrutiny." *Id.*

**GIBSON DUNN**

The Honorable Kiyo A. Matsumoto
November 30, 2017
Page 4

In *Tin Yat Chin*, the defendant had timely disclosed both its intent to call a handwriting expert and the expert's opinions, but the government "chose to remain entirely silent, until one day before the end of the defense case, both as to the fact that it had retained a handwriting expert **and as to the testimony he was expected to give**." *Id*. (emphasis added). The Second Circuit described this conduct as "sharp practice, unworthy of a representative of the United States." *Id*. The only reason the court did not find a constitutional violation was because the trial judge had granted the defendant a continuance to prepare for cross-examination, which the defendant was able to do given the closeness in expertise between the defendant's own expert and the government's. *Id*. The court nonetheless noted that, "[i]n an appropriate case, such an ambush might well violate due process." *Id*. (citing *Wardius v. Oregon*, 412 U.S. 470, 476, (1973) ("It is fundamentally unfair to require a defendant to divulge the details of his own case while at the same time subjecting him to the hazard of surprise concerning refutation of the very pieces of evidence which he disclosed to the State.")).

Here, we find ourselves in a similar position to that of the defendant in *Tin Yat Chin*, in that the government has utterly failed to provide any disclosures of its proposed experts' actual opinions or the actual bases for them, despite our having provided several rounds of fulsome disclosures in the weeks before trial, and thus well in advance of the government even commencing its case-in-chief.

The government disingenuously claims that because we have "not decided whether to present a case, which witnesses to call in such a case, which previously disclosed opinions [our] experts will offer, and whether [we] will attempt to elicit any new or materially altered opinions from any defense experts, the government cannot state the specific opinions to be offered by its potential rebuttal experts with more specificity than is provided below at this time." This is simply nonsense. The government's proposed experts must already have some opinions in response to the detailed opinions we have already disclosed to the government, as well as opinions regarding the various "principles, rules, and guidance" they have relied on or will rely on, which are not dependent on any defense case.[3] Indeed, the government made a similar claim regarding our experts, so it should be held to the same standard. *See* Dkt. No. 383 at 2, 10 ("Especially in light of the number of expert witnesses that the defendant has noticed and the breadth and complexity of topics upon which the

---

[3] Implicit in the government's disclosures is that its experts will not offer opinions other than to address the opinions actually offered by the defense experts. As such, the Court should preclude the government from eliciting testimony from its rebuttal experts that are not responsive to the testimony actually admitted by the defense experts, consistent with the permissible scope of rebuttal evidence.

**GIBSON DUNN**

The Honorable Kiyo A. Matsumoto
November 30, 2017
Page 5

experts apparently intend to opine, the defendant should not be permitted to withhold the bases for his experts' opinions until the eve of trial.").

The government is obligated to disclose the current status of its experts opinions, subject to the qualification that they may be subject to change. It is no excuse for the government to claim that its experts will offer responsive opinions. Our experts were in the same position, yet the government demanded detailed disclosures of their expected testimony prior to this trial even starting, which we provided. The government, like us, is entitled to supplement its disclosures consistent with its ongoing disclosure obligations.

The tenuous justification offered by the government for its conduct is to misleadingly characterize our supplemental disclosure of Alan Johnson's expected opinions, and Mr. Johnson's testimony at the *Daubert* hearing, as "differ[ent] in significant ways from the opinions disclosed by the defense." First, we are entitled to supplement our expert disclosures in response to evidence presented in the government's actual case-in-chief. *See* Dkt. No. 454 at 10–11. We did so with respect to the issue of the for-cause termination clause in Mr. Shkreli's Retrophin employment agreement, which the government itself elicited on direct examination of multiple witnesses. *See id.* at 11–12. Second, the remainder of differences between our disclosures and Mr. Johnson's testimony was a *narrowing* of the detailed opinions we had disclosed to the government—in an effort to streamline the trial—and in any event the government was permitted to examine the scope of that narrowing during the *Daubert* hearing. So too here: even if there were a difference between the defense disclosures, as supplemented, and the actual testimony of any defense expert, it would only be to narrow the issues for trial. The government improperly seeks the unfair flexibility to disclose zero opinions now yet offer substantial opinions in its rebuttal case under the fig leaf that its experts are responsive experts, even though by definition a defendant's experts are no less responsive. The Court should not allow the government to ambush a criminal defendant in such a way.

Finally, as a practical matter, the government's late disclosure gives us little time to object to its proposed experts' qualifications or the admissibility of their opinions under Federal Rule of Evidence 702 ("Rule 702"). Moreover, the vagueness of the government's last-minute disclosure gives the Court both insufficient information and precious little time with which to perform its gatekeeping function under Rule 702 and the standard laid out by *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993), and its progeny. Without sufficiently early notice, the defense will have no choice but to request a continuance between the close of any defense case and the commencement of any government rebuttal case. That delay is an unnecessary burden to impose on the jurors and Court and one that could readily be avoided but for the government's unfortunate gamesmanship – which is

GIBSON DUNN

The Honorable Kiyo A. Matsumoto
November 30, 2017
Page 6


especially concerning given the government's repeated and successful demands for early and detailed disclosures from our expert witnesses. Now that the government has enjoyed the benefit of our fulsome expert disclosures, the Court should not permit the government to abandon its affirmative commitment and obligation to provide reciprocal expert disclosures, at the expense of Mr. Greebel's rights and further burdening the jurors and Court.

\* \* \*

For the foregoing reasons, we respectfully request that the Court compel the government to immediately disclose its proposed experts opinions and the bases for them.

Respectfully,

*/s/ Winston Y. Chan*
Winston Y. Chan


Attachments

cc:   Alixandra E. Smith, Esq.
      David C. Pitluck, Esq.
      David K. Kessler, Esq.