

U.S. Department of Justice

*United States Attorney*
*Eastern District of New York*

AES/DCP/DKK
F.#2014R00501

*271 Cadman Plaza East*
*Brooklyn, New York 11201*

December 4, 2017

<u>By E-mail</u>
Reed Brodsky, Esq.
Winston Chan, Esq.
Mylan Denerstein, Esq.
Joshua Dubin, Esq.
Randy Mastro, Esq.
Gibson, Dunn & Crutcher LLP
200 Park Avenue
New York, NY 10166

        Re:   United States v. Evan Greebel
                <u>Criminal Docket No. 15-637 (KAM)</u>

Dear Counsel:

      The government respectfully submits this letter to provide supplemental disclosures of the opinions its rebuttal experts may offer, if the government decides to present a rebuttal case. These disclosures are based on the disclosures provided to date. The government may amend and/or supplement these disclosures based on the evidence elicited during the defense case.

      I.      <u>Professor John C. Coffee, Jr.</u>

      Professor John C. Coffee, Jr. is the Adolf A. Berle Professor of Law at Columbia University Law School and Director of its Center on Corporate Governance. He is a Fellow at the American Academy of Arts and Sciences and has been repeatedly listed by the National Law Journal as among its "100 Most Influential Lawyers in America." Professor Coffee has served as a Reporter to The American Law Institute for its Corporate Governance Project, has served on the Legal Advisory Board to the New York Stock Exchange, and was a member of the SEC's Advisory Committee on the Capital Formation and Regulatory Processes. Professor Coffee is the author or editor of several widely used casebooks on corporations and securities regulation, including Coffee and Sale, <u>Securities Regulation: Cases and Materials</u> (13th ed. 2015); Choper, Coffee and Gilson, <u>Cases and Materials on Corporations</u> (8th ed. 2013); and Klein, Coffee, and Partnoy, <u>Business Organizations and Finance</u> (11th ed. 2010). His books include Coffee, <u>Entrepreneurial Litigation: Its Rise, Fall, and Future</u> (Harvard University Press 2015); Coffee, <u>Gatekeepers: The Professions and Corporate Governance</u> (Oxford University Press 2006); Coffee, Lowenstein, and Rose-Ackerman, <u>Knights, Raiders and Targets: The Impact of the</u>

Hostile Takeover (Oxford University Press 1988); and Ferran, Moloney, Hill and Coffee, The Regulatory Aftermath of the Global Financial Crisis (Cambridge University Press 2012). According to recent surveys of law review citations, Professor Coffee is the most cited law professor in law reviews over the last fifteen years in the combined corporate, commercial, and business law field.

As a potential response to Dean Ferruolo's opinions set forth in Section I.a of the defendant's December 2, 2017 disclosure (Dkt. No. 466), Professor Coffee may testify that the federal securities laws and tax laws impose requirements that require careful record-keeping and compliance; the backdating of stock transfer agreements raises suspicions; the transfer and allocation of shares must comply with the securities laws, including Rules 701 and 144 under the Securities Act of 1933; transactions that may involve self-dealing require heightened attention from company counsel, whose duties are to the company.

As a potential response to Dean Ferruolo's opinions set forth in Section I.b of the defendant's December 2, 2017 disclosure, Professor Coffee may testify that the use of stock as a means to incentivize employees may be permitted, but only in compliance with SEC rules; such stock is typically provided in the form of stock options or other stock purchase rights.

As a potential response to Dean Ferruolo's opinions set forth in Section I.c of the defendant's December 2, 2017 disclosure, Professor Coffee may testify that the purpose of Section 13 and Schedule 13D is to inform the investing public about significant holdings in a company and the plans of significant holders of stock; a Schedule 13D is not a perfunctory form; it does not relate exclusively or primarily to takeovers, and it would be reckless to entrust its filing to a paralegal.

Professor Coffee also may testify in response to Dean Ferruolo's testimony regarding "certain complex and esoteric terms" and "certain complex concepts relating to the practice of outside corporate counsel." Dkt. No. 466-3. Professor Coffee's testimony will depend on Dean Ferruolo's testimony regarding these subjects, which has not been disclosed.

