**GIBSON DUNN**

Gibson, Dunn & Crutcher LLP

555 Mission Street
San Francisco, CA 94105-0921
Tel 415.393.8200
www.gibsondunn.com

Winston Y. Chan
Direct: +1 415.393.8362
Fax: +1 415.374.8460
WChan@gibsondunn.com

December 4, 2017

VIA ECF

The Honorable Kiyo A. Matsumoto
United States District Judge
United States District Court for the Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York 11201

Re:     *United States v. Greebel*, S1 15 Cr. 637 (KAM)

Dear Judge Matsumoto:

We respectfully write in response to the government's request to clarify the disclosure of Dean Stephen Ferruolo's expert opinion related to lock-up agreements and further supplement the basis of his testimony on Schedule 13D and 13G filings.

Relevance and Summary of Supplemental Opinion

At trial, the government has made allegations in its opening argument to the jury and elicited testimony in its case-in-chief regarding Martin Shkreli's desire to limit the sale of Fearnow shares in the market, *see, e.g.* Trial Tr. 1081:22–1082:13 (Opening), 4777–78 (Su Testimony).

In his opening statement, Mr. Kessler argued:

> When Retrophin became a public company, only some of its stock could be traded on the stock market because of various legal reasons. That stock was called free-trading shares. If the free-trading shares had been sold quickly, the price of Retrophin might have collapsed and the company could have gone under. If there was no company, there would be no money, no source of funds to pay back the defrauded investors, and no one to pay the bills for the Defendant. So, the Defendant and Shkreli didn't want the company to collapse.
>
> So, they hatched a plan to control the trading of these free-trading shares to prevent a collapse. But they had a problem: Shkreli didn't have the free-trading shares. They weren't his. And even if he could get them, he couldn't trade them because of various legal restrictions on what a CEO can do with his company's stock. So, the Defendant used his position as Retrophin's attorney to solve this problem by helping illegally control the trading of those shares.

Beijing • Brussels • Century City • Dallas • Denver • Dubai • Frankfurt • Hong Kong • Houston • London • Los Angeles • Munich
New York • Orange County • Palo Alto • Paris • San Francisco • São Paulo • Singapore • Washington, D.C.

**GIBSON DUNN**

The Honorable Kiyo A. Matsumoto
December 4, 2017
Page 2

Trial Tr. 1081:22–1082:13.  In addition, the government elicited testimony regarding the effect on the market of limiting the amount of shares available for sale.  For example, Ms. Oremland testified:

> Q So other things remaining equal, what's the effect on price if there are less shares available for sale in the market?
>
> . . . .
>
> **A Well, there's more of a chance that the price will remain stable.**
>
> Q So based on that, generally, I guess it is beneficial for a controlling shareholder to limit the amount of the shares available for sale?
>
> **A Yes.**
>
> Q Why?
>
> A Because then you have less likelihood that the share price can decline if there's too much stock in the market and not as much interest.

Trial Tr. 5760:6–20 (Oremland Testimony) (emphasis added).

It is thus clear that, as part of its proof of Count Eight, the government is making the broad argument that Mr. Shkreli and Mr. Greebel "hatched a plan" to prevent "freely-trading shares" from "being sold quickly" to prevent the price of Retrophin from "collap[sing]" in the wake of it becoming a public company, which the government has coupled with its eliciting of Ms. Oremland's testimony regarding the effect on limiting the amount of shares available for sale.

Dean Ferruolo's opinion testimony regarding the prevalence and acceptance of lock-up agreements in connection with IPOs directly rebuts the government's arguments and evidence here, illustrating for the jury that agreements not to sell stock specifically to benefit the market of that company's stock are commonplace and permissible.  Furthermore, Dean Ferruolo may testify that a company's goal to create an orderly and stable market reasonably extends to other "going public" transactions, such as a reverse merger. And in such contexts, it would be reasonable for a company to achieve this goal by allocating freely-trading shares to individuals who are friendly to the company and share the same goal of creating an orderly and stable market.  Finally, for these same reasons, our request to charge as to lock-up agreements is relevant and appropriate.

**GIBSON DUNN**

The Honorable Kiyo A. Matsumoto
December 4, 2017
Page 3

Basis of Supplemental Opinion

Dean Ferruolo's potential testimony above will be based on his extensive professional experience in "going public" transactions, including with lock-up agreements, and his review of materials from the SEC website.

Basis of Schedule 13D Opinion

Dean Ferruolo's potential testimony, which will focus on outside corporate counsel's limited role in the preparation and filing of Schedule 13Ds and his understanding of the Schedule's purpose, will be based on his extensive professional experience.  Dean Ferruolo will not testify as to Schedule 13Gs.

Respectfully,

*/s/ Winston Y. Chan*
Winston Y. Chan


cc:     Alixandra E. Smith, Esq.
        David C. Pitluck, Esq.
        David K. Kessler, Esq.