# GIBSON DUNN

Gibson, Dunn & Crutcher LLP

200 Park Avenue
New York, NY 10166-0193
Tel 212.351.4000
www.gibsondunn.com

Reed Brodsky
Direct: +1 212.351.5334
Fax: +1 212.351.6235
RBrodsky@gibsondunn.com

December 6, 2017

VIA ECF

The Honorable Kiyo A. Matsumoto
United States District Court Judge
United States District Court for the Eastern District of New York
225 Cadman Plaza East
Brooklyn, NY 11201

Re:     *United States v. Greebel*, S1 15 Cr. 637 (KAM)

Dear Judge Matsumoto:

We respectfully submit this letter to request that the Court not allow the jury to receive a copy of the Superseding Indictment during its deliberations.  As we set forth below, the question of whether to send the Superseding Indictment to the jury is squarely within the district court's discretion.  In this case, because the Superseding Indictment is a "speaking" indictment, which is highly detailed, there is a serious risk of undue prejudice to Mr. Greebel from the document containing just the government's allegations—without Mr. Greebel's responses—going back to the jury room.  As discussed below, courts within the Second Circuit have routinely declined to send the indictment back, particularly in complex white-collar cases with speaking indictments.  Thus, we respectfully request that Your Honor not provide the jury with the Superseding Indictment in this case.

## I.     Background

On or about December 14, 2015, the government filed an Indictment against Martin Shkreli and Evan Greebel.  Indictment, Dkt. No. 1.  Approximately six months later, on June 3, 2016, the government filed the Superseding Indictment, Dkt. No. 60, which remains the operative charging instrument in this case.

The Superseding Indictment runs 35 pages and contains 61 paragraphs (including one paragraph with 10 sub-paragraphs).  It alleges eight counts, six of which do not apply to Mr. Greebel.  Many of its 40 fact paragraphs describe allegations that have nothing to do with the government's case against Mr. Greebel.  Indeed, two of the four broad "schemes" alleged in the Superseding Indictment do not include Mr. Greebel as an alleged co-conspirator.  *See* Dkt. No. 60 at ¶¶ 8–15 ("The MSMB Capital Hedge Fund Scheme"), 16–20 ("The MSMB Healthcare Hedge Fund Scheme").

**GIBSON DUNN**

The Honorable Kiyo A. Matsumoto
December 6, 2017
Page 2

### II. The Jury Should Not Be Provided with a Copy of the Superseding Indictment

#### A. Legal Standard

"[T]here is no legal requirement that jurors be provided with a copy of an indictment." *United States v. Roy*, 609 F. App'x 15, 18 (2d Cir. 2015) (summary order). In addition, it is well settled in the Second Circuit that the ultimate decision as to whether to provide the jury with the indictment "rests in the sound discretion of the court." *United States v. Press*, 336 F.2d 1103, 1016 (2d Cir. 1964). The Circuit has also instructed that "courts justifiably have been concerned that overemphasis of the indictment may lead the jury to construe the indictment as evidence of guilt of the accused." *Id.* at 1016–17. Although doing so does not rise to the level of a constitutional violation, the Second Circuit has discouraged the practice of providing a jury with a copy of the indictment:

> Indeed, while it is permissible . . . to send the indictment into the jury room, the practice is hardly mandatory, and not all trial judges follow it, ***particularly when the indictment does not merely state the statutory charges against the defendant, but additionally contains a running narrative of the government's version of the facts of the case, including detailed allegations of facts not necessary for the jury to find in order to address the elements of the charged offenses.*** In most cases, the judge's instructions regarding the issues to be addressed by the jury and the elements of the offenses charged, which may include a reading of the legally effective portions of the indictment, will more than suffice to apprise the jury of the charges before them.

*United States v. Esso*, 684 F.3d 347, 352 n.5 (2d Cir. 2012) (emphasis added).[1]

Numerous district courts in the Second Circuit and elsewhere have articulated a general policy prohibiting copies of speaking indictments from being given to the jury during deliberations. *See, e.g.*, *United States v. Tuzman*, No. S8 15 Cr. 536 (PGG), 2017 WL 4785459, at *15 (S.D.N.Y. Oct. 19, 2017) ("[I]t is not this Court's practice to give 'speaking' indictments . . . to the jury."); *United States v. Monserrate,* No. 10 Cr. 965 (CM),

---

[1] In *Esso*, a case of first impression regarding a slightly different issue—the constitutionality of permitting the jury to take a copy of the indictment home overnight—the Second Circuit declined to overturn the conviction but "hasten[ed] to add that the better practice weighs against the experiment undertaken here." *Esso*, 684 F.3d at 354 ("[T]he Constitution does not prohibit every practice that may appear of questionable value to appellate judges.").

**GIBSON DUNN**

The Honorable Kiyo A. Matsumoto
December 6, 2017
Page 3

2011 WL 3480957, at *3 (S.D.N.Y. Aug. 4, 2011) ("[I]t is not the Court's practice to read (or allow the Government to read) the indictment to the jury or to provide a copy of the indictment to the jury for their deliberations."); *United States v. Butler*, 351 F. Supp. 2d 121, 124 (S.D.N.Y. 2004) ("It is not the usual practice of this Court to provide the jury with a copy of the indictment . . . ."); *see also United States v. Apodaca*, No. 14–57 (BAH), 2017 WL 3575655, at *21 n.21 (D.D.C. Aug. 17, 2017) ("This Judge's practice is not to provide a stand-alone copy of the indictment to the jury during deliberations."); *United States v. Cadden*, 14-10363-RGS, 2016 WL 1948832, at *8 (D. Mass. May 3, 2016) ("[A]s is its practice in the case of 'speaking' indictments, the court will not have the indictment read to the jurors, nor will the jury be given a copy for its perusal during their deliberations."); *United States v. De Rong Shang*, No. 11 Cr. 00110 (RLH-VCF), 2012 WL 194418, at *8 (D. Nev. Jan. 23, 2012) (explaining that "the parties and the court are proceeding with the understanding that the indictment will at no time be read or given to the jury" in light of the judge's standard practice).

