**GIBSON DUNN**

Gibson, Dunn & Crutcher LLP

200 Park Avenue
New York, NY 10166-0193
Tel 212.351.4000
www.gibsondunn.com

Reed Brodsky
Direct: +1 212.351.5334
Fax: +1 212.351.6235
RBrodsky@gibsondunn.com

December 7, 2017

VIA ECF

The Honorable Kiyo A. Matsumoto
United States District Court Judge
United States District Court for the Eastern District of New York
225 Cadman Plaza East
Brooklyn, NY 11201

Re:   *United States v. Greebel*, S1 15 Cr. 637 (KAM)

We respectfully submit that the Court should permit us to call FBI Special Agent Patrick Zielinski, who is on our November 30 witness list, to establish Evan Greebel's consciousness of innocence through his voluntary post-arrest interview for hours by the Federal Bureau of Investigation ("FBI"). We propose to elicit, in sum and substance, the following critical facts that establish proof of his consciousness of innocence: (1) Following Mr. Greebel's arrest at his home, Mr. Greebel agreed voluntarily to answer questions; (2) Mr. Greebel agreed to answer questions for several hours; (3) At one point during the interview, Mr. Greebel asked to call an attorney to find someone to let that person know that he had been arrested; (4) After Mr. Greebel left a voicemail for an attorney, in response to the FBI's question about whether he wished to continue to answer questions, Mr. Greebel said yes and proceeded to answer further questions; and (5) At no point did Mr. Greebel stop answering questions, and the FBI ended the interview, not Mr. Greebel.

The government's argument that "the defendant's *Miranda* waiver is irrelevant under Rule 401 and should be precluded under Rule 403" and that "his *Miranda* waiver is – in and of itself – so-called 'evidence of innocence,'" *see* Dkt. 472, misses the mark. It is not Mr. Greebel's waiver of *Miranda* rights but rather Mr. Greebel's voluntary submission to multiple hours of questions when he knew that he did not have to speak that is highly probative of his consciousness of innocence. There is a difference, and we do not need to draw attention to the waiver of his *Miranda* rights to make the very powerful and compelling point that Mr. Greebel's decision to answer question after question after question when he knew he could stop at any time reflects a consciousness of innocence. As a result, we respectfully submit that we do not need to elicit that Mr. Greebel waived his *Miranda* rights to demonstrate his consciousness of innocence.

**GIBSON DUNN**

The Honorable Kiyo A. Matsumoto
December 7, 2017
Page 2

Mr. Greebel's voluntary submission to the FBI's questions falls squarely within admissible evidence of Mr. Greebel's state of mind pursuant to *United States v. Biaggi*, 909 F.2d 662 (2d Cir. 1990).

As the *Biaggi* Court stated: "When a defendant rejects an offer of immunity on the ground that he is unaware of any wrongdoing about which he could testify, his action is probative of a state of mind devoid of guilty knowledge." 909 F.2d at 690. In *Biaggi*, the Second Circuit reversed bribery convictions because the trial court had excluded evidence of the defendant's rejection of immunity under circumstances in which that evidence might well have affected the jury verdict. *Id*. at 692. Similarly in *United States v. Maloof*, 205 F.3d 819, 824–25 (5th Cir. 2000), the Fifth Circuit Court of Appeals "[c]oncluded that the trial court correctly applied Fed. R. Evid. 401, 410 and 403 as interpreted in *Biaggi* by allowing [the defendant] to testify to the sum and substance of the offers and rejections of immunity; and did not abuse its discretion under Fed. R. Evid. 403 to bar embellishing details on the grounds that their probative value was outweighed by the danger of unfair prejudice, confusion, or delay."

We think it is highly relevant—and fundamental to Mr. Greebel's defense—that we inform the jury that Mr. Greebel, in fact, did the very opposite of what an attorney would be expected to do. Indeed, Special Agent Delzotto expected Mr. Greebel not to speak at all—and Mr. Greebel not only spoke with the FBI, but he spoke with them for hours *after* he was arrested, never refused to stop answering questions, and was willing to answer questions after being arrested at his home. The fact that we were able to elicit on cross-examination that Mr. Greebel did speak with the FBI after his arrest does not sufficiently enable us to establish a consciousness of innocence defense—we must be allowed to elicit all the circumstances that demonstrate why his voluntary decision to speak after his arrest reflects that innocent state of mind. This is especially true where Mr. Greebel, as an attorney, was willing to speak to the government despite being aware of the risks associated therewith.

In its letter, the government argues that consciousness of innocence should be limited to the specific situation contemplated in *Biaggi*. Specifically, it looks to *United States v. Grant*, 338 Fed. App'x 19 (2d Cir. 2009), for the proposition that consciousness of innocence should be so limited. The Second Circuit in *Grant* rejected a consciousness of innocence defense because he voluntarily produced notes in response to a subpoena, holding that it "lack[ed] the obvious force" that made the evidence in *Biaggi* probative and relevant. But voluntarily producing notes in response to a subpoena is not analogous to *knowingly and voluntarily* continuing to speak with the FBI after learning he was indicted, as Mr. Greebel did here.

The government's reliance on *United States v. Goffer*, 721 F.3d 113, 129 (2d Cir. 2013), is similarly misplaced. In *Goffer*, the Second Circuit declined to extend *Biaggi* to the defendant's rejection of a plea deal, holding that doing so lacked any probative value because

**GIBSON DUNN**

The Honorable Kiyo A. Matsumoto
December 7, 2017
Page 3

it only showed that the "defendant prefer[red] to take his chances on an acquittal by the jury, rather than accept the certainty of punishment after a guilty plea." 721 F.3d at 129. Again, this is wholly different from Mr. Greebel's actions here. There is no comparison between rejecting a plea offer and an attorney's agreeing to speak with FBI agents for hours after being arrested.

With respect to the government's focus on the waiver of *Miranda* rights, we respectfully submit that we do not need to focus on such waiver for purposes of establishing Mr. Greebel's consciousness of innocence in answering questions.

Nevertheless, there is a marked difference between agreeing to speak with the FBI after one's arrest and testifying at a criminal trial. In a long line of cases, the Supreme Court has made clear the very real and serious risks that a defendant faces when taking the stand. "[A] defendant's choice to take the stand carries with it serious risks of impeachment and cross-examination; it 'may open the door to otherwise inadmissible evidence which is damaging to his case,' *McGautha v. California*, 402 U.S. 183, 213, 91 S.Ct. 1454, 1470, 28 L.Ed.2d 711 (1971), including, now, the use of some confessions for impeachment purposes that would be excluded from the State's case in chief because of constitutional defects. *Harris v. New York*, 401 U.S. 222, 91 S.Ct. 643, 28 L.Ed.2d 1 (1971). Although 'it is not thought inconsistent with the enlightened administration of criminal justice to require the defendant to weigh such pros and cons in deciding whether to testify,' *McGautha v. California*, supra, 402 U.S., at 215, 91 S.Ct., at 1471, none would deny that the choice itself may pose serious dangers to the success of an accused's defense." *Brooks v. Tennessee*, 406 U.S. 605, 609–12 (1972).

For the reasons set forth above, we respectfully submit that the Court should permit us to call Special Agent Zielinski.

Sincerely,

*/s/ Reed Brodsky*

Reed Brodsky


cc:   Alixandra E. Smith, Esq.
      David C. Pitluck, Esq.
      David K. Kessler, Esq.