# GIBSON DUNN

Gibson, Dunn & Crutcher LLP

200 Park Avenue
New York, NY 10166-0193
Tel 212.351.4000
www.gibsondunn.com

Reed Brodsky
Direct: +1 212.351.5334
Fax: +1 212.351.6235
RBrodsky@gibsondunn.com

December 10, 2017

VIA ECF

The Honorable Kiyo Matsumoto
United States District Judge
United States District Court for the Eastern District of New York
225 Cadman Plaza East
Brooklyn, NY 11201

Re:     *United States v. Greebel*, 15 Cr. 637 (E.D.N.Y.)

Dear Judge Matsumoto:

We respectfully submit this letter regarding (1) updates to the defense witness list and (2) certain representative examples of documents we intend to offer in our case-in-chief.

First, we are attempting to pare back our case-in-chief.  To that end, we respectfully inform the Court that we will not call Dean Stephen Ferruolo or Mr. Ronald Minkoff as witnesses.  In order for us to finalize our witness list, we respectfully request guidance on our request to elicit testimony from Special Agent Patrick Zielinski regarding Mr. Greebel's voluntary post-arrest statements as evidence of his consciousness of innocence, to which the government has objected.  Dkt. Nos. 472, 476.

Second, in an effort to reduce our witness list and further streamline our case, we respectfully submit 14 representative examples of documents, attached hereto, that we submit are unquestionably admissible pursuant to certain hearsay exceptions.  Having Your Honor's guidance on these representative examples would enable us to shorten our witness list, help us make final determinations regarding which exhibits to introduce, and avoid lengthy sidebars.

## I.     Applicable Legal Standards

### A.     Rule 803(3):  Then-Existing Mental, Emotional, or Physical Condition

As a general matter, documents that speak to an individual's state of mind are admissible under Federal Rule of Evidence 803(3).  *See, e.g.*, *United States v. Southland Corp.*, 760 F.2d 1366, 1375–76 (2d Cir. 1985) (finding that notes prepared by company's general counsel introduced to show that the general counsel had knowledge of a bribery plan were not inadmissible under rule against hearsay).  Under Rule 803(3), "[a] declarant's out-of-court statement as to his intent to perform a certain act in the future is not excludable on hearsay

Beijing • Brussels • Century City • Dallas • Denver • Dubai • Frankfurt • Hong Kong • Houston • London • Los Angeles • Munich
New York • Orange County • Palo Alto • Paris • San Francisco • São Paulo • Singapore • Washington, D.C.

**GIBSON DUNN**

The Honorable Kiyo Matsumoto
December 10, 2017
Page 2

grounds." *United States v. Best*, 219 F.3d 192, 198 (2d Cir.2000); *see also Shelden v. Barre Belt Granite Employer Union Pension Fund*, 25 F.3d 74, 79 (2d Cir.1994) ("Under Rule 803(3), the existence of the plan or intention may be proven by evidence of the person's own statements as to its existence.") (edits and citations omitted); *United States v. Badalamenti*, 794 F.2d 821, 825–26 (2d Cir. 1986) (affirming the district court's admission of defendant's statement "that he was going to meet [another individual] at 5:00 at the Café Borgia to obtain a sample of heroin," as this statement was "offered . . . to show [defendant]s future intent"). The state-of-mind exception has been applied to emails, including in contexts where the emails in question are offered to show the state of mind of a non-party. *Flat Rate Movers, Ltd. v. FlatRate Moving & Storage, Inc.*, 104 F. Supp. 3d 371, 378 (S.D.N.Y. 2015) ("Plaintiff's evidence of complaints is submitted mostly through emails between Plaintiff's employees reporting on conversations with customers. Such hearsay evidence is admissible to show the customer's state of mind (*i.e.*, confusion) under Federal Rule of Evidence 803(3).").

### B.      Rule 803(6):  Business Records Exception

Under Rule 803(6), a document is admissible if (a) the record was made at or near the time by—or from information transmitted by—someone with knowledge; (b) the record was kept in the course of a regularly conducted activity of a business, organization, occupation, or calling, whether or not for profit; (c) making the record was a regular practice of that activity; (d) all these conditions are shown by the testimony of the custodian or another qualified witness, or by a certification that complies with Rule 902(11) or (12) or with a statute permitting certification; and (e) neither the source of information nor the method or circumstances of preparation indicate a lack of trustworthiness.

