| | |
|---|---|
| **From:** | Martin Shkreli <Martin@retrophin.com> |
| **Sent:** | Thursday, September 19, 2013 11:24 AM |
| **To:** | Greebel, Evan L. |
| **Cc:** | Marc Panoff; Goldstein, Doron S |
| **Subject:** | Re: Revised Draft Term Sheet |

I think we can work this out. If we can use them as consultants as needed that'd be fine. If its just a hidden payment no way. We met him at his asking price for almost everything.

Sent from my iPhone

On Sep 18, 2013, at 10:24 PM, "Greebel, Evan L." <evan.greebel@kattenlaw.com> wrote:

> Fyi...he also wants a consulting agreement to pay him additional money for he and Herb Gary.
> Additionally, he wants all fees that he has incurred on the patent to be reimbursed
>
> **EVAN L. GREEBEL**
> Partner
> **Katten Muchin Rosenman LLP**
> 575 Madison Avenue
> New York, NY 10022-2585
> (212) 940-6383
> (212) 894-5883 (f)
>
> **From:** Stuartlw [mailto:stuartlw@aol.com]
> **Sent:** Wednesday, September 18, 2013 4:17 PM
> **To:** Greebel, Evan L.
> **Subject:** Re: Revised Draft Term Sheet
>
> Dear Evan,
>
> Thank you for correcting the major areas in the term sheet that I listed in my previous email.
> I have received initial comments from my attorney and associate Herb Gary on that most recent draft.
> In the interest of time, I have listed the comments that relate to material either not included or not fully expanded upon in the term sheet.
>
> 1. Herb Gary is my associate and needs to be present at the quarterly meeting as well as myself.  He will also need to be covered by a consulting agreement as well as myself.
> 2. We will negotiate the consulting fee(s) for each of us above.
> 3. There will be negotiated a fee and/or percentage to be paid to me (Licensor) for sublicensing of any of the licensed IP that will be based on the additional revenue or equity received by the Licensee.
> 4. All outstanding and/or past due patent fees on licensed patents or applications at the time of signing to be paid directly by the licensee.
>
> This list only represents what is apparent now.  Further issues may come up as the process goes forward and they too will be developed and negotiated in the final license agreement.
> As long as you understand and agree that these areas will be discussed and negotiated in the final license agreement I will be able to sign off on this term sheet immediately.
>
> Best,
>
> Stuart Weg MD

**E. GREEBEL**

**DX-1255**

CONFIDENTIAL

R-Greebel0000007384

-----Original Message-----
From: Greebel, Evan L. <evan.greebel@kattenlaw.com>
To: stuartlw <stuartlw@aol.com>
Cc: Martin Shkreli <Martin@retrophin.com>; Marc Panoff <Marc@retrophin.com>; Marek Biestek <marek@retrophin.com>; Goldstein, Doron S <doron.goldstein@kattenlaw.com>
Sent: Tue, Sep 17, 2013 2:13 pm
Subject: Revised Draft Term Sheet

Dr. Weg, attached is a revised draft of the term sheet and a marked copy indicating the changes that we discussed yesterday. In the interest of time, I am simultaneously sending it to our client and it is subject to their review and comment.

If you have any questions or comments, please call me at 212-940-6383.


Best regards,
Evan


**EVAN L. GREEBEL**
Partner
**Katten Muchin Rosenman LLP**
575 Madison Avenue
New York, NY 10022-2585
(212) 940-6383
(212) 894-5883 (f)

=========================================================
CIRCULAR 230 DISCLOSURE: Pursuant to Regulations Governing Practice Before the Internal Revenue
Service, any tax advice contained herein is not intended or written to be used and cannot be used
by a taxpayer for the purpose of avoiding tax penalties that may be imposed on the taxpayer.
=========================================================
CONFIDENTIALITY NOTICE:
This electronic mail message and any attached files contain information intended for the exclusive
use of the individual or entity to whom it is addressed and may contain information that is
proprietary, privileged, confidential and/or exempt from disclosure under applicable law.  If you
are not the intended recipient, you are hereby notified that any viewing, copying, disclosure or
distribution of this information may be subject to legal restriction or sanction.  Please notify
the sender, by electronic mail or telephone, of any unintended recipients and delete the original
message without making any copies.
=========================================================
NOTIFICATION:  Katten Muchin Rosenman LLP is an Illinois limited liability partnership that has
elected to be governed by the Illinois Uniform Partnership Act (1997).
=========================================================

**From:** **Greebel, Evan L. <evan.greebel@kattenlaw.com>**
**Sent:** **Friday, August 16, 2013 2:23 PM**
**To:** **Bukzin, David; Giugliano, Greg; Hackert, Ed**
**Cc:** **Marc Panoff**
**Subject:** **RE: Subsequent events - ASC 855-10**
**Attachments:** **Subsequent events - ASC 855-10.pdf**

I look forward to speaking at 11. I think part of the call should discuss note 55-1 and 55-2 on p. 7. Specifically example a in 55-1 and c in 55-2.

Please use the following dial-in for the call

Dial-in # 1-866-200-9051
Code 951567#


**EVAN L. GREEBEL**
Partner
**Katten Muchin Rosenman LLP**
575 Madison Avenue
New York, NY 10022-2585
(212) 940-6383
(212) 894-5883 (f)

**From:** Jain, Sunil [mailto:Sunil.Jain@marcumllp.com]
**Sent:** Thursday, August 08, 2013 11:09 AM
**To:** Greebel, Evan L.; Marc@retrophin.com
**Cc:** Bukzin, David; Giugliano, Greg; Hackert, Ed
**Subject:** Subsequent events - ASC 855-10

Evan/Marc,

As discussed, attached is the GAAP guidance with respect to subsequent events recognition and disclosures in the financial statements of an entity.

Thank you,

Sunil Jain




*Sunil Jain*
*Senior Manager*
Marcum LLP
750 Third Avenue
New York, NY 10017
P: (212) 485-5547
F: (212) 485-5501
Sunil.Jain@marcumllp.com



E. GREEBEL

DX-1264

CONFIDENTIAL

R-Greebel0000001578

CONFIDENTIALITY NOTICE:

This message is intended only for the use of the individual or entity to which it is addressed, and may contain information that is privileged, confidential and exempt from disclosure under applicable law. If the reader of the message is not the intended recipient, or the employee or agent responsible for delivering the message to the intended recipient, you are hereby notified that any dissemination, distribution or copying of this communication is strictly prohibited. If you have received this communication in error, please notify us immediately by telephone at (631) 414-4000 or (212) 485-5500 and destroy this message.

IRS CIRCULAR 230 DISCLOSURE NOTICE:

To ensure compliance with requirements imposed by the IRS, we inform you that any U.S. federal tax advice contained in this email and/or its attachments , unless otherwise specifically stated, is not intended or written to be used, and cannot be used, for the purpose of (i) avoiding penalties under the Internal Revenue Code, or (ii) promoting, marketing, or recommending to another party any transaction or matter that is contained in or accompanying this document

```
==========================================================
CIRCULAR 230 DISCLOSURE: Pursuant to Regulations Governing Practice Before the Internal Revenue
Service, any tax advice contained herein is not intended or written to be used and cannot be used
by a taxpayer for the purpose of avoiding tax penalties that may be imposed on the taxpayer.
==========================================================
CONFIDENTIALITY NOTICE:
This electronic mail message and any attached files contain information intended for the exclusive
use of the individual or entity to whom it is addressed and may contain information that is
proprietary, privileged, confidential and/or exempt from disclosure under applicable law.  If you
are not the intended recipient, you are hereby notified that any viewing, copying, disclosure or
distribution of this information may be subject to legal restriction or sanction.  Please notify
the sender, by electronic mail or telephone, of any unintended recipients and delete the original
message without making any copies.
==========================================================
NOTIFICATION:  Katten Muchin Rosenman LLP is an Illinois limited liability partnership that has
elected to be governed by the Illinois Uniform Partnership Act (1997).
==========================================================
```

R-Greebel0000001579

## 855-10 — **Subsequent Events** – Overall

## 00 Status

### *General Note*

The Status Section identifies changes to this Subtopic resulting from Accounting Standards Updates. The Section provides references to the affected Codification content and links to the related Accounting Standards Updates. Nonsubstantive changes for items such as editorial, link and similar corrections are included separately in Maintenance Updates.

### *General*

**00-1**   The following table identifies the changes made to this Subtopic.

| Paragraph | Action | Accounting Standards Update | Date |
|---|---|---|---|
| **Public Entity** | Superseded | Accounting Standards Update No. 2010-09 | 02/24/2010 |
| **Revised Financial Statements** | Added | Accounting Standards Update No. 2010-09 | 02/24/2010 |
| **Securities and Exchange Commission (SEC) Filer** | Added | Accounting Standards Update No. 2010-09 | 02/24/2010 |
| | | | |
| 855-10-25-1A | Added | Accounting Standards Update No. 2010-09 | 02/24/2010 |
| 855-10-25-1A | Amended | Accounting Standards Update No. 2010-09 | 02/24/2010 |
| 855-10-25-2 | Amended | Accounting Standards Update No. 2010-09 | 02/24/2010 |
| 855-10-50-1 | Amended | Accounting Standards Update No. 2010-09 | 02/24/2010 |
| 855-10-50-4 | Amended | Accounting Standards Update No. 2010-09 | 02/24/2010 |
| 855-10-50-5 | Added | Accounting Standards Update No. 2010-09 | 02/24/2010 |
| 855-10-60-3 | Superseded | Accounting Standards Update No. 2012-07 | 10/24/2012 |
| 855-10-65-1 | Added | Accounting Standards Update No. 2010-09 | 02/24/2010 |

## 05 Background

### *General Note*

The Overview and Background Section provides overview and background material for the guidance contained in the Subtopic. It does not provide the historical background or due process. It may contain certain material that users generally consider useful to understand the typical situations addressed by the standards. The Section does not summarize the accounting and reporting requirements.

### *General*

**05-1**   [This Topic provides guidance on principles and requirements for **subsequent events**.FAS 165, paragraph 1]

**05-2**   [Paragraph Not Used Not Used]

**05-3**   [Paragraph Not Used Not Used]

CONFIDENTIAL
R-Greebel0000001580

**05-4**   [Paragraph Not Used Not Used]

**05-5**   [Paragraph Not Used Not Used]

# 15 Scope

## *General Note*

The Scope and Scope Exceptions Section outlines the items (for example, the entities, transactions, instruments, or **events**) to which the guidance in the Subtopic does or does not apply. In some cases, the Section may contain definitional or other text to frame the scope.

## *General*

### > Overall Guidance

**15-1**   The Scope Section of the Overall Subtopic establishes the pervasive scope for the **Subsequent Events** Topic.

