**GIBSON DUNN**

Gibson, Dunn & Crutcher LLP

555 Mission Street
San Francisco, CA 94105-0921
Tel 415.393.8200
www.gibsondunn.com

Winston Y. Chan
Direct: +1 415.393.8362
Fax: +1 415.374.8460
WChan@gibsondunn.com

December 11, 2017

VIA ECF

The Honorable Kiyo A. Matsumoto
United States District Court Judge
United States District Court for the Eastern District of New York
225 Cadman Plaza East
Brooklyn, NY 11201

Re:   *United States v. Greebel*, S1 15 Cr. 637 (KAM)

Dear Judge Matsumoto:

Last Friday evening, Your Honor invited the parties to notify the Court if the draft jury instructions issued on December 8, 2017, "commit[] legal error by stating something in some way that the parties would like me to change." Tr. at 8822. We write to object to the inclusion of language relating to an attorney's purported duty to disclose and the overly narrow definition of affiliate. *See* Dkt. No. 478 at 46 & n.3, 61, 69–70. These instructions would constitute clear legal error by setting forth incorrect legal standards, and would thus prejudice Mr. Greebel's right to a fair trial.[1]

**The Draft Instructions Erroneously Creates a Non-Existent Attorney Duty to Disclose**

The Court's draft instructions read, in pertinent part:

> A duty to disclose material facts may also arise in the context of a fiduciary relationship, such as the attorney-client relationship. As a result of this relationship, an attorney owes his client a duty of disclosure, which means that the attorney has a duty to give his client information known to the attorney which is relevant to the affairs entrusted to him and that the client would desire to have. This duty exists if the attorney knows facts which, in view of his relationship with the client, the attorney knows may affect the desires of his client as to his own conduct or the conduct of the client or another agent.

---

[1] Mr. Greebel preserves all of his remaining objections to the Court's proposed instructions, but does not detail them here as per the Court's instructions.

Beijing • Brussels • Century City • Dallas • Denver • Dubai • Frankfurt • Hong Kong • Houston • London • Los Angeles • Munich
New York • Orange County • Palo Alto • Paris • San Francisco • São Paulo • Singapore • Washington, D.C.

*Id.* at 46; *see also id.* at 61 ("For a statement to be false because it conceals or omits material information, there must be a duty to disclose such information. As I have previously instructed you, this duty may arise because of a relationship, such as a fiduciary relationship . . . ."). This breathtakingly sweeping language was invented and proposed by the government without citation to any direct precedent.

As an initial matter, the draft instructions state that a duty to disclose may "arise in the context of an fiduciary relationship, such as the attorney-client relationship." Yet the attorney-client relationship is a "unique" one. *See, e.g.*, *In re Cooperman*, 83 N.Y.2d 465, 471 (1994). Specifically, an attorney's duties "to deal fairly, honestly and with undivided loyalty superimposes onto the attorney-client relationship a set of special and unique duties, including maintaining confidentiality, avoiding conflicts of interest, operating competently, safeguarding client property and honoring the clients' interests over the lawyer's." *Id.* (citation omitted). Nowhere, however, does the law impose on attorneys a duty to disclose, much less the broad duty envisioned by the government.

In fact, the specific "duty to disclose" language proposed by the government and incorporated in the Court's draft instructions is derived from authorities citing general agency principles, not the law of fiduciaries. *See, e.g.*, Dkt. 460-1 at 12 n.1 (government's November 28, 2017 Requests to Charge) (citing, *inter alia*, *Evvtex Co. v. Hartley Cooper Assocs. Ltd.*, 102 F.3d 1237, 1332 (2d Cir. 1996); Restatement (Second) of Agency § 381 (1958)). Yet lawyers are no ordinary agents. The sole authority cited in the Court's draft instructions even acknowledges this. Specifically, *C.I.R. v. Banks* provides *in dicta* that "[e]ven where the attorney exercises independent judgment without supervision by, or consultation with, the client, the attorney, as an agent, is obligated to act solely on behalf of, and for the exclusive benefit of, the client." 543 U.S. 426, 436 (2005).[2] However, *Banks* is silent on a lawyer's duty to disclose. In fact, the opinion recognizes what distinguishes an attorney from other agents: An attorney "exercises independent judgment without supervision by, or consultation with, [the] client." *Id.* at 436. By exercising that judgment independently, there are necessarily circumstances in which an attorney properly acts before consulting a client, rather than act in accordance with the proposed instructions by disclosing any and all information "which, in view of his relationship with the client, the attorney knows may affect the desires of his client." Dkt. No. 478 at 46; *see also id.* at 61.

