

Ian Shapiro
T: +1 212 479 6441
ishapiro@cooley.com

Via ECF

December 11, 2017

Judge Kiyo A. Matsumoto
United States District Court
Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York 11201

Re: United States v. Evan Greebel, No. 15-CR-637 (KAM)

Dear Judge Matsumoto:

We represent Retrophin, and we are writing to ask the Court to quash Defendant's Rule 17 subpoena (which is attached as Exhibit A) seeking the testimony of a Retrophin document custodian to testify concerning whether a set of 15 documents identified by the Defendant to Retrophin meet the requirements of Fed. R. Evid. 803(6).

## Background

Since this trial began, the Defendant has served six Rule 17 subpoenas on Retrophin, with more than 100 separate requests for documents. Retrophin has complied with every one of the subpoenas and, since trial began, has produced more than 1,300 pages of responsive documents. Retrophin has resolved any disagreements with the Defendant without requiring the Court's intervention.

Last week, the Defendant advised Retrophin that it was likely to need a document custodian to testify at trial. Retrophin advised the Defendant that Retrophin was willing to represent – and believed that the Government would also stipulate – that particular documents were found on Retrophin's systems, and, therefore, authentic. On Saturday, the Defendant confirmed that it would need a document custodian this week, and on Saturday and Sunday, we had a number of conversations with the Defendant about whether a document custodian would be necessary.

In these conversations, we explained to the Defendant that Retrophin was willing to confirm that particular documents were found on its systems and that Retrophin understood that the Government would stipulate to the authenticity of those documents on the basis of that representation. Based on that understanding, Retrophin sought to avoid the need to have a Retrophin employee travel from San Diego to New York to testify that the documents could be found on Retrophin's systems.

Cooley



However, the Defendant explained that they were also seeking a Retrophin document custodian who could testify about whether particular documents satisfied the requirements of Rule 803(6). In response, Retrophin explained that an employee from its information technology department would not have knowledge of anything beyond the document's authenticity and would not have knowledge of the facts necessary to establish that particular emails were business records.

To narrow the parties' dispute, last night, Defendant sent Retrophin the 15 email threads, some of which include attachments, about which it would want a Retrophin document custodian to testify. These 15 documents are attached hereto as Exhibit B. Each is individually stamped with its DX number. Retrophin has now reviewed those email threads and does not believe that any of them reflect the type of record that was prepared as part of a regularly conducted business activity of Retrophin. Because none of the emails are routine records of a regularly conducted activity, there is no Retrophin document custodian who could testify competently about them. Moreover, even if any of those emails could be said to reflect a record of regularly conducted business activity, Retrophin does not have a "document custodian" or other current employee who could testify with knowledge about the range of activities reflected in those 15 email threads.

## Argument

Under Rule 803(6), the email threads that Defendant has identified cannot qualify as business records merely because they were created within the business for a business purpose. See In re Lyondell Chemical Company, 2016 WL 6108526, at *2 (S.D.N.Y. Oct. 19, 2016) ("[A]n e-mail created within a business entity does not, for that reason alone, satisfy the business records exception of the hearsay rule" (internal quotations and citations omitted)). Rather, each email in the thread (and its attachments if applicable) must satisfy each of the elements of the rule. In particular, each email must have been written at or about the time of the facts described therein, must describe a regularly conducted business activity, and must have been sent as a regular part of that regularly conducted business activity. Id. at *3. Therefore, for example, an email might qualify as a business record if it was regularly prepared to confirm the sale of a product. See New World Trading Co. Ltd. v. 2 Feet Productions, Inc., 2014 WL988475, at *1 (S.D.N.Y. Mar. 13, 2014) (email could qualify under Rule 803(6) if "for example, it confirms a sale"). But unique and "sporadic communications," which are not created as part of any regularly conducted business activity, cannot satisfy the requirement of Rule 803(6). Id.

