# EXHIBIT B

| | |
|---|---|
| **From:** | Martin Shkreli [Martin@msmbcapital.com] |
| **Sent:** | Thursday, September 20 2012 12:56:45 PM |
| **To:** | Greebel, Evan L. |
| **Cc:** | Kravitz, David S. |
| **Subject:** | RE: Capitalization Tables |

substantially so, yes

**From:** Greebel, Evan L. [mailto:evan.greebel@kattenlaw.com]
**Sent:** Thursday, September 20, 2012 12:56 PM
**To:** Martin Shkreli
**Cc:** Kravitz, David S.
**Subject:** Re: Capitalization Tables

Are the numbers accurate and accurately reflect your movements and internal records?

------------------------------------------------

CIRCULAR 230 DISCLOSURE: Pursuant to Regulations Governing Practice Before the Internal Revenue Service, any tax advice contained herein is not intended or written to be used and cannot be used by a taxpayer for the purpose of avoiding tax penalties that may be imposed on the taxpayer.

**From:** Martin Shkreli [mailto:Martin@msmbcapital.com]
**Sent:** Thursday, September 20, 2012 12:55 PM
**To:** Greebel, Evan L.
**Cc:** Kravitz, David S.
**Subject:** RE: Capitalization Tables

This looks good to me.

**From:** Greebel, Evan L. [mailto:evan.greebel@kattenlaw.com]
**Sent:** Thursday, September 20, 2012 12:34 PM
**To:** Martin Shkreli
**Cc:** Kravitz, David S.
**Subject:** Capitalization Tables

as discussed, attached are 2 cap tables--1 showing the capitalization of LLC as of today and the other showing the capitalization of Inc immediately following the conversion. The Inc cap table assumes that Class A common is converted 1:1, class B common is converted according to the formula that we discussed and Series A Preferred is converted 1:1.

Immediately following the conversion you will own 47.63% of the outstanding equity (it does not include the 98k that has not vested). You along with MSMB Health will own 53.55% of the outstanding equity (does not include the 98k that has not vested).

Please confirm in writing that these numbers/cap tables are correct.

Thanks

**EVAN L. GREEBEL**
Partner
**Katten Muchin Rosenman LLP**



E. GREEBEL

DX-1055

KAT_0021917

575 Madison Avenue
New York, NY 10022-2585
(212) 940-6383
(212) 894-5883 (f)

==========================================================
CIRCULAR 230 DISCLOSURE: Pursuant to Regulations Governing Practice Before the Internal Revenue
Service, any tax advice contained herein is not intended or written to be used and cannot be used
by a taxpayer for the purpose of avoiding tax penalties that may be imposed on the taxpayer.
==========================================================
CONFIDENTIALITY NOTICE:
This electronic mail message and any attached files contain information intended for the exclusive
use of the individual or entity to whom it is addressed and may contain information that is
proprietary, privileged, confidential and/or exempt from disclosure under applicable law.  If you
are not the intended recipient, you are hereby notified that any viewing, copying, disclosure or
distribution of this information may be subject to legal restriction or sanction.  Please notify
the sender, by electronic mail or telephone, of any unintended recipients and delete the original
message without making any copies.
==========================================================
NOTIFICATION:  Katten Muchin Rosenman LLP is an Illinois limited liability partnership that has
elected to be governed by the Illinois Uniform Partnership Act (1997).
==========================================================

KAT_0021918

| | |
|---|---|
| **From:** | **Greebel, Evan L. <evan.greebel@kattenlaw.com>** |
| **Sent:** | **Tuesday, October 01, 2013 4:21 PM** |
| **To:** | **Marc Panoff** |
| **Subject:** | **Consulting Agreement -Ervasti.DOC** |
| **Attachments:** | **Consulting Agreement -Ervasti.DOC** |

Attached is a draft consulting agreement for ervasti


**EVAN L. GREEBEL**
Partner
**Katten Muchin Rosenman LLP**
575 Madison Avenue
New York, NY 10022-2585
(212) 940-6383
(212) 894-5883 (f)
=================================================================
CIRCULAR 230 DISCLOSURE: Pursuant to Regulations Governing Practice Before the Internal Revenue
Service, any tax advice contained herein is not intended or written to be used and cannot be used
by a taxpayer for the purpose of avoiding tax penalties that may be imposed on the taxpayer.
=================================================================
CONFIDENTIALITY NOTICE:
This electronic mail message and any attached files contain information intended for the exclusive
use of the individual or entity to whom it is addressed and may contain information that is
proprietary, privileged, confidential and/or exempt from disclosure under applicable law. If you
are not the intended recipient, you are hereby notified that any viewing, copying, disclosure or
distribution of this information may be subject to legal restriction or sanction.  Please notify
the sender, by electronic mail or telephone, of any unintended recipients and delete the original
message without making any copies.
=================================================================
NOTIFICATION:  Katten Muchin Rosenman LLP is an Illinois limited liability partnership that has
elected to be governed by the Illinois Uniform Partnership Act (1997).
=================================================================

E. GREEBEL

DX-1258

CONFIDENTIAL

R-Greebel0000007399

DRAFT

## CONSULTING AGREEMENT

This AGREEMENT is dated as of the ____th day of October, 2013 (the "Effective Date") between Retrophin, Inc. (the "Company"), a Delaware corporation having its office at 777 Third Avenue, 22nd Floor, New York, NY, 10017, and James Ervasti (the "Consultant"), having his office at _____.

## W I T N E S S E T H :

WHEREAS, the Company is engaged in the business of developing pharmaceutical products primarily for the treatment of rare diseases; and

WHEREAS, the Company wishes to retain the Consultant, and the Consultant wishes to accept such retention as an independent contractor, to provide certain exclusive advisory and consulting services to the Company on the terms and conditions set forth herein.

NOW, THEREFORE, in consideration of the mutual promises and covenants contained in this Agreement the parties hereto agree as follows:

1. Services.

    a) The Consultant is hereby engaged by the Company, as of the Effective Date, as an independent contractor to provide advisory and consulting services to the Company, in connection with the Company's development of a treatment for Duchenne Muscular Dystrophy (all such services shall collectively be the "Services"). The Consultant will perform all Services in a workmanlike and professional manner and will comply at all times with all applicable laws, regulations, codes and standards and policies of the Company.

    b) During the Term (as hereinafter defined), the Consultant shall devote an average of approximately [twenty (20)] hours per month in furtherance of the mission and activities of the Company, subject to increases in that amount from time to time as may be necessary based on the activities of the Company. Each of the Consultant and the Company understand that the Consultant's outside activities may limit the amount of time he may be available to work on behalf of the Company. The Company and the Consultant shall work together to schedule work on behalf of the Company in a manner that does not materially impair the Consultant's other activities.

2. Term.

    a) This Agreement shall commence as of the Effective Date and shall terminate on the first anniversary thereof (the "Initial Term"). Thereafter, this Agreement will automatically renew on an annual basis (each, a "Renewal Term" and, collectively with the Initial Term, the "Term") unless one party provides the other party with written notice of

100055132

R-Greebel0000007400

termination no later than sixty (60) days prior to such renewal.  The Consultant shall be entitled to the compensation set forth in Section 3 during the Renewal Term.

       b)    Without limiting any rights which either party to this Agreement may have by reason of any breach by the other party, each party reserves the right to terminate this Agreement at its convenience by written notice to the other party.  Such termination shall be effective upon the date not earlier than thirty (30) days following the date specified in said notice.

       c)    Termination of this Agreement under this Section 2 or otherwise shall not affect (i) the Company's obligation to pay for (A) Services previously performed by the Consultant or (B) expenses reasonably incurred by the Consultant for which the Consultant is entitled to reimbursement under Section 3 below, or (ii) the Consultant's continuing obligations to the Company under Sections 6 or 7 below.

    3.  Compensation.  During the term of this Agreement, the Company shall pay the Consultant Three Hundred Dollars ($300) per hour.  Such hourly fee shall be payable in arrears in monthly installments at the end of each calendar month.  Notwithstanding the foregoing, the Company shall not be required to pay the Consultant more than [___] Dollars ($[___]) in the aggregate during the Term without the prior written consent of the Company.

    4.  Expenses.  During the Term, the Company shall pay or reimburse the Consultant for all reasonable travel and other business expenses incurred by him in the performance of his duties to the Company, in accordance with the Company's expense reimbursement policy in effect from time to time. No reimbursement will be made for any expenses other than travel and related expenses incurred by the Consultant during performance of Services under this Agreement unless such expenses are approved in advance by the Company.

    5.  Independent Contractor. Nothing contained in this Agreement shall be deemed, or construed to create an employer/employee relationship between the Consultant and the Company.  The Consultant acknowledges that his relationship with the Company is that of an independent contractor.  The Consultant shall, in no way, act as the legal representative or agent of the Company, and shall have no authority or right to enter into any contract or agreement or otherwise to create or assume any obligation of any kind on behalf of the Company, without the written consent of the Company.  The Consultant shall not make any representation, warranty or guaranty on behalf of the Company in the performance of the Services. As an independent contractor, the Consultant agrees to comply with all applicable tax reporting and/or payment obligations arising from any payments made to Consultant or on Consultant's behalf.   The Company will provide the Consultant with Internal Revenue Form 1099 as required.   The Consultant shall be responsible for the payment of all income taxes, workers compensation premiums and payroll taxes, as well as any other taxes, impounds or impositions that may be applicable to the compensation that the Consultant receives pursuant to Section 3 hereof. Except for the payments provided for in Section 3 above, and except as may be specifically set forth herein to the contrary, the Company shall not make any other payments on behalf of Consultant in consideration of the services to be rendered by Consultant.

100055132                         2

CONFIDENTIAL

R-Greebel0000007401

6. Exclusivity/Non-Compete.

a)      The Consultant agrees that during the term of this Agreement and for two (2) years thereafter, the Consultant will not (i) provide any service (including, but not limited to advisory or consulting related services), directly or indirectly, or manage, operate, control, advise, consult, act as an agent or representative of, be employed by or otherwise assist any business or commercial entity in the design, development, manufacture, sale or commercial offering (whether or not in conjunction with other services that it performs) of any product or service related to the Services (the "Field of Interest") or (ii) either on his own behalf or on behalf of any third party, except on behalf of the Company, directly or indirectly, as an individual proprietor, principal, manager, agent, consultant, guarantor, advisor, member, owner, participant, partner, stockholder, officer, employee, director, joint venturer, lender, or in any other capacity whatsoever (other than as a passive holder of not more than five percent (5%) of the total outstanding stock of a publicly-held company) participate in any business or commercial entity that engages in activities related to the Field of Interest or that is otherwise competitive with the Company. The Company may modify the definition of Field of Interest to include areas related to those currently included in the definition by written notice to the Consultant based on the activities in which the Company is then engaged or in which the Company has a *bona fide* intention to engage in during the period covered by this Section 6(a).

b)      Moreover, the Consultant agrees that during the term of this Agreement and for a period of two (2) years thereafter, the Consultant shall not, without the express written consent of a duly authorized officer of the Company, directly or indirectly (i) induce or seek to influence any employee of (or consultant to) the Company to leave its employ (or terminate such consultancy) or to become financially interested in a similar business, or (ii) attempt to hire or aid a competitor or supplier of the Company in any attempt to hire a person who shall have been employed by, or who was a consultant to, the Company at any time within the one-year period preceding the date of any such attempt.

c)      Nothing in this Section 6 will prohibit the Consultant from (a) engaging in academic research or teaching, or using his skills and experience, in each case in compliance with the restrictions contained in this Agreement, or (b) holding up to five percent (5%) of the issued and outstanding securities of any class of securities of any entity that is publicly traded and quoted on a recognized securities exchange, so long as the Consultant does not, directly or indirectly, exercise any management or control with respect to, or have any active participation in the business of, such entity.

d)      The Consultant acknowledges and agrees that the Company's business is worldwide and the covenants contained in subsections (a), (b), (c) and (d) of Section 6 cannot be limited to any geographic area. The Consultant acknowledges that the covenants in this Section 6 are reasonable in scope, area and duration and are necessary to further the Company's legitimate interests in protecting its Confidential Information and Confidential Materials, business, good-will and relationships with its customers, suppliers, advisors and employees.

100055132                                    3

CONFIDENTIAL                                    R-Greebel0000007402

7. Restrictions on the Disclosure and Use of Confidential Information.

a) For purposes of this Agreement, "Confidential Information" means information that the Company designates as being confidential or that, under the circumstances surrounding the disclosure of the information, ought to in good faith be treated as confidential. "Confidential Information" also includes, without limitation: (i) information relating to (A) the Company, its directors, officers, stockholders, customers, patients, business partners and suppliers or (B) the Services; (ii) the Company's business practices and strategic plans; (iii) technical, scientific, financial, marketing, or other technical or business information or trade secrets of the Company or which are licensed by the Company from third parties; (iv) information received from third parties, that the Company is obligated to treat as confidential; and (v) Confidential Materials. Confidential Information disclosed to the Consultant by any Company employee, contractor, representative and/or agent is covered by this Agreement. Confidential Information will not include information that the Consultant can establish: (i) entered or subsequently enters the public domain without the Consultant's breach of any obligation owed the Company; (ii) became known to the Consultant prior to the Company's disclosure of such information to the Consultant; or (iii) became known to the Consultant from a source other than the Company, other than by the breach of an obligation of confidentiality owed to the Company. For purposes of this Agreement, "Confidential Materials" means all tangible or written materials containing Confidential Information, including without limitation, written or printed documents, email correspondence and attachments, electronic files, and computer disks, whether machine or user readable.

b) During the term of this Agreement and for five (5) years after the expiration or termination of this Agreement for any reason, the Consultant shall not directly or indirectly use, or permit to be used, for his own benefit or the benefit of others or to the detriment of the Company, or disclose or divulge to any other person, firm or corporation, any Confidential Information except as may be necessary in the ordinary course of providing the Services to the Company. Without limiting the foregoing, the Consultant shall not use the Confidential Information or Confidential Materials for the benefit of himself or any third party. The Consultant shall not disclose any Confidential Information or Confidential Materials to any third party without the express prior written permission of the Company. The Consultant shall at all times keep the Confidential Information and Confidential Materials confidential and shall take all reasonable security precautions to keep confidential and protect the Confidential Information from unauthorized access and use.

c) If the Consultant is required by subpoena or court order to disclose Confidential Information or Confidential Materials, the Consultant shall give the Company notice of the proposed disclosure as soon as practicable after learning of the subpoena or the disclosure requirement and shall make any such disclosure in a manner so as to maximize the protection of the information from further disclosure.

d) Return of Documents and Property. At termination of this Agreement, or earlier if requested, the Consultant shall promptly surrender to the Company, without retaining copies, all tangible and intangible things which are or contain Confidential Information or Confidential Materials. The Consultant shall also return all files, correspondence, memoranda, computer software and print-outs, work papers, files, client lists, and other property or things

CONFIDENTIAL

R-Greebel0000007403

which the Company gave to the Consultant, which the Consultant created in whole or part within the scope of the Consultant's employment, or to which the Consultant had access, even if they do not contain Confidential Information or Confidential Materials. Also, at the time of termination from the Company, regardless of reason, the Consultant shall in good faith take all acts necessary and reasonable to assure that the Consultant's work is efficiently transitioned to the Company.

e)   The Consultant may disclose to the Company any information that the Consultant would normally freely disclose to other members of the scientific community at large, whether by publication, by presentation at seminars, or in informal scientific discussions. However, the Company does not desire to acquire from the Consultant any trade secret, know-how or confidential information that the Consultant may have acquired from others, including without limitation from the Consultant's current employer or any of his prior employers. Accordingly, the Consultant represents and warrants that the Consultant is free to divulge to the Company, without any obligation to others, or violation of any rights of others, any and all information, practices and techniques which the Consultant will describe, demonstrate, divulge or in any other manner make known to the Company under this Agreement.

