**GIBSON DUNN**

Gibson, Dunn & Crutcher LLP

555 Mission Street
San Francisco, CA 94105-0921
Tel 415.393.8200
www.gibsondunn.com

Winston Y. Chan
Direct: +1 415.393.8362
Fax: +1 415.374.8460
WChan@gibsondunn.com

December 13, 2017

VIA ECF

The Honorable Kiyo A. Matsumoto
United States District Court Judge
United States District Court for the Eastern District of New York
225 Cadman Plaza East
Brooklyn, NY 11201

Re:   *United States v. Greebel*, S1 15 Cr. 637 (KAM)

Dear Judge Matsumoto:

We respectfully submit this letter pursuant to the Court's Order of December 12, 2017 requesting "supplemental authority or jury charges" regarding certain topics discussed during yesterday's charging conference. In particular, this letter sets forth "authority for Mr. Greebel's position that the Court's charges must identify all the alleged co-conspirators for Counts Seven and Eight of the Superseding Indictment (referred to as Counts One and Two for the purposes of the instructions) and "authority for the Mr. Greebel's position that, if the jurors unanimously agree that a conspiracy existed, they must also unanimously agree on the identity of the co-conspirators." *See* Court 12/12/2017 Order.

Additionally, with respect to the government's proposed request to charge relating to Mr. *Shkreli*'s duty of loyalty, we objected during the charging conference on December 12, and respectfully submit additional support and authority for our position that the prosecution's proposed and eleventh hour request would be contrary to the charges, contrary to law, and extraordinarily prejudicial to Mr. Greebel.

**I.    We Respectfully Ask the Court's to Inform the Jury Regarding the Identify of the Individuals Whom the Government Alleged were Co-Conspirators**

We have not identified a Second Circuit case mandating that this Court identify the individuals whom the government has alleged are co-conspirators in the charged conspiracies in the proposed jury instructions. However, the Second Circuit has cautioned that generalities are not enough "in cases where the complexity of the evidence or other factors create a genuine danger of jury confusion." *United States v. Schiff*, 801 F.2d 108, 114-15 (2d Cir. 1986) (citing *United States v. Payseno*, 782 F.2d 832, 835-37 (9th Cir. 1986)). We respectfully submit that this is such a case. We submit that, in connection with informing the jury about the government's allegations, the Court should state that the government has alleged certain individuals are co-conspirators in the charged conspiracies and then name them. This is appropriate and necessary in this case because of (1) the complexity of the

**GIBSON DUNN**

The Honorable Kiyo A. Matsumoto
December 13, 2017
Page 2

charges, (2) the various theories of liability the government has charged in connection with the alleged conspiracy to commit wire fraud (MSMB backdating theory; the settlements theory; and the consultants theory), (3) the potential confusion for the jury about whom the government has alleged to be a co-conspirator involved in the charged conspiracies in the indictment, and (4) the existence of differences between the names of the alleged co-conspirators in Count Seven and Count Eight.

We further submit that the government provided the names of the co-conspirators to the defense weeks in advance of trial, and that such representations by the government are the equivalent to a bill of particulars.  We relied on such representations in preparing our defenses and presenting our defense case.  Among other things, we focused in part during trial on eliciting evidence and demonstrating that such individuals did not conspire to commit any illegal conduct and, moreover, that Mr. Greebel did not conspire with any of these individuals alleged to be co-conspirators.  To fairly evaluate whether the government has met its burden of proving beyond a reasonable doubt that the charged conspiracies existed and that Mr. Greebel became a member of such conspiracies, identifying the names of the people whom the government has alleged to be co-conspirators is one way for the jury to evaluate whether the government has met its burden.

Finally, without naming whom the government alleges are co-conspirators in the requests to charge, the government will have the option of not identifying them as co-conspirators for the jury, leaving the defense without an ability to really challenge the government's allegations of the people who were co-conspirators.  Should the government decide not to identify certain people as co-conspirators before the jury, it puts the defense in an awkward position of informing the jury that others were alleged co-conspirators—something the defense ordinarily does not and would not want to do for many reasons.

