

U.S. Department of Justice

*United States Attorney*
*Eastern District of New York*

JMK:AES/DCP/DKK  *271 Cadman Plaza East*
F.#2014R00501  *Brooklyn, New York 11201*

April 17, 2018

<u>By Hand and ECF</u>

Honorable Kiyo A. Matsumoto
United States District Judge
Eastern District of New York
225 Cadman Plaza East
Brooklyn, NY 11201

      Re: United States v. Evan Greebel
           <u>Criminal Docket No. 15-637 (KAM)</u>

Dear Judge Matsumoto:

      The government respectfully submits this letter in further support of its post-trial motion for forfeiture from the defendant Evan Greebel ("Gov't. Mot." (<u>see</u> Dkt. Nos. 573, 579)), and in response to the defendant's submission to the Court of an alternate forfeiture calculation at a hearing on April 13, 2018 (<u>see</u> DX-7, attached hereto as Exhibit A).[1]  For the reasons set forth below, the government maintains that the proper calculation of forfeiture in this case is $476,249, which represents a conservative computation of the monies the defendant personally acquired as a result of his crimes of conviction.  Moreover, the alternative approach to the calculation of forfeiture proposed by the defendant on April 13, 2018, which concludes that the defendant received a mere $10,477.48 as a result of his offenses, is highly speculative and fails to account for significant financial benefits that accrued to the defendant.  Nevertheless, if the Court adopts the defendant's methodology, the correct amount of forfeiture for Count Seven pursuant to that method is $10,555.15 and for Count Eight is $106,195.23, for a total forfeiture money judgment of $116,750.38.

I.     <u>The Proper Measure of Forfeiture Is Based on Total Retrophin Payments to Katten</u>

      The government's motion for forfeiture and reply in further support of that motion amply demonstrate why the proposed forfeiture of $476,249 represents a conservative

---

[1] The government has attached the first five pages of DX-7, which consists of the defendant's alternate forfeiture calculation and certain time entries that the defendant identified; the remaining pages of the exhibit simply attached portions of the corresponding government exhibits that contained the listed time entries and have not been included herein.

estimate of the money the defendant personally received as a result of his participation in the criminal frauds, which both enabled Retrophin to remain in business so that it could pay hundreds of thousands of dollars of outstanding Katten bills, and ingratiated the defendant with Shkreli in order to receive more Retrophin business at Shkreli's direction.  Moreover, by concealing his criminal conduct from Retrophin's Board of Directors, the defendant protected his relationship with Shkreli and ensured that Retrophin remained a Katten client, allowing the defendant's golden goose to keep laying eggs.  In other words, without those frauds, the defendant would not have received the $476,249—those funds are his "ill-gotten gains."  United States v. Contorinis, 692 F.3d 136, 146–47 (2d Cir. 2012).[2]

In fact, the defendant undoubtedly received <u>more</u> than that amount as a result of his criminal conduct.  The fruits of his frauds were no doubt realized in part in his compensation for Fiscal Years ("FYs") 2013 and 2015, before and after the year that is the focus of the government's calculation.  As a result, it is clear that the government has taken a conservative approach by focusing on FY 2014.

II.     The Defendant's Alternative Forfeiture Calculation

At the April 13 hearing, the defendant, for the first time, set forth his alternate calculation of forfeiture.  As set forth below, the defendant's proposed forfeiture calculation is highly speculative and vastly understates the defendant's gain from the crimes of conviction.  Moreover, even if the Court were to accept the defendant's methodology for calculating forfeiture, the defendant's proposal fails to include significant billings closely tied to his criminal conduct.

The defendant's method of calculating forfeiture is essentially based on a comparison of the hours Katten lawyers spent working in furtherance of the defendant's conspiracies, as compared to the total amount of time Katten billed to Retrophin.  Such a calculation is woefully inadequate and ignores a number of key facts in evidence.  First and foremost, the defendant's calculation ignores the more than $700,000 of outstanding billables that Katten was able to collect from Retrophin as a result of the defendant's participation in the market manipulation scheme of which he was convicted in Count Eight.  Those amounts are not accounted for in the defendant's calculation but were a significant factor in the defendant's compensation, which he noted in his memorandum to the compensation committee.  Second, the defendant ignores that the thousands of hours that Katten billed to Retrophin that he deems unrelated to the frauds would never have been billed but for the defendant's frauds.  In essence, the defendant was able to reap the benefit of significant billable hours that never would have been accrued had he not engaged in two separate fraudulent conspiracies to keep Retrophin afloat with Shkreli at its helm.  See United States v. Farkas, 2011 WL 5101752, at * 2-6 (E.D. Va. Oct. 26, 2011) (holding defendant liable to forfeit proceeds from company that "would not

---

[2] "Separat[ing] the [defendant] from his profits" would not just punish the defendant, but it would also further another purpose of forfeiture as recognized by the Second Circuit: "removing the incentive others may have to commit similar crimes tomorrow."  Contorinis, 692 F.3d at 147; see also 21 U.S.C. § 853(o) (requiring courts to "liberally constru[e]" forfeiture statute to "effectuate its remedial purposes").

