**GIBSON DUNN**

Gibson, Dunn & Crutcher LLP

200 Park Avenue
New York, NY 10166-0193
Tel 212.351.4000
www.gibsondunn.com

Reed Brodsky
Direct: +1 212.351.5334
Fax: +1 212.351.6235
RBrodsky@gibsondunn.com

April 21, 2018

VIA ECF

The Honorable Kiyo Matsumoto
United States District Judge
Eastern District of New York
225 Cadman Plaza East
Brookly, NY 11201

Re:     *United States v. Greebel*, S1 15 Cr. 637 (KAM)

Dear Judge Matsumoto:

On behalf of Evan Greebel, we respectfully submit this supplemental response regarding the government's motion for forfeiture as to Mr. Greebel.

***First***, we continue to maintain that forfeiture is entirely improper in this case. The government has at no point—neither in its forfeiture papers nor at the April 13, 2018 hearing—met its burden of proving the requisite nexus between the criminal conduct at issue and the moneys paid by Katten Muchin Rosenman, LLP to Mr. Greebel as his annual salary. *See United States v. Capoccia*, 503 F.3d 103, 116 (2d Cir. 2007) (noting the importance of "link[ing] assets to specific crimes of conviction."). Indeed, as we argued in our response, the government's argument as to any alleged "nexus" is far too attenuated and speculative to prove (by a preponderance or otherwise) that all moneys paid by Retrophin or the subset of money suggested in the government's supplemental submission constitute "proceeds" of the Count Seven and Count Eight conduct.

***Second***, the government's revised forfeiture proposal again drastically overstates the appropriate amount.[1] Dkt. 585. Specifically, the government's calculation as to Count Eight incorrectly incorporates time entries and revenue generation in connection with the Pierotti litigation that are unrelated to the relevant conduct. We maintain, for the reasons advanced

---

[1] For the reasons stated in our previous forfeiture filings, Dkts. 576 & 586, and at the April 13, 2018 forfeiture hearing, the government's proposed forfeiture amount is overbroad. As the Court recognized during the forfeiture hearing, it is too attenuated to say that "everything during this period is forfeitable." Hrg. Tr. 143:25–144:3.

**GIBSON DUNN**

The Honorable Kiyo Matsumoto
April 21, 2018
Page 2

in our earlier submissions, that the Pierotti litigation should be wholly excluded from any forfeiture calculation, because the connection between that litigation and the Count Eight conduct is too attenuated.  Indeed, none of the attorneys who worked on the Pierotti litigation were implicated in Mr. Greebel's case, and they conducted their own due diligence—independent of Mr. Greebel—to confirm that the litigation was proper and did not violate Rule 11.[2]  Should the Court find that the amounts billed to the Pierotti litigation were improper, the Court would have to find that filing that suit violated Rule 11 and that the partners who initiated and worked on that matter had participated in an illegal transaction via the litigation itself.

Even assuming that the Court were going to consider the Pierotti litigation, the government's motion remains overinclusive.  The government proposes to include all hours "billed to the Pierotti litigation" in a forfeiture calculation on Count Eight.  Dkt. 585 at 4.  That method overlooks the fact that Katten attorneys billed time to the Pierotti litigation matter that was unrelated to the Pierotti litigation.  This is self-evident from the Pierotti litigation invoices, which contain many time entries reflecting work done in other litigations.  For instance, the Pierotti litigation invoice for time worked in July 2013 included a 1.2-hour entry, billed by Michael Gordon, for the following work: "Calls with Catalyst counsel re: adjournment and settlement; draft stipulation re: same; calls and e-mails with D. Bach re: settlement of Huang and Su matters." GX 844, at R048610.  Nowhere in that narrative does Mr. Gordon refer to the Pierotti litigation, though the time appears on the invoice for that matter.  In August 2013, Michael Gordon again billed time to the Pierotti litigation matter for unrelated work: "Settlement negotiations with D. Bach re: Su and Huang; issues re: Catalyst settlement" (1 hour); "Settlement negotiations with D. Bach; e-mails with client re: same; review proposed settlement agreement; adjournment of preliminary conference in Huang action." (1.2 hours).  Howard Cotton billed similarly, including .9 hours for "Issues regarding Su settlement; Conferences regarding same."  GX 845, at R048649.  The invoices show many other instances where time billed is attributed to the Pierotti litigation despite having no connection thereto.  Including such time in a forfeiture calculation would render Mr. Greebel criminally accountable for entirely legitimate legal work entirely unrelated to this case.

---

[2]  The government argues that, "[a]lthough the litigators who worked on the matter were not aware of the fraud or the true purpose of the lawsuit," Dkt. 585 at 4, the time spent thereon should still count for purposes of Mr. Greebel's forfeiture calculation.  Yet the fact remains that the litigation was neither alleged nor proven to be illegal.  Further, the attorneys working on the litigation operated autonomously from Mr. Greebel, who played no role in directing their work, and they found independently that the matter was legitimate.  Tr. 8874:13–8875:4 (Howard Cotton testifying at trial about the legitimacy of the Pierotti litigation and the steps he and other attorneys took prior to beginning work).

**GIBSON DUNN**

The Honorable Kiyo Matsumoto
April 21, 2018
Page 3

***Third***, and similarly, even the time entries that do reflect work done on the Pierotti litigation themselves overstate the amount of revenue discretely connected to that litigation, because in many instances they also reflect work done on other matters.  Again, the Pierotti litigation invoices show this on their face.  For example, in several places narratives include work related to both the Pierotti litigation and to the claims involving George Huang and Jackson Su.  *See, e.g.,* GX 851-A, at R048885 (Howard Cotton time entry for 1.9 hours, with the following narrative: "Review papers submitted in AAA proceeding involving Jackson Su; Review cross moving papers in Huang matter; Issues regarding possible Pierotti settlement and terms thereof."); *see also* GX 850, at R048817 (Michael Gordon billing 3.8 hours for "Issues re: Su arbitration; correspondence re: scope of arbitration; issues re: alleged hacking of Pierotti personal account; calls and emails with Greebel and Cotton re same.").  Even to the extent the Court considers the explicitly Pierotti-related work in a forfeiture calculation, the government has not met its burden of proving that Mr. Greebel should be held responsible for completely unrelated work for purposes of a forfeiture calculation.

We thank the Court for its consideration of this submission.

Respectfully submitted,

***/s/ Reed Brodsky***

Reed Brodsky