# GIBSON DUNN

Gibson, Dunn & Crutcher LLP

200 Park Avenue
New York, NY 10166-0193
Tel 212.351.4000
www.gibsondunn.com

Reed Brodsky
Direct: +1 212.351.5334
Fax: +1 212.351.6235
RBrodsky@gibsondunn.com

May 17, 2018

VIA ECF

The Honorable Kiyo Matsumoto
United States District Judge
United States District Court for the Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York 11201

Re:   *United States v. Greebel*, S1 15 Cr. 637 (E.D.N.Y.) (KAM)

Dear Judge Matsumoto:

We respectfully write to respond briefly to certain arguments in the government's May 14, 2018 submission on loss amount.[1]  *See* Dkt. 601.

> **I. The Government's Position Overstates the Count Seven Loss Attributable to Mr. Greebel:  It Seeks Losses for Agreements the Government Dropped at Trial and Attributes Losses From Fearnow Shares Which Were Never Owned By Retrophin.**

The government's argument that Mr. Greebel should be held accountable for actual loss on Count Seven is flawed for multiple reasons, and this Court should reject the government's application.

*First*, the government's claimed loss to Retrophin incorrectly assumes that the jury found Mr. Greebel guilty as to *all* settlement and consulting agreements.  *See* Dkt. 601 at 3 (Mr. Greebel was "convicted of a conspiracy to steal money and shares from Retrophin via a *series* of settlement agreements and sham consulting agreements.") (emphasis added).  But that is not so.  To begin with, there was no special verdict form, and the Court's instructions to the jury made it very clear that Mr. Greebel could be found guilty of conspiracy to commit wire fraud pursuant to Count Seven without proof of a single criminal overt act in

---

[1] While the government's letter suggested that the Probation Department has "adopted these loss amounts as the legally correct loss amounts," Dkt. 601 at 1, Mr. Greebel's objections to the Pre-Sentence Investigative Report ("PSR") are currently not due to the Probation Department until on or about May 21, 2018.  The loss amounts contained in the PSR, therefore, remain subject to modification.

**GIBSON DUNN**

The Honorable Kiyo Matsumoto
May 17, 2018
Page 2

furtherance of the conspiracy.  *See* Final Jury Instructions, Dkt. 500 at 33 ("[I]f a conspiracy exists, the conspiracy is still punishable as a crime, *even if it should fail to achieve its purpose* of the underlying substantive crime.  A defendant may be found guilty of conspiracy even if he was incapable of committing the underlying substantive crime.") (emphasis added).  And, as instructed by the Court, it was equally clear that the jury did not determine Mr. Greebel's guilt with regard to any agreement.  *See id.* at 38 ("Even a single act may be sufficient to draw a defendant within the ambit of the conspiracy.").

We respectfully note that, in our May 14, 2018 letter, we mistakenly stated that the government's claimed loss of over $10 million was not reflected in the superseding indictment when, in fact, the superseding indictment alleged a loss of $7.6 million from four consulting agreements (only two of which the government attempted to introduce evidence about at trial) and multiple settlement agreements in the alleged amount of $3.4 million.  *See* Superseding Indictment ¶¶ 28 & 35.

But the evidence at trial simply does not support the government's inaccurate position that the jury found Mr. Greebel guilty of defrauding Retrophin with respect to any one or more settlement and consulting agreements.  Instead, as addressed at length in Mr. Greebel's post-trial briefing, *see* Dkt. 530 at 9–10 and Dkt. 574 at 6–9, the evidence showed—and the Court acknowledged—that investors were making legitimate threats of litigation against Retrophin before they agreed to settlements and a release of Retrophin (and others) from claims.  Indeed, Mr. Greebel pushed for disclosure of the settlements because he understood them to be valid.  *See, e.g.*, DX 116-102 (Retrophin 2013 10-K, in which agreements are disclosed); DX 116-52 (Retrophin 2013 S-1).  During trial, the government acknowledged there was disclosure, but argued that it was just legalese.  While that might have appealed to a jury, this Court should find that there was disclosure.

The government has not proven, and the evidence does not demonstrate, that all of the agreements were purportedly done in furtherance of the charged conspiracy and/or that any losses to Retrophin arising from the settlement and consulting agreements were reasonably foreseeable to Mr. Greebel, particularly given that the government cannot dispute that Mr. Greebel believed the settling parties had threatened to file lawsuits against Retrophin; that Retrophin disclosed the settlements to the Board; that the external auditors became aware of them and did not believe they were fraudulent; and that they were disclosed in the public filings.  In short, the Court should not accept the government's unfounded assumption that Mr. Greebel was convicted of defrauding Retrophin of each and every consulting and settlement agreement.

