**GIBSON DUNN**

Gibson, Dunn & Crutcher LLP

200 Park Avenue
New York, NY 10166-0193
Tel 212.351.4000
www.gibsondunn.com

Reed Brodsky
Direct: +1 212.351.5334
Fax: +1 212.351.6235
RBrodsky@gibsondunn.com

May 31, 2018

VIA ECF

The Honorable Kiyo Matsumoto
United States District Judge
United States District Court for the Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York 11201

Re:     *United States v. Greebel*, S1 15 Cr. 637 (E.D.N.Y.) (KAM)

Dear Judge Matsumoto:

We respectfully submit this brief reply to the government's filing this afternoon to preclude much of the testimony from our expert witnesses. The whole point of this *Fatico* hearing is for the defense to elicit testimony that we believe is relevant to the Court's estimate of alleged actual losses to Retrophin arising from the settlement and consulting agreements at issue pursuant to Count Seven, and the government's allegation that Evan Greebel subjectively intended to cause $4 million in losses pursuant to Count Eight.

  **_First_**, the government acknowledges that this Court may accept evidence for purposes of a *Fatico* hearing "without regard to its admissibility under the rules of evidence applicable at trial, provided that the information has sufficient indicia of reliability to support its probable accuracy." Dkt. 617 at 1–2 (quoting U.S.S.G. § 6A1.3(a), comment). We respectfully submit that all of the testimony from our expert witnesses tomorrow will have sufficient indicia of reliability to support its probable accuracy. Moreover, we expect that, although not required, all of the testimony tomorrow will be admissible under the rules of evidence.

  **_Second_**, the government's argument that the expert testimony is not relevant to the Court's calculation of the actual losses suffered by Retrophin as a result of entering into certain settlement and consulting agreements misses the mark. As the Court knows, "[t]he scope of conduct for which a defendant can be held accountable under the sentencing guidelines is significantly narrower than the conduct embraced by the law of conspiracy." *United States v. Getto*, 729 F.3d 221, 234 n.11 (2d Cir. 2013) (internal quotation marks omitted). The government never charged Mr. Greebel with substantive wire fraud in connection with any one of the settlement or consulting agreements at issue here; they had that opportunity to do so, but decided not to go forward with any substantive wire fraud

**GIBSON DUNN**

The Honorable Kiyo Matsumoto
May 31, 2018
Page 2

counts. The government must meet its burden of proving by a preponderance of the evidence under the Guidelines standard that Mr. Greebel should be accountable for any actual losses relating to each agreement, and we respectfully submit the government has not met its burden. Moreover, we are entitled to elicit relevant evidence regarding this standard in a *Fatico* hearing from our expert witnesses. As the Second Circuit has emphasized in several cases, neither "knowledge of another participant's criminal acts" nor "aware[ness] of the scope of the overall operation" alone is enough to deem the defendant responsible for the acts of co-conspirators for sentencing purposes. *United States v. Studley*, 47 F.3d 569, 575 (2d Cir. 1995).

**Third**, the government overlooks that, in order to hold a defendant accountable for jointly undertaken criminal activity, the Court must make two particularized findings: "1) that the acts were within the scope of the defendant's agreement and 2) that they were foreseeable to the defendant." *Id*. at 574. We respectfully submit that anticipated testimony of all experts goes directly to what was reasonably foreseeable to Mr. Greebel as outside counsel to Retrophin. For example, evidence about the role of outside corporate counsel when representing small and early-stage private and public companies, the mechanics of settlement and consulting agreements and the reasons early-stage companies enter into them, the common terms and provisions of those agreements, and whether the agreements at issue contained such terms all make it more likely—indeed, we submit, compelling—that Mr. Greebel did not reasonably foresee that each of those agreements defrauded Retrophin.[1] At the least, the evidence certainly goes directly to the extent to which Retrophin suffered purportedly actual losses arising from those agreements. Similarly, Dean Ferruolo's proffered testimony as to a the responsibility of members of the Board of Directors in signing filings and the disclosures therein goes directly to Mr. Greebel's reasonable understanding that anything the Board signed was approved. That testimony supports the fact that it was not reasonably foreseeable to Mr. Greebel that an agreement so approved by the Board would have defrauded the company. The same concept holds true for the remaining proffered testimony of Dean Stephen Ferruolo, Gayle Klein, and Zachary Prensky.

**Fourth**, the government argues that we cannot admit the handwritten notes of Mr. Greebel. As the Court knows, the standard for admissibility of handwritten notes—even assuming that the rules of evidence applied—is very low. Federal Rule of Evidence 901(b) sets a low bar for authentication, including that handwriting can be authenticated through "[a] nonexpert's opinion that handwriting is genuine, based on a familiarity with it that was not acquired for the current litigation." Indeed, in *Feehan v. Feehan*, for example, the court held that a mother had sufficient familiarity with her son's handwriting to satisfy 901(b)(2).

---

[1] The government recognizes there is a "question of which settlement and consulting agreements in this case were part of the conspiracy to defraud Retrophin." Dkt. 617 at 3.

