**GIBSON DUNN**

Gibson, Dunn & Crutcher LLP

200 Park Avenue
New York, NY 10166-0193
Tel 212.351.4000
www.gibsondunn.com

Reed Brodsky
Direct: +1 212.351.5334
Fax: +1 212.351.6235
RBrodsky@gibsondunn.com

June 5, 2018

VIA ECF

The Honorable Kiyo Matsumoto
United States District Judge
United States District Court for the Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York 11201

Re:   *United States v. Greebel*, S1 15 Cr. 637 (E.D.N.Y.) (KAM)

Dear Judge Matsumoto:

We respectfully submit this letter in response to the Court's Order during the June 1, 2018, *Fatico* hearing that Mr. Greebel "provide a complete, comprehensive and accurate list [of] all trial exhibits, documents, testimony, journals, treatises or other materials the proffered expert witnesses relied upon in connection with formulating any opinion or impression, chart or expert report, proffered in connection with the *Fatico* hearing. . . along with a *curriculum vitae* for Zachary Prensky."

We understand that Dean Stephen Ferruolo relied on the following materials in preparation for his proffered expert testimony in trial and the *Fatico* hearing:

1.  Desert Gateway/Retrophin SEC filings covering 2012 through 2013, particularly the 14-Fs, 10-Ks, 10-Qs, 8-Ks and S-1 Registration Statement, including relevant exhibits;

2.  Superseding Indictment in *United States v. Shkreli et al.* (Dkt. 60);

3.  GX 217 (emails re Fearnow shares);

4.  *Troy Fearnow v. Desert Gateway, Inc.*, Petition (Washington County, Oklahoma, April 9, 2012) (Bates No. R065674);

5.  *Troy Fearnow v. Desert Gateway, Inc.*, Agreed Journal Entry of Judgment, (Washington County, Oklahoma, Dec. 10, 2012) (Marked as DX 5672);

6.  Dec. 14, 2012 Anslow + Jaclin Opinion Letter (Bates No. 20160325_CTRL00000089);

7. Dec. 27, 2017 Press Release by the United States Attorney's Office for the Eastern District of New York discussing the verdict;

8. Desert Gateway Certificate of Incorporation during the relevant period;

9. Desert Gateway Bylaws during the relevant period;

10. GX 303 (February 2013 PIPE documents);

11. GX 51, 52, 53, 54, 55, 56; DX 8154 (Settlement Agreements);

12. GX 59-A; DX 1106 (Consulting Agreements);

13. DX 6170, 6172 (Feb. 2013 PIPE investor list);

14. May 17, 2018 Gov't Ltr. re Loss Calculation (Dkt. 606);

15. Google searches relating to updates on comparable companies, and information about those comparable companies;

16. Google searches relating to applicable laws and regulations, and those applicable laws and regulations;

17. Personal files of comparable documents and disclosure precedents;

18. Associate of Corporate Counsel guides and materials used in an In-house Counsel Course; and

19. News releases on Retrophin, the government's case against Mr. Greebel, and related stories (from Law 360 and other publications).

We understand that Gayle Klein relied on the following materials in preparation for her proffered expert testimony in trial and the *Fatico* hearing:

1. Superseding Indictment in *United States v. Shkreli et al.*;

2. The following exhibits relating to Lindsay Rosenwald:

    a. DX 4170

    b. GX 1-A, 1-B, 21, 51, 76-1, 76-2, 76-3, 76-4, 76-5, 76-6, 76-7, 76-8, 76-9, 76-10, 76-11, 76-12, 76-13, 76-14, 76-15, 76-16, 76-17, 76-18, 76-19,

The Honorable Kiyo Matsumoto
June 5, 2018
Page 3

        76-20, 76-21, 76-22, 76-23, 76-24, 76-25, 76-26, 101-1, 101-2, 101-3, 101-4, 101-5, 101-8, 101-9, 101-11, and 101-27;

3. The following exhibits relating to threats from former MSMB investors:

    a. DX 112-8;

    b. GX 100-16, 104-5-A, 104-9, 106-20, 106-28, 107-7, 108-10, 108-13, 525, 575, and 621;

4. The following exhibits and documents demonstrating commingling between MSMB and Retrophin:

    a. Bates Nos. NAV0018541 (2011.10.28 email); NAV0018933 (2012.01.19 email); NAV0018899 (2012.01.24 email); JPMC-001465 (2012.09.28 bank statement); BOA-000045 (2013.03.31 bank statement); and CITRON193813 (2013.05.31 bank statement);

    b. DX 104-51, 1902; and

    c. GX 111-1, 222, 510;

5. GX 51, 52, 53, 54, 55, 56; DX 8154 (Settlement Agreements);

6. GX 59-A; DX 1106 (Consulting Agreements);

7. GX 837, 840 (representative Katten invoices);

8. DX 7770 (Catalyst's amended complaint against Shkreli and MSMB that added Retrophin);

9. Trial transcript excerpts: 3673:1–3692:25; Tr. 6844:1–6863:25;

10. Page 14 of the Presentence Investigation Report (Investor Chart);

11. Dkt. 530 pp. 9–10 (summary of evidence of investor threats); 11–14 (summary of evidence of consulting work);

12. *Boulden v. Albiroix, Inc.*, 2013 Del. Ch. LEXIS 91;

13. *Hannex Corp. v. GMI, Inc.*, 140 F.3d 194;

