July 23, 2018

The Honorable Kiyo A. Matsumoto
United States District Judge
Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York 11201

Dear Judge Matsumoto,

    I respectfully submit this letter to the Court in support of my friend and former colleague, Evan Greebel.

    By way of introduction, I am currently a litigation partner at the New York office of a national law firm. I am a graduate of NYU School of Law and, since 1993, have been admitted to the Bar of the State of New York (and the State of New Jersey), as well as to the Eastern and Southern Districts of New York. I worked closely with Evan at my former law firm, including handling a number of civil litigations from approximately March 2013 through October 2014 for the pharmaceutical company at issue in Evan's trial. As such, I am familiar with many of the facts and allegations presented to the Court and jury during Evan's trial, and also am aware of the outcome of the trial. From my unique vantage point, I am compelled to state up front that I am unable to reconcile the jury's verdict – which I must accept – with the Evan Greebel that I have known for almost 15 years – a man whose integrity, generosity, professionalism, and high moral and ethical standards make it impossible for me to fathom that he could or would ever conspire to commit securities fraud. I draw some solace from F. Scott Fitzgerald's observation that "the test of a first-rate intelligence is the ability to hold two opposed ideas in the mind at the same time, and still retain the ability to function." Following Fitzgerald's lead, I will not attempt to reconcile the jury verdict with the Evan I know, and, instead, just share my personal experience of Evan in the hope that, as the Court considers Evan's commendable traits and estimable character, that the Court will exercise its broad discretion to afford the utmost mercy and leniency to him – and by extension, his wife and three young children.

    I first met Evan in or about 2003 when he arrived as a lateral associate at my prior law firm; however, I did not have the opportunity to really get to know, and collaborate with, Evan until 2008, when our offices were in close proximity to one another. Evan would frequently ask me to review transactional documents from a litigation standpoint, to address whether there were any potential rights being waived or potential liabilities being incurred by his clients. In the same vein, I would often reach out to Evan for insight regarding the transactional aspects of the various corporate litigation matters in which I was involved. Based on his keen understanding of private equity, mergers and acquisitions, joint ventures, limited liability company and partnership law, coupled with his unfettered enthusiasm for the art of the deal, Evan eventually became my "go-to" corporate partner. Whether he was pitching a client prospect or counseling an existing client of mine, I always found Evan to be quite skilled at listening to the client's core concerns and styling his presentation to address those concerns in a thoughtful and creative way. And clients, without exception, always appreciated his skill and complimented his responsiveness.

Hon. Kiyo A. Matsumoto
July 23, 2018
Page 2

With respect to responsiveness, Evan had the fiercest work ethic of any attorney I have known in my 26 years of practice. During the time when his office was a few feet away from mine at our former firm, I never felt alone when working late at night, as Evan invariably was there (and presumably was working late on those nights when I was able to leave at a normal hour). And during the time I was handling litigation matters for his pharmaceutical client (as mentioned above), I witnessed how Evan made himself available to this client around-the-clock, including weekends and vacations. It was my impression that the Chief Executive Officer of the pharmaceutical client took advantage of, and took for granted, Evan's unwavering commitment; yet, Evan never once complained about being on call 24/7. And, in my opinion, Evan capably and professionally helmed a multi-disciplinary team of attorneys providing legal services to this pharmaceutical client, the main point of contact for which was its oftentimes difficult CEO. With resilience and unflappability, Evan always placed himself on the front lines to absorb the CEO's unpredictable, erratic and sometimes, unreasonable, demands and expectations. I was often troubled by the disrespectful way in which the CEO communicated with Evan in emails on which I was copied or conference calls in which I participated, but Evan would let the CEO's rude comments just roll off his back. It seemed to me that Evan believed that it was his duty, as the "relationship partner," to act as a buffer between his colleagues and this CEO, which better enabled us, his colleagues, to focus on providing excellent client service to the pharmaceutical company. While Evan carefully managed this volatile CEO, it was my experience that, whenever this CEO crossed a line, or engaged in conduct with ethical implications, *i.e.*, within the context of the litigations in which I was involved, Evan had no hesitation in joining me to take the necessary prophylactic steps to make a record of our concerns with firm management at the risk management level, so as to ensure that we were abiding by our ethical responsibilities. It is on the basis of my experiences of Evan consistently honoring his ethical obligations that I remain incredulous at the notion of him ever conspiring to commit *any* crime, no less securities fraud.

Consistent with my professional experience of Evan acting as a buffer between his colleagues and the aforementioned CEO, I know that Evan plays a similar protective role in his personal life with respect to his family. I will never forget when Evan's brother-in-law, who had struggled with substance abuse, died under tragic circumstances in August 2015. At that point, Evan had left Katten and was newly practicing at another law firm. When I reached out to Evan to express my deep condolences, Evan clearly was devastated, but his principal focus was ensuring the well-being of his wife, Jodi, who had lost her beloved brother, and his three young children (including a ███ old daughter) who had lost their Uncle Mark. I was deeply moved when Evan informed me in the fall of 2015 – prior to his arrest – that he was partnering with others whose loved ones had struggled with addiction to build an inpatient rehabilitation facility in the Catskills region of New York, to help victims of the growing opioid epidemic. For Evan, providing emotional support to his wife as she mourned the loss of her brother was simply not enough; as a man of action he had to do more in the hope that others might be spared the senseless tragedy that is the ultimate outcome of untreated addiction. No one told Evan to do this; taking meaningful action to effect necessary change is simply part of his DNA.

As I write this letter, I am deeply saddened at the prospect of Evan being torn from his wife and children for any length of time due to incarceration. Based on what Evan has shared with me

Hon. Kiyo A. Matsumoto
July 23, 2018
Page 3

████████████████████████████████████████ – arising from the successive traumas of losing her brother and facing the potential loss of her husband – and the needs of his three young children, it seems to me that an incarceratory sentence for Evan is one that will have a more punitive impact on his family than it will on Evan. Further to this point, if the true goals of our penal system are punishment, deterrence and rehabilitation, then, in my humble opinion, those goals already have been met in this case. With respect to punishment, Evan has suffered the loss of his professional license and the ability to practice a discipline that is his passion. In fact, when I spoke to Evan shortly after his conviction, I was bowled over by his ability to express respect and admiration for our system of justice, which he said he "loved," even though the outcome of his own trial was not as he had hoped. Further, the ordeal of Evan's arrest and trial will surely deter him from any mis-step in whatever path he chooses to follow (he has mentioned to me that he would like to pursue a career in business consulting, for which I think he is ideally suited). And in terms of rehabilitation, I have seen a dramatic change in Evan since his arrest, as opposed to when we were professional colleagues, in terms of him being more self-reflective, spiritual and – with more time now available to him – expansive of his sphere of charitable commitments.

In sum, I thank the Court for reading my letter. I am proud to call Evan my friend and former law partner. And I would respectfully request that the Court exercise leniency and mercy in sentencing Evan, allowing the proverbial scale of justice tip in favor of a non-incarceratory sentence in light of all the good he has done, and will continue to do.

Respectfully submitted,

*Michael Gordon*

Michael S. Gordon