# Exhibit A

AMENDMENT AND RESTATEMENT

OF

FRIED, FRANK, HARRIS, SHRIVER & JACOBSON LLP

401(k) INCENTIVE SAVINGS PLAN

Effective as of January 1, 2013

## Table of Contents

Page

ARTICLE I       DEFINITIONS .................................................................................. 2

ARTICLE II      ELIGIBILITY FOR PARTICIPATION ........................................... 13

ARTICLE III     CONTRIBUTIONS.......................................................................... 14

ARTICLE IIIA    DESIGNATED ROTH CONTRIBUTIONS ......................................21

ARTICLE IV      DESIGNATION OF INVESTMENT FUNDS
                AND VALUATION OF ACCOUNTS ............................................. 23

ARTICLE V       VESTING ......................................................................................... 29

ARTICLE VI      PAYMENT OF BENEFITS AND WITHDRAWALS; LOANS..... 31

ARTICLE VII     LIMITATIONS ON BENEFITS AND CONTRIBUTIONS........... 42

ARTICLE VIII    NON-ALIENABILITY ..................................................................... 49

ARTICLE IX      TOP-HEAVY PLAN YEARS........................................................... 50

ARTICLE X       AMENDMENT OF THE PLAN....................................................... 55

ARTICLE XI      TERMINATION OF THE PLAN ..................................................... 56

ARTICLE XII     TRUST AND ADMINISTRATION ................................................. 57

ARTICLE XIII    MISCELLANEOUS ......................................................................... 61

AMENDMENT AND RESTATEMENT

OF

FRIED, FRANK, HARRIS, SHRIVER & JACOBSON LLP

401(k) INCENTIVE SAVINGS PLAN

_____

W I T N E S S E T H:

WHEREAS, Fried, Frank, Harris, Shriver & Jacobson LLP (the "Firm") established the Fried, Frank, Harris, Shriver & Jacobson LLP 401(k) Incentive Savings Plan which was effective February 23, 1987 and most recently amended and restated effective January 1, 2008 (the "Plan"), which amendment and restatement, among other changes, merged the Frank, Harris, Shriver & Jacobson LLP Associates Incentive Savings Plan which was effective as of December 21, 1990 (the "Associates Incentive Savings Plan"), which had been most recently amended and restated effective January 1, 2007 (the "Prior Plan") into the Plan;

WHEREAS, it is desired restate and amend the Plan in its entirety effective January 1, 2013, which restatement shall be construed in accordance with the Employee Retirement Income Security Act of 1974, as amended, to maintain incorporate those amendments adopted since the prior restatement and to make certain other administrative changes as hereinafter provided;

NOW, THEREFORE, in consideration of the premises, it is hereby agreed as follows:

# ARTICLE I

## DEFINITIONS

The following words and phrases as used herein shall, when capitalized, have the following meanings:

"ACCOUNT" means the Elective Deferral Account, the Matching Contribution Account, the Employer Contribution Account, the Rollover Account, the Roth Contribution Account, and the Roth Rollover Account and any or all of such Accounts.

"ADJUSTMENT FACTOR" means the cost of living adjustment factor prescribed by the Secretary of the Treasury under Sections 401(a)(17)(B), 415(d) and 402(g)(5) of the Code, as applied to such items and in such manner as the Secretary shall provide.

"AFFILIATE" means any corporation or unincorporated business (i) controlled by, or under common control with the Firm within the meaning of Sections 414(b) and (c) of the Code, (ii) which is a member of an affiliated service group, as defined in Section 414(m)(2) of the Code, of which the Firm is a member or (iii) any other entity required to be aggregated with the Firm pursuant to regulations under Section 414(o) of the Code; provided, however, that, for purposes of the limitations upon the benefits of a Participant contained in Article VII, "Affiliate" status shall be determined in accordance with Section 415(h) of the Code. An Affiliate shall not be deemed an Affiliate for any purpose under the Plan with respect to any period before it became an Affiliate or after it ceases to be an Affiliate.

"ASSOCIATE" means an Employee classified as an associate by the Firm. For purposes of this Plan an Employee classified as Of Counsel, Public Service Counsel, Special Counsel or Subscription Document Review Associate is an Associate. An Employee classified as summer associate or Discovery Attorney is not an Associate.

"BASE SALARY" means regular or basic salary set by the Firm.

"BASIC SALARY REDUCTION CONTRIBUTION" means the contribution made by an Employer on behalf of a Participant pursuant to a salary reduction arrangement between the Employer and the Participant in accordance with the Plan.

2

"BENEFICIARY" means such person or persons as may be designated by a Participant or as may otherwise be entitled, upon his death, to receive any benefits or payments under the terms of this Plan; provided, however, that for purposes of this Plan, the term "person" shall include a trust or other entity.

"BREAK IN SERVICE" means, with respect to a Participant, any Plan Year in which he does not complete more than five hundred (500) Hours of Service with the Firm or an Affiliate.

"BROKERAGE ACCOUNT" means a custodian account with a brokerage firm which is a member of the New York Stock Exchange or a bank which provides for the direction of investments therein by the Participant on whose behalf it was established.

"CODE" means the Internal Revenue Code of 1986, as amended from time to time.

"COMPENSATION," (a) for any period, means --

(1)     with respect to an Employee described in Subsection (a) of the definition of Employee in Article I, regular or basic salary, overtime, bonuses or other extra compensation of an Employee (excluding any severance payments), plus the Employee's Basic Salary Reduction Contributions and Supplemental Salary Reduction Contributions and any amount contributed by the Firm on behalf of the Employee to the Fried, Frank, Harris, Shriver & Jacobson LLP Flexible Benefits Plan and any amount that the Employee has elected as a qualified transportation fringe that is excluded from the Employee's gross income under Section 132(f)(4) of the Code; or

(2)     with respect to an Employee described in Section (b) of the definition of Employee in Article I, "earned income" within the meaning of Section 401(c)(2) of the Code, plus the Participant's Basic Salary Reduction Contributions and Supplemental Salary Reduction Contributions; provided, however, that no amount paid to an Employee in respect of a period prior to his becoming a Participant or during which he is an Excluded Employee shall be considered Compensation.

(b)     Notwithstanding Subsection (a), the annual Compensation taken into account with respect to any Employee for any Plan Year shall not exceed $200,000 for Plan Years commencing on or after January 1, 2002, as increased by the applicable Adjustment Factor.

"CONTROLLER" means an Employee who is designated by the Firm as a Controller on or before November 15, 2007.

"DIRECTOR" means an Employee who is designated by the Firm as a Director on or before November 15, 2007.

3

"DISABILITY" means the mental or physical incapacity of an Employee which, in the opinion of a licensed physician approved by the Pension Committee, renders him totally and permanently incapable of performing his assigned duties with an Employer or an Affiliate.

"DISCOVERY ATTORNEY" means an attorney classified as a discovery, staff or contract attorney by the Firm.

"EFFECTIVE DATE" of this Plan means February 23, 1987.

"ELECTIVE DEFERRAL ACCOUNT" means the account maintained for a Participant, in accordance with this Plan, to which shall be credited the Participant's Elective Deferrals.

"ELECTIVE DEFERRALS" means, for any Plan Year, (a) Basic Salary Reduction Contributions, (b) Supplemental Salary Reduction Contributions, or (c) the sum of both Basic Salary Reduction Contributions and Supplemental Salary Reduction Contributions.

"ELIGIBLE SPOUSE" means a Participant's lawfully married spouse on the date of his death, provided that such spouse was married to the Participant during the entire one (1) year period ending on the Participant's death.

"EMPLOYEE" means --

(a)     any individual who regularly performs services for the Firm in an employer-employee relationship and who is paid on the regular United States payroll; provided that an individual classified as an independent contractor by the Firm shall not be deemed to be an Employee even if such individual is deemed to be a common law employee for any other purpose; or

(b)     any Partner of the Firm.

"EMPLOYER" means the Firm and any other Affiliate which has adopted the Plan as a participant herein and any successor to any such Employer.

"EMPLOYER CONTRIBUTION ACCOUNT" means the account maintained on the books of the Plan for a Participant, in accordance with the terms hereof, to which shall be credited Employer Contributions.

"EMPLOYER CONTRIBUTIONS" means the annual contribution made by an Employer on behalf of Participants or groups of Participants to the Employer Contribution Account in an amount determined from time to time by the Firm in its discretion or as set forth in Article III hereof.

"EMPLOYMENT COMMENCEMENT DATE" means --

(a)     the first day upon which an Employee first performs an Hour of Service for the Firm or an Affiliate, or

(b)     in the case of a former Participant who has incurred a Break in Service, the date on which he first performs an Hour of Service for the Firm or an Affiliate after such Break in Service.

"ERISA" means the Employee Retirement Income Security Act of 1974, as from time to time amended.

"EXCESS AGGREGATE CONTRIBUTIONS" means --

(a)     the aggregate amount of Matching Contributions, and to the extent permitted or required under regulations of the Secretary of the Treasury, Elective Deferrals, actually made, with respect to each Plan Year on behalf of Highly Compensated Employees for such Plan Year, over

(b)     the maximum amount of such contributions permitted under the limitations hereunder,

determined by reducing contributions on behalf of Highly Compensated Employees in the order of their Matching Contributions Ratios beginning with the highest of such ratios.

The determination of Excess Aggregate Contributions with respect to a plan shall be made after first determining the Excess Deferrals and then determining the Excess Contributions.

"EXCESS CONTRIBUTIONS" means the excess of --

(a)     the aggregate amount of Elective Deferrals actually made with respect to each Plan Year on behalf of Highly Compensated Employees for such Plan Year, over

(b)     the maximum amount of such contributions permitted under the limitations of this Plan,

determined by reducing Elective Deferrals on behalf of Highly Compensated Employees in the order of their Elective Deferral Ratios beginning with the highest of such ratios.

"EXCESS DEFERRALS" means, for any taxable year, that amount of Elective Deferrals made by an Employer on behalf of a Participant which exceeds the limitation of Section 402(g) of the Code as increased from year to year by the Adjustment Factor as provided by the Secretary of the Treasury.

5

"EXCLUDED EMPLOYEE" means an Employee who --

(a)     is employed by an Affiliate other than an Employer; or

(b)     (1) is neither a resident nor a citizen of the United States of America; and

(2)     receives from an Employer or any Affiliate no earned income within the meaning of Section 911(b) of the Code, that constitutes income from sources within the United States, within the meaning of Section 861(a)(3) of the Code; or

(c)     is a "leased employee" within the meaning of Section 414(n)(2) of the Code; or

(d)     is classified by the Firm as a project discovery attorney, summer associate, summer intern or legal or administrative intern by the Firm.

An Excluded Employee shall be deemed an Employee for all purposes under this Plan, except that an Excluded Employee may not become a Participant or have his Employer make an Elective Deferral pursuant to Article III while he remains an Excluded Employee.

"FIRM" means Fried, Frank, Harris, Shriver & Jacobson LLP or any predecessor or successor thereto.

"HIGHLY COMPENSATED EMPLOYEE" means any Employee or former Employee who during the Plan Year was a five percent (5%) owner, or during the preceding Plan Year was (i) a five percent (5%) owner or (ii) received compensation in excess of $100,000 or such higher amount as may be in effect under Section 414(q)(1)(B) of the Code.  For purposes of this Section, "compensation" means Section 415 Compensation.

"HOUR OF SERVICE" means (a) --

(1)     each hour for which an Employee is paid, or entitled to payment, by the Firm or an Affiliate for the performance of duties for the Firm or Affiliate, credited for the Plan Year in which such duties were performed; or

(2)     each hour of a period during which duties are not performed due to vacation, holiday, illness, incapacity, layoff, jury duty, military duty or leave of absence, determined in accordance with the following rules:

(A)     if the Employee is directly or indirectly paid, or entitled to payment, by the Firm or an Affiliate on account of such period of absence --

(i)     he shall be credited with Hours of Service in respect to the entire period of absence in accordance with Subsections (b) and (c), if he returns to the employ of the Firm or an Affiliate at the conclusion of such period; and

(ii)     he shall be credited with Hours of Service in accordance with Subsections (b) and (c) up to a maximum of five hundred one (501) Hours of Service in each such period of absence, if he does not return to the employ of the Firm or an Affiliate at the conclusion of such period;

(B)     if the Employee was not paid or entitled to payment, by the Firm or an Affiliate on account of such period of absence --

(i)     he shall be credited with thirty-five (35) Hours of Service for each week, or seven (7) Hours of Service for each week day, of the period of absence, if he returns to the employ of the Firm or an Affiliate at the conclusion of such period; and

(ii)  he shall be credited with no Hours of Service in respect of such period of absence, if he does not return to the employ of the Firm or an Affiliate at the conclusion of such period;

(3)     each hour during an Employee's period of service in the Armed Forces of the United States, credited on the basis of forty (40) Hours of Service for each week, or eight (8) Hours of Service for each week day, of such service, if the Employee retains re-employment rights under applicable law and is re-employed by the Firm or an Affiliate within the period provided by any such law; and

(4)     each hour for which an Employee has been awarded, or is otherwise entitled to, back pay from the Firm or an Affiliate, irrespective of mitigation of damages, if he is not entitled to credit for such hour under any other Paragraph of this Subsection (a).

(5)     (A)     Solely for purposes of determining whether a Break in Service has occurred, each hour of an Employee's absence which commences on or after January 1, 1985 by reason of the pregnancy of such Employee, the birth of a child of such

Employee, the placement of a child in connection with the adoption of such child by the Employee or the caring for such child for a period beginning immediately following such birth or placement.

    (B) Under this Paragraph (5) an Employee shall be credited with the number of hours which would normally have been credited to him but for such absence, or in any case in which such number cannot be determined, a total of eight (8) Hours of Service for each day of such absence, except that no more than five hundred one (501) Hours of Service shall be credited to an Employee for any such period of absence and such Hours of Service shall be credited to an Employee only in the Plan Year in which such period of absence began if such Employee would be prevented from incurring a Break in Service in such Plan Year solely because of the crediting of such Hours of Service, or in any other case, in the next succeeding Plan Year.

    (C) Notwithstanding the foregoing, an Employee shall not be credited with Hours of Service pursuant to this Paragraph (5) unless such Employee shall furnish to the Pension Committee on a timely basis such information as the Pension Committee shall reasonably require to establish

      (i) that the absence from work is for reasons described in Subparagraph (a) hereof; and

      (ii) the number of days during which such absence continued.

    (b) The number of an Employee's Hours of Service and the Plan Year or other computation period to which they are to be credited shall be determined in accordance with Section 2530.200b-2 of the Rules and Regulations for Minimum Standards for Employee Pension Benefit Plans, which Section is hereby incorporated by reference into this Plan.

    (c) In the case of an Employee whose compensation is not determined on the basis of certain amounts for each hour worked such Employee's Hours of Service need not be determined from employment records, and such employee may, in accordance with uniform and nondiscriminatory rules adopted by the Pension Committee, be credited with forty-five (45) Hours of Service for each week in which he would be credited with any Hours of Service under the provisions of Subsection (a) or (b).

    "INVESTMENT DATE" means the first business day of January, April, July or October of each year.

"INVESTMENT FUND"  means any fund that may be made available for investment under the Plan, or all of such funds.

"LAW CLERK" means an Employee classified as a law clerk by the Firm.

"MATCHING CONTRIBUTIONS" means the annual contribution made by an Employer on behalf of a Participant to the Matching Contribution Account in an amount determined from time to time by the Firm in its discretion.

"MATCHING CONTRIBUTION ACCOUNT" means the account maintained on the books of the Plan for a Participant, in accordance with this Plan, to which shall be credited Matching Contributions.

"NORMAL RETIREMENT DATE" means the Participant's or former Participant's sixty-fifth (65th) birthday.

"OF COUNSEL" means an Employee or former Partner classified as of counsel by the Firm.

"PARTICIPANT" means any Employee who participates in this Plan and who has not experienced a Separation From Service and who is not an Excluded Employee.

"PARTNER" means an individual who is a member of the Firm.

