# Exhibit B

# Katten Muchin Rosenman LLP

---

KATTEN MUCHIN ROSENMAN LLP
DEFINED CONTRIBUTION PLAN

---

**As Amended and Restated Effective January 1, 2007**

60562351v.7

# Katten Muchin Rosenman LLP Defined Contribution Plan

*Katten Muchin Rosenman LLP* hereby amends and restates the *Katten Muchin Rosenman LLP Defined Contribution Plan* effective January 1, 2007 (the "Effective Date") to (1) incorporate the stand-alone amendments; (2) add a profit-sharing contribution for eligible Participants; (3) add automatic enrollment effective January 1, 2008; and (4) to make other clarifying changes. The Plan is intended to constitute a tax-qualified profit sharing plan, as described in Section 401(a) of the Internal Revenue Code of 1986, as amended (the "Code"), which includes a tax-qualified cash or deferred arrangement, as described in Code Section 401(k).

# TABLE OF CONTENTS

Page

ARTICLE I DEFINITIONS ............................................................................................. 1

1.1   "Accounts" ......................................................................................................... 1

1.2   "Account Balance" ............................................................................................ 2

1.3   "Active Participant" .......................................................................................... 2

1.4   "Administrative Named Fiduciary" ................................................................... 2

1.5   "Administrative Services Agreement" ............................................................... 2

1.6   "Alternate Payee" ............................................................................................. 3

1.7   "Appendix" ....................................................................................................... 3

1.8   "Applicable Administrative Named Fiduciary" ................................................ 3

1.9   "Applicable Investment Named Fiduciary" ...................................................... 3

1.10  "Authority or Discretion" ................................................................................ 3

1.11  "Authorized Leave of Absence" ....................................................................... 3

1.12  "Beneficiary" .................................................................................................... 4

1.13  "Board of Directors" ........................................................................................ 4

1.14  "Business Day" ................................................................................................. 4

1.15  "Claims Administrator" .................................................................................... 4

1.16  "Code" .............................................................................................................. 4

1.17  "Committee" ..................................................................................................... 4

1.18  "Commonly Controlled Entity" ........................................................................ 5

1.19  "Company" ........................................................................................................ 5

1.20  "Compensation" ................................................................................................ 5

1.21  "Contribution" .................................................................................................. 5

1.22  "Contribution Dollar Limit" ............................................................................. 7

1.23  "Contribution Election" .................................................................................... 7

1.24  "Contribution Percentage" ............................................................................... 7

1.25  "Conversion Election" ...................................................................................... 7

1.26  "Direct Rollover" .............................................................................................. 7

1.27  "Distributee" ..................................................................................................... 7

1.28  "Earned Income" .............................................................................................. 7

1.29  "Effective Date" ............................................................................................... 8

i

1.30 "Elective Deferral" ........................................................................ 8

1.31 "Eligible Employee" ...................................................................... 8

1.32 "Eligible Retirement Plan" ........................................................... 9

1.33 "Eligible Rollover Distribution" ................................................... 9

1.34 "Employee" ................................................................................... 9

1.35 "Employer" ................................................................................... 9

1.36 "Employment Date" ...................................................................... 9

1.37 "ERISA" ....................................................................................... 9

1.38 "Fair Market Value" .................................................................... 10

1.39 "Fiduciary" .................................................................................. 10

1.40 "HCE" ......................................................................................... 10

1.41 "Hour of Service" ....................................................................... 10

1.42 "Inactive Participant" .................................................................. 11

1.43 "Integrated Employee" ................................................................ 11

1.44 "Integration Level" ...................................................................... 11

1.45 "Investment Election" .................................................................. 11

1.46 "Investment Named Fiduciary" ................................................... 11

1.47 "Investment Option" .................................................................... 11

1.48 "Limited Participant" ................................................................... 11

1.49 "Maximum Saver" ....................................................................... 11

1.50 "Named Fiduciary" ...................................................................... 12

1.51 "National Managing Partner" ...................................................... 12

1.52 "NHCE" ....................................................................................... 12

1.53 "Normal Retirement Age" ........................................................... 12

1.54 "Of Counsel" ............................................................................... 12

1.55 "Paralegal" ................................................................................... 12

1.56 "Participant" ................................................................................ 12

1.57 "Participant Contribution" ........................................................... 12

1.58 "Partner" ...................................................................................... 12

1.59 "Partnership Agreement" ............................................................. 12

1.60 "Payment Date" ........................................................................... 12

1.61 "Pension Plan" ............................................................................. 12

1.62 "Plan" ........................................................................................... 12

ii

1.63 "Plan Year" ................................................................................................................ 12

1.64 "Profit Sharing Employee" ............................................................................................ 13

1.65 "QDRO" ...................................................................................................................... 13

1.66 "Related Plan" ............................................................................................................. 13

1.67 "Required Beginning Date" ........................................................................................... 13

1.68 "Secretary" .................................................................................................................. 13

1.69 "Self-Employed Individual" .......................................................................................... 13

1.70 "Settlement Date" ........................................................................................................ 14

1.71 "Spousal Consent" ....................................................................................................... 14

1.72 "Spouse" ...................................................................................................................... 14

1.73 "Sweep Time" .............................................................................................................. 14

1.74 "Termination of Employment" ...................................................................................... 14

1.75 "Trade Date" ................................................................................................................ 14

1.76 "Trust" ......................................................................................................................... 14

1.77 "Trust Agreement" ....................................................................................................... 14

1.78 "Trust Fund" ................................................................................................................ 14

1.79 "Trustee" ..................................................................................................................... 15

1.80 "Trustee Transfer" ....................................................................................................... 15

1.81 "Unit Value" ................................................................................................................ 15

1.82 "Valuation Time" ......................................................................................................... 15

1.83 "Working Counsel" ...................................................................................................... 15

1.84 "Year of Service" ......................................................................................................... 15

ARTICLE II PARTICIPATION AND SERVICE ................................................................ 16

2.1 Participation ................................................................................................................. 16

2.2 Participation Upon Change of Job Status ..................................................................... 16

2.3 Reemployment. ............................................................................................................ 16

ARTICLE III CONTRIBUTIONS ...................................................................................... 17

3.1 Participant Contribution Elections. ............................................................................... 17

3.2 Special Contributions. .................................................................................................. 19

3.3 Base and Excess Contributions. ................................................................................... 19

3.4 Profit Sharing Contributions. ....................................................................................... 20

3.5 Vesting ........................................................................................................................ 21

| | | |
|---|---|---|
| 3.6 | Miscellaneous. | 21 |
| 3.7 | Rollover Contributions. | 22 |
| **ARTICLE IV LIMITS ON CONTRIBUTIONS** | | **23** |
| 4.1 | Limit on Elective Deferrals. | 23 |
| 4.2 | Actual Deferral Percentage Test. | 23 |
| 4.3 | Maximum Contributions. | 24 |
| 4.4 | Imposition of Limits | 24 |
| 4.5 | Excess Annual Additions, Deferrals, and Contributions. | 25 |
| 4.6 | Incorporation by Reference. | 27 |
| **ARTICLE V ACCOUNTING FOR PARTICIPANT ACCOUNTS AND INVESTMENT OPTIONS** | | **28** |
| 5.1 | Individual Participant Accounting. | 28 |
| 5.2 | Accounting for Investment Options. | 29 |
| 5.3 | Accounts for Beneficiaries and Alternate Payees | 29 |
| 5.4 | Transition Rules | 29 |
| **ARTICLE VI INVESTMENT OPTIONS AND ELECTIONS** | | **31** |
| 6.1 | Investment of Contributions. | 31 |
| 6.2 | Investment of Accounts. | 31 |
| 6.3 | Investment Options | 32 |
| 6.4 | Transition Rules | 32 |
| 6.5 | Risk of Loss | 33 |
| 6.6 | Interests in the Investment Options | 33 |
| 6.7 | Restrictions on Investment Elections or Conversion Elections | 33 |
| 6.8 | Sole Source of Benefits | 33 |
| **ARTICLE VII WITHDRAWALS** | | **34** |
| 7.1 | Withdrawal from Rollover Account and Roth Rollover Account | 34 |
| 7.2 | Withdrawal for Hardship. | 34 |
| 7.3 | Withdrawals from Accounts for Other Reasons | 35 |
| 7.4 | Partial Withdrawals. | 35 |
| 7.5 | Withdrawal Processing Rules. | 35 |
| 7.6 | Participant Loans. | 37 |
| 7.7 | Minimum Distribution Requirements. | 38 |

ARTICLE VIII FORMS OF BENEFIT AND PAYMENT DATES FOR AN INACTIVE PARTICIPANT ....................................................................................... 43

8.1    Request for Withdrawal of Benefits. ................................................. 43

8.2    Deadline for Withdrawal ................................................................... 43

8.3    Payment Form and Medium .............................................................. 43

8.4    Small Amounts Paid Immediately .................................................... 43

8.5    Direct Rollover ................................................................................. 44

8.6    Delay ................................................................................................ 44

ARTICLE IX DISTRIBUTION OF ACCOUNT BALANCE ON DEATH .............................. 45

9.1    Payment to Beneficiary ..................................................................... 45

9.2    Beneficiary Designation ..................................................................... 45

9.3    Request for Distribution .................................................................... 46

9.4    Payment Form ................................................................................... 46

9.5    Direct Rollover ................................................................................. 46

9.6    Small Amounts Paid Immediately .................................................... 46

ARTICLE X TRUST AGREEMENT ...................................................................... 47

10.1    Trust Agreement ............................................................................... 47

10.2    Separate Entity ................................................................................. 47

10.3    Plan Asset Valuation ......................................................................... 47

10.4    Right of Employers to Plan Assets ................................................... 47

ARTICLE XI ADMINISTRATION ....................................................................... 49

11.1    General. ............................................................................................ 49

11.2    Company Indemnity .......................................................................... 55

11.3    Actions by the Company .................................................................... 55

11.4    Claims Procedure. ............................................................................. 55

11.5    Notices to Participants ...................................................................... 59

11.6    Notices to Claims Administrator ...................................................... 59

11.7    Procedures for Domestic Relations Orders ...................................... 59

11.8    Responsibility to Furnish Information and Sign Documents ............ 60

11.9    Responsibility to Furnish Information and Sign Documents ............ 60

11.10    Notices, Delivery and Receipt. ......................................................... 60

11.11    Records ............................................................................................. 62

v

11.12   Relationship of Trustee to Third Parties ................................................................ 62

ARTICLE XII ADOPTION AND WITHDRAWAL FROM PLAN ............................................ 63

12.1   Procedure for Adoption.......................................................................................... 63
12.2   Procedure for Withdrawal ...................................................................................... 63

ARTICLE XIII AMENDMENT, TERMINATION AND MERGER................................................ 64

13.1   Amendments. ......................................................................................................... 64
13.2   Plan Termination .................................................................................................... 64
13.3   Plan Merger and Spinoff......................................................................................... 64
13.4   Design Decisions .................................................................................................... 65

ARTICLE XIV SPECIAL TOP-HEAVY RULES ......................................................................... 66

14.1   Application of Article XIV ..................................................................................... 66
14.2   Definitions Concerning Top-Heavy Status ............................................................ 66
14.3   Calculation of Top-Heavy Ratio ............................................................................ 67
14.4   Minimum Contribution. ......................................................................................... 67
14.5   Effect of Discontinuance of Top-Heavy Status ..................................................... 68
14.6   Intent of Article XIV .............................................................................................. 68

ARTICLE XV MISCELLANEOUS PROVISIONS ....................................................................... 69

15.1   Assignment and Alienation..................................................................................... 69
15.2   Protected Benefits .................................................................................................. 69
15.3   Plan Does Not Affect Employment Rights ............................................................. 69
15.4   Deduction of Taxes from Amounts Payable ........................................................... 69
15.5   Facility of Payment ................................................................................................ 69
15.6   Source of Benefits................................................................................................... 69
15.7   Reduction for Overpayment.................................................................................... 69
15.8   Company Merger .................................................................................................... 70
15.9   Employees' Trust .................................................................................................... 70
15.10  Construction ........................................................................................................... 70
15.11  Invalidity of Certain Provisions ............................................................................. 70
15.12  Headings ................................................................................................................. 70
15.13  Governing Law ....................................................................................................... 70
15.14  Reliance on Information Provided to Plan............................................................... 70

# ARTICLE I

## DEFINITIONS

The following sections of this Article I provide definitions of capitalized words used throughout the Plan. Except as otherwise expressly provided or when the context clearly indicates otherwise, capitalized terms have the following meanings:

1.1     "Accounts" means the record of a Participant's interest in the Plan's assets represented by his:

(a)     "Employer Account" which is composed of Base Contributions and Excess Contributions allocated to the Participant under the Plan, plus all income and gains credited to, and minus all losses, expenses, withdrawals and distributions charged to, such Account.

(b)     "Pay Based Account" which is composed of the amount allocated under the Plan, as of the Effective Date, plus all income and gains credited to, and minus all losses, expenses, withdrawals and distributions charged to, such Account.

(c)     "Pre-Tax Account" which is composed of Pre-Tax Contributions allocated to the Participant under the Plan, plus all income and gains credited to, and minus all losses, expenses, withdrawals and distributions charged to, such Account.

(d)     "Pre-Tax Catch-up Account" which is composed of Pre-Tax Catch-up Contributions allocated to the Participant under the Plan, plus all income and gains credited to, and minus all losses, expenses, withdrawals and distributions charged to, such Account.

(e)     "Prior Match Account" which is composed of an amount, if any, allocated as matching contributions under (1) the Katten Muchin Zavis Rosenman Profit Sharing Plan, as of July 1, 2003; (2) the Katten Muchin Zavis Rosenman Pre-Tax Savings Plan, as of July 1, 2003; or (3) the Katten Muchin Zavis Rosenman Charlotte Office Profit Sharing Plan, as of January 1, 2004, and transferred to this Plan as of such dates, plus all income and gains credited to, and minus all losses, expenses, withdrawals and distributions charged to, such Account.

(f)     "Prior Profit Sharing Account" which is composed of an amount, if any, allocated as profit sharing contributions under the Katten Muchin Zavis Rosenman Charlotte Office Profit Sharing Plan, as of January 1, 2004, and transferred to this Plan as of such date, plus all income and gains credited to, and minus all losses, expenses, withdrawals and distributions charged to, such Account.

(g)     "Profit Sharing Account" which is composed of Profit Sharing Contributions allocated to the Participant under the Plan, plus all income and gains credited to, and minus all losses, expenses, withdrawals and distributions charged to, such Account.

(h)     "Rollover Account" which is composed of Rollover Contributions allocated to the Participant under the Plan, plus all income and gains credited to, and minus all losses, expenses, withdrawals and distributions charged to, such Account.

1

(i)  "<u>Roth Catch-up Account</u>" which is composed of Roth Catch-up Contributions that are allocated to the Participant under the Plan, plus all income and gains credited to and minus all losses, expenses, withdrawals and distributions charged to, such Account.

(j)  "<u>Roth Contribution Account</u>" which is composed of Roth Elective Deferrals allocated to the Participant under the Plan, plus all income and gains credited to, and minus all losses, expenses, withdrawals and distributions charged to, such Account.

(k)  "<u>Roth Rollover Account</u>" which is composed of Roth Rollover Contributions allocated to the Participant under the Plan, plus all income and gains credited to, and minus all losses, expenses, withdrawals and distributions charged to, such Account.

(l)  "<u>Special Account</u>" which is composed of Special Contributions allocated to the Participant under the Plan, plus all income and gains credited to, and minus all losses, expenses, withdrawals and distributions charged to, such Account.

Any and all amounts allocated to each such Account immediately prior to the Effective Date shall be allocated and posted to such Account as of the Effective Date.

With respect to an Alternate Payee or Beneficiary, references to Accounts shall be deemed to be references to all or that portion of a Participant's Employer Account, Pay Based Account, Pre-Tax Account, Pre-Tax Catch-up Account, Profit Sharing Account, Prior Match Account, Prior Profit Sharing Account, Roth Contribution Account, Roth Catch-up Account, Roth Rollover Account, Special Account, and Rollover Account that, under the terms of the Plan, has been allocated to an Account maintained for such Alternate Payee or Beneficiary, plus all income and gains credited to, and minus all losses, expenses, withdrawals and distributions charged to, such Account. References herein to Accounts also shall be deemed to include each of a Participant's Accounts and references herein to an Account shall be deemed to include any or each of the Participant's Accounts.

1.2  "<u>Account Balance</u>" means the shares, units or other Trust Fund assets allocated and posted to Accounts as of the Valuation Time in accordance with the terms of this Plan, including any applicable Administrative Services Agreement.

1.3  "<u>Active Participant</u>" means a Participant who is also an Employee.

1.4  "<u>Administrative Named Fiduciary</u>" means a Named Fiduciary who: (a) has the authority to control and manage the operation and administration of the Plan or the Trust within the meaning of ERISA Section 402(a)(1); (b) has the discretionary authority or discretionary responsibility to administer the Plan or the Trust within the meaning of ERISA Section 3(21)(A)(iii); or (c) exercises discretionary authority or discretionary control with respect to Plan or Trust management within the meaning of ERISA Section 3(21)(A)(i) (other than "trustee" responsibilities within the meaning of ERISA Section 405(c)(3).

1.5  "<u>Administrative Services Agreement</u>" means an agreement with a service provider to provide administrative services to the Plan.

2

1.6    "Alternate Payee" means an individual who is entitled to all or a portion of a Participant's Account pursuant to a QDRO.

1.7    "Appendix" means a written supplement attached to this Plan which is incorporated herein and made a part hereof.

1.8    "Applicable Administrative Named Fiduciary" means, with respect to any Authority or Discretion that is not within the Authority or Discretion of an Investment Named Fiduciary, the Administrative Named Fiduciary identified by the Company pursuant to a procedure in the Plan or to whom the Committee have allocated such Authority or Discretion, and, if not so identified or allocated, the Committee acting as the Applicable Administrative Named Fiduciary.   References in the Plan to the Committee acting as an Applicable Administrative Named Fiduciary shall be deemed to refer to another Named Fiduciary to whom the relevant Authority or Discretion has been identified or allocated pursuant to the procedures of the Plan or Trust or, if applicable, to refer to a Fiduciary to whom the relevant Authority or Discretion has been delegated pursuant to the procedures in the Plan or Trust.  References in this Plan to the Applicable Administrative Named Fiduciary shall be deemed to be a reference to any person (other than a Fiduciary) to whom ministerial responsibilities involved in the provisions of this Plan have been delegated by the Committee, including delegations under an Administrative Services Agreement.

1.9    "Applicable Investment Named Fiduciary" means, with respect to any Authority or Discretion provided under this Plan or the Trust, the Investment Named Fiduciary identified by the Company pursuant to a procedure in the Plan or Trust or to whom the Committee has allocated such Authority or Discretion, and, if not so identified or allocated, the Committee acting as the Applicable Investment Named Fiduciary.  References in the Plan to the Committee acting as an Applicable Investment Named Fiduciary shall be deemed to refer to another Fiduciary to whom the relevant Authority or Discretion has been identified or allocated pursuant to the procedures of the Plan to Trust or, if applicable, to refer to a Fiduciary to whom the relevant Authority or Discretion has been delegated pursuant to the procedures in the Plan or Trust.  References in this Plan to the Applicable Investment Named Fiduciary shall be deemed to be a reference to any person (other than a Fiduciary) to whom ministerial responsibilities involved in the provisions of this Plan have been delegated by the Committee, including delegations under an Administrative Services Agreement.

1.10   "Authority or Discretion" means, as applicable in the context, (a) the authority, control or discretion with respect to the Plan or Trust that is identified or allocated to a Named Fiduciary or delegated to a Fiduciary under the terms of the Plan or Trust or a procedure in the Plan or Trust, or (b) the exercise of such authority, control or discretion by a Named Fiduciary or a Fiduciary.

1.11   "Authorized Leave of Absence" means an absence, with or without Compensation, authorized on a nondiscriminatory basis by a Commonly Controlled Entity under its standard personnel practices applicable to the Employee, including any period of time during which such person is covered by a short-term disability plan of his Employer.  The date that an Employee's Authorized Leave of Absence ends shall be determined in accordance with the personnel policies of such Commonly Controlled Entity, which ending date shall be no earlier than the date that the

3

Authorized Leave of Absence is scheduled to end, unless the Employee communicates to such Commonly Controlled Entity that he is to have a Termination of Employment as of an earlier date, or such Commonly Controlled Entity causes the Employee to have a Termination of Employment as of an earlier date. Notwithstanding anything to the contrary, if an Employee is absent from employment for military service with the armed forces of the United States and returns to employment within the period required by the Uniformed Services Employment and Reemployment Rights Act of 1994, or any successor statute, (a) he shall receive service credit for the period of his absence from employment, (b) contributions, benefits and service credit with respect to qualified military service shall be provided in accordance with Code Section 414(u), and (c) the Committee may reasonably request that a Participant demonstrate that he has engaged in qualified military service within the meaning of Code Section 414(u).

1.12    "Beneficiary" means (a) an individual entitled to receive any benefits payable under the Plan with respect to the death of a Participant or as a result of a QDRO or (b) a trust, provided that the beneficiary of the trust is treated as having been designated as beneficiary of the Participant under the Plan for purposes of Code Section 401(a)(9).

1.13    "Board of Directors" means the board of directors of the Company as constituted from time to time.

1.14    "Business Day" means any day on which the New York Stock Exchange and the Trustee are open for business.

1.15    "Claims Administrator" means the Committee for purposes of the initial review of any claim relating to a person's eligibility to participate in the Plan. For purposes of the initial review of any claim relating to the amount of a person's benefit under the Plan, the Committee acts as the Claims Administrator unless another Applicable Named Fiduciary has been identified by the Company for this purpose, in which case such other person or entity shall be the Claims Administrator for this purpose and shall have the authority of the Claims Administrator with respect to such claim determination. The Claims Administrator, in his sole discretion, determines whether a claim relates to eligibility to participate in the Plan or relates to the amount of benefit payable under the Plan. For purposes of the appeal of all claims, whether relating to eligibility or amount of benefits, the Committee is the Claims Administrator unless another Applicable Named Fiduciary has been identified by the Company for this purpose, in which case such other person or entity shall be the Claims Administrator for this purpose.

1.16    "Code" means the Internal Revenue Code of 1986, as amended. References to any specific Section shall include any valid regulation promulgated and in effect thereunder, and any statutory provision amending, supplementing or superseding such Section.

1.17    "Committee" means the Qualified Plan Administration and Investment Committee duly appointed by the Company to manage and control the operation and administration of the Plan or, if an Applicable Named Fiduciary has been identified with respect to the authority involved in the provision of this Plan under consideration, reference to the Committee in that context refers to such Applicable Named Fiduciary.

1.18   "Commonly Controlled Entity" means: (a) an Employer and any corporation, trade or business, but only during such period it and the Employer are members of a controlled group of corporations as defined in Code Section 414(b) or under common control as defined in Code Section 414(c); provided, however, that solely for purposes of the limitations of Code Section 415, the standard of control under Code Sections 414(b) and 414(c) shall be deemed to be "more than 50%" rather than "at least 80%;" (b) an Employer and an organization, but only for so long as it and the Employer are members of an affiliated service group as defined in Code Section 414(m); (c) an Employer and an organization, but only for so long as the employees of it and the Employer are required to be aggregated under Code Section 414(o); and (d) any other organization designated as such by the Company.  An entity shall not be considered a Commonly Controlled Entity before it becomes a Commonly Controlled Entity pursuant to the preceding sentence.

1.19   "Company" means Katten Muchin Rosenman LLP, a partnership created by the Partnership Agreement, or any successor partnership, limited liability company, corporation or other business entity by merger, consolidation, purchase, or otherwise, that elects to adopt the Plan.  Whenever any action is to be taken by the Company hereunder, a reference to Company will be deemed to include a reference to any person who may act on behalf of the Company as provided in Section 11.1.

1.20   "Compensation" means for purposes of allocating Contributions and for purposes of applying Code Section 415 to the Plan and its Participants for any limitation year (which shall be the Plan Year), such U.S. source compensation from an Employer, including Earned Income, as determined by the Committee and satisfying the definition of compensation under Code Section 415 (within the meaning of Treasury Regulation § 1.415(c)-2(d)) and for any determination period with respect to an applicable provision of the Code other than Section 415, such compensation as determined by the Committee and which satisfies the requirements of Code Section 414(s); provided however, with respect to a Self-Employed Individual or a shareholder-employee of an Employer (including a Working Counsel), only such Compensation as is reported on a Form W-2 from an Employer to a shareholder-employee or Schedule K-1 from the Company to a Self-Employed Individual will be considered; and provided further, only such Compensation which is attributable to Earned Income for such calendar year will be considered.  For any Plan Year in which a Participant does not have all of his Compensation recognized for purposes of allocating Contributions (other than Participant Contributions), Compensation for such Participant shall be determined by dividing his Compensation for the whole Plan Year by four (4) and multiplying such result by the number of Plan Year quarters for which his Compensation is recognized for purposes of allocating his Contributions.

Notwithstanding the foregoing provisions, Compensation shall include elective amounts excludible from gross income under Code Sections 125, 132(f) and 402(e)(3) (other than for Code Section 415 purposes) and, in addition to other applicable limitations that may be set forth in the Plan, annual Compensation taken into account under the Plan for the purpose of calculating the Contributions to the Plan by or in respect of a Participant for any Plan Year shall not exceed the applicable compensation limit under Code Section 401(a)(17), as adjusted.

1.21   "Contribution" means an amount contributed to the Plan on behalf of a Participant, in one or more of the following types:

5

(a)     "Base" means a contribution allocated with respect to a percentage of Compensation of any Participant not in excess of the Integration Level.

(b)     "Excess" means a contribution allocated with respect to a percentage of Compensation of any Participant in excess of the Integration Level.

(c)     "Pre-Tax" means an amount contributed on a pre-tax basis in conjunction with a Participant's salary deferral agreement under Code Section 401(k).

(d)     "Pre-Tax Catch-up" means an amount contributed on a pre-tax basis in conjunction with a Participant's Contribution Election under Code Section 414(v), which amount exceeds the lowest of the following three amounts for the relevant Plan Year: (1) the Participant's maximum deferral percentage under Section 4.2 multiplied by the Participant's Compensation; (2) the percentage limitation on Pre-Tax Contributions described in Section 3.1(a) multiplied by the Participant's Compensation, or (3) a limit contained in the Code on elective deferrals or annual additions permitted to be made under the Plan (without regard to Code Section 414(v)); provided, however, that the amount of Pre-Tax Catch-up Contributions added to the Account of any Participant for a Plan Year under this Plan or under any similar provision of any other plan maintained by the Employer may not exceed the applicable dollar limit described in Code Section 414(v)(2)(B)(i), as adjusted in accordance with Code Section 414(v)(2)(C).   The determination as to whether the Contributions made on behalf of a Participant exceed one of the limitations described in the preceding sentence shall be determined as of the last day of such Plan Year, and any portion of such Contributions determined to be Pre-Tax Catch-up Contributions shall be allocated to the Participant's Pre-Tax Catch-up Account as of the last day of such Plan Year.   Contributions made on behalf of a Participant pursuant to Section 3.1(b) that do not exceed one of the limits described in the preceding sentence shall be treated as Pre-Tax Contributions.   Pre-Tax Catch-up Contributions shall not be taken into account in applying the limits described in Sections 4.1, 4.2, 4.3 or Article XIV.   The limits described in this paragraph (d) apply to all Pre-Tax Catch-up Contributions made for a particular Plan Year, including those Pre-Tax Catch-up Contributions that the Participant designates as Roth Catch-up Contributions under paragraph (h) below.

(e)     "Profit Sharing" means a discretionary amount contributed by the Employer in an amount of up to six percent (6%) of Compensation.

(f)     "Rollover" means an amount contributed as either:   (1) a rollover contribution as described in Code Section 402(c) (or its predecessor) or (2) a Trustee Transfer, to the extent accepted by the Trustee. The Plan shall not accept loans as Rollover Contributions; provided, however, that the Plan shall accept the loans that are eligible rollover distributions from the Pension Plan.   In no event shall Rollover Contributions include after-tax employee contributions or any amount that is a Roth Rollover Contribution, as described in subsection (i) below.

(g)     "Roth" means an amount contributed as an Elective Deferral that (1) is designated irrevocably by the Participant at the time of the cash or deferred election as a Roth Contribution that is being made in lieu of all or a portion of the Pre-Tax Contribution the Participant otherwise is eligible to make under the Plan; and (2) is treated by the Employer as

6

includible in the Participant's taxable income at the time the Participant would have received an amount in cash if the Participant had not made a cash or deferred election.

(h) "Roth Catch-up" means an amount contributed as a Pre-Tax Catch-up Contribution that (1) is irrevocably designated by the Participant at the time of the cash or deferred election as a Roth Catch-up Contribution that is being made in lieu of all or a portion of the Pre-Tax Catch-up Contribution the Participant otherwise is eligible to make under the Plan; and (2) is treated by the Employer as includible in the Participant's taxable income at the time the Participant would have received an amount in cash if the Participant had not made a cash or deferred election. Roth Catch-up Contributions, when combined with Pre-Tax Catch-up Contributions, cannot exceed the maximum described in paragraph (d) above.

(i) "Roth Rollover" means an amount contributed as a rollover contribution that (1) is a direct rollover from another Roth elective deferral account under an applicable retirement plan described in Code Section 402A(e)(1), or (2) is permitted under the rules of Code Section 402(c).

(j) "Special" means an amount contributed by the Employer to avoid prohibited discrimination under Code Section 401(a)(4).

1.22 "Contribution Dollar Limit" means the annual limit imposed on each Participant pursuant to Code Section 402(g) (as indexed pursuant to Code Sections 402(g)(4) and 415(d), provided that no such adjustment shall be taken into account hereunder before the Plan Year in which it becomes effective), determined without regard to Pre-Tax Catch-up Contributions or Roth Catch-up Contributions.

1.23 "Contribution Election" means the election made by an Eligible Employee to reduce the Compensation to be paid to him by an amount equal to the product of his Contribution Percentage and his Compensation.

1.24 "Contribution Percentage" means the percentage of an Eligible Employee's Compensation that is to be contributed to the Plan by his Employer as a Participant Contribution.

1.25 "Conversion Election" means the election made by a Participant to change the investment of all or some specified portion of such Participant's Account Balance of each Account into one or more Investment Options.

1.26 "Direct Rollover" means a payment by the Plan to an Eligible Retirement Plan specified by a Distributee.

1.27 "Distributee" means: a Participant, a Participant's Beneficiary; or, with regard to the interest of an Alternate Payee, a Participant's Spouse or former Spouse who is the Alternate Payee.

1.28 "Earned Income" means the net earnings from self-employment with the Company for a calendar year in the trade or business with respect to which the Plan is established for which personal services of the individual are a material income-producing factor, but excluding any retirement payments under the Partnership Agreement. Net earnings shall be

7

determined without regard to items not included in gross income and the deductions allocable to such items.  Net earnings are reduced by contributions by the Company to a tax-qualified plan to the extent deductible by the Company under Code Section 404.  Net earnings shall be determined with regard to the deduction allowed to the Employer by Code Section 164(f).

1.29    "Effective Date" of this amended and restated Plan means January 1, 2007.  In general, the provisions of this document only apply to Participants who are Employees on or after the Effective Date.  However, investment and distribution provisions apply to all Participants with Account balances to be invested or distributed on or after the Effective Date. The original effective date of this Plan is January 1, 1987.

1.30    "Elective Deferral" means Pre-Tax Contributions and Roth Contributions, which are those Contributions subject to the Contribution Dollar Limit.

1.31    "Eligible Employee" means any Employee (including an Employee on an Authorized Leave of Absence) of an Employer, on and after the effective date of the adoption of this Plan by the Employer, excluding:

(a)    Any Employee who is a member of a group of employees represented by a collective bargaining representative, unless a currently effective collective bargaining agreement between his Employer and the collective bargaining representative of the group of Employees of which he is a member provides for coverage by the Plan;

(b)    An individual who is considered an Employee solely because of the application of Code Section 414(n);

(c)    Employees who are nonresident aliens;

(d)    Each Self-Employed Individual who is not a Partner or as of the date he is no longer a Partner in the Company (as such term is defined by the Company); provided, however, that a Self-Employed Individual who is classified as a Working Counsel may be an Eligible Employee, but only for so long as the Self-Employed Individual is a Working Counsel;

(e)    Each Employee of a Commonly Controlled Entity (1) that is not an Employer (as listed on Appendix 12.1); or (2) if listed on Appendix 12.1, as of the date the Commonly Controlled Entity is no longer a Partner; provided, however, if a Commonly Controlled Entity ceases to be a Partner but is classified as Working Counsel, the Commonly Controlled Entity's shareholder-employee may be an Eligible Employee, but only for so long as the Commonly Controlled Entity is a Working Counsel;

(f)    Each Employee of an Employer that is a Commonly Controlled Entity other than a shareholder-employee; and

(g)    Each associate in training, summer associate, law clerk, contract Employee for a specific purpose and period of time, or any Of Counsel to the Company who is not a Working Counsel, including a shareholder-employee of an Employer who is not a Working Counsel.

