

U.S. Department of Justice

*United States Attorney*
*Eastern District of New York*

*610 Federal Plaza*
*Central Islip, New York 11722*

November 13, 2020

By ECF
Honorable Kiyo Matsumoto
United States District Judge
Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York 11201

    Re:  *United States v. Greebel*, 15-CR-0637 (E.D.N.Y.) (KAM)

Dear Judge Matsumoto:

    This office represents the government in the above-captioned matter. We write in response to the Court's November 9, 2020 Order directing the government to respond to defendant, Evan Greebel's ("Defendant") request for a hearing on the present motion [Dkt. 746]. For the following reasons, the government does not believe that a hearing is necessary in this matter and, instead, respectfully submits that the Court should decide the present motion on the parties' submissions alone.

    As an initial matter, the government objects to Defendant's Reply brief to the extent that it improperly raises new issues of fact and law, including the submission of three documents (Exhibits C-E) which were not addressed in Defendant's opening brief and which were not previously provided to the government. *See* Defendant's Objection to Garnishment ("Objection") [Dkt. 736]. Additionally, as addressed in its opposition brief ("Opposition" or "Opp.") [Dkt. 743], the government objects to the consideration of any extrinsic evidence in interpreting the plan documents because the documents are clear and unambiguous and therefore extrinsic evidence may not be considered. Opp. at p.8. The government therefore respectfully requests that the Court either not consider the additional arguments, and attachments, raised for the first time in Defendant's Reply brief, or, in the alternative, that the Court consider the following specific objections to Defendant's new arguments and submissions.

    Regarding Exhibits A and B, which are the responses of the Garnishees to the orders of garnishment, the government notes that Defendant did not raise this argument in its opening brief and, in any event, neither Garnishee objected to the garnishment nor stated that they could not comply with an Order of this Court directing that they disburse funds held in Mr. Greebel's accounts. *See* Objection; *see also* Reply, Exhs. A and B. Instead, the Garnishees merely indicated that approval of the plan administrator, from the respective firms, could be necessary in order to actually distribute funds. If, upon submitting an Order from this Court to the plan administrators, the Garnishees are unable to get approval to distribute the relevant funds, then this office will seek to have orders of garnishment issued to the plan administrators directly, as necessary. The mere

possibility that this additional step may be necessary in no way affects the Court's interpretation of the plan documents or the determination of whether or not Mr. Greebel has a current, unilateral right to demand payment of funds from his accounts, which he clearly does. *See* Opp. pp. 4-8.

Regarding Exhibit C, Defendant's citation to page 4 of this newly introduced exhibit also has no bearing on the issue of Mr. Greebel's right to demand payment. Instead, the cited section merely addresses the default actions that would take place upon separation if a plan member, like Mr. Greebel, did not make an express election regarding his Katten Munchin ("KM") defined contribution plan. *See* Reply, Exh. C, p.4. Nothing about this provision alters the clear and unambiguous language of the KM plan document which clearly establishes that Defendant has an immediate, unilateral right to demand full payment from his retirement plan. *See* Opp. pp. 5-8. Moreover, it is not clear why Defendant submitted this exhibit in the first place since, as he notes in FN1 of his Reply, Exhibit C was created after he left KM and the specific provision referenced only applies to the two-month period of time immediately after separation. *See* Reply, Exh. C, p.4. Exhibit C simply has no relevance to the question of whether Defendant has a present right to demand distribution of his account balance. Finally, in this regard, the government objects to Defendant's erroneous suggestion in FN1 that he is entitled to discovery in this matter. He is not.

Exhibit D is a letter and attachment sent to someone named Michael Gordon, who is not a party to this matter. It is unclear why this document was submitted or how it applies to Mr. Greebel, which is yet another reason that the Court should not give this exhibit consideration. Even assuming, *arguendo*, that the attached "Special Tax Notice Regarding Plan Payments" is relevant to Mr. Greebel, Defendant is incorrect that the 10% penalty associated with an early withdrawal of funds from a retirement account "negates a current, unilateral right to the funds." Reply at p.6. The decision in *Rousey*, cited by Defendant, along with Exhibits C & D, for this erroneous proposition, is inapplicable as it did not address the CCPA's definition of "earnings," the CCPA's 25% cap, or garnishment under the MVRA. *See Rousey v. Jacoway*, 544 U.S. 320 (2005). Instead, *Rousey* dealt with the interpretation of the phrase "similar plan[s] or contract[s] on account of . . . age," contained in the bankruptcy code and, in that context only, the court there determined that the 10% penalty put IRAs on par with other, expressly enumerated, types of retirement accounts that were exempt from a bankruptcy estate. *See* Opp. at p.12. To the contrary, cases actually addressing the 10% penalty's impact on garnishment under the MRVA have concluded that the penalty does not negate a defendant's present right to demand payment of those retirement funds. *See e.g. U.S. v Jon Lawrence Frank*, 2020 U.S. Dist. LEXIS 81084, at *23 (E.D. Va., March 4, 2020), *report and recommendation adopted by, U.S. v Frank*, 2020 U.S. Dist. LEXIS 80336 (E.D.Va., May 6, 2020) (rejecting defendant's contention that having to pay taxes and a 10% penalty for early withdrawal of funds from his retirement account meant that he did not have a present right to the funds, and stating that, "[t]he 'present right' to a lump-sum withdrawal required here '**is not based upon the rights [the defendant] would *prefer* to exercise**, **rather, it is based upon the rights [the defendant] possesses.**") (bold emphasis added).

Finally, Exhibit E, which was submitted under seal, similarly has no relevance to the present issues. Defendant cites § 12.9 for the proposition that "Katten **required** that a portion [of Defendant's earnings] **might be** deposited into the Katten plan," to imply that Defendant had no control over this reduction to his earning which, itself, is irrelevant. Reply at p.8 (emphasis added). Ignoring the obvious flaw in arguing that this was a "requirement," that only "might" happen, § 12.9 simply does not require that any amount be withheld from Defendant's

2

compensation and deposited into his retirement plan, but merely states that if contributions are being made to such an account, "by or on behalf of the Partner," those amounts would come from withholdings taken from compensation. *See* Exhibit E, § 12.9. Again, this provision has nothing to do with the determination of whether or not Defendant has a present right to demand distribution from his KM retirement account.

Nothing in Defendant's Reply brief alters the government's position that the language of the relevant retirement plans is clear and unambiguous, and that the Court should interpret those provisions without reference to extrinsic evidence. As such, the government's position is that there is no need for a hearing in this matter and, instead, it respectfully submits that the Court should decide the pending motion based upon the parties' submissions alone.

The government thanks the Court for its attention to this matter.

        Respectfully submitted,

        SETH D. DuCHARME
        Acting United States Attorney

By:   /s/ Thomas R. Price
      THOMAS R. PRICE
      Assistant U.S. Attorney
      (631) 715-7893

cc:    All Counsel of Record via ECF