

U.S. Department of Justice

United States Attorney
Eastern District of New York

*610 Federal Plaza*
*Central Islip, New York 11722*

March 29, 2021

By ECF
The Honorable Kiyo Matsumoto
United States District Judge
Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York 11201

      Re:    *United States v. Greebel*, 15-CR-00637 (KAM)

Dear Judge Matsumoto:

      On January 28, 2021, this Court held an evidentiary hearing regarding defendant, Evan Greebel's ("Defendant") letter motion ("Motion") [Dkt 736] and request for a hearing to contest the garnishment of retirement funds held by garnishees Merrill Lynch, Pierce, Fenner & Smith Inc. ("Merrill Lynch") and Charles Schwab Retirement Plan Services ("Charles Schwab") (collectively, "the Garnishees"). At the hearing, the Court directed the parties to submit post-hearing briefing "based on the exhibits in evidence and the transcript." Record ("R.") at 91:10 (attached as Appendix A). For the reason set forth below, and those set forth in the government's prior briefing (ECF 743, 747, 751 and 756), the government respectfully requests that the Court deny Defendant's Motion in its entirety and instead enter orders of garnishment to the Garnishees, in favor of the government, for the full balance of Defendant's accounts in their possession up to the full amount of the judgment imposed against him.

### Case Law Update

      As an initial matter, the government brings to the Court's attention two recent decisions from the Second and Fifth Circuits, both of which are relevant to the matter presently before the Court. First, in *United States v. O'Brien*, No. 19-CR-3895 (2d Cir. March 19, 2021) (Summary Order), the Second Circuit affirmed the district court's issuance of an Order of Garnishment directing that the entire cash surrender value of two retirement accounts owned by the defendant be turned over to the government in partial satisfaction of an outstanding criminal restitution obligation. In so holding, the Second Circuit noted that, "[i]t is well settled that '[t]he government may enforce restitution orders arising from criminal convictions using the practices and procedures for the enforcement of a civil judgment under federal or state law as set forth in the [FDCPA].' Among the post-judgment remedies available to the government for enforcement under the FDCPA is garnishment." *Id.* at p.7 (quoting *U.S. v. Cohan*, 798 F.3d 84, 89 (2d Cir. 2015), and citing 28 U.S.C. §§ 3205(a) and 3202). Although *O'Brien* did not directly address the 25% cap of the Consumer Credit Protection Act ("CCPA"), the Second Circuit decision clearly

answers the "threshold question" of "whether the Government can reach the money in the 401(k) plans," posed by Defendant. R. at 93:13-15.

Similarly, in *U.S. v. Clark*, No. 19-10186, 2021 WL 822647 (5th Cir. March 4, 2021), the Fifth Circuit affirmed a district court's issuance of writs of garnishments for two of defendant's retirement accounts under the Mandatory Victims Restitution Act ("MVRA"). In its holding, the Fifth Circuit analyzed the meaning of the term "other income," as used in 26 U.S.C. § 6334(a)(8), which "exempt[s] 'salary, wages, or other income . . . necessary to comply' with child-support orders," and concluded that the "one-time liquidation of an investment account," would not qualify as "other income." Instead, the court concluded that the corpus of a retirement account is an asset, not income. *Id.* at *3 ("A bank or investment account is similar. The corpus of the account – amounts previously deposited into the account which counted as income when they were first received by the accountholder – is an asset but not income.") (cross-referencing *Usery v. First Nat'l Bank of Ariz.*, 586 F.2d 107, 110-11 (9th Cir. 1978) ("holding that money deposited into a bank account no longer constituted 'earnings' under the Consumer Credit Protection Act.")). Notably, as the Fifth Circuit recognized, even though payments made into the retirement account were considered "income" at the time they were deposited, once they were deposited they became assets of the defendant and no longer retained the status of income. Here, Defendant argues that the money in his account maintains the status of "income" indefinitely, and that any withdrawals from these accounts are the same as income being paid to him directly by his former employers. As addressed more fully below, this argument fails. As in *Clark,* upon deposit, the contributions to the Defendant's retirement plans, which originated as income, became property subject to garnishment in full under the MVRA and CCPA. *See* Government's Opposition to Plaintiff's Motion [Dkt. 743] ("Opposition" or "Opp.") at pp.4-5; *see also Clark*, 2021 WL 822647 at *3; *Usery*, 586 F.2d at 110-11.

