GIBSON DUNN

Gibson, Dunn & Crutcher LLP

333 South Grand Avenue
Los Angeles, CA 90071-3197
Tel 213.229.7000
www.gibsondunn.com

Marc Aaron Takagaki
Direct: +1 213.229.7523
Fax: +1 213.229.6523
MTakagaki@gibsondunn.com

April 5, 2021

VIA ECF

The Honorable Kiyo Matsumoto
United States District Judge
United States District Court for the Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York 11201

Re: *United States v. Greebel*, S1 15 Cr. 637 (E.D.N.Y.) (KAM)

Dear Judge Matsumoto:

Mr. Greebel respectfully submits this response to the government's post-hearing brief dated March 29, 2021 ("Brief" or "Br.").

**A. The Government's Case Law Update Is Irrelevant To, And Supportive Of, Mr. Greebel's Arguments.**

    *1.*     *United States v. O'Brien*

The government argues that *United States v. O'Brien*, No. 19-CR-3895 (2d Cir. Mar. 19, 2021), ECF 92-1, (Summary Order), answers the "threshold question" of whether the Katten Plan (Dkt. 736-2) or the Fried Frank Plan (Dkt. 736-1) (together, the "Plans") are subject to garnishment. Br. at 2. This is irrelevant, as Mr. Greebel does not contest that 401(k) plans can be subject to garnishment. There is also no evidence the "retirement accounts" in *O'Brien* shared any characteristics with the Plans. A decision based on a challenge from a *pro se* defendant, *Obrien* at 6, who initially failed to file substantive objections, *id*. at 3, failed to object to the garnishee's answer, *id*. at 5 n.4, and failed to argue that the Consumer Credit Protection Act ("CCPA") applied, has no bearing on the instant dispute.

    *2.*     *United States v. Clark*

Aware that the CCPA was not intended to define "compensation" based on the frequency of payment [*see infra* Section C], the government attempts to use *United States v. Clark*, 990 F.3d 404 (5th Cir. 2021) to argue that Mr. Greebel's 401(k) Plans are not compensation at all. Br. at 2 (claiming 401(k) plans do not "maintain[] the status of 'income' indefinitely"). However, that argument is flawed given that the CCPA cites "a pension or retirement program" as an example of "earnings," 15 U.S.C. § 1672(a), and provides no temporal

**GIBSON DUNN**

The Honorable Kiyo Matsumoto
April 5, 2021
Page 2

limitation. Mr. Greebel has not identified a case where the date of withdrawal militated against treating something as "earnings" under the CCPA. The government is incorrect that "once [funds] were deposited they became assets of the defendant and no longer retained the status of income." Br. at 2. If this were true, no pension or retirement program would be covered by 15 U.S.C. § 1672(a).

Consider that pension or retirement plan payments are often made over many years of one's life. Yet the CCPA does not become inapplicable once a certain amount of time has passed. On this point, *United States v. McClanahan* is illuminating. 475 F. Supp. 3d 525 (S.D.W. Va. 2020). After Mrs. McClanahan died, her state pension was converted into a survivorship benefit for her husband. *Id*. at 526. The court held the survivorship benefit was covered by the CCPA. *Id*. at 529 n.3. The money paid to *Mr*. McClanahan maintained its status as compensation to *Mrs*. McClanahan, despite that the latter had died. This was possible because the CCPA does not have a temporal limitation. Rather, the CCPA protects compensation still owed to the employee by the employer. *See United States v. Ashcraft*, 732 F.3d 860, 864–65 (8th Cir. 2013) ("The government[] ***incorrectly focuses on the time*** the payments are received rather than the ***character*** of the payments. . . simply because Amana received Ashcraft's personal services before Ashcraft began receiving her disability payments []does not take the payments out of the category of compensation. The disability payments constitute ***other compensation*** to employees paid to [her] as a part of [her] earnings for personal services performed in the past.") (citation and quotation marks omitted) (emphasis added). The government does not dispute that the 401(k) plans "were compensation at the time they were earned," Br. at 3, and admits that periodic distributions would be deemed "compensation," Br. at 4.

Seeking to minimize the *character* of the Plans, the government tries to argue the CCPA does not apply to "every asset that is traceable in some way to [] compensation." *See* Dkt. 743 at 9. Even if this is true, it is irrelevant to this dispute given that the CCPA expressly covers pension and retirement programs, 401(k) plans—in other words, 401(k) plans are sufficiently tied to compensation as to merit protection by the CCPA. 15 U.S.C. § 1672(a); *United States v. Lee*, 659 F.3d 619, 621 (7th Cir. 2011).[1] The government's discussion of *Clark* is irrelevant and inapplicable.[2]

---

[1] Even if the Court were to consider whether the Plans are merely "traceable" to Mr. Greebel's compensation, witness testimony confirms the Plans were created by deducting money ***directly from*** Mr. Greebel's paychecks or partner draw. Hr'g. Tr. 23:15–24; 25:16–18; 71:17–25.

