# MANDATE

## UNITED STATES COURT OF APPEALS
## FOR THE
## SECOND CIRCUIT

At a Stated Term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 24th day of August, two thousand twenty-two,

Before:     Richard C. Wesley,
            Joseph F. Bianco,
            Myrna Pérez,
                    *Circuit Judges.*

_____

United States of America,

        Appellee,                          **JUDGMENT**

    v.                                     Docket Nos. 21-993

Martin Shkreli,

        Defendant,

Evan Greebel,

        Defendant - Appellant.

_____

The appeal in the above captioned case from an order of the United States District Court for the Eastern District of New York was argued on the district court's record and the parties' briefs. Upon consideration thereof,

IT IS HEREBY ORDERED, ADJUDGED and DECREED that the judgment of the district court is VACATED and the cause REMANDED to the district court for further proceedings consistent with this Court's opinion.

For the Court:

Catherine O'Hagan Wolfe,
Clerk of Court

A True Copy
Catherine O'Hagan Wolfe, Clerk
United States Court of Appeals, Second Circuit

MANDATE ISSUED ON 09/14/2022

21-993
United States v. Greebel

## UNITED STATES COURT OF APPEALS
## FOR THE SECOND CIRCUIT

————————

August Term 2021

(Argued: April 28, 2022 | Decided: August 24, 2022)

Docket No. 21-993

UNITED STATES OF AMERICA,

*Appellee,*

v.

MARTIN SHKRELI,

*Defendant,*

EVAN GREEBEL,

*Defendant-Appellant.*

————————

Before:
> WESLEY, BIANCO, and PÉREZ, *Circuit Judges.*


Defendant was convicted of conspiracy to commit wire fraud and conspiracy to commit securities fraud and ordered to pay restitution. The United States District Court for the Eastern District of New York (Matsumoto, *J.*) granted the Government's application for writs of garnishment seeking access to defendant's 401(k) retirement accounts. Defendant appealed.

We hold that the Mandatory Victims Restitution Act authorizes garnishment of defendant's 401(k) retirement funds. We remand to the district court, however, to determine whether the ten-percent early withdrawal tax will be imposed upon garnishment, limiting the Government's access to defendant's retirement funds. We also hold that the Consumer Credit Protection Act's 25-percent cap on garnishments does not apply to limit the Government's garnishment.

We **VACATE** and **REMAND** for further proceedings consistent with this opinion.

––––––––––––––––

THOMAS R. PRICE, Assistant United States Attorney (Varuni Nelson, Rachel G. Balaban, Beth P. Schwartz, *on the brief*), *for* Breon Peace, United States Attorney for the Eastern District of New York, Brooklyn, New York, *for Appellee*.

REED BRODSKY, Gibson, Dunn & Crutcher LLP, New York, NY, *for Defendant-Appellant*.

––––––––––––––––

WESLEY, *Circuit Judge*:

Evan Greebel was ordered to pay $10,447,979 in restitution to his victims following his convictions for conspiracy to commit wire fraud and conspiracy to commit securities fraud. The United States Government sought to enforce Greebel's restitution order under the Mandatory Victims Restitution Act ("MVRA") by garnishing approximately $921,000 contained in Greebel's retirement accounts. The United States District Court for the Eastern District of

New York (Matsumoto, *J.*) granted the Government's application for writs of garnishment seeking access to defendant's 401(k) retirement accounts.

This appeal requires us to decide whether the district court properly granted the Government's application for garnishment. Like the district court, we hold that the MVRA permits the Government to garnish Greebel's retirement funds to compensate the victims of his crimes, notwithstanding the Employee Retirement Income Security Act of 1974 ("ERISA")'s anti-alienation provision.

We further agree with the district court that the plan documents provide Greebel the right to withdraw the funds in his retirement accounts. At the same time, we reiterate that the Government, in seeking garnishment to enforce restitution under the MVRA, steps into the defendant's shoes, acquiring whatever rights the defendant himself possesses to the balance of the 401(k) accounts. Thus, here, the Government's right to Greebel's retirement funds may be limited by the ten-percent early withdrawal tax to which Greebel would be subject. The district court did not consider whether Greebel would be subject to the early withdrawal tax upon seizure of funds by the Government or determine what property interest remains in Greebel's retirement accounts. Accordingly, we remand to the district court to address those questions in the first instance.

