United States District Court
Eastern District of New York

-----------------------------------X

*United States*,

     - against -

Evan Greebel,

        Defendant.

-----------------------------------X

**<u>ORDER</u>**

No. 15-cr-637 (KAM)

**Kiyo A. Matsumoto, United States District Judge:**

On August 24, 2018, this Court entered a judgment of conviction against Mr. Greebel that included, *inter alia*, mandatory restitution in favor of Retrophin, Inc., in the amount of $10,447,979.00. (ECF No. 674.)[1] To enforce the judgment's monetary aspects, the Government filed applications for writs of garnishment against Mr. Greebel's interest in two retirement accounts at Merrill Lynch, Pierce, Fenner & Smith, Inc. ("Merrill Lynch") and Charles Schwab Retirement Plan Services ("Charles Schwab" and together, "Garnishees"). (ECF Nos. 694, 703.) Mr. Greebel objected to the answers of Merrill Lynch and Charles Schwab. (ECF No. 738.)

On April 16, 2021, this Court found Mr. Greebel's objections

---

[1] The Second Circuit affirmed Mr. Greebel's conviction on November 22, 2019. (ECF No. 719.)

to be without merit and ordered the Government to submit orders of garnishment directing Merrill Lynch and Charles Schwab as to the disposition of the funds in the garnished accounts. (ECF No. 770.)

On April 20, 2021, the Government submitted proposed orders of garnishment directing the Garnishees to pay to the Clerk of Court the entire cash surrender value of Mr. Greebel's retirement accounts held by each garnishee in partial satisfaction of his outstanding restitution obligation. (ECF No. 772.) The same day, Mr. Greebel filed a letter notifying the Court of his intent to move to stay the execution of the garnishment orders pending his appeal of the Court's April 16, 2021 decision. (ECF No. 773.)

Thereafter, on May 6, 2021, to avoid litigation over Mr. Greebel's anticipated motion to stay and to avoid potential financial harm to Mr. Greebel should he prevail on appeal, as well as to protect the victim's interests by preserving the funds' principal value in the accounts to be garnished, the parties jointly submitted revised proposed stipulations and orders of garnishment to the Court. (ECF Nos. 775, 775-1, and 775-2.) On May 7, 2021, this Court executed the parties' requested stipulations and orders of garnishment, which required the Garnishees to liquidate Mr. Greebel's holdings and place the full cash balance into Stable Value Funds to safeguard the value of the garnished

retirement accounts. (ECF Nos. 776-77.)[2]

On August 24, 2022, the Second Circuit held that the Mandatory Victims Restitution Act ("MVRA") permits the Government to garnish Mr. Greebel's retirement funds, and that the Consumer Credit Protection Act's 25-percent cap on garnishment does not apply to limit the Government's garnishment. The Second Circuit remanded for further proceedings to consider: whether a potential ten-percent early withdrawal tax would apply upon seizure of funds by the Government and, if so, the amount subject to garnishment by the Government. *See United States v. Greebel*, 47 F.4th 65, 76 (2d Cir. 2022). Mr. Greebel petitioned the United States Supreme Court for a writ of certiorari, which was denied. (ECF No. 788.) This Court then directed the parties to submit their responses to the Second Circuit's Mandate regarding whether the ten-percent early withdrawal tax would apply. (May 31, 2023 Order.)

Since the Second Circuit's August 2022 decision remanding this case, the parties jointly requested an extension of time to discuss the potential resolution of the matter on mutually

---

[2] The Order of Garnishment as to Merrill Lynch ordered that Merrill Lynch liquidate the holdings in Mr. Greebel's retirement account and place the full cash balance into the Wells Fargo Stable Value Fund within the Fried, Frank, Harris, Shriver & Jacobson LLP 401(k) Incentive Savings Plan account. (ECF No. 776 ¶ 1.) The Order of Garnishment as to Charles Schwab ordered that Charles Schwab liquidate the holdings in Mr. Greebel's retirement account and place the full cash balance into the Morley Stable Value Fund within the Katten Muchin Rosenmen LLP Defined Contribution Plan account. (ECF No. 777 ¶ 1.)

agreeable terms without the need for further litigation, or to "limit the scope of the issues that each party raises in their respective submissions." (ECF No. 789.) The parties subsequently requested, and the Court granted, additional joint requests for extensions of time for the parties to respond to the Second Circuit's Mandate, in light of the parties' representations of their continued efforts to resolve the dispute over the potential early ten-percent withdrawal tax. (ECF Nos. 790-792, 795-802.)