As a potential response to Professor Lewis's opinion that "[i]n order to artificially raise the price of a stock, an individual would typically by a large volume of shares and that "[e]vidence of coordination between and among individuals to affect the price of a stock includes (1) one individual selling the same amount of shares that a second individual simultaneously buys in order to create market activity, (2) coordinated buying activity on the same dates, (3) coordinated buying activity on high volume trading dates and/or following a decrease in share price," (Dkt. No 383-1 at 7-8), Professor Coffee may testify that groups attempting to influence share price can do so either by increasing demand or restricting supply.

Professor Coffee's testimony would be based on his training and experience and his understanding of applicable statutes and rules, including Rules 701 and 144, Regulation D

and Section 4 of the Securities Act of 1933, and Section 13D of the Securities Exchange Act of 1934.[1]

    II.    <u>Professor M. Babajide (Jide) Wintoki</u>

Professor M. Babajide (Jide) Wintoki is an Associate Professor of Finance at the University of Kansas, School of Business and a Visiting Economist at the Securities and Exchange Commission, Division of Economic and Risk Analysis. Professor Wintoki's resume is enclosed.

As a potential response to Professor Lewis's analysis of the volume of Retrophin stock, as disclosed in the defendant's expert disclosures (Dkt. Nos. 383-1, 405, 466), Professor Wintoki may testify that Professor Lewis's calculated volume based on Blue Sheet data overstates total trading volume in the market.

As a potential response to Professor Lewis's opinion that "[e]vidence of coordination between and among individuals to affect the price of a stock includes (1) one individual selling the same amount of shares that a second individual simultaneously buys in order to create market activity, (2) coordinated buying activity on the same dates, (3) coordinated buying activity on high volume trading dates and/or following a decrease in share price," (Dkt. No 383-1 at 7-8), Professor Wintoki may testify that there are multiple ways in which groups may attempt to influence share price, including but not limited to restricting the trading of stock.

Professor Wintoki also may testify in response to Professor Lewis's testimony regarding "certain complex and esoteric concepts that relate to the price and trading of Retrophin shares." Dkt. No. 383-1. Professor Wintoki's testimony will depend on Professor Lewis's testimony regarding these subjects, which has not been disclosed.

Professor Wintoki's testimony would be based on his training and experience; his understanding of economic concepts as explained in economic texts such as E.M. Miller, *Risk, Uncertainty, and Divergence of Opinion*, <u>Journal of Finance</u> (1977); applicable guidance and regulatory rules, including 17 CFR 240.17-25, Securities and Exchange Commission Release No. 34-44494 (June 2001), and National Association of Securities Dealers, Notice to Members 99-65 (Aug. 1999); a review of documents underlying Professor Lewis's opinions (as produced by the defendant); and a review of Retrophin's Blue Sheet data and share price and volume data from Bloomberg.

---

[1] As discussed in Court, the defendant will supplement Dean Ferruolo's December 2, 2017 supplemental opinion. We anticipate that Professor Coffee may provide testimony responding to Dean Ferruolo's updated opinion and will disclose any such testimony after the defendant makes his disclosure.

3

III. <u>Maxwell A. Clarke</u>

Maxwell A. Clarke is a Financial Economist at the Securities and Exchange Commission, Division of Economic and Risk Analysis. Mr. Clarke's resume is enclosed.

As a potential response to Professor Lewis's analysis of the volume of Retrophin stock, as disclosed in the defendant's expert disclosures (Dkt. Nos. 383-1, 405, 466), Mr. Clarke may testify that Professor Lewis's calculated volume based on Blue Sheet data overstates total trading volume in the market.

Mr. Clarke's testimony would be based on his training and experience; applicable guidance and regulatory rules, including 17 CFR 240.17-25, Securities and Exchange Commission Release No. 34-44494 (June 2001), and National Association of Securities Dealers, Notice to Members 99-65 (Aug. 1999); a review of documents underlying Professor Lewis's opinions (as produced by the defendant); and a review of Retrophin's Blue Sheet data and share price and volume data from Bloomberg.

        Respectfully submitted,

        BRIDGET M. ROHDE
        Acting United States Attorney

By:   /s/
       Alixandra E. Smith
       David C. Pitluck
       David K. Kessler
       Assistant U.S. Attorneys
       (718) 254-7000

cc: Clerk of the Court (KAM) (by ECF)