    **B.**    **The Superseding Indictment in this Case Is a Speaking Indictment with Highly Prejudicial Allegations, and this Court Should Not Allow the Jury to Receive It**

An indictment's purpose is to "fairly inform a defendant of the charge against which he must defend." *United States v. Glaziou*, 402 F.2d 8, 15 (2d Cir. 1968) (internal citations and alterations omitted). It is "only an accusation[,] . . . the physical means by which a defendant is brought to trial"—it is not, in other words, "evidence that the offense charged was committed." *Id.*

Accordingly, an indictment must be no more than a "plain, concise, and definite written statement of the essential facts constituting the offense charged." Fed. R. Crim. P. 7(c)(1). This rule, as the Second Circuit explained, "is designed to eliminate prolix indictments and to secure simplicity in procedure." *United States v. Carrier*, 672 F.2d 300, 303 (2d Cir. 1982).

A speaking indictment—like the government's here—flies in the face of these rules. This particular kind of indictment sets out "the Government's theory of the case and the nature of the proof that will underlie the charges at trial." *United States v. Wedd*, No. 15 Cr. 616 (KBF), 2016 WL 1055737, at *3 (S.D.N.Y. Mar. 10, 2016). Indeed, as Your Honor has explained, an Indictment such as the one in this case typically "provides *significant* detail as to the particulars of the type and extent of the alleged criminal activities." *United States v. Shkreli*, 2016 WL 8711065, at *3 n.4 (E.D.N.Y. Dec. 16, 2016) (emphasis added); *see also United States v. Budovsky*, 2016 WL 386133, at *1 (S.D.N.Y. Jan. 28, 2016) (explaining that "[t]he Indictment that charged all of the defendants was a 'speaking indictment;' in other words, it provided significant detail . . . and the factual bases for the charges against

**GIBSON DUNN**

The Honorable Kiyo A. Matsumoto
December 6, 2017
Page 4

Budovsky and the other defendants"); *United States v. Marcos*, No. SSSS 87 CR. 598 (JFK), 1989 WL 156289, at *3 (S.D.N.Y. Dec. 21, 1989) (noting the "very detailed charges in the [speaking] Indictment").

At bottom, speaking indictments are often riddled with highly inflammatory, prejudicial information about the defendant that the government would otherwise be prohibited from introducing. *See United States v. Smith*, 985 F. Supp. 2d 506, 537 n.16 (S.D.N.Y. 2013) (noting that speaking indictments are criticized for effectively enabling the government to "evade no-comment rules by including highly prejudicial information in official court documents that are accessible by the press") (citation omitted). That is particularly true here, where the case of the lead defendant, Martin Shkreli, generated a very substantial amount of press interest.

Because so much of the Superseding Indictment in this case focuses on the government's narrative of the allegations against Martin Shkreli—indeed, as noted earlier, six of the eight counts alleged and half of the schemes articulated by the government are wholly unrelated to Mr. Greebel—allowing the jury to see it would cause significant prejudice. The Superseding Indictment here thus underscores the Second Circuit's concern of allowing the jury to see "detailed allegations of facts not necessary for the jury to find in order to address the elements of the charged offenses." *Esso*, 684 F.3d at 352 n.5. There is simply no reason to provide the jury with the government's version of facts in support of charges against a particularly notorious individual when those facts and charges do not apply to Mr. Greebel. At best, it is superfluous. At worst, it would "serve[] to arouse the jury's curiosity and stimulate unwarranted speculation." *United States v. Cirami*, 510 F.2d 69, 74 (2d Cir. 1975).

As the Second Circuit cautioned in *Esso*, sending back a speaking indictment is the equivalent of providing the jury ***only with* "*a running narrative of the government's version of the facts*.**" *Esso*, 684 F.3d at 352 n.5 (emphasis added). When looked at in this light, providing the jury during deliberations with such a detailed, lengthy, speaking Superseding Indictment as the one in this case would be tantamount to Mr. Greebel's requesting that if the Superseding Indictment were to be sent back to the jury room, then so should his counsel's Summation.

Moreover, in this case, there would be no prejudice at all to the government if the Court were to decide not to send the Superseding Indictment back to the jury room. To the contrary, "[i]n most cases, the judge's instructions regarding the issues to be addressed by the jury and the elements of the offenses charged . . . will more than suffice to apprise the jury of the charges before them." *Id.* at 352 n.5; *see also* Robert J. Anello & Richard F. Albert, *Keeping the Indictment Out of the Jury Room*, 248 N.Y.L.J. 26 (2012) ("The rationale for sending the indictment to the jury room so the jury can refer to an organized written statement of the

GIBSON DUNN

The Honorable Kiyo A. Matsumoto
December 6, 2017
Page 5

charges, evaporates when the jury receives a written copy of the jury charge, as has become more common in recent years in the era of computer word-processors."). In this case, since we expect (and heartily endorse) the Court's sending its own instructions of law back to the jury room, that document should be the "organized written statement of the charges" that the jury ought to refer to during its deliberations.

*   *   *

For all these reasons, we respectfully request that the Court should not allow the jury to have the Superseding Indictment in the jury room when they deliberate.

Respectfully,

*/s/ Reed Brodsky*
Reed Brodsky

cc:     Alixandra E. Smith, Esq.
        David C. Pitluck, Esq.
        David K. Kessler, Esq.