Courts have consistently held that emails qualify as business records under Rule 803(6). *See, e.g.*, *United States v. Stein*, 2007 WL 3009650, at *1 (S.D.N.Y. Oct. 15, 2007) (rejecting the claim business records must be "created pursuant to established company procedures for the systematic or routine making of company records," reasoning that "the regularity of making such [email] records and of the business activity is all that is required"); *U.S. Bank Nat'l Ass'n v. PHL Variable Life Ins. Co.*, 2015 WL 3932791, at *15 (S.D.N.Y. June 22, 2007) (admitting emails where the company's vice president and assistant general counsel certified that the emails satisfied all of Rule 803(6)'s criteria). Indeed, Rule 803(6) "favors the admission of evidence rather than its exclusion if it has any probative value at all." *United States v. Kaiser*, 609 F.3d 556, 574 (2d Cir. 2010). So long as a custodian lays the proper foundation under Rule 803(6), business records are admissible. "The custodian need not have personal knowledge of the actual creation of the document to lay proper foundation." *United States v. Komasa*, 767 F.3d 151, 156 (2d Cir. 2014) (quotation marks and citations omitted); *Phoenix Assocs. III v. Stone*, 60 F.3d 95, 101 (2d Cir. 1995) (internal quotation marks omitted); *In re Ollag Constr. Equip. Corp.*, 665 F.2d 43, 46 (2d Cir. 1981) (finding that

**GIBSON DUNN**

The Honorable Kiyo Matsumoto
December 10, 2017
Page 3


"business records are admissible if witnesses testify that the records are integrated into a company's records and relied upon in its day-to-day operations," and noting that the relevant financial statements were requested by a bank and were regularly used by the bank to make decisions whether to extend credit).

"[C]ourts have held that conventional letters, memos, or notes are admissible under the business records exception if they are regularly made in furtherance of the employer's needs and not for the personal purposes of the employee who made them." *Penberg v. HealthBridge Mgmt.*, 823 F. Supp. 2d 166 (E.D.N.Y. 2011) (quoting *Canatxx Gas Storage Ltd. v. Silverhawk Capital Partners, LLC,* 2008 WL 1999234, at *12 (S.D. Tex. May 8, 2008)); *see also United States v. Freidin*, 849 F.2d 716, 719–20 (2d Cir. 1988) ("[A]dmissibility under Rule 803(6) requires both that a memorandum have been 'kept in the course of a regularly conducted business activity' and also that it was the 'regular practice of that business activity to make the memorandum.'" (quoting Rule 803(6))).

As the Court is well aware, the parties addressed this topic in November in connection with certain evidentiary disputes during the government's case in chief. *See* Gov't Ltr. (Nov. 2, 2017), Dkt. 434; Greebel Ltr. (Nov. 2, 2017), Dkt. 435. But the government's strawman betrays its misunderstanding of our position. Indeed, we do not here argue—nor have we ever—that "every email an employee sends in the course of his or her employment is a business record[.]" Gov't Ltr., Dkt. 434, at 4. Nor is it our position that "emails sent in connection with someone's employment are *per se* business records" or that "emails maintained or stored by a business are per se business records." *Id.* at 3. Our position is, as it has always been, that so long as a custodian is able to lay proper foundation for the documents or statements in question, the statements should be admitted under Rule 803(6). Indeed, testimony and evidence will show that each of our proffered emails, having been sent "in furtherance of the needs" of Retrophin—and not for the personal purposes of any of the participants themselves—constitutes an admissible business record under Rule 803(6). *See Penberg v. HealthBridge Mgmt.,* 823 F. Supp. 2d 166, 187 (E.D.N.Y. 2011).[1]