### > Entities

**15-2**   The guidance in the **Subsequent Events** Topic applies to all entities.

### > Transactions

**15-3**   [The guidance in the **Subsequent Events** Topic shall be applied in the accounting for, and disclosure of, <u>subsequent events</u> not addressed in other Topics of the Codification.FAS 165, paragraph 2]

**15-4**   [Other Topics may address the accounting treatment of **events** or transactions that occur after the balance sheet date. If an **event** or transaction is within the scope of another Topic, then an entity shall follow the guidance in that Topic, rather than the guidance in this Topic.FAS 165, paragraph 3]

**15-5**   [The following are examples (not collectively exhaustive) of other **subsequent events** guidance that is not consistent with the principles in this Topic for the recognition and disclosure of **events** or transactions that occur after the balance sheet date.FAS 165, paragraph 3]

> a.   [ Income Taxes—See paragraph <u>740-10-25-15</u> for guidance on changes in judgment after the balance sheet date that results in **subsequent** recognition, derecognition, or change in measurement of a tax position taken in a prior annual period. FAS 165, paragraph 3 ]
>
> b.   [ Earnings per Share—See paragraph <u>260-10-55-12</u> for guidance on the effect on earnings per share of changes in the number of common shares as a result of a stock dividend or stock split that occurs after the balance sheet date but before the financial statements are issued or are available to be issued. FAS 165, paragraph 3 ]
>
> c.   [ Gain Contingencies—See paragraph <u>450-30-25-1</u> for guidance on gain contingencies which are rarely recognized after the balance sheet date but before the financial statements are issued or are available to be issued. FAS 165, paragraph 3]

---

**Deloitte Guidance and Links**

<u>Recognition of Insurance Proceeds That Will Result in a Gain — 450-30-25 (Q&A 11)</u>

---

# 20 Glossary

## *General Note*

The Master Glossary contains all terms identified as glossary terms throughout the Codification. Clicking on

CONFIDENTIAL

R-Greebel0000001581

any term in the Master Glossary will display where the term is used. The Master Glossary may contain identical terms with different definitions, some of which may not be appropriate for a particular Subtopic. For any particular Subtopic, users should only use the glossary terms included in the particular Subtopic Glossary Section (Section 20).

## Financial Statements Are Available to Be Issued

[ Financial statements are considered available to be issued when they are complete in a form and format that complies with GAAP and all approvals necessary for issuance have been obtained, for example, from management, the board of directors, and/or significant shareholders. The process involved in creating and distributing the financial statements will vary depending on an entity's management and corporate governance structure as well as statutory and regulatory requirements.FAS 165, paragraph 6]

## Financial Statements Are Issued

[ Financial statements are considered issued when they are widely distributed to shareholders and other financial statement users for general use and reliance in a form and format that complies with GAAP. (U.S. Securities and Exchange Commission [SEC] registrants also are required to consider the guidance in paragraph 855-10-S99-2.)FAS 165, paragraph 5]

## Public Entity

[ Any entity that meets any of the following conditions: FAS 165, paragraph 7]

    a.  [Its debt or equity securities trade in a public market either on a stock exchange (domestic or foreign) or in an over-the-counter market, including securities quoted only locally or regionally. FAS 165, paragraph 7]

    b.  [It is a conduit bond obligor for conduit debt securities that are traded in a public market (a domestic or foreign stock exchange or an over-the-counter market, including local or regional markets). FAS 165, paragraph 7]

    c.  [It files with a regulatory agency in preparation for the sale of any class of debt or equity securities in a public market. FAS 165, paragraph 7]

    d.  [It is required to file or furnish financial statements with the SEC. FAS 165, paragraph 7]

    e.  [It is controlled by an entity covered by criteria (a) through (d). FAS 165, paragraph 7]

## Revised Financial Statements

[ Financial statements revised only for either of the following conditions: ASU 2010–09, paragraph 3 ]

    a.  [ Correction of an error ASU 2010–09, paragraph 3]

    b.  [ Retrospective application of U.S. GAAP.ASU 2010–09, paragraph 3]

## Securities and Exchange Commission (SEC) Filer

[ An entity that is required to file or furnish its financial statements with either of the following: ASU 2010–09, paragraph 3]

    a.  [ The Securities and Exchange Commission (SEC) ASU 2010–09, paragraph 3 ]

    b.  [ With respect to an entity subject to Section 12(i) of the Securities Exchange Act of 1934, as amended, the appropriate agency under that Section. ASU 2010–09, paragraph 3]

[ Financial statements for other entities that are not otherwise SEC filers whose financial statements are

CONFIDENTIAL

R-Greebel0000001582

included in a submission by another SEC filer are not included within this definition. ASU 2010–09, paragraph 3 ]

## Subsequent Events

[ **Events** or transactions that occur after the balance sheet date but before <u>financial statements are issued</u> or are <u>available to be issued</u>. There are two types of **subsequent events**:FAS 165, paragraph 4.1]

  a. [The first type consists of **events** or transactions that provide additional evidence about conditions that existed at the date of the balance sheet, including the estimates inherent in the process of preparing financial statements (that is, recognized **subsequent events**). FAS 165, paragraph 4]

  b. [The second type consists of **events** that provide evidence about conditions that did not exist at the date of the balance sheet but arose **subsequent** to that date (that is, nonrecognized **subsequent events**). FAS 165, paragraph 4]

# 25 Recognition

## *General Note*

The Recognition Section provides guidance on the required criteria, timing, and location (within the financial statements) for recording a particular item in the financial statements. Disclosure is not recognition.

### *General*

#### > Recognized **Subsequent Events**

#### > > *Evidence about Conditions That Existed at the Date of the Balance Sheet*

**25-1** [An entity shall recognize in the financial statements the effects of all **subsequent events** that provide additional evidence about conditions that existed at the date of the balance sheet, including the estimates inherent in the process of preparing financial statements. FAS 165, paragraph 8]See paragraph 855-10-55-1 for examples of recognized **subsequent events**.

> **Deloitte Guidance and Links**
>
> <u>Settlement of a Recognized Liability After the Balance Sheet Date but Before Issuance of the Financial Statements — 450-20-25 (Q&A 07)</u>
>
> <u>Resolution of a Loss Contingency After the Balance Sheet Date but Before Issuance of the Financial Statements — 450-20-25 (Q&A 09)</u>

**25-1A** [An entity that meets either of the following criteria shall evaluate **subsequent events** through the date the financial statements are issued:ASU 2010–09, paragraph 4]

  a. [ It is an **SEC filer**. ASU 2010–09, paragraph 4 ]

  b. [ It is a conduit bond obligor for conduit debt securities that are traded in a public market (a domestic or foreign stock exchange or an over-the-counter market, including local or regional markets). ASU 2010–09, paragraph 5]

> **Deloitte Guidance and Links**
>
> <u>Other Entities' Financial Statements Included in an SEC Registrant's Filing — 855-10-25 (Q&A 01)</u>
>
> <u>Financial Statements Included in a Private Offering Document **Subsequently** Registered With the</u>

CONFIDENTIAL

R-Greebel0000001583

> SEC — 855-10-25 (Q&A 02)
>
> Whether a Broker-Dealer That Files With the SEC's Division of Trading and Markets Is Considered an SEC Filer — 855-10-25 (Q&A 03)
>
> Financial Statements Included in an Initial Public Offering Filing With the SEC — 855-10-25 (Q&A 04)

**25-2**   [An entity that meets neither criteria in the preceding paragraph shall evaluate **subsequent events** through the date that the financial statements are available to be issued.ASU 2010–09, paragraph 6]

### > Nonrecognized **Subsequent Events**

### > > *Evidence about Conditions That Did Not Exist at the Date of the Balance Sheet*

**25-3**   [An entity shall not recognize **subsequent events** that provide evidence about conditions that did not exist at the date of the balance sheet but arose after the balance sheet date but before <u>financial statements are issued</u> or are <u>available to be issued</u>. FAS 165, paragraph 10]See paragraph <u>855-10-55-2</u> for examples of nonrecognized **subsequent events**.

> **Deloitte Guidance and Links**
>
> Enactment of Legislation After the Balance Sheet Date but Before Issuance of the Financial Statements — 450-20-25 (Q&A 04)

### > > *Reissuance of Financial Statements*

**25-4**   [An entity may need to reissue financial statements, for example, in reports filed with the SEC or other regulatory agencies. After the original issuance of the financial statements, **events** or transactions may have occurred that require disclosure in the reissued financial statements to keep them from being misleading. An entity shall not recognize **events** occurring between the time the financial statements were issued or were available to be issued and the time the financial statements were reissued unless the adjustment is required by GAAP or regulatory requirements. Similarly, an entity shall not recognize **events** or transactions occurring after the financial statements were issued or were available to be issued in financial statements that are later reissued in comparative form along with financial statements of **subsequent** periods unless the adjustment meets the criteria stated in this paragraph.FAS 165, paragraph 15]

## 45 Other Presentation

### *General Note*

The Other Presentation Matters Section provides guidance on other presentation matters not addressed in the Recognition, Initial Measurement, **Subsequent** Measurement, and Derecognition Sections. Other presentation matters may include items such as current or long-term balance sheet classification, cash flow presentation, earnings per share matters, and so forth. The FASB Codification also contains Presentation Topics, which provide guidance for general presentation and display items. See those Topics for general guidance.

### *General*

### > Nonrecognized **Subsequent Events**

**45-1**   [As indicated in paragraph <u>855-10-50-3</u>, in some situations, an entity also shall consider presenting pro forma statements, usually a balance sheet only, in columnar form on the face of the historical statements.FAS 165, paragraph 14]

## 50 Disclosure

### *General Note*

CONFIDENTIAL
R-Greebel0000001584

The Disclosure Section provides guidance regarding the disclosure in the notes to financial statements. In some cases, disclosure may relate to disclosure on the face of the financial statements.

## *General*

### > Date Through Which **Subsequent Events** Have Been Evaluated

**50-1**  [If an entity is not an <u>SEC filer</u>, then the entity shall disclose both of the following: FAS 165, paragraph 12]

      a.  [ The date through which <u>subsequent events</u> have been evaluated FAS 165, paragraph 12 ]

      b.  [ Whether that date is either of the following: FAS 165, paragraph 12 ]

            1.   [ The date the <u>financial statements were issued</u> FAS 165, paragraph 12 ]

            2.   [ The date the <u>financial statements were available to be issued</u>. FAS 165, paragraph 12 ]

### > Nonrecognized **Subsequent Events**

**50-2**  [Some nonrecognized **subsequent events** may be of such a nature that they must be disclosed to keep the financial statements from being misleading. For such **events**, an entity shall disclose the following:FAS 165, paragraph 13]

      a.  [ The nature of the **event** FAS 165, paragraph 13 ]

      b.  [ An estimate of its financial effect, or a statement that such an estimate cannot be made. FAS 165, paragraph 13 ]

| Deloitte Guidance and Links |
| --- |
| <u>Loss Contingencies Occurring After Year-End That Must Be Disclosed — 450-20-50 (Q&A 03)</u> |

**50-3**  [An entity also shall consider supplementing the historical financial statements with pro forma financial data. Occasionally, a nonrecognized **subsequent event** may be so significant that disclosure can best be made by means of pro forma financial data. Such data shall give effect to the **event** as if it had occurred on the balance sheet date. In some situations, an entity also shall consider presenting pro forma statements, usually a balance sheet only, in columnar form on the face of the historical statements.FAS 165, paragraph 14]

### > Revised Financial Statements

**50-4**  [Unless the entity is an SEC filer, an entity shall disclose in the <u>revised financial statements</u> the dates through which **subsequent events** have been evaluated in both of the following:FAS 165, paragraph 15]

      a.  [ The issued or available-to-be-issued financial statements FAS 165, paragraph 15 ]

      b.  [ The revised financial statements. FAS 165, paragraph 15 ]

| Deloitte Guidance and Links |
| --- |
| <u>Evaluating **Subsequent Events** When Reissuing a Form 10-K — 855-10-50 (Q&A 01)</u> |

CONFIDENTIAL

R-Greebel0000001585

> Revising Prior-Period Information for Changes in Reportable Segments or to Report Discontinued Operations — 855-10-50 (Q&A 02)

**50-5**   [Revised financial statements are considered reissued financial statements. For guidance on the recognition of **subsequent events** in reissued financial statements, see paragraph 855-10-25-4.ASU 2010–09, paragraph 10]

# 55 Implementation

## General Note

The Implementation Guidance and Illustrations Section contains implementation guidance and illustrations that are an integral part of the Subtopic. The implementation guidance and illustrations do not address all possible variations. Users must consider carefully the actual facts and circumstances in relation to the requirements of the Subtopic.