---

[2]   *Banks* considers a narrow (and wholly inapplicable) question: whether, for purposes of income tax treatment of an attorney's contingency fees from litigation awards, the attorney's expertise in bringing a claim rose to such a level that the attorney controlled an income-generating asset for tax purposes. *Id.* at 435.

**GIBSON DUNN**

December 11, 2017
Page 3

Moreover, although the government relies on the Restatement of Agency,[3] lawyers are subject to a *different* Restatement that addresses the special dimensions of an attorney's role. The Restatement (Third) of the Law Governing Lawyers (the "Restatement on Lawyers") reflects that the extensive disclosure obligations the government seeks to impose on lawyers like Mr. Greebel are neither supported by law nor feasible. For example, the Restatement on Lawyers provides:

- A lawyer is free to "take any lawful measure within the scope of representation that is reasonably calculated to advance a client's objectives as defined by the client." *Id.* § 21(3).

- "Legal representation is to be conducted to advance the client's objectives, but *the lawyer typically has knowledge and skill that the client lacks and often makes or implements decisions in the client's absence*." *Id.* § 20, cmt. b (emphasis added). Accordingly, while the Restatement suggests a lawyer should "keep a client reasonably informed about [a] matter," "consult with a client to a reasonable extent concerning decisions to be made by the lawyer," and "promptly comply with a client's reasonable requests for information," it does not require a lawyer's disclosure of all information a client might like to know. *Id.* § 20.

- "[A] client may ratify an act of a lawyer that was not previously authorized." *Id.* § 21(4). By allowing clients to ratify attorneys' actions after the fact, the Restatement tacitly acknowledges that attorneys need not do what the Court's proposed instruction dictates, that is, disclose all "information known to the attorney which is relevant to the affairs entrusted to him and that the client would desire to have."

---

[3] The current Restatement of Agency does not support the draft instruction either. Under the Restatement (Third) of Agency, an agent has a more limited duty to "use reasonable efforts to provide the principal with facts that the agent knows, has reason to know, or should know when (1) subject to any manifestation by the principal, the agent knows or has reason to know that the principal would wish to have the facts or the facts are material to the agent's duties to the principal." Restatement (Third) of Agency § 8.11 (2006). The comments to the Restatement make clear that "[i]f an agent lacks notice that a principal wishes to receive advice or information beyond the information customarily provided by an agent in a particular position, the agent is not subject to a duty to provide such advice or information." *Id.*, cmt c (emphasis added). Neither the government nor the Court's draft instruction addresses what, if any, notice Mr. Greebel received that his client wished to receive all facts "relevant to the affairs entrusted to him and that the client would desire to have."

**GIBSON DUNN**

December 11, 2017
Page 4

The Restatement on Lawyers does not suggest that lawyers have any duty to disclose particular information to their clients. Instead, their duties are defined as including "proceed[ing] in a manner reasonably calculated to advance a client's lawful objectives;" "act[ing] with reasonable competence and diligence;" "comply[ing] with obligations concerning the client's confidences and property;" and "fulfill[ing] valid contractual obligations to the client." *Id.* § 16.