Retrophin does not believe that any of the emails that the Defendant has identified are records that were created as a regular part of a regularly conducted business activity. Most of them reflect ad hoc communications between the Defendant and a range of people, including Mr. Shkreli, Mr. Panoff, and Sunil Jain relating to a range of topics, including Retrophin's cap table, GAAP, a consulting agreement, an employment agreement, the Fearnow shares, Tom Koestler's claim against Mr. Shkreli and the requirements of Board approval of particular SEC filings. See,

e.g., DX-1055, DX-1258, DX-1289, DX-5488, DX-5739, DX-1287. They appear to be no different than communications that could have taken place by telephone or in person if the participants in the communication had decided to communicate in those forms. None of these communications was for the purpose of creating a record of a regular activity. Four of the emails reflect the Defendant's distribution of a unanimous written consent for the Board's approval and Steve Richardson's input and commentary on the substance of one of those consents. DX-1295, DX-1296, DX-1298, and DX-1299. One email reflects Mr. Richardson's comments on the agenda for an upcoming Board call and Mr. Panoff's summary of the call for Mr. Richardson after the fact, DX-1288, and two of the emails reflect Mr. Greebel providing board minutes to Mr. Panoff, in one case unsigned and months after the underlying meetings. DX-1274, DX-10830.[1]

None of these communications was part of a regularly conducted business activity of Retrophin. Moreover, even if any of them could be described as a part of a regularly conducted business activity, none of them are records that were created as a regular part of that activity.

Defendant's argument in support of the application of the business records exception to these documents appears to be that (i) they are business communications, and that (ii) at least a few of them are related to regular business activities, such as the filing of the Form 10Q or board meetings. However, those characteristics of at least some of the 15 email threads is not enough. The communications must be the routine records of regularly conducted activities, and none of them is.

The critical point for the purpose of this motion is that because none of these email threads reflects the routine records of a regularly conducted activity, Retrophin does not have a document custodian who could testify about how those records are prepared in the regular course of business. These emails are unlike Retrophin's billing records or the records of its clinical trials, where there are presumably routine records prepared in the regular course of business. If the documents at issue were those types of routine records, then Retrophin could designate an employee with knowledge of the company's. practice In the case of these 15 emails, there is no such person.

In addition, even if the Court were to apply a more liberal standard to the application of the business records exception, Retrophin does not have a witness who could testify about the range of activities reflected in these emails. Retrophin has arranged for an employee in its IT department, Robert Kuhn, to take the redeye from San Diego to New York tonight so that he would be available to testify on Tuesday. Mr. Kuhn can testify that all of the email threads identified by the Defendant can be found on Retrophin's systems, and he can also testify that emails sent or received by Retrophin employees are generally maintained on Retrophin's email

[1] Moreover, two of Retrophin's witnesses have testified that the minutes were unreliable. See Tr. 2588 (Richardson: "I recall there were some discrepancies"); Tr. 4475 (Aselage: "Q . . . did you find them to be accurate? A: I did not.").

Cooley



systems. But Mr. Kuhn would not have any knowledge about the range of business activities reflected in those email threads and could not contribute anything to the dispute between the Defendant and the Government over whether any of those 15 email threads should be admitted as business records.

For all of these reasons, Retrophin respectfully asks the Court to quash the Defendant's subpoena requiring a Retrophin employee to testify as a document custodian about whether or not the emails at issue are business records of Retrophin. Retrophin has cooperated in establishing their authenticity. But Retrophin submits that no reasonable purpose would be served by requiring a document custodian to testify about the specific emails that the Defendant seeks to admit.

I can be available on 90 minutes' notice today to address this motion in person if the Court would like, and will also plan to appear in Court at the end of the day, unless the Defendant or the Government let me know that the motion has been resolved or the Court does not intend to hear argument then.

Sincerely,

/s/ Ian Shapiro

Ian Shapiro

cc: Counsel for all parties (via ECF)