8.   Representations and Warranties.

a)   The Consultant represents and warrants that:

(1)   This Agreement is a valid and legally binding obligation of the Consultant and that neither the execution of this Agreement nor the performance of the Consultant's obligations under this Agreement or any of the other terms and conditions hereof will result in a conflict of interest, violation or breach of any other agreement, whether written or oral, by which the Consultant is bound.

(2)   The Consultant has not been debarred pursuant to the Federal Food, Drug and Cosmetic Act. The Consultant will not use, or work with, in any capacity the services of any individual, corporation, partnership or association which has been debarred under 21 U.S.C. 335a (a) or (b) or disqualified as a clinical investigator under the provisions of 21 C.F.R. 312.70. In the event the Consultant becomes aware of the debarment or disqualification of any such individual, corporation, partnership or association the Consultant shall promptly notify Company.

(3)   The Consultant is not under any legal obligation, including any obligation of confidentiality or non-competition, which prevents the Consultant from executing or fully performing this Agreement, or which would render such execution or performance a breach of contract with any third party.

(4)   The Consultant's performance hereunder will not give rise to any right or claim by any third party, including, but not limited to, any of the Consultant's employers or any person to whom the Consultant has provided or currently provides consulting services, to any intellectual or other property or rights of the Company.

b)   The Company represents that this Agreement has been duly authorized and executed by the Company, is a valid and legally binding obligation of the Company, and is subject to no conflicting agreements.

100055132                                         6

9. <u>Indemnification</u>.  During the Term and thereafter, the Consultant shall indemnify and hold the Company and its officers, agents, stockholders, directors and employees harmless against all claims, losses, expenses (including reasonable attorney's fees) and injuries to person or property (including death) resulting in any way from any gross negligence or intentional misconduct on the part of the Consultant in performance of the Services under this Agreement, or any breach of the Consultant's warranties set forth in Section 7 of this Agreement or alleged violation of the rights of others in and to any trade secret, know-how or other confidential information by reason of the Company's receipt or use of the Consultant's Services, or otherwise in connection therewith.

10. <u>Remedies</u>.

a)   Given the nature of the obligations set forth in Sections 6, 7 and 8 of this Agreement, the Consultant acknowledges and agrees that the Company may be irreparably damaged by the Consultant's alleged breach or violation of such sections.  Without prejudice to the rights and remedies otherwise available to the Company, it shall be entitled, without the requirement of a posting of a bond or other security to seek equitable relief, including an injunction or specific performance, in the event of any breach of the provisions of Sections 6, 7 or 8 of this Agreement.

b)   The parties hereby agree that any dispute that arises out of the alleged breach of any other provision of this Agreement shall be settled solely and exclusively by binding arbitration in New York, New York administered by JAMS.  Such arbitration shall be conducted in accordance with the then prevailing JAMS Streamlined Arbitration Rules & Procedures, with the following exceptions to such rules if in conflict: (a) one arbitrator shall be chosen by JAMS; (b) each Party to the arbitration will pay an equal share of the expenses and fees of the arbitrator, together with other expenses of the arbitration incurred or approved by the arbitrator; and (c) arbitration may proceed in the absence of any Party if written notice (pursuant to the JAMS' rules and regulations) of the proceedings has been given to such Party. Each Party shall bear its own attorneys' fees and expenses.  The Parties agree to abide by all decisions and awards rendered in such proceedings.  Such decisions and awards rendered by the arbitrator shall be final and conclusive.  All such controversies, claims or disputes shall be settled in this manner in lieu of any action at law or equity; <u>provided</u>, <u>however</u>, that nothing in this subsection shall be construed as precluding the bringing an action for injunctive relief as provided in Section 10(a). Any court of competent jurisdiction may enter judgment upon the award.  IF FOR ANY REASON THIS ARBITRATION CLAUSE BECOMES NOT APPLICABLE OR IF THE PARTIES ARE SEEKING INJUNCTIVE OR EQUITABLE RELIEF AS PROVIDED ABOVE, THEN EACH PARTY, (i) TO THE FULLEST EXTENT PERMITTED BY APPLICABLE LAW, HEREBY IRREVOCABLY WAIVES ALL RIGHT TO TRIAL BY JURY AS TO ANY ISSUE RELATING HERETO IN ANY ACTION, PROCEEDING, OR COUNTERCLAIM ARISING OUT OF OR RELATING TO THIS AGREEMENT OR ANY OTHER MATTER INVOLVING THE PARTIES HERETO, AND (ii) SUBMITS TO THE EXCLUSIVE JURISDICTION AND VENUE OF THE FEDERAL OR STATE COURTS LOCATED IN NEW YORK COUNTY, NEW YORK AND EACH PARTY HERETO AGREES NOT TO INSTITUTE ANY SUCH ACTION OR PROCEEDING IN ANY OTHER COURT IN ANY OTHER JURISDICTION.  EACH PARTY IRREVOCABLY AND UNCONDITIONALLY WAIVES ANY OBJECTION THAT IT MAY NOW OR HEREAFTER HAVE TO THE

CONFIDENTIAL                                                          R-Greebel0000007405

LAYING OF VENUE OF ANY ACTION OR PROCEEDING ARISING OUT OF OR RELATING TO THIS AGREEMENT IN THE COURTS REFERRED TO IN THIS SECTION 10.

11. <u>Attorneys' Fees</u>. In any lawsuit or arbitration arising out of or relating to this Agreement, the prevailing party shall recover its costs and reasonable attorneys' fees and expenses.

12. <u>Controlling Law</u>. Subject to Section 10(b), for any claim or cause of action arising under or relating to this Agreement, the Company and the Consultant consent to the exclusive jurisdiction of the federal or state courts located in the County of New York in the State of New York and waive any objection based on jurisdiction or venue, including *forum non conveniens*; <u>provided</u>, <u>however</u>, if either party seeks injunctive relief, it may file such action wherever in its judgment relief might most effectively be obtained. This Agreement shall be governed by, and construed in accordance with, the laws of the State of New York, without regard to applicable principles of conflict of laws.

13. <u>Severability</u>. If any provision of this Agreement shall be held invalid by a court of competent jurisdiction, the remainder of this Agreement shall not be affected thereby and the parties hereto shall continue to be bound by the remaining terms hereof. In such event, the relevant provision shall be interpreted by the parties hereto and a court of competent jurisdiction in a manner that is consistent with the terms of the Agreement, the relevant provision and the applicable law.

14. <u>Entire Agreement; Waiver</u>. This Agreement embodies the entire agreement and understanding of the parties, and supersedes all agreements, understandings, negotiations and proposals, relating to the subject matter of this Agreement, and embodies the entire agreement and understanding of the parties relating to the Consultant's relationship with the Company. Without limiting the foregoing, in the event of any conflict between this Agreement and any other agreement to which the Company and the Consultant are parties, this Agreement shall govern. No representations or warranties are made by any party except as expressly provided in this Agreement. No provision of this Agreement shall be deemed waived, amended or modified by any party unless such waiver, amendment or modification shall be in writing and signed by the individual party or a duly authorized officer of the party against whom the waiver, amendment or modification is sought to be enforced. The failure by any party at any time to require performance or compliance by the other of any of its obligations or agreements shall in no way affect the right to require such performance or compliance at any time thereafter. The waiver by either party of a breach of any provision of this Agreement shall not be taken or held to be a waiver of any preceding or succeeding breach of such provision or as a waiver of the provision itself.

15. <u>Binding Agreement; Assignment</u>. This Agreement shall be binding upon and inure to the benefit of the parties and their respective successors and permitted assigns. The Company may assign this Agreement at any time. This Agreement and all rights hereunder are personal to the Consultant and may not be transferred or assigned by the Consultant.

100055132

7

R-Greebel0000007406

16. <u>Notices</u>.  Any notice required by this Agreement shall be in writing and shall be deemed given based upon the following: (a) upon the date of delivery if delivered in person or via overnight messenger, (b) three (3) days after mailing if mailed via registered or certified mail, postage prepaid, or (c) upon the date of transmission if sent via electronic mail or telephonic facsimile transmission to the electronic mail address or telephone facsimile number of the respective party set forth below, unless another address is substituted by such written notice:

a)    If to the Consultant:
       James Ervasti
       [_____]
       [_____]
       [_____]

b)    If to the Company:
       Retrophin, Inc.
       777 Third Avenue, 22nd Floor
       New York, NY 10017
       Email: marc@retrophin.com
       Attn:  Marc Panoff, Chief Financial Officer

Notice may be given on behalf of a party by its counsel.

17. <u>Headings; Language</u>.  All headings and subheadings in this Agreement are for convenience of reference only and are not intended to qualify the meaning of any provision hereof and cross-references set forth herein shall be deemed to be references to this Agreement. All references to the singular shall include the plural and all references to the plural the singular. In this Agreement the masculine gender includes both male and female referents, and the word "or" is used in the inclusive sense.

18. <u>Survival</u>.  The provisions of Sections  2(c),  6,  7 and 8 through 20 shall survive termination or expiration of this Agreement as a continuing agreement of the parties hereto.

19. <u>Counterparts</u>.  This Agreement may be executed in several counterparts, each of which shall be deemed an original, but all of which shall constitute one and the same instrument.

20. <u>Legal Representation</u>.  The Consultant has been represented by counsel of his own choosing in connection with this Agreement.  As the parties have cooperated in the drafting and negotiation of this Agreement, this Agreement shall not be construed against either party as the drafter.  The Consultant understands this Agreement and acknowledges that the restrictions in this Agreement are fair and reasonable.

21. <u>Compliance with Federal Securities Laws</u>.  The Consultant hereby acknowledges that he is aware, and will advise each of his employees, agents or consultants who are informed as to the matters that are the subject of this Agreement, that the United States securities laws prohibit any person who or that has received from, or about, the Company material, non-public information from purchasing or selling securities of Company or from communicating such

100055132                                        8

information to any other person under circumstances in which it is reasonably foreseeable that such person is likely to purchase or sell such securities.

22. <u>Company Policies</u>.  In accordance with the Company's policies, Consultant shall sign and agree to be bound by the Company's Code of Ethics and Insider Trading Policy.

*[Signature page follows]*

100055132

9

CONFIDENTIAL

R-Greebel0000007408

IN WITNESS WHEREOF, the parties have executed this Agreement as of the day and year first above written.

RETROPHIN, INC.

By:_____
    Name:
    Title:

_____
James Ervasti

*[Signature Page to Consulting Agreement]*

100055132

10

R-Greebel0000007409

| From: | Greebel, Evan L. <evan.greebel@kattenlaw.com> |
|---|---|
| Sent: | Friday, August 16, 2013 2:23 PM |
| To: | Bukzin, David; Giugliano, Greg; Hackert, Ed |
| Cc: | Marc Panoff |
| Subject: | RE: Subsequent events - ASC 855-10 |
| Attachments: | Subsequent events - ASC 855-10.pdf |

I look forward to speaking at 11. I think part of the call should discuss note 55-1 and 55-2 on p. 7. Specifically example a in 55-1 and c in 55-2.

Please use the following dial-in for the call

Dial-in # 1-866-200-9051
Code 951567#

**EVAN L. GREEBEL**
Partner
**Katten Muchin Rosenman LLP**
575 Madison Avenue
New York, NY 10022-2585
(212) 940-6383
(212) 894-5883 (f)

**From:** Jain, Sunil [mailto:Sunil.Jain@marcumllp.com]
**Sent:** Thursday, August 08, 2013 11:09 AM
**To:** Greebel, Evan L.; Marc@retrophin.com
**Cc:** Bukzin, David; Giugliano, Greg; Hackert, Ed
**Subject:** Subsequent events - ASC 855-10

Evan/Marc,

As discussed, attached is the GAAP guidance with respect to subsequent events recognition and disclosures in the financial statements of an entity.

Thank you,

Sunil Jain



*Sunil Jain*
Senior Manager
Marcum LLP
750 Third Avenue
New York, NY 10017
P: (212) 485-5547
F: (212) 485-5501
Sunil.Jain@marcumllp.com




E. GREEBEL

DX-1264

CONFIDENTIALITY NOTICE:
This message is intended only for the use of the individual or entity to which it is addressed, and may contain information that is privileged, confidential and exempt from disclosure under applicable law. If the reader of the message is not the intended recipient, or the employee or agent responsible for delivering the message to the intended recipient, you are hereby notified that any dissemination, distribution or copying of this communication is strictly prohibited. If you have received this communication in error, please notify us immediately by telephone at (631) 414-4000 or (212) 485-5500 and destroy this message.

IRS CIRCULAR 230 DISCLOSURE NOTICE:
To ensure compliance with requirements imposed by the IRS, we inform you that any U.S. federal tax advice contained in this email and/or its attachments , unless otherwise specifically stated, is not intended or written to be used, and cannot be used, for the purpose of (i) avoiding penalties under the Internal Revenue Code, or (ii) promoting, marketing, or recommending to another party any transaction or matter that is contained in or accompanying this document

==================================================
CIRCULAR 230 DISCLOSURE: Pursuant to Regulations Governing Practice Before the Internal Revenue
Service, any tax advice contained herein is not intended or written to be used and cannot be used
by a taxpayer for the purpose of avoiding tax penalties that may be imposed on the taxpayer.
==================================================
CONFIDENTIALITY NOTICE:
This electronic mail message and any attached files contain information intended for the exclusive
use of the individual or entity to whom it is addressed and may contain information that is
proprietary, privileged, confidential and/or exempt from disclosure under applicable law. If you
are not the intended recipient, you are hereby notified that any viewing, copying, disclosure or
distribution of this information may be subject to legal restriction or sanction.  Please notify
the sender, by electronic mail or telephone, of any unintended recipients and delete the original
message without making any copies.
==================================================
NOTIFICATION:  Katten Muchin Rosenman LLP is an Illinois limited liability partnership that has
elected to be governed by the Illinois Uniform Partnership Act (1997).
==================================================

CONFIDENTIAL

R-Greebel0000001579

## 855-10 — **Subsequent Events** – Overall

## 00 Status

### *General Note*

The Status Section identifies changes to this Subtopic resulting from Accounting Standards Updates. The Section provides references to the affected Codification content and links to the related Accounting Standards Updates. Nonsubstantive changes for items such as editorial, link and similar corrections are included separately in Maintenance Updates.

### *General*

**00-1** The following table identifies the changes made to this Subtopic.

| Paragraph | Action | Accounting Standards Update | Date |
|---|---|---|---|
| **Public Entity** | Superseded | Accounting Standards Update No. 2010-09 | 02/24/2010 |
| **Revised Financial Statements** | Added | Accounting Standards Update No. 2010-09 | 02/24/2010 |
| **Securities and Exchange Commission (SEC) Filer** | Added | Accounting Standards Update No. 2010-09 | 02/24/2010 |
| 855-10-25-1A | Added | Accounting Standards Update No. 2010-09 | 02/24/2010 |
| 855-10-25-1A | Amended | Accounting Standards Update No. 2010-09 | 02/24/2010 |
| 855-10-25-2 | Amended | Accounting Standards Update No. 2010-09 | 02/24/2010 |
| 855-10-50-1 | Amended | Accounting Standards Update No. 2010-09 | 02/24/2010 |
| 855-10-50-4 | Amended | Accounting Standards Update No. 2010-09 | 02/24/2010 |
| 855-10-50-5 | Added | Accounting Standards Update No. 2010-09 | 02/24/2010 |
| 855-10-60-3 | Superseded | Accounting Standards Update No. 2012-07 | 10/24/2012 |
| 855-10-65-1 | Added | Accounting Standards Update No. 2010-09 | 02/24/2010 |

## 05 Background

### *General Note*

The Overview and Background Section provides overview and background material for the guidance contained in the Subtopic. It does not provide the historical background or due process. It may contain certain material that users generally consider useful to understand the typical situations addressed by the standards. The Section does not summarize the accounting and reporting requirements.