## II.  The Court's Should Instruct the Jury That It Must Unanimously Agree on Both the Existence of a Conspiracy and the Identity of the Co-Conspirators

The Second Circuit and other federal courts have held that, in certain circumstances, jurors must be instructed that they must unanimously agree on the identity of the defendant's co-conspirators.  For example, in *United States v. Lapier*, the Ninth Circuit Court of Appeals reversed the defendant's drug conspiracy conviction because the lower court failed to give a "specific unanimity" instruction *sua sponte* requiring the jurors to identify defendants' co-conspirators.  796 F.3d 109 (9th Cir. 2015).  That failure, according to the Ninth Circuit, constituted plain error and a violation of defendant's constitutional right to a unanimous jury verdict.  *Id.* at 1097–98 (citing Article III, § 2 and the Sixth Amendment).  "While jurors need not unanimously agree on the particular facts satisfying the overt act element of a conspiracy charge, jurors must still unanimously agree that the defendant is guilty of

**GIBSON DUNN**

The Honorable Kiyo A. Matsumoto
December 13, 2017
Page 3

participating in a particular conspiracy—i.e., of forming an agreement with at least one other particular individual to pursue a particular criminal goal." *Id*. at 1096 (internal citations omitted).

In so holding, the *Lapier* Court reasoned that a specific unanimity instruction is necessary where there is a "genuine possibility of juror confusion" because "the indictment is broad enough to encompass multiple separate and distinct conspiracies [and] the evidence adduced at trial tends to show multiple conspiracies." *Id.* at 1099-1100. The evidence in *Lapier* showed that the defendant conspired with one individual for a ten-month period and another person for the next four months, but did not indicate that the two alleged co-conspirators "had any agreement with each other or acted pursuant to a single conspiracy involving them both and spanning the single time period charged in the indictment." *Id.* at 1097. Therefore, the Ninth Circuit found that the case presented "nearly a perfect storm": "(1) the indictment was broadly worded and did not name the co-conspirators; (2) the indictment covered a specific time frame marked by specific dates that included both conspiracies; (3) the evidence adduced at trial credibly showed at least two separate conspiracies within the text and scope of the indictment; [and] (4) the district court itself concluded, after hearing the government's case, that the evidence showed two conspiracies." *Id.* at 1099.

The same factors are true here. The indictment is broadly worded and did not name all of the alleged co-conspirators; the indictment covered a long time frame marked by specific dates within multiple conspiracies; the evidence adduced at trial showed multiple alleged conspiracies within the scope of the indictment; there is evidence of multiple objects/conspiracies in Count Seven; and there are separate conspiracies charged in Counts Seven and Eight. As Your Honor stated, "the government has at least tacitly conceded there may be multiple objects, and it seems . . . that the evidence supports a view, the defense view that there could be more than one conspiracy" with respect to Count One. Tr. at 9205:11–14. Moreover, the government has alleged that there are different co-conspirators in Count Seven and Eight. *Compare* Ex. A (alleging Mr. Greebel's co-conspirators for Count One are Mr. Shkreli and "one or more of the following unindicted co-conspirators: Kevin Mulleady, Thomas Fernandez, Marek Biestek, Lee Yaffe, and Marc Panoff) *with* Ex. B (alleging that in addition to Mr. Shkreli, Mr. Greebel's alleged co-conspirators on Count Two are Biestek, Mulleady, Fernandez, Edmund Sullivan, Ron Tilles, and Andrew Vaino).