have remained in business in the absence of defendant's fraudulent scheme"), aff'd, 474 Fed. Appx. 349, 2012 WL 2335154 (4th Cir. June 20, 2012). Finally, the defendant's arbitrary allocation of a minority of the hours ignores the fact that his compensation was determined, not by the specific hours that were billed by himself or other Katten attorneys to specific matters, but by the total amount of the representation and the rate by which it was collected. The defendant's attempt to parse out specific hours as more closely related to his frauds does not account for the fact that the whole relationship and, as a result, the entire revenue of the firm was the product of his frauds.[3] For that reason, the government's conservative approach, which isolates the increase in the defendant's compensation that was from the Retrophin relationship is the more accurate determination.[4]

Nonetheless, should the Court adopt the defendant's forfeiture calculation methodology, the government respectfully submits that the proper application of this methodology would result in a forfeiture money judgment of $116,750.38, as detailed in the government's analysis attached hereto as Exhibit B. This sum more accurately reflects a conservative estimate of the portion of the defendant's salary increase in FY 2014 attributable to work that was closely tied to the fraudulent schemes of which the defendant was convicted.

Specifically, with respect to Count Seven, the government has identified a total of 157.4 hours clearly billed by the defendant and other Katten attorneys to activities related to the conduct underlying that count.[5] Those hours represent approximately 2.3% of the hours that Katten billed to Retrophin between November 2012 and March 2014. With respect to Count

---

[3] Moreover, because the defendant chose not to bill for some of the work he personally did that most helped the frauds succeed—such as preparing many of the settlement and consulting agreements and overseeing the allocation and reallocation of Fearnow Shares—any attempt to calculate the appropriate forfeiture amount by focusing only on those time entries where the defendant appeared to bill for work in furtherance of the frauds necessarily underestimates the defendant's ill-gotten gains.

[4] There are alternate methods for calculating forfeiture using the defendant's billable hours that would yield a forfeiture amount that is more accurate than the defendant's proposed methodology. For instance, between FYs 2013 and 2014, the defendant's compensation increased by $545,000, from $355,000 to $900,000. See GX 121-6; GX 121-8. During that time period, Retrophin accounted for 58.8% of the defendant's fee receipts as the principal time keeper. See GX 122-4. Taking the increase in the defendant's salary and apportioning a commensurate percentage based on the amount of hours billed to Retrophin leads to a gain of $320,515. That amount more accurately calculates gain from the amount of hours billed to Retrophin by Katten attorneys and how it influenced the defendant's increase in compensation.

[5] By including hours billed by other attorneys, the government does not suggest that those attorneys were aware of or involved in the frauds. Instead, the government includes that work because it directly furthered one of the frauds, and money generated by that work that passed through Katten to the defendant was an ill-gotten gain with respect to him. The government notes that the defendant similarly included work billed by other attorneys in his forfeiture analysis. See Exhibit A.

3

Eight, the government has identified a total of 1583.6 hours—or approximately 22.3% of all hours billed to Retrophin during the relevant time period—billed to activities related to the conduct underlying that count. The majority of those hours were billed to the Pierotti litigation. As proved at trial, the Pierotti litigation was launched by the defendant and Shkreli entirely as an effort to prevent Pierotti from disrupting the conspiracy to control the price and trading volume of Retrophin shares and to establish Shkreli's control over those shares. Although the litigators who worked on the matter were not aware of the fraud or the true purpose of the lawsuit, it was nevertheless a weapon wielded by the conspiracy. The defendant should not profit from any gain he received as a result of that litigation.

In total, therefore, approximately 24.6% of the hours Katten billed to Retrophin in the relevant time period are closely linked to the conduct underlying the counts of conviction. The government therefore respectfully submits that, if the Court uses this methodology to calculate forfeiture, the defendant should forfeit 24.6% of the $476,249 of ill-gotten gains that the government has previously identified, or a total forfeiture money judgment of $116,750.38. That amount serves as a rough proxy for the defendant's gain most tightly tied to the conspiracies.

### III. Conclusion

For the reasons set forth above, the Court should impose against the defendant a forfeiture money judgment in the amount of $476,249, pursuant to 18 U.S.C. § 981(a)(1)(C), 28 U.S.C. § 2461(c) and Rule 32.2. In the alternative, if the Court adopts the defendant's flawed methodology, the Court should impose a forfeiture money judgment of $116,750.38. The government respectfully requests that the Court enter the applicable proposed Order of Forfeiture against the defendant as part of his sentence and attached to his Judgment and Conviction pursuant to Rule 32.2(b).

Respectfully submitted,

RICHARD P. DONOGHUE
United States Attorney

By:  /s/ _____
Alixandra E. Smith
David C. Pitluck
David K. Kessler
Laura D. Mantell
Claire S. Kedeshian
Assistant U.S. Attorneys
(718) 254-7000

cc:     All counsel of record (via ECF)