**<u>Second</u>**, the government's theory of loss arising from the allocation of freely trading Fearnow shares to former MSMB investors assumes incorrectly that Retrophin owned those

The Honorable Kiyo Matsumoto
May 17, 2018
Page 3

shares or had a right to receive them.  The shares were sold by Troy Fearnow for real money to identified purchasers; the purchasers agreed, for the benefit of Retrophin, that a portion of their shares would be held in escrow as collateral until Retrophin made a final payment; and once the balance was paid the purchasers had a right to direct their shares to third parties.  The government's argument that "[b]ecause the escrowed Fearnow shares would not have been released but for that payment by Retrophin, those shares were rightfully Retrophin's to control," Dkt. 601 at 5, thus misses the mark.  Troy Fearnow had the right to do whatever he wanted with those shares—and the requirement that those shares were held in escrow until full payment for the reverse merger was made so that the merger would go through does not transmogrify Troy Fearnow's shares (or the shares that he wanted to sell) into Retrophin's shares.  These shares were never owned by Retrophin; never controlled by Retrophin; and Retrophin has no right to claim them.  Indeed, it is undisputed that Steven Aselage, then-CEO of Retrophin, was informed about the Fearnow shares and that they were going to be purchased by Mr. Shkreli and other individuals, and Mr. Aselage neither objected to nor stopped those sales.  *See* Tr. 6427:16–6428:5 (Mr. Aselage acknowledging that "[o]n or about December 4th or 3rd of 2012," he had a "conversation with Mr. Su" about Mr. Shkreli's intended purchase of Fearnow shares.").

**_Fourth_**, even assuming *arguendo* that there was a special verdict form in which the jury had found Mr. Greebel guilty of defrauding Retrophin through all of the settlement and consulting agreements (which the jury did not), the government miscalculates the loss amount attributable to Mr. Greebel by using share prices on the "date they were transferred."  Dkt. 601 at 4.  A more accurate measure of alleged loss would be the share price on the date when the parties agreed in principle to the terms of the deal.

## II. The Government's Position Overstates the Count Eight Loss Calculation

The government's position on the loss in Count Eight is incorrect for multiple reasons.

**_First_**, the government notes the "loss calculation for Count Eight advanced by the government and Probation here also is identical to the loss calculation that this Court previously adopted in sentencing the defendant's co-conspirator Martin Shkreli," Dkt. 601 at 2.  As addressed in our initial letter, Mr. Shkreli and Mr. Greebel were convicted on different evidence and played demonstrably different roles with different levels of knowledge, and the findings as to each of them are not interchangeable.  *See* April 13, 2018 Tr. 55:25–56:3 (The Court: "Looking at that evidence [to make findings as to Mr. Shkreli's post-trial motions] with regard to Mr. Shkreli's culpability in the Shkreli trial, and I have to do the same for this trial. And there was different evidence.").  The government cannot rely on evidence of Mr. Shkreli's subjective intent for purposes of proving Mr. Greebel's subjective intent.

**GIBSON DUNN**

The Honorable Kiyo Matsumoto
May 17, 2018
Page 4

**_Second_**, there is no probative evidence meeting the government's burden of proof that Mr. Greebel had the subjective intent to cause losses to anyone with respect to the charged conspiracy in Count Eight.

**_Third_**, with respect to Mr. Greebel, the government has not submitted any probative proof of what the unsuspecting public would have paid for Retrophin shares or what value the shares would have been had the charged conspiracy, in fact, been successful. The government has not offered any expert testimony, any documents proving Mr. Greebel's knowledge and intent, and/or any evidence from any investors.

**_Finally_**, even assuming arguendo that there was evidence that Mr. Greebel had the subjective intent to cause investor losses (which we submit does not exist), we respectfully submit that the more appropriate calculation of loss would have to be based on the Fearnow shares that were held back in escrow and then subsequently used by Mr. Shkreli as payment to individuals who threatened to file a lawsuit against Retrophin (and others). Assuming the government were able to prove that these Fearnow shares were rightfully owned by Retrophin (which, again, we do not believe the government has done or can do), the Court should narrow its calculation of loss in Count Eight to those Fearnow shares allocated to parties who reached settlements with Retrophin.

We respectfully submit that, if the government fails to put on any further evidence at the *Fatico* hearing, the government has failed to meet its burden of proving actual loss relating to the settlement and consulting agreements; that the proposed loss amounts are reasonable and not overstated; that the proposed losses were in furtherance of the charged conspiracy; that the proposed losses were reasonably foreseeable to Mr. Greebel; and that the alleged intended losses in Count Eight could be applied to Mr. Greebel given the lack of proof of Mr. Greebel's subjective intent to cause the losses and for the other reasons previously expressed. Nevertheless, even if the government does not present any further evidence at the *Fatico* hearing, Mr. Greebel presently intends to submit further evidence to the Court during the hearing.

Respectfully submitted,

*/s/ Reed Brodsky*

Reed Brodsky