No. 09 Civ. 7016 (DAB)(THK), 2010 WL 3734082, *10 (S.D.N.Y. July 26, 2010).  Because the mother's "knowledge of her son's handwriting was acquired before [the] litigation began, through their mother-son relationship and her familiarity with other documents that he had signed[,]" the court found sufficient evidence to satisfy Rule 901(b)(2).  If the government intends to contest the admissibility of Mr. Greebel's handwritten notes, we are prepared to call Mr. Greebel's wife to the stand tomorrow to identify that the handwriting is Mr. Greebel's handwriting, which is more than sufficient to demonstrate Mr. Greebel wrote these notes.  As to the government's claims that they are unreliable or that they should be given no weight for a host of reasons, that goes to the weight of the evidence, not its admissibility.  For example, we can provide a typed version of these handwritten notes for the Court and the government, and the Court can also see that the handwritten notes reflect exactly what was stated in the minutes that Mr. Greebel had sent at various times to Mr. Shkreli and Marc Panoff.  These handwritten notes of Mr. Greebel at Board meetings of Retrophin also go directly to what was reasonably foreseeable to Mr. Greebel.

*<u>Fifth</u>*, the government argues that Ms. Klein should be precluded from offering an opinion as to the value of avoiding litigation because Ms. Klein proffered that she will testify about the value.  The government calls the absence of the exact numbers that Ms. Klein will use in her testimony as to the value to the company for avoiding protracted and public litigation "apparent defiance of [the Court's] order."  On May 29, 2018 at 11:16 a.m., this Court ordered us to produce expert reports for the *Fatico* hearing by May 30, 2018 at 12:00 p.m.  We did the very best we could in preparing these expert reports within the Court's order.  We believe we did, in fact, comply with the Court's order and within the deadlines prescribed by the Court this week.  We most certainly did not intend in any respect to defy the Court's order, as claimed by the government, and we are very troubled and disappointed that the government ascribed such motives to us.  At the time we received the Court's order, we did not have expert reports already prepared because the Federal Rules of Criminal Procedure do not require experts to prepare reports, but rather that counsel submit summaries of the anticipated testimony—which we did on May 28, 2018.  Ms. Klein prepared her valuation today, which is based on her experience, and it is an estimate of the minimum legal fees that would be expended to litigate a single investor suit like the ones threatened here, and we submit it concurrently with this filing as Rule 26.2 material.  (Ms. Klein sent the undersigned (Reed Brodsky) her estimate today at approximately 4:43 pm by email; then another email making a correction at 4:57 pm; the undersigned was in another client meeting outside the office from approximately 4 pm until approximately 6:45 pm, returned to the office at approximately 7 pm, and then sent the estimate to the government at approximately

**GIBSON DUNN**

The Honorable Kiyo Matsumoto
May 31, 2018
Page 4

7:43 pm.)[2]  This supplemental information about valuation does not prejudice the government, and we attach it here.  The government will be able to cross-examine Ms. Klein about her calculations regarding the attorneys' fees and costs that Retrophin saved by avoiding a lawsuit, and they will be able to cross her about any and all of her opinions.  To the extent the government needs time to file a response following the hearing regarding the specific "value" aspect of Ms. Klein's testimony, we have no objection if the government wants to re-call Ms. Klein to cross-examine her at a future date and/or if they want to submit something in writing to the Court regarding the specific "value" following the hearing.

**_Sixth_**, Ms. Klein, Dean Ferruolo and Mr. Prensky are eminently qualified to serve as expert witnesses.  The government's objections regarding their expertise are apparently based in part on the fact that Ms. Klein "has never previously testified as an expert" and that "[i]t is unclear whether Prensky has ever previously testified as an expert." (Dkt. No. 617 at 6-7).  There is no legal requirement that an expert testify before as an expert to be qualified as one.  Indeed, this Court qualified Mr. Lewis as an expert in securities trading before the jury without objection from the government even though Mr. Lewis had never testified as an expert witness in the past.  The government objects to Dean Ferruolo's testimony as an expert witness despite years of practice as an outside corporate attorney who worked on PIPEs, among other things.  The government asserts that his expert report did not disclose "any detail as to what kinds of companies he has represented during such transactions and on how many occasions—and does not say that he has any experience representing investors during such transactions." (Dkt. No. 617 at 7).  For the Court's information, Dean Ferruolo participated as outside counsel to public companies regarding PIPE transactions on many occasions and he participated as outside counsel to investors on several occasions. To the extent the government wants to challenge his expertise, or the expertise of any of our witnesses, they can do so through cross-examination.

**_Seventh_**, the government's objections to the expert reports because they lack disclosure as to the adequate bases of certain opinions lack merit.  Their reports are based on their extensive experience and expertise and review of the relevant documents that we disclosed in our May 28, 2018 submission to the Court.  Indeed, we listed the documents that we may seek to introduce at the *Fatico* hearing.  The government is free to cross-examine the witnesses about the bases of their opinions and any documents they relied upon to reach

---

[2]  Mr. Prensky sent two documents by courier to Gibson Dunn this afternoon.  Upon the undersigned's return to the office at approximately 6:45 p.m., the undersigned had the two documents scanned and sent them by email to the government at approximately 7:43 p.m.)

GIBSON DUNN

The Honorable Kiyo Matsumoto
May 31, 2018
Page 5

those opinions.  We provided Ms. Klein and Dean Ferruolo with the trial testimony of the settling MSMB investor witnesses and the consultant witnesses (Blanton/Geller).

*__Finally__*, the government's objection to the testimony of these experts is premature and without merit because the Court—without the presence of a jury—can weigh the credibility, the experience, and the opinions of these expert witnesses.

Respectfully submitted,

*/s/ Reed Brodsky*

Reed Brodsky