GIBSON DUNN

The Honorable Kiyo Matsumoto
June 5, 2018
Page 4

14. *S&K Sales Co. v. Nike, Inc.*, 816 F.2d 843;

15. *Shearson Lehman Bros., Inc. v. Bagley*, 205 A.D.2d 467;

16. *Trusa v. Nepo*, 2017 WL 1379594;

17. Edward P. Yankelunas, The Daily Record, *Civil Litigation: The alter ego theory and piercing the corporate veil* (Jan. 13, 2012);

18. James Ng, Esq., NYSBar.com, *Follow the Money: The New York Uniform Fraudulent Transfer Act* (Sept. 15, 2016);

19. Nick Froio & Zack Sager, KL Gates Delaware Docket, *Delaware Court of Chancery Declines to Dismiss Claims for Breach of Contract and Breach of Fiduciary Duties* (July 2015);

20. Yvanna Custodio, Weil Bankruptcy Blog, *Plain Vanilla Veil Piercing Still Alive and Well in New York* (Sept. 26, 2013);

21. Linda M. Glover, AmericanBar.org, *The Changing Landscape of Aiding and Abetting Breach of Fiduciary Duty Claims* (Nov. 11, 2013);

22. Independent internet searches for investors:

    a. Lindsay Rosenwald (Bloomberg Overview, Opus Point Partners Team profile, Wikipedia entry);

    b. Michael Lavelle (*Citi's Lavelle Eyes Senior Hires in UK Growth Push* (fnlondon.com article), *Citi's Head of Investment Banking Says Students Need to Find Out What They Really Want to Do* (efinancialcareers.com article));

    c. Sarah Hassan (Caerus Ventures profile); and

    d. Kevin Stanfield (Wyrick.com profile).

GIBSON DUNN

The Honorable Kiyo Matsumoto
June 5, 2018
Page 5

We understand that Zachary Prensky relied on the following materials in preparation for his proffered expert testimony at the *Fatico* hearing[1]:

1. All 2013 Retrophin 10-Qs and 10-Ks;

2. Retrophin 2013 Earnings Transcript;

3. GX 303 (PIPE documents);

4. DX 6170, 6172 (Feb. 2013 PIPE investor list);

5. The portion of the Court's Order regarding Martin Shkreli's Loss Amounts relating to Count 8 in Dkt. 535 at pages 90 to 96;

6. Mr. Greebel's May 28, 2018 letter submission to the Court relating to the *Fatico* hearing (Dkt. 612); and

7. A Black Scholes Calculator online (to estimate the market value of the February 2013 PIPE warrants).

Because Mr. Prensky does not have a *curriculum vitae*, we provide the following relevant information relating to Mr. Prensky's background and experience: From May 1997 through in or about 2015, Mr. Prensky served as Managing Director of Little Bear Investments LLC. As Managing Director of Little Bear Investments, Mr. Prensky was involved in managing money and assets of his family. From 2003 to 2010, Little Bear also managed the capital of a single partner who subsequently sold his interest back to the Prensky family a short while after 2011. While Managing Director of Little Bear, Mr. Prensky was directly involved in evaluating and considering whether to invest money in approximately one-hundred (100) PIPEs, most of which were in the life sciences area, specifically for public companies that were pre-revenue. Of the approximately 100 PIPEs that Mr. Prensky was involved in evaluating, Mr. Prensky oversaw the investment by Little Bear Investments and/or its affiliates in approximately 15 PIPEs, many of which were in early-stage, life science companies. In August 2013, Mr. Prensky participated in Retrophin's $4.50-per-share PIPE, and was the single largest non-institutional investor in that funding round. In or about 2015, Mr. Prensky co-founded and became Chief Executive Officer of LB Pharmaceuticals. Mr. Prensky holds that same position today. From in or about 2007 through in or about 2009,

---

[1] In addition to the materials listed here, and prior to his retention as an expert witness, Mr. Prensky reviewed many public filings in this case. He maintains an account on PACER and closely followed the trial.

**GIBSON DUNN**

The Honorable Kiyo Matsumoto
June 5, 2018
Page 6

Mr. Prensky also served as a proprietary trader for Koyote Capital. Mr. Prensky attended Yeshiva University for approximately two years, but did not graduate. Over the years, the Staff of the Securities and Exchange Commission has sought information from Mr. Prensky about, among other things, other companies, and Mr. Prensky voluntarily provided such information in the interest of assisting government investigations.

In connection with this matter, the U.S. Attorney's Office for the Eastern District of New York (USAO for the EDNY) and the Federal Bureau of Investigation (FBI) have contacted Mr. Prensky and asked to speak with him at his office on at least two occasions. The first occasion took place in or about the Fall of 2017 when the USAO for the EDNY and the FBI spent time with Mr. Prensky at Mr. Prensky's office asking him questions. The second occasion occurred on or about May 31, 2018, when the USAO for the EDNY and the FBI again spent time with Mr. Prensky at Mr. Prensky's office asking him questions. We have just learned that some of the information provided by Mr. Prensky during the interview in the Fall of 2017 would apparently constitute *Brady* and *Giglio* material, and we have asked the USAO for the EDNY to provide copies of all FBI reports and AUSA notes reflecting both of the interviews.

Respectfully submitted,

*/s/ Reed Brodsky*

Reed Brodsky