"PENSION COMMITTEE" means the committee to administer the Plan and includes Amy L. Blackman, Kenneth R. Blackman, Donald P. Carleen, Michelle B. Gold, Meyer Last, and Philip Richter, and any such additional and successor individuals as shall from time to time be appointed by the Firm.

"PLAN" means the Fried, Frank, Harris, Shriver & Jacobson LLP 401(k) Incentive Savings Plan, as set forth herein and as from time to time amended.

"PLAN YEAR" means the twelve (12) month period beginning on each January 1.

"PRIOR PLAN" means the Fried, Frank, Harris, Shriver & Jacobson LLP Associates Incentive Savings Plan, as in effect prior to January 1, 2008.

"PUBLIC SERVICE COUNSEL" means an Employee classified as public service counsel by the Firm.

"ROLLOVER ACCOUNT" means the account maintained on the books of the Plan for a Participant, in accordance with this Plan, to which shall be credited Rollover Contributions.

9

"ROLLOVER CONTRIBUTION" means a contribution made by an Employee to his Rollover Account.

"ROTH CONTRIBUTION ACCOUNT" means the account established for each Participant who makes a Roth election to which the Plan Administrator shall credit, or cause to be credited, Roth Contributions allocable to each such Participant, plus earnings or losses thereon.

"ROTH CONTRIBUTIONS" mean any contribution made to the Plan at the election of a Participant that is includable in the Participant's gross income at the time deferred and has been irrevocably designated at the time of the cash or deferral election as Roth Contributions by the Participant and is in lieu of all or a portion of Elective Deferrals that a Participant may make for the Plan Year. A Participant's Roth Contributions shall be maintained in a separate account containing only the Participant's Roth Contributions and gains and losses attributable to those Roth Contributions. Roth Contributions shall not include any contributions properly distributed as Excess Deferrals or Excess Contributions and are limited by Code Section 402(g).

"ROTH ROLLOVER ACCOUNT" means the account maintained on the books of the Plan for a Participant, in accordance with this Plan, to which shall be credited Roth Rollover Contributions.

"ROTH ROLLOVER CONTRIBUTION" means a contribution made by an Employee to his Roth Rollover Account.

"SEPARATION FROM SERVICE" means the termination of a Participant with the Firm or an Affiliate for any reason. Separation from Service shall not be deemed to occur upon an Employee's transfer from the employ of the Firm or an Affiliate to the employ of another Affiliate of the Firm or upon an Employee becoming a Partner.

"SPECIAL COUNSEL" means an Employee classified as special counsel by the Firm.

"SPECIFIED COUNSEL" means an Employee who is (i) Of Counsel and not previously a Partner, (ii) Public Service Counsel or (iii) Special Counsel.

"SPECIFIED STAFF EMPLOYEE" means effective January 1, 2008, an Employee who:

    (a)    (i)    has less than ten Years of Service on December 31, 2007, and

           (ii)    has Base Salary of less than $60,000 on September 30, 2007; or

(b)   (i)      has less than five Years of Service on December 31, 2007, and

(ii)     is not a Director or Controller employed on November 15, 2007; or

(c)     is hired or rehired after November 15, 2007.

A Specified Staff Employee is not (i) an Associate, (ii) a Partner , (iii) an Excluded Employee, (iv) an on call paralegal, or  (v) a Discovery Attorney.

"SPOUSAL CONSENT" means, with respect to a designation of a Beneficiary by a Participant, that

(a)   (i)      the Participant's Eligible Spouse has consented in writing to such designation, (ii) such designation designates a Beneficiary which may not be changed by a further election by the Participant without Spousal Consent (unless the original election expressly permits redesignations by the Participant without any requirement of further consent by the Spouse) and (iii) that the Eligible Spouse's consent acknowledges the effect of such designation and is witnessed by a member of the Pension Committee or a notary public; or

(b)     it is established to the satisfaction of a member of the Pension Committee that the consent described in Subsection (a) is unobtainable because the Participant is unmarried, because the Participant's Eligible Spouse cannot be located, or because of such other circumstances as the Secretary of the Treasury may by regulation prescribe.

"SUBSCRIPTION DOCUMENT REVIEW ASSOCIATE" means an Employee classified as a subscription document review associate by the Firm.

"SUPPLEMENTAL SALARY REDUCTION CONTRIBUTION" means a contribution under the Plan made by an Employer on behalf of a Participant who is a Highly Compensated Employee pursuant to a salary reduction arrangement in accordance with Section 3.01(b).

"TRUST" or "TRUST FUND" means all of the assets of the Plan which are held by Merrill Lynch Bank & Trust Co., FSB, as Trustee.

"TRUSTEE" or "TRUSTEES" means Merrill Lynch Bank & Trust Co., FSB.

"VALUATION DATE" means any day that the New York Stock Exchange is open for business or any other date chosen by the Pension Committee.

"YEAR OF SERVICE" means (a) --

       (1)    any Plan Year in which an Employee completes at least one thousand (1,000) Hours of Service; and

       (2)    solely for purposes of Article II, the twelve (12) month period beginning on an Employee's Employment Commencement Date in which the Employee completes at least one thousand (1,000) Hours of Service.

       (b)    Solely for purposes of Article II, in determining whether an Employee who becomes a Partner has completed a Year of Service, service as a Partner shall be treated as service while an Employee.

       (c)    In determining whether a Specified Staff Employee has completed a Year of Service, all service with the Firm shall be considered.

       (d)    In determining whether a Specified Counsel has completed a Year of Service, all service with the Firm shall be considered.

# ARTICLE II

# ELIGIBILITY FOR PARTICIPATION

2.01    Each Employee who is a Participant on December 31, 2012, shall continue as a Participant on and after January 1, 2013.  Each other Employee shall become a Participant in this Plan as of the January 1 or July 1 next following his Employment Commencement Date, provided that each Specified Staff Employee shall be eligible for an Employer Contribution pursuant to Section 3.10 as of his Employment Commencement Date or January 1, 2008, whichever is later, and provided further that each Specified Counsel hired on or after November 15, 2007 shall be eligible for an Employer Contribution pursuant to Section 3.05 as of the January 1 or July 1 next following the date he has completed one (1) Year of Service.

2.02    A former Participant in this Plan or in the Prior Plan who is re-employed by an Employer shall again become a Participant as of his most recent Employment Commencement Date, unless he is an Excluded Employee.

2.03    An Employee who is an Excluded Employee on the date on which he qualifies for participation in the Plan under Section 2.01 shall become a Participant on the date, if any, on which he ceases to be an Excluded Employee.

2.04    A Participant who becomes an Excluded Employee shall continue to be a Participant for all purposes of the Plan except Article III.

2.05    A Participant shall cease to be a Participant as of either (a) the date of his Separation from Service, if he incurs a Break in Service in the Plan Year of such Separation from Service or in the next succeeding Plan Year; or (b) the first day of the first Plan Year in which he incurs a Break in Service, if he incurs such Break in Service without incurring a Separation from Service.  However, any Participant on whose behalf an Account is maintained under the Plan shall be considered a Participant except for purposes of Article III.

ARTICLE III

CONTRIBUTIONS

3.01    (a)    Subject to this Article, (1)   each Participant who is a Highly Compensated Employee may elect to reduce his Compensation for each payroll period by an amount not exceeding five percent (5%) of his Compensation for such period and direct his Employer to contribute such amount to the Plan in cash as a Basic Salary Reduction Contribution; provided, however, that in the case of a Participant who is also a Partner of the Firm, he shall be permitted to elect to reduce his Compensation or direct his Employer to contribute such amount in respect of a calendar month in cash as an Elective Deferral in accordance with rules to be established by the Firm but only upon a determination by the Pension Committee that the Actual Deferral Percentage of the Highly Compensated Employees will not exceed the maximum permissible amount described herein; or

(2)    each Participant who is not a Highly Compensated Employee may elect to reduce his Compensation for each payroll period by an amount not to exceed ninety-nine percent (99%) of his Compensation for such period and direct his Employer to contribute such amount to the Plan in cash as a Basic Salary Reduction Contribution.

(a)    Subject to this Article, and upon a determination by the Pension Committee that the Actual Deferral Percentage described in Section 3.03 will not be exceeded, each Participant who is a Highly Compensated Employee may, upon the consent of the Pension Committee, elect to reduce his Compensation by an amount greater than the five percent (5%) of his Compensation referred to in Subsection (a)(1) but not exceeding fifteen percent (15%) thereof and direct his Employer to contribute such amount to the Plan in cash as a Supplemental Salary Reduction Contribution.

(b)    Elective Deferrals contributed by an Employer on behalf of a Participant in respect of a payroll period shall be paid to the Trust and also allocated to the Participant's Account as soon as practicable after the end of the payroll period, but in no event later than the 15th business day of the month immediately following the month to which the Elective Deferral relates.

(c)    An election by a Participant pursuant to this Section shall be made in writing, on a form prescribed by the Pension Committee, no later than thirty (30) days (or

14

such lesser number of days as is acceptable to the Pension Committee) prior to the date he becomes eligible to participate in the Plan. The Participant shall specify on the form the percentage, in whole multiples of one percent (1%), of his Compensation to be deducted each payroll period and contributed to the Plan as Elective Deferrals; provided, that any election made under the Prior Plan shall be deemed to be effective under this Plan until a new election is made.

3.02    (a)    Notwithstanding Section 3.01, no Participant shall be permitted to have Elective Deferrals made by an Employer on his behalf under this Plan for any taxable year in excess of the amount specified by the Secretary of the Treasury pursuant to regulations under Code Section 415.

(b)    If, prior to March 1 in any calendar year, a Participant notifies the Pension Committee in writing that the sum of his Elective Deferrals under this Plan, when aggregated with his elective deferrals (as defined in Section 402(g) of the Code) under all other plans for the previous calendar year result in Excess Deferrals, such Excess Deferrals shall be distributed to him, adjusted for any income allocable thereto, no later than the following April 15. A determination as to whether a Participant has made Excess Deferrals shall be made without regard to community property laws.

(c)    Except to the extent provided under rules prescribed by the Secretary of the Treasury, notwithstanding the distribution of any portion of an Excess Deferral from the Plan such portion shall be treated as Elective Deferrals for purposes of applying the provisions of Section 3.03.

3.03    (a)    Notwithstanding the provisions of Section 3.01, if under all plans maintained by the Employer which provide for elective deferrals (as defined in Section 402(g) of the Code) pursuant to Section 401(k) of the Code,

(1)    the Actual Deferral Percentage for Highly Compensated Employees for the Plan Year exceeds the product of 1.25 multiplied by the Actual Deferral Percentage for the Other Eligible Group, and

(2)    either (A) the excess of the Actual Deferral Percentage for Highly Compensated Employees over that for the Other Eligible Group is more than two (2) percentage points, or (B) the Actual Deferral Percentage for Highly Compensated Employees exceeds the product of 2 multiplied by the Actual Deferral Percentage for the Other Eligible Group, then the Pension Committee shall limit the amount of Elective Deferrals for Highly Compensated Employees.

15

(b)     For purposes of this Section,

(1)     "Actual Deferral Percentage," for Highly Compensated Employees means the average of the Ratios (calculated separately for each Highly Compensated Employee) for the Plan Year and for the Other Eligible Group means the average of the Ratios (calculated separately for each Employee in the group) for the preceding Plan Year.

(2)     "Other Eligible Group" means the group of Employees who are not Highly Compensated Employees.

(3)     "Ratio" with respect to any Employee, other than an Excluded Employee, means a fraction whose numerator equals the Elective Deferrals contributed to the Plan for a Plan Year on behalf of such Employee and whose denominator equals the Employee's Compensation for that Plan Year.

(c)     Any Excess Contributions, offset by any distributions of Elective Deferrals and adjusted for income or loss allocable thereto, shall be distributed to Participants who are Highly Compensated Employees on the basis of the amount of Elective Deferrals allocated to Participants' Accounts, beginning with the greatest amount, no later than March 15 following the Plan Year for which such Excess Contributions were contributed to the Plan.  The income or loss allocable to a Participant's Excess Contributions for the Plan Year shall be determined by multiplying the income or loss allocable to the Participant's Elective Deferral Account for the Plan Year by a fraction, the numerator of which is the Excess Contributions on behalf of the Participant for the preceding Plan Year and the denominator of which is the Participant's Elective Deferral Account balance as of the last day of the preceding Plan Year.

3.04     (a)     Upon written notice to the Pension Committee thirty (30) days prior to an Investment Date (or such lesser period as may be acceptable to the Pension Committee), a Participant may elect to change the percentage of Elective Deferrals made on his behalf as of the first payroll period, or in the case of a Partner, as of the first business day of the first calendar month, commencing after such Investment Date (or such lesser period as may be acceptable to the Pension Committee).

(b)     Upon written notice to the Pension Committee thirty (30) days prior to an Investment Date (or such lesser period as may be acceptable to the Pension Committee), a Participant may elect to cease having Elective Deferrals made on his behalf as of any subsequent payroll period, or in the case of a Partner, as of any subsequent calendar month (or such lesser period as may be acceptable to the Pension Committee).

3.05     Effective January 1, 2008, for any Plan Year, the Firm may, in its discretion, contribute to the Plan an Employer Contribution to be allocated among the Employer Contribution Accounts of Specified Counsel who are (a) employed on the last day of the Plan Year or who have died or retired on or after the Normal Retirement Date during the Plan Year; and (b) who are located at such offices as selected by the Firm, in its discretion, in proportion to such Specified Counsel's Compensation for the Plan Year.

3.06     Matching Contributions shall be allocated among the Matching Contribution Accounts of Participants, other than Associates, Of Counsel, Public Service Counsel, Special Counsel, Partners or former Partners, who have made an election to direct the Firm to make an Elective Deferral on his behalf for the Plan Year as provided herein, and who are employed on the last day of the Plan Year and have completed a Year of Service in the Plan Year or who have died or retired on or after Normal Retirement Date during the Plan Year, either in proportion to the Elective Deferrals made on behalf of such Participants during the Plan Year or, in the discretion of the Firm, in proportion to such Elective Deferrals not in excess of a specified percentage of Participants' Compensation for the Plan Year.

3.07     (a)     Notwithstanding the provisions of Section 3.06 under all plans maintained by the Firm which provide for matching contributions or employee contributions if

(1)     the Average Contribution Percentage for Highly Compensated Employees exceeds the product of 1.25 multiplied by the Average Contribution Percentage for the Other Eligible Group, and

(2)     either (A) the excess of the Average Contribution Percentage for Highly Compensated Employees over that for the Other Eligible Group is more than two (2) percentage points, or (B) the Average Contribution Percentage for Highly Compensated Employees exceeds the product of 2 multiplied by the Average Contribution Percentage for the Other Eligible Group, then the Pension Committee shall limit the amount of Matching Contributions for Highly Compensated Employees.

(b)     For purposes of this Section,

(1)     "Actual Contribution Percentage" for Highly Compensated Employees means the average of the Ratios (calculated separately for each Highly Compensated Employee) for the Plan Year and for the Other Eligible Group means the average of the Ratios (calculated separately for each Employee in the group) for the preceding Plan Year.

(2)     "Other Eligible Group" means the group of Employees who are not Highly Compensated Employees.

(3)     "Ratio," with respect to any Employee, other than an Excluded Employee, means a fraction whose numerator equals the Matching Contributions contributed to the Plan for a Plan Year on behalf of such Employee and whose denominator equals the Employee's Compensation for that Plan Year.

(c)     Notwithstanding Subsection (a), any Excess Aggregate Contributions, adjusted for income or loss allocable thereto, shall be distributed to Participants who are Highly Compensated Employees on the basis of the amount of Matching Contributions allocated to Participants' Accounts, beginning with the greatest amount, no later than March 15 following the Plan Year for which such Excess Aggregate Contributions were contributed to the Plan on his behalf.  The income or loss allocable to the Participant's Excess Aggregate Contributions for the Plan Year shall be determined by multiplying the income or loss allocable to the Participant's Matching Contribution Account for the Plan Year by a fraction, the numerator of which is the Excess Aggregate Contributions on behalf of the Participant for the preceding Plan Year and the denominator of which is the Participant's Matching Contribution Account balance as of the last day of the preceding Plan Year.