1.32    "Eligible Retirement Plan" means an individual retirement account described in Code Section 408(a), an individual retirement annuity described in Code Section 408(b), an annuity plan described in Code Section 403(a), an eligible deferred compensation plan described in Code Section 457(b) that is maintained by an eligible employer described in Code Section 457(e)(1)(A) (but only if such employer agrees to separately account for amounts transferred into such plan from the Plan), an annuity contract described in Code Section 403(b), or a qualified trust described in Code Section 401(a) that accepts a rollover distribution.  This definition of "Eligible Retirement Plan" also shall apply in the case of a distribution to a Beneficiary or to a former Spouse who is the Alternate Payee.

1.33    "Eligible Rollover Distribution" means any distribution of all or any portion of the balance to the credit of a Distributee, except that an Eligible Rollover Distribution does not include any distribution that is one of a series of substantially equal periodic payments (not less frequently than annually) made for the life (or life expectancy) of the Distributee or the joint lives (or joint life expectancies) of the Distributee and the Distributee's designated Beneficiary, or for a specified period of ten (10) years or more; any distribution to the extent such distribution is required under Code Section 401(a)(9); or any hardship withdrawal described in Section 7.2. For purposes of a distribution from a Roth Contribution Account, Roth Catch-up Account, and a Roth Rollover Account, an Eligible Rollover Distribution only includes such amounts that (a) shall be made to another Roth elective deferral account under an applicable retirement plan described in Code Section 402A(e)(1) or to a Roth IRA described in Code Section 408A and (b) are permitted under the rules of Code Section 402(c).

1.34    "Employee" means any person who is a Self-Employed Individual, or who is reported on the payroll records of the Employer as a common law employee (including a shareholder-employee of such Employer), including the period during which either is on an Authorized Leave of Absence.  Any individual considered an Employee of a Commonly Controlled Entity under Code Section 414(n) shall be deemed employed by the Commonly Controlled Entity for which the individual performed services.  An individual who is not reported as a common law employee on the applicable payroll records, and who is an independent contractor, shall be excluded from this definition during such period of classification.  An individual shall not be retroactively deemed an "Employee" for purposes of participation in the Plan even if a court or other administrative agency determines that such individual is a common law employee and not an independent contractor for all or any portion of the period during which such individual was excluded from participation in the Plan.

1.35    "Employer" means the Company and any Commonly Controlled Entity that adopts the Plan; provided, that an entity shall cease to be an Employer when it ceases to be a Commonly Controlled Entity or it withdraws from the Plan.

1.36    "Employment Date" means the day an Employee first performs an Hour of Service.

1.37    "ERISA" means the Employee Retirement Income Security Act of 1974, as amended.  Reference to any specific Section of ERISA includes any valid regulation promulgated and in effect thereunder, and any statutory provision amending, supplementing or superseding such Section.

1.38    "Fair Market Value" means:

(a)    with respect to a security for which there is a generally recognized market, the price of the security prevailing on a national securities exchange that is registered under Section 6 of the Securities Exchange Act of 1934;

(b)    unless determined otherwise by the Applicable Investment Named Fiduciary, with respect to any guaranteed income contract, the value reported by the issuing company or bank; and

(c)    for any other asset, the fair market value of the asset, as determined in good faith by the Trustee or the Applicable Investment Named Fiduciary in accordance with regulations promulgated under ERISA Section 3(18).

1.39    "Fiduciary" means: (a) any individual or entity that the Company identifies to be a Named Fiduciary with respect to such individual's or entity's Authority or Discretion with respect to the Plan; (b) any individual or entity that a Named Fiduciary, acting on behalf of the Plan, designates to be a fiduciary; and (c) any other individual or entity who performs a fiduciary function under the Plan as defined in ERISA Section 3(21).

1.40    "HCE" means an Eligible Employee who is a "highly compensated employee" within the meaning of Code Section 414(q) (determined as if the election described in Code Section 414(q)(1)(B)(ii) has not been made), the provisions of which are incorporated herein by reference.

1.41    "Hour of Service" means each hour for which an Employee is entitled to:

(a)    payment for the performance of duties for any Commonly Controlled Entity;

(b)    payment from any Commonly Controlled Entity for any period during which no duties are performed (irrespective of whether the employment relationship has terminated) due to vacation, holiday, sickness, incapacity (including disability), layoff, leave of absence, jury duty or military service;

(c)    back pay, irrespective of mitigation of damages, by award or agreement with any Commonly Controlled Entity (and these hours shall be credited to the period to which the agreement pertains); or

(d)    no payment, but is on an Authorized Leave of Absence (and these hours shall be based upon his normally scheduled hours per week or a forty (40) hour week if there is no regular schedule).

The crediting of hours shall be made in accordance with U.S. Department of Labor Regulation §§ 2530.200b-2 and 3. An equivalent number of hours shall be credited for each payroll period in which the Employee would be credited with at least one (1) hour. The payroll period equivalency is 190 hours monthly.

1.42    "Inactive Participant" means a Participant who is not an Active Participant.

1.43    "Integrated Employee" means an Eligible Employee, who is classified by the Company in one of the following:

      (a)    a Self-Employed Individual who is a Partner; or

      (b)    a shareholder-employee of an Employer who is a Partner.

In addition, an Eligible Employee employed by the Company in the capacity of a Paralegal or Secretary shall be an Integrated Employee.

1.44    "Integration Level" means the taxable wage base (within the meaning of Treasury Regulation § 1.401(l)-1(c)(34)) in effect as of the beginning of the Plan Year and, for a short Plan Year, such amount multiplied by a fraction, the numerator of which is the number of months in the short Plan Year and the denominator of which is twelve (12).

1.45    "Investment Election" means the election made by a Participant that directs the investment of his Contributions, or amounts otherwise to be allocated to such Participant's Account into one or more Investment Option.

1.46    "Investment Named Fiduciary" means a Named Fiduciary with respect to (a) the authority to control and manage the operation and administration of the Trust within the meaning of ERISA Section 402(a)(1); (b) trustee responsibilities within the meaning of ERISA Section 405(c)(3) that have been specifically made subject to the direction or authority or discretion of an Applicable Investment Named Fiduciary; (c) the exercise of discretionary authority or discretionary control respecting management of the Plan or the Trust or the exercise of any authority or control respecting management or disposition of any assets of the Trust, within the meaning of ERISA Section 3(21)(A)(i); (d) the discretion to designate an Investment Manager, as described in ERISA Section 402(c)(3); or (e) the discretion to name or appoint a trustee under the Trust.

1.47    "Investment Option" means each of the investment vehicles available under the Plan as determined by the Committee, in its discretion.

1.48    "Limited Participant" means an Integrated Employee who, for the Plan Year under consideration is not a Maximum Saver and:

      (a)    is an Employee of an Employer that is a Partner who is a "Non-Capital Partner" of the Company (as such term is defined by the Partnership Agreement) as of December 31 of such Plan Year; or

      (b)    is a Self-Employed Individual who is a Partner who is a "Non-Capital Partner" of the Company (as such term is defined by the Company) as of December 31 of such Plan Year.

1.49    "Maximum Saver" means those persons listed in Appendix 1.49.

1.50    "Named Fiduciary" means a named fiduciary within the meaning of ERISA, including without limitation, ERISA Section 402, 403 or 405.

1.51    "National Managing Partner" means the person or persons determined under the Partnership Agreement.

1.52    "NHCE" means an Employee who is not an HCE.

1.53    "Normal Retirement Age" means age fifty-five (55).

1.54    "Of Counsel" means any Self-Employed Individual or Employer who is not a Partner, but who is a practicing attorney who is recognized as an of counsel, special counsel or counsel by the Company.

1.55    "Paralegal" means an individual who is not an attorney licensed to practice law in any state and whose primary duties are to provide paraprofessional services to the Company's or any Commonly Controlled Entity's clients for a fee and/or to assist attorneys in the delivery of legal services to the Company's or any Commonly Controlled Entity's clients for a fee (e.g., legal assistants and project assistants).

1.56    "Participant" means an Eligible Employee who begins to participate in the Plan after completing the eligibility requirements.  A Participant's participation continues until his Termination of Employment and withdrawal or forfeiture of his entire Account Balance.

1.57    "Participant Contribution" means amounts, if any, contributed by an Employer on behalf of a Participant as a Pre-Tax Contribution, Pre-Tax Catch-up Contribution, Roth Contribution, and/or Roth Catch-up Contribution.

1.58    "Partner" means a Self-Employed Individual or a professional corporation which is recognized as being a "Partner" (as such term is defined in the Partnership Agreement).

1.59    "Partnership Agreement" means the Katten Muchin Rosenman LLP First Amended and Restated Agreement of General Partnership, as further amended, dated January 24, 1992, among the parties listed on Schedule 1.27 thereto, and as amended from time to time.

1.60    "Payment Date" means the date on or after the Settlement Date on which an individual's Account Balance is withdrawn (or commences to be withdrawn), which date shall be at least the minimum number of days required by law, if any, after the date the individual has received such notice as is required by law, if any, before a withdrawal can be made (or commenced to be made) as determined by the Applicable Administrative Named Fiduciary.

1.61    "Pension Plan" means the Katten Muchin Rosenman LLP Money Purchase Pension Plan as in effect on December 31, 2007.

1.62    "Plan" means the Katten Muchin Rosenman LLP Defined Contribution Plan, as set forth herein and as amended from time to time.

1.63    "Plan Year" means each calendar year.

1.64    "Profit Sharing Employee" means an Eligible Employee who is classified by the Company as one of the following:

(a)    a Self- Employed Individual who is a Partner who is a "Capital Partner" of the Company (as such term is defined by the Company);

(b)    an Employee of an Employer that is a Partner who is a "Capital Partner" of the Company (as such term is defined by the Company); or

(c)    a Maximum Saver; provided however, a Self-Employed Individual, or a shareholder-employee of an Employer, who has changed position to Of Counsel will cease to be a Maximum Saver.

In addition, an Eligible Employee employed by the Company in a capacity other than a practicing attorney (such as an associate, an Of Counsel, or a Non-Capital Partner), Paralegal or Secretary shall be a Profit Sharing Employee.

1.65    "QDRO" means a domestic relations order that the Applicable Administrative Named Fiduciary has determined to be a qualified domestic relations order within the meaning of Code Section 414(p).

1.66    "Related Plan" means:

(a)    with respect to Code Section 401(k), any plan or plans maintained by a Commonly Controlled Entity which is treated with this Plan as a single plan for purposes of Code Sections 401(a)(4) or 410(b); and

(b)    with respect to Code Section 415, any other defined contribution plan (as defined in Code Section 415(k)) maintained by a Commonly Controlled Entity, called a "Related Defined Contribution Plan."

1.67    "Required Beginning Date" means April 1 following the later of (a) the calendar year in which the Participant attains age 70½ or (b) the calendar year in which the Participant incurs a Termination of Employment with the Commonly Controlled Entity, provided that commencement of distributions while an Active Participant shall be required as provided in (a) with respect to a Participant who is a five percent (5%) owner of an Employer (as defined in Code Section 416(i)).

1.68    "Secretary" means an individual whose primary duties are secretarial and/or word processing, document production (*e.g.,* legal secretaries, other secretaries, word processors), or who provides clerical or billing/collection assistance to attorneys or groups of attorneys, but excluding any such individual who is classified as an exempt employee for purposes of the Fair Labor Standards Act.

1.69    "Self-Employed Individual" means an individual (including Of Counsel and excluding a corporate Commonly Controlled Entity) who has Earned Income for the calendar year, or a person who would have had Earned Income but for the fact that the trade or business had no net profit for the calendar year.

13

1.70    "Settlement Date" means the date on which a financial transaction from a corresponding Trade Date is settled, in cash or in kind.

1.71    "Spousal Consent" means the written consent given by a Spouse to a Participant's election (or waiver) of a specified form of benefit or Beneficiary designation.  The Spouse's consent must acknowledge the effect on the Spouse of the Participant's election, waiver or designation and be duly witnessed by a Plan representative or notary public.  Spousal Consent shall be valid only with respect to the Spouse who signs the Spousal Consent and only for the particular choice made by the Participant that requires Spousal Consent.  A Participant may revoke (without Spousal Consent) a prior election, waiver or designation that required Spousal Consent at any time before the Sweep Time associated with the Settlement Date upon which payments shall begin.  Spousal Consent shall not be necessary to the extent that there is a determination by the Applicable Administrative Named Fiduciary that there is no Spouse, the Spouse cannot be located or such other circumstances as may be established by applicable law.

1.72    "Spouse" means a person who, as of the relevant time, is alive and married to the Participant within the meaning of the laws of the State of the Participant's residence as evidenced by a valid marriage certificate or other proof acceptable to the Applicable Administrative Named Fiduciary.

1.73    "Sweep Time" means the cutoff time established by the Applicable Administrative Named Fiduciary to receive notification with respect to a financial transaction in order to process such transaction with respect to a Trade Date designated by the Applicable Administrative Named Fiduciary.

1.74    "Termination of Employment" occurs when a person ceases to be an Employee, as determined by the personnel policies of the Commonly Controlled Entity to whom he rendered services.  Transfer of employment from one Commonly Controlled Entity to another Commonly Controlled Entity shall not constitute a Termination of Employment for purposes of the Plan.

1.75    "Trade Date" means the Business Day as of which a financial transaction is effected.

1.76    "Trust" means the legal entity resulting from the Trust Agreement, in which some or all of the assets of this Plan shall be received, held, invested and distributed to or for the benefit of Participants and Beneficiaries.

1.77    "Trust Agreement" means the agreement between the Company and the Trustee establishing the Trust, and any amendments thereto, as well as a group trust agreement incorporated by reference and made part of such agreement.

1.78    "Trust Fund" means any property, real or personal, received by and held by the Trustee in the Trust, plus all income and gains and minus all losses, expenses, withdrawals and distributions chargeable thereto.

1.79    "Trustee" means any corporation, individual or individuals designated in the Trust Agreement accepting the appointment as Trustee to execute the duties of the Trustee as set forth in the Trust Agreement.

1.80    "Trustee Transfer" means (a) a transfer to the Trustee of an amount by the custodian of a retirement plan qualified for tax-favored treatment under Code Section 401(a) or by the trustee(s) of a trust forming part of such a plan, which plan provides for such transfer; or (b) a Direct Rollover within the meaning of Code Section 402(c); provided that with respect to any withdrawal or distribution from the Plan, a Participant may elect a transfer to only one eligible retirement plan, except as may otherwise be determined by the Applicable Administrative Named Fiduciary, in a uniform and nondiscriminatory manner.

1.81    "Unit Value" means the value of a unit in an applicable Investment Option, as determined in good faith by the Trustee, or, in the case of any mutual fund shares, by the issuer of such mutual fund shares.

1.82    "Valuation Time" means 3:00 p.m. (Central Time) or, if earlier, the close of business on the New York Stock Exchange, or at such time otherwise determined by the Applicable Administrative Named Fiduciary.

1.83    "Working Counsel" means an Of Counsel who has Compensation as a Working Counsel and (a) with respect to a Self-Employed Individual, an individual who is expected to render stated hours of billable or non-billable time deemed to be directly or indirectly for the benefit of the Company, as determined in the sole discretion of the Company with respect to each calendar year, or (b) with respect to an Employer, such Employer, but only if the shareholder-employee of such Employer is an individual who is expected to render a stated hours of billable or non-billable time deemed to be directly or indirectly for the benefit of the Company, as determined in the sole discretion of the Company, with respect to each calendar year.

1.84    "Year of Service" means a Plan Year in which an Employee is credited with at least 1,000 Hours of Service, subject to the following:

(a)    For purposes of eligibility, Years of Service shall be computed beginning with the twelve (12) consecutive month period commencing with an Employee's Employment Date.  If the Employee does not complete a Year of Service during his first consecutive twelve (12) month period of employment, Years of Service for eligibility purposes shall be measured on a Plan Year basis, beginning with the Plan Year that includes the first anniversary of the Employee's Employment Date.

(b)    If such Years of Service were credited prior to the date the Employee's Employer became a Commonly Controlled Entity, they are excluded unless (1) the Applicable Administrative Named Fiduciary directs that credit for such service be granted or (2) a qualified plan of the acquired entity is subsequently maintained by any Employer or Commonly Controlled Entity.

## ARTICLE II

## PARTICIPATION AND SERVICE

2.1     Participation.  Each person who has an Account Balance on the Effective Date shall continue to be a Participant on the Effective Date.  Each other Eligible Employee shall become a Participant in the Plan, as follows:

(a)     Eligible Employee.  Each Eligible Employee shall become a Participant with respect to making Participant Contributions on the date his Contribution Election is effective.

(b)     Integrated Employee.    Each Integrated Employee shall become a Participant with respect to receiving Base and Excess Contributions for Compensation recognized under the Plan on and after the first January 1, April 1, July 1 or October 1 on or after the date he completes at least one Year of Service.

(c)     Profit Sharing Employee.  Effective on and after January 1, 2008, each Profit Sharing Employee shall become a Participant with respect to receiving Profit Sharing Contributions for Compensation recognized under the Plan on and after the first January 1, April 1, July 1 or October 1 on or after the date he completes at least one Year of Service.

2.2     Participation Upon Change of Job Status.  An Employee who is not an Eligible Employee but later becomes an Eligible Employee shall become a Participant for each purpose under Section 2.1 on the later of (a) the date he would have become a Participant had he always been an Eligible Employee or (b) the date he becomes an Eligible Employee.

2.3     Reemployment.

(a)     Prior Participant.  A reemployed Eligible Employee who was an Integrated Employee and/or Profit Sharing Employee and who was a Participant with respect to receiving a Contribution (other than a Participant Contribution) prior to his Termination of Employment shall be a Participant with respect to receiving such Contribution with respect to Compensation recognized on or after the date he first earns an Hour of Service without having to complete a Year of Service, provided that he is an Integrated Employee or Profit Sharing Employee on the first day he performs an Hour of Service on or after his date of rehire.

(b)     Not a Prior Participant.  A reemployed former Employee who, prior to his Termination Date was not a Participant with respect to receiving a Contribution (other than a Participant Contribution), shall (1) be a Participant for receiving a Contribution (other than a Participant Contribution) on the date he meets such requirements taking into account Hours of Service prior to his Termination of Employment and  (2) become a Participant with respect to making Participant Contributions on the date he next performs an Hour of Service.

16

## ARTICLE III

## CONTRIBUTIONS

3.1     Participant Contribution Elections.

     (a)     Pre-Tax Contributions.

          (1)     Participants Who Elect to Defer.  An Eligible Employee who desires to have Pre-Tax Contributions made on his behalf must file a Contribution Election pursuant to procedures specified by the Applicable Administrative Named Fiduciary.  The Eligible Employee must specify his Contribution Percentage, which must be between one-half of one percent (0.50%) and fifty percent (50%) (100% with respect to bonuses), stated in increments of one-half of one percent (0.50%).  By submitting such Contribution Election, the Eligible Employee authorizes his Employer to reduce the Compensation otherwise payable to him by the amount of his Pre-Tax Contribution.  In no event shall the Eligible Employee's Elective Deferrals for a Plan Year exceed the limits set forth in Article IV.

          (2)     Participants Who Elect Not to Defer.  An Eligible Employee may affirmatively elect not to have Pre-Tax Contributions to the Plan by specifying a Contribution Percentage of zero percent (0%) on his Contribution Election.

          (3)     Participants Who are Automatically Enrolled.  Effective on the date, if any, specified by the Committee, any Employee who becomes an Eligible Employee on or after such specified date who, by the first day of the second month following the month in which the employee first becomes an Eligible Employee, fails to complete and submit a Contribution Election, as described in Section 3.1(a)(1) or (2), shall be deemed to have elected to make Pre-Tax Contributions to the Plan in an amount equal to three percent (3%) of his Compensation (zero percent (0%) with respect to bonuses).  Any Eligible Employee who is deemed to have enrolled in the Plan under this paragraph (3) shall have the right to file an application, in the manner prescribed by the Applicable Administrative Named Fiduciary, specifying a different rate of Pre-Tax Contributions from that described above, or an election specifying the Employee's desire to have no Pre-Tax Contributions made on his or her behalf. In no event shall the Eligible Employee's Elective Deferrals for a Plan Year exceed the limits set forth in Article IV.

     (b)     Pre-Tax Catch-up Contributions.  In addition to the Contribution Election provided for in Section 3.1(a), an Eligible Employee who is projected to attain age fifty (50) before the end of the relevant Plan Year and who desires to have Pre-Tax Catch-up Contributions made on his behalf must file a separate Contribution Election pursuant to procedures specified by the Applicable Administrative Named Fiduciary.  The Eligible Employee must specify his Contribution Percentage, which must be between one-half of one percent (0.50%) and fifty percent (50%) (100% with respect to bonuses), stated in increments of one-half of one percent (0.50%).  By submitting such Contribution Election, the Eligible Employee authorizes his Employer to reduce the Compensation otherwise payable to him by the amount of his Pre-Tax Catch-up Contribution. Notwithstanding the foregoing, an amount elected to be contributed as a Pre-Tax Catch-up Contribution that does not meet the definition of "Pre-Tax Catch-up

Contribution" set forth in Section 1.21(d) because it does not exceed the limit referred to in Section 1.21(d) shall be treated as a Pre-Tax Contribution for all purposes of the Plan.

(c) _Roth Contributions and Roth Catch-up Contributions_. An Eligible Employee who desires to have Roth Contributions and/or Roth Catch-up Contributions made on his behalf in lieu of all or a part of the Pre-Tax Contributions and/or Pre-Tax Catch-up Contributions permitted in (a) and (b) above must file a Contribution Election (pursuant to procedures specified by the Applicable Administrative Named Fiduciary) specifying his designation of such contributions as Roth Contributions or Roth Catch-up Contributions. By submitting such Contribution Election, the Eligible Employee authorizes his Employer to reduce the Compensation otherwise payable to him by the amount of his Roth and/or Roth Catch-up Contribution. In no event shall the Eligible Employee's Elective Deferrals for a Plan Year exceed the limits set forth in Article IV.

(d) _Modification of Maximum Contribution Percentage_. Notwithstanding subsections (a), (b), and (c) hereof, for any HCE during any Plan Year, the Applicable Administrative Named Fiduciary may determine that the maximum Contribution Percentage shall be lesser than the percentages set forth in subsections (a) and (b) above. Otherwise, the maximum Contribution Percentage as provided in subsections (a) and (b) above shall apply.

(e) _Effective Date of Contribution Election_. A Participant's Contribution Election is effective only with respect to Compensation not yet currently available to such Participant as of the date the Contribution Election is effective. A Contribution Election shall become effective as soon as administratively feasible and shall apply to payroll cycles ending after the date the Applicable Administrative Named Fiduciary receives the Contribution Election. Any Contribution Election that has not been properly completed shall be deemed not to have been received and void. For purposes of this Section, the special rules for self-employed individuals under Treasury Regulation § 1.401(k)-1(a)(6) are incorporated by reference.

(f) _Modification of Contribution Election_. A Participant's Contribution Election shall continue in effect (with automatic adjustment for any change in his Compensation) until the earlier of the date (1) his Contribution Election is changed or otherwise suspended under the terms of this Plan or applicable law; or (2) he ceases to be paid as an Eligible Employee. A Participant may increase or decrease (including a decrease to zero percent (0%)) his Contribution Percentage on any Business Day by making a new Contribution Election pursuant to procedures specified by the Applicable Administrative Named Fiduciary. Any such change shall be effective as soon as administratively feasible after the Applicable Administrative Named Fiduciary receives the new Contribution Election. The amount of increase or decrease of such Contribution Percentage shall be effective only with respect to Compensation not yet currently available. Any Contribution Election that is determined by the Applicable Administrative Named Fiduciary as not having been properly completed shall be deemed not to have been received and shall be void.

(g) _Allocation of Participant Contributions_.

(1) _Frequency and Eligibility_. Subject to the limits of the Plan and to the Applicable Administrative Named Fiduciary's authority to limit Contributions under the

18

terms of this Plan, for each period for which a Contribution Election is in effect, the Employer shall contribute to the Plan on behalf of each Participant an amount equal to the amount designated by the Participant as a Participant Contribution on his Contribution Election.

(2) Allocation Method. Any Pre-Tax Contribution shall be allocated to the Pre-Tax Account of the Participant with respect to whom the amount is paid. Any Pre-Tax Catch-up Contribution shall be allocated to the Pre-Tax Catch-up Account of the Participant with respect to whom the amount is paid. Any Roth Contribution shall be allocated to the Roth Contribution Account of the Participant with respect to whom the amount is paid. Any Roth Catch-up Contribution shall be allocated to the Roth Catch-up Account of the Participant with respect to whom the amount is paid.

(3) Timing, Medium and Posting. Participant Contributions shall be paid to the Trust in cash and posted to each Participant's Account, in accordance with Section 3.1(g)(2) as soon as such amounts can reasonably be balanced against the specific amount made on behalf of each Participant. In no event shall Participant Contributions be paid to the Trust later than the fifteenth (15th) day of the month following the month in which the amounts are deducted from the Participant's Compensation.

3.2     Special Contributions.

(a) Frequency and Eligibility. Subject to the limits of the Plan and to the Applicable Administrative Named Fiduciary's authority to limit Contributions under the terms of this Plan, for each Plan Year the Employer may make a Special Contribution in an amount determined by the Company on behalf of each NHCE who was an Eligible Employee on the last day of the Plan Year.

(b) Allocation Method. The Special Contribution shall be allocated among eligible Participants as determined by the Applicable Administrative Named Fiduciary, subject to a maximum dollar amount, as determined by the Applicable Administrative Named Fiduciary, that may be contributed on behalf of any Participant.

(c) Timing, Medium and Posting. The Employer shall make any Special Contribution in cash as soon as is feasible, but no later than twelve (12) months after the end of the Plan Year to which it is allocated. The Applicable Administrative Named Fiduciary shall post such amount to each eligible Participant's Special Account once the total Special Contribution received by the Trustee has been balanced against the specific amount to be credited to each eligible Participant's Special Account.

3.3     Base and Excess Contributions.

(a) Frequency and Eligibility. Subject to the limits of the Plan and to the Applicable Administrative Named Fiduciary's authority to limit Contributions under the terms of this Plan, for each Plan Year, the Employer may make an aggregate Base Contribution and Excess Contribution in an amount determined by the Company on behalf of each Participant who is an Integrated Employee on the last day of each Plan Year. In addition, such Contribution shall be made for a Plan Year, on behalf of each Participant who is an Integrated Employee, but who ceased being an Integrated Employee during the Plan Year only if such Participant (1) had

19

attained his Normal Retirement Age prior to ceasing to be an Integrated Employee or (2) ceased to be an Integrated Employee by reason of his death.

(b)    Allocation Method.   The Base Contribution for each period shall be allocated among eligible Participants in direct proportion to their Compensation, not to exceed six percent (6%) (four percent (4%) for each Limited Participant for the 2007 Plan Year); provided that no Base Contributions shall be made based upon a Participant's Compensation in excess of the Integration Level. The Excess Contribution for each period shall be a percentage of the Participant's Compensation in excess of the Integration Level equal to the percentage determined for such Participant by adding (1) the percentage determined by dividing the Base Contribution by the Participant's Compensation not in excess of the Integration Level plus (2) the maximum excess allowance permitted by Code Section 401(l) (but not to exceed four percent (4%) for each Limited Participant). If any Base Contribution or Excess Contribution remains unallocated, it shall be allocated among eligible Participants in direct proportion to their Compensation.

(c)    Timing, Medium and Posting.   Each Employer shall make the Base and Excess Contribution with respect to the relevant Plan Year in cash as soon as is feasible, and not later than the due date of the Employer's federal tax filing date, including extensions, for deducting such Contribution. The Applicable Administrative Named Fiduciary shall post such amount to each Participant's Employer Account once the total Base and Excess Contribution received by the Trustee has been balanced against the specific amount to be credited to each Participant's Employer Account.

(d)    Compensation.   Compensation shall be measured by the period (not to exceed the Plan Year) for which the Contribution is being made, provided the Integrated Employee is a Participant during such period; provided, however, if such person becomes a Participant on the date he becomes an Integrated Employee because of a change in job status, Compensation shall include any Compensation earned prior to such change and in the same Plan Year.

3.4    Profit Sharing Contributions.

(a)    Frequency and Eligibility.   Subject to the limits of the Plan and to the Applicable Administrative Named Fiduciary's authority to limit Contributions under the terms of this Plan, for each Plan Year beginning on or after January 1, 2008, the Employer may make an aggregate Profit Sharing Contribution in an amount determined by the Company on behalf of each Participant who is a Profit Sharing Employee on the last day of each Plan Year. In addition, such Contribution shall be made for a Plan Year, on behalf of each Participant who ceased being a Profit Sharing Employee during the Plan Year only if such Participant (1) had attained his Normal Retirement Age prior to ceasing to be a Profit Sharing Employee or (2) ceased to be a Profit Sharing Employee by reason of his death.

(b)    Allocation Method.   Profit Sharing Contributions for each period shall be allocated in an amount equal to the lesser of (1) six percent (6%) of each eligible Participant's Compensation or (2) an amount that shall result in the Participant's annual addition not

exceeding the maximum amount permitted under Code Section 415, the provisions of which are incorporated by reference.

(c)     Timing, Medium and Posting.   Each Employer shall make the Profit Sharing Contribution with respect to the relevant Plan Year in cash as soon as is feasible, and not later than the due date of the Employer's federal tax filing date, including extensions, for deducting such Contribution.   The Applicable Administrative Named Fiduciary shall post such amount to each Participant's Employer Account once the total Profit Sharing Contribution received by the Trustee has been balanced against the specific amount to be credited to each Participant's Employer Account.

(d)     Compensation.   Compensation shall be measured by the period (not to exceed the Plan Year) for which the Contribution is being made, provided the Profit Sharing Employee is a Participant during such period; provided, however, if such person becomes a Participant on the date he becomes a Profit Sharing Employee because of a change in job status, Compensation shall include any Compensation earned prior to such change and in the same Plan Year.

3.5     Vesting.   Participants shall be one hundred percent (100%) vested in their Account Balance at all times.

3.6     Miscellaneous.

(a)     Deduction Limits.   In no event shall the Employer Contributions for a Plan Year exceed the maximum the Company estimates will be deductible (or that would be deductible if the Employers had taxable income) by any Employer or Commonly Controlled Entity under Code Section 404 ("Deductible Amount").   Any amount in excess of the Deductible Amount shall not be contributed in the following order of Contribution type, to the extent needed to eliminate the excess:

(1)     Each Participant's allocable share of Profit Sharing Contributions for the Plan Year shall be reduced by an amount equal to the excess of the Participant's Profit Sharing Contributions over an amount that bears the same ratio to the amount of Profit Sharing Contributions made to the Plan on behalf of such Participant during the Plan Year bears to the aggregate Profit Sharing Contributions made to the Plan on behalf of all Participants subject to such Deductible Amount during the Plan Year (before the application of this provision).

(2)     Base and Excess Contributions, shall be reduced in the same manner as Profit Sharing Contributions, which is described in (1) immediately above.

(b)     Profit Sharing Plan.   Notwithstanding anything herein to the contrary, the Plan shall constitute a profit sharing plan for all purposes of the Code and any provision herein that is contrary to the Code shall be inapplicable and the Code shall govern.

3.7     Rollover Contributions.

(a)     Any Eligible Employee may elect to make a Rollover Contribution, a Roth Rollover Contribution, or both by delivering, or causing to be delivered, to the Plan the assets in cash that constitute such Rollover Contribution or Roth Rollover Contribution, provided that any such Rollover Contribution or Roth Rollover Contribution meets such conditions as the Applicable Administrative Named Fiduciary may establish.  Upon receipt by the Trustee, such assets shall be invested in the Investment Options in accordance with the Participant's Investment Election with respect to such Rollover Contributions and Roth Rollover Contributions.  The Trustee shall allocate and post to the Rollover Account of such Participant the amount of such Rollover Contribution.  The Trustee shall allocate and post to the Roth Rollover Account of such Participant the amount of any Roth Rollover Contribution.  No Rollover Contribution or Roth Rollover Contribution by an Eligible Employee pursuant to this Section 3.7 shall be deemed to be a contribution of such Eligible Employee for purposes of Article IV.