### Witness Testimony Confirms that Defendant has an Immediate Unilateral Right to Demand Payment, in Full, from his Retirement Accounts

On January 28, 2021, the Court heard testimony from three witnesses regarding the manner in which each of the relevant retirement plans are administered in practice. The witnesses were: 1) James Berge ("Berge"), a Human Resources Manager for Katten Muchin Rosenman, 2) Mark Broutman ("Broutman"), Director of Partnership Accounting for Katten Muchin Rosenman, and 3) Karl Groskaufmanis ("Groskaufmanis"), General Counsel for Fried Frank. Each witness testified to the effect that former employees of their respective firms, such as Defendant, can withdraw the funds in their retirement accounts without limitation at any time after leaving the firm. *See* R. at 29:20 - 30:4, 33:12-14 (Berge); R at 55:6-11, 50:18 – 51:19 (Broutman: "An inactive participant, someone who is terminated from the firm can fully access any amount in their Schwab defined contribution plan account."); R at 79:12 – 81:4 (Groskaufmanis: "[A]s a general principal, both in its interpretation and its operation, former participants are able to and have been able to withdraw the assets from their accounts at the firm."). Moreover, each of these witnesses confirmed that a former employee's ability to withdraw funds from their retirement accounts is not dependent upon, nor limited by: 1) the type of contribution made to the account (R. at 30:5-10 (Berge); R. at 52:2-7 (Broutman); R. at 82:1-8 (Groskaufmanis)), or 2) the former employee's age at the time of the withdraw request (R. at 30:11-13 (Berge); R. at 53:4-8 (Broutman); R. at 82:9-14 (Groskaufmanis)). Additionally, each witness testified that once a former employee made a

proper request to withdraw funds from their retirement account, there was no discretion for the firm and/or the fund administrator to deny the request. *See* R. at 33:6-11 (Berge); R. at 53:25 – 54:11 (Broutman); R. at 82:16-24 (Groskaufmanis)). Thus, contrary to Defendant's assertion (R. at 93:19 – 94:15), there is no discretion for either the firm or the retirement plan administrator to deny a properly submitted request to withdraw funds, and Defendant has not provided one case to support his contention that merely having to go through an administrative process in order to obtain funds from a retirement account means that he does not have a unilateral right to those funds.

The clear and unambiguous language of both the Katten Muchin Rosenman, and Fried Frank, retirement plans give Defendant the present, unilateral right to demand payment of up to the full balance in each of his respective retirement plans. Opp. at pp. 3-9; *see* Hearing Exhibits 1 [Dkt. 736-2], 2 [Dkt 736-3], and 3 [Dkt. 736-1]. Additionally, the testimony of all three witnesses who appeared (via videoconference) for the January 28, 2021 hearing, as set forth immediately above, confirms that the government's position that Defendant has the right to demand payment of the full balances of each of those accounts without restriction, as put forth by the government in its Opposition, is consistent with the ways that the plans are actually administered on a day-to-day basis by the firms and the Garnishees. As such, the government may "step into [Defendant's] shoes" and demand payment of the full balances in each of those accounts. Opp. at p.2 (quoting *U.S. v. Feldman*, No. 14-CR-6092, 2017 WL 3866024 at *6 (W.D.N.Y. Sept. 5, 2017)). None of the testimony elicited by defense counsel during the hearing warrants any other outcome.

### The Periodic Nature of Defendant's Contributions to his Retirement Accounts Does Not Make them "Earnings" Subject to the CCPA's 25% Limitation

Defendant wrongly argues that, "the money was contributed [by or on behalf of Defendant] into the plan on a periodic basis, and, therefore, to quote the statute [presumably, 15 U.S.C. § 1672(a)], these were periodic payments pursuant to a pension plan or retirement program." R. at 94:20-23. However, 15 U.S.C. § 1672(a), which defines "earnings" for the purposes of the CCPA, addresses payments coming from a "pension or retirement plan," and not the source of the contributions to such plans. Thus, any argument that the periodic nature of the contributions to the plans mandates a determination that the corpus of the account is "earnings" is simply specious.