[2] In *Clark*, the issue was "accounts [defendant] maintains with brokerage firms and life insurance companies." *Clark*, 990 F.3d at 405. There is no indication these accounts were created by an employer, maintained or administered by an employer, or mean to serve as a part of the defendant's compensation. Additionally, the *Clark* court dealt with 26 U.S.C. § 6334(a)(8), not the CCPA.

**GIBSON DUNN**

The Honorable Kiyo Matsumoto
April 5, 2021
Page 3

The government argues that the CCPA applies to an "amount received directly for labor such as 'bonuses, tips, commissions, and fees.'" Br. at 4 (citing *Clark*, 990 F.3d at 409). This supports Mr. Greebel's position, as the Katten and Fried Frank Plans *were* "received directly for labor." Dkt. 765-1 ("Hr'g. Tr.") at 23:15–24; 41:15–17; 71:17–25. A "bonus" or "tip" is an apt comparison: bonuses and tips are commonly combined with an employee's base salary to form the employee's total compensation. Similarly, before Mr. Greebel received his periodic compensation from Katten and Fried Frank, each employer deducted an amount of money from that compensation and deposited it into the applicable 401(k) plan. The Plans are part of Mr. Greebel's compensation because the amounts deposited in them were the result of deductions from Mr. Greebel's salary or partner draw, and formed part of his total compensation

The *Clark* court relied on *Citronelle-Mobile Gathering, Inc. v. Watkins*, which reasoned that "checks received for personal services no longer considered 'compensation' under state law 'once commingled with other funds' in a bank account." 934 F.2d 1180, 1191 (11th Cir. 1991). Importantly, the funds in Mr. Greebel's 401(k) Plans have not been commingled with other funds in his bank accounts. Rather, they were paid directly from the firm's bank accounts into the 401(k) Plans and Mr. Greebel never had access to the funds. Hr'g. Tr. 23:15–24:21; 25:16–18; 71:17–25.[3]

As discussed further in the next section, the *Citronelle* court is not the only court to look to the *character* of the funds, rather than their periodicity. A crucial factor is whether the funds ever passed into the debtor's hands, were deposited into his bank account, or were voluntarily converted into savings accounts. *See United States v. Hancock*, 2020 WL 6365473, at *2 (N.D. Tex. Oct. 29, 2020) ("once earnings are deposited into a financial institution, they are no longer protected from garnishment)"); *United States v. Tisdale*, 2013 WL 4804286, at *4 (N.D. Tex. Aug. 22, 2013) ("once earnings are deposited into [a checking or savings] account, those funds are no longer characterized as 'earnings' and therefore lose the 25% exemption."), *rec. adopted*, 2013 WL 4804286 (N.D. Tex. Sept. 9, 2013); *United States v. Armstrong*, 2005 WL 937857, at *4 (N.D. Tex. Apr. 21, 2005) ("payments that would otherwise constitute earnings lose their status as earnings once they pass to the hands or bank accounts of the debtor."), *rec. adopted*, 2005 WL 1214669 (N.D. Tex. May 20, 2005); *United States v. Laws*, 352 F. Supp. 2d 707, 713 (E.D. Va. 2004) ("Wages which have voluntarily converted into savings are no longer earnings under the CCPA."); *Usery v. First Nat'l Bank of Ariz.*, 586 F.2d 107, 110–111 (9th Cir. 1978) (wages

---

[3] The *Clark* court also held that in a "bank or investment account" "the money the corpus generates each year – whether as interest, dividends, or capital gains – is income." *Clark*, 990 F.3d at 408. Thus, at the very least, the *gains* to Mr. Greebel's 401(k) plans are income.

GIBSON DUNN

The Honorable Kiyo Matsumoto
April 5, 2021
Page 4

are no longer "earnings" once deposited into an employee's bank account). None of the above language applies to Mr. Greebel, who simply watched as the funds went directly from the firms' accounts into the Plans.

At least one court has established that ERISA-based plans (like a 401(k) remain earnings *so long as they are not rolled over into another plan*. *See*, *e.g.*, *United States v. Berry*, 951 F.3d 632, 638 (5th Cir. 2020) ("Michael rolled over the ERISA plan in a lump sum to the company-run IRA plan. . . . after his cash-out and deposit into a new retirement account, a lump-sum payment from the new account is not compensation paid for personal services"). This directly contradicts *Clark*.