3

Finally, we reject Greebel's argument that the Consumer Credit Protection Act ("CCPA") limits the Government from garnishing more than 25 percent of the funds in his accounts.

## BACKGROUND

**A.**   **Factual Background**

In 2017, Evan Greebel was convicted of Conspiracy to Commit Wire Fraud, 18 U.S.C. § 1349, and Conspiracy to Commit Securities Fraud, 18 U.S.C. § 371, as a result of his conspiring with co-defendant Martin Shkreli and others to defraud investors in Retrophin, Inc.  At the time Greebel so conspired, he was a partner at the law firm Katten Muchin Rosenman LLP ("Katten") and served as Retrophin's outside counsel.  In August 2018, the district court sentenced Greebel to, *inter alia*, pay restitution to his victims in the amount of $10,447,979, which was "due and payable immediately from available assets . . . until paid in full," in accordance with the MVRA.  J. App'x 73.[1]

This appeal arises out of the Government's effort to garnish two of Greebel's retirement accounts to enforce his restitution order under the MVRA.

---

[1] Greebel appealed his conviction, and this Court affirmed the district court's judgment. *United States v. Greebel*, 782 F. App'x 72 (2d Cir. 2019).

### 1.  Greebel's 401(k) from Fried Frank

The Government sought to garnish Greebel's interest in his 401(k)-retirement account at Merrill Lynch from the time he worked as an associate at the law firm Fried, Frank, Harris, Shriver & Jacobson LLP ("Fried Frank").  Greebel's 401(k) is sponsored by Fried Frank and governed by the "Amendment and Restatement of Fried, Frank, Harris, Shriver & Jacobson LLP 401(k) Incentive Savings Plan" (the "Fried Frank Plan").  The relevant section of the Fried Frank Plan is Article VI (Payment of Benefits and Withdrawals; Loans).

Section 6.01 of Article VI states that "[u]pon a Participant's Separation from Service, other than by reason of his death, *he shall be entitled to a distribution of his interest in his Account balance in a single lump sum* or shall be entitled to effect a no-load transfer of the Investment Fund share held in his Account to an Individual Retirement Account ["IRA"] established by [Merrill Lynch]."   J. App'x 220 (emphasis added).  Section 6.02(a) provides that "the distribution of a Participant's Account balance shall occur upon the earliest practicable date after the Investment Date of the Plan Year in which his Separation from Service occurs" except as provided in the following subsections 6.02(b) and (c).  *Id*.  Section 6.02(b) establishes that "if the value of the Participant's vested Account balance is more

5

than $1,000, then his vested Account balance shall not be distributed until he reaches his sixty-second (62nd) birthday *unless he elects* within the period between thirty (30) days and one hundred and eighty (180) days after he receives the notice required by Treasury Regulation Section 1.411(a)-11(c) to receive his benefits prior to that date." *Id.* (emphasis added).  Section 6.02(c) provides that "a Participant may consent to postpone the distribution of his Account balance beyond the date specified in Subsection (a) or (b) by filing a written statement with the Pension Committee stating the date upon which he desires the distribution to be made." *Id.*

### 2.  Greebel's 401(k) from Katten

The Government also sought to garnish Greebel's interest in his 401(k)-retirement account at Charles Schwab from his time working as an associate and partner at Katten.  Greebel's account is governed by the "Katten Muchin Rosenman LLP Defined Contribution Plan, as Amended and Restated Effective January 1, 2007" (the "Katten Plan").  The relevant section of the Katten Plan is Article VII (Withdrawals).

Section 7.4, governing Partial Withdrawal by Inactive Participants,[2] provides that "[b]y applying to the Applicable Administrative Named Fiduciary ["AANF"][3] in the form and manner prescribed by the [AANF], an Inactive Participant may make a withdrawal from all Accounts of any amount, *up to the entire value*, of his Accounts." J. App'x 306 (emphasis added).   Section 7.5 (Withdrawal Processing Rules) establishes the procedure for requesting a withdrawal of funds.   Section 7.5(a) provides that "[t]here is no minimum for any type of withdrawal," and Section 7.5(b) provides that "[t]here is no maximum number of withdrawals permitted in any Plan Year."  *Id.*  "A Participant must submit a withdrawal request in accordance with the procedures established by the [AANF]."  *Id.* at 307 (Section 7.5(c)).