Presently, the Court is in receipt of the parties' jointly proposed stipulations and orders of garnishment, filed on January 31, 2025, requesting the "Court's review and endorsement." (ECF No. 803 at 1; *see* 803-1, 803-2.)[3]

The proposed January 31, 2025 stipulations and orders of garnishment ignore the Second Circuit's Mandate and this Court's orders after remand by merely acknowledging the potential ten-percent early withdrawal tax that may be applicable to withdrawals before the plan participant reaches age 59½, but failing to clarify whether Mr. Greebel will be subject to the ten-percent early withdrawal tax. (*See* ECF Nos. 803-1 ¶ 12; 803-2 ¶ 12.) Mr. Greebel has had two-and-a-half years to seek a Tax Court ruling on whether

---

[3] The proposed stipulations indicate that Mr. Greebel's outstanding balance for restitution, with interest as of January 31, 2025, is approximately $12,087,625.38. (ECF Nos. 803-1 at 4, 803-2 at 4.) It is not clear if Mr. Greebel has made any restitution payments, as required by his judgment and as a condition of his supervised release.

4

he would be subject to the ten-percent early withdrawal tax, as the Second Circuit noted had occurred in a case cited by the Government on appeal. *See Greebel*, 47 F.4th at 75.

Further, the proposed stipulations and orders of garnishment exceed the scope of the Second Circuit's Mandate by proposing that 40% of the cash value of Mr. Greebel's interests in the two retirement accounts would be paid toward Mr. Greebel's unspecified federal and state tax liability, with 60% to be paid to the victim. (ECF Nos. 803-1 ¶¶ 2, 4-9; 803-2 ¶¶ 2, 4-9.) Further, the parties' proposal provides that any net tax refund to Mr. Greebel would be paid to the Clerk of Court in further partial satisfaction of his restitution balance. (*See* ECF Nos. 803-1 ¶ 9; 803-2 ¶ 9.) The parties provide insufficient factual and legal support for their proposal in the context of post-judgment garnishment by the Government to enforce a crime victim's right to restitution. *See* 18 U.S.C. § 3664(m)(1)(A)(i) (noting, in relevant part, that "[a]n order of restitution may be enforced by the United States"); *see also* 18 U.S.C. § 3613(a).

Moreover, the Second Circuit's decision in *Greebel* noted, "[t]he MVRA expressly states that criminal restitution orders may be enforced against '*all* property or rights to property'" of a defendant, *Greebel*, 47 F.4th at 71 (emphasis in original) (quoting 18 U.S.C. § 3613(a)), "making '"quite clear" that absent an express exemption, all of a defendant's assets are subject to a restitution

5

order,'" *Id.* (quoting *United States v. Frank*, 8 F.4th 320, 327 (4th Cir. 2021) (quoting *United States v. Novak*, 476 F.3d 1041, 1046 (9th Cir. 2007))).

Here, the Second Circuit's decision discusses only the potential ten-percent early withdrawal tax, and not Mr. Greebel's other potential federal and state tax liabilities, and advises that if the parties fail to provide "clarity on whether Greebel will be subject to the early withdrawal tax" (as has occurred here), this Court "may wish to direct the liquidation of the retirement account and order the clerk to reserve a portion of the funds in escrow for the potential additional tax consequences of the early withdrawal." *Id.* at 76. Here, the proposed stipulations and orders of garnishment exceed the Second Circuit's mandate by reserving 40% of the cash value of the retirement accounts for Mr. Greebel's unidentified potential tax liability and limiting the victim's restitution to 60% of the value of the two retirement accounts.

Importantly, the victim in this case remains without the restitution as ordered by this Court. The parties do not indicate whether the victim has been notified of their proposed stipulations and orders of garnishment. *See* 18 U.S.C. § 3771(a) (noting, *inter alia*, a crime victim's "right to reasonable, accurate, and timely notice of any public court proceeding"); *Munsif v. Barr*, 797 F. App'x 658, 660 (2d Cir. 2020) (noting Crime Victims' Rights Act

"requires the Government to make reasonable efforts to notify crime victims of proceedings and of their right to restitution" (citing § 3771(a)).

Accordingly, the Court **ORDERS** that: (1) Mr. Greebel's Stable Value Fund accounts at Merrill Lynch and Charles Schwab be liquidated; (2) the proceeds of the liquidated Garnishee accounts be deposited into an interest bearing account of the Clerk of this Court; (3) the Government shall submit liquidation orders for each of the garnished accounts at Merrill Lynch and Charles Schwab for deposit with the Clerk of Court by February 26, 2025; (4) Mr. Greebel shall submit verifiable documentation and legal support as to whether he will be subject to a ten-percent early withdrawal tax, no later than February 28, 2025, and the Government shall respond by March 14, 2025; (5) that Mr. Greebel may litigate any other tax liabilities before the Tax Court, as proposed by the parties; and (6) Probation is respectfully requested to provide a summary of Mr. Greebel's supervision, including his compliance with his conditions of supervised release, and his payments, if any, of his criminal monetary obligation for restitution, by February 28, 2025.

The Court further **ORDERS** that by February 24, 2025, the parties shall notify and serve the victim, Retrophin, Inc. (now known as Travere Therapeutics Inc.), with this Order and with copies of the proposed stipulations and orders of garnishment, if

they have not yet done so, and note service on the docket by February 24, 2025. The victim shall be entitled to be heard no later than March 10, 2025.

**So ordered.**

Dated:     February 21, 2025
           Brooklyn, New York

**Kiyo A. Matsumoto**
United States District Judge
Eastern District of New York

8