---

[1]    The government's cases are not on point. In *United States v. Cone*, 714 F.3d 197, 220 (4th Cir. 2013), the district court admitted customer complaint emails for the non-hearsay purpose of showing the defendants were on notice that they were selling counterfeit goods, but the court declined to give the jury a limiting instruction. The Fourth Circuit held that the authenticated emails ***were "properly admitted"*** for a non-hearsay purpose, but it also held that the district court should have given a limiting instruction rather than stating on the record, "the e-mails say what they say and the jury will have to decide if they're believable or not. That's their job." *Id*. at 220 (emphasis added). The Fourth Circuit simply explained that it required more than a conclusory finding on the record to establish an email's status as a

**GIBSON DUNN**

The Honorable Kiyo Matsumoto
December 10, 2017
Page 4

### C.      Non-Hearsay

A statement is not hearsay if offered to prove something other than the truth of the matter asserted.  The Second Circuit in *United States v. Certified Environmental Services, Inc.*, 753 F.3d 72, 89 (2d Cir. 2014), addressed the admissibility of an email exchange to prove a defendant's state of mind.  There, a defendant-employee had sent an email to the Labor Department, asking, in relevant part, "if you could clarify for me whether or not the interpretation I previously received is still valid."  A Labor Department official responded, in turn, "Yes, you are correct."  In view of this email exchange, the Second Circuit concluded that, contrary to the district court's evidentiary rulings, "the statements were not hearsay since they were offered, not for their truth, but for their effect on defendants' state of mind, which was very much in dispute." *Id.* at 89.  Specifically, as the court explained, "[i]n this case, the proffered evidence was not offered for its truth but to show that the statements occurred and that, given their effect on the defendants' state of mind, they provided a good faith basis for the defendants' actions." *Id.* at 89.

In *United States v. Rowland*, 826 F.3d 100, 114 (2d Cir. 2016), *cert. denied*, 137 S. Ct. 1330 (2017), the Second Circuit held that it was an abuse of discretion for the district court to preclude emails and text messages that the defendant wrote to a company's officer, on the grounds that the statements should have been admissible as non-hearsay.  Indeed, the court held that the statements should have been admitted to "establish that [the defendant] 'was, in fact, working at Apple and taking the initiative to communicate with Bedard'" and that his job was not a sham to avoid campaign-finance requirements. *Id.*

Similarly, in *Hopkins v. National Railroad Passenger Corp.*, 2016 WL 8711718, at *14 (E.D.N.Y. Apr. 29, 2016), the court admitted statements in a text message that read "I hope your bus goes down," reasoning that the statements were not-hearsay.  Indeed, the court concluded that the messages were "not offered to prove the truth of the matter asserted. . . .

---

business record:  "The district court's observation that the e-mails were kept as a 'regular operation of the business' is simply insufficient on that basis alone to establish a foundation for admission under Rule 803(6)(B)." *Id.*  Unlike in *Cone*, we would of course lay a proper foundation for both the *authenticity* and *admissibility* of the emails at issue under the business-records exception.  The government's reliance on *Carotek, Inc. v. Kobayashi Ventures, LLC*, 875 F. Supp. 2d 313 (S.D.N.Y. 2012) is similarly misplaced, since the court there made no finding as to the proper foundation laid by a *bona fide* custodian of records. Here, as noted above, we intend to duly satisfy—for each proffered statement or document— all of Rule 803(6)'s criteria.

**GIBSON DUNN**

The Honorable Kiyo Matsumoto
December 10, 2017
Page 5

Instead, Defendants [were] offering the text messages as circumstantial evidence of [the sender's] state of mind." *Id.*

The Second Circuit has also specifically endorsed the admission of documents that speak to a co-conspirator's state of mind. In *United States v. Salameh*, 152 F.3d 88 (2d Cir. 1998), defendant-appellant Nidal Ayyad argued that the district court improperly admitted a co-conspirator's materials discussing "the desirability of attacking enemies of Islam" and "how to produce and use explosives." *Id.* at 112. The government sought to introduce the materials to prove, *inter alia*, "the coconspirator's intent and motives." *Id.* In ruling on the challenge, the Second Circuit first noted that "[w]here, as here, the statement is offered as circumstantial evidence of [a defendant's] state of mind, it does not fall within the definition given by Rule 801(c); because it was not offered to prove the truth of the matter asserted." *Id.* (quoting *United States v. Detrich*, 865 F.2d 17, 21 (2d Cir. 1988)). The court then found that "[a]s proof of [the conspirators' collective] state of mind, [the co-conspirator's] terrorist materials were not hearsay under Rule 801(c), and their failure to come within Rule 801(d)(2)(E) is of no consequence." *Salameh*, 152 F.3d at 112 (emphasis added). This rule was subsequently applied in *United States v. Ibrahim*, 1998 WL 440473, at *1 (E.D.N.Y. May 13, 2011), to introduce documents against one defendant that provided background on his co-conspirator's state of mind.