### General

> Implementation Guidance

> > Recognized **Subsequent Events**

**55-1**   [The following are examples of recognized **subsequent events** addressed in paragraph 855-10-25-1:FAS 165, paragraph 9]

a.   [ If the **events** that gave rise to litigation had taken place before the balance sheet date and that litigation is settled after the balance sheet date but before the **financial statements are issued** or are **available to be issued**, for an amount different from the liability recorded in the accounts, then the settlement amount should be considered in estimating the amount of liability recognized in the financial statements at the balance sheet date. FAS 165, paragraph 9 ]

b.   [ **Subsequent events** affecting the realization of assets, such as receivables and inventories or the settlement of estimated liabilities, should be recognized in the financial statements when those **events** represent the culmination of conditions that existed over a relatively long period of time. For example, a loss on an uncollectible trade account receivable as a result of a customer's deteriorating financial condition leading to bankruptcy after the balance sheet date but before the financial statements are issued or are available to be issued ordinarily will be indicative of conditions existing at the balance sheet date. Thus, the effects of the customer's bankruptcy filing shall be considered in determining the amount of uncollectible trade accounts receivable recognized in the financial statements at balance sheet date. FAS 165, paragraph 9 ]

> > Nonrecognized **Subsequent Events**

**55-2**   [The following are examples of nonrecognized **subsequent events** addressed in paragraph 855-10-25-3:FAS 165, paragraph 11]

a.   [ Sale of a bond or capital stock issued after the balance sheet date but before financial statements are issued or are available to be issued FAS 165, paragraph 11 ]

b.   [ A business combination that occurs after the balance sheet date but before financial statements are issued or are available to be issued (Topic 805 requires specific disclosures in such cases.) FAS 165, paragraph 11 ]

c.   [ Settlement of litigation when the **event** giving rise to the claim took place after the balance sheet date but before financial statements are issued or are available to be issued FAS 165, paragraph 11 ]

CONFIDENTIAL

R-Greebel0000001586

d.    [ Loss of plant or inventories as a result of fire or natural disaster that occurred after the balance sheet date but before financial statements are issued or are available to be issued FAS 165, paragraph 11 ]

e.    [ Losses on receivables resulting from conditions (such as a customer's major casualty) arising after the balance sheet date but before financial statements are issued or are available to be issued FAS 165, paragraph 11 ]

f.    [ Changes in the fair value of assets or liabilities (financial or nonfinancial) or foreign exchange rates after the balance sheet date but before financial statements are issued or are available to be issued FAS 165, paragraph 11 ]

g.    [ Entering into significant commitments or contingent liabilities, for example, by issuing significant guarantees after the balance sheet date but before financial statements are issued or are available to be issued. FAS 165, paragraph 11 ]

# 60 Relationships

## *General Note*

The Relationships Section contains links to guidance that may be helpful to, but not required by, a user of the Subtopic. This Section may not be all-inclusive. The relationship items are organized according to the Topic structure in the Codification.

## *General*

### > Property, Plant, and Equipment

**60-1**   [For guidance on the classification of a long-lived asset to be sold when held-for-sale criteria are met after the balance sheet date but before the <u>financial statements are issued</u> or are <u>available to be issued</u> (as discussed in Section <u>855-10-25</u>), see paragraph <u>360-10-45-13</u>. FAS 144, paragraph 33]

### > Income Taxes

**60-2**   [For guidance on accounting and disclosure when an election to change an entity's tax status is approved by the tax authority (or filed, if approval is not necessary) early in Year 2 and before the financial statements for Year 1 are issued or are available to be issued (as discussed in Section <u>855-10-25</u>), QA 109, paragraph 11][see paragraphs <u>740-10-25-34</u>, <u>740-10-50-4</u>, and <u>740-10-55-48</u>. QA 109, paragraph 11]

### > Entertainment—Films

**60-3**   [For guidance addressing the possible need for a write-down of unamortized film costs as a result of evidence that arises after the date of the balance sheet but before an entity's financial statements are issued or are available to be issued (as discussed in Section <u>855-10-25</u>), see paragraph <u>926-855-35-1</u>. SOP 00-2, paragraph 48]

> **Pending Content**
>
> **Transition Date:** *December 15, 2013* | **Transition Guidance:** <u>926-20-65-1</u>
>
> *Editor's note: Paragraph 855-10-60-3 will be superseded upon transition, together with its heading:*
>
> **> Entertainment—Films**
>
> Paragraph superseded by Accounting Standards Update No. 2012-07

### > Software

**60-4**   [ For guidance on the effect on the timing of revenue recognition when vendor-specific objective evidence of fair value is established by management after the balance sheet date but before the financial statements are issued or are available to be issued (as discussed in Section <u>855-10-25</u>), see paragraphs <u>985-605-55-93 through 55-95</u>. TIS 5100, paragraph 38]

CONFIDENTIAL                                                                                      R-Greebel0000001587

## 65 Transition

### *General Note*

The Transition Section contains a description of the required transition provisions and a list of the related paragraphs that have been modified. This section will retain the transition content during the transition period. After the transition period, the transition content will be removed yet will be available in archived versions of the Section.

### *General*

**65-1**   Paragraph superseded on 12/15/2010 after the end of the transition period stated in Accounting Standards Update No. 2010-09, *Subsequent Events (Topic 855): Amendments to Certain Recognition and Disclosure Requirements*.

## 75 XBRL Elements

### *General Note*

This section contains a list of XBRL elements that reference paragraphs in this Subtopic. For additional details regarding changes to the development version of the US GAAP Financial Reporting Taxonomy, refer to the FASB taxonomy review and comment system on the FASB web site.

### *XBRL Links to Codification*

### Schedule of Subsequent Events [Table Text Block]

Element Name: *ScheduleOfSubsequentEventsTextBlock*

- 855 **Subsequent** Events>10 Overall>50 Disclosure>General, 50-2

### Subsequent Event Type [Axis]

Element Name: *SubsequentEventTypeAxis*

- 855 **Subsequent** Events>10 Overall>50 Disclosure>General, 50-2

### Subsequent Event Type [Domain]

Element Name: *SubsequentEventTypeDomain*

- 855 **Subsequent** Events>10 Overall>50 Disclosure>General, 50-2

### Subsequent Event [Table]

Element Name: *SubsequentEventTable*

- 855 **Subsequent** Events>10 Overall>50 Disclosure>General, 50-2

### Subsequent Event, Amount Inestimable

Element Name: *SubsequentEventAmountInestimable* (RevisionDate: 2011-08-14)

- 855 **Subsequent** Events>10 Overall>50 Disclosure>General, 50-2(b)

### Subsequent Event, Date

CONFIDENTIAL
R-Greebel0000001588

Element Name: *SubsequentEventsDate*

- 855 **Subsequent** Events>10 Overall>50 Disclosure>General, 50-2(a)

## Subsequent Event, Description

Element Name: *SubsequentEventDescription*

- 855 **Subsequent** Events>10 Overall>50 Disclosure>General, 50-2(a)

## Subsequent Event, Pro Forma Business Combinations or Disposals [Text Block]

Element Name: *SubsequentEventProFormaBusinessCombinations* (RevisionDate: 2012-11-01)

- 855 **Subsequent** Events>10 Overall>50 Disclosure>General, 50-3

# S00 Status

## *General Note*

The Status Section identifies changes to this Subtopic resulting from Accounting Standards Updates. The Section provides references to the affected Codification content and links to the related Accounting Standards Updates. Nonsubstantive changes for items such as editorial, link and similar corrections are included separately in Maintenance Updates.

### *General*

**S00-1**   The following table identifies the changes made to this Subtopic.

| Paragraph | Action | Accounting Standards Update | Date |
|---|---|---|---|
| 855-10-S99-2 | Amended | Accounting Standards Update No. 2010-04 | 01/15/2010 |

# S20 Glossary

## *General Note*

The Master Glossary contains all terms identified as glossary terms throughout the Codification. Clicking on any term in the Master Glossary will display where the term is used. The Master Glossary may contain identical terms with different definitions, some of which may not be appropriate for a particular Subtopic. For any particular Subtopic, users should only use the glossary terms included in the particular Subtopic Glossary Section (Section 20).

## Issuance of Financial Statements

See paragraph 855-10-S99-2, SEC Staff Announcement: Issuance of Financial Statements, for SEC Staff views on when financial statements are deemed to be issued.

# S25 Recognition

## *General Note*

The Recognition Section provides guidance on the required criteria, timing, and location (within the financial statements) for recording a particular item in the financial statements. Disclosure is not recognition.

### *General*

> Type I **Subsequent Events**

CONFIDENTIAL

R-Greebel0000001589

**S25-1**  [See paragraph 855-10-S99-2, SEC Staff Announcement: **Issuance of Financial Statements**, for SEC Staff views on the accounting for Type I **subsequent events**. EITF D-086, paragraph ]

### > Dividends Declared by the Subsidiary after the Balance Sheet Date

**S25-2**  [See paragraph 855-10-S99-1, SAB Topic 1.B.3, for SEC Staff views on the recognition of dividends declared after the balance sheet date. SAB TOPIC 1.B, paragraph 3 Q Response]

## S50 Disclosure

### General Note

The Disclosure Section provides guidance regarding the disclosure in the notes to financial statements. In some cases, disclosure may relate to disclosure on the face of the financial statements.

### General

#### > Dividends Declared by a Subsidiary After the Balance Sheet Date

**S50-1**  [See paragraph 855-10-S99-1, SAB Topic 1.B.3, for SEC Staff views on disclosure of dividends declared after the balance sheet date. SAB TOPIC 1.B, paragraph 3 Q]

## S99 SEC Materials

### General Note

As more fully described in the Notice to Constituents, the Codification includes selected SEC and SEC Staff content for reference by public companies. The Codification does not replace or affect how the SEC or SEC Staff issues or updates SEC content. SEC Staff content does not constitute Commission-approved rules or interpretations of the SEC.