The ethics rules governing New York lawyers—the New York Rules of Professional Conduct—do not speak in any way about a duty to disclose, much less a sweeping duty to disclose all relevant information to a client. Instead, pursuant to Rule 1.13(b) of the New York Rules of Professional Conduct:

> [i]f a lawyer for an organization knows that an officer, employee, or other person associated with the organization is engaged in action or intends to act or refuses to act in a matter related to the representation that (i) is a violation of a legal obligation to the organization or a violation of law that reasonably might be imputed to the organization, and (ii) is likely to result in substantial injury to the organization, then *the lawyer shall proceed as is reasonably necessary in the best interest of the organization*.

22 N.Y.C.R.R. § 1200.13(b) (emphasis added). Additionally, like the Restatement on Lawyers, Rule 1.13(b)(2) contemplates that a lawyer may "refer[] the matter to a higher authority in the organization," but in no way obligates the lawyer to do so (or take any other specific action). *Id.*

Throughout this trial, the government has insinuated repeatedly that Mr. Greebel did not adequately disclose certain information to Retrophin's board of directors, despite disclosure of the same information to Retrophin's management or disclosure to the board by individuals other than Mr. Greebel personally (e.g., the CFO, auditors). Against this backdrop, the duty to disclose language in the Court's draft instructions erroneously suggests to the jury that Mr. Greebel's client was the board itself. Such a conclusion is contrary to long-established Second Circuit case law.

"It is well-settled that outside counsel to a corporation represents the corporation, not its shareholders or other constituents." *Murray v. Metro. Life Ins. Co.*, 583 F.3d 173, 177 (2d Cir. 2009) (citing *Evans v. Artek Sys. Corp.*, 715 F.2d 788, 792 (2d Cir. 1983) ("A 'corporate attorney'—whether an in-house lawyer or a law firm that serves as counsel to the company—owes a duty to act in accordance with the interests of the corporate entity itself. [The] client is the corporation.")); *see also Murray*, 583 F.3d at 177 (stating that this rule is "entirely consonant" with Rule 1.13 of the New York Rules of Professional Conduct and the Restatement on Lawyers § 96 cmt. b).

December 11, 2017
Page 5

Here, consistent with the well-settled case law, the executed Terms of Engagement between Mr. Greebel's law firm, Katten Muchin Rosenman LLP, and Retrophin make clear that "[i]ndividuals or entities that are related to or affiliated with [Retrophin], such as partners, *officers, directors*, stockholders, parent companies, related companies, or family members, are not clients, unless [Katten] otherwise agree[s] in writing." GX 120-4 at R91189 (emphasis added).

Moreover, in recognition of the fact that a corporate constituent of Retrophin would necessarily need to be responsible for communications with Mr. Greebel and other Katten lawyers, paragraph 3 of the Terms of Engagement obligates Retrophin to "designate one or more *persons* to give [Katten] instructions and authority to receive [Katten's] requests and inquiries." *Id* (emphasis added). There can be no question that Mr. Shkreli was that person throughout the time period at issue here. Nor has the government cited any authority—and there is none—that an attorney must consult with every single constituent member of the corporate client rather than just one. The ramifications of such a requirement would make it impossible for corporate counsel to carry out his or her responsibilities.

Finally, the duty to disclose language in the draft instructions is additionally erroneous with respect to the conspiracy to commit securities fraud charge, where the purported victims are Retrophin's shareholders, not Retrophin. Thus, even if a lawyer's duties to his client include a duty to disclose—which they do not—that duty runs to his client, not the investing public, and such a duty should have no bearing on a prosecution for conspiracy to commit securities fraud involving alleged omissions to shareholders. *See, e.g., S.E.C. v. Dorozhko*, 574 F.3d 42, 47 (2d Cir. 2009) (discussing *Chiarella v. United States*, 445 U.S. 222 (1980), and finding there is no general duty to disclose material, non-public information to the market). As the Supreme Court reiterated in *Skilling v. United States*, "ambiguity concerning the ambit of criminal statutes should be resolved in favor of lenity." 561 U.S. 358, 410 (2010) (citation omitted).