### *General*

**05-1**  [This Topic provides guidance on principles and requirements for **subsequent events**.FAS 165, paragraph 1]

**05-2**  [Paragraph Not Used Not Used]

**05-3**  [Paragraph Not Used Not Used]

CONFIDENTIAL

R-Greebel0000001580

05-4   [Paragraph Not Used Not Used]

05-5   [Paragraph Not Used Not Used]

## 15 Scope

### *General Note*

The Scope and Scope Exceptions Section outlines the items (for example, the entities, transactions, instruments, or **events**) to which the guidance in the Subtopic does or does not apply. In some cases, the Section may contain definitional or other text to frame the scope.

### *General*

#### > Overall Guidance

**15-1**   The Scope Section of the Overall Subtopic establishes the pervasive scope for the **Subsequent Events** Topic.

#### > Entities

**15-2**   The guidance in the **Subsequent Events** Topic applies to all entities.

#### > Transactions

**15-3**   [The guidance in the **Subsequent Events** Topic shall be applied in the accounting for, and disclosure of, <u>subsequent events</u> not addressed in other Topics of the Codification.FAS 165, paragraph 2]

**15-4**   [Other Topics may address the accounting treatment of **events** or transactions that occur after the balance sheet date. If an **event** or transaction is within the scope of another Topic, then an entity shall follow the guidance in that Topic, rather than the guidance in this Topic.FAS 165, paragraph 3]

**15-5**   [The following are examples (not collectively exhaustive) of other **subsequent events** guidance that is not consistent with the principles in this Topic for the recognition and disclosure of **events** or transactions that occur after the balance sheet date.FAS 165, paragraph 3]

    a.   [ Income Taxes—See paragraph <u>740-10-25-15</u> for guidance on changes in judgment after the balance sheet date that results in **subsequent** recognition, derecognition, or change in measurement of a tax position taken in a prior annual period. FAS 165, paragraph 3 ]

    b.   [ Earnings per Share—See paragraph <u>260-10-55-12</u> for guidance on the effect on earnings per share of changes in the number of common shares as a result of a stock dividend or stock split that occurs after the balance sheet date but before the financial statements are issued or are available to be issued. FAS 165, paragraph 3 ]

    c.   [ Gain Contingencies—See paragraph <u>450-30-25-1</u> for guidance on gain contingencies which are rarely recognized after the balance sheet date but before the financial statements are issued or are available to be issued. FAS 165, paragraph 3]

---

**Deloitte Guidance and Links**

<u>Recognition of Insurance Proceeds That Will Result in a Gain — 450-30-25 (Q&A 11)</u>

---

## 20 Glossary

### *General Note*

The Master Glossary contains all terms identified as glossary terms throughout the Codification. Clicking on

CONFIDENTIAL

R-Greebel0000001581

any term in the Master Glossary will display where the term is used. The Master Glossary may contain identical terms with different definitions, some of which may not be appropriate for a particular Subtopic. For any particular Subtopic, users should only use the glossary terms included in the particular Subtopic Glossary Section (Section 20).

### Financial Statements Are Available to Be Issued

[ Financial statements are considered available to be issued when they are complete in a form and format that complies with GAAP and all approvals necessary for issuance have been obtained, for example, from management, the board of directors, and/or significant shareholders. The process involved in creating and distributing the financial statements will vary depending on an entity's management and corporate governance structure as well as statutory and regulatory requirements.FAS 165, paragraph 6]

### Financial Statements Are Issued

[ Financial statements are considered issued when they are widely distributed to shareholders and other financial statement users for general use and reliance in a form and format that complies with GAAP. (U.S. Securities and Exchange Commission [SEC] registrants also are required to consider the guidance in paragraph 855-10-S99-2.)FAS 165, paragraph 5]

### Public Entity

[ Any entity that meets any of the following conditions: FAS 165, paragraph 7]

a.  [Its debt or equity securities trade in a public market either on a stock exchange (domestic or foreign) or in an over-the-counter market, including securities quoted only locally or regionally. FAS 165, paragraph 7]

b.  [It is a conduit bond obligor for conduit debt securities that are traded in a public market (a domestic or foreign stock exchange or an over-the-counter market, including local or regional markets). FAS 165, paragraph 7]

c.  [It files with a regulatory agency in preparation for the sale of any class of debt or equity securities in a public market. FAS 165, paragraph 7]

d.  [It is required to file or furnish financial statements with the SEC. FAS 165, paragraph 7]

e.  [It is controlled by an entity covered by criteria (a) through (d). FAS 165, paragraph 7]

### Revised Financial Statements

[ Financial statements revised only for either of the following conditions: ASU 2010–09, paragraph 3 ]

a.  [ Correction of an error ASU 2010–09, paragraph 3]

b.  [ Retrospective application of U.S. GAAP.ASU 2010–09, paragraph 3]

### Securities and Exchange Commission (SEC) Filer

[ An entity that is required to file or furnish its financial statements with either of the following: ASU 2010–09, paragraph 3]

a.  [ The Securities and Exchange Commission (SEC) ASU 2010–09, paragraph 3 ]

b.  [ With respect to an entity subject to Section 12(i) of the Securities Exchange Act of 1934, as amended, the appropriate agency under that Section. ASU 2010–09, paragraph 3]

[ Financial statements for other entities that are not otherwise SEC filers whose financial statements are

CONFIDENTIAL                                                                                              R-Greebel0000001582

included in a submission by another SEC filer are not included within this definition. ASU 2010–09, paragraph 3 ]

## Subsequent Events

[ **Events** or transactions that occur after the balance sheet date but before <u>financial statements are issued</u> or are <u>available to be issued</u>. There are two types of **subsequent events**:FAS 165, paragraph 4.1]

> a.   [The first type consists of **events** or transactions that provide additional evidence about conditions that existed at the date of the balance sheet, including the estimates inherent in the process of preparing financial statements (that is, recognized **subsequent events**). FAS 165, paragraph 4]

> b.   [The second type consists of **events** that provide evidence about conditions that did not exist at the date of the balance sheet but arose **subsequent** to that date (that is, nonrecognized **subsequent events**). FAS 165, paragraph 4]

## 25 Recognition

### General Note

The Recognition Section provides guidance on the required criteria, timing, and location (within the financial statements) for recording a particular item in the financial statements. Disclosure is not recognition.

### General

> Recognized **Subsequent Events**

> > *Evidence about Conditions That Existed at the Date of the Balance Sheet*

**25-1**   [An entity shall recognize in the financial statements the effects of all **subsequent events** that provide additional evidence about conditions that existed at the date of the balance sheet, including the estimates inherent in the process of preparing financial statements. FAS 165, paragraph 8]See paragraph 855-10-55-1 for examples of recognized **subsequent events**.

> **Deloitte Guidance and Links**
>
> Settlement of a Recognized Liability After the Balance Sheet Date but Before Issuance of the Financial Statements — 450-20-25 (Q&A 07)
>
> Resolution of a Loss Contingency After the Balance Sheet Date but Before Issuance of the Financial Statements — 450-20-25 (Q&A 09)

**25-1A**   [An entity that meets either of the following criteria shall evaluate **subsequent events** through the date the financial statements are issued:ASU 2010–09, paragraph 4]

> a.   [ It is an **SEC filer**. ASU 2010–09, paragraph 4 ]
>
> b.   [ It is a conduit bond obligor for conduit debt securities that are traded in a public market (a domestic or foreign stock exchange or an over-the-counter market, including local or regional markets). ASU 2010–09, paragraph 5]

> **Deloitte Guidance and Links**
>
> Other Entities' Financial Statements Included in an SEC Registrant's Filing — 855-10-25 (Q&A 01)
>
> Financial Statements Included in a Private Offering Document **Subsequently** Registered With the

CONFIDENTIAL                                                                                                           R-Greebel0000001583

SEC — 855-10-25 (Q&A 02)

Whether a Broker-Dealer That Files With the SEC's Division of Trading and Markets Is Considered an SEC Filer — 855-10-25 (Q&A 03)

Financial Statements Included in an Initial Public Offering Filing With the SEC — 855-10-25 (Q&A 04)

**25-2**  [An entity that meets neither criteria in the preceding paragraph shall evaluate **subsequent events** through the date that the financial statements are available to be issued.ASU 2010–09, paragraph 6]

> ## Nonrecognized **Subsequent Events**

> > *Evidence about Conditions That Did Not Exist at the Date of the Balance Sheet*

**25-3**  [An entity shall not recognize **subsequent events** that provide evidence about conditions that did not exist at the date of the balance sheet but arose after the balance sheet date but before <u>financial statements are issued</u> or are <u>available to be issued</u>. FAS 165, paragraph 10]See paragraph <u>855-10-55-2</u> for examples of nonrecognized **subsequent events**.

**Deloitte Guidance and Links**

Enactment of Legislation After the Balance Sheet Date but Before Issuance of the Financial Statements — 450-20-25 (Q&A 04)

> > *Reissuance of Financial Statements*

**25-4**  [An entity may need to reissue financial statements, for example, in reports filed with the SEC or other regulatory agencies. After the original issuance of the financial statements, events or transactions may have occurred that require disclosure in the reissued financial statements to keep them from being misleading. An entity shall not recognize events occurring between the time the financial statements were issued or were available to be issued and the time the financial statements were reissued unless the adjustment is required by GAAP or regulatory requirements. Similarly, an entity shall not recognize events or transactions occurring after the financial statements were issued or were available to be issued in financial statements that are later reissued in comparative form along with financial statements of **subsequent** periods unless the adjustment meets the criteria stated in this paragraph.FAS 165, paragraph 15]

## 45 Other Presentation

### *General Note*

The Other Presentation Matters Section provides guidance on other presentation matters not addressed in the Recognition, Initial Measurement, **Subsequent** Measurement, and Derecognition Sections. Other presentation matters may include items such as current or long-term balance sheet classification, cash flow presentation, earnings per share matters, and so forth. The FASB Codification also contains Presentation Topics, which provide guidance for general presentation and display items. See those Topics for general guidance.

### *General*

> ## Nonrecognized **Subsequent Events**

**45-1**  [As indicated in paragraph <u>855-10-50-3</u>, in some situations, an entity also shall consider presenting pro forma statements, usually a balance sheet only, in columnar form on the face of the historical statements.FAS 165, paragraph 14]

## 50 Disclosure

### *General Note*

CONFIDENTIAL
R-Greebel0000001584

The Disclosure Section provides guidance regarding the disclosure in the notes to financial statements. In some cases, disclosure may relate to disclosure on the face of the financial statements.

### *General*

#### > Date Through Which **Subsequent Events** Have Been Evaluated

**50-1**  [If an entity is not an SEC filer, then the entity shall disclose both of the following: FAS 165, paragraph 12]

> a.  [ The date through which **subsequent events** have been evaluated FAS 165, paragraph 12 ]
>
> b.  [ Whether that date is either of the following: FAS 165, paragraph 12 ]
>
> > 1.  [ The date the financial statements were issued FAS 165, paragraph 12 ]
> >
> > 2.  [ The date the financial statements were available to be issued. FAS 165, paragraph 12 ]

#### > Nonrecognized **Subsequent Events**

**50-2**  [Some nonrecognized **subsequent events** may be of such a nature that they must be disclosed to keep the financial statements from being misleading. For such **events**, an entity shall disclose the following:FAS 165, paragraph 13]

> a.  [ The nature of the **event** FAS 165, paragraph 13 ]
>
> b.  [ An estimate of its financial effect, or a statement that such an estimate cannot be made. FAS 165, paragraph 13 ]

---

**Deloitte Guidance and Links**

Loss Contingencies Occurring After Year-End That Must Be Disclosed — 450-20-50 (Q&A 03)

---

**50-3**  [An entity also shall consider supplementing the historical financial statements with pro forma financial data. Occasionally, a nonrecognized **subsequent event** may be so significant that disclosure can best be made by means of pro forma financial data. Such data shall give effect to the **event** as if it had occurred on the balance sheet date. In some situations, an entity also shall consider presenting pro forma statements, usually a balance sheet only, in columnar form on the face of the historical statements.FAS 165, paragraph 14]

#### > Revised Financial Statements

**50-4**  [Unless the entity is an SEC filer, an entity shall disclose in the revised financial statements the dates through which **subsequent events** have been evaluated in both of the following:FAS 165, paragraph 15]

> a.  [ The issued or available-to-be-issued financial statements FAS 165, paragraph 15 ]
>
> b.  [ The revised financial statements. FAS 165, paragraph 15 ]

---

**Deloitte Guidance and Links**

Evaluating **Subsequent Events** When Reissuing a Form 10-K — 855-10-50 (Q&A 01)

---

CONFIDENTIAL                                                                                          R-Greebel0000001585

> Revising Prior-Period Information for Changes in Reportable Segments or to Report Discontinued Operations — 855-10-50 (Q&A 02)

**50-5** [Revised financial statements are considered reissued financial statements. For guidance on the recognition of **subsequent events** in reissued financial statements, see paragraph 855-10-25-4.ASU 2010–09, paragraph 10]

## 55 Implementation

### General Note

The Implementation Guidance and Illustrations Section contains implementation guidance and illustrations that are an integral part of the Subtopic. The implementation guidance and illustrations do not address all possible variations. Users must consider carefully the actual facts and circumstances in relation to the requirements of the Subtopic.

### General

> Implementation Guidance

> > *Recognized* **Subsequent Events**

**55-1** [The following are examples of recognized **subsequent events** addressed in paragraph 855-10-25-1:FAS 165, paragraph 9]

   a. [ If the **events** that gave rise to litigation had taken place before the balance sheet date and that litigation is settled after the balance sheet date but before the **financial statements are issued** or are **available to be issued**, for an amount different from the liability recorded in the accounts, then the settlement amount should be considered in estimating the amount of liability recognized in the financial statements at the balance sheet date. FAS 165, paragraph 9 ]

   b. [ **Subsequent events** affecting the realization of assets, such as receivables and inventories or the settlement of estimated liabilities, should be recognized in the financial statements when those **events** represent the culmination of conditions that existed over a relatively long period of time. For example, a loss on an uncollectible trade account receivable as a result of a customer's deteriorating financial condition leading to bankruptcy after the balance sheet date but before the financial statements are issued or are available to be issued ordinarily will be indicative of conditions existing at the balance sheet date. Thus, the effects of the customer's bankruptcy filing shall be considered in determining the amount of uncollectible trade accounts receivable recognized in the financial statements at balance sheet date. FAS 165, paragraph 9 ]

> > *Nonrecognized* **Subsequent Events**

**55-2** [The following are examples of nonrecognized **subsequent events** addressed in paragraph 855-10-25-3:FAS 165, paragraph 11]

   a. [ Sale of a bond or capital stock issued after the balance sheet date but before financial statements are issued or are available to be issued FAS 165, paragraph 11 ]

   b. [ A business combination that occurs after the balance sheet date but before financial statements are issued or are available to be issued (Topic 805 requires specific disclosures in such cases.) FAS 165, paragraph 11 ]

   c. [ Settlement of litigation when the **event** giving rise to the claim took place after the balance sheet date but before financial statements are issued or are available to be issued FAS 165, paragraph 11 ]

CONFIDENTIAL
R-Greebel0000001586

d.   [ Loss of plant or inventories as a result of fire or natural disaster that occurred after the balance sheet date but before financial statements are issued or are available to be issued FAS 165, paragraph 11 ]

e.   [ Losses on receivables resulting from conditions (such as a customer's major casualty) arising after the balance sheet date but before financial statements are issued or are available to be issued FAS 165, paragraph 11 ]

f.   [ Changes in the fair value of assets or liabilities (financial or nonfinancial) or foreign exchange rates after the balance sheet date but before financial statements are issued or are available to be issued FAS 165, paragraph 11 ]

g.   [ Entering into significant commitments or contingent liabilities, for example, by issuing significant guarantees after the balance sheet date but before financial statements are issued or are available to be issued. FAS 165, paragraph 11 ]

## 60 Relationships

### *General Note*

The Relationships Section contains links to guidance that may be helpful to, but not required by, a user of the Subtopic. This Section may not be all-inclusive. The relationship items are organized according to the Topic structure in the Codification.