Given complications like these, courts in the Second Circuit have required juries to determine which, if any, co-conspirators entered into the charged conspiracy with a defendant. Recently, in *United States v. Van Hise*, No. S4 12-CR-847 (PGG), 2017 WL 3425750 (S.D.N.Y. Aug. 8, 2017), the district court denied two defendants' Rule 29 motion covering two kidnapping conspiracies, the first of which involved all three defendants and the second covering only two of them. In concluding there was sufficient evidence to

Case 1:15-cr-00637-KAM Document 488 Filed 12/13/17 Page 4 of 8 PageID #: 13135

**GIBSON DUNN**

The Honorable Kiyo A. Matsumoto
December 13, 2017
Page 4

convict the moving defendants on the first count, Judge Gardephe noted that he had instructed the jury that before convicting either defendant, they "must conclude that the government has proven beyond a reasonable doubt that that defendant actually intended that the kidnapping alleged by the government take place, and that that defendant agreed with, and had a meeting of the minds with *a co-conspirator named in the indictment* that the kidnapping alleged by the government take place." *Id.* at *30 n. 21 (emphasis added). Likewise, in *United States v. Aracri*, 968 F.2d 1512 (2d Cir. 1992), the Second Circuit affirmed defendants' convictions where the jury instructions stated, in pertinent part, "If you find that no conspiracy existed, then you must acquit the defendants on the conspiracy charge. However, if you find beyond a reasonable doubt that such a conspiracy existed, you then must determine whether – who were the members of that conspiracy." *Id.* at 1520.

### III. The Government's Proposed Duty of Loyalty Instruction Would Improperly Distract and Mislead the Jury

At yesterday's conference, the government sought—for the first time in *this* case—to insert language in the jury instructions for the purpose of alleging that a violation of a duty by Mr. Shkreli could be sufficient to satisfy the necessary element of an intent to breach a duty in Count Seven of the Superseding Indictment. For the reasons stated during the December 12 charging conference and below, we respectfully submit that this should not be permitted, and believe that such a proposed charge would be contrary to law, contrary to the indictment, contrary to the government's theory of the case, and create significant confusion.

Prior to trial and during trial, the government asserted and attempted to prove that Mr. Greebel was a corporate officer as a result of having an "acting secretary" position at Retrophin board meetings. The government elicited evidence during the testimony of Stephen Aselage and Steven Richardson, and through documents, relating to Mr. Greebel's "acting secretary" position and attempted to elicit evidence that such position created duties and responsibilities of an acting corporate officer of Retrophin. Indeed, the government's requests to charge were focused, in part, on asserting that Mr. Greebel had a duty of loyalty arising from his position as a corporate officer. The government requested the following language in its proposed instructions: "Another such duty, which applies to corporate officers and directors, is the duty of loyalty. That duty mandates that the best interest of the corporation and its shareholders takes precedence over any interest possessed by a director or officer, and not shared by the stockholders generally. However, in order for a failure to disclose material information to constitute a fraudulent representation for purposes of the wire fraud statute, *the defendant must have actually known such disclosure was required to be made*, and *must have failed to make such disclosure with the intent to defraud*." We respectfully submit that, in conjunction with the government's charges and prior submissions that Mr. Greebel was an alleged corporate officer as "acting secretary" at Board meetings,

**GIBSON DUNN**

The Honorable Kiyo A. Matsumoto
December 13, 2017
Page 5

the government's proposed charges were focused on Mr. Greebel—the defendant—allegedly acting as a corporate officer and failing to make disclosures pursuant to having that position.

After a multi-week trial, at the eleventh hour, the government is now changing its theory of the case and dropping any allegation that Mr. Greebel held the position of an acting corporate officer. During the charging conference on December 12, the government stated for the first time that Mr. Greebel was not a corporate officer of Retrophin. We respectfully submit that the government is now shifting its position in light of the overwhelming evidence that the defense introduced during trial that Mr. Greebel's "acting secretary" role at Board meetings did not make him a corporate officer.