(d)     For plan years beginning before January 1, 2008, income on Excess Aggregate Contributions for the gap period is equal to ten percent (10%) of the income allocable to Excess Aggregate Contributions for the Plan Year that would be determined under Section 3.07(c), multiplied by the number of calendar months that have elapsed since the end of the Plan Year.  For purposes of calculating the number of calendar months that have elapsed, a corrective distribution that is made on or before the fifteenth day of a month is treated as made on the last day of the preceding month and a distribution made after the fifteenth day of a month is treated as made on the last day of the month.

3.08   In any Plan Year in which the Actual Deferral Percentage exceeds the limit of Subsection 3.03(a) and the Average Contribution Percentage does not exceed the limit of Subsection 3.07(a), Matching Contributions allocated to the Accounts of Participants who are not Highly Compensated Employees to the extent such contributions exceed the amount necessary to remain within the limit of Subsection 3.07(a), shall be treated as Elective Deferrals for the purposes of determining the Actual Deferral Percentage.  In any Plan Year in which the Average Contribution Percentage exceeds the limit of Subsection 3.07(a) and the Actual Deferral Percentage does not exceed the limit of Subsection 3.03(a), Elective Deferrals allocated to the Accounts of Participants who are not Highly Compensated Employees to the extent such contributions exceed the amount necessary to remain within the limit of Subsection 3.03(a), shall be treated as Matching Contributions for the purposes of determining the Actual Contribution Percentage.

3.09    For any Plan Year during which both the Actual Deferral Percentage and the Average Contribution Percentage for the Highly Compensated Employees exceed the like percentages for the Other Eligible Group multiplied by 1.25 the sum of the Actual Deferral Percentage and the Average Contribution Percentage for the Highly Compensated Employees shall not exceed the greater of:

(a)    the sum of:

(1)    125% of the greater of the Actual Deferral Percentage or the Actual Contribution Percentage for the Other Eligible Group; plus

(2)    the lesser of:

(A)    200% of the lesser of the Actual Deferral Percentage or the Actual Contribution Percentage for the Other Eligible Group; or

(B)    two (2) percentage points plus the lesser of the Actual Deferral Percentage or the Actual Contribution Percentage for the Other Eligible Group; or

(b)    the sum of:

(1)    125% of the lesser of the average Actual Deferral Percentage or the Actual Contribution Percentage for the Other Eligible Group; plus

(2)    the lesser of:

(A)    200% of the greater of the Actual Deferral Percentage or the Actual Contribution Percentage for the Other Eligible Group; or

(B)    two (2) percentage points plus the greater of the Actual Deferral Percentage or the Actual Contribution Percentage for the Other Eligible Group.

3.10    For any Plan Year commencing on or after January 1, 2008, the Firm shall contribute to the Plan an Employer Contribution in the amount of 7.5% of Compensation for each Specified Staff Employee who is employed on the last day of the Plan Year or died or retired on or after Normal Retirement Date during the Plan Year.

3.11    Notwithstanding any provision of this Plan to the contrary, no employee who is a Nonhighly Compensated Employee and who receives an Employer Contribution pursuant to this Plan, shall receive an Employer Contribution that is less

than 7.5% of Compensation for that Nonhighly Compensated Employee.  For purposes of this Section, a Nonhighly Compensated Employee means an employee who is not a Highly Compensated Employee.

       3.12    No contribution under this Article may be made which cannot be allocated under Article VII.

       3.13    All contributions made pursuant to this Article shall be paid to the Trustees and shall be allocated to the Accounts of the Participants as provided herein.

       3.14    Notwithstanding any provision of this Plan to the contrary, contributions, benefits and service credit with respect to qualified military service will be provided in accordance with Section 414(u) of the Internal Revenue Code.

       3.15    All Participants who are eligible to make Elective Deferrals under this Plan and who have attained age 50 before the close of the Plan Year shall be eligible to make catch-up contributions in accordance with, and subject to the limitations of, Section 414(v) of the Code.  Such catch-up contributions shall not be taken into account for purposes of the provisions of the Plan implementing the required limitations of Sections 402(g) and 415 of the Code.  The Plan shall not be treated as failing to satisfy the provisions of the Plan implementing the requirements of Section 401(k)(3), 401(k)(11), 401(k)(12), 410(b), or 416 of the Code, as applicable, by reason of the making of such catch-up contributions.

## ARTICLE IIIA
## DESIGNATED ROTH CONTRIBUTIONS

3.1A   The Plan shall accept Roth Contributions made on behalf of a Participant pursuant to his or her deferral election with respect to contributions.  A Participant's Roth Contributions shall be allocated to a separate account maintained for such Roth Contributions as described herein.  Unless specifically stated otherwise, Roth Contributions shall be treated as Elective Deferrals for all purposes under this Plan.

3.2A   Contributions and withdrawals of Roth Contributions shall be credited and debited to a separate Roth Contribution Account maintained for each Participant.  The Plan shall maintain a record of the amount of Roth Contributions made to each Participant's Roth Contribution Account.  Gains, losses, and other credits or charges must be separately allocated on a reasonable and consistent basis to each Participant's Roth Contribution Account and the Participant's other accounts under this Plan.  No contribution other than Roth Contributions and properly attributable earnings shall be credited to each Participant's Roth Contribution Account.

3.3A   A direct rollover of a distribution from a Roth Contribution Account under the Plan will only be made to another Roth elective deferral account under an applicable retirement plan described in Section 402A (e)(1) of the Code or to a Roth IRA described in Section 408A of the Code, and only to the extent the rollover is permitted under the rules of Section 402(c) of the Code.

3.4A   The Plan will accept a rollover contribution to a Roth Rollover Account only if it is a direct rollover from another Roth elective deferral account under an applicable retirement plan described in Section 402A(e)(1) of the Code and only to the extent the rollover is permitted under the rules of Section 402(c) of the Code.

3.5A   This Plan shall not permit a direct rollover (including an automatic rollover) for distributions from a Participant's Roth Contribution Account if the amount of the distributions that are eligible rollover distributions are reasonably expected to total less than $200 during a year.  In addition, any distribution from a Participant's Roth Contribution Account is not taken into account in determining whether distributions from a Participant's other accounts are reasonably expected to total less than $200 during a year.  However, eligible rollover distributions from a Participant's Roth Contribution Account are taken into account in determining whether the total amount of the Participant's account balances under this Plan exceeds $1,000 for purposes of mandatory distributions from this Plan.

3.6A   In the event that Excess Deferrals and/or Excess Contributions with respect to a Plan Year are allocable to a Participant who has made pre-

tax Elective Deferrals and Roth Contributions, the Plan will distribute  pre-tax Elective Deferrals first.

               3.7A   A Roth Contribution made pursuant to Section 414(u) of the Code by reason of a Participant's qualified military service shall not be taken into account for purposes of the Actual Deferral Percentage test for the Plan Year for which the contribution is made, or for any other Plan Year.

ARTICLE IV

DESIGNATION OF INVESTMENT FUNDS

AND VALUATION OF ACCOUNTS

4.01   (a)   Each Participant shall, upon enrollment, designate the manner in which the contributions made on his behalf shall be allocated among the Investment Funds.  Any such designation shall apply to all Elective Deferrals, Matching Contributions, Employer Contributions, Rollover Contributions, Roth Contributions, and Roth Rollover Contributions made by or on behalf of the Participant.  Any designation made pursuant to the Prior Plan shall remain in effect under this Plan until amended pursuant to Section 4.02.

(b)   A designation pursuant to this Section 4.01 shall be in such proportions as the Participant, in his sole discretion, shall determine; provided, however, that an allocation to any Investment Fund must be in accordance with the rules set forth by the Pension Committee.  If a Participant shall fail to make a timely and valid designation under Subsection (a), the balances in his Account and the respective contributions thereto shall be invested in such Investment Fund as is designated from time to time by the Pension Committee, provided that with respect to any amounts transferred to his Account from the Prior Plan, a valid designation made pursuant to the provisions of the Prior Plan shall be continued under this Plan.

(c)   All Elective Deferrals, Matching Contributions, Employer Contributions, Rollover Contributions, Roth Contributions and Roth Rollover Contributions allocated to a Participant's Account shall be allocated in accordance with the designation then on file with the Pension Committee.

4.02   (a)   Subject to Subsection 4.02(b), each Participant may amend his designation as of any date to change the manner in which his Account balances are allocated among the Investment Funds, and, as of any date to change the manner in which future contributions made by or on his behalf are allocated among the Investment Funds.  Any change of designation shall be made in such proportions as the Participant in his sole discretion shall determine; provided, however, that a reallocation of Account balances or change in the manner of allocation of future Elective Deferrals, Matching Contributions, Employer Contributions, Rollover Contributions, Roth Contributions and Roth Rollover Contributions among the Investment Funds must be in accordance with the rules set forth by the Pension Committee.  Any changes of designation as to the manner in which a

23

Participant's Account balances are allocated among the Investment Funds shall apply to all of the Participant's Accounts.

(b)     Notwithstanding the provisions of Subsection (a), no reallocation of the manner in which a Participant's Account balances are allocated among the Investment Funds may result in a transfer which is prohibited under any of the Investment Funds as determined by the Pension Committee.

4.03     The Pension Committee shall direct the record keeper as may be appointed by the Firm to establish an Account for each Participant which shall consist of such Participant's Elective Deferrals, Matching Contributions, Employer Contributions, Rollover Contributions, Roth Contributions and Roth Rollover Contributions and any earning or losses attributable thereto.

4.04     Any distribution or withdrawal from an Account shall be made from among the Investment Funds in which the Participant so designates by prior written notice to the Pension Committee; provided, however, that if no such designation is received by the Pension Committee, any distribution or withdrawal from an Account shall be made ratably from among the Investment Funds in which such Account is invested or in such other way that the Pension Committee shall determine in a uniform and non-discriminatory manner.

4.05     Each Participant shall be furnished a statement as soon as practicable after each Investment Date, setting forth, as of the most recent Valuation Date preceding such Investment Date, the value of his Account balance invested in each Investment Fund.

4.06     (a)     (1)  Each Participant or former Participant who becomes a participant in a pension, profit sharing or stock bonus plan described in Section 401(a) of the Code (a "transferee plan") may, not later than thirty (30) days (or such lesser period as is acceptable to the Pension Committee) prior to any Valuation Date, request the Pension Committee to, and upon such request, the Pension Committee in their sole discretion may, transfer in cash the balance in his Accounts to an account maintained by any such transferee plan on his behalf, provided, however, that such transferee plan permits such transfer.

(2)     With the consent of the Pension Committee, a Participant may, not later than thirty (30) days (or such lesser period as is acceptable to the Pension Committee) upon written notice to the Pension Committee prior to any Valuation Date, contribute in cash to the Plan, as of such Valuation Date, amounts which were received from a qualified plan described in Section 401(a) or 403(a) of the Code, an annuity contract described in Section 403(b) of the Code, excluding after-tax employee contributions, an eligible plan under Section 457(b) of the Code which is maintained by a state, political

subdivision of a state, or any agency or instrumentality of a state or political subdivision of a state or an individual retirement account or annuity described in Section 408(a) or 408(b) of the Code that would otherwise be includible in gross income in which he previously participated and which are permitted to be contributed to the Plan in accordance with Section 402(c), 403(a)(4), 403(b)(8), or 408(d) (3)(A)(ii) of the Code and (3) a designated Roth account as described in Section 402A(c)(3) of the Code.  Any such "rollover" contribution shall be received by the Pension Committee subject to the conditions precedent that its contribution complies in all respects with the requirements of Section 402(c), 403(a)(4), 403(b)(8) or 408(d)(3)(A)(ii), Section 402A(c)(3), whichever is applicable, and, upon any discovery that any such contribution does not so comply, the entire amount of the rollover contribution, together with all changes in the value of the Trust allocated thereto, shall be returned as soon as practicable to the individual by or on whose behalf it was made.

(b)     The Pension Committee may require the Participant, prior to the transfer or contribution described in Subsection (a), to furnish a letter from the administrator, trustee, custodian or insurance company of the trust, account or contract from which the transferred amount or contribution originated or to which the amount is to be transferred, which shall contain such information as shall be requested by the Pension Committee as a tax-free transfer or "rollover amount" or "rollover contribution" which does not adversely affect the qualified status of this Plan.  The decision of the Pension Committee to accept a contribution or transfer or to make a transfer shall not give rise to any liability by the Pension Committee, the Firm, or the Plan to the Participant or any other party on account of a subsequent determination that such contribution or transfer does not qualify as a tax-free transfer or "rollover amount" or "rollover contribution."

(c)     No contribution or transfer made pursuant to Subsection (a)(1) or (2) shall be subject to the limitations of Articles III or VII.

4.07    (a)     The Trust Fund shall be valued as of each Valuation Date. The value of each Account (except to the extent such Account is invested in a Brokerage Account) as of any valuation Date shall be the sum of -

(1)     the value of such Account as of the last preceding Valuation Date, plus

(2)     such Account's pro rata share of all income, expense, gains and losses, since the last preceding Valuation Date, in respect of the investment funds in which such Account is invested, plus

(3)     any Firm contributions, voluntary contributions, or contributions or transfers allocable to such Account as of such Valuation Date, less

(4)     any withdrawals or distributions from such Account as of such Valuation Date.

(b)     An Account's pro rata share of income, expense, gains and losses, since the last preceding Valuation Date, in respect of an Investment Fund shall be equal to an amount which bears to the aggregate income, expense, gains and losses of such fund, since such date, the same ratio as the portion of such Account invested in such fund as of such date bears to the aggregate portions of all Accounts invested in such fund as of such date.

(c)     The value of any Brokerage Account as of any Valuation Date shall be equal to the fair market value of all assets allocated to such Brokerage Account as of such Valuation Date, less any expenses attributable to such Brokerage Account, including, without limitation, brokerage commissions, transfer taxes, accounting fees, investment management fees, investment advisory fees, and administration of the assets held in such Brokerage Account.

4.08    (a)     Each Participant may not later than thirty (30) days (or such lesser period acceptable to the Pension Committee) prior to any Valuation Date, pursuant to Section 404(c) of ERISA, elect to exercise control over the investment of the assets in his Accounts, provided that, as of such date, the aggregate of his Account balances is at least five thousand dollars ($5,000).  In the event such election is made -

(1)     the Trustee shall establish one or more Brokerage Accounts for the Participant at a brokerage firm or bank selected by the Participant and approved by the Pension Committee;

(2)     the Trustee shall transfer part or all of the Participant's Account balance(s) to the Participant's Brokerage Account(s) as soon as practicable after such Brokerage Account(s) are established;

(3)     part or all of future contributions made by or on behalf of the Participant hereunder shall be invested directly in the Participant's Brokerage Account(s) as designated by the Participant;

(4)     the Participant shall have all of the investment powers of the Trustees with respect to the investment of the assets in his Brokerage Account(s), subject to any requirements of the Pension Committee;

(5)     the Participant shall provide the Pension Committee with copies of all statements regarding his Brokerage Account(s) as and when such statements are issued and such other information as the Pension Committee may reasonably request.

(b)     A Participant who has made the election described in Subsection (a) may revoke his election as of any Valuation Date by written notice to the Pension Committee not later than thirty (30) days prior to such Valuation Date and a Participant's election shall be deemed to have been revoked upon the Participant's death or upon the commencement of a period of Disability as a result of which the Participant is incompetent or otherwise unable to make or change an election; provided, the Participant has empowered a Beneficiary or Designated Representative to direct the investment of his Accounts upon his death or such Disability, the Pension Committee may, in their sole discretion, treat the Participant's election as not having been revoked.  In the event of such revocation, the Trustees shall liquidate the assets in the Participant's Brokerage Account(s) and shall invest the assets received upon such termination among the Investment Funds in accordance with the Participant's designation or, if no such designation is made, in a money market fund or any successor fund designated by the Pension Committee for such purpose.