(b)     If it is later determined that an amount transferred pursuant to subsection (a) above did not in fact qualify as a Rollover Contribution or Roth Rollover Contribution, as applicable, the balance allocated to the Employee's Rollover Account or Roth Rollover Account shall immediately be: (1) segregated from all other Plan assets; (2) treated as a non-qualified trust established by and for the benefit of the Employee; and (3) distributed to the Employee, as adjusted for earnings and losses.  Any such nonqualifying rollover shall be deemed never to have been a part of the Plan.

(c)     A Participant who is entitled to receive a lump sum distribution from a tax-qualified plan described in Code Section 401(a) maintained by an Employer as the result of Termination of Employment from a Commonly Controlled Entity may elect to have such lump sum distribution deposited into his Rollover Account or Roth Rollover Account under the Plan; provided that such Participant is an Eligible Employee at the time of such rollover.  Such Rollover Contribution or Roth Rollover Contribution must be made in accordance with procedures that may be specified by the Applicable Administrative Named Fiduciary.

## ARTICLE IV

## LIMITS ON CONTRIBUTIONS

4.1     Limit on Elective Deferrals.  The aggregate Elective Deferrals made on behalf of each Participant under the Plan for any Plan Year shall not exceed:

(a)     the Contribution Dollar Limit, reduced by:

(b)     the sum of any of the following amounts that were contributed on behalf of the Participant for the Plan Year:

(1)     any employer contribution under a tax-qualified cash or deferred arrangement (as defined in Code Section 401(k)) other than this Plan to the extent not includable in the Participant's gross income for the taxable year under Code Section 402(e)(3) (determined without regard to Code Section 402(g));

(2)     any employer contribution to a plan other than this Plan to the extent not includable in the Participant's gross income for the taxable year under Code Section 402(h)(1)(B) (determined without regard to Code Section 402(g));

(3)     any employer contribution to purchase an annuity contract under Code Section 403(b) under a salary reduction agreement (within the meaning of Code Section 3121(a)(5)(D));

(4)     any elective employer contribution other than to this Plan under Code Section 408(p)(2)(A)(i); and

(5)     any elective deferrals that the Participant designates as Roth contributions pursuant to Code Section 402A that are contributed to a plan other that this Plan;

provided that no contribution described in this subsection (b) shall be taken into account for the purpose of reducing the Contribution Dollar Limit in subsection (a), above, if the plan, contract, or arrangement is not maintained by a Commonly Controlled Entity unless the Participant has filed a notice with the Applicable Administrative Named Fiduciary not later than March 15 of the next Plan Year regarding such contribution.

4.2     Actual Deferral Percentage Test.

(a)     The Plan shall satisfy the actual deferral percentage test set forth in Code Section 401(k)(3) and Treasury Regulation §1.401(k)-2, the provisions of which (and any subsequent Internal Revenue Service guidance issued thereunder) are incorporated herein by reference, each as modified by subsection (b) below.  Accordingly, the actual deferral percentage for HCEs for any Plan Year shall not exceed the greater of:

(1)     the actual deferral percentage for NHCEs for the current Plan Year multiplied by 1.25, or

23

(2) the lesser of (A) the actual deferral percentage for NHCEs for the current Plan Year multiplied by 2 and (B) the actual deferral percentage for NHCEs for the current Plan Year plus 2%.

(b) In performing the actual deferral percentage test described in subsection (a) above, the following special rules shall apply:

(1) the deferral percentages of Participants who are covered by an agreement that the Secretary of Labor finds to be a collective bargaining agreement between employee representatives and an employer shall be disaggregated from the deferral percentages of other Participants and the provisions of this Section 4.2 shall be applied separately with respect to each group.

(2) Employees who have not become eligible to become Participants shall be disregarded in applying this Section 4.2.

(3) The Applicable Administrative Named Fiduciary may allow an Employer to make additional contributions and may permissively aggregate the Plan with other plans to the extent permitted under Treasury Regulation §§ 1.401(k)-2(a)(6) and 1.401(k)-1(b)(4).

4.3 <u>Maximum Contributions</u>.

(a) In addition to any other limit set forth in the Plan and notwithstanding any other provision of the Plan, in no event shall the annual additions, as defined in Code Section 415(c)(2), allocated to a Participant's Account under the Plan in any Plan Year, together with the aggregate annual additions allocated to the Participant's accounts under all Related Defined Contribution Plans, exceed the maximum amount permitted under Code Section 415, the provisions of which are incorporated herein by reference.

(b) If the limits imposed by this Section 4.3 apply to a Participant who is entitled to annual additions under one or more tax-qualified plans with which the Plan is aggregated for purposes of Code Section 415, the annual additions under the Plan and such other plan or plans shall be reduced in the following order, to the extent necessary to prevent the Participant's benefits and/or annual additions from exceeding the limitations imposed by this Section:

(1) All Related Defined Contribution Plans in which the Participant participated, in an order based on the reverse chronology of the annual additions to the plans, beginning with the last annual addition and ending with the first annual addition; and

(2) the Plan as provided by its terms.

4.4 <u>Imposition of Limits</u>. Notwithstanding anything contained in the Plan to the contrary, the Applicable Administrative Named Fiduciary may, in his sole discretion, limit the amount of a Participant's Elective Deferrals during a Plan Year to the extent that the Applicable Administrative Named Fiduciary determines that the imposition of such a limit is necessary or appropriate to ensure that the Plan satisfies the requirements of this Article.  Any such limit may

be imposed on a Participant at any time and without advance notice to the Participant. The Applicable Administrative Named Fiduciary can impose limits beyond those that are absolutely necessary to satisfy the requirements of this Article and may, in its sole discretion, impose more restrictive limits that are designed to enable the Plan to satisfy those requirements by a reasonable margin.

4.5    Excess Annual Additions, Deferrals, and Contributions.

(a)    If a Participant's Elective Deferrals cause the annual additions allocated to a Participant's Account to exceed the limit imposed by Section 4.3, such excess contributions (adjusted for investment returns) thereon shall be returned to the Participant. Investment returns attributable to such Elective Deferrals shall be calculated on a reasonable basis as determined by the Applicable Administrative Named Fiduciary in accordance with Treasury Regulation § 1.402(g)-1(e)(5) (or any other basis permitted by such Treasury Regulation). Contributions returned pursuant to this subsection (a) shall be disregarded in applying the limits imposed by Sections 4.1 and 4.2.

(b)    If, after the adjustment in subsection (a) above, an excess annual addition with respect to a Participant for a Plan Year remains, such excess amount, plus or minus any investment returns (which shall be calculated on a reasonable basis as determined by the Applicable Administrative Named Fiduciary and in accordance with applicable law) shall be held unallocated in a suspense account. The suspense account shall be applied to reduce future Employer Contributions for all Participants in the next Plan Year, and in each succeeding Plan Year if necessary. The suspense account shall not participate in the allocation of the investment gains and losses of the Trust Fund (and the value of such an account shall not be taken into account in valuing other Accounts under the Plan).

(c)    After any excess annual additions (adjusted for investment returns thereon) with respect to a Plan Year have been distributed as provided in subsection (a) above, if the sum of a Participant's aggregate Elective Deferrals exceed the limit described in Section 4.1, the following rules shall apply to such excess (the Participant's "excess deferrals"):

(1)    Not later than the first January 31 following the close of the Plan Year, the Participant may allocate to the Plan all or any portion of the Participant's excess deferrals for Plan Year (provided that the amount of the excess deferrals allocated to the Plan shall not exceed the amount of the Participant's Elective Deferrals for the Plan Year that have not been withdrawn or distributed) and shall notify the Applicable Administrative Named Fiduciary of any amount allocated to the Plan.

(2)    If excess deferrals have been made to the Plan on behalf of a Participant for a Plan Year, the Participant shall be deemed to have allocated such excess deferrals to the Plan pursuant to Section 4.5(c)(1), above, and the Plan shall distribute such excess deferrals pursuant to Section 4.5(c)(3), below.

(3)    As soon as practicable, but in no event later than the first April 15th following the close of the relevant Plan Year, the Plan shall distribute to the Participant the amount allocated or deemed allocated to the Plan under Section 4.5(c)(1) or 4.5(c)(2) above and

any gains or loss allocable to such excess to the date of distribution calculated on a reasonable basis as determined by the Applicable Administrative Named Fiduciary in accordance with Treasury Regulation § 1.402(g)-1(e)(5) (or any other basis permitted by such Treasury Regulation). The distribution described in this Section 4.5(c)(3) shall be made notwithstanding any other provision of the Plan.

A Participant may designate the extent to which the excess deferrals to be distributed in accordance with this Section 4.5(b) is composed of Pre-Tax Contributions and Roth Contributions, but only to the extent that such types of contributions were made to the Plan during the year. If a Participant does not designate whether the excess amount to be distributed is to be composed of Pre-Tax Contributions or Roth Contributions, the Plan shall distribute Pre-Tax Contributions first.

(d)     After any excess annual additions (plus or minus any gains or losses thereon) with respect to a Plan Year have been distributed as provided in subsection (a) above, after any excess deferrals (plus or minus any gains or losses thereon) with respect to a Plan Year have been distributed as provided in subsection (b) above, and after any action pursuant to Section 4.4 with respect to the Plan Year has been taken, if the actual deferral percentage for the Plan Year of HCEs exceeds the limit imposed by Section 4.2, the following rules apply:

(1)     (A)     The amount of the excess contributions (determined in accordance with Code Section 401(k)(8)(B) and subparagraph (2) below), plus or minus any gains or losses thereon (which shall be calculated on a reasonable basis as determined by the Applicable Administrative Named Fiduciary in accordance with Treasury Regulation § 1.401(k)-2(b)(2)(iv) (or any other basis permitted by such Treasury Regulations)), shall be distributed from the Plan to HCEs, beginning with the HCE with the highest dollar amount of Elective Deferrals and all other contributions taken into account with respect to such HCE under any "plan" in which the HCE is an "eligible employee" (within the meaning of Treasury Regulation § 1.401(k)-6) in performing the actual deferral percentage test (described in Section 4.2(a)), for the Plan Year (collectively, "ADP Contributions") in an amount required to cause that HCE's ADP Contributions to equal the dollar amount of the ADP Contributions of the HCE with the next highest dollar amount of ADP Contributions (or in such lesser amount that is equal to the total amount of excess contributions). The process described in the preceding sentence shall continue until the reduction equals the total excess contributions made to the Plan. The amount of excess contributions distributed to an HCE for a Plan Year shall not exceed the amount of Elective Deferrals contributed to the Plan on behalf of the HCE and taken into account in performing the actual deferral percentage test for such Plan Year. An HCE may designate the extent to which the excess amount to be distributed is composed of Pre-Tax Contributions and Roth Contributions, but only to the extent that such types of contributions were made during the year. If an HCE does not designate whether the excess amount to be distributed is to be composed of Pre-Tax Contributions or Roth Contributions, the Plan shall distribute Pre-Tax Contributions first.

(B)     The distribution described in subparagraph (A) above shall be made as soon as practicable, but in no event later than the close of the Plan Year following the close of the Plan Year with respect to which the excess contributions were made.

(2)    The excess contributions to the Plan shall be determined in accordance with Code Section 401(k)(8)(B) by performing the hypothetical calculation described in this subparagraph (2). The actual deferral percentage of the HCE with the highest individual actual deferral percentage shall be reduced to the extent necessary to cause his actual deferral percentage to equal the actual deferral percentage of the HCE with the second highest individual actual deferral percentage (or, if it would result in a lesser reduction, to the extent necessary to cause the Plan to satisfy the actual deferral percentage test under Section 4.2). The excess contribution to the Plan is the amount by which the Elective Deferrals of the HCE with the highest individual actual deferral percentage would have been reduced after the hypothetical reduction in actual deferral percentage described in the preceding sentence. This process shall continue until no excess contributions remain.

The distribution described in subparagraph (1) above shall be made notwithstanding any other provision of the Plan. The amount distributed pursuant to subparagraph (1) above for a Plan Year with respect to a Participant shall be reduced by any excess deferral previously distributed under Section 4.5(c), to such Participant for the Participant's taxable year ending with or within such Plan Year.

4.6    <u>Incorporation by Reference</u>. Each incorporation by reference in this Article IV of the provisions of Code Sections 402A, 402(g), 401(k)(3) and 415 includes any Internal Revenue Service guidance issued and in effect thereunder.

# ARTICLE V

## ACCOUNTING FOR PARTICIPANT
## ACCOUNTS AND INVESTMENT OPTIONS

5.1     Individual Participant Accounting.

(a)     Account Maintenance.  The Applicable Administrative Named Fiduciary shall cause the Accounts for each Participant to reflect transactions involving Contributions and other allocations thereto, earnings, losses, withdrawals, distributions and expenses to be allocated and posted to the Accounts in accordance with the terms of this Plan.  Financial transactions during or with respect to the period, not to exceed one year in duration, designated by the Applicable Administrative Named Fiduciary, shall be accounted for at the individual Account level by allocating and posting each transaction to the Account as of a Trade Date.  At any point in time, the value of a Participant's Account Balance shall be equal to the sum of the aggregate of the following amounts determined under (1), (2) and (3) with regard to each Investment Option:

(1)     the (A) Unit Values for the portion of his Accounts invested in each Investment Options under Section 5.2(a) multiplied by (B) the number of full and fractional units for each such Investment Option posted to his Accounts;

(2)     the (A) Fair Market Value for the shares for the portion of his Accounts invested in each Investment Option under Section 5.2(b) multiplied by (B) the number of full and fractional shares for each such Investment Option posted to his Accounts, and

(3)     the Fair Market Value of any other assets of the Trust Fund (exclusive of assets described in (1) and (2)) in which a portion of his Accounts is invested or held.

(b)     Trade Date Accounting and Investment Cycle.  For any transaction to be processed as of a Trade Date, the Applicable Administrative Named Fiduciary must receive instructions by the Sweep Time and such instructions shall apply only to amounts held in and posted to the Accounts as of the Trade Date.  Except as otherwise provided herein, all transactions shall be effected on the Trade Date relating to the Sweep Time (or as soon thereafter as is administratively possible).

(c)     Suspension of Transactions.  Whenever the Applicable Administrative Named Fiduciary considers such action to be in the best interest of the Participants, the Applicable Administrative Named Fiduciary in its discretion may suspend from time to time the Trade Date or reset the Sweep Time.

(d)     How Fees and Expenses are Charged to Accounts.  Account maintenance fees as determined on a percentage or dollar basis as directed by the Applicable Administrative Named Fiduciary shall be charged to Accounts, provided that no fee shall reduce an Account Balance below zero.  Transaction type fees (such as special asset fees, Conversion Election change fees, etc.) shall be charged to the Accounts involved in the transaction as determined pursuant to procedures adopted by the Applicable Administrative Named Fiduciary.  Fees and

28

expenses incurred for the management and maintenance of Investment Options shall be charged at the Investment Option level and reflected in the net gain or loss of each Investment Option.

(e) <u>Error Correction</u>. The Applicable Administrative Named Fiduciary may correct any errors or omissions in the administration of the Plan by crediting or charging any Account with the amount that would have been allocated, credited or charged to the Account had no error or omission been made. Funds necessary for any such crediting shall be provided through payment made by the Applicable Administrative Named Fiduciary, or, if the Applicable Administrative Named Fiduciary was not responsible for such error or omission, through payment by the Employer.

5.2 <u>Accounting for Investment Options</u>.

(a) <u>Unit Accounting</u>. The investments in each Investment Option designated by the Applicable Investment Named Fiduciary as subject to unit accounting shall be maintained in full and fractional units. The Applicable Administrative Named Fiduciary is responsible for determining the number of full and fractional units of each such Investment Option.

(b) <u>Share Accounting</u>. The investments in each Investment Option designated by the Applicable Investment Named Fiduciary as subject to share accounting shall be maintained in full and fractional shares. The Applicable Administrative Named Fiduciary is responsible for determining the number of full and fractional shares of each such Investment Option.

5.3 <u>Accounts for Beneficiaries and Alternate Payees</u>. A separate Account shall be established for any Beneficiary entitled to any portion of a deceased Participant's Accounts, and for any Alternate Payee as of the date and in accordance with the directions specified in the QDRO. Such Account shall be valued and accounted for in the same manner as any other Account. Beneficiaries and Alternate Payees shall be treated as Participants to the extent provided as follows:

(a) <u>Investment Direction</u>. A Beneficiary of a deceased Participant or an Alternate Payee may direct the investment of such Account in the same manner as a Participant.

(b) <u>Withdrawals and Forms of Payment</u>. Payment to a Beneficiary may be made in the same forms as are available to a Participant. An Alternate Payee shall receive payment of the amount specified in the QDRO as soon as administratively possible, regardless of whether the Participant is an Employee, unless the QDRO specifically provides that payment be delayed, including at the election of the Alternate Payee. Payment may be made in the same forms as are available to the Participant with respect to whom the QDRO has been obtained, to the extent provided in the QDRO.

(c) <u>Beneficiary</u>. A Beneficiary or an Alternate Payee may designate a Beneficiary in the same manner as a Participant, to the extent provided for in the QDRO.

5.4 <u>Transition Rules</u>. The Applicable Administrative Named Fiduciary may adopt such procedures, including imposing "transition" periods, as are necessary to accommodate any

29

plan mergers, Investment Option or accounting changes or events, or similar events as it determines are necessary for the proper administration of the Plan.

**ARTICLE VI**

**INVESTMENT OPTIONS AND ELECTIONS**

6.1     Investment of Contributions.

(a)     Investment Election. Each Participant may direct the Applicable Investment Named Fiduciary, by submission to the Applicable Investment Named Fiduciary of an Investment Election, to invest Contributions posted to his Accounts and other amounts allocated and posted to the Participant's Account in one or more Investment Options. If a Participant does not have a valid Investment Election on file, his Investment Election shall be deemed to be a 100% election of the Investment Option designated by the Committee as the default option. If the Participant elects to have any such Contributions made on his behalf invested in more than one Investment Option, he must designate in whole multiples of one percent (1%) what percentage of the Contribution is to be invested in each such Investment Option. Notwithstanding the foregoing, the Committee shall periodically establish rules and regulations for each Participant to direct the investment of his Account.

(b)     Effective Date of Investment Election; Change of Investment Election. A Participant's initial Investment Election shall be effective with respect to an Investment Option on the Trade Date that relates to the Sweep Time on which or prior to which the Investment Election is received and not revoked pursuant to procedures specified by the Applicable Investment Named Fiduciary. A Participant's Investment Election shall continue in effect, notwithstanding any change in his Compensation or his Contribution Percentage, until the earlier of: (1) the effective date of a new Investment Election; or (2) the date he ceases to be a Participant. A change in Investment Election shall be effective with respect to an Investment Option as soon as administratively possible after the date the Applicable Administrative Named Fiduciary receives the Participant's new Investment Election.

6.2     Investment of Accounts.

(a)     Conversion Election. Notwithstanding a Participant's Investment Election, a Participant may direct the Applicable Investment Named Fiduciary, by submission of a Conversion Election to the Applicable Investment Named Fiduciary, to change the investment of his Accounts between two (2) or more Investment Options, on a pro rata basis with respect to each of the Participant's Accounts. If the Participant elects to invest his Accounts in more than one (1) Investment Option, he must designate in whole multiples of one percent (1%) what percentage of his Accounts is to be invested in such Investment Option.

(b)     Effective Date of Conversion Election. A Conversion Election to change a Participant's investment of his Accounts in one Investment Option to another Investment Option shall be effective with respect to such Investment Options on the Trade Date(s) that relates to the Sweep Time on which or prior to which the Conversion Election is received and not revoked pursuant to procedures specified by the Applicable Investment Named Fiduciary.

(c)   Delayed Effective Date.   Notwithstanding any provision of this Section 6.2 to the contrary, if the sell portion of a Conversion Election cannot be processed due to a problem in the market, a liquidity shortage in an Investment Option or disruption of other sell or buy orders in another Investment Option, the buy portion of the Conversion Election shall not be processed on a Trade Date until the sell transaction can be processed.

6.3   Investment Options.   The Applicable Investment Named Fiduciary may from time to time:

(a)   limit or freeze investments in, or transfers from, an Investment Option;

(b)   add funding vehicles thereunder;

(c)   liquidate, consolidate or otherwise reorganize an existing Investment Option;

(d)   add new Investment Options to, or delete existing Investment Options;

(e)   designate, or change a designation of an investment as the default Investment Option.

6.4   Transition Rules.   Effective as of the date designated by the Applicable Investment Named Fiduciary on which any Investment Option is affected by an action described in Section 6.3, each Participant shall have the opportunity to make new Investment Elections and Conversion Elections to the Applicable Investment Named Fiduciary no later than the applicable Sweep Time.   The Applicable Investment Named Fiduciary may take such action as he deems appropriate, including, but not limited to:

(a)   using any reasonable accounting methods in performing his duties during the period of transition;

(b)   designating into which Investment Option a Participant's Accounts or Contributions shall be invested;

(c)   establishing the method for allocating net investment gains or losses and the extent, if any, to which amounts received by and distributions paid from the Trust during this period share in such allocation;

(d)   investing all or a portion of the Trust's assets in a short-term, interest-bearing Investment Option during such transition period;

(e)   delaying any Trade Date during a designated transition period or changing any Sweep Time or Valuation Time during such transition period; or

(f)   designating how and to what extent a Participant's Investment Election or Conversion Election shall apply to Investment Options.

6.5     Risk of Loss.   The Plan, the Employer, and the Named Fiduciaries do not guarantee that the Fair Market Value of the Investment Options, or of any particular Investment Option, shall equal or be greater than the amounts invested therein.  The Plan, the Employer, and the Named Fiduciaries do not guarantee that the value of the Accounts shall equal or be greater than the Contributions allocated thereto.  Except as required pursuant to ERISA, each Participant shall have sole responsibility for the investment of his Accounts and for transfers among the available Investment Options, and no fiduciary or other person shall have any liability for any loss or diminution in value resulting from any Participants' exercise of, or failure to exercise, such investment responsibility.  Each Participant assumes all risk of any decrease in the value of the Investment Options and the Accounts.  The Plan is intended to constitute a plan described in ERISA Section 404(c).

6.6     Interests in the Investment Options.   No Participant shall have any claim, right, title or interest in or to any specific assets of any Investment Option until distribution of such assets is made to such Participant.  No Participant shall have any claim, right, title, or interest in or to the Investment Option, except as and to the extent expressly provided herein.

6.7     Restrictions on Investment Elections or Conversion Elections.   A Participant's ability to make Investment Elections and Conversion Elections is at all times subject to any restrictions on the amount and frequency of trading in any Investment Option, including, but not limited to, prohibitions and associated redemption fees imposed on frequent trading and/or exchanges of mutual fund shares that are imposed by a fund (as stated in its current prospectus) or by the investment adviser, principal underwriter, trustee or similar person having control over such Investment Option, and which restriction is communicated to and implemented by the Trustee, to the same extent as if such restriction was contained in the Plan.

6.8     Sole Source of Benefits.   Participants may only seek payment of benefits under the Plan from the Trust, and, except as otherwise required by law, the Employer assumes no responsibility or liability therefor.

## ARTICLE VII

## WITHDRAWALS

7.1     <u>Withdrawal from Rollover Account and Roth Rollover Account</u>.  By applying to the Applicable Administrative Named Fiduciary in the form and manner prescribed by the Applicable Administrative Named Fiduciary, an Active Participant may elect to withdraw any portion, up to the entire value, of his Rollover Account and/or Roth Rollover Account at any time.

7.2     <u>Withdrawal for Hardship</u>.

(a)     Subject to the provisions of this Section 7.2, an Active Participant may apply to the Applicable Administrative Named Fiduciary in the form and manner prescribed by the Applicable Administrative Named Fiduciary for a withdrawal from his Pre-Tax Catch-up Account, Pre-Tax Account, Roth Catch-up, and Roth Account excluding any earnings posted to such Accounts; provided that he has first withdrawn the total value of his Rollover Account and Roth Rollover Account pursuant to Section 7.1 or is not otherwise allowed to make withdrawals under Section 7.3.  Withdrawals under this Section 7.2 shall be made from the following Accounts in the following order:

> Pre-Tax Catch-up Account
> Pre-Tax Account
> Roth Catch-up Account
> Roth Account

Notwithstanding the above, a Participant may designate the extent to which a withdrawal under this Section is composed of Pre-Tax Catch-up Contributions and Roth Catch-up Contributions or Pre-Tax Contributions and Roth Contributions, but only to the extent that such types of Contributions were made to the Plan.

(b)     A withdrawal under this Section 7.2 shall be permitted only if the Applicable Administrative Named Fiduciary determines that such withdrawal is (1) on account of a Participant's "Deemed Financial Need" and (2) "Deemed Necessary" to satisfy such financial need.

A "Deemed Financial Need" is limited to financial commitments relating to:

(1)     costs directly related to the purchase or construction (excluding mortgage payments or balloon payments) of a Participant's principal residence;

(2)     the payment of expenses for (or necessary to obtain) medical care for the Participant, his Spouse, children or dependents (as defined in Code Section 152, without regard to Code Sections 152(b)(1), (b)(2) and (d)(1)(B)) that would be deductible under Code Section 213 (determined without regard to whether the expenses exceed 7.5% of adjusted gross income);

(3)     the payment of tuition and related educational fees and room and board expenses for the next twelve (12) months of post-secondary education for the Participant, his

34

Spouse, children or dependents (as defined in Code Section 152, without regard to Code Sections 152(b)(1), (b)(2) and (d)(1)(B));

(4)  necessary payments to prevent the eviction of the Participant from his principal residence or the foreclosure on the mortgage of the Participant's principal residence;

(5)  the payment of burial expenses for the Participant's deceased parent, Spouse, children or dependents (as defined in Code Section 152, without regard to Code Section 152(d)(1)(B)); and

(6)  the payment of expenses for the repair of damage to the Participant's principal resident that would qualify for the casualty deduction under Code Section 165 (without regard to whether the loss exceeds 10% of adjusted gross income).

A withdrawal is "Deemed Necessary" to satisfy the financial need only if all of the following conditions are met:

(A)  the withdrawal does not exceed the dollar amount required to satisfy the Participant's documented financial hardship, plus an amount to pay federal, state or local income taxes or penalties reasonably anticipated to result from such withdrawal;

(B)  the Participant must have obtained all distributions, other than financial hardship distributions, and all nontaxable loans under all retirement plans maintained by any Commonly Controlled Entity; and

(C)  the Participant shall be suspended from making Participant Contributions and after-tax contributions (or similar contributions under any other qualified or nonqualified plan of deferred compensation maintained by a Commonly Controlled Entity) for at least six (6) months from the date the hardship withdrawal is received.

7.3    Withdrawals from Accounts on or After Age 59½ . By applying to the Applicable Administrative Named Fiduciary in the form and manner prescribed by the Applicable Administrative Named Fiduciary, an Active Participant who has attained age 59½ may elect to withdraw any portion, up to the entire value, of his Accounts.

7.4    Partial Withdrawals by Inactive Participants.  By applying to the Applicable Administrative Named Fiduciary in the form and manner prescribed by the Applicable Administrative Named Fiduciary, an Inactive Participant may make a withdrawal from all Accounts of any amount, up to the entire value, of his Accounts.

7.5    Withdrawal Processing Rules.

(a)    Minimum Amount.  There is no minimum for any type of withdrawal.

(b)    Permitted Frequency.   There is no maximum number of withdrawals permitted in any Plan Year.

(c)     Application by Participant.   A Participant must submit a withdrawal request in accordance with procedures established by the Applicable Administrative Named Fiduciary.

(d)     Approval by Applicable Administrative Named Fiduciary.   The Applicable Administrative Named Fiduciary is responsible for determining that a withdrawal request conforms to the requirements described in this Section.

(e)     Time of Processing.   Except as otherwise provided herein, the Applicable Administrative Named Fiduciary shall process all withdrawal requests and make payment to the Participant as soon as is administratively possible.

(f)     Medium and Form of Payment.   All withdrawals shall be paid in a cash lump sum.

(g)     Ordering Rules.   For purposes of funding any Participant requested withdrawal, amounts shall be taken from the applicable Participant's Accounts in the following order, subject to any applicable limits set forth in the Code:

> Rollover Account;
> Prior Match Account;
> Prior Profit Sharing Account;
> Profit Sharing Account;
> Pay Based Account;
> Special Account;
> Pre-Tax Catch-up Account;
> Pre-Tax Account;
> Roth Rollover Account;
> Roth Catch-up Account; and
> Roth Contribution Account.

Within each Account used for funding a withdrawal, amounts shall be taken by Investment Options in direct proportion to the Fair Market Value of the Participant's interest in each Investment Option as of the Trade Date on which the withdrawal is made, unless the Participant elects a withdrawal from specific Investment Option(s).

(h)     Direct Rollover.   With respect to any cash payment hereunder that constitutes an Eligible Rollover Distribution, a Distributee may direct the Applicable Administrative Named Fiduciary to have such payment paid to an Eligible Retirement Plan. Amounts distributed under Section 7.2 are not eligible for a direct rollover.

(i)     Spousal Consent.   Spousal Consent is not required for any withdrawal.

7.6     Participant Loans.

(a)     Subject to such conditions as the Applicable Administrative Named Fiduciary may at any time and from time to time determine, upon the application of any Active Participant, a loan shall be made to an Active Participant under the Plan.  The Applicable Administrative Named Fiduciary shall provide that loans be made available to all Active Participants in a uniform and nondiscriminatory manner and on a reasonably equivalent basis. Only two (2) loans may be outstanding at any time with respect to any Active Participant; provided, however, that this two (2) loan maximum shall be increased by a loan a Participant rolls over from the Pension Plan.

(b)     The minimum amount of any loan shall be $1,000.

(c)     Loans made available to an Active Participant in accordance with the provisions of Section 7.6(a) when added to the outstanding balance of all other loans made by the Plan and all other plans sponsored by the Employer shall not exceed the lesser of:

(1)     $50,000 as reduced by the excess, if any, of the highest outstanding balance of any loans previously made by the Plan or any other plan sponsored by the Employer to such Active Participant during the one (1) year period ending on the day before the date on which such loan is to be made over the outstanding balance of any loans previously made by the Plan and any other plan sponsored by the Employer to such Participant on the date on which such loan is made.

(2)     50% of the credit balance in his Accounts in all plans sponsored by the Employer.

The Applicable Administrative Named Fiduciary shall require that any Active Participant who receives a loan shall (A) give to the Trustee adequate security for the repayment of the amount of such loan (including a lien on the credit balance in his Accounts); (B) issue to the Trustee his promissory note for such amount, which note shall (i) have a term of at least five (5) months but not more than five (5) years, (ii) bear interest at a rate equal to the prime rate as published in The Wall Street Journal on the day the loan is made to the Active Participant, plus one percent (1%), and (iii) provide for a payment schedule sufficient to pay the current interest and to authorize the principal of such loan on a substantially level basis, over the term of such note and (C) irrevocably authorize the Employer to withhold from Compensation and other amounts payable to him by the Employer and to pay directly to the Trustee the amount required to be paid under such note or provide for such other method of payment as may be acceptable to the Trustee.  A loan may be pre-paid at any time; provided, however, that any pre-payment shall include the full principal amount of such loan and all interest accrued to the date of such pre-payment.  An Active Participant shall be responsible for the payment of all fees associated with the granting of the loan.

(d)     The Applicable Administrative Named Fiduciary shall (1) as of the Business Day coincident with the making of any loan referred to in Section 7.6(a), charge the amount of such loan pro rata from the Account(s), of the Participant and (2) as of the Business Day coincident with or next following the Trustee's receipt of repayments on the loan, credit the same to the Trust Fund and to the Account of the such Participant in accordance with his Investment Election as then in effect and the Applicable Administrative Named Fiduciary shall make appropriate entries to the Investment Options.