Defendant also argues that:

> The way the money is withdrawn should not change the nature of the money. When the contributions were earned by Mr. Greebel and contributed into the plan, they were compensation. As they sit in the plan right now, they're compensation. If they were to be withdrawn periodically tomorrow, they would be compensation. The Government's position is that if they were withdrawn lump sum, they would be no longer compensation. There is nothing to explain why they would suddenly change. R. at 94:24 – 95:7.

This argument is also specious. First, as counsel stated, the contributions made into Defendant's retirement accounts were compensation at the time that they were earned, years ago. The

3

government doesn't dispute that fact. However, as the Fifth Circuit concluded in *Clark*, "[t]he corpus of the account – amounts previously deposited into the account which counted as income when they were first received by the accountholder – is an asset but not income" and under the MVRA the government may enforce a restitution order "against all property or rights to property of the person fined." 2021 WL 822647 at *3; 18 U.S.C. § 3613(a). In Defendant's case, once funds were deposited into his retirement accounts, all of which were immediately 100% vested, they became his assets, or property, and subject to enforcement under the MVRA. As such, Defendant is simply wrong in arguing that "as they [the funds] sit in the plan right now, they're compensation." R. at 95:2-3.

Defendant would be correct in his assertion that, "[i]f [the funds] were withdrawn periodically tomorrow, they would be compensation," <u>only</u> if the plan required periodic distributions and did not permit a lump-sum distribution. R. at 95:3-4. That is not the case here. Additionally, Defendant is wrong in arguing that, "[t]here is nothing to explain why [the funds] would suddenly change." *Id.* at 6-7. Instead, periodic distributions from such plans are considered "earnings" for purposes of the CCPA because the United States Congress expressly chose to include "periodic payments pursuant to a pension or retirement program" within that definition. § 1672(a); *see* Opp. at p.9 (citing *Waggoner v. Gonzales*, 488 F.3d 632, 636 (5th Cir. 2007) ("The canon of statutory construction '*expressio unius est exclusion alterius* (the expression of one thing is the exclusion of another) indicates that [the listed ground] is the only requirement."). Thus, the change in characterization of the funds occurs because Congress expressly included periodic distributions from retirement accounts, and only periodic distributions, not lump-sum distributions, as earnings under the CCPA. Defendant cannot escape the clear and express language of § 1672(a), nor should this Court reach a conclusion that expands the scope of § 1672(a) beyond what Congress clearly and expressly intended.

### The Department of Labor Opinion is Irrelevant to these Proceedings

Finally, Defendant also argues that the April 12, 2018 Department of Labor Opinion Letter ("DOL Opinion") should be given consideration. R. at 95:12 – 96:2. In this regard, the *Clark* decision is also instructive in showing that Defendant's reliance on the DOL Opinion is misplaced. As in the DOL Opinion, *Clark* dealt with the issue of statutory exemptions from garnishment, specifically the child-support exemption, and the Court concluded that lump-sum payments from retirement accounts are not exempt from garnishment, because they were not the equivalent of wages or salary. *See* 2021 WL 822647 at *4 ("We thus agree with the Sixth Circuit that the child-support exemption only applies to money akin to salary and wages – meaning amount received directly for labor such as 'bonuses, tips, commissions, and fees.' That does not describe Clark's retirement accounts, so the judgment garnishing those accounts is AFFIRMED.") (citing *Woods v. Simpson*, 46 F.3d 21, 24 (6th Cir. 1995). Thus, even if the DOL Opinion were relevant, which it is not, lump-sum garnishments from retirement accounts would not be subject to the CCPA's 25% cap because they would not be considered to be earnings. *See Id.*; *see also* Opp. at pp. 11-13; 15 U.S.C. § 1672(a) (including in the definition of "earnings," in relevant part, only "periodic payments pursuant to a pension or retirement program," and not a lump-sum distribution from such accounts).

**Conclusion**

For all of the reasons set forth herein, Plaintiff respectfully requests that the Court deny Defendant's Motion in its entirety and instead issue Orders of Garnishment to the Garnishees requiring that they turn over to the government all of the funds held in Defendant's retirement accounts under their control.

Respectfully submitted,

MARK J. LESKO
Acting United States Attorney

By:   /s/ *Thomas R. Price*
THOMAS R. PRICE
Assistant U.S. Attorney
(631) 718-7893