C.  **The Periodic Nature of The Compensation Is Irrelevant, And The Canon *Eexpressio Unius Est Exclusion Alterius* Is Inapplicable.**

In passing the CCPA, Congress did not draw a distinction between periodic and non-periodic compensation. This is evident by the fact that the CCPA's examples include traditionally non-periodic compensation: a "commission" or "bonus." 15 U.S.C. § 1672(a); *see also Ashcraft*, 732 F.3d at 863 ("The statute Congress passed *does not restrict itself to periodic payments*. It includes payments 'denominated as wages, salary, commission, bonus, or otherwise,' *contemplating a wide variety* of payment structures. Indeed, bonuses (and payments in the 'otherwise' category) are frequently not periodic. Congress defines *the only test* as whether the payment is 'compensation paid or payable for personal services.'") (emphasis added).

The Department of Labor Opinion Letter (Dkt. 736-4) ("DOL Opinion Letter") is particularly compelling. The government claims the DOL Opinion Letter is "not relevant." Br. at 4. However, the CCPA's section on garnishment, 15 U.S.C. § 1673, "is enforced by the Secretary of Labor." *Jordan v. Chase Manhattan Bank*, 91 F. Supp. 3d 491, 502 (S.D.N.Y. 2015) (citing *Long Island Trust Co. v. U.S. Postal Serv.*, 647 F.2d 336, 341 (2d Cir.1981)). As such, the Secretary of Labor's opinion that "the compensatory nature of the payment, i.e., whether the payment is for services provided by the employee, rather than the frequency of the payment, is determinative under 15 U.S.C. § 1672(a)," is not only relevant, it is directly applicable. DOL Opinion Letter at 3.

The Supreme Court echoed this point. In *Rousey v. Jacoway*, the Court held that IRAs that allow for early withdrawal "provide a substitute for wages (by wages, for present purposes, we mean compensation earned as hourly or salary income), and are not mere savings accounts." 544 U.S. 320, 329–330 (2005). Just as in *Rousey*, Mr. Greebel's 401(k) Plans were "profit sharing plans," Hr'g. Tr. at 41:15–17; 48:12–13, which "may provide *deferred compensation*" or which "may also be 'cash plans' in which a predetermined percentage of

**GIBSON DUNN**

The Honorable Kiyo Matsumoto
April 5, 2021
Page 5

the profits is distributed to employees at set intervals." *Rousey*, 544 U.S. at 330 (emphasis added). "The common feature of all of these plans is that they provide income that substitutes for wages earned as salary or hourly compensation." *Id.*

In an attempt to rebut the CCPA statute, the Secretary of Labor, and the Supreme Court, the government refers to the canon of statutory construction *expressio unius est exclusion alterius* (the expression of one thing is the exclusion of another). Br. at 4. However, this canon has been rejected by the Supreme Court. *See Herman & MacLean v. Huddleston*, 459 U.S. 375, 387 (1983) (the canon has "long have been subordinated to the doctrine that courts will construe the details of an act in conformity with its dominating general purpose. We believe the maxim cannot properly be applied to a situation where . . . the remedial purposes of the Acts would be undermined by a presumption of exclusivity.") (citation omitted).

Courts in this circuit have rejected this rule of construction as well. *See, e.g.*, *In re Methyl Tertiary Butyl Ether Prod. Liab. Litig.*, 2015 WL 5051660, at *2 n.22 (S.D.N.Y. Aug. 26, 2015); *United States v. Banks*, 776 F.3d 87, 90–91 (2d Cir. 2015); *Tile Setters & Tile Finishers Union of New York & New Jersey, Loc. Union No. 7 of the Int'l Union of Bricklayers & Allied Craftworkers v. Spring St.*, 2007 WL 922286, at *9 (E.D.N.Y. Mar. 26, 2007).

Furthermore, when the rule has been applied, it was to statutory language that was definitive and that lacked phrases such as "whether denominated as wages, salary, commission, bonus, **or otherwise**, and **includes**. . . ." *See, e.g.*, *Guo v. U.S. Dep't of Just.*, 422 F.3d 61, 64 (2d Cir. 2005) (applying the rule to 8 C.F.R. § 208.18(b)(1) and § 208.18(b)(2)); *Arkin v. Trans Int'l Airlines, Inc.*, 568 F. Supp. 11, 13, 15 (E.D.N.Y. 1982) (applying rule to a statute stating "It shall be the duty of every air carrier to provide and furnish interstate and overseas air transportation, as authorized by its certificate").