## B.   Procedural History

To enforce Greebel's restitution order under the MVRA, the Government applied under 28 U.S.C. § 3205 for writs of continuing garnishment ("writs") for Greebel's interest in his retirement accounts under the Fried Frank Plan and Katten

---

[2] Inactive Participant is defined as "a Participant who is not an Active Participant", J. App'x 282, and an "Active Participant" is defined as a "Participant who is also an Employee," *id.* at 273.

[3] The AANF is Charles Schwab.

7

Plan.   Greebel objected pursuant to 28 U.S.C. § 3205(c)(5) of the Federal Debt

Collection Procedures Act, 28 U.S.C. § 3001 *et seq.*, seeking to vacate both writs.  He

argued that he does not have a current, unilateral right to withdraw funds from

either retirement account, and thus the accounts are protected by ERISA's anti-

alienation provision and not subject to garnishment.   In the alternative, Greebel

contended the CCPA limits the Government from garnishing more than 25 percent

of the funds in the accounts.

Greebel requested a hearing on the motion for writs of garnishment.  The

district court granted Greebel's request for a hearing over the Government's

objection.  At the hearing, three witnesses testified about the two retirement plans.

Each of the witnesses testified that former employees of their respective firms,

such as Greebel, can withdraw the funds in their retirement accounts at any time

after leaving the firm.[4]   Following the hearing, the district court granted the

Government's request for writs of garnishment.  Greebel appealed.

---

[4] *See* J. App'x 527-28 (29:20-30:4, 33:12-14) (Berge); *id.* at 553 (55:6-11), 548 (50:22-24)
(Broutman: "An inactive participant, someone who is terminated from the firm can fully
access any amount in their Schwab defined contribution plan account"); *id.* at 578
(80: 19-20) (Groskaufmanis: "[F]ormer participants are able to and have been able to
withdraw the assets from their accounts at the firm."); *id.* at 580 (82:12-14)
(Groskaufmanis:  "I don't understand the plan to impose an age restriction, or put

8

## DISCUSSION

We review the district court's decision de novo because Greebel's arguments on appeal sound in statutory and contractual interpretation.[5]  We begin by laying out the statutory provisions at issue in this case: the MVRA's restitution requirement and procedure for enforcement, ERISA's prohibition on disbursing retirement funds to third parties, and the CCPA's cap limiting garnishment of earnings.  The answer to whether the Government may enforce Greebel's restitution obligations against his ERISA-protected funds, and the appropriate amount subject to garnishment, lies in the interplay between these provisions.

### I.     The MVRA Permits Garnishment of Funds Otherwise Protected by ERISA's Anti-Alienation Provision

"The [MVRA] is one of several federal statutes that govern federal court orders requiring defendants convicted of certain crimes to pay their victims restitution."  *Lagos v. United States*, 138 S. Ct. 1684, 1687 (2018).  Section 3613(a)

---

another way, a former participant can effect a withdrawal at any point after the person has left.").

[5] *See Hayward v. IBI Armored Servs., Inc.*, 954 F.3d 573, 575 (2d Cir. 2020) (per curium) (applying de novo review to issues of statutory interpretation); *Oscar Gruss & Son, Inc. v. Hollander*, 337 F.3d 186, 198-99 (2d Cir. 2003) (reviewing de novo district court's interpretation of a contract).

provides the procedures available to the Government for collecting unpaid

restitution.  The relevant provision of the MVRA states:

> The United States may enforce a judgment imposing a fine in
> accordance with the practices and procedures for the enforcement of
> a civil judgment under Federal law or State law.  *Notwithstanding any*
> *other Federal law (including section 207 of the Social Security Act), a*
> *judgment imposing a fine may be enforced against all property or rights to*
> *property* of the person fined, except that—
>
> (1) property exempt from levy for taxes pursuant to [certain
> enumerated sections] of the Internal Revenue Code of 1986 shall be
> exempt from enforcement of the judgment under Federal law;
>
> (2) [Federal Debt Collection Procedures Act procedures for exempting
> certain property] shall not apply to enforcement under Federal law;
> and
>
> (3) the provisions of section 303 of the Consumer Credit Protection
> Act (15 U.S.C. [§] 1673) shall apply to enforcement of the judgment
> under Federal law or State law.