## II.    Argument

As an initial matter, all emails to and from Retrophin employees that satisfy the low foundational requirements of Rule 803(6) are admissible as business records. Not only do courts routinely admit emails under Rule 803(6), *U.S. Bank Nat'l Ass'n v. PHL Variable Life Ins. Co.*, 2015 WL 3932791, at *15 (S.D.N.Y. June 22, 2007) (admitting emails where the company's vice president and assistant general counsel certified that the emails satisfied all of Rule 803(6)'s criteria); *United States v. Stein*, 2007 WL 3009650, at *1 (S.D.N.Y. Oct. 15, 2007) (rejecting the claim business records must be "created pursuant to established company procedures for the systematic or routine making of company records," reasoning that "the regularity of making such [email] records and of the business activity is all that is required."), but the Second Circuit also recognizes that the Rule "*favors* the admission of evidence rather than its exclusion if it has any probative value at all," *United States v. Kaiser*, 609 F.3d 556, 574 (2d Cir. 2010) (emphasis added).

Indeed, as noted above, so long as a custodian lays the proper foundation under Rule 803(6), business records are admissible. "The custodian need not have personal knowledge of the actual creation of the document to lay proper foundation." *United States v. Komasa*, 767 F.3d 151, 156 (2d Cir. 2014) (quotation marks and citations omitted); *Phoenix Assocs. III v. Stone*, 60 F.3d 95, 101 (2d Cir. 1995) (internal quotation marks omitted); *In re Ollag Constr. Equip. Corp.*, 665 F.2d 43, 46 (2d Cir. 1981) (finding that "business records are admissible if

**GIBSON DUNN**

The Honorable Kiyo Matsumoto
December 10, 2017
Page 6

witnesses testify that the records are integrated into a company's records and relied upon in its day-to-day operations," and noting that the relevant financial statements were requested by a bank and were regularly used by the bank to make decisions whether to extend credit). *Accordingly, all emails involving Retrophin employees and that satisfy Rule 803(6) should be admitted as business records.*

Several of our representative documents are also admissible under Rule 803(3)'s state of mind exception, or for a non-hearsay purpose, or both. It would be an odd state of affairs if the government were allowed to label nearly a dozen alleged co-conspirators, on the one hand, but then argue that the jury should not learn the breadth and circumstances of these co-conspirators' involvement in the charged conduct, on the other. Indeed, having labelled several individuals alleged co-conspirators, the government has been allowed—under Rule 801(d)(2)(e)—to admit the statements of, among others, Messrs. Shkreli, Biestek, Mulleady, and Panoff. It is entirely appropriate, then, that Mr. Greebel be allowed to admit certain statements that demonstrate the nature of the alleged co-conspirators' relationship and their collective state of mind. Indeed, these statements not only constitute crucial "evidence that provide[] background information necessary to the jury's understanding of the nature of the conspiratorial agreement," but they also "furnish an explanation of the understanding or intent with which certain acts were performed.'" *Salameh*, 152 F.3d at 111 (quoting *United States v. Daly*, 842 F.2d 1380, 1388 (2d Cir. 1988)).

### A.     DX-1318

In addition to falling squarely within Rule 803(6) as a business record, this email is admissible in accordance with Rule 803(3)'s then-existing-mental-emotional-or-physical-condition exception, under which evidence is admissible where it constitutes "[a] statement of the declarant's then-existing state of mind." Here, Mr. Panoff's email expresses his future intent. He explains, in an email to Mr. Greebel, "[w]e are going to have to disclose the settlement amounts separately in the accrued expense footnote and the MD&A." He then goes on to state, "I need some proposed language specifically for MD&A"—another expression of his state of mind, as it existed at the time that he wrote the email to Mr. Greebel. Mr. Panoff's request for "proposed language" is also admissible for the not-for-truth purpose of showing that (i) Mr. Panoff relied on Mr. Greebel for the drafting of legal documents and that (ii) Mr. Greebel often performed a limited role in preparing such documents. *Rowland*, 826 F.3d at 114 (2d Cir. 2016).