### General

#### > SEC Staff Guidance

#### > > *Staff Accounting Bulletins*

> > > SAB Topic 1.B.3, Other Matters

**S99-1**  The following is the text of SAB Topic 1.B.3, Other Matters.

- [Question: What is the staff's position with respect to dividends declared by the subsidiary **subsequent** to the balance sheet date? SAB TOPIC 1.B, paragraph 3 Q]

- [Interpretive Response: The staff believes that such dividends either be given retroactive effect in the balance sheet with appropriate footnote disclosure, or reflected in a pro forma balance sheet. In addition, when the dividends are to be paid from the proceeds of the offering, the staff believes it is appropriate to include pro forma per share data (for the latest year and interim period only) giving effect to the number of shares whose proceeds were to be used to pay the dividend. A similar presentation is appropriate when dividends exceed earnings in the current year, even though the stated use of proceeds is other than for the payment of dividends. In these situations, pro forma per share data should give effect to the increase in the number of shares which, when multiplied by the offering price, would be sufficient to replace the capital in excess of earnings being withdrawn. SAB TOPIC 1.B, paragraph 3 Q Response]

#### > > *Announcements Made by SEC Staff at Emerging Issues Task Force (EITF) Meetings*

> > > SEC Staff Announcement: Issuance of Financial Statements

CONFIDENTIAL                                                                                                    R-Greebel0000001590

Case 1:15-cr-00637-KAM   Document 481-1   Filed 12/10/17   Page 16 of 48 PageID #: 12888

**S99-2**   The following is the text of SEC Staff Announcement: <u>**Issuance of Financial Statements**</u>.

- [In considering when financial statements have been issued, the SEC staff observed that Rules 10b-5 and 12b-20 under the Securities Exchange Act of 1934 and General Instruction C(3) to Form 10-K specify that financial statements must not be misleading as of the date they are filed with the Commission. For example, assume that a registrant widely distributes its financial statements but, before filing them with the Commission, the registrant or its auditor becomes aware of an **event** or transaction that existed at the date of the financial statements that causes those financial statements to be materially misleading. If a registrant does not amend those financial statements so that they are free of material misstatement or omissions when they are filed with the Commission, the registrant will be knowingly filing a false and misleading document. In addition, registrants are reminded of their responsibility to, at a minimum, disclose **subsequent events**, FN1 while independent auditors are reminded of their responsibility to assess **subsequent events** FN2 and evaluate the impact of the **events** or transactions on their audit report. FN3 EITF D-086, paragraph ]

  - [FN1 See AU Section 560, **Subsequent Events**, paragraphs 5 and 8 and Section <u>855-10-50</u>. EITF D-086, paragraph ]

  - [FN2 See AU 560 and AU Section 561, **Subsequent** Discovery of Facts Existing at Date of the Auditor's Report. EITF D-086, paragraph ]

  - [FN3 See AU Section 530, Dating of the Independent Auditor's Report, and AU 560, paragraph 9. EITF D-086, paragraph ]

- [A registrant and its independent auditor have responsibilities with regard to post-balance-sheet-date **subsequent events**, as well as the application of authoritative literature applicable to such **events**. See Topic <u>855</u> and AU 560, **Subsequent Events**, paragraph 3.EITF D-086, paragraph ]

- [Generally, the staff believes that financial statements are "issued" as of the date they are distributed for general use and reliance in a form and format that complies with generally accepted accounting principles (GAAP) and, in the case of annual financial statements, that contain an audit report that indicates that the auditors have complied with generally accepted auditing standards (GAAS) in completing their audit. Issuance of financial statements then would generally be the earlier of when the annual or quarterly financial statements are widely distributed to all shareholders and other financial statement users FN4 or filed with the Commission. Furthermore, the issuance of an earnings release does not constitute issuance of financial statements because the earnings release would not be in a form and format that complies with GAAP and GAAS. EITF D-086, paragraph ]

  - [FN4 Posting financial statements to a registrant's web site would be considered wide distribution to all shareholders and other financial statement users if the registrant uses its web site to disclose information to the public in a manner consistent with the requirements of Regulation FD. See the Commission's interpretive guidance in Exchange Act Release No. 58288 (Aug. 7, 2008). EITF D-086, paragraph ]

**Confidential and Proprietary - for Use Solely by Authorized Personnel**

This publication provides comprehensive guidance; however, it does not address all possible fact patterns, and the guidance is subject to change. Consult a Deloitte & Touche LLP professional regarding your specific issues and questions. Your feedback will help us improve the *FASB Accounting Standards Codification Manual*. Please <u>let us know</u> what you think.
Copyright © 2013 Deloitte Development LLC. All rights reserved.
FASB Accounting Standards Codification: Copyright © 2005 - 2013 by Financial Accounting Foundation, Norwalk, Connecticut

CONFIDENTIAL

R-Greebel0000001591

**From:** Martin Shkreli [Martin@retrophin.com]
**Sent:** Friday, August 23 2013 10:31:55 AM
**To:** Greebel, Evan L.
**Cc:** Marc Panoff
**Subject:** RE: Subsequent events - ASC 855-10

This is absurd – just ask PWC or someone – settling a lawsuit doesn't require restatements

---

**From:** Greebel, Evan L. [mailto:evan.greebel@kattenlaw.com]
**Sent:** Friday, August 23, 2013 10:31 AM
**To:** Martin Shkreli
**Subject:** RE: Subsequent events - ASC 855-10

Accounting literature does not use words like restate, rather it uses the phrase recognize vs non-recognize which means restate vs non restate. If the claim does not apply to a specific event it would qualify under 55-2 which does not require a restatement. However, a 55-2 event would require an update to the Subsequent Event footnote, which would require issue an 8-k under 4.2 (which is non-reliance on financial information). I had a senior person from Marcum (above Ed and David) on the phone with Marc and me and this is what he told us.


**EVAN L. GREEBEL**
Partner
**Katten Muchin Rosenman LLP**
575 Madison Avenue
New York, NY 10022-2585
(212) 940-6383
(212) 894-5883 (f)

**From:** Martin Shkreli [mailto:Martin@retrophin.com]
**Sent:** Friday, August 23, 2013 10:25 AM
**To:** Greebel, Evan L.
**Subject:** RE: Subsequent events - ASC 855-10

The word restate isn't even in this document. I don't see the relevance... you can recognize the subsequent event now as a P&L cost...

---

**From:** Greebel, Evan L. [mailto:evan.greebel@kattenlaw.com]
**Sent:** Friday, August 23, 2013 10:20 AM
**To:** Martin Shkreli
**Subject:** FW: Subsequent events - ASC 855-10

Marcum sent me the attached accounting release. Please Look at 55-1 on p. 7. It requires recognition of a subsequent event (ie a restatement) if the events for the litigation are tied to a specific event (ie the date of the merger) and the litigation (or threatened litigation) is settled after the balance sheet date, but before the financial statements are issued


**EVAN L. GREEBEL**
Partner
**Katten Muchin Rosenman LLP**
575 Madison Avenue
New York, NY 10022-2585
(212) 940-6383
(212) 894-5883 (f)

E. GREEBEL

DX-1266

KAT_0068591

BA_0040215

CONFIDENTIAL

R097396

**From:** Jain, Sunil [mailto:Sunil.Jain@marcumllp.com]
**Sent:** Thursday, August 08, 2013 11:09 AM
**To:** Greebel, Evan L.; Marc@retrophin.com
**Cc:** Bukzin, David; Giugliano, Greg; Hackert, Ed
**Subject:** Subsequent events - ASC 855-10

Evan/Marc,

As discussed, attached is the GAAP guidance with respect to subsequent events recognition and disclosures in the financial statements of an entity.

Thank you,

Sunil Jain



*Sunil Jain*
*Senior Manager*
Marcum LLP
750 Third Avenue
New York, NY 10017
P: (212) 485-5547
F: (212) 485-5501
Sunil.Jain@marcumllp.com



CONFIDENTIALITY NOTICE:
This message is intended only for the use of the individual or entity to which it is addressed, and may contain information that is privileged, confidential and exempt from disclosure under applicable law. If the reader of the message is not the intended recipient, or the employee or agent responsible for delivering the message to the intended recipient, you are hereby notified that any dissemination, distribution or copying of this communication is strictly prohibited. If you have received this communication in error, please notify us immediately by telephone at (631) 414-4000 or (212) 485-5500 and destroy this message.

IRS CIRCULAR 230 DISCLOSURE NOTICE:
To ensure compliance with requirements imposed by the IRS, we inform you that any U.S. federal tax advice contained in this email and/or its attachments , unless otherwise specifically stated, is not intended or written to be used, and cannot be used, for the purpose of (i) avoiding penalties under the Internal Revenue Code, or (ii) promoting, marketing, or recommending to another party any transaction or matter that is contained in or accompanying this document
============================================================
CIRCULAR 230 DISCLOSURE: Pursuant to Regulations Governing Practice Before the Internal Revenue
Service, any tax advice contained herein is not intended to be used and cannot be used
by a taxpayer for the purpose of avoiding tax penalties that may be imposed on the taxpayer.
============================================================
CONFIDENTIALITY NOTICE:
This electronic mail message and any attached files contain information intended for the exclusive
use of the individual or entity to whom it is addressed and may contain information that is
proprietary, privileged, confidential and/or exempt from disclosure under applicable law.  If you
are not the intended recipient, you are hereby notified that any viewing, copying, disclosure or
distribution of this information may be subject to legal restriction or sanction.  Please notify

KAT_0068592

CONFIDENTIAL                                                                      R097397

the sender, by electronic mail or telephone, of any unintended recipients and delete the original
message without making any copies.
```
============================================================
```
NOTIFICATION:  Katten Muchin Rosenman LLP is an Illinois limited liability partnership that has
elected to be governed by the Illinois Uniform Partnership Act (1997).
```
============================================================
```

KAT_0068593

BA_0040217

CONFIDENTIAL                                                                                      R097398

| | |
|---|---|
| **From:** | Greebel, Evan L. |
| **Sent:** | Wednesday, August 28 2013 10:29:53 AM |
| **To:** | Martin Shkreli |
| **Subject:** | RE: wiring instructions |
| **Attachments:** | Marshall Settlement and Release Agreement.doc |

attached-this is a version that should be used

do you want us to do anything about the ftc?

---

**From:** Martin Shkreli [Martin@retrophin.com]
**Sent:** Wednesday, August 28, 2013 9:16 AM
**To:** Greebel, Evan L.
**Subject:** FW: wiring instructions

Can you give me a copy of the marshall agreement?

---

**From:** Schuyler Marshall [mailto:smarshall@rosewd.com]
**Sent:** Tuesday, August 27, 2013 4:22 PM
**To:** Martin Shkreli
**Subject:** RE: wiring instructions

Let me know when the wire is sent and whether you want the release fedexed today.

---

**From:** Martin Shkreli [mailto:Martin@retrophin.com]
**Sent:** Tuesday, August 27, 2013 3:00 PM
**To:** Schuyler Marshall
**Subject:** RE: wiring instructions

My understanding is we will not even be recasting it – will be wiring the funds shortly.

---

**From:** Schuyler Marshall [mailto:smarshall@rosewd.com]
**Sent:** Tuesday, August 27, 2013 3:45 PM
**To:** Martin Shkreli
**Subject:** RE: wiring instructions

Where do we stand, Martin; is there any issue other than recasting the form of release as you described on Friday?

---

**From:** Martin Shkreli [mailto:Martin@retrophin.com]
**Sent:** Monday, August 26, 2013 5:26 PM
**To:** Schuyler Marshall
**Subject:** RE: wiring instructions

I will have news tomorrow on this outcome – I expect it to be positive

---

**From:** Babs Millward [mailto:bmillward@rosewd.com] **On Behalf Of** Schuyler Marshall
**Sent:** Monday, August 26, 2013 11:24 AM
**To:** Martin Shkreli
**Subject:** wiring instructions

E. GREEBEL

DX-1279

KAT_0065463

BA_0085334

CONFIDENTIAL

R140013

Wiring Instructions:

| | |
|---|---|
| Bank: | Citibank, New York |
| ABA: | 021000089 |
| For benefit of: | Morgan Stanley Smith Barney LLC |
| Beneficiary account: | 40611172 |
| For further credit to: | 048113409-128 |
| Account Name: | Schuyler B. Marshall IRA |

---

**From:** Martin Shkreli [mailto:Martin@retrophin.com]
**Sent:** Friday, August 23, 2013 12:34 PM
**To:** Schuyler Marshall
**Subject:** RE: RE: FW:

I will call you in a moment.