**The Definition of Affiliate Ignores Case Law and Risks Jury Confusion**

The Court's draft instructions define an "affiliate of an issuer [as] a person that directly, or indirectly through one or more intermediaries, controls, or is controlled by, or is under common control with, such issuer." Dkt. No. 478 at 73. This language does track the definition of "affiliate," which is not defined in either the Securities Act or the Exchange Act, as it appears in Rule 144. *See* 17 C.F.R. § 230.144.

In its investor publication on Rule 144, the SEC illustrates the meaning of "affiliate" by reference to certain categories of individuals: "An affiliate is a person, *such as an executive officer, a director or large shareholder*, in a relationship of control with the issuer." *Rule 144: Selling Restricted and Control Securities*, SEC.gov (Jan. 16, 2013) (emphasis added),

**GIBSON DUNN**

December 11, 2017
Page 6

https://www.sec.gov/reportspubs/investor-publications/investorpubsrule144htm.html. The Second Circuit has echoed that language, stating "[a] control person, such as an officer, director, or controlling shareholder, is an affiliate of an issuer and is treated as an issuer when there is a distribution of securities." *S.E.C. v. Cavanagh*, 155 F.3d 129, 134 (2d Cir. 1998) ("*Cavanagh II*").

The Second Circuit has relied on *Cavanagh II* to define the term "affiliate" by reference to officers, directors, and large shareholders. For example, in *S.E.C. v. Cavanagh*, 445 F.3d 105, 111 (2d Cir. 2006) ("*Cavanagh IV*"), the SEC brought a civil enforcement action against the defendants for operating a "pump-and-dump" scheme following a reverse merger, and the court granted summary judgment to the SEC. Two defendants appealed on the ground that they were not affiliates at the time of the transactions at issue. *Id.* Although the Circuit rejected this argument, it took for granted that the term "affiliates" comprises "major shareholders, officers, and directors," and did not look to other indicia of "affiliate" status. *Id.* at 111.[4] In a similar vein, other district courts have explained, "'Affiliates are most often officers, directors, or majority shareholders—people who exercise control and influence over the company's policies or finances.'" *Trustcash Holdings, Inc. v. Moss*, 668 F. Supp. 2d 650, 660 (D.N.J. 2009) (quoting *S.E.C. v. Freiberg*, No. 05–cv–233, 2007 WL 2692041, at *15 (D. Utah Sept. 12, 2007)).

Here, the Court's proposed definition of "affiliate" is erroneous because it is incomplete under Second Circuit case law and risks misleading the jury into painting who is an "affiliate" with too broad a brush. Pursuant to the definition of "affiliate" described in *Cavanagh II* and *Cavanagh IV*, the instruction should read, "An affiliate of an issuer is a person, *such as an officer, director, or large shareholder*, that directly, or indirectly through one or more intermediaries, controls, or is controlled by, or is under common control with, such issuer."

\* \* \*

---

[4]   *See also S.E.C. v. Boock*, No. 09 Civ. 8261 (DLC), 2011 WL 3792819, at *19 (S.D.N.Y. Aug. 25, 2011) ("A control person, such as an officer, director, or controlling shareholder, is an affiliate of an issuer and is treated as an issuer when there is a distribution of securities." (quoting *Cavanagh II*, 155 F.3d at 134)); *S.E.C. v. Olins*, No. C–07–6423 (MMC), 2010 WL 900518, at *4 (N.D. Cal. Mar. 12, 2010) (same); *S.E.C. v. Sierra Brokerage Servs., Inc.*, 608 F. Supp. 2d 923, 949–50 (S.D. Ohio 2009) (same); *S.E.C. v. Cavanagh*, No. 98 Civ. 1818 (DLC), 2004 WL 1594818, at *20 (S.D.N.Y. July 16, 2004) (same).

**GIBSON DUNN**

December 11, 2017
Page 7


For the reasons outlined above, we urge the Court to remove the "duty to disclose" language and to modify the definition of "affiliate" in the Court's draft instructions.  *See* Dkt. No. 478 at 46 & n.3, 61 & 69-70.

Respectfully submitted,


*/s/ Winston Y. Chan*
Winston Y. Chan



cc:     All counsel (via ECF)