### *General*

#### > Property, Plant, and Equipment

**60-1**  [For guidance on the classification of a long-lived asset to be sold when held-for-sale criteria are met after the balance sheet date but before the **financial statements are issued** or are **available to be issued** (as discussed in Section 855-10-25), see paragraph 360-10-45-13. FAS 144, paragraph 33]

#### > Income Taxes

**60-2**  [For guidance on accounting and disclosure when an election to change an entity's tax status is approved by the tax authority (or filed, if approval is not necessary) early in Year 2 and before the financial statements for Year 1 are issued or are available to be issued (as discussed in Section 855-10-25), QA 109, paragraph 11][see paragraphs 740-10-25-34, 740-10-50-4, and 740-10-55-48. QA 109, paragraph 11]

#### > Entertainment—Films

**60-3**  [For guidance addressing the possible need for a write-down of unamortized film costs as a result of evidence that arises after the date of the balance sheet but before an entity's financial statements are issued or are available to be issued (as discussed in Section 855-10-25), see paragraph 926-855-35-1. SOP 00-2, paragraph 48]

**Pending Content**

**Transition Date:** *December 15, 2013* | **Transition Guidance:** 926-20-65-1

*Editor's note: Paragraph 855-10-60-3 will be superseded upon transition, together with its heading:*

> Entertainment—Films

Paragraph superseded by Accounting Standards Update No. 2012-07

#### > Software

**60-4**  [ For guidance on the effect on the timing of revenue recognition when vendor-specific objective evidence of fair value is established by management after the balance sheet date but before the financial statements are issued or are available to be issued (as discussed in Section 855-10-25), see paragraphs 985-605-55-93 through 55-95. TIS 5100, paragraph 38]

CONFIDENTIAL   R-Greebel0000001587

## 65 Transition

### General Note

The Transition Section contains a description of the required transition provisions and a list of the related paragraphs that have been modified. This section will retain the transition content during the transition period. After the transition period, the transition content will be removed yet will be available in archived versions of the Section.

### General

**65-1**  Paragraph superseded on 12/15/2010 after the end of the transition period stated in Accounting Standards Update No. 2010-09, *Subsequent Events (Topic 855): Amendments to Certain Recognition and Disclosure Requirements.*

## 75 XBRL Elements

### General Note

This section contains a list of XBRL elements that reference paragraphs in this Subtopic. For additional details regarding changes to the development version of the US GAAP Financial Reporting Taxonomy, refer to the FASB taxonomy review and comment system on the FASB web site.

### *XBRL Links to Codification*

#### Schedule of Subsequent Events [Table Text Block]

Element Name: *ScheduleOfSubsequentEventsTextBlock*

- 855 Subsequent Events>10 Overall>50 Disclosure>General, 50-2

#### Subsequent Event Type [Axis]

Element Name: *SubsequentEventTypeAxis*

- 855 Subsequent Events>10 Overall>50 Disclosure>General, 50-2

#### Subsequent Event Type [Domain]

Element Name: *SubsequentEventTypeDomain*

- 855 Subsequent Events>10 Overall>50 Disclosure>General, 50-2

#### Subsequent Event [Table]

Element Name: *SubsequentEventTable*

- 855 Subsequent Events>10 Overall>50 Disclosure>General, 50-2

#### Subsequent Event, Amount Inestimable

Element Name: *SubsequentEventAmountInestimable* (RevisionDate: 2011-08-14)

- 855 Subsequent Events>10 Overall>50 Disclosure>General, 50-2(b)

#### Subsequent Event, Date

CONFIDENTIAL

R-Greebel0000001588

Element Name: *SubsequentEventsDate*

- 855 Subsequent Events>10 Overall>50 Disclosure>General, 50-2(a)

**Subsequent Event, Description**

Element Name: *SubsequentEventDescription*

- 855 Subsequent Events>10 Overall>50 Disclosure>General, 50-2(a)

**Subsequent Event, Pro Forma Business Combinations or Disposals [Text Block]**

Element Name: *SubsequentEventProFormaBusinessCombinations* (RevisionDate: 2012-11-01)

- 855 Subsequent Events>10 Overall>50 Disclosure>General, 50-3

# S00 Status

## *General Note*

The Status Section identifies changes to this Subtopic resulting from Accounting Standards Updates. The Section provides references to the affected Codification content and links to the related Accounting Standards Updates. Nonsubstantive changes for items such as editorial, link and similar corrections are included separately in Maintenance Updates.

## *General*

S00-1   The following table identifies the changes made to this Subtopic.

| Paragraph | Action | Accounting Standards Update | Date |
|---|---|---|---|
| 855-10-S99-2 | Amended | Accounting Standards Update No. 2010-04 | 01/15/2010 |

# S20 Glossary

## *General Note*

The Master Glossary contains all terms identified as glossary terms throughout the Codification. Clicking on any term in the Master Glossary will display where the term is used. The Master Glossary may contain identical terms with different definitions, some of which may not be appropriate for a particular Subtopic. For any particular Subtopic, users should only use the glossary terms included in the particular Subtopic Glossary Section (Section 20).

**Issuance of Financial Statements**

See paragraph 855-10-S99-2, SEC Staff Announcement: Issuance of Financial Statements, for SEC Staff views on when financial statements are deemed to be issued.

# S25 Recognition

## *General Note*

The Recognition Section provides guidance on the required criteria, timing, and location (within the financial statements) for recording a particular item in the financial statements. Disclosure is not recognition.

## *General*

> Type I **Subsequent Events**

**S25-1**   [See paragraph <u>855-10-S99-2</u>, SEC Staff Announcement: <u>Issuance of Financial Statements</u>, for SEC Staff views on the accounting for Type I **subsequent events. EITF D-086, paragraph** ]

> Dividends Declared by the Subsidiary after the Balance Sheet Date

**S25-2**   [See paragraph <u>855-10-S99-1</u>, SAB Topic 1.B.3, for SEC Staff views on the recognition of dividends declared after the balance sheet date. SAB TOPIC 1.B, paragraph 3 Q Response]

## S50 Disclosure

### *General Note*

The Disclosure Section provides guidance regarding the disclosure in the notes to financial statements. In some cases, disclosure may relate to disclosure on the face of the financial statements.

### *General*

> Dividends Declared by a Subsidiary After the Balance Sheet Date

**S50-1**   [See paragraph <u>855-10-S99-1</u>, SAB Topic 1.B.3, for SEC Staff views on disclosure of dividends declared after the balance sheet date. SAB TOPIC 1.B, paragraph 3 Q]

## S99 SEC Materials

### *General Note*

As more fully described in the Notice to Constituents, the Codification includes selected SEC and SEC Staff content for reference by public companies. The Codification does not replace or affect how the SEC or SEC Staff issues or updates SEC content. SEC Staff content does not constitute Commission-approved rules or interpretations of the SEC.

### *General*

> SEC Staff Guidance

> > *Staff Accounting Bulletins*

> > > SAB Topic 1.B.3, Other Matters

**S99-1**   The following is the text of SAB Topic 1.B.3, Other Matters.

- [Question: What is the staff's position with respect to dividends declared by the subsidiary **subsequent** to the balance sheet date? SAB TOPIC 1.B, paragraph 3 Q]

- [Interpretive Response: The staff believes that such dividends either be given retroactive effect in the balance sheet with appropriate footnote disclosure, or reflected in a pro forma balance sheet. In addition, when the dividends are to be paid from the proceeds of the offering, the staff believes it is appropriate to include pro forma per share data (for the latest year and interim period only) giving effect to the number of shares whose proceeds were to be used to pay the dividend. A similar presentation is appropriate when dividends exceed earnings in the current year, even though the stated use of proceeds is other than for the payment of dividends. In these situations, pro forma per share data should give effect to the increase in the number of shares which, when multiplied by the offering price, would be sufficient to replace the capital in excess of earnings being withdrawn. SAB TOPIC 1.B, paragraph 3 Q Response]

> > *Announcements Made by SEC Staff at Emerging Issues Task Force (EITF) Meetings*

> > > SEC Staff Announcement: Issuance of Financial Statements

CONFIDENTIAL

R-Greebel0000001590

**S99-2**   The following is the text of SEC Staff Announcement: <u>Issuance of Financial Statements</u>.

- [In considering when financial statements have been issued, the SEC staff observed that Rules 10b-5 and 12b-20 under the Securities Exchange Act of 1934 and General Instruction C(3) to Form 10-K specify that financial statements must not be misleading as of the date they are filed with the Commission. For example, assume that a registrant widely distributes its financial statements but, before filing them with the Commission, the registrant or its auditor becomes aware of an **event** or transaction that existed at the date of the financial statements that causes those financial statements to be materially misleading. If a registrant does not amend those financial statements so that they are free of material misstatement or omissions when they are filed with the Commission, the registrant will be knowingly filing a false and misleading document. In addition, registrants are reminded of their responsibility to, at a minimum, disclose **subsequent events**, FN1 while independent auditors are reminded of their responsibility to assess **subsequent events** FN2 and evaluate the impact of the **events** or transactions on their audit report. FN3 EITF D-086, paragraph ]

  - [FN1 See AU Section 560, **Subsequent Events**, paragraphs 5 and 8 and Section 855-10-50. EITF D-086, paragraph ]

  - [FN2 See AU 560 and AU Section 561, **Subsequent** Discovery of Facts Existing at Date of the Auditor's Report. EITF D-086, paragraph ]

  - [FN3 See AU Section 530, Dating of the Independent Auditor's Report, and AU 560, paragraph 9. EITF D-086, paragraph ]

- [A registrant and its independent auditor have responsibilities with regard to post-balance-sheet-date **subsequent events**, as well as the application of authoritative literature applicable to such **events**. See Topic 855 and AU 560, **Subsequent Events**, paragraph 3.EITF D-086, paragraph ]

- [Generally, the staff believes that financial statements are "issued" as of the date they are distributed for general use and reliance in a form and format that complies with generally accepted accounting principles (GAAP) and, in the case of annual financial statements, that contain an audit report that indicates that the auditors have complied with generally accepted auditing standards (GAAS) in completing their audit. Issuance of financial statements then would generally be the earlier of when the annual or quarterly financial statements are widely distributed to all shareholders and other financial statement users FN4 or filed with the Commission. Furthermore, the issuance of an earnings release does not constitute issuance of financial statements because the earnings release would not be in a form and format that complies with GAAP and GAAS. EITF D-086, paragraph ]

  - [FN4 Posting financial statements to a registrant's web site would be considered wide distribution to all shareholders and other financial statement users if the registrant uses its web site to disclose information to the public in a manner consistent with the requirements of Regulation FD. See the Commission's interpretive guidance in Exchange Act Release No. 58288 (Aug. 7, 2008). EITF D-086, paragraph ]

**Confidential and Proprietary - for Use Solely by Authorized Personnel**

This publication provides comprehensive guidance; however, it does not address all possible fact patterns, and the guidance is subject to change. Consult a Deloitte & Touche LLP professional regarding your specific issues and questions. Your feedback will help us improve the *FASB Accounting Standards Codification Manual*. Please <u>let us know</u> what you think.
Copyright © 2013 Deloitte Development LLC. All rights reserved.
FASB Accounting Standards Codification: Copyright © 2005 - 2013 by Financial Accounting Foundation, Norwalk, Connecticut

| | |
|---|---|
| **From:** | Marc Panoff [Marc@retrophin.com] |
| **Sent:** | Thursday, December 12, 2013 10:31 AM |
| **To:** | Greebel, Evan L. |
| **Subject:** | RE: 2013 Bd Minutes |

E. GREEBEL

DX-1274

I'm ok with these.


Marc Panoff
Chief Financial Officer
Retrophin, Inc.
777 Third Ave., 22rd Floor
New York, NY 10017
www.retrophin.com

Office: (646) 564-3671
Fax: (646) 861-6485
Cell: (914) 715-0029
marc@retrophin.com

---

**From:** Greebel, Evan L. [mailto:evan.greebel@kattenlaw.com]
**Sent:** Wednesday, December 11, 2013 9:33 PM
**To:** Marc Panoff
**Subject:** 2013 Bd Minutes

As discussed, attached are drafts of the 2013 Bd Minutes.


**EVAN L. GREEBEL**
Partner
**Katten Muchin Rosenman LLP**
575 Madison Avenue
New York, NY 10022-2585
(212) 940-6383
(212) 894-5883 (f)
=======================================================
CIRCULAR 230 DISCLOSURE: Pursuant to Regulations Governing Practice Before the Internal Revenue
Service, any tax advice contained herein is not intended or written to be used and cannot be used
by a taxpayer for the purpose of avoiding tax penalties that may be imposed on the taxpayer.
=======================================================
CONFIDENTIALITY NOTICE:
This electronic mail message and any attached files contain information intended for the exclusive
use of the individual or entity to whom it is addressed and may contain information that is
proprietary, privileged, confidential and/or exempt from disclosure under applicable law. If you
are not the intended recipient, you are hereby notified that any viewing, copying, disclosure or
distribution of this information may be subject to legal restriction or sanction. Please

1

CONFIDENTIAL

R-Greebel0000007641

notify
the sender, by electronic mail or telephone, of any unintended recipients and delete the original
message without making any copies.
==================================================================
NOTIFICATION:  Katten Muchin Rosenman LLP is an Illinois limited liability partnership that has
elected to be governed by the Illinois Uniform Partnership Act (1997).
==================================================================

2

CONFIDENTIAL

R-Greebel0000007642

**From:**       Greebel, Evan L. <evan.greebel@kattenlaw.com>
**Sent:**        Monday, July 22, 2013 9:42 PM
**To:**           'Marc@retrophin.com'
**Subject:**    Re: 10Q Board Call

We can do the meeting, have majority and get his electronic sign off. Alternativel i can do written consent and bag the meeting

-------------------------------------------------

CIRCULAR 230 DISCLOSURE: Pursuant to Regulations Governing Practice Before the Internal Revenue Service, any tax advice contained herein is not intended or written to be used and cannot be used by a taxpayer for the purpose of avoiding tax penalties that may be imposed on the taxpayer.

**From:** Marc Panoff [mailto:Marc@retrophin.com]
**Sent:** Monday, July 22, 2013 05:40 PM Eastern Standard Time
**To:** Greebel, Evan L.
**Subject:** RE: 10Q Board Call

Do we need resolutions or can I get his approval via email and incorporate into minutes?

**From:** Greebel, Evan L. [mailto:evan.greebel@kattenlaw.com]
**Sent:** Monday, July 22, 2013 5:38 PM
**To:** Marc Panoff
**Subject:** Re: 10Q Board Call

Yes--suggestion is have the meeting and still get his electronoic sign off

-------------------------------------------------

CIRCULAR 230 DISCLOSURE: Pursuant to Regulations Governing Practice Before the Internal Revenue Service, any tax advice contained herein is not intended or written to be used and cannot be used by a taxpayer for the purpose of avoiding tax penalties that may be imposed on the taxpayer.

**From:** Marc Panoff [mailto:Marc@retrophin.com]
**Sent:** Monday, July 22, 2013 05:20 PM Eastern Standard Time
**To:** Greebel, Evan L.
**Subject:** FW: 10Q Board Call

Is this ok?  Do we have quorum and can we approve with Martin and Stephen Aselage over the phone?

**From:** sgrichardson2@aol.com [mailto:sgrichardson2@aol.com]
**Sent:** Monday, July 22, 2013 5:12 PM
**To:** Marc Panoff
**Subject:** Re: 10Q Board Call

Marc, I am still in Europe and will need to approve it electronically
Cheers



E. GREEBEL

DX-1287

CONFIDENTIAL

R-Greebel0000007325

Steve

Sent from my BlackBerry 10 smartphone.