Nevertheless, for the first time in this case, the government took a new position, proposing to allege that Mr. Greebel aided abetted a breach of duty by Mr. Shkreli: "[A]iding or agreeing to help Mr. Shkreli in defrauding Retrophin could be accomplished by helping or working with Mr. Shkreli, in violation of a duty, as well as Mr. Greebel's because it's not a substantive wire fraud count. That is, if an attorney helps an officer or director defraud a company, that could be conspiracy to commit wire fraud even if the attorney himself doesn't make specific representations or misrepresentations." Tr. at 9243:11–18. The government further offered to clarify that any "duty of loyalty" language added to the instructions would refer only to Mr. Shkreli's duty of loyalty to Retrophin, rather than any duty arising out of Mr. Greebel's practice of recording meeting minutes of Retrophin's Board of Directors. *See* Tr. at 9243:19–23 ("[W]e propose adding the sentence, wherever the defense wants in the paragraph, that Mr. Greebel was not an officer or director of Retrophin.").

The government's proposed "duty of loyalty" language has no bearing on whether or not Mr. Greebel entered into the conspiracy charged in Count One—and its inclusion in a case where the duty of loyalty is owed only by his alleged co-conspirator finds no support in the case law, secondary authorities, or even the prior charge in *Shkreli*. *See* Dkt. No. 296.

Specifically, the Court's draft instruction as to the first element of wire fraud ("Existence of Scheme to Defraud") purports to rely on Judge Sand's *Modern Federal Jury Instructions* ("Sand"), which provides:

> The failure to disclose information may also constitute a fraudulent representation if *the defendant* was under a legal, professional or contractual duty to make such disclosure, *the defendant* actually knew such disclosure was required to be made, and *the defendant* failed to make such disclosure with the intent to defraud.

Dkt. No. 485 at 50–53 (citing Sand, Instruction 44-4 (First Element – Scheme or Artifice to Defraud)) (emphases added).

GIBSON DUNN

The Honorable Kiyo A. Matsumoto
December 13, 2017
Page 6

The Court's final jury instructions in *United States v. Shkreli* and the government's most recent Requests to Charge also incorporate that standard in outlining the first element of wire fraud, reflecting that the only relevant duty to disclose belongs to the defendant himself. As the Court instructed the *Shkreli* jury,

> [a] fraudulent representation may include the failure to disclose material information if *the defendant* was under a legal, professional or contractual duty to make such a disclosure. . . . However, in order for a failure to disclose material information to constitute a fraudulent representation for purposes of the wire fraud statute, *the defendant* must have actually known such disclosure was required to be made, and must have failed to make such disclosure with the intent to defraud.

Dkt. No. 295 at 76 (emphases added). *See also* Dkt. No. 460-1 at 13-14 (government's November 28, 2017 Requests to Charge) (requesting that the Court instruct the jury that "a fraudulent representation may include the failure to disclose material information if *the defendant* was under a legal, professional, or contractual duty to make such a disclosure" and that "*the defendant* must have actually known such disclosure was required to be made, and must have failed to make such disclosure with the intent to defraud.").

Second Circuit precedent further illustrates that only a defendant's own duty to disclose may factor into a wire-fraud conviction. In *United States v. Szur*, which the Court cites in its draft instructions (Dkt. No. 485 at 49 n.4), the defendants, executives and employees of a broker-dealer, were convicted of wire fraud and conspiracy to commit wire fraud, *inter alia*, for agreeing to sell a public company's stock at inflated prices in exchange for inflated commissions concealed from their clients. 289 F.3d 200, 205-07 (2d Cir. 2002). Consistent with the instructions excerpted above, the district court instructed the jury that "[t]he concealment by a fiduciary of material information which *he or she* is under a duty to disclose to another, under circumstances where non-disclosure can or does result in harm to the other, can be a violation of the wire fraud statute." *Id.* at 210 (emphasis added). The Second Circuit affirmed defendants' convictions, noting that although the broker-dealers owed no general fiduciary duties to their clients, each of them nonetheless had a duty to disclose to them the material fact of their exorbitant commissions, and therefore, the omissions supported their wire fraud convictions. *Id.* at 212. There had to be a finding that each defendant had breached a duty.