(c)     All commissions, fees and other expenses of a Brokerage Account shall be charged to such Brokerage Account.

(d)     The assets of any Account which are invested in a Brokerage Account shall be charged to such Brokerage Account.

(e)     The Pension Committee may, in their sole discretion, terminate the right of Participants to make the election described in Subsection (a).  In such event, the Trustees shall liquidate the assets in the Brokerage Accounts and shall invest the proceeds among the Investment Funds in accordance with Participants' designations or, in the case of a Participant for which no designation is made, in a money market fund or any successor fund designated by the Pension Committee for such purpose.

4.09    Each Participant may, as of any Valuation Date (or in the case of a Participant whose Accounts are invested in a Brokerage Account, as of any date), by action taken not later than thirty (30) days (or such lesser period as is acceptable to the Pension Committee and the Trustees) prior thereto, amend his designation to change the manner of allocation of (1) the balance of his Accounts on such Valuation Date, or (2) all future contributions thereafter credited to his Accounts.

4.10    The Trustee shall furnish to each Participant, within sixty (60) days after each Valuation Date, a statement setting forth, as of such Valuation Date, the following information:

(1)     the fair market value of his Account provided, however, that if his Accounts are invested in a Brokerage Account, such statements shall be provided only as of the last Valuation Date of each Plan Year and such fair market

value shall be the value of the assets invested in such Brokerage Account as provided by the Participant; and

(2)     the portion of his Accounts that is invested in each Investment Fund.

ARTICLE V

VESTING

5.01    Each Participant shall be fully (100%) vested in his Elective Deferral Account, Matching Contribution Account, Rollover Account, Roth Contribution Account and Roth Rollover Account at all times.

5.02    (a)    A Participant shall be 0% vested in his Employer Contribution Account until (i) with respect to Employer Contributions made with respect to years ending prior to January 1, 2007, his completion of five (5) Years of Service, and (ii) with respect to Employer Contributions made with respect to years beginning after December 31, 2006, his completion of three (3) Years of Service, and shall be 100% vested in his Employer Contribution Account thereafter.

(b)    If a Participant's Employer Contribution Account is not already 100% vested pursuant to the terms of Subsection (a), such Account shall become fully vested upon the earliest of the Participant's (1) Normal Retirement Date, (2) Disability and (3) death.

5.03    If a former Participant again becomes a Participant after experiencing a Break in Service, the Years of Service which he had completed before such Break in Service shall not be counted for purposes of determining his vested interest in his Employer Contributions Account during the first year after his date of re-employment.  Once he has completed a Year of Service after re-employment, his Years of Service shall be determined without regard to this rule.

5.04    If a former Employee --

(a)    has incurred a number of consecutive Breaks in Service, which equals or exceeds the greater of five or the number of his Years of Service before such Break in Service,

(b)    had no vested interest in his Accrued Benefit at the time of such Break in Service, and

(c)    again becomes an Employee,

his Years of Service prior to such Break in Service shall be disregarded for all purposes under this Plan.

5.05    Except as otherwise provided in Section 5.06, any forfeiture arising hereunder shall first be used to restore any forfeitures required by Section 5.06 and then shall reduce Employer Contributions otherwise required to be made pursuant to the Plan.

5.06    If a Participant incurs a Separation from Service, the non-vested portion of his interest in his Employer Contribution Account shall be forfeited on the earlier of the date his vested Account balance is distributed to him and the last day of the Plan Year in which such Separation from Service occurs, provided, however, that if the Participant again becomes an Employee without incurring five (5) consecutive Breaks in Service, the dollar value of any portion of his Account balance which was forfeited shall be restored.  Any designations among Investment Funds made by the Participant shall cease as if the date of such forfeiture and the portion of his Account balance which is forfeited shall be placed in an Investment Fund or other account as designated by the Pension Committee.  Any restoration of forfeitures pursuant to this Section shall be made from amounts forfeited by other Participants during the Plan Year of repayment, or, if such forfeitures are insufficient for that purpose, from Employer Contributions.  No amount allocated to a Participant's Account pursuant to this Section shall be an "Annual Addition" for purposes of Article VII.  In the event an Employer  Contribution is required to make a restoration of forfeitures, such contribution shall be made no later than the Valuation Date of the Plan Year following the Plan Year in which the Employee again becomes a Participant.

ARTICLE VI

PAYMENT OF BENEFITS AND WITHDRAWALS; LOANS

6.01    Upon a Participant's Separation from Service, other than by reason of his death, he shall be entitled to a distribution of his interest in his Account balance in a single lump sum or shall be entitled to effect a no-load transfer of the Investment Fund shares held in his Account to an Individual Retirement Account established by Merrill Lynch, Pierce, Fenner & Smith Incorporated.  Each Participant shall be furnished a statement as soon as practicable after each Investment Date, setting forth, as of the most recent Valuation Date preceding such Investment Date, the value of his Account balance invested in each Investment Fund.  Notwithstanding the foregoing, distributions from a Participant's Accounts to an "alternate payee" pursuant to a "qualified domestic relations order," as those terms are defined in Section 414(p) of the Code, may be made prior to a Participant's Separation from Service.

6.02    (a)    Except as provided in Subsection (b) or (c), the distribution of a Participant's Account balance shall occur upon the earliest practicable date after the Investment Date of the Plan Year in which his Separation from Service occurs.

(b)    Notwithstanding Subsection (a), if the value of the Participant's vested Account balance is more than $1,000, then his vested Account balance shall not be distributed until he reaches his sixty-second (62nd) birthday unless he elects within the period between thirty (30) days and one hundred and eighty (180) after he receives the notice required by Treasury Regulation Section 1.411(a)-11(c) to receive his benefits prior to that date.  If the Pension Committee clearly informs the Participant that he has a right to a period of at least thirty (30) days after receiving the notice required by Treasury Regulation Section 1.411(a)-11(c) to consider the decision of whether or not to elect a distribution and a particular distribution option, the Participant may affirmatively elect to commence distribution prior to the thirtieth (30th) day following receipt of the notice or at any prior date.

(c)    Subject to Section 6.03, a Participant may consent to postpone the distribution of his Account balance beyond the date specified in Subsection (a) or (b) by filing a written statement with the Pension Committee stating the date upon which he desires the distribution to be made.

6.03    Notwithstanding anything to the contrary contained in this Plan --

(a)     The distribution of the interest in a Participant's Account balance shall be made not later than the April 1st next following the close of the calendar year in which he retires or attains age 70½, whichever is later; provided, however, that in the case of an Employee who is a five percent (5%) owner (within the meaning of Section 416(i)(1)(B)(i) of the Code), distribution of his interest shall be made not later than the April 1st next following the close of the calendar year in which he attains age seventy and one-half (70½).

(b)     If the Participant has died prior to the commencement of the distribution of his interest in accordance with Subsection (a) of this Section 6.03, the entire interest of such Participant shall be distributed within five (5) years after the death of such Participant, or if the Beneficiary is the Participant's surviving Eligible Spouse, not later than the date on which the Participant would have attained age seventy and one-half (70½).

(c)     Under regulations prescribed by the Secretary of the Treasury, any amount paid to a Participant's child shall be treated as if it had been paid to the Participant's surviving Eligible Spouse if such amount will become payable to such surviving Eligible Spouse upon such child reaching maturity or such other designated event which may be permitted under such regulations.

(d)     Notwithstanding anything in the Plan to the contrary, effective as of January 1, 2003, the form and timing of all distributions under the Plan shall be in accordance with Sections 1.401(a)(9)-2 through 1.401(a)(9)-9 of the Final and Temporary 401(a)(9) Regulations published April 17, 2002, including the incidental death benefit requirements of Section 401(a)(9)(g) of the Code.  The provisions reflecting 401(a)(9) override any distribution options in the Plan inconsistent with Section 401(a)(9).

6.04     All distributions from a Participant's Account pursuant to this Article VI shall be paid in cash or in kind.

6.05     (a)     Upon the death of a Participant or former Participant who is survived by an Eligible Spouse, prior to his receipt of a distribution pursuant to Section 6.01, such Participant's or former Participant's entire Account balance shall be payable to such surviving Eligible Spouse, unless the Participant has designated a Beneficiary other than his Eligible Spouse and with respect to such designation Spousal Consent has been obtained.

(b)     Subject to the foregoing, upon receipt of notification from the Pension Committee that he has qualified for participation in the Plan, a Participant shall designate, on forms provided for that purpose by the Pension Committee, a Beneficiary and successor Beneficiary.  The designation of a Beneficiary shall be effective upon its receipt by the Pension Committee.  A Participant may from time to time change the

Beneficiary or the manner of distribution which he has designated, without notice to his Beneficiary, in accordance with such rules and regulations as the Pension Committee may from time to time prescribe.

        (c)     If a Participant is not survived by an Eligible Spouse or by a Beneficiary designated pursuant to Subsection (b), or has empowered the Pension Committee to designate a Beneficiary on his behalf, the Pension Committee may (but shall not be required to) designate a Beneficiary, but only from among the Participant's spouse, descendants (including adoptive descendants), parents, brothers and sisters or nephews and nieces; provided, however, that if the Participant has empowered the Pension Committee to designate in a specified order or from a specified group, the Pension Committee may act only in accordance with such instructions.  If the Pension Committee shall fail to designate a Beneficiary, the balance in the Participant's Account shall be paid to his estate.

        (d)     Any beneficiary designation and Spousal Consent made pursuant to the provisions of the Prior Plan shall remain in effect for purposes of this Plan until revoked by the Participant.

        6.06    If at any time any Participant or Beneficiary is, in the judgment of the Pension Committee, legally, physically or mentally incapable of personally receiving and receipting for any payment due hereunder, payment may, in the discretion of the Pension Committee, be made to the guardian or legal representative of such Participant or Beneficiary or, if none exists, to any other person or institution which, in the judgment of the Pension Committee, then maintains, or has custody of, such Participant or Beneficiary.

        6.07    A Participant may make a withdrawal from his Rollover Account or Roth Rollover Account at any time.  A Participant who has attained age fifty-nine and ½ (59 ½) may make a withdrawal from his Elective Deferral Account, Matching Contribution Account, Employer Contribution Account to the extent vested, and Roth Contribution Account; provided, however, that no more than one withdrawal may be made as of each Investment Date.

        6.08    Hardship Withdrawals.  A Participant may, upon written application to the Pension Committee, withdraw the lesser of (i) the balance of the Participant's Elective Deferral Account, Matching Contribution Account, Employer Contribution Account to the extent vested and Roth Contribution Account or (ii) the aggregate amount of contributions to (but not earnings on) the Participant's Elective Deferral Account, Matching Contribution Account, Employer Contribution Account to the extent vested and Roth Contribution Account for reasons of immediate and heavy financial need.  Such withdrawals shall be approved upon evidence, satisfactory to the Pension Committee, of such immediate and heavy financial need.  A distribution will be deemed to be made on

33

account of an immediate and heavy financial need if the distribution is made on account of:

(a)   Expenses for (or necessary to obtain) medical care that would be deductible under Section 213(a) of the Code (determined without regard to whether the expenses exceed 7.5% of adjusted gross income);

(b)   Payment of tuition, related education fees, and room and board expenses for up to the next 12 months of post-secondary educational expense for a Participant, his spouse, children or his dependents;

(c)   Costs directly related to the purchase (excluding mortgage payments) of a principal residence for the Participant;

(d)   The need to prevent eviction from, or foreclosure of a mortgage on, the Participant's principal residence;

(e)   Payments for burial or funeral expenses for the Participant's deceased parent, spouse, children or dependents; or

(f)   Expenses for the repair of damage to the Participant's principal residence that would qualify for the casualty deduction under Section 165 of the Code (determined without regard to whether the loss exceeds 10% of adjusted gross income).

In addition, and unless otherwise prescribed by Treasury Regulations, the Pension Committee may deem an immediate and heavy financial need to exist for reasons similar to those listed above.

Withdrawals from a Participant's Elective Deferral Account, Matching Contribution Account, Roth Contribution Account and Roth Rollover Account shall be subject to the following conditions:

(a)   The withdrawal shall not be in excess of the immediate and heavy financial need of the Participant, including any amount necessary to pay any federal, state or local income taxes and penalties reasonably anticipated to result from the withdrawal.

(b)   The Participant shall have obtained all other distributions and loans available to him under this and all other plans maintained by the Employer.

(c)   Future Elective Deferrals and Roth Contributions of the Participant to this Plan or elective or employee contributions to any other plan maintained

by the Employer shall be suspended for a period of six (6) calendar months from the date of the hardship withdrawal; and

(d)     If Elective Deferrals and/or Roth Contributions are resumed following the suspension provided for in (c) above, the total amount of such Elective Deferrals and Roth Contributions under this Plan and elective contributions under any other plan maintained by the Employer for the calendar year following the calendar year of the hardship withdrawal shall not exceed an amount equal to the maximum amount permissible under Section 3.02 for such calendar year less the total of all Elective Deferrals and elective contributions under any other plan of the Employer made in the calendar year in which the hardship withdrawal was made.

Hardship withdrawals shall be made in accordance with a uniform non-discriminatory policy and shall not be made in any manner that favors highly compensated Participants of the Employer.

Notwithstanding anything to the contrary herein, a Participant whose principal residence or principal place of employment on October 26, 2012 was located in one of the Presidential Disaster Areas in connection with Hurricane Sandy, as identified by the Internal Revenue Service, shall automatically be eligible for a withdrawal in accordance with this Section and deemed to have immediate and heavy financial need upon such Participant's written application for a withdrawal in which such Participant represents as to the need for and amount of such withdrawal being requested in connection with a hardship arising as a result of Hurricane Sandy, unless the Pension Committee has actual knowledge to the contrary, provided that such withdrawal is made on or after October 26, 2012 and not later than February 1, 2013 (the "Special Hurricane Sandy Distribution"). At such time as determined to be reasonable following a withdrawal made in accordance with the immediately preceding sentence, the Pension Committee shall request such evidence or documentation as would be otherwise be required for a withdrawal in accordance with this Section. In addition, notwithstanding anything to the contrary, the conditions set forth in the paragraphs immediately above labeled (c) – (d) shall not apply in the event of a Special Hurricane Sandy Distribution.

6.09    Loans.

(a)     Any Participant, or a Beneficiary who is a party-in-interest within the meaning of Section 3(14) of ERISA, (a "Borrower") may apply to the Pension Committee for a loan from the Plan by written application submitted at least thirty days (or such fewer number of days as the Pension Committee, in their sole discretion, may determine) prior to the date as of which the Borrower desires to make the loan.  The loan application shall specify the desired amount and term of the loan and shall contain all such other information or documentation as the Pension Committee require.

(b)      Upon receipt of a loan application containing all required information, the loan requested shall be granted; provided, however, that -

(1)      The amount of any loan granted to a Borrower together with the aggregate outstanding balance (determined as of the date the loan is made) of all previous loans to that Borrower under the Plan may not exceed the lesser of:

(A)      fifty percent (50%) of the sum of the vested balances in his Account (including any accrued income earnings, losses or expenses attributable thereto) determined as of the most recent Valuation Date and contributions made between that date and the end of the month preceding the date of the loan application; or

(B)      $50,000, reduced by the excess (if any) of (i) the highest aggregate outstanding balance of loans from the Plan and all other plans maintained by an Employer or Affiliate during the one-year period ending on the date before the date the loan is made, over (ii) the aggregate outstanding balances of loans from the Plan and all other plans maintained by an Employer or Affiliate on the date such loan is made.