(e)     In the event that an Active Participant shall have not fully repaid a loan upon the earliest to occur of:

(1)     such Active Participant's request;

(2)     such Active Participant fails to pay the remaining balance of his loan within ninety (90) days of his ceasing to be an Active Participant;

(3)     a determination that such Active Participant made a material misrepresentation in his loan application;

(4)     such Active Participant's filing for relief under the United States Bankruptcy Code;

(5)     such Active Participant fails to make a loan repayment for a period of ninety (90) days; or

(6)     the termination of the Plan;

the promissory note described in Section 7.6(c) shall be considered to be in default and the Trustee shall satisfy such loan and cancel such promissory note by treating the outstanding balance of such loan (including all accrued but unpaid interest thereon) as a distribution from such Active Participant's Account(s) when such Account(s) become distributable under the terms of the Plan.

(f)     Loan payments shall be suspended as permitted or required under Code Section 414(u)(4).

(g)     All loan repayments must be made through payroll deductions; provided that payments to completely repay a loan must be made by certified check.

7.7     <u>Minimum Distribution Requirements</u>.

(a)     <u>General Rules</u>.

(1)     <u>Precedence</u>.   The requirements of this Section 7.7 shall take precedence over any inconsistent provisions of the Plan.

(2)     Requirements.  All distributions required under this Section 7.7 shall be determined and made in accordance with the Treasury Regulations issued and in effect under Code Section 401(a)(9).

(3)     TEFRA Section 242(b)(2) Elections.  Notwithstanding the other provisions of this Section 7.7, distributions may be made under a designation made before January 1, 1984 in accordance with Section 242(b)(2) of the Tax Equity and Fiscal Responsibility Act ("TEFRA") and the provisions of the Plan that relate to TEFRA Section 242(b)(2).

(b)     Time and Manner of Distribution.

(1)     Required Beginning Date.  The Participant's entire interest shall be distributed, or begin to be distributed, to the Participant no later than the Participant's Required Beginning Date.

(2)     Death of Participant Before Distributions Begin.  If the Participant dies before distributions begin, the Participant's entire interest shall be distributed, or begin to be distributed, no later than as follows:

(A)     If the Participant's surviving Spouse is the Participant's sole designated Beneficiary, then distributions to the surviving Spouse shall begin by December 31 of the calendar year immediately following the calendar year in which the Participant died, or by December 31 of the calendar year in which the Participant would have attained age 70½, if later.

(B)     If the Participant's surviving Spouse is not the Participant's sole designated Beneficiary, then the Participant's entire interest shall be distributed to such designated Beneficiary by December 31 of the calendar year containing the fifth anniversary of the Participant's death.  If the Participant's surviving Spouse is the Participant's sole designated Beneficiary and the surviving Spouse dies after the Participant but before distributions to either the Participant or the surviving Spouse begin, this provision shall apply as if the surviving Spouse were the Participant.

(C)     If there is no designated Beneficiary as of September 30 of the year following the year of the Participant's death, the Participant's entire interest shall be distributed by December 31 of the calendar year containing the fifth anniversary of the Participant's death.

(D)     If the Participant's surviving Spouse is the Participant's sole designated Beneficiary and the surviving Spouse dies after the Participant but before distributions to the surviving Spouse begin, this Section 7.7(b)(2), other than Section 7.7(b)(2)(A), shall apply as if the surviving Spouse were the Participant.

For purposes of this Section 7.7(b)(2) and Section 7.7(d) below, unless Section 7.7(b)(2)(D) applies, distributions are considered to begin on the Participant's Required Beginning Date. If Section 7.7(b)(2)(D) applies, distributions are considered to begin on the date distributions are required to begin to the surviving Spouse under Section 7.7(b)(2). If

39

distributions under an annuity purchased from an insurance company irrevocably commence to the Participant before the Participant's Required Beginning Date (or to the Participant's surviving Spouse before the date distributions are required to begin to the surviving Spouse under Section 7.7(b)(2)(A)), the date distributions are considered to begin is the date distributions actually commence.

(3)     <u>Forms of Distribution</u>.     Unless the Participant's interest is distributed in the form of an annuity purchased from an insurance company or in a single sum on or before the Required Beginning Date, as of the first distribution calendar year distributions shall be made in accordance with Sections 7.7(c) and (d). If the Participant's interest is distributed in the form of an annuity purchased from an insurance company, distributions thereunder shall be made in accordance with the requirements of Code Section 401(a)(9).

(c)     <u>Required Minimum Distributions During Participant's Lifetime</u>.

(1)     <u>Amount of Required Minimum Distribution For Each Distribution Calendar Year</u>.  During the Participant's lifetime, the minimum amount that shall be distributed for each distribution calendar year is the lesser of:

(A)     the quotient obtained by dividing the Participant's account balance by the distribution period in the Uniform Lifetime Table set forth in Treasury Regulation § 1.401(a)(9)-9, using the Participant's age as of the Participant's birthday in the distribution calendar year; or

(B)     if the Participant's sole designated Beneficiary for the distribution calendar year is the Participant's Spouse, the quotient obtained by dividing the Participant's account balance by the number in the Joint and Last Survivor Table set forth in Treasury Regulation § 1.401(a)(9)-9, using the Participant's and Spouse's attained ages as of the Participant's and Spouse's birthdays in the distribution calendar year.

(2)     <u>Lifetime Required Minimum Distributions Continue Through Year of Participant's Death</u>.  Required minimum distributions shall be determined under this Section 7.7(c) beginning with the first distribution calendar year and up to and including the distribution calendar year that includes the Participant's date of death.

(d)     <u>Required Minimum Distributions After Participant's Death</u>.

(1)     <u>Death On or After Date Distributions Begin</u>.

(A)     <u>Participant Survived by Designated Beneficiary</u>. If the Participant dies on or after the date distributions begin and there is a designated Beneficiary, the minimum amount that shall be distributed for each distribution calendar year after the year of the Participant's death is the quotient obtained by dividing the Participant's account balance by the longer of the remaining life expectancy of the Participant or the remaining life expectancy of the Participant's designated Beneficiary, determined as follows:

(i)     The Participant's remaining life expectancy is calculated using the age of the Participant in the year of death, reduced by one for each subsequent year.

(ii)     If the Participant's surviving Spouse is the Participant's sole designated Beneficiary, the remaining life expectancy of the surviving Spouse is calculated for each distribution calendar year after the year of the Participant's death using the surviving Spouse's age as of the Spouse's birthday in that year. For distribution calendar years after the year of the surviving Spouse's death, the remaining life expectancy of the surviving Spouse is calculated using the age of the surviving Spouse as of the Spouse's birthday in the calendar year of the Spouse's death, reduced by one for each subsequent calendar year.

(iii)     If the Participant's surviving Spouse is not the Participant's sole designated Beneficiary, the designated Beneficiary's remaining life expectancy is calculated using the age of the Beneficiary in the year following the year of the Participant's death, reduced by one for each subsequent year.

(B)     <u>No Designated Beneficiary</u>. If the Participant dies on or after the date distributions begin and there is no designated Beneficiary as of September 30 of the year after the year of the Participant's death, the minimum amount that shall be distributed for each distribution calendar year after the year of the Participant's death is the quotient obtained by dividing the Participant's account balance by the Participant's remaining life expectancy calculated using the age of the Participant in the year of death, reduced by one for each subsequent year.

(2)     <u>Death Before Date Distributions Begin</u>.

(A)     <u>Participant Survived by Designated Beneficiary</u>. If the Participant dies before the date distributions begin and there is a designated Beneficiary, the minimum amount that shall be distributed for each distribution calendar year after the year of the Participant's death is the quotient obtained by dividing the Participant's account balance by the remaining life expectancy of the Participant's designated Beneficiary, determined as provided in Section 7.7(d)(1).

(B)     <u>No Designated Beneficiary</u>. If the Participant dies before the date distributions begin and there is no designated Beneficiary as of September 30 of the year following the year of the Participant's death, distribution of the Participant's entire interest pursuant to Section 9.2(a) shall be completed by December 31 of the calendar year containing the fifth anniversary of the Participant's death.

(C)     <u>Death of Surviving Spouse Before Distributions to Surviving Spouse Are Required to Begin</u>. If the Participant dies before the date distributions begin, the Participant's surviving Spouse is the Participant's sole designated Beneficiary, and the surviving Spouse dies before distributions are required to begin to the surviving Spouse under Section 7.7(b)(2)(A), this Section 7.7(d)(2) shall apply as if the surviving Spouse were the Participant.

      (e)   <u>Definitions</u>.  For purposes of this Section 7.7, the following terms will have the follow meanings:

      (1)   <u>Designated Beneficiary</u>. The individual who is designated as the Beneficiary under Section 9.2 and is the designated Beneficiary under Code Section 401(a)(9) and Treasury Regulation § 1.401(a)(9)-1, Q&A-4.

      (2)   <u>Distribution calendar year</u>. A calendar year for which a minimum distribution is required. For distributions beginning before the Participant's death, the first distribution calendar year is the calendar year immediately preceding the calendar year that contains the Participant's Required Beginning Date. For distributions beginning after the Participant's death, the first distribution calendar year is the calendar year in which distributions are required to begin under Section 7.7(b)(2). The required minimum distribution for the Participant's first distribution calendar year shall be made on or before the Participant's Required Beginning Date. The required minimum distribution for other distribution calendar years, including the required minimum distribution for the distribution calendar year in which the Participant's Required Beginning Date occurs, shall be made on or before December 31 of that distribution calendar year.

      (3)   <u>Life expectancy</u>. Life expectancy is the relevant life expectancy, as computed using the Single Life Table in Treasury Regulation § 1.401(a)(9)-9.

      (4)   <u>Participant's account balance</u>. The account balance as of the last valuation date in the calendar year immediately preceding the distribution calendar year (valuation calendar year) increased by the amount of any contributions made and allocated or forfeitures allocated to the account balance as of dates in the valuation calendar year after the valuation date and decreased by distributions made in the valuation calendar year after the valuation date. The account balance for the valuation calendar year includes any amounts rolled over or transferred to the Plan either in the valuation calendar year or in the distribution calendar year if distributed or transferred in the valuation calendar year.

## ARTICLE VIII

## FORMS OF BENEFIT AND PAYMENT DATES
## FOR AN INACTIVE PARTICIPANT

8.1     Request for Withdrawal of Benefits.

(a)     Request for Withdrawal.  Subject to the other requirements of this Article, an Inactive Participant may elect to have all or a portion of his Account Balance paid to him beginning upon any Settlement Date following his Termination of Employment in a form of payment allowed hereunder.

(b)     Failure to Request Withdrawal.  If an Inactive Participant fails to submit a withdrawal request in accordance with procedures established by the Applicable Administrative Named Fiduciary by the last Payment Date permitted under this Article, his Account Balance shall be valued as of the Valuation Time with respect to the date that immediately precedes such latest date of withdrawal (the "Default Valuation Time") and a notice of such withdrawal shall be issued to his last known address as soon as administratively possible.  If the Participant does not respond to the notice or cannot be located, his Account Balance determined on the Default Valuation Time shall be treated as a forfeiture (to be used to pay Plan expenses).  If the Participant subsequently files a claim, any amount forfeited (unadjusted for gains and losses) shall be reinstated to his Accounts and distributed as soon as administratively possible, and such payment shall be accounted for by charging it against the forfeiture account or, to the extent the forfeiture account is insufficient, by a contribution from the Employer of the affected Inactive Participant.

8.2     Deadline for Withdrawal.  An Inactive Participant must make a request for payment before payment may commence under this Section 8.2.  In addition to any other Plan requirements, including the required minimum distribution rules set forth in Section 7.7, and unless the Participant elects otherwise or cannot be located, the Payment Date of a Participant's Account Balance shall be not later than sixty (60) days after the latest of the close of the Plan Year in which: (a) the Participant reaches Normal Retirement Age; (b) occurs the tenth (10th) anniversary of the Plan Year in which the Participant commenced participation in the Plan; or (c) the Participant had a Termination of Employment; provided that a Participant must consent to any distribution prior to his Required Beginning Date, as described in Section 7.7.  However, if the amount of the payment or the location of the Participant (after a reasonable search) cannot be ascertained by that deadline, payment shall be made no later than sixty (60) days after the earliest date on which such amount or location is ascertained, unless the Account Balances of the missing Participant are disposed of in a manner permitted under ERISA and by the U.S. Department of Labor.

8.3     Payment Form and Medium.  An Inactive Participant's Account Balance shall be paid in cash in form of a single sum or partial payments, if requested.

8.4     Small Amounts Paid Immediately.  If an Inactive Participant's Account Balance is $5,000 or less (or such other amount as may be specified in Code Section 411(a)(11)) at any time, including after withdrawals have commenced, the Inactive Participant's Account Balance

43

shall be paid as a single sum as soon as administratively possible, pursuant to such procedures as may be established by the Applicable Administrative Named Fiduciary.  Notwithstanding the foregoing, in the event a single sum is payable to an Inactive Participant pursuant to this Section 8.4 and such Inactive Participant's Account Balance (including that portion of his Account Balance attributable to Rollover Contributions and earnings allocable thereto) is greater than $1,000 and such Inactive Participant does not elect to have such distribution paid directly to an Eligible Retirement Plan or to receive such distribution directly, such distribution shall be paid in a direct rollover to an individual retirement account described in Code Section 408(a) or to an individual retirement annuity described in Code Section 408(b), which has been designated by the Plan.

8.5     Direct Rollover.  With respect to any cash payment hereunder that constitutes an Eligible Rollover Distribution, a Distributee may direct the Applicable Administrative Named Fiduciary to have such payment paid to an Eligible Retirement Plan.

8.6     Delay.  Notwithstanding any other provision of the Plan, a payment shall not be considered to be made after the applicable Payment Date merely because actual payment is reasonably delayed for the calculation and/or distribution of the benefit amount, or to ascertain the location of the payee, if all payments due are actually made.

## ARTICLE IX

### DISTRIBUTION OF ACCOUNT BALANCE ON DEATH

9.1     Payment to Beneficiary.  On the death of a Participant, his Account Balance shall be paid in accordance with Section 9.3, subject to Section 7.7(d), to the Beneficiary or Beneficiaries designated by the Participant in accordance with this Article IX.

9.2     Beneficiary Designation.

(a)     Each Participant may designate the Beneficiary who is to receive the Participant's remaining Account Balance after the Participant's death.  The Participant may change his designation of Beneficiary by filing a new designation with the Applicable Administrative Named Fiduciary.  Notwithstanding any designation to the contrary, a married Participant's Beneficiary shall be the Participant's surviving Spouse, unless such designation includes Spousal Consent.  In the absence of Spousal Consent, a married Participant shall be deemed to have designated his surviving Spouse as his Beneficiary unless and to the extent that such designation is inconsistent with a QDRO.  If the Participant dies leaving no Spouse and either (1) the Participant failed to file a valid Beneficiary designation or (2) all persons designated as Beneficiary have predeceased the Participant, the Applicable Administrative Named Fiduciary shall have the Trustee distribute such Participant's Account Balance in a single sum to his estate as soon as practicable following the Participant's death.

(b)     Subject to the provisions of this Section, a Participant may designate a Beneficiary under the Plan at any time by making the designation in the form and manner and at the time determined by the Applicable Administrative Named Fiduciary.  No such designation shall be effective until and unless it is received by the Applicable Administrative Named Fiduciary.

(c)     Subject to the provisions of this Section, a Participant may revoke a prior designation of a Beneficiary at any time by making the revocation in the form and manner and at the time determined by the Applicable Administrative Named Fiduciary.  No such revocation shall be effective until and unless it is received by the Applicable Administrative Named Fiduciary.

(d)     Any designation by an unmarried Participant shall be rendered ineffective by the Participant's subsequent marriage.  Any Spousal Consent under this Section shall be effective only as to that Spouse.  If a Participant's Spouse is designated as his Beneficiary and the Participant and Spouse are subsequently divorced, the Beneficiary designation shall become null and void upon the entering of a final divorce decree.  The divorced former Spouse shall no longer be the Beneficiary unless: (1) he is specified as such by a QDRO or (2) the Participant redesignates the former Spouse as the Beneficiary in a new Beneficiary designation (which, if the Participant remarries, is consented to by his new Spouse, as provided for in this Section).

(e)     After the Participant's death, the Participant's Beneficiary may not be changed by any means, including, but not limited to, a disclaimer otherwise valid under applicable law.

9.3     <u>Request for Distribution</u>.  In the event of a Participant's death, a Beneficiary may elect to have the deceased Participant's Account Balance paid to him beginning upon any Settlement Date following the Participant's date of death by submitting a completed distribution election in accordance with the procedure established by the Applicable Administrative Named Fiduciary.  Notwithstanding anything herein to the contrary, distribution must be made no later than the time described in Section 7.7(d).

9.4     <u>Payment Form</u>.  A Beneficiary shall be limited to the same form of payment to which the Participant was limited.  Payments shall generally be made in cash (by check).

9.5     <u>Direct Rollover</u>.  With respect to any cash payment hereunder that constitutes an Eligible Rollover Distribution, a Distributee may direct the Applicable Administrative Named Fiduciary to have such payment paid to an Eligible Retirement Plan.

9.6     <u>Small Amounts Paid Immediately</u>.  If a Beneficiary's Account Balance is $5,000 or less at any time, including after withdrawals have commenced, the Beneficiary's Account Balance shall be paid as a single sum as soon as administratively possible, pursuant to such procedures as may be established by the Applicable Administrative Named Fiduciary. Notwithstanding the foregoing, in the event a single sum is payable to a Beneficiary pursuant to this Section 9.6 and such Beneficiary's Account Balance (including that portion of his Account Balance attributable to Rollover Contributions and earnings allocable thereto) is greater than $1,000 and such Beneficiary does not elect to have such distribution paid directly to an Eligible Retirement Plan or to receive such distribution directly, such distribution shall be paid in a direct rollover to an individual retirement account described in Code Section 408(a) or to an individual retirement annuity described in Code Section 408(b), which has been designated by the Plan.

**ARTICLE X**

**TRUST AGREEMENT**

10.1    Trust Agreement.  The Company may enter into one or more Trust Agreements to provide for the holding, investment and payment of Plan assets, or direct by execution of an insurance contract that all or a specified portion of the Plan's assets be held, invested and paid under such a contract.  All Trust Agreements, as from time to time amended, shall continue in force and shall be deemed to form a part of the Plan.  Subject to the requirements of the Code and ERISA, the Applicable Administrative Named Fiduciary may cause assets of the Plan that are securities to be held in the name of a nominee or in street name provided such securities are held on behalf of the Plan by:

(a)    a bank or trust company that is subject to supervision by the United States or a State, or a nominee of such bank or trust company;

(b)    a broker or dealer registered under the Securities Exchange Act of 1934, or a nominee of such broker or dealer; or

(c)    a "clearing agency" as defined in Section 3(a)(23) of the Securities Exchange Act of 1934, or its nominee.

10.2    Separate Entity.  The Trust Agreement under this Plan from its inception shall be a separate entity aside and apart from the Employers or their assets, and the corpus and income thereof shall in no event and in no manner whatsoever be subject to the rights or claims of any creditor of any Employer.

10.3    Plan Asset Valuation.  As of the Valuation Time each Business Day, the value of the Plan's assets held or posted to an Investment Option shall be determined.

10.4    Right of Employers to Plan Assets.  To the extent required by law, the Employers shall have no right or claim of any nature in or to the assets of the Plan except the right to require the Trustee to hold, use, apply, and pay such assets in its possession in accordance with the Plan for the exclusive benefit of the Participants or their Beneficiaries and for defraying the reasonable expenses of administering the Plan; provided, that:

(a)    if, and to the extent that, deduction for a Contribution under Code Section 404 is disallowed, Contributions conditioned upon deductibility shall be returned to the appropriate Employer within one year after the disallowance of the deduction;

(b)    if, and to the extent that, a Contribution is made through mistake of fact, such Contribution shall be returned to the appropriate Employer within one (1) year of the payment of the Contribution; and

(c)    any amounts held suspended pursuant to the limit in Code Section 415 shall be returned to the Employers upon termination of the Plan.

All Contributions made hereunder are hereby expressly conditioned upon a deduction being allowed for such contributions under Code Section 404. Participant Contributions returned to an Employer pursuant to this Section or any other section of this Plan shall be paid to the Participant for whom such amounts were contributed as soon as administratively feasible. If these provisions result in the return of Contributions after such amounts have been allocated to Accounts, such Accounts shall be reduced by the amount of the allocation attributable to such amount, adjusted for any losses or expenses.

## ARTICLE XI

## ADMINISTRATION

11.1     General.

(a)     Empowerment.  The Company, through the authority vested in the Board of Directors, hereby:

(1)     enables the Company and persons authorized by the Company to have the power and authority to act, to the extent provided herein or in the Trust, on behalf of the Company, with respect to matters that relate to the Plan or Trust, but not on behalf of the Plan or Trust; and

(2)     establishes the Committee and enables the Committee, acting as a Named Fiduciary, to have the Authority and Discretion to act, to the extent provided herein or in the Trust, on behalf of the Plan or Trust, but not on behalf of an Employer or the Company.

(b)     Actions on Behalf of the Company.  The Company shall have all the powers necessary, incidental or desirable to act on behalf of the Company and all powers necessary, incidental or desirable to carry out the duties and rights assigned by the Plan or Trust to the Company.  This grant of power is nonexclusive and, by way of illustration and not limitation, these powers include the following, subject to any limit in the authority of any such person:

(1)     to identify (and remove) any person or entity as a Named Fiduciary and allocate to them their duties and responsibilities, in the manner provided herein;

(2)     to consult with legal counsel, independent consulting or evaluation firms, accountants, actuaries, or other advisors, as necessary, to perform their functions;

(3)     to determine what expenses, if any, related to the operation and administration of the Plan or Trust, and the investment of Plan or Trust assets, shall be paid from Employer assets, subject to applicable law;

(4)     to establish such policies and make such delegations or designations as may be necessary or incidental to the Company's authority and control over the Plan or Trust acting as the Company;

(5)     to amend, in part or completely, the Plan document;

(6)     to add a corporation or business entity as a participating Employer or to remove such corporation or entity as a participating Employer on such terms and in such manner as the Company , in his discretion, shall determine;

49

(7) to retain, monitor and terminate such service providers and advisors as it considers appropriate to perform Company activities with respect to the Plan or Trust and to delegate any of its duties, as appropriate, to such service providers and advisors; to determine appropriate fees for such service providers and advisors; and to ensure that appropriate contracts (under terms acceptable to the Company) are signed and in place with such service providers and advisors;

(8) to adopt, amend or terminate, in part or in whole, a Trust document;

(9) to determine the funding policy for the Plan, including the level of contributions to be paid by Participants and whether benefits are self-funded or insured; and

(10) to take all other actions determined to be necessary, incidental or desirable to fulfill their duties and obligations of the Company, as sponsor of the Plan, including the power to delegate that power to any person or entity.

(c) <u>Committee as an Applicable Administrative Named Fiduciary</u>. The Committee, acting as an Applicable Administrative Named Fiduciary on behalf of the Plan or Trust and subject to the last paragraph of this Section 11.1(c), has the following Authority or Discretion. This grant of Authority or Discretion is exclusive, subject to the Applicable Administrative Named Fiduciary's power to allocate or delegate such Authority or Discretion pursuant to the procedures in this Plan, and includes, but not limited to, Authority or Discretion :

(1) to construe and apply the provisions of the Plan or Trust, including a determination, subject to the terms of this Plan, of eligibility for participation and benefits under this Plan, including, without limitation, the determination of those individuals who are deemed to be an Employee of any Commonly Controlled Entity;

(2) to appoint and compensate such specialists (including attorneys, actuaries, consultants and accountants) to aid it in the administration of the Plan or Trust, and arrange for such other services, as the Committee considers necessary, appropriate or desirable in carrying out the provisions of the Plan or Trust;

(3) to appoint and compensate an independent outside accountant to conduct such audits of the financial statements of the Plan or Trust as the Committee considers necessary, appropriate or desirable;

(4) to execute on behalf of the Plan or Trust, or to cause the Trustee to execute on behalf of the Plan or Trust, Administrative Services Agreements or other contracts that are legally enforceable and binding on the Plan, subject to ERISA and other applicable law;

(5) to authorize a person, who may, but need not, be an officer or Employee of an Employer, to be this Plan's agent for service of legal process and to execute documents on behalf of the Committee, including any instructions to the Trustee;

(6)     to authorize a settlement or compromise of any litigation resulting in a final liability to the Plan and Trust or against a Fiduciary with respect to which the Plan or Trust has an indemnity obligation;

(7)     to delegate its authority and control over management and operation of the Plan or Trust to a Fiduciary pursuant to the procedures herein or to empower certain entities to act as its agent with respect to such authority and control;

(8)     to make a claim review determination, based upon (A) the information known to the Committee, (B) determinations made by an Employer, (C) such other information presented to the Committee in a manner consistent with its rules and procedures for presenting evidence, and (D) such final determinations as may be made by each other Committee within the scope of its authority and control, all as are determined to be relevant by the Committee, as to any matter or issue presented to the Committee through the Plan's appeals procedure;

(9)     to maintain Participant records;

(10)    to administer QDROs;

(11)    to formulate, adopt, issue and apply procedures and rules and change, alter or amend such procedures and rules in accordance with law and as may be consistent with the terms of the Plan or Trust; and

(12)    to take any other actions or exercise Authority or Discretion necessary, incidental or desirable to its performance under this Plan or Trust.

For the purpose of clarity and pursuant to the grant of Authority or Discretion described in Section 11.1(c) and notwithstanding anything in the Plan or Trust to the contrary, benefits under the Plan or Trust shall be paid only if the Committee decides in its discretion that the applicant is entitled to them.

Notwithstanding any other term or provision of the Plan, Trust, or any Administrative Services Agreement, the Committee shall cease to be an Applicable Named Fiduciary with respect to any specified portion of Authority or Discretion, to the extent such Authority or Discretion has been identified or allocated to another Applicable Administrative Named Fiduciary or to an Applicable Investment Named Fiduciary pursuant to the procedure in the Plan or Trust.

(d)     Committee Acting as an Applicable Investment Named Fiduciary.

(1)     The Committee acting as an Applicable Investment Named Fiduciary, subject to subparagraph (2) hereof, has all the Authority or Discretion of an Applicable Investment Named Fiduciary as set forth in the Trust.

(2)     Notwithstanding any other term or provision of the Plan, Trust or any Administrative Services Agreement, the Committee shall cease to be an Applicable Investment Named Fiduciary with respect to some specified portion of Authority or Discretion,

to the extent such Authority or Discretion has been identified or allocated to another Applicable Investment Named Fiduciary pursuant to the procedure in the Plan.

(e)     Procedures for Identification of a Named Fiduciary.

(1)     Procedure for Identification. The Company may from time to time identify a person or entity or committee to be a Named Fiduciary by (A) amending the Plan or Trust to specify in the Plan or Trust document (i) the name or position of the person identified and (ii) the Authority or Discretion with respect to which the person shall be a Named Fiduciary; or (B) referencing an Administrative Services Agreement as a means for specifying the Authority or Discretion with respect to which such person shall be a Named Fiduciary, in which case the Company may make such identification under this clause (B) by use of an Appendix to the Plan or such other method of taking action as the Company may select. The Company may also identify (or revoke such identification of) a person to be a Named Fiduciary with respect to some portion of the authority to manage and control the operation and administration of the Plan.

No person who is identified as a Named Fiduciary hereunder must consent to such designation or identification nor shall it be necessary for the Company to seek such person's, entity's or committee's acquiescence. The Authority or Discretion that a Named Fiduciary identified hereunder may have, shall be several and not joint with the Company, Committee or any other Named Fiduciary and the identification of such Named Fiduciary shall result in the Committee or other Named Fiduciary no longer being a Named Fiduciary with respect to, nor having any longer, such Authority or Discretion. On and after the identification of a person as a Named Fiduciary, the Company, Committee and any Named Fiduciary with respect to the Plan or Trust, shall not have any liability for the acts (or failure to act) of any such identified Named Fiduciary except to the extent of its co-fiduciary duty under ERISA.

(2)     No Identification of Employer. Notwithstanding the procedure set forth in (1) above, the Company may not identify an Employer or its respective board of directors, officer or Employee as a Named Fiduciary; provided, however, that the Committee may identify any Employee as a Named Fiduciary, only by making them a member of the Committee.

(f)     Compensation. The members of the Committee, acting as Named Fiduciaries, shall serve without compensation for their services as such.

(g)     Allocations and Delegations of Responsibility.

(1)     Delegations. Subject to Section 11.1(g)(4), each Named Fiduciary may (A) delegate Authority or Discretion, other than trustee responsibilities as described in ERISA Section 405(c)(3) unless the delegation is to an investment manager as defined in ERISA Section 3(38), to persons it designates, and (B) make a change of delegated responsibilities. Each such delegation shall either (i) if it relates to an individual employed by an Employer, specify the delegated person by name or by office and describe the Authority or Discretion delegated to such individual, or (ii) use an Administrative Services Agreement with such person as a means for specifying the Authority or Discretion delegated to such person. The Committee acting as a Named Fiduciary may make such delegations by use of an Appendix to the Plan or

52

such other method of taking such action that the Committee acting as a Named Fiduciary may select. Any Named Fiduciary, other than the Committee acting as a Named Fiduciary, may make such delegations only in writing and after giving prior written notice of such delegation to the Committee acting as a Named Fiduciary. No person, other than an investment manager (as defined in ERISA Section 3(38)), to whom Authority or Discretion has been properly delegated must consent to being a Fiduciary nor shall it be necessary for the delegating Named Fiduciary to seek such person's acquiescence; however, where such person has not signed a contract, the person must be given notification of the services to be performed and agree to perform, or perform, such services. A permissible delegation of Authority or Discretion that is not implemented in the manner set forth herein shall not be void; however, whether the delegating Named Fiduciary shall have joint liability for acts of such person shall be determined by applicable law.

(2)  _Allocations_.  Subject to Section 11.1(g)(4), the Company may allocate Authority or Discretion to a Named Fiduciary when it identifies such Named Fiduciary in the manner described in subsection (e) above. The Committee, acting as a Named Fiduciary, may allocate or reallocate Authority or Discretion, other than trustee responsibilities described in ERISA Section 405(c)(3), among Named Fiduciaries. Each such allocation shall either (A) if it relates to an individual employed by an Employer, specify the allocated person by name or by office and describe the Authority or Discretion allocated to such individual, or (B) use an Administrative Services Agreement with such person as a means for specifying the Authority or Discretion allocated to such person. The Committee, acting as a Named Fiduciary, may make such allocations by use of an Appendix to the Plan or such other method of taking such action that the Committee, acting as a Named Fiduciary, may select. No person to whom Authority or Discretion has been properly allocated must consent to being a Fiduciary nor shall it be necessary for the allocating Named Fiduciary to seek such person's acquiescence; however, where such person has not signed a contract, the person must be given notification of the services to be performed and agree to perform, or perform, such services. A permissible allocation of Authority or Discretion that is not implemented in the manner set forth herein shall not be void; however, whether the allocating Named Fiduciary shall have joint liability for acts of such person shall be determined by applicable law.

(3)  _Limit on Liability_.  The allocation and delegation of Authority or Discretion pursuant to the terms of the Plan are intended to limit the liability of (A) any person authorized to act on behalf of the Company and Committee acting as a Named Fiduciary, and (B) each other Named Fiduciary, as appropriate, in accordance with the provisions of ERISA Section 405(c).

(4)  _No Delegation or Allocation to Employer_.  Notwithstanding the procedures set forth in paragraph (1) or (2) above, a Named Fiduciary may not delegate or allocate Authority or Discretion to the Company, an Employer, or their respective boards of directors, officer or an Employee; provided, however, that the Committee may allocate Authority or Discretion among the members of the Committee.

(h)  _Committee Bonding_.  The Committee acting as a Named Fiduciary shall serve without bond (except as otherwise required by federal law).

(i)     Information to be Supplied by Employer.  Each Employer shall supply to the Applicable Named Fiduciary, within a reasonable time of its request, the names of all Employees, their age, their date of hire, and the amount of Compensation paid to each Employee, the names and dates of all Employees who incurred a Termination of Employment during the Plan Year, and the Hours of Service earned by each Employee during the Plan Year. Each Employer shall provide to the Applicable Named Fiduciary such other information as it shall from time to time need in the discharge of its duties.  The Applicable Named Fiduciary may rely conclusively on the information certified to it by an Employer.