The language of 15 U.S.C. § 1672(a) only contains examples, and was not meant to be comprehensive. This precludes application of *expressio unius est exclusio alterius*. *See Nw. Airlines, Inc. v. Transp. Workers Union of Am., AFL-CIO*, 451 U.S. 77, 97 (1981) ("The presumption that a remedy was deliberately omitted from a statute is strongest when Congress has enacted a **comprehensive** legislative scheme[.]") (emphasis added).

Respectfully, the Court should disregard *expressio unius est exclusio alterius* and should instead consider Congress' intent in passing the CCPA because:

> Some rules of statutory construction come down to us from sources that were hostile toward the legislative process itself and thought it generally wise to restrict the operation of an act to its narrowest permissible compass. However

**GIBSON DUNN**

The Honorable Kiyo Matsumoto
April 5, 2021
Page 6

> well these rules may serve at times to aid in deciphering legislative intent, they long have been subordinated to the doctrine that courts will construe the details of an act in conformity with its dominating general purpose, will read text in the light of context and will interpret the text so far as the meaning of the words fairly permits so as to carry out in particular cases the generally expressed legislative policy.

*Maher v. J. R. Williston & Beane, Inc.*, 280 F. Supp. 133, 142 (S.D.N.Y. 1967) (quoting *Securities and Exchange Commission v. C. M. Joiner Leasing Corp.*, 320 U.S. 344, 350–351 (1943)).

In enacting the CCPA, Congress acted "not to protect the rights of creditors, but to limit the ills that flowed from the unrestricted garnishment of wages," *Long Island Tr. Co*, 647 F.2d at 339, and to "insure a continued means of support for [debtors] and their families." *Kokoszka v. Belford*, 417 U.S. 642, 650–51 (1974) (quoting H.R. Rep. No. 1040, 90th Cong., 1st Sess., 21 (1967)). With this purpose in mind, courts have found that "In enacting the Consumer Credit Protection Act . . . Congress intended for courts to **broadly construe** its provisions in accordance with its remedial purpose." *Stout v. FreeScore, LLC*, 743 F.3d 680, 684 (9th Cir. 2014) (citations and quotation marks omitted) (emphasis added); *see also Clemmer v. Key Bank Nat'l Ass'n*, 539 F.3d 350, 353 (6th Cir. 2008) (the CCPA is a "**remedial** statute accorded a **broad**, liberal construction ***in favor*** of the consumer") (citation and quotation marks omitted) (emphasis added).

**D.     Witness Testimony Confirms that Mr. Greebel Does Not Have A Current, Unilateral Right To Withdraw.**

In its Brief, the government argues that Mr. Greebel "has not provided one case to support his contention that merely having to go through an administrative process in order to obtain funds from a retirement account means that he does not have a unilateral right to those funds." Br. at 3. The government is incorrect that the Katten Plan or Fried Frank Plan merely require Mr. Greebel to go through "an administrative process." Both plans have substantive withdrawal requirements that Mr. Greebel cannot currently satisfy. *See* Dkt. 765 at 1–4. Additionally, when a pension committee or fiduciary administrator feels it must deviate from the plan document or constructively amend it, the process is not merely "administrative." An "administrative process" is more appropriately used to describe withdrawing from a savings account. *See*, *e.g.*, Rousey, 544 U.S. at 332 ("distribution requirements" can form part of a "substantial barrier to early withdrawal," which differentiates IRAs from "typical savings accounts"). The government is also incorrect that Mr. Greebel has failed to cited cases showing that withdrawal requirements preclude garnishment. *See* Dkt. 736 at 4 (citing *United States v. Ibianski*, 2016 WL 3995938, at *6

(E.D. Mich. July 26, 2016); *United States v. Taylor*, 2012 WL 1309863, at *2–3 (E.D. Mich. Mar. 16, 2012), *report and recommendation adopted*, 2012 WL 1339081 (E.D. Mich. Apr. 17, 2012)); Dkt. 744 at 3 (*United States v. Novak*, 476 F.3d 1041, 1064 (9th Cir. 2007)).

## Conclusion

Mr. Greebel respectfully implores the Court to consider the testimony and evidence presented at the hearing, as well as the authority showing that the CCPA's definition of "earnings" does not turn on the frequency of the compensation, and to hold that the government cannot step into Mr. Greebel's shoes to make a withdrawal, and even if it could, any garnishment would be limited by the CCPA's 25% cap.

Respectfully submitted,

/s/ *Marc Aaron Takagaki*

cc: All Counsel of Record (*Via ECF*)