18 U.S.C. § 3613(a) (emphasis added).

The government may enforce restitution orders arising from criminal

convictions under the MVRA "using the practices and procedures for the

enforcement of a civil judgment under federal or state law as set forth in the

Federal Debt Collection Procedures Act."  *United States v. Cohan*, 798 F.3d 84, 89

(2d Cir. 2015).  Section 3205 of the Act, in turn provides that "[a] court may issue a

10

writ of garnishment against property . . . in which the debtor has a substantial nonexempt interest and which is in the possession, custody, or control of a person other than the debtor, in order to satisfy the judgment against the debtor." 28 U.S.C. § 3205(a); *see also Cohan*, 798 F.3d at 89.

Meanwhile, ERISA "broadly protects covered retirement benefits from dissipation through payment to third parties," *United States v. Novak*, 476 F.3d 1041, 1045 (9th Cir. 2007), employing what is known as its "anti-alienation" provision requiring pension plans to provide that their benefits "may not be assigned or alienated," 29 U.S.C. § 1056(d)(1). In *United States v. Irving*, 452 F.3d 110, 126 (2d Cir. 2006), we concluded that the MVRA permits courts to consider ERISA-protected assets when imposing criminal fines. Two other courts of appeals have similarly held that the MVRA permits the garnishment funds otherwise covered by ERISA's anti-alienation provision. *See Novak*, 476 F.3d at 1045; *United States v. Frank*, 8 F.4th 320, 325–26 (4th Cir. 2021).

The statutory text of the MVRA makes clear that criminal restitution orders can be enforced by garnishing ERISA-protected retirement funds. The MVRA expressly states that criminal restitution orders may be enforced against "*all* property or rights to property," 18 U.S.C. § 3613(a) (emphasis added), making

11

"'quite clear' that absent an express exemption, all of a defendant's assets are subject to a restitution order." *Frank*, 8 F.4th at 327 (quoting *Novak*, 476 F.3d at 1046). The Supreme Court has emphasized in a different context that the phrase "'all property and rights to property' . . . is broad and reveals on its face that Congress meant to reach every interest in property." *United States v. Nat'l Bank of Com.*, 472 U.S. 713, 719–20 (1985) (quoting 26 U.S.C. § 6321).

Further, § 3613(a) instructs us on how to resolve any conflict between competing statutory provisions by specifying that all property is covered "[n]otwithstanding any other Federal law." *Frank*, 8 F.4th at 327; *Novak*, 476 F.3d at 1046–47. The Supreme Court has indicated that "the use of such a 'notwithstanding' clause clearly signals the drafter's intention that the provisions of the 'notwithstanding' section override conflicting provisions of any other section." *Cisneros v. Alpine Ridge Group*, 508 U.S. 10, 18 (1993). That principle applies here. Congress's directive providing for enforcement against "all property or rights to property," 18 U.S.C. § 3613(a), *notwithstanding* any other federal law, makes clear that ERISA's anti-alienation provision does not prohibit garnishment of funds in 401(k) accounts to satisfy restitution orders under the MVRA.

The MVRA's statutory context lends further support to the conclusion that restitution orders may be enforced against ERISA-protected 401(k) accounts. The MVRA specifically carves out four types of federally authorized pensions—Railroad Retirement Act pensions, Railroad Unemployment Insurance Act benefits, pensions received by those on the Armed Forces Medal of Honor rolls, and certain pensions paid to military servicemembers in lieu of retirement pay—but not ERISA-protected 401(k) accounts. 18 U.S.C. § 3613(a)(1). Each of the four exempted pensions already contain anti-alienation provisions like ERISA's. *See* 10 U.S.C. §§ 1440, 1450(i) (specified military pensions); 38 U.S.C. § 1562(c) (Medal of Honor pensions); 45 U.S.C. § 231m(a) (Railroad Retirement Act pensions); *id.* § 352(e) (Railroad Unemployment Insurance Act benefits). Congress's express exclusion of these retirement plans from § 3613(a) signals that the anti-alienation provisions in those federal pension statutes would not have otherwise operated to protect retirement benefits from garnishment under the MVRA. *See Novak*, 476 F.3d at 1048.