In *Rowland*, 826 F.3d at 114, the defendant had similarly sought to introduce emails not for their truth, but rather for a different purpose altogether. There, he sought to establish that he "was, in fact, working at Apple and taking the initiative to communicate with" another individual. *Id.* On these grounds, the Second Circuit determined that the documents were not

**GIBSON DUNN**

The Honorable Kiyo Matsumoto
December 10, 2017
Page 7

hearsay, and, accordingly, contrary to the trial court's ruling, should have been admitted into evidence.

### B.     DX-1319

This email exchange is admissible for not-for-truth purposes. Here, the purpose of admitting this document is not to prove that Harley Lippman in fact "could not have invested in series A preferred on that day." Rather, it is to show Mr. Greebel's state-of-mind, specifically his good faith and diligence, as outside corporate counsel ensuring correct documentation of investment in the company. *Hopkins*, 2016 WL 8711718, at *14.

This email is also admissible under Rule 803(6)'s "records of a regularly conducted activity" exception. Mr. Greebel's conversations regarding the subscription documents for investment in Retrophin were conducted as a regular part of Retrophin's business activities, specifically ensuring accurate and up-to-date legal documentation.

### C.     DX-1255

In addition to falling squarely within Rule 803(6) as a business record, this email chain is admissible under Rule 803(3) as a "statement of the declarant's then-existing . . . intent[] or plan." Specifically, after receiving information from Mr. Greebel, Mr. Shkreli expresses that he would like to "work this out." Mr. Shkreli then states his intent to potentially "use [Stuart Weg and Herb Gary] as consultants." Such forward-looking statements fall squarely within 803(3)'s exception to hearsay. Introducing such evidence, moreover, is squarely supported by *Salameh*, where the Second Circuit allowed the introduction of evidence that spoke to an alleged "coconspirator's intent and motives." 152 F.3d at 112.

This email exchange is also admissible as non-hearsay because it is being used to show the effect on the listeners, Mr. Greebel, Mr. Panoff, and Mr. Goldstein, a partner at Katten Muchin and current deputy general counsel. Fed. R. Evid. 801(c) Advisory Committee's note ("If the significance of an offered statement lies solely in the fact that it was made, no issue is raised as to the truth of anything asserted, and the statement is not hearsay"); *see also George v. Celotex Corp.*, 914 F.2d 26, 30 (2d Cir. 1990) ("To be sure, an out of court statement offered not for the truth of the matter asserted . . . is not hearsay."). Here, Mr. Shkreli tells Mr. Greebel, Mr. Panoff, and Mr. Goldstein that a consulting agreement would be acceptable "if we can use them as consultants as needed" but not "if its [*sic*] just a hidden payment." Mr. Greebel's understanding of Mr. Shkreli's views on consulting agreements is directly relevant to the charges in Count Seven that Mr. Shkreli and Mr. Greebel conspired to enter into sham consulting agreements. *See Rowland*, 826 F.3d at 114 (holding that the trial court had erred in classifying text messages and e-mails as hearsay, when defendant's "purpose in offering the writings was not to establish the truth of his statements").

**GIBSON DUNN**

The Honorable Kiyo Matsumoto
December 10, 2017
Page 8


### D.	DX-1264

This email falls squarely within the exception for "[a] statement of the declarant's then-existing state of mind (such as motive, intent, or plan)."  Fed. R. Evid. 803(3); *see also Shelden v. Barre Belt Granite Employer Union Pension Fund*, 25 F.3d 74, 79 (2d Cir. 1994) ("Under Rule 803(3), the existence of the plan or intention may be proven by evidence of the person's own statements as to its existence.") (edits and citations omitted).  Here, Mr. Greebel is speaking about the topic of discussion in a forthcoming phone call about certain of Retrophin's SEC filings.  In other words, he expresses his plan as it relates to this future call.