---

**From:** Schuyler Marshall [mailto:smarshall@rosewd.com]
**Sent:** Friday, August 23, 2013 1:32 PM
**To:** Martin Shkreli
**Subject:** RE: RE: FW:

Am here looking forward to your call, 214 849 9141. There should not be much to discuss, though I'm interested in RTRX's progress. We settled per your email of 5 31 and as documented by Evan in the release dated 6 17. You also said you would remove the legend from the stock. If you wire the $300K to my account at Morgan Stanley, I will fedex you the signed release, and trust you to issue the additional 6300 shares and remove the legend from both certificates as soon as practical. Does this work for you? Schuyler

---

**From:** Martin Shkreli [mailto:Martin@retrophin.com]
**Sent:** Wednesday, August 21, 2013 12:02 PM
**To:** Schuyler Marshall
**Subject:** Re: RE: FW:

In good ol North Carolina meeting with GSK and some psychiatrists (for the company, not my disturbed psyche). Friday would be ideal if you can spare it

Sent from my iPad

On Aug 21, 2013, at 1:00 PM, "Schuyler Marshall" <smarshall@rosewd.com> wrote:

> I'm here all day tomorrow, also this afternoon if you wish to call. Schuyler
>
> ---
>
> **From:** Martin Shkreli [mailto:Martin@retrophin.com]
> **Sent:** Wednesday, August 21, 2013 11:40 AM
> **To:** Schuyler Marshall
> **Cc:** Greebel, Evan L.
> **Subject:** Re: FW:
>
> Yes! Let us discuss... Are you around on Friday?
>
> Sent from my iPad

KAT_0065464

BA_0085335

CONFIDENTIAL

R140014

On Aug 21, 2013, at 10:20 AM, "Schuyler Marshall" <smarshall@rosewd.com> wrote:

In light of your successful Pipe placement on Aug 16 of $25M, may we now consummate our settlement agreement? Schuyler

---

**From:** Schuyler Marshall
**Sent:** Monday, August 12, 2013 8:53 AM
**To:** 'Greebel, Evan L.'; Martin Shkreli
**Subject:**

Are we now in a position to finalize the agreement we made re my IRA's MSMB investment? Schuyler

KAT_0065465

CONFIDENTIAL                                                                                           R140015

Katten Draft 8/28/13

# SETTLEMENT AND RELEASE AGREEMENT

THIS SETTLEMENT AND RELEASE AGREEMENT (the "**Agreement**") is made and entered into as of [_____], 2013 by and among Schuyler Marshall ("**Releasor**"), MARTIN SHKRELI ("**Shkreli**"), MSMB CAPITAL MANAGEMENT, LP ("**MSMB Capital LP**"), a Delaware limited partnership, MSMB CAPITAL MANAGEMENT LLC ("**MSMB Capital LLC**"), a Delaware limited liability company, MSMB HEALTHCARE LP ("**MSMB Healthcare**"), a Delaware limited partnership, MSMB HEALTHCARE INVESTORS LLC ("**MSMB Investors**"), a Delaware limited liability company, MSMB HEALTHCARE MANAGEMENT LLC ("**MSMB Management**" and, together with MSMB Capital LP, MSMB Capital LLC, MSMB Healthcare and MSMB Investors, the "**MSMB Entities**"), a Delaware limited liability company, and RETROPHIN, INC. ("**Retrophin**"), a Delaware corporation.  Releasor, Shkreli, the MSMB Entities and Retrophin are at times referred to collectively as the "Parties" or as "Party" in this Agreement.

**WHEREAS,** Shkreli is the managing member of MSMB Capital LLC, MSMB Investors and MSMB Management;

**WHEREAS,** MSMB Investors is the general partner of MSMB Healthcare;

**WHEREAS,** MSMB Capital LLC is the general partner of MSMB Capital LP;

**WHEREAS,** Shkreli is the President and Chief Executive Officer of Retrophin;

**WHEREAS,** Releasor previously received **THIRTY SEVEN THOUSAND EIGHT HUNDRED NINE** (37,809) shares (the "**Initial Distribution**") of common stock, par value $0.0001 per share (the "**Common Stock**") of Retrophin; and

**WHEREAS,** the Parties are entering into this Agreement in order to settle and compromise fully and finally any and all presently existing or future disputes and claims that Releasor may have against Shkreli, Retrophin, any of the MSMB Entities or their respective affiliates.

**NOW, THEREFORE,** in consideration of the foregoing and in further consideration of the covenants, representations and warranties contained herein and other good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, the Parties agree to bind themselves as follows:

1.  <u>Payment Terms</u>.  Retrophin (the "**Payor**") agree to deliver or cause to be delivered to Releasor the total amount of three hundred thousand dollars ($300,00) (the "**Cash Payment**") and Shkreli agrees to deliver or cause to be delivered to the Releasor the total amount of **Six Thousand Three Hundred (6,300)** shares of Common Stock (the "**Shares**" and collectively with the Cash Payment, the "**Payment Amount**") as full and final satisfaction for any and all claims, obligations, liabilities, promises, agreements, controversies, damages, actions, causes of action, suits, judgments, rights, demands, losses, debts, contracts, commitments or expenses of every kind and nature (collectively, "**Claims**"), including all costs, expenses and attorneys' fees related thereto, which Releasor now has, or which it may have against Shkreli, Retrophin or any MSMB Entity from the beginning of

1

KAT_0065466

CONFIDENTIAL

R140016

Katten Draft 8/28/13

time up to, through, and including the date of this Agreement.  The Releasor agrees that any interests that it may have in any of the MSMB Entities are immediately cancelled, that the Releasor is not entitled to any payments for such interests, that no amounts or distributions are owed or deemed to be owed for such interests and that Releasor has no further obligations in any of the MSMB Entities.

2.      Delivery of the Shares.  Shkreli, Retrophin and the MSMB Entities represent and warrant to Releasor that on the date of delivery of the Shares to Releasor, Releasor will receive good title to the Shares, fully paid and non-assessable.

3.      Releasor Representations.  Releasor hereby represents and warrants that the Initial Distribution and Shares were acquired or are being acquired solely for investment for Releasor's own account, not as a nominee or agent and not with a view to the resale or distribution of any part thereof, and Releasor has no present intention of selling, granting a participation in, or otherwise distributing the same.  Releasor understands that the Initial Distribution and the Shares have not been registered under the Securities Act of 1933, as amended (the "**Securities Act**") by reason of a specific exemption from the registration provisions of the Securities Act that depends upon, among other things, the bona fide nature of the investment intent and the accuracy of Releasor's representations as expressed herein. Releasor understands that the Shares are "restricted securities" under applicable U.S. federal and state securities laws and that, pursuant to these laws, Releasor must hold the Shares indefinitely unless they are registered with the Securities and Exchange Commission and qualified by state authorities, or an exemption from such registration and qualification requirements is available.  Releasor is an "accredited investor" as defined in Rule 501(a) of Regulation D promulgated under the Securities Act.

4.      Brokerage. The Parties represent and warrant to each other that they have not dealt with any broker or finder in connection with this Agreement or the transactions contemplated hereby, and no broker or any other person is entitled to receive any brokerage commission, finder's fee or similar compensation in connection with this agreement or the transactions contemplated hereby.  Each of the Parties shall indemnify and hold the other harmless from and against all liability, claim, loss, damage or expense, including reasonable attorneys' fees, pertaining to any broker, finder or other person with whom such party has dealt.

5.      Release.  In consideration of the delivery of the Payment Amount to Releasor, and based upon the mutual promises contained herein and other good and valuable consideration, Releasor, on his behalf and on behalf of all of his heirs, successors assigns, agents, legal representatives and personal representatives (collectively, the "**Releasor Parties**"), hereby fully and expressly, knowingly, voluntarily, and unconditionally releases, acquits and forever discharges Shkreli, Retrophin, each MSMB Entity and each of its or their respective officers, directors, shareholders, partners, members, managers, owners, employees, representatives, consultants, contractors, subcontractors, suppliers, attorneys, insurers, affiliates and affiliated corporations, partnerships and limited liability companies, subsidiaries, predecessors, successors, heirs, assigns, agents, and any other person, firm or corporation charged or chargeable with responsibility or liability (collectively, the "**Releasees**"), of any and all Claims that Releasor now has, or which it may have against the Releasees from the beginning of time up to, through, and including the date of this Agreement, or any claim of attorneys' fees, costs or expenses.  The Releasees shall have the benefit of, and the right to enforce, as intended third-party beneficiaries, the provisions of this Agreement.  Releasor, on behalf of itself and the Releasor Parties, understands and

2

KAT_0065467

CONFIDENTIAL

R140017

Katten Draft 8/28/13

acknowledges the significance and consequence of this release, including the specific release of unknown claims.  If the Releasor does not receive the Payment Amount this Release shall be *void ab initio* and of no further force and effect.

6.    <u>Voluntary Act</u>.  The Parties acknowledge, represent and agree, each with the other that they have read this Agreement and the documents referenced herein in their entirety, have consulted their respective attorneys concerning the same, and have signed the same as their respective free and voluntary act.

7.    <u>Authority</u>.  The individuals signing below on the part of the Parties warrant and represent that they are legally competent and have full authority to enter into this Agreement and to bind the Parties, and that each party has had the opportunity to discuss the terms of this Agreement with legal counsel prior to signing.

8.    <u>Entire Agreement</u>.  This Agreement represents the entire and final understanding between the Parties with respect to the subject matter hereof, and supersedes any and all prior or contemporaneous, oral or written understandings, negotiations or communications on behalf of the Parties.  This Agreement may not be altered, amended, modified or rescinded in any way except by written instrument duly executed by the Parties.  There are no representations, warranties, agreements, promises, contracts, arrangements, or understandings, verbal or written, between or among the Parties relating to the subject matter of this Agreement, which are not fully expressed in this Agreement.  The Parties acknowledge and agree that in executing this Agreement they have relied upon no representation, statement, promise, understanding, guaranty or inducement of any kind, except those expressly stated in this Agreement.

9.    <u>Agreement Product of Negotiation; No Drafter</u>.  The terms of this Agreement are the result of negotiation among the Parties.  Thus, the Parties agree that no Party shall be deemed the drafter of any provision of this Agreement and that the rules of construction to the effect that any ambiguities are to be resolved against the drafting party shall not be used in the interpretation of this Agreement.

10.   <u>Attorneys' Fees</u>.  Should any of the Parties retain the services of an attorney to enforce any of the terms of this Agreement, the prevailing party, in addition to all other rights and remedies hereunder or as provided by law, will be entitled to recover its reasonable attorney's fees, court costs, and other costs, charges, and expenses expended or incurred therein from the losing party, and the court or arbitrator(s) shall award such fees, costs and expenses to the prevailing party.

11.   <u>Governing Law; Arbitration; Waiver of Jury Trial</u>.  This Agreement shall be governed by, and construed and enforced in accordance with, the laws of the State of New York, without giving effect to the principles of conflicts of law thereof.  Any controversy, claim or dispute arising out of or relating to this Agreement or the breach thereof shall be settled solely and exclusively by binding arbitration in New York, New York administered by JAMS.  Such arbitration shall be conducted in accordance with the then prevailing JAMS Streamlined Arbitration Rules & Procedures, with the following exceptions to such rules if in conflict: (a) one arbitrator shall be chosen by JAMS; (b) each Party to the arbitration will pay an equal share of the expenses and fees of the arbitrator, together with other expenses of the arbitration incurred or approved by the arbitrator; and (c) arbitration may proceed

3

KAT_0065468

CONFIDENTIAL

R140018

Katten Draft 8/28/13

in the absence of any Party if written notice (pursuant to the JAMS' rules and regulations) of the proceedings has been given to such Party. Each Party shall bear its own attorneys fees and expenses. The Parties agree to abide by all decisions and awards rendered in such proceedings. Such decisions and awards rendered by the arbitrator shall be final and conclusive. All such controversies, claims or disputes shall be settled in this manner in lieu of any action at law or equity. Any court of competent jurisdiction may enter judgment upon the award. IF FOR ANY REASON THIS ARBITRATION CLAUSE BECOMES NOT APPLICABLE, THEN EACH PARTY, (i) TO THE FULLEST EXTENT PERMITTED BY APPLICABLE LAW, HEREBY IRREVOCABLY WAIVES ALL RIGHT TO TRIAL BY JURY AS TO ANY ISSUE RELATING HERETO IN ANY ACTION, PROCEEDING, OR COUNTERCLAIM ARISING OUT OF OR RELATING TO THIS AGREEMENT OR ANY OTHER MATTER INVOLVING THE PARTIES HERETO, AND (ii) SUBMITS TO THE EXCLUSIVE JURISDICTION AND VENUE OF THE FEDERAL OR STATE COURTS LOCATED IN NEW YORK COUNTY, NEW YORK AND EACH PARTY HERETO AGREES NOT TO INSTITUTE ANY SUCH ACTION OR PROCEEDING IN ANY OTHER COURT IN ANY OTHER JURISDICTION. EACH PARTY IRREVOCABLY AND UNCONDITIONALLY WAIVES ANY OBJECTION THAT IT MAY NOW OR HEREAFTER HAVE TO THE LAYING OF VENUE OF ANY ACTION OR PROCEEDING ARISING OUT OF OR RELATING TO THIS AGREEMENT IN THE COURTS REFERRED TO IN THIS SECTION 11.