**From:** Marc Panoff
**Sent:** Monday, July 22, 2013 10:10 PM
**To:** saselage@sbcglobal.net; sgrichardson2@aol.com; Martin Shkreli
**Cc:** Greebel, Evan L.
**Subject:** 10Q Board Call

Members of the Board,

We expect to be ready to file the 10Q for the quarter ended March 31, 2013 by mid-week.  I would like to schedule a call for either tomorrow afternoon or Wednesday morning to approve the filing of the document.

Please let me know if you are available after 3pm tomorrow or after 11am on Wednesday.


Best,

Marc

CONFIDENTIAL

| | |
|---|---|
| **From:** | Marc Panoff <Marc@retrophin.com> |
| **Sent:** | Thursday, July 25, 2013 12:10 PM |
| **To:** | Evan L. Greebel |
| **Subject:** | Fwd: Board Call Agenda and related documents |

Sent from my iPhone

Begin forwarded message:

> **From:** Steve Richardson <sgrichardson2@aol.com>
> **Date:** July 25, 2013, 1:37:07 AM EDT
> **To:** <Marc@retrophin.com>
> **Subject: Re: Board Call Agenda and related documents**
>
> Thanks Marc.
> I approve the 10Q and the Marcum engagement.
> Good progress, keep it coming
> regards
> Steve
> -----Original Message-----
> From: Marc Panoff <Marc@retrophin.com>
> To: Steve Richardson <sgrichardson2@aol.com>
> Sent: Wed, Jul 24, 2013 5:30 pm
> Subject: RE: Board Call Agenda and related documents
>
> Hi Steve,
>
> The salient points from the board call was as follows:
>
> - 10Q was approved by Martin and Steve – no issues with the auditor review
> - Engagement of Marcum for 2013 was approved
> - CAP proposal was acceptable to both Martin and Steve. We will formally approve their engagement once we close on the financing
> - We will be reaching out to Neal Golding to see if he would be interested in joining the board as the audit committee chair. If he is, I will forward his bio to the board. We are also still interested in adding Dr. Jeff Paley to the board as well
> - Management update from Martin
>
> If ok with you, please respond to this email with your approval of the 10Q and the Marcum engagement.
>
> Thanks
>
> Marc
>
> From: Steve Richardson [mailto:sgrichardson2@aol.com]
> Sent: Wednesday, July 24, 2013 2:34 AM
> To: Marc Panoff; Martin Shkreli; saselage@sbcglobal.net
> Cc: evan.greebel@kattenlaw.com
> Subject: Re: Board Call Agenda and related documents

E. GREEBEL

DX-1288

R-Greebel0000007327

Hi Marc, thanks for getting this out early. I have reviewed all documents. A couple of comments:

1. Are there any overview comments coming on the Board call today from you or Martin I need to be aware of before offering my acceptance vote on the 10Q?

2. As we discussed on our last board call, we do need to move swifty to secure a financially qualified new board member to head the Audit Committee

3. I am fine with the engagement letter for the Audit

4. I am fine with the CAP proposal. I have heard of Margaret and believe she would be a good early partner. I also agree with the "single consultant" approach at this stage of our development.

See you all when I am back in NYC
Cheers
Steve

-----Original Message-----
From: Marc Panoff <Marc@retrophin.com>
To: Martin Shkreli <Martin@retrophin.com>; Stephen Aselage <saselage@sbcglobal.net>; sgrichardson2 <sgrichardson2@aol.com>
Cc: Greebel, Evan L. <evan.greebel@kattenlaw.com>; Hackert, Ed <Ed.Hackert@marcumllp.com>; Jain, Sunil <Sunil.Jain@marcumllp.com>
Sent: Tue, Jul 23, 2013 3:44 pm
Subject: Board Call Agenda and related documents

Members of the Board,

Attached please the agenda for tomorrow morning's call.  Don't hesitate to give me a call should you have any questions.

Marc

CONFIDENTIAL

R-Greebel0000007328

| | |
|---|---|
| **From:** | Steve Richardson <sgrichardson2@aol.com> |
| **Sent:** | Tuesday, August 13, 2013 4:42 PM |
| **To:** | Martin@retrophin.com; saselage@sbcglobal.net |
| **Cc:** | evan.greebel@kattenlaw.com |
| **Subject:** | Re: Mike Smith Employment Agreement |

Hi Martin, based on what you shared with me last week, its clear Michael is adding tremendous value and is a colleague we should get some good hooks into for the medium term - so I agree also with the granting of the options.

Related - I know its on Marc's pending list but I do nudge us to get the independent compensation consultant engaged and to help shape a sound and competitive compensation plan - knowing that you are on a path to add new talent and board members - we should get a read on likely stock commitments to employee plans - so you have them earmarked.

Hope all is taking shape to lock the funding plan
Steve

-----Original Message-----
From: Martin Shkreli <Martin@retrophin.com>
To: 'sgrichardson2@aol.com' <sgrichardson2@aol.com>; Stephen Aselage <saselage@sbcglobal.net>
Cc: Greebel, Evan L. <evan.greebel@kattenlaw.com>
Sent: Tue, Aug 13, 2013 9:56 am
Subject: FW: Mike Smith Employment Agreement

I wanted to offer options to one of my hardest working guys, Michael Smith. He has been at Retrophin for one year and is one of the most loyal hard-working people I've met. Please let me know if you agree.

**From:** Greebel, Evan L. [mailto:evan.greebel@kattenlaw.com]
**Sent:** Tuesday, August 13, 2013 9:50 AM
**To:** Martin Shkreli
**Subject:** FW: Mike Smith Employment Agreement

Fyi...as discussed the option portion needs to be approved by the bd

**EVAN L. GREEBEL**
Partner
**Katten Muchin Rosenman LLP**
575 Madison Avenue
New York, NY 10022-2585
(212) 940-6383
(212) 894-5883 (f)

**From:** Greebel, Evan L.
**Sent:** Wednesday, July 31, 2013 10:20 AM
**To:** Martin Shkreli; Marc Panoff
**Subject:** Mike Smith Employment Agreement

Attached is a draft of Mike Smith's employment agreement

**EVAN L. GREEBEL**
Partner
**Katten Muchin Rosenman LLP**
575 Madison Avenue
New York, NY 10022-2585
(212) 940-6383
(212) 894-5883 (f)



E. GREEBEL

DX-1289

R-Greebel0000007333

================================================================
CIRCULAR 230 DISCLOSURE: Pursuant to Regulations Governing Practice Before the Internal Revenue
Service, any tax advice contained herein is not intended or written to be used and cannot be used
by a taxpayer for the purpose of avoiding tax penalties that may be imposed on the taxpayer.
================================================================
CONFIDENTIALITY NOTICE:
This electronic mail message and any attached files contain information intended for the exclusive
use of the individual or entity to whom it is addressed and may contain information that is
proprietary, privileged, confidential and/or exempt from disclosure under applicable law.  If you
are not the intended recipient, you are hereby notified that any viewing, copying, disclosure or
distribution of this information may be subject to legal restriction or sanction.  Please notify
the sender, by electronic mail or telephone, of any unintended recipients and delete the original
message without making any copies.
================================================================
NOTIFICATION:  Katten Muchin Rosenman LLP is an Illinois limited liability partnership that has
elected to be governed by the Illinois Uniform Partnership Act (1997).
================================================================

CONFIDENTIAL

| | |
|---|---|
| **From:** | Steve Richardson <sgrichardson2@aol.com> |
| **Sent:** | Tuesday, November 26, 2013 8:05 AM |
| **To:** | Marc@retrophin.com; Greebel, Evan L.; saselage@sbcglobal.net; neal@corenliusgolding.com; Jsphealth@optonline.net; Martin@retrophin.com |
| **Subject:** | Re: RTRX Written Consent - Input |

Thanks for sharing this.
I am fine with the numbers in the CEO's agreement - skewing it to medium/long term value creation is a strong message - we can reward the short term achievements/performance via the annual bonus.
Happy to sign the consent once Evan makes the changes to the agreement that I referred to in my earlier email
Have a good thanksgiving


-----Original Message-----
From: Marc Panoff <Marc@retrophin.com>
To: Steve Richardson <sgrichardson2@aol.com>; evan.greebel <evan.greebel@kattenlaw.com>; saselage <saselage@sbcglobal.net>; neal <neal@corenliusgolding.com>; jsphealth <jsphealth@optonline.net>; Martin Shkreli <Martin@retrophin.com>
Sent: Mon, Nov 25, 2013 10:38 am
Subject: RE: RTRX Written Consent - Input

Attached please find the analysis performed by our compensation consultants.

** Please note the change in my office phone number **

Marc Panoff
Chief Financial Officer
Retrophin, Inc.
777 Third Ave., 22nd Floor
New York, NY 10017
www.retrophin.com

Office: (646) 564-3671
Fax: (646) 861-6485
Cell: (914) 715-0029
marc@retrophin.com

From: Steve Richardson [mailto:sgrichardson2@aol.com]
Sent: Monday, November 25, 2013 8:03 AM
To: evan.greebel@kattenlaw.com; saselage@sbcglobal.net; neal@corenliusgolding.com; jsphealth@optonline.net; Martin Shkreli
Cc: Marc Panoff
Subject: Re: RTRX Written Consent - Input

Evan, I hope you have a good thanksgiving planned this week.

I did review the documents and offer the following input:
1. I am OK with the repurchase agreement
2. With regard to the CEO agreement a few points
    - It would have been preferable to have had the Board engage with the outside consultant preparing the compensation strategy/plan for the company, so we could see the alignment of thinking with the CEO compensation too. I realize we need to lock Martin's agreement but we should accelerate the work Marc is doing with the compensation consultant and get the Board engaged with it

1

E. GREEBEL

DX-1295

KMR_RTRX_044385
R-Greebel0000007456

CONFIDENTIAL

- One specific change in language I call for - under 3(b) - at present the bonus is left in a very vague form, albeit at the Board's discretion. I would like to see something along these lines added.......at the discretion of the Board, based upon specific goals and performance metrics agreed from time to time with the CEO

- I don't see any reference in the agreement to ensuring the CEO does not engage in any political commentary/activities which could be construed as relating to his role at Retrophin - is that covered under the code of conduct?

Once you hear from the other Board members I would appreciate input on the above and then I am ready to sign the consent

regards
Steve

-----Original Message-----
From: Greebel, Evan L. <evan.greebel@kattenlaw.com>
To: Sgrichardson2 <Sgrichardson2@aol.com>; saselage <saselage@sbcglobal.net>; neal <neal@corenliusgolding.com>; jsphealth <jsphealth@optonline.net>; Martin Shkreli <Martin@retrophin.com>
Cc: Marc Panoff <Marc@retrophin.com>
Sent: Fri, Nov 22, 2013 11:59 am
Subject: RTRX Written Consent

Gentlemen,

Attached is a written consent for Retrophin, Inc. for the approval of Martin's employment agreement and a Repurchase Agreement to be entered into with Ladenburg Thalmann. Also, attached for your review are copies of Martin's employment agreement and the agreement with Ladenburg.

Please sign the Unanimous Written Consent and pdf it to me. If it is easier to fax, my fax number is 212-894-5883.

If you have any questions or comments, please call me at 212-940-6383.

Best regards,
Evan

**EVAN L. GREEBEL**
Partner
**Katten Muchin Rosenman LLP**
575 Madison Avenue
New York, NY 10022-2585
(212) 940-6383
(212) 894-5883 (f)

==============================================================
CIRCULAR 230 DISCLOSURE: Pursuant to Regulations Governing Practice Before the Internal Revenue
Service, any tax advice contained herein is not intended or written to be used and cannot be used
by a taxpayer for the purpose of avoiding tax penalties that may be imposed on the taxpayer.
==============================================================
CONFIDENTIALITY NOTICE:
This electronic mail message and any attached files contain information intended for the exclusive
use of the individual or entity to whom it is addressed and may contain information that is
proprietary, privileged, confidential and/or exempt from disclosure under applicable law.  If you
are not the intended recipient, you are hereby notified that any viewing, copying, disclosure or
distribution of this information may be subject to legal restriction or sanction.  Please notify

CONFIDENTIAL

KMR_RTRX_044386
R-Greebel0000007457

the sender, by electronic mail or telephone, of any unintended recipients and delete the original
message without making any copies.
================================================================
NOTIFICATION:  Katten Muchin Rosenman LLP is an Illinois limited liability partnership that has
elected to be governed by the Illinois Uniform Partnership Act (1997).
================================================================

3

CONFIDENTIAL

KMR_RTRX_044387
R-Greebel0000007458

| From: | Stephen Aselage <saselage@sbcglobal.net> |
| Sent: | Tuesday, November 26, 2013 10:08 AM |
| To: | Greebel, Evan L. |
| Subject: | Re: RTRX Written Consent - Input |



Approved.  you should have received the pdf of the signature sheet yesterday.

Steve

**From:** "Greebel, Evan L." <evan.greebel@kattenlaw.com>
**To:** Steve Richardson <sgrichardson2@aol.com>; "Marc@retrophin.com" <Marc@retrophin.com>;
"saselage@sbcglobal.net" <saselage@sbcglobal.net>; "neal@corenliusgolding.com" <neal@corenliusgolding.com>;
"jsphealth@optonline.net" <jsphealth@optonline.net>; "Martin@retrophin.com" <Martin@retrophin.com>
**Sent:** Tuesday, November 26, 2013 7:02 AM
**Subject:** RE: RTRX Written Consent - Input

Gentlemen, attached is a marked revised draft of Martin's employment agreement reflecting the change that
Steve requested to Section 3(b). Also, RTRX's Code of Ethics contains restrictions on political activity and
specifies that political actions by an individual can only be undertaken in their personal capacity.

If the revised agreement is acceptable, please send me an email confirming your approval.

If you have any questions or comments, please call me at 212-940-6383.

Best regards,
Evan

**EVAN L. GREEBEL**
Partner
**Katten Muchin Rosenman LLP**
575 Madison Avenue
New York, NY 10022-2585
(212) 940-6383
(212) 894-5883 (f)
**From:** Steve Richardson [mailto:sgrichardson2@aol.com]
**Sent:** Tuesday, November 26, 2013 8:05 AM
**To:** Marc@retrophin.com; Greebel, Evan L.; saselage@sbcglobal.net; neal@corenliusgolding.com; jsphealth@optonline.net;
Martin@retrophin.com
**Subject:** Re: RTRX Written Consent - Input

Thanks for sharing this.
I am fine with the numbers in the CEO's agreement - skewing it to medium/long term value creation is a strong message - we can
reward the short term achievements/performance via the annual bonus.
Happy to sign the consent once Evan makes the changes to the agreement that I referred to in my earlier email
Have a good thanksgiving

-----Original Message-----
**From:** Marc Panoff <Marc@retrophin.com>
**To:** Steve Richardson <sgrichardson2@aol.com>; evan.greebel <evan.greebel@kattenlaw.com>; sasclage <saselage@sbcglobal.net>;
neal <neal@corenliusgolding.com>; jsphealth <jsphealth@optonline.net>; Martin Shkreli <Martin@retrophin.com>

1

CONFIDENTIAL

KMR_RTRX_044489
R-Greebel0000007459

Sent: Mon, Nov 25, 2013 10:38 am
Subject: RE: RTRX Written Consent - Input

Attached please find the analysis performed by our compensation consultants.

** Please note the change in my office phone number **

Marc Panoff
Chief Financial Officer
Retrophin, Inc.
777 Third Ave., 22nd Floor
New York, NY 10017
www.retrophin.com

Office: (646) 564-3671
Fax: (646) 861-6485
Cell: (914) 715-0029
marc@retrophin.com

**From:** Steve Richardson [mailto:sgrichardson2@aol.com]
**Sent:** Monday, November 25, 2013 8:03 AM
**To:** evan.greebel@kattenlaw.com; saselage@sbcglobal.net; neal@corenliusgolding.com; jsphealth@optonline.net; Martin Shkreli
**Cc:** Marc Panoff
**Subject:** Re: RTRX Written Consent - Input

Evan, I hope you have a good thanksgiving planned this week.