The government has cited no authority, and we have not located any, that supports instructing a jury to consider, in the context of a conspiracy case, the fiduciary duties of an alleged co-conspirator, as opposed to the defendant himself. It is particularly improper to inject discussion of officers' and directors' duty of loyalty into jury instructions where, as

GIBSON DUNN

The Honorable Kiyo A. Matsumoto
December 13, 2017
Page 7

here, the defendant is charged only with conspiracy counts.[1]  To do so would allow the jury to conflate the elements of wire fraud with conspiracy to commit the same, "create confusion in the jury's mind about acts and omissions by Mr. Shkreli," and "impute some failure of Mr. Shkreli to disclose to Mr. Greebel," and undermine the Court's planned instruction to the jury to base its verdict "solely on the evidence of lack of evidence as to Mr. Greebel."  Tr. at 9248:9–12; Dkt. No. 485 at 34.

### IV.     Including the Government's Proposal Would Constitute an Impermissible Constructive Amendment of the Superseding Indictment

Including the "duty of loyalty" instruction in the present case would also constructively—and impermissibly—amend the charges in the Superseding Indictment.  A constructive amendment occurs when the government seeks to admit evidence, argument, or jury instructions that "broaden [] the possible bases for conviction" beyond those provided in the indictment, *United States v. Milstein*, 401 F.3d 53, 65 (2d Cir. 2005).  "[C]onstructive amendments to an indictment are generally considered prejudicial *per se*," and courts are particularly vigilant in enforcing the bounds of indictments charging conspiracies to defraud.  *United States v. Mollica*, 849 F.3d 723, 729 (2d Cir. 1988).

Even where the government's deviation from the indictment does not amount to a constructive amendment, reversal of a conviction is warranted when the change causes "substantial prejudice."  *United States v. McDermott*, 245 F.3d 133, 139–40 (2d Cir. 2001).  District courts in the Second Circuit will vacate convictions based on either the constructive amendment of the grand jury indictment or prejudicial variance from it.  *See generally United States v. Davis*, No. 13-cr-923 (LAP), 2017 WL 3328240, at *28–35 (S.D.N.Y. Aug. 3, 2017) (collecting cases).

Whether the government's new instruction constitutes a constructive amendment or a prejudicial variance, it is axiomatic that "[i]t is not the duty of the court to instruct where the instruction demanded assumes a theory of fact which is unsupported or contradicted by the evidence" and that it is "error to do so."  *Indianapolis & St. Louis R.R. Co. v. Horst*, 93 U.S. 291, 299 (1876).

---

[1]     "Conspiracy law is premised on the long-standing belief that criminal agreements themselves warrant punishment separate and apart from the substantive crimes that are their objects. . . . [T]he conspiracy and the substantive crime do not merge."  *United States v. Van Hise*, No. (S4) 12 Cr. 847 (PGG), 2017 WL 3425750, at *27 (S.D.N.Y. Aug. 8, 2017).

**GIBSON DUNN**

The Honorable Kiyo A. Matsumoto
December 13, 2017
Page 8

Moreover, the government has not raised the "duty of loyalty" theory once in the course of *this* trial. By seeking an instruction on the duties of Mr. Shkreli and arguing the associated theory to the jury, the government seeks to constructively amend the charges in a manner that Second Circuit courts have repeatedly rejected. Any amendment here also would be particularly inappropriate given the timing: the government seeks to introduce its new theory at the eleventh hour, raising it for the *first time* after three iterations of its proposed jury instructions, nine weeks of trial, and *only during the charge conference*. So too has Mr. Greebel structured his defenses at trial.

Ultimately, the government seeks to impute Mr. Shkreli's alleged breaches of fiduciary duty to Retrophin to an outside attorney who actively counseled against such violations. To date, the trial appropriately has focused on Mr. Greebel, and should continue to do the same. Tr. at 9253:15–16 ("THE COURT: . . . I think we should keep focusing on Mr. Greebel."). For all of these reasons, and those stated at the charging conference, the Court should reject the government's proposed instruction on the duties of a corporate officer.

\*   \*   \*

Respectfully,

*/s/ Winston Y. Chan*
Winston Y. Chan

cc:   Alixandra E. Smith, Esq.
      David C. Pitluck, Esq.
      David K. Kessler, Esq.