(2)      Except for home loans described in Paragraph (d) below, the maturity date for any loan to a Borrower may not exceed five years from the date the loan is made;

(3)      Subject to the limitation in Paragraph (1) above, the minimum amount of any loan granted to any Borrower shall be $1,000;

(4)      Each loan shall bear interest at a rate to be determined by the Pension Committee at the beginning of each month.  In determining the rate of interest applicable to loans made or renewed during such month, the Pension Committee shall take into account the rates of interest used by at least two commercial entities in the business of lending money for similar types of loans made under similar circumstances with similar collateral, and the rate of interest established by the Pension Committee shall be commensurate with such commercial rates;

(5)      All loans shall be subject to any additional nondiscriminatory criteria that may be established by the Pension Committee, provided that such criteria shall be those considered in an ordinary commercial setting by an entity in the process of making similar types of loans, including criteria relevant to credit worthiness and financial need; and

(6)     Except in cases of financial hardship as determined by the Pension Committee in their sole discretion, no more than two loans per Borrower may be made within any calendar year.

(c)     The Pension Committee shall make loans available to all Borrowers on a reasonably equivalent and nondiscriminatory basis and in accordance with Section 408(b)(1) of ERISA and regulations promulgated thereunder; and any Borrower to whom such loan is made agrees to such changes in the terms of the loan as may be required by changes in the applicable law or regulations thereto.  The Pension Committee shall not make loans available to Highly-Compensated Employees in an amount greater than the amount made available to other Employees.

(d)     The provisions of Subsection (b)(2) above shall not apply with respect to any loan used to acquire any dwelling unit which within a reasonable time after the loan is made is to be used as the "principal residence" of a Borrower.  The maturity date of any such loan shall be a reasonable period of time as established by the Pension Committee, in their sole discretion consistent with the requirements of Section 72(p) of the Code and other applicable law.

(e)     The entire principal amount or any portion of a loan may be prepaid at any time, without premium or penalty, together with accrued or unpaid interest on the amount as of the date of prepayment.

(f)     Principal and interest with respect to any loan to a Borrower shall be repaid by payroll deduction (or, in the case of a Participant who is a Partner, by a deduction from his monthly draw or in such other manner acceptable to the Pension Committee) in level installments in amounts sufficient to liquidate the loan over its remaining term.  In any event, payments with respect to a loan shall be made not less frequently than quarterly.

(g)     Upon a Borrower's Separation from Service the outstanding principal amount of each loan together with all accrued and unpaid interest shall become immediately due and payable.

(h)     Any loan made to a Borrower shall be charged against the Borrower's Account.  The Participant shall indicate from among his Elective Deferral Account, Matching Contribution Account, Employer Contribution Account, Rollover Account, Roth Contribution Account and Roth Rollover Account which Account or Accounts are to be charged and in what proportion. If any Account is invested in more than one Investment Fund, the loan amount charged against each Investment Fund shall be determined in proportion to the value of each fund.  The Borrower may indicate the Investment Fund to which his repayments shall be credited.  The amounts charged against a Borrower's Account by reason of a loan made hereunder shall include any fees, taxes,

37

charges or other expenses (including, without limitation, any asset liquidation charge or similar extraordinary expense) incurred in connection with such loan.

(i)     That portion of an Account that remains charged by reason of a loan to a Borrower shall not share in any income, expense, gain or loss realized by the remainder of the Trust Fund and shall not be available for any in-service withdrawal or distribution provisions under the Plan.

(j)     Each Borrower to whom a loan is made shall grant to the Pension Committee a security interest in his Account to the extent of the loan and execute a promissory note in a form acceptable to the Pension Committee, which shall be payable to the order of the Pension Committee of the Fried, Frank, Harris, Shriver & Jacobson LLP 401(k) Incentive Savings Plan for the amount of the loan and which shall set forth the term, interest rate, and repayment schedule for the loan.  Such note shall be considered an asset of the Account against which the loan is charged.

(k)     Except as provided in Paragraph (1) below if a Borrower fails to pay in full the principal amount or the accrued interest on his loan upon his Separation from Service or if he otherwise fails to pay in full the principal amount of or the interest due and payable on his loan within five (5) years of the date the loan is made (in either case the "Due Date"), the balance of any Account that has been charged by reason of the loan shall be reduced by the amount of the unpaid principal and interest, and the amount by which the balance of the Account is reduced shall be treated as a distribution.  If, under the terms of the Plan without regard to this Section 6.09, the Borrower is not eligible to receive a distribution, then the balance of any Account charged by reason of a loan shall be reduced and treated as a distribution on the first day on which the Borrower is eligible to receive a distribution, and interest shall accrue on the unpaid principal until such date.

(l)     A Borrower on an authorized unpaid leave of absence shall be entitled to suspend loan repayments during such unpaid leave for up to twelve months without being deemed to be in default on his promissory note thereby.

(m)     Loan repayments will be suspended under this Plan as permitted under Section 414(u)(4) of the Code.

6.10    If a Distributee who is entitled to a distribution of at least $200 which is an Eligible Rollover Distribution, elects in writing on a form provided by the Pension Committee to have such distribution, or a portion of such distribution equal to at least $500 (or the entire distribution if less than $500) paid directly to a specified Eligible Retirement Plan, which is a defined contribution plan the terms of which permit the acceptance of rollover distributions, the portion of such distribution which would otherwise be includible in the Participant's gross income (and the portion of such

distribution consisting of after-tax contributions, to the extent provided in the definition of Eligible Rollover Distribution below) shall be distributed in the form of a Direct Rollover to the eligible retirement plan so specified.

For purposes of this Section,

(a)     An "Eligible Rollover Distribution" means any distribution of all or any portion of the balance of the credit of the Distributee, excluding (1) any distribution that is (i) one of a series of substantially equal periodic payments (not less frequently than annually) made for the life (or life expectancy) of the Distributee or the joint lives (or joint life expectancies) of the Distributee and the Distributee's designated Beneficiary or (ii) for a specified period of ten years or more; or (iii) any hardship distribution; (2) any distribution to the extent such distribution is required under Section 401(a)(9) of the Code; (3) the portion of any distribution that is not includible in gross income (determined without regard to the exclusion for net unrealized appreciation with respect to employer securities); (4) any distribution made to a non-spouse Beneficiary; (5) dividends paid with respect to employer securities and distributed pursuant to Section 404(k) of the Code; and (6) any other distribution designated by the Internal Revenue Service in official notices or regulations.  A portion of a distribution shall not fail to be an Eligible Rollover Distribution merely because the portion consists of after-tax employee contributions which are includible in gross income; however, such portion may be transferred only to an individual retirement account or annuity described in Section 408(a) or (b) of the Code, or, for distributions made after December 31, 2007, a Roth IRA described in Section 408A(b) of the Code, or to a qualified defined contribution plan described in Section 401(a) or 403(a) of the Code that agrees to separately account for amounts so transferred, including separately accounting for the portion of such distribution which is includible in gross income and the portion of such distribution which is not so includible;

(b)     An "Eligible Retirement Plan" means an individual retirement account described in Section 408(a) of the Code, an individual retirement annuity described in Section 408(b) of the Code, for distributions made after December 31, 2007 a Roth IRA described in Section 408A(b) of the Code, a qualified trust described in Section 401(a) of the Code and exempt from tax under Section 501(a) of the Code, an annuity plan described in Section 403(a) of the Code, an eligible deferred compensation plan described in Section 457(b) of the Code, which is maintained by an eligible employer described in Section 457(e)(1)(A) of the Code and which agrees to separately account for amounts transferred into such plan from the Plan, or an annuity contract described in Section 403(b) of the Code;

(c)     A "Distributee" means the Participant, and the surviving Spouse in the event of the Participant's death and the Spouse or former Spouse who is the Alternate Payee under a QDRO; and

(d)     A "Direct Rollover" means a payment by the Plan to the Eligible Retirement Plan specified by the Distributee.

6.11    Notwithstanding anything to the contrary, if a Non-Spouse Distributee who is entitled to a distribution of at least $200 which is a Non-Spouse Eligible Rollover Distribution, elects in writing on a form provided by the Pension Committee to have such distribution, or a portion of such distribution equal to at least $500 (or the entire distribution if less than $500) paid directly to a specified Non-Spouse Eligible Retirement Plan, which is a defined contribution plan the terms of which permit the acceptance of rollover distributions, the portion of such distribution which would otherwise be includible in the Participant's gross income (and the portion of such distribution consisting of after-tax contributions, to the extent provided in the definition of Non-Spouse Eligible Rollover Distribution below) shall be distributed in the form of a Non-Spouse Direct Rollover to the eligible retirement plan so specified.

(a)     A "Non-Spouse Eligible Rollover Distribution" means any distribution of all or any portion of the balance of the credit of the Non-Spouse Distributee that qualifies as, and is treated as, an eligible rollover distribution pursuant to Section 402(c)(11) of the Code and Section 6.10 of the Plan.  A portion of a distribution shall not fail to be an Non-Spouse Eligible Rollover Distribution merely because the portion consists of after-tax employee contributions which are includible in gross income; however, such portion may be transferred only to an individual retirement account or annuity described in Section 408(a) or (b) of the Code, or, for distributions made after December 31, 2007, a Roth IRA described in Section 408A(b) of the Code, that agrees to separately account for amounts so transferred, including separately accounting for the portion of such distribution which is includible in gross income and the portion of such distribution which is not so includible;

(b)     A "Non-Spouse Eligible Retirement Plan" means an individual retirement account or annuity described in Section 408(a) or (b) of the Code, or, for distributions made after December 31, 2007, a Roth IRA described in Section 408A(b) of the Code, that is established for the purpose of receiving the distribution on behalf of a Non-Spouse Distributee pursuant to Section 402(c)(11) of the Code.

(c)     A "Non-Spouse Distributee" means a Beneficiary who is not the surviving Eligible Spouse of the Participant; and

(d)     A "Non-Spouse Direct Rollover" means a payment by the Plan to the Non-Spouse Eligible Retirement Plan specified by the Non-Spouse Distributee.

6.12    Effective January 1, 2007, notwithstanding any provision to the contrary in the Plan and in accordance with Section 401(a)(37) of the Code, in the case

that a Participant dies while performing qualified military service, the survivors of the Participant are entitled to any additional benefits (other than benefit accruals relating to the period of qualified military service) that would have been provided under the Plan had the Participant resumed employment and then terminated employment on the account of death.

ARTICLE VII

LIMITATIONS ON BENEFITS AND CONTRIBUTIONS

7.01   (a)   "Annual Addition" means for a Limitation Year, in the case of this Plan and any other Retirement Plan (as defined in this Section), the aggregate of a Participant's Elective Deferrals for the Limitation Year, Employee Contributions and Employer Contributions and forfeitures allocated to the Participant's Account for the Limitation Year.

(b)   "Applicable Assumptions" means, (1) the mortality factor for the age of the Participant on his benefit commencement date, determined pursuant to the prevailing commissioners' standard mortality table described in Section 807(d)(5)(A) of the Code, and (2) the annual rate of interest on 30-year Treasury securities for the month before the date of distribution or at such other time as may be prescribed by Treasury regulations.

(c)   "Defined Benefit Plan," means any Retirement Plan that is not a Defined Contribution Plan.

(d)   "Defined Benefit Plan Fraction," for a  Limitation Year, means a fraction,

(1)   the numerator of which is the aggregate Projected Annual Benefit (determined as of the last day of the Limitation Year) of the Participant under all Defined Benefit Plans, and

(2)   the denominator of which is the greatest of -

(A)   an amount equal to the lesser of -

(i)   the product of 1.25 multiplied by the dollar limitation in effect under Section 415(b)(1)(A) of the Code for such Limitation Year (adjusted as described in Subparagraph (3)), or

(ii)   the product of 1.4 multiplied by the aggregate Projected Annual Benefit (determined as of such last day) which the Participant would receive under all such plans if the plans, in the aggregate, provided the benefit described in Section 415(b)(1)(B) of the Code; or

42

(B)      in the case of an individual who was a Participant before January 1, 1983 in a Defined Benefit Plan that was in existence on July 1, 1982, the product of 1.25 and his Accrued Benefit under the Plan.  For purposes of this Paragraph (B), an individual's "Accrued Benefit" under a Defined Benefit Plan means the individual's accrued benefit under the Plan (determined as of the end of the last plan year beginning before January 1, 1983) expressed in the form of an annual benefit (within the meaning of Section 415(b)(2) of the Code as in effect before the amendment made by the Tax Equity and Fiscal Responsibility Act of 1982); or

(C)      in the case of an individual who participated in a Defined Benefit Plan which was in existence on May 6, 1986, the product of 1.25 multiplied by his Accrued Benefit under the plan.  For purposes of this Subparagraph (B), an individual's "Accrued Benefit" under a Defined Benefit Plan, means the individual's accrued benefit under the plan (determined as of the close of the last plan year beginning before January 1, 1987) expressed as an annual benefit (within the meaning of Section 416(b)(2) of the Code as in effect before the Tax Reform Act of 1986).

(3)    (A)      In the case of an annual retirement benefit that begins before a Participant's Social Security Retirement Age, the dollar amount described in Section 415(b)(1)(A) of the Code for such Limitation Year shall be adjusted (in accordance with regulations prescribed by the Secretary) to the actuarial equivalent, as of the date such benefit commences, of a benefit equal to the dollar amount described in Section 415(b)(1)(A) of the Code commencing at the Social Security Retirement Age.  The adjustment provided for in the preceding sentence shall be made in such manner as the Secretary may prescribe which is consistent with the reduction for old-age insurance benefits commencing before the Social Security Retirement Age under the Social Security Act provided, that the interest rate assumed in making such adjustment shall not be less than the greater of five percent (5%) or the interest rate specified in the applicable Defined Benefit Plan for such adjustments; provided, however, that in adjusting a benefit provided on or after January 1, 1995, the mortality factor used shall be the one described in Section 7.01(b)(1) and if such benefit is payable in the form of a lump sum distribution, such benefit shall be adjusted on the basis of the Applicable Assumptions.

43

(B)     In the case of an annual retirement benefit that begins after the Social Security Retirement Age, the dollar amount described in Section 415(b)(1)(A) of the Code for such Limitation Year, shall be adjusted (in accordance with regulations prescribed by the Secretary) so that such limitation equals an annual benefit beginning at the age at which the Participant's benefit commences, which is the actuarial equivalent (based on the actuarial assumptions specified in the respective Defined Benefit Plan for such adjustment except that the interest rate assumption used for this purpose shall not be greater than five percent (5%)) of a benefit equal to the dollar amount described in Section 415(b)(1)(A) of the Code beginning at the Social Security Retirement Age; provided, however, that in adjusting a benefit provided on or after January 1, 1995, the mortality factor used shall be the one described in Section 4A.01(a)(2)(A).

(e)     "Defined Contribution Plan" means this Plan and any other Retirement Plan which provides for an individual account for each Participant and for benefits based solely on the amount contributed to such account and any income, expense, gains and losses, and forfeitures of accounts of other participants which may be allowed to such account.

(f)     "Defined Contribution Plan Fraction", for a Limitation Year, means a fraction,

(1)     the numerator of which is the sum of the Annual Additions to a Participant's accounts under this Plan and all other Defined Contribution Plans, as of the close of the Limitation Year and for all prior Limitation Years, and

(2)     the denominator of which is the sum of the lesser of the following amounts, determined for such Limitation Year and for each prior year of the Participant's service with an Employer or Affiliate:

(A)     the product of 1.25 and the dollar limitation in effect under Section 415(c)(1)(A) of the Code, or

(B)     the product of 1.4 and the amount that may be taken into account under Section 415(c)(1)(B) of the Code;

provided, however,

(3)     the Company may elect, on a uniform and nondiscriminatory basis, to make use of the special transition rule of Section 415(e)(6) of the Code applicable to Plan Years ending before January 1, 1983, and Section 1106(i)(4)

of the Tax Reform Act of 1986 applicable to years ending before January 1, 1987 to determine the denominator of the Defined Contribution Plan Fraction,

(4)     in accordance with regulations promulgated under Section 415 of the Code, the portion of the numerator of the Defined Contribution Plan Fraction attributable to Limitation Years beginning before January 1, 1987 or January 1, 1983, as the case may be, shall be reduced, to the extent necessary, so that the sum of the Defined Benefit Plan Fraction and Defined Contribution Plan Fraction for the last Limitation Year beginning before January 1, 1987 or January 1, 1983, as the case may be, does not exceed one (1.0), and

(5)     the Annual Addition for any Limitation Year commencing before January 1, 1987 shall not be required to be recomputed to take into account employee contributions in excess of those required to have been taken into account under Section 415(c)(2)(B) of the Code (as in effect prior to the Tax Reform Act of 1986).