(j)     Misrepresentations.  The Applicable Named Fiduciary may, but shall not be required to, rely upon any certificate, statement or other representation made to it by another Named Fiduciary or by an Employee, a Participant, or another individual, or personal representative of any thereof with respect to any fact.  Any such certificate, statement or other representation shall be conclusively binding upon such other Named Fiduciary, Employee, Participant, or other individual or personal representative, and on any heir or assignee of any thereof (but not upon the Committee), and any such person shall thereafter be estopped from disputing the truth of any such certificate, statement or other representation.

(k)     Records.  The regularly kept records of any Named Fiduciary, Trustee or Employer may be relied upon conclusively by any other Named Fiduciary.

(l)     Plan Expenses.  All expenses of the Plan or Trust that have been approved by the Committee shall be paid by the Trust except to the extent paid by the Employer; and if paid by the Employer, such Employer may, if authorized by the Company, seek reimbursement of such expenses from the Trust and the Trust shall reimburse the Employer.  If borne by the Employer(s), expenses of administering the Plan or Trust shall be borne by the Employer(s) in such proportion as the Company, shall determine.

(m)     Fiduciary Capacity.  Any person or group of persons may serve in more than one fiduciary capacity with respect to the Plan.  The Named Fiduciary's status as an Employee shall not disqualify such individual from taking any action hereunder or render such individual accountable for any distribution or other material advantage such individual may receive under the Plan.

(n)     Named Fiduciary Decisions Final.  The decision of a Named Fiduciary in matters within its jurisdiction shall be final, binding, and conclusive upon the Company, the Employer, the Trustee, each Employee, Participant, Spouse and Beneficiary, Alternate Payee and every other person or party interested or concerned.

(o)     No Agency.  Each Fiduciary shall perform (or fail to perform) its Authority or Discretion with respect to the Plan or Trust as an independent contractor and not as an agent of the Plan, any Employer, the Trust or the Committee.  No agency is intended to be created nor is the Committee empowered to create an agency relationship with a Fiduciary acting as a Fiduciary.  Except as provided in this subsection (o), the Plan, the Trust, the Committee or another Fiduciary may act through agents.

(p)   Employer's Agent.  The Company shall act as agent for each Employer when acting hereunder.

(q)   Plan Administrator.  The term "Plan Administrator" has the meaning assigned to that term by ERISA Section 3(16)(A).  The Plan Administrator is the Committee acting as an Applicable Administrative Named Fiduciary or its delegate.

(r)   Composition of Committee.  The Committee shall consist, at a minimum, of the National Managing Partner.  The Committee may add additional members pursuant to procedures established in its by-laws.

(s)   By-Laws.  The Committee may always act by unanimous consent, shall adopt by-laws to govern its activities and may amend such by-laws from time to time.

11.2   Company Indemnity.  The Company shall indemnify and hold harmless each member or former member of the Committee and the Retirement and Benefits Committee of the Company (and each professional corporation whose shareholder-employee is or was a member of either such Committee) and each employee or Partner (and each shareholder-employee of each professional corporation Partner) to whom are delegated duties, responsibilities, and authority with respect to the Plan or Trust (each such person or entity, an "Indemnified Party") from and against any loss, damage, claim or expense (including reasonable attorneys' fees (collectively "Losses") suffered, sustained or incurred by such indemnified Party) by reason of any acts, omissions, or alleged acts or omissions arising out of or in connection with any activities of such Indemnified Party undertaken on behalf of the Plan or Trust or in furtherance of the activities of the Plan or Trust which are not the result of intentional acts or omissions knowingly in violation of the Plan, Trust or law.  This Company Indemnity shall operate in addition to, and not be in lieu of, or any other indemnities or contractual or insurance policy protections provided to any Indemnified Party in any other agreement (including the Partnership Agreement) or document; however, the Company shall not be required to pay an Indemnified Party for all or that portion of Losses for which the Indemnified Party has received full and complete reimbursement under such other indemnities, contracts or insurance policies.

11.3   Actions by the Company.  Whenever the Company has the authority to take action under this Plan, the following person or persons shall have the authority to act on behalf of the Company to the extent provided in the Partnership Agreement:

(a)   the Board of Directors;

(b)   the National Managing Partner; or

(c)   the delegates of the Company, the Board of Directors or the National Managing Partner under the terms of the Partnership Agreement.

11.4   Claims Procedure.

(a)   Definitions.  For purposes of this Section 11.4, the following words or phrases in quotes when capitalized shall have the meaning set forth below:

(1)     "Adverse Benefit Determination" means a denial, reduction or the termination of, or a failure to provide or make payment (in whole or in part) with respect to a Claim for a benefit, including any such denial, reduction, termination, or failure to provide or make payment that is based on a determination of a Participant's or Beneficiary's eligibility to participate in the Plan.

(2)     "Claim" means a request for a benefit or eligibility to participate in the Plan, made by a Claimant in accordance with the Plan's procedures for filing Claims, as described in this Section 11.4.

(3)     "Claimant" is defined in Section 11.4(b)(2).

(4)     "Notice" or "Notification" means the delivery or furnishing of information to an individual in a manner that satisfies applicable U.S. Department of Labor regulations with respect to material required to be furnished or made available to an individual.

(5)     "Relevant Documents" include documents, records or other information with respect to a Claim that:

(A)     were relied upon by the Claims Administrator in making the benefit determination;

(B)     were submitted to, considered by or generated for, the Claims Administrator in the course of making the benefit determination, without regard to whether such documents, records or other information were relied upon by the Claims Administrator in making the benefit determination;

(C)     demonstrate compliance with administrative processes and safeguards required in making the benefit determination; or

(D)     constitute a statement of policy or guidance with respect to the Plan concerning the denied benefit for the Participant's circumstances, without regard to whether such advice was relied upon by the Claims Administrator in making the benefit determination.

(b)     Procedure for Filing a Claim.  For a communication from a Claimant to constitute a valid Claim, it must satisfy the following paragraphs (1) and (2) below:

(1)     Any Claim submitted by a Claimant must be in writing on the appropriate Claim form (or in such other manner acceptable to the Claims Administrator) and delivered, along with any supporting comments, documents, records and other information, to the Claims Administrator in person, or by mail postage paid, to the address for the Claims Administrator provided in the Summary Plan Description.

(2)     Claims and appeals of denied Claims may be pursued by a Participant or an authorized representative of the Participant (each of whom shall be referred to in this Section as a "Claimant").  However, the Claims Administrator may establish reasonable

56

procedures for determining whether an individual has been authorized to act on behalf of a Participant.

      (c)    <u>Initial Claim Review</u>.  The initial Claim review shall be conducted by the Claims Administrator, with or without the presence of the Claimant, as determined by the Claims Administrator in its discretion.  The Claims Administrator shall consider the applicable terms and provisions of the Plan and amendments to the Plan, information and evidence that is presented by the Claimant and any other information it deems relevant.  In reviewing the Claim, the Claims Administrator also shall consider and be consistent with prior determinations of Claims from other Claimants who were similarly situated and which have been processed through the Plan's claims and appeals procedures within the past twenty-four (24) months.

      (d)    <u>Initial Benefit Determination</u>.

      (1)    The Claims Administrator shall notify the Claimant of the Claims Administrator's determination within a reasonable period of time, but in any event (except as described in paragraph (2) below) within ninety (90) days after receipt of the Claim by the Claims Administrator.

      (2)    The Claims Administrator may extend the period for making the benefit determination by ninety (90) days if it determines that such an extension is necessary due to matters beyond the control of the Plan and if it notifies the Claimant, prior to the expiration of the initial ninety (90) day period, of circumstances requiring the extension of time and the date by which the Claims Administrator expects to render a decision.

      (e)    <u>Manner and Content of Notification of Adverse Benefit Determination</u>.

      (1)    The Claims Administrator shall provide a Claimant with written or electronic Notice of any Adverse Benefit Determination, in accordance with applicable U.S. Department of Labor regulations.

      (2)    The Notification shall set forth in a manner calculated to be understood by the Claimant:

      (A)    The specific reason or reasons for the Adverse Benefit Determination;

      (B)    Reference to the specific provision(s) of the Plan on which the determination is based;

      (C)    Description of any additional material or information necessary for the Claimant to perfect the Claim and an explanation of why such material or information is necessary; and

      (D)    A description of the Plan's review procedures and the time limits applicable to such procedures, including a statement of the Claimant's right to bring a civil action under ERISA Section 502(a) following an Adverse Benefit Determination on review.

    (f)    Procedure for Filing a Review of an Adverse Benefit Determination.

    (1)    Any appeal of an Adverse Benefit Determination by a Claimant must be brought to the Committee within sixty (60) days after receipt of the Notice of the Adverse Benefit Determination.  Failure to appeal within such sixty (60) day period shall be deemed to be a failure to exhaust all administrative remedies under the Plan.  The appeal must be in writing using the appropriate form provided by the Claims Administrator (or in such other manner acceptable to the Claims Administrator); provided, however, that if the Claims Administrator does not provide the appropriate form, no particular form is required to be used by the Participant.  The appeal must be filed with the Claims Administrator at the address listed in the Summary Plan Description.

    (2)    A Claimant shall have the opportunity to submit written comments, documents, records and other information relating to the Claim.

    (3)    A Claimant shall be provided, upon request and free of charge, reasonable access to, and copies of, all documents, records, and other Relevant Documents.

    (g)    Review Procedures for Adverse Benefit Determinations.  The Claims Administrator shall provide a review that takes into account all comments, documents, records and other information submitted by the Claimant without regard to whether such information was submitted or considered in the initial benefit determination.

    (h)    Timing and Notification of Benefit Determination on Review.  The Claims Administrator shall notify the Claimant within a reasonable period of time, but in any event within sixty (60) days after the Claimant's request for review, unless the Claims Administrator determines that special circumstances require an extension of time for processing the review of the Adverse Benefit Determination.  If the Claims Administrator determines that an extension is required, written Notice shall be furnished to the Claimant prior to the end of the initial sixty (60) day period indicating the special circumstances requiring an extension of time and the date by which the Claims Administrator expects to render the determination on review, which in any event shall be within sixty (60) days from the end of the initial sixty (60) day period.  If such an extension is necessary due to a failure of the Claimant to submit the information necessary to decide the Claim, the period in which the Claims Administrator is required to make a decision shall be tolled from the date on which the notification is sent to the Claimant until the Claimant adequately responds to the request for additional information.

    (i)    Manner and Content of Notification of Benefit Determination on Review.  The Claims Administrator shall provide a written or electronic Notice of the Plan's benefit determination on review, in accordance with applicable U.S. Department of Labor regulations, that sets forth:

    (1)    The specific reason or reasons for the Adverse Benefit Determination;

    (2)    Reference to the specific provision(s) of the Plan on which the determination is based;

(3)     A statement that the Claimant is entitled to receive, upon request and free of charge, reasonable access to and copies of all Relevant Documents; and

(4)     A statement of the Claimant's right to bring a civil action under ERISA Section 502(a) following an Adverse Benefit Determination on review.

(j)     Statute of Limitations.  No cause of action may be brought by a Claimant who has received an Adverse Benefit Determination later than two (2) years following the date of such Adverse Benefit Determination.

(k)     Failure to Exhaust Administrative Remedies.  No legal action for a Benefit, including without limitation any lawsuit, may be brought by a Claimant who has not timely filed a Claim and an Appeal for such Benefit and otherwise exhausted all administrative remedies under the Plan.

11.5     Notices to Participants.  Any notice, report or statement given, made, delivered or transmitted to a Participant or any other person entitled to or claiming benefits under the Plan shall be deemed to have been duly given, made or transmitted when sent via messenger, delivery service, facsimile or mailed by first class mail with postage prepaid and addressed to the Participant or such person at the address last appearing on the records of the Claims Administrator or the Applicable Named Fiduciary, whichever is applicable.  A Participant or other person may record any change of his address from time to time by following the procedures established by the Claims Administrator.

11.6     Notices to Claims Administrator.  Any written direction, notice or other communication from Participants or any other person entitled to or claiming benefits under the Plan to the Claims Administrator shall be deemed to have been duly given, made or transmitted either (a) when delivered to such location as shall be specified upon the forms prescribed by the Claims Administrator for the giving of such direction, notice or other communication or (b) when otherwise received by the Claims Administrator.

11.7     Procedures for Domestic Relations Orders.  If the Applicable Administrative Named Fiduciary receives any written judgment, decree or order (including approval of a property settlement agreement) pursuant to State domestic relations or community property law relating to the provision of child support, alimony or marital property rights of a spouse, former spouse, child or other dependent of a Participant and purporting to provide for the payment of all or a portion of the Participant's Account Balance to or on behalf of one or more of such persons (such judgment, decree or order being hereinafter called a "domestic relations order"), the Applicable Administrative Named Fiduciary shall arrange to have the Participant and each other payee specified in such domestic relations order notified of its receipt and of the following procedures.  After receipt of a domestic relations order, the Applicable Administrative Named Fiduciary shall arrange for the determination of whether such order constitutes a QDRO and for the notification to the Participant and each payee named in such order in writing of such determination.  Such notice shall be written in a manner calculated to be understood by the parties and shall set forth specific reasons for the determination, and shall contain an explanation of the review procedure under the Plan.  The Applicable Administrative Named Fiduciary also shall arrange for each party to be advised that he or his duly authorized representative may

request a review of such determination by filing with the Applicable Administrative Named Fiduciary a written request for such review. The Applicable Administrative Named Fiduciary, or his designee, shall give each party affected by such request notice of such request for review. Each party also shall be informed that he may have reasonable access to pertinent documents and submit comments in writing to the Applicable Administrative Named Fiduciary in connection with such request for review. Each party shall be given written notice of the Applicable Administrative Named Fiduciary's final determination, which notice shall be written in a manner calculated to be understood by the parties and shall include specific reasons for such final determination. The Applicable Administrative Named Fiduciary shall establish the time periods in which the determination, a request for review thereof and the review by the Applicable Administrative Named Fiduciary shall be made, provided that the total of such time periods shall not be longer than eighteen (18) months from the date written evidence of a domestic relations order is received by the Applicable Administrative Named Fiduciary.

11.8   Responsibility to Furnish Information and Sign Documents. Each person entitled to receive a payment under the Plan shall file with the Applicable Administrative Named Fiduciary in writing his complete mailing address and each change therein. A check or communication mailed to any person at his address on file with the Applicable Administrative Named Fiduciary shall be deemed to have been received by such person for all purposes of the Plan, and subject to Section 8.1(b), neither the Applicable Administrative Named Fiduciary, the Employers nor the Trustee shall be obliged to search for or ascertain the location of any person. If the Applicable Administrative Named Fiduciary shall be in doubt as to whether payments are being received by the person entitled thereto, it shall, by registered mail addressed to the person concerned at his last address known to the Applicable Administrative Named Fiduciary, notify such person that all future benefit payments shall be withheld until such person submits to the Applicable Administrative Named Fiduciary evidence of his continued life and his proper mailing address.

11.9   Responsibility to Furnish Information and Sign Documents. Each person entitled to a payment under the Plan shall furnish such information and data, including birth certificates or other evidence of age satisfactory to the Applicable Administrative Named Fiduciary, and sign such documents as may reasonably be requested by the Applicable Administrative Named Fiduciary in connection with the administration of the Plan.

11.10   Notices, Delivery and Receipt.

(a)   Notices to Participants, Claimants Etc. Any notice or other communication provided by an Employer, Applicable Administrative Named Fiduciary, Claims Administrator or other person on behalf of or in connection with the Plan to a Participant, Claimant or any other person entitled to or claiming benefits under the Plan may be given, and thereby "Delivered" and "Received," if and only if:

(1)   it is in writing,

(2)   it is hand delivered, or it is sent via messenger service, delivery service, facsimile or United States mail with first class postage prepaid to such person, except in the case

60

of hand delivery, to the address or facsimile telephone number, as applicable, last appearing on the records of the Plan or the Employee's Employer,

   (3) the person giving such notice or other communication has:

     (A) in the case of hand delivery, written receipt of delivery signed by the Participant, Claimant or other person entitled to or claiming benefits under the Plan,

     (B) in the case of messenger or delivery service, written confirmation from the messenger or delivery service of delivery to such address, or

     (C) in the case of a facsimile, printed confirmation from the sending facsimile machine indicating that the transmission was received by the receiving facsimile machine, and

     (4) in the case of a facsimile, the facsimile transmission is followed by a paper copy of the communication sent to such Participant, Claimant or other person via next business day messenger or delivery service no later than the latter of the business day after the facsimile is transmitted or the deadline for Delivery of such notice or other communication.

   Any such notice or other communication properly given pursuant to the preceding sentence shall be considered given and thereby Delivered and Received:

     (A) in the case of hand delivery or messenger or delivery service, at such time as is evidenced by such receipt or confirmation,

     (B) in the case of delivery by facsimile, at the time of such facsimile confirmation, or

     (C) in the case of delivery by United States mail, ten (10) days after deposit in the United States mail or, if earlier, upon actual delivery to the appropriate address.

   A Participant, Claimant or other person may record any change of his address or facsimile telephone number from time to time by Delivery of written Notice to the Applicable Administrative Named Fiduciary.

   (b) <u>Notices to Employers or Applicable Administrative Named Fiduciary</u>. Any notice or other communication provided by a Participant, Claimant or any other person entitled to or claiming benefits under the Plan to an Employer, the Applicable Administrative Named Fiduciary or Claims Administrator may be given, and thereby "Delivered" and "Received," if and only if:

   (1) it is in writing,

   (2) it is sent via messenger service, delivery service or United States mail with first class postage prepaid, to the Employer, Applicable Administrative Named Fiduciary or

Claims Administrator, as applicable, to the address specified in the summary plan description for giving such notice or other communication, and

   (3)  the person giving such notice or other communication has:

      (A)  in the case of a messenger or delivery service, written confirmation of the messenger or delivery service of delivery to such address, or

      (B)  in the case of United States mail, written evidence from the United States Postal Service of delivery to such address.

    Any such notice or other communication properly given pursuant to the preceding sentence shall be considered given and thereby Delivered and Received:

      (1)  in the case of messenger or delivery service, at such time of delivery as is evidenced by such receipt or confirmation, or

      (2)  in the case of delivery by United States mail, at the time of delivery as indicated by such evidence.

  11.11 <u>Records</u>.  Each Applicable Administrative Named Fiduciary shall keep or cause to be kept a record of all of its proceedings and shall keep or cause to be kept all books of accounts, records and other data as may be necessary or advisable in its judgment for the administration of the Plan.

  11.12 <u>Relationship of Trustee to Third Parties</u>.   No person shall be obliged to see to the application of any money paid or property delivered to the Trustee, nor shall any such person be required to take cognizance of the provisions of the Plan or the Trust Agreement.  The certificate of the Trustee, signed by it or by its duly authorized agent, may be received by any person dealing with the Trustee as conclusive evidence of any matter relating to the Plan or the Trust Agreement.  In general, each person dealing with the Trustee may act upon any advice, request or representation in writing by it, or its duly authorized agent, and shall not be liable to any Participant or Beneficiary in so doing.  In case of doubt as to whether the Trustee has or has not been granted any power hereunder, its certificate that the exercise of such power is necessary or desirable for the proper administration of the Trust shall be conclusive upon all persons dealing with it and all beneficiaries hereunder, to the same extent as if such power had been specifically granted to it.

# ARTICLE XII

## ADOPTION AND WITHDRAWAL FROM PLAN

12.1    Procedure for Adoption.   Any Commonly Controlled Entity which is both a professional corporation and a Partner may, by resolution of such Commonly Controlled Entity's board of directors, adopt the Plan for the benefit of the shareholder-employee of the Commonly Controlled Entity as of the date specified in the board resolution.   No such adoption shall be effective until such adoption has been approved by the Company.   A list of each Commonly Controlled Entity that has adopted the Plan as of the Effective Date is scheduled in Appendix 12.1.

12.2    Procedure for Withdrawal.   Any Employer (other than the Company) may, by resolution of the board of directors of such Employer, with the consent of the Company and subject to such conditions as may be imposed by the Company, terminate its adoption of the Plan.   Notwithstanding the foregoing, an Employer shall be deemed to have terminated its adoption of the Plan when it ceases to be a Commonly Controlled Entity or a Partner; provided however, for so long as an Employer is a Working Counsel it will not be deemed to have terminated its adoption of the Plan until it ceases to be a Working Counsel.

## ARTICLE XIII

## AMENDMENT, TERMINATION AND MERGER

13.1    Amendments.

(a)    Power to Amend. To the extent permitted by law and except as limited by law, the Company may at any time and from time to time amend, suspend or modify the Plan, in whole or in part, by written instrument duly adopted by the Company. Any such amendment, suspension or modification shall become effective on such date as the Company or such person, as the case may be, determines, and may apply retroactively or prospectively to Participants at the time thereof, as well as to future Participants; provided, however, that no amendment shall:

(1)    increase the duties or liabilities of the Trustee or the Committee without its written consent; and

(2)    except to the extent permissible under ERISA and the Code, make it possible for any portion of the Trust assets to be distributed to an Employer.

(b)    Restriction on Amendment. No amendment to the Plan shall deprive a Participant of his nonforfeitable rights to the Account Balance on the effective date of the amendment.

13.2    Plan Termination. It is the expectation of the Company that it shall continue the Plan and the payment of Contributions hereunder indefinitely, but the continuation of the Plan and the payment of Contributions hereunder is not assumed as a contractual obligation of the Company or any other Employer. The Company reserves the right, at any time, by action taken by the Company to terminate the Plan, or to reduce, suspend or discontinue its or any other Employer's Contributions hereunder; provided, however, that the Contributions for any Plan Year accrued or determined prior to the end of such year shall not after the end of such year be retroactively reduced, suspended or discontinued except as may be permitted by law. Upon termination of the Plan or a complete discontinuance of Contributions, unclaimed amounts shall be applied as forfeitures and any unallocated amounts shall be allocated to Participants who are Eligible Employees as of the date of such termination or discontinuance on the basis of Compensation for the Plan Year (or short Plan Year). In the event of termination of the Plan, the Applicable Administrative Named Fiduciary shall direct the Trustee to distribute to each Participant the entire amount of his Account Balance as soon as administratively possible, as if all Participants who are Employees had incurred a Termination of Employment on the Plan's termination date. Such distribution may be, as determined by the Company, contingent on the receipt of a favorable determination letter from the Internal Revenue Service regarding the qualified status of the Plan at termination.

13.3    Plan Merger and Spinoff. The Plan shall not merge or consolidate with, or transfer any assets or liabilities to any other plan, unless each person entitled to benefits would receive a benefit immediately after the merger, consolidation or transfer (if the Plan were then terminated) that is equal to or greater than the benefit he would have been entitled to

64

immediately before the merger, consolidation or transfer (if the Plan were then terminated).  The Company shall amend or take such other action as is necessary to amend the Plan in order to satisfy the requirements applicable to any merger, consolidation or transfer of assets and liabilities.

13.4    <u>Design Decisions</u>.  Decisions regarding the design of the Plan (including any decision to amend or terminate, or to not amend or terminate the Plan) shall be made in a settlor capacity and shall not be governed by the fiduciary responsibility provisions of ERISA.

## ARTICLE XIV

## SPECIAL TOP-HEAVY RULES

14.1    Application of Article XIV.  This Article XIV shall apply only if the Plan is Top-Heavy, as defined below.  If, as of any Top-Heavy Determination Date, as defined below, the Plan is Top-Heavy, the provisions of Section 14.4 shall take effect as of the first day of the Plan Year next following the Top-Heavy Determination Date and shall continue to be in effect until the first day of any subsequent Plan Year following a Top-Heavy Determination Date as of which it is determined that the Plan is no longer Top-Heavy.

14.2    Definitions Concerning Top-Heavy Status.  In addition to the definitions set forth in Article I, the following definitions shall apply for purposes of this Article XIV, and shall be interpreted in accordance with the provisions of Code Section 416:

(a)    "Aggregation Group" means a group of Company Plans consisting of each Company Plan in the Required Aggregation Group and each other Company Plan selected by the Company for inclusion in the Aggregation Group that would not, by its inclusion, prevent the group of Company Plans included in the Aggregation Group from continuing to meet the requirements of Code Sections 401(a)(4) and 410.

(b)    "Annual Compensation" means compensation for a calendar year within the meaning of Treasury Regulation § 1.415-2(d)(11)(ii) to the extent that such compensation does not exceed the annual compensation limit in effect for the calendar year under Code Section 401(a)(17).

(c)    "Company Plan" means any plan of any Commonly Controlled Entity that is, or that has been determined by the Internal Revenue Service to be, qualified under Code Section 401(a) or 403(a).

(d)    "Key Employee" means any employee or Self-Employed Individual of any Commonly Controlled Entity who satisfies the criteria set forth in Code Section 416(i)(1).

(e)    "Required Aggregation Group" means one or more Company Plans comprising each Company Plan in which a Key Employee is a participant and each Company Plan that enables any Company Plan in which a Key Employee is a participant to meet the requirements of Code Section 401 (a)(4) or 410.

(f)    "Top-Heavy" means the Plan is included in an Aggregation Group under which, as of the Top-Heavy Determination Date, the sum of the actuarial present value of the cumulative benefits for Key Employees under all defined benefit plans in the Aggregation Group and the aggregate of the accounts of Key Employees under all defined contribution plans in the Aggregation Group exceeds sixty percent (60%) of the analogous sum determined for all employees.  The determination of whether the Plan is Top-Heavy shall be made in accordance with Code Section 416(g)(2)(B).

66

(g)    "Top-Heavy Determination Date" means the December 31 immediately preceding the Plan Year for which the determination is made.

(h)    "Top-Heavy Ratio" means the percentage calculated in accordance with subparagraph (f), above, and Code Section 416(g)(2).

(i)    "Top-Heavy Year" means a Plan Year for which the Plan is Top-Heavy.

14.3    Calculation of Top-Heavy Ratio. The Top-Heavy Ratio with respect to any Plan Year shall be determined in accordance with the following rules:

(a)    Determination of Account Balance. The benefit of any current Participant shall be calculated, as of the most recent valuation date that is within a 12-month period ending on the Top-Heavy Determination Date, as if the Participant had voluntarily terminated employment as of such valuation date. Such valuation date shall be the same valuation date used for computing plan costs for purposes of the minimum funding provisions of Code Section 412. Unless, as of the valuation date, the Plan provides for a nonproportional subsidy, the actuarial present value of the accrued benefit shall reflect a retirement income commencing at age 65 (or attained age, if later). If, as of the valuation date, the Plan provides for a nonproportional subsidy, the benefit shall be assumed to commence at the age at which the benefit is most valuable. The present values of accrued benefits and the amounts of account balances of an employee as of the Top-Heavy Determination Date shall be increased by the distributions made with respect to the employee under the Plan and any plan aggregated with the plan under Code Section 416(g)(2) during the 1-year period ending on the Top-Heavy Determination Date. The preceding sentence also shall apply to distributions under a terminated plan that, had it not been terminated, would have been aggregated with the plan under Code Section 416(g)(2)(A)(i). In the case of a distribution made for a reason other than severance from service, death, or disability, this provision shall be applied by substituting "5-year period" for "1-year period." The accrued benefits and accounts of any individual who has not performed services for the employer during the 1-year period ending on the determination date shall not be taken into account.

(b)    Aggregation. The Plan shall be aggregated with all Company Plans included in the Aggregation Group.

14.4    Minimum Contribution. Notwithstanding Article III, as of the last day of each Top-Heavy Year, the Employer shall make, for each Participant (a) the contributions it otherwise would have made under the Plan for such Top-Heavy Year, or if greater (b) contributions for such Top-Heavy Year that, when added to the contributions made by the Employer for such Participant (and any forfeitures allocated to his Accounts) for such Top-Heavy Year under all other defined contribution plans of any Commonly Controlled Entity, aggregate three percent (3%) of his Annual Compensation; provided that the Plan shall meet the requirements of this Section 14.4 without taking into account pre-tax contributions or other employer contributions attributable to a salary reduction or similar arrangement.

14.5     <u>Effect of Discontinuance of Top-Heavy Status</u>.  If, for any Plan Year after a Top-Heavy Year, the Plan is no longer Top-Heavy, the provisions of Section 14.4 shall not apply with respect to such Plan Year.

14.6     <u>Intent of Article XIV</u>.  This Article XIV is intended to satisfy the requirements imposed by Code Section 416 and shall be construed in a manner that shall effectuate this intent. This Article XIV shall not be construed in a manner that would impose requirements on the Plan that are more stringent than those imposed by Code Section 416.

**ARTICLE XV**

**MISCELLANEOUS PROVISIONS**

15.1   <u>Assignment and Alienation</u>.  As provided by Code Section 401(a)(13) and to the extent not otherwise required by law, no benefit provided by the Plan may be anticipated, assigned or alienated, except to create, assign or recognize a right to any benefit with respect to a Participant pursuant to a QDRO.

15.2   <u>Protected Benefits</u>.  All benefits that are protected by, and only to the extent required by, the terms of Code Section 411(d)(6) and ERISA Section 204(g), which cannot be eliminated without adversely affecting the qualified status of the Plan, shall be provided under this Plan to Participants for whom such benefits are protected.

15.3   <u>Plan Does Not Affect Employment Rights</u>.  The Plan does not provide any employment rights to any Employee.  The Employer expressly reserves the right to discharge an Employee at any time, with or without cause, without regard to the effect such discharge would have upon the Employee's interest in the Plan.

15.4   <u>Deduction of Taxes from Amounts Payable</u>.  The Trustee shall deduct from the amount to be distributed such amount as the Applicable Administrative Named Fiduciary, in his sole discretion, deems proper to protect the Trustee and the Plan's assets held under the Trust Agreement against liability for the payment of death, succession, inheritance, income, or other taxes, and out of money so deducted, the Trustee may discharge any such liability and pay the amount remaining to the Participant, the Beneficiary or the deceased Participant's estate, as the case may be.

15.5   <u>Facility of Payment</u>.  If a Participant is declared an incompetent or is a minor and a conservator, guardian, or other person legally charged with his care has been appointed, any benefits to which such Participant is entitled shall be payable to such conservator, guardian, or other person legally charged with his care.  The decision of the Applicable Administrative Named Fiduciary in such matters shall be final, binding, and conclusive upon the Employer and the Trustee and upon each Participant, and every other person or party interested or concerned.  An Employer, the Trustee and the Applicable Administrative Named Fiduciary shall not be under any duty to see to the proper application of such payments.

15.6   <u>Source of Benefits</u>.  All benefits payable under the Plan shall be paid or provided for solely from the Plan's assets held under the Trust Agreement and the Employers assume no liability or responsibility therefor.

15.7   <u>Reduction for Overpayment</u>.  The Applicable Administrative Named Fiduciary will, whenever it determines that a person has received benefit payments under this Plan in excess of the amount to which the person is entitled under the terms of the Plan, make a reasonable attempt to collect such overpayment from the person.  The Plan shall have a lien, in the amount of any overpayment, which may be set off against further amounts payable to or on account of the person who received the overpayment.

15.8    Company Merger.   In the event any successor corporation to the Company elects to adopt the Plan, such successor corporation shall be substituted hereunder for the Company upon filing in writing with the Trustee its election so to do.

15.9    Employees' Trust.   The Plan and Trust Agreement are created for the exclusive purpose of providing benefits to the Participants and Beneficiaries of the Plan and defraying reasonable expenses of administering the Plan.   The Plan and Trust Agreement shall be interpreted and operated in a manner consistent with their being, respectively, a Plan described in Code Sections 401(a) and 401(k) and Trust Agreement exempt under Code Section 501(a).   The Company and the Committee are authorized to the fullest extent allowed by law to take whatever action may be required to correct any such interpretational or operational violation that would result in the Plan not being a Plan described in Code Sections 401(a) and 401(k) and Trust Agreement exempt under Code Section 501(a).   At no time shall the assets of the Plan be diverted from the above purpose.

15.10   Construction.   Unless the contrary is plainly required by the context, wherever any words are used herein in the masculine gender, they shall be construed as though they were also used in the feminine gender, and vice versa; wherever any words are used herein in the singular form, they shall be construed as though they were also used in the plural form, and vice versa; and wherever the words "herein," "hereof," "hereunder," and words of similar import are used, they shall be construed to refer to the Plan in its entirety and not only to the portion of the Plan in which they appear.  Any election, direction, notice or designation (or similar action) to be made by a Participant hereunder shall be made in such manner as is provided for by, and acceptable to, the Applicable Administrative Named Fiduciary.   No such election, direction, notice or designation (or similar action) shall be deemed to have been given to the Applicable Administrative Named Fiduciary unless it is properly completed and delivered to the Applicable Administrative Named Fiduciary in accordance with the procedures established by such Applicable Administrative Named Fiduciary for such purpose, and shall take effect at such time as is established by the Applicable Administrative Named Fiduciary, which in any event shall not be earlier than is administratively possible.