If the general anti-alienation provisions were sufficient to bar garnishment enforcing restitution orders under the MVRA, there would be no reason to carveout the referenced retirement pensions in § 3613(a)(1). *See Novak*, 476 F.3d

13

at 1048 ("Except on this understanding the explicit exclusion of the referenced pensions was unnecessary, as the exclusion would have been accomplished by the anti-alienation provisions in the statutes establishing the pension plans."). ERISA's general anti-alienation provision, like the anti-alienation provisions found in the statutes establishing the exempted pensions, is not sufficient to protect retirement accounts from garnishment to enforce restitution under the MVRA. *See id.*

Finally, as this Court recognized in *Irving*, the MVRA demands that restitution orders are enforced in the same manner as tax levies, which can be enforced against ERISA-protected assets. *See Irving*, 452 F.3d at 126; *see also Frank*, 8 F.4th at 328–29 (noting that "courts uniformly have held that under § 6334(c), tax levies may be enforced against assets otherwise protected by anti-alienation provisions, including ERISA's" and explaining that "when two statutes addressing a similar subject matter use similar language, [courts] generally will construe that language consistently").[6]

---

[6]  The language of § 3613(a) of the MVRA mirrors that of 26 U.S.C. § 6334, the tax levy statute. *Compare* 18 U.S.C. § 3613(a) ("Notwithstanding any other Federal law (including section 207 of the Social Security Act), a judgment imposing a fine may be enforced against all property or rights to property of the person fined . . .") *with* 26 U.S.C. § 6334(c)

That the MVRA permits the Government to garnish ERISA-protected retirement funds does not end the inquiry.  The relevant question becomes, what is the defendant's "property" interest in his 401(k) account?  In the tax levy context, the Government "steps into the taxpayer's shoes" and acquires "whatever rights the taxpayer himself possesses."  *Nat'l Bank of Com.*, 472 U.S. at 725 (internal citation omitted); *cf. Irving*, 452 F.3d at 126 (MVRA restitution orders are enforced in the same manner as tax levies).  It follows that the same principle applies here: the Government, in seeking garnishment, steps into the defendant's shoes, "acquir[ing] whatever rights the [defendant] himself possesses."  *Nat'l Bank of Com.*, 472 U.S. at 725.  And thus, the Government's right to Greebel's 401(k) retirement accounts is the same as those of Greebel himself.  *See Frank*, 8 F.4th at 331; *United States v. Sayyed*, 862 F.3d 615, 618–19 (7th Cir. 2017); *Novak*, 476 F.3d at 1062–63.

## A.   Greebel's Retirement Accounts are Subject to Garnishment

In the face of this straightforward statutory construction, Greebel clings to language in *Novak* that restitution orders can be enforced by garnishing

---

("Notwithstanding any other law of the United States (including section 207 of the Social Security Act), no property or rights to property shall be exempt from levy other than the property specifically made exempt . . .").

ERISA-protected retirement funds only "when the defendant has a current, *unilateral* right to receive payments under the terms of the retirement plan." Appellant Br. 19–20 (emphasis added).  From this premise, Greebel offers a series of tortured contract interpretations to argue that he does not have a current unilateral right to withdraw his ERISA-protected funds and thus, his accounts are not subject to garnishment by the Government.  Neither the relevant statutory provisions nor the plan documents support Greebel's argument that he currently lacks the right to withdraw a lump-sum distribution from his retirement accounts.

### 1.  Fried Frank Account

Greebel contends that Section 6.02(b) of the Fried Frank Plan prohibits a distribution until he reaches his 62nd birthday unless he makes an election within 180 days of termination.  The text will not do the work he asks of it.  Section 6.01 clearly states that Greebel's right to withdraw his entire account balance accrues upon his separation from employment.  Nothing in Section 6.01 limits the time within which he is entitled to a distribution.

Greebel's right to withdraw is unchanged by Section 6.02, which instead restricts Merrill Lynch from unilaterally distributing the funds if the value of the vested account is more than $1,000 unless Greebel elects to do so.  *See also* 26 C.F.R.

16

§ 1.411(a)-11(a)(1) ("Section 411(a)(11) restricts the ability of a plan to distribute any portion of a participant's accrued benefit without the participant's consent."). That Greebel has not "elected" to withdraw his retirement funds upon termination does not mean that he does not have the right to do so.  Instead, Section 6.02 means that Merrill Lynch cannot distribute the balance of his Fried Frank retirement account if its value is more than $1,000 until Greebel reaches age 62 absent his consent and receipt of a notice of his rights—requirements that comport with the applicable Treasury Regulations governing distributions.[7]  Greebel's contention that the district court's interpretation of the plan renders Section 6.03 meaningless is wrong.  If a participant has elected to postpone distributions beyond age 62 as permitted by Section 6.02(c), Section 6.03 requires that distributions start by age 70½—and thus, is not rendered "meaningless."