This email is also admissible under Rule 803(6)'s "records of a regularly conducted activity" exception.  Conversations between the company, its auditors, and outside corporate counsel about the kinds of documents that were the subject of discussion here—GAAP guidance with respect to subsequent events recognition and disclosures in the financial statements of an entity—were conducted as a regular part of Retrophin's business activities, specifically the preparation and audit of the company's financial statements and quarterly and annual filings.

### E.	DX-1266

In addition to falling squarely within Rule 803(6) as a business record, this email exchange is admissible as non-hearsay.  The point of admitting this exchange is not to establish that "settling a lawsuit doesn't require restatements," or the truth of any other such statements made in this email chain, but rather to show that a disagreement existed between Mr. Shkreli and Mr. Greebel as to the correct accounting treatment.  This email chain makes plain that the two disagreed over whether settling this lawsuit required restatements—with Mr. Greebel suggesting that it did, and Shkreli vehemently protesting that it did not.  *CA, Inc. v. Simple.com, Inc.*, 780 F. Supp. 2d 196, 227–28 (E.D.N.Y. 2009) (explaining that because "the [ ] email is not being offered to prove the veracity of the . . . statements," it was admissible).

### F.	DX-1279

In addition to falling squarely within Rule 803(6) as a business record, this email chain is admissible to show Mr. Shkreli's state of mind, both as non-hearsay evidence and under Rule 803(3).  *See United States v. Quinones*, 511 F.3d 289, 312 (2d Cir. 2007) ("Under either theory, a state of mind can be proved circumstantially by statements which are not intended to assert the truth of the fact being proved." (quoting *United States v. Southland Corp.*, 760 F.2d 1366, 1376 (2d Cir. 1985)) (internal quotation marks omitted)).  On August 28, 2013 at 10:32 a.m., Mr. Greebel writes to Mr. Shkreli attaching a draft settlement agreement and instructing Mr. Shkreli that "this is a [sic] version that should be used."  This falls squarely within the exception for a declarant's statement of intent or plan.  Notably, in the course of the email chain, Mr. Shkreli also affirmatively addresses his then-existing state of mind, expressing his

**GIBSON DUNN**

The Honorable Kiyo Matsumoto
December 10, 2017
Page 9

"understanding" that he "will not even be recasting" the draft settlement agreement for
MSMB investor Schuyler Marshall. *See* Fed. R. Evid. 803(3).

### G.     DX-1283

In addition to falling squarely within Rule 803(6) as a business record, this email chain is
admissible under FRE 803(3) as a "statement of the declarant's then-existing . . . intent[] or
plan." Specifically, Mr. Greebel expresses to alleged co-conspirator Marek Biestek that Mr.
Biestek can "sell the stock however and to whomever [he] want[s] except to affiliates of the
company" and that it was "up to [Biestek]" to determine whether the shares should be sold for
the same price. Such forward-looking statements fall squarely within 803(3)'s exception to
hearsay. Moreover, in light of the government's Count Eight allegations that Mr. Shkreli and
Mr. Greebel conspired to control the Fearnow shares, Mr. Greebel's statement is directly
relevant to demonstrate his belief to the contrary—i.e., that Mr. Biestek alone was free to
determine the price at which those shares were sold. And as made clear in *United States v.
Salameh*, 152 F.3d 88 (2d Cir. 1998), Mr. Greebel's statements should be admitted to give the
jury a more fulsome "explanation of the understanding or intent with which certain acts were
performed.'" *Salameh*, 152 F.3d at 111 (quoting *United States v. Daly*, 842 F.2d 1380, 1388
(2d Cir. 1988)).