12.    Severability.  If any provision of this Agreement is held to be illegal, invalid or unenforceable under present or future laws, such provision shall be fully severable, and this Agreement shall be construed and enforced as if such illegal, invalid or unenforceable provision had never comprised a part of this Agreement and the remaining provisions of this Agreement shall remain in full force and effect and shall not be affected by the illegal, invalid or unenforceable provision or by its severance from this Agreement.

13.    No Waiver.  No failure to exercise and no delay in exercising any right, power, or remedy hereunder shall impair any right, power or remedy which any party may have, nor shall any such delay be construed to be a waiver of any such right, power, or remedy, or any acquiescence in any breach or default hereunder, nor shall any waiver of any breach or default of any Party hereunder be deemed a waiver of any default or breach subsequently occurring. All rights and remedies granted to any Party hereunder shall remain in full force and effect notwithstanding any single or partial exercise of, or any discontinuance of, any action begun to enforce any such right or remedy. The rights and remedies specified herein are cumulative and not exclusive of each other or of any rights or remedies which any Party would otherwise have. Any waiver, permit, consent, or approval by any party of any breach or default hereunder must be in writing and shall be effective only to the extent set forth in such writing signed by the Party to be charged and only as to that specific instance.

14.    Survival and Benefits.  The warranties, representations and covenants contained in this Agreement shall survive the closing herein. This Agreement shall be binding upon and inure to the benefit of the Parties and, as the context permits, their respective successors, assigns, heirs, executors, administrators, personal representatives, beneficiaries and legal representatives.

15.    Post Execution Cooperation.  The Parties agree they will take any and all necessary steps, sign and execute any and all necessary documents, agreements or instruments which are required to

4

BA_0085340

KAT_0065469

CONFIDENTIAL

R140019

Katten Draft 8/28/13

implement or effectuate the terms and conditions of this Agreement. Each Party will refrain from taking any action, either expressly or impliedly, which would have the effect of prohibiting or hindering the performance of any other Party to this Agreement of its obligations herein.

16.   <u>Non-Exclusive Remedies</u>.  In the event of a breach of any provision of this Agreement, the Parties, in addition to and not in lieu of the remedies expressly provided in this Agreement, shall be entitled to exercise such remedies that exist at law or equity to enforce this Agreement, including but not limited to seeking specific performance.

17.   <u>Counterparts</u>.  This Agreement may be executed via facsimile or email and in any number of counterparts, all of which taken together shall constitute one agreement.  For purposes of enforceability, a copy of this fully executed Agreement shall have the same authority as an executed original document.

18.   <u>Headings.</u>  The headings in this Agreement are included only for convenience and reference, said headings are not to be used in construing this Agreement and to have no binding effect upon the Parties.

19.   <u>Confidentiality</u>.  This Agreement, and any other document relating or referring to the transaction reflected herein or the terms of the release herein, shall be deemed confidential and this confidentiality provision shall run in favor of the Parties and shall not be disclosed to any person or entity, except the Parties and their respective employees, attorneys, auditors and accountants who agree to treat this Agreement and its terms as confidential, as reasonably necessary to conduct the Parties' respective businesses.  The Parties (and their respective employees, attorneys and accountants) shall not disclose this Agreement or any other document relating or referring to the transactions set forth herein and/or the terms of the release to any person or entity except as necessary and required by law, regulation or if required to do so by court order, provided that the Party from whom disclosure is sought notifies the other Parties to this Agreement immediately in writing of any subpoena, demand or order for disclosure and provides the other Party with written notice as soon as practicable. However, nothing contained herein shall prohibit the Parties from making known the terms and conditions of this Agreement if the production of the same is required by a subpoena issued by a lawfully constituted judicial body having jurisdiction over the Party; however, the party receiving any such subpoena agrees to provide prompt written notice to the other party prior to producing the Agreement, and shall afford such other Party a period of no less than five business days (or such shorter time as may be expressly required by such subpoena) to object to such subpoena.

20.   <u>Non-Disparagement</u>.  It is understood and agreed that, following the execution of this Agreement, the Parties shall not make any derogatory, disparaging or critical statements about one another to third parties.


**[SIGNATURE PAGE FOLLOWS]**


5

KAT_0065470

CONFIDENTIAL

R140020

**IN WITNESS WHEREOF,** the Parties, having read the foregoing Agreement and fully understanding it, voluntarily execute this Agreement effective as of the date first above written.

_____          _____
Schuyler Marshall                           Martin Shkreli, Individually


**RETROPHIN, INC.**

By:_____
Name: Martin Shkreli
Title: Chief Executive Officer


**MSMB CAPITAL MANAGEMENT LLC**

By:_____
Name: Martin Shkreli
Title: Managing Member


**MSMB CAPITAL MANAGEMENT LP**
By MSMB Capital Management LLC, its general partner

By:_____
Name: Martin Shkreli
Title: Managing Member


**MSMB HEALTHCARE LP**
By MSMB Healthcare Investors LLC, its general partner

By:_____
Name: Martin Shkreli
Title: Managing Member


*[Signature Page to Settlement and Release Agreement]*

**MSMB   HEALTHCARE   INVESTORS
LLC**

By:_____
Name: Martin Shkreli
Title: Managing Member

**MSMB HEALTHCARE MANAGEMENT
LLC**

By:_____
Name: Martin Shkreli
Title: Managing Member

*[Signature Page to Settlement and Release Agreement]*

KAT_0065472

CONFIDENTIAL                                                                                      R140022

**From:**      Greebel, Evan L. <evan.greebel@kattenlaw.com>
**Sent:**      Wednesday, December 19, 2012 5:27 PM
**To:**        Marek Biestek
**Subject:**   RE: stock question

E. GREEBEL

**DX-1283**

There is no legend on it—restricted stock always has a legend on it

**EVAN L. GREEBEL**
Partner
**Katten Muchin Rosenman LLP**
575 Madison Avenue
New York, NY 10022-2585
(212) 940-6383
(212) 894-5883 (f)

**From:** Marek Biestek [mailto:Marek@msmbcapital.com]
**Sent:** Wednesday, December 19, 2012 12:27 PM
**To:** Greebel, Evan L.
**Subject:** RE: stock question

Do you have any documentation that you can provide that shows the fearnow stock is not restricted from trading?

**From:** Greebel, Evan L. [mailto:evan.greebel@kattenlaw.com]
**Sent:** Tuesday, December 18, 2012 4:39 PM
**To:** Marek Biestek
**Subject:** Re: stock question

Up to you

------------------------------------------------------------
CIRCULAR 230 DISCLOSURE: Pursuant to Regulations Governing Practice Before the Internal Revenue Service, any tax advice contained herein is not intended or written to be used and cannot be used by a taxpayer for the purpose of avoiding tax penalties that may be imposed on the taxpayer.

**From**: Marek Biestek [mailto:Marek@msmbcapital.com]
**Sent**: Tuesday, December 18, 2012 04:32 PM
**To**: Greebel, Evan L.
**Subject**: RE: stock question

But can it be sold for same price, ie $0.001 per share

**From:** Greebel, Evan L. [mailto:evan.greebel@kattenlaw.com]
**Sent:** Tuesday, December 18, 2012 4:28 PM
**To:** Marek Biestek
**Subject:** Re: stock question

You can sell the stock however and to whomever you want except to affiliates of the company

------------------------------------------------------------
CIRCULAR 230 DISCLOSURE: Pursuant to Regulations Governing Practice Before the Internal Revenue Service, any tax advice contained herein is not intended or written to be used and cannot be used by a taxpayer for the purpose of

R023497

avoiding tax penalties that may be imposed on the taxpayer.

---

**From**: Marek Biestek [mailto:Marek@msmbcapital.com]
**Sent**: Tuesday, December 18, 2012 03:32 PM
**To**: Greebel, Evan L.
**Subject**: stock question

Evan,

Can any of us sell RTRX stock privately for the same price we bought it for to someone else?

Thanks
MB

CONFIDENTIAL

.

| | |
|---|---|
| **From:** | Neal <neal@corneliusgolding.com> |
| **Sent:** | Saturday, November 23, 2013 10:46 AM |
| **To:** | Greebel, Evan L. |
| **Subject:** | Re: FW: RTRX Written Consent |

I agree with consent

Sent with the Samsung Galaxy Exhilarate™, an AT&T 4G LTE smartphone.

-------- Original message --------
Subject: Re: FW: RTRX Written Consent
From: "Greebel, Evan L." <evan.greebel@kattenlaw.com>
To: "'neal@corneliusgolding.com'" <neal@corneliusgolding.com>
CC:

Hi Neal. since you cannot fax or pdf, can you respond to this email and state that you consent to the resolutions (in addition to sending the signed consent), so we can effectuate the docs.

Thanks,
Evan

-----------------------------------------------------------
CIRCULAR 230 DISCLOSURE: Pursuant to Regulations Governing Practice Before the Internal Revenue Service, any tax advice contained herein is not intended or written to be used and cannot be used by a taxpayer for the purpose of avoiding tax penalties that may be imposed on the taxpayer.

**From:** neal@corneliusgolding.com [mailto:neal@corneliusgolding.com]
**Sent:** Saturday, November 23, 2013 08:50 AM Eastern Standard Time
**To:** Greebel, Evan L.
**Subject:** RE: FW: RTRX Written Consent

Evan,  will actually mail to you today and you should get it by  Tuesday at the latest

Neal Golding
11378 Old Harbour Rd
North Palm Beach Fla 33408
561-630-4697
201-924-1933(cell)

Neal Golding
100 Wilson Road
Apartment 54
Springfield, New Jersey 07081
973-218-6174
201-924-1933 (cell)

1

E. GREEBEL

**DX-1294**

CONFIDENTIAL

KMR_RTRX_050205
R-Greebel0000007453

-------- Original Message --------
Subject: Re: FW: RTRX Written Consent
From: "Greebel, Evan L." <evan.greebel@kattenlaw.com>
Date: Fri, November 22, 2013 6:10 pm
To: "'neal@corneliusgolding.com'" <neal@corneliusgolding.com>

Thanks Neal

--------------------------------------------------------
CIRCULAR 230 DISCLOSURE: Pursuant to Regulations Governing Practice Before the Internal Revenue Service,
any tax advice contained herein is not intended or written to be used and cannot be used by a taxpayer for the
purpose of avoiding tax penalties that may be imposed on the taxpayer.