I did review the documents and offer the following input:
1. I am OK with the repurchase agreement
2. With regard to the CEO agreement a few points
    - It would have been preferable to have had the Board engage with the outside consultant preparing the compensation strategy/plan for the company, so we could see the alignment of thinking with the CEO compensation too. I realize we need to lock Martin's agreement but we should accelerate the work Marc is doing with the compensation consultant and get the Board engaged with it
    - One specific change in language I call for - under 3(b) - at present the bonus is left in a very vague form, albeit at the Board's discretion. I would like to see something along these lines added.......at the discretion of the Board, based upon specific goals and performance metrics agreed from time to time with the CEO
    - I don't see any reference in the agreement to ensuring the CEO does not engage in any political commentary/activities which could be construed as relating to his role at Retrophin - is that covered under the code of conduct?

Once you hear from the other Board members I would appreciate input on the above and then I am ready to sign the consent


regards
Steve

-----Original Message-----
From: Greebel, Evan L. <evan.greebel@kattenlaw.com>
To: Sgrichardson2 <Sgrichardson2@aol.com>; saselage <saselage@sbcglobal.net>; neal <neal@corenliusgolding.com>; jsphealth <jsphealth@optonline.net>; Martin Shkreli <Martin@retrophin.com>
Cc: Marc Panoff <Marc@retrophin.com>
Sent: Fri, Nov 22, 2013 11:59 am
Subject: RTRX Written Consent

Gentlemen,

Attached is a written consent for Retrophin, Inc. for the approval of Martin's employment agreement and a Repurchase Agreement to be entered into with Ladenburg Thalmann. Also, attached for your review are copies of Martin's employment agreement and the agreement with Ladenburg.

Please sign the Unanimous Written Consent and pdf it to me. If it is easier to fax, my fax number is 212-894-5883.

CONFIDENTIAL

KMR_RTRX_044490
R-Greebel0000007460

If you have any questions or comments, please call me at 212-940-6383.

Best regards,
Evan


**EVAN L. GREEBEL**
Partner
**Katten Muchin Rosenman LLP**
575 Madison Avenue
New York, NY 10022-2585
(212) 940-6383
(212) 894-5883 (f)

==================================================================
CIRCULAR 230 DISCLOSURE: Pursuant to Regulations Governing Practice Before the Internal Revenue
Service, any tax advice contained herein is not intended or written to be used and cannot be used
by a taxpayer for the purpose of avoiding tax penalties that may be imposed on the taxpayer.
==================================================================
CONFIDENTIALITY NOTICE:
This electronic mail message and any attached files contain information intended for the exclusive
use of the individual or entity to whom it is addressed and may contain information that is
proprietary, privileged, confidential and/or exempt from disclosure under applicable law.  If you
are not the intended recipient, you are hereby notified that any viewing, copying, disclosure or
distribution of this information may be subject to legal restriction or sanction.  Please notify
the sender, by electronic mail or telephone, of any unintended recipients and delete the original
message without making any copies.
==================================================================
NOTIFICATION:  Katten Muchin Rosenman LLP is an Illinois limited liability partnership that has
elected to be governed by the Illinois Uniform Partnership Act (1997).
==================================================================

3

CONFIDENTIAL

KMR_RTRX_044491
R-Greebel0000007461

| | |
|---|---|
| **From:** | jeff paley <jsphealth@optonline.net> |
| **Sent:** | Tuesday, November 26, 2013 11:40 AM |
| **To:** | Greebel, Evan L. |
| **Subject:** | RE: RTRX Written Consent - Input |

I consent

Jeff Paley MD

**From:** Greebel, Evan L. [mailto:evan.greebel@kattenlaw.com]
**Sent:** Tuesday, November 26, 2013 10:02 AM
**To:** Steve Richardson; Marc@retrophin.com; saselage@sbcglobal.net; neal@corenliusgolding.com; jsphealth@optonline.net; Martin@retrophin.com
**Subject:** RE: RTRX Written Consent - Input

Gentlemen, attached is a marked revised draft of Martin's employment agreement reflecting the change that Steve requested to Section 3(b). Also, RTRX's Code of Ethics contains restrictions on political activity and specifies that political actions by an individual can only be undertaken in their personal capacity.

If the revised agreement is acceptable, please send me an email confirming your approval.

If you have any questions or comments, please call me at 212-940-6383.

Best regards,
Evan

**EVAN L. GREEBEL**
Partner
**Katten Muchin Rosenman LLP**
575 Madison Avenue
New York, NY 10022-2585
(212) 940-6383
(212) 894-5883 (f)
**From:** Steve Richardson [mailto:sgrichardson2@aol.com]
**Sent:** Tuesday, November 26, 2013 8:05 AM
**To:** Marc@retrophin.com; Greebel, Evan L.; saselage@sbcglobal.net; neal@corenliusgolding.com; jsphealth@optonline.net; Martin@retrophin.com
**Subject:** Re: RTRX Written Consent - Input

Thanks for sharing this.
I am fine with the numbers in the CEO's agreement - skewing it to medium/long term value creation is a strong message - we can reward the short term achievements/performance via the annual bonus.
Happy to sign the consent once Evan makes the changes to the agreement that I referred to in my earlier email
Have a good thanksgiving

-----Original Message-----
From: Marc Panoff <Marc@retrophin.com>
To: Steve Richardson <sgrichardson2@aol.com>; evan.greebel <evan.greebel@kattenlaw.com>; saselage <saselage@sbcglobal.net>; neal <neal@corenliusgolding.com>; jsphealth <jsphealth@optonline.net>; Martin Shkreli <Martin@retrophin.com>
Sent: Mon, Nov 25, 2013 10:38 am
Subject: RE: RTRX Written Consent - Input

Attached please find the analysis performed by our compensation consultants.

KMR_RTRX_084549
R-Greebel0000007465

CONFIDENTIAL

** Please note the change in my office phone number **

Marc Panoff
Chief Financial Officer
Retrophin, Inc.
777 Third Ave., 22nd Floor
New York, NY 10017
www.retrophin.com

Office: (646) 564-3671
Fax: (646) 861-6485
Cell: (914) 715-0029
marc@retrophin.com

**From:** Steve Richardson [mailto:sgrichardson2@aol.com]
**Sent:** Monday, November 25, 2013 8:03 AM
**To:** evan.greebel@kattenlaw.com; saselage@sbcglobal.net; neal@corenliusgolding.com; jsphealth@optonline.net; Martin Shkreli
**Cc:** Marc Panoff
**Subject:** Re: RTRX Written Consent - Input

Evan, I hope you have a good thanksgiving planned this week.

I did review the documents and offer the following input:
1. I am OK with the repurchase agreement
2. With regard to the CEO agreement a few points
      - It would have been preferable to have had the Board engage with the outside consultant preparing the compensation strategy/plan for the company, so we could see the alignment of thinking with the CEO compensation too. I realize we need to lock Martin's agreement but we should accelerate the work Marc is doing with the compensation consultant and get the Board engaged with it
      - One specific change in language I call for - under 3(b) - at present the bonus is left in a very vague form, albeit at the Board's discretion. I would like to see something along these lines added.......at the discretion of the Board, based upon specific goals and performance metrics agreed from time to time with the CEO
      - I don't see any reference in the agreement to ensuring the CEO does not engage in any political commentary/activities which could be construed as relating to his role at Retrophin - is that covered under the code of conduct?

Once you hear from the other Board members I would appreciate input on the above and then I am ready to sign the consent

regards
Steve

-----Original Message-----
From: Greebel, Evan L. <evan.greebel@kattenlaw.com>
To: Sgrichardson2 <Sgrichardson2@aol.com>; saselage <saselage@sbcglobal.net>; neal <neal@corenliusgolding.com>; jsphealth <jsphealth@optonline.net>; Martin Shkreli <Martin@retrophin.com>
Cc: Marc Panoff <Marc@retrophin.com>
Sent: Fri, Nov 22, 2013 11:59 am
Subject: RTRX Written Consent

Gentlemen,

Attached is a written consent for Retrophin, Inc. for the approval of Martin's employment agreement and a Repurchase Agreement to be entered into with Ladenburg Thalmann. Also, attached for your review are copies of Martin's employment agreement and the agreement with Ladenburg.

Please sign the Unanimous Written Consent and pdf it to me. If it is easier to fax, my fax number is 212-894-5883.

If you have any questions or comments, please call me at 212-940-6383.

Best regards,

CONFIDENTIAL

KMR_RTRX_084550
R-Greebel0000007466

Evan

**EVAN L. GREEBEL**
Partner
**Katten Muchin Rosenman LLP**
575 Madison Avenue
New York, NY 10022-2585
(212) 940-6383
(212) 894-5883 (f)

===============================================================
CIRCULAR 230 DISCLOSURE: Pursuant to Regulations Governing Practice Before the Internal Revenue
Service, any tax advice contained herein is not intended or written to be used and cannot be used
by a taxpayer for the purpose of avoiding tax penalties that may be imposed on the taxpayer.
===============================================================

CONFIDENTIALITY NOTICE:
This electronic mail message and any attached files contain information intended for the exclusive
use of the individual or entity to whom it is addressed and may contain information that is
proprietary, privileged, confidential and/or exempt from disclosure under applicable law.  If you
are not the intended recipient, you are hereby notified that any viewing, copying, disclosure or
distribution of this information may be subject to legal restriction or sanction.  Please notify
the sender, by electronic mail or telephone, of any unintended recipients and delete the original
message without making any copies.
===============================================================

NOTIFICATION:  Katten Muchin Rosenman LLP is an Illinois limited liability partnership that has
elected to be governed by the Illinois Uniform Partnership Act (1997).
===============================================================

KMR_RTRX_084551
R-Greebel0000007467

CONFIDENTIAL

| | |
|---|---|
| From: | Greebel, Evan L. <evan.greebel@kattenlaw.com> |
| Sent: | Tuesday, November 26, 2013 3:20 PM |
| To: | neal@corneliusgolding.com |
| Subject: | RE: FW: RTRX Written Consent - Input |

thanks

**EVAN L. GREEBEL**
Partner
**Katten Muchin Rosenman LLP**
575 Madison Avenue
New York, NY 10022-2585
(212) 940-6383
(212) 894-5883 (f)

**From:** neal@corneliusgolding.com [mailto:neal@corneliusgolding.com]
**Sent:** Tuesday, November 26, 2013 10:19 AM
**To:** Greebel, Evan L.
**Subject:** RE: FW: RTRX Written Consent - Input

Evan ok by me thanks

Neal Golding
11378 Old Harbour Rd
North Palm Beach Fla 33408
561-630-4697
201-924-1933(cell)

Neal Golding
100 Wilson Road
Apartment 54
Springfield, New Jersey 07081
973-218-6174
201-924-1933 (cell)

-------- Original Message --------
Subject: FW: RTRX Written Consent - Input
From: "Greebel, Evan L." <evan.greebel@kattenlaw.com>
Date: Tue, November 26, 2013 10:03 am
To: "neal@corneliusgolding.com" <neal@corneliusgolding.com>

**EVAN L. GREEBEL**
Partner
**Katten Muchin Rosenman LLP**
575 Madison Avenue
New York, NY 10022-2585
(212) 940-6383
(212) 894-5883 (f)

**From:** Greebel, Evan L.
**Sent:** Tuesday, November 26, 2013 10:02 AM

CONFIDENTIAL

R-Greebel0000007468

**To:** 'Steve Richardson'; Marc@retrophin.com; saselage@sbcglobal.net; neal@corenliusgolding.com; jsphealth@optonline.net; Martin@retrophin.com
**Subject:** RE: RTRX Written Consent - Input

Gentlemen, attached is a marked revised draft of Martin's employment agreement reflecting the change that Steve requested to Section 3(b). Also, RTRX's Code of Ethics contains restrictions on political activity and specifies that political actions by an individual can only be undertaken in their personal capacity.

If the revised agreement is acceptable, please send me an email confirming your approval.

If you have any questions or comments, please call me at 212-940-6383.

Best regards,
Evan


**EVAN L. GREEBEL**
Partner
**Katten Muchin Rosenman LLP**
575 Madison Avenue
New York, NY 10022-2585
(212) 940-6383
(212) 894-5883 (f)
**From:** Steve Richardson [mailto:sgrichardson2@aol.com]
**Sent:** Tuesday, November 26, 2013 8:05 AM
**To:** Marc@retrophin.com; Greebel, Evan L.; saselage@sbcglobal.net; neal@corenliusgolding.com; jsphealth@optonline.net; Martin@retrophin.com
**Subject:** Re: RTRX Written Consent - Input


Thanks for sharing this.
I am fine with the numbers in the CEO's agreement - skewing it to medium/long term value creation is a strong message - we can reward the short term achievements/performance via the annual bonus.
Happy to sign the consent once Evan makes the changes to the agreement that I referred to in my earlier email
Have a good thanksgiving

-----Original Message-----
From: Marc Panoff <Marc@retrophin.com>
To: Steve Richardson <sgrichardson2@aol.com>; evan.greebel <evan.greebel@kattenlaw.com>; saselage <saselage@sbcglobal.net>; neal <neal@corenliusgolding.com>; jsphealth <jsphealth@optonline.net>; Martin Shkreli <Martin@retrophin.com>
Sent: Mon, Nov 25, 2013 10:38 am
Subject: RE: RTRX Written Consent - Input

Attached please find the analysis performed by our compensation consultants.

** Please note the change in my office phone number **

Marc Panoff
Chief Financial Officer
Retrophin, Inc.
777 Third Ave., 22nd Floor
New York, NY 10017
www.retrophin.com

 R-Greebel0000007469

Office: (646) 564-3671
Fax: (646) 861-6485
Cell: (914) 715-0029
marc@retrophin.com

**From:** Steve Richardson [mailto:sgrichardson2@aol.com]
**Sent:** Monday, November 25, 2013 8:03 AM
**To:** evan.greebel@kattenlaw.com; saselage@sbcglobal.net; neal@corenliusgolding.com; jsphealth@optonline.net; Martin Shkreli
**Cc:** Marc Panoff
**Subject:** Re: RTRX Written Consent - Input

Evan, I hope you have a good thanksgiving planned this week.

I did review the documents and offer the following input:
1. I am OK with the repurchase agreement
2. With regard to the CEO agreement a few points
      - It would have been preferable to have had the Board engage with the outside consultant preparing the compensation strategy/plan for the company, so we could see the alignment of thinking with the CEO compensation too. I realize we need to lock Martin's agreement but we should accelerate the work Marc is doing with the compensation consultant and get the Board engaged with it
      - One specific change in language I call for - under 3(b) - at present the bonus is left in a very vague form, albeit at the Board's discretion. I would like to see something along these lines added.......at the discretion of the Board, based upon specific goals and performance metrics agreed from time to time with the CEO
      - I don't see any reference in the agreement to ensuring the CEO does not engage in any political commentary/activities which could be construed as relating to his role at Retrophin - is that covered under the code of conduct?

Once you hear from the other Board members I would appreciate input on the above and then I am ready to sign the consent

regards
Steve

-----Original Message-----
**From:** Greebel, Evan L. <evan.greebel@kattenlaw.com>
**To:** Sgrichardson2 <Sgrichardson2@aol.com>; saselage <saselage@sbcglobal.net>; neal <neal@corenliusgolding.com>; jsphealth <jsphealth@optonline.net>; Martin Shkreli <Martin@retrophin.com>
**Cc:** Marc Panoff <Marc@retrophin.com>
**Sent:** Fri, Nov 22, 2013 11:59 am
**Subject:** RTRX Written Consent

Gentlemen,

Attached is a written consent for Retrophin, Inc. for the approval of Martin's employment agreement and a Repurchase Agreement to be entered into with Ladenburg Thalmann. Also, attached for your review are copies of Martin's employment agreement and the agreement with Ladenburg.

Please sign the Unanimous Written Consent and pdf it to me. If it is easier to fax, my fax number is 212-894-5883.