(g)     "Limitation Year" means the Plan Year.

(h)     (1)     A Participant's "Projected Annual Benefit" under a Defined Benefit Plan shall be equal to the annual retirement benefit to which he would be entitled under such plan if he were to continue employment until his normal retirement age under such plan (or until his current age, if later), his Section 415 Compensation for the Limitation Year under consideration remains the same until the date he attains the age described above, and all other relevant factors used to determine benefits under the plan were to remain the same as in the current Limitation Year for all future Limitation Years.

(2)     For purposes of this Subsection (h),

(A)     an annual retirement benefit which is provided in a form other than a straight life annuity or a straight qualified joint and survivor annuity (within the meaning of Section 417(b)(1) of the Code), shall be adjusted (in accordance with regulations prescribed by the Secretary) to an equivalent benefit in the form of a straight life annuity on the basis of the actuarial assumptions specified in the respective Defined Benefit Plan for such adjustment; except that the interest rate assumption used for this purpose shall not be less than five percent (5%)); provided, however, that in adjusting a benefit provided on or after January 1, 1995, the mortality factor used shall be the one described in Section 7.01(b)(1) and if such benefit is payable in the form of a lump sum distribution, such benefit shall be adjusted on the basis of the Applicable Assumptions;

45

(B)     an annual retirement benefit which is provided in the form of a qualified joint and survivor annuity (within the meaning of Section 417(b)(1) of the Code) which includes additional post-retirement death benefits, need not be adjusted to the extent the value of the benefit in such form exceeds the sum of (A) the value of the straight life annuity and (B) the value of any post-retirement death benefits that would be payable even if the annuity was not in the form of a joint and survivor annuity.

(C)     an annual retirement benefit which is attributable all or in part to employee or rollover contributions (as defined in Section 402(a)(5), 403(a)(4), 403(b)(8) or 408(d)(3) of the Code or Section 409(b)(3)(C) of the Code as in effect prior to 1984) shall be reduced, based on the actuarial assumptions specified in the respective Defined Benefit Plan for such reduction, so that it will be the equivalent of an annual retirement benefit derived solely from employer contributions.

(i)     "Retirement Plan" means any Plan maintained by an Employer or an Affiliate that is (A) a pension, profit sharing or stock bonus plan, described in Section 401(a) and 501(a) of the Code, (B) an annuity plan described in Section 403(a) of the Code (C) a simplified employee pension plan described in Section 408(k) of the Code, or (D) a qualified bond purchase plan described in Section 405(a) of the Code.  In addition, "Retirement Plan" shall include (A) an individual retirement account or an individual retirement annuity described in Section 408(a) or 408(b) of the Code (or an individual retirement bond described in Section 409 of the Code as in effect prior to 1984), or an annuity contract described in Section 403(b) of the Code, if such account or annuity (or bond) is considered to be maintained by an Employer or an Affiliate under Section 1.415-7(h) or (i) of the Federal Income Tax Regulations and (B) a program of voluntary contributions under a Defined Benefit Plan.

(j)     "Section 415 Compensation," for any period, means an individual's current compensation from an Employer or an Affiliate required to be reported on Form W-2 for such period, including those items listed in Paragraph (1) of Section 1.415-2(d) of the Federal Income Tax Regulations but excluding those items listed in Paragraph (2) thereof, and for Limitation Years beginning after December 31, 1997, including the Participant's Elective Deferrals pursuant to this Plan, his elective deferrals (as defined in Section 402(g)(3)of the Code) pursuant to any other plan of the Employer and any amount that is contributed or deferred by the Employer at the election of the Participant and which is not includible in the gross income of the Participant by reason of Section 125, 132(f)(4) or 457 of the Code.

(k)     "Social Security Retirement Age" for any period, means the age used as the retirement age for the Participant under Section 216(l) of the Social

Security Act, except that such Section shall be applied without regard to the age increase factor and as if the early retirement age under 216(l)(2) of such Act were sixty-two (62).

        7.02   Notwithstanding anything in this Plan to the contrary and except as otherwise provided in this Article VII, a Participant's Annual Addition under this Plan when added to the Participant's Annual Additions under all other Defined Contribution Plans, for a Limitation Year, may not exceed the lesser of -

        (a)   for Limitation Years beginning before January 1, 2002, (1) $30,000 as adjusted under Section 415(d) of the Code or (2) 25 percent (25%) of his Section 415 Compensation for the Limitation Year, and

        (b)   for Limitation Years beginning on or after January 1, 2002, except to the extent permitted under Section 3.13 and Section 414(v) of the Code, if applicable, (1) $40,000 as adjusted under Section 415(d) of the Code, or (2) 100 percent (100%) of his Section 415 Compensation for the Limitation Year.

        (c)   Notwithstanding anything to the contrary contained in this Plan, Elective Deferrals made on behalf of a Participant who is an Employee described in Subsection (a) of the definition of Employee in Article I in respect of a payroll period which begins in one Limitation Year but ends in the next succeeding Limitation Year shall be considered an Annual Addition in respect of the succeeding Limitation Year.

        7.03   If the Annual Additions otherwise made to the Account of a Participant would cause the limitations of Section 415 of the Code applicable to that Participant for the Limitation Year to be exceeded, such excess shall be eliminated by distributing to the Participant Supplemental Salary Reduction Contributions in the amount of the excess (plus attributable earnings) and if Supplemental Salary Reduction Contributions are less than the excess, by also distributing to the Participant Basic Salary Reduction Contributions (plus attributable earnings) and reducing the related amounts (plus attributable earnings) allocated to his Matching Contribution Account in proportionate amounts to the extent necessary to eliminate the excess.

        Effective for Plan Years beginning before July 1, 2007, if the Annual Additions otherwise made to the Account of a Participant would cause the limitations of Section 415 of the Code applicable to that Participant for the Limitation Year to be exceeded, such excess shall be eliminated by distributing to the Participant Supplemental Salary Reduction Contributions in the amount of the excess (plus attributable earnings) and if Supplemental Salary Reduction Contributions are less than the excess, by also distributing to the Participant Basic Salary Reduction Contributions (plus attributable earnings) and reducing the related amounts (plus attributable earnings) allocated to his Matching Contribution Account in proportionate amounts to the extent necessary to eliminate the excess.

7.04    Effective through December 31, 1999 and notwithstanding the provisions of Sections 7.02, for each Participant who is or was a participant in a Defined Benefit Plan, the Pension Committee will compute such Participant's Defined Benefit Plan Fraction and Defined Contribution Plan Fraction and will adjust his Annual Additions and his Projected Annual Benefit, so that the sum of such fractions, for any Limitation Year, will not exceed one (1.0).

7.05    The limitations imposed by this Article VII shall be administered in accordance with the final regulations and rulings issued by the Secretary of the Treasury under Section 415 of the Code.

7.06    Compensation for a Limitation Year, for the purposes of this Article only, includes Compensation paid by the later of (1) 2 1/2 months after an Employee's severance from employment with the Employer or (2) the end of the Limitation Year that includes the date of the Employee's severance from employment, if the payment is regular compensation for services during the Employee's regular working hours, or compensation for services outside the Employee's regular working hours, commissions, bonuses, or other similar payments and the payment would have been paid to the Employee prior to a severance from employment if the Employee had continued in employment with the Employer.

ARTICLE VIII

NON-ALIENABILITY

8.01    Except in the case of a qualified domestic relations order described in Section 414(p) of the Code, no benefit under this Plan shall be subject in any manner to anticipation, alienation, sale, transfer, assignment, pledge, charge, encumbrance, garnishment, levy or attachment, and any attempt so to anticipate, alienate, sell transfer, assign, pledge, charge, encumber, garnish, levy upon or attach the same shall be void; nor shall any such benefit be in any manner liable for or subject to the debts, contracts, liabilities, engagement or torts of the person entitled thereto.  The preceding rule shall not apply to any offset of a Participant's benefits under the Plan against an amount the Participant is ordered to pay to the Plan if (a) the order or requirement to pay arises (i) under a judgment of conviction for a crime involving the Plan, (ii) under a civil judgment (including a consent order or decree) entered by a court in an action brought in connection with a violation (or alleged violation) of part 4 of subtitle B of title I of ERISA, or (iii) pursuant to a settlement agreement between the Secretary of Labor and the Participant, or a settlement agreement between the Pension Benefit Guaranty Corporation and the Participant, in connection with a violation (or alleged violation) of part 4 of such subtitle by a fiduciary or any other person and (b) the judgment, order, decree, or settlement agreement expressly provides for the offset of all or part of the amount ordered or required to be paid to the Plan against the Participant's benefits provided under the Plan.

8.02    If any Participant or Beneficiary under this Plan becomes bankrupt, or attempts to anticipate, alienate, sell, transfer, assign, pledge, encumber or charge any benefit under this Plan, such benefit shall, in the discretion of the Pension Committee, cease and terminate, and in that event the Trustees may hold or apply the same or any part thereof for the benefit of such Participant, his Beneficiary, his Eligible Spouse or children or other dependents, or any of them, in such manner and in such proportions as the Pension Committee may deem proper.

## ARTICLE IX

## TOP-HEAVY PLAN YEARS

9.01    For Purposes of this Article IX:

(a)    "Key Employee" means any Participant or former Participant (including any deceased Participant) who at any time during the Plan Year that includes the Determination Date was an officer of the Firm having Section 415 Compensation greater than $130,000 (as adjusted under Section 416(i)(1) of the Code, a five (5) percent owner of the Firm, or a one (1) percent owner of the Firm having Section 415 Compensation of more than $150,000.  The determination of who is a Key Employee will be made in accordance with Section 416(i)(1) of the Code and the applicable regulations and other guidance of general applicability issued thereunder.

(b)    "Determination Date" means, the last day of the immediately preceding Plan Year.

(c)    "Aggregation Group" means -

(1)    each plan of an Employer which -

(A)    has one or more participants who are Key Employees, and

(B)    enables any plan described in Subparagraph (A) to meet the requirements of Section 401(a)(4) or Section 410 of the Code,

plus, at the Firm's election,

(2)    any other plan or plans which, when considered together with the plan or plans described in Paragraph (1), satisfy the requirements of Section 401(a)(4) and Section 410 of the Code.

(d)    "Employee", "Partner" and "Key Employee" include present and former Employees and Partners and the beneficiaries of present and former Employees and Partners.

(e)    "Top-Heavy Plan Year" means any Plan Year with respect to which the Plan is a Top-Heavy Plan described in Section 9.02, such Section 9.02 to be read as incorporating the definitions supplied by Section 416 of the Code and the regulations promulgated thereunder, and those of any successor statute thereto.

(f)     "Section 415 Compensation" has the meaning assigned to it in Section 7.01(j) of the Plan with respect to any Employee.  In the case of a Partner, "Section 415 Compensation" means such Partner's earned income within the meaning of Section 401(c)(2) of the Code (but determined without regard to any exclusion under Section 911 of the Code), including those items listed in Paragraph (1) of Section 1.415-2(d) of the Federal Income Tax Regulations but excluding those items listed in Paragraph (2) thereof.

(g)     "Partner" means an individual member of the Firm.

(h)     "Employer" includes the Employer and its Affiliates.

9.02   (a)     The Plan is a Top-Heavy Plan with respect to a Plan Year, if, as of the Determination Date of such Plan Year -

(1)     the aggregate of the Account balances of Key Employees under the Plan exceeds sixty percent (60%) of the aggregate of the Account balances of all Employees under the Plan; or

(2)     the Plan is a member of an Aggregation Group -

(A)     which is described in Section 9.01(c)(1), and

(B)     with respect to which the sum of -

(i)     the present value of the cumulative accrued benefits, of all Key Employees under all defined benefit plans within the Aggregation Group, and

(ii)     the aggregate of the account balances of all Key Employees under all defined contribution plans in the Aggregation Group -

exceeds sixty percent (60%) of the sum of -

(i)     the present value of the cumulative accrued benefits of all Employees under all defined benefit plans included in the Aggregation Group, and

(ii)     the aggregate of the accounts of all Employees and Partners under all defined contribution plans in the Aggregation Group,

unless, in either case, the Plan is a member of an Aggregation Group with respect to which the percentage test described in Subparagraph 2(B) is not met.

   (b)  for purposes of this Section 9.02:

     (1)  the accrued benefit and/or account balance of any Employee or Partner who is not a Key Employee during the Plan Year but who was a Key Employee during the immediately preceding Plan Year shall be disregarded;

     (2)  the present value of an Employee's or a Partner's accrued benefit under a defined benefit plan as of Determination Date shall be determined as of that valuation date which occurs within the twelve (12) month period ending on such Determination Date as is used by the enrolled actuary in computing plan costs for minimum funding purposes;

     (3)  the account balance of an Employee or a Partner in a defined contribution plan as of any Determination Date shall equal the balance of the Employee's accounts as of the valuation date which occurs within the twelve (12) month period ending on such Determination Date including an adjustment for contributions made or which are due as of such Determination Date;

     (4)  the accrued benefits and accounts of any individual who has not performed services for the employer during the one (1) year period ending on the Determination Date shall not be taken into account;

     (5)  the account balance of an Employee or a Partner in a defined contribution plan or the present value of the accrued benefit of an Employee in a defined benefit plan, as of Determination Date -

       (A)  excludes any rollover contribution or similar transfer to such plan made after December 31, 1983 and attributable to the Employee's or the Partner's interest in a plan other than a plan maintained by an Employer, and

       (B)  includes, -

        (i) effective prior to January 1, 2002, any amount distributed with respect to the Employee or the Partner under the Plan within the five (5) year period ending on the Determination Date, except to the extent that such amount is included in such Employee's account balance or the present value of his accrued benefits pursuant to Paragraph (2) or (3) and,

(ii) effective on and after January 1, 2002, any distributions made with respect to the Employee under the Plan and any Plan in the Aggregation Group during the one (1) year period ending on the Determination Date. In the case of a distribution made for a reason other than separation from service, death, or disability, this provision shall be applied by substituting five (5) year period for one (1) year period.

This Subparagraph (B) shall also apply to distributions under a terminated plan which if it had not been terminated would have been required to be included in an Aggregation Group; and

(6)     the accrued benefit under any defined benefit plan required to be included in an Aggregation Group with the Plan of any Employee or Partner other than a Key Employee shall be determined under (A) the method, if any, that uniformly applies for accrual purposes under all plans maintained by an Employer or Affiliate or (B) if there is no such method, as if such benefit accrued not more rapidly than the slowest accrual rate permitted under the fractional accrual rate of Section 411(b)(1)(C) of the Code.