15.11   Invalidity of Certain Provisions.   If any provision of this Plan shall be held invalid or unenforceable, such invalidity or unenforceability shall not affect any other provisions hereof and the Plan shall be construed and enforced as if such provisions, to the extent invalid or unenforceable, had not been included.

15.12   Headings.   The headings or articles are included solely for convenience of reference, and if there is any conflict between such headings and the text of this Plan, the text shall control.

15.13   Governing Law.   The Plan shall be construed, administered and regulated in accordance with the provisions of ERISA and, to the extent not preempted thereby, in accordance with the laws of the State of Illinois, without regard to its choice of law rules.

15.14   Reliance on Information Provided to Plan.   Notwithstanding anything contained herein to the contrary, if an individual is provided a statement in confirmation of any election or information provided to the Plan by such individual hereunder, the election or information

reflected on such confirmation statement shall be deemed to be accurate and may be conclusively relied upon for all purposes hereunder unless the individual timely demonstrates to the Applicable Administrative Named Fiduciary, in the form and manner established by the Applicable Administrative Named Fiduciary, that the election or information reflected on the confirmation statement is not what the individual had originally delivered to the Applicable Administrative Named Fiduciary.

[SIGNATURE PAGE FOLLOWS]

71

Executed this 16th day of October, 2007.


**KATTEN MUCHIN ROSENMAN LLP**

By: _____
Managing Partner


72

**APPENDIX 1.49**

**Maximum Savers**

Maximum Savers means the following Self-Employed Individual, and if a corporation, its Shareholder-Employee:

| Maximum Savers | Date Ceased to be a Maximum Saver |
|---|---|
| James K. Baer | 8/31/97 |
| Sheldon I. Banoff, P.C. | |
| Steven L. Bashwiner, P.C. | |
| Howard L. Bernstein | 3/4/98 |
| Alan M. Berry, P.C. | |
| Victor H. Bezman, P.C. | |
| Joan E. Boros | 2/16/98 |
| Jeffrey H. Brodsky | 10/1/96 |
| David A. Bronner, P.C. | 2/28/01 |
| Matthew S. Brown | |
| Joel G. Chefitz | 5/3/02 |
| J. Marshall Coleman | 5/1/96 |
| Alan D. Croll | |
| Donald E. Egan, P.C. | 10/6/96 |
| William M. Gerek | 4/15/98 |
| Randall J. Gingiss | 8/31/95 |
| Angel Gomez III | 1/31/01 |
| Lewis Greenbaum | |
| Russell E. Greenblatt, P.C. | |
| Arthur W. Hahn | |
| Arnold S. Harrison, P.C. | 6/11/01 |
| Michael O. Hartz | |
| Robin Heiss | 4/29/05 |
| David S. Heller | 5/31/97 |
| Ted S. Helwig | |

| Maximum Savers | Date Ceased to be a Maximum Saver |
|---|---|
| Linda B. Hirschson | 7/26/96 |
| Janet Goelz Hoffman | |
| Maurice Jacobs, P.C. | 11/11/97 |
| Jane A. Kanter | 6/16/97 |
| Melvin L. Katten, P.C. | 7/31/04 |
| Synde B. Keywell | 10/22/95 |
| Thomas J. Leanse | |
| Stephen D. Libowsky | 5/10/02 |
| Michael R. Marget, P.C. | 12/31/95 |
| Nina B. Matis, P.C. | |
| William E. Mattingly, P.C. | |
| Richard A. Miller | 7/15/96 |
| Allan B. Muchin, P.C. | 5/31/04 |
| Arthur B. Muir, P.C. | 2/28/00 |
| Glenn A. Nadell | 2/13/95 |
| Stephen M. Neumer | 1/31/02 |
| Melvin E. Pearl, P.C. | 7/31/04 |
| Daniel M. Pelliccioni, P.C. | 4/30/02 |
| Gerald M. Penner, P.C. | 1/31/04 |
| Nancy J. Rich | |
| John N. Romans | 9/6/96 |
| Susan B. Schneider | 4/16/99 |
| David B. Schulman, P.C. | 9/1/01 |
| Richard M. Seligman, P.C. | 1/31/04 |
| Russell B. Selman | |
| Vincent A.F. Sergi, P.C. | |
| David R. Shevitz, P.C. | |
| Harvey M. Silets | 1/23/07 |
| Richard B. Silverman, P.C. | 7/31/95 |
| Cyril V. Smith, Jr. | 1/31/96 |

| Maximum Savers | Date Ceased to be a Maximum Saver |
|---|---|
| Robert Y. Sperling, P.C. | 7/22/02 |
| Robert M. Star | 12/22/00 |
| Marcia W. Sullivan, P.C. | |
| Lawrence J. Ulman | 7/22/96 |
| David E. Van Iderstine, Jr. | 10/15/95 |
| Jerry B. Wallack | 7/7/00 |
| Richard W. Waller, P.C. | 1/31/99 |
| Herbert S. Wander, P.C. | |
| Howard Weitzman Professional Corporation | 8/31/95 |
| Kenneth R. Wylie | 9/5/00 |
| Michael Wm. Zavis, P.C. | 3/31/01 |

## APPENDIX 12.1

### Commonly Controlled Entities That Have Adopted
### the Plan and Participate as of the Effective Date

| Commonly Controlled Entity | Date Ceased to be a Partner | Date Ceased to be an Employer (Except as Provided Below) |
|---|---|---|
| | Partner | Employer |
| Sheldon I. Banoff, P.C. | | |
| Steven L. Bashwiner, P.C. | | |
| Alan M. Berry, P.C. | | |
| Victor H. Bezman, P.C. | | |
| David A. Bronner, P.C. | 2/28/01 | 2/28/01 |
| Richard F. Davis, a Professional Corporation | 5/28/98 | 5/28/98 |
| Donald E. Egan, P.C. | 10/6/96 | 10/6/96 |
| Russell E. Greenblatt, P.C. | | |
| Francis X. Grossi, Jr., P.C. | 5/19/95 | 5/19/95 |
| Arnold S. Harrison, P.C. | 6/11/01 | 6/11/01 |
| Maurice Jacobs, P.C. | 11/11/97 | 11/11/97 |
| Melvin L. Katten, P.C. | 7/31/04 | 3/31/06 |
| Floyd A. Mandell, P.C. | | |
| Michael R. Marget, P.C. | 12/31/95 | 12/31/95 |
| Nina B. Matis, P.C. | | |
| William E. Mattingly, P.C. | | |

| Commonly Controlled Entity | Date Ceased to be a Partner | Date Ceased to be an Employer (Except as Provided Below) |
|---|---|---|
| | Partner | Employer |
| Allan B. Muchin, P.C. | 5/31/04 | 5/31/04 |
| Arthur B. Muir, P.C. | 2/28/00 | 2/28/00 |
| Terry E. Newman, P.C. | | |
| Arthur E. Pape, P.C. | 4/30/97 | 4/30/97 |
| Melvin E. Pearl, P.C. | 7/31/04 | 7/31/04 |
| Daniel M. Pelliccioni, P.C. | 4/30/02 | 4/30/02 |
| Gerald M. Penner, P.C. | 1/31/04 | * |
| Howard M. Richard, P.C. | 1/31/07 | * |
| Barnett P. Ruttenberg, P.C. | 12/31/02 | 12/31/02 |
| David B. Schulman, P.C. | 9/1/01 | 9/1/01 |
| Richard M. Seligman, P.C. | 1/31/04 | 1/31/04 |
| Vincent A.F. Sergi, P.C. | | |
| Steven A. Shapiro, P.C. | | |
| David R. Shevitz, P.C. | | |
| Richard B. Silverman, P.C. | 7/31/95 | 7/31/95 |
| Earl B. Slavitt, P.C. | 11/20/03 | 11/20/03 |
| Robert Y. Sperling, P.C. | 7/22/02 | 7/22/02 |

| Commonly Controlled Entity | Date Ceased to be a Partner | Date Ceased to be an Employer (Except as Provided Below) |
|---|---|---|
| | Partner | Employer |
| Marcia W. Sullivan, P.C. | | |
| Richard W. Waller, P.C. | 1/31/99 | 1/31/99 |
| Herbert S. Wander, P.C. | | |
| Lee Ann Watson, P.C. | 6/30/96 | 6/30/96 |
| Howard Weitzman Professional Corporation | 8/31/95 | 8/31/95 |
| Michael Wm. Zavis, P.C. | 3/31/01 | 3/31/01 |

\*    Notwithstanding that an Employer ceases to be a Partner, for so long as an Employer qualifies as a Working Counsel, the professional corporation will be considered an Employer but only with respect to its shareholder-employees eligibility to make a Participant Contribution.

# FIRST AMENDMENT TO THE
## KATTEN MUCHIN ROSENMAN LLP
### DEFINED CONTRIBUTION PLAN
#### (As Amended and Restated Effective January 1, 2007)

WHEREAS, Katten Muchin Rosenman LLP (the "Company") has established and maintains the Katten Muchin Rosenman LLP Defined Contribution Plan (the "DCP"), as amended and restated generally effective January 1, 2007;

WHEREAS, the Company has the power to amend the DCP pursuant to Section 13.1 of the DCP; and

WHEREAS, the Company desires to amend the DCP to clarify provisions in the restatement.

NOW, THEREFORE, the DCP be and is hereby amended, effective as of January 1, 2007, as follows:

*1. The text of subsection 1.48(a) is hereby deleted and replaced with the following language:*

"(a)  is an Employee of an Employer and such Employer both (1) is a Partner who is a "Non-Capital Partner" of the Company (as such term is defined by the Partnership Agreement) as of December 31 of such Plan Year; and (2) has, for the fiscal year of the Company ended January 31 in the Plan Year under consideration, financial income (as determined by the Company's compensation committee) from the Company of less than the applicable compensation limit under Section 401(a)(17) of the Code, as adjusted, in effect as of the first day of such Plan Year."

*2. The text of subsection 1.48(b) is hereby deleted and replaced with the following language:*

"(b)  is a Self-Employed Individual and both (1) is a Partner who is a "Non-Capital Partner" of the Company (as such term is defined by the Partnership Agreement) as of December 31 of such Plan Year; and (2) has, for the fiscal year of the Company ended January 31 in the Plan Year under consideration, financial income (as determined by the Company's compensation committee) from the Company of less than the applicable compensation limit under Section 401(a)(17) of the Code, as adjusted, in effect as of the first day of such Plan Year."

*3.  The text of subsection 11.1(r) is hereby deleted and replaced with the following language:*

> "Composition of Committee.  The Committee shall consist, at a minimum, of the National Managing Partner.  The Company may remove, appoint or add additional members of the Committee."

IN WITNESS WHEREOF, the Company hereby adopts this Amendment this *15 TH* day of *May* , 2008.

KATTEN MUCHIN ROSENMAN LLP

BY:    VINCENT A. F. SERGI, P.C.

By: _____
By:  Vincent A. F. Sergi
Its:  National Managing Partner

## KATTEN MUCHIN ROSENMAN LLP
## ACTION OF THE
## NATIONAL MANAGING PARTNER

The undersigned, being the national managing partner of Katten Muchin Rosenman LLP, an Illinois limited liability partnership (the "Company"), hereby takes the following action and adopts the following resolutions for and on behalf of the Company pursuant to authority delegated under the terms of the partnership agreement of the Company:

**WHEREAS,** the Company has established and maintains the Katten Muchin Rosenman LLP Defined Contribution Plan (the "DCP"), as amended and restated generally effective January 1, 2007;

**WHEREAS,** the Company has the power to amend the DCP pursuant to Section 13.1 of the DCP;

**WHEREAS,** the Company desires to amend the DCP to incorporate changes as requested by the Internal Revenue Service during its review of the Plan for a favorable determination letter request, to reflect new regulations under Section 415 of the Internal Revenue Code of 1986, as amended, and to add other desirable provisions;

**NOW, THEREFORE, BE IT RESOLVED,** that the second amendment to the DCP is hereby approved and adopted, substantially in the form attached hereto as *Exhibit A*, generally effective as of January 1, 2007;

**FURTHER RESOLVED,** that the Qualified Plan Administration and Investment Committee, or delegates thereof, are authorized and directed to take all actions they deem necessary or desirable to effect the foregoing resolution, including executing such documents as are necessary to effect such amendment of the DCP.

KATTEN MUCHIN ROSENMAN LLP

BY:    VINCENT A. F. SERGI, P.C.

By: _____

By:  Vincent A. F. Sergi
Its:  National Managing Partner

Date: _____12-12-08_____

## Exhibit A

### Second Amendment to the
### Katten Muchin Rosenman LLP Defined Contribution Plan

(As Attached)

**SECOND AMENDMENT TO THE
KATTEN MUCHIN ROSENMAN LLP
DEFINED CONTRIBUTION PLAN
(As Amended and Restated Effective January 1, 2007)**

---

**WHEREAS**, Katten Muchin Rosenman LLP (the "Company") has established and maintains the Katten Muchin Rosenman LLP Defined Contribution Plan (the "DCP"), as amended and restated generally effective January 1, 2007;

**WHEREAS**, the Company has the power to amend the DCP pursuant to Section 13.1 of the DCP; and

**WHEREAS**, the Company desires to amend the DCP to incorporate changes as requested by the Internal Revenue Service during its review of the Plan for a favorable determination letter request, to reflect new regulations under Section 415 of the Internal Revenue Code of 1986, as amended, and to add other desirable provisions in the restatement.

**NOW, THEREFORE**, the DCP be and is hereby amended, effective as of the dates specified below:

1.      *Effective January 1, 2007, the parenthetical "(within the meaning of Treasury Regulation § 1.415(c)-2(d))" is deleted within Section 1.20 of the Plan, and replaced with the following parenthetical:*

"(for plan years prior to January 1, 2008, within the meaning of Treasury Regulation § 1.415-2(d)(2) and (3))"

2.      *Effective January 1, 2008, the parenthetical "(for plan years prior to January 1, 2008, within the meaning of Treasury Regulation § 1.415-2(d)(2) and (3))" is deleted within Section 1.20 of the Plan, and replaced with the following parenthetical:*

"(for plan years beginning January 1, 2008, within the meaning of Treasury Regulation § 1.415(c)-2(b) and (c))"

3.     *Effective January 1, 2008, the following paragraph is added to the end of Section 1.20:*

"Effective January 1, 2008, Compensation shall include all amounts received as compensation for personal services during the Participant's regular working hours, or compensation for services outside the Participant's regular working hours (such as overtime or shift differential), commissions, bonuses, or other similar payment and any payment that would have been paid prior to the Participant's severance from employment if the Participant had continued in ~~employment with the Employer, provided that such amounts are paid by the later of 2-1/2~~ months after the severance from employment or by the end of the Plan Year that includes the severance from employment. Any other payment of compensation paid after the participant's severance from employment that is not described above, is not considered Compensation, even if payment is made within the time period specified above."

4.     *Effective January 1, 2008, the following is added to the end of Section 4.6:*

"Effective January 1, 2008, references to Code Section 415 correction methods for excess annual additions, deferrals and contributions, as described in Section 4.5, will be available for the Plan as permitted and described under the Revenue Procedure 2006-27, Revenue Procedure 2008-50 or other successor Revenue Procedures for the Employee Plans Compliance Resolution System or other similar guidance."

5.     *Effective January 1, 2008, the following is added to the end of Section 8.5:*

"Effective for distributions first occurring on or after January 1, 2008, a non-spouse Beneficiary may direct the Applicable Administrative Named Fiduciary to have any portion of an Eligible Rollover Distribution paid directly to an individual retirement account described in Code Section 408(a) or an individual retirement annuity described in Code Section 408(b), other than an endowment contract, which has been established by the non-spouse Beneficiary to receive the Eligible Rollover Distribution in accordance with Section 402(c)(11) of the Code that is treated as an inherited IRA."

6.     *Effective January 1, 2007, the following is added to the end of Section 9.6 thereof:*

"In the event of a single sum distribution in which a Beneficiary does not elect to have such distribution paid directly to an Eligible Retirement Plan or to receive such distribution directly, as described in this Section 9.6, amounts from the Roth Catch-up Account, Roth Contribution Account, and Roth Rollover Account shall be paid in a direct rollover to a Roth IRA described in Code Section 408A."

7.   *Effective January 1, 2007, the following is added to the end of Section 11.5 thereof:*

"In any process or procedure for administering the Plan, the Committee may use alternative media, including, but not limited to, telephone, facsimile, computer, or other such electronic means as are available. The use of such alternative media shall be deemed to satisfy any Plan provision requiring a "written" document or an instrument to be signed "in writing" to the extent permissible under the Code and ERISA."

8.   *Effective January 1, 2002, the phrase "severance from service" is deleted from the penultimate sentence of subsection 14.3(a) of the Plan, and replaced with the following:*

"severance from employment".

**KATTEN MUCHIN ROSENMAN LLP**

**BY:   VINCENT A. F. SERGI, P.C.**

By: _____

By: Vincent A. F. Sergi

Its: National Managing Partner

Date: _____ *12 - 12 - 08* _____

### KATTEN MUCHIN ROSENMAN LLP
### ACTION OF THE
### NATIONAL MANAGING PARTNER

The undersigned, being the national managing partner of Katten Muchin Rosenman LLP, an Illinois limited liability partnership (the "Company"), hereby takes the following action and adopts the following resolutions for and on behalf of the Company pursuant to authority delegated under the terms of the partnership agreement of the Company:

WHEREAS, the Company has established and maintains the Katten Muchin Rosenman LLP Defined Contribution Plan (the "DCP"), as amended and restated generally effective January 1, 2007;

WHEREAS, the Company has the power to amend the DCP pursuant to Section 13.1 of the DCP; and

WHEREAS, the Company desires to amend the DCP to comply with the Pension Protection Act of 2006, the Heroes Earnings Assistance and Relief Tax Act of 2008, the Worker, Retiree, and Employer Recovery Act of 2008 and to add other desirable provisions;

NOW, THEREFORE, BE IT RESOLVED, that the third amendment to the DCP is hereby approved and adopted, substantially in the form attached hereto as *Exhibit A*, effective as of the dates set forth therein;

FURTHER RESOLVED, that the Qualified Plan Administration and Investment Committee, or delegates thereof, are authorized and directed to take all actions they deem necessary or desirable to effect the foregoing resolution, including executing such documents as are necessary to effect such amendment of the DCP.


KATTEN MUCHIN ROSENMAN LLP

BY:    VINCENT A. F. SERGI, P.C.


By: _____

By: Vincent A. F. Sergi
Its: National Managing Partner


CHI02_60765256_2

## Exhibit A

## Third Amendment to the
## Katten Muchin Rosenman LLP Defined Contribution Plan

(As Attached)

**THIRD AMENDMENT TO THE
KATTEN MUCHIN ROSENMAN LLP
DEFINED CONTRIBUTION PLAN
(As Amended and Restated Effective January 1, 2007)**

**WHEREAS,** Katten Muchin Rosenman LLP (the "Company") has established and maintains the Katten Muchin Rosenman LLP Defined Contribution Plan (the "DCP"), as amended and restated generally effective January 1, 2007;

**WHEREAS,** the Company has the power to amend the DCP pursuant to Section 13.1 of the DCP; and

**WHEREAS,** the Company desires to amend the DCP to comply with the Pension Protection Act of 2006, the Heroes Earnings Assistance and Relief Tax Act of 2008, the Worker, Retiree, and Employer Recovery Act of 2008 and to add other desirable provisions.

**NOW, THEREFORE,** the DCP be and is hereby amended, as follows:

1. *Effective January 1, 2007, subsection 1.11 is amended by adding the following sentence to the end thereof:*

   In the case of a Participant who dies while performing qualified military service (as defined in Code Section 414(u)), the survivors of the Participant are entitled to any additional benefits (other than allocations relating to the period of qualified military service) provided under the Plan as if the Participant had resumed employment and then died.

2. *Effective January 1, 2008, subsection 1.26 is amended by deleting the period at the end and replacing it with the following:*

   or non-spousal Beneficiary.

3. *Effective January 1, 2008, subsection 1.32 is amended by adding the following sentence to the end thereof:*

   Effective January 1, 2008, "Eligible Retirement Plan" includes a Roth IRA described in Code Section 408A.

4. *Effective January 1, 2008, subsection 1.33 is amended by adding "or non-spousal Beneficiary" immediately after "Distributee" where it first appears in that subsection.*

CHI02_60765256_2

5. *Effective January 1, 2010, subsection 3.1(b) is amended by deleting "(100% with respect to bonuses)" and replacing it with "(0% with respect to bonuses)."*

6. *Effective January 1, 2009, subsection 7.7 is amended by adding the following new subsection 7.7(f):*

   (f)    Default to Discontinue 2009 Required Minimum Distributions. Notwithstanding subsection 7.7 of the Plan, a Participant or Beneficiary who would have been required to receive required minimum distributions for 2009 but for the enactment of Code Section 401(a)(9)(H) ("2009 RMDs"), and who would have satisfied that requirement by receiving distributions that are (1) equal to the 2009 RMDs or (2) one or more payments in a series of substantially equal distributions (that include the 2009 RMDs) made at least annually and expected to last for the life (or life expectancy) of the Participant, the joint lives (or joint life expectancy) of the Participant and the Participant's designated Beneficiary, or for a period of at least 10 years, will not receive those distributions for 2009. In addition, notwithstanding subsection 7.7 of the Plan, and solely for purposes of applying the direct rollover provisions of the Plan, 2009 RMDs will be treated as Eligible Rollover Distributions.

7. *Effective January 1, 2008, subsection 9.5 is amended by adding the following to the end thereof:*

   With respect to any cash payment hereunder that constitutes an Eligible Rollover Distribution, a non-spousal Beneficiary may direct the Applicable Administrative Named Fiduciary to have such payment paid to an individual retirement account described in Code Section 408(a) or an individual retirement annuity described in Code Section 408(b), other than an endowment contract, which has been established by the non-spouse Beneficiary to receive the Eligible Rollover Distribution in accordance with Code Section 402(c)(ii).

8. *Effective March 25, 2009, Appendix 1.49 is amended by inserting "March 25, 2009" next to Russel B. Sellman's name as the date he ceased to be a Maximum Saver.*

9. *The Plan is further amended to make any conforming changes necessary to effect these amendments.*

10. *If any typographical or other drafting error is discovered in this Amendment document, it shall be corrected and such correction shall have the same force and effect as if originally contained in the Amendment and, except to the extent*

*necessary to give effect to this Amendment, the Plan shall otherwise remain unchanged.*

IN WITNESS WHEREOF, the Company hereby adopts this Amendment this _22_ day of _December_ 2009.

KATTEN MUCHIN ROSENMAN LLP

BY:    VINCENT A. F. SERGI, P.C.

By: _____

By:  Vincent A. F. Sergi
Its:  National Managing Partner

CHI02_60765256_2

**KATTEN MUCHIN ROSENMAN LLP**
**ACTION OF THE**
**NATIONAL MANAGING PARTNER**

The undersigned, being the national managing partner of Katten Muchin Rosenman LLP, an Illinois limited liability partnership (the "Company"), hereby takes the following action and adopts the following resolutions for and on behalf of the Company pursuant to authority delegated under the terms of the partnership agreement of the Company:

**WHEREAS,** the Company has established and maintains the Katten Muchin Rosenman LLP Defined Contribution Plan (the "DCP"), as amended and restated generally effective January 1, 2007;

**WHEREAS,** the Company has the power to amend the DCP pursuant to Section 13.1 of the DCP; and

**WHEREAS,** the Company desires to amend the DCP to change the eligibility and benefit provisions;

**NOW, THEREFORE, BE IT RESOLVED,** that the fourth amendment to the DCP is hereby approved and adopted, substantially in the form attached hereto as *Exhibit A*, effective as of the dates set forth therein;

**FURTHER RESOLVED,** that the Qualified Plan Administration and Investment Committee, or delegates thereof, are authorized and directed to take all actions they deem necessary or desirable to effect the foregoing resolution, including executing such documents as are necessary to effect such amendment of the DCP.

**KATTEN MUCHIN ROSENMAN LLP**

**BY:   VINCENT A. F. SERGI, P.C.**

By: _____
By:  Vincent A. F. Sergi
Its:  National Managing Partner

**Exhibit A**

**Fourth Amendment to the
Katten Muchin Rosenman LLP Defined Contribution Plan**

(As Attached)

CHI02_60847371_3

**FOURTH AMENDMENT TO THE**
**KATTEN MUCHIN ROSENMAN LLP**
**DEFINED CONTRIBUTION PLAN**
**(As Amended and Restated Effective January 1, 2007)**

WHEREAS, Katten Muchin Rosenman LLP (the "Company") has established and maintains the Katten Muchin Rosenman LLP Defined Contribution Plan (the "DCP"), as amended and restated generally effective January 1, 2007;

WHEREAS, the Company has the power to amend the DCP pursuant to Section 13.1 of the DCP; and

WHEREAS, the Company desires to amend the DCP to change the eligibility and benefit provisions.

NOW, THEREFORE, the DCP be and is hereby amended, as follows:

*1.   Effective January 1, 2010, subsection 1.21(e) is amended by replacing "six percent (6%)" with " 7.5%".*

*2.   Effective January 1, 2010, section 1.48 is deleted and all subsequent sections in Article I are renumbered and all cross-references are updated accordingly.*

*3.   Effective January 1, 2010, subsection 2.1(b) is amended to read:*

(b)   Integrated Employee.   Each Employee shall become a Participant with respect to receiving Base and Excess Contributions for Compensation recognized under the Plan as of the date he is classified by the Company as in a position that meets the definition of "Integrated Employee." For Plan Years beginning before January 1, 2010, each Integrated Employee became a Participant with respect to receiving Base and Excess Contributions for Compensation recognized under the Plan on and after the first January 1, April 1, July 1 or October 1 on or after the date he completed at least one Year of Service.

*4.   Effective January 1, 2010, subsection 2.1(c) is amended to read:*

(c)   Profit Sharing Employee. Each Employee shall become a Participant with respect to receiving Profit Sharing Contributions for Compensation recognized under the Plan as of the date he is classified by the Company as in a position that meets the definition of "Profit Sharing Employee." For Plan Years beginning before January 1, 2010, each Profit Sharing Employee became a Participant with respect to receiving Profit Sharing Contributions for Compensation recognized under the Plan on and after the first January 1, April 1, July 1 or October 1 on or after the date he completed at least one Year of Service.

CHI02_60847371_3

5.    *Effective January 1, 2010, Section 2.2 is amended to read:*

    2.2    <u>Participation Upon Change of Job Status</u>.  An Employee who is not an Eligible Employee but later becomes an Eligible Employee shall become a Participant for each purpose under Section 2.1 on the date he becomes an Eligible Employee.

6.    *Effective January 1, 2010, subsection 3.1(a)(3) is amended by deleting the phrase "first day of the second month following the month in which" in the first sentence and replacing it with the following:*

    sixtieth (60th) day after

7.    *Effective January 1, 2010, subsection 3.3(b) is amended to read:*

    (b)    <u>Allocation Method</u>.    Each Integrated Participant shall receive an allocation of the Base and Excess Contributions determined using the formula below that yields the largest allocation:

    (1)    The Base Contribution for each period shall be allocated among eligible Participants in direct proportion to their Compensation, not to exceed 6%; provided that no Base Contributions shall be made based upon a Participant's Compensation in excess of the Integration Level.  The Excess Contribution for each period shall be a percentage of the Participant's Compensation in excess of the Integration Level equal to the percentage determined for such Participant by adding (1) the percentage determined by dividing the Base Contribution by the Participant's Compensation not in excess of the Integration Level plus (2) the maximum excess allowance permitted by Code Section 401(l).    If any Base Contribution or Excess Contribution remains unallocated, it shall be allocated among eligible Participants in direct proportion to their Compensation.

    (2)    7.5% of each eligible Participant's Compensation or, if less, the maximum amount that shall result in the Participant's annual addition not to exceed the maximum amount permitted under Code Section 415; provided, however, that any reduction to any Profit Sharing Contribution to prevent an excess annual addition for such Participant shall be made before any reduction to the Base and Excess Contributions.

8.    *Effective January 1, 2010, subsection 3.4(b) is amended by replacing "six percent (6%)" in the first sentence with "7.5%".*

9.    *Effective January 1, 2011, subsection 7.5(f) is amended by replacing "cash lump sum" with "lump sum in cash or in kind".*

10.    *Effective January 1, 2011, subsection 7.5(h) is amended by deleting the word "cash".*

11.    *Effective January 1, 2011, subsection 8.3 is amended by replacing "cash in" with "cash or in kind in the".*

12.    *Effective January 1, 2011, subsection 8.5 is amended by deleting the word "cash".*

13.    *Effective January 1, 2011, subsection 9.4 is amended by replacing the period with "or in kind."*

14.    *Effective January 1, 2011, subsection 9.5 is amended by deleting the word "cash" wherever it appears.*

15.    *Effective January 21, 2010, Appendix 12.1 is amended by replacing the asterisks in the third column of page 2 concerning Gerald M. Penner, P.C. with "1/21/10".*

16.    *The Plan is further amended to make any conforming changes necessary to effect these amendments.*

17.    *If any typographical or other drafting error is discovered in this Amendment document, it shall be corrected and such correction shall have the same force and effect as if originally contained in the Amendment and, except to the extent necessary to give effect to this Amendment, the Plan shall otherwise remain unchanged.*


IN WITNESS WHEREOF, the Company hereby adopts this Amendment this 16 th day of December, 2010.



**KATTEN MUCHIN ROSENMAN LLP**

BY:    **VINCENT A. F. SERGI, P.C.**


By: _____
By:  Vincent A. F. Sergi
Its:  National Managing Partner

**KATTEN MUCHIN ROSENMAN LLP**
**ACTION OF THE**
**NATIONAL MANAGING PARTNER**

The undersigned, being the national managing partner of Katten Muchin Rosenman LLP, an Illinois limited liability partnership (the "Company"), hereby takes the following action and adopts the following resolutions for and on behalf of the Company pursuant to authority delegated under the terms of the partnership agreement of the Company:

**WHEREAS,** the Company has established and maintains the Katten Muchin Rosenman LLP Defined Contribution Plan (the "DCP"), as amended and restated generally effective January 1, 2007;

**WHEREAS,** the Company has the power to amend the DCP pursuant to Section 13.1 of the DCP; and

**WHEREAS,** the Company desires to amend the DCP to change the eligibility and benefit provisions;

**NOW, THEREFORE, BE IT RESOLVED,** that the fourth amendment to the DCP is hereby approved and adopted, substantially in the form attached hereto as *Exhibit A*, effective as of the dates set forth therein;

**FURTHER RESOLVED,** that the Qualified Plan Administration and Investment Committee, or delegates thereof, are authorized and directed to take all actions they deem necessary or desirable to effect the foregoing resolution, including executing such documents as are necessary to effect such amendment of the DCP.

**KATTEN MUCHIN ROSENMAN LLP**

BY:   **VINCENT A. F. SERGI, P.C.**

By: _____
By: Vincent A. F. Sergi
Its: National Managing Partner

**Exhibit A**

**Fourth Amendment to the
Katten Muchin Rosenman LLP Defined Contribution Plan**

(As Attached)

**FOURTH AMENDMENT TO THE**
**KATTEN MUCHIN ROSENMAN LLP**
**DEFINED CONTRIBUTION PLAN**
**(As Amended and Restated Effective January 1, 2007)**

**WHEREAS,** Katten Muchin Rosenman LLP (the "Company") has established and maintains the Katten Muchin Rosenman LLP Defined Contribution Plan (the "DCP"), as amended and restated generally effective January 1, 2007;

**WHEREAS,** the Company has the power to amend the DCP pursuant to Section 13.1 of the DCP; and

**WHEREAS,** the Company desires to amend the DCP to change the eligibility and benefit provisions.

**NOW, THEREFORE,** the DCP be and is hereby amended, as follows:

1.      *Effective January 1, 2010, subsection 1.21(e) is amended by replacing "six percent (6%)" with " 7.5%".*

2.      *Effective January 1, 2010, section 1.48 is deleted and all subsequent sections in Article I are renumbered and all cross-references are updated accordingly.*

3.      *Effective January 1, 2010, subsection 2.1(b) is amended to read:*

> (b)      Integrated Employee.  Each Employee shall become a Participant with respect to receiving Base and Excess Contributions for Compensation recognized under the Plan as of the date he is classified by the Company as in a position that meets the definition of "Integrated Employee." For Plan Years beginning before January 1, 2010, each Integrated Employee became a Participant with respect to receiving Base and Excess Contributions for Compensation recognized under the Plan on and after the first January 1, April 1, July 1 or October 1 on or after the date he completed at least one Year of Service.