---

[7] Treasury Regulations provide that a plan may not distribute accrued benefits without participant consent if the value exceeds the cash-out limit.  26 C.F.R. § 1.411(a)-11(b)-(c). The regulations further provide that consent to distribution must not be made before the participant receives the notice of his or her rights, *id.* at § 1.411(a)-11(c)(2), and "[p]articipant consent is required for any distribution while it is immediately distributable, i.e., prior to the later of the time a participant has attained normal retirement age (as defined in section 411(a)(8)) or age 62," *id.* at § 1.411(a)-11(c)(4).

## 2.  Katten Account

Greebel's arguments regarding the Katten Plan also come up short.  Greebel attempts to expand the Ninth Circuit's holding in *Novak* by claiming that the plan's provisions requiring that he apply to have his funds distributed, and submit a request in accordance with certain procedures, negate his unilateral right to receive payments.  We disagree.  The "unilateral right to receive payments" language in *Novak* stemmed in part from the Ninth Circuit's observation that "because the government's right is to step into the *defendant's* shoes, it will not be able unilaterally to cash out a retirement plan when ERISA requires that lump sum payments be made payable only with spousal consent."  *Novak*, 476 F.3d at 1063. That limitation—intended to protect blameless dependents—does not support the argument Greebel advances here: that the government's ability to garnish his ERISA-protected accounts is precluded by the existence of an administrative process for effectuating withdrawals under the plan's terms.

The unambiguous plain language of the plan documents confirms Greebel's rights to withdraw his funds "*up to the entire value,*" of his accounts.  *See* J. App'x 306 (Section 7.4) (emphasis added).  Greebel's right to the interest in his retirement accounts does not exist only when he is able to single-handedly receive money

18

immediately upon verbal command—and such an interpretation would entirely ignore the realities of any retirement system. That the plan designates the AANF responsible for determining that a withdrawal request conforms to the requirements does not negate Greebel's right to those funds.

Greebel further contends the district court erred in not considering the plan summary document. He claims that the plan summary states that he cannot withdraw until he is age 59½. Appellant Br. 31–32. Even if we considered the plan summary, it does not support Greebel's argument. The plan summary provides that "[a]t the time of retirement or after you otherwise leave the Firm, you may receive your Plan Account . . . [i]f you elect to receive distribution of your Plan Account, you may request one total distribution or you may make multiple, partial distribution requests." J. App'x 440. Nothing in the summary purports to eliminate Greebel's right to withdraw a lump-sum distribution of his account.

The provision cited by Greebel noting that "[o]nce you reach age 59½, you may withdraw all or part of your Plan Account for any reason," *id.* at 439, follows an explanation of other withdrawal circumstances that *may* subject a participant to a ten-percent early withdrawal tax and outlines circumstances (i.e., hardship withdrawals) that would not be subject to the ten-percent early withdrawal tax. In

19

context, the provision is intended to make clear that any withdrawals after age

59½ do not similarly trigger the ten-percent early withdrawal tax.[8]

### 3.   The Effect of the Ten-Percent Early Withdrawal Tax

Finally, Greebel asserts that the district court "disregarded the tax penalty

for early withdrawal," which in his view "precludes a current, unilateral right to

withdraw" the funds from his accounts.   Appellant Br. 28–29.   The district court

did not address the ten-percent early withdrawal tax, under 26 U.S.C. § 72(t) of the

Internal Revenue Code,[9] or its impact on Greebel's property interest in his

---

[8] Greebel requested a hearing pursuant to 28 U.S.C. § 3205(c), to which the Government objected on the grounds that the retirement plan documents were unambiguous.   The district court granted Greebel's request over the Government's objection.   Curiously, despite requesting the hearing and calling witnesses, Greebel now disavows the testimony he sought.   He contends that the district court erred in acknowledging that the parol evidence (i.e., the hearing testimony) confirmed its finding that Greebel currently has the right to withdraw his retirement funds under the plain language of the Fried Frank Plan and Katten Plan.   We need not determine whether the district court erred in considering the hearing testimony because, even if there was error, it was harmless.