### H.     DX-1294

In addition to falling squarely within Rule 803(6) as a business record, this email chain is
admissible under Rule 803(3) as evidence of Neal Golding's then-existing state of mind. *See
United States v. Best*, 219 F.3d 192, 198 (2d Cir. 2000) ("A declarant's out-of-court statement
as to his intent to perform a certain act in the future is not excludable on hearsay
grounds."). Specifically, the email chain reflects Mr. Golding's approval of and consent for
the board resolutions. This email is also admissible as a verbal act—i.e., not for the truth of
the matter asserted but to show that Mr. Golding did, in fact consent. *See* Fed. R. Evid.
801(c) advisory committee's note ("If the significance of an offered statement lies solely in
the fact that it was made, no issue is raised as to the truth of anything asserted, and the
statement is not hearsay. . . . The effect is to exclude from hearsay the entire category of
'verbal acts' and 'verbal parts of an act,' in which the statement itself affects the legal rights
of the parties or is a circumstance bearing on conduct affecting their rights."). Statements that
themselves have binding legal effect, such as Mr. Golding's consent, are not hearsay. *See
United States v. Dupree*, 706 F.3d 131, 137 (2d Cir. 2013) (temporary restraining order);
*Morgan Guar. Trust Co. v. Hellenic Lines Ltd.*, 621 F. Supp. 198, 219 (S.D.N.Y. 1985)
(shareholder agreement). The email chain is also admissible under Rule 803(3) as a
"statement of the declarant's then-existing . . . intent[] or plan." Specifically, Mr. Greebel
expresses his future intent to "effectuate the doc[uments]," which included Mr. Shkreli's
employment agreement and a Repurchase Agreement to be entered into with Ladenburg

**GIBSON DUNN**

The Honorable Kiyo Matsumoto
December 10, 2017
Page 10

Thalmann.  Such a forward-looking statement falls squarely within 803(3)'s exception to hearsay.

### I.      DX-1306

In addition to falling squarely within Rule 803(6) as a business record, this email exchange is admissible as non-hearsay, on the grounds that the emails indicate their effect on Mr. Greebel's state of mind.  We are not offering this email exchange to prove that there was a "Confi in place for everyone" or that there would be "a fd issue" if there were not confidentiality agreement in place for everyone.  Similar to the defendant employee's request for clarification in *Certified Envtl. Servs.*, Mr. Greebel was asking for clarification regarding the existence—or lack thereof—of confidentiality agreements.  In response, Mr. Shkreli clarified—just as the Labor Department offered clarification in *Certified Envtl. Servs.*— "[c]onfi in place for everyone." *Certified Envtl. Servs., Inc.*, 753 F.3d at 89.  Prompted by Mr. Greebel's question, Mr. Shkreli provided an answer; he was, in other words, responding based on the question that Greebel had proffered, and the exchange is therefore indicative of the effect of the exchange on Mr. Greebel's state of mind.  Finally, Mr. Greebel's response is also not being offered for its truth, but rather to show Mr. Greebel's state of mind—that he understood that a confidentiality agreement was in place and therefore he did not need to be concerned about a potential "fd issue."  Like in *Certified Envtl. Servs.*, Mr. Greebel's state of mind regarding the "OVER-THE-WALL" email exchanges, *see, e.g.*, GX-507 and GX-112-24 in evidence, is "very much in dispute," therefore the proffered document can be offered to show "a good faith basis for the defendants' actions."  *See also Rowland*, 826 F.3d at 114 (holding that where defendant's attempted introduction of emails was for a purpose other than to establish the emails' truth, these emails were nonhearsay, and thus the trial court had erred in excluding them as hearsay evidence).

### J.      DX-1307

In addition to falling squarely within Rule 803(6) as a business record, in this email, Mr. Greebel expresses his request that Mr. Mulleady "surrender any claims that he has to receive additional shares from Troy Fearnow" and further states Retrophin's plan to "facilitate such shares being transferred to certain investors in Retrophin."  This statement is admissible for the purpose of showing Mr. Greebel's knowledge and understanding that Mr. Mulleady was the rightful owner of the shares received through the Fearnow purchase agreement.  Mr. Greebel's belief in this regard is directly relevant to the charges in Count Eight that Mr. Shkreli was the beneficial owner and controller of the Fearnow shares.  Thus, this evidence can be admitted as either non-hearsay or under Rule 803(3). *See United States v. Quinones*, 511 F.3d 289, 312 (2d Cir. 2007) ("Under either theory, a state of mind can be proved circumstantially by statements which are not intended to assert the truth of the fact being

**GIBSON DUNN**

The Honorable Kiyo Matsumoto
December 10, 2017
Page 11

proved." (quoting *United States v. Southland Corp.*, 760 F.2d 1366, 1376 (2d Cir. 1985)) (internal quotation marks omitted)).