**From**: neal@corneliusgolding.com [mailto:neal@corneliusgolding.com]
**Sent**: Friday, November 22, 2013 06:09 PM Eastern Standard Time
**To**: Greebel, Evan L.
**Subject**: RE: FW: RTRX Written Consent

will fax on Saturday let me know when you get it

Neal Golding
11378 Old Harbour Rd
North Palm Beach Fla 33408
561-630-4697
201-924-1933(cell)

Neal Golding
100 Wilson Road
Apartment 54
Springfield, New Jersey 07081
973-218-6174
201-924-1933 (cell)

-------- Original Message --------
Subject: FW: RTRX Written Consent
From: "Greebel, Evan L." <evan.greebel@kattenlaw.com>
Date: Fri, November 22, 2013 12:01 pm
To: "neal@corneliusgolding.com" <neal@corneliusgolding.com>

Hi Neal, attached is a written consent for Retrophin, Inc.  for the approval
of Martin's employment agreement and a Repurchase Agreement to be
entered into with Ladenburg Thalmann. Also, attached for your review are
copies of Martin's employment agreement and the agreement with
Ladenburg.

Please sign the Unanimous Written Consent and pdf it to me. If it is easier to fax, my fax number is
212-894-5883.

If you have any questions or comments, please call me at 212-940-6383.

Evan

CONFIDENTIAL

KMR_RTRX_050206
R-Greebel0000007454

**EVAN L. GREEBEL**
Partner
**Katten Muchin Rosenman LLP**
575 Madison Avenue
New York, NY 10022-2585
(212) 940-6383
(212) 894-5883 (f)

**From:** Greebel, Evan L.
**Sent:** Friday, November 22, 2013 12:00 PM
**To:** 'Sgrichardson2@aol.com'; 'saselage@sbcglobal.net'; 'neal@corenliusgolding.com';
'jsphealth@optonline.net'; Martin Shkreli
**Cc:** Marc Panoff
**Subject:** RTRX Written Consent

Gentlemen,

Attached is a written consent for Retrophin, Inc.  for the approval of
Martin's employment agreement and a Repurchase Agreement to be
entered into with Ladenburg Thalmann. Also, attached for your review are
copies of Martin's employment agreement and the agreement with
Ladenburg.

Please sign the Unanimous Written Consent and pdf it to me. If it is easier to fax, my fax number is
212-894-5883.

If you have any questions or comments, please call me at 212-940-6383.

Best regards,
Evan

**EVAN L. GREEBEL**
Partner
**Katten Muchin Rosenman LLP**
575 Madison Avenue
New York, NY 10022-2585
(212) 940-6383
(212) 894-5883 (f)

============================================================ CIRCULAR 230 DISCLOSURE:
Pursuant to Regulations Governing Practice Before the Internal Revenue Service, any tax
advice contained herein is not intended or written to be used and cannot be used by a
taxpayer for the purpose of avoiding tax penalties that may be imposed on the taxpayer.
============================================================ CONFIDENTIALITY NOTICE: This
electronic mail message and any attached files contain information intended for the
exclusive use of the individual or entity to whom it is addressed and may contain
information that is proprietary, privileged, confidential and/or exempt from disclosure
under applicable law. If you are not the intended recipient, you are hereby notified that
any viewing, copying, disclosure or distribution of this information may be subject to
legal restriction or sanction. Please notify the sender, by electronic mail or telephone,
of any unintended recipients and delete the original message without making any copies.
============================================================ NOTIFICATION: Katten Muchin
Rosenman LLP is an Illinois limited liability partnership that has elected to be governed
by the Illinois Uniform Partnership Act (1997).
============================================================

CONFIDENTIAL

KMR_RTRX_050207
R-Greebel0000007455

**From:**      Greebel, Evan L. <evan.greebel@kattenlaw.com>
**Sent:**      Monday, December 31, 2012 9:19 PM
**To:**        'martin@msmbcapital.com'
**Subject:**   Re:

Thats all that matters-bc barring that we would have a fd issue

---------------------------------------------------------

CIRCULAR 230 DISCLOSURE: Pursuant to Regulations Governing Practice Before the Internal Revenue Service, any tax advice contained herein is not intended or written to be used and cannot be used by a taxpayer for the purpose of avoiding tax penalties that may be imposed on the taxpayer.

----- Original Message -----
From: Martin Shkreli [mailto:Martin@msmbcapital.com]
Sent: Monday, December 31, 2012 04:16 PM
To: Greebel, Evan L.
Subject: RE:

Confi in place for everyone

-----Original Message-----
From: Greebel, Evan L. [mailto:evan.greebel@kattenlaw.com]
Sent: Monday, December 31, 2012 1:47 PM
To: Martin Shkreli
Subject:

Marek is askingme about procedures/rules for bringing people over the wall. He also asked what happens if a confi is not in place

---------------------------------------------------------

CIRCULAR 230 DISCLOSURE: Pursuant to Regulations Governing Practice Before the Internal Revenue Service, any tax advice contained herein is not intended or written to be used and cannot be used by a taxpayer for the purpose of avoiding tax penalties that may be imposed on the taxpayer.

E. GREEBEL

DX-1306

CONFIDENTIAL

R023204

| | |
|---|---|
| **From:** | Greebel, Evan L. |
| **Sent:** | Thursday, March 14, 2013 8:18 PM |
| **To:** | Clifford Brandeis (cbrandeis@zukermangore.com) |
| **Subject:** | Kevin Mulleady |

Mr. Brandeis,

I understand that Kevin Mulleady has been calling employees of Retrophin and that there may be some confusion.  When I spoke with Kevin last week, I explained that Retrophin was asking him to assign the remaining shares that he is entitled to from the Fearnow purchase to certain investors of Retrophin.  I apologize if I was not clear in my conversation with Kevin.  To clarify, Retrophin would like Kevin to surrender any claims that he has to receive additional shares from Troy Fearnow and Retrophin will facilitate such shares being transferred to certain investors in Retrophin.

Also, I understand that the Company is still not able to access the computer that Kevin used and as per my email from Monday we would like the relevant passwords to enable the Company to use such computers.

If you have any questions or would like to discuss either the assignment of stock or the computer issue, please call me at 212-940-6383.

Best regards,
Evan


**EVAN L. GREEBEL**
Partner
**Katten Muchin Rosenman LLP**
575 Madison Avenue
New York, NY 10022-2585
(212) 940-6383
(212) 894-5883 (f)

E. GREEBEL

DX-1307

CONFIDENTIAL

KMR_RTRX_022593
R019588

E. GREEBEL

DX-1315

**From:** Greebel, Evan L.
**Sent:** Friday, February 15 2013 1:15:17 PM
**To:** Martin Shkreli
**Subject:** RE: wire


Even better


**EVAN L. GREEBEL**
Partner
**Katten Muchin Rosenman LLP**
575 Madison Avenue
New York, NY 10022-2585
(212) 940-6383
(212) 894-5883 (f)
**From:** Martin Shkreli [mailto:Martin@msmbcapital.com]
**Sent:** Friday, February 15, 2013 1:14 PM
**To:** Greebel, Evan L.
**Subject:** RE: wire


been in close contact with them since
no need

---

**From:** Greebel, Evan L. [mailto:evan.greebel@kattenlaw.com]
**Sent:** Friday, February 15, 2013 1:11 PM
**To:** Martin Shkreli
**Subject:** RE: wire


You should send your bd an email/update when you get a chance


**EVAN L. GREEBEL**
Partner
**Katten Muchin Rosenman LLP**
575 Madison Avenue
New York, NY 10022-2585
(212) 940-6383
(212) 894-5883 (f)
**From:** Martin Shkreli [mailto:Martin@msmbcapital.com]
**Sent:** Friday, February 15, 2013 1:10 PM
**To:** Greebel, Evan L.
**Subject:** RE: wire


great

---

**From:** Greebel, Evan L. [mailto:evan.greebel@kattenlaw.com]
**Sent:** Friday, February 15, 2013 1:10 PM
**To:** Martin Shkreli
**Subject:** RE: wire


Thanks—100k a day works for me until we get there

Spoke to corey, he thinks the q will be pretty easy and he believes (and I agree) that we can do the s-1 simultaneous so we can

proper piggy-back (or close to it) the filings


**EVAN L. GREEBEL**
Partner
**Katten Muchin Rosenman LLP**
575 Madison Avenue
New York, NY 10022-2585
(212) 940-6383
(212) 894-5883 (f)

**From:** Martin Shkreli [mailto:Martin@msmbcapital.com]
**Sent:** Friday, February 15, 2013 1:08 PM
**To:** Greebel, Evan L.
**Subject:** wire

**Wire Money - Step 4 of 4**

Wire Scheduled in U.S. Dollars

**You've successfully submitted your wire request.** To check its status, click "See Wire Activity" in the "I'd like to…" section on this page.

| Wire To | Wire From | Wire Amount | Wire Date [?] | Transaction Number [?] |
|---|---|---|---|---|
| Katten Muchin Rosenman LLP(...3933) | BUSINESSSELECT CHKG(...3600) | $100,000.00 (USD) | 02/15/2013 | 4930716376 |

```
=========================================================
CIRCULAR 230 DISCLOSURE: Pursuant to Regulations Governing Practice Before the Internal Revenue
Service, any tax advice contained herein is not intended or written to be used and cannot be used
by a taxpayer for the purpose of avoiding tax penalties that may be imposed on the taxpayer.
=========================================================
CONFIDENTIALITY NOTICE:
This electronic mail message and any attached files contain information intended for the exclusive
use of the individual or entity to whom it is addressed and may contain information that is
proprietary, privileged, confidential and/or exempt from disclosure under applicable law.  If you
are not the intended recipient, you are hereby notified that any viewing, copying, disclosure or
distribution of this information may be subject to legal restriction or sanction.  Please notify
the sender, by electronic mail or telephone, of any unintended recipients and delete the original
message without making any copies.
=========================================================
NOTIFICATION:  Katten Muchin Rosenman LLP is an Illinois limited liability partnership that has
elected to be governed by the Illinois Uniform Partnership Act (1997).
=========================================================
```

KAT_0053373

E. GREEBEL

DX-1316

| | |
|---|---|
| **From:** | Martin Shkreli [Martin@retrophin.com] |
| **Sent:** | Saturday, August 24 2013 8:43:17 PM |
| **To:** | Greebel, Evan L.; Marc Panoff |
| **Cc:** | Goldstein, Doron S |
| **Subject:** | RE: Revised Brain Canada Agmt |

I'm somewhat okay with it. They are putting up the funds as a government entity and its common for NIH to "charge" a fee. A big reason for this collaboration is to get closer to Sick Kids and I don't think we want to be seen as a huge pain in the ass. Ultimately I'll let Panoff decide if it's appropriate or not. Either way, send it over to Astrid. You don't have to run everything by me first – otherwise things get deadlocked. I'm better off blaming you after if you made a mistake…

**From:** Greebel, Evan L. [mailto:evan.greebel@kattenlaw.com]
**Sent:** Friday, August 23, 2013 9:32 AM
**To:** Martin Shkreli; Marc Panoff
**Cc:** Goldstein, Doron S
**Subject:** Revised Brain Canada Agmt

Attached is a revised draft of the Brain Canada Agreement and a marked copy indicating our proposed changes. One question, they are charging a 10% administrative fee which is being deducted from the grant. It is not clear whether RTRX is paying pro rata 10% (ie 5%) or the full amount. Either way, we do not believe it is appropriate and we marked it in the end of Section 4

**EVAN L. GREEBEL**
Partner
**Katten Muchin Rosenman LLP**
575 Madison Avenue
New York, NY 10022-2585
(212) 940-6383
(212) 894-5883 (f)

=========================================================
CIRCULAR 230 DISCLOSURE: Pursuant to Regulations Governing Practice Before the Internal Revenue Service, any tax advice contained herein is not intended or written to be used and cannot be used by a taxpayer for the purpose of avoiding tax penalties that may be imposed on the taxpayer.
=========================================================
CONFIDENTIALITY NOTICE:
This electronic mail message and any attached files contain information intended for the exclusive use of the individual or entity to whom it is addressed and may contain information that is proprietary, privileged, confidential and/or exempt from disclosure under applicable law.  If you are not the intended recipient, you are hereby notified that any viewing, copying, disclosure or distribution of this information may be subject to legal restriction or sanction.  Please notify the sender, by electronic mail or telephone, of any unintended recipients and delete the original message without making any copies.
=========================================================
NOTIFICATION:  Katten Muchin Rosenman LLP is an Illinois limited liability partnership that has elected to be governed by the Illinois Uniform Partnership Act (1997).
=========================================================

Message

| | |
|---|---|
| **From**: | Marc Panoff [Marc@retrophin.com] |
| **Sent**: | 7/24/2013 11:13:03 |
| **To**: | Greebel, Evan L. [/O=KMZ/OU=NYC Mail-Administrative Group/cn=Recipients/cn=egreebel] |
| **Subject**: | Settlement disclosure |

Evan,

We are going to have to disclose the settlement amounts separately in the accrued expense footnote and the MD&A.  I need some proposed language specifically for MD&A.  "SG&A expenses included approximately $2 million related to settlements reached with shareholders of Retrophin and investors of related parties."