If you have any questions or comments, please call me at 212-940-6383.

Best regards,
Evan

**EVAN L. GREEBEL**
Partner
**Katten Muchin Rosenman LLP**
575 Madison Avenue

 R-Greebel0000007470

New York, NY 10022-2585
(212) 940-6383
(212) 894-5883 (f)

================================================================

CIRCULAR 230 DISCLOSURE: Pursuant to Regulations Governing Practice Before the Internal Revenue
Service, any tax advice contained herein is not intended or written to be used and cannot be used
by a taxpayer for the purpose of avoiding tax penalties that may be imposed on the taxpayer.

================================================================

CONFIDENTIALITY NOTICE:
This electronic mail message and any attached files contain information intended for the exclusive
use of the individual or entity to whom it is addressed and may contain information that is
proprietary, privileged, confidential and/or exempt from disclosure under applicable law.  If you
are not the intended recipient, you are hereby notified that any viewing, copying, disclosure or
distribution of this information may be subject to legal restriction or sanction.  Please notify
the sender, by electronic mail or telephone, of any unintended recipients and delete the original
message without making any copies.

================================================================

NOTIFICATION:  Katten Muchin Rosenman LLP is an Illinois limited liability partnership that has
elected to be governed by the Illinois Uniform Partnership Act (1997).

================================================================

CONFIDENTIAL

R-Greebel0000007471

**From:** Greebel, Evan L. <evan.greebel@kattenlaw.com>
**Sent:** Monday, December 10, 2012 11:31 PM
**To:** 'martin@msmbcapital.com'
**Subject:** Re: Retrophin

Its taxplanning stuff, you are better oiff speaking with an accountant

-----------------------------------------------------------

CIRCULAR 230 DISCLOSURE: Pursuant to Regulations Governing Practice Before the Internal Revenue Service, any tax advice contained herein is not intended or written to be used and cannot be used by a taxpayer for the purpose of avoiding tax penalties that may be imposed on the taxpayer.

**From:** Martin Shkreli [mailto:Martin@msmbcapital.com]
**Sent:** Monday, December 10, 2012 06:28 PM
**To:** Greebel, Evan L.
**Subject:** RE: Retrophin

forget 401k/ira we wont use that

**From:** Greebel, Evan L. [mailto:evan.greebel@kattenlaw.com]
**Sent:** Monday, December 10, 2012 6:28 PM
**To:** Martin Shkreli
**Subject:** Re: Retrophin

Once you sell the stock it creates a taxable event. Investing the proceeds in a separate transaction is a separate event.

Doing it through an IRA or 401k may have a different outcome--its a questions for a personal accountant

-----------------------------------------------------------

CIRCULAR 230 DISCLOSURE: Pursuant to Regulations Governing Practice Before the Internal Revenue Service, any tax advice contained herein is not intended or written to be used and cannot be used by a taxpayer for the purpose of avoiding tax penalties that may be imposed on the taxpayer.

**From:** Martin Shkreli [mailto:Martin@msmbcapital.com]
**Sent:** Monday, December 10, 2012 05:53 PM
**To:** Greebel, Evan L.
**Subject:** Retrophin

As I mentioned, we were thinking of having the Fearnow stock go into various LLCs, or split amonst an LLC and an individual (up to 7 or so times for each end-individual). Our hope is that this would avoid a taxation event as if that individual tries to use proceeds of the capital pre-tax to make some kind of investment or payment (possibly for the benefit of Retrophin). one question is can we pay bills this way, with pre-tax money, to Ligand, Katten and or others and not pay the capital gains tax?

E. GREEBEL

DX-5458

E. GREEBEL

**DX-5739**

| | |
|---|---|
| **From:** | **Martin Shkreli <Martin@msmbcapital.com>** |
| **Sent:** | **Saturday, December 22, 2012 5:56 PM** |
| **To:** | **Greebel, Evan L.** |
| **Subject:** | **RE: check this one out** |

Awesome, thanks

**From:** Greebel, Evan L. [mailto:evan.greebel@kattenlaw.com]
**Sent:** Saturday, December 22, 2012 9:41 AM
**To:** Martin Shkreli
**Subject:** Re: check this one out

I looked at the complaint and doesnt think it does. Your situation troy invested cash in the company and received a convertible note; troy converted it and then sold stock. That is why i insisted that troy convert and sell. Also, a 144 opinion was not used (per my insistance) and rather a 4(1) was used vis a vis his 4 yr holding period.

------------------------------------------------------

CIRCULAR 230 DISCLOSURE: Pursuant to Regulations Governing Practice Before the Internal Revenue Service, any tax advice contained herein is not intended or written to be used and cannot be used by a taxpayer for the purpose of avoiding tax penalties that may be imposed on the taxpayer.

**From:** Martin Shkreli [mailto:Martin@msmbcapital.com]
**Sent:** Saturday, December 22, 2012 08:53 AM
**To:** Greebel, Evan L.
**Subject:** RE: check this one out

Same – issue is how does it relate to us – if at all

**From:** Greebel, Evan L. [mailto:evan.greebel@kattenlaw.com]
**Sent:** Friday, December 21, 2012 11:13 PM
**To:** Martin Shkreli
**Subject:** Re: check this one out

Interesting issue--im curious why the sec contends that convertible debt is not a security; was that from the same situation or is this additional?

------------------------------------------------------

CIRCULAR 230 DISCLOSURE: Pursuant to Regulations Governing Practice Before the Internal Revenue Service, any tax advice contained herein is not intended or written to be used and cannot be used by a taxpayer for the purpose of avoiding tax penalties that may be imposed on the taxpayer.

**From:** Martin Shkreli [mailto:Martin@msmbcapital.com]
**Sent:** Friday, December 21, 2012 08:09 PM
**To:** Greebel, Evan L.
**Subject:** check this one out

### The Defendants' Convertible Debt Scheme

As part of their scheme to acquire and sell unregistered securities, the Defendants wrongly evaded Rule 144's one-year holding period by engaging in a convertible debt scheme in which they would sell unregistered shares immediately after acquiring them. To accomplish this scheme, the Defendants searched the market for convertible "aged debt," meaning

R049733

debt that had been on a penny stock issuer's books for at least as long as the Rule 144 holding period. The Defendants purchased the debt from the long-term creditors. They then procured attorney opinion letters stating that the debts were securities and could be converted to stock certificates without any restrictive legends because the original debt had been outstanding for more than one year.

Once the Defendants obtained the share certificates without the restrictive legends, they promptly sold the shares in the market. The Defendants obtained proceeds from the convertible debt scheme of more than $1 million.

The Defendants did not satisfy Rule 144 because the original debt was not a security. In many instances, for example, the original debt was akin to an "IOU" for services rendered or compensation owed to a current or former affiliate of the issuer.

CONFIDENTIAL

| | |
|---|---|
| **From:** | Greebel, Evan L. [evan.greebel@kattenlaw.com] |
| **Sent:** | Wednesday, February 27, 2013 6:44 PM |
| **To:** | Martin Shkreli |
| **Subject:** | RE: Tom Koestler |
| **Attachments:** | image001.gif |

Ok with me; bd needs to approve any grant—let me know the numbers

**EVAN L. GREEBEL**
Partner
**Katten Muchin Rosenman LLP**
575 Madison Avenue
New York, NY 10022-2585
(212) 940-6383
(212) 894-5883 (f)

**From:** Martin Shkreli [mailto:Martin@retrophin.com]
**Sent:** Wednesday, February 27, 2013 1:44 PM
**To:** Greebel, Evan L.
**Subject:** RE: Tom Koestler

combo would be great

**From:** Greebel, Evan L. [mailto:evan.greebel@kattenlaw.com]
**Sent:** Wednesday, February 27, 2013 1:42 PM
**To:** Martin Shkreli
**Subject:** RE: Tom Koestler

We discussed this at ranger game—do you want to give him some of the Fearnow stock or new restricted grant from company or combo?

**EVAN L. GREEBEL**
Partner
**Katten Muchin Rosenman LLP**
575 Madison Avenue
New York, NY 10022-2585
(212) 940-6383
(212) 894-5883 (f)

**From:** Martin Shkreli [mailto:Martin@retrophin.com]
**Sent:** Wednesday, February 27, 2013 1:41 PM
**To:** Greebel, Evan L.
**Subject:** FW: Tom Koestler

**From:** Steve Calvelli [mailto:scalvelli@capenh.com]
**Sent:** Wednesday, February 27, 2013 12:38 PM
**To:** Martin Shkreli; tkoestle@gmail.com
**Subject:** RE: Tom Koestler

Martin

E. GREEBEL

DX-6206

1

Do you have any updates for Tom?  Please let us know.  Thanks.

Steve Calvelli

Capital Enhancement LLC
465 South Street
Morristown, NJ 07960


(973) 326 1000 (phone)
(973) 326 1022 (fax)
(973) 477 4411 (cell)


scalvelli@capenh.com


Capital Enhancement Website:  www.capenh.com


IRS Circular 230 Notice:  This document cannot be used to avoid penalties imposed upon the taxpayer.

**From:** Martin Shkreli [mailto:Martin@retrophin.com]
**Sent:** Monday, February 18, 2013 3:37 PM
**To:** tkoestle@gmail.com; Steve Calvelli (scalvelli@capenh.com)
**Subject:** FW: Tom Koestler

Hi Guys,

I am making progress with resolving this issue. I have done all I can do until my service providers hammer out a direct way to address the issue. I admit Tom has complete and full rights to those shares - the best way to transfer them is on my accountants and lawyers to figure out - I apologize for clearly not putting enough pressure on them - partially this has been resolved by the fundraising - I have been in arrears with many service providers and finally we are in much better position.

Best,
Martin

**From:** Corey Massella [mailto:cmassella@seccpas.com]
**Sent:** Monday, February 18, 2013 3:33 PM
**To:** Leonora Izerne
**Cc:** Martin Shkreli; Michael M. Smith
**Subject:** RE: Tom Koestler

Sounds good!



CITRINCOOPERMAN

2

CONFIDENTIAL

**COREY L. MASSELLA**
Partner
**TEL** 212.697.1000 x1318 | **FAX** 212.697.1037
529 FIFTH AVENUE, NEW YORK, NY 10017
cmassella@citrincooperman.com | | CITRINCOOPERMAN.COM

**CAYMAN | CONNECTICUT | NEW JERSEY | NEW YORK | PENNSYLVANIA**

AN INDEPENDENT FIRM ASSOCIATED WITH MOORE STEPHENS

IRS 230 Disclaimer: As required by the new rules imposed by the IRS, we inform you that any U.S. tax advice contained in this communication (including attachments) is not intended or written to be used, and cannot be used, for the purpose of (I) avoiding penalties under the internal revenue code; or (II) promotions, marketing or recommending to another party any transactions or tax-related matters addressed herein

**From:** Leonora Izerne [mailto:Leonora@msmbcapital.com]
**Sent:** February 18, 2013 3:32 PM
**To:** Corey Massella
**Cc:** Martin Shkreli; Michael M. Smith
**Subject:** RE: Tom Koestler

You're welcome, Corey.

Tomorrow at 1:45pm will work just fine.
Shall Martin call you on your direct line?

Thanks,
Nora

**From:** Corey Massella [cmassella@seccpas.com]
**Sent:** Monday, February 18, 2013 3:29 PM
**To:** Leonora Izerne
**Cc:** Martin Shkreli; Michael M. Smith
**Subject:** RE: Tom Koestler

Nora

Thank you, I maybe back from a meeting at 1:30, but to be safe how is 1:45 pm?



CITRINCOOPERMAN
**COREY L. MASSELLA**
Partner
**TEL** 212.697.1000 x1318 | **FAX** 212.697.1037
529 FIFTH AVENUE, NEW YORK, NY 10017
cmassella@citrincooperman.com | | CITRINCOOPERMAN.COM
**CAYMAN | CONNECTICUT | NEW JERSEY | NEW YORK | PENNSYLVANIA**
AN INDEPENDENT FIRM ASSOCIATED WITH MOORE STEPHENS
IRS 230 Disclaimer: As required by the new rules imposed by the IRS, we inform you that any U.S. tax advice contained in this communication (including attachments) is not intended or written to be used, and cannot be used, for the purpose of (I) avoiding penalties under the internal revenue code; or (II) promotions, marketing or recommending to another party any transactions or tax-related matters addressed herein

**From:** Leonora Izerne [mailto:Leonora@msmbcapital.com]
**Sent:** February 18, 2013 3:10 PM
**To:** Corey Massella
**Cc:** Martin Shkreli; Michael M. Smith
**Subject:** RE: Tom Koestler

3

CONFIDENTIAL

R023220

Good afternoon, Cory.

Martin actually has a meeting at that time tomorrow, but will be free from
11:45am - 2:45pm, if you have approx. 1 hour available then?

If not, he's free until that late afternoon on Thursday, or you can suggest other times
that will work for you.
Please let me know what works best.

Thank you very much.

Regards,
Nora

---

**From:** Corey Massella [cmassella@seccpas.com]
**Sent:** Saturday, February 16, 2013 12:21 PM
**To:** Martin Shkreli
**Cc:** Leonora Izerne; Michael M. Smith
**Subject:** RE: Tom Koestler

How is between 10:30 and 11:30 ?



**CITRIN**COOPERMAN
**COREY L. MASSELLA**
Partner
TEL 212.697.1000 x1318 | FAX 212.697.1037
529 FIFTH AVENUE, NEW YORK, NY 10017
cmassella@citrincooperman.com | | CITRINCOOPERMAN.COM
**CAYMAN | CONNECTICUT | NEW JERSEY | NEW YORK | PENNSYLVANIA**
AN INDEPENDENT FIRM ASSOCIATED WITH MOORE STEPHENS
IRS 230 Disclaimer: As required by the new rules imposed by the IRS, we inform you that any U.S. tax advice contained in this communication (including
attachments) is not intended or written to be used, and cannot be used, for the purpose of (I) avoiding penalties under the internal revenue code; or (II)
promotions, marketing or recommending to another party any transactions or tax-related matters addressed herein

---

**From:** Martin Shkreli [mailto:Martin@retrophin.com]
**Sent:** Saturday, February 16, 2013 12:20 PM
**To:** Corey Massella
**Cc:** Leonora Izerne; Michael M. Smith
**Subject:** RE: Tom Koestler

tuesday please

**From:** Corey Massella [mailto:cmassella@seccpas.com]
**Sent:** Saturday, February 16, 2013 12:10 PM
**To:** Martin Shkreli
**Cc:** Leonora Izerne; Michael M. Smith
**Subject:** RE: Tom Koestler

Between now and 1 pm would be good.

4

R023221

**From:** Martin Shkreli [mailto:Martin@retrophin.com]
**Sent:** Saturday, February 16, 2013 12:04 PM
**To:** Corey Massella
**Cc:** Leonora Izerne; Michael M. Smith
**Subject:** RE: Tom Koestler

okay set up a time to speak with me

**From:** Corey Massella [mailto:cmassella@seccpas.com]
**Sent:** Saturday, February 16, 2013 12:04 PM
**To:** Martin Shkreli
**Subject:** RE: Tom Koestler

Maybe I'm wasn't clear this call is between you and I. Thanks.



**CITRINCOOPERMAN**
**COREY L. MASSELLA**
Partner
TEL 212.697.1000 x1318 | FAX 212.697.1037
529 FIFTH AVENUE, NEW YORK, NY 10017
cmassella@citrincooperman.com | | CITRINCOOPERMAN.COM
**CAYMAN | CONNECTICUT | NEW JERSEY | NEW YORK | PENNSYLVANIA**
AN INDEPENDENT FIRM ASSOCIATED WITH MOORE STEPHENS
IRS 230 Disclaimer: As required by the new rules imposed by the IRS, we inform you that any U.S. tax advice contained in this communication (including attachments) is not intended or written to be used, and cannot be used, for the purpose of (I) avoiding penalties under the internal revenue code; or (II) promotions, marketing or recommending to another party any transactions or tax-related matters addressed herein .