9.03    Effective January 1, 2008, for any Plan Year for which the Plan is a Top-Heavy Plan, each Participant who is not a Key Employee shall be entitled to certain benefits as follows:

(a)     if a Participant in the Fried, Frank, Harris, Shriver & Jacobson LLP Cash Balance Plan (as defined in that plan), the benefit provided under Section 14.04 of the Fried, Frank, Harris, Shriver & Jacobson LLP Cash Balance Plan;

(b)     if not a Participant in the Fried, Frank, Harris, Shriver & Jacobson LLP Cash Balance Plan and is Participant of the Fried, Frank, Harris, Shriver & Jacobson LLP Employees' Retirement Plan (as defined in that plan) and is not considered a Former Staff Employee under the Fried, Frank, Harris, Shriver & Jacobson LLP Employees' Retirement Plan (as defined in Section 2.06 of that plan), the benefit provided under Section 14.04 of the Fried, Frank, Harris, Shriver & Jacobson LLP Employees' Retirement Plan for any Plan Year for which the Plan is a Top-Heavy Plan;

(c)     if not a Participant in the Fried, Frank, Harris, Shriver & Jacobson LLP Cash Balance Plan nor the Fried, Frank, Harris, Shriver & Jacobson LLP Employees' Retirement Plan, and is a Participant in the Fried, Frank, Harris, Shriver & Jacobson LLP Profit Sharing Plan, the Employer shall make a contribution to such Participant's Account under the Fried, Frank, Harris, Shriver & Jacobson LLP Profit Sharing Plan in an amount equal to the lesser of (i) three percent (3%) of his Section 415 Compensation, or (ii) the percentage of his Section 415 Compensation at which contributions are made under the

Fried, Frank, Harris, Shriver & Jacobson LLP Profit Sharing Plan for the Key Employee for whom such percentage is the highest for such Plan Year; and

(d)      if not a Participant in the Fried, Frank, Harris, Shriver & Jacobson LLP Cash Balance Plan nor the Fried, Frank, Harris, Shriver & Jacobson LLP Profit Sharing Plan and either (x) is not a Participant in the Fried, Frank, Harris, Shriver & Jacobson LLP Employees' Retirement Plan or (y) is considered a "Former Staff Employee" under the Fried, Frank, Harris, Shriver & Jacobson LLP Employees' Retirement Plan, the Employer shall make a contribution to such Participant's Employer Contribution Account under the Plan in an amount equal to the lesser of (i) three percent (3%) of his Section 415 Compensation, or (ii) the percentage of his Section 415 Compensation at which employer contributions are made under the Plan for the Key Employee for whom such percentage is the highest for such Plan Year.

Notwithstanding that a Participant may participate in more than one plan, there shall be no duplication of top heavy benefits from more than one plan and to the extent the minimum top heavy benefit is provided under any plan, as outlined in this Section, the Participant shall not be entitled to an additional top heavy benefit under any other plan.

ARTICLE X

AMENDMENT OF THE PLAN

10.0l    The Firm shall have the right, at any time and from time to time, to amend in whole or in part, any of the provisions of this Plan and such amendment shall be binding upon the Participants and their Beneficiaries, the Trustees and all parties in interest; provided however, that the Pension Committee may amend the Plan, in whole or in part, where the amendments do not substantially increase the cost of the Plan to the Firm. However, no such amendment shall authorize or permit any of the assets of the Trust Fund to be used for or directed to purposes other than the exclusive benefit of the Participants and their Beneficiaries prior to the satisfaction of all liabilities to Participants and their Beneficiaries hereunder, and no amendment which materially increases the rights, duties or responsibilities of the Trustees may be made without its or their written consent.  Any such amendment shall become effective as of the date specified therein upon delivery of a written instrument, executed by the Firm or the Pension Committee, as applicable.

10.02    Notwithstanding anything to the contrary contained in Section 10.01, no amendment may be made which shall retroactively deprive a Participant of any benefit accrued prior to the date such amendment was executed, unless such amendment is necessary to permit the Plan to qualify under Section 401(a) of the Code.

ARTICLE XI

TERMINATION OF THE PLAN


11.01  The Firm may, by appropriate notice to the Trustees, terminate the Plan in its entirety or withdraw from the Plan and terminate it with respect to itself.  Any Affiliate may voluntarily withdraw from the Plan, and, upon any such withdrawal, the Plan shall be terminated in respect of such Affiliate.

11.02  Upon the termination of the Plan with respect to an Affiliate, the Trustees shall allocate and segregate for the benefit of the Participants then or theretofore employed by such Affiliate their proportionate interest in the Trust Fund.

11.03  Any termination or partial termination shall be effective as of the date specified in the resolution providing therefor, if any, and shall be binding upon all Participants and their Beneficiaries, the Trustees and all parties in interest.

11.04  Upon the termination of the Plan in its entirety, the Trustees shall, after the determination of the balance in each Participant's Account -

(a)     pay any and all expenses chargeable against the Trust, and

(b)     pay over to each Participant the balance in his Account.

11.05  If the Plan shall merge or consolidate with, or transfer its assets or liabilities to, any other "pension plan", as defined in Section 3(2) of ERISA, each Participant shall be entitled to receive a benefit immediately after such  merger, consolidation or transfer (assuming that the Plan had then terminated) which is equal to or greater than the benefit which he would have been entitled to receive immediately before such merger, consolidation or transfer (assuming that the Plan had then terminated).

56

ARTICLE XII

TRUST AND ADMINISTRATION

12.01  The Pension Committee is hereby designated as "named fiduciary" within the meaning of Section 402(a) of ERISA, and shall administer the Plan in accordance with its terms and shall have all powers necessary to carry out the provisions of the Plan.  In exercising any of its discretionary powers with respect to the administration of the Plan, the Pension Committee shall act in a uniform and nondiscriminatory manner and for the exclusive benefit of Participants and their Beneficiaries.  The Pension Committee may from time to time establish rules for the administration of the Plan.  The Pension Committee shall have exclusive authority and sole and absolute discretion to interpret the Plan, to determine eligibility for benefits and the amount of benefit payments and to make any factual determinations, resolve factual disputes and decide all matters arising in connection with the interpretation, administration and operation of the Plan or with the determination of eligibility for benefits or the amount of benefit payments.  All rules, interpretations and decisions of the Pension Committee shall be conclusive and binding on the Firm and Affiliates and on Participants and their Beneficiaries to the extent permitted by law.  The Firm is hereby designated as "plan administrator" within the meaning of Section 3(16)(A) of ERISA. The Pension Committee is hereby designated as the "Named Administrative Fiduciary" and the "Named Investment Fiduciary" under the Plan pursuant to the terms of the Trust Agreement with the Trustee.

12.02  The Pension Committee shall act by majority vote.  Such action may be taken either by vote at a meeting or in writing without a meeting.  The Pension Committee may adopt such by-laws and regulations as it deems desirable for the conduct of its affairs.  The Pension Committee may appoint such independent accountants, enrolled actuaries, legal counsel (including the Firm), investment advisors, investment managers, specialists and other persons as they deem necessary or desirable in connection with the administration of this Plan.  The Pension Committee shall be entitled to rely conclusively upon, and shall be fully protected in any action taken by it in good faith in relying upon, any opinions or reports which shall be furnished to it by any such independent accountant, enrolled actuary, legal counsel, investment advisor, investment manager or other specialist.  The Pension Committee shall keep a record of all its proceedings and acts and all other data as may be necessary for the proper administration of the Plan.  The Pension Committee shall notify the Firm of any action taken by them, and when required, shall notify any other interested person or persons.

12.03  The members of the Pension Committee and the individual Trustees shall serve without compensation for services as such.  All expenses of the Trust shall be paid out of the Trust Fund unless and to the extent paid by the Firm.  Such expenses shall include any expenses incident to the functioning of the Pension Committee and the Trustees (including, but not limited to, fees of independent accountants, enrolled actuaries, legal counsel, investment advisors, investment managers and other specialists, record keeping costs and other costs of administering the Plan).

12.04  The members of the Pension Committee and the Trustees shall discharge their duties with respect to the Plan solely in the interests of the Participants and their Beneficiaries and for the exclusive purpose of providing benefits to Participants and their Beneficiaries and defraying reasonable expenses for administering the Plan -

(a)     with the care, skill, prudence and diligence under the circumstances then prevailing that a prudent man, acting in like capacity and familiar with such matters, would use in the conduct of an enterprise of a like character and with like aims;

(b)     in accordance with the documents and instruments governing the Plan insofar as such documents and instruments are consistent with the provisions of ERISA; and

(c)     Notwithstanding anything to the contrary contained in Subsection (a) hereof, the individual Trustees and the Pension Committee shall not be liable for any losses, failure to diversify investments or other breach of fiduciary duty resulting from any Participant's (or his Beneficiary's) exercise of his right to designate the manner in which the balance of his respective Account shall be invested.

12.05  The Firm shall indemnify and hold harmless each member of the Pension Committee and each individual Trustee against any claim, loss, damage, expense (including legal fees and disbursements) and any other liability which such member of the Pension Committee or individual Trustee may incur arising out of his actions or omissions as a Trustee unless and to the extent that it is held by the final judgment of a court having jurisdiction, from which no appeal has or may be taken, that such liability arose out of the willful misfeasance of such member of the Pension Committee or individual Trustee.

12.06  The Trustees shall from time to time make payments out of the Trust Fund in such manner, in such amounts and for such purposes as the Pension Committee may determine, and upon any such payment being made, the amount thereof shall no longer constitute a part of the Trust Fund from which it was made.

12.07  Any Trustee may be removed by the Firm at any time upon notice in writing to the Trustees, which notice may be waived by the Trustees.  A Trustee may resign at any time upon thirty days' notice in writing to the Firm, which notice may be waived by the Firm.  Upon such removal or resignation of a Trustee, or upon the death or disability of a Trustee, the Firm may, or in the event there is no then acting Trustee, shall appoint a successor Trustee who shall have the same powers and duties as those conferred upon the Trustees hereunder.  The Firm may appoint one or more additional Trustees at any time who shall have the same powers and duties as those conferred upon the Trustees hereunder.

12.08  Any member of the Pension Committee may be removed by the Firm at any time upon notice in writing to the member, which notice may be waived by the member.  A member of the Pension Committee may resign at any time upon notice in writing to the Firm, which notice may be waived by the Firm.  Upon such removal or resignation of a member of the Pension Committee, or upon the death or disability of a member of the Pension Committee, the Firm may, or in the event there is no then acting member of the Pension Committee, shall appoint a successor Pension Committee member who shall have the same powers and duties as those conferred upon the members of the Pension Committee hereunder.  The Firm may appoint one or more additional members of the Pension Committee at any time who shall have the same powers and duties as those conferred upon the members of the Pension Committee hereunder.

12.09  The Firm hereby agrees to procure on behalf of the members of the Pension Committee and the individual Trustees a fiduciary liability insurance policy or policies, in an amount determined by the Pension Committee to be necessary to protect them, to the extent legally permissible, from potential fiduciary liabilities arising under ERISA or otherwise, and to maintain such policies in force at all times during the existence of the Plan.  The amount of such insurance coverage shall be reviewed annually within a reasonable period after the end of each Plan Year, and any additional insurance coverage desired by the Pension Committee shall be purchased as soon thereafter as is practicable.

12.10  (a)     A Participant, former Participant or Beneficiary must file a claim for benefits under the Plan in accordance with procedures established by the Pension Committee.  The claimant shall supply such information and documents as the Pension Committee determine are necessary to enable them to determine the validity of the claim.

(b)     The Pension Committee shall decide whether to honor a claim within ninety (90) days of the date on which the claim is filed, unless special circumstances require a longer period for adjudication and the claimant is notified in writing of the reasons for an extension of time; provided, however, that no extensions

59

shall be permitted beyond ninety (90) days after the date on which the claimant received notice of the extension of time from the Pension Committee.

(c)     (1)     Whenever a claim for benefits is denied, written notice, prepared in a manner calculated to be understood by the claimant, shall be provided to him, setting forth the specific reasons for the denial and explaining the procedure for review of the decision made by the Pension Committee.  If the denial is based upon submission of information insufficient to support a decision, the Pension Committee shall specify the information which is necessary to perfect the claim and their reasons for requiring such additional information.

(2)     Any claimant whose claim is denied may within sixty (60) days after his receipt of written notice of such denial, request in writing a review by the Firm or a committee designated by it, the members of which shall be "named fiduciaries", within the meaning of Section 402(a) of ERISA, for the purpose of adjudicating such appeals.  Such claimant or his representative may examine any Plan documents relevant to his claim and may submit issues and comments in writing.  The Firm, or committee, shall adjudicate the claimant's appeal within sixty (60) days after its receipt of his written request for review, unless special circumstances require a longer period for adjudication and the claimant is notified in writing of the reasons for an extension of time; provided, however, that such adjudication shall be made no later than one hundred twenty (120) days after receipt by the Firm, or committee, of the claimant's written request for review.

(3)     If the Firm, or committee, fails to notify the claimant of its decision with respect to his request for review within the time specified by this Subsection (c), such claim shall be deemed to have been denied on review.

(d)     If the claim is denied by the Firm, or committee, such decision shall be in writing, shall state specifically the reasons for the decision, shall be written in a manner calculated to be understood by the claimant and shall make specific reference to the pertinent Plan provisions upon which it is based.

(e)     The procedure set forth in this Section shall be interpreted in accordance with regulations promulgated by the United States Department of Labor or any successor authority regulating claims procedures for employee benefit plans.

12.11  All provisions of this Plan shall be interpreted and administered by the Pension Committee in a uniform and non-discriminatory manner.

12.12  The provisions of the Trust Agreement between Fried, Frank, Harris, Shriver & Jacobson LLP and Merrill Lynch Bank & Trust Co., FSB shall govern provisions pertaining to the Trust.

## ARTICLE XIII

## MISCELLANEOUS

13.01  In case any provisions of this Plan shall be held illegal or invalid for any reason, such illegality or invalidity shall not affect the remaining parts of this Plan, but this Plan shall be construed and enforced as if such illegal and invalid provisions had never been inserted herein.

13.02  No liability shall attach to the Firm for payment of any benefits or claims hereunder, and all Participants and Beneficiaries, and all persons claiming under or through them, shall have recourse only to the Trust Fund for payment of any such benefit or claim.

13.03  Nothing in this Plan, expressed or implied, is intended, or shall be construed, to confer upon any person, firm, association, or corporation, other than the parties hereto and their successors in interest, any right, remedy, or claim under or by reason of this Plan, or any covenant, condition, or stipulation hereof, and all covenants, conditions, and stipulations in this Plan, by or on behalf of any party, shall be for the sole and exclusive benefit of the parties hereto.

13.04  If any provision in this Plan shall be held illegal or invalid for any reason, such illegality or invalidity shall not affect the remaining provisions of the Plan, which shall be construed and enforced as if such illegal or invalid provision had never been included herein.

13.05  The effective date of this Plan is January 1, 2013, provided that the effective date of any amendments to portions of the Plan or the Prior Plan that are incorporated herein shall be, for those portions of the plan so amended, the dates when the applicable amendments became effective.

13.06  This Plan shall be governed, construed, administered and regulated in all respects under the laws of the State of New York, except insofar as they shall have been superseded by the provisions of ERISA.

13.07  Wherever any words are used herein in the masculine gender, they shall be construed as though they were also used in the feminine gender in all cases where they would so apply, and vice versa, and wherever any words are used herein in the singular form, they shall be construed as though they were also used in the plural form in all cases where they would so apply, and vice versa.

13.08  (a)    This Plan is established subject to the condition precedent that it shall be approved by the Internal Revenue Service as qualified under Section 40l(a) of the Code as an employees' trust exempt from taxation under Section 50l(a) of the Code. If the Internal Revenue Service initially determines that the Plan does not qualify under Section 40l(a) of the Code, all contributions made to the Plan prior to such determination shall revert to the appropriate Employer within one (1) year after the date of denial of qualification.

(b)    If any contribution is made to this Plan by an Employer by a mistake of fact, such contribution shall be returned to the Firm within one (1) year following the date that such contribution is made.

(c)    Each contribution made by an Employer pursuant to Article III is conditioned upon its deductibility under Section 404 of the Code.  Each contribution shall, to the extent disallowed as a deduction, be returned to the Firm within one (1) year following the date of disallowance.

(d)    This Plan is established for the exclusive benefit of the Participants herein and their beneficiaries.  Except as otherwise provided in Subsections (a), (b) and (c) of this Section, it shall be impossible for any assets of the Trust to revert at any time to the Firm.

IN WITNESS WHEREOF, the parties hereto have hereunto set their hands as of January 23, 2013.

FRIED, FRANK, HARRIS, SHRIVER & JACOBSON LLP
PENSION COMMITTEE

_____
Amy L. Blackman

_____
Kenneth R. Blackman

_____
Donald P. Carleen

_____
Michelle B. Gold

_____
Meyer Last

_____
Philip Richter

IN WITNESS WHEREOF, the parties hereto have hereunto set their hands as of January 23, 2013.