4.      *Effective January 1, 2010, subsection 2.1(c) is amended to read:*

> (c)      Profit Sharing Employee. Each Employee shall become a Participant with respect to receiving Profit Sharing Contributions for Compensation recognized under the Plan as of the date he is classified by the Company as in a position that meets the definition of "Profit Sharing Employee." For Plan Years beginning before January 1, 2010, each Profit Sharing Employee became a Participant with respect to receiving Profit Sharing Contributions for Compensation recognized under the Plan on and after the first January 1, April 1, July 1 or October 1 on or after the date he completed at least one Year of Service.

5.    *Effective January 1, 2010, Section 2.2 is amended to read:*

        2.2   <u>Participation Upon Change of Job Status</u>.  An Employee who is not an Eligible Employee but later becomes an Eligible Employee shall become a Participant for each purpose under Section 2.1 on the date he becomes an Eligible Employee.

6.    *Effective January 1, 2010, subsection 3.1(a)(3) is amended by deleting the phrase "first day of the second month following the month in which" in the first sentence and replacing it with the following:*

sixtieth (60th) day after

7.    *Effective January 1, 2010, subsection 3.3(b) is amended to read:*

        (b)   <u>Allocation Method</u>.   Each Integrated Participant shall receive an allocation of the Base and Excess Contributions determined using the formula below that yields the largest allocation:

        (1)   The Base Contribution for each period shall be allocated among eligible Participants in direct proportion to their Compensation, not to exceed 6%; provided that no Base Contributions shall be made based upon a Participant's Compensation in excess of the Integration Level.   The Excess Contribution for each period shall be a percentage of the Participant's Compensation in excess of the Integration Level equal to the percentage determined for such Participant by adding (1) the percentage determined by dividing the Base Contribution by the Participant's Compensation not in excess of the Integration Level plus (2) the maximum excess allowance permitted by Code Section 401(l).    If any Base Contribution or Excess Contribution remains unallocated, it shall be allocated among eligible Participants in direct proportion to their Compensation.

        (2)   7.5% of each eligible Participant's Compensation or, if less, the maximum amount that shall result in the Participant's annual addition not to exceed the maximum amount permitted under Code Section 415; provided, however, that any reduction to any Profit Sharing Contribution to prevent an excess annual addition for such Participant shall be made before any reduction to the Base and Excess Contributions.

8.    *Effective January 1, 2010, subsection 3.4(b) is amended by replacing "six percent (6%)" in the first sentence with "7.5%".*

9.    *Effective January 1, 2011, subsection 7.5(f) is amended by replacing "cash lump sum" with "lump sum in cash or in kind".*

CHI02_60847371_3

10.    *Effective January 1, 2011, subsection 7.5(h) is amended by deleting the word "cash".*

11.    *Effective January 1, 2011, subsection 8.3 is amended by replacing "cash in" with "cash or in kind in the".*

12.    *Effective January 1, 2011, subsection 8.5 is amended by deleting the word "cash".*

13.    *Effective January 1, 2011, subsection 9.4 is amended by replacing the period with "or in kind."*

14.    *Effective January 1, 2011, subsection 9.5 is amended by deleting the word "cash" wherever it appears.*

15.    *Effective January 21, 2010, Appendix 12.1 is amended by replacing the asterisks in the third column of page 2 concerning Gerald M. Penner, P.C. with "1/21/10".*

16.    *The Plan is further amended to make any conforming changes necessary to effect these amendments.*

17.    *If any typographical or other drafting error is discovered in this Amendment document, it shall be corrected and such correction shall have the same force and effect as if originally contained in the Amendment and, except to the extent necessary to give effect to this Amendment, the Plan shall otherwise remain unchanged.*


IN WITNESS WHEREOF, the Company hereby adopts this Amendment this 16 th day of December, 2010.


**KATTEN MUCHIN ROSENMAN LLP**

**BY:    VINCENT A. F. SERGI, P.C.**

By: _____
By:  Vincent A. F. Sergi
Its:  National Managing Partner

CHI02_60847371_3

## KATTEN MUCHIN ROSENMAN LLP
## ACTION OF THE
## NATIONAL MANAGING PARTNER

The undersigned, being the national managing partner of Katten Muchin Rosenman LLP, an Illinois limited liability partnership (the "Company"), hereby takes the following action and adopts the following resolutions for and on behalf of the Company pursuant to authority delegated under the terms of the partnership agreement of the Company:

**WHEREAS**, the Company has established and maintains the Katten Muchin Rosenman LLP Defined Contribution Plan (the "DCP"), as amended and restated generally effective January 1, 2007;

**WHEREAS**, the Company has the power to amend the DCP pursuant to Section 13.1 of the DCP; and

**WHEREAS**, prior to January 31, 2011, Nina B. Matis, P.C. was a Partner of the Company;

**WHEREAS**, effective January 31, 2011, Nina B. Matis, P.C. became Of Counsel of the Company;

**WHEREAS**, by operation of the Plan, Nina B. Matis, P.C. ceased being a Maximum Saver, effective January 31, 2011, as determined under Section 1.64 of the DCP;

**WHEREAS**, the Company desires to amend Appendix 1.49 and Appendix 12.1 of the DCP to reflect the date Nina B. Matis, P.C. transitioned to Of Counsel; therefore, ceasing to be a Maximum Saver under the DCP;

**NOW, THEREFORE, BE IT RESOLVED**, that the fifth amendment to the DCP is hereby approved and adopted, substantially in the form attached hereto as *Exhibit A*, effective as of the dates set forth therein;

**FURTHER RESOLVED**, that the Qualified Plan Administration and Investment Committee, or delegates thereof, are authorized and directed to take all actions they deem necessary or desirable to effect the foregoing resolution, including executing such documents as are necessary to effect such amendment of the DCP.

KATTEN MUCHIN ROSENMAN LLP

BY:   VINCENT A. F. SERGI, P.C.

By: _Vincent A. F. Sergi_
By:  Vincent A. F. Sergi
Its:  National Managing Partner

**<u>Exhibit A</u>**

**<u>Fifth Amendment to the</u>**
**<u>Katten Muchin Rosenman LLP Defined Contribution Plan</u>**

(As Attached)

**FIFTH AMENDMENT TO THE**
**KATTEN MUCHIN ROSENMAN LLP**
**DEFINED CONTRIBUTION PLAN**
**(As Amended and Restated Effective January 1, 2007)**

**WHEREAS,** Katten Muchin Rosenman LLP (the "Company") has established and maintains the Katten Muchin Rosenman LLP Defined Contribution Plan (the "DCP"), as amended and restated generally effective January 1, 2007;

**WHEREAS,** the Company has the power to amend the DCP pursuant to Section 13.1 of the DCP; and

**WHEREAS,** the Company desires to amend Appendix 1.49 and Appendix 12.1 of the DCP to reflect the date Nina B. Matis, P.C. transitioned to Of Counsel; therefore, also ceasing to be a Maximum Saver under the DCP.

**NOW, THEREFORE,** the DCP be and is hereby amended, as follows:

*1.     Effective January 31, 2011, Appendix 1.49 is amended by adding "1/31/11" in the second column of page 2 concerning Nina B. Matis, P.C.*

*2.     Effective January 31, 2011, Appendix 12.1 is amended by adding "1/31/11" in the second column of page 1 concerning Nina B. Matis, P.C.*

*3.     Effective January 31, 2011, Appendix 12.1 is amended by adding an asterisks in the third column of page 1 concerning Nina B. Matis, P.C.*

*4.     The Plan is further amended to make any conforming changes necessary to effect these amendments.*

*5.     If any typographical or other drafting error is discovered in this Amendment document, it shall be corrected and such correction shall have the same force and effect as if originally contained in the Amendment and, except to the extent necessary to give effect to this Amendment, the Plan shall otherwise remain unchanged.*

IN WITNESS WHEREOF, the Company hereby adopts this Amendment this _6th_ day of January _____, 2012.

**KATTEN MUCHIN ROSENMAN LLP**

**BY:    VINCENT A. F. SERGI, P.C.**

By: *Vincent A. F. Sergi*

By:  Vincent A. F. Sergi
Its:  National Managing Partner

CHI02_60943908_1

## KATTEN MUCHIN ROSENMAN LLP
## ACTION OF THE
## NATIONAL MANAGING PARTNER

The undersigned, being the national managing partner of Katten Muchin Rosenman LLP, an Illinois limited liability partnership (the "Company"), hereby takes the following action and adopts the following resolutions for and on behalf of the Company pursuant to authority delegated under the terms of the partnership agreement of the Company:

**WHEREAS**, the Company has established and maintains the Katten Muchin Rosenman LLP Defined Contribution Plan (the "DCP"), as amended and restated generally effective January 1, 2007;

**WHEREAS**, the Company has the power to amend the DCP pursuant to Section 13.1 of the DCP;

**WHEREAS**, the Company desires to amend the DCP to reflect that a participant's non-spouse, non-dependent beneficiary under the DCP will be treated the same as the participant's spouse or dependents for purposes of a deemed financial need under the DCP, as permitted by the Pension Protection Act of 2006;

**WHEREAS**, prior to February 1, 2012, Steven L. Bashwiner, P.C. and William E. Mattingly, P.C. were Partners of the Company;

**WHEREAS**, effective February 1, 2012, Steven L. Bashwiner, P.C. and William E. Mattingly, P.C. became Of Counsel of the Company;

**WHEREAS**, by operation of the Plan, Steven L. Bashwiner, P.C. and William E. Mattingly, P.C. ceased being Maximum Savers, effective January 31, 2012, as determined under Section 1.64 of the DCP;

**WHEREAS**, the Company desires to amend Appendix 1.49 and Appendix 12.1 of the DCP to reflect the date Steven L. Bashwiner, P.C. and William E. Mattingly, P.C. transitioned to Of Counsel status; therefore, ceasing to be Maximum Savers under the DCP; and

**WHEREAS**, the Company desires to amend the DCP so that a participant who receives a distribution of less than his or her entire Account Balance may have the opportunity to designate the Plan accounts from which such distribution is made;

**NOW, THEREFORE, BE IT RESOLVED**, that the sixth amendment to the DCP is hereby approved and adopted, substantially in the form attached hereto as *Exhibit A*, effective as of the dates set forth therein; and

**FURTHER RESOLVED,** that the Qualified Plan Administration and Investment Committee, or delegates thereof, are authorized and directed to take all actions they deem necessary or desirable to effect the foregoing resolution, including executing such documents as are necessary to effect such amendment of the DCP.

**KATTEN MUCHIN ROSENMAN LLP**
**BY:    VINCENT A. F. SERGI, P.C.**

By: _____

By:  Vincent A. F. Sergi
Its:  National Managing Partner

_11 - 15 - 12_

Date

CHI02_61017984_2

**Exhibit A**

**Sixth Amendment to the**
**Katten Muchin Rosenman LLP Defined Contribution Plan**

(As Attached)

### SIXTH AMENDMENT TO THE
### KATTEN MUCHIN ROSENMAN LLP
### DEFINED CONTRIBUTION PLAN
#### (As Amended and Restated Effective January 1, 2007)

**WHEREAS**, Katten Muchin Rosenman LLP (the "Company") has established and maintains the Katten Muchin Rosenman LLP Defined Contribution Plan (the "DCP"), as amended and restated generally effective January 1, 2007;

**WHEREAS**, the Company has the power to amend the DCP pursuant to Section 13.1 of the DCP;

**WHEREAS**, the Company desires to amend Section 7.2 of the DCP to reflect that a beneficiary under the DCP will be treated the same as a participant's spouse or dependents for purposes of a deemed financial need under the DCP; and

**WHEREAS**, the Company desires to amend Appendix 1.49 and Appendix 12.1 of the DCP to reflect the date Steven L. Bashwiner, P.C. and William E. Mattingly, P.C. transitioned to Of Counsel status; therefore, also ceasing to be Maximum Savers under the DCP.

**NOW, THEREFORE**, the DCP be and is hereby amended, as follows:

*1.    Effective immediately, Sections 7.2(b)(2), (b)(3) and (b)(5) are amended by adding "or Beneficiary" after "(d)(1)(B))"where it appears.*

*2.    Effective January 31, 2012, Appendix 1.48 is amended by adding "1/31/12"in the second column of page 1 concerning Steven L. Bashwiner, P.C.*

*3.    Effective January 31, 2012, Appendix 1.48 is amended by adding "1/31/12"in the second column of page 2 concerning William E. Mattingly, P.C.*

*4.    Effective January 31, 2012, Appendix 12.1 is amended by adding "1/31/12" in the second column of page 1 concerning Steven L. Bashwiner, P.C.*

*5.    Effective January 31, 2012, Appendix 12.1 is amended by adding "1/31/12" in the third column of page 1 concerning Steven L. Bashwiner, P.C.*

*6.    Effective January 31, 2012, Appendix 12.1 is amended by adding "1/31/12" in the second column of page 1 concerning William E. Mattingly, P.C.*

*7.    Effective January 31, 2012, Appendix 12.1 is amended by adding an asterisk in the third column of page 1 concerning William E. Mattingly, P.C.*

8.      *Effective immediately, Section 7.5(g) is amended by adding a new penultimate paragraph, to read as follows:*

> *"Notwithstanding the foregoing, but subject to any applicable limits under the Code, an Active Participant or Inactive Participant who makes a withdrawal under Section 7.3 or 7.4, respectively, may designate on his or her application for the withdrawal the extent to which such withdrawal will be taken from one or more of his or her Accounts, and if no such designation is made, or to the extent such designation does not identify sufficient funds for the withdrawal, the foregoing ordering rules shall be applied."*

9.      *The Plan is further amended to make any conforming changes necessary to effect these amendments.*

10.     *If any typographical or other drafting error is discovered in this Amendment document, it shall be corrected and such correction shall have the same force and effect as if originally contained in the Amendment and, except to the extent necessary to give effect to this Amendment, the Plan shall otherwise remain unchanged.*

IN WITNESS WHEREOF, the Company hereby adopts this Amendment this _15th_ day of November, 2012.

KATTEN MUCHIN ROSENMAN LLP
BY:    VINCENT A. F. SERGI, P.C.


By:
By:  Vincent A. F. Sergi
Its:  National Managing Partner

### KATTEN MUCHIN ROSENMAN LLP
### ACTION OF THE
### NATIONAL MANAGING PARTNER

The undersigned, being the national managing partner of Katten Muchin Rosenman LLP, an Illinois limited liability partnership (the "Company"), hereby takes the following action and adopts the following resolutions for and on behalf of the Company pursuant to authority delegated under the terms of the partnership agreement of the Company:

**WHEREAS**, the Company has established and maintains the Katten Muchin Rosenman LLP Defined Contribution Plan (the "DCP"), as amended and restated generally effective January 1, 2007;

**WHEREAS**, the Company has the power to amend the DCP pursuant to Section 13.1 of the DCP;

**WHEREAS**, prior to January 1, 2013, Thomas J. Leanse was a Partner of the Company;

**WHEREAS**, effective January 1, 2013, Thomas J. Leanse became Of Counsel of the Company;

**WHEREAS**, by operation of the Plan, Thomas J. Leanse ceased being a Maximum Saver, after December 31, 2012, pursuant to Section 1.63(c) of the DCP; and

**WHEREAS**, the Company desires to amend Appendix 1.49 of the DCP to reflect that Thomas J. Leanse became Of Counsel and; therefore, ceased to be a Maximum Saver under the DCP;

**NOW, THEREFORE, BE IT RESOLVED**, that the seventh amendment to the DCP is hereby approved and adopted, substantially in the form attached hereto as *Exhibit A*, effective as of the dates set forth therein; and

**FURTHER RESOLVED**, that the Qualified Plan Administration and Investment Committee, or delegates thereof, are authorized and directed to take all actions they deem necessary or desirable to effect the foregoing resolution, including executing such documents as are necessary to effect such amendment of the DCP.

**KATTEN MUCHIN ROSENMAN LLP**

BY:    **VINCENT A. F. SERGI, P.C.**

By: _____

By: Vincent A. F. Sergi

Its: National Managing Partner

CHI02_61035686_3

## Exhibit A

### Seventh Amendment to the
### Katten Muchin Rosenman LLP Defined Contribution Plan

(As Attached)

**SEVENTH AMENDMENT TO THE
KATTEN MUCHIN ROSENMAN LLP
DEFINED CONTRIBUTION PLAN
(As Amended and Restated Effective January 1, 2007)**

**WHEREAS**, Katten Muchin Rosenman LLP (the "Company") has established and maintains the Katten Muchin Rosenman LLP Defined Contribution Plan (the "DCP"), as amended and restated generally effective January 1, 2007;

**WHEREAS**, the Company has the power to amend the DCP pursuant to Section 13.1 of the DCP; and

**WHEREAS**, the Company desires to amend Appendix 1.49 of the DCP to reflect the date Thomas J. Leanse became Of Counsel; therefore, also ceasing to be a Maximum Saver under the DCP.

**NOW, THEREFORE**, the DCP be and is hereby amended, as follows:

*1.     Effective December 31, 2012, Appendix 1.49 is amended by adding "12/31/12" in the second column of page 2 concerning Thomas J. Leanse.*

*2.     The Plan is further amended to make any conforming changes necessary to effect these amendments.*

*3.     If any typographical or other drafting error is discovered in this Amendment document, it shall be corrected and such correction shall have the same force and effect as if originally contained in the Amendment and, except to the extent necessary to give effect to this Amendment, the Plan shall otherwise remain unchanged.*

IN WITNESS WHEREOF, the Company hereby adopts this Amendment this 30th day of January, 2013.

KATTEN MUCHIN ROSENMAN LLP

BY:    VINCENT A. F. SERGI, P.C.

By: _____
By: Vincent A. F. Sergi
Its: National Managing Partner

CHI02_61035686_3

# KATTEN MUCHIN ROSENMAN LLP
## ACTION OF THE CHAIRPERSON

The undersigned, being the Chairperson of Katten Muchin Rosenman LLP, an Illinois limited liability partnership (the "Company"), hereby takes the following action and adopts the following resolutions for and on behalf of the Company pursuant to authority delegated under the terms of the partnership agreement of the Company:

**WHEREAS**, the Company has established and maintains the Katten Muchin Rosenman LLP Defined Contribution Plan (the "Plan"), as amended and restated generally effective January 1, 2007;

**WHEREAS**, the Company has the power to amend the Plan pursuant to Section 13.1 of the Plan;

**WHEREAS**, prior to January 31, 2013, Steven A. Shapiro, P.C. was a Partner of the Company and an Employer, as defined in the Plan;

**WHEREAS**, as of April 29, 2013, Mark L. Farley, P.C. became a Partner of the Company and an Employer, as defined in the Plan;

**WHEREAS**, prior to May 31, 2013, Alan M. Berry, P.C. was a Partner of the Company;

**WHEREAS**, effective June 1, 2013, the role of "National Managing Partner" was eliminated from the Company's partnership agreement and generally replaced with the roles of "Chairperson" and/or "Chief Executive Officer;"

**WHEREAS**, the Company desires to amend Appendix 12.1 of the Plan to reflect that Steven A. Shapiro, ceased to be a Partner of the Company and Employer under the Plan, effective January 31, 2013;

**WHEREAS**, the Company desires to amend Appendix 12.1 of the Plan to reflect that Mark L. Farley, P.C., became a Partner of the Company and Employer under the Plan, effective April 29, 2013;

**WHEREAS**, the Company desires to amend Appendix 12.1 and Appendix 1.48 of the Plan to reflect that Alan M. Berry, ceased to be Partner of the Company, became Of Counsel, and ceased to be a Maximum Saver under the Plan;

**WHEREAS**, the Company desires to amend the references to "National Managing Partner" throughout the Plan, to "Chairperson or Chief Executive Officer;" and

**WHEREAS**, the Company desires to clarify the term "Working Counsel" as it is defined under the Plan;

**NOW, THEREFORE, BE IT RESOLVED**, that the eighth amendment to the Plan is hereby approved and adopted, substantially in the form attached hereto as *Exhibit A*, effective as of the dates set forth therein; and

**FURTHER RESOLVED**, that the Qualified Plan Administration and Investment Committee, or delegates thereof, are authorized and directed to take all actions they deem necessary or desirable to effect the foregoing resolution, including executing such documents as are necessary to effect such amendment of the Plan.

Dated:  December **3 0**, 2013

KATTEN MUCHIN ROSENMAN LLP

BY:   VINCENT A. F. SERGI, P.C.

By: _____

By:  Vincent A. F. Sergi

Its:  Chairperson

US_100148368_2

**Exhibit A**

**Eighth Amendment to the
Katten Muchin Rosenman LLP Defined Contribution Plan**

(As Attached)

US_100148368_2

**EIGHTH AMENDMENT TO THE**
**KATTEN MUCHIN ROSENMAN LLP**
**DEFINED CONTRIBUTION PLAN**
**(As Amended and Restated Effective January 1, 2007)**

**WHEREAS**, Katten Muchin Rosenman LLP (the "Company") has established and maintains the Katten Muchin Rosenman LLP Defined Contribution Plan (the "Plan"), as amended and restated generally effective January 1, 2007;

**WHEREAS**, the Company has the power to amend the Plan pursuant to Section 13.1 of the Plan;

**WHEREAS**, the Company desires to amend Appendix 12.1 of the Plan to reflect that Steven A. Shapiro, ceased to be a Partner of the Company and Employer under the Plan, effective January 31, 2013;

**WHEREAS**, the Company desires to amend Appendix 12.1 of the Plan to reflect that Mark L. Farley, P.C., became a Partner of the Company and Employer under the Plan, effective April 29, 2013;

**WHEREAS**, the Company desires to amend Appendix 12.1 and Appendix 1.48 of the Plan to reflect that Alan M. Berry, ceased to be Partner of the Company, became Of Counsel, and ceased to be a Maximum Saver under the Plan, effective May 31, 2013;

**WHEREAS**, the Company desires to amend the references to "National Managing Partner" throughout the Plan, to "Chairperson or Chief Executive Officer," effective June 1, 2013; and

**WHEREAS**, the Company desires to clarify the term "Working Counsel" as it is defined under the Plan, effective January 1, 2007;

**NOW, THEREFORE**, the Plan be and is hereby amended, as follows:

1.      *Effective June 1, 2013, Section 1.50 is amended by adding the following sentence to the end thereof:*

> Effective June 1, 2013, the role of the National Managing Partner was replaced with the "Chairperson" or "Chief Executive Officer" as determined under the Company's partnership agreement.

2.      *Effective January 1, 2007, Section 1.82 is amended by replacing it with the following:*

> 1.82    "Working Counsel" means an Of Counsel who has Compensation as a practicing attorney from the Company and (a) with respect to a Self-Employed Individual, an individual who is expected to render a stated number of hours of billable or non-billable time deemed to be directly or indirectly for the benefit of the Company, as determined in the sole discretion of the Company with respect to each calendar year, or (b) with respect

to an Employer, such Employer, but only if the shareholder-employee of such Employer is an individual who is expected to render a stated number of hours of billable or non-billable time deemed to be directly or indirectly for the benefit of the Company, as determined in the sole discretion of the Company, with respect to each calendar year.

3.      *Effective June 1, 2013, Sections 11.1(r) and 11.3 are amended by deleting "National Managing Partner" and replacing it with "Chairperson or the Chief Executive Officer" wherever it appears.*

4.      *Effective January 31, 2013, Appendix 12.1 is amended by adding "1/31/13" in the second and third columns of page 2 concerning Steven A. Shapiro, P.C.*

5.      *Effective May 31, 2013, Appendix 12.1 is amended by adding "5/31/13" in the second column and by adding a "*"in the third column of page 1 concerning Alan M. Berry, P.C.*

6.      *Effective April 29, 2013, Appendix 12.1 is amended by adding a new row after the row concerning "Donald E. Egan, P.C." and adding "Mark L. Farley, P.C., effective as of April 29, 2013" in the first column of the new row.*

7.      *Effective May 31, 2013, Appendix 1.48 is amended by adding "5/31/13" in the second column of page 1 concerning Alan M. Berry, P.C.*

8.      *The Plan is further amended to make any conforming changes necessary to effect these amendments.*

9.      *If any typographical or other drafting error is discovered in this Amendment document, it shall be corrected and such correction shall have the same force and effect as if originally contained in the Amendment and, except to the extent necessary to give effect to this Amendment, the Plan shall otherwise remain unchanged.*

IN WITNESS WHEREOF, the Company hereby adopts this Amendment this **30** day of December, 2013.

**KATTEN MUCHIN ROSENMAN LLP**

**BY:    VINCENT A. F. SERGI, P.C.**

By: _____

By:   Vincent A. F. Sergi
Its:  Chairperson

## KATTEN MUCHIN ROSENMAN LLP
## ACTION OF THE CHAIRPERSON

The undersigned, being the Chairperson of Katten Muchin Rosenman LLP, an Illinois limited liability partnership (the "Company"), hereby takes the following action and adopts the following resolutions for and on behalf of the Company pursuant to authority delegated under the terms of the partnership agreement of the Company:

**WHEREAS**, the Company has established and maintains the Katten Muchin Rosenman LLP Defined Contribution Plan (the "Plan"), as amended and restated generally effective January 1, 2007;

**WHEREAS**, the Company has the power to amend the Plan pursuant to Section 13.1 of the Plan; and

**WHEREAS**, the Company desires to amend the Plan to modify certain provisions, as requested by the Internal Revenue Service during its review of the Plan for a favorable determination letter;

**NOW, THEREFORE, BE IT RESOLVED**, that the ninth amendment to the Plan is hereby approved and adopted, substantially in the form attached hereto as *Exhibit A*, effective as of the dates set forth therein; and

**FURTHER RESOLVED**, that the Qualified Plan Administration and Investment Committee, or delegates thereof, are authorized and directed to take all actions they deem necessary or desirable to effect the foregoing resolution, including executing such documents as are necessary to effect such amendment of the Plan.

Dated: _____, 2014

KATTEN MUCHIN ROSENMAN LLP

BY: VINCENT A. F. SERGI, P.C.

By: _____
By: Vincent A. F. Sergi
Its: Chairperson

<u>**Exhibit A**</u>

<u>**Ninth Amendment to the**</u>
<u>**Katten Muchin Rosenman LLP Defined Contribution Plan**</u>

(As Attached)

**NINTH AMENDMENT TO THE**
**KATTEN MUCHIN ROSENMAN LLP**
**DEFINED CONTRIBUTION PLAN**
**(As Amended and Restated Effective January 1, 2007)**

**WHEREAS**, Katten Muchin Rosenman LLP (the "Company") has established and maintains the Katten Muchin Rosenman LLP Defined Contribution Plan (the "Plan"), as amended and restated generally effective January 1, 2007;

**WHEREAS**, the Company has the power to amend the Plan pursuant to Section 13.1 of the Plan; and

**WHEREAS**, the Company desires to amend the Plan to modify certain provisions, as requested by the Internal Revenue Service during its review of the Plan for a favorable determination letter;

**NOW, THEREFORE**, the Plan be and is hereby amended, as follows:

*1.      Effective January 1, 2007, Section 1.26 is amended by replacing "non-spousal Beneficiary." where it appears with the following:*

> to an inherited individual retirement account or inherited individual retirement annuity by a non-spousal Beneficiary.

*2.      Effective January 1, 2007, Section 1.33 is amended by replacing "non-spousal Beneficiary," where it appears with the following:*

> (or non-spousal Beneficiary with respect to an inherited individual retirement account or inherited individual retirement annuity),

*3.      Effective January 1, 2007, Section 8.5 is amended by replacing "an individual retirement account described in Code Section 408(a) or an individual retirement annuity described in Code Section 408(b), other than an endowment contract," where it appears with the following:*

> an inherited individual retirement account or an inherited individual retirement annuity,

*4.      Effective January 1, 2007, Section 9.5 is amended by replacing "an individual retirement account described in Code Section 408(a) or an individual retirement annuity described in Code Section 408(b), other than an endowment contract," where it appears with the following:*

> an inherited individual retirement account or an inherited individual retirement annuity,

*5.      The Plan is further amended to make any conforming changes necessary to effect these amendments.*

*6.      If any typographical or other drafting error is discovered in this Amendment document, it shall be corrected and such correction shall have the same force and effect as if originally*

US_100563121_1

*contained in the Amendment and, except to the extent necessary to give effect to this Amendment, the Plan shall otherwise remain unchanged.*

IN WITNESS WHEREOF, the Company hereby adopts this Amendment this 4th day of ___August___, 2014.

**KATTEN MUCHIN ROSENMAN LLP**

**BY:   VINCENT A. F. SERGI, P.C.**

By: _____

By:  Vincent A. F. Sergi

Its:  Chairperson

## KATTEN MUCHIN ROSENMAN LLP
## ACTION OF THE CHAIRPERSON

The undersigned, being the Chairperson of Katten Muchin Rosenman LLP, an Illinois limited liability partnership (the "Company"), hereby takes the following action and adopts the following resolutions for and on behalf of the Company pursuant to authority delegated under the terms of the partnership agreement of the Company:

**WHEREAS**, the Company has established and maintains the Katten Muchin Rosenman LLP Defined Contribution Plan (the "Plan"), as amended and restated generally effective January 1, 2007;

**WHEREAS**, the Company has the power to amend the Plan pursuant to Section 13.1 of the Plan;

**WHEREAS**, the Company desires to amend the Plan to comply with the Internal Revenue Service guidance on the application of the U.S. Supreme Court's decision in United States v. Windsor;

**WHEREAS**, prior to January 31, 2014, Alan M. Berry, P.C. was an Employer that qualified as a Working Counsel and was considered an Employer with respect to its shareholder-employees eligible to make a Participant Contribution, as described under the Plan;

**WHEREAS**, the Company desires to amend Appendix 12.1 of the Plan to reflect that Alan M. Berry, P.C., ceased to be Working Counsel under the Plan, effective January 31, 2014;

**WHEREAS**, prior to January 31, 2014, Victor H. Bezman, P.C. was a Partner of the Company;

**WHEREAS**, the Company desires to amend Appendix 12.1 and Appendix 1.48 of the Plan to reflect that Victor H. Bezman, ceased to be a Partner of the Company, became Working Counsel, and ceased to be a Maximum Saver under the Plan, effective January 31, 2014;

**WHEREAS**, prior to January 31, 2014, Alan D. Croll was a Partner of the Company;

**WHEREAS**, the Company desires to amend Appendix 1.48 of the Plan to reflect that Alan D. Croll, ceased to be a a Maximum Saver under the Plan, effective January 31, 2014;

**NOW, THEREFORE, BE IT RESOLVED**, that the tenth amendment to the Plan is hereby approved and adopted, substantially in the form attached hereto as *Exhibit A*, effective as of the dates set forth therein; and

**FURTHER RESOLVED**, that the Qualified Plan Administration and Investment Committee, or delegates thereof, are authorized and directed to take all actions they deem necessary or desirable to effect the foregoing resolution, including executing such documents as are necessary to effect such amendment of the Plan.

[SIGNATURE ON NEXT PAGE]

Dated:  December  30 , 2014

KATTEN MUCHIN ROSENMAN LLP

BY:    VINCENT A. F. SERGI, P.C.

By: _____

By:  Vincent A. F. Sergi

Its:  Chairperson

## Exhibit A

### Tenth Amendment to the
### Katten Muchin Rosenman LLP Defined Contribution Plan

(As Attached)

**TENTH AMENDMENT TO THE**
**KATTEN MUCHIN ROSENMAN LLP**
**DEFINED CONTRIBUTION PLAN**
**(As Amended and Restated Effective January 1, 2007)**

**WHEREAS**, Katten Muchin Rosenman LLP (the "Company") has established and maintains the Katten Muchin Rosenman LLP Defined Contribution Plan (the "Plan"), as amended and restated generally effective January 1, 2007;

**WHEREAS**, the Company has the power to amend the Plan pursuant to Section 13.1 of the Plan; and

**WHEREAS**, the Company desires to amend the Plan to (1) comply with the Internal Revenue Service guidance on the application of the U.S. Supreme Court's decision in United States v. Windsor; (2) update Appendix 1.48 of the Plan; and (3) update Appendix 12.1 of the Plan.