[9] This opinion refers to the ten-percent additional tax imposed under 26 U.S.C. § 72(t) of the Internal Revenue Code as the "early withdrawal tax."   The ten-percent early withdrawal tax is sometimes characterized as a tax penalty by the parties and other courts.   *See e.g.*, *Murillo v. Comm'r*, 75 T.C.M. (CCH) 1564 (T.C. 1998) ("The purpose of the early withdrawal penalty [section 72(t)] is to prevent the diversion of IRA funds to nonretirement uses and to recapture a measure of the tax benefits that have been provided.") (citing S. Rep. No. 99–313 1986–3 C.B. (Vol.3) 1, 612–613; H. Rep. No. 99–426, 1986–3 C.B. (Vol.2) 1, 728–729); *Rousey v. Jacoway*, 544 U.S. 320, 327 (2005) (explaining the right to the balance of an IRA "is restricted by a 10–percent tax penalty that applies to withdrawals from IRAs made before the accountholder turns 59½ . . . this tax penalty is

retirement funds.  The Government posits that Greebel "will likely not have to pay a 10% penalty" citing *Murillo v. Comm'r*, 75 T.C.M. (CCH) 1564 (T.C. 1998), *acq. in result*, 1999–1 C.B., at xix, a Tax Court's ruling that the ten-percent early withdrawal tax is not owed when a defendant forfeits his retirement plan as part of the terms of a criminal plea.[10]  Gov't Br. 35.  The Government, however, when asked at oral argument, refused to commit to forgoing the ten-percent early withdrawal tax against Greebel following seizure of his funds.[11]

We agree with the Government's contention that the ten-percent early withdrawal tax does not prevent it from garnishing the retirement funds, but the question remains as to whether the early withdrawal tax limits Greebel's right to

---

substantial").  For clarity, although not at issue here, Section 72(t) imposes a tax, not a penalty.  *See Grajales v. Comm'r*, No. 21-1420, —F.4th— (2d Cir. 2022).

[10] In *Novak*, the Ninth Circuit concluded "it does not appear that the [ten-percent] tax applies to retirement plan proceeds garnished to satisfy MVRA restitution orders either." 476 F.3d at 1063 n.25 (citing IRS Priv. Ltr. Rul. 200426027, at 12–13, 2004 PLR LEXIS 315, at *24–25).  The IRS Private Letter Request provided:

> With respect to your fourth ruling request, we conclude as follows:
>
> > 4. That payments made from either Plan X or Plan W pursuant to the above-referenced orders of garnishment obtained pursuant to 18 U.S.C. § 3613(c) are not subject to the 10-percent additional income tax imposed under Code § 72(t)(1) pursuant to Code § 72(t)(2)(A)(vii).

IRS Priv. Ltr. Rul. 200426027 (June 25, 2004).

[11] Oral Arg. 16:00–16:36.

his retirement funds and thus, the Government's parallel right of access. We agree with the Seventh Circuit's conclusion in *Sayyed*: the ten-percent early withdrawal tax does not preclude the Government from garnishing the defendant's retirement funds, but, if imposed, it would qualify as a limit on the defendant's right to payment of the balance of those funds. *See* 862 F.3d at 619 (holding "the government may clearly access [Sayyed's retirement] funds, *subject to the tax penalties faced by Sayyed for early distribution of his retirement funds*") (emphasis added); *cf. Rousey v. Jacoway*, 544 U.S. 320, 327 (2005) (explaining the right to the balance of an IRA "is restricted by a 10–percent tax penalty that applies to withdrawals from IRAs made before the accountholder turns 59½"). Accordingly, we remand so that the district court may consider these issues in the first instance.

Specifically, the district court should determine whether the Government's garnishment would trigger the ten-percent early withdrawal tax, and, if so, the amount subject to garnishment by the Government. *See Frank*, 8 F.4th at 332–33 (remanding to the district court to determine whether the government's proposed lump-sum distribution would trigger an early withdrawal tax and to determine the limit on defendant's right of access). To the extent the parties do not provide clarity on whether Greebel will be subject to the early withdrawal tax, the district

court may wish to direct the liquidation of the retirement account and order the clerk to reserve a portion of the funds in escrow for the potential additional tax consequences of the early withdrawal.