### K.   DX-1315

This email chain is admissible for the purpose of showing Mr. Greebel's then-existing state of mind.  Specifically, by expressing to Mr. Shkreli that he "should send [his board] an email/update when [he] get[s] a chance," Mr. Greebel exhibited his plan and intent for Mr. Shkreli to keep the board apprised of his plans and progress.  The email chain is further admissible to show its effect on the listener, *United States v. Dupree*, 706 F.3d 131, 136 (2d Cir. 2013) ("A statement offered to show its effect on the listener is not hearsay."), and to show that it was made, *United States v. Kohan*, 806 F.2d 18, 22 (2d Cir. 1986) (evidence admissible when offered not for "the truth of the . . . statements, but rather [for] the fact that they were made").  Here, the statement is admissible to show that Mr. Shkreli was counseled to update Retrophin's board, which in turn provides context to both his and Mr. Greebel's later actions.  As in *Salameh*, this evidence helps "furnish an explanation of the understanding or intent with which certain acts were performed."  *Salameh*, 152 F.3d at 111 (quoting *United States v. Daly*, 842 F.2d 1380, 1388 (2d Cir. 1988)).

This email also falls squarely within the requirements of Rule 803(6) and thus can be admitted as a business record.

### L.   DX-1316

In addition to falling squarely within Rule 803(6) as a business record, this email chain is admissible under Rule 803(3) as a "statement of the declarant's then-existing . . . intent[] or plan."  Specifically, Mr. Shkreli expresses that he is "better off blaming [Mr. Greebel] after if [Mr. Greebel] made a mistake."  This statement clearly evinces Mr. Shkreli's future intent to blame Mr. Greebel in the event something goes wrong.  This statement is therefore admissible under Rule 803(3) as a forward-looking statement of Mr. Shkreli's plan or intent.

### M.   DX-5940

In addition to falling squarely within Rule 803(6) as a business record, this email is admissible as evidence of Mr. Greebel's state of mind and understanding as to the nature of Mr. Shkreli's relationship with Mr. Koestler.  Mr. Shkreli's statement, "there was never an agreement // it was a sweetener from me to him," and Mr. Greebel's response—"Oh, then the stock has to come from you-i thought he was a consultant"—are indicative of Mr. Greebel's knowledge that there was not, in fact, an agreement between Shkreli and investor Tom Koestler.  Put another way, this exchange establishes that Mr. Greebel was effectively in the dark as to whether Shkreli had an agreement with certain investors.  Therefore, because the

**GIBSON DUNN**

The Honorable Kiyo Matsumoto
December 10, 2017
Page 12

purpose of offering this email is not for the truth of the matter asserted in the email exchange, but rather to show the extent of Mr. Greebel's understanding of Mr. Shkreli's relationships with his investors, the emails are not hearsay, and are therefore admissible.

The Second Circuit has, in various cases, permitted the introduction of evidence on a similar basis. In *United States v. Rowland*, for example, on appeal of the defendant's conviction for violating campaign-finance laws and falsifying records, the court affirmed the admission of evidence that was aimed at "provid[ing] context for what [several individuals] *knew* during their subsequent meeting with [defendant]." 826 F.3d at 115 (emphasis added). There, like here, the purpose of admitting the evidence was not "for the truth of the matters asserted," *id.*, but rather to establish the extent of what was known by particular people at the time in question. And as in *Rowland*, evidence introduced for this purpose is non-hearsay, and should therefore be admitted here.

N.      DX-8207

The Telephonic Meeting of the Board of Directors Agenda, and the corresponding email referring to the agenda, are admissible. The former is admissible based on the fact that the agenda constitutes a regularly produced memorandum, disseminated as part of Retrophin's regularly held board of directors meetings. The email sent by Mr. Greebel, moreover, is admissible based on the fact that it was in the regular course of Mr. Greebel's role as outside corporate counsel and Acting Corporate Secretary to review and offer comments, if any, on the agenda prior to their distribution. *See* Fed. R. Evid. 803(6).

Respectfully,

*/s/ Reed Brodsky*
Reed Brodsky


Attachment


cc:     Alixandra E. Smith, Esq.
        David C. Pitluck, Esq.
        David K. Kessler, Esq.