E. GREEBEL

DX-1318

| | |
|---|---|
| **From:** | "Greebel, Evan L." <evan.greebel@kattenlaw.com> |
| **Sent:** | Monday, January 28, 2013 10:52 AM |
| **To:** | "rontilles@gmail.com" <rontilles@gmail.com> |
| **Subject:** | RE: Harley Lippman |

He could not have invested in series A preferred on that day. Retrophin Inc was not selling Series A Preferred as they has already done the merger. H would have to invest in to DGTE

**EVAN L. GREEBEL**
Partner
**Katten Muchin Rosenman LLP**
575 Madison Avenue

New York, NY 10022-2585
(212) 940-6383

(212) 894-5883 (f)

---

**From:** rontilles@gmail.com [mailto:rontilles@gmail.com]
**Sent:** Monday, January 28, 2013 10:48 AM
**To:** Greebel, Evan L.
**Subject:** Re: Harley Lippman

Dec 18th 2012...see agreement

Sent via BlackBerry from T-Mobile

---

**From:** "Greebel, Evan L." <evan.greebel@kattenlaw.com>

**Date:** Mon, 28 Jan 2013 15:45:24 +0000

**To:** rontilles@gmail.com<rontilles@gmail.com>

**Subject:** RE: Harley Lippman

What day?

**EVAN L. GREEBEL**
Partner
**Katten Muchin Rosenman LLP**
575 Madison Avenue

E. GREEBEL

DX-1319

exhibitsticker.com

New York, NY 10022-2585
(212) 940-6383

(212) 894-5883 (f)

---

**From:** rontilles@gmail.com [mailto:rontilles@gmail.com]
**Sent:** Monday, January 28, 2013 10:45 AM
**To:** Greebel, Evan L.
**Subject:** Re: Harley Lippman


100k

Sent via BlackBerry from T-Mobile

---

**From:** "Greebel, Evan L." <evan.greebel@kattenlaw.com>

**Date:** Mon, 28 Jan 2013 15:43:48 +0000

**To:** Ron Tilles (rontilles@gmail.com)<rontilles@gmail.com>

**Subject:** FW: Harley Lippman


Ron, what day did he invest?



**EVAN L. GREEBEL**
Partner
**Katten Muchin Rosenman LLP**
575 Madison Avenue

New York, NY 10022-2585
(212) 940-6383

(212) 894-5883 (f)

---

**From:** Michael M. Smith [mailto:michael@msmbcapital.com]
**Sent:** Monday, January 28, 2013 10:35 AM
**To:** Greebel, Evan L.; Martin Shkreli; rontilles@gmail.com
**Subject:** FW: Harley Lippman


Hi Evan,


Attached is Harley Lippman's sub doc. He was in the last round of financing, but never received his shares. I believe he's owed 28,000 shares, but the transfer agent doesn't have him in the book.  If you need more information, you can ask Ron.

Best,

Mike

**From:** Ron Tilles [mailto:rontilles@gmail.com]
**Sent:** Thursday, January 17, 2013 2:19 PM
**To:** Martin Shkreli
**Cc:** Michael M. Smith
**Subject:** Fwd: Harley Lippman

Hi Ron,

Hope you are well. Per Glenn, please find the attached.

Best,

**Gabby X Angel** | Assistant to Harley Lippman and Glenn Klein | **Genesis10** | gangel@genesis10.com | office: 212-223-6820

========================================================

CIRCULAR 230 DISCLOSURE: Pursuant to Regulations Governing Practice Before the Internal Revenue

Service, any tax advice contained herein is not intended or written to be used and cannot be used

by a taxpayer for the purpose of avoiding tax penalties that may be imposed on the taxpayer.

========================================================

CONFIDENTIALITY NOTICE:

This electronic mail message and any attached files contain information intended for the exclusive

use of the individual or entity to whom it is addressed and may contain information that is

proprietary, privileged, confidential and/or exempt from disclosure under applicable law.  If you

are not the intended recipient, you are hereby notified that any viewing, copying, disclosure or

distribution of this information may be subject to legal restriction or sanction.  Please notify the sender, by electronic mail or telephone, of any unintended recipients and delete the original message without making any copies.

======================================================

NOTIFICATION:  Katten Muchin Rosenman LLP is an Illinois limited liability partnership that has elected to be governed by the Illinois Uniform Partnership Act (1997).

======================================================

TILLES-EDNY0000607

**From:**     Greebel, Evan L. [evan.greebel@kattenlaw.com]
**Sent:**     Saturday, January 26, 2013 4:50 PM
**To:**       'martin@msmbcapital.com'
**Subject:**  Re: Re:

Oh, then the stock has to come from you-i thought he was a consultant

---------------------------------------------------------
CIRCULAR 230 DISCLOSURE: Pursuant to Regulations Governing Practice Before the Internal Revenue Service, any tax advice contained herein is not intended or written to be used and cannot be used by a taxpayer for the purpose of avoiding tax penalties that may be imposed on the taxpayer.

----- Original Message -----
From: Martin Shkreli [mailto:Martin@msmbcapital.com]
Sent: Saturday, January 26, 2013 11:49 AM
To: Greebel, Evan L.
Subject: RE: Re:

there was never an agreement
it was a sweetner from me to him

-----Original Message-----
From: Greebel, Evan L. [mailto:evan.greebel@kattenlaw.com]
Sent: Saturday, January 26, 2013 11:48 AM
To: Martin Shkreli
Subject: Re:

Was the agreement b/w tom and retrophin or was this a "sweetner" from you? If the latter than it cant come from retrophin

---------------------------------------------------------
CIRCULAR 230 DISCLOSURE: Pursuant to Regulations Governing Practice Before the Internal Revenue Service, any tax advice contained herein is not intended or written to be used and cannot be used by a taxpayer for the purpose of avoiding tax penalties that may be imposed on the taxpayer.

----- Original Message -----
From: Martin Shkreli [mailto:Martin@msmbcapital.com]
Sent: Saturday, January 26, 2013 11:46 AM
To: Greebel, Evan L.
Subject: RE:

great - let's do that

-----Original Message-----
From: Greebel, Evan L. [mailto:evan.greebel@kattenlaw.com]
Sent: Saturday, January 26, 2013 9:47 AM
To: Martin Shkreli
Subject:

Why cant retrophin/dgte issue the stock to koestler? It is a contractual liability and id let them issue it now

E. GREEBEL

DX-5940

CONFIDENTIAL

R023205

---------------------------------------------------------
CIRCULAR 230 DISCLOSURE: Pursuant to Regulations Governing Practice Before the Internal Revenue Service, any tax advice contained herein is not intended or written to be used and cannot be used by a taxpayer for the purpose of avoiding tax penalties that may be imposed on the taxpayer.

2

R023206

| | |
|---|---|
| **From:** | Greebel, Evan L. [evan.greebel@kattenlaw.com] |
| **Sent:** | Wednesday, September 04, 2013 5:11 PM |
| **To:** | Marc Panoff |
| **Subject:** | FW: Telephonic Board Meeting Agenda 9-6-2013 |
| **Attachments:** | Telephonic Board Meeting Agenda 9-6-2013.doc |

Please see comments


**EVAN L. GREEBEL**
Partner
**Katten Muchin Rosenman LLP**
575 Madison Avenue
New York, NY 10022-2585
(212) 940-6383
(212) 894-5883 (f)

**From:** Marc Panoff [mailto:Marc@retrophin.com]
**Sent:** Wednesday, September 04, 2013 10:33 AM
**To:** Greebel, Evan L.
**Subject:** Telephonic Board Meeting Agenda 9-6-2013


```
==========================================================
CIRCULAR 230 DISCLOSURE: Pursuant to Regulations Governing Practice Before the Internal
Revenue
Service, any tax advice contained herein is not intended or written to be used and cannot
be used
by a taxpayer for the purpose of avoiding tax penalties that may be imposed on the
taxpayer.
==========================================================
CONFIDENTIALITY NOTICE:
This electronic mail message and any attached files contain information intended for the
exclusive
use of the individual or entity to whom it is addressed and may contain information that
is
proprietary, privileged, confidential and/or exempt from disclosure under applicable law.
If you
are not the intended recipient, you are hereby notified that any viewing, copying,
disclosure or
distribution of this information may be subject to legal restriction or sanction.  Please
notify
the sender, by electronic mail or telephone, of any unintended recipients and delete the
original
message without making any copies.
==========================================================
NOTIFICATION:  Katten Muchin Rosenman LLP is an Illinois limited liability partnership
that has
elected to be governed by the Illinois Uniform Partnership Act (1997).
==========================================================
```

E. GREEBEL

DX-8207

1

R023467

&̶ RETROPHIN, INC

**TELEPHONIC MEETING OF THE BOARD OF DIRECTORS**

**AGENDA**

**[FRIDAY, SEPTEMBER 6, 2013]**

**[3:00 P.M. New York Time]**

| Agenda Item | Dial-in:  917-962-0650 / Conference Code: 877380 | Exhibit |
|---|---|---|
| 1. | Call meeting to order | |
| 2. | Review and approve amendment to 2012 10K and 10Q for the quarter ended March 31, 2013 | A & B |
| 3. | Review Marcum LLP audit communication letter for June 30, 2013 quarterly review | C |
| 4. | Review and approval of 10Q for the quarter ended June 30, 2013 | D |
| 5. | Review and approval of Andrew Vaino's promotion to Chief Scientific Officer | E |
| 6. | Review and approval of stock option grants to new employees | F |
| 7. | Approval of Cornelius Golding and Dr. Jeff Paley's appointment to The Board | |
| 8. | Approval of Compensation Advisory Partners compensation benchmarking proposal | G |
| 9. | Review and approve Retrophin Insider Trading Policy and Code of Business Conduct and Ethics | H & I |
| 10. | Approve retaining Al Geller, Ken Banta [and Darren Blanton] as Consultants | |
| 11. | Review and approve Indemnification Agreement for Directors and Officers | J |
| 12. | Discuss status of Filing of S1 | |
| 13. | Management update | |
| 14̶1̶. | Other business | |
| 15̶2̶. | Adjournment | |

CONFIDENTIAL

R023468