**From:** Martin Shkreli [mailto:Martin@retrophin.com]
**Sent:** Saturday, February 16, 2013 12:02 PM
**To:** Leonora Izerne; Michael M. Smith
**Cc:** Corey Massella
**Subject:** FW: Tom Koestler

please set up a time

**From:** Corey Massella [mailto:cmassella@seccpas.com]
**Sent:** Saturday, February 16, 2013 11:53 AM
**To:** Martin Shkreli
**Cc:** GREEBEL, EVAN
**Subject:** RE: Tom Koestler

Martin

Suggest that we speak, are you available and where can I reach you.
Need to understand more and not through email.



**CITRINCOOPERMAN**

5

R023222

**COREY L. MASSELLA**
Partner
TEL 212.697.1000 x1318 | FAX 212.697.1037
529 FIFTH AVENUE, NEW YORK, NY 10017
cmassella@citrincooperman.com | | CITRINCOOPERMAN.COM
CAYMAN | CONNECTICUT | NEW JERSEY | NEW YORK | PENNSYLVANIA
AN INDEPENDENT FIRM ASSOCIATED WITH MOORE STEPHENS
IRS 230 Disclaimer: As required by the new rules imposed by the IRS, we inform you that any U.S. tax advice contained in this communication (including attachments) is not intended or written to be used,  and cannot be used, for the purpose of (I) avoiding penalties under the internal revenue code; or (II) promotions, marketing or recommending to another party any transactions or tax-related matters addressed herein

**From:** Martin Shkreli [mailto:Martin@retrophin.com]
**Sent:** Saturday, February 16, 2013 11:38 AM
**To:** Steve Calvelli
**Cc:** tkoestle@gmail.com; Corey Massella; Greebel, Evan L.
**Subject:** RE: Tom Koestler

Hi Steve. We are at an impasse because none of my service providers are willing to work to come up with a creative solution to this problem. I am CCing them in one last attempt before I fire them and find new ones. Can we all do a call together to situate this?

Martin

**From:** Steve Calvelli [mailto:scalvelli@capenh.com]
**Sent:** Thursday, February 14, 2013 4:19 PM
**To:** Martin Shkreli; Martin Shkreli
**Cc:** tkoestle@gmail.com
**Subject:** Tom Koestler

Martin

Congratulations on raising money in the private placement.  I am sure this is a big step towards future success for the company.

I presume that has been consuming your time.  Tom and I would like to call you tomorrow to discuss wrapping up the transfer of the 175,000 shares to Tom as noted below.

Thanks in advance.

Steve Calvelli

Capital Enhancement LLC
465 South Street
Morristown, NJ 07960

(973) 326 1000 (phone)
(973) 326 1022 (fax)
(973) 477 4411 (cell)

scalvelli@capenh.com

6

R023223

Capital Enhancement Website:  www.capenh.com

IRS Circular 230 Notice:  This document cannot be used to avoid penalties imposed upon the taxpayer.

**From:** Martin Shkreli [mailto:Martin@retrophin.com]
**Sent:** Friday, January 25, 2013 6:39 PM
**To:** Steve Calvelli; Martin Shkreli
**Cc:** tkoestle@gmail.com; Greebel, Evan L.
**Subject:** RE: Retrophin Investment

The general consensus is I will have to transfer the shares personally. The difficulty in that is it will look as if I have sold the stock to Tom.
I could 'surrender the stock as a party to an agreement' and Wall Street might absorb that news more easily... but it will definitely decrease my stake which I just want to be careful of regarding messaging.

I have CCed my attorney - it would be good if I could transfer the shares. It adds up to 175,000 shares, the value of which today is about $700,000.

Martin

**From:** Steve Calvelli [mailto:scalvelli@capenh.com]
**Sent:** Friday, January 25, 2013 1:36 PM
**To:** Martin Shkreli; Martin Shkreli
**Cc:** tkoestle@gmail.com
**Subject:** FW: Retrophin Investment

Martin

Could you please let us know where we are on Tom's 35,000 Common shares?  They are not reflected on the transfer agents books, nor have we heard anything from you or the accounting firm.  Thank you.

Steve Calvelli

Capital Enhancement LLC
465 South Street
Morristown, NJ 07960


(973) 326 1000 (phone)
(973) 326 1022 (fax)
(973) 477 4411 (cell)

scalvelli@capenh.com


Capital Enhancement Website:  www.capenh.com


IRS Circular 230 Notice:  This document cannot be used to avoid penalties imposed upon the taxpayer.

**From:** Steve Calvelli [mailto:scalvelli@capenh.com]
**Sent:** Sunday, January 13, 2013 7:26 PM

7

R023224

**To:** Martin Shkreli (Martin@retrophin.com)
**Cc:** tkoestle@gmail.com
**Subject:** FW: Retrophin Investment

Martin – attached as requested is the transfer agreement.  It was signed by you and Tom and you accepted it on behalf of the company.  Perhaps the accountants did not have this copy.   Regards.

Steve Calvelli

Capital Enhancement LLC
465 South Street
Morristown, NJ 07960


(973) 326 1000 (phone)
(973) 326 1022 (fax)
(973) 477 4411 (cell)

scalvelli@capenh.com


Capital Enhancement Website:  www.capenh.com


IRS Circular 230 Notice:  This document cannot be used to avoid penalties imposed upon the taxpayer.

**From:** Thomas Koestler [mailto:tkoestle@gmail.com]
**Sent:** Monday, December 03, 2012 3:55 PM
**To:** 'Steve Calvelli'
**Subject:** FW: Retrophin Investment



**From:** Thomas Koestler [mailto:tkoestle@gmail.com]
**Sent:** Monday, April 16, 2012 2:31 PM
**To:** martin@retrophin.com
**Cc:** tkoestle@gmail.com
**Subject:** RE: Retrophin Investment

Hi Martin,

Attached please find:
- Signed subscription agreement-please return an executed copy of the subscription when convenient.
- Signed transfer and Donee representation letter
- A wire transfer order has been made

Thanks,

Tom Koestler


**From:** Martin Shkreli [mailto:martin@retrophin.com]
**Sent:** Monday, April 16, 2012 11:52 AM

8

CONFIDENTIAL

R023225

**To:** martin@msmbcapital.com
**Subject:** Retrophin Investment

Friends,

Tomorrow at the close of business is the last day to invest in Retrophin's newest offering. Please see the attached documents (you may distribute them if necessary) and thank you.

Best,
Martin Shkreli
Retrophin LLC

==============================================================
CIRCULAR 230 DISCLOSURE: Pursuant to Regulations Governing Practice Before the Internal Revenue
Service, any tax advice contained herein is not intended or written to be used and cannot be used
by a taxpayer for the purpose of avoiding tax penalties that may be imposed on the taxpayer.
==============================================================
CONFIDENTIALITY NOTICE:
This electronic mail message and any attached files contain information intended for the exclusive
use of the individual or entity to whom it is addressed and may contain information that is
proprietary, privileged, confidential and/or exempt from disclosure under applicable law.  If you
are not the intended recipient, you are hereby notified that any viewing, copying, disclosure or
distribution of this information may be subject to legal restriction or sanction.  Please notify
the sender, by electronic mail or telephone, of any unintended recipients and delete the original
message without making any copies.
==============================================================
NOTIFICATION:  Katten Muchin Rosenman LLP is an Illinois limited liability partnership that has
elected to be governed by the Illinois Uniform Partnership Act (1997).
==============================================================

9

CONFIDENTIAL

R023226

| From: | Greebel, Evan L. <evan.greebel@kattenlaw.com> |
|---|---|
| Sent: | Tuesday, May 06, 2014 11:54 PM |
| To: | Marc Panoff |
| Subject: | Retrophin March 20, 2014- Audit Committee Minutes.DOC |
| Attachments: | Retrophin March 20, 2014- Audit Committee Minutes.DOC |

Attached is a draft of the 3/20 audit committee minutes

**EVAN L. GREEBEL**
Partner
**Katten Muchin Rosenman LLP**
575 Madison Avenue
New York, NY 10022-2585
(212) 940-6383
(212) 894-5883 (f)
================================================================
CIRCULAR 230 DISCLOSURE: Pursuant to Regulations Governing Practice Before the Internal
Revenue
Service, any tax advice contained herein is not intended or written to be used and cannot
be used
by a taxpayer for the purpose of avoiding tax penalties that may be imposed on the
taxpayer.
================================================================
CONFIDENTIALITY NOTICE:
This electronic mail message and any attached files contain information intended for the
exclusive
use of the individual or entity to whom it is addressed and may contain information that
is
proprietary, privileged, confidential and/or exempt from disclosure under applicable law.
If you
are not the intended recipient, you are hereby notified that any viewing, copying,
disclosure or
distribution of this information may be subject to legal restriction or sanction.  Please
notify
the sender, by electronic mail or telephone, of any unintended recipients and delete the
original
message without making any copies.
================================================================
NOTIFICATION:  Katten Muchin Rosenman LLP is an Illinois limited liability partnership
that has
elected to be governed by the Illinois Uniform Partnership Act (1997).
================================================================

E. GREEBEL

DX-10830

CONFIDENTIAL

R024310

DRAFT

## MINUTES OF A SPECIAL MEETING
## OF
## THE AUDIT COMMITTEE OF THE
## BOARD OF DIRECTORS
## OF
## RETROPHIN, INC.

### March 20, 2014

A special meeting of the Audit Committee of the Board of Directors (the "Committee") of Retrophin, Inc. (the "Company") took place via teleconference on Thursday, March 20, 2014, where all members could hear and be heard.

The following members of the Board were present in person or by telephone: Cornelius Golding and Jeffrey Paley. Marc Panoff, the Company's Chief Financial Officer, Evan L. Greebel, of Katten Muchin Rosenman LLP, counsel to the Company and Edward Hackert and Sunil Jain, of Marcum LLP, the Company's independent registered public accounting firm ("Marcum") were also present.

Mr. Golding acted as Chairman of the meeting and Mr. Greebel acted as Secretary.

Mr. Golding confirmed that a quorum was present and called the meeting to order at 10:00 a.m.

Mr. Golding asked Mr. Hackert to advise the Committee on the status of the audit for the year ended December 31, 2013. Mr. Hackert advised the Committee that the audit for the year ended December 31, 2013 was completed.

Next, the Board reviewed and discussed a draft of the Company's Annual Report on Form 10-K for the fiscal year ended December 31, 2013 (the "2013 10-K"), including the following issues with management and Marcum:

- The audited financial statements;

- The Company's cash balance, securities owned, assets, liabilities and contingent liabilities and number of shares outstanding as of December 31, 2013;

- The status of the Note receivable from MSMB Capital Management;

- Management's discussion and analysis;

- Critical accounting and auditing principles and practices; and

- The adequacy of internal controls

Management advised the Committee of its determination that certain warrants issued to a placement agent in connection with the February Private Placement were not properly recorded

1

100498817

and certain expenses were overstated in the Company's condensed consolidated financial statements for the first quarter of 2013. As a result of such determinations, certain adjustments to the Company's Operating loss, Non-Operating loss, Net Loss and Net Loss per common share would need to made.

Management advised the Board that they evaluated the Company's controls and procedures and determined that as of December 31, 2013, the Company's disclosure controls are not effective to ensure that information required to be disclosed by the Company in reports that it files or submits under the Exchange Act (i) is recorded, processed, summarized and reported, within the time periods specified in the SEC rules and forms and (ii) is accumulated and communicated to the Company's management, as appropriate to allow timely decisions regarding required disclosure.  Management also determined that as of December 31, 2013, internal controls over financial reporting were not effective as of December 31, 2013.  As of December 31, 2013, management identified certain matters that constituted material weaknesses in the Company's internal controls over financial reporting, specific material weaknesses including the fact that the Company (i) experienced difficulty in generating a form and format that facilitates the timely analysis of information needed to produce accurate financial reports, (ii) experienced difficulty in applying complex accounting and financial reporting and disclosure rules required under GAAP and the SEC reporting regulations, and (iii) has limited segregation of duties.

Next, the Company's external auditors, Marcum LLP gave a report on the following issues:

- Matters required to be discussed by SAS No. 61 relating to the conduct of the audit;

- The Company's accounting principles and disclosure practices;

- The outside auditor's relationships with the Company in order to evaluate its continued independence;

- Reports required to be submitted to the Committee and the Board under Section 10A of the Securities Exchange Act of 1934, as amended; and

- Any disagreement or difficulties with management, with none reported.

Next, the Committee reviewed the CEO and CFO certifications pursuant to Sections 302 and 906 of the Sarbanes-Oxley Act of 2002 ("SOX") to be included in the Company's Annual Report on Form 10-K for the fiscal year ended December 31, 2013 and the related earnings press release (the "Release") summarizing the Company's performance for the fiscal year ended December 31, 2013. Following their presentation the representatives of Marcum left the meeting.

Management updated the Committee on the status of the acquisition of Manchester Pharmaceuticals, LLC ("Manchester") and advised the Committee that management has determined that the Company will be required to conduct an audit of Manchester in connection with their disclosure obligations under the federal securities laws and that management

100498817

CONFIDENTIAL

R024312

recommends that the Company retain BDO USA LLP in connection with the required audit in accordance with the engagement letter attached hereto as <u>Exhibit A</u>.

Mr. Golding asked Mr. Panoff to discuss the weaknesses in the Company's disclosure controls and internal controls over financial reporting as well as the Company's anticipated reporting obligations under Section 404 of SOX. Mr. Panoff advised the Committee that management is would like to engage Centri Business Consulting LLC ("<u>Centri</u>") to assist management with these obligations in accordance with the engagement letter attached hereto as <u>Exhibit B</u>. The Committee asked Mr. Panoff questions about Centri, their services and the materials they previously provided to the Committee and discussed such information.

After a discussion of the above matters, the Board unanimously approved and adopted the following resolutions:

**NOW THEREFOR BE AND IT IS HEREBY RESOLVED,** that the 2013 10-K be, and hereby is, approved in all material respects for filing with the SEC, subject to editorial comments and other minor changes deemed necessary or desirable by the officers of the Company filing such report and the mailing of same to the Company's stockholders;

**FURTHER RESOLVED,** that the Release in form and substance previously provided to the Committee be issued with such changes as the officers of the Company determine are appropriate;

**FURTHER RESOLVED,** that the engagement letter with BDO USA LLC, attached hereto as <u>Exhibit A</u>, be, and it hereby is, adopted and approved in all respects;

**FURTHER RESOLVED,** that the engagement letter with Centri, attached hereto as <u>Exhibit B</u>, be, and it hereby is, adopted and approved in all respects;

**FURTHER RESOLVED,** that any and all actions heretofore taken by any officer of the Company and of any person or persons designated and authorized to act by any officer of the Company that would have been authorized by the foregoing resolutions are hereby ratified, affirmed, approved and adopted in all respects; and

**FURTHER RESOLVED,** that each of the officers of the Company, and any person or persons designated and authorized to do and perform or cause to be done and performed any acts in the name and on behalf of the Company, be, and each of them hereby is, authorized, empowered and directed, in the name and on behalf of the Company, to do and perform all other acts, to pay or cause to be paid on behalf of the Company all related costs and expenses and to execute and deliver or cause to be executed and delivered, such other notices, requests, demands, directions, consents, approvals, orders, applications, agreements, instruments, certificates, undertakings, supplements, amendments, further assurances or other agreements or communications of any kind, in the name and on behalf of the Company or otherwise, as such officer or such authorized person may deem necessary, advisable or appropriate to effectuate the intent and purposes of the foregoing resolutions or in furtherance of or to comply with the requirements of the agreements and instruments approved and authorized by the foregoing resolutions.

3

100498817

DRAFT

There being no further business to come before the Board in this meeting, the meeting was adjourned at 12:30 p.m.

_____
Evan Greebel, acting Secretary

100498817

4

CONFIDENTIAL

R024314