FRIED, FRANK, HARRIS, SHRIVER & JACOBSON LLP
PENSION COMMITTEE

_____
Amy L. Blackman

_____
Kenneth R. Blackman

_____
Donald P. Carleen

_____
Michelle B. Gold

_____
Meyer Last

_____
Philip Richter

2/26/13

FIRST AMENDMENT TO THE
AMENDED AND RESTATED
FRIED, FRANK, HARRIS, SHRIVER & JACOBSON LLP
401(k) INCENTIVE SAVINGS PLAN

WHEREAS, FRIED, FRANK, HARRIS, SHRIVER & JACOBSON LLP (the "Firm") established the Fried, Frank, Harris, Shriver & Jacobson 401(k) Incentive Savings Plan (the "Plan") for certain of the Firm's employees effective as of February 23, 1987, which Plan was most recently amended and restated in its entirety effective January 1, 2013; and

WHEREAS it is desired by the Firm to amend the Plan to provide that former Employees of the Firm who remain Plan Participants on account of having an Account maintained under the Plan may, within two years following the Participants' separation from service, rollover to the Plan amounts that are eligible rollover distributions from the Firm's Cash Balance Plan or Employees' Retirement Plan without the prior consent of the Pension Committee.

NOW, THEREFORE, BE IT:

RESOLVED, that the Plan is hereby amended as follows:

1. The definition of "Rollover Contribution" is amended by replacing the word "Employee" with the word "Participant."

2. The definition of "Roth Rollover Contribution" is amended by replacing the word "Employee" with the word "Participant."

3. A new Section 4.06 (c) shall be inserted to read as follows:

   Notwithstanding anything to the contrary herein, a Participant may, within two years following the date of such Participant's Separation from Service and upon written notice to the Pension Committee not later than thirty (30) days prior to any Valuation Date (or such lesser period as is acceptable to the Pension Committee), rollover as of such Valuation Date any amount that is received from the Fried, Frank, Harris, Shriver & Jacobson LLP Cash Balance Plan or the Fried, Frank, Harris, Shriver & Jacobson LLP Employees' Retirement Plan (in each case, as may be amended from time to time) and that is an "eligible rollover distribution" as defined under such plan.

4.  Section 4.06(c) shall be renumbered 4.06(d) and shall be amended by inserting the word "or Subsection (c)" after the words "Subsection (a)(1) or (2)" and before the words "shall be subject".

2.      This consent may be executed in one or more counterparts, all of which shall be deemed one and the same original.

8888759.2

Adopted May 2014 as draft for IRS response 3/21/14

SECOND AMENDMENT
TO THE
FRIED, FRANK, HARRIS, SHRIVER & JACOBSON LLP
401(k) INCENTIVE SAVINGS PLAN

WHEREAS, FRIED, FRANK, HARRIS, SHRIVER & JACOBSON LLP (the "Firm") established the Fried, Frank, Harris, Shriver & Jacobson 401(k) Incentive Savings Plan (the "Plan") effective as of February 23, 1987, which Plan was amended and restated in its entirety most recently as of January 1, 2013,  and which has been amended one (1) time;

WHEREAS, it is desired by the Firm to amend the Plan to clarify provisions regarding the nonspouse designated beneficiary rollover rules;

NOW, THEREFORE, BE IT:

RESOLVED, that the Plan is hereby amended as follows:

1.      Effective as of December 31, 2006, Section 6.11 of the Plan is hereby amended by adding the word "inherited" immediately before each instance of the phrase "individual retirement account or annuity described in Section 408(a) or (b) of the Code" in both subsections 6.11(a) and 6.11(b).

2.      Effective as of December 31, 2007, Section 6.11 of the Plan is hereby amended by adding the word "inherited" immediately before each instance of the phrase "Roth IRA described in Section 408A(b) of the Code" in both subsections 6.11(a) and 6.11(b).

3.      The items contained in this amendment shall be effective as of the dates set forth for each item above.

THIRD AMENDMENT
TO THE
FRIED, FRANK, HARRIS, SHRIVER & JACOBSON LLP
401(k) INCENTIVE SAVINGS PLAN

WHEREAS, FRIED, FRANK, HARRIS, SHRIVER & JACOBSON LLP (the "Firm") established the Fried, Frank, Harris, Shriver & Jacobson 401(k) Incentive Savings Plan (the "Plan") effective as of February 23, 1987, which Plan was amended and restated in its entirety most recently as of January 1, 2013,  and which has been amended two (2) times;

WHEREAS, it is desired by the Firm to amend the Plan to update provisions regarding the timing of entry into the plan and other administrative matters;

NOW, THEREFORE, BE IT:

RESOLVED, that the Plan is hereby amended, as follows:

1.      The definition of "Excluded Employee" is hereby amended (i) to delete the period "." at the end of subsection (d) and replace it with "; or" and (ii) to add a new subsection (e), as follows:

> "(e) is in a job classification, as set forth in an appendix hereto, that is determined by the Pension Committee to be ineligible to participate in the Plan."

2.      The definition of "Investment Date" shall be deleted and replaced in its entirety as follows:

> "INVESTMENT DATE" means the first business day of each month of each year.

3.      The Section 2.01 of the Plan is hereby amended by replacing the words "the January 1 or July 1" in two places such section with the words "the January 1, April 1, July 1 or October 1."

4.      Section 3.01 of the Plan is hereby amended by (i) renumbering the second, third and fourth subsections (not including the subsections marked as (1) and (2)) as subsections (b), (c) and (d), respectively, and (ii) in the renumbered subsection (b), replacing the words "fifteen percent (15%)" with the words "sixteen percent (16%)".

17983068.2

5.    Section 4.05 of the Plan is hereby deleted and replaced in its entirety as follows:

"Each Participant shall be furnished a statement as soon as practicable after the first day of January, April, July and October of each year, setting forth, as of the most recent Valuation Date preceding such date, the value of his Account balance invested in each Investment Fund."

6.    The second sentence of Section 6.01 of the Plan is hereby deleted and replaced in its entirety as follows:

"Each Participant shall be furnished a statement as soon as practicable after the first day of January, April, July and October of each year, setting forth, as of the most recent Valuation Date preceding such date, the value of his Account balance invested in each Investment Fund."

7.    The items contained in this amendment shall be effective as of the January 1, 2019.

4/30/19

FOURTH AMENDMENT TO THE
AMENDED AND RESTATED
FRIED, FRANK, HARRIS, SHRIVER & JACOBSON LLP
401(k) INCENTIVE SAVINGS PLAN

WHEREAS, FRIED, FRANK, HARRIS, SHRIVER & JACOBSON LLP (the "Firm")
established the Fried, Frank, Harris, Shriver & Jacobson 401(k) Incentive Savings Plan (the
"Plan") for certain of the Firm's employees effective as of February 23, 1987, which Plan was
most recently amended and restated in its entirety effective January 1, 2013 and has been
amended three times; and

WHEREAS it is desired to update certain references to the Firm's former cash balance
plan to refer to the Firm's current cash balance plan.

NOW, THEREFORE, BE IT:

RESOLVED, that the Plan is hereby amended as follows:

1.  Section 4.06 (c) (added by Amendment 1 to the Plan) shall be restated in its entirety to
    read as follows:

    Notwithstanding anything to the contrary herein, a Participant or former Participant
    may, within two years following the date of such Participant's or former Participant's
    Separation from Service and upon written notice to the Pension Committee not later
    than thirty (30) days prior to any Valuation Date (or such lesser period as is
    acceptable to the Pension Committee), rollover as of such Valuation Date any amount
    that is received from or distributable by: (i) prior to or in connection with its
    termination, the Fried, Frank, Harris, Shriver & Jacobson LLP Cash Balance Plan; (ii)
    the Fried, Frank, Harris, Shriver & Jacobson LLP 2014 Partner's Cash Balance Plan
    (or similar successor plan) or (iii) the Fried, Frank, Harris, Shriver & Jacobson LLP
    Employees' Retirement Plan, in each case, as may be amended from time to time and
    that is an "eligible rollover distribution" as defined under such plan.

2.  This Fourth Amendment may be executed in one or more counterparts, all of which shall
    be deemed one and the same original.

18562471.2

7/24/19

FIFTH AMENDMENT TO THE
AMENDED AND RESTATED
FRIED, FRANK, HARRIS, SHRIVER & JACOBSON LLP
401(k) INCENTIVE SAVINGS PLAN

WHEREAS, FRIED, FRANK, HARRIS, SHRIVER & JACOBSON LLP (the "Firm")
established the Fried, Frank, Harris, Shriver & Jacobson 401(k) Incentive Savings Plan (the
"Plan") for certain of the Firm's employees effective as of February 23, 1987, which Plan was
most recently amended and restated in its entirety effective January 1, 2013 and has been
amended four times; and

WHEREAS it is desired to update certain references to the Firm's former cash balance
plan to refer to the Firm's current cash balance plan.

NOW, THEREFORE, BE IT:

RESOLVED, that the Plan is hereby amended as follows:

1. Section 4.06 (c) (added by Amendment 1 to the Plan and amended by Amendment 4 to
   the Plan) shall be restated in its entirety to read as follows:

   Notwithstanding anything to the contrary herein, a Participant or former Participant
   may, within five years following the date of such Participant's or former Participant's
   Separation from Service and upon written notice to the Pension Committee not later
   than thirty (30) days prior to any Valuation Date (or such lesser period as is
   acceptable to the Pension Committee), rollover as of such Valuation Date any amount
   that is received from or distributable by: (i) prior to or in connection with its
   termination, the Fried, Frank, Harris, Shriver & Jacobson LLP Cash Balance Plan; (ii)
   the Fried, Frank, Harris, Shriver & Jacobson LLP 2014 Partner's Cash Balance Plan
   (or similar successor plan), (iii) the Fried, Frank, Harris, Shriver & Jacobson LLP
   Employees' Retirement Plan, or (iv) the Fried, Frank, Harris, Shriver & Jacobson
   LLP Profit Sharing Plan, in each case, as may be amended from time to time and that
   is an "eligible rollover distribution" as defined under such plan.

2.     This Fifth Amendment may be executed in one or more counterparts, all of which shall
be deemed one and the same original.

19548533.1

2/6/2020

SIXTH AMENDMENT TO THE
AMENDED AND RESTATED
FRIED, FRANK, HARRIS, SHRIVER & JACOBSON LLP
401(k) INCENTIVE SAVINGS PLAN

WHEREAS, FRIED, FRANK, HARRIS, SHRIVER & JACOBSON LLP (the "Firm")
established the Fried, Frank, Harris, Shriver & Jacobson 401(k) Incentive Savings Plan (the
"Plan") for certain of the Firm's employees effective as of February 23, 1987, which Plan was
most recently amended and restated in its entirety effective January 1, 2013 and has been
amended five times; and

WHEREAS, pursuant to Section 10.01 of the Plan, the Pension Committee, consisting as
of the date hereof of Amy L. Blackman, Kenneth R. Blackman, Donald P. Carleen, Meyer Last,
and Andrew Varney, has the power to amend the Plan, in whole or in part, where the
amendments are not anticipated to materially affect the cost of the Plan;

WHEREAS it is desired to update the numbering of one section of the Plan and to add
provisions allowing in-plan Roth conversions; and

WHEREAS, it has been determined that none of the amendments herein is anticipated to
materially affect the cost of the Plan.

NOW, THEREFORE, BE IT RESOLVED, that the Plan is hereby amended as follows:

1.  In Article I (Definitions), amend the definition of "Account" to add the words "the
    In-Plan Roth Rollover Contribution Account and the In-Plan Roth Transfer
    Account" after the words "the Roth Contribution Account" and to replace the
    word "and" with a comma before the words "the Roth Contribution Account."

2.  Add to Article I (Definitions) in the appropriate alphabetical order the following
    definitions:

    "Direct In-Plan Roth Rollover" means a direct rollover from a participant's
    Account (other than the Roth Contribution Account, the Roth Rollover Account,
    In-Plan Roth Rollover Contribution Account or In-Plan Roth Transfer Account) to
    an In-Plan Roth Rollover Contribution Account or In-Plan Roth Transfer Account
    established for the Participant.

    "In-Plan Roth Rollover Contribution" means a contribution made to the Plan in
    accordance with Section 402A(c)(4) of the Code by the Participant to the
    Participant's In-Plan Roth Rollover Contribution Account consisting of a
    distribution from a Participant's Account, other than a Participant's Roth
    Contribution Account or the Roth Rollover Account.

20630947.3

"In-Plan Roth Transfer" means a contribution made to the Plan in accordance with Section 402A(c)(4)(E) of the Code by the Participant to the Participant's In-Plan Roth Transfer Account, consisting of a transfer from a Participant's Account, other than a Participant's Roth Contribution Account or the Roth Rollover Account.

"In-Plan Roth Rollover Contribution Account" means the account maintained for a Participant, in accordance with this Plan, to which shall be credited the Participant's In-Plan Roth Rollover Contributions.

"In-Plan Roth Transfer Account" means the account maintained for a Participant, in accordance with this Plan, to which shall be credited the Participant's In-Plan Roth Transfer.

3.   In Section 3.01, the second reference to subsection (a) and the references to subsections (b) and (c), shall be amended to be subsections (b), (c) and (d), respectively.

4.   A new Section 6.13 (regarding in-plan Roth conversions) shall be added to the plan as follows:

Section 6.13

(a)     Effective for distributions made after January 1, 2020, a Participant may elect to rollover a distribution to an In-Plan Roth Rollover Contribution Account in accordance with the provisions of this Section 6.13. Effective January 1, 2020, a Participant may elect to rollover amounts from his Elective Deferral Account, Matching Contribution Account, and Employer Contribution Account to the extent vested (and, in each case, earnings thereon) to an In-Plan Roth Transfer Account for the benefit of the Participant without regard to whether the Participant satisfies the requirements for a distribution or withdrawal in accordance with the applicable sections of Article VI. All such rollovers and/or transfers shall be in accordance with Section 402A(c)(4)(E) of the Code.  In-Plan Roth Rollover Contributions and In-Plan Roth Transfers shall be subject to the same Plan rules as Roth Contributions. Records will be maintained as are necessary for the proper reporting and administration of In-Plan Roth Rollover Contributions and In-Plan Roth Transfers in accordance with the Code, IRS guidance and Plan provisions.

(b)     For purposes of determining eligibility for In-Plan Roth Rollover Contributions and In-Plan Roth Transfers, the Plan will treat a Participant's surviving Eligible Spouse or alternate payee spouse or former spouse as a Participant. A Non-Spouse Distributee may not make In-Plan Roth Rollover Contributions and In-Plan Roth Transfers.

(c)     An In-Plan Roth Rollover Contribution must be made by the Participant in the form of a Direct In-Plan Roth Rollover of any eligible rollover distribution

from the Plan . An In-Plan Roth Transfer must be made by the Participant in the form of a Direct In-Plan Roth Rollover.

(d)      In-Plan Roth Rollover Contributions and In-Plan Roth Transfers may not include a Plan loan.

(e)      A Participant may elect an in-service distribution under Section 6.07 of the Plan and roll the distribution over into his In-Plan Roth Rollover Contribution Account.

(f)      Notwithstanding anything in the Plan to the contrary, an In-Plan Roth Rollover Contribution is not a rollover contribution for purposes of the Plan. The Plan will take into account the amounts attributable to an In-Plan Roth Rollover Contribution for purposes of determining whether a Participant's vested account balance exceeds $1,000 for purpose of Section 6.02(b). An In-Plan Roth Rollover Contribution shall not be treated as a distribution for purpose of Sections 401(a)(11) and 411(d)(6)(B)(ii) of the Code.  Amounts in the Participant's In-Plan Roth Rollover Contribution Account and In-Plan Roth Rollover Transfer Account may only be withdrawn by a participant when the participant is eligible for a distribution from the Plan under the terms of this Article VI.

5.   This Sixth Amendment may be executed in one or more counterparts, all of which shall be deemed one and the same original.

6.   This Amendment shall be effective as of January 1, 2020.