**NOW, THEREFORE**, the Plan be and is hereby amended, as follows:

*1.    Effective September 16, 2013, Section 1.71 is amended by striking the period at the end thereof and inserting the following:*

> ; provided, however, that effective as of September 16, 2013, for purposes of the Plan, "Spouse" means the individual to whom, under federal law, a Participant is married.

*2.    Effective January 31, 2014, Appendix 12.1 is amended by deleting the "\*" and replacing it with "1/31/14" in the third column of page 1 concerning Alan M. Berry, P.C.*

*3.    Effective January 31, 2014, Appendix 12.1 is amended by adding "1/31/14" in the second column and adding a "\*" in the third column of page 1 concerning Victor H. Bezman, P.C.*

*4.    Effective January 31, 2014, 1.48 is amended by adding "1/31/14" in the second column of page 1 concerning Victor H. Bezman, P.C.*

*5.    Effective January 31, 2014, 1.48 is amended by adding "1/31/14" in the second column of page 1 concerning Alan D. Croll.*

*6.    The Plan is further amended to make any conforming changes necessary to effect these amendments.*

*7.    If any typographical or other drafting error is discovered in this Amendment document, it shall be corrected and such correction shall have the same force and effect as if originally contained in the Amendment and, except to the extent necessary to give effect to this Amendment, the Plan shall otherwise remain unchanged.*

[SIGNATURE ON NEXT PAGE]

IN WITNESS WHEREOF, the Company hereby adopts this Amendment this __3⊙__ day of December, 2014.

**KATTEN MUCHIN ROSENMAN LLP**

**BY:    VINCENT A. F. SERGI, P.C.**

By: _____

By:  Vincent A. F. Sergi
Its:  Chairperson

## KATTEN MUCHIN ROSENMAN LLP
## ACTION OF THE CHAIRPERSON

The undersigned, being the Chairperson of Katten Muchin Rosenman LLP, an Illinois limited liability partnership (the "Company"), hereby takes the following action and adopts the following resolutions for and on behalf of the Company pursuant to authority delegated under the terms of the partnership agreement of the Company:

WHEREAS, the Company has established and maintains the Katten Muchin Rosenman LLP Defined Contribution Plan (the "Plan"), as amended and restated generally effective January 1, 2007;

WHEREAS, the Company has the power to amend the Plan pursuant to Section 13.1 of the Plan;

WHEREAS, prior to March 31, 2015, Herbert S. Wander, P.C. was a Partner of the Company;

WHEREAS, the Company desires to amend Appendix 12.1 and Appendix 1.48 of the Plan to reflect that Herbert S. Wander, P.C., ceased to be a Partner of the Company, became Working Counsel, and ceased to be a Maximum Saver under the Plan, effective March 31, 2015;

WHEREAS, prior to January 31, 2015, Howard M. Richard, P.C. was an Employer that qualified as a Working Counsel and was considered an Employer with respect to its shareholder-employees being eligible to make a Participant Contribution, as described under the Plan;

WHEREAS, the Company desires to amend Appendix 12.1 of the Plan to reflect that Howard M. Richard, P.C., ceased to be Working Counsel under the Plan, effective January 31, 2015;

WHEREAS, prior to December 31, 2015, William E. Mattingly, P.C. was an Employer that qualified as a Working Counsel and was considered an Employer with respect to its shareholder-employees being eligible to make a Participant Contribution, as described under the Plan;

WHEREAS, the Company desires to amend Appendix 12.1 of the Plan to reflect that William E. Mattingly, P.C., ceased to be Working Counsel under the Plan, effective December 31, 2015;

NOW, THEREFORE, BE IT RESOLVED, that the eleventh amendment to the Plan is hereby approved and adopted, substantially in the form attached hereto as *Exhibit A*, effective as of the dates set forth therein; and

FURTHER RESOLVED, that the Qualified Plan Administration and Investment Committee, or delegates thereof, are authorized and directed to take all actions they deem

necessary or desirable to effect the foregoing resolution, including executing such documents as are necessary to effect such amendment of the Plan.

Dated:  December  29 , 2015

KATTEN MUCHIN ROSENMAN LLP

**BY:   VINCENT A. F. SERGI, P.C.**

By: _____

By:  Vincent A. F. Sergi

Its:  Chairperson

<u>**Exhibit A**</u>

<u>**Eleventh Amendment to the**</u>
<u>**Katten Muchin Rosenman LLP Defined Contribution Plan**</u>

(As Attached)

ELEVENTH AMENDMENT TO THE
KATTEN MUCHIN ROSENMAN LLP
DEFINED CONTRIBUTION PLAN
(As Amended and Restated Effective January 1, 2007)

**WHEREAS**, Katten Muchin Rosenman LLP (the "Company") has established and maintains the Katten Muchin Rosenman LLP Defined Contribution Plan (the "Plan"), as amended and restated generally effective January 1, 2007;

**WHEREAS**, the Company has the power to amend the Plan pursuant to Section 13.1 of the Plan; and

**WHEREAS**, the Company desires to amend the Plan to (1) update Appendix 1.48 of the Plan; and (2) update Appendix 12.1 of the Plan.

**NOW, THEREFORE**, the Plan be and is hereby amended, as follows:

*1.     Effective December 31, 2015, Appendix 12.1 is amended by deleting the "\*" and replacing it with "12/31/15" in the third column of page 2 concerning William E. Mattingly, P.C.*

*2.     Effective January 31, 2015, Appendix 12.1 is amended by deleting the "\*" and replacing it with "1/31/15" in the third column of page 2 concerning Howard M. Richard, P.C.*

*3.     Effective March 31, 2015, Appendix 12.1 is amended by adding "3/31/15" in the second column and adding "\*"in the third column of page 3 concerning Herbert S. Wander, P.C.*

*4.     Effective March 31, 2015, 1.48 is amended by adding "3/31/15" in the second column of page 3 concerning Herbert S. Wander, P.C.*

*5.     The Plan is further amended to make any conforming changes necessary to effect these amendments.*

*6.     If any typographical or other drafting error is discovered in this Amendment document, it shall be corrected and such correction shall have the same force and effect as if originally contained in the Amendment and, except to the extent necessary to give effect to this Amendment, the Plan shall otherwise remain unchanged.*

[SIGNATURE ON NEXT PAGE]

US_115656985_2

IN WITNESS WHEREOF, the Company hereby adopts this Amendment this 29th day of December, 2015.

**KATTEN MUCHIN ROSENMAN LLP**

**BY:   VINCENT A. F. SERGI, P.C.**

By: _____

By:  Vincent A. F. Sergi
Its:  Chairperson

## KATTEN MUCHIN ROSENMAN LLP
## ACTION OF THE CHAIRPERSON

The undersigned, being the Chairperson of Katten Muchin Rosenman LLP, an Illinois limited liability partnership (the "Company"), hereby takes the following action and adopts the following resolutions for and on behalf of the Company pursuant to authority delegated under the terms of the partnership agreement of the Company:

**WHEREAS**, the Company has established and maintains the Katten Muchin Rosenman LLP Defined Contribution Plan (the "Plan"), as amended and restated generally effective January 1, 2007;

**WHEREAS**, the Company has the power to amend the Plan pursuant to Section 13.1 of the Plan;

**WHEREAS**, the Company desires to amend the Plan to (1) clarify that the percentage contributions allowed under the Plan must be in whole percentage increments and (2) implement a revised automatic contribution arrangement, effective April 1, 2016;

**NOW, THEREFORE, BE IT RESOLVED**, that the twelfth amendment to the Plan is hereby approved and adopted, substantially in the form attached hereto as *Exhibit A*, effective as of the dates set forth therein; and

**FURTHER RESOLVED**, that the Qualified Plan Administration and Investment Committee, or delegates thereof, are authorized and directed to take all actions they deem necessary or desirable to effect the foregoing resolution, including executing such documents as are necessary to effect such amendment of the Plan.

Dated: February __22__, 2016

KATTEN MUCHIN ROSENMAN LLP

BY:   VINCENT A. F. SERGI, P.C.

By: _____

By: Vincent A. F. Sergi

Its: Chairperson

**Exhibit A**

**Twelfth Amendment to the**
**Katten Muchin Rosenman LLP Defined Contribution Plan**

(As Attached)

## TWELFTH AMENDMENT TO THE
## KATTEN MUCHIN ROSENMAN LLP
## DEFINED CONTRIBUTION PLAN
### (As Amended and Restated Effective January 1, 2007)

**WHEREAS**, Katten Muchin Rosenman LLP (the "Company") has established and maintains the Katten Muchin Rosenman LLP Defined Contribution Plan (the "Plan"), as amended and restated generally effective January 1, 2007;

**WHEREAS**, the Company has the power to amend the Plan pursuant to Section 13.1 of the Plan; and

**WHEREAS**, the Company desires to amend the Plan to (1) clarify that the percentage contributions allowed under the Plan must be in whole percentage increments and (2) implement a revised automatic contribution arrangement, effective April 1, 2016.

**NOW, THEREFORE**, the Plan be and is hereby amended, as follows:

1.    *Effective November 2, 2009, Section 3.1(a)(1) is revised to read as follows:*

(a)    Pre-Tax Contributions.

   (1)    Participants Who Elect to Defer.  An Eligible Employee who desires to have Pre-Tax Contributions made on his behalf must file a Contribution Election pursuant to procedures specified by the Applicable Administrative Named Fiduciary.  The Eligible Employee must specify his Contribution Percentage, which must be between one percent (1.0%) and fifty percent (50%) (100% with respect to bonuses), stated in increments of one percent (1.0%).  By submitting such Contribution Election, the Eligible Employee authorizes his Employer to reduce the Compensation otherwise payable to him by the amount of his Pre-Tax Contribution.  In no event shall the Eligible Employee's Elective Deferrals for a Plan Year exceed the limits set forth in Article IV.

2.    *Effective April 1, 2016, Section 3.1(a)(3) is revised to read as follows:*

   (3)    Participants Who are Automatically Enrolled.

   (A)    Definitions.  For purposes of this Section 3.1, the following terms will have the following meanings:

      (i)    "Opt Out Window" means the time period beginning March 1 and ending the day before April 1 within a Plan Year.

      (ii)    "Category I Covered Employee" means an Employee who is an Eligible Employee as of March 1 of a Plan Year, who has elected not to defer or has failed

to complete and submit a Contribution Election, as described in Section 3.1(a)(1) or Section 3.1(c).

(iii)     "Category II Covered Employee" means an Employee who is an Eligible Employee as of March 1 of a Plan Year, who has elected to defer at least one percent (1%) but no more than seven percent (7%) of his Compensation or bonus, as described in Section 3.1(a)(1) or Section 3.1(c).

(B)     Each April 1 of a Plan Year, beginning effective April 1, 2016, all Category I Covered Employees who have not completed a Contribution Election, as described in Section 3.1(a)(1), Section 3.1(a)(2) or Section 3.1(c), during the Opt Out Window of the applicable Plan Year, shall be deemed to have elected to make Pre-Tax Contributions to the Plan in an amount equal to three percent (3%) of their Compensation (zero (0%) with respect to bonuses). Any Eligible Employee who is deemed to have enrolled in the Plan under this paragraph (B) shall have the right to file an application, in the manner prescribed by the Applicable Administrative Named Fiduciary, specifying a different rate of Pre-Tax Contributions from that described above, or an election specifying the Employee's desire to have no Pre-Tax Contributions made on his behalf.

(C)     Each April 1 of a Plan Year, beginning effective April 1, 2016, all Category II Covered Employees who have not completed a Contribution Election, as described in Section 3.1(a)(1), Section 3.1(a)(2) or Section 3.1(c), during the Opt Out Window of the applicable Plan Year, shall be deemed to have elected to make an increase of 1% in Pre-Tax Contributions of their Compensation (excluding bonuses). Any Eligible Employee who is deemed to increased his Contribution Election in the Plan under this paragraph (C) shall have the right to file an application, in the manner prescribed by the Applicable Administrative Named Fiduciary, specifying a different rate of Pre-Tax Contributions from that described above, or an election specifying the Employee's desire to have no Pre-Tax Contributions made on his behalf.

(D)     If an Eligible Employee who is not a Category I Covered Employee or Category II Covered Employee of the Plan Year, and who by the sixtieth (60th) day after the employee first becomes an Eligible Employee, fails to complete and submit a Contribution Election, as described in Section 3.1(a)(1), Section 3.1(a)(2) or Section 3(c), shall be deemed to have elected to make Pre-Tax Contributions to the Plan in an amount equal to three percent (3%) of his Compensation (zero percent (0%) with respect to bonuses). Any Eligible Employee who is deemed to have enrolled in the Plan under this paragraph (D) shall have the right to file an application, in the manner prescribed by the Applicable Administrative Named Fiduciary, specifying a different rate of Pre-Tax Contributions from that described above, or an election specifying the Employee's desire to have no Pre-Tax Contributions made on his behalf.

(E)     In no event shall the Eligible Employee's Elective Deferrals for a Plan Year exceed the limits set forth in Article IV.

(F)     Any election under this Section 3.1(a)(3) may be modified in the same manner as described in Section 3.1(f).

*3.     Effective November 2, 2009, Section 3.1(b)is revised to read as follows:*

(b)     <u>Pre-Tax Catch-up Contributions</u>.  In addition to the Contribution Election provided for in Section 3.1(a), an Eligible Employee who would attain age fifty (50) before the end of the relevant Plan Year and who desires to have Pre-Tax Catch-up Contributions made on his behalf must file a separate Contribution Election pursuant to procedures specified by the Applicable Administrative Named Fiduciary.   The Eligible Employee must specify his Contribution Percentage, which must be between one percent (1.0%) and fifty percent (50%) (0% with respect to bonuses), stated in increments of one percent (1.0%).   By submitting such Contribution Election, the Eligible Employee authorizes his Employer to reduce the Compensation otherwise payable to him by the amount of his Pre-Tax Catch-up Contribution.   Notwithstanding the foregoing, an amount elected to be contributed as a Pre-Tax Catch-up Contribution that does not meet the definition of "Pre-Tax Catch-up Contribution" set forth in Section 1.21(d) because it does not exceed the limit referred to in Section 1.21(d) shall be treated as a Pre-Tax Contribution for all purposes of the Plan.

*4.     The Plan is further amended to make any conforming changes necessary to effect these amendments.*

*5.     If any typographical or other drafting error is discovered in this Amendment document, it shall be corrected and such correction shall have the same force and effect as if originally contained in the Amendment and, except to the extent necessary to give effect to this Amendment, the Plan shall otherwise remain unchanged.*

IN WITNESS WHEREOF, the Company hereby adopts this Amendment this <u>22nd</u> day of February, 2016.

**KATTEN MUCHIN ROSENMAN LLP**

**BY:     VINCENT A. F. SERGI, P.C.**

By: _____

By:  Vincent A. F. Sergi

Its:  Chairperson

## KATTEN MUCHIN ROSENMAN LLP
## ACTION OF THE CHIEF EXECUTIVE OFFICER

The undersigned, being the Chief Executive Officer of Katten Muchin Rosenman LLP, an Illinois limited liability partnership (the "Company"), hereby takes the following action and adopts the following resolutions for and on behalf of the Company pursuant to authority delegated under the terms of the partnership agreement of the Company:

**WHEREAS,** the Company has established and maintains the Katten Muchin Rosenman LLP Defined Contribution Plan (the "Plan"), as amended and restated generally effective January 1, 2007;

**WHEREAS,** the Company has the power to amend the Plan pursuant to Section 13.1 of the Plan;

**WHEREAS,** prior to January 31, 2016, Terry E. Newman, P.C. was a Partner of the Company;

**WHEREAS,** the Company desires to amend Appendix 12.1 of the Plan to reflect that Terry E. Newman, P.C., ceased to be a Partner of the Company, became Working Counsel, effective January 31, 2016;

**WHEREAS,** prior to January 31, 2016, David R. Shevitz, P.C. was a Partner of the Company;

**WHEREAS,** the Company desires to amend Appendix 12.1 and Appendix 1.48 of the Plan to reflect that David R. Shevitz, P.C., ceased to be a Partner of the Company, became Working Counsel, and ceased to be a Maximum Saver under the Plan, effective January 31, 2016;

**NOW, THEREFORE, BE IT RESOLVED,** that the thirteenth amendment to the Plan is hereby approved and adopted, substantially in the form attached hereto as _Exhibit A_, effective as of the dates set forth therein; and

**FURTHER RESOLVED,** that the Qualified Plan Administration and Investment Committee, or delegates thereof, are authorized and directed to take all actions they deem necessary or desirable to effect the foregoing resolution, including executing such documents as are necessary to effect such amendment of the Plan.

Dated:  December 22nd, 2016

KATTEN MUCHIN ROSENMAN LLP

By:  Noah S. Heller
Its:  Chief Executive Officer

**Exhibit A**

**Thirteenth Amendment to the
Katten Muchin Rosenman LLP Defined Contribution Plan**

(As Attached)

**THIRTEENTH AMENDMENT TO THE**
**KATTEN MUCHIN ROSENMAN LLP**
**DEFINED CONTRIBUTION PLAN**
**(As Amended and Restated Effective January 1, 2007)**

**WHEREAS,** Katten Muchin Rosenman LLP (the "Company") has established and maintains the Katten Muchin Rosenman LLP Defined Contribution Plan (the "Plan"), as amended and restated generally effective January 1, 2007;

**WHEREAS,** the Company has the power to amend the Plan pursuant to Section 13.1 of the Plan; and

**WHEREAS,** the Company desires to amend the Plan to (1) update Appendix 1.48 of the Plan; and (2) update Appendix 12.1 of the Plan.

**NOW, THEREFORE,** the Plan be and is hereby amended, as follows:

*1.     Effective January 31, 2016, Appendix 12.1 is amended by adding "1/31/16" in the second column and adding "*"in the third column of page 2 concerning Terry E. Newman, P.C.*

*2.     Effective January 31, 2016, Appendix 12.1 is amended by adding "1/31/16" in the second column and adding "*"in the third column of page 2 concerning David R. Shevitz, P.C..*

*3.     Effective January 31, 2016, Appendix 1.48 is amended by adding "1/31/16" in the second column of page 2 concerning David R. Shevitz, P.C.*

*4.     The Plan is further amended to make any conforming changes necessary to effect these amendments.*

*5.     If any typographical or other drafting error is discovered in this Amendment document, it shall be corrected and such correction shall have the same force and effect as if originally contained in the Amendment and, except to the extent necessary to give effect to this Amendment, the Plan shall otherwise remain unchanged.*

IN WITNESS WHEREOF, the Company hereby adopts this Amendment this 22nd day of December, 2016.

KATTEN MUCHIN ROSENMAN LLP

By:  Noah S. Heller
Its:  Chief Executive Officer

US_123816296_1

### KATTEN MUCHIN ROSENMAN LLP
### ACTION OF THE CHIEF EXECUTIVE OFFICER

The undersigned, being the Chief Executive Officer of Katten Muchin Rosenman LLP, an Illinois limited liability partnership (the "Company"), hereby takes the following action and adopts the following resolutions for and on behalf of the Company pursuant to authority delegated under the terms of the partnership agreement of the Company:

WHEREAS, the Company has established and maintains the Katten Muchin Rosenman LLP Defined Contribution Plan (the "Plan"), as amended and restated generally effective January 1, 2007;

WHEREAS, the Company has the power to amend the Plan pursuant to Section 13.1 of the Plan;

WHEREAS, the Company desires to amend the Plan to (1) provide for hardship withdrawals in the case of Hurricane Harvey victims; (2) implement a revised automatic contribution arrangement; and (3) reflect that Vincent A. F. Sergi, P.C., ceased to be a Partner of the Company, became Working Counsel, and ceased to be a Maximum Saver under the Plan;

NOW, THEREFORE, BE IT RESOLVED, that the fourteenth amendment to the Plan is hereby approved and adopted, substantially in the form attached hereto as *Exhibit A*, effective as of the dates set forth therein; and

FURTHER RESOLVED, that the Qualified Plan Administration and Investment Committee, or delegates thereof, are authorized and directed to take all actions they deem necessary or desirable to effect the foregoing resolution, including executing such documents as are necessary to effect such amendment of the Plan.

Dated: November 20, 2017

KATTEN MUCHIN ROSENMAN LLP

By: Noah S. Heller
Its: Chief Executive Officer

US_128749504_2

**FOURTEENTH AMENDMENT TO THE**
**KATTEN MUCHIN ROSENMAN LLP**
**DEFINED CONTRIBUTION PLAN**
**(As Amended and Restated Effective January 1, 2007)**

**WHEREAS**, Katten Muchin Rosenman LLP (the "Company") has established and maintains the Katten Muchin Rosenman LLP Defined Contribution Plan (the "Plan"), as amended and restated generally effective January 1, 2007;

**WHEREAS**, the Company has the power to amend the Plan pursuant to Section 13.1 of the Plan; and

**WHEREAS**, the Company desires to amend the Plan to (1) provide for hardship withdrawals in the case of Hurricane Harvey victims; (2) implement a revised automatic contribution arrangement; and (3) reflect that Vincent A. F. Sergi, P.C., ceased to be a Partner of the Company, became Working Counsel, and ceased to be a Maximum Saver under the Plan.

**NOW, THEREFORE**, the Plan be and is hereby amended, as follows:

1.  *Effective April 1, 2018, Section 3.1(a)(3)(A)(iii) is revised to add the following immediately after "(7%)" where it appears in that section:*

(effective April 1, 2018, no more than fourteen percent (14%))

2.  *Effective April 1, 2018, Section 3.1(a)(3)(B) is revised to add the following immediately after "(3%)" where it appears in that section:*

(effective April 1, 2018, six percent (6%))

3.  *Effective January 1, 2018, Section 3.1(a)(3)(D) is revised to add the following immediately after "(3%)" where it appears in that section:*

(effective January 1, 2018, six percent (6%))

4.  *Effective August 23, 2017, Section 7.2(b)is revised to delete the "and" at the end of 7.2(b)(5) and replace the period at the end of 7.2(b)(6)(C) with "; and" and add the following new particular 7.2(b)(7), as follows:*

(7)     the payment of expenses as described in Internal Revenue Service Announcement 2017-11 and other Internal Revenue guidance, resulting from Hurricane Harvey for payments made on or after August 23, 2017, but no later than January 31, 2018.

5.  *Effective January 31, 2017, Appendix 1.48 is amended by adding "1/31/17" in the second column of page 2 concerning Vincent A.F. Sergi, P.C.*

6.    *Effective January 31, 2017, Appendix 12.1 is amended by adding "1/31/17" in the second column and adding "*"in the third column of page 2 concerning Vincent A.F. Sergi, P.C.*

7.    *The Plan is further amended to make any conforming changes necessary to effect these amendments.*

8.    *If any typographical or other drafting error is discovered in this Amendment document, it shall be corrected and such correction shall have the same force and effect as if originally contained in the Amendment and, except to the extent necessary to give effect to this Amendment, the Plan shall otherwise remain unchanged.*

IN WITNESS WHEREOF, the Company hereby adopts this Amendment this 20ᵗʰ day of November, 2017.

KATTEN MUCHIN ROSENMAN LLP

By:  Noah S. Heller
Its:  Chief Executive Officer

## KATTEN MUCHIN ROSENMAN LLP
## ACTION OF THE CHIEF EXECUTIVE OFFICER

The undersigned, being the Chief Executive Officer of Katten Muchin Rosenman LLP, an Illinois limited liability partnership (the "Company"), hereby takes the following action and adopts the following resolutions for and on behalf of the Company pursuant to authority delegated under the terms of the partnership agreement of the Company:

**WHEREAS**, the Company has established and maintains the Katten Muchin Rosenman LLP Defined Contribution Plan (the "Plan"), as amended and restated generally effective January 1, 2007;

**WHEREAS**, the Company has the power to amend the Plan pursuant to Section 13.1 of the Plan;

**WHEREAS**, prior to the close of business on January 31, 2018, Arthur W. Hahn and Ted S. Helwig were each a Partner of the Company;

**WHEREAS**, the Company desires to amend Appendix 1.48 of the Plan to reflect that Arthur W. Hahn and Ted S. Helwig ceased to be Partners of the Company, and ceased to be Maximum Savers under the Plan, effective January 31, 2018;

**WHEREAS**, prior to the close of business on January 31, 2018, Terry E. Newman, P.C. was an Employer that qualified as a Working Counsel and was considered an Employer with respect to its shareholder-employees being eligible to make a Participant Contribution, as described under the Plan;

**WHEREAS**, the Company desires to amend Appendix 12.1 of the Plan to reflect that Terry E. Newman, P.C., ceased to be Working Counsel under the Plan, effective January 31, 2018;

**NOW, THEREFORE, BE IT RESOLVED**, that the fifteenth amendment to the Plan is hereby approved and adopted, substantially in the form attached hereto as *Exhibit A*, effective as of the dates set forth therein; and

**FURTHER RESOLVED**, that the Qualified Plan Administration and Investment Committee, or delegates thereof, are authorized and directed to take all actions they deem necessary or desirable to effect the foregoing resolution, including executing such documents as are necessary to effect such amendment of the Plan.

Dated: December ___6___, 2018

**KATTEN MUCHIN ROSENMAN LLP**

By: Noah S. Heller

Its:  Chief Executive Officer

## Exhibit A

## Fifteenth Amendment to the
## Katten Muchin Rosenman LLP Defined Contribution Plan

(As Attached)

### FIFTEENTH AMENDMENT TO THE
### KATTEN MUCHIN ROSENMAN LLP
### DEFINED CONTRIBUTION PLAN
### (As Amended and Restated Effective January 1, 2007)

**WHEREAS**, Katten Muchin Rosenman LLP (the "Company") has established and maintains the Katten Muchin Rosenman LLP Defined Contribution Plan (the "Plan"), as amended and restated generally effective January 1, 2007;

**WHEREAS**, the Company has the power to amend the Plan pursuant to Section 13.1 of the Plan; and

**WHEREAS**, the Company desires to amend the Plan to reflect that (1) Arthur W. Hahn and Ted S. Helwig ceased to be Partners of the Company, and ceased to be Maximum Savers under the Plan, effective January 31, 2018; and (2) Terry E. Newman, P.C., ceased to be Working Counsel under the Plan, effective January 31, 2018.

**NOW, THEREFORE**, the Plan be and is hereby amended, as follows:

*1.       Effective January 31, 2018, Appendix 1.48 is amended by adding "1/31/18" in the second column of page 1 concerning Arthur W. Hahn.*

*2.       Effective January 31, 2018, Appendix 1.48 is amended by adding "1/31/18" in the second column of page 1 concerning Ted S. Helwig.*

*3.       Effective January 31, 2018, Appendix 12.1 is amended by deleting the "*" and replacing it with "1/31/18" in the third column of page 2 concerning Terry E. Newman, P.C.*

*4.       The Plan is further amended to make any conforming changes necessary to effect these amendments.*

*5.       If any typographical or other drafting error is discovered in this Amendment document, it shall be corrected and such correction shall have the same force and effect as if originally contained in the Amendment and, except to the extent necessary to give effect to this Amendment, the Plan shall otherwise remain unchanged.*

IN WITNESS WHEREOF, the Company hereby adopts this Amendment this ___6___ day of December, 2018.

**KATTEN MUCHIN ROSENMAN LLP**

By:  Noah S. Heller
Its:  Chief Executive Officer

### KATTEN MUCHIN ROSENMAN LLP
### ACTION OF THE CHIEF EXECUTIVE OFFICER

The undersigned, being the Chief Executive Officer of Katten Muchin Rosenman LLP, an Illinois limited liability partnership (the "Company"), hereby takes the following action and adopts the following resolutions for and on behalf of the Company pursuant to authority delegated under the terms of the partnership agreement of the Company:

**WHEREAS**, the Company has established and maintains the Katten Muchin Rosenman LLP Defined Contribution Plan (the "Plan"), as amended and restated generally effective January 1, 2007;

**WHEREAS**, the Company has the power to amend the Plan pursuant to Section 13.1 of the Plan;

**WHEREAS**, prior to the close of business on January 31, 2019, May 13, 2019, and July 31, 2019, Marcia W. Sullivan, P.C., Mark L. Farley, P.C., and Russell E. Greenblatt, P.C., respectively, were each a Partner in the Company;

**WHEREAS**, the Company desires to amend Appendix 12.1 and Appendix 1.48 of the Plan to reflect that Russell E. Greenblatt, P.C. ceased to be a Partner of the Company, became Working Counsel, and ceased to be a Maximum Saver under the Plan, effective July 31, 2019;

**WHEREAS,** the Company desires to amend Appendix 12.1 and Appendix 1.48 of the Plan to reflect that Marcia W. Sullivan, P.C. ceased to be a Partner of the Company and ceased to be a Maximum Saver under the Plan, effective January 31, 2019;

**WHEREAS,** the Company desires to amend Appendix 12.1 of the Plan to reflect that Mark L. Farley, P.C. ceased to be a Partner of the Company, effective May 13, 2019;

**WHEREAS,** the Company desires to amend Appendix 12.1 of the Plan to reflect that Victor H. Bezman, P.C. ceased to be Working Counsel under the Plan, effective January 31, 2019.

**NOW, THEREFORE, BE IT RESOLVED**, that the sixteenth amendment to the Plan is hereby approved and adopted, substantially in the form attached hereto as *Exhibit A*, effective as of the dates set forth therein; and

**FURTHER RESOLVED**, that the Qualified Plan Administration and Investment Committee, or delegates thereof, are authorized and directed to take all actions they deem necessary or desirable to effect the foregoing resolution, including executing such documents as are necessary to effect such amendment of the Plan.

Dated: December _18_, 2019

**KATTEN MUCHIN ROSENMAN LLP**

By:  Noah S. Heller
Its:  Chief Executive Officer

**Exhibit A**

**Sixteenth Amendment to the
Katten Muchin Rosenman LLP Defined Contribution Plan**


(As Attached)

## SIXTEENTH AMENDMENT TO THE
## KATTEN MUCHIN ROSENMAN LLP
## DEFINED CONTRIBUTION PLAN
### (As Amended and Restated Effective January 1, 2007)

**WHEREAS**, Katten Muchin Rosenman LLP (the "Company") has established and maintains the Katten Muchin Rosenman LLP Defined Contribution Plan (the "Plan"), as amended and restated generally effective January 1, 2007;

**WHEREAS**, the Company has the power to amend the Plan pursuant to Section 13.1 of the Plan; and

**WHEREAS**, the Company desires to amend the Plan to reflect that (1) Marcia W. Sullivan, P.C. and Russell E. Greenblatt, P.C. ceased to be Partners of the Company, and ceased to be Maximum Savers under the Plan, effective January 31, 2019 and July 31, 2019 respectively; (2) Victor H. Bezman, P.C., ceased to be Working Counsel under the Plan, effective January 31, 2019; and (3) Mark L. Farley, P.C. ceased to be a Partner of the Company, effective May 13, 2019.

**NOW, THEREFORE**, the Plan be and is hereby amended, as follows:

*1.      Effective January 31, 2019, Appendix 1.48 is amended by adding "1/31/19" in the second column of page 1 concerning Marcia W. Sullivan, P.C.*

*2.      Effective July 31, 2019, Appendix 1.48 is amended by adding "7/31/19" in the second column of page 1 concerning Russell E. Greenblatt, P.C.*

*3.      Effective July 31, 2019, Appendix 12.1 is amended by adding "7/31/19" in the second column and adding "*" in the third column of page 2 concerning Russell E. Greenblatt, P.C.*

*4.      Effective January 31, 2019, Appendix 12.1 is amended by adding "1/31/19" in the second and third column of page 2 concerning Marcia W. Sullivan, P.C.*

*5.      Effective May 13, 2019, Appendix 12.1 is amended by adding "5/13/19" in the second and third column of page 2 concerning Mark L. Farley, P.C.*

*3.      Effective January 31, 2019, Appendix 12.1 is amended by deleting the "*" and replacing it with "1/31/19" in the third column of page 2 concerning Victor H. Bezman, P.C.*

*4.      The Plan is further amended to make any conforming changes necessary to effect these amendments.*

*5.      If any typographical or other drafting error is discovered in this Amendment document, it shall be corrected and such correction shall have the same force and effect as if originally contained in the Amendment and, except to the extent necessary to give effect to this Amendment, the Plan shall otherwise remain unchanged.*

IN WITNESS WHEREOF, the Company hereby adopts this Amendment this _18_ day of December, 2019.

**KATTEN MUCHIN ROSENMAN LLP**


By: Noah S. Heller
Its: Chief Executive Officer