## II.    The CCPA's Garnishment Cap Does Not Apply

Finally, Greebel contends that the funds in his retirement accounts meet the CCPA's definition of "earnings" and thus, are subject to the 25-percent garnishment cap.  We reject Greebel's argument that the CCPA's garnishment restrictions limit the Government's right to a lump-sum distribution of his retirement funds.

Under the CCPA there is a cap of 25 percent on the portion of an individual's weekly "aggregate disposable earnings" that may be garnished.  15 U.S.C. § 1673(a).  The CCPA defines "earnings" as "compensation paid or payable for personal services, whether denominated as wages, salary, commission, bonus, or otherwise, and includes periodic payments pursuant to a pension or retirement program."  15 U.S.C. § 1672(a).  The Supreme Court has cautioned that the terms "earnings" and "disposable earnings" under the CCPA are "limited to periodic payments of compensation and do not pertain to every asset that is traceable in

23

some way to such compensation." *Kokoszka v. Belford*, 417 U.S. 642, 651 (1974) (internal citations and alterations omitted).

Greebel argues that a lump-sum 401(k) payment qualifies as earnings because the definition of earnings is not based on the timing of the payment but rather "the compensatory nature of the payment." Appellant Br. 35. The statute, however, plainly covers *periodic* payments pursuant to a retirement program. It is "silent as to lump-sum distributions of retirement funds, suggesting that such distributions do not qualify as 'earnings.'" *Sayyed*, 862 F.3d at 619; *Frank*, 8 F.4th at 334 ("[W]e think that statutory text clearly excludes from the definition of 'earnings' a one-time, lump-sum distribution from a retirement fund."). Congress limited the type of retirement payments that qualified as earnings to periodic payments. That statutory text is rendered superfluous if Congress intended to cover non-periodic payments, like single lump-sum distributions from retirement accounts, as Greebel claims.[12] We agree with the decisions of our sister circuits,

---

[12] In support of his argument, Greebel relies on *United States v. Ashcraft*, 732 F.3d 860 (8th Cir. 2013), which held that certain disability payments were earnings within the meaning of the CCPA. The court relied, *inter alia*, on the fact that the disability payments were designed to function as wages and noted that the clause of the Act regarding wages, salary, bonus, etc., was not restricted to payments that are periodic. *Id.* at 864 n.4. The CCPA, however, treats retirement payments differently. And the Court made clear that

24

which reflect judicial consensus that the CCPA's garnishment cap does not apply to lump-sum distributions from contributory 401(k) accounts at issue here.  *See Sayyed*, 862 F.3d at 619; *Frank*, 8 F.4th at 334; *cf. United States v. DeCay*, 620 F.3d 534, 544–45 (5th Cir. 2010).[13]

      Contrary to Greebel's claim, our interpretation is consistent with Congress's intent.  In enacting the CCPA, Congress intended to protect "periodic payment of compensation needed to support the wage earner and his family on a week-to-week, month-to-month basis." *Kokoszka*, 417 U.S. at 651.   Nothing suggests Congress intended the CCPA to protect lump-sum liquidations of retirement accounts, which are often invested for decades, from being used to cover restitution obligations arising out of criminal convictions.

---

cases determining whether retirement payments constitute earnings within the meaning of the CCPA "deal with a different question than the one Ashcraft's case presents."  *Id.* at n.3.

[13] Greebel contends that the district court erred in not considering the United States Department of Labor Letter, *see* J. App'x 455, which explains, *inter alia*, that whether a lump-sum payment qualified as earnings under the CCPA depends on the compensatory nature of the payment rather than the frequency.  That may be true for payments other than those pursuant to retirement accounts—like bonuses, commissions, relocation payments, termination pay, etc., but the statute treats retirement payments differently singling out for inclusion only periodic payments from such accounts.  In any event, the letter did not conclude the CCPA's definition of earnings applies to lump-sum payments from pension or 401(k) plans.

Greebel does not contend he is currently receiving periodic distributions from his retirement accounts to support his family.[14]  Accordingly, on remand, the district court need not account for the CCPA's garnishment cap in determining what portion of funds the Government may garnish to enforce Greebel's restitution order.

## CONCLUSION

Accordingly, we **VACATE** the judgment of the district court and **REMAND** for further proceedings consistent with this opinion.

---

[14] Outside the MVRA context, it is ERISA's anti-alienation provision that protects the corpus of retirement accounts, like Greebel